# EXHIBIT E

Case 1:07-cv-07634-WHP     Document 1-30     Filed 08/28/2007     Page 1 of 11

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 17 2005

at 10 o'clock and 37 min. A. M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; | Civ. No. 03-00385 SOM/LEK |
| Plaintiff, | ORDER DENYING BERRY'S MOTION FOR SUMMARY JUDGMENT AGAINST ALIXPARTNERS; ORDER GRANTING ALIXPARTNERS' COUNTERMOTION FOR SUMMARY JUDGMENT |
| vs. | |
| HAWAIIAN EXPRESS SERVICE, INC., a California corporation, et al., | |
| Defendants. | |

ORDER DENYING BERRY'S MOTION FOR
SUMMARY JUDGMENT AGAINST ALIXPARTNERS; ORDER GRANTING
ALIXPARTNERS' COUNTERMOTION FOR SUMMARY JUDGMENT

I.   INTRODUCTION.

The facts of this case have been discussed in detail in this court's other orders. In sum, Plaintiff Wayne Berry has alleged copyright infringement against numerous Defendants, including AlixPartners, LLC.

On April 20, 2005, Berry sought summary judgment as to all of these Defendants. In Berry's motion, Berry argues that AlixPartners should be liable for the alleged infringement by Fleming Companies, Inc., on theories of "vicarious and contributory infringement." See Plaintiff Wayne Berry's Motion for Summary Judgment (Apr. 20, 2005) at 5. All of Berry's claims arise out of his contention that "Alix Partners [sic], through its principal Michael Scott, authorized the copying and the transfer of Berry's works to C&S and his Principal obtained a fee

for a successful reorganization." Id. at 8. In the memorandum in support of his motion, Berry argues that AlixPartners is liable to him because "the documents filed in Delaware show that it was to receive a special $3.6 million performance bonus but only if there as [sic] a successful reorganization. By Michael Scott authorizing the Guidance infringement, the performance fee was obtained through the successful sale to C&S." Memorandum in Support of Plaintiff Wayne Berry's Motion for Summary Judgment (Apr. 20, 2005) at 31.

AlixPartners has demonstrated that it did not enter into the described agreement with Fleming. Berry has apparently sued the wrong company. Berry has not shown that AlixPartners is responsible for actions by AP Services, LLC, the company that actually entered into the contract with Fleming, or for the actions of Michael Scott, an employee of AP Services who was leased to Fleming to be Fleming's acting treasurer. Summary judgment is therefore granted against Berry and in favor of AlixPartners on all of Berry's claims against AlixPartners.[1]

II.     BACKGROUND FACTS.

AlixPartners, LLC, was formerly known as Jay Alix & Associates. See Declaration of Michael Scott ¶ 4 (May 25, 2005). AlixPartners is an entity formed under Delaware law. See Exhibit

---

[1] Pursuant to Local Rule 7.2(d), the court decides this motion without a hearing.

2

2 to Scott Decl. (certificate of good standing for AlixPartners, LLC).

APS Services, LLC, was formerly known as JA&A Services, LLC. Scott Decl. ¶ 3. APS Services is an entity formed under Michigan law. See Exhibit 1 to Scott Decl. (certificate of good standing for APS Services, LLC).

It is undisputed that AlixPartners and APS Services are separate legal entities. See Scott Decl. ¶ 2; Plaintiff Wayne Berry's Response to Defendant Alix Partners [sic], LLC's Separate and Concise Statement, No. 1 (June 9, 2005) (admitting same).

Although Berry's motion argues that AlixPartners was to receive $3.6 million if Fleming was successfully reorganized in Bankruptcy Court, see Motion at 31, the evidence submitted by Berry himself indicates that APS Services, rather than AlixPartners, had the agreement with Fleming. See Exhibit C to the Declaration of Timothy J. Hogan (dated July 8, 2005, but presumably meant to have been dated June 8, 2005) (attached to Plaintiff Wayne Berry's Response to Defendant Alix Partners [sic], LLC's Separate and Concise Statement, No. 1 (June 9, 2005)). According to a bankruptcy filing by Fleming, it hired AP Services as "crisis managers" for Fleming. See Exhibit C to Hogan Decl. That same bankruptcy filing indicates that AP Services was to provide Fleming with "Rebecca A. Roof as its representative to serve as Chief Financial Officer of the Debtors

3

[Fleming] and Michael Scott as its representative to serve as Treasurer of the Debtors [Fleming]." Id. at 3. The Fleming bankruptcy filing also indicates that Roof and Scott "are particularly well-suited to provide the restructuring and management services required by the Debtors [Fleming]. They are affiliated with the restructuring firm AlixPartners, LLC . . . , a leading corporate restructuring advisor . . . ." Id. Scott indicates that, after Fleming's reorganization plan was confirmed, the $3.6 million fee was reduced to $1.8 million and was paid to AP Services, not AlixPartners. Scott Decl. ¶ 12.

