# EXHIBIT E

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

----------------------------------------------------------x
                       :   Chapter 11
In re:                  :
FLEMING COMPANIES, INC., et al.,   :   Case No. 03-10945 (MFW)
                       :
         Debtors.        :   Jointly Administered
                       :
                       :
----------------------------------------------------------x

**ORDER (A) APPROVING ASSET PURCHASE AGREEMENT BY AND AMONG
FLEMING COMPANIES, INC., C&S WHOLESALE GROCERS, INC., C&S
ACQUISITION LLC AND THE OTHER PARTIES NAMED THEREIN, (B)
AUTHORIZING (I) SALE OF SUBSTANTIALLY ALL OF SELLING DEBTORS'
ASSETS RELATING TO THE WHOLESALE DISTRIBUTION BUSINESS TO
PURCHASER OR ITS DESIGNEE(S), FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES AND INTERESTS AND (II) PROCESS FOR ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, LICENSE AGREEMENTS
AND UNEXPIRED LEASES TO PURCHASER OR ITS DESIGNEE(S) AND
ESTABLISHING THE MAXIMUM CURE AMOUNT
<u>WITH RESPECT THERETO AND (C) GRANTING RELATED RELIEF</u>**

Upon the motion[1] (the "<u>Sale Motion</u>") dated July 11, 2003 of Fleming Companies, Inc.,

Fleming Transportation Service, Inc., Piggly Wiggly Company, RFS Marketing Services, Inc.,

Fleming International, Ltd., Fleming Foods of Texas, L.P., and Fleming Foods Management Co.,

LLC (collectively, the "<u>Selling Debtors</u>"), seven of the above-captioned debtors and debtors in

possession (collectively, the "<u>Debtors</u>")[2] in the above-captioned cases, for entry of an order,

under sections 105(a), 363(b), (f), and (m), 364, 365, and 1146(c) of title 11 of the United States

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the APA (as defined herein) and the Sale Motion, and to the extent of any inconsistency, the APA shall govern.

[2] The Debtors are the following entities: Fleming Companies, Inc.; ABCO Food Group, Inc.; ABCO Markets, Inc.; ABCO Realty Corp.; ASI Office Automation, Inc.; C/M Products, Inc.; Core-Mark Interrelated Companies, Inc.; Core-Mark Mid-Continent, Inc.; Dunigan Fuels, Inc.; Favar Concepts, Ltd.; Fleming Foods Management Co., L.L.C.; Fleming Foods of Texas, L.P.; Fleming International, Ltd.; Fleming Supermarkets of Florida, Inc.; Fleming Transportation Service, Inc.; Food 4 Less Beverage Company, Inc.; Fuelserv, Inc.; General Acceptance Corporation; Head Distributing Company; Marquise Ventures Company, Inc.; Minter-Weisman Co.; Piggly Wiggly Company; Progressive Realty, Inc.; Rainbow Food Group, Inc.; Retail Investments, Inc.; Retail Supermarkets, Inc.; RFS Marketing Services, Inc.; and Richmar Foods, Inc.

Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, 9014 and 9019 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), (A) approving the asset purchase agreement (as

amended from time to time, the "APA"; a copy of the original of which was attached tyo the Sale

Motion and was amended by that letter agreement dated August 4, 2003 that was

introduced into evidence at the Sale Hearing (the "Letter Agreement")) by and among the Selling

Debtors (C&S Acquisition LLC, as Purchaser (including any affiliated assignee or designee of such

company, the "Purchaser") and C&S Wholesale Grocers, Inc. ("C&S"), and such other agreements to

be entered into among the parties thereto as contemplated therein, (B) authorizing (i) the sale (the

"Sale") of substantially all of the Selling Debtors' assets and business operations relating to their

Wholesale Distribution Business and certain other assets designated in the APA (the "Acquired

Assets") free and clear of all Liens, claims, Encumbrances, Offset Rights (as defined in the

Letter Agreement), and Interests (except the Permitted Encumbrances and Assumed Liabilities

under the APA), pursuant to and as described in the APA to Purchaser or any Third Party

Purchaser (as defined herein), as the case may be, and (ii) the assumption and assignment to

Purchaser or any Third Party Purchaser, as the case may be, of executory contracts and unexpired

leases under sections 365(a) and (f) of the Bankruptcy Code both as of the Initial Closing Date and

during the Option Period, and (C) granting related relief; and upon the Order of this Court dated

July 18, 2003, approving the bidding procedures in connection with the Sale and notice of the

hearing with respect to the Sale (the "Bidding Procedures Order"); and a hearing having been

held on August 4, 2003, continued to August 7, 2003, and further continued to August 14, 2003

in connection with the Sale Motion (the "Sale Hearing"); and all parties in interest having been

heard, or having had the opportunity to be heard, regarding the Sale; and the Court having

considered (x) the Sale Motion, (y) the objections to the Sale Motion (other than objections with

2

respect to assumption and assignment of Acquired Contracts, which objections were deferred), and (z) the arguments made and evidence proffered or adduced in support of approval of the Sale at the Sale Hearing; and it appearing from the affidavits of service filed with the Court that due and sufficient notice of the Sale Motion and the relief granted by this Order, have been provided to all parties affected thereby (the "Sale Notice"); and it further appearing that no other or further notice hereof is required; and upon the Court record of these cases; and the Court having received evidence in support of the approval of the APA and the Sale; and it appearing that the relief requested in the Sale Motion and approved hereby is in the best interests of the Selling Debtors, their estates, creditors, and other parties-in-interest; and upon the record of the Sale Hearing and these chapter 11 cases including the decision of the Court to approve the Sale Motion, APA, and Sale as reflected on the record of the Sale Hearing; and after due deliberation and good and sufficient cause appearing therefor, this Court hereby makes the following Findings of Fact and Conclusions of Law:

I.    **FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

**Jurisdiction, Final Order and Statutory Predicates**

A.    The Court has jurisdiction to hear and determine the Sale Motion and to grant the relief requested therein, pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b). This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (N) and (O).

B.    This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(g) and 6006(d), the parties may

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052. Any statements of the Court from the bench at the Sale Hearing shall constitute additional findings of fact and conclusions of law as appropriate and are expressly incorporated by reference into this Order to the extent not inconsistent herewith.

consummate the Sale immediately upon entry of this Order. To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

C.    The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363(b), (f), and (m), 364, 365, and 1146(c) of the Bankruptcy Code, as complemented by Rules 2002(a)(2), 6004(a), (b), (c) and (e), 6006(a) and (c), 9014 and 9019 of the Bankruptcy Rules.

**Retention of Jurisdiction**

D.    It is necessary and appropriate for the Court to retain jurisdiction to, among others things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith (including without limitation, the Transition Services Agreement (as hereinafter defined)), and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale.

