# EXHIBIT T

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

IN RE:                           .   Case No.: 03-10945 (MFW)
                                 .
                                 .   821 North Market Street
FLEMING COMPANIES, INC. et al.   Wilmington, Delaware 19801
                                 .
                  Debtor,        .
                                 .   Date:  July 26, 2004
. . . . . . . . . . . . . . . .  Time:  9:46 a.m.

TRANSCRIPT OF OMNIBUS HEARING
BEFORE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:          Pachulski, Stang, Ziehl, Young,
                          Jones & Weintraub, P.C.
                         By: LAURA DAVIS JONES, ESQ.
                             CHRIS J. LHULIER, ESQ.
                         919 North Market Street
                         Wilmington, DE 19899-8705

For the Debtor:          Kirkland & Ellis, LLP
                         By: RICHARD L. WYNNE, ESQ.
                             ERIC LIEBELER, ESQ.
                         200 East Randolph Drive
                         Chicago, IL 60601




Audio Operator:             Danielle R. Cherry


Proceedings recorded by electronic sound recording, transcript
Produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-Mail:  jjcourt@optonline.net

(609)586-2311      Fax No. (609) 587-3599

2

APPEARANCES: (cont'd)

For AWG
Buchanan Ingersoll, P.C.
By: SELINDA A. MELNIK, ESQ.
Chase Manhattan Centre
1201 N. Market Street
Wilmington. DE 19801

For Farris Class Action
  Plaintiffs
Werb & Sullivan
By: DUANE D. WERB, ESQ.
300 Delaware Avenue
Wilmington, DE 19899

For Kemps, LLC, et al.
Morris James Hitchens & Williams
By: STEPHEN MILLER, ESQ.
222 Delaware Avenue
Wilmington, DE 19899

For Raymond Choy
Potter, Anderson & Corroon
By: MADISON L. CASHMAN, ESQ.
1313 N. Market Street
Wilmington, DE 19899

For SuperValu
Sidley Austin Brown & Wood
By: WILLIAM EVANOFF, ESQ.

For Office of U.S. Trustee
United States Dept. of Justice
By: JOSEPH McMAHON, ESQ.
J. Caleb Boggs Federal Bldg.
844 N. King Street
Wilmington, DE 19801

For Russell Stover
Connolly, Bove, Lodge & Hutz, LLP
By: JEFFREY WISLER, ESQ.
1220 Market Street
Wilmington, DE 19899

For Pre- & Post-Petition
  Agents
Greenberg Traurig, LLP
By: DENNIS A. MELORO, ESQ.
The Brandywine Bldg.
1000 West Street
Wilmington, DE 19801

For ACE
White & Williams, LLP
By: MARC S. CASARINO, ESQ.
    LEONARD GOLDBERGER, ESQ.
824 N. Market Street
Wilmington, DE 19899

J&J COURT TRANSCRIBERS, INC.

3

```
For OUCC                    Pepper Hamilton, LLP
                            By: WILLIAM COHEN, ESQ.
                            1201 Market Street
                            Wilmington, DE 19899

For C&S Acquisition         Landis Rath & Cobb
                            By: RICHARD S. COBB, ESQ.
                                MEGAN N. HARPER, ESQ.
                            919 Market Street
                            Wilmington, DE 19801

For Sonitrol Management     Reed Smith, LLP
                            By: KIMBERLY E. C. LAWSON, ESQ.
                            1201 Market Street
                            Wilmington, DE 19801

For Teamsters Union & UFCW  Previant, Goldberg Uelmen Gratz
                             Miller & Brueggeman
                            By: FREDERICK PERILLO, ESQ.
                            Milwaukee, Wisconsin

                            Heiman Gouge & Kaufman
                            By: SUSAN KAUFMAN, ESQ.
                            800 King Street
                            Wilmington, DE 19899

For Wayne Berry             William W. Erhart, PA
                            By: WILLIAM W. ERHART, ESQ.
                            800 King Street
                            Wilmington, DE 19899

For Buy For Less, Northstar Walsh, Monzack & Monaco, P.A.
                            By:  RACHEL B. MERSKY, ESQ.
                            1201 North Orange Street
                            Wilmington, DE 19899

For Big 8                   Campbell & Levine
                            By: MARK HURFORD, ESQ.
                            800 N. King Street
                            Wilmington, DE 19801

By Phone:

For Debtors                 Kirkland & Ellis
                            By: JAMIE SPRAYREGEN, ESQ.
                                SHIRLEY CHO, ESQ.
                            200 East Randolph Drive
                            Chicago, IL 60601
```

4

For Bradley Operating, LP        McGuire Woods, LLP
                                 By: MICHAEL SCHMAHL, ESQ.
                                 150 North Michigan Avenue
                                 Chicago, IL 60601

For Wayne Berry                  Lynch Ichida Thompson Kim &
                                     Hirota
                                 By: TIMOTHY HOGAN, ESQ.
                                 1132 Bishop Street
                                 Honolulu, HI 96813

For BP Products                  Kelley Drye & Warren, LLP
  North America                  By: DEBRA SUDOCK, ESQ.
                                 101 Park Avenue
                                 New York, NY 10178

For General Mills and            Frederickson & Byron
  Marigold                       By: FAY KNOWLES, ESQ.

