# EXHIBIT W

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Fleming Companies, Inc., et al., | ) | Case No. 03-10945 (MFW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date: June 27, 2006 at 9:30 a.m. EDT** |
| | ) | |
| | ) | |

## SECOND STATUS REPORT OF THE PCT

**I.      Introduction**

The Post-Confirmation Trust of Fleming Companies, Inc. (the "PCT") is filing this Second Status Report to advise the Court of its progress and current financial situation, as well as to inform the Court regarding the tasks remaining to be completed by the PCT. To assist the Court in assessing the PCT's remaining assets, liabilities and other obligations, the PCT has attached as Exhibit A a Balance Sheet as of March 31, 2006 (the "Balance Sheet"). The Balance Sheet is also included as part of the PCT's Quarterly Summary Report filed with the office of the United States Trustee, which report is being filed simultaneously with this Second Status Report.

**II.     Summary**

**A.      Overview**

The Balance Sheet shows Net Equity of over $73 million as of March 31, 2006. The Balance Sheet is intended to be conservative; the specific assumptions used in the preparation of the Balance Sheet are outlined below. The PCT anticipates that cash ultimately distributed to unsecured creditors will meet, and likely exceed, the $73 million equity amount currently reflected on the Balance Sheet.

The PCT currently anticipates that the aggregate pool of the ultimately allowed General Unsecured Claims will be roughly $2.3 billion.

K&E 11183336.1

As with any projections, actual future results may vary substantially from the PCT's expectations.

**B.    PCT Equity**

The PCT's Balance Sheet shows $73 million of Net Equity; note that it does not include any reserve for ongoing operating expenses and professional fees. The PCT anticipates that, barring currently unforeseen circumstances, actual results will be better than indicated by the Balance Sheet, and that the cash generated in excess of the $73 million equity balance shown on the Balance Sheet will more than offset ongoing fees and expenses. As such, the net cash to be generated by the PCT and ultimately available for distribution to Class 6 unsecured creditors is expected to be no less than $73 million, and is likely to exceed that amount.

The Fleming Debtors' Third Amended and Revised Disclosure Statement dated May 25, 2004 (the "Disclosure Statement") had projected that approximately $33 million would be available for distribution to the Class 6 unsecured creditors upon completion of the PCT's activities. In its First Status Report, the PCT had previously advised the Court that it expected to distribute net cash in an amount that would meet or exceed the original $33 million projection. The PCT is understandably delighted to advise the Court that it now expects to ultimately distribute at least $73 million of net cash to the unsecured creditors.

**C.    Allowed General Unsecured Claims; Claims Pool Estimate Used for Stock Distribution Purposes**

Approximately $2.21 billion of General Unsecured Claims have been allowed to date.

The PCT currently anticipates that the aggregate pool of the ultimately allowed General Unsecured Claims will be roughly $2.3 billion. The PCT's current claims pool estimate is generally consistent with the PCT's prior indication to the Court projecting that the aggregate pool of the ultimately allowed General Unsecured Claims would be between $2.3 billion and

2

$2.4 billion. By way of context, the Disclosure Statement estimated that the face value of the ultimately allowed General Unsecured Claims would fall between $2.6 billion and $3.4 billion.

The PCT continues to make stock distributions based upon a $2.58 billion claims pool estimate, including reserves, as approved by the Court in September, 2005. As a result, holders of allowed unsecured claims should expect to receive additional shares of Core-Mark stock when the disputed claims are ultimately resolved.

