LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, ) | Civ. No. 07 CV-0172 SOM-LEK |
| ) | (Copyright) |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| DEUTSCHE BANK TRUST ) | **PLAINTIFF'S MEMORANDUM IN** |
| COMPANY AMERICAS (FKA ) | **OPPOSITION TO MOTION TO** |
| BANKERS TRUST COMPANY)AND ) | **DISMISS AND COUNTER-** |
| JP MORGAN CHASE BANK IN ) | **MOTION FOR PARTIAL** |
| THEIR SEPARATE CAPACITIES ) | **SUMMARY JUDGMENT** |
| AND AS AGENTS FOR THE PRE ) | |
| AND POST-PETITION LENDERS OF) | |
| FLEMING COMPANIES, INC.  Et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

II.     DISCUSSION.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.     The Unjust Enrichment Claim is Not Preempted.  . . . . . . . . . . . . . . 2

        B.     The Motion Must Be Denied As to the Copyright Claims.  . . . . . . . . 5

                1.     Statute of Limitations.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

                2.     The Bankruptcy Court's Orders Can't be The Basis for
                       Dismissal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                3.     Mr. Berry Has Properly Alleged Contributory Infringement.  14

                4.     Vicarious Infringement Against the Lenders Like Fleming is
                       Clear. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

III.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT  . . . . . . . . . 25

III.    DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

        A.     Bankruptcy Court Orders Establish that the Lenders May Be Sued for
               their Conduct as a Matter of Law.  . . . . . . . . . . . . . . . . . . . . . . . . 26

        B.     The Statute of Limitations was Tolled. Even if it Hadn't Been Tolled
               there is No Issue of Fact as to the Date that the Berry Claims Accrued.
               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

        C.     The Lenders are Liable for Vicarious Infringement.  . . . . . . . . . . . . 28

                1.     The Direct Infringement was already established  . . . . . . . . 28

2.      The infringer's attorneys professed loyalty to the Lenders  . . 28

3.      The continued operation of the Hawaii wholesale division
        resulted in payment of the Lenders' loans as proceeds  derived
        from the continued infringing use of Berry's work.  . . . . . . . 29

II.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Table of Authorities

## CASES

*Bucklew v. Hawkins, Ash, Baptie & Co. LLP*, 329 F.3d 923 (7th Cir. 2003) . . . . 11

*Conerly v. Westinghouse Electric Corp.*, 623 F.2d 117 (9th Cir. 1980) . . . . . . . . 6

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996) . . . . . . . . . . 19

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159 (9th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Grosso v. Miramax Film Corp.*, 383 F.3d 965 (9th Cir. Cal., 2004) . . . . . . . . . . 3

*Kourtis v. Cameron*, 419 F.3d 989 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 7

*Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*, 750 F.2d 731 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Polar Bear Productions, Inc. v. Timex* , 384 F.3d 700 (9th Cir. 2004) . . . . . . . . 6

*Pye v. Mitchell*, 574 F.2d 476 (9th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*UMG Recordings v. Bertelesmann AG*, 222 F.R.D. 408 (N.D. Cal. 2004) . . 19, 20

*Universal City Studios v. Sony Corp. of America*, 659 F.2d 963 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## STATUTES

Bankruptcy Code, 11 U.S.C. § 364(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

RULES

Fed. R. Civ. P. 56  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

RULE 12 (b)(6)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 5


OTHER AUTHORITIES

Moore's Federal Practice 3d, § 131.50[2] (2005)  . . . . . . . . . . . . . . . . . . . . . . . . 12

## PLAINTIFF'S MEMORANDUM IN
## OPPOSITION TO MOTION TO DISMISS

COMES NOW, Plaintiff Wayne Berry, by and through his undersigned

counsel and hereby respectfully submits his Memorandum In Opposition to Motion

to Dismiss filed on June 12, 2007.

## I.    FEDERAL RULE OF CIVIL PROCEDURE 56(f)  REQUEST.

The defendant lenders' ("Lenders") Motion cannot be decided under the

standards applied to Fed. R. Civ. P. 12(b)(6) motions in light of the voluminous

materials that have been submitted to the Court under the pretext that these

materials are appropriate for taking judicial notice.  Mr. Berry objects to judicial

notice being taken in matters outside of this Court's own record and he should be

afforded the opportunity to present evidence to meet the proof provided by the

Lenders should the Court consider any of this material. It is clear that with or

without this material the Motion must be denied.  The fact that these sophisticated

litigants have asked the Court to take judicial notice of newspaper articles,

transcripts of depositions and hearing transcripts, as well as orders of other courts

is an invitation to error and evidence of their desperation.  It is abundantly clear

that this is not a motion to dismiss but a summary judgment motion supported by

inadmissible evidence and therefore, due process that is embodied in Fed. R. Civ.

P. 12(b)(6), is violated if the Court rules on this motion by considering any of the

materials submitted.  Declaration of Timothy J. Hogan ("Hogan Dec.") at ¶ 1.

Should the Court find that taking judicial notice is proper regarding the documents

that were submitted in support of the Motion, then Mr. Berry similarly asks that the

Court take notice of the materials submitted by Mr. Berry in support of this

Memorandum in Opposition.

Mr. Berry believes that so long as the Court accept as true the factual

allegations of the Complaint, and applies controlling 9th Circuit authority, the

Motion must be denied.  To the extent that the Court finds some deficiency,

amendment is the proper course not dismissal, and the Lenders in their

Memorandum, have put forward no valid argument that amendment would not be

warranted.

