# Exhibit 4

LYNCH ICHIDA THOMPSON & KIM

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Telephone No. 528-0100
Fax No. 528-4997

Attorney for Plaintiff
WAYNE BERRY

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 03 2001

at 10 o'clock and 45 min. A M
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY | ) | Civ. No. CV01 00446 SPK LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | **VERIFIED COMPLAINT; EXHIBITS "A" through "F"; SUMMONS** |
| FLEMING COMPANIES, INC., aka FLEMING FOODS, INC., aka FLEMING, DOE INDIVIDUALS 1-50 AND DOE PARTNERSHIPS, CORPORATIONS AND OTHER ENTITIES 1-20, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

### VERIFIED COMPLAINT

COMES NOW, Plaintiff Wayne Berry ("Plaintiff"), by and through his undersigned counsel, and hereby complains of the above-entitled Defendants and avers as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction under federal subject matter jurisdiction pursuant to the Federal Copyright Act 17 U.S.C. §§ 101, et seq. and 28 U.S.C. § 1338(a).

2. Defendant Fleming Companies, Inc., aka Fleming Foods, Inc., aka Fleming ("Fleming") is a corporation formed under the laws of the State of Oklahoma with its principal place of business in the State of Texas.

ATTEST: A True Copy
WALTER A.Y.H. CHINN
Clerk, United States District
Court, District of Hawaii

By _____
            Deputy

3. Fleming maintains an agent for service of process in the State of Hawaii.

4. Fleming conducts business that is the subject matter of the instant Complaint within the State of Hawaii and the District of Hawaii. Fleming through registration at the State of Hawaii Department of Commerce and Consumer Affairs, makes itself amenable to service within the State of Hawaii.

5. Defendants Doe Individuals 1-50 and Doe Partnerships, Corporations and Other Entities 1-20 are persons who may be liable to plaintiff for that acts and omissions complained of herein, but whose names, identities and capacities are presently unknown to plaintiff and its attorney. These additional Doe defendants will be identified upon their discovery by plaintiff.

6. Plaintiff is an individual national domiciliary of the United States and is a resident and citizen of the State of Hawaii and has standing to bring the instant action.

7. The majority of all acts conferring venue relevant to this proceeding occurred in the State of Hawaii.

## GENERAL ALLEGATIONS

8. On or about January of 1995 Plaintiff was approached by Atlantic Pacific International, Inc. (API) to design and implement a computer software system for API. Plaintiff agreed to commence the development under the agreement that he would retain all rights to the Copyrights. Plaintiff's work was not work made for hire.

9. During 1995 Plaintiff worked on his API/Fleming system.

10. On or about November 27, 1995 the software was ready to put on-line and begin testing at API. November 27, 1995, was the software's first date of publication. This software was used by employees of API to perform API's freight logistics services for a number of customers.

11. The software is covered by three copyright registrations as follows: "FlemingPO.exe" (TX5-079-439), "Freight Control System" (TX5-079-445) and "Prepaid Vendor Invoice Definition For Crystal Reports V6.0" (TX5-268-865). These are complimentary systems designed to work together to automate and reduce the manual labor involved in consolidation and containerization of freight.

12. "FlemingPO.exe" is a program written by Plaintiff, primarily in Microsoft "C" programing language using both the Visual Develpment Environment and hand coding. This program processes industry standard Electronic Data Interchange ("EDI") 875 data sets, which exist as native ASCII files in the "875" format. The program parses and converts the ASCII data to a format acceptable by the "Freight Control System" database. As "FlemingPO.exe" prepares each ASCII record for the "Freight Control System" database, it also researches any prior transactions similar to the record about to be processed. If "FlemingPO.exe" finds a prior transaction, it uses this information as a "template" or recommendation of how the Purchase Order should be transported based on the last shipment. By combining the historical recommendations and the new Purchase Order information, "FlemingPO.exe" writes a new record to the "Freight Control System" database. This new record or Purchase Order is essentially a new revenue generating "order" or "service" to be performed.

13. "Freight Control System" is a program Plaintiff wrote in Microsoft Access and Visual Basic using both the Visual Development Environment and hand coding. "Freight Control System" is primarily a database designed to control and monitor consolidation and containerization of freight. "Freight Control System" contains database tables, queries, screens and reports that handle Accounts Receivable and Accounts Payable. The principle unique feature of the database is the ability for an user of this system to control a large number of Purchase

3

Orders and annotate shipping information to the records for billing and tracking purposes. The user can then build containers which contain these individual Purchase Orders. The user can enter costs for both individual Purchase Orders and for entire containers. The system will allocate container costs to the individual Purchase Orders. Finally, the "Bill To" party can be invoiced for the shipment and a profitability derived from the billed amount less the allocated costs.

14. "Prepaid Vendor Invoice Definition For Crystal Reports V6.0" is one of many reports Plaintiff created with Crystal Reports using both the Visual Development Environment and hand coding. This program connects to the "Freight Control System" database to formulas and pagination created in Crystal Reports. The formatted information from that database using table relationships and queries is ultimately used to produce a form that may be used for billing companies for transportation and logistic services. The name of the "Bill From" party is "hard coded" into the design. If the program is compiled, it is nearly impossible to change the "hard coded" "Bill From" name.

15. In 1999, after Plaintiff had completed the development of the subject software, API was terminated by Fleming. As a result API commenced a shutdown of its operations. During the shutdown period Plaintiff learned that API's successor as Flemings freight consolidator, Hawaiian Express, had hired computer consultants to duplicate his software. Plaintiff is informed and believes, that Hawaiian Express was unsuccessful in its attempt to pirate Plaintiff's software. Subsequently Plaintiff received reports from API personnel in Fleming's Kapolei facility and in API's California terminals that they had been contacted by Hawaiian Express and/or their agents to ask for assistance in obtaining copies of Wayne Berry's

software. This was done as part of the effort to pirate Mr. Berry's software in violation of Federal criminal Copyright laws.

16.    API's shutdown and transition of API personnel to Fleming was set for October 31, 1999. On or about September of 1999 Ralph Stussi, Flemings Hawaii Division President aware that Fleming would be unsuccessful in its attempt to pirate Plaintiff's software, began asking Plaintiff for a "User License" for his software. Plaintiff drafted a copy of a "User License" with its addendum and delivered it to Fleming on or about October 31, 1999. A true and correct copy of that "User License" is attached as Exhibit "A"

17.    The User License conditioned Flemings continued use of the system on Fleming's performance of certain covenants made to Plaintiff pertaining to the shutdown of API. The addendum required that all API employees would be employed by Fleming for a period of one year from November 1, 1999. Fleming violated this term of the license by terminating a Roger Perez, a former API employer prior to the end of the one year. In addition, Fleming was required to compile certain software modules and failed to do so that Fleming could continue to make illegal copies of the software in violation of Mr. Berry's copyrights. Upon information and belief, Fleming has made or permitted the making of more than ten unauthorized copies of the subject software which constitutes a criminal copyright violation.

18.    On or about November 24, 1999, Ralph Stussi wrote to Plaintiff and admitted that Fleming had received Plaintiff's Software License and Addendum. In that letter Fleming, through its authorized agent, specifically acknowledged Plaintiff's copyrights by admitting that:

> We only intend to use this software to support our local freight operation and will not sell or issue copies to other businesses. We do not intend to transfer copies of this software to other company locations beyond Hawaii. <u>To this end, we understand that copyright laws and international copyright treaties, as well as other</u>

5

> <u>intellectual property laws and treaties protect the software product.
> We understand that this product is licensed, not sold and that all
> title and intellectual property rights in and to the software product
> and any copies we make are owned by you</u>.

At true and correct copy of that November 24, 1999 letter is attached as Exhibit " B" (emphasis added).

19.     At the time that the November 24, 1999 letter was written, Fleming through its authorized agent, Ralf Stussi, knew that Fleming had already made unlawful modifications to Plaintiff's software that Fleming knew would cause financial harm to Plaintiff.

20.     Upon information and belief Fleming was negotiating for permission to do things with Plaintiff's software that it had already done without his knowledge or consent. Fleming did not keep its oral and written promises made to Plaintiff and thereby violated the terms of the limited license by terminating former API employees prior to the one-year employment term clause in the limited license. Fleming also directly made willful changes to Plaintiff's software. In addition, Fleming has transferred copies of the software out of the State of Hawaii and to third-parties in violation of the terms of the limited license and Federal copyright law.

21.     Upon information and belief, Fleming has incorporated source code and other copyright protected work of the Plaintiff in Fleming's corporate mainframe computer that can display copyrighted materials in several thousand computers worldwide.

22.     Plaintiff had created an original work of authorship which was fixed as a tangible medium of expression on or about 1995 and titled FlemingPO.exe" (TX5-079-439), "Freight Control System" (TX5-079-445) and "Prepaid Vendor Invoice Definition For Crystal Reports V6.0" (TX5-268-865). The work contained substantial amounts of material created by

Plaintiff's own skill, labor and judgment. The total number of hours employed by Plaintiff in the development of the subject software exceeds 10,000 hours.

23. The instant software work is copyrightable under the laws of the United States of America.

24. On or about October 19, 1999, Plaintiff complied with the statutory formalities for registering of the copyright of "Freight Control System" and the date, class and registration number certificates received from the Registrar of Copyrights are as follows: "Freight Control System" Registration Number TX 5-079-445. A true and correct copy of the original certificate and the accompanying deposit of the original source code is attached as Exhibit "C."

25. On or about October 19, 1999, Plaintiff complied with the statutory formalities for registering of the copyright of "FlemingPO.exe" and the date, class and registration number certificates received from the Registrar of Copyrights are as follows: "FlemingPO.exe", Registration Number TX 5-079-439. A true and correct copy of the original certificate and the accompanying deposit of the original source code is attached as Exhibit "D."

26. On or about May 21, 2001, Plaintiff complied with the statutory formalities for registering of the copyright to "Prepaid Vendor Invoice Definition For Crystal Reports V6.0" and the date, class and registration number certificates received from the Registrar of Copyrights are as follows: Registration Number TX5-268-865. A true and correct copy of the original certificate for "Prepaid Vendor Invoice Definition For Crystal Reports V6.0" is attached as Exhibit "E."

27. All publications of the instant software have been with proper statutory notice.

28. Plaintiff is the legal and beneficial owner of the copyrighted software.

29. On or about October 1999, Defendants and each of them have infringed upon Plaintiff's copyright as follows:

    A. Making unauthorized copies upon information and belief in an amount exceeding ten unauthorized copies;

    b. Making unauthorized modifications;

    c. Using software outside of the state of Hawaii;

    d. Failing to adhere to the terms of the limited license;

    e. Using the software after receiving notice of the infringement and demand to cease and desist, and

    f. Providing illegal copies to third-parties.

30. Upon information and belief, the subject software still in use by Fleming and its agent in California, in violation of Plaintiff's copyright.

31. On November 27, 2000 Plaintiff gave Defendant notice that Defendant's activities constitute infringement of Plaintiff's copyright and Defendant has continued such allegations notwithstanding such notice.

32. On May 31, 2001, Plaintiff's attorney sent Fleming, through counsel, a letter demanding adequate assurances that the software that is the subject of this litigation was not transferred to third-parties and that unlawful copies had not been made. Fleming did not respond and provide those assurances such that Plaintiff has reasonable cause to believe that piracy and other acts of criminal infringement have occurred and are continuing such that Plaintiff has suffered irreparable harm. A true and correct copy of that letter is attached as Exhibit "F." By not responding within the thirty-days as required by Haw. Rev. Stat. § 490:2-609, Fleming has

repudiated the limited license and has no rights, what-so-ever, to the continued use of the Plaintiff's software.

## DAMAGES

33. Plaintiff is entitled to actual damages and any profits to the infringer from the use of the unauthorized copies of the software or in the alternative. These amounts will be determined at time of trial. Plaintiff preserves his right to claim, at a later date, the right to statutory damages.

34. Plaintiff also gives notice of his intent to seek costs and attorney's fees as provided by law.

## TEMPORARY INJUNCTION

35. Based on the threat of continued violation of the copyright by its use and transfers of unauthorized copies to third parties, Plaintiff is suffering irreparable injury and the likelihood of success on the merits and seeks preliminary injunction as follows: impoundment of the infringing articles during the pendency of this litigation; preliminary injunction against infringing of the copyright; permanent injunction against the infringement of the copyright.

36. To the extent that Fleming seeks to continue the use of the software pendency of this case, Plaintiffs requests that Fleming be ordered to deposit, monthly, in the Court, the amount of three tenths of one percent (".003%") of Fleming Companies total gross revenues to be determined based on Fleming's gross sales as reported to the Securities and Exchange Commission in its filings.

WHEREFORE PLAINTIFF PRAYS FOR:

A. A temporary and permanent injunction directed to Defendant, and any agent or bailee of Defendant, as set forth herein and in the accompanying Motion, from using any software

derived in part from the source code of Plaintiff's software as evidenced by the registration of copyrights;

B. An order permitting Plaintiff and or the United States Marshall or his/her Deputy to enter upon Defendant's or its Agents' and/or Bailees' premises and to take possession of all software and data derived from the software that relates in any way to the software that is the subject of this case;

B. Damages for infringement of the copyright;

C. Accounting for all gains and profits derived by Defendants through infringement of copyright including a detailed accounting of all corporate revenues produced from November 1, 1999 to the date of the order or the date that the infringement ceased, which ever is later;

D. Delivery by Defendants of all copies of the offending software and all data created and the database associated with the software for destruction including, but not limited to, all data contained in the Fleming mainframe database;

E. Demand for costs of the action and reasonable attorney's fees and;

F. Such other and further relief as may be just.

Dated: Honolulu, Hawaii, _____ JUL 2 2001 _____.

_____
TIMOTHY J. HOGAN
Attorney for Plaintiff
WAYNE BERRY

10

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY ) | Civ. No. _____ |
| ) | (Copyright) |
| Plaintiff, ) | |
| ) | **VERIFICATION** |
| FLEMING COMPANIES, INC., aka ) | |
| FLEMING FOODS, INC., aka FLEMING, ) | |
| MARK HANSON, DOES 1-50, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**VERIFICATION**

I, WAYNE BERRY, have read the foregoing Complaint and the facts and allegations stated herein are true and correct to the best of my knowledge, information and belief.

Dated: Honolulu, Hawaii, _____JUL 2 2001_____.

_____
WAYNE BERRY

Subscribed and sworn to before me
this 2nd day of July, 2001.

_____
Jane Sung
Notary Public, State of Hawaii
My commission expires 8/12/2005