IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Fleming Companies, Inc., et al., | ) Case No. 03-10945 (MFW) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) Related Docket No. 11748 |
| | ) |
| | ) **Objection Deadline: August 7, 2006** |
| | ) **Hearing Date: August 28, 2006 at 9:30 a.m. EDT** |

## THE PCT'S RESPONSE TO WAYNE BERRY'S AUGUST 2, 2006 BRIEF

### INTRODUCTION

This claim objection should be continued pending resolution of the Hawaii District Court

litigation regarding possible attorney fee awards and any impact that may have on Mr. Berry's

pending appeal from a $57,534 jury verdict for the inadvertent infringement of his 1993 software

program. When Mr. Berry requested that this motion be continued so that the Hawaii District

Court litigation could be concluded, the PCT agreed. Inexplicably, even though the District

Court has still not ruled on the pending fee motions before it, Mr. Berry now seeks to go forward

on this matter.[1]

Briefly, Mr. Berry first sued Fleming pre-petition for, among other things, infringement.

The jury determined that Mr. Berry had licensed his software to Fleming for free and that

Fleming continued to have a license to use the software. Modifications to the software, however,

---

[1] Ultimately, the Hawaii court's decision regarding attorneys' fees may or may not be relevant to this Court's ultimate disposition of Mr. Berry's claim. As it now stands, Mr. Berry's attorneys' fees claim is contingent and unliquidated, and therefore not ripe for allowance. Nevertheless, if this Court decides that Mr. Berry is simply not entitled to an administrative claim for attorneys' fees, the PCT will stipulate to allowing Mr. Berry's claim in the amount of the jury verdict, subject to his right to seek reconsideration of his claim if the Ninth Circuit decides in his favor on appeal. The matter could be concluded here and now.

were found to be infringing. The jury awarded Mr. Berry $98,250, a fraction of the recovery he sought. Fleming attempted to return the modified software to its original licensed form and use what it believed to be the licensed version for a brief period following its bankruptcy filing. Mr. Berry continued to object to the use of the software. Fleming eventually stopped using the Berry software in any form and switched to the use of Excel spreadsheets. Nevertheless, Mr. Berry sued Fleming again, claiming that the spreadsheets were a modification of his software. The Hawaii court granted summary judgment to Fleming, ruling that Fleming was entitled to use the Excel spreadsheets. The Hawaii court also ruled that Fleming's efforts to remove the changes and return the Berry software to its licensed version was mistakenly unsuccessful and that, for the brief period of time that Fleming used the software post-petition, there was an inadvertent infringement. The jury trial in Hawaii focused on Mr. Berry's damage claim for inadvertent infringement and the Hawaii court considered Berry's claim for injunctive relief. The jury ultimately awarded Mr. Berry $57,534 for the inadvertent and brief use of the software from April 1, 2003 through June 9, 2003, only a fraction of the $55 million Mr. Berry sought from the jury. Additionally, the Hawaii court denied Mr. Berry's request for injunctive relief. The PCT has not appealed the jury verdict or court decisions. Mr. Berry did file an appeal. Now pending before the Hawaii court are various parties' claims for attorneys' fees and costs as prevailing parties, including the PCT's claim for an award of fees. Despite his appeal of the decision, Mr. Berry also claims to be the prevailing party with respect to the PCT and is seeking fees and costs.

Notwithstanding two different juries' rejections of Mr. Berry's excessive demands and the Hawaii court's denial of Mr. Berry's claim for injunctive relief because no one is using his software, Mr. Berry has continued his crusade. In the Hawaii post-petition litigation alone he sued 25 individual and corporate defendants. He has now threatened to sue the Debtors' former

2

secured lenders for their alleged complicity in the infringement. Mr. Berry epitomizes the term vexatious litigant, and the PCT hereby requests that this Court utilize its legal and equitable powers to put an end to this travesty, or at least as much of it as is now within this Court's jurisdiction.

The PCT filed its updated administrative claim objection because it had a deadline to do so, and had it not, Mr. Berry would have assuredly alleged a default judgment for the $201 million in damages he sought in his latest claim.

As shown below, the PCT promptly informed Mr. Berry that *it agreed with him* that until the Hawaii litigation and appeals were decided, this Court should not have to be burdened with prematurely dealing with this objection. The PCT therefore continued the objection several times. In an attempt to resolve the claim objection without the necessity for a hearing, in July the PCT even sent Mr. Berry a proposed stipulation providing for the allowance of his claim, in the full $57,534 amount, if that was the result from appellate review of the Hawaii district court verdict. Instead, as is his wont, Mr. Berry used the pretext of the pending claim objection to engage in yet another fishing expedition of onerous discovery, seeking to examine such central, critical matters as the PCT's compliance with the Rule Against Perpetuities.[2] This is just the latest of Mr. Berry's frivolities -- throughout his crusade against the PCT (and Fleming before it) he has at one time or another made all of the following allegations:

- That Fleming (post-confirmation) is somehow still in operation and scheming to sell outdated "re-pasteurized" milk to Hawaii consumers.

---

[2]    Mr. Berry ought to have done his homework before spending his (and the PCT's) time and money on his baseless allegations. As described in Part II.B below, Mr. Berry neglected to review the applicable Delaware statute regarding the Rule Against Perpetuities, which clearly states that the rule does not apply to the transfers out of a trust contemplated by the Plan and PCT Agreement.

- That Fleming and its counsel are involved with a smuggling conspiracy and/or organization "with a propensity for decapitating missionaries;"

- That Fleming has connections to terrorist organizations;

- That Fleming has dispatched armed gunmen to Mr. Berry's home in order to injure him;

- That Fleming has engaged in cigarette smuggling;

- That Fleming is affiliated with organized crime;

- That Fleming has engaged in trafficking of illegal firearms;

- That Fleming is engaged in a racketeering scheme involving Kmart; and

- That Fleming is/was behind a scheme to overcharge Hawaii consumers, using Plaintiff's FCS logistics software.

*See PCT's Renewed Objections to Administrative Claims Filed by Wayne Berry* (Claim Nos. 18428 & 18704) [D.I. 12831], pp. 10-12.

## FACTUAL BACKGROUND

1.      Mr. Berry first asserted his administrative claim -- then for $48 million -- in the month prior to plan confirmation.  In one of many efforts to reason and settle with Mr. Berry, and in this case try to move forward with confirmation, on June 18, 2004, the Debtors offered to pay Mr. Berry $400,000 in cash and to stipulate to an injunction in final satisfaction of his claims.[3]  Mr. Berry refused this offer.  At confirmation, this Court estimated Mr. Berry's administrative claim at just $100,000.  The Court did, however, permit him to continue his Hawaii litigation (which was then in its early stages) to definitively liquidate his claim.  Shortly after confirmation, Mr. Berry amended his administrative claim to $201 million.[4]

---

[3]    Mr. Berry had previously proposed $400,000 as a settlement amount just five months earlier.

[4]    *See* Affidavit of Lisa Odom ("Odom Aff."), Ex. A, filed concurrently herewith.

4

2.    The PCT first objected to Mr. Berry's claim on September 21, 2005 [D.I. 11748], just days before its administrative claims objection deadline. Before filing (or, for that matter, preparing) its claim objection, the PCT contacted counsel to Mr. Berry to request a tolling of the objection deadline in light of the fact that the Hawaii litigation was still ongoing (with trial scheduled in January 2006). *See* Odom Aff., Ex. B. Mr. Berry refused to agree to a standard tolling agreement, and in doing so, forced the PCT to file a formal objection. *See* Odom Aff., Ex. C. That objection was set for hearing in October of 2005 and, not surprisingly, this Court deferred ruling on the objection, ordering the PCT to renew its objection within 30 days of entry of judgment in the Hawaii action.

3.    Mr. Berry's last operative complaint, his second amended and verified complaint, alleged direct, contributory and vicarious infringement, conspiracy to infringe, misappropriation of trade secrets, violations of the Sherman Act, and RICO claims against 12 corporate entities and 13 individuals. Ultimately by trial, only the PCT and several individual employees were left as defendants. The Hawaii District Court's summary judgment ruling dismissed various claims against the PCT for conspiracy, trade secret misappropriation, reaffirmed the court's holding that any infringement was inadvertent and found that the Excel spreadsheets used after June 9, 2003 were non-infringing. Thus, Berry's window of possible infringement was from April 1, 2003, the date of Fleming's Chapter 11 petition, to June 9, 2003. Notwithstanding the summary judgment ruling, Berry continued his crusade and actually tried the case claiming over $50 million in damages. After a multi-day jury trial, a Hawaii jury awarded Mr. Berry just $57,534 for all of his claims for post-petition infringement, for 70 days' use of his software. This amount is seven times less than the PCT's initial settlement offer, nearly half the amount at which this Court estimated his claim and less than one percent of the over $200 million in damages he

originally sought through his lawsuit. Notably, the District Court, again, denied Mr. Berry the injunction he so relentlessly pursued.

4.      Ultimately, the jury's award of $57,534 was entered. The PCT has not appealed this verdict; Mr. Berry, however, has. Notwithstanding his appeal of the verdict, he has alleged that he is the prevailing party, while the PCT has simultaneously filed its own motion as the prevailing party to seek attorneys' fees.

5.      Pursuant to this Court's October 27, 2005 ruling, the PCT had 30 days from the time the Hawaii court issued its judgment to "relist" its objection to Mr. Berry's administrative claims. *See* Odom Aff., Ex. D at 96: 8-9. The PCT filed its relisted claim objection, updated to reflect the new facts, on April 6, 2006. Mr. Berry then asked the PCT on at least four separate occasions to continue the hearing on this matter, citing the fact that the claim could not be considered until it was fully liquidated and there was a final, non-appealable judgment. *See* Odom Aff., Exs. E, F, G, & H. The PCT agreed without issue, and told Mr. Berry that it would continue the hearing on the claim objection until at least late August. *See* Odom Aff., Ex. I. The parties set his response date for August 7, 2006.

6.      Shortly thereafter, Mr. Berry began taking discovery of the PCT and certain third parties -- purportedly related to the PCT's claim objection. A cursory review of his discovery requests, however, shows they are nothing more than another fishing expedition. *See* Odom Aff., Ex. J. The requests sought information ranging from whether the PCT has indemnity obligations to third parties relating to Mr. Berry, whether the PCT Agreement violates the Rule Against Perpetuities, whether Mr. Berry has an exemption from discharge, and whether the PCT

6

has "control" over C&S' counsel.[5]  This discovery only served to continue to harass the PCT and delay administration of this estate by causing the PCT to incur additional, unnecessary legal fees.

7.      The PCT responded to this frivolous discovery, choosing not to burden this Court (or the estate) with the time and expense of a discovery battle.  During this period, the PCT also continued its active efforts to settle with Mr. Berry, or at the least, resolve the controversy over his administrative claims.[6]  On July 24, 2006, the PCT offered to stipulate that (i) the jury verdict would be treated as an administrative claim and (ii) Mr. Berry could seek reconsideration of the allowed claim if he were awarded a greater amount on appeal.[7]  *See* Odom Aff., Ex. K.  The parties exchanged one round of correspondence regarding the proposed settlement stipulation, and then Mr. Berry inexplicably went silent.

8.      During this same period, as it appeared more likely that the Hawaii fee rulings would not be issued until after the scheduled August 28, 2006 hearing, the PCT suggested that both the August 28, 2006 hearing and Mr. Berry's corresponding response deadline be pushed back until the fee awards were issued.  *See* Odom Aff., Ex. L.  While the PCT does not believe Mr. Berry is entitled to his attorneys' fees as an administrative claim, it does not want to keep returning to this Court in a piecemeal fashion to adjudicate his claims.  Nevertheless, Mr. Berry changed his earlier position, ignored the PCT's offers to extend out the hearing until this Court was in a position to make a final ruling -- once and for all -- on his claims, and instead filed his

---

[5]    On information and belief, Mr. Berry also pursued discovery from various third parties who have absolutely no interest in the resolution of Mr. Berry's administrative claim against the PCT.

[6]    The PCT's representative, Robert Kors, personally attended part of the trial, and settlement meetings convened by the Hawaii District Court with a magistrate.

[7]    Mr. Berry has appealed a number of pretrial orders relating to his Hawaii litigation.  The PCT has not appealed the Hawaii jury verdict, preferring instead to simply end this litigation, once and for all.

response five days early on August 2, 2006. [D.I. 13167] Notably, the PCT's responses to Mr. Berry's last set of discovery were not due (and served) until August 2, 2006. The timing of Mr. Berry's filing further supports the fact that his discovery was not aimed at obtaining information relevant to his response, but was rather intended only to harass the PCT and to drive up litigation costs.

9.     After receiving Mr. Berry's response, the PCT again contacted Mr. Berry's counsel and offered to continue the hearing until after the Hawaii court issued its fee rulings. *See* Odom Aff., Ex. M. Mr. Berry refused this offer, and insisted that the hearing go forward on the basis that this Court should issue a blanket allowance of his administrative claim -- whatever that may ultimately consist of. As discussed more fully herein, such allowance would be inappropriate. Thereafter, the PCT sent Mr. Berry's counsel a letter notifying him that if he insisted on proceeding on August 28, 2006 -- requiring the PCT to both draft this response and prepare for and attend the hearing -- it would ask the Court to deduct the PCT's costs in doing so from any ultimately allowed administrative claim Mr. Berry may receive. *See* Odom Aff., Ex. N. A series of confusing letters and emails ensued from Mr. Hogan, but he ultimately insisted that the hearing go forward.

10.     In light of this response, the PCT requests that the Court deduct the PCT's documented fees and expenses for (i) preparing this response and (ii) preparing for and attending the August hearing from any administrative claim Mr. Berry is ultimately awarded.

11.     Mr. Berry's crusade continues. He has recently contacted counsel to the Debtors' former secured lenders and threatened to bring a contributory infringement suit against the lenders, based upon the fact that they (multi-billion dollar banks) allegedly actively contributed to the Debtors' inadvertent infringement of Mr. Berry's software. *See* Odom Aff., Ex. O. The

8

lenders, in turn, have demanded that the PCT indemnify them for their costs of defense and any damages pursuant to the terms of the prepetition and DIP financing credit agreements. The PCT and the lenders are still discussing whether the lenders indemnity claims are valid, but nonetheless, the lenders have already spent $100,000 dealing with Mr. Berry and, if history is a fair predictor, will inevitably be forced to spend more. Additionally, the PCT has been asked to indemnify two additional parties -- C&S and Guidance Software -- for their costs and damages relating Mr. Berry's frivolous claims against them.

12.     A jury found that Mr. Berry was injured in the amount of $57,534 for the Debtors' inadvertent infringement of Mr. Berry's spreadsheets. The Debtors' creditors have already paid far too much defending against Mr. Berry's inflated demands, a fact particularly egregious in light of the Debtors' generous June 2004 settlement offer. Mr. Berry must be stopped from further depleting the assets of the estate for his own whims, and to the detriment of the Debtors' other 19,000 creditors. Accordingly, the PCT requests that the Court either (i) allow Mr. Berry's administrative claim in the amount of the jury verdict, $57,534, denying all attorneys' fees and/or deducting the PCT's costs, or (ii) in the alternative, continue all consideration of this matter (and stay all discovery) until the Hawaii courts issue their final fee awards (or such other time as the Court deems appropriate).

## ARGUMENT

13.     Mr. Berry's brief is, quite frankly, unintelligible. While portions of his brief seemingly address issues relevant to the PCT's claim objection, others simply have no relevance whatsoever. To simplify its discussion of the issues Mr. Berry raises, the PCT has divided its Argument into two main parts. Part I addresses the issues Mr. Berry raises in his brief that are potentially relevant to the Court's consideration of his administrative claims. And Part II briefly

9

addresses Mr. Berry's remaining, superfluous arguments.[8] If the Court has additional questions

or concerns, the PCT will address them at the hearing or in supplemental briefing if necessary.

## I.      Matters Relevant To Adjudicating The Administrative Claims

### A.      The PCT Will Allow Mr. Berry's March 2006 Jury Verdict As An Administrative Claim

14.      As a threshold issue, and in furtherance of a final resolution of all Berry-related

matters, **the PCT previously offered that Mr. Berry could receive an administrative claim**

**for his $57,000 jury verdict.** The PCT informed Mr. Berry of the same nearly a month ago.

*See* Odom Aff., Ex. K. Additionally, the PCT offered to consent to entry of an order providing

that Mr. Berry may ask the Court to reconsider his allowed claim should the Hawaii courts award

him a greater amount on appeal.[9] 11 U.S.C. § 502(j). Accordingly, the PCT does not believe the

amount and priority of that portion of Mr. Berry's claim should be at issue (subject to deduction

and offset for any fees the PCT is awarded, either by this Court, or the Hawaii District Court).

### B.      Mr. Berry Cannot Recover Any Postpetition Attorneys' Fees Relating To His Prepetition Litigation

15.      Berry has never filed a proof of claim -- administrative or otherwise -- asserting

the right to recover his attorneys' fees for the *prepetition action*[10] as an administrative claim.

Nonetheless, Mr. Berry now asserts that he is entitled to a $45,586.72 administrative claim for

this amount. *See* Berry Response, ¶ 76. This claim is without merit.

---

[8]   Mr. Berry's response is full of false statements. The PCT will not burden the Court by refuting each and every statement he makes in his brief, but will be prepared to clarify any issues or facts at the hearing on this response. To be clear, the PCT's decision not to dispute and refute each false statement in Mr. Berry's brief is not -- and should not be considered -- its acquiescence in the truth of any such ramblings.

[9]   The PCT, of course, would retain its right to object.

[10]  Mr. Berry's prepetition action was filed well before the petition date, and was based on the Debtors' alleged prepetition infringement.

16.    As a preliminary matter, Mr. Berry cannot recover attorneys' fees he incurred postpetition relating to his prepetition verdict because he did not timely file a proof of claim against the Debtors' estate. The final administrative bar date passed on October 7, 2004. Prior to that date, Mr. Berry filed two substantial administrative claims against the Debtors' estates, neither of which made any mention of attorneys' fees relating to the prepetition (or for that matter, the postpetition) action. *See* Odom Aff., Ex. A & P. Where a claimant fails to timely assert a claim against a debtor's estate, its claim is barred as a matter of law. *See e.g.*, *Berger v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*, 96 F.3d 687, 690 (3d Cir. 1996) (explaining that a bar date serves as a "drop-dead date" that bars all pre-petition claimants that received required notice); *In re Metro Transp. Co.*, 117 B.R. 143, 147 (Bankr. E.D. Pa. 1990) (explaining that any amendments to claims after the bar date must be scrutinized very closely to ensure that the amendment is in fact genuine and not an entirely new claim). Mr. Berry cannot be allowed to refashion his claims for new theories and categories of claims nearly two years after he filed his claims. His attorneys' fee claim should be disallowed.

17.    Moreover, Mr. Berry's claim fails on its merits. Mr. Berry relies on *Boeing North Am., Inc. v. Ybarra (In re Ybarra)*, 424 F.3d 1018 (9th Cir. 2005) -- a Ninth Circuit case -- to argue that the attorneys' fees he incurred postpetition relating to his prepetition action should be paid as an administrative expense. *Ybarra* does not stand for this proposition. In fact, the *Ybarra* court (which dealt with a dischargeability issue in a Chapter 7 case) specifically recognized and reiterated that claims for postpetition attorneys' fees arising from a prepetition claim are *not* entitled to administrative expense priority because "[t]o be deemed an administrative expense, the claim must have arisen from a transaction with the debtor in possession." *See id.* at 1025 (citing *Kadjevich v. Kadjevich (In re Kadjevich)*, 220 F.3d 1016

11

(9th Cir. 2000) (claims for postpetition attorneys' fees arising from a prepetition claim were *not* entitled to administrative expense priority); *Abercrombie v. Hayden Corp. (In re Abercrombie)*, 139 F.3d 755 (9th Cir. 1998) (same)).

18.     Although there is no Third Circuit appellate decision directly on point, the lower courts in the Third Circuit have, like the Ninth Circuit, denied administrative priority to claimants seeking to recover postpetition attorneys' fees relating to a prepetition cause of action. Indeed, this Court made a similar ruling in *In re Kindred Healthcare, Inc.*, No. 99-3199, 2003 WL 22000598, at *3 - 4 (Bankr. D. Del. August 18, 2003). In *Kindred Healthcare*, claimants sued the debtor prepetition for various causes of action relating to the death of a nursing home resident. *Id.* at *1. Thereafter, the debtor filed a chapter 11 petition, which stayed the prepetition action until the parties agreed to modify the stay to permit the claimants to proceed with the state court action. *Id.* at *1. The claimants ultimately prevailed and filed a proof of claim asserting, *inter alia*, postpetition attorneys' fees relating to the prepetition action. *Id.* at *3. Although the plan did not expressly prohibit awarding attorneys' fees as part of an unsecured claim, the Court concluded that "postpetition attorneys' fees are not recoverable by an unsecured creditor, even where they have a contractual or other legal basis for their allowance." *Id.* at *4. The Court reasoned that because section 506(b) of the Bankruptcy Code specifically provides for the payment of attorneys' fees to secured creditors in certain circumstances, Congress evinced intent to disallow attorneys' fees to unsecured creditors in other circumstances. *Id.* More specifically, "'[i]f postpetition fees and costs were generally recoverable by all creditors, then Congress would not expressly provided [sic] for their recovery by oversecured creditors in § 506(b).'" *Id.* (quoting *In re Loewen Group Int'l, Inc.*, 274 B.R. 427, 444 n.36 (Bankr. D. Del. 2002)). Thus, Berry's claim for attorneys' fees that accrued postpetition on account of his prepetition lawsuit

12

(which he admits entitles him to only a general unsecured claim) is not entitled to administrative expense priority. *Id.*; *see also* Berry Response ¶76 ("The balance of this prepetition component [the prepetition jury verdict] should likely be treated as an allowed unsecured claim to be paid in stock of the reorganized debtors").

### C.    The Court May Not Award Mr. Berry A Blanket Allowance Of His Postpetition Attorneys' Fees As He Requests

(i)    Mr. Berry's Postpetition Attorneys' Fees Do Not Qualify As An Administrative Expense

19.    Mr. Berry turned down a generous $400,000 offer and settlement and dragged these estates through years of litigation for a claim that a Hawaii jury ultimately valued at $57,534. In doing so, he forced the PCT (and the Debtors before it) to spend significant sums defending itself against his inflated claims. Now Mr. Berry wants the PCT to pay *his* attorneys' fees as an administrative expense of the estates -- further diminishing the recovery of those very creditors who have unwittingly been forced to fund the PCT's defense to his vexatious litigation. Such an award would be a striking blow to the concepts of fair play and substantial justice.[11]

20.    "Administrative expenses are narrowly construed because they run counter to the central premise of bankruptcy distributions which is a pro rata distribution among all creditors." *In re Computer Learning Ctrs., Inc.*, 298 B.R. 569, 577 (Bankr. E.D. Va. 2003) (citations omitted). To qualify as an administrative expense, "the expense must have arisen from a postpetition transaction between the creditor and the debtor, and the transaction must have been 'actual and necessary' to preserve the estate." *In re Unidigital*, 262 B.R. 283, 288 (Bankr. D. Del. 2001).

---

[11]    As a threshold matter, and like his untimely claim for attorneys' fees relating to his prepetition action, Mr. Berry has never asserted a claim for attorneys' fees relating to his postpetition litigation in any proof of claim he filed with the Court. As previously discussed, Mr. Berry's claim may be denied on this basis alone.

21.     Under a strict interpretation of this rule, postpetition tort claimants generally would not be entitled to administrative expense priority because their claims do not *benefit* the estate. The Supreme Court found this strict construction to be unfair, however, in circumstances where a debtor-in-possession's tort causes injury to an unwitting third party, and fashioned a narrow exception to this rule in *Reading Co. v. Brown*, 391 U.S. 479 (1968). In *Reading*, the negligence of a receiver operating a Chapter XI business caused a fire that spread to an adjacent property, and the neighboring property owners sought an administrative claim for the fire damage. *Id.* The Court held that the neighboring property owners -- as innocent third party victims of the debtor-in-possession's tort -- were entitled to administrative priority. *Id.* at 478, 482. In fashioning this exception, the Court recognized that:

> Existing creditors are, to be sure, in a dilemma not of their own making, but there is no obvious reason why they should be allowed to attempt to escape that dilemma [by reorganization] at the risk of imposing it on others *equally innocent*.

*Id.* at 482-83 (emphasis added).

22.     The *Reading* rationale has since been applied to a variety of postpetition tort claims, including claims seeking attorneys' fees. In *Charlesbank*, for example, the First Circuit awarded postpetition attorneys' fees where the debtor-in-possession intentionally continued to operate its business in violation of a zoning ordinance and an injunction, causing damage to surrounding business owners. *Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.)*, 755 F.2d 200, 201 (1st Cir. 1985). In adopting the rationale of the *Reading* Court, the First Circuit opined:

> The debtor in this case *deliberately* continued a violation of law month after month presumably because it was more lucrative for the business to operate outside the zoning ordinance than within it. If fairness dictates that a tort claim based on negligence should be paid ahead of pre-reorganization claims, then, *a fortiori*, an

14

> intentional act which violates the law and damages others should
> be so treated.

*Id.* at 203.

23.    Mr. Berry -- unlike the property owner in *Reading* and the business owners in *Charlesbank*-- is not an innocent third party.  True, Mr. Berry has a $57,534 claim against the Debtors for their inadvertent, postpetition infringement of his copyrighted spreadsheet.  But Mr. Berry had the opportunity to settle his claim for *seven times more than what it is worth* just two weeks into the litigation.  Simply put, Mr. Berry would have saved the Debtors' creditors millions of dollars -- and received more than that to which he was ultimately entitled -- had he simply accepted that offer and ended the litigation there.  Instead, Mr. Berry *deliberately* rolled the dice, and essentially lost.  It would be an immeasurable injustice to permit a litigant like Mr. Berry to relentlessly pursue inflated claims against a debtor's estate and then require the estate (i.e., the debtor's *innocent* creditors) to fund that litigation.  Accordingly, the Court should find that a proper reading of *Reading* does not permit Mr. Berry, a postpetition tort claimant, to recover attorneys' fees where he refused to accept a settlement offer that exceeded the adjudicated value of his claim.

      (ii)    If The Court Is Inclined To Allow Mr. Berry's Attorneys' Fees On His Postpetition Claim, It Should Defer Ruling As The Matter Is Not Ripe for Adjudication

24.    If the Court is inclined to allow Mr. Berry to recover any postpetition attorneys' fees the Hawaii courts may award in his postpetition action, it should nevertheless defer ruling until the Hawaii courts decide that claim.  At this point, Mr. Berry's claim for attorneys' fees is nothing more than a contingent, unliquidated claim pending a ruling from the Hawaii courts.  At the conclusion of the postpetition litigation, Mr. Berry -- like the PCT -- filed a motion to recover attorneys' fees pursuant to 17 U.S.C. § 505, which provides:

15

> In any civil action under this title, the court in its discretion may
> allow the recovery of full costs by or against any party other than
> the United States or an officer thereof. Except as otherwise
> provided by this title, the court may also award a reasonable
> attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505 (emphasis added). This statute gives the Hawaii courts broad discretion in

awarding -- or denying -- costs and attorneys' fees. By definition, therefore, pending disposition

of his fee application, Mr. Berry's claim is both contingent and unliquidated. *See In re Mattera*,

203 B.R. 565, 571 (Bankr. D.N.J. 1997) (citing *Avellino & Bines v. M. Frenville Co., Inc. (In re*

*M. Frenville Co., Inc.)*, 744 F.2d 332, 336 (3d Cir. 1984)) (explaining that a contingent claim is

one that becomes due only on the occurrence of a future event and an unliquidated claim is one

that is "not ascertained in amount" or "not determined."). It is well settled law that courts cannot

allow, and therefore creditors cannot recover on, contingent or unliquidated claims. 11 U.S.C.

§ 502(c) (stating that contingent or unliquidated claims shall be estimated for allowance). Mr.

Berry is no exception to this rule. Accordingly, the Court should not allow Mr. Berry's claim

until the Hawaii courts enter a final order disposing of his fee application.[12]

25.    Moreover, it would be inequitable for the Court to allow Mr. Berry's attorneys'

fees as an administrative claim, *carte blanche*, when it is entirely possible that the Hawaii court

will also award the PCT all or part of its costs and attorneys' fees in the litigation. If, for

example, Mr. Berry were awarded $10,000 in attorneys' fees and the PCT were awarded

$50,000, the premature, wholesale allowance of Mr. Berry's claim could result in a situation

where the PCT must pay Mr. Berry's allowed administrative claim in cash while, at the same

---

[12]    In the alternative, the Court could estimate Mr. Berry's claim. Mr. Berry, however, has not provided any
evidence in support of his administrative claim to this Court. Moreover, given the Hawaii court's longstanding
experience with the case and the parties, it is the most appropriate forum to liquidate Mr. Berry's claim.

time, pursuing Mr. Berry separately for the amounts he owes to the PCT. This is an issue that could easily be avoided by simply deferring consideration of Mr. Berry's claim for attorneys' fees until the Hawaii courts have decided both applications.

## I.    Matters Not Relevant To Adjudicating The Administrative Claims

### A.    Wayne Berry's Administrative Claim Was Not Exempted From Discharge.

26.    Mr. Berry spends a substantial portion of his brief arguing that his postpetition claims are exempt from discharge by virtue of the Court's July 27, 2004 order.[13] [D.I. 9044] The Court has already rejected this argument.

27.    Mr. Berry's argument is founded in an order the Court entered on July 27, 2004. The last paragraph of that order reads:

> [Mr. Berry's] claims as set forth in the motion shall be exempted from the operation of any discharge and discharge injunction as contemplated by the Bankruptcy Code section 524 and/or the Plan of Reorganization.

Taken out of context, this could suggest that Mr. Berry did, indeed, receive a wholesale exemption from discharge. But when considered in light of the proceedings, it is clear that he did not.

28.    First and foremost, Mr. Berry's underlying motion did not seek an exemption from discharge (nor would that have been the proper vehicle for seeking such relief).[14] [D.I. 8471] Instead, Mr. Berry requested:  (i) relief from stay or, in the alternative, (ii) relief from the

---

[13]    *See Motion of Judgment Creditor Wayne Berry For Order Establishing Procedures Regarding Collection Upon Non-Dischargeable Final Judgment* [D.I. 9995] (the "Procedures Motion") and accompanying order denying motion [D.I. 10070].

[14]    Mr. Berry only cited sections 362(d)(1) (relief from stay) and 105(a) (powers of court) as statutory bases for the requested relief in his motion. Mr. Berry never mentions sections 1141(d) (effect of confirmation) or 524(a) (effect of discharge) as bases for his requested relief.

discharge and permanent injunction provisions of the proposed plan -- all for the purpose of

continuing to pursue his prepetition and postpetition Hawaii litigation. The Court considered

counsels' arguments, all of which went to the propriety of allowing Mr. Berry to continue his

prepetition and postpetition litigation after plan confirmation, and ultimately ruled on the record:

> THE COURT: So I will grant relief from the stay as to both the
> prepetition claim and reconfirm that under Title 28 Section 959 the
> postpetition action may proceed and *will specifically exclude that from any
> injunction in the plan to the extent it seeks to stop any action based on
> pre-confirmation postpetition activity*...

*See* Odom Aff., Ex. Q at 226: 3-9 (emphasis added). Notably, the Court did not mention or

allude to an exemption of discharge in its ruling.

29.     Mr. Berry drafted and submitted the July 27, 2004 order granting his motion.

Shortly after the order was entered, the Debtors recognized that the order could be read to

suggest that Mr. Berry was permitted to execute his prepetition judgment directly against the

Reorganized Debtors, rather than through the claims process. Given the on-going controversy at

that time surrounding Mr. Berry's enforcement of his prepetition judgment, the Debtors

contacted Mr. Berry's counsel and asked him to stipulate that Mr. Berry would have to return to

bankruptcy court for allowance of his prepetition claims. *See* Odom Aff., Ex. R. Mr. Berry

agreed, and on August 16, 2004, the Court approved a stipulation between the parties clarifying

that Mr. Berry's prepetition claims would be administered through the claims process. [D.I.

9233]

30.     Subsequently, Mr. Berry provided the Court the opportunity to further clarify its

July 27, 2004 order. On February 4, 2005, Mr. Berry filed a motion asking the Court to establish

the manner by which his "non-dischargeable" prepetition judgment should be paid or, in the

alternative, to grant him leave to pursue collection of his final prepetition judgment against the

18

Reorganized Debtors. [D.I. 9995] During the February 22, 2005 hearing on the motion, the

Court discussed and clarified its July 27, 2004 order as follows:

> THE COURT: So why is [Mr. Berry's judgment] not discharged?
>
> MR. HOGAN: Because, Your Honor, we got an exemption from discharge under the [July 27, 2004] order the Court signed.
>
> THE COURT: No, you got permission to liquidate your claim. You got relief from the injunction which prevented you from continuing your suit. You didn't get an exemption from discharge.

*See* Odom Aff., Ex. S at 15: 4-10. The Court further stated:

> THE COURT: Well I did not in my July order grant any exemption from discharge if you think that's the purport of the last paragraph. I think it's clarified in the further order that said all you were getting was the right -- relief from the stay and relief from the injunction of the plan confirmation order to allow you to liquidate your claim and that was it.

*Id.* at 17: 6-12. At the end of the day, the initial order drafted by Mr. Berry's counsel may have

been ambiguous, but the facts are not. Mr. Berry never asked that his claims be exempted from

discharge.[15] Mr. Berry never presented the Court with any evidence or arguments that would

provide a basis for such an extraordinary remedy. Mr. Berry never once mentioned in his oral

argument that he was seeking an exemption from discharge.[16] *See* Odom Aff., Ex. T. And not

---

[15] Notably, even if Mr. Berry had asked for an exemption from discharge in his June 2004 motion, it would be an ineffective vehicle for him to obtain one. In order to determine the dischargeability of a claim, a debtor or creditor must commence an adversary proceeding. *See* F.R.B.P. 4007, 7001(6). A motion is not sufficient in this regard. *See In re Purina Mills, Inc.*, 2002 WL 125677, at *1 (Bankr. D. Del. Jan. 28, 2002) ("[c]onsistent with Bankruptcy Rule 7001(6), the court concludes that Purina cannot seek a determination of dischargeability by motion but, instead, must initiate an adversary proceeding."); *Mann v. Mann*, 1990 WL 5317, at *1 (Bankr. E.D. Pa. Jan 26, 1990) ("[w]e dismissed this motion without prejudice...because the motion appeared to be, in substance, a proceeding to determine the dischargeability of a debt, which must be maintained as an adversary proceeding."). Mr. Berry has never filed an adversary proceeding to determine the dischargeability of his pre- or postpetition claims. Instead, Mr. Berry filed a motion for relief from the automatic stay that pled, in the alternative, exemption from discharge to pursue his pre- and postpetition causes of action against the Debtors.

[16] Bankruptcy Rules 4007 and 7001(6) require that to obtain an exemption from discharge, a creditor must prove that it is entitled to such relief by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 287-88 (1991). Having never briefed or argued the issue, Berry has not met this burden.

surprisingly, in its oral ruling, the Court did not grant an exemption from discharge. *Id.*, Ex. Q at 226:3-9. Quite simply, Mr. Berry's claims are not exempted from discharge.

### B.    The Post Confirmation Trust Agreement Does Not Violate the Rule Against Perpetuities

31.    Mr. Berry also asserts that the Post Confirmation Trust Agreement violates the Rule Against Perpetuities. *See* Berry Response, n.1. This argument is irrelevant to the consideration of Mr. Berry's administrative claim, and is no more than a late, ill-founded attempt to collaterally attack the Debtors' Plan. Mr. Berry was apprised of the Plan's terms well in advance of the confirmation hearing, filed multiple objections to the Plan and participated extensively in the confirmation hearing. But through it all, Mr. Berry never cited to or raised the Rule Against Perpetuities in opposition to confirmation. Nor did he raise it on appeal. He may not do so now.

32.    That said, Mr. Berry's "Rule Against Perpetuities" argument is just plain wrong. The PCT Agreement, by its terms, is governed by Delaware law, which explicitly provides that the Rule Against Perpetuities ***does not apply to interests in personal property held in trust***:

> No interest created in real property held in trust shall be void by reason of the common law Rule Against Perpetuities and *no interest created in personal property held in trust shall be void by reason of any Rule Against Perpetuities, whether the common law rule or otherwise.*[17]

---

[17]    The common law Rule Against Perpetuities provides that "[n]o interest is good unless it vests, if at all, not later than twenty-one years after some life in being at the creation of the interest." *Stuart Kingston, Inc. v. Robinson*, 596 A.2d 1378, 1384 (Del. 1991) (alterations in original).

25 Del. C. § 503(a) (2006) (emphasis added).[18] The PCT Agreement was created for the sole

purpose of distributing *interests in personal property* -- cash and stock in the Reorganized

Debtors. *See* 25 Del. C. § 503(e) (providing that for purposes of section 503, an interest in a

corporation is personal property). Accordingly, under Delaware law, the Rule Against

Perpetuities just does not apply.[19]

### C.    C&S Has Nothing To Do With This Claims Proceeding

33.    Despite Mr. Berry's seeming insistence on having the Court consider his claim at

the August hearing, in his response he argues that "there is no equitable purpose in ruling on Mr.

Berry's claim while others including C&S continue to be the beneficiary of the PCT's duty to

indemnify." *See* Berry Response ¶59. At the same time, he also claims that the PCT's objection

should be overruled because C&S objected to third-party discovery relating to this claim

proceeding. *Id.* at ¶62. These incongruent statements highlight the absurdity of Mr. Berry's

brief.

34.    The fact is C&S (or anyone other than Mr. Berry and the PCT) has absolutely

nothing to do with the present proceeding. Yes, C&S may have a claim against the PCT if Mr.

Berry prevails in his never-ending litigation, but that is C&S' claim -- not Mr. Berry's. Mr.

Berry is entitled to assert *his* claims against the PCT, no more. Moreover, contrary to Mr.

Berry's unsupported allegations, the PCT's Hawaii counsel did not "engage[] in obstruction" by

---

[18]  Not only did Mr. Berry fail to cite the applicable Delaware statute, but the case Mr. Berry cites to support his
Rule Against Perpetuities argument -- which deals with option contracts as opposed to trusts -- is not even
applicable. *See Pathmark Stores, Inc. v. 3821 Assoc., L.P.*, 663 A.2d 1189, 1191-92 (Del. Ch. 1995).

[19]  The Delaware Rule Against Perpetuities also provides for a "wait and see" approach to *real property*, which is
not implicated here. That rule provides that if an interest in real property has not vested within 110 years after
the interest was placed in trust or became irrevocable, the state will cause the property to be distributed pursuant
to the terms of the instrument.

causing C&S not to respond to Mr. Berry's in the course of this *administrative claim* proceeding.

Presumably, C&S determined that Mr. Berry's attempted discovery was improper. And based

upon the documents attached as Exhibit P to his response, it was probably correct. Mr. Berry's

"discovery" seems no more than an attempt to ferret out additional ammunition for his purported

claims against C&S. It has nothing to do with Mr. Berry's claims against the PCT.

### CONCLUSION

35.    For the foregoing reasons, the Court should defer ruling on Mr. Berry's claim and

stay all proceedings (including discovery) until after the Hawaii court rules on attorneys' fees in

the postpetition matter.

Dated: August 23, 2006

PACHULSKI STANG ZIEHL YOUNG JONES &
WEINTRAUB LLP

*Scotta McFarland*

Laura Davis Jones (Bar No. 2436)
James E. O'Neill, III (Bar No. 4042)
Scotta E. McFarland (Bar No. 4184)
919 North Market Street, 17th Floor
Post Office Box 8705
Wilmington, Delaware 19899-8705
(Courier No. 19801)
Telephone: (302) 652-4100
Facsimile: (312) 652-4400

and

KIRKLAND & ELLIS LLP
Richard L. Wynne (CA Bar No. 149504)
Erin N. Brady (CA Bar. No. 215038)
M. Lisa Odom (CA Bar No. 233860)
777 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Co-Counsel for the Post Confirmation Trust

22