# Exhibit 9

# ORIGINAL

KOBAYASHI, SUGITA & GODA
LEX R. SMITH        3485-0
THOMAS H. YEE       7344-0
First Hawaiian Center
999 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Telephone No. (808) 539-8700
Facsimile No.  (808) 539-8799
Email: lrs@ksglaw.com

KIRKLAND & ELLIS LLP
Michael E. Baumann (CA Bar No. 145830)
Damian D. Capozzola (CA Bar No. 186412)
R. Olivia Samad (CA Bar No. 228611)
777 South Figueroa Street
Los Angeles, CA 90017
Telephone No. (213) 680-8400
Facsimile No.  (213) 680-8500
Email: mbaumann@kirkland.com

Attorneys for Defendant
POST-CONFIRMATION TRUST

UNITE        E
             CT COURT
DIST

MAR 2   2006
at ____ o'clock and ____ min. ___ M
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) CIVIL NO. CV03-00385 SOM-LEK |
| | ) (Copyright) |
| Plaintiff, | ) |
| | ) **NOTICE OF MOTION** |
| vs. | ) |
| | ) Judge:      Hon. Susan O. Mollway |
| | ) Trial Date: February 28, 2006 |
| HAWAIIAN EXPRESS SERVICE, | ) |
| INC., et al.,      (Caption Continued) | ) Hearing Date: |
| Defendants. | ) Hearing Time: |
| | ) |

## NOTICE OF MOTION

TO:        Timothy J. Hogan, Esq.
Lynch, Ichida, Thompson & Kim
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813

Attorney for Plaintiff

NOTICE IS HEREBY GIVEN THAT DEFENDANT PCT'S MOTION TO

EXCLUDE USE OF PRIVILEGED COMMUNICATIONS AT TRIAL, shall

come on for hearing before the Honorable Susan Oki Molloway Judge of the

above-entitled Court, in her courtroom in the United States Courthouse, 300 Ala

Moana Boulevard, Honolulu, Hawaii, at _____, on _____, or as soon

thereafter as counsel can be heard.

DATED: Honolulu, Hawaii, _____3/1/06_____.

_____
KOBAYASHI, SUGITA & GODA
LEX R. SMITH (659-0)
THOMAS H. YEE (7344-0)

KIRKLAND & ELLIS LLP
MICHAEL E. BAUMANN
DAMIAN D. CAPOZZOLA
R. OLIVIA SAMAD

Attorneys for Defendant PCT

KOBAYASHI, SUGITA & GODA
LEX R. SMITH          3485-0
THOMAS H. YEE      7344-0
First Hawaiian Center
999 Bishop Street, Suite 2600
Honolulu, Hawaii  96813
Telephone No. (808) 539-8700
Facsimile No.   (808) 539-8799
Email: lrs@ksglaw.com

KIRKLAND & ELLIS LLP
Michael E. Baumann (CA Bar No. 145830)
Damian Capozzola (CA Bar No. 186412)
R. Olivia Samad (CA Bar No. 228611)
777 South Figueroa Street
Los Angeles, CA  90017
Telephone No. (213) 680-8400
Facsimile No.  (213) 680-8500
Email: mbaumann@kirkland.com

Attorneys for Defendant
POST-CONFIRMATION TRUST


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen;<br><br>        Plaintiff,<br><br>        vs.<br><br>HAWAIIAN EXPRESS SERVICE, INC., et al.,<br><br>        Defendants. | CIVIL NO. CV03-00385 SOM-LEK (Copyright)<br><br>**MOTION TO EXCLUDE PLAINTIFF'S USE OF PRIVILEGED COMMUNICATIONS AT TRIAL**<br><br>Judge:    Hon. Susan Oki Mollway<br>Trial Date:  February 28, 2006 |

Plaintiff has already foreshadowed his intent to raid the Guidance images for privileged materials by his inclusion of Trial Exhibit 103 (Exh. A to this motion) and Exhibit 1 to Berry's Reconsideration Reply (Exh. B). These documents and others are protected by the attorney-client privilege. The fact that Fleming at one point produced them to its expert, Dr. Martin Walker, did not waive privilege. The materials are still privileged and Berry should not be able to introduce them as evidence, impeach witnesses with them or use them for any purpose.

## I. Governing Law Under Fed. R. Evid. 501

In the federal courts, the definition of privilege follows the source for the rule of decision; if the claim or defense arises under federal law, as this copyright case does, federal law defines privilege; if state law governs substantively, state law governs privilege. Fed. R. Evid. 501. Rule 501 also provides that privilege "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Federal courts have "the flexibility to develop rules of privilege on a case-by-case basis." *See Trammel v. United States*, 445 U.S. 40, 47 (1980) (quoting 120 Cong. Rec. 40,891 (1974) (statement of Rep. Hungate)). This can mean that even if federal rules of common interest and joint defense apply to a copyright case, the court may look to Hawaii state law for additional input. Because the Hawaii law codifies and mirrors the federal law and relies on federal law for its analysis, the analysis is the same. *See* Haw. R. Evid.§ 503(b)(3); *State of Hawaii v. Soto*, 84 Hawai'i 229 (1997). In both federal and state law, the joint defense privilege applies to the co-defendants in this copyright case.

## II. Federal and Hawaii Law on Privilege

Attorney client privilege applies to protect and encourage communication and is "designed 'to facilitate the administration of justice' in order 'to promote freedom of consultation of legal advisors by clients,'" and to encourage persons "to seek legal advice in planning their affairs to avoid litigation as well as in pursuing it." *Natta v. Hogan*, 392 F.2d 686, 691 (10th Cir. 1968); *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 513 (D. Conn. 1976), *appeal dismissed*, 534 F.2d 1031 (2d Cir. 1976); *see also* 8 Wigmore, Evidence 2292 at 554 (3d ed. 1961).

The joint defense and common interest privilege is an extension of the attorney-client and work product privilege that operates as an exception to the rule that the privilege is waived when shared with third parties. It enables parties to share information where the parties have common interests in defending against a pending or anticipated proceeding. Where a common interest exists in matters pertaining to multiple parties, a privilege exists for communications between the parties and between the parties' attorneys. *See, e.g. Baldwin v. Commissioner*, 125 F.2d 812 (9th Cir. 1942) (finding that client's communications to attorney in presence of jointly employing client was privileged); *Continental Oil Co. v. United States*, 330 F.2d 347 (9th Cir. 1964) (holding there was no waiver when lawyers' exchanged interview notes of grand jury testimony).

### A. The PCT's Communications Fall Within the Joint Defense Privilege.

The "joint defense privilege" and the "common interest privilege" have been recognized by statute in Hawaii. *See* Haw. R. Evid.§ 503(b)(3).

3

> General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing **confidential** communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between the client or the client's representative and the lawyer or the lawyer's representative, or (2) between the lawyer and the lawyer's representative, or **(3) by the client or the client's representative or the lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest**, or (4) between representatives of the client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

Haw. R. Evid. § 503(b)(3) (emphasis added).

The Hawaii Supreme Court recognized that information shared among joint defendants is protected by the attorney client and work product privileges. *Soto*, 84 Hawai'i at 239 (citing Ninth circuit and other federal case law for support). The *Soto* court explicitly states, "We do not hold that disclosures between and among several defendants and their counsel in ... group defense contexts would lack confidentiality, and therefore lack [s]ixth [a]mendment protection. On the contrary, ... the attorney-client privilege applies to confidential communications among attorneys and their clients for purposes of a common defense." *Id.*; *see also United States v. McPartlin*, 595 F.2d 1321 (7th Cir. 1979), *cert. denied*, 444 U.S. 833 (1979); *Hunydee v. United States*, 355 F.2d 183 (9th Cir. 1965); *Continental Oil Co. v. United States*, 330 F.2d 347 (9th Cir. 1964); *In the Matter of Grand Jury Subpoena, Etc.*, 406 F.Supp. 381 (S.D.N.Y. 1975); 2 Weinstein's Evidence, ¶ 503(b)[06] (1980).

### 1. Attorney-Client Privilege Applies.

Because the joint defense privilege is an extension of attorney client and work product doctrines, as a preliminary matter, the defendant's must show that their communications fall within these privileges. Here, the defendants retained counsel and were communicating with them for opinions on the law or legal services. They were not involved in a crime or tort, have claimed the privilege and have not waived it. *See* Haw. R. Evid.§ 503. The only issues are whether they "waived" their privilege by including co-defendants and allied attorneys in their communication.

### 2. The Communications were Confidential.

The attorney-client privilege protects "confidential" communications. *See* Haw. R. Evid. 503(b); *Soto*, 84 Hawai'i at 239. A communication is protected "if it is intended to remain confidential and was made under such circumstances that it was reasonably expected and understood to be confidential." *Soto*, 84 Hawai'i at 239; McCormick on Evidence, § 91 (2d ed. 1972).

"[I]n the multiparty context, the disclosures must be made in circumstances which indicate that they were made in confidence." *Soto*, 84 Hawaii at 240; *United States v. Friedman*, 445 F.2d 1076, 1085 n.4 (9th Cir. 1971), *cert. denied*, 404 U.S. 958 (1971). There is no confidentiality when disclosures are made in the presence of a person who has **not** joined the defense team, and with respect to whom there is no reasonable expectation of confidentiality. *Soto*, 84 Hawai'i at 240.

### 3. The Confidential Nature Was Not Waived in a Multi-Party Context Due to Common Interest.

Thus, the key to whether a communication between attorney and client, which occurs in the presence of a third party, is privileged under HRE 503(b) or whether the privilege has been waived by virtue of "voluntary disclosure" under HRE 511 turns on the third party's status as a "representative of the client"[1] or a "representative of the lawyer."[2] *Soto*, 84 Hawai'i at 240. This is precisely because "disclosures made in the presence of third parties" cannot be "reasonably expected to remain confidential" when "defendants and their counsel knew or should have known that the [third party] was not part of the defense team and [therefore] knew or should have known that there was no reasonable expectation of confidentiality in the presence of the [third party]." *Id.*

The disclosures were made in front of co-defendants who share a common interest in a unified defense against Mr. Berry's inflated copyright damage allegations. Furthermore, the third parties involved were all either clients, representatives of clients, or counsel. The privilege also extends to communications with agents of the attorney. Information furnished by a defendant to an accountant hired by codefendant's attorney to serve joint interests of the defendants was protected by the attorney-client privilege. The information was

---

[1] A "representative of the client" is one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client. Haw. R. Evid. 503(a)(2).

[2] A "representative of the lawyer" is one directed by the lawyer to assist in the rendition of professional legal services. Haw. R. Evid. 503(a)(4)

imparted in confidence for the ultimate purpose of assisting attorneys who had

agreed upon and undertaken a joint strategy of representation. *United States v.*

*Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989), *on remand* 738 F. Supp. 654

(E.D.N.Y. 1990), aff'd, 924 F.2d 443 (2d Cir. 1991), *cert. denied* 112 S. Ct. 55

(1991). They were all therefore part of the defense team and had a reasonable

expectation of confidentiality in the presence of each other.

**B. Fleming's Expert Never Considered Privileged Documents Within the Meaning of FRCP 26 to Constitute a Waiver of the Privilege.**

Fed. R. Civ. Proc. 26 does not require Fleming to disclose privileged

documents because the expert witness never considered them in formulating his

opinion. The requirement that a party disclose materials provided to an expert

witness only applies to "data or other information *considered by the witness* in

forming the [expert] opinions." Fed. R. Civ. Proc. 26(a)(2)(B) (emphasis added).

An expert witness "considers" information within the meaning of Rule 26 only

when that person (1) relies on the information in formulating the opinion or (2)

actually reviews the information, but ultimately rejects it in formulating the

opinion. *Baxter Diagnostics Inc. v. AVL Scientific Corp.*, No. 91-4178-RG, 1993

WL 360674 at *1 (C.D. Cal., Aug. 6, 1993). While the "considered by" standard

adopted by the 1993 amendments to Rule 26 encompasses a wider range of

information than the rejected "relied upon" standard, *Karn v. Ingersoll-Rand Co.*,

168 F.R.D. 633, 635 (N.D. Ind. 1996), it is not so broad as to include material that

the expert witness never actually reviewed. *Johnson v. Gmeinder*, 191 F.R.D.

638, 648 (D. Kan. 2000) (Rule 26 requires something more than mere disclosure to

expert); *Vaughan Furniture Co., Inc. v. Featureline Mfg. Co., Inc.,* 156 F.R.D. 123,

128 (M.D.N.C. 1994) (waiver only applies to documents reviewed and relevant to

formulation of opinion).  Dr. Walker never reviewed privileged documents and

therefore could not have considered it.  *See Johnson v. Gmeinder*, 191 F.R.D. 638

(D. Kan. 2000); *Amway Corp. v. Procter & Gamble Co.*, No. 1:98CV726, 2001

WL 1877268 (W.D. Mich. 2001, Apr. 17, 2001); *Vaughan*, 156 F.R.D. at 128.

## 1. Fleming Did Not Waive Privilege By Producing the Guidance Images.

Courts require more than mere disclosure to find waiver.  In *Johnson* the

defendants conceded they had provided protected materials to their expert. *Id.* at

648.  According to the court, the mere fact of disclosure was insufficient to justify

a finding of waiver. *Id.*  Although the court ultimately found that defendants

waived their claim of privilege as to the material in question, the fact that the

experts had actually reviewed and considered the material was clearly necessary to

this conclusion. *Id.* at 648-49.  Similarly in *Amway Corp. v. Procter & Gamble

Co.*, No. 1:98CV726, 2001 WL 1877268 (W.D. Mich. 2001, Apr. 17, 2001) the

defendant provided privileged information to its expert witnesses. *Id.* at *1.

Nonetheless, the court held this fact did not require a finding of waiver because the

expert witness never read, reviewed or considered the privileged material. *Id.*  In

*Vaughan*, the plaintiff designated his attorney as an expert witness. 156 F.R.D. at

127.  The court ruled that under such circumstances, a waiver of privilege can

occur as to documents reviewed by the attorney. *Id.*  However, the court was

unable to resolve the waiver issue because it was unclear which of the documents

at issue the expert had actually reviewed. *Id.* at 129.

As in all of these cases, Fleming's expert witness never considered the privileged documents Berry seeks to discover. Applying the rule set out in *Johnson*, the mere fact that Fleming provided protected materials to its expert witness does not constitute a waiver. As in *Amway*, the expert witness here never actually read, reviewed, or considered any of the privileged documents contained in the electronic records given to him. In fact, Fleming employed the expert witness for the specific purpose of discerning the nature of the data contained in the electronic records. Furthermore, Fleming's attorney's expressly instructed the expert witness not to review any privileged documents contained in the record. Pursuant to these instructions, Fleming's expert witness merely determined what types of documents the electronic record contained without viewing any privileged documents. (See the Declaration of Martin G. Walker attached hereto as Exhibit C, ¶2.)

In fact, Fleming expressly instructed its expert witness not to review the privileged information. In doing so, Fleming demonstrated that it did not voluntarily relinquish any claim of privilege. Thus, Fleming did not waive the attorney-client privilege when it provided the electronic records to its expert witness.

### 2.   This is Not an Instance Where Waiver Serves the Policy Behind the Rules.

To find waiver in this case would reward the plaintiff for the difficulties he created by his over-broad discovery requests, and it would not advance the fairness

of the proceedings.

First, it was the plaintiff's conduct that necessitated Dr. Walker's review of the documents. The reason Fleming provided the electronic record to the expert witness in the first place was to characterize the documents–an extraordinary task considering the record contained hundreds of thousands of documents and emails. Plaintiff's waiver claim is particularly brazen because he further burdened Fleming by requesting hundreds of thousands of irrelevant documents.

Second, waivers of attorney-client privilege are narrowly construed and imposed only to the extent needed to ensure the fairness of the proceeding. *In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005). Waiver is justified where a party uses privilege both offensively and defensively by sharing privileged information with an expert witness. *CP Kelco U.S. Inc. V. Pharmacia Corp.*, 213 F.R.D. 176, 179 (D. Del 2003) (privilege cannot be used as a sword and a shield). However, where a party gains no offensive advantage from disclosing privileged information to an expert witness, the privilege should not be deemed waived. *In Re Lott*, 424 F.3d at 454 (while the sword stays sheathed, the privilege stands); *see Amway*, 2001 WL 1877268 at *1 (rationale for finding of waiver disappears where material is not used offensively).

Finally, the PCT gained no offensive advantage from disclosing information to an expert witness who never actually viewed it. *See Amway*, 2001 WL 1877268 at *1. In *Amway*, the court declined to find waiver of privilege as to documents received but never viewed by defendant's expert witnesses. The court reasoned that in such case, the plaintiff's right to effectively cross-examine the expert

10

witness was in no way affected. *Id.*

The PCT asserts the attorney-client privilege solely for the defensive purpose of protecting confidential communications and not for any other offensive purpose. Like the expert in *Amway*, Fleming's expert never viewed, considered, or relied on the privileged materials–in fact, Fleming expressly instructed the expert not to do so. Consequently, the expert's opinion is based only on information that has been provided to Plaintiff through discovery and not on any privileged materials. Under these circumstances, Plaintiff's ability to effectively cross-examine the expert will not be impeded at all. Since the rationale justifying a finding of waiver is not served here, the court should reject Plaintiff's claim of waiver.

Finding waiver would reward the unethical and wasteful practices of Plaintiff, while unfairly punishing Fleming's earnest efforts to comply with the rules of discovery.

///

///

///

///

///

///

///

///

///

## IV. Conclusion

For the foregoing reasons, the Court should not allow Berry to introduce privileged documents from the Guidance images as evidence, impeachment material or for any purpose.

Dated:  Honolulu, Hawaii, February 23 , 2006

KOBAYASHI, SUGITA & GODA
Lex R. Smith 659-0
Suite 2600 First Hawaiian Center
999 Bishop Street
Honolulu, HI  96813
Telephone:  808 539 8700
Facsimile:  808 539 8799

      and

KIRKLAND & ELLIS LLP
Michael E. Baumann (CA Bar No. 145830)
Damian D. Capozzola (CA Bar No. 186412)
R. Olivia Samad (CA Bar No. 228611)
777 South Figueroa Street
Los Angeles, CA 90017
Telephone:  (213) 680-8400
Facsimile:   (213) 680-8500

Co-Counsel for the Post Confirmation Trust for
Fleming Companies, Inc.

# EXHIBIT A

**07 FHL 136 New**

| | |
|---|---|
| **From:** | "Brian Christensen" <bchrist@email.fleming.com> |
| **To:** | <teresan@fleming-logistics.com> |
| **Sent:** | Friday, May 09, 2003 11:51 AM |
| **Attach:** | Re_ Fleming - Berry freight software.eml |
| **Subject:** | Fwd: Re: Fleming - Berry freight software |

FYI

Mark, Did we do the attached or reinstall the original?

Berry v Hawaiian Express Plaintiff Exhibit 103      2/8/2006

**07 FHL 136 New**

| | |
|---|---|
| **From:** | <damian_capozzola@la.kirkland.com> |
| **To:** | <peter_spingola@chicago.kirkland.com> |
| **Cc:** | <lex@gte.net>; <bchrist@email.fleming.com>; <cbirche@email.fleming.com>; <rkapmfner@whitecase.com> |
| **Sent:** | Friday, May 09, 2003 11:18 AM |
| **Subject:** | Re: Fleming - Berry freight software |

I don't believe they've ever sent a formal notice in writing, but I believe their theory is that we are continuing to infringe regardless of our efforts to scale back to the original license. In other words, as I understand it, building up from the original license and then trying to tear off the modifications does not result in the original, it results in a derivative which looks like the original, which is itself an infringement. They are definitely threatening to bring additional actions in whatever forum will hear them. I wouldn't be surprised if they filed something today or Monday, which highlights the need for us to work quickly. I'll try to circulate something over the weekend.

--Damian

Peter Spingola
05/09/2003 02:15 PM

To: Damian Capozzola/Los Angeles/Kirkland-Ellis@K&E
cc:

Subject: Fleming - Berry freight software

Just had a few follow up points. Do you know if there has been a notice to terminate or a notice of breach served by Berry/Hogan for our current use? My guess is no, but I'm trying to think of any possible scenarios in which Fleming could be currently infringing the license agreement, even though it is no longer using the infringing modifications. Could Berry/Hogan potentially bring another action for any such infringement?

**EXHIBIT B**

## 07 FHL 136 New

---

**From:** "Lex Smith" <lex@gte.net>
**To:** "Mark Dillon" <markd@fleming-logistics.com>
**Sent:** Monday, May 19, 2003 11:29 AM
**Subject:** Re: Statement of Work Proposal

Thanks Mark,

All of these issues will be taken into consideration. I'm going to be in L.A. on Wed., so I'm going to see if I can meet face to face with the computer guy and talk about this stuff including your issues. You will have plenty of input on how we handle this, but as I say he has to be able to testify about his own knowledge not about what he told you.

----- Original Message -----
**From:** Mark Dillon
**To:** Lex Smith
**Cc:** "Mike Carey" ; "Brian Christensen" ; "Craig Birchette" ; "Carlos Hernandez" ; "Ralph Stussi" ; markd@fleming-logistics.com ; teresan@fleming-logistics.com ; MScott@alixpartners.com
**Sent:** Monday, May 19, 2003 9:02 AM
**Subject:** Re: Statement of Work Proposal

While it means more work for me, I understand that having Guidance software wipe the hard drives clean puts Fleming in the best position in anticipation of further litigation. For this to be practical for the Logistics department of Fleming Hawaii, whose computers will be disabled by this process, the wiping of the disks will have to be done beginning after hours on a Friday, and completed asap, giving me time to reinstall by the following Monday the software packages required for us to operate. An especially good time to do this is Friday, 5/23, which gives us an extra day to work with on account of the holiday.

Some other concerns, some of which I have expressed previously, but should be repeated here:

- There are files that we must retain for each user: saved email, Microsoft Word, Excel and PowerPoint files.
- We have backup tapes and CD's containing Mr. Berry's software. Mr. Berry and Mr. Hogan are aware of this fact. I expect we need a way to handle these.
- One or two of the tapes have files from the original installation of Windows and Mr. Berry's software on the Logistics server. I would like to retain this as evidence since it contains information about the history of the server and Mr. Berry's software.
- We have about five old computers and three or four hard drives that we are no longer using. I kept these as possibly containing evidence. It seems these will have to either be destroyed, have their hard drives wiped, or be place in someone's custody.

Mark Dillon
Fleming Companies, Hawaii Division
Logistics LAN Administrator

----- Original Message -----

**From:** Lex Smith
**To:** damian_capozzola@la.kirkland.com
**Cc:** Mike Carey ; Brian Christensen ; Craig Birchette ; Carlos Hernandez ; Ralph Stussi ; markd@fleming-logistics.com ; teresan@fleming-logistics.com ; MScott@alixpartners.com
**Sent:** Sunday, May 18, 2003 12:25 PM
**Subject:** Re: Statement of Work Proposal

Hogan Dec. Re Reply Exhibit 1

Thanks Damian.
_____

I certainly agree that taking these steps won't instantly get rid of Berry.  In fact, we need to take these steps in order to be in the best possible position when they try to harass Fleming, which I have no doubt they will do.

I think Guidance Software is fine.  To the greatest extent possible we want to be able to respond to Berry/Hogan with Guidance's affidavit with no reliance on information provided by Mark or anybody else (we don't want to have to fight with Hogan about whether Mark Dillon is telling the truth).

----- Original Message -----
**From:** damian_capozzola@la.kirkland.com
**To:** lex@gte.net
**Cc:** Mike Carey ; Brian Christensen ; Craig Birchette ; Carlos Hernandez ; Ralph Stussi ; markd@fleming-logistics.com ; teresan@fleming-logistics.com ; MScott@alixpartners.com
**Sent:** Saturday, May 17, 2003 12:31 PM
**Subject:** Re: Statement of Work Proposal

I agree with Lex on all counts.  I'll also add that we should not expect that Berry will go away instantly, but these procedures should help significantly.  One other question to kick around -- do we want to offer Berry the opportunity to participate in the independent consultant process (selecting and paying for the consultant)?  On one hand, if we could get him locked in ex ante to an independent consultant retained by both parties, it would be harder for him to contest the findings later on.  On the other hand, getting him involved in the process may create more problems than it solves.  I think I am inclined not to offer this to him, but I am interested in other views.

Lex, you may not know that Mark send me a CD containing a copy of Berry's software as it stood as of about a week ago.  This may or may not have included everything Lex is discussing.  We should definitely make sure everything is preserved.

The report I had in mind was always like the one Lex describes.  Sorry if I didn't make that more clear.  In the absence of any other suggestions of consultants to use I suggest we sign up Guidance Software ASAP even if it means we have to incur some travel costs.  We also need to be sure the lenders are on the same page but I understand Mike is handling that and does not anticipate any problems.

--Damian

Case 1:03-cv-00385-SOM-LEK   Document 811-2   Filed 02/19/2006   Page 3 of 6

lex@gte.net on 05/17/2003 11:32:48 AM

To:   "Mike Carey" <mcarey@email.fleming.com>, "Brian
      Christensen" <BCHRIST@email.fleming.com>, "Craig
      Birchette" <CBIRCHE@email.fleming.com>, "Carlos
      Hernandez" <CHERNAN@email.fleming.com>, "Ralph
      Stussi" <RSTUSSI@email.fleming.com>,
      markd@fleming-logistics.com,
      teresan@fleming-logistics.com, Damian
      Capozzola/Los Angeles/Kirkland-Ellis@K&E

cc:

Subject:  Re: Statement of Work Proposal


As you know, I'm all in favor of getting this done.  I
do have some comments, though.


1.  I think it's necessary for a copy to be preserved
of what was on the computers immediately before the
removal of Berry programs took place.  Otherwise, we
will be subjected to Hogan's claims that (a) we
destroyed evidence; and (b) claims by Hogan, Berry and
whatever "expert" they may hire attempting to offer
opinions of what was on Fleming's computers based on
invoices or other paper generated by the software.
This is how many of their previous claims arose:  Hogan
would go before the federal court and say "See this
invoice, this portion right here proves Pillsbury's
infringing the software."  The judge, of course, has no
idea whether the claim is right or wrong and has to
turn to experts.  If the software on the disk has been
destroyed then we risk simply having two experts
offering competing opinions.  If the "image" of the
disk is preserved someplace, we will be able to prove
what was there and what was done.  The "image" of the
disk drives can be maintained by the expert or by my
office or by Kirkland & Ellis or whatever (so we can
truthfully say that Fleming didn't have access to it)
but it should be retained because I believe it's likely
we're gonna need it.

2.  To the greatest extent possible, we need the expert
to be able to sign an affidavit saying that the expert
knows from his own personal knowledge that as of the

date he finished with the computers there is absolutely
nothing on any of the Fleming Logistics computers that
was created by Wayne Berry.  In contrast, the
description I saw seemed like the most the expert would
be able to say is "I deleted the files Mark Dillon told
me were created by Wayne Berry."  If all we have is the
latter, we are going to be exposing ourselves to more
discovery on the credibility of Mark Dillon.  How we
get this result (or as close to it as we can, given the
fact that it would obviously be difficult for the
expert to know what Berry created) is something that
the expert should be asked for his advice:  "how can
you certify to us that there's nothing on the computer
created by Berry."  One way that might be considered,
would be that after imaging the disk, that it be wiped
clean and then keep a record of everything that gets
re-installed on it.

It's probably a little bit more of a headache this way,
but I really believe it's worth it.

  ----- Original Message -----
  From: Mike Carey
  To: MScott@alixpartners.com ; Brian Christensen ;
Craig Birchette ; Carlos Hernandez ; Ralph Stussi ;
markd@fleming-logistics.com ;
teresan@fleming-logistics.com ; lex@gte.net ;
damian_capozzola@la.kirkland.com
  Sent: Saturday, May 17, 2003 7:48 AM
  Subject: Re: Statement of Work Proposal


  Brian,

  need your thoughts, but this looks reasonable to
me....suggest we implement this plan and hire this
company ASAP to help us get rid of Wayne Barry legal
problems for good......MIKE

  >>> <damian_capozzola@la.kirkland.com> 05/16/2003
3:37:07 PM >>>



FYI -- here's the proposal from Guidance Software.
Comments welcome, especially on the technical side.

--Damian

---------------------- Forwarded by Damian
Capozzola/Los Angeles/Kirkland-Ellis on 05/16/2003

# Hogan Dec. Re Reply Exhibit 1

01:41 PM --------------------------


cheryl.bashaw@guidancesoftware.com on 05/16/2003
01:34:27 PM

To:  Damian Capozzola/Los Angeles/Kirkland-Ellis@K&E
cc:  "Ken Basore" <ken.basore@guidancesoftware.com>

Subject:  Statement of Work Proposal



<<Proposal - 05-16-03.pdf>> Damian,
     John asked me to prepare for you a Statement of
Work encompassing the objectives that you stated to
him
for this possible engagement. I have attached the
proposal for your review and signature. I believe
that
John has already sent to you our Professional
Services
Agreement contract, but please let me know if this is
not the case. While this Statement of Work relates
directly to this particular engagement, the Agreement
addresses our billing policy as well as our
intellectual property conditions regarding the use of
our software during the engagement and is more of a
generic contract that we require. Please contact me
with any questions regarding this Statement of Work,
our Agreement contract or next steps.

     We look forward to assisting you in any way.

Best regards,
Cheryl

Cheryl Bashaw Tilly
Director, Professional Services
Guidance Software, Inc.
work: 626-229-9191 ext. 208
fax: 626-229-9199
<mailto:cheryl.tilly@encase.com>

PGP Key ID: 0x6BD2D651
PGP Key Fingerprint: CD58 49BE 5187 887B 40FB  27CE
B7F6 763E 6BD2 D651


cc: Ken Basore, Director of Investigations, Guidance
Software


Hogan Dec. Re Reply Exhibit 1

Note:  The information contained in this message may be
  privileged and confidential and thus protected from
  disclosure.  If the reader of this message is not the
  intended recipient, or an employee or agent responsible
  for delivering this message to the intended recipient,
  you are hereby notified that any dissemination,
  distribution or copying of this communication is
  strictly prohibited.  If you have received this
  communication in error, please notify us immediately by
  replying to the message and deleting it from your
  computer.  Thank you.

Hogan Dec. Re Reply Exhibit 1

**Exhibit C**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

WAYNE BERRY, a Hawaii citizen;

        Plaintiff,

    vs.

HAWAIIAN EXPRESS SERVICE,
INC., et al.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIVIL NO. CV03-00385 SOM-LEK
(Copyright)

**DECLARATION OF MARTIN G.
WALKER RE:
DEFENDANT'S MOTION TO
EXCLUDE PLAINTIFF'S USE OF
PRIVILEGED COMMUNICATIONS
AT TRIAL**

Judge: Honorable Susan Oki Mollway

Trial Date: February 28, 2006

## DECLARATION OF MARTIN G. WALKER

I, Martin G. Walker, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate to the best of my knowledge and belief:

1. I have been retained by the Post-Confirmation Trust for Fleming Companies, Inc. to examine certain software and related documents and, if possible, render opinions on certain topics in the above-entitled action.

2. I was provided with Guidance-produced images of certain files (the "Before Images"). I understand that some of these files contain attorney-client communications. I was instructed not to review any such documents. Thus, during the course of my investigations leading to the opinions that I articulated in my expert report and supplemental reports, I never even opened the files containing the privileged communications. Thus, I did not consider, read, review, or rely upon these privileged documents.

3. I did review and catalog the contents of the Before Images, and I studied the various database snapshots contained on the images. During the past week, I was also asked to confirm that some emails were actually on the Before Images produced in September, 2005. However, I accomplished these tasks without reviewing the substance of the privileged communications.


Executed at Honolulu, Hawai'i on February 28, 2006.

Martin G. Walker

2