LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, | ) | |
| | ) | Civ. No. 07 CV-0172 SOM-LEK |
| Plaintiff, | ) | (Copyright) |
| | ) | |
| vs. | ) | **PLAINTIFF WAYNE BERRY'S** |
| | ) | **REPLY TO DEFENDANTS'** |
| DEUTSCHE BANK TRUST | ) | **OPPOSITION TO PLAINTIFF'S** |
| COMPANY AMERICAS (FKA | ) | **COUNTER-MOTION FOR** |
| BANKERS TRUST COMPANY) AND | ) | **PARTIAL SUMMARY JUDGMENT** |
| JP MORGAN CHASE BANK IN | ) | |
| THEIR SEPARATE CAPACITIES | ) | |
| AND AS AGENTS FOR THE PRE | ) | |
| AND POST-PETITION LENDERS OF | ) | Hearing: |
| FLEMING COMPANIES, INC. Et al., | ) | |
| | ) | DATE:  July 23, 2007 |
| | ) | TIME:  11:15 a.m. |
| Defendants. | ) | JUDGE: Honorable Susan Oki |
| _____ | ) | Mollway |

**PLAINTIFF WAYNE BERRY'S REPLY TO
DEFENDANTS' OPPOSITION TO PLAINTIFF'S
COUNTER-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Comes now Plaintiff Wayne Berry, by and through his undersigned counsel, and pursuant to L. R. 7.4 and 7.9, hereby respectfully submits his reply to Defendants' Opposition to Plaintiff's Counter-Motion For Partial Summary Judgment.

## I. INTRODUCTION.

The Motion sought partial summary judgment on three issues: the statute of limitations, the collateral estoppel effect of the Bankruptcy Court's rulings and vicarious infringement. Because the Court must apply the law to the facts of this case, the Counter-Motion must be granted.

## II. DISCUSSION.

A.  Statute of Limitations is No Bar.

The Lender's appear to concede that the tolling agreement prevents dismissal of the complaint on grounds of statute of limitations for the period of March 30, 2003 on. In any event, the Lenders have produced no evidence to rebut the proof presented related to the Tolling Agreement and partial summary judgment should be granted on infringement that occurred after March 30, 2003.

The Lenders also had the burden to put forward some admissible evidence to

rebut the showing that discovery of the pre March 30, 2003 infringement happened in March 2003 when, on March 2, 2003 Fleming, the twice adjudicated infringer, filed a motion that claimed that the Lenders and the infringer had combined as a single common front regarding what this Court has ruled was ongoing infringement. *See* Declaration of Timothy J. Hogan filed on July 5, 2007 at para. 10 and Exhibit 9 at Exhibit "B". The Lenders put forward no competent declaration to raise an issue of fact regarding the date of discovery of the pre March 30, 2003 infringement and Mr. Berry is entitled to partial summary judgment as a matter of law.

As to Mr. Berry's diligent efforts, the promptly obtained Tolling Agreement, that allowed time for additional investigation as to the Lenders' role in the infringement was both appropriate and shows diligent conduct in the face of the facts that were then known. The record Mr. Berry presented more than adequately evidences that the statute is no defense to any claim of infringement. Noteworthy, as set forth in the Declaration of Timothy J. Hogan ("Hogan Dec.") filed concurrently, at ¶ 1, the claim that the Bankruptcy Court orders prevented the maintenance of the instant case was never mentioned despite the weeks of discussions with the Lenders' counsel regarding Mr. Berry's claims. The Court will see in the following discussion, that this is a fabricated defense that can only

succeed if the Court ignores the law and the facts.

Considering that the Lenders' current litigation counsel, Kirkland & Ellis, began their Berry related assault by filing an Adversary Proceeding in the Delaware Bankruptcy Court in July 2003, that sought, in part, to enjoin Mr. Berry from reporting the infringement to the FBI, one would think that these same attorneys would be screaming *bloody murder* to the Bankruptcy Court if they though for a second that Mr. Berry had violated an operative order.

As to fraudulent concealment, unless this Court is going to find that, as a matter of law, these Lenders denials are not to be believed and any developer who believed them was too much a fool to have been acting reasonably, the Court must grant summary judgment on the statute of limitations.

> B.  The Actual Collateral Estoppel Effect of Bankruptcy Court Orders Supports Entry of Summary Judgment Against the Lenders.
>
> 1.  The Orders of their Face Don't Provide a Release for Lender Affirmative Conduct.

The Lenders attempt to hoodwink this Court by claiming that they received the equivalent of a Chapter 7 discharge, not just for past acts, but for ongoing and future conduct, that wouldn't even work for a Chapter 7 consumer debtor. Noteworthy, the Lenders have not cited a case that would support this view but only a tortured reading of the Bankruptcy Code and interlocutory orders that on

their face make clear that they only were directed at claims of control "solely" on account of the fact that they provided DIP financing. The Lenders' sole statutory support only dealt with the effect of an appeal on their DIP loan liens. Even if the Orders had said what the Lenders wish they said (and they don't) the Lenders can't and don't dispute that the Plan Confirmation Order is the final judgment in a Chapter 11 reorganization and it conclusively established that no general release was ever granted by Mr. Berry or the Bankruptcy Court regarding the defendant Lenders.

    2.    The Plan Release and Exculpation Clauses Were Modified to Make Clear the Lenders Didn't Get What They Are Claiming in This Motion.

Prior to Confirmation, the Justice Department objected to the scope of the release language sought in the Fleming Plan. The former head of the Kirkland & Ellis world-wide restructuring group, Jamie Sprayregen, Esq., addressed this change at the confirmation hearing on July 26, 2004 and confirmed to Judge Walrath that the scope of the releases was limited in the final version of the Plan Confirmation Order to address the objection. Hogan Dec. Exhibit "17" is a true and correct copy of an excerpt of the Transcript of Proceedings in *In re Fleming*

*Companies, Inc.*, Bk. No. 03-10945 (MFW)(Bankr. Del.) at page 16:11-16.[1]  In that colloquy, Mr. Sprayregen confirms that the Lenders' motion is based on an entirely false premise when he confirmed that **"the application of the proposed releases only applying to people who voted in favor of the Plan or – in favor of the plan, or entities that had voted in favor of the plan."**  The Lenders concede that Mr. Berry objected to the Plan and don't contest that he was prevented from voting because he didn't file a pre-petition claim that was a condition precedent to the right to vote at all.  *See* Declaration of Erin Brady, Exhibit "L" that shows that Mr. Berry filed a Plan objection.  His objection was overruled at the confirmation hearing and the Plan became a final judgment with collateral estoppel effect that binds the Lenders upon entry of the Confirmation

---

[1] The concurrently filed Declaration of Timothy J. Hogan ("Hogan Dec.")  Exhibits 17, 18, 19, 22, 23 and 24 are all extracted from Exhibits filed attached to the Declaration of Erin Brady on July 12, 2007 and are submitted solely for the Court's convenience.  Hogan Dec. Exhibit 20 is a copy of a recently issued Memorandum opinion of the Court of Appeals in *Wayne Berry v. Fleming Companies, Inc*., CV 01-185 SPK-LEK, the pre-petition infringement case.  Hogan Dec. Exhibit 21 is an excerpt from Fleming Companies, Inc. Post-Confirmation Trust's Reply Brief filed in the first case appeal related to the Memorandum Opinion. Mr. Berry requests that the court take judicial notice of Docket in the Court of Appeals including the Fleming Reply Brief.  Exhibits "25" and "26" evidence that the Brady Dec. footnote 15 is inadmissable on the grounds that it lacks foundation.  Mr. Berry requests that a White & Case partner be directed to submit sworn testimony regarding Mr. Kampfner's email address in advance of the hearing if they claim this is actually a material issue of fact.

Order.[2]

The Plan Confirmation Order contains the modification discussed at the Confirmation hearing and incorporated all the prior Pre and Post-Petition Financing orders (the orders that the Lenders say gave them a discharge) and grants a limited release of certain parties claims in favor of persons defined as "**Releasees**" in the Plan. The instant Lenders were defined as **"Releasees"** in the Plan. *See* excerpt of the Plan, from Brady Dec. Exhibit "S" filed on June 12, 2007 as Hogan Dec. Exhibit "18." Then the Plan Confirmation Order went on to limit the releases to only those parties who had affirmatively voted **in favor** of the Plan. *See* Hogan Dec. Exhibit "19" that is a true and correct excerpt from the June 12, 2007 Brady Dec. Exhibit R, containing the Confirmation Order's treatment of

---

[2] All of this is viewed as if Mr. Berry had not received a special dispensation from the discharge and permanent injunction provisions. The Lenders, in their opposition, seek again to obfuscate the true record. They don't dispute that Mr. Berry received an order exempting him from the injunction. Based on the plain language of the stay lift order, Mr. Berry sought guidance from the Bankruptcy Court on his right to execute on his pre-petition judgment and Judge Walrath ruled that all he could do regarding his "pre-petition" claim was to file a claim and allow the Bankruptcy Court to rule on it. In the hearing, Judge Walrath specifically ruled that this did not apply to the "post-petition" administrative claims. *See* Supplemental Declaration of Erin Brady filed in support of the Lenders' Opposition to the Counter-Motion Transcript of Proceedings dated February 22, 2005, in *In re Fleming Companies, Inc.,* Bk. No. 03-10945 (MFW) (Bankr. Del.) Exhibit "Y" at page 18:16-20. This ruling is consistent with the Plan and the Bankruptcy Code that both require that all post-petition, I.E. administrative claims, be paid in full in dollars.

release and exculpation provisions of the Plan.  The Confirmation Order granted releases and exculpation for the pre-petition lending only by persons who voted for the Plan and doesn't apply to Berry's claims, as a matter of law.

        3.        Infringement Would Not be Released Even as to A Party Who Voted in Favor of the Plan.

The Lenders do not contest Mr. Berry's cited authority that infringement is an intentional tort.  As a matter of law, such claims would not be released even if Mr. Berry had voted to accept the Plan and he didn't.  The revised Plan Confirmation Order language made it clear that the only parties whose claims could be released were those who had voted affirmatively to accept the Plan.  Mr. Berry never voted and could never vote because he hadn't filed a pre-petition claim.

Expanding the scope of what they claim the DIP financing orders can be cited for far beyond the issue of control, the Lenders now claim on page 15 of their Memorandum that it also relates to the issue of knowledge and direct financial benefit.  There is nowhere in the pre or post-petition financing orders any hint that the Bankruptcy Court was intending to make statements regarding the knowledge of the Lenders or their financial benefit for acts of infringement.   More importantly, the Lenders' Memorandum completely ignores that the Bankruptcy Court's orders dealt with the issue of whether those pre-petition and post-petition

financing orders could be used to prove that the control was "solely" as the result of the pre-petition and post-petition financing. On their face the financing orders made no determination to grant a *carte blanche*, get-out-of-jail-free coupon for the Lenders regardless of their intentional infringing conduct.

    C.    The Court Must Enter Judgment on Vicarious Infringement.

Once the Court applies the proper interpretation of the Confirmation, the Court must enter partial summary judgment for Mr. Berry on his vicarious infringement claim.

    1.    The Lenders Knew of the Infringement.

The emails prove the lenders knew of the "claim" of infringement. The Court of Appeals has recently returned its ruling in the first Berry case, *Wayne Berry v. Fleming Companies, Inc.*, CV. No. 01-00185 SPK-LEK, affirming the trial court . A copy of the Memorandum opinion is attached to the Hogan Dec. as Exhibit "20. In the appeal, Fleming had argued to the Court of Appeals, just like it argued in the second case that was before this Court, *Wayne Berry v. Hawaiian Express Service, Inc.*, CV 03-385 SOM-LEK, that it thought what it was doing was not infringement and therefore, even if it was infringement, Fleming could not be adjudged a willful infringer. *See* Excerpt of Reply Brief filed by Fleming's PCT in the Court of Appeals. Mr. Berry has requested judicial notice of the Fleming

Reply Breif. Hogan Dec. Exhibit "21."[3] When passing on the same defense that Fleming prevailed upon in the second case that this Court termed the "inadvertent" infringement defense, the Court of Appeals ruled that there is no such defense to willful infringement if, faced with a claim of infringement, the infringer continues to use the work. *See* Memorandum Opinion, Hogan Dec. Exhibit "20" at pages 4 and 5. The Lenders cannot deny that they knew of the past infringement nor can they deny knowledge of Berry's claim of ongoing infringement. They failed to stop it though they had the ability to do so. That makes them liable as willful infringers. Should Mr. Berry elect statutory damages, he is, at a minimum, entitled to put this issue to the jury.[4]

2.    The Lenders Had the Means to Prevent the Infringement.

The May 2003, Post-Petition Loan Document contained several warranty provisions. One required the Debtors' to falsely warrant that they weren't infringing "databases." Hogan Dec. Exhibit "22" ("hereinafter the "Berry Warranty"). The loan further provided that a breach of the Berry Warranty was

---

[3]    This is public record and the Court is requested to take judicial notice that this argument was made and failed before the superior tribunal.

[4]    Mr. Berry believes that the Court may enter judgment against the Lenders as willful infringers based on the July 5, 2007 Memorandum Opinion. Hogan Dec. Exhibit 20.

event of default. Hogan Dec. Exhibit "23." So long as the loans remained unpaid, any event of default (e.g. breach of the Berry Warranty), under the Order Approving the May 2003 Post-Petition Financing, constituted a "Termination Event." Hogan Dec. Exhibit "24" at paragraphs 32 to 35. There is no issue of fact that the Lenders had the absolute right to take all the collateral and sell it or haul it to the dump, as they chose. In any event, they had the power to stop the infringement, as a matter of indisputable contract law.

   3.  Lender's Had a Financial Interest in the Infringement.

Mr. Berry has put forward evidence to show that C&S only kept Hawaii related divisions related to the Berry FCS. The Lenders don't dispute that fact. The Lenders admit that Hawaii was sold and the money for the sale of it along with the other division went into a pot of money from which they were paid. Mr. Berry has no requirement of showing that the only money they got came from the sale of the Hawaii division only that they Lenders had a financial interest in it.

The Lenders' only defense is that they were involved in the infringement simply as part of their permitted function to monitor their collateral. First, Mr. Berry never granted the Lenders any rights to his works and Fleming wasn't using a licensed copy so the Berry FCS was not the Lenders' collateral, as a matter of law.

Mr. Berry has also combed the documents filed in support of the Lenders' opposition and the budget they allege was reason for their involvement is not in the record. The Lenders had the burden to produce this evidence and argument of counsel is not evidence. The Lenders take the position regarding fraudulent concealment that no reasonable person could have relied on what they say. As a result of this admission, Court must require more argument in a memorandum to raise a triable issue.[5] In any event, the Lenders admit in their Memorandum that they became involved in the teams' infringement because the Lenders had a financial interest in it. That is all that Mr. Berry need prove.

The Lenders cannot take solace in the findings of the prior case because these prior findings are not a basis for collateral estoppel asserted by the Lenders. If they were, then they would have to concede they were in privity with an adjudicated willful infringer and that would require a judgment against them, not for them. Their own knowledge and their own participation as set forth in the

---

[5] This is also especially true because the Lenders make the claim that the email address on the exhibit cited by Mr. Berry establishing knowledge, for White & Case's Bankruptcy practice group partner, Roberto Kampfner, that is in is wrong so he couldn't have gotten it. Someone better tell Mr. Kampfner because he is using this same bogus email address rfampfner@whitecase.com in court filings in various bankruptcy courts and White & Case is also putting in the firm's newsletter. *See* Hogan Dec. Exhibits "24" and "25"; *compare* Lender Memorandum, filed on July 12, 2007 (Docket No. 27-2) page 16, footnote 15.

Memorandum Opinion in the Court of Appeals is what they need to prove: not what Fleming knew, but what the Lenders reasonably knew. The only thing relevant regarding Fleming is that it is now an absolute established incontestable legal fact that Fleming was a willful infringer and the Lenders allowed the infringement to continue though they had knowledge of a claim of infringement and the means to stop it.

As to the May 16, 2003, second e-mail, Hogan Dec. Exhibit "10" which, in absence of a relevant objection from the Lenders' counsel, will be filed prior to the hearing (Hogan Dec. ¶ 2) shows a great deal more than the Lenders' concern for the Debtors staying in their budget while dealing with Berry infringement issues. This e-mail establishes that Fleming's lawyers considered the Lenders their principal. It is hornbook law that agency is determined by whether the agent agrees to the control of the principal. The control in this case, is far beyond any inferred control as set forth in the *Perfect Ten v. Visa Int'l Service Assn., et. al,* Docket No. 05-15170 (9th Circuit Slip Op. Dated July 5,2007) cited by the Defendants. In *Perfect 10*, VISA was claimed liable in regard to its facilitation of ongoing infringement of on-line images adult images owned by Perfect 10 by allowing the use of its automated credit card processing services. In contrast to simply handling automated on-line transactions, as in Perfect 10, in the present

case, the Lenders admit that they had become involved in micro-management of the infringing activities making decisions regarding minor expenditures. These lenders, unlike Visa in *Perfect 10*, also possessed the absolute right to stop the infringement of Berry's database not just make life more difficult for the infringer. The infringers' key agents admit that the Lenders had power to control them in regard to the infringing activities. The loan documents show the absolute power to liquidate the infringer if it breached its promise not to infringe "databases." In *Perfect Ten*, Visa could have only made the infringer use another creditor card processor causing the infringer to change its website to say, "We only accept Master Card, PayPal and American Express." In any event, Judge Kozinski, in a very thoughtful dissent, takes great issue with the majority's opinion and would have found Visa's conduct, that is much more attenuated than the Lenders' conduct, nothing but infringement. Prior to the hearing on the instant motion and counter-motion, the date for *en banc* review will pass and we shall see if the case will be subject to further proceedings before the Court of Appeals.

   Even adopting the Lenders' own interpretation of the Bankruptcy Court orders, Mr. Berry has evidence of control that is not "solely" based on the fact that the Lenders provided financing. The Lenders in their own Memorandum admits they were in control of the infringement and the infringers' own lawyers felt that

the team had to seek approval from the Lenders regarding the most mundane aspect of the ongoing Berry infringement. The Lenders don't present any evidence to rebut Hogan Dec., Exhibit 10 that shows actual control regarding the conduct of the infringement not implied constructive control based on a loan agreement that is all there was in *Perfect 10*. This email shows the Lenders had control of the debtor's infringement "team," that, consistent with that total control, is still defending them in this case. It is difficult to imagine how their could be any greater evidence of actual control in the infringement context.

III.   CONCLUSION.

Mr. Berry has made his prima facie showing and there has been no competent evidence put forward to counter it and no request for any extension of time on the Rule 56(f). Therefore, the Court should enter partial summary judgment on the issue of collateral estoppel regarding the effect of the Bankruptcy Court orders, the statute of limitations and vicarious infringement.

For the reasons stated the Counter-Motion should be granted.

Executed at Honolulu, Hawai'i, July 15, 2007.

/S/Timothy J. Hogan
TIMOTHY J. HOGAN