# EXHIBIT EE

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF HAWAII

 3                                  )
    WAYNE BERRY,                    )  CV 01-00446 SPK-LEK
 4                                  )
             Plaintiff,             )  Honolulu, Hawaii
 5      vs.                         )  March 5, 2003
                                    )  9:00 A.M.
 6  FLEMING COMPANIES, INC.,        )
    et al.,                         )  Settling of Instructions
 7                                  )
             Defendants.            )
 8  _____)

 9
                 PARTIAL TRANSCRIPT OF JURY TRIAL
10            BEFORE THE HONORABLE SAMUEL P. KING
                  UNITED STATES DISTRICT JUDGE
11

12  APPEARANCES:

13  For the Plaintiff:           TIMOTHY J. HOGAN, ESQ.
                                 Lynch Ichida Thompson Kim
14                                & Hirota
                                 First Hawaiian Tower
15                               1132 Bishop St., Ste. 1405
                                 Honolulu, HI 96813
16
    For the Defendant            LEX R. SMITH, ESQ.
17  Fleming Companies, Inc.:     ANN C. TERANISHI, ESQ.
                                 Kobayashi Sugita & Goda
18                               First Hawaiian Center
                                 999 Bishop St., Ste. 2600
19                               Honolulu, HI 96813

20  Official Court Reporter:     Debra Kekuna Chun, RPR, CRR
                                 United States District Court
21                               300 Ala Moana Blvd. Ste. C285
                                 Honolulu, HI 96850
22                               (808) 534-0667

23

24
    Proceedings recorded by machine shorthand, transcript
25  produced with computer-aided transcription (CAT).
```

```
 1   next question."  I've stricken that.
 2              And again, "Was the infringement of the Crystal
 3   Reports software copyright willful?  Yes.  No.  Go to the
 4   next question."  I've stricken that.
 5              And again, "Was the infringement of the
 6   FlemingPO.exe software copyright willful?  Yes.  No.  Go
 7   to the next question."  I've stricken that.
 8              MR. HOGAN:  Your Honor, if I may be heard.
 9   First, we elected statutory damages on the belief that
10   we'd get to the jury on willfulness.  We're already here.
11   I just want to put on --
12              THE COURT:  You can change your mind now if you
13   want to.
14              MR. HOGAN:  Let's address the instruction, Your
15   Honor, at least as to the language, if I may.  Let me try
16   to appeal to you to reconsider your decision on the issue
17   of willfulness, if I may first, Your Honor, if the court
18   will permit me.
19              The instruction that the court -- it was number
20   49 and 51, which makes it the third from the last --
21   adopted language that we had placed in our second set of
22   instructions that basically gives to the jury the decision
23   of whether something was willful.  If you recall the
24   case -- the Feltner case, Your Honor, that the Supreme
25   Court ruled that issues of statutory damages are jury
```

1   issues, Your Honor.  And I believe the issue of
2   willfulness, if there's any evidence at all, should go to
3   the jury.
4         The language says, "An infringement was willful
5   when the defendant engages in acts that infringe the
6   copyright and knew that those actions may infringe the
7   copyright."
8         Part of our case, Your Honor, is Mr. Dillon
9   taking source code, despite his testimony, and creating an
10  illegal derivative.  Nothing could be more willful than
11  that.  If he took source code and copied it, Your Honor --
12  and his testimony was that he didn't, but our expert says
13  he did.  And because of that, Your Honor, there is no way
14  to look at that other than as a willful infringement.
15        THE COURT:  Which instruction is that again?
16        MR. HOGAN:  That would be the actual -- the one
17  that you were going to bifurcate, Your Honor.  It's on 49
18  and 51, which I believe would put it third from the
19  last.
20        THE COURT:  Yeah.
21        MR. HOGAN:  That's the instruction that the
22  court had prepared that was, I believe, consistent with
23  the Ninth Circuit model instructions.  And it really comes
24  down to whether they knew it may infringe, not that it
25  did.  I believe the Ninth Circuit has made it clear that

1   in issues of willfulness close calls go to the plaintiff.
2   And at least as to FlemingPO.exe, Your Honor, there's
3   clear evidence that a jury could find a willful
4   infringement.  There is no license that would cure that.
5           As to the other two claims of infringement under
6   our statutory request, Your Honor, the first as to freight
7   control system, it's clear that Mr. Berry had thought he
8   was going to be the one to make the changes.  There's no
9   document in the record that says that they could change
10  the freight database; although, they're going to argue it
11  was implied.  But at least a reasonable juror could say,
12  "No, no, no.  Mr. Berry was to do that, and you infringed
13  it.  And when you did that, you did it knowing that it
14  might infringe his copyright."
15          We have the letter -- exhibit 16, Your Honor.
16  That's on the FlemingPO.  Their own employees are telling
17  them it's infringement back before it started.
18          THE COURT:  Well, that's when he manufactured a
19  license that nobody had agreed to.
20          MR. HOGAN:  Well, I understand that, but if --
21  even if it was onerous, at least they were aware that
22  there were things out there that were going to cause
23  infringement.  They did it anyway.
24          THE COURT:  Did he claim that, yes.
25          MR. HOGAN:  But as to FlemingPO.exe, Your Honor,

```
 1    the creation of that derivative has no non-willful
 2    explanation.  I would say the same thing as to the Crystal
 3    Reports.  If they went in and changed -- it seems like a
 4    trivial thing, but in the case like this it's 150,000
 5    trivial thing that they went in and changed it.  We
 6    know -- we're outside the jury.  We know why they did it,
 7    Your Honor.  We know why.  They did it because they were
 8    taking the money from the invoices.  Now, the jury doesn't
 9    get to hear that, but can we say that that wasn't willful?
10              THE COURT:  Because they were doing what?
11              MR. HOGAN:  They changed -- they went in and
12    took API's receivables.  They changed the name.
13              MR. SMITH:  Counsel is now arguing the subject
14    that the court has already ordered us to arbitration on
15    and that the plaintiff has refused to go to arbitration
16    on, Your Honor.
17              MR. HOGAN:  The point I'm trying to make, Your
18    Honor, is it's one thing that if one takes a piece of
19    computer software, thinks it's okay to make a backup copy,
20    and then finds out it's not.  That would be an innocence
21    infringement.  Or if a company finds out that they've got
22    Mr. Berry's software and we write them a letter and say
23    please stop using it and they stop, it's still
24    infringement but it's innocent.
25              They fought tooth and nail, Your Honor, to keep
```

```
 1   that software, knowing that they might be infringers.  And
 2   I think the jury gets to decide that.  Feltner says it's a
 3   jury issue, Your Honor, and it never used to be.
 4            THE COURT:  How could it be willful when they
 5   were using it with permission all the time?
 6            MR. HOGAN:  Your Honor, had they made no
 7   changes --
 8            THE COURT:  Before they had the asset purchase
 9   agreement.
10            MR. HOGAN:  Well, API had used it, Your Honor.
11   API had --
12            THE COURT:  For Fleming.
13            MR. HOGAN:  Well, but it was not Fleming's
14   people, Your Honor.  They actually were parking API people
15   at Fleming running it.
16            THE COURT:  So what does that --
17            MR. HOGAN:  Well, no one has alleged -- had
18   Fleming made no changes there would be no case here, Your
19   Honor.  That's all it's about.  They knew they were going
20   to take a chance on infringing --
21            THE COURT:  Well, you heard what the changes
22   were.  There were a lot of reports that had no material in
23   them; so they just dropped them.  That was one of them.
24            MR. HOGAN:  But the evidence is that that is one
25   of the exclusive rights of ownership, Your Honor.  Whether
```

```
 1    we like it or not copyrights are unique; it's a monopoly
 2    that the owner and the author gets.
 3              THE COURT:  That's fine.  You can argue that.
 4    But to say that it's willful --
 5              MR. HOGAN:  I guess the question -- I can't pose
 6    it to the court, but I have to pose to myself, Your
 7    Honor -- is when would it be willful?  When can you in a
 8    commercial setting where they've taken -- there's only one
 9    copy of this out there.
10              THE COURT:  No, no, no -- well, one copy, yes.
11    Which he installed on their equipment.
12              MR. HOGAN:  He let them borrow a copy.  They
13    didn't buy it.  He said, "Use it.  Get through the
14    holidays."
15              THE COURT:  That's your argument.
16              MR. HOGAN:  That's my argument, Your Honor.
17              THE COURT:  But their argument is they did.
18              MR. HOGAN:  Their argument is, Your Honor,
19    they're asserting the rights of ownership, the right to
20    make a derivative under --
21              THE COURT:  They only did that after he came up
22    with this license idea.
23              MR. HOGAN:  Well, Your Honor, again it's not a
24    question whether they knew for sure it was infringement.
25    It's not proving as if it were a Title 18 violation, Your
```

```
 1   Honor. We're talking about a civil case where the jury
 2   instruction says it might be -- it might be infringement.
 3   It doesn't --
 4           THE COURT:  No, no, no, no, no, no, no.
 5           MR. HOGAN:  May infringe.
 6           THE COURT:  Willful is not might be.
 7           MR. HOGAN:  It says whether those action may
 8   infringe. They don't have to have the scienter of an evil
 9   act. They just have to have a heads up, Your Honor. The
10   instruction makes it clear.
11           And this is where the small developer making one
12   piece of software -- the easy one is, Your Honor, they
13   take a copy of Windows, they make a thousand copies and
14   sell them at the swap meet. That's easy. Everybody knows
15   that's infringement.
16           MR. SMITH:  It's willful.
17           MR. HOGAN:  It's willful. But when they make
18   numerous copies -- they've said a hundred copies, Your
19   Honor, of the same work were made. Dillon testified to
20   that. He made a hundred separate copies, saved them on
21   the hard drive. That's a hundred copies. He didn't
22   distribute them to anybody. He kept them for Fleming to
23   run a multimillion dollar business and didn't give a dime
24   to the owner of the software. Got to be willful, Your
25   Honor. It wasn't a mistake. Mr. Dillon knew what he was
```

1   doing. And I believe, Your Honor, the jury should make
2   this determination. There's evidence to support it.
3   It's critical to Mr. Berry's case.
4           THE COURT: What's the evidence?
5           MR. HOGAN: All right. On FlemingPO it's
6   clear that he made -- we have an expert that said he
7   cheated. He said he was -- he committed --
8           THE COURT: I don't remember him saying that.
9           MR. HOGAN: He said it was a substantially
10  similar program and that it was plagiarism. That it
11  was -- a copy of Mr. Berry's software was embedded in Mr.
12  Dillon's code.
13          That claim, Your Honor, isn't -- Fleming isn't
14  saying we made these changes under the license. They're
15  not saying that. They're saying this is not Mr. Berry's
16  software at all.
17          THE COURT: It would be a lot better if you let
18  them argue their own case. You just argue your case.
19          MR. HOGAN: All right, Your Honor. So that's as
20  to FlemingPO. Clearly evidence of importing code from one
21  program to another. I've proven access and similarity,
22  and there's got to be willfulness, Your Honor. He knew he
23  was doing it.
24          As to the freight control system, we talked
25  about that. They knew Mr. Berry had reserved the right --

12

1  they never obtained a written license from him to make all
2  these changes.  He gave them the cost of making changes.
3          THE COURT:  They thought they'd bought it.
4          MR. HOGAN:  Your Honor, they thought a lot of
5  things.  They started off as owners.  There's been
6  evidence saying that we're not an owner.  It goes around
7  and around, Your Honor.  The jury should make the
8  determination.
9          I think the jury could say that this whole thing
10 it shows that they were trying to grab his software from
11 day one.  If it included an act of infringement, wouldn't
12 that have been willful?  I mean how is it that that
13 little -- all the stuff got out with all this, Your Honor,
14 the documents?
15         THE COURT:  It's amazing how we can view the
16 same case in different ways.
17         MR. HOGAN:  Exactly, Your Honor.
18         THE COURT:  It looks like Fleming bailed out
19 API, and so they wound up with one of API's employees
20 suing them for having bailed them out.  Willful.
21         MR. HOGAN:  But it's infringement, Your Honor.
22 We're not talking about a criminal violation.  We're
23 talking about whether or not somebody had a reasonable
24 cause to believe it might --
25         THE COURT:  What's your definition of "willful"?

13

1  MR. HOGAN: It says: knew that those actions
2  may infringe the copyright.
3  MR. SMITH: The Ninth Circuit Peer International
4  versus Pausa Records, Inc., 909 Federal 2d 1332. It
5  defines "willfulness" as, quote, knowledge that the
6  defendant's conduct constituted an act of infringement,
7  end quote. And we took that off the Ninth Circuit's
8  webpage.
9  There just isn't evidence of willfulness here,
10 Judge. There's evidence that Fleming relied on its
11 license. That's the opposite of willfulness. Willfulness
12 implies that you're doing something --
13 THE COURT: I'll let Mr. Hogan go to the jury on
14 willfulness.
15 MR. SMITH: On all --
16 THE COURT: Yeah.
17 MR. SMITH: Okay. Thank you, Your Honor.
18 THE COURT: We've heard your arguments both
19 ways. So reverse all that stuff about taking willful out.
20 Reinstate -- the verdict form (nodding).
21 MR. SMITH: And, Your Honor, that would be over
22 objection of the defendant.
23 THE COURT: I should imagine so.
24 MR. SMITH: Okay. And I gather the instruction
25 on "willfulness" will go back in also.

1            THE COURT: That's the verdict form as submitted
2     with the insertion of the numbers of the exhibits 221,
3     222, and 223.
4            MR. SMITH: And I need to place an objection on
5     the record regarding the instruction on "willfulness,"
6     precisely the subject the court and Mr. Hogan were
7     discussing. The instruction on "willfulness" says
8     knowledge that it may infringe --
9            THE COURT: Submit one.
10           MR. SMITH:  -- and that is not the
11    appropriate -- we will, Your Honor.
12           THE COURT: And so we'll put back in that
13    willful one, which is the second to the last: "Mr. Berry
14    contends that the defendant willfully infringed the three
15    copyrights. If Mr. Berry proves by a preponderance of the
16    evidence willful infringement, you may, but are not
17    required to, increase the statutory damages for
18    infringement of that work to a sum as high as 150,000.
19           "An infringement was willful when the defendant
20    engages in acts that infringe the copyright and knew that
21    those actions may infringe the copyright."
22           MR. SMITH: And our objection is to the word
23    "may," Your Honor. That ought to be at least -- if not
24    "will" infringe the copyright, at least "were likely to"
25    infringe the copyright.

1     THE COURT: And knew that those actions infringe
2  the copyright?
3     MR. SMITH: That's right, Your Honor. That
4  would be the definition of "willful."
5     MR. HOGAN: I think -- I haven't got the Ninth
6  Circuit's. I can pull them out of my stuff, Your Honor.
7  But I think the Ninth Circuit's model instruction has the
8  "may" language in it, Your Honor. That's not something I
9  drafted.
10    THE COURT: You just showed it to me a little
11 while ago, didn't you.
12    MR. SMITH: I think that's correct, Your Honor.
13 I think that language is in the Ninth Circuit's pattern
14 instruction. But the case the Ninth Circuit cites right
15 after that pattern instruction says "knowledge that the
16 defendant's conduct constituted an act of infringement."
17 I think it needs to be more than merely "may" in order to
18 establish willfulness.
19    (Court reviewing model instruction.)
20    THE COURT: I think we'll just leave it alone.
21 You can argue. It just gets more complicated.
22    Now, were there any other instructions that
23 somebody wanted to object to?
24    MR. SMITH: Your Honor, we had submitted
25 proposed instructions on joint authorship. It's our

```
 1             MR. HOGAN:    Couple minutes, Your Honor.
 2             THE COURT:    10:30?
 3             MR. HOGAN:    That would be fine, Your Honor.
 4             THE COURT:    So we'll recess until 10:30.  You
 5   might tell the jurors to prepare for argument.
 6             Now let me ask you again.  I have a notice of
 7   election of statutory damages.
 8             MR. HOGAN:    Yes, Your Honor.
 9             THE COURT:    You're going to stick with it.
10             MR. HOGAN:    We're sticking with it, Your
11   Honor.
12             THE COURT:    Okay.  It's filed, and you can hang
13   on to it, Leslie.
14             THE CLERK:    Thank you, Your Honor.
15             THE COURT:    Let me say that I'm following that
16   New York case -- what was the New York case again?  Which
17   attempted to make some sense out of the Supreme Court's
18   decision.  We find down here at the trial level that
19   appellate courts come out with fine language which leaves
20   us the problem of applying it to real situations.
21             Alexander versus Chesapeake, Potomac, and
22   Tidewater Books, Inc., 60 F. Supp. 2d 544.  That's the one
23   that said "With respect to the selection that under the
24   Copyright Act the plaintiff may elect to receive statutory
25   or actual damages, Alexander did not elect statutory
```

```
 1              COURT REPORTER'S CERTIFICATE
 2         I, Debra Kekuna Chun, Official Court Reporter,
 3    United States District Court, District of Hawaii, do
 4    hereby certify that the foregoing is a correct transcript
 5    from the record of proceedings in the above-entitled
 6    matter.
 7         DATED at Honolulu, Hawaii, May 26, 2005.
 8
 9                    _____
10                    DEBRA KEKUNA CHUN
11                    RPR, CRR
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```