# EXHIBIT II

----- Original Message -----
From: Timothy J. Hogan
**To:** damian_capozzola@la.kirkland.com
**Sent:** Friday, May 02, 2003 8:55 AM
**Subject:** RE: Berry Freight Control Software - Confidential Evid. R. 408 Settlement
Communication:

Confidential Evid. R. 408 Settlement Communication:

Damian:

Thanks for the response. Can you please shoot me an acknowledgement that
you have received this? Thanks in advance.

As to your inquiry, first, the covenants clearly give the lenders the power over
infringing conduct. To cover his bases, Mr. Berry, some time ago, sent each
lender a willful infringement heads up certified letter. Only Deutsche Bank chose
to ignore it. All of the others answered it.

As to the ability to control the direct infringer, this is what we got off of the SEC
homepage.

FLEMING COMPANIES, INC.
$200,000,000
9 1/4% SENIOR NOTES DUE 2010
UNDERWRITING AGREEMENT
June 13, 2002

Deutsche Bank Securities Inc.
Lehman Brothers Inc.
First Union Securities, Inc.
J.P. Morgan Securities Inc.
Morgan Stanley & Co. Incorporated,
as Representatives of the several Underwriters
set forth on Schedule 1 hereto
c/o Deutsche Bank Securities Inc.
  31 West 52nd Street
  New York, New York  10019

. . .
Pages 8-9, para. (s).

  (s) The Company and each of the Subsidiaries have good and
   marketable title to all real property and good title to all personal
   property described in the Final Prospectus as being owned by it and good
   and marketable title to a leasehold estate in the real and personal
   property described in the Final Prospectus as being leased by it free and
   clear of all liens, charges, encumbrances or restrictions, except as

20070804 Berry v. Deutsche Bank 1st Berry Production
956

described in the Final Prospectus or to the extent the failure to have
such title or the existence of such liens, charges, encumbrances or
restrictions would not, individually or in the aggregate, have a Material
Adverse Effect. All leases and material contracts and agreements to which
the Company or any of the Subsidiaries is a party or by which any of them
is bound are valid and enforceable against the Company or such Subsidiary,
and are in full force and effect with only such exceptions as would not,
individually or in the aggregate, have a Material Adverse Effect. The
Company and the Subsidiaries own or possess adequate licenses or other
rights to use all patents, trademarks, service marks, trade names,
copyrights and know-how necessary to conduct the businesses now or
proposed to be operated by them as described in the Final Prospectus, and
to the Company's knowledge, none of the Company or the Subsidiaries has
received any notice of infringement of or conflict with (or knows of any
such infringement of or conflict with) asserted rights of others with
respect to any patents, trademarks, service

   marks, trade names, copyrights or know-how that, if such assertion of
infringement or conflict were sustained, would have a Material Adverse
Effect.

Because we know this system is a "money machine" for Fleming and its lenders,
there won't be an issue of whether the lenders reap a financial benefit from the
system.  If this wasn't so, who would care to keep fighting poor old Mr. Berry?

In the post-Napster world, if you can control the infringement and make money
from it, you're liable.  The liability is for each direct infringer (every employee
agent, customer user is a direct infringer).  By "stacking" the statutory damages
for each direct infringer and making the vicarious/contributory infringer (the
lenders) jointly and severally liable, you get to "Napsteresque" damages.  In the
RICO context that is times three, of course.

You may note recent case filed against Napster equity investors on similar theory
only I don't think they had any covenant-control to lock them in.  You can read
about it here:  http://www.oaklandtribune.com/Stories/0,1413,82~10834~1344658,00.html .

As to your inquiry regarding the RICO predicate, this is how I see it:

The Copyright Act, 17 U.S.C.Sec. 506. - Establishes the willful infringement
criminal offense as follows:

(a) Criminal Infringement. - Any person who infringes a copyright willfully either -
(1) for purposes of commercial advantage or private financial gain, or . . .(not relevant).

See http://www4.law.cornell.edu/uscode/17/506.html (Attribution Cornell University).

We have a civil finding of willful infringement in the Jury Verdict.  Not by "beyond
reasonable doubt" standard but by a "preponderance."  Under the RICO act, this

is a predicate and because civil RICO proves by the preponderance standard the finding is collateral estoppel as to Fleming et al. By the way, it doesn't have to be put to final judgment for that to apply, just the jury verdict makes the issue decided under collateral estoppel. See Greenleaf v. Hopeman, 174 F.3d 352, 358 (3rd Cir. 1999).

The RICO Act makes this a predicate as follows:

The RICO Act, 18 U.S.C. Sec. 1961.


Definitions
As used in this chapter –

(1) "racketeering activity" means
. . .

(B) any act which is indictable under any of the following provisions of title 18, United States Code: section 2319 (relating to criminal infringement of a copyright)

See http://www4.law.cornell.edu/uscode/18/1961.html (Attribution Cornell University).


The U.S. Code establishes the criminal penalties for these acts in 18 U.S.C. Sec. 2319.

Criminal infringement of a copyright (a) Whoever violates section 506(a)(relating to criminal offenses) of title 17 shall be punished as provided in subsections (b) and (c) of this section and such penalties shall be in addition to any other provisions of title 17 or any other law. (b) Any person who commits an offense under section 506(a)(1) of title 17 –

(1) shall be imprisoned not more than 5 years, or fined in the amount set forth in this title, or both, if the offense consists of the reproduction or distribution, including by electronic means, during any 180-day period, of at least 10 copies or phonorecords, of 1 or more copyrighted works, which have a total retail value of more than $2,500;

(2) shall be imprisoned not more than 10 years, or fined in the amount set forth in this title, or both, if the offense is a second or subsequent offense under paragraph (1); and

(3) shall be imprisoned not more than 1 year, or fined in the amount set forth in this title, or both, in any other case.

See http://www4.law.cornell.edu/uscode/18/2319.html (Attribution Cornell University).

That brings us back to the original jury finding and that should just about do it.

As to the usual RICO challenges like continuity, I've got two bankruptcy fraud convictions for 1995 conduct that makes the open ended continuity a slam dunk.

20070804 Berry v. Deutsche Bank 1st Berry Production
958

Now that we have an admission that Fleming Hawaii has made another derivative (post-jury finding) being used, willfully, by the DIP and I think I'm pretty safe.

If you have any other questions shoot me an email and I'll respond.

On our discussions, I've received a disturbing letter from Fleming's agent that makes it difficult for hold fire for long.

Tim

-----Original Message-----
From: damian_capozzola@la.kirkland.com
[mailto:damian_capozzola@la.kirkland.com]
Sent: Friday, May 02, 2003 5:46 AM
To: Timothy J. Hogan
Subject: Re: Berry Freight Control Software

Tim,

   Thank you for your e-mail. I am sorry that I did
not get back to you sooner, but as you may have learned
it was a long day in Delaware.

   It would be helpful for me if you could please
provide some authorities for your previous assertions
(as I understood them) that the DIP financiers may face
liability and that the jury verdict provides the
criminal predicate for a RICO action.

   Thanks.

—Damian

hogant001@hawaii.rr.com on 05/01/2003 11:47:13 AM

To:  Damian Capozzola/Los Angeles/Kirkland-Ellis@K&E
cc:

Subject:  Berry Freight Control Software

20070804 Berry v. Deutsche Bank 1st Berry Production
959

Rule 408 Settlement Communication


Dear Mr. Capozzola:

As I stated in my earlier telephone conversation with you, I will wait until
the end of next week to begin to address Mr. Berry's myriad of issues
related to the ongoing use of his original work.  I have already drafted the
Motion for Relief from Stay and complaints against Hawaiian Express and
others.


We agree that a sale of the copyright to Fleming would result in a global
resolution of the dispute.   We are willing to delay our actions but not
during protracted negotiations.  We believe that some tangible expression of
the Debtor-in-Possession's good faith in the form of some payment to Mr.
Berry is the necessary consideration for further delay. Our pre-Bankruptcy
experience with Fleming has shown that delay is never in my client's
interest.  We will be happy to discuss and negotiate with the
Debtor-in-Possession after filing, but my experience is that negotiations
are enhanced during stay relief proceedings. Therefore if you don't believe
that an acceptable payment can be made in the short term, we will file at
the end of next week and continue our discussions, if that is what you
desire.


Tim Hogan



Timothy J .Hogan
Lynch Ichida Thompson Kim & Hirota
1132 Bishop Street, Suite 1405
Honolulu, Hawaii  96813
Tel.  (808) 528-0100
Fax. (808) 528-4997
email: tjh@loio.com

20070804 Berry v. Deutsche Bank 1st Berry Production
960

<< File: att1.htm >>

20070804 Berry v. Deutsche Bank 1st Berry Production
961