TIMOTHY J. HOGAN 5312-0
ATTORNEY AT LAW
1050 Bishop Street, No. 433
Honolulu, Hawaii 96813
Tel. No. (808) 382-3698
Fax No. (808) 356-1682
E-mail: tjh@timhogan.com

Attorney for Plaintiff
WAYNE BERRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, ) | |
| ) | Civ. No. 07 CV-0172 SOM-LEK |
| Plaintiff, ) | (Copyright) |
| ) | |
| vs. ) | |
| ) | |
| DEUTSCHE BANK TRUST ) | |
| COMPANY AMERICAS (FKA ) | PLAINTIFF'S RICO STATEMENT |
| BANKERS TRUST COMPANY)AND ) | |
| JP MORGAN CHASE BANK IN ) | |
| THEIR SEPARATE CAPACITIES ) | |
| AND AS AGENTS FOR THE PRE ) | |
| AND POST-PETITION LENDERS OF) | |
| FLEMING COMPANIES, INC.; ) | |
| GENERAL ELECTRIC CAPITAL ) | |
| CORPORATION; C&S ) | |
| WHOLESALE GROCERS, INC.; ) | |
| DOES 1 TO 200, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

PLAINTIFF WAYNE BERRY'S RICO STATEMENT

**1.     State whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b), (c), and/or (d).**

The alleged conduct violates 18 U.S.C. § 1962 (a) (c) & (d).

**2.     List the defendants and state the alleged misconduct and basis of liability of each defendant.**

All named defendants, are defendants under the RICO 18 U.S.C. § 1962(d) Conspiracy Claim. Core-Mark Holdings, Inc. is a co-conspirator RICO Person. The detailed facts describing the conspiracy are set forth in the First Amended Complaint that are incorporated by this reference.

An unincorporated entity commonly referred to as Fleming-Logistics is alleged to be a 18 U.S.C. § 1962 (c) enterprise that is employed to facilitate the commission of certain predicate acts, including, but not limited to, the ongoing infringement of Plaintiff's original work. This Enterprise possesses and launders the funds received from the use of Mr. Berry's intellectual property. To protect this Enterprise Mr. Berry has been the victim of violations of the Hobbs Act. The Lenders and C&S are alleged to have obtained money derived from the operation of a RICO enterprise in violation of 18 U.S.C. § 1962(a).

**3. List alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.**

Discovery is ongoing. Certain attorneys, and other agents of the parties to this RICO action have advised their clients to commit the predicate acts that are complained of herein. This statement will be amended, if required.

**4. List the alleged victims and state how each victim was allegedly injured.**

Wayne Berry is the principal victim of this conduct. His rights under the Copyright Act, 17 U.S.C. § 106 and under the Hobbs Act, 18 U.S.C. § 1951 have been repeatedly violated by the defendants and their agents.

**5. Describe in detail the pattern of racketeering activities or collection of unlawful debts alleged for each RICO claim. The description of the pattern of racketeering shall include the following information:**

    **a.    List the alleged predicate acts and the specific statutes that were allegedly violated;**

    1. Criminal Copyright Infringement. 18 U.S.C. § 2319 (relating to criminal infringement of a copyright) the number of these instances of violations of Title 18 are too numerous to be stated herein but include the daily booting up of computers that load, without any license, pirated copies of Mr. Berry's software each day the infringement continues. These predicate acts continue as of this writing;

    2. Hobbs Act.  Threats and intimidation against Mr. Berry by the Defendants and their agents.

    3. Money Laundering. 18 U.S.C. § 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity ("SUA") i.e. Copyright Infringement. The money derived from the use of the Berry system is money derived from an SUA.

  b. **Provide the date of each predicate act, the participants in each predicate act, and a description of the facts constituting each predicate act;**

    1. As to the Criminal Copyright Infringement, each day from 2005 to the present and this is ongoing.

    2. The last Hobbs Act violation occurred on August 13, 2007.

    3. The money laundering occurs on a daily basis.

  c. **If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Identify the time, place and substance of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made;**

  Not Applicable

  d. **State whether there has been a criminal conviction for violation of any predicate act;**

  Two previous members of the Fleming-Logistics Enterprise have been

convicted for conduct related to the ongoing RICO enterprise.

      **e.    State whether Civil litigation has resulted in a judgment with regard to any predicate act;**

Fleming has been adjudicated by jury verdict as a willful i.e. criminal infringer for acts committed in 2000 to 2001. The finding of willful infringement has been affirmed by the 9th Circuit Court of Appeals on July 5, 2007. Fleming and certain C&S employees were adjudicated infringers by judgment entered on March 9, 2006. That judgement has not been appealed but the district Court finding that the infringement was not willful is on appeal.

      **f.    Describe how the predicate act forms a "pattern of racketeering activity;"**

The software is used by the members of the enterprise and their principals the identity is known to the members but currently unknown to the Plaintiff to facilitate various unlawful practices associated with the shipment of goods interstate. These practices include, but are not necessarily limited to, the transportation of contraband cigarettes, mis-declaration of freight in violation of federal shipping laws .

      **g.    State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe the alleged relationship and common plan in detail.**

As set forth herein, the Berry works are used for several unlawful purposes that all are part of a common plan. The shipment of contraband, the facilitating of

diversions and the overcharges of the United States are some of the elements of the common plan and the reason that C&S has employed agents to commit Hobbs Act violations to protect its profits being derived from the Enterprise. This answer will be amended in required.

**6. Describe in detail the alleged "enterprise" for each RICO claim. A description of the enterprise shall state the names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise; describe the structure, purpose, function and course of conduct of the enterprise; state whether any defendants are employees, officers or directors of the alleged enterprise; state whether any defendants are associated with the alleged enterprise; state whether you are alleging that the defendants are individuals or entities separate from the alleged enterprise or that the defendants are the enterprise itself, or members of the enterprise; and if any defendants are alleged to be the enterprise itself, or members of the enterprise; explain whether such defendants are perpetrators, passive instruments, or victims
of the alleged racketeering activity.**

In regard to the 18 U.S.C. § 1962(c) claim:

In or about 1993, certain individuals, including Jack Borja and Lokilani Lindsey formed Atlantic Pacific International, Inc. ("API"). API was formed by these individuals to facilitate two principal criminal practices. The first was to facilitate false billing overcharges for food shipments into the state of Hawaii through repeated acts of mail and wire fraud. The second practice was to facilitate the trafficking of untaxed cigarettes.

By late 1995, Lokilani Lindsey began to distrust Jack Borja whom she and

her sister Marlene believed was engaged in a fraud on them.  In or about December 1995, Fleming and certain Hawaii PUC regulated trucking companies were engaged in both of these illegal practices, and transferred $200,000 to API for Jack Borja to use to buy the interests held by Lokelani and Marlene Lindsey to insure the continued flow of untaxed cigarettes and the false documentation that Fleming used to facilitate its overcharge scheme.  These false documents consisted of false invoices that set forth freight charges that were used to establish Fleming's costs in certain cost-plus contracts.   Later, approximately one half of this money was transferred, secretly to Fleming, in fraud upon it customers.

In late 1994, Jack Borja approached Wayne Berry who had been his tenant and requested that Mr. Berry provide a proposal for automating the API logistics functions.    By late 1995, Mr. Berry had completed the installation of the Berry Freight Control System and put it on line in his home to be accessed by API.

During the time after November 1995, Jack Borja informed Mr. Berry of other business affiliations that he was developing including several related to the securitization of mortgage instruments in the Philippines.  These activities were funded by Fleming and included certain other violations of RICO.

In or about 1998, Mr. Berry was informed by a temporary API employee, Mauro Edwards, that he had overheard one of Jack Borja's relatives, who was an

API employee, discussing the shipment of machine guns with silencers in Fleming controlled ocean containers. Mr. Berry immediately contacted the Alcohol Tobacco and Firearms ("ATF") to report this information.

In a meeting with Tracy Elder and Jordon Lowe, who were identified as ATF special agents, Mr. Berry was asked if he knew anything about cigarette smuggling through Fleming.

Later, after being requested to produce certain corporate records in litigation, Mr. Berry discovered certain records of Fleming related companies that appeared to be engaged in cigarette diversions or trafficking. These companies including UPAC (controlled by John Ault, Fleming's manager), and WC Distributing. Mr. Berry reported this to the ATF that immediately sent an investigator to review the records.

After further investigation, Mr. Berry discovered documents dating back to 1993 detailing the agreement by the Lindseys and Mr. Borja using the Fleming money to facilitate the trafficking of untaxed cigarettes. These documents were obtained by the United States pursuant to grand jury subpoena and, upon information and belief, were the government's principal evidence against Marlene and Lokelani Lindsey who were convicted of the predicate offenses of Money Laundering and/or Bankruptcy Fraud.

C&S purchased certain businesses that allowed it to become the principal of

the enterprise. It claimed to have stopped using any Berry works but began to use them again after obtaining summary judgment in 2005. It continues to use these works on a daily basis.

**7. State and describe in detail whether you are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

The specific acts of racketeering are more particularly set forth in the First Amended Complaint and the previous answers that are all incorporated herein.

In further response, the pattern of commission of violations of RICO continues in regard to each of the RICO Defendants that utilize Plaintiff's software for their own purpose. The enterprise exits to facilitate the ongoing criminal use of Plaintiff's intellectual property and to permit the members of the enterprise earn money from the multiple commissions of predicates. But for the common purpose of the enterprise the members could not obtain the use of the software.

Discovery has not commenced and this answer may be supplemented.

**8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual daily activities of the enterprise, if at all.**

Fleming and now C&S are outwardly legitimate wholesale enterprises. Fleming-Logistics was originally API and has changed ostensible ownership but

continues in regard to it criminal practices unabated despite the changes in ostensible ownership. The maintenance of the Government contract overcharges, the shipment of contraband are all facilitated by the illegal use of Mr. Berry's property in violation of Title 18 U.S.C.  Each time the system is loaded in a computer, that occurs over ten times a day, a criminal act of infringement occurs. These illegal acts are further compounded by the use of this system to create false freight charges that are transmitted to the United State of America as costs. The true costs are maintained in the data contained in the Berry freight control system. government contractors doing business with the Defense Commissary Agency ("DeCA") are required to submit to extensive audits. Upon information and belief, Fleming and now C&S have concealed the Berry freight control system from the Government to hide the extent and nature of the fraud and overcharge.

**9. Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

Millions of dollars in profits that but for the commission of the predicate acts could not have been obtained by the participants.

**10. Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

By violating Mr. Berry's rights as an owner of intellectual property, and by threatening his person and property in violation of the Hobbs Act, the Defendants

impede the development of new innovative alternatives to the current logistics methods used to ship over $1 billion in goods yearly to Hawaii and Guam.

**11.    If the complaint alleges a violation of 18 U.S.C. § 1962(a), state who received the income derived from the pattern of racketeering activity or though the collection of unlawful debt; and describe the use or investment of such income.**

All Defendants.

**12. If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

N/A

**13. If the complaint alleges a violation of 18 U.S.C. I § 1962(c), state who is employed by or associated with the alleged enterprise, and state whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).**

The Enterprise is Fleming-Logistics kna C&S Logistics. It consists of the Fleming and C&S operated by the Lender Defendants as principals.

All defendants are persons associated with the enterprise. This entity is an unincorporated association consisting of person affiliated with separate enterprises that together associate to conduct the affairs of Fleming-Logistics.

**14. If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the facts showing the existence of the alleged conspiracy.**

The facts alleged in the First Amended Complaint and in the previous responses herein are incorporated by this reference.

**15. Describe the alleged injury to business or property.**

Mr. Berry's rights provided by the Copyright Act, 17 U.S.C. § 106 have been violated thousands of times and that violation continues unabated.   In addition, by threatening Berry during a deposition, C&S, though its agent Lex Smith intended to cause Berry to give up his rights to his property thereby allowing C&S to continue to commit criminal acts of infringement with no fear that Berry would seek to be compensated or report the infringement to law enforcement. Discovery is ongoing and this anser may be supplemented.

**16. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

But for the violation of RICO, i.e. infringement, Mr. Berry would have an ability to license the defendants for the use of his software.  Discovery is ongoing and this response may be supplemented.

**17. List the damage sustained by reason of the violation of § 1962, indicating the amount for which each defendant is allegedly liable.**

For unpaid licenses fees and all profits derived from the infringement plus additional damages for the violations of the Hobbs Act in amounts to be proven.

**18. List all other federal causes of action, if any, and provide the relevant statue numbers.**

This response may be supplemented.

**19. List all pending state claims, if any.**

In this action, there are presently pending state law claim for unjust

enrichment.

**20. Provide any additional information that you feel would be helpful to the court in processing your RICO claims.**

The acts continue as of this writing and because of the amount of money generated by the Berry system, it will likely not be impeded through any civil remedy but Mr. Berry will seek the imposition of an injunction.  The participants in this Enterprise seek to hold themselves out as upstanding members of society, but to a person refuse to accept the simple fact that Copyright infringement for financial gain is a serious crime.

**21. If you cannot presently provide certain information requested above due to lack of discovery, set forth with specificity:**

**a. The facts  presently unknown but which you believe you can prove;**

The amount of revenue that is directly attributable to the infringement i.e. Mr. Berry's lost profits.

**b. The nature of discovery you plan to undertake to develop such facts;**

A Rule 30(b)(6) deposition of the defendant lenders and C&S.

**c. Of whom you intend to take discovery;**

Until the Defendants submit their disclosures Plaintiff is unable to say what discovery will be necessary.

**d. When you intend to commence and/or complete discovery.**

The Lenders have commenced discovery. Mr. Berry may seek to promptly obtain depositions of persons who have been engaged in the Hobbs Act RICO violations including C&S, Lex Smith and Michael Baumann so that they may be promptly enjoined. Discovery should be completed within one year.

DATED: Honolulu, Hawaii, August 15, 2007

/S/Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff
WAYNE BERRY