LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

AUG 13 2003

at ____ o'clock and ____ min. ____ M.
WALTER A. Y. H. CHINN, CLERK

Attorney for Plaintiff
WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen;         Plaintiff <br><br> vs. <br><br> HAWAIIAN EXPRESS SERVICE, INC., a California corporation; H.E.S. TRANSPORTATION SERVICES, INC., a California corporation; CALIFORNIA PACIFIC CONSOLIDATORS, INC., a California corporation;  JEFFREY P. GRAHAM and PETER SCHAUL, California citizens; MARK DILLON and TERESA NOA, BRIAN CHRISTENSEN, Hawaii citizens; FLEMING COMPANIES, INC.; an Oklahoma corporation; C & S LOGISTICS OF HAWAII, LLC. a Delaware LLC; C & S WHOLESALE GROCERS, INC., a Vermont | Civ. No. CV03 00385 SOM-LEK (Copyright) <br><br> PLAINTIFF'S FIRST AMENDED COMPLAINT;  EXHIBIT "A" DEMAND FOR  JURY TRIAL; SUMMONS <br><br><br><br><br> ATTEST: A True Copy <br> WALTER A.Y.H. CHINN <br> Clerk, United States District <br> Court, District of Hawaii <br><br> By _____ <br>              Deputy |

corporation;                              )
C & S ACQUISITIONS, LLC;                  )
FOODLAND SUPER MARKET,                    )
LIMITED, a Hawaii                         )
corporation; HAWAII TRANSFER              )
COMPANY, LIMITED, a Hawaii               )
Corporation, DOE                          )
INDIVIDUALS 1-350;                        )
DOE PARTNERSHIPS,                         )
CORPORATIONS and OTHER                    )
DOE ENTITIES 1-20,                        )
                                          )
            Defendants.   )
_____          )

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff Wayne Berry ("Plaintiff"), by and through his undersigned counsel, and hereby complains of the above-entitled Defendants and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction under federal subject matter jurisdiction pursuant to the Federal Copyright Act 17 U.S.C. §§ 101, et seq. and 28 U.S.C. § 1338 (b) and The Sherman Act, 15 U.S.C. §§ 1 & 2, and the Clayton Act, 15 U.S. C. §§ 15 & 26.

2.      Venue is proper in the District pursuant to 15 U.S.C. § 22, and 28 U.S.C. §§ 1391and 1400 because the majority of the wrongs that are the subject of

2

this complaint occurred in the State of Hawaii and were directed against one of its

citizens.    As set forth herein, each of the Defendants named herein have had

sufficient minimum contacts with the state of Hawaii to be amenable to service of

process by a Hawaii court.

## THE PARTIES

3.      Defendant Hawaiian Express Service, Inc. ("HEX") is a corporation,

formed under the laws of the State of California, with its principal place of

business in the State of California.  HEX also maintains a place of business in the

State of Hawaii and transacts business in the State of Hawaii.   Through the

unauthorized use of Plaintiff's intellectual property, HEX and its affiliates together

ship the majority of all food stuffs sold to consumers in the State of Hawaii.   HEX

may be found in the State and maintain offices and agent in the State of Hawaii

and conducts sufficient business in the State of Hawaii that it has availed itself of

the benefits of the State of Hawaii and has more than sufficient minimum contact

with Hawaii to make it amenable to service in the State of Hawaii because it is

found in the State.

4.      Defendant H.E.S. Transportation Services, Inc. ("HEST") is a

corporation, formed under the laws of the State of California, with its principal

place of business in the State of California.  HEST transacts business in the State

3

of Hawaii directly and through HEX and other entities.   Through the unauthorized

use of Plaintiff's intellectual property, HEST ships the majority of all food-stuffs

sold to consumers in the State of Hawaii.   HEST and its agents and bailees may be

found in the State of Hawaii and maintain offices in the State of Hawaii and

conducts sufficient business in the State of Hawaii that it has availed itself of the

benefits of the State of Hawaii and has more than the sufficient minimum contact

with Hawaii make it amenable to service in the State of Hawaii.  By intentionally

committing criminal and civil wrongs against a citizen of Hawaii HEST has had

sufficient minimum contacts with the State of Hawaii to confer venue in this

District.

5.    Defendant California Pacific Consolidators ("CALPAC") is a

California corporation doing business in the state of Hawaii. CALPAC is a large

supplier of refrigerated food products to the state of Hawaii and sells to both

civilian and military customers. HEX,  HEST and CALPAC, through the

unauthorized use of Plaintiff's intellectual property, ships the majority of all food-

stuffs sold to consumers in the State of Hawaii.   CALPAC and its agents and

bailees may be found in the State of Hawaii and maintain offices in the State of

Hawaii and conducts sufficient business in the State of Hawaii that it has availed

itself of the benefits of the State of Hawaii and has more than the sufficient

minimum contact with Hawaii make it amenable to service in the State of Hawaii.
By intentionally committing criminal and civil wrongs against a citizen of Hawaii
HEST has had sufficient minimum contacts with the State of Hawaii to confer
venue in this District.

6.      Defendant C & S Logistics of Hawaii, LLC ("C & S Logistics") is a
Delaware limited liability company registered to do business in the state of
Hawaii.  C & S Logistics is an entity formed by the principals of C & S
Wholesale Grocers, Inc., for the purpose of operating a freight logistics business
on behalf of other defendants, including, but not limited to, C & S Wholesale
Grocers, Inc., C & S Acquisitions, LLC and Foodland Super Market, Limited.  C
& S Logistics has stepped into the shoes of Fleming Logistics an unincorporated
association comprised of persons affiliated with Fleming Companies, Inc., and is
operating the Berry Freight Control System in full knowledge that such operation
constitutes willful copyright infringement.  Through the unauthorized use of
Plaintiff's intellectual property, C & S Logistics presently ships a significant
portion of all food-stuffs sold to consumers in the State of Hawaii.  C & S
Logistics maintains an agent for service in the state of Hawaii and its  agents and
bailees may be found in the State of Hawaii and conducts sufficient business in the
State of Hawaii that it has availed itself of the benefits of the State of Hawaii and

has more than the sufficient minimum contact with Hawaii make it amenable to service in the State of Hawaii. By intentionally committing criminal and civil wrongs against a citizen of Hawaii C & S Logistics has had sufficient minimum contacts with the State of Hawaii to confer venue in this District.

7.      Defendant C & S Wholesale Grocers, Inc.("C & S Wholesale") is a Vermont corporation doing business in the state of Hawaii. C & S through its agent C & S Logistics is selling groceries and operating a freight logistics business on behalf of other defendants, including, but not limited to, C & S Acquisitions, LLC and Foodland Super Market, Limited and the principals of these companies. C & S Wholesale has stepped into the shoes of Fleming Companies, Inc. and is operating the Berry Freight Control System in full knowledge that such operation constitutes willful copyright infringement. Through the unauthorized use of Plaintiff's intellectual property, C & S Wholesale and its agents presently ships a significant portion of all food-stuffs sold to consumers in the State of Hawaii. C & S Wholesale maintains no agent for service in the state of Hawaii but its agents and bailees may be found in the State of Hawaii and conducts sufficient business in the State of Hawaii that it has availed itself of the benefits of the State of Hawaii and has more than the sufficient minimum contact with Hawaii make it amenable to service in the State of Hawaii. By intentionally committing criminal

6

and civil wrongs against a citizen of Hawaii, C & S Wholesale has had sufficient

minimum contacts with the State of Hawaii to confer venue in this District.

8.    Defendant C & S Acquisition, LLC ("C & S Acquisition") is a

Delaware limited liability company doing business in the state of Hawaii.   C & S

Acquisition, through its agent C & S Logistics is operating a freight logistics

business on its own behalf and on behalf of other defendants, including, but not

limited to,  C & S Wholesale Grocers, Inc., and Foodland Super Market, Limited.

C & S Acquisition and its affiliates have stepped into the shoes of Fleming

Companies, Inc. and is operating the Berry Freight Control System in full

knowledge that such operation constitutes willful copyright infringement.

Through the unauthorized use of Plaintiff's intellectual property, C & S and its

agents presently ships a significant portion of all food-stuffs sold to consumers in

the State of Hawaii.   C & S Acquisition maintains no agent for service in the state

of Hawaii but its agents and bailees may be found in the State of Hawaii and

conducts sufficient business in the State of Hawaii that it has availed itself of the

benefits of the State of Hawaii and has more than the sufficient  minimum contact

with Hawaii make it amenable to service in the State of Hawaii.  By intentionally

committing criminal and civil wrongs against a citizen of Hawaii C & S

Acquisition has had sufficient minimum contacts with the State of Hawaii to

confer venue in this District.

9.    Hereinafter the party defendants C & S Logistics, C & S Wholesale and C & S Acquisition shall be together referred to as "C & S."

10.    Hawaii Transfer Company, Limited ("HTC"), is a Hawaii corporation, doing business in the state of Hawaii and using the Berry Freight Control System without any license and is a willful infringer.

11.    Foodland Super Markets, Limited ("Foodland") is a Hawaii corporation doing business in the state of Hawaii as its largest retail grocery distributor doing business in the Hawaii civilian retail grocery market.

12.    Defendant Fleming Companies, Inc. ("Fleming") is an Oklahoma corporation and is presently the debtor in a pending Delaware bankruptcy case. Fleming is registered to do business in the state of Hawaii and maintains an agent for service. Fleming is the sole full line wholesale grocery distributor in the state of Hawaii and by the illegal use of the Berry Freight Control System and earned more than $500,0000 in food sales annually. Fleming as debtor in possession is made a party to this suit solely to enjoin its illegal conduct all committed after the filing of the voluntary Chapter 11 petition. Plaintiff does not seek to execute upon any money judgment against Fleming or to otherwise assert rights to property of the Fleming Bankruptcy Estate.

8

13.    Defendant Jeffrey P. Graham ("Graham") is a California Citizen and upon information and belief is the president of HEX, HEST and CALPAC.  Graham has responsibility for causing and directing the infringing activities that are the subject of this complaint and derives a direct financial benefit from the infringement.  Graham conducts sufficient business in the State of Hawaii that he may be found in the District of Hawaii and has purposely availed himself of the benefits of the State of Hawaii and has more than the sufficient minimum contact with Hawaii make him amenable to service in the State of Hawaii.  By committing intentional  wrongs against a citizen of Hawaii, Graham has sufficient minimum contacts with the State of Hawaii to confer venue in this District.

14.    Defendant Peter Schaul ("Schaul") is a California Citizen and upon information and belief is the general manager of HEX, HEST and CALPAC. Schaul has certain responsibility for causing and directing the infringing activities that are the subject of this complaint and derives a direct financial benefit from infringement.  Schaul conducts sufficient business in the State of Hawaii and may be found in the State of Hawaii and he has purposely availed himself of the benefits of the State of Hawaii and has more than the sufficient minimum contact with Hawaii make him amenable to service in the State of Hawaii.  By committing

9

intentional wrongs against a citizen of Hawaii, Schaul has sufficient minimum

contacts with the State of Hawaii to confer venue in this District.

15.    Defendants Mark Dillon ("Dillon") and Teresa Noa ("Noa") are

citizens of the state of Hawaii and have both used and made unauthorized changes

to Plaintiff's intellectual property within the state of Hawaii and may be found in

the State of Hawaii.  Both Dillon and Noa had direct access to Plaintiff's software

as employees of Atlantic Pacific International, Inc, and later as Fleming

Companies, Inc.  Both Dillon and Noa have possession of the software including

its source code and have committed numerous acts of copyright infringement

regarding Plaintiff's intellectual property.   If not enjoined, Plaintiff is a real risk

that additional infringements will be committed by these individual defendants.

16.    Defendant Brian Christensen ("Christensen")  is a citizen of the state

of Hawaii and Fleming's Hawaii division president and responsible for the

direction of the July 7, 2003 infringement and the continued use of the Berry

Freight Control System after April 1, 2003.

17.    Defendants Doe Individuals 1-350 and Doe Partnerships,

Corporations and Other Entities 1-20 are persons who may be liable to plaintiff for

that acts and omissions complained of herein, but whose names, identities and

capacities are presently unknown to plaintiff and his attorney.  These additional

Doe defendants will be identified upon their discovery by plaintiff. Each user, and entity that derives a benefit from the infringement including the customers of each of the Defendants through the illegal use of the Berry Freight Control System is a separate infringer and when their identities are made know to Plaintiff will be made a party and serve as a separate basis for statutory damages should such damages be elected by plaintiff. Each of these Doe Defendants are knowingly engaged in intentional wrongful acts of infringement directed against a citizen of the State of Hawaii and it would be just that they be made a defendant in this proceeding.

18.    Plaintiff Wayne F. Berry (the "Plaintiff" and "Developer") is an individual national domiciliary of the United States and is a resident and citizen of the State of Hawaii.

19.    As the software developer victim of C & S, Foodland, Fleming, HEX, Graham, Schaul HEST , CALPAC, Dillon, Noa and the Doe Defendants' intentional, criminal and willful infringement Mr. Berry has standing to bring the instant action.

20.    All software that is the subject of this First Amended Complaint was authored in the United States of America.

21.    Upon information and belief, the majority of all acts conferring

venue relevant to this proceeding occurred in the State of Hawaii. Each of the

defendants are actively engaged in business activities in the State of Hawaii and

have derived a direct financial benefit from the infringement that is the subject of

this Complaint and may be found in the State of Hawaii.

## COUNT I
## GENERAL ALLEGATIONS RE: COPYRIGHT INFRINGEMENT

22.    On or about 1993, Plaintiff created an original work of authorship

which was then fixed as a tangible medium of expression. (the "Freight Control

System").

23.    This original work was first published in 1995.

24.    The work was an original work and contained substantial amounts of

material created by Plaintiff's own skill, labor and judgment.

25.    All of the subject software work is copyrightable under the laws of

the United States of America.

26.    On or about October 1999, Plaintiff complied with the statutory

formalities for registering his copyright in "Freight Control System" by fully

complying with Federal laws and regulations by depositing with the Copyright

Office, two copies of the best version of the Freight Control System source code,

filing the application and paying the required fees.

27.    Shortly thereafter, Plaintiff received a filed registration for Freight

Control System from the Copyright Office.   The date, class and registration

number certificate received from the Registrar of Copyrights is as follows:

"Freight Control System" dated October 19, 1999, Copyright  Registration

Number TX 5-079-445.   A true and correct copy of the Filed Registration is

attached as Exhibit "A."

      28.     All publications of the instant software have been with proper

statutory notice.

      29.     Freight Control System is a program Plaintiff wrote in Microsoft

Access and Visual Basic using both the Visual Development Environment and

hand-coding.   Freight Control System is primarily a database designed to control

and monitor consolidation and containerization of freight.

      30.     Freight Control System contains database tables, queries, screens and

macros that handle Accounts Receivable, Accounts Payable, Job Costing, Logistic

Scheduling and Real-Time Shipment Tracking. The principle unique feature of the

database is the ability for a user of this system to control a large number of

Purchase Orders and annotate shipping information to the records for billing and

tracking purposes along with planning and scheduling efficiencies that translate

directly to lower freight costs. The user can then build containers, which contain

these individual Purchase Orders. The user can enter costs for both individual

Purchase Orders and for entire containers. The system will allocate container costs to the individual Purchase Orders.   Finally, the "Bill To" party can be invoiced. Profit is derived from the billed amount less the actual costs.  By operating the Berry System, independent from Fleming's "Foods" billing system, Fleming is able to conceal the true cost of freight delivery from its end user customers including, but not limited to, the United States of America.

31.    During the period after 1997, both Dillon and Noa had access to Plaintiff's software.   Beginning in November 1999, both Dillon and Noa had direct access to Plaintiff's source code for his Freight Control System and cannot make a replacement program to operate in the freight logistics software market without infringing.

32.    Starting no later than October 1999, HEX and HTC began to operate the Berry Freight Control System under the claim that it was authorized under a license granted by Plaintiff to Fleming Companies, Inc. ("Fleming").

33.    Fleming is an adjudicated willful infringer based on the jury verdict finding that Fleming has created unlicensed derivative copies of the Freight Control System.

34.    Dillon and Noa and certain Doe Defendants, under the direction of Fleming's agents defendant Christensen, and non-defendants Lex Smith, Michael

Scott and Damian Capozzola, starting on or about May 9, 2003 and concluding on or about July 7, 2003, together created an illegal copy and separate derivative copy of the Berry Freight Control System knowing that they were committing willful copyright infringement. The copy was taken from Fleming's location by Guidance Software, Inc., Fleming's agent. Under agreement with Fleming, Guidance Software, Inc. agreed to analyze the Berry software in violation of Plaintiff's rights as a developer. The continued possession of Plaintiff's copyrighted work is a threat to Plaintiff's property and grounds for an immediate injunction.

35.     Foodland has utilized Plaintiff's software to facilitate its direct store shipments.    Foodland has notice of the claim of infringement being committed by its agents, including Fleming, HEX and HTC but continues to derive financial gain from this activity with full knowledge that its agents are engaged in infringement.

36.     Upon information and belief, HEX,  HEST and/or CALPAC have obtained an illegal pirated copy of the Freight Control System and/or have been using a illegal unlicensed derivative of the Freight Control System.    Shane Kelley, HEX, HEST and/or CALPAC's computer consultant  admitted in a telephone conversation with Wayne Berry that he had "seen his code."   Shane Kelley informed Mr. Berry that he would investigate the infringement and call him back

15

with the results unless his investigation showed serious infringement.   Mr. Kelley never called back.

37.    HEST, HEX, CALPAC and C & S have had access to Mr. Berry's original work and have used an illegal derivative that is used to generate financial gain for all defendants.

38.    Upon information and belief HEST, HEX, CALPAC, FLEMING, C & S, Dillon, Noa, HTC and Foodland continue to use the Freight Control System and/or its derivative software either directly or vicariously to make profits derived from the illegal use of a copyrighted work in violation of the Copyright Act or, by possessing a copy, threaten the future use of such illegal software.

39.    Plaintiff has never authorized this use and has informed defendants and their attorney that the use of the software constitutes infringement.

40.    On January 4, 2002, Defendant HEX answered Plaintiff Wayne Berry's First Request for Answers to Interrogatories, in *Wayne Berry v. Fleming Companies, Inc.*, Civ. No. CV01-00446 SPK LEK. (the "Interrogatory Responses").

41.    In the Interrogatory Responses, HEX admitted, under oath, that, at the direction of Fleming Companies, Inc., HEST uses the Berry Freight Control System software to input information required by Fleming to comply with an oral contract between Fleming and HEST.

42.    In a deposition, Fleming's Hawaii division president Ralph Stussi testified under oath that Fleming's contract was with HEX and had never heard of HEST.

43.    HEX, HEST, CALPAC, Shaul, Graham C & S, Fleming, Noa, Dillon, HTC , Christensen and Foodland have, and through future infringement will, all continue to derive revenue from the use of the Freight Control System.

44.    None of the defendants herein are licensed to use the Berry Freight Control System or any derivative.

45.    Neither HEX, HEST, CALPAC, Shaul, Graham, C & S , Fleming, Dillon, Noa, Christensen nor any of their agents and/or bailees have any right to use the Freight Control System.

46.    Plaintiff has not given HEX, HEST, CALPAC, Shaul, Graham, Fleming, C & S, Dillon, Foodland, Christensen and/or Noa permission to use his software and they are guilty of willful infringement.

47.    By letter dated April 9, 2003, Plaintiff demanded that HEX and HEST provide Plaintiff with satisfactory proof that they have stopped using his Freight Control System software.

48.    On May 1, 2003, defendants' attorney, Karen Fine, Esq. wrote in response to the letter stating that all access to the Fleming system had been

terminated.

49.    Plaintiff alleges that the HEX affiliated Defendants have obtained a pirated copy of his software.

50.    Fleming, HEX and HEST's principal, has admitted that it has granted HEX permission to use Plaintiff's software.  Fleming has been found a willful infringer and had no lawful right to grant such a license.

51.    HEX has admitted that HEST is using Plaintiff's software.

52.    This software contains trade secrets and the use by Defendants constitute infringement and Plaintiff continues to suffer irreparable harm.

53.    On March 6,  2003, a jury found that Mark Dillon's unauthorized changes to the Berry Freight Control System constituted willful infringement and awarded Mr. Berry $98,500 in damages.  That finding terminated any and all licenses to the Berry Freight Control System.

54.    After   April   1,   2003,   Fleming,   C   &   S,   Fleming,   HTC, HEX/HEST/CALPAC, Mark Dillon, Teresa Noa, HTC, and Foodland have used the illegal derivative of Mr. Berry's software without any right.   Christensen has authorized that use.

55.    On or about July 7, 2003, despite being aware that this conduct clearly constitutes willful infringement, Mark Dillon, under Christensen's authority and with

full access to Mr. Berry's source code, created another illegal unauthorized derivative of the Freight Control System for his own personal financial gain.

56.    Upon  information and belief, both Noa and Dillon maintain copies of the Berry software on their home computers to facilitate their infringement.

57.    This act of infringement was directed by certain of Fleming's agents.

58.    In addition to this infringement, these Fleming agents directed a third party developer, Guidance Software, without any authority form Mr. Berry, to access Plaintiff's software, make an unauthorized copy of the system and transport it to California for the purpose of analyzing the software to facilitate further acts of criminal infringement.

59.    The July 7, 2003, derivative contained elements of Mr. Berry's software and performed the same functions as the Berry copyrighted software. Due to the knowledge obtained by Mr. Dillon and Ms. Noa of Mr. Berry's Freight Control System, and its functional similarity this constitutes an infringing derivative of the Freight Control System.

60.    From and after October 1, 1999 to at least May 9, 2003, the HEX Defendants and HTC have infringed upon Plaintiff's copyright as follows:

a.    Using software by remote access that places a copy of the Plaintiff's software on the computer of no less than ten users ;

b.    Using the software after receiving notice of the infringement and demand to cease and desist, and

c.    Providing illegal copies to third-parties including employees, agents, software developers and technicians who are not yet identified to Plaintiff by who are all infringers and who will be named later.

d.    Using third-party application sharing technology to permit unlicenced users to use the Plaintiff's software in violation of his copyrights.

e.    Deriving profits from the illegal use of the software.

61.    Defendants' activities constitute infringement of Plaintiff's copyright and Defendants have continued such conduct notwithstanding such notice.

62.    As to Defendants Christensen, Dillon and Noa, the continued use of the Berry Freight Control System after April 1, 2003, and the creation of the July 7, 2003 Derivative and the copy given to Guidance Software constitutes a violation of the owners exclusive rights and is willful infringement.

63.    As to the  C & S Defendants, these defendants have used the Berry Freight Control System to operate an illegal freight logistics enterprise in violation of the copyright laws of the United States.  Mr. Berry is entitled to all profits derived from this infringing use.

64.    The C & S Defendants, through certain agreements with Fleming, have

20

entered into an agreement with Fleming and certain of the other defendants to operate the Berry Freight Control System, and the illegal derivatives. The C & S Defendants have committed certain overt acts in furtherance of the illegal agreement with Fleming including establishing C & S Logistics for the purpose of continuing the Fleming infringement after the completion of the sale of Fleming's assets to C & S Acquisition, LLC or its nominee.

65.    Each time C & S transfers wholesale groceries through the Berry Freight Control System, it commits another act of copyright infringement. Each C & S, HEX/HEST/CALPAC, Foodland and/or HTC employee that in any manner utilizes the Berry Freight Control System or the reports generated by the system, is a separate infringer and is liable for the full damages for each infringement.

66.    The knowledge of the infringement is imputed to the individual defendants by their principals. Should Plaintiff elect statutory damages, each such employee is liable for the full $150,000 of statutory damages, or such other amount as the jury may determine is just. C & S, HEX/HEST/CALPAC and/or HTC are liable as a vicarious infringers for the total sum of all employee infringements. Plaintiff is informed and believes that over 1,000 C & S, HEX/HEST/CALPAC and/or HTC employees are direct infringers.

## DIRECT INFRINGEMENT DAMAGES.

67.    For each of the non-bankrupt defendant and the Doe Defendants yet to be named, Plaintiff is entitled to actual damages and his lost profits plus any profits made by the infringers from the use of the Freight Control System software by any of the defendants as a direct infringer.  These amounts will be determined at time of trial.  Plaintiff reserves his right to claim, at a later date, the right to statutory damages based on each defendants' separate liability for infringement.

68.    To the extent that Christensen, Noa and Dillon immediately cease their infringement and turn over all copies of Plaintiff's software to Plaintiff, Plaintiff does not seek damages against them individually, barring that action they are liable as other defendants for the full amount proven as set forth herein.

69.  Each time the Berry Freight Control System was used by the infringers, a copy of the software was created and this constitutes illegal copying.

70.    Each employee and/or agent of defendants C & S, HTC, HEX,  HEST, C & S and FOODLAND is a separate infringer and Plaintiff is entitled to full statutory damages, upon election, for the willful infringement of each of these individual users up to $150,000 for each user.

## CONTRIBUTORY AND VICARIOUS INFRINGEMENT DAMAGES.

71.    For each of the non-bankrupt defendants and the Doe Defendants yet to be named, Plaintiff claims the right to damages based on theories of contributory

and/or vicarious infringement.

72.    As to vicarious liability, each defendant that has the ability to control the infringing use and is liable jointly and severally with the direct infringer for all damages resulting from the direct infringement.

73.    Defendants Christensen, Schaul and Graham, HEX, HEST, CALPAC, FOODLAND, HTC and C & S are the first identified vicarious and contributory infringers.    Other officers, shareholders directors and principals are also liable as vicarious and contributory infringers these Doe Defendants shall be identified as they are discovered.

74.    As to contributory infringement each defendant who knowingly contributes to another's infringement is liable for the infringement based on the direct infringement by Christensen, HEST, HEX, CALPAC, C & S, HTC and/or Doe agents and employees as end-users. Defendants knew or should have known of the infringement and directly and materially contributed to the direct infringement.

75.    As to vicarious infringement each defendant had the right and ability to supervise infringing activity and also has a direct financial interest in such activities.

76.    As to each of these defendants, Plaintiff reserves, but does not yet elect, his right to statutory damages based on the infringement of each employee, customer and other user of the Freight Control System regarding defendants each as a separate

23

infringer and a separate basis for joint statutory damages should Plaintiff elect statutory damages.

77. Plaintiff also gives notice of his intent to seek costs and attorney's fees as provided by law.

78. As to Fleming, Plaintiff seeks to enjoin any further acts of infringement.

## COUNT II
## VIOLATION OF THE SHERMAN ACT
## AGAINST NON-DEBTOR DEFENDANTS.

79. Plaintiff restates the preceding allegations that are incorporated by this reference.

80. Starting in or about the Spring of 2000, defendant Foodland initiated contact with Plaintiff. The stated purpose of the communication was to assess the amount of food overcharges that Foodland was paying Fleming and to "stop the bleeding."

81. Plaintiff proposed a computer software system that would allow Foodland to cease to use Fleming as its sole source of wholesale supply and to begin to operate as a independent logistics entity to avoid the additional charges that Fleming, and the HEX related entities were passing on to Foodland. These overcharges are estimated to be between 10 to 25 %.

82. Foodland realized that Fleming's monopoly could permit the

overcharges to be safely passed on the Hawaii consumers allowing Foodland to collect its percentage profit on a much higher total sales number figure.

83.    Foodland also owns Fleming's warehouse in Kapolei that allows Foodland to recover some of the overcharges through its lease rent.

84.    Recognizing that Fleming operates a monopoly in the market defined as the Hawaii wholesale grocery market, encompassing all sales of groceries in the geographic territory of the state of Hawaii, Foodland agreed to continue to allow Fleming and the HEX entities to overcharge it, under the agreement that the Fleming monopoly including the HEX entities would not allow any Foodland competitor to receive a better price. By virtue of the "Team Score" facility in the Fleming/Foodland sales agreements, Foodland, and Fleming have agreed to a rebate scheme that would allow both parties to enjoy the benefits of the Fleming monopoly.

85.    To further enhance the Fleming monopoly, large mainland vendors have further caused Fleming to become the exclusive distributor of its products, thereby solidifying the Hawaii wholesale grocery monopoly.

86.    The Berry Freight Control System, is necessary to the monopoly that facilities the overcharges to all Fleming customers. By creating false records that demonstrate that the military, Fleming's second largest customer, is being charged the same or less than Foodland, Fleming is able to continue its monopolistic activities,

25

and succeed in effecting an approximate 25% overcharge of both the civilian and the military consumers in Hawaii. In addition, the assertion of ownership over the July 7, 2003, Dillon Derivative is intended to further the Fleming monopoly and further deprive Mr. Berry of a market for his software.

87.    Additionally, the Berry Freight Control System is used to track commercial bribery and illegal rebating between HTC, HEX/HEST/CALPAC Fleming and the Doe Vendors who utilized freight charges and subsidies to facilitate the maintenance of the Fleming monopoly further used to effect price fixing for civilian and military food commodities in Hawaii. Money is exchanged between a variety of actors ,some of which yet to be discovered, that together comprises a combination and/or conspiracy to restrain trade in regard to Mr. Berry's software market defined as the market for ocean freight software sales in the geographic area comprised by the state of Hawaii and Guam.

88.    Were these actors to pay and receive a license for the use of the software, that license would require payment based on volume of ocean containers moved through the system and would disclose the scope and extent of the Fleming monopoly.

89.    But for the conspiracy with Foodland, and the HEX defendants, Fleming would not require the illegal use of Mr. Berry's Freight Control System to continue

26

to operate its Hawaii monopoly.   By allowing the Fleming co-conspirator to use Mr. Berry's software without payment to Mr. Berry limits Mr. Berry's ability to develop and to provide his software to other competitors of Fleming thereby reducing competition in the civilian and military wholesale grocery market.   This injury is traceable to the anti-competitive conduct complained of herein.

90.   All of the acts that are the subject of this complaint against Fleming or any of its agents, have been committed by Fleming after the filing of the Bankruptcy on April 1, 2003.

91.   All of these acts have been committed with the specific intent to maintain the Fleming Hawaii market wholesale grocery monopoly with the  hope to sell the Hawaii division to a new monopolist that would continue the earlier illegal practices including the infringement of Mr. Berry's intellectual property rights.

92.   Plaintiff has been injured in his business and property by the agreement between C & S, Fleming and Foodland to sell the Hawaii division and continue to use illegal pirated versions of his software.

93.   This agreement constitutes a restraint of trade and violates the laws of the United States and the State of Hawaii.

94.   But for this illegal agreement, the C & S Defendants would have no reason to violate the Plaintiff's exclusive rights.

95.    As a direct and proximate result of these acts, the Plaintiff has suffered injury in amounts to be determined at time of trial.

96.    Pursuant to The Sherman Act, 15 U.S.C. §§ 1 & 2, and the Section 4 of the Clayton Act, 15 U.S. C. § 15, Plaintiff is entitled to recovery treble damages from the non-debtor defendants for all damages proven.

## INJUNCTION

97.    Based on the threat of continued violation of the copyright by its unauthorized use and transfers of unauthorized copies to third parties directly and through application sharing technology or otherwise, Plaintiff is suffering irreparable injury and, because FLEMING, HEX, HEST, CALPAC, FOODLAND and C & S have no lawful right to use the Freight Control System.  Plaintiff has a strong likelihood of success on the merits and seeks a preliminary injunction as follows:

a.    preliminary injunction against Christensen, Dillon, Noa, FLEMING, HEX, HEST, CALPAC, C &S, HTC AND FOODLAND and anyone claiming any rights to use the software,

b.    impoundment of the infringing software during the pendency of this litigation,

c.    preliminary injunction against infringing of the copyright,

d.    permanent injunction against the infringement of the copyright,

28

e.    seizure of all computer files derived from the infringement.

f.    temporary and permanent injunction against all defendants, including Fleming, Christensen, Dillon, Noa and certain Doe Defendants to prohibit the creation of any additional freight control software and to prohibit the use of any such infringing software.

g.    on order permanently prohibiting Noa and Dillon and certain Doe defendants for conducting any business related to the shipment of goods.

98.    That Plaintiff or his agents be permitted to inspect the defendant's business premises during normal business hours to verify that defendant's have complied with the Court's injunction.

WHEREFORE PLAINTIFF PRAYS FOR:

A.    A temporary and permanent injunction directed to Defendants, and any agent or bailee of Defendants, as set forth herein and in the accompanying Motion, from using any software derived in part from the source code of Plaintiff's software as evidenced by the registration of copyrights;

B.    An order permitting Plaintiff and or the United States Marshall or his/her Deputy to enter upon Defendants' or their agents' and/or bailees' premises

29

and to enter upon the defendant's property and take possession of all software and data derived from the software that relates in any way to the software that is the subject of this case;

   C. Damages for infringement of the copyright as provided by the Copyright Act without limitation against C & S, HEX, HEST, CALPAC, HTC, FOODLAND . To the extent that Christensen, Noa and Dillon immediately cease their infringement and turn over all copies of Plaintiff's software to Plaintiff, Plaintiff does not seek damages against them individually, barring that action they are liable as other defendants for the full amount proven;

   D. An order that the damages shall be times three;

   E. Accounting for all gains and profits derived by Defendants C & S, HEX, HEST, HTC, FOODLAND  through infringement of copyright including a detailed accounting of all corporate and individual defendants' revenues to the date that the infringement ceased;

   F. Delivery by Defendant of all copies of the offending software and all data created and the database associated with the software for destruction;

   G. Payment of the costs of the action and reasonable attorney's fees and;

   H. An injunction both temporary and permanent as set forth herein;

I.      Such other and further relief as may be just.

Dated: Honolulu, Hawaii, _____ AUG 1 3 2003 _____.

TIMOTHY J. HOGAN
Attorney for Plaintiff
WAYNE BERRY

EXHIBIT A

(ORIGINAL HAS BLANK, TABBED

SHEET HERE.)

# CERTIFICATE OF REGISTRATION





**RM TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**TX 5-079-445**



*TX5000050794450*

EFFECTIVE DATE OF REGISTRATION

*Oct. 19, 1999*

Month    Day    Year

This Certificate issued under the seal of the Copyright Office in accordance with title 17, United States Code, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

REGISTER OF COPYRIGHTS
United States of America

OFFICIAL SEAL   **DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

---

**1**  TITLE OF THIS WORK ▼
Freight Control System

PREVIOUS OR ALTERNATIVE TITLES ▼

PUBLICATION AS A CONTRIBUTION If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.    Title of Collective Work ▼

If published in a periodical or serial give:   Volume ▼    Number ▼    Issue Date ▼    On Pages ▼

---

**2**  **a**  NAME OF AUTHOR ▼
Wayne Foster Berry

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼
1955

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶ USA
{ Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes ☑ No
Pseudonymous?   ☐ Yes ☑ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼
Computer Program

**b**  NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
{ Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**  NAME OF AUTHOR ▼

DATES OF BIRTH AND DEATH
Year Born ▼    Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

AUTHOR'S NATIONALITY OR DOMICILE
Name of Country
OR { Citizen of ▶
{ Domiciled in ▶

WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK
Anonymous?   ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

NATURE OF AUTHORSHIP Briefly describe nature of material created by this author in which copyright is claimed. ▼

---

**3**  **a**  YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED   This information must be given in all cases.
1993  Year

**b**  DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK   Complete this information ONLY if this work has been published.
Month ▶ 11   Day ▶ 27   Year ▶ 95
USA   ◀ Nation

---

**4**  COPYRIGHT CLAIMANT(S) Name and address must be given even if the claimant is the same as the author given in space 2. ▼
Wayne Foster Berry
425 South Street, #2603 A
Honolulu, Hawaii 96813

TRANSFER If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

See instructions before completing this space.

APPLICATION RECEIVED
OCT. 19 1999
ONE DEPOSIT RECEIVED

TWO DEPOSITS RECEIVED
OCT. 19 1999
FUNDS RECEIVED

DO NOT WRITE HERE
OFFICE USE ONLY

---

**MORE ON BACK ▶**
• Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of 2 pages



EXAMINED BY _____    **FORM TX**
CHECKED BY

☐ CORRESPONDENCE
  Yes

**FOR
COPYRIGHT
OFFICE
USE
ONLY**

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?

☐ Yes  ☐ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box.) ▼

**5**

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number** ▶ _____    **Year of Registration** ▶

**DERIVATIVE WORK OR COMPILATION**

Preexisting Material  Identify any preexisting work or works that this work is based on or incorporates. ▼

**a**

**6**

See instructions
before completing
this space.

Material Added to This Work  Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**b**

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.

Name ▼                                                    Account Number ▼

**a**

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.   Name/Address/Apt/City/State/ZIP ▼

Wayne Foster Berry
425 South Street, #2603
Honolulu, Hawaii 96813

**b**

Area code and daytime telephone number ▶ 808-545-5817          Fax number ▶ 808-545-5837

Email ▶ WayneB@pxg.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the

Check only one ▶

☑ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____

**8**

of the work identified in this application and that the statements made          Name of author or other copyright claimant, or owner of exclusive right(s) ▲
by me in this application are correct to the best of my knowledge.

Typed or printed name and date ▼ If this application gives a date of publication in space 3, do not sign and submit it before that date.

Wayne Foster Berry                                                    Date ▶ 9-27-99

Handwritten signature (X) ▼

X _____

Certificate
will be
mailed in
window
envelope
to this
address:

Name ▼
Wayne Foster Berry

Number/Street/Apt ▼
425 South Street, #2603 A

City/State/ZIP ▼
Honolulu, Hawaii 96813

**9**

• Complete all necessary spaces
• Sign your application in space 8

1. Application form
2. Nonrefundable filing fee in check or money order
   payable to *Register of Copyrights*
3. Deposit material

Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

As of
July 1,
1999,
the
filing
fee for
Form TX
is $30.

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection
with the application, shall be fined not more than $2,500.

June 1999 — 200,000
WEB REV: June 1999          ✪ PRINTED ON RECYCLED PAPER          ☆U.S. GOVERNMENT PRINTING OFFICE: 1999-454-879/49

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

WAYNE BERRY,                                    )    Civ. No. CV03 00385 SOM-LEK
                                                )    (Copyright)
                    Plaintiff,                  )
                                                )
          vs.                                   )
                                                )
HAWAIIAN EXPRESS SERVICE,                       )
INC., a California corporation;                 )
H.E.S. TRANSPORTATION                           )    DEMAND FOR JURY TRIAL
SERVICES, INC., a California                    )
corporation; CALIFORNIA                         )
PACIFIC CONSOLIDATORS, INC.,                    )
a California corporation;  JEFFREY              )
P. GRAHAM and PETER SCHAUL,                     )
California citizens; MARK DILLON                )
and TERESA NOA, BRIAN                           )
CHRISTIANSEN, Hawaii citizens;                  )
FLEMING COMPANIES, INC.; an                     )
Oklahoma corporation; C & S                     )
LOGISTICS OF HAWAII, LLC.                        )
a Delaware LLC;                                 )
C & S WHOLESALE                                 )
GROCERS, INC., a Vermont                        )
corporation; C & S ACQUISITIONS,                )
LLC; FOODLAND SUPER                             )
MARKET,   LIMITED, a Hawaii                     )
corporation; HAWAII TRANSFER                    )
COMPANY, LIMITED, a Hawaii                      )
Corporation, DOE INDIVIDUALS                    )
1-350; DOE PARTNERSHIPS,                        )
CORPORATIONS and OTHER                          )
DOE ENTITIES 1-20,                              )
                                                )
                    Defendants.                 )
_____ )

## DEMAND FOR JURY TRIAL

Plaintiff Wayne Berry hereby respectfully demands a trial by jury of all

issues triable thereto.

Dated: Honolulu, Hawaii, _____ AUG 1 5 2005 _____.

TIMOTHY J. HOGAN
Attorney for Plaintiff
WAYNE BERRY

| **STATE OF HAWAII**<br>CIRCUIT COURT OF THE<br>FIRST CIRCUIT | **SUMMONS**<br>TO ANSWER CIVIL COMPLAINT<br>FIRST AMENDED | CASE NUMBER<br>**Civil. No.**   03 00385–LEK |
|---|---|---|

| PLAINTIFF<br><br>WAYNE BERRY, a Hawaii citizen | vs. | DEFENDANTS<br><br>HAWAIIAN EXPRESSSERVICE, INC. a California corporation, H.E.S. TRANSPORTATION SERVICES, INC., a California corporation; CALIFORNIA PACIFIC CONSOLIDATORS, INC., a California corporation; JEFFREY P. GRAHAM and PETER SCHAUL, California citizens; MARK DILLON and TERESA NOA, BRIAN CHRISTENSEN, Hawaii citizens, et al. |
|---|---|---|

PLAINTIFF'S ATTORNEY (NAME, ADDRESS, TEL. NO.)

Lynch Ichida Thompson Kim & Hirota
Timothy J. Hogan, Esq. 5312-0
1132 Bishop Street
Suite 1405
Honolulu, HI 96813
Phone: 808-528-0100 Fax: 808-528-4997
None

TO THE DEFENDANT(S):

First    You are hereby summoned and required to serve upon Plaintiff's attorney, whose address is stated above, an answer to the
Amended complaint which is attached. This action must be taken within twenty days after service of this summons upon you, exclusive of
the day of service.

If you fail to make your answer within the twenty day time limit, judgment by default will be taken against you for the relief
demanded in the complaint.

This summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general
public, unless a judge of the above-entitled court permits, in writing on this summons, personal delivery during those hours.

A failure to obey this summons may result in an entry of default and default judgment against the disobeying person or party.

| DATE ISSUED<br>Aug 1 8 2003 | CLERK<br>WALTER A.Y.H. CHINN | SEAL |
|---|---|---|
| I do certify that this is a full, true, and correct copy<br>of the original on file in this office. | CIRCUIT COURT CLERK | |

SUMMONS TO ANSWER CIVIL COMPLAINT

FORM NO. 001101 3/84