the facts of this issue to be heard, <u>in camera</u> if it is in any way relevant." Berry Objections at 9. Because the magistrate judge neither made these alleged findings or conclusions nor addressed these issues, the court declines to address Berry's objections.

      B.   <u>Objections to the December 4 Report.</u>

      1.   <u>Christensen Is Entitled to Attorneys' Fees.</u>

Berry objects to the magistrate judge's recommendation to award Christensen attorneys' fees. Berry Objections at 13-15. Berry argues that, when this court granted summary judgment in Christensen's favor on all claims, the court erroneously relied on "his false statements." Berry Objections at 13-14. Berry explains, "When asked both in deposition and at trial why [Christensen] didn't just shut the system down on March 7, 2003, Mr. Christensen falsely testified that he wasn't in charge on that date." Berry Objections at 13. Berry contends that this false evidence served as the basis of Christensen's victory in this case and should therefore preclude an award of fees in his favor. Berry Objections at 13-14. The court disagrees with Berry and adopts the magistrate judge's recommendation to award Christensen attorneys' fees.

This is not the first time that Berry has pointed to Christensen's deposition testimony as a basis for challenging the court's January 26, 2005, summary judgment order in favor of

26

Christensen.  In Berry's motion under Rule 60(b) of the Federal
Rules of Civil Procedure, he asked the court to, among other
things, vacate the summary judgment order because Christensen
stated in deposition testimony that he became the president of
Fleming's Hawaii division sometime after March 7, 2003, although
Christensen had actually been the president since March 2002.
See 6/5/2006 Order at 1, 3.  The court denied that motion,
stating, "Contrary to Berry's position, the court did not, in the
summary judgment order, rely on or refer to Christensen's
erroneous deposition testimony that he became the president of
Fleming's Hawaii division in March 2003."  6/5/2006 Order at 8.
Rather, the court stated:

> The grant of summary judgment in favor of
> Christensen resulted from Berry's failure to
> produce any evidence showing direct,
> contributory, or vicarious infringement.  The
> date that Christensen's presidency began was
> irrelevant to whether he infringed Berry's
> copyright during the period in issue.

6/5/2006 Order at 10.

As stated in the June 5, 2006, order, Christensen's
misstatement played no role in Christensen's victory in this
case.  The court therefore rejects Berry's objection on this
point.

27

2.    Trial Employees Are Not the Prevailing
      Parties.

Berry next argues:

> As to the two employees who had no monetary
> amount entered against them, they were found
> direct infringers.  They lost on the issue of
> infringement and should they use Berry's work
> again in their employment, would anyone argue
> that they would be willful infringers?  Th[e]
> judgment necessarily modifies their future
> conduct and therefore they are not prevailing
> parties and all parts of the Report that
> seeks to compensate them should be rejected.

Berry Objections at 15.  Regardless of which of the Trial

Employees Berry is referring to in this argument,[6] the argument

is unrelated to what the magistrate judge actually found.  The

magistrate judge viewed <u>none</u> of the Trial Employees as having

prevailed against Berry.  Regarding Dillon and Noa, the

magistrate judge said that "[Berry] was the prevailing party over

Mark Dillon and Teresa Noa for purposes of § 505."  12/4/2006

Report at 27.  Regarding the other Trial Employees, the

magistrate judge said that, "insofar as Ponce, Purdy, Fukumoto,

Waiolama, and Rio did not obtain a judgment against [Berry], this

court FINDS that they are not the prevailing parties."  12/4/2006

Report at 27.  As none of the Trial Employees was found to be a

_____

[6] Although Berry's argument addresses "the <u>two</u>
employees who had no monetary amount entered against them," the
jury did not award damages against <u>five</u> of the Trial
Employees--Melvin Ponce, Sonia Purdy, Justin Fukumoto, Alfredda
Waiolama, and Jacqueline Rio.  Berry Objections at 15 (emphasis
added).  The jury awarded damages against the two remaining Trial
Employees--Mark Dillon and Teresa Noa.

prevailing party, and as none of them was awarded fees or costs, the court disregards Berry's argument that they are not prevailing parties and should not receive fees or costs.

> 3.   The Jury Found That Berry Is Entitled to Recover Profits.

Berry also argues that "the Magistrate Judge makes the erroneous statement that 'the jury also found that [Berry] was not entitled to any additional profits from [Fleming] based on Fleming's infringement and that Fleming was vicariously liable for trial employees' infringement.'" Berry Objections at 7. Berry contends, "The fact is that the jury found that Mr. Berry was entitled to any profits but the jury found there were no profits. Therefore, had there been profits, based on the jury verdict, Mr. Berry would have been entitled to them." Berry Objections at 7-8. The court disagrees with Berry that the magistrate judge's statement is erroneous.

The jury found that Berry proved his entitlement to $57,534 in actual damages from Fleming, Dillon, and Noa for direct infringement. Special Verdict Form at 2-4. The jury also found that Berry proved "by a preponderance of the evidence that he is entitled to recover profits attributable to Fleming's use of [his] software." Special Verdict Form at 5. The jury was then asked to "state the amount of profit attributable to Fleming's direct infringement," excluding "any matters that would duplicate [actual] damages." Special Verdict Form at 5. The

29

jury answered that question by writing, "$0." Special Verdict Form at 5. Thus, while the jury found that Berry was entitled to recover profits attributable to Fleming's direct infringement, it also found that there were no profits to recover that were not already included in the jury's award of actual damages. The magistrate judge's statement that the jury "found that [Berry] was not entitled to any additional profits from [Fleming] based on Fleming's infringement" correctly summarizes the jury's findings.

4. Fleming Is Entitled to Attorneys' Fees
Incurred in Defending Against Count 4.

Berry objects to the magistrate judge's recommendation to award Fleming attorneys' fees under state trade secret law for defending against his claim for misappropriation of trade secrets (Count 4). Berry points to the court's June 27, 2005, order granting summary judgment in Fleming's favor on Count 4, arguing that the order "focuse[d] only on the sixteen copies that were transferred," but "disregard[ed] the evidence that Mr. Berry put forward . . . that showed in detail numerous other files that had been transferred." Berry Objections at 9-11. Berry asserts that "[t]he record was full of evidence regarding Mr. Berry's trade secret claim."[7] Berry Objections at 9-11. The court adopts the

---

[7] Berry also asserts: "Making the claim that Mr. Berry shows ill will because he has cooperated with law enforcement, the Report should send a chill through any person who, acting out of public concern, answers law enforcement inquiry (in form of a

magistrate judge's finding that Fleming is entitled to fees under state trade secret law.

In Count 4, Berry asserted a claim against Fleming for misappropriation of trade secrets under Hawaii's Trade Secret Act, Haw. Rev. Stat. § 482B.  Under Haw. Rev. Stat. § 482B-5, the court "may award reasonable attorney's fees to the prevailing party if . . . [a] claim of misappropriation is made in bad faith."  Haw. Rev. Stat. § 482B-5(1).  Hawaii's Trade Secret Act does not define "bad faith," and no Hawaii appellate case law addresses section 482B-5.  Although Berry argues that the court cannot award fees under this section unless it finds bad faith under state law, he cites no authority for that proposition.  Berry Objections at 8.  Because "Hawaii's Trade Secret Act is based on the Uniform Trade Secrets Act [('UTSA')]," the court agrees with the magistrate judge's conclusion that "caselaw from other states that have adopted the UTSA is instructive."  <u>See</u> <u>Merrill Lynch, Pierce, Fenner & Smith Inc. v. McClafferty</u>, 287 F. Supp. 2d 1244, 1249 (D. Haw. 2003); 6/27/2005 Order at 31 ("Hawaii's Trade Secret Act, Haw. Rev. Stat. § 482B, follows the Uniform Trade Secrets Act."); <u>see also</u> 12/4/2006 Report at 43;

---

Grand Jury subpoena) directed at a conduct of an established corporate wrongdoer."  Berry Objections at 6.  Berry continues, "This part of the Report must, as a matter of public policy if not constitutional imperative, be rejected."  As the court is unable to find any such discussion in the December 4 Report, the court declines to entertain this argument.

cf. Weber v. Indem. Ins. Co. of N. Am., 345 F. Supp. 2d 1139 (D. Haw. 2004) (noting that sufficient case law from Hawaii and other jurisdictions is helpful "to predict Hawaii law with confidence").

Like Hawaii, "California has adopted without significant change the Uniform Trade Secrets Act." DVD Copy Control Ass'n, Inc. v. Bunner, 75 P.3d 1, 9 (Cal. 2003). In Gemini Aluminum Corp. v. California Custom Shapes, Inc., 95 Cal. App. 4th 1249, 1262, (Cal. App. 2002), the California Court of Appeals noted that, under California's Uniform Trade Secrets Act ("CUTSA"), a defendant may recover attorneys' fees "[i]f a claim of misappropriation is made in bad faith." Because the CUTSA "does not define 'bad faith,'" the court held that "'bad faith' for purposes of [the CUTSA] requires objective speciousness of the plaintiff's claim, as opposed to frivolousness, and its subjective bad faith in bringing or maintaining the claim." Id. "An objectively specious claim is one that is completely unsupported by the evidence or one that lacks proof as to one of its essential elements." JLM Formation, Inc. v. Form+Pac, No. C 04-1774 CW, 2004 WL 1858132, at *2 (N.D. Cal. Aug. 19, 2004). "Subjective misconduct exists where a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit." Id. "A court may determine a plaintiff's subjective misconduct by examining evidence of the

plaintiff's knowledge during certain points in the litigation and may also infer it from the speciousness of a plaintiff's trade secret claim." Id.

Michigan has also adopted the UTSA. Compuware Corp. v. Int'l Bus. Machs. Corp., No. 02-CV-70906, 2003 WL 23212863, at *8 (E.D. Mich. Dec. 19, 2003) ("Michigan has adopted the Uniform Trade Secrets Act."). In Degussa Admixtures, Inc. v. Burnett, No. 1:05-CV-705, 2007 WL 274219, at *7 (W.D. Mich. Jan. 30, 2007), the district court for the Western District of Michigan noted that Michigan's Uniform Trade Secrets Act, which provides for the award of attorneys' fees "[i]f a claim of misappropriation is made in bad faith," does not contain a definition of "bad faith." The court therefore turned to California's interpretation of "bad faith" in the CTUSA. The court stated, "interpreting the [CTUSA], courts have held that 'bad faith' exists when the court finds '(1) objective speciousness of the plaintiff's claim and (2) plaintiff's subjective misconduct in bringing or maintaining a claim for misappropriation of trade secrets.'" Id. The court ultimately awarded attorneys' fees to the defendant after finding that "Plaintiff's claims were objectively unsupported, both factually and under Michigan law, at the time of filing" and that "[Plaintiff's] invocation of the MUTSA to prevent legitimate competition constituted an improper purpose." Id. at *8.

33

Maryland has also adopted the UTSA. <u>Optic Graphics, Inc. v. Agee</u>, 591 A.2d 578, 585 (Md. App. 1991) ("On July 1, 1989, Maryland adopted the Uniform Trade Secrets Act."). "Under the Maryland Uniform Trade Secrets Act, a court may award reasonable attorney's fees to a prevailing party if the claim of misappropriation of trade secrets was brought in 'bad faith.'" <u>Contract Materials Processing, Inc. v. Kataleuna GMBH Catalysts</u>, 222 F. Supp. 2d 733, 744 (D. Md. 2002). In determining whether the defendants were entitled to attorneys' fees, the district court for the District of Maryland stated, "In the same vein as the Maryland test for 'bad faith' under MUTSA, courts considering the attorneys' fees provisions under the [CTUSA] have reasoned persuasively that 'bad faith' exists when the court finds '(1) objective speciousness of the plaintiff's claim and (2) plaintiff's subjective misconduct in bringing or maintaining a claim for misappropriation of trade secrets." <u>Id.</u> at 744. The court added that the "'knowing persistence in an invalid claim' demonstrates subjective bad faith" and that "a party's 'tactics during the course of litigation' can support a finding as to its 'underlying motives' for purposes of determining whether the party pursued the litigation in bad faith." <u>Id.</u> at 745 n.4. After concluding that the plaintiff "utterly failed to identify any evidence in some respects, and has failed to identify <u>admissible</u> evidence in other respects, in support of the elements

34

of its ostensible misappropriation of trade secrets claims" and that the plaintiff, "despite several warnings to [it] about the evident lack of merit in its misappropriation claims . . . has continued to pursue these baseless claims," the court awarded the defendants attorneys' fees.  Id. at 745 (emphasis in original).

In sum, like Hawaii's trade secrets law, California, Michigan, and Maryland authorize awards of attorneys' fees to defendants when a plaintiff brings a misappropriation of trade secret claim in bad faith, but do not define "bad faith."  Case law from those states allows fee awards only when the plaintiff's claim is objectively specious and the plaintiff engages in subjective misconduct in bringing or maintaining the claim.  See, e.g., JLM Formation, Inc., 2004 WL 1858132, at *2.  Because Hawaii, like California, Michigan, and Maryland, has adopted the UTSA, Hawaii courts are likely to apply the same test in determining whether defendants may be awarded fees under Hawaii trade secret law:  objective speciousness and subjective misconduct.

In this court's order of June 27, 2005, the court stated:  "To succeed on a claim for misappropriation of trade secrets, a plaintiff must establish (1) the existence of a trade secret; and (2) the misappropriation of the trade secret."  6/27/2005 Order at 31 (citing Haw. Rev. Stat. § 482B).  In that

order, the court granted summary judgment in favor of Defendants, stating:

> Berry does not show that any files that were on the computers qualify as his trade secrets. Berry has not presented any evidence that those files had any independent economic value resulting from not being generally known. In fact, Berry initially gave FCS to Fleming for free.

6/27/2005 Order at 32. Although Berry points to evidence that he says supported his claim, the order makes clear that this court viewed Berry's claim as "completely unsupported by the evidence" and "lack[ing] proof as to one of its essential elements." See JLM Formation, Inc., 2004 WL 1858132, at *2. Berry's claim in Count 4 for misappropriation of trade secrets was therefore objectively specious. See id.; see also Gemini Aluminum Corp., 95 Cal. App. 4th at 1261-62.

The court may and does infer subjective misconduct from the speciousness of Berry's trade secret claim. See JLM Formation, Inc., 2004 WL 1858132, at *2. The court recognizes that, in alleging a misappropriation of trade secrets, Berry relies on Guidance's, C&S's, and Fleming's alleged misrepresentation to the bankruptcy court "that Mr. Berry's software was 'not on the list' while knowing that they were intending to transfer Mr. Berry's trade secrets." SAVC ¶ 105. However, in the June 27, 2005, order, the court found that Berry presented "only argument, not evidence," in response to

Defendants' explanation that "any misstatement to the Bankruptcy Court was inadvertent and caused by Dillon's use of a different name for the files." 6/27/2005 Order at 33. Moreover, because "the direct infringement in this case occurred . . . when Fleming and Employees inadvertently used an altered version of FCS," and because Berry failed "to prove that any Defendant's action was 'intentional,'" the record lacks any evidence that Fleming or any other Defendant was "intending to transfer Mr. Berry's trade secrets." 6/27/2005 Order at 28-29; SAVC ¶ 105. The court agrees with the magistrate judge that Berry's complete lack of evidence on this claim "indicates that he knew or should have known that his claim had no merit." 12/4/2006 Report at 45; see also JLM Formation, Inc., 2004 WL 1858132, at *2. The court adopts the magistrate judge's finding that Berry "made the misappropriation of trade secrets claim against Fleming in bad faith." 12/4/2006 Report at 45. Therefore, Fleming is entitled to an award of fees under Haw. Rev. Stat. § 482B-5(1). See 12/4/2006 Report at 45. However, as discussed in the next section, the court modifies the magistrate judge's recommendation regarding the amount of fees to award Fleming.

> 5. The Court Reduces the Amount of Fees Awarded to Fleming.

Fleming objects to the magistrate judge's finding that the number of hours expended in defending Fleming against the claim of misappropriation of trade secrets was excessive, arguing

37

that the finding "is both unnecessary and unfair." Fleming
Objections at 7. Fleming contends that the magistrate judge did
not "take into account the work the counsel actually performed
relative to the trade secret claim--the claim for which [Fleming]
received its fee." Fleming Objections at 7. At the hearing on
the matter, Fleming explained that it does not seek to modify the
recommended award of fees, but only asks the court to vacate the
finding that it spent "excessive" hours defending Fleming. This
position renders unnecessary the finding that Fleming's hours
were excessive. However, the court further reduces the
recommended award of fees to Fleming.

      The magistrate judge noted the proper standard for
calculating attorneys' fees under Hawaii law:

>       Hawaii courts calculate reasonable
> attorney's fees based on a method that is
> virtually identical to the traditional
> "lodestar" calculation set forth in <u>Hensley
> v. Eckerhart</u>, 461 U.S. 424, 433 (1983). <u>See</u>
> <u>DFS Group L.P. v. Paiea Props.</u>, 110 Hawaii
> 217, 222, 131 P.3d 500, 505 (2006). The
> court must determine a reasonable fee by
> multiplying the number of hours reasonably
> expended by a reasonable hourly rate. <u>See</u>
> <u>id.</u> at 222-23, 131 P.3d at 505-06. In
> addition, Hawaii courts may consider the
> following factors:

> > (1) the time and labor required,
> > the novelty and difficulty of the
> > questions involved and the skill
> > requisite properly to conduct the
> > cause; (2) whether the acceptance
> > of employment in the particular
> > case will preclude the lawyer's
> > appearance for others in cases

> likely to arise out of the
> transaction, and in which there is
> a reasonable expectation that
> otherwise he would be employed, or
> will involve the loss of other
> employment while employed in the
> particular case or antagonisms with
> other clients; (3) the customary
> charges of the Bar for similar
> services; (4) the amount involved
> in the controversy and the benefits
> resulting to the client from the
> services; (5) the contingency or
> the certainty of the compensation;
> and (6) the character of the
> employment, whether casual or for
> an established and constant client.
>
> Chun v. Bd. of Trs. of Employees' Ret. Sys.
> of Hawaii, 106 Hawaii 416, 435, 106 P.3d 339,
> 358 (2005) (citations omitted).  These
> factors, however, are merely guides; courts
> need not consider them in every case.  See
> id.  In certain types of cases, some of these
> factors may justify applying a multiplier to
> the "lodestar" amount.  See Chun v. Bd. of
> Trs. of Employees' Ret. Sys. of Hawaii, 92
> Hawaii 432, 442, 992 P.2d 127, 137 (2000).

12/4/2006 Report at 46-47.

Because Fleming did not itemize its attorneys' fees by claim,[8] the magistrate judge was unable to determine the exact number of hours Fleming billed in defending against Count 4. Rather, because Fleming was granted summary judgment on Count 4 on June 27, 2005, the magistrate judge looked at the total number

---

[8] Fleming did, however, itemize its hours "by the categories delineated in the District of Hawaii Local Rules (Rule 54.3(d)(1))," "by counsel," and "by date."  Declaration of Damian D. Capozzola in Support of Defendant PCT's Motion for Attorneys' Fees and Costs (3/23/2006) ¶ 41-43.

of hours billed up to that date by mainland counsel at the law firm of Kirkland & Ellis. See 12/4/2006 Report at 47-50. After making various reductions from mainland counsel's hourly rates and after recommending that only certain of Fleming's mainland counsel and paralegals recover their fees, the magistrate judge deducted approximately fifty percent of the fees attributable to those mainland attorneys and paralegals as excessive. 12/4/2006 Report at 53. The magistrate judge also deducted approximately ten percent of the hours billed by mainland attorneys and paralegals who "block billed." 12/4/2006 Report at 53. The magistrate judge ultimately recommended that Fleming be awarded fifteen percent of the remaining amount to reflect fees incurred by mainland counsel to defend against Count 4.

Regarding Kobayashi, Sugita & Goda, Fleming's local counsel, the magistrate judge similarly looked to the number of hours billed up to June 27, 2005. 12/4/2006 Report at 49-50. The court disallowed time billed by persons who were unidentifiable and for "work that is clerical." 12/4/2006 Report at 50. The magistrate judge also deducted "approximately fifty percent from Mr. Smith's time and approximately twenty-five percent from Mr. Yee, Ms. Lopez, and Ms. Teranishi" as excessive. 12/4/2006 Report at 54-55. The magistrate judge recommended that Fleming be awarded fifteen percent of the remaining amount to

40

reflect fees incurred by local counsel that was attributable to Count 4.

The court adopts the magistrate judge's uncontested findings and recommendations that this court:  (1) deny time billed by mainland and local counsel for "work that is clerical in nature," 12/4/2006 Report at 50, 52-53; (2) deny time billed by unidentifiable persons, 12/4/2006 Report at 50, 52; (3) reduce the hourly rate of mainland counsel and support staff to be consistent with prevailing rates in Hawaii, 12/4/2006 Report at 51; and (4) regarding mainland counsel, "only allow the time incurred by the primary attorneys in this matter, Mr. Liebeler, Mr. Capozzola, Ms. Dulac, and Ms. Samad, and the two paralegals, Ms. Andrews and Mr. San Diego," 12/4/2006 Report at 53.  However, the court vacates the magistrate judge's finding that Fleming billed an excessive amount of hours in defending this case, as the finding has become unnecessary in light of Fleming's statement to the district judge that Fleming has no objection to the fifty and twenty-five percent deductions recommended by the magistrate judge, which this court adopts.

The court agrees with the magistrate judge that Fleming's voluminous "summaries" of its hours spent working on this case make it impossible to determine with certainty the number of hours billed in defending against Count 4.  The magistrate judge, after wrestling with this uncertainty,

41

recommended a deduction of approximately ten percent from mainland counsel's hours for block billing. This court increases that deduction to approximately twenty-five percent to yield what this court, having made the substantive rulings in this case, draws as a reasonable total for attorneys' fees.

With the deduction for block billing increased to twenty-five percent, the following hours were deducted: Allison M. Andrews – 51.0 hours; Damian D. Capozzola – 255.0 hours; Eric C. Liebeler – 130.0 hours; Melissa M. Dulac – 113.0 hours; and R. Olivia Samad – 184.0 hours. As recommended by the magistrate judge, the court does not apply this deduction for block billing to "Mr. San Diego, who generally broke down his daily time totals by separate tasks." 12/4/2006 Report at 53. The court does, however, modify the recommendation that Neal F. San Diego's paralegal fee be reduced to $80. 12/4/2006 Report at 49, 52. Rather, the court reduces his fee to $70, as he appears to be "an entry-level paralegal." See 12/4/2006 Report at 49.

Following the format of the chart provided on pages 55 and 56 of the December 4 Report, the court modifies the amounts (before allocating fees incurred in connection with Count 4) as follows:

| NAME | RATE | HOURS | SUBTOTAL |
|------|------|-------|----------|
| Allison M. Andrews | $90 | 53.9 | $4,851.00 |
| Damian D. Capozzola | $200 | 264.05 | $52,810.00 |

| | | | |
|---|---|---|---|
| Eric C. Liebeler | $220 | 149.9 | $32,978.00 |
| Melissa M. Dulac | $150 | 115.05 | $17,257.50 |
| Neal F. San Diego | $70 | 489.45 | $34,261.50 |
| R. Olivia Samad | $130 | 203.1 | $26,403.00 |

**Kirkland Firm Grand Total    $168,561.00**[9]

| NAME | RATE | HOURS | SUBTOTAL |
|---|---|---|---|
| Lex R. Smith | $200 | 590.61 | $118,122.00 |
| Thomas H. Yee | $150 | 215.60 | $ 32,340.00 |
| Anne E. Lopez | $120 | 212.52 | $ 25,502.40 |
| Ann C. Teranishi | $120 | 82.85 | $  9,942.00 |
| Jesse W. Schiel | $120 | 2.65 | $    318.00 |
| J. Garrett Karr | $ 70 | 5.00 | $     35.00 |
| | | Total | $186,259.40 |
| Hawaii General Excise Tax (4.166%) | | | $  7,759.57 |

**Kobayashi Firm Grand Total    $194,018.97**

The court adjusts the magistrate judge's finding that "fifteen percent is a reasonable allocation of fees incurred in connection with Count IV." 12/4/2006 Report at 56. The court is concerned about the number of people who staffed Fleming's case, when only a single attorney was on the other side. Although Berry's damage claim was astronomical, the result of the earlier copyright trial gave Fleming a basis for anticipating that the

---

[9] Tax was not applied to mainland counsel's fees, and no party has objected to that.

43

true value of Berry's claims was considerably less than claimed. The court recognizes that some of the staffing may have been an attempt to save money by having more junior attorneys bill at lower hourly rates than senior attorneys, but the number of attorneys spending significant hours on this case seems to the court to have probably led to some loss of efficiency.  The court therefore replaces the magistrate judge's fifteen percent allocation with a twelve percent allocation.  This reduces Fleming's award to $20,227.32 in attorneys' fees incurred by mainland counsel and $23,282.28 in attorneys' fees incurred by local counsel, for a total of $43,509.60 in attorneys' fees incurred by Fleming in defending against Count 4.  The total reduction from the $66,684.38 that the magistrate judge recommended is $23,174.78.  In setting this lower amount as fees payable by Berry to Fleming in connection with Count 4, this judge is simply making a different judgment call from the magistrate judge, given this judge's different exposure to the attorneys.  Making this judgment call was made significantly easier for this judge by the magistrate judge's thorough and clear analysis of the facts and issues presented.

        Having not challenged the method of calculating fees awardable to Fleming in connection with Count 4, all parties, including Berry, have waived objections to the magistrate judge's calculations, which were less favorable to Berry than this

44

court's.  Berry's objection was to the award of any fee at all to
Fleming.

        6.    The Magistrate Judge Properly Relied on
            *Buckhannon*.

      Fleming argues that the magistrate judge "applie[d] the
wrong standard to assess whether [Fleming] is the prevailing
party in this litigation."  Fleming Objections at 2.  Fleming
contends that the magistrate judge's reliance on Buckhannon Board
and Care Home, Inc. v. West Virginia Department of Health and
Human Resources, 532 U.S. 598 (2001) ("Buckhannon"), is misplaced
because that case "was decided under the Fair Housing Amendments
Act of 1998 [and] is not relevant to federal copyright cases."
Fleming Objections at 2.  Instead of relying on Buckhannon,
Fleming relies on the standard set forth in Florentine Art
Studio, Inc. v. Vedet K. Corp., 891 F. Supp. 532 (C.D. Cal.
1995).  Fleming Objections at 2-5 (also citing Warner Brothers
Inc. v. Dae Rim Trading, Inc., 877 F.2d 1120 (2d Cir. 1989); Repp
v. Webber, 892 F. Supp. 552 (S.D.N.Y. 1995)).  The court
disagrees with Fleming and adopts the magistrate judge's
application of Buckhannon.

      The magistrate judge relied on Buckhannon, 532 U.S. at
603-04, in determining whether Berry or Fleming prevailed on the
copyright claims.  The magistrate judge noted that, although
"Buckhannon dealt with a request for attorneys' fees under the
Fair Housing Amendments Act of 1988 [("FHAA")] and the Americans

45

with Disabilities Act of 1990 [("ADA")]," the same principles
apply to requests for fees under the Copyright Act.  12/4/2006
Report at 22-26.

  In <u>Buckhannon</u>, 532 U.S. at 600, the plaintiff, an
operator of care homes that provided assisted living to its
residents, brought suit against the state of West Virginia
regarding the state law requirement that "all residents of . . .
care homes be capable of 'self-preservation,' or capable of
moving themselves 'from situations involving imminent danger,
such as fire.'"  Because the plaintiff had failed an inspection
by the state fire marshal, who found that "some of the residents
were incapable of 'self-preservation,'" the plaintiff brought
suit, seeking "declaratory and injunctive relief that the 'self-
preservation' requirement violated the [FHAA]."  Subsequent to
filing the suit, "the West Virginia Legislature enacted two bills
eliminating the 'self-preservation' requirement," and the
district court therefore dismissed the case as moot.  <u>Id.</u> at 601.

  The plaintiffs sought fees under the FHAA and ADA, both
of which authorize an award to the "prevailing party."  <u>Id.</u>  The
district court denied the request, and the Fourth Circuit
affirmed.  <u>Id.</u> at 602.  On certiorari, the Supreme Court was
faced with determining whether the term "prevailing parties"
"includes a party that has failed to secure a judgment on the
merits or a court-ordered consent decree, but has nonetheless

46

achieved the desired result because the lawsuit brought about a
voluntary change in the defendant's conduct."  <u>Id.</u> at 600.
Noting that Congress "has authorized the award of attorney's fees
to the 'prevailing party' in numerous statutes in addition to
those at issue here," the Court stated:

> In designating those parties eligible for an
> award of litigation costs, Congress employed
> the term "prevailing party," a legal term of
> art.  Black's Law Dictionary 1145 (7th ed.
> 1999) defines "prevailing party" as "a party
> in whose favor a judgment is rendered,
> regardless of the amount of damages awarded
> <in certain cases, the court will award
> attorney's fees to the prevailing party>.
> –Also termed <u>successful party</u>."  This view
> that a "prevailing party" is one who has been
> awarded some relief by the court can be
> distilled from our prior cases."

<u>Id.</u> at 603 (emphasis in original).  The Court held that, in order
to be a "prevailing party," a plaintiff must "receive at least
some relief on the merits of his claim" and that "even an award
of nominal damages suffices under this test."  <u>Id.</u> at 603-04.
Because the plaintiff did not "secure a judgment on the merits or
a court-ordered consent decree," the Court affirmed the denial of
its request for attorneys' fees.

　　　　Although the <u>Buckhannon</u> court did not concern a request
for fees under the Copyright Act, other jurisdictions have
applied its standards to such requests.  <u>See</u>, <u>e.g.</u>, <u>HI-Tech, Inc.
v. Rising</u>, 2006 WL 1966663, No. 3:05 CV 265, at *4 (W.D.N.C. July
11, 2006) (applying <u>Buckhannon</u> to a request for fees under

section 505 of the Copyright Act); <u>TRF Music Inc. v. Alan ETT Music Group, LLC</u>, 2006 WL 1376931, No. 06 Civ. 0349 (PKC), at *1-3 (S.D.N.Y. May 18, 2006) ("The requirements for 'prevailing party' status set forth in <u>Buckhannon</u> have been applied to the fee-shifting provision under the Copyright Act."); <u>Philadelphia Stock Exch. v. Int'l Sec. Exch.</u>, 2005 WL 2923519, No. 05 Civ. 5390 (NRB), at *1-2 (S.D.N.Y. Nov. 2, 2005) (noting that <u>Buckhannon</u>'s "definition of 'prevailing party' applies to that term as it is used in the Copyright Act"); <u>Bruce v. Weekly World News, Inc.</u>, 203 F.R.D. 51, 55 (D. Mass. 2001) ("While the Copyright Act does not offer a crystal-clear definition of what is meant by the term 'prevailing party,' in [<u>Buckhannon</u>, 532 U.S. 598], the Supreme Court, labeling the phrase 'a legal term of art,' defined a 'prevailing party' as one who obtains an enforceable judgment on the merits or a court-ordered consent decree."); <u>see also</u> <u>Ninox Tel. Ltd. v. Fox Entm't Group</u>, 2006 WL 1643300, No. 04 Civ. 7891 (DLC), at *1-2 (S.D.N.Y. June 13, 2006) (applying <u>Buckhannon</u> to a request for fees under the Copyright Act); <u>Gardendance, Inc. v. Woodstock Copperworks, Ltd.</u>, 2006 WL 305220, No. 1:04 CV 00010, at *1-2 (M.D.N.C. Feb. 8, 2006); <u>Christopher Phelps & Assocs. v. Galloway</u>, 2005 WL 4169714, No. 3:03 CV 429-MU, at *1 (W.D.N.C. Dec. 5, 2005);  <u>NXIVM Corp. v. Ross Inst.</u>, 2005 WL 1843275, No. 1:03 CV 0976 GLSDRH, 1:03 CV 1051 GLSDRH, at *1-2 (N.D.N.Y. Aug. 2, 2005); <u>Venegas-Hernandez</u>

48

v. Peer, 2005 WL 3740474, No. Civ. 01-1215 (JAF), Civ. 01-2186

(JAF), at *1 (D. Puerto Rico Feb. 23, 2005); Bridgeport Music,

Inc. v. London Music, U.K., 345 F. Supp. 2d 836, 838 (M.D. Tenn.

2004); Chambers v. Time Warner, Inc., 279 F. Supp. 2d 362, 365

(S.D.N.Y. 2003).

        Fleming urges the court to disregard the foregoing

cases applying Buckhannon's definition and discussion of

"prevailing party" to requests for fees under section 505 of the

Copyright Act.  Fleming asks the court to instead apply the tests

in Warner Brothers, Inc., 877 F.2d at 1126, Repp, 892 F. Supp. at

560, and Florentine, 891 F. Supp. at 541.  Although those cases

address fee requests under section 505 of the Copyright Act and

do not apply Buckhannon, they were decided before the Supreme

Court issued its decision in Buckhannon.  The court therefore

rejects Fleming's assertion that the magistrate judge erred in

applying Buckhannon to the present motions.  The court also

affirms the magistrate judge's finding that Berry prevailed

against Fleming on the copyright claims, as Berry "obtained

judgment against [Fleming] as to both of his claims under the

Copyright Act."[10]  See 12/4/2006 Report at 22.

_____

        [10] Berry alternatively asserts that, even if this court
concludes that Fleming is the prevailing party on the copyright
claims, Fleming should not be awarded attorneys' fees incurred in
defending against those claims, citing to Berkla v. Corel Corp.,
302 F.3d 909, 923 (9th Cir. 2002).  Berry Response to Fleming
Objections at 10-11.  Because the court adopts the magistrate
judge's findings that Berry prevailed against Fleming on the

7.    <u>Berry's Attorneys' Fees Are Denied.</u>

Berry next objects to the magistrate judge's recommendation to deny him attorneys' fees incurred in maintaining his copyright and related claims despite her finding that Berry was the prevailing party against Fleming, Mark Dillon, and Teresa Noa.  Berry Objections at 3-6.  Specifically, Berry argues that:  (1) the magistrate judge erred in finding that "Berry has been responsible for numerous lawsuits and administrative complaints against Fleming," Berry Objections at 7; (2) the magistrate judge's statement that Berry "urged Fleming to fire Dillon, Noa, and Christensen" lacks support in the record; (3) the magistrate judge's "conclusion that the deterrence factor weighs against the successful copyright owner is just wrong," Berry Objections at 3-4; and (4) "whether Berry won anything in the way of monetary damages should have no bearing on his right to fees."  Berry Objections at 6.  The court adopts the magistrate judge's recommendation to deny Berry attorneys' fees incurred in maintaining his copyright and related claims.

As discussed above, in exercising its discretion to award attorneys' fees under the Copyright Act, the court may consider the following factors:  frivolousness, motivation,

---

copyright claims and that Fleming is not entitled to such fees, the court does not address this issue.

50

objective unreasonableness, the degree of the moving party's
success, and whether the chilling effect of attorneys' fees may
impose an inequitable burden on an impecunious plaintiff.  See
Fogerty, 510 U.S. at 534 n.19; Wall Data Inc., 447 F.3d at 787;
Ets-Hokin, 323 F.3d at 766.

        After concluding that Berry is the prevailing party
against Fleming, Dillon, and Noa, the magistrate judge found that
consideration of the foregoing factors "weigh[s] against an award
of [Berry's] attorney's fees."  12/4/2006 Report at 35.
Specifically, the magistrate judge found, among other things,
that:  (1) Berry's "claimed damages, which were upwards of $200
million, were frivolous and objectively unreasonable," 12/4/2006
Report at 34; (2) "this action was likely motivated, at least in
part, by improper means" because "the instant case is part of a
long line of legal and administrative actions that [Berry] has
instituted against Fleming," 12/4/2006 Report at 34-45; (3) "it
is unnecessary to deter [inadvertent] conduct with an award of
attorney's fees," 12/4/2006 Report at 35; and (4) "the interests
of compensation do not require an award."  12/4/2006 Report
at 35.

        Berry first objects to the magistrate judge's finding
that "this action was likely motivated, at least in part, by
improper purposes" because "the instant case is a part of a long
line of legal and administrative actions that [Berry] has

51

instituted against Fleming." Berry argues that he "has brought two law suits against Fleming and won both. Fleming has brought two against Mr. Berry and both were dismissed." Berry Objections at 7. Although numerous lawsuits have involved Berry, API, and/or Fleming, Berry partially prevailed in the two lawsuits he brought against Fleming. The court therefore rejects the magistrate judge's finding that Berry's long line of actions against Fleming demonstrated that this action was motivated by improper purposes.

Berry next objects to the magistrate judge's statement that Berry "urged Fleming to fire Dillon, Noa, and Christensen." Berry Objections at 12. Berry says he "has combed the record and even requested that opposing counsel direct him to the record for support for this fact." Berry Objections at 12. Because the court is unable to find any evidence in the voluminous record showing that Berry urged Fleming to fire any of its employees, the court rejects that statement.

Berry also objects to the magistrate judge's finding that, "[i]nsofar as the district court found that any infringement that Dillon and Noa committed was not wilful, this Court finds that it is unnecessary to deter such conduct with an award of attorney's fees." 12/4/2006 Report at 35. This court did conclude in its summary judgment orders that any direct infringement was inadvertent and that Berry "fail[ed] to prove

that any Defendant's action was 'intentional.'"  1/27/2005 Order
at 34 ("Any infringement was therefore inadvertent, and not
willful."); 6/27/2005 Order at 26, 28.  Because the infringement
was not intentional, willful, or knowing, the court agrees with
the magistrate judge that "it is unnecessary to deter such
conduct."  12/4/2006 Report at 35.  The court overrules Berry's
objection on this point.

Finally, Berry challenges the magistrate judge's
finding that, "in light of the fact that [Berry] only obtained
nominal damages against Dillon and Noa and a relatively small
amount of damages from [Fleming], this Court finds that the
interests of compensation do not require an award of [Berry's]
attorney's fees."  12/4/2006 Report at 35.  Berry argues,
"[W]hether Mr. Berry won anything in the way of monetary damages
should have no bearing on his right to fees."  Berry Objections
at 6.  He cites to Wall Data Inc., 447 F.3d at 787, for the
proposition that a "'plaintiff will ordinarily be regarded as the
prevailing party if he succeeds at trial in establishing the
defendant's liability, even if the damages awarded are nominal or
nothing.'"  Berry Objections at 5 (quoting Wall Data Inc., 447
F.3d at 787).  Nothing the magistrate judge found is inconsistent
with that statement from Wall Data Inc.  The magistrate judge
found, and this court agrees, that Berry was the prevailing party
against Fleming, Dillon, and Noa.

The court notes that the <u>Wall Data Inc.</u> court stated
that courts may consider "the degree of success obtained" by the
party moving for attorneys' fees.  <u>Wall Data Inc.</u>, 447 F.3d at
787.  <u>Accord</u> <u>Ets-Hokin</u>, 323 F.3d at 766; 12/4/2006 Report at 31.
The magistrate judge considered Berry's "degree of success" in
finding that the size of Berry's award against Dillon, Noa, and
Fleming was so small as to "not require an award of [his]
attorney's fees."  Specifically, the magistrate judge said that,
compared to Berry's "claimed damages, which were upwards of $200
million," his jury award of $57,534.00 was small and "the
interests of compensation do not require an award of [his]
attorney's fees."  12/4/2006 Report at 34-35.  This court agrees
and adopts those statements.

>    8.   <u>Costs Relating to Berry's Trial Experts.</u>

Berry argues that the costs relating to his trial
experts "should be allowed as filed."  Berry Objections at 4
("the costs that were incurred with regard to this [sic] experts
that were disallowed by the Report . . . can be allowed"), 6.
The court adopts the magistrate judge's findings with respect to
Berry's trial expert witnesses.

Berry requests $42,600.00 for the fees of his trial
experts, Philip Johnson and Thomas Ueno, but does not object to
the magistrate judge's conclusion that "expert witnesses are only
entitled to the statutory fee of $40.00 a day for each day of

attendance at court proceedings or their depositions." 12/4/2006
Report at 80-81 (citing <u>Feher v. Dep't of Labor & Indus.
Relations</u>, 561 F. Supp. 757, 768 (D. Haw. 1983)); Ex. 2F
(attached to Berry Motion) at 1.  Berry's supporting
documentation indicates that Johnson was deposed on one day, May
19, 2005.  Thus, the court adopts the magistrate judge's finding
that a "$40.00 fee for [Johnson] is a taxable expense." <u>See</u> Ex.
2F (attached to Berry Motion) at 5.  Regarding Ueno's fees,
Berry's supporting documentation does not indicate whether or
when Ueno was deposed and, although Ueno testified at trial,
Berry's request does not include fees for Ueno's trial
attendance.  <u>See also</u> 12/4/2006 Report at 81.  The court
therefore adopts the magistrate judge's finding that "none of
[Ueno's] fees are taxable."

> C.   The Court Adopts the Magistrate Judge's
>      Recommendation to Deny Costs, Noting That the
>      Parties Have Opted Not to Submit Supplemental
>      Information.

        In both Reports, the magistrate judge recommended that
this court deny certain costs incurred by the parties for failure
to provide sufficient information to the court.  <u>See</u> 10/25/2006
Report at 2, 42, 45-46; 12/4/2006 Report at 2, 58-61, 70, 77,
83-84.  No party challenges the denial of costs.  Berry objects
only to the magistrate judge's statement that the denial should
be without prejudice to a future cost award based on supplemental
submissions.  Berry argues that this statement invites

"additional claims of costs and fees" by Defendants.  Berry Objections to 10/25/2006 Report at 15; Berry Objections to 12/4/2006 Report at 3.  At the hearing on this matter, all Defendants informed the court through their attorneys that they will not supplement the record with future filings relating to their requests for costs.  Berry's objection is therefore moot.

Berry himself submitted supplemental information regarding only his copying costs.  With respect to such costs, 28 U.S.C. § 1920(4) "allows for the taxation of copies necessarily obtained for use in the case." 12/4/2006 Report at 76 (citing 28 U.S.C. § 1920(4)).  Local Rule 54.2(f)(4) also allows for "taxation of copies at $0.15 per page or the actual cost charged by commercial copiers, provided such charges are reasonable." Additionally, "The cost of copies obtained for the use and/or convenience of the party seeking recovery and its counsel is not allowable." LR 54.2(f)(4).  To recover copy costs, a party must submit "an affidavit describing the documents copied, the number of pages copied, the cost per page, and the use of or intended purpose for the items copied."  LR 54.2(f)(4).

In deciding whether to award Berry any copy costs, the magistrate judge noted that Berry "failed to provide an affidavit describing what documents were copied and the intended purpose of the copies." 12/4/2006 Report at 76-77.  She acknowledged that Berry "provided brief descriptions of some of the documents

56

copied by external sources, such as 'Motions for SJ', 'Ueno Depo.', and 'Exhibits,'" but decided that, "[e]ven with this information, the Court cannot determine whether the copies were necessary for use in the case because [Berry] failed to provide information about the intended purpose of the copies." 12/4/2006 Report at 77 n.16. The magistrate judge therefore recommended denial of Berry's "request for in house and external copying costs without prejudice, subject to a resubmission which complies with the Local Rules." 12/4/2006 Report at 77.

Berry now submits a declaration and two exhibits in support of his in-house copy costs requests. In his declaration, Berry's counsel says that the attached Exhibit 1 "is a true and correct summary [of] the voluminous record of the in-house copy costs that were advanced in this case." Declaration of Timothy J. Hogan (12/14/2006) ¶ 1. Berry's counsel explains that the in-house copy costs "were all based on costs for the filing of motions and other materials that were filed and necessary in the case" and "do not include the costs for incidental working copies of documents for attorneys or otherwise that are not billed to the client in this case." Id. Berry's counsel says, "These are costs that were necessary to be able to bring motions and to respond to motions and other matters before the Court and were necessary in this case." Berry's counsel also alleges that the

attached Exhibit 2 provides detailed information about the in-house copy costs.

In light of Berry's supplemental information, and in the absence of any objection by Defendants, the court finds that Berry's requested in-house copying costs were necessary.  The charge of $0.15 per page is standard.  <u>See</u> LR 54.2(f)(4); Ex. 1 (attached to Berry Objections) (noting that Berry's "In House Copy costs Of 67,246 pages at .15 per page" totals $10,086.90).  The court therefore awards Berry $10,086.90 for his in-house copying costs against Fleming, Dillon, and Noa.

IV.    <u>CONCLUSION.</u>

In light of the foregoing, the court adopts, for the most part, the magistrate judge's Reports, subject to the few exceptions and modifications discussed herein.


                    IT IS SO ORDERED.

                    DATED:  Honolulu, Hawaii, March 2, 2007.




                    _____
                    Susan Oki Mollway
                    United States District Judge


<u>Berry v. Hawaiian Express Service, Inc., et al.</u>, Civ. No. 03-00385 SOM/LEK; ORDER ADOPTING AND MODIFYING THE OCTOBER 25, 2006, AND DECEMBER 4, 2006, REPORTS OF SPECIAL MASTER ON THE PARTIES' MOTIONS FOR ATTORNEYS' FEES AND COSTS.