Fleming's statements in its bankruptcy proceeding are not, of course, binding on AlixPartners. Even if the court interprets the Fleming filings in the light most favorable to Berry, the evidence merely shows that AP Services provided officers to Fleming and that these officers were also affiliated with AlixPartners. This is confirmed by Scott's declaration in the bankruptcy proceeding stating that, from April 2003 to August 2004, he served as Fleming's treasurer in his capacity as an AP Services employee. See Exhibit A to Hogan Decl.; accord Scott Decl. ¶ 5. Scott says that all of his actions as Fleming's acting treasurer were done on behalf of Fleming, not AlixPartners. Id. Scott says that "Fleming never retained the services of ALIXPARTNERS." Id.

4

Scott's bankruptcy declaration also indicates that Scott wears more than one hat. That is, while he was an AP Services employee acting as Fleming's treasurer, he was also a principal in AlixPartners. See Exhibit A to Hogan Decl. Scott says that AP Services is "an affiliate of" AlixPartners. Id.

Scott's biography on the AlixPartners' website says that he is one of sixty-one principals of that company and that he "is currently serving as interim treasurer at Fleming Companies, Inc." See Exhibit B to Hogan Decl.

Scott says that all of the acts that he took pertaining to Berry's software were done in his capacity as Fleming's acting treasurer. Scott Decl. ¶ 7. In other words, it was in his capacity as Fleming's acting treasurer that Scott signed a contract with Guidance Software, Inc., to remove Berry's software from Fleming's system. Id. Scott says that this contract did not authorize the copying or transfer of Berry's software. Id.

III.   STANDARD OF REVIEW.

Summary judgment shall be granted when

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 383 F.3d 1018, 1024 (9th Cir. 2004); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). One of the principal

5

purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." Porter, 383 F.3d at 1024 (quoting Anderson v. Liberty Lobby, Inc., 477

6

U.S. 242, 256 (1986)). "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134. "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d

7

1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587).

IV.     ANALYSIS.

Berry seeks to hold AlixPartners liable for the alleged infringement on his software based on theories of vicarious and contributory infringement. See Berry's Motion at 5. Berry's claims against AlixPartners arise out of the assertion that AlixPartners was responsible for leasing certain officers to Fleming to aid in Fleming's bankruptcy reorganization. See Memorandum in Support of Berry's Motion at 31. The problem with this claim is that the evidence establishes that AP Services, not AlixPartners, had a contract to lease the officers to Fleming, and that AP Services, not AlixPartners, was paid under the contract. The only evidence before the court is that Scott's actions--the actions that Berry is trying to hold AlixPartners liable for--were taken in his capacity as Fleming's acting treasurer. Scott was an AP Services employee leased to Fleming.

While Scott was also a principal in AlixPartners, there is no evidence in the record indicating that any of Scott's actions were taken on its behalf. To the contrary, the only evidence before the court is that Scott was not acting on behalf of AlixPartners when he took the action that pertained to Berry's software. For example, when Scott signed the Guidance Software contract that forms the basis of Berry's claims against

8

AlixPartners, Scott did so in his capacity as Fleming's acting treasurer, a position he filled under a lease between AP Services and Fleming. Scott Decl. ¶ 7. Berry's contrary speculation that Scott may have taken actions on behalf of AlixPartners is insufficient to raise a genuine issue of fact regarding whether Scott's actions are attributable to AlixPartners. AlixPartners is not liable to Berry on any of his claims.

In his opposition to AlixPartners' countermotion, Berry argues that AlixPartners is liable for the alleged software infringement because AP Services is an AlixPartners subsidiary. Berry, however, submits no admissible evidence demonstrating the relationship between the two companies. At most, the record shows that the companies are affiliated. See Exhibit A to Hogan Decl. However, the companies were legally formed as separate entities under the laws of Michigan and Delaware. See Exhibits 1 and 2 attached to Scott's Decl.; see also Scott Decl. ¶ 2. Nothing in the record supports holding AlixPartners liable for the acts of AP Services.

Berry also unconvincingly argues that AlixPartners is liable based on the doctrine of apparent authority. Nothing in the record indicates that AlixPartners took any action with respect to Berry's software. The evidence before the court indeed establishes that Scott was acting as Fleming's treasurer

9

when he took the actions on which Berry bases his copyright infringement claim.

V. CONCLUSION.

The court denies Berry's motion to the extent it seeks summary judgment against AlixPartners. Instead, the court grants AlixPartners' countermotion for summary judgment on all of Berry's claims against it.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 17, 2005.

SUSAN OKI MOLLWAY
UNITED STATES DISTRICT JUDGE

Berry v. Hawaiian Express Service, et al., Civ. No. 03-00385 SOM/LEK; ORDER DENYING BERRY'S MOTION FOR SUMMARY JUDGMENT AGAINST ALIXPARTNERS; ORDER GRANTING ALIXPARTNERS' COUNTERMOTION FOR SUMMARY JUDGMENT

10