**Notice of the Sale Motion and Auction, Original Cure Notice and Supplemental Cure Notice**

E.    As evidenced by the affidavits of service previously filed with this Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Sale Hearing, and the Sale has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9014 and in substantial compliance with the Bidding Procedures Order.

F.    Actual written notice of the Sale Hearing, the Sale Motion, and the Sale and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief

requested therein has been afforded to all interested persons and entities, including, but not limited to: (i) counsel to the Committee; (ii) counsel to the Agents (as defined below); (iii) counsel to Purchaser; (iv) all Potential Bidders and any party who has expressed in writing an interest to acquire the Wholesale Distribution Business; (v) counsel to the United States Trustee; (vi) any entity that has filed a notice of appearance and demand for service of papers in these bankruptcy cases pursuant to Bankruptcy Rule 2002; (vii) all parties holding Liens against the Selling Debtors' estates; (viii) all non-debtor counterparties to Acquired Contracts; (ix) all creditors of the Selling Debtors listed on the master mailing matrix; and (x) all parties in interest in these cases.

G.    The Sale Notice was published in the National Edition of the *Wall Street Journal*, and at least one regional paper where each of the operating distribution centers for the Wholesale Distribution Business are located as soon as practicable after the approval of the Sale Notice.

H.    In accordance with the provisions of the Bidding Procedures Order, the Debtors have served the cure notice as set forth in the Bidding Procedures Order (the "Original Cure Notice") and the supplemental cure notice as set forth in the Bidding Procedures Order (the "Supplemental Cure Notice") upon each non-debtor counterparty to an Acquired Contract (except as to the counterparties to the Military Supply Agreements and Private Label Supply Agreements as defined in the Letter Agreement) that the Selling Debtors may wish to assume and assign on the Initial Closing Date or during the Option Period. The Service of such Original Cure Notice and such Supplemental Cure Notice were, together, good and sufficient and appropriate under the circumstances and no further notice need be given in respect of establishing the Maximum Cure Amount (as defined below) for applicable Acquired Contracts. Such non-debtor counterparties have had an opportunity to object to the Cure Amount set forth

on the Original Cure Notice.

I.       The Selling Debtors have complied with all obligations to provide notice of the

Sale Motion, Auction, Sale Hearing, Sale and Initial Assignment List required by the Bidding

Procedures Order.  The foregoing notice described in paragraphs E through H was good and

sufficient and appropriate under the circumstances, and no other or further notice of the Sale

Motion, the Sale Hearing, or the Sale is required.

J.       The disclosures made by the Selling Debtors concerning the APA, the Sale, and

the Sale Hearing were good, complete and adequate.

### Consent of Secured Lenders and Committee

K.       Deutsche Bank Trust Company Americas and JPMorgan Chase Bank,

(i) individually as lenders and in their capacity as agents (in such capacity, the "DIP Agents")

under that certain Credit Agreement, dated as of May 6, 2003, among Fleming Companies, Inc.

and certain of its subsidiaries party thereto, the lenders party thereto, and the DIP agents (the

"DIP Credit Agreement"), and (ii) solely in their capacity as lenders under that certain Credit

Agreement, dated as of June 18, 2002, among Fleming, JPMorgan Chase Bank and Citicorp

North America, Inc., as syndication agents, Lehman Commercial Paper Inc. and Wachovia Bank,

National Association, as documentation agents, Deutsche Bank Securities Inc. and JPMorgan

Securities Inc., as joint book managers, Deutsche Bank Securities Inc., JPMorgan Securities Inc.

and Salomon Smith Barney Inc., as joint lead arrangers and Deutsche Bank Trust Company

Americas, as administrative agent (JPMorgan Chase Bank and Deutsche Bank Trust Company

Americas, in their capacities as agents under the Pre-Petition Credit Agreement, the "Pre-Petition

Agents" and, together with the DIP Agents, the "Agents"), and the various lenders from time to

time party thereto (the "Pre-Petition Credit Agreement") consent to the entry of this Order, to the

terms and conditions of the APA, and to the consummation of the Sale.

L.      Notwithstanding anything to the contrary contained in the Final Order

Authorizing (I) Post-Petition Financing Pursuant to 11 U.S.C. § 364 and Bankruptcy Rule

4001(c); (II) Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Bankruptcy Rules 4001(b)

and (d); (III) Grant of Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363; and (IV)

Approving Secured Inventory Trade Credit Program and Granting of Subordinate Liens,

Pursuant to 11 U.S.C. §§ 105 and 364(c)(3) and Rule 4001(c), entered by this Court on May 6,

2003 (the "Final DIP Order") or any other order of the Court governing post-petition financing

or use of cash collateral, subject to Selling Debtors' receipt of the Purchase Price, the liens

granted pursuant to any such orders to the Pre-Petition Lenders, the DIP Lenders or any trade

creditor shall not encumber (i) any of the Acquired Assets, on and after the Applicable Closing

Date with regard to such Acquired Assets, (ii) any property relating to the Business first arising

or coming into any Selling Debtor's possession after the Initial Closing Date, including without

limitation, any accounts receivable generated by the Business after the Initial Closing Date, or

(iii) any other property of Purchaser or any Third Party Purchaser, as the case may be, located at

any PSC; provided, however, that any and all such liens shall attach to the net proceeds of the

Sale in their order of priority, with the same validity, force and effect that they now have as

against the Acquired Assets, subject to any claims and defenses the Selling Debtors and their

estates may possess with respect thereto and subject to the provisions of paragraph 6.

M.      The Committee supports the entry of this Order and the consummation of the

Sale.

### Good Faith of C&S, Purchaser and Third Party Purchasers

N.      Neither C&S nor Purchaser (nor the Third Party Purchasers and their respective

affiliates closing on the Initial Closing Date and set forth on Exhibit C attached hereto (the

"Initial Third Party Purchasers")) is affiliated with the Debtors.

O.    The terms of the Sale, as set forth in the APA, are fair and reasonable under the circumstances of these chapter 11 cases.

P.    Each of C&S and Purchaser (and the Initial Third Party Purchasers) negotiated the terms and conditions of the Sale in good faith and at arm's length, is entering into the Sale in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protections afforded thereby. Each of C&S and Purchaser (and the Initial Third Party Purchasers) will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Sale at any time after the entry of this Order, including immediately after its entry. The Court has found that each of C&S and Purchaser (and the Initial Third Party Purchasers) has acted in good faith in all respects in connection with these chapter 11 cases and the Sale in that, among other things:

(1)    they recognized that the Selling Debtors were free to negotiate with any other party that expressed qualified interest in purchasing their assets;

(2)    they agreed to subject the Stalking Horse Bid to the competitive bidding procedures set forth in the Bidding Procedures Order;

(3)    they in no way induced, caused, or required the commencement of the chapter 11 filings of the Debtors;

(4)    all payments to be made by Purchaser and other agreements or arrangements entered into by Purchaser with the Selling Debtors in connection with the Sale have been disclosed;

(5)    there is no evidence that either C&S, Purchaser, or any Initial Third Party Purchaser has violated section 363(n) of the Bankruptcy Code by any action or inaction;

(6)    no common identity of directors or controlling stockholders exists between any of C&S, Purchaser, the Initial Third Party Purchasers, and any of the

8

Debtors; and

> (7)    the negotiation and execution of the APA and all other aspects of the Sale were conducted in good faith.

## No Other Qualified Bid

Q.    No other Qualified Bid was received as of the Required Bid Deadline.  Therefore, in accordance with the Bidding Procedures Order and the Bidding Procedures, no Auction was required or held.

## Highest and Best Offer

R.    The APA constitutes the highest and best offer for the Acquired Assets, and will provide a greater recovery for the Selling Debtors' creditors than would be provided by any other available alternative.  The Selling Debtors' determination that the APA constitutes the highest and best offer for the Acquired Assets constitutes a valid and sound exercise of the Selling Debtors' business judgment.

S.    The APA represents a fair and reasonable offer to purchase the Acquired Assets under the circumstances of these chapter 11 cases.  No other entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Selling Debtors' estates than Purchaser.

T.    The Sale is not being entered into to escape liability for the estates' debts.

## No Fraudulent Transfer

U.    The consideration provided for the Acquired Assets pursuant to the APA constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

## Validity of Transfer

V.    The transfer of each of the Acquired Assets to Purchaser or any Third Party

Purchaser, as the case may be, is or will be as of the Applicable Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest Purchaser, or any Third Party Purchaser, as the case may be, with all right, title, and interest of the Selling Debtors to the Acquired Assets free and clear of all Encumbrances, Offset Rights, and other Interests accruing, arising or relating to any time prior to the Applicable Closing Date, including without limitation, (a) trade vendor liens, PACA trust claims and PASA trust claims and other state statutes of similar import, reclamation claims, and (b) Encumbrances, Offset Rights, or Interests (i) that purport to give to any party a right or option to effect any forfeiture, modification or termination of the interest of any Debtor or of Purchaser or any Third Party Purchaser, as the case may be, in the Acquired Assets, (ii) in respect of Taxes, or (iii) that are listed on the Selling Debtors' schedule as filed with the Bankruptcy Court on July 1, 2003 as may be amended as permitted under the Bankruptcy Rules, except, in all cases, for the Permitted Encumbrances and Assumed Liabilities.

W.    C&S and Purchaser would not have entered into the APA and would not consummate the Sale contemplated thereby, thus adversely affecting the Debtors, their estates, and their creditors, if the Sale of the Acquired Assets (other than Acquired Contracts) to Purchaser or any Third Party Purchaser, as the case may be, and the assignment of the Acquired Contracts to Purchaser or any Third Party Purchaser, as the case may be, were not free and clear of all Encumbrances, Offset Rights, and Interests against the Selling Debtors or their estates (except the Permitted Encumbrances and Assumed Liabilities under the APA), or if C&S, Purchaser, or any Third Party Purchaser, as the case may be, would be liable for any of the Excluded Liabilities, including, without limitation, those listed in Section 2.4 of the APA.

### Section 363(f) Is Satisfied

X.    The Selling Debtors may sell the Acquired Assets (other than the Acquired Contracts) free and clear of all Encumbrances, Offset Rights, and other Interests against the

10

Selling Debtors or their estates (except the Permitted Encumbrances and Assumed Liabilities under the APA) because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances, Offset Rights or Interests against the Debtors or their estates who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of such Encumbrances or Interests who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by having their Encumbrances or Interests, if any, in each instance against the Selling Debtors or their estates, attach to the cash proceeds of the Sale ultimately attributable to the property in which they allege an interest. Certain holders of alleged Offset Rights are adequately protected as set forth in paragraph 6 below.

## Compelling Circumstances for Immediate Sale

Y.    The Selling Debtors have demonstrated both (i) good, sufficient, and sound business purpose and justification and (ii) compelling circumstances for the Sale pursuant to section 363(b) of the Bankruptcy Code prior to a chapter 11 plan in that, among other things, the value of the Wholesale Distribution Business is extremely time-sensitive given the importance of customer relationships to that business and the threatened continued erosion of these relationships, and that any sale taking place after the time contemplated by the parties would likely yield markedly less value than the Sale contemplated hereby, due to the potential for additional customer defections.

Based on the foregoing Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, AS FOLLOWS:

## General Provisions

1.    The relief requested in the Sale Motion is granted and approved as set forth in this

11

Order, and the Sale contemplated thereby is hereby approved as set forth in this Order.

2.      All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are overruled on the merits; provided however, that all objections to the assumption or assignment of Acquired Contracts are reserved and will be addressed on the merits at subsequent hearings on the assumption and assignment of the particular Acquired Contracts.

### Approval of APA and Transition Services Agreement

3.      The APA, the Transition Services Agreement to be entered into pursuant to the APA (the "Transition Services Agreement"), and all other ancillary documents and all of the terms and conditions thereof are hereby approved in their entirety. To the extent of any conflict or inconsistency between the provisions of this Order and the terms and conditions of the APA, the Transition Services Agreement and such other ancillary documents, as applicable, this Order shall govern and control.

4.      Pursuant to section 363(b) of the Bankruptcy Code, the Selling Debtors are authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of each of the Acquired Assets (other than Acquired Contracts) to Purchaser or any Third Party Purchaser, as the case may be, pursuant to and in accordance with the terms and conditions of the APA, (ii) close the Sale as contemplated in the APA and this Order, and (iii) execute and deliver, perform under, consummate, implement and close fully the APA together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and the Sale, including without limitation, the Transition Services Agreement and any other ancillary document, and to take all further actions as may be reasonably requested in accordance with the APA by C&S, Purchaser, or any Third Party Purchasers, as the case may be, for the purpose of assigning, transferring, granting, conveying,

and conferring to Purchaser or any Third Party Purchaser, as the case may be, or reducing to possession, the Acquired Assets, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA, the Transition Services Agreement, or such other ancillary documents.

5.    The terms and provisions of this Order shall be binding in all respects upon C&S, Purchaser, any Third Party Purchaser, and the Selling Debtors, any trustees thereof, their estates, all creditors and shareholders of any of the Selling Debtors, all interested parties, and their respective successors and assigns, including, but not limited to, all non-debtor parties to the contracts, leases, notes (including, but not limited to Promissory Notes (as defined below) and Forgiveness Notes (as defined below)), FSAs, and licenses which may be assigned to Purchaser or any Third Party Purchaser, as the case may be, under the APA.

### Transfer of the Acquired Assets (Other than Acquired Contracts)

6.    Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Selling Debtors are authorized to transfer the Acquired Assets (other than Acquired Contracts) on the Initial Closing Date and, in accordance with Sections 2.5 and 2.6 of the APA, from time to time during the Option Period (including after the expiration of the initial six months of the Option Period as set forth in Section 2.5 of the APA). Such Acquired Assets shall be transferred to Purchaser or any Third Party Purchaser, as the case may be, upon the Applicable Closing Date and, as of such Applicable Closing Date, any such transfer shall constitute a legal, valid, binding and effective transfer of such Acquired Assets and, upon the Selling Debtors' receipt of the Purchase Price, shall be free and clear of (a) all Encumbrances except the Permitted Encumbrances and Assumed Liabilities under the APA, (b) all Offset Rights, and (c) all other Interests, including without limitation, any and all "claims" (as that term is defined in section 101(5) of the Bankruptcy Code), obligations, demands, guaranties, options, debts, rights,

13

contractual commitments, restrictions, and matters of any kind and nature, whether direct or

indirect, monetary or non-monetary, absolute or contingent, matured or unmatured, liquidated or

unliquidated, of, by or against Selling Debtors, their estates or such Acquired Assets, whether

arising prior to or subsequent to the commencement of these chapter 11 cases, and whether

imposed by agreement, understanding, law, equity or otherwise (including, without limitation, (i)

claims and encumbrances that purport to give to any party a right or option to effect any

forfeiture, diminution, modification or termination of the interest of the Selling Debtors in such

Acquired Assets, (ii) claims and encumbrances in respect of Taxes (other than taxes included in

Permitted Encumbrances and Assumed Liabilities), (iii) any claim relating to liability arising

under federal, state or local revenue, tax, products liability, labor, worker compensation or

environmental laws or with respect to Debtors' liability as a distributor or a retailer or (iv) any

claim that Purchaser, C&S, any Third Party Purchaser or any of their Affiliates is a successor to

the Selling Debtors arising under federal, state or local law, rule, regulation or at equity), in each

case accruing, arising or relating to the period prior to the Applicable Closing Date, with all such

Encumbrances and Interests to attach to the net proceeds of the Sale in the order of their priority,

with the same validity, force and effect that they now have as against such Acquired Assets,

subject to any claims and defenses the Selling Debtors and the Selling Debtors' estates may

possess with respect thereto.  Upon the Initial Closing Date, Acquired Assets shall be sold free

and clear of any Offset Right, if any.  With respect to alleged Offset Rights of counterparties to

FSAs or supply agreements who (i) have asserted or joined in a demand for adequate protection

in a pleading (by memorandum of law or objection) filed or placed on the record by the end of

the Sale Hearing, (ii) are counterparties to an FSA or supply agreement that is rejected, and (iii)

are parties to a Promissory Note or Forgiveness Note that the Court determines is not an

14

executory contract or an integrated part of an executory contract, such alleged Offset Right, if any, shall attach (without prejudice to the determination to be made pursuant to the following sentence) to the Fixed Component of Purchase Price subject to the terms of this paragraph 6. Nothing in this Order shall be deemed a determination of the existence, enforceability, validity, priority or extent of the Offset Rights in and to the Fixed Component of Purchase Price, and the Court reserves all such issues for a later determination, including without limitation, whether Offset Rights, are or should be entitled to adequate protection or are otherwise extinguished pursuant to sections 553 and 363 of the Bankruptcy Code. Based on the rights of the holders of such Offset Rights, if any, (i) in and to the Fixed Component of Purchase Price and (ii) against the Debtors' accounts receivable, the Offset Rights shall be deemed adequately protected, to the extent necessary. No portion of the Fixed Component of the Purchase Price shall be distributed absent further order of this Court.

7.    Except as expressly permitted by the APA with respect to Permitted Encumbrances and Assumed Liabilities, C&S, Purchaser, or any Third Party Purchaser, as the case may be, shall have no liability or responsibility for any Encumbrance, Offset Right or Interest arising, accruing, or relating to a period prior to the Applicable Closing Date.

8.    Notwithstanding anything to the contrary contained in the Final DIP Order or any other order of the Court governing post-petition financing or use of cash collateral, upon the Selling Debtors' receipt of the Purchase Price, the liens granted pursuant to any such orders to the Pre-Petition Lenders, the DIP Lenders or any trade creditor shall not encumber (i) any of the Acquired Assets, on and after the Applicable Closing Date with regard to such Acquired Assets, (ii) property, including Inventory, relating to the Business first arising or coming into any Selling Debtor's possession after the Initial Closing Date, including without limitation, any revenues and

15

accounts receivable generated by the Business after the Initial Closing Date, or (iii) any other property of Purchaser or any Third Party Purchaser, as the case may be, located at any PSC, with all such property described in clause (i) – (iii) above being the property solely of Purchaser or the applicable Third Party Purchaser, as the case may be, and the Selling Debtors not having any property interest therein; provided, however, that all such liens shall attach to the proceeds of the Sale in accordance with paragraph 6 above.

9. The Selling Debtors are hereby directed to comply with Section 2.09(b) of the DIP Credit Agreement. Without limiting the generality of the foregoing, the Selling Debtors shall use commercially reasonable efforts to calculate the Net Proceeds (as defined in the DIP Credit Agreement) from the Sale, whenever received, and shall direct the Purchaser to promptly pay any such Net Proceeds directly to the Administrative Agent under the DIP Credit Agreement as and in the manner required by Section 2.09(b) of the DIP Credit Agreement to the extent any payment is required. Payments of the Purchase Price made pursuant to this paragraph shall be deemed to be received by the Selling Debtors, and shall not prejudice or alter any claims to the Fixed Component of Purchase Price, which shall be determined without regard to the fact of payment to the Administrative Agent.

### Assumption and Assignment of Acquired Contracts
### On the Initial Closing Date

10. In accordance with the Bidding Procedures Order, the Selling Debtors, on or about August 4, 2003, filed with the Bankruptcy Court and served via facsimile, email or overnight delivery upon the relevant non-debtor counterparties and their counsel the Initial Assignment List (as defined in the Bidding Procedures Order) setting forth contracts or leases proposed pursuant to the Sale Motion to be assumed and assigned on the Initial Closing Date to the Purchaser or Initial Third Party Purchasers. Any non-debtor counterparties to such Acquired

16

Contracts that were served with the Initial Assignment List may file objections to the proposed

assumption and assignment of its Acquired Contract by the objection deadline set forth in the

Bidding Procedures Order, subject to limitations set forth in paragraphs 15-16 of this Order in

respect of objections to the Cure Amount for such Acquired Contract.  A hearing will be held by

this Court on August 19, 2003 at 11:30 a.m. to consider entry of an order (the "Initial Acquired

Contracts Order") authorizing the assumption and assignment of the Acquired Contracts set forth

on the Initial Assignment List.  Any objection that is duly filed by the applicable objection

deadline shall be resolved at such hearing.

**Transfer of Owned Acquired Assets; Assumption and Assignment
of Acquired Contracts During the Option Period; Third Party Purchasers**

11.    In accordance with and subject to Sections 2.5 and 2.6 of the APA, to the extent

not transferred at the Initial Closing, the Selling Debtors are authorized to transfer any owned

Acquired Assets (other than Acquired Contracts) to Purchaser, its designee(s), or any Third Party

Purchaser, as the case may be, at any time during the Option Period.

12.    In connection with Purchaser's Option Rights pursuant to Section 2.5 of the APA,

Purchaser shall have the right, upon the timely delivery of an Option Notice at any time during

the Option Period, to seek any necessary supplemental sale orders (each, a "Supplemental Sale

Order") with respect to the assumption and assignment of any Acquired Contract not assumed

and assigned as of the Initial Closing Date that is designated in any such Option Notice.  The

Selling Debtors shall be required to serve notice, including a supplemental cure notice, upon the

non-debtor parties to such Acquired Contracts and any counsel that has filed a notice of

appearance and request for service pursuant to Bankruptcy Rule 2002 and provide an opportunity

for such non-debtor counterparty to be heard in respect of any objection to such assumption and

assignment, subject to the limitations set forth in paragraphs 15-16 of this Order in respect of

17

objections to the Cure Amount for such Acquired Contract, in accordance with the applicable local rules of this Court. Any objection that is duly filed by the applicable objection deadline shall be resolved at the hearing on the assumption and assignment of the applicable Acquired Contract. Notwithstanding anything to the contrary contained in this Order, the APA or the Transition Services Agreement, nothing in this Order, the APA or the Transition Services Agreement shall be deemed to relieve any Debtor from any obligation under any Acquired Contract during the Option Period, including, but not limited to obligations of confidentiality and nondisclosure, unless and until this Court enters an order authorizing rejection or assumption and assignment of such contract or non-compliance with such contract.

13. In connection with Purchaser's Designation Rights to assign its rights and obligations with respect to any Acquired Assets to one or more third parties (each, a "Third Party Purchaser") at any time during the Option Period, Purchaser may, by one or more notices (each, a "Third Party Purchaser Notice") to the Selling Debtors, designate one or more Third Party Purchasers and the Acquired Assets, including any Acquired Contract not already assumed and assigned pursuant to the Initial Acquired Contracts Order, to be transferred to each such Third Party Purchaser. The Selling Debtors shall comply with Sections 2.5 and 2.6 of the APA and shall file, duly serve and diligently prosecute a motion in the Bankruptcy Court seeking authorization, as necessary, to assume and assign any Acquired Contract or otherwise transfer any designated Acquired Assets to any such Third Party Purchaser. The assumption and assignment of any Acquired Contracts to be assumed and assigned to a Third Party Purchaser shall be governed by the provisions of this Order, except that any notice provided to the non-debtor counterparty to any such Acquired Contract shall also disclose the identity of such Third Party Purchaser. If either (1) such non-debtor parties fail to timely object or (2) any objections

18

are withdrawn or this Court enters an order overruling any such objections with respect to such Acquired Contracts, then the Court shall issue a Supplemental Sale Order providing, among other things, that:

(i)    The applicable Third Party Purchaser shall receive all of the benefits, protections and privileges of this Order; provided, however, that the Debtors shall have no liability for any post-Applicable Closing Date defaults, cures, or any other post-closing obligations whatsoever; and

(ii)    Each of C&S and Purchaser shall have no liability or obligations with respect to such assumed and assigned Acquired Contract to any other person or entity and the Third Party Purchaser who is the assignee of such Acquired Contract shall be the sole party responsible for the liabilities and obligations under such Acquired Contract arising or relating to the period from and after the effective date of such assignment to such Third Party Purchaser (it being understood that the Debtors' liabilities or obligations with respect to such Acquired Contracts ceased after the Applicable Closing Date).

The Court shall retain jurisdiction after the Initial Closing Date to hear and determine any applications (i) with respect to Purchaser's Option Rights or (ii) to designate a Third Party Purchaser.

14.    As of the date hereof, the Purchaser has joined the Initial Third Party Purchasers as the purchaser of those Acquired Assets as may be more specifically set forth in the agreement(s) between Purchaser and such Third Party Purchasers. Such Third Party Purchasers shall be entitled to the full benefits of this Order as if such Initial Third Party Purchasers were the Purchaser herein to the extent of their respective Acquired Assets, including by way of example only, and not by way of limitation, the findings in paragraphs N, O and P and the conclusions in

paragraph 6.

### Cure Amount
### with Respect to Assumption and Assignment of Acquired Contracts

15.    The maximum Cure Amount (as defined in the Original Cure Notice) that a non-debtor counterparty to any Acquired Contract who did not timely file a written objection to the Cure Amount by July 29, 2003 (the "Non-Objecting Parties") may assert in response to any motion to assume and assign such Acquired Contract with respect to any damages arising from an alleged default under such Acquired Contract incurred on or prior to July 11, 2003 (the "Maximum Cure Amount") shall be the amount set forth opposite such Acquired Contract on the schedule attached hereto as Exhibit A (the "Maximum Cure Schedule"), which amount is the amount indicated as the Cure Amount as of July 11, 2003.

16.    With respect to all written cure objections filed with the Court by July 29, 2003 (the "Cure Objections") by non-debtor counterparties to such Acquired Contracts (the "Cure Objectors"), the Cure Amount shall be limited as follows:  (i) the Cure Amount shall be limited to any legal theories, categories, types or kinds of claims that are set forth in the respective Cure Objections; and (ii) no Cure Amount shall be permitted if the Cure Amount was known, or should have been known with reasonable diligence, by the Cure Objector and was not asserted in the respective written Cure Objection with reasonable particularity.   All Cure Objections shall be resolved at the hearings regarding the assumption and assignment, including, but not limited to assignability or adequate assurance of future performance, of the applicable Acquired Contracts.  The provisions set forth in paragraphs 15-16 above shall not apply to Military Supply Agreements and Private Label Supply Agreements, for which the Selling Debtors shall serve a separate notice of assumption and/or assignment in accordance with the Delaware Local Rules if and when such contracts are proposed to be assumed and or/assigned.

17.     In addition to any amounts permitted pursuant to paragraphs 15 and 16 above, any non-debtor counterparty to an Acquired Contract shall be entitled to assert at the hearing applicable to the assumption and assignment of such Acquired Contract claims for alleged pecuniary loss, if any, incurred by such party between the date of the Original Cure Notice and the date on which such Acquired Contract is actually proposed to be assumed and assigned (the "Adjusted Cure Amount").

18.     On the Initial Closing Date, Purchaser, on behalf of the Selling Debtors, shall deposit into escrow (the "Cure Escrow") an amount equal to $22 million (the "Cure Escrow Amount").

19.     Until and unless actually assumed and assigned by order of the Court to Purchaser or any Third Party Purchaser, none of C&S, Purchaser, or any Third Party Purchaser, as the case may be, shall have any liability under any Acquired Contract.

### Additional Provisions

20.     On the Applicable Closing Date, each creditor of the Debtors is authorized and directed to execute such documents and take all other actions as may be necessary to release Encumbrances, Offset Rights or Interests (except Permitted Encumbrances) on the Acquired Assets, if any, as provided for herein, as such Encumbrances, Offset Rights, or Interests may have been recorded or may otherwise exist; provided, however, such Encumbrances, Interests, and Offset Rights (if any) shall be deemed to attach to the proceeds of the Sale in accordance with paragraph 6 above.

21.     This Order is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental units, secretaries of state, federal, state, and local officials, and all other persons and entities who may

be required by operation of law, the duties of their office, or contract, to accept, file, register or

otherwise record or release any documents or instruments, or who may be required to report or

insure any title or state of title in or to any of the Acquired Assets.  Upon the Selling Debtors'

receipt of the Purchase Price, all Encumbrances, Offset Rights, or other Interests (except

Permitted Encumbrances) against the Selling Debtors' estates of record as of the date of this

Order shall forthwith be removed and stricken as against the Acquired Assets, without further

order of the Court or act of any party.  For purposes of removing such Encumbrances, Offset

Rights or Interests against the Acquired Assets, the Court hereby approves a short-form order,

attached hereto as Exhibit B for use by C&S, Purchaser, its designee(s), or any Third-Party

Purchaser (the "Short Form Sale Order").  Upon the Applicable Closing Date and subject to the

Selling Debtors' receipt of the Purchase Price, the entities listed above in this paragraph are

authorized and specifically directed to strike all such recorded Encumbrances, Offset Rights or

other Interests against the Acquired Assets as provided for herein from their records, official and

otherwise (including those asserted by the Pre-Petition Lenders and the DIP Lenders).

22.    Each and every federal, state, and local governmental agency, unit or department

are hereby directed to accept this Order (or the Short Form Sale Order) as sole and sufficient

evidence of the transfer of title of the Acquired Assets (other than Acquired Contracts) to

Purchaser or any Third Party Purchaser, as the case may be, and such agency or department may

rely upon this Order (or the Short Form Sale Order) in consummating the transactions

contemplated by the APA.

23.    The making or delivery of any instrument or transfer, including the filing of any

deed or other document of transfer to evidence, effectuate or perfect the rights, transfers and

interest contemplated by the APA, to the extent permitted by applicable law, shall be free and

clear of any and all stamp taxes or similar taxes; provided, however, that the amount of any such taxes shall be placed in an interest-bearing escrow account pending a future determination by this Court as to whether 11 U.S.C. § 1146(c) applies to the transfers contemplated by the APA after further notice has been given to the taxing authorities and other appropriate parties in interest.

24.     If any person or entity that has filed a financing statement, mortgage, mechanic's lien, lis pendens, or other document or agreement evidencing an Encumbrance or Interest in the Acquired Assets (except Permitted Encumbrances) that are being transferred free and clear, as provided herein, of such Encumbrance or Interest (except Permitted Encumbrances), shall not have delivered to the Selling Debtors prior to the Applicable Closing Date, in proper form for filing and executed by the appropriate parties, a termination statement, instrument of satisfaction, release of all such Encumbrances or Interests which such person or entity has with respect to the Acquired Assets or otherwise, the Selling Debtors, C&S, Purchaser, or any Third Party Purchaser, as the case may be, are hereby authorized, provided that the Purchase Price has previously been received by the Selling Debtors, to execute and file such statement, instrument, release, or other document on behalf of such person or entity with respect to the Acquired Assets (other than the Acquired Contracts).

25.     All entities who are presently, or on or before the Applicable Closing Date may be, in possession of some or all of the Acquired Assets (other than Acquired Contracts) to be transferred as of such Applicable Closing Date are hereby directed to surrender possession of the Acquired Assets to Purchaser or any Third Party Purchaser, as the case may be, on the Applicable Closing Date at that entity's sole expense.

26.     Any amounts that become payable by the Selling Debtors to C&S, Purchaser, or their Affiliates pursuant to the APA or Transition Services Agreement (a) shall constitute

administrative expenses of the Selling Debtors' estate under sections 503(b) and 507(a)(1) of the

Bankruptcy Code and (b) shall be paid by the Selling Debtors in the time and manner provided

for in the APA or Transition Services Agreement, as applicable, without further Court order.

27.    The Selling Debtors are authorized, upon consent of or notice to the Agents and

the Committee, to compromise disputes regarding amounts either due to or owed by the Selling

Debtors under the terms of the APA, the Transition Services Agreement, and the other ancillary

documents, including without limitation, controversies relating to the computation of the

Inventory Amount and the Royalty Amount, pursuant to section 363(b) of the Bankruptcy Code

and Rule 9019(b) of the Bankruptcy Rules.

28.    The terms and provisions of the APA, the Transition Services Agreement and the

other ancillary documents, together with the terms and provisions of this Order, shall be binding

in all respects upon all entities, including the Debtors, any trustees thereof, their estates, their

creditors, their shareholders, and all interested parties, administrative agencies, governmental

units, secretaries of state, federal, state and local officials, including any such administrative or

governmental authorities maintaining any authority relating to environmental, health, or safety

laws, and their respective successors or assigns, including, but not limited to all non-debtor

parties to the Acquired Contracts which may be assigned to Purchaser or any Third Party

Purchaser, as the case may be, under the APA, and upon any persons asserting an Encumbrance

against or Interest in the Debtors' estates or any of the Acquired Assets to be sold and assigned

to Purchaser or any Third Party Purchaser, as the case may be.

29.    Nothing contained in any plan of reorganization or liquidation, or order of any

type or kind entered in (i) these chapter 11 cases, (ii) any subsequent chapter 7 case into which

any such chapter 11 case may be converted, or (iii) any related proceeding subsequent to entry of

this order, shall conflict with or derogate from the provisions of the APA or the terms of this Order. Unless otherwise agreed to by C&S, Purchaser or any Third Party Purchaser, the Selling Debtors agree that (i) its obligations hereunder and under the APA shall not be discharged by the entry of an order confirming a chapter 11 plan of reorganization in any of the Selling Debtor's chapter 11 cases (and each Selling Debtor pursuant to section 1141(d)(4) of the Bankruptcy Code hereby waives any such discharge) and (ii) the relief and protections granted to C&S, Purchaser, or any Third Party Purchaser, as the case may be, pursuant to this Order shall not be affected in any manner by the entry of an order confirming a chapter 11 plan of reorganization in any of the Selling Debtor's chapter 11 cases. This Order shall be binding upon and enforceable against, among others, the Debtors, their estates and any and all chapter 7 and chapter 11 trustees thereof.

30.     The Selling Debtors are authorized to change the Selling Debtors' names as provided under, and to the extent set forth in, the APA. The Secretary of State of each applicable state of incorporation is authorized and directed to forthwith accept such name changes and record such changes on its official records.

31.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets on account of the filing of these chapter 11 cases.

32.     Nothing in this Order is intended to conflict with the terms of the Order Requiring Segregation of PACA Trust Assets and Authorizing Procedure for Reconciliation and Payment of Valid Claims under the Perishable Agricultural Commodities Act and the Packers and Stockyard Act, entered by this Court on May 6, 2003; provided, however, that the Acquired Assets may be transferred to the Purchaser or any Third Party Purchaser, as the case may be, free and clear of PACA and PASA trusts (and state statutes of similar import), liens and claims,

25

except to the extent such trusts, liens and claims are Permitted Encumbrances.

33.    This Court retains jurisdiction, even after the closing of these chapter 11 cases, to:

(a)    interpret, implement and enforce the terms and provisions of this Order and the terms of the APA and the Transition Services Agreement, all amendments thereto and any waivers and consents thereunder and of each of the agreements executed in connection therewith;

(b)    protect C&S, Purchaser, or any Third Party Purchaser, as the case may be, or any of the Acquired Contracts or Acquired Assets against any of the Encumbrances or other Interests, as provided herein, including to enjoin the commencement or continuation of any action seeking to impose successor liability, or bulk sale liability;

(c)    enter orders in aid or furtherance of the Sale;

(d)    compel delivery of all Acquired Assets to Purchaser or any Third Party Purchaser, as the case may be;

(e)    adjudicate any and all remaining issues concerning the Selling Debtors' right and authority to assume and assign the Acquired Contracts and the rights and obligations of C&S, Purchaser, or any Third Party Purchaser, as the case may be, with respect to such assignment and the existence of any default under any such Acquired Contract;

(f)    adjudicate all issues concerning (alleged) pre-closing Encumbrances or Interests and any other (alleged) interest(s) in and to the Acquired Assets, including the extent, validity, enforceability, priority and nature of all such (alleged) Encumbrances or Interests and any other (alleged) interest(s);

26

(g)    hear and resolve any application (or disputes or issues relating thereto) to assign or transfer Acquired Assets to a Third Party Purchaser;

(h)    adjudicate any and all issues and/or disputes relating to the Selling Debtors' right, title or interest in the Acquired Assets and the proceeds thereof, the Sale Motion and/or the APA;

(i)    re-open the Debtors' chapter 11 cases to enforce the provisions of this Order; and

(j)    determine the extent and priority of interests or Offset Rights in the Fixed Price Component of Purchase Price.

34.    No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale.

35.    Each of C&S, Purchaser, or any Third Party Purchaser, as the case may be, shall not be deemed or found to be a joint employer, single-employer, co-employer, or successor employer with any of the Selling Debtors by virtue of the APA, the consummation of the Sale, the Transition Services Agreement, or the entry of this Order. The assumption and assignment of any Acquired Contract shall not constitute an assumption, either expressed or implied, of any employment or collective bargaining obligations of any of the Selling Debtors under contract or under any statute or common law. Except to the extent expressly provided in the Transition Services Agreement (or the APA), each of C&S, Purchaser, or any Third Party Purchaser, as the case may be, shall have no obligation to pay wages, severance pay, or any other employee benefits with respect to employees of the Selling Debtors (including, without limitation, contributions or payments on account of any under-funding or withdrawal liability with respect to any and all of the Debtors' pension plans). Any and all notices, if any, required to be given to

the Selling Debtors' employees pursuant to the Workers Adjustment and Relocation Notification Act, or any similar federal or state law, shall be the sole responsibility and obligation of the Selling Debtors, and each of C&S, Purchaser, or any Third Party Purchaser, as the case may be, shall have no responsibility therefor.

36.     Except as expressly set forth in the APA with respect to Permitted Encumbrances and Assumed Liabilities (including obligations under any Acquired Contract that is assumed and assigned to Purchaser or any Third Party Purchaser, as the case may be), the (i) transfer of the Acquired Assets to Purchaser or any Third Party Purchaser, as the case may be, and (ii) assumption and assignment to Purchaser, or any Third Party Purchaser, as the case may be, of the Acquired Contracts, does not and will not subject any of C&S, Purchaser, or any Third Party Purchaser to any liability by reason of such transfer or assumption and assignment under (x) the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, including, without limitation, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger, or substantial continuity or (y) any employment contract, understanding or agreement, including without limitation collective bargaining agreements, employee pension plans, or employee welfare or benefit plans.

37.     The failure specifically to include any particular provision of the APA or the Transition Services Agreement and other agreements executed in connection therewith in this Order shall not diminish or impair the efficacy of such provision, it being the intent of this Court that the APA and the Transition Services Agreement and other agreements executed in connection therewith and each and every provision, term, and condition thereof be authorized and approved in its entirety.

38.    C&S and Purchaser may consummate the Sale at any time after entry of the Order (including immediately thereafter) by waiving any and all closing conditions set forth in the APA that have not been satisfied and by proceeding to close the Sale without any notice to the Court, any pre-petition or post-petition creditor of the Debtors and/or any other party in interest.

39.    This Order shall be effective immediately upon entry and Bankruptcy Rules 6004(g) and 6006(d) shall not apply.

40.    The Sale is undertaken by C&S, Purchaser, and any Third Party Purchaser, as the case may be, in good faith (as that term is used in section 363(m) of the Bankruptcy Code), and C&S, Purchaser, and any Third Party Purchaser, as the case may be, shall continue to be in good faith (as that term is used in section 363(m) of the Bankruptcy Code) by proceeding to close the Sale, even if such closing occurs immediately upon entry of this Order. Accordingly, the reversal or modification on appeal of the authorization to consummate the Sale provided herein shall not affect the validity of the Sale to C&S, Purchaser, or any Third Party Purchaser, as the case may be, unless such authorization is duly stayed prior to closing of the Sale pending such appeal. Each of C&S, Purchaser, and any Third Party Purchaser, as the case may be, is a purchaser in good faith of the Acquired Assets and the Acquired Contracts, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

41.    The APA, the Transition Services Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by such parties in accordance with the terms thereof, without further order of the Court, provided that (a) any such modification, amendment, or supplement is not material and (b) to the extent practicable, notice of any modification, amendment, or supplement should be delivered to counsel for the Committee and counsel for the DIP Lenders at least five

(5) days prior to the effective date of any such modification, amendment, or supplement.

42.    The provisions of this Order are non-severable and mutually dependent.

43.    Notwithstanding anything to the contrary contained in this Order, this Order shall be without prejudice to any non-Debtor party to assert rights under section 362, 365(d)(2) or any other applicable provision of the Bankruptcy Code.

44.    For purposes of this Order, Permitted Encumbrances shall include liens for taxes not yet due and payable.

45.    Notwithstanding paragraph 6 of this Order, all rights of non-Debtor contract parties under section 365(h) of the Bankruptcy Code, if any, shall be preserved, and the preservation of such rights shall constitute the sole and exclusive adequate protection required of any such contract parties' interests addressed by section 365(h).

46.    Notwithstanding paragraph 6 of this Order, the transfer of any Forgiveness Note to Purchaser or any Third Party Purchaser shall be subject to the assertion of all defenses (but not Offset Rights) including (i) rights to recoupment or (ii) claims that any such note was not actually transferred to Purchaser or any Third Party Purchaser because such Forgiveness Note is (a) an executory contract or (b) is an integrated part of an executory contract (collectively, (a) and (b) are the "Integration Defenses"). No Purchaser or Third Party Purchaser shall pursue formal collection of any Forgiveness Note until the entry of an order providing for the assumption or rejection of the allegedly related facility standby agreement (the "FSA") or any other allegedly related executory contract, provided that the holder of any such Forgiveness Note may negotiate and effect the settlement thereof with the applicable obligor. To the extent this Court determines by Order that any particular Forgiveness Note is an executory contract or is an integrated part of an executory contract, which may be determined in connection with any

objection to a motion to assume or reject such executory contract or motion to compel assumption or rejection of such executory contract, any purported transfer of such Forgiveness Note shall be null and void, and the assumption, assignment or rejection of such executory contract shall be subject to separate Order of the Court.

47.    Notwithstanding paragraph 6 of this Order, the transfer of any Promissory Note to Purchaser or any Third Party Purchaser shall be subject to the assertion of (i) defenses under applicable state law (but not Offset Rights) including rights to recoupment and (ii) Integration Defenses by Promissory Note obligors that have asserted such Integration Defenses in a timely filed objection prior to August 11, 2003.  Nothing herein shall preclude Purchaser or any Third Party Purchaser from demanding payment or otherwise enforcing its rights and remedies under or in respect of any Promissory Note.  Purchaser or any Third Party Purchaser shall be entitled to adjudicate assertions of Integration Defenses regarding Promissory Notes before this Court and this Court shall retain jurisdiction to hear and adjudicate all matters with respect thereto.  To the extent this Court determines by Order that any such Promisssory Note is an executory contract or an integrated part of an executory contract, which may be determined in connection with any objection to a motion to assume or reject such executory contract or motion to compel assumption or rejection of such executory contract, any purported transfer of such Promissory Note shall be null and void, and the assumption, assignment or rejection of such executory contract shall be subject to separate Order of the Court.

48.    For purposes of this Order a "Promissory Note" shall mean a note, demand or other instrument where the principal amount is not reduced in connection with purchases made by the obligor thereof, and a "Forgiveness Note" shall mean a note, demand or other instrument where the principal amount is reduced in connection with purchases made by the obligor thereof

or as otherwise agreed to by the parties pursuant to valid, legally binding and enforceable agreements under applicable state law.

49.    Notwithstanding any provisions in this Order to the contrary, the sale of assets to Purchaser or Initial Third Party Purchasers does not impair any of CHEP USA's ownership rights to any of CHEP USA's pallets and containers (collectively the "CHEP Equipment") or any of CHEP USA's rights under the agreements with the Selling Debtors. The Debtors shall account for all of the CHEP Equipment, and no ownership interest in the CHEP Equipment shall be transferred to any party pursuant to the Order. On or before the closing date, the Selling Debtors shall cooperate with CHEP USA to conduct an audit of the CHEP Equipment.

50.    Prior to paying any amounts owed by the Debtors to the lenders under the Pre-Petition Credit Agreement, the Debtors shall file a motion for authority to make such payment, which motion shall be served on Michael Reed, McCreary, Veselka, Bragg & Allen, P.C., P.O. Box 26990, Austin, TX 78755 and Elizabeth Weller, Linebarger Goggan Blair & Sampson, LLP, 2323 Bryan Street, Suite 1600, Dallas, TX 75201 via overnight mail and all other required parties via first class mail, postage prepaid, no later than 18 days before the hearing on such motion. In connection with the hearing on this motion, the Court shall determine the validity, priority and extent of the liens asserted by Dallas County, City of El Paso, Grayson County, Gregg County, Harris County, City of Houston, Houston ISD, Hidalgo County, City of McAllen, McLennan County, Rockwall CAD, Rockwall County, Tarrant County, Tax Appraisal District of Bell County, County of Brazos, County of Denton, Longview Independent School District, County of Henderson, City of Waco and Waco Independent School District (collectively, the "Texas Taxing Authorities") in and to the proceeds of the Sale, unless otherwise agreed in writing by counsel to the Texas Taxing Authorities.

51.    Notwithstanding anything contained in this Order to the contrary, Brigantine Supermarkets, Inc. reserves its rights to argue it may recoup the deposit referred to in its objection to the Sale Motion [Docket No. 2141].

52.    Notwithstanding anything in this Order to the contrary, nothing herein shall effect the transfer, assumption or assignment of any contracts or agreements of Stop-N-Go of Madison, Inc., or affect the interpretation of any such contracts or agreements or their treatment under any section of the United States Bankruptcy Code (including, but not limited to, the determination or allowance of any cure amounts or damages thereunder).

53.    Subject to a later determination by this Court as to the validity, priority, enforceability and amount of the reclamation claims and/or reclamation liens, nothing contained herein shall either: (a) be construed to extinguish any rights or interests of the holders of valid reclamation claims; (b) preclude any reclamation lien, whether now in existence (if any) or subsequently granted by this Court pursuant to the order establishing the reclamation procedures and/or section 546(c) of the Bankruptcy Code from attaching to the sale proceeds; (c) limit any of the Debtors' defenses or arguments regarding the validity, priority or enforceability of any reclamation claim, including, but not limited to, the argument that all or part of the right of reclamation may be valueless in light of the Lenders' floating liens.

54.    No accounts receivable are being sold pursuant to the authority of this Order and no Offset Right against accounts receivable are intended to be affected hereby.

Dated:  Wilmington, Delaware
        Aug  15, 2003

_____
UNITED STATES BANKRUPTCY JUDGE

33