For Application to retain        By: BOB REYNOLDS, ESQ.
  Bob Reynolds

For Lexington Insurance          Grotefeld & Denenberg
                                 By: LYNN WEAVER, ESQ.
                                 105 West Adams Street
                                 Chicago, IL 60603

5

# I N D E X

Court's ruling on estimation issue                          173

Court's ruling on confirmation of plan                      224

**WITNESSES:**                                              **PAGE**

EDWARD TED STENGER

    Direct Examination by Mr. Paris            47

    Cross-Examination by Mr. Hogan             61

    Redirect Examination by Mr. Paris          64

    Cross-Examination by Mr. Hertzberg         66

MICHAEL KENNETH SCOTT

    Direct Examination by Mr. Paris            67

    Cross-Examination by Mr. Hogan             70

    Redirect Examination by Mr. Paris          75

    Cross Examination by Mr. Hertzberg         76

    Recross Examination by Mr. Hogan           79

MARK DILLON

    Direct Examination by Mr. Liebeler         82

    Cross-Examination by Mr. Hogan             97

    Redirect Examination by Mr. Liebeler       114

    Recross Examination by Mr. Hogan           117

MR. ANDERSON'S VIDEOTAPED DEPOSITION                        121

WAYNE BERRY'S DEPOSITION READ                               123

PAUL HUFFARD

    Direct Examination by Mr. Bledsoe          196

6

1  BARRY J. FOLSE

2      Direct Examination by Ms. Huber                        203

3      Cross-Examination by Mr. Hertzberg                     215

4      Cross-Examination by Mr. Hogan                         216

5  **EXHIBITS**                                              **EVID.**

6  1-9      Affidavits and exhibits of Mr. Stenger,

7           Mr. Scott and Mr. Folse.                          26

8  10       Documents relating to substantive

9           consolidation                                     26

10 11-23    Incorporate documents                             26

11 24-176   Documents relating to substantive

12          consolidation                                     26

13 177-179  Unidentified documents                            26

14 189-192  Demonstrative exhibits                            26

15 180-188  Various documents relating to solicitations

16          procedures, affidavits of publication,

17          compliance with all of the various notice

18          provisions of the Code and the solicitation

19          procedures order                                  26

20 193-204  Corporate documents or bankruptcy

21          procedure documents                               27

22 310      Paragraphs 17-25 of Mr. Berry's declaration      141

23 317      Second amended complaint of prior litigation     138

**J&J COURT TRANSCRIBERS, INC.**

7

1    (Call to order of the Court)

2    THE COURT:  Good morning.

3    MS. JONES:  Good morning, Your Honor.  Laura Davis

4    Jones, Pachulski, Stang, Ziehl, Young, Jones & Weintraub.  Your

5    Honor, four Fleming companies and the related debtors.  If I may

6    refer the Court to the amended notice of agenda for matters

7    scheduled for hearing this morning.  Your Honor, on that agenda,

8    matters 1-6 are continued.

9    Matters 7 and 10, Your Honor, are related, one being

10   the motion, one being the motion to file the settlement under

11   seal.  Your Honor, I'm going to need to pass on those until later

12   in the hearing as there have been some changes that have been

13   requested and the final documents are not here yet.

14   Your Honor has already signed orders with respect to

15   matters 8, 9 and 11.

16   Your Honor, then looking at matters 12, which is the

17   second omnibus section to claims.  Your Honor, we filed one

18   proposed order on the certificate of counsel with respect to this

19   one.  It resolves two more objections and continues the balance

20   of those that are outstanding until August 17.  Your Honor, that

21   certificate of counsel was filed Friday afternoon and it's docket

22   9024.

23   Your Honor, matter 13, the sixth omnibus objection to

24   claim.  On that one, Your Honor, we filed two orders under two

25   certificates of counsel.  One order, Your Honor, resolved the

8

 1  Northcutt and Ryder claim which we thought in our agenda said we
 2  would need to continue. But luckily, Your Honor, we were able to
 3  resolve that as well. And so we have submitted that, an order
 4  that does reflect that resolution under certificate of counsel.
 5  And then we also submitted one other order that continues the
 6  balance of the objections that are still open. And those are
 7  docket numbers 9021 and 9022 with respect to those certificates
 8  of counsel.

 9          Matter 14, Your Honor, we'll pass over that. That's
10  with respect to the Put agreement. Mr. Sprayregen will have a
11  lot to say about that later in the hearing.

12          Matter 15, Your Honor, the sixteenth omnibus objection,
13  again on this one, we've filed two orders under two certificates
14  of counsel. One order, Your Honor, resolved the Bradley Limited
15  Partnership claim, Your Honor, which was the subject of the
16  sixteenth omnibus and the eighteenth omnibus objection. So under
17  certificate of counsel, No. 9026, we show the resolution of that
18  with respect to both, the sixteenth and eighteenth omnibus
19  objection to claims. Our other certificate of counsel, Your
20  Honor, continued the balance again of those objections and that
21  is certificate of counsel, Docket No. 9020.

22          Your Honor, moving on to matter 16. This is the
23  eighteenth omnibus objection that I just referenced and the
24  certificate of counsel, Docket 9026, will take care of this one
25  as well. And I'm pleased to tell Your Honor, that will be the

9

1 end of the eighteenth omnibus objections to claims. They have

2 otherwise been all taken care of now.

3        THE COURT: Could counsel on the telephone please mute

4 their phones? Thank you.

5        MS. JONES: Your Honor, so that brings us to all the

6 omnibus objections to claims. Your Honor signed the order with

7 respect to No. 17 on the objection -- I'm sorry, on the agenda.

8 Thank you for that.

9        Matter 18, Your Honor, the parties have agreed to

10 continue to the August 17th hearing.

11        Your Honor, that brings us to the most important matter

12 on the agenda today, which is confirmation. I'm going to yield

13 to Mr. Sprayregen for No. 19 on the agenda.

14        MR. SPRAYREGEN: Good morning, Judge Walrath. Jamie

15 Sprayregen from Kirkland & Ellis on behalf of the debtors. Your

16 Honor, we here on the confirmation hearing on the joint plan of

17 the debtors and Officer Committee of Unsecured Creditors. I

18 have, obviously, a lot of detail to go through. Just -- the

19 headline is we have only one objection to the plan confirmation.

20 That objection is by Mr. Berry. That objection goes to

21 feasibility and good faith.

22        So what I would suggest is we actually go through

23 everything else which I don't think will take long. Then we move

24 on to address that objection specifically.

25        THE COURT: All right.

**J&J COURT TRANSCRIBERS, INC.**

10

1        MR. SPRAYREGEN:  Your Honor, as I noted, we are down to

2    one objection with respect to the plan.  This is the plan

3    pursuant to the approved disclosure statement of May 25.  We had

4    approximately 43 objections filed to the plan.  I say

5    approximately because there's 37 formal, some cured objections

6    and informal objections.  42 out of 43 are resolved.  I'm not

7    going to go through specific detail on those unless people ask,

8    but there are some of them I need to put settlements on the

9    records and others are settled in groups.

10        THE COURT:  All right.

11        MR. SPRAYREGEN:  Initially, though, I would note that

12    all classes have overwhelmingly accepted the plan.  That is,

13    there were votes in 1B, 3B, 3C, classified 6A, 6B and 7.  The

14    average acceptance was approximately 94 and change percent with

15    some other a little higher and a little lower depending on going

16    through them.  There's no dispute as to anything to do with

17    voting.  So I won't go through that in detail.

18        We did file an amended ballot report, Your Honor, on

19    July 23 simply to reflect a stipulation that we're asking to be

20    approved today with Excel, which assuming it is approved, will

21    actually increase the 6A, Class 6A approval dollar amount from

22    the 90 percent to 95 percent.  And -- actually, I'm sorry, the

23    Court has already entered an order approving that.  So that has

24    now gone up to 95 percent.  We did have --

25        THE COURT:  Well, to the extent that you're going to

11

1 make anything that's been filed a matter of record, you should

2 refer to it.

3          MR. SPRAYREGEN:  Your Honor, what I had planned to do,

4 I was going go on for a few minutes, but I have a exhibit list

5 for all of the trial exhibits for the confirmation hearing.  And

6 I was going to ask that the ones that don't relate to the Berry

7 objection, unless someone else has an issue, that those be

8 admitted and then we go to Berry.  So I'll get to that in a

9 moment.

10          THE COURT:  All right.

11          MR. SPRAYREGEN:  Your Honor, we did file, for the

12 Court's information, on July 16, after the July 2 voting and

13 objection date, a number of additional documents were filed, I

14 believe, in support of confirmation.  We filed a proposed

15 confirmation order and we filed the required plan supplement

16 which had the Exit (phonetic) facility loan documents with GECC

17 and the terms new loan facility with Sanctity (phonetic), had the

18 management incentive plan, the RCT and PCT agreements and the

19 required disclosures concerning identity of E's and O's and

20 compensation with respect to the three entities that will exist

21 on Exit.

22          I would note, Your Honor, Ms. Jones referenced the

23 Sanctity Put Agreement.  The Court, if you recall several

24 hearings ago, had approved fees related to that and had continued

25 the confirmation equivalent to the Put Agreement itself.  There's

12

1 no objections to that and we're now asking for that to be

2 approved separate from the confirmation assuming a confirmation

3 order were entered it's imbedded in that.  If it's not, we

4 obviously don't need it to be approved.

5       All of the documents that I just referenced were served

6 on all objecting parties including the one extant objection, the

7 committees, the U.S. Trustee and counsel to the lenders on July

8 16th.

9       We also filed on July 20 the Core-Mark Newco Articles

10 of Incorporation.  And on Friday, to help the Court and the

11 parties, we did file a risk of resolved objections with backup

12 documentation attached to that showing the objections that were

13 existing as of Friday which there were four of them at that

14 point.  As I said, we're down to one.  But we listed the

15 resolution of the other objections and attached the evidence, the

16 written confirmation evidence from the opposing party of that

17 resolution.

18       THE COURT:  Do you have a copy of that?

19       MR. SPRAYREGEN:  Yes, I do, Your Honor.  If I may

20 approach.

21       THE COURT:  You may.

22             (Pause)

23       MR. SPRAYREGEN:  Okay.  Your Honor, unless the Court

24 desires, I wasn't planning on going through the mechanics and

25 workings of the plan.  I think those have all be said of record.

13

1  And I'm happy to discuss exactly how the plan works, separate and

2  apart from how it affects the Berry objection which we will

3  obviously get into at that point.  But none of those seem to be

4  an issue at this point.

5        So let me turn to the resolved objections and the

6  document I just handed you I think will be helpful to that.  As I

7  noted, there were 37 formal plan objections, 4 cured objections.

8  The U.S. Trustee did to file an objection, but we continue to

9  extend their time to object as we worked out their issues and

10 ultimately did work out their issues.  There was one reservation

11 of right filed by Deloite and Touche.  That doesn't complete fit

12 with the amended agenda because of the way people file their

13 objections, but if you find it on the agenda, it says there were

14 27 formal objections filed including one reservation of rights,

15 that's because there were 12 formal withdrawals, so they don't

16 show up on that.  And the four cured objections are listed

17 separately.

18        The objections fall into a couple categories, so I can

19 get through them actually fairly quickly.  Out of the 43, there

20 were 13 taxing authority objections which, in essence, went to

21 interest rate on the priority tax claims.  And we did agree to

22 provide a 5 percent interest rate with payment over three years

23 for Class 1B.  And 5 percent over six years for unclassified

24 priority tax claimants which is actually better than the

25 treatment solicited.  And that resulted in the resolution of

14

1  those 13 taxing authority objections.  Those are -- if you need

2  it, agenda items 19 A, B, D, H, W and Z.  And there were seven

3  formal notices of withdrawal associated with that.  On the

4  objection chart, Your Honor, those are 1-13.

5      There were another 10 objections filed relating to a

6  clarification sought with respect to a setoff or recoupment of

7  defenses being preserved.  And we have confirmed that there were

8  being preserved by adding some clarifying language in the

9  proposed plan to be confirmed, which as I said, amendment and it

10 addressed those objections and in particular, Atlantic Coast

11 Warehouse asked for that additional comfort in the confirmation

12 order also, so we helped -- in the proposed order, we put it in

13 there.  Those were agenda items 19F, J, N, O, P, S, U, V and X.

14 And those also were on the notice of withdrawal.  And on the

15 objection chart it's 14 to 23.

16     Then we had a number of miscellaneous objections

17 resolved.  There were two PACA (phonetic) objections which were

18 resolved by making it clear that the PACA trust would cover any

19 allowed PACA claims as opposed to just principle amount of PACA

20 claims.  So whatever the amount ultimately is, if it's more than

21 principle that is covered.  That's agenda items 19I and R.  And

22 on the objection chart 27 and 28.

23     Next objection was of some retailers concerning one of

24 the FSA reserve claimants.  And they wanted, in essence, to

25 clarify that we were invading the FSA reserve which we confirmed.

**J&J COURT TRANSCRIBERS, INC.**

15

1  And that's objection chart 33, agenda item 19L.  So that resolved

2  that objection.

3         The U.S. Trustee requested several changes to the

4  proposed plan or confirmation order.  There were some extensions

5  of the proposed dates for a final professional obligations, some

6  issues concerning confirming quarterly fees would continued to be

7  paid.  And that was standard substantive consolidation and

8  timeliness to claims objections and clarifications concerning

9  estimation, procedures for claims and payment of indentured

10 trustee's fees.  All of those were issues raised by the U.S.

11 Trustee and were resolved in places in the plan and proposed

12 confirmation order.  At the right time, Your Honor, we have a

13 blacklined proposed confirmation order and proposed plan that

14 show that changes and a few others necessitated by the various

15 settlements with people.

16        Your Honor, CHEP USA, the -- there was a stipulation

17 filed Friday resolving that claim.  Your Honor had previously

18 denied a preliminary injunction based on our cash levels and, in

19 essence, we resolved concern that that might be effective post-

20 effective date by providing that if the case on hand dips below

21 the amounts asserted in CHEP's claim, they'll be able to trace

22 that amount against the PCT from that point forward.  That was

23 objection chart 29 and Item 19C.

24        THE COURT:  If the cash in the PCT Folse below?

25        MR. SPRAYREGEN:  No.  If -- yes.  They were concerned

16

1 about how --

2         THE COURT:  And they can trace what?

3         MR. SPRAYREGEN:  Your Honor, the PCT has many assets

4 other than straight cash.  So they're concerned that the ins and

5 outs and if at some point the rules of tracing would be

6 interrupted which is, sort of the reason that the Court denied the

7 preliminary injunction in the first place because we weren't

8 getting there.  We were just essence preserving the status quo.

9 I can --

10         THE COURT:  I'll look at the language.

11         MR. SPRAYREGEN:  Okay.  Thank you.  Your Honor, there

12 was an objection by the United States on behalf of the U.S. DA,

13 the IRS and the DCA.  We provided some clarifying language with

14 respect to some issues they had with respect to interest and the

15 application of the proposed releases only applying to people who

16 voted in favor of the plan or -- in favor of the plan or entities

17 that had voted in favor of the plan.  The item only applies to

18 agencies as opposed to the entire United States government.

19         Now, Your Honor, Domino Foods had a reclamation

20 objection and we resolved their administrative claim in an agreed

21 amount of $65,000 and change, and preserved those post-petition

22 deliveries made in the ordinary course of business and other

23 rights were preserved.  That's agenda item 19G and objection

24 chart 36.

25         Your Honor, Jackson Capital objected as a lead

17

1  plaintiff for the class action, securities claimants are pending

2  litigation elsewhere.  That objection has been resolved through a

3  proposed stipulation which again provides confirmation that the

4  proposed releases with respect to the D's and O's only applies to

5  those who voted in favor of the plan.  And the lead claimants on

6  -- lead plaintiffs on behalf of the class also agree under

7  certain circumstances that it would apply.  And it's also subject

8  to any necessary approval by the class action court also.  And I

9  have a proposed stipulation we can show you on that at the right

10  time.

11       The counsel to one of the insurance companies wanted me

12  to confirm that the language in the proposed stipulation that was

13  requested by the class claimants that goes to the issue of that

14  nothing we're doing in the plan it purports to impair insurance

15  coverage.  It goes both ways.  That is it doesn't diminish or

16  increase whatever rights there are to insurance and does not

17  effect whatever rights they may have, if any, to pursue recision

18  actions with respect to the D and O insurance.  It doesn't go to

19  that issue.

20       THE COURT:  Okay.

21       MR. SPRAYREGEN:  Your Honor, there was an objection by

22  ACE which is really a casualty insurance company.  And that has

23  been resolved and I've been asked to read a portion of the

24  settlement, it's a couple paragraphs, into the record to confirm

25  that objection.  We briefly amended the -- I'm sorry, recently

18

1  amended the plan on Friday to provide that certain provisions

2  with respect to ACE are deleted.  In essence, there was a dispute

3  as to whether something can be assumed or rejected, and indeed,

4  whether it's even executory.

5          Due to the dispute, we provided that it would be

6  rejected and that is not objected to at this point subject to,

7  basically, reservation of rights language where ACE has reserved

8  all of its rights to seek treatment as a Class 3A secured claim

9  and maintain that notwithstanding any purported rejection of any

10 of its policies, programs, agreements and any related agreements,

11 which we're defining as the ACE agreements, all terms,

12 provisions, conditions, limitations and/or exclusions contained

13 in the ACE agreements remain unmodified and continue in full

14 force and effect.  And that ACE's rights, claims and/or defenses

15 under the agreements, including without limitation, it's right

16 and sole discretion to pay public claims shall not be impaired by

17 the confirmation order or any injunction contained in the plan.

18         And that confirmation is without prejudice to any of

19 ACE's rights and/or defenses in subsequent litigation or

20 arbitration regarding the nature and/or extent of insurance

21 coverage under these agreements and their rights to access their

22 collateral and/or proceeds including without limitation the

23 various reservations of rights set forth in the ACE objections to

24 confirmation.

25         We're also confirming that we didn't create any

19

1 insurance coverage that does not exist under the plan.  That

2 would be difficult to do, but we're confirming we didn't.  And

3 that nothing in the confirmation order, if it were to be entered,

4 should be construed as acknowledgment that the ACE agreements

5 cover or otherwise apply to any claims, or that any claims are

6 eligible for payment under any of the ACE agreements.

7        And we also agree that we'll conduct a further review

8 of the assumption schedule which is the assumed contracts under

9 the plan to insure that all of ACE's worker compensation

10 policies, binders, program agreements and other related

11 agreements are specifically included, to be clear, those ones are

12 being casualty as being excluded and that the assumption schedule

13 may be amended by mutual agreement from time to time to actually

14 reflect this intent of the parties.  Those had been inadvertently

15 omitted previously.  So with that, that would resolve the ACE

16 objection.

17        THE COURT:  ACE has a comment?

18        MR. GOLDBERG:  Good morning, Your Honor.  Leonard P.

19 Goldberg for ACE.  I agree with what Mr. Sprayregen has

20 represented to the Court and based on that we can withdraw our

21 objection.  I also want to clarify one thing which I have

22 indicated by notes back and forth with Ms. Bear (phonetic).  ACE

23 filed proofs of claims against each of the debtor subsidiaries

24 and affiliates because they may be covered -- entities with

25 coverage under our policies.

20

1          It's our position that those claims against the
2  multiple debtors are not identical or duplicative and we would
3  like to have those claims considered as separate claims to the
4  extent that any particular debtor claims rights to insurance
5  coverage under the plan.
6          I understand that because -- the debtor's is that
7  because the estate is being substantively consolidated, there is
8  no longer any need to allow all of the claims and that of the
9  sole remaining claim which has not been either allowed or
10 disallowed yet can suffice.  And that the debtor's position is
11 that any disputes that would arise in connection with coverage
12 that was formally provided to any of the now consolidated debtor
13 affiliates and subsidiaries would be subsumed in that remaining
14 proof of claim and that -- yeah, that those rights are reserved.
15         MR. SPRAYREGEN:  Your Honor, there's obviously a number
16 of things going on behind me.  This is a new one.  There actually
17 is a notice that all duplicative claims would be as soon as the
18 confirmation is ordered and substantive consolidation is ordered,
19 there was specific claim objections to all the duplicative claims
20 providing that to the extent confirmation is ordered and in
21 compliance with Rule 3007 of the Bankruptcy Rules are that they
22 would all be disallowed so there's only one estate, so there's
23 only one claim left.
24         I believe, I'm going to have to check, that ACE's
25 claims are on there, they had notice, they had the opportunity to

21

1  object, they did not object on this rule.  I think what we ought

2  to do is pass this and we'll get to this at the end if there's a

3  remaining objection.  I don't know -- I can't tell from what Mr.

4  Goldberger said whether we have an issue or not.

5        MR. GOLDBERG:  I don't think we do and I'm not trying

6  to create one.  I just wanted to understand -- clarify what I

7  thought, I got a note from the debtor, what the debtor's position

8  that any of the claims that related to those now consolidated

9  subsidiaries and affiliates to the extent that they are different

10 because coverage and claims arise different are now subsumed in

11 that remaining claim.

12        MR. SPRAYREGEN:  Again, Your Honor, I don't know from

13 standing here, we had a specific list of claims that were

14 disallowed that people were supposed to object to.  I can't tell

15 from what Mr. Goldberger is saying whether he's trying to undue

16 what was --

17        THE COURT:  I guess what he's trying to say is although

18 he has one consolidated claim, it does not impair his right to

19 say that his policy doesn't cover one subsidiary.

20        MR. SPRAYREGEN:  If that's all he's saying, I'm fine

21 with that.

22        MR. GOLDBERG:  Yeah.  I just -- yes.

23        THE COURT:  If it wasn't signed by --

24        MR. SPRAYREGEN:  Okay.  We can stop there.

25        THE COURT:  Thank you.

22

1        MR. SPRAYREGEN:  Thank you, Your Honor.  Your Honor,

2   the other resolution of an individual objection, and I'm just

3   about done here, on the resolutions was by Mr. Bertram Block

4   (phonetic) who was a retired Godfrey executive who participates

5   in a retiree medical plan.

6        We have been informed that we're authorized to state

7   that their plan objection is withdrawn on the basis that the

8   debtor has agreed to continue the life-time benefits of Mr. Block

9   to be paid by the PCT which is exactly our view as what was

10  reflected in the plan in any event.

11       So that we don't think there's any change, we're just

12  confirming that, but we are still negotiating over what the

13  annual cap of that amount should be.  And just to get an order of

14  magnitude, it's somewhere between $35-45,000.  That's the spread

15  between the bid and the asset, so I assume somehow we're going to

16  resolve that consensually.  And we've also talked about some

17  potential buyout of Mr. Block from this.  Again, that would be a

18  PCT activity.

19       With that, and to the extent there's any disputes, we

20  would obviously come back to the Court with respect to those

21  issues or whatever court this Court directed us to.  I'm sorry?

22       MR. HOUSTON:  Good morning, Your Honor.  Joseph Houston

23  on behalf of Bertram Block.  And please forgive me for being

24  late.  I was a fairly popular guy this morning for some unknown

25  reason.

23

1          We are very close, but we do not yet have a final

2   agreement on this.  We do not wish to impede confirmation because

3   I'm hopeful that we will get to a result.  I just want to be sure

4   that we right this second do not have a final agreement.  I'm

5   hopeful that in a very short time we will.  I suspect if we spend

6   a little bit of time discussing the fine points of this in the

7   next little bit that we will get to where we need to be.

8          THE COURT:  Well, I'm certain that you'll have time

9   today to resolve that before the confirmation hearing concludes.

10         MR. HOUSTON:  Thank you, Your Honor.

11         MR. SPRAYREGEN:  Your Honor, as I noted, there were

12  also four cured objections which were agenda items 19BB through

13  EE.  And those were all resolved in essence by agreeing as to

14  cure amount or cure process.

15         And finally, I would note that the -- you had already

16  approved agenda item No. 17, the Excel specialty 3018 motion

17  claim, a $34 million administrative claim.  Stipulation was filed

18  on July 22 allowing admin claim 35 percent of the administrative

19  liability on tax bonds and performance liability is capped at

20  $1.5 million.  And there's a certification of counsel filed on

21  that July 22.

22         Your Honor, what I would suggest is we have passed out

23  prior to the start of the hearing our confirmation trial exhibit

24  list.  And I think I can deal with all of our exhibits that

25  generally I just went through other than the ones that will be

24

1  relevant to the extant objection.  If I might hand up the exhibit

2  list.

3          THE COURT:  You may.

4                  (Pause)

5          MR. LASTOWSKI:  Good morning, Your Honor.  Michael

6  Lastoski here for Twin City, one of the D and O carriers.  If I

7  may be heard for just a moment.  Earlier, Mr. Sprayregen

8  addressed one of our concerns relative to the D and O insurance.

9          Just briefly, the plan has a very broad indemnification

10 provisions.  Officer and Directors are indemnified for any claims

11 related to the debtors.  And arguably that would include

12 liability for avoidance actions.

13         It's -- however, the plan limits the liability to the

14 amount of D and O insurance.  And what we would like to clarify,

15 which I think Mr. Sprayregen did clarify, is that this is a

16 limiting paragraph.  In other words, the liability is limited to

17 the amount of D and O coverage and that this language does not

18 seek to expand D and O coverage to cover claims which would not

19 ordinarily be covered.  And I think he's already done that.  We

20 also had some concerns about preserving our rights, if any, to

21 rescission.  Mr. Sprayregen addressed that as well.

22         The only further refinement I seek is this.  This came

23 up in the context of a stipulation with the plaintiff's class

24 action lawyers where they were concerned about the continued

25 existence of D and O insurance.  I just wanted a clarification

25

1  that the statements that were made about our preserving our

2  rights and our liability being limited to the terms of the policy

3  extends beyond the class action, but it extends to other claims

4  as well.  I wouldn't want someone at some other future date to

5  argue that they are being pursued for an avoidance action, for

6  example, and under the broad indemnity provisions, we have a duty

7  to indemnify.

8        THE COURT:  Okay.  All right.  That clarification is

9  acceptable to the debtors?

10       MR. SPRAYREGEN:  Yes.  I mean I --

11       THE COURT:  Okay.

12       MR. SPRAYREGEN:  Okay.  Your Honor, the exhibit list

13  that I handed up to you has a list of -- if I can get to the last

14  page -- 204 proposed confirmation trial exhibits just to make it

15  easy because there's been varying versions of these.  We list

16  that the confirmation trial exhibit number on the left, where

17  it's referenced in the agenda letter, if it is, and most of them

18  are, what the document is in the middle.  And there are a number

19  of affidavits filed on July 16 and they had some of their own

20  exhibits attached.  So we cross-referenced it.  So anybody

21  looking at it from the variety of perspectives ought to be able

22  to figure out what we're doing.

23       THE COURT:  Well, is it -- just a question.  Are all of

24  the exhibits to all of the affidavits being included?  Or not

25  all?

26

1        MR. SPRAYREGEN:  All are, yes.

2        THE COURT:  Okay.

3        MR. SPRAYREGEN:  So, the exhibits that we have

4  identified that implicate the remaining objection are exhibits 1-

5  9 which are affidavits and exhibits of Mr. Stenger, Mr. Scott and

6  Mr. Folse.  Because of the objection, what we're going to do is

7  put them on as live witnesses and we'll go through 1-9 live and

8  because those go to both feasibility and good faith.

9        Then Exhibits 177-179 also go directly to the Berry

10  dispute.  And Exhibits 189-192 are demonstrative exhibits which

11  are really hard copies of those posters you see over on the

12  right, also go to feasibility.  So those are the ones that we

13  would ask to be admitted into evidence right now.

14        So on the flip side, the ones we would ask to be

15  admitted into evidence and that don't relate to the Berry

16  objection would be Exhibit 10, which relates to substantive

17  consolidation; Exhibits 11-23 which are incorporate documents;

18  Exhibits 24-176 which all relate to substantive consolidation, if

19  there's no objection from anybody on; Exhibits 180-188 which are

20  all of the various documents relating to solicitation procedures,

21  affidavits of publication, compliance with all of the various

22  notice provisions of the Code and the solicitation procedures

23  order.

24        And then 193-204 are either corporate documents or

25  bankruptcy procedure documents that follow on from all of what I

27

1  just referenced. And I will just note that the very last exhibit
2  was just added because we noticed a slight error in the affidavit
3  of service concerning notice of the confirmation hearing, so we
4  corrected that and filed that this morning and it was handed
5  Docket No. 8898. I suspect by the time the hearing's are over
6  we'll crack 9000, but that was given 8898.

7       Now, I will note, Your Honor, that other than the last
8  one I just mentioned, 204, in the exhibits we're not asking to
9  put in evidence or be received in evidence right now, those were
10 all previously served on July 16 or before on all objectors and
11 the 2002 list as well as the committees. And so, I don't believe
12 there ought to be any objections to the admission of all those
13 exhibits, but I am happy to address them if there are any
14 objections.

15      THE COURT: Anybody wish to object to the admission of
16 the exhibits identified? All right. They will be admitted and
17 made part of the record.

18      MR. SPRAYREGEN: Thank you, Your Honor. Your Honor,
19 with that, I think we would be ready to move into the evidentiary
20 part of the confirmation hearing with a couple of preliminaries.

21      We -- the one objector did identify one exhibit in
22 connection with the confirmation hearing and that was Mr. Berry
23 himself. We understand that he is not here in Delaware today,
24 although we're not positive about that. And so, we don't believe
25 that there's any witnesses by Mr. Berry.

1    We have three witnesses that go directly to

2  confirmation issues.  And as I noted, that's Mr. Stinger, Mr.

3  Scott and Mr. Folse.  We think that direct testimony all in is

4  maybe an hour and a half of so.  And then we do have a pending

5  motion to estimate Mr. Berry's claim, which procedurally we'll

6  have to talk about how to handle that in the context of the

7  confirmation also, but it probably goes together.  And we would

8  have a maximum of four additional witnesses related to that.  And

9  we think the direct case with respect to those four is an hour or

10  so.  So we see two and a half to three hours of direct testimony

11  on our case.  And we're not aware of additional witnesses.

12    And Mr. Liebeler reminds me actually that two of those

13  are by deposition designations.  So that obviously would tend to

14  accelerate.

15    We obviously are quite hopeful of concluding favorably

16  actually the confirmation hearing today.  We think it's doable.

17    THE COURT:  All right.

18    MR. SPRAYREGEN:  Obviously it would depend on some of

19  the objections.

20    THE COURT:  Let me hear from the Berry side as to what

21  they intend to present.

22    MR. HOGAN:  Timothy Hogan, Your Honor, on behalf of Mr.

23  Berry.  Your Honor, we submitted documents and declarations, Your

24  Honor.  We'd ask that the Court at least allow those to be

25  considered in these hearings.  As to the --

29

1          THE COURT:  Which declarations are you asking me to
2   consider?

3          MR. HOGAN:  The declarations in support.  We've got --
4   essentially declarations have been submitted in support of our
5   opposition to the plan.  There have been declarations submitted
6   in support of our opposition to the non-substantive objection.
7   And to the estimation motion, Your Honor.

8          As to -- we believe there's an evidentiary foundation
9   with the materials that are in there.  They've been submitted --

10         THE COURT:  Well, let me hear if there's an objection
11  to those declarations.

12         MR. SPRAYREGEN:  There is, Your Honor.  This is a
13  confirmation hearing where witnesses were to be identified.
14  Those are out-of-court statements offered for the truth of the
15  matter asserted.  They're clearly hearsay.  And --

16         THE COURT:  Well, they've by Mr. Hogan, so do we want
17  to hear Mr. Hogan here?

18         MR. SPRAYREGEN:  Your Honor, there is a declaration by
19  Mr. Hogan, but also one by Mr. Berry.

20         THE COURT:  Regarding the review of the data.

21         MR. HOGAN:  Yes, Your Honor.  I guess, Your Honor, if I
22  may, Your Honor.  We had a -- something that was put over on the
23  9th hearing, Your Honor, that I think is at least germane to this
24  morning was the stay --

25         THE COURT:  Motion for relief, yes.


**J&J COURT TRANSCRIBERS, INC.**