### III.    Review of PCT Financial Position

#### A.    PCT Balance Sheet as of March 31, 2006—Conservative Case

The PCT Balance Sheet as of March 31, 2006 is summarized as follows:

|  | In Millions |
|---|---|
| Unrestricted Cash | $82.3 |
| Restricted Cash | 3.4 |
| Customer Accounts Receivable and Royalties | 6.5 |
| Vendor Accounts Receivable and Related Items | 5.1 |
| RCT Distribution | -0- |
| Other Litigation Assets | -0- |
| Total Assets | $97.3 |
| Administrative Claims | $6.0 |
| Priority Claims and Employee Related Liability | 4.0 |
| FSA / PACA | 3.4 |
| Other Liabilities | 10.4 |
| Contingency/Future Cost Reserve | -0- |
| Total Liabilities | $23.8 |
| Excess of Assets over Liability | $73.5 |

The PCT prepared the March 31, 2006 Balance Sheet utilizing the following methodology:[1]

---

[1]    Note that this Balance Sheet has not been prepared in accordance with Generally Accepted Accounting Principles ("GAAP"), bur rather has been prepared based upon the methodology described herein.

- Asset values reflect the valuations included in the Disclosure Statement and the PCT's opening balance sheet. Cash collections have been applied to reduce opening asset values on a dollar-for-dollar basis. The remaining assets are reported at the lower of i) estimated realizable value or ii) original valuation, net of cash collections. As such, the remaining assets have not been "written up" to reflect estimated realizable value. To the extent that assets have been identified that were not estimated on the opening balance sheet, such assets are not given any value in the Balance Sheet until they are converted to cash. The PCT has reviewed the estimated realizable value of each asset category to determine the appropriate value to reflect on the Balance Sheet; for each such asset category, the PCT has concluded that the estimated realizable value is equal to or greater than the original valuation, net of cash collections.

- The PCT recently performed a thorough review of the remaining unresolved administrative, priority and secured claims to determine which claims should be included in preparing the liabilities section of the Balance Sheet. Liabilities have been restated to reflect the full face amount of all remaining outstanding claims which are required to be paid in cash pursuant to the Plan, except that (with the exception of the Wayne Berry claims discussed below) no liability is reflected for those claims which the PCT has concluded are duplicative, already satisfied, are properly treated as unsecured claims under the Plan, or otherwise present a *de minimis* risk of any cash obligations becoming payable by the PCT. For Balance Sheet purposes, the administrative claims of Wayne Berry are estimated at the same $100,000 level that the Court established for purposes of determining the feasibility of the Plan. Except for the Wayne Berry claims, the liabilities have not been reduced for claims that are in dispute; as such, the liabilities reflected in the Balance Sheet are not "written down" to reflect estimated payments.

- The PCT generally reports on a cash basis, with the exception that unpaid professional fee liability of $9.5 million as of March 31, 2006 has been accrued on the balance sheet. The PCT does not accrue for the estimated costs and expenses to be incurred in the future to monetize its remaining assets or to otherwise fulfill its remaining duties under the Plan.

Note that utilizing the methodology described above, the PCT has not reflected on the March 31, 2006 Balance Sheet the following anticipated items:

- Value of Customer Accounts Receivable that may be recovered in excess of the original estimated values.

- Value of the Vendor Accounts Receivable and Related Items that may be recovered in excess of the original estimated values.

- Value of PCT's rights as beneficiary of the RCT, which the RCT has indicated is expected to fall between $5 – 7 million.

- Value of future recoveries that may be obtained from litigation against vendors and employees of vendors related to their role in participating with management of Fleming

4

in falsifying the financial statements.

- Gains that may be achieved by reducing existing liabilities to a level below what is currently on the Balance Sheet.

- Operating expenses and professional fees incurred to monetize assets, resolve claims and perform other duties of the trust.

As previously noted, the PCT anticipates that the excess asset recoveries and/or reduction in liabilities resulting from the items not yet reflected on the March 31, 2006 Balance Sheet will exceed the future costs and expenses to be incurred by the PCT in monetizing assets, resolving claims and performing its other duties. However, as with any projection, there are substantial risks and uncertainties associated with each of the items listed above as well as the items included on the Balance Sheet, and it is possible that the results will vary materially from the PCT's current expectations.

### B.    Overview

The PCT's Balance Sheet as of March 31, 2006 shows a net equity value of $73.5 million. The PCT had $82.3 million of unrestricted cash on March 31, 2006, along with another $3.4 million of restricted cash (set aside to ensure the ability of the PCT to satisfy certain Fleming obligations). In addition, the PCT has other assets remaining to be monetized on its Balance Sheet with a financial statement carrying value of $11.6 million, and anticipates that actual cash collections will meet or exceed the Balance Sheet level. The Balance Sheet shows remaining liabilities of $23.8 million; of that amount, $14.3 million reflects the face amount of claims asserted seeking cash payment pursuant to the Plan or other obligations entitled to cash payment pursuant to the Plan (in each case subject to the adjustments otherwise described herein), and $9.5 million is for professional fees incurred by the PCT but not paid as of March 31, 2006.

K&E 11183336.1

## C.    Assets

### 1.    Cash

As of March 31, 2006, the PCT had $82.3 million of unrestricted cash[2].  In addition to the unrestricted cash, the PCT also held $3.4 million of restricted cash on March 31.  That restricted cash has been set aside pursuant to the Plan to satisfy certain Fleming obligations; the particular obligations to be satisfied from the restricted cash will be discussed below.

### 2.    Customer Accounts Receivable and Royalties

The Balance Sheet includes approximately $6.5 million for customer accounts receivable and royalties.  Of that amount, approximately $3.5 million is attributable to customer accounts receivable, and $3 million is attributable to royalties.

#### (a)    Accounts Receivable - Customer

The March 31, 2006 Balance Sheet includes approximately $3.5 million for the remaining collection of customer accounts receivable related to the Fleming wholesale operations.  The PCT expects that it will meet or exceed the Balance Sheet values as it continues its efforts to monetize and collect the remaining customer accounts receivable.

The PCT is currently actively pursuing litigation or arbitration of roughly 40 collection actions in various jurisdictions.  In addition, the PCT has obtained numerous judgments/arbitration awards in customer collection matters, and is pursuing collection activities with respect thereto.  Substantially all of the remaining customer accounts receivable are disputed or subject to asserted offset claims, and in some cases the obligors lack the financial ability to honor their obligations.  The collection strategy employed by the PCT and its counsel

---

[2]    As stated above, the PCT also had approximately $9.5 million of accrued professional fees on that date.

6

on any particular matter may include negotiation, arbitration and/or litigation, including the use of collection agencies where appropriate. For each individual collection matter, the costs of collection are weighed against anticipated recoveries with the goal of maximizing the net recovery to the PCT and its beneficiaries. For any individual collection matter, the determination of the most cost-effective collection strategy may evolve as new facts are developed. As such, the PCT may conclude that it is in the interests of the creditors to accept a reduced recovery in order to limit the costs associated with obtaining that recovery; such determinations could serve to reduce the overall gross recoveries from this group of assets, with the goal of enhancing the ultimate net recoveries.

The ability of the PCT to collect the projected remaining amounts from the pool of outstanding customer accounts receivable remains subject to significant risk and could be impacted by the adverse outcome of pending or proposed arbitrations and/or litigations, the financial condition of the obligors, or other factors. Also, due to a concentration of value in a relatively small number of remaining open customer accounts, adverse results from a small number of cases could materially adversely impact the projected recoveries.

### (b)    Accounts Receivable - Royalty Fees

On the Effective Date, the Debtors transferred to the PCT rights to certain royalty payments that were created through the sale of certain assets to C&S Wholesale and certain follow-on buyers during the bankruptcy proceedings. The estimated value of those royalties reflected in the Disclosure Statement was $3 million, and the PCT's Balance Sheet continues to reflect that same value. To date, the PCT has collected no funds from such royalty obligation and the assets are currently subject to litigation between the PCT, on the one hand, and C&S and certain follow-on buyers on the other hand. While the PCT expects it will ultimately be

7

successful in the collection of those royalty payments, the realization on that asset is subject to legal risk and the costs associated with litigation.

3.    **Vendor Accounts Receivable—Vendor Receivables, Preferences and Related Items**

The PCT has been actively pursuing recoveries from vendors related to preference/avoidance actions and other receivables due to Fleming from the vendors. The Disclosure Statement projected a gross recovery amount of $43 million of value from those assets, and the Balance Sheet as of March 31, 2006 reflects a remaining balance as of that date of $5.1 million. The PCT expects its future collections from that group of assets to exceed the amount shown on the Balance Sheet for such items.

As an overview of this asset category, the Disclosure Statement projected recoveries of $43 million from vendor collection and avoidance actions, which include preference claims, vendor deductions and vendor overpayment claims. After the Effective Date, the PCT began a collection effort to monetize these assets. Pre-litigation collection efforts generated only limited recoveries, and in March, 2005, the PCT ultimately initiated approximately 3,300 individual litigation cases in an effort to monetize these assets.

Since filing those litigation cases, the PCT has performed significant analysis and discovery to support its claims and actively pursued settlement discussions in an effort to resolve the claims in as prompt and cost-effective a manner as practicable. Additionally, the PCT has participated in literally hundreds of mediations and settlement conferences to facilitate the resolution of the claims. Those efforts have resulted in the resolution of the vast majority of the claims.

As of March 31, 2006, the PCT had approximately 100 remaining outstanding unresolved claims for preferences, deductions and/or overpayments; roughly half of those cases have been

8

resolved (at least in principle) or reduced to judgment since March 31. As with any litigation matters, the actual outcome of any case or the cases as a group is subject to significant litigation uncertainly as well as potential collection risk, and the actual results may vary from the PCT's expectation that the aggregate recoveries will exceed the amount shown on the Balance Sheet. It is impossible for the PCT to determine how long it will take to resolve the remaining claims; based on our experience to date, it is likely that many (but not all) of those claims will be settled prior to trial, but it is not possible to determine at this time which ones will or will not be settled and how many trials will be required. We also note that the remaining claims are, by definition, disproportionately comprised of claims where settlement efforts to date have been unsuccessful.

In addition to the items described above, there are approximately 400 cases in which default or other judgments have been entered and the PCT must now pursue collection activities to realize the recoveries. The face amount of those judgments is approximately $10 million; the PCT is finalizing arrangements to turn those judgments over to a collection agency for collection on a contingency-fee basis.

Since March 31, the PCT has collected roughly $2 million on account of this category of vendor receivables, and has pending settlements (either executed settlements or agreements in principle subject to completion of documentation) for an additional $2.5 million. Between the roughly $2 million of collections plus the anticipated $2.5 million from pending settlements, the PCT will only need to recover another roughly $600,000 from the remaining 50 or so pending cases and outstanding judgments to reach the $5.1 million asset value reflected in the Balance Sheet.

### 4.    Distribution from Reclamation Creditors Trust

The Reclamation Creditors Trust (the "RCT") has advised the PCT (and the Court) that it anticipates discontinuing its operations and distributing its excess assets to the PCT (as provided

9

in the Plan) in the near future.  The PCT anticipates that it will receive between $5 million and $7 million from the RCT upon the dissolution of the RCT.  As that amount has not yet been received, it is not included in the PCT's Balance Sheet.  Also, as the Disclosure Statement did not project that the PCT would receive any proceeds from the RCT, no amount was included for the PCT's interest as beneficiary of the RCT in the PCT Balance Sheet.

### 5.    Other Litigation Assets

The PCT has actively pursued claims against, among others, certain members of Fleming's former management team and Fleming's former auditors.  The PCT has successfully concluded its litigation against the former management and the former auditors via settlement, and the results of those settlements are reflected in the PCT's cash balance as of March 31, 2006.

The PCT is currently continuing to pursue claims held by the PCT[3] against several individual vendor employees (and two vendors) which the PCT believes assisted Fleming's former management in falsifying Fleming's financial statements.  Those claims are the subject of litigation in the United States Federal District Court for the Eastern District of Texas (Texarkana Division).  While litigation against certain of those defendants is the subject of pending settlement agreements in principle, the bulk of that litigation is ongoing.  Due to the inherent uncertainties of litigation, the PCT has not included any anticipated recovery on those remaining litigation claims in its Balance Sheet.

### 6.    No Other Material Assets

The PCT has from time to time uncovered and realized upon assets that were not reflected on the Debtors' books and records.  The bulk of those assets were uncovered during the

---

[3]   Potential claims against Reclamation Creditors became assets of the Reclamation Creditors Trust pursuant to the Plan.

early stages of the PCT's operations.  While the PCT continues to uncover assets from time to time and expects to collect some additional funds from other assets, we do not anticipate that there are any material additional assets to be uncovered or material collections to be obtained beyond those reflected on the Balance Sheet and discussed above.

### D.    Liabilities

#### 1.    Overview

The Balance Sheet includes approximately $14.3 million of cash liabilities for those remaining unresolved Fleming obligations that are required to be paid in cash pursuant to the Plan.  Additionally, the Balance Sheet includes $9.5 million related to professional fees that have been billed to the PCT but remain unpaid.

#### 2.    Administrative Liabilities

The PCT Balance Sheet reflects approximately $6.0 million of remaining liability on account of Remaining Unresolved Administrative Claims (as defined below).  As of March 31, there were 58 Administrative Claims outstanding and unresolved, seeking an aggregate of $15 million in administrative payments, not including claims made by Wayne Berry seeking approximately $250 million in administrative payments (all such outstanding and unresolved administrative claims, collectively, are referred to herein as the "Remaining Unresolved Administrative Claims").  In determining the appropriate amount to reflect on the PCT's Balance Sheet, the PCT reviewed each remaining open claim, and (with the exception of the Wayne Berry claims, which are discussed in more detail below) reduced each claim to eliminate amounts which are duplicative of other claims, have already been satisfied, or are properly treated as unsecured claims under the Plan.  The PCT further adjusted the liability amount to reflect any settlements/agreements in principle that would result in payment of less than the filed claim amount.  Additionally, the Balance Sheet reflects anticipated payments of remaining

11

outstanding severance obligations to former Fleming employees (whether or not those employees filed claims with the Court). The severance liability is estimated based on the Fleming severance policy, as limited by the order of the Court during the bankruptcy proceedings.

As noted above, the liabilities reflected on the Balance Sheet have not been reduced for claims that are in dispute nor "written down" to reflect estimated payments. Even after eliminating amounts that are duplicative of other claims, have already been satisfied, or are properly treated as unsecured claims under the Plan, the Administrative Claims shown on the Balance Sheet include amounts that the PCT believes are not due to the claimants as administrative priority payments. In an effort to ensure that the PCT honors only those claims that are valid administrative obligations, the PCT has filed objections with this Court seeking to eliminate, reduce or reclassify each of the Remaining Unresolved Administrative Claims. In many cases, claimants and the PCT are in negotiations in an effort to resolve Remaining Unresolved Administrative Claims on a consensual basis and thus to avoid the further costs and uncertainly inherent in any judicial determination. Of course, as with any other litigation process, there can be no certainly regarding the ultimate outcome of any such negotiations or any litigation that may ensue if such negotiations are unsuccessful. The PCT anticipates, however, that the ongoing negotiation and litigation process will reduce the actual payments on account of the Remaining Unresolved Administrative Claims to a level below that reflected on the Balance Sheet.

The Disclosure Statement projected that the PCT would pay approximately $52 million in order to satisfy Administrative claims. Through March 31, the PCT had paid out approximately $38 million on account of those claims, and if the PCT were to pay the full $6 million of

additional potential liability as reflected in the Balance Sheet, the total payment on account of
Administrative Claims would be approximately $44 million.

In the First Status Report, the PCT specifically identified certain Administrative Claims
(including claims by Wayne Berry, CHEP USA and certain former customers) that were the
subject of ongoing litigation, and thus likely to require substantial time and expense to be
resolved.

The litigation between the PCT and CHEP USA was settled in September 2005. As a
result of that settlement, CHEP USA received an Allowed Administrative Claim of $89,000 and
an unsecured claim of $3 million in resolution of their previously filed Administrative Claim of
$8.7 million. That Allowed Administrative Claim has been paid, and the Allowed General
Unsecured Claim was included for distribution prior to March 6, 2006.

With respect to the approximately $250 million of administrative claims filed by Wayne
Berry, on March 7, 2006, a jury in United States Federal District Court in Honolulu, Hawaii
awarded Mr. Berry damages of $57,534 with respect to Fleming's post-petition activities. The
trial court has denied all of the post-trial motions seeking a new trial, and the PCT is prepared to
resolve Mr. Berry's claims by payment of the amount the jury awarded. Mr. Berry, however, is
not prepared to accept the jury's verdict, and continues to seek payment on his post-petition
claims at amounts far greater than the jury award. As a result, further litigation between the PCT
and Mr. Berry is inevitable, including appeals by Mr. Berry, motions practice, and the eventual
resolution of Mr. Berry's claims in the bankruptcy cases. The ultimate resolution of Mr. Berry's
claims, and the costs involved in achieving that ultimate resolution, are unknown at this time. In
addition, as with all litigation matters, expectations about the likely outcome cannot be
guaranteed. The PCT notes, however, that the jury verdict is consistent with this Court's

13

estimation of Mr. Berry's post-petition claims at $100,000 for purposes of determining the feasibility of the Plan, and the PCT continues to believe that the Court's estimation of the likely value of Mr. Berry's claim was reasonable and realistic. In preparing the Balance Sheet, the PCT has continued to use the Court's $100,000 estimate as the carrying value of Mr. Berry's administrative claims.

Several customers have filed Administrative Claims that remain unresolved. In substantially all of those situations, the PCT has claims against those customers that serve to offset most or all of the pending claimed administrative amounts. While it is possible that some of those claims will be settled without the need for the Court to rule, it is also possible that some of those claims will require determination by the Court. The PCT will continue to seek consensual resolution of those claims where possible. For purposes of the valuations included in the Balance Sheet, the PCT has included those customer claims at the maximum potential recovery that those customers might receive on an administrative basis (taking into account the proper characterization of those claims under the Plan).

### 3.    Priority Claims and Employee Related Liabilities

The Balance Sheet reflects $4.0 million of priority claims and other employee-related liabilities as of March 31, 2006. Within that amount, approximately 69 priority claims seeking approximately $1.5 million (again, excluding settlements, duplicates, claims already satisfied and claims which are properly treated as unsecured claims under the Plan) remained unresolved. Those claims seek priority status in connection with employee related claims and real estate claims (associated priority taxes). The PCT is currently working to negotiate resolutions to these claims. Additionally, the PCT anticipates paying approximately $2.5 million in other employee-related liabilities, including claims that have been allowed but not yet paid, employer taxes on various employee claims and other priority taxes.

14

### 4.    FSA Claims

The Court entered an order on December 23, 2003 requiring the Debtors to maintain an approximately $36 million adequate protection reserve in favor of roughly 80 contract counter-parties to protect certain potential setoff rights related to Debtors' facility standby agreements. All but one of those potential setoff claims has been resolved. With respect to that last remaining claim, the PCT has retained approximately $300,000 in cash in the adequate protection reserve. While it is possible that further claims for breaches of facility standby agreements will be raised, any such claims should not result in any cash payments by the PCT.

### 5.    PACA/PASA Claims

As of March 31, 2006, approximately one dozen PACA/PASA Claims remained outstanding and subject to dispute. At that time, all or most of those remaining claims were subject to on-going negotiations and/or litigation relating to the eligibility of the product for PACA status, together with related claims for interest and fees. Because the outcome of such litigation remains uncertain, the PCT has included $3.1 million on its Balance Sheet with the goal of fully reserving for all of the invoices subject to dispute, as well as the possibility of an adverse award of interest and attorneys' fees. Of course, as with any litigation, the ultimate outcome is uncertain.

### 6.    Other Liabilities

### (a)    Accrued Professional Fees

As discussed above, the PCT had approximately $9.5 million of open, unpaid balances for professional fees as of March 31, 2006.

       (b)      **Other Liabilities: Secured Claims and Convenience Class Liabilities**

There remain a small number of disputed claims that have asserted secured status. The PCT is working to resolve these claims, which seek approximately $750,000 in the aggregate (again, excluding settlements, duplicates, claims previously satisfied and claims which are properly unsecured). The bulk of the Convenience Class claims have been paid, and as of March 31, 2006, only $282,000 remained to be paid on account of the Convenience Class. The Balance Sheet reflects $900,000 of liabilities for this group of potential payments.

       **E.**     **Projected Expenses and Contingency**

In preparing its Balance Sheet, the PCT has not included any amount as a reserve for operating expenses, including professional fees, or for contingencies. As noted elsewhere in this Second Status Report, the projections and expectations contained in this report reflect a conservative view of the likely financial results of the PCT's remaining activities. The PCT has also stated that it anticipates that the actual results will exceed the Balance Sheet levels by an amount greater than the future costs to be incurred by the PCT in completing its work. In preparing the foregoing estimates, the PCT acknowledges that it will continue to incur substantial professional fees in order to achieve the results projected. As stated above, the PCT will continue to balance the benefits of reduced recoveries (or incremental claims allowance) against the costs necessary to achieve those benefits in determining when and whether to settle any particular dispute, with the overall goal of maximizing recoveries to the beneficiaries of the PCT.

**IV.**    **General Unsecured Claims**

Roughly $2.21 billion of General Unsecured Claims have been allowed to date. Of that allowed total amount, the PCT has instructed the Transfer Agent to distribute an allocable

16

proportion of Core-Mark stock to holders of approximately $2.17 billion in General Unsecured

Claims. The remaining roughly $41 million of allowed General Unsecured Claims have not yet

been included for distribution due to claimholder requests, issues regarding withholding or other

tax concerns or otherwise.

The PCT continues to work to resolve the remaining unsecured claims, which seek

approximately $300 million in the aggregate. While it is not feasible to provide a precise

estimate of the expected results of those ongoing efforts, the PCT currently anticipates that

roughly one-third of the dollar amount of those remaining unsecured claims will ultimately be

allowed, resulting in a total pool of allowed general unsecured claims of approximately $2.3

billion. The PCT's current claims pool estimate is generally consistent with the PCT's prior

indication to the Court which had projected the aggregate pool of the ultimately allowed General

Unsecured Claims to be between $2.3 billion and $2.4 billion. By way of context, more than $33

billion in General Unsecured Claims were asserted against the Debtors' estates, and the

Disclosure Statement estimated that the face value of the ultimately allowed General Unsecured

Claims would fall between $2.6 billion and $3.4 billion.

While the PCT expects the ultimate pool of allowed general unsecured claims to be well

below $2.58 billion, it does not believe it is necessary or appropriate at this time to seek any

further reduction in the reserve amount. Because the PCT has instructed the Transfer Agent to

distribute Core-Mark stock based upon the $2.58 billion reserve amount previously approved by

the Court, the holders of the roughly $2.17 billion of General Unsecured Claims which have

been included on instructions to the Transfer Agent to receive distributions of Core-Mark stock

will only have received approximately 84.1% of the 9.8 million shares of Core-Mark stock which

are to be distributed to General Unsecured Creditors pursuant to the Plan. If the ultimate

unsecured claims pool turns out to be $2.3 billion, the holders of that $2.17 billion of General Unsecured Claims will ultimately receive approximately 94.3% of the Core-Mark shares to be allocated by the PCT.

## V.    Allocation of Taxable Income

The PCT anticipates that it will have positive net income in 2005 and again in 2006. As such, it will be allocating that income to the holders of allowed general unsecured claims. Pursuant to applicable tax rules and regulations, 2005 income will be allocated to holders of claims that were allowed on or prior to March 6, 2006 based upon each such holder's anticipated share of the ultimately allowed pool of General Unsecured Claims. Upon completion of its tax return (currently expected to be on or prior to August 15, 2006), the PCT will notify each such holder of the amount of 2005 taxable income to be allocated to that holder. Although the PCT has not completed its 2005 tax return, it expects taxable income to be allocated to unsecured claimants for 2005 to be in the range of 1% of the allowed claim.

## VI.    Task Completion Status Update

The PCT has made very significant process towards its goal of completing its duties under the Plan and maximizing recoveries for its beneficiaries. While recognizing that any estimate of "task-completion" in this context is inexact and subject to debate, the PCT believes that it is between 80% and 90% done with its work. Based on results to date and the current PCT position, the PCT is on track to deliver results to its beneficiaries that would substantially exceed the projections in the Disclosure Statement.

### A.    Asset Monetization

The PCT has resolved substantially all of the claims that were to be paid from Restricted Cash pursuant to the Plan, having paid claims as required and released cash from restriction where permitted. As such, only $3.4 million of Restricted Cash remains.

K&E 11183336.1

Of the hundreds of open customer accounts receivable transferred to the PCT at its formation, only 40 or so remain in active litigation or arbitration. While additional customer accounts receivable have been or will be placed with collection agencies for collection, the majority of the customer accounts receivable actions have been resolved.

As more fully discussed above, of the roughly 3,300 cases seeking recovery of vendor accounts receivable/preferences and other related items, all but approximately 50 have been settled or reduced to judgment. The PCT continues to work towards resolution or trial for the remaining open cases.

The PCT has also successfully concluded a number of settlements with respect to Other Litigation. There is one potentially material remaining group of claims in active litigation, and the PCT expects that litigation to continue for some time.

### B.    Cash Claims and Liabilities

#### 1.    Secured, Administrative and Priority Claims

As discussed above, the PCT has less than 200 remaining secured, administrative or priority claims to resolve. The PCT is in active discussions seeking consensual resolution of substantially all of those remaining claims.

With respect to the Administrative Claims in particular, the PCT notes that the total of the Administrative Claims paid to date plus the amount shown on the Balance Sheet for the remaining open Administrative Claims is approximately $44 million, and is substantially less than the approximately $56 million in Administrative Claim payments which would implicate the Core-Mark guarantee of Administrative Claims.

#### 2.    FSA/PACA

As noted above, the bulk of the FSA and PACA claims have been resolved. Roughly a dozen claims remained open at March 31, 2006.

19

### 3. Other Liabilities

There are a small number of other claims and obligations outstanding.  In addition, while the bulk of the Convenience Class payments have been made, a subset of those payments have not yet been completed.

### C. Unsecured Claims

The PCT has allowed over 95% of the total dollar amount of unsecured claims that it anticipates will be allowed when the process is complete.  Of the remaining unresolved unsecured claims, roughly 200 are in active review, reconciliation or negotiations.  The other remaining unsecured claims are connected to other disputes (other claims, accounts receivable, pending litigation, etc.) and are expected to be resolved in conjunction with those other matters.

## VII. Disclaimer

While the PCT has made very substantial progress, there is still significant work to be done to maximize recoveries and resolve remaining claims.  The items that remain are disproportionately difficult, complex or contentious; many of them involve significant dollars, and there can be no assurance that any or all of those items will be resolved speedily or successfully.

K&E 11183336.1

Dated: June 7, 2006

PACHULSKI STANG ZIEHL YOUNG JONES &
WEINTRAUB LLP

_James E O'Neill_

Laura Davis Jones (Bar No. 2436)
Scotta E. McFarland (Bar No. 4184)
James E. O'Neill, III (Bar No. 4042)
919 North Market Street, 17th Floor
Post Office Box 8705
Wilmington, Delaware  19899-8705
(Courier No. 19801)
Telephone:  (302) 652-4100
Facsimile:  (312) 652-4400

and

KIRKLAND & ELLIS LLP
Richard L. Wynne (CA Bar No. 149504)
Erin N. Brady (CA Bar. No. 215038)
777 South Figueroa Street
Los Angeles, California  90017
Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500

Co-Counsel for the Post Confirmation Trust

21

KAE 111853341