II.     DISCUSSION.

A.     The Unjust Enrichment Claim is Not Preempted.

The Lenders have omitted the controlling 9th Circuit case that demonstrates

that the Motion  must be denied as to the unjust enrichment claim:

> In *Del Madera* we held that a claim for unjust enrichment
> was equivalent to a claim for copyright infringement, and
> thus preempted, because the claim lacked an <u>extra</u>
> <u>element-the bilateral expectation of compensation</u>. Here,
> Grosso has alleged that the extra element is present.
> Therefore, his claim for breach of an implied-in-fact
> contract is not preempted  by the Copyright Act, because
> it alleges an extra element that transforms the action from

2

> one arising under the ambit of the federal statute to one
> sounding in contract. Grosso's complaint alleged
> circumstances that, if true, would sustain an action under
> *Desny* that is not preempted.

*Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. Cal., 2004) *amended*

*by Grosso v. Miramax Film Corp*., 400 F.3d 658, 659 (9th Cir. 2005)(emphasis

added).[1]  As dictated by *Grosso*, this Court, in assessing whether dismissal is

warranted under Fed. R. Civ. P. 12(b)(6), is confined to the four corners of the

Complaint that alleges that:

---

[1]  The text of the amendment is as follows:

The opinion is amended to add a new penultimate paragraph as follows: We
express no opinion on the question whether the facts adduced during the summary
judgment proceedings on Grosso's copyright claim can support the Desny claim set
forth in Grosso's complaint. Our decision is compelled by the procedural posture of
the Desny claim. Because the district court granted Miramax' motion to dismiss
under Rule 12(b)(6), our inquiry begins and ends with Grosso's First Amended
Complaint. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir.
1998) (stating that "the focus of any Rule 12(b)(6) dismissal -- both in the trial
court and on appeal -- is the complaint"). Further, we must take all factual
allegations as true and must construe them in the light most favorable to the non-
moving party. *Allied Signal, Inc. v. City of Phoenix*, 182 F.3d 692, 695 (9th Cir.
1999).  With those limitations on our review in mind, we hold only that the First
Amended Complaint states a *Desny* claim. We need not and do not decide whether
the summary judgment record or any future record, yet to be developed, supports
that claim.

*Grosso v. Miramax Film Corp.*, 400 F.3d 658, 659 (9th Cir. 2005).

35.    As a separate and distinct claim from the claims under the Copyright Act, starting in 2001, the Lenders knew that Mr. Berry had not licensed the use of any derivative copy of his work.  The Lenders knew that if Fleming infringed Berry expected to be paid for the use of his work.

36.    In the period after April 1, 2003, the Lenders directed Fleming to risk continued infringement so that the Lender's loans would be paid.  But for the use of Plaintiff's work, the Lenders would have received little in the break up of Fleming's wholesale business.

37.    <u>Both the Lenders and Berry had an expectation that Berry would receive compensation for any unlicensed use of his works</u>.

38.    The Lenders received a substantial financial benefit conferred upon them by Mr. Berry and it would be unconscionable to permit them to retain the full amount of that benefit that was obtained with the knowledge that Berry would have to be paid if Fleming continued to infringe.

39.    The Lenders are indebted to Mr. Berry in an amount to be determined at trail based upon the Lenders' implied promise to pay the reasonable value of the material infringed from which they derived a substantial benefit.

Complaint, Hogan Dec. Exhibit "1" (emphasis added).

The Motion must be denied because as in *Grosso*, the Complaint alleges, and the Court must take as true, that there was a "bilateral expectation" that Mr. Berry would be compensated for the unauthorized use of his work by the very entities

4

that profited most from its unlawful use.   The Lenders concede that should this claim survive, as it must on the face of the Complaint, the six year Hawaii statute of limitations is no impediment to proceeding.  Because this claim is not subject to dismissal the Court should give short shrift to the arguments related to the copyright statute of limitation until the record has been further developed  and revisit it if at all, under the proper standard of a Fed. R. Civ. P. 56 motion or at trial.  As the Court will see from the Counter-Motion, there is no issue of fact that the copyright statute has not run.

      B.     The Motion Must Be Denied As to the Copyright Claims.

The Memorandum in Support claims that dismissal is warranted based on statute of limitations, collateral estoppel and the failure to plead a prima facie case. As set forth below, the Motion must be denied.

      1.     Statute of Limitations.

As set forth above, in passing on a 12(b)(6) motion the Court is required to take all the factual allegations as true.  The Complaint alleges the date of accrual of the claims and fraudulent concealment against the Lenders as follows:

    22.    The Lenders that responded to the Berry infringement warning letters all denied any infringement.  It was not until March 2006 that Mr. Berry learned that these denials were false.  Because the denials were made by publically traded and regulated financial institutions regarding whom false statements made regarding willful

> infringement would amount to misprision of a felony, it
> was reasonable that Mr. Berry relied on their denials and
> therefore his discovery of the true extent of their
> complicity was actively concealed from him.

Hogan Dec. Exhibit "1."

Therefore, as alleged in the Complaint, that this Court must accept as true,
Mr. Berry first had the factual knowledge of the Lenders' involvement in the
infringement in March 2006.  As a foot note, the fact of the accrual was
memorialized at trial.  Hogan Dec. Exhibit Transcript of Proceedings dated March
2, 2006, in *Wayne Berry v. Hawaiian Express Service, Inc*., CV 03-00385 SOM-
LEK.  Hogan Dec. Exhibit "2" at page 108:15-17.  The Complaint alleges that it
was reasonable for Mr. Berry to rely on the denial of their knowledge of the
infringement and that the Lenders actively concealed it from him.  *Conerly v.
Westinghouse Electric Corp*., 623 F.2d 117, 120 (9th Cir. 1980) ( plaintiff must
plead  circumstances surrounding the concealment and state facts showing
diligence in trying to uncover the facts). These are factual allegations that the Court
must be accepted as true.   The copyright statute of limitations therefore, will run in
March 2009.  *See Polar Bear Productions, Inc. v. Timex* , 384 F.3d 700 (9th Cir.
2004), *as amended by Polar Bear Prods. v. Timex Corp*., 2004 U.S. App. LEXIS

22140 (9th Cir. 2004*)²* *reprinted as amended at Polar Bear Prods. v. Timex Corp*.,

2004 U.S. App. LEXIS 22131 (9th Cir.2004)( in defining the term 'accrue' as the

moment a copyright holder knows of or should know of the infringement thus

tolling the statute of limitations until the moment of discovery). *See also Kourtis v.*

*Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005) (complaint determines whether delay

was unreasonable).

Even ignoring the pre-bankruptcy infringement, the Lenders cannot deny

that the infringement continued until no earlier than June 9, 2003. Therefore, the

statute would run, if not tolled, on June 9, 2006. The Lender cannot deny and if

fact admit that they tolled the statute to March 30, 2006. *See* Tolling Agreement,

Hogan Dec. Exhibit "3." Contrary to the Memorandum, pleading the tolling was

unnecessary because the facts of the Complaint allege discovery in March 2006.

Second, if the allegation of the tolling agreement must be alleged in the Complaint,

the fact that the Lenders admit to tolling means that they concede that Mr. Berry's

amendment to refer to the tolling agreement could not be considered futile. The

---

² The Opinion filed September 3, 2004, slip op. 12729, and appearing at 2004 U.S. App. LEXIS 18737, 2004 WL 1949285 (2004), is amended. At 2004 U.S. App. LEXIS 18737 at *59, line 1, insert the following text after ". . . tive.": "On this record, Polar Bear is not entitled to any recovery under 17 U.S.C. § 504, nor is Polar Bear entitled to a new trial on damages under § 504."

Lenders only way out of that box is to claim that Mr. Berry elected statutory

damages in the first case and can't make claims for damages based on the same

claim during what they admit is a two day period of March 30 & 31, 2003. The

problem is that the damages that Mr. Berry obtained in the first case were for

infringement that occurred no later than the date of the filing of the Verified

Complaint on July 3, 2001. Hogan Dec. Exhibit "4." The instant Complaint

alleges infringement that occurred "Starting in the Spring of 2002", well after the

fling of the Verified Complaint in the first case as follows:

> 21.    Starting in the Spring of 2002, Defendants Deutsche
> Bank Trust Company Americas and JP Morgan Chase
> Bank in their separate capacities and as agents for the
> secured lenders of Fleming Companies, Inc. had reason
> to know that Fleming might be engaged in infringing
> activities but because the Lenders enjoyed a direct
> financial benefit from the continued use of the Berry FCS
> they continued to provide funding and to exercise
> complete control over Fleming to cause Fleming to
> continue to infringe plaintiff's work. The infringement
> of Mr. Berry's work from after the Fall of 2002 when the
> Lenders were given infringement warning letters and
> became aware of Mr. Berry's right to be paid for
> infringing use of his work that continued until the filing
> of the voluntary Chapter 11 Petition on April 1, 2003, the
> Lenders received significant sums of money derived from
> the infringing activities. The knowledge of the
> infringement is imputed to other Fleming Lender's.

Hogan Dec. Exhibit "1."

Therefore, none of what Mr. Berry is seeking in this case could possibly be bound up in the prior judgment because the claims that are bound in the earlier judgment in *Berry v. Fleming*, 01-00446 SPK-LEK don't include claims arising after the filing of the Verified Complaint.

> **The scope of litigation is framed by the complaint at the time it is filed**. The rule that a judgment is conclusive as to every matter that might have been litigated does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated.  Plaintiffs may bring events occurring after the filing of the complaint into the scope of the litigation by filing a supplemental complaint with leave of court,  but there is no requirement that plaintiffs do so.

*Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*, 750 F.2d 731, 739 (9th Cir. 1984) (citations omitted) (emphasis added).

The instant Complaint, even if the Court were to validly question the truth of its factual allegations, still remains viable by the Lenders' own admission for at least two days.  The law is clear that the Court must accept the factual allegations in the Complaint as true and the Motion must be denied.  To the extent that the Court agrees that Mr. Berry should have pled the tolling agreement, amendment would be the only proper course.

2.    The Bankruptcy Court's Orders Can't be The Basis for Dismissal.

First, the Motion makes the statement that Mr. Berry filed a pre-petition

claim in the bankruptcy.  This is false and the Lenders have produced no evidence to support that claim.  Second, even if the Court were to accept the absurd claim that the Lenders were granted a discharge of their third-party claims in the Fleming Bankruptcy, Mr. Berry was granted exemption from the effect of the confirmed plan and discharge provisions of the Bankruptcy code unlike all other Fleming creditors.   Hogan Dec. ¶ 6 and Exhibit "5."  This order was entered prior to the Confirmation Order.  Hogan Dec. ¶ 7 and Exhibit "6."  Under the terms of the Fleming Reorganization Plan, Article XII.G, Mr. Berry obtained dispensation from the discharge and exculpation provisions. The discharge injunction was operative "**unless a previous order modifying the stay provided under section 362 of the Bankruptcy Code was entered by the Court**...."  *See* The Official Committee of Unsecured Creditors Third Amended and Revised Joint Plan of Reorganization of Fleming Companies, Inc. and its Filing Subsidiaries under Chapter 11 of the Bankruptcy Code, filed in *In re Fleming Companies, Inc*., Bk. No. 03-10945(MFW) (Bankr. Del.).  Docket Number 8268. Hogan Dec. Exhibit "7" (emphasis added) at page 52 of 59.  *See* Hogan Dec. Exhibit "5" (the "Non-Discharge Order").

More to the point, the Fleming Confirmation Order was the operative Order for purposes of collateral estoppel and specifically addressed the issue of

10

exculpation of the Lenders and incorporated the earlier interlocutory DIP finance orders.  The Fleming Confirmation Order establishes that Mr. Berry's claims against the Lenders survived.  *See* Confirmation Order,  Hogan Dec. Exhibit "6" at page 32 of 46.  *See Bucklew v. Hawkins, Ash, Baptie & Co. LLP*, 329 F.3d 923, 931 (7th Cir. 2003) (copyright infringement claim unlike patent infringement is an intentional tort).   The Non-Discharge order, the Plan and the Confirmation Order makes the claim that Mr. Berry was caught in the Fleming-Lender web just wrong on both the law and the facts.

Third, just on due process grounds, the docket that was appended to the Declaration of Erin Brady as Exhibit "L" shows that Mr. Berry did not appear in the Bankruptcy until after the Bridge Finance order was entered.  Finally, the Lenders instant counsel has made this same claim before the Delaware Bankruptcy Court specifically the fact of Mr. Berry's threat to sue these very same lenders with no result order of the Bankruptcy Court.  Hogan Dec. Exhibit "8" at pages 2 to 3. If the Lenders actually believed that these Orders have the alleged effect, then their remedy is to the Bankruptcy Court.

Finally, for the purposes of this Motion, it appears well settled that the issue of the collateral estoppel effect of orders of in other cases can't be raised in a Rule 12(b)(6)  motion.  Should the court consider it in ruling on the Motion by

considering these collateral materials, that will convert it to a motion for summary judgment and Mr. Berry is entitled to an opportunity to rebut it on a record developed under Fed. R. Civ. P. 56.

> Courts will usually permit defenses based on the preclusion doctrines to be raised and determined in [12(b)(6) motions] if the grounds for preclusion appear on the face of the complaint or consist of matters of which the court can take judicial notice. If extrinsic evidence such as the pleadings or judgment in the previous case are necessary to support the motion, it will be treated as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

Moore's Federal Practice 3d, § 131.50[2] (2005) (emphasis added).

Should the Court proceed regarding this absurd claim without affording Mr. Berry sufficient opportunity to respond, the Complaint does not allege that the loan documents are the "sole" basis for liability. The Lenders admit in their Motion that the Bankruptcy Court order stated that the loans could not be the "sole" basis for finding control.

Second, the control alleged in the Complaint need not be total to be sufficient to impose infringement liability. The issue is whether the Lenders control was sufficient to end the infringement. It is not necessary for Mr. Berry to even prove that the control was total over all aspects of the Debtor's operations.

Third, and more to the point, the statutory basis that the Lenders cite as the

12

basis for the interpretation they advance,  Bankruptcy Code, 11 U.S.C. § 364(e),

does not grant a lender any discharge for prior or ongoing bad acts.  It simply

protects the liens of a debtor in possession ("DIP") lenders where the DIP

financing orders are later reversed on appeal unless stayed as follows:

> The reversal or modification on appeal of an
> authorization under this section to obtain credit or incur
> debt, or of a grant under this section of a priority or a
> lien, does not affect the validity of any debt so incurred,
> or any priority or lien so granted, to an entity that
> extended such credit in good faith, whether or not such
> entity knew of the pendency of the appeal, unless such
> authorization and the incurring of such debt, or the
> granting of such priority or lien, were stayed pending
> appeal.

Bankruptcy Code, 11 U.S.C. § 364(e).

Mr. Berry is not attacking the Lenders' liens and their citation to this section

is absurd but points to the Lenders' desperation.  There is no authority whatsoever

that a DIP lender is absolved from all of its own independent wrongs to third

parties simply because it chooses to lend to a debtor.  Not surprising, none of the

cases cited in the Memorandum support the Lenders position.

Because the four corners of the Complaint do not give a basis for the

dismissal the Court must deny the Motion.  Even considering the evidence

presented by the Lenders, when viewed in the context of what actually transpired

in the Bankruptcy on the limited record that Mr. Berry can present, the Motion

13

fails.

    3.    Mr. Berry Has Properly Alleged Contributory Infringement.

The Lenders' claim that Mr. Berry has not pled a *prima facie* contributory claim is simply nonsense.   The Complaint, reference to which is generally noticeably absent from the instant Motion, sets forth a clear claim for contributory willful infringement.

First, to even get to the Lenders' argument this Court would have to ignore the Complaint that alleges that date of discovery as March 2006.  The Lenders appear to concede that only the statute of limitations will save them from liability for all the claimed pre-petition willful infringement from 2002 to April 2003.  The Complaint also alleges fraudulent concealment another ground to deny the Motion. This is a factual issue and the Court must accept the facts in the Complaint as true

Second, the Motion parses the elements that Mr. Berry must prove and appears to take issue with the requirement of proving "actual or constructive knowledge of the direct infringement" and "substantial participation in the infringing activities."  Memorandum in support of Motion at page 18.  First, the Complaint, alleges the Lenders knowledge as follows:

    21.    Starting in the Spring of 2002, Defendants Deutsche
             Bank Trust Company Americas and  JP Morgan Chase
             Bank in their separate capacities and as agents for the
             secured lenders of Fleming Companies, Inc. had reason

14

to know that Fleming might be engaged in infringing activities but because the Lenders enjoyed a direct financial benefit from the continued use of the Berry FCS they continued to provide funding and to exercise complete control over Fleming to cause Fleming to continue to infringe plaintiff's work. The infringement of Mr. Berry's work from after the Fall of 2002 when the Lenders were given infringement warning letters and became aware of Mr. Berry's right to be paid for infringing use of his work that continued until the filing of the voluntary Chapter 11 Petition on April 1, 2003, the Lenders received significant sums of money derived from the infringing activities. The knowledge of the infringement is imputed to other Fleming Lender's.

22. The Lenders that responded to the Berry infringement warning letters all denied any infringement. It was not until March 2006 that Mr. Berry learned that these denials were false. Because the denials were made by publically traded and regulated financial institutions regarding whom false statements made regarding willful infringement would amount to misprision of a felony, it was reasonable that Mr. Berry relied on their denials and therefore his discovery of the true extent of their complicity was actively concealed from him.

23. At the time of this jury verdict Fleming's lack of creditworthiness combined with the ongoing Securities and Exchange Commission ("SEC") formal investigation caused certain of the Lenders to be Fleming's only available source of operating capital. Based on the then existing loan covenants and the fact that Fleming had no post-petition financing in place, the Lenders held total control over Fleming's operations and exercised that control to cause Fleming to continue to infringe Plaintiff's works after it filed for Chapter 11 protection.

24. Despite the knowledge that Fleming was an adjudicated

15

willful infringer the Lenders caused Fleming to continue to infringe so that the Lenders could be paid on their loan obligation.

25.     In order to realize the Lenders' objective to sell the Fleming wholesale division it was necessary to keep the infringing Fleming freight operations in operation to preserve the value of the Fleming loans owed to the Lenders that, but for the use of the Berry FCS 1993, could not be repaid.

26.     Because the March 6, 2003 willful infringement jury verdict meant that a permanent injunction might be issued any time, Fleming filed its chapter 11 petition despite the fact that it had no proper Debtor-in-Possession financing in place.  The Lenders, though aware that Fleming was going to continue to infringe in the period after the jury verdict or, in the alternative, having knowledge of facts that would have put a reasonable lender on notice of ongoing infringement, directed Fleming to use another derivative of the Berry FCS 1993 as a replacement so that Fleming would continue to have the ability to pay the Lenders' loans from money derived from infringement post-petition.

27.     The Lenders, undeterred by the potential for infringement liability believing that they could secretly control Fleming free from detection, directed Fleming to continue to operate the Fleming Freight logistics business using infringing software.

28.     Starting no later than January 1, 2000 and continuing to no earlier than June 9, 2003, Fleming Companies, Inc. and its employees engaged in thousands of separate act of direct infringement.

29.     The Lenders aided, facilitated, and enabled thousands of separate acts of FCS 1993 infringement.

16

30. The Lenders engaged in substantial participation in the infringing activities including providing finances that were intended to advance the infringement.

31. Even if the Lenders did not have actual knowledge of the infringing activity they had  reason to know of the third party's direct infringement and had the power and ability to stop it and are liable for contributory infringement.

32. The Lenders had the power to control the infringement.

33. The Lenders had a direct financial interest in the continuation of Fleming's Hawaii logistics operation as the one asset of value securing the loans.

34. But for the continued infringement the Lenders would have received little or nothing on their secured loans and are liable to Plaintiff as vicarious infringers.

Complaint, Hogan Dec. Exhibit "1." These factual allegations are to be deemed true and the Motion must be denied.

As to how much knowledge need be proven to expose the Lenders to infringement liability, it is only necessary that the allegedly contributory infringer have knowledge of the infringing activity.  First as to the pre-petition period they can't deny that they knew because that is deemed to be true.   The Lenders don't even contest this fact.  As to the post-petition period, just because they relied on legal advice proved to be erroneous as to whether the use of the Dillon post-petition derivative was infringement they can't escape liability because they had all

the facts to make their own determination whether Dillon's recasting of the Berry

work was infringement.  They, more than any other participant, had the means to

investigate what they knew were claim of continuing infringement but didn't.   It is

knowledge of the activity they are charged with and they can't claim they didn't

know that Fleming was continuing to use Berry's work under a cloud of

infringement.  Mr. Berry has no burden to prove that they fully knew it was willful

infringement.  *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*,

443 F.2d 1159, 1162 (9th Cir. 1971).

> Contributory infringement originates in tort law and
> stems from the notion that one who directly contributes
> to another's infringement should be held accountable. *See
> Sony v. Universal City*, 464 U.S. at 417 464 U.S. at 417;
> 1 *Niel Boorstyn, Boorstyn On Copyright* § 10.06[2], at
> 10-21 (1994) ("In other words, the common law doctrine
> that one who knowingly participates in or furthers a
> tortious act is jointly and severally liable with the prime
> tortfeasor, is applicable under copyright law").
> Contributory infringement has been described as an
> outgrowth of enterprise liability, see 3 Nimmer §
> 1204[a][2], at 1275; *Demetriades v. Kaufmann*, 690 F.
> Supp. 289, 292 (S.D.N.Y. 1988) 690 F. Supp. [**14]
> 289, 292 (S.D.N.Y. 1988), and imposes liability where
> one person knowingly contributes to the infringing
> conduct of another.  The classic statement of the doctrine
> is in Gershwin, 443 F.2d 1159, 1162 443 F.2d 1159,
> 1162: "One who, with knowledge of the infringing
> activity, induces, causes or materially contributes to the
> infringing conduct of another, may be held liable as a
> 'contributory' infringer." *See also Universal City Studios
> v. Sony Corp. of America*, 659 F.2d 963, 975 (9th Cir.

1981) 659 F.2d 963, 975 (9th Cir. *1981)Universal City Studios v. Sony Corp. of America*, 659 F.2d 963, 975 (9th Cir. 1981) 659 F.2d 963, 975 (9th Cir. 1981), *rev'd on other grounds, on other grounds*, 464 U.S. 417, 78 L. Ed. 2d 574, 104 S. Ct. 774 (1984) (adopting Gershwin in this circuit).

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (citations in original).

In regard to substantial participation, *UMG Recordings v. Bertelesmann AG*, 222 F.R.D. 408, 410 (N.D. Cal. 2004), just like the instant case, involved a claim for contributory infringement against a lender who kept the Napster infringement operating while a replacement system was being developed. The lender failed to obtain dismissal though claiming, like the instant Lenders, that lending to the infringer will not expose the lender to contributory infringement liability. Unlike the present case where the instant Lenders are just one step removed from the direct infringer, the district court noted that in *Bertelsmann,* the infringement was "tertiary" or an additional step removed. The borrower, unlike Fleming, was not a direct infringer but only a vicarious and contributory infringer. Despite this more remote connection to the direct infringer, the court in *Bertelsmann* correctly found the complaint stated a claim because it alleged more than simple control over the infringer, it alleged that lenders were liable for "directing the infringing activities..." *Id*. at 412-13. Mr. Berry's Complaint, the Memorandum

19

notwithstanding made similar factual allegations:

    21.    Starting in the Spring of 2002, Defendants Deutsche Bank Trust Company Americas and JP Morgan Chase Bank in their separate capacities and as agents for the secured lenders of Fleming Companies, Inc. had reason to know that Fleming might be engaged in infringing activities but because the Lenders enjoyed a direct financial benefit from the continued use of the Berry FCS they continued to provide funding and to exercise complete control over Fleming to cause Fleming to continue to infringe plaintiff's work. The infringement of Mr. Berry's work from after the Fall of 2002 when the Lenders were given infringement warning letters and became aware of Mr. Berry's right to be paid for infringing use of his work that continued until the filing of the voluntary Chapter 11 Petition on April 1, 2003, the Lenders received significant sums of money derived from the infringing activities. The knowledge of the infringement is imputed to other Fleming Lender's.

    24.    Despite the knowledge that Fleming was an adjudicated willful infringer the Lenders caused Fleming to continue to infringe so that the Lenders could be paid on their loan obligation.

    25.    In order to realize the Lenders' objective to sell the Fleming wholesale division it was necessary to keep the infringing Fleming freight operations in operation to preserve the value of the Fleming loans owed to the Lenders that, but for the use of the Berry FCS 1993, could not be repaid.

Hogan Dec. Exhibit "1."

    The Lenders may not like it but they can't deny that the instant Complaint not only alleges all that was found to be necessary in *Bertelsmann*, but also was a less remote infringement. Here, the Lenders were directing and assisting a direct

20

infringer.

First, the Lenders knew they were participating in willful infringement starting in 2002.  The emails that the PCT addressed during trial in the Spring of 2006  prove that the Lenders were fully aware of what Fleming was doing and that Mr. Berry claimed ongoing infringement.  Hogan Dec. Exhibit "9" at Exhibit "A." They were clearly calling the shots as to Mr. Berry's works.  Hogan Dec. Exhibit "10. " [3] The Complaint alleges they were aware of the infringement.  The fact of the infringement is established.  Mr. Berry has alleged and can prove that they could have stopped it. That is all he need allege.  *See also Universal City Studios v. Sony Corp. of America*, 659 F.2d 963, 975 (9th Cir. 1981) 659 F.2d 963, 975 (9th Cir. 1981), *rev'd on other grounds*, 464 U.S. 417, 78 L. Ed. 2d 574, 104 S. Ct. 774 (1984) ("a defendant's mistake as to the legal consequences of his actions does not constitute an excuse for an infringement");

> [E]ven where the defendant believes in good faith that he is not infringing a copyright, he may be found liable. See County of Ventura v. Blackburn, 362 F.2d 515 (9th Cir. 1966) (trial court's determination that "lack of intent to infringe does not excuse legal liability upheld").

*Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978) (citation in original).

Fleming didn't even claim to have stopped using the version of FCS it knew

---

[3]    This email will be produced to the Court *in camera* a the hearing.  *See* Hogan Dec. ¶ 11.

was infringing until April 1, 2003.  The Lenders who were working with Fleming

lawyers knew that Fleming was continuing to infringe.  After the filing of the

Bankruptcy, the Lenders were hands on in control of the actual decision making

regarding the ongoing infringement. Mr. Berry need not show that the Lenders

controlled every aspect of the Debtors, only the infringement.

    4.    Vicarious Infringement Against the Lenders Like Fleming is Clear.

    The only basis for claiming that Mr. Berry has not alleged a claim of

vicarious infringement is based on the erroneous claim that Mr. Berry has not

presented a "viable theory" that could prove the Lenders had a direct financial

interest in the infringing activity.  First, the Lenders own lawyers in previous case

filed a document claiming that the Lenders were actively involved in the activities

surrounding the infringement.  Hogan Dec. Exhibit "9."  What were they doing if it

didn't have anything to do with their financial interest?  *See also* Hogan Dec.

Exhibit "10."   Contrary to the Motion, the Complaint, that must be taken as true,

sets forth the elements of a claim of vicarious infringement, in particular, facts

alleged that are contrary to the factual spin set forth in the Memorandum, as

follows:

    7.    Despite having touted state of the art distribution software, Fleming's
          actual interest in such technology was as a willful infringer of a work
          entitled Freight Control System 1993 ("FCS1993") and over one

22

hundred subsidiary unpublished works that were and remain all owned by Wayne Berry as the author and copyright owner.

8.    From on or about January 1, 2000 to the time of the filing of the voluntary Chapter 11 Bankruptcy petition on April 1, 2003, Fleming's Hawaii division was operating a freight logistics company using an illegal derivative of the Plaintiff's original work.  This use continued to no earlier than June 9, 2003.  This division along with feeder warehouses in California were the only parts of the Fleming wholesale operation that interested the only party willing to purchase the Fleming wholesale operations.  The Hawaii division was entirely dependant on the use of illegal copies of Berry's works from the filing of the Petition to no earlier than June 9, 2003.

9.    To avoid an imminent shutdown of its operations and to further the Pre-Petition Lenders goal of repayment of the Pre-Petition Credit Agreement, Fleming sought and obtained fresh working capital to fund on-going post-petition operations including the new acts of infringement of Plaintiff's works.  To that end, certain of the Pre-Petition Lenders including the Defendants named herein agreed to fund Flemings's wholesale operations with an emergency $50,000,000 in financing (the "Bridge Financing") to save Fleming's operations from an imminent shut down.  Hereinafter these lenders are referred to as the Post-Petition Lenders."

33.   The Lenders had a direct financial interest in the continuation of Fleming's Hawaii logistics operation as the one asset of value securing the loans.

34.   But for the continued infringement the Lenders would have received little or nothing on their secured loans and are liable to Plaintiff as vicarious infringers.

Hogan Dec. Exhibit "1."

What the Lenders fail to disclose in their Motion is that the Lenders were

23

paid, in large part, from the sale of the Fleming wholesale business. The only wholesale divisions that C&S cared to keep were the Fleming Hawaii division and the two California feeder warehouses alleged in the Complaint to have been kept valuable through the ongoing infringement. Hogan Dec. Exhibits "14" and "15" that show the Fleming Divisions and the current C&S wholesale divisions. Only Hawaii, Sacramento and Tracy California remain.

In addition, the Lenders seek to mislead the Court by claiming that they were paid from some pot of money generated by the Fleming operations. *See* Hogan Dec. Exhibit "11" at page 6 ¶¶ 11 to 13, evidencing that $255.8 obtained from sale of the Fleming Wholesale operations was used to pay down the Lenders' pre-petition loans in October 2003. In any event, the allegations in the Complaint must be taken as true. The divisions were sold because C&S was interested only in the Hawaii division that continued to operate after Bankruptcy up to June 9, 2003, as the Court may recall from the trial, solely because it was continuing to use the infringing Berry work. *See* Hogan Dec. Exhibit "2" is a true and correct copy of an excerpt of the Transcript of Proceedings dated March 2, 2006, in *Wayne Berry v. Hawaiian Express Service, Inc.*, CV 03-00385 SOM-LEK, Testimony of Brian Christensen, at page 123:20 to 125:15. *See* also Hogan Dec. Exhibit "16." Testimony of Mark Dillon, Hearing on Preliminary Injunction, September 28,

24

2004,  in *Wayne Berry v. Hawaiian Express Service, Inc*., CV 03-00385 SOM-LEK, at page 113:8 to 20 (Dillon admits that without a freight control system, continued operations would be "impossible").

Among the more absurd parts of the Lenders Motion is the claim that Mr. Berry need  show that Deutsche Bank and Chase Bank and the other lenders would have gone out of business had they not been repaid on these loans.  The Plaintiff simply has to show that they had a financial motivation to continue the infringement and that motivation caused them to make decisions that, in retrospect, lenders with a little less greed would perhaps have avoided.  These Lenders did not.  They continued to take money from operations that they knew or had reason to know were engaged in acts of infringement.  The Ninth Circuit *Napster* litigation makes it clear and the Lenders acknowledge that  lenders can be liable for contributory infringement. The Complaint is sufficient to proceed against the Lenders and the Motion must be denied.

III.    CONCLUSION.

Should the Court believe that any part of the Complaint is defective, the Court should allow an amendment.

COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT

Comes now Plaintiff, Wayne Berry by and through his undersigned counsel

and hereby respectfully moves for Summary Judgment on the issue of Statute of

Limitations, Lender Control and Vicarious Infringement.

This Counter-Motion is brought on the grounds that there is no genuine issue

of fact regarding the issue of the statute of limitations, lender control and vicarious

infringement and that Plaintiff is entitled to judgment as a matter of law.     This

Counter-Motion is brought pursuant to LR 7.9 and is supported by the Concise

Statement and Declaration of Timothy J. Hogan and the Exhibits attached thereto

and all the record of this case all of which is incorporated by this reference.  III.

DISCUSSION

Plaintiff incorporates by this reference the above Memorandum in

Opposition to the Defendants' Motion to Dismiss.

A.     Bankruptcy Court Orders Establish that the Lenders May Be Sued for
       their Conduct as a Matter of Law.

Contrary to the snippet of selected orders that were included in the materials

filed by the Lenders the operative orders related to the confirmation process make

clear that Mr. Berry can proceed against the Lenders.  Collateral estoppel is on Mr.

Berry's side not the Lenders and summary judgment is proper on the issue of

collateral estoppel regarding the continued liability of the Lenders, the Fleming

Bankruptcy notwithstanding.  *See* Concise Statement at Numbers 1 to 3.

 Specifically, the Bankruptcy Court ruled that even in regard to the loan

26

transactions, the Lenders remained liable for their own misconduct.  *See* Confirmation Order,  Hogan Dec. Exhibit "6" at page 32 of 46.   It also appears that Deutsche Bank was specifically denied any benefit of any of  the release and indemnity provisions.  Hogan Dec. Exhibit "7" at page 59 of 59.  The Lenders can't enjoy the benefit of the false testimony that resulted in the finding of inadvert.  It is undisputed that Dillon's claim that he failed to keep a copy of the original Berry FCS was false.   Hogan Dec. Exhibit "9" at PDF page 19 of 27.  In this case, the Lenders knew that Fleming was an infringer. The Lenders knew that the recasting of the Berry work post-bankruptcy was infringement.  Moreover, despite claiming that the work involved contained only slight modifications, and that the continued use was necessary because Mark Dillon failed to retain a copy of the original Berry work, the email that the Lender's counsel filed in Berry v. Hawaiian Express shows this to have been nothing but a fabrication. Hogan Dec. Exhibit "9" at PDF page 19 of 27.  The Lenders had sufficient knowledge to know of the infringement.  Willful blindness to the obvious facts is no defense to infringement.

 B. The Statute of Limitations was Tolled. Even if it Hadn't Been Tolled there is No Issue of Fact as to the Date that the Berry Claims Accrued.

 The Hogan Dec. Exhibit "3" establishes that the Lenders tolled the statute. The March 2, 2006 trial transcript at establishes the date that the Lenders'

27

complicity was first discovered.  *See* excerpt of the Transcript of Proceedings dated March 2, 2006, in *Wayne Berry v. Hawaiian Express Service, Inc*., CV 03-00385 SOM-LEK,  Hogan Dec. Exhibit "2" at page 108:12-17.  There is no issue of fact that the statute of limitations has not expired and Mr. Berry is entitled to judgment as matter of law as to the issue of the copyright statute of limitations.

C.     The Lenders are Liable for Vicarious Infringement.

According to the Lenders, the elements of vicarious infringement require a showing of (1) Direct infringement (2) Defendants' right and ability to supervise the infringing activity and (3) Direct financial interest in the infringing activity. Memorandum in Support, at pag 19.

1.     The Direct Infringement was already established in two previous lawsuits.  *Berry v. Fleming*, CV01-00446 SPK-LEK  and *Berry v. Hawaii Express Service, Inc.*, CV01-00385 SOM-LEK.  Concise Statement Number 7.

2.     The infringer's attorneys professed loyalty to the Lenders but more importantly admitted that the Lenders controlled them during a time that Fleming has already been determined to have been engaged in infringement.  Concise Statement Numbers 4 to 6.

3.     The continued operation of the Hawaii wholesale division resulted in payment of the Lenders' loans as proceeds  derived from the continued infringing

28

use of Berry's work.   Concise Statement Numbers 8 & 9.

There is no issue of fact that the Lenders were in a position to stop the

infringement but didn't.  The reason is simple, they wanted to be paid from the

proceeds of the ongoing wholesale operation in Hawaii. That is a pure a case of

vicarious infringement and there is no issue of fact and Plaintiff is entitled to

judgment as a matter of law.

II.    CONCLUSION

Mr. Berry respectfully asks that the Lenders' Motion be denied.  Further,

Mr. Berry asks that judgment be entered for Mr. Berry and against the Lenders on

the issues of statute of limitation, collateral estoppel of the Bankruptcy Court

Orders and on the claim of vicarious infringement.  The matter should be then set

for trial on damages to the jury and Count II damages for unjust enrichment.

DATED: Honolulu, Hawaii, July 5, 2007.

/S/Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY