UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
WAYNE BERRY,                                                 :
                                                             :
                                        Plaintiff,           :
                                                             :
            - against -                                      :    No. 07-CV-07634 (HB) (AJP)
                                                             :
DEUTSCHE BANK TRUST COMPANY                                  :
AMERICAS (F.A. BANKERS TRUST                                 :
COMPANY) AND JP MORGAN CHASE BANK                            :
IN THEIR SEPARATE CAPACITIES AND AS                          :
AGENTS FOR THE PRE AND POST-PETITION                         :
LENDERS OF FLEMING COMPANIES, INC.,                          :
GENERAL ELECTRIC CAPITAL                                     :
CORPORATION; C&S WHOLESALE                                   :
GROCERS, INC., DOES 1-20 TO 200,                             :
                                                             :
                                        Defendants.          :
                                                             :
------------------------------------------------------------ X


## BRIEF OF DEFENDANT C&S WHOLESALE GROCERS, INC.
## IN SUPPORT OF MOTION TO DISMISS

Christopher M. Mason
CM-7146
NIXON PEABODY LLP
437 Madison Park Avenue
New York, New York 10022
(212) 940-3000

Attorneys for Defendant
C&S Wholesale Grocers, Inc.

Dated: September 5, 2007

10712018.7

Table of Contents

|  | Page |
|---|---|
| Table of Authorities | ii |
| Preliminary Statement | 1 |
| Statement of Facts | 2 |
| Argument | 5 |
| I. THE HAWAII CASE ENDED IN AN ADJUDICATION ON THE MERITS IN FAVOR OF C&S | 7 |
| II. THE PLAINTIFF IN THIS CASE AND THE HAWAII CASE IS THE SAME | 7 |
| III. THE CURRENT CLAIMS AGAINST C&S WERE OR COULD HAVE BEEN MADE IN THE HAWAII CASE | 7 |
| Conclusion | 100 |

Table of Authorities

Cases                                                                                                                   Pages

*Allen v. McCurry*,
   449 U.S. 90 (1980) ................................................................................................ 5

*Blue Tree Hotels Inv. (Canada), Ltd. v.
   Starwood Hotels & Resorts*,
   369 F.3d 212 (2d Cir. 2004) .................................................................................. 6

*Clarke v. Frank*,
   960 F.2d 1146 (2d Cir. 1992) ................................................................................ 5

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
   126 F.3d 365 (2d Cir. 1997) .................................................................................. 5

*Cullen v. Paine Webber Group, Inc.*,
   689 F. Supp. 269 (S.D.N.Y. 1988) ....................................................................... 9 n.6

*EDP Medical Computer Sys., Inc. v. United States*,
   480 F.3d 621 (2d Cir. 2007) .................................................................................. 5

*Federated Dep't Stores, Inc. v. Moitie*,
   452 U.S. 394 (1981) .............................................................................................. 5

*L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*,
   198 F.3d 85 (2d Cir. 1999) .................................................................................... 5

*Mademoiselle Knitwear, Inc. v. Liz Clairborne, Inc.*,
   No. 98 Civ. 3252, 1999 U.S. Dist. LEXIS 8592
   (S.D.N.Y. June 9, 1999) ........................................................................................ 5, 9 n.6

*Maharaj v. BankAmerica Corp.*,
   128 F.3d 94 (2d Cir. 1997) .................................................................................... 5, 9

*Monahan v. New York City Dep't of Corrections*,
   214 F.3d 275 (2d Cir. 2000) .................................................................................. 6

*Nevada v. United States*,
   463 U.S. 110 (1983) .............................................................................................. 5

*Petrella v. Siegel*,
   843 F.2d 87 (2d Cir. 1988) .................................................................................... 6

| Cases | Pages |
|---|---|
| *Ponterio v. Kaye,* No. 06 Civ. 6289, 2007 U.S. Dist. LEXIS 4105 (S.D.N.Y. Jan. 22, 2007) | 6 |
| *Saud v. Bank of New York,* 929 F.2d 916 (2d Cir. 1991) | 6, 7 |
| *SEC v. First Jersey Secs., Inc.,* 101 F.3d 1450 (2d Cir. 1996) | 5 |
| *In re Teltronics Servs.,* 762 F.2d 185 (2d Cir. 1985) | 5 |
| *Thompson v. County of Franklin,* 15 F.3d 245 (2d Cir. 1994) | 6 |
| *Transaero, Inc. v. La Fuerza Aerea Boliviana,* 162 F.3d 724 (2d Cir. 1998) | 6 |
| *Waldman v. Village of Kiryas Joel,* 207 F.3d 105 (2d Cir. 2000) | 6 |
| *Woods v. Dunlop Tire Corp.,* 972 F.2d 36 (2d Cir. 1992) | 5 |

Statutes and Rules

| | |
|---|---|
| Fed. R. Civ. P. 12 | 6 |

Secondary Sources

| | |
|---|---|
| Restatement (Second) of Judgments § 24 (1982) | 9 |

Defendant C&S Wholesale Grocers, Inc. ("C&S") respectfully submits this memorandum of law in support of its motion to dismiss on grounds of *res judicata*.

## Preliminary Statement

In 2006, the United States District Court for the District of Hawaii entered a final judgment in favor of C&S in a lawsuit (the "Hawaii Case") brought by Wayne Berry—who is also the Plaintiff here—against a slew of defendants, including C&S, its Chairman, and certain of its affiliates or subsidiaries. *See* Declaration of Lex R. Smith ("Smith Dec.") Ex. E. That case, based on the alleged use by C&S of certain software acquired from the bankrupt Fleming Companies, Inc. ("Fleming"), involved claims of copyright infringement, violation of the Sherman and Clayton Acts, and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *See, e.g.,* Second Amended Verified Complaint (Hawaii) ¶¶ 71-95, 113-31, 132-49 (Smith Dec. Ex. C).[1]

Plaintiff has now sued C&S again, this time in a lawsuit recently transferred to this Court. Although Plaintiff tries hard not to mention how C&S supposedly continues to infringe on his copyrights, his claims in this new lawsuit—for copyright infringement and RICO violations, *see, e.g.*, First Amended Complaint (New York) ¶¶ 38, 44, 47-50 (Smith Ex. I)—are based on the same alleged use by C&S of software from Fleming as in the Hawaii Case, *see, e.g.*, First Amended Complaint (New York) ¶¶ 8-11, 19, 38 (Smith Dec. Ex. I). Given the prior judgment on the merits, the identity of the parties, and the identity of the claims that were or

---

[1] To help distinguish Plaintiff's complaints in the Hawaii Case from his complaint now before this Court, the explanatory parentheticals "(Hawaii)" or "(New York)" have been added to the titles of his pleadings.

could have been brought in the Hawaii Case, *res judicata* bars the current lawsuit pending in this Court against C&S.

## Statement of Facts

Fleming was at one time one of the largest suppliers of packaged consumer goods to retailers in the United States. In April 2003, however, it went bankrupt. *See, e.g.*, Second Amended Verified Complaint (Hawaii) ¶ 12 (Smith Ex. C). In August 2003, C&S, a grocery wholesaler based in New Hampshire, bought some of Fleming's assets in that bankruptcy. *See, e.g.*, Second Amended Verified Complaint (Hawaii) ¶¶ 102-03 (Smith Dec. Ex. C).

Plaintiff believed that Fleming had been infringing his copyrights in certain Microsoft Access programming he calls the "Berry Freight Control System." *See, e.g.*, Second Amended Verified Complaint (Hawaii) ¶¶ 6-7, 25 (Smith Ex. C). In an August 4, 2003 bankruptcy court hearing, he asserted that the assets C&S proposed to purchase from Fleming included software that would continue such infringement:

> MR. HOGAN [Plaintiff's counsel]: . . . we believe that the [Fleming] software that was created when it's properly litigated will be shown to be another derivative [of Plaintiff's software], the one that they're going to assume and use.
>
> THE COURT: Well, the buyer says they're not buying it. To the extent they use it you'll have to sue them for infringement.
>
> * * *
>
> MR. HOGAN: Yes, Your Honor, and we believe that the software they're buying is infringed software, so we will pursue it. Thank you.

Smith Dec. Ex. A. Nine days later, on August 13, 2003, Plaintiff amended a preexisting complaint he had filed against other defendants in the United States District Court for the District of Hawaii to add C&S as a defendant. Among other things, he alleged that

> C&S Wholesale has stepped into the shoes of Fleming Companies, Inc. and is operating the Berry Freight Control System in full knowledge that such operation constitutes willful copyright infringement. Through the unauthorized use of Plaintiff's intellectual property,

- 2 -

> C&S Wholesale and its agents presently ships (sic) a significant portion of all food-stuffs sold to consumers in the State of Hawaii.

First Amended Complaint (Hawaii) ¶ 7 (Smith Dec. Ex. B).

On June 18, 2004, Plaintiff expanded his Hawaii Case yet again to name, among others, the Chairman of C&S individually as a defendant. *See, e.g.*, Second Amended Verified Complaint (Hawaii) ¶ 18 (Smith Dec. Ex. C). He alleged "unauthorized use of Plaintiff's intellectual property", claimed that "C&S [and other] Defendants have obtained a pirated copy of [Plaintiff's] software", and asserted that "[t]his software contains trade secrets and the use by Defendants constitute infringement and Plaintiff continues to suffer irreparable harm." Second Amended Verified Complaint (Hawaii) ¶¶ 7, 52, 55 (Smith Dec. Ex. C). He also alleged that C&S had violated his rights in "numerous other computer software programs developed by Mr. Berry and loaned, as an interim measure to Fleming" and argued that "no less than 30 of the other programs created by Mr. Berry" were "illegally transferred to C&S when its [sic] became the owner and operator of the Fleming-Logistics Department." Second Amended Verified Complaint (Hawaii) ¶¶ 100, 102-03 (Smith Dec. Ex. C). Finally, he included a RICO claim based on these supposed wrongs. *See* Second Amended Verified Complaint (Hawaii) ¶¶ 132-48 (Smith Dec. Ex. C).

C&S and its related co-defendants in the Hawaii Case strongly resisted all these claims. On June 27, 2005, District Judge Susan Oki Mollway granted summary judgment in their favor on all counts. *See* Smith Dec. Ex. D. Final judgment was entered on that decision (and on other decisions not involving the C&S defendants) on March 16, 2006. *See* Smith Dec. Ex. E.

Emphasizing her decision on the merits, on March 2, 2007, Judge Mollway also adopted a Magistrate Judge's recommendation to award attorneys' fees in favor of C&S and

against Plaintiff. *See* Smith Dec. G.[2] As the Magistrate Judge had noted in recommending an award of $84,758.98 against Plaintiff, "C&S . . . obtained a total victory on all of Plaintiff's claims." Smith Ex. F.

Plaintiff appealed to the United States Court of Appeals for the Ninth Circuit. He did not, however, stop litigating in the trial courts. On March 29, 2007, he commenced his current lawsuit against two banks (Deutsche Bank Trust Company Americas and JP Morgan Chase Bank) that had lent money to Fleming and somehow, according to Plaintiff, had therefore engaged in "contributory and/or vicarious infringement" of Plaintiff's rights. *See generally* First Amended Complaint (New York) ¶¶ 27-38 (Smith Dec. Ex. I). On August 15, 2007, two days after a contentious deposition of Plaintiff by counsel for C&S attempting to collect on the attorneys' fees award in the Hawaii Case,[3] and two days after Judge Mollway entered an order transferring Plaintiff's new case to this Court, Plaintiff retaliated by amending his new lawsuit to name C&S—once again—as a Defendant. His "new" claims against C&S, however, simply echo the claims that were, or could have been, included in the Hawaii Case already won by C&S. At bottom, they are based on the same alleged facts that, as to C&S, "[s]tart[ed] in August of 2003" and became "acts of infringement that continue as of this date." *E.g.*, First Amended Complaint (New York) ¶ 38 (Smith Dec. Ex. I).

---

[2] The District Court in Hawaii noted that, while Plaintiff had characterized many of his claims as involving "trade secrets", "[b]ecause Berry's claims against C&S for copyright infringement and for misappropriation of trade secrets (Count 4) were based on the same course and conduct, they are related for purposes of attorneys' fees under the Copyright Act." Smith Dec. Ex. G, at 15.

[3] The supposed "repeated irrelevant questions" asked of Plaintiff by Hawaiian counsel for C&S in that deposition, *see* First Amended Complaint (New York) ¶ 49 (Smith Dec. Ex. I), involved efforts to enforce this award. *See, e.g.*, Smith Dec. ¶ 12 & Ex. J.

Argument

The doctrine of *res judicata* provides that a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *accord, e.g., Mademoiselle Knitwear, Inc. v. Liz Clairborne, Inc.*, No. 98 Civ. 3252, 1999 U.S. Dist. LEXIS 8592, at *12 (S.D.N.Y. June 9, 1999) (Baer, J.) (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997), and *Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997)). It is "a rule of fundamental repose important for both the litigants and for society . . . . [that] relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, . . . prevent[s] inconsistent decisions, encourages reliance on adjudication", *EDP Medical Computer Sys., Inc. v. United States*, 480 F.3d 621, 624-5 (2d Cir. 2007) (quoting *In re Teltronics Servs.*, 762 F.2d 185, 190 (2d Cir. 1985) and *Allen v. McCurry*, 449 U.S. 90, 94 (1980)), while operating as an absolute bar "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996) (quoting *Nevada v. United States*, 463 U.S. 110, 129-30 (1983)).

As this indicates, *res judicata* "prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, *even if the issue or defense was not actually raised or decided.*" *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992) (emphasis added) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1150 (2d Cir. 1992)). This means that "[e]ven claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999). It does not matter that a particular legal theory was not expressly asserted in the prior action, because "it is the facts surrounding the transaction or occurrence which operate to

constitute the cause of action, not the legal theory upon which a litigant relies." *Saud v. Bank of New York*, 929 F.2d 916, 919 (2d Cir. 1991) (internal quotation marks omitted). As a "well-established" corollary to this principle, "a plaintiff cannot avoid the effects of *res judicata* by 'splitting' his claim into various suits, based on different legal theories." *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000).

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) is a proper vehicle for dismissal of a subsequent case on grounds of *res judicata*. *See, e.g., Thompson v. County of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994); *Ponterio v. Kaye*, No. 06 Civ. 6289, 2007 U.S. Dist. LEXIS 4105 at *16, 21-24 (S.D.N.Y. Jan. 22, 2007) (Baer, J.). In deciding the issue, the Court may consider not only the current pleadings, but public records and pleadings from prior proceedings as well. *See, e.g., Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts*, 369 F.3d 212, 217 (2d Cir. 2004). To establish *res judicata*, a movant need only show three things from these sources: first, that a previous action involved an adjudication on the merits; second, that the previous action involved the movant and the plaintiff (or someone in privity with him); and third, that the claims in the subsequent action were, or could have been, raised in the prior action. *E.g., Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000). C&S easily meets all three parts of this test here.[4]

---

[4] The pendency of an appeal under federal law does not affect the Court's analysis. *See, e.g., Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 30 (2d Cir. 1998) (citing *Petrella v. Siegel*, 843 F.2d 87, 90 (2d Cir. 1988)).

POINT I

THE HAWAII CASE ENDED IN AN ADJUDICATION ON THE MERITS IN FAVOR OF C&S

As noted above, the United States District Court for the District of Hawaii entered a final judgment in favor of C&S in the Hawaii Case on March 16, 2006. *See* Smith Dec. Ex. E. Thus, C&S has satisfied the first requirement for dismissal on grounds of *res judicata*—a previous adjudication on the merits.

POINT II

THE PLAINTIFF IN THIS CASE AND THE HAWAII CASE IS THE SAME

As the various complaints, orders, and final judgment all indicate, Wayne Berry is the same individual who filed both the current lawsuit and the Hawaii Case. *See, e.g.*, Smith Dec. Exs. B, C, D, E, I. Even the same attorney continues to represent him. Thus, C&S has satisfied the second requirement for a dismissal on grounds of *res judicata*—that the prior action involved it and the same plaintiff.

POINT III

THE CURRENT CLAIMS AGAINST C&S WERE OR COULD HAVE BEEN MADE IN THE HAWAII CASE

For purposes of *res judicata* "it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action." *Saud*, 929 F.2d at 919. Here, for example, Plaintiff's First Amended Complaint (New York) is based on "a work entitled Freight Control System 1993 ('FCS1993')." First Amended Complaint (New York) ¶ 8 (Smith Dec. Ex. I). This is the same work central to the Hawaii Case. *Compare, e.g.*, First Amended Complaint (New York) ¶¶ 8, 16-18 (Smith Dec. Ex. I) *with* First Amended Complaint (Hawaii)

¶¶ 22-29 (Smith Dec. Ex. B) *and* Second Amended Verified Complaint (Hawaii) ¶¶ 25-33 (Smith Dec. Ex. C).

Similarly, as in the Hawaii Case, Plaintiff claims here that, in addition to FCS1993, his rights in numerous other computer programs (programs that allegedly came into C&S's possession when it bought assets from Fleming) have been violated. *Compare, e.g.*, First Amended Complaint (New York) ¶¶ 18-19 (Smith Dec. Ex. I) (alleging that C&S has infringed "FCS1993 and over one hundred subsidiary unpublished works") *with* Second Amended Verified Complaint (Hawaii) ¶¶ 102-03 (Smith Dec. Ex. C) (similarly asserting violation of rights in "no less than 30 of the other programs created by Mr. Berry" that were allegedly "illegally transferred to C&S when it became the owner and operator of the Fleming-Logistics Department."). These alleged infringements cover the same time period in both actions as well. *See, e.g.*, First Amended Complaint (New York) ¶ 38 (asserting that C&S's infringement began when it acquired Fleming's assets "[s]tarting in August of 2003" and the "acts of infringement that continue as of this date."), *with* Second Amended Verified Complaint (Hawaii) ¶¶ 6-8 (asserting that C&S stepped into the shoes of Fleming) (Smith Dec. Ex. C).[5]

In particular, when Plaintiff first sued C&S, he asserted that, as of August 2003, "C&S . . . stepped into the shoes of Fleming Companies Inc." and began to engage in "unauthorized use of Plaintiff's intellectual property." First Amended Complaint (Hawaii) ¶ 7 (Smith Dec. Ex. B). He then added to that core claim allegations that numerous other "programs

---

[5] The on-line records of the United States Copyright Office confirm that each of the programs registered by Plaintiff and a subject of this lawsuit was purportedly created years before the Hawaii Case began. Those programs therefore either were or could have been litigated in the Hawaii Case. *See* Smith Dec. Ex. H.

were illegally transferred to C&S" when it acquired assets of Fleming; and that C&S was therefore liable to him for their continued and unauthorized use. *See* Second Amended Verified Complaint (Hawaii) ¶¶ 102-03, 111 (Smith Dec. Ex. C).

Today, Plaintiff once again alleges infringement or misuse of numerous such computer programs "starting in August of 2003." *See* First Amended Complaint (New York) ¶ 38 (Smith Dec. Ex. I). As such allegations indicate, all of Plaintiff's claims against C&S still arise out of the August 2003 transaction in which C&S purchased assets from the bankrupt Fleming company, assets that supposedly included software infringing Plaintiff's intellectual property rights. Under the well-settled principles of *res judicata* in this Circuit, however, Plaintiff is precluded by the judgment in favor of C&S in the Hawaii Case from pursuing claims or theories about his rights in such software "transferred to C&S", *see* Second Amended Verified Complaint (Hawaii) ¶¶ 102-03 (Smith Dec. Ex. C), in 2003.[6]

Where *res judicata* exists, it "will bar any subsequent litigation by the same parties or those in privity with them concerning 'the transaction, or series of connected transactions, out of which the [first] action arose.'" *Maharaj*, 128 F.3d at 97 (quoting Restatement (Second) of Judgments § 24(1) (1982)). Here, given that the alleged transactions giving rise to Plaintiff's supposed claims in both the Hawaii Case and this case are the same, there can be no doubt that C&S has satisfied the third and final requirement for *res judicata* and

---

[6] The slightly different RICO claim in Plaintiff's current complaint does not change this. As this Court noted in *Mademoiselle Knitwear*, "[n]ew legal theories do not amount to a new cause of action so as to defeat the application of the principle of *res judicata*." 1999 U.S. Dist. LEXIS at *15 (quoting *Cullen v. Paine Webber Group, Inc.*, 689 F. Supp. 269, 279 (S.D.N.Y. 1988) (applying principle to bar RICO claims later raised involving facts from prior case)). Furthermore, the "predicate act" Plaintiff alleges for his "new" RICO claim is the purported infringement for which C&S has already been exonerated by the 2006 final judgment in the Hawaii Case. *See* First Amended Complaint (New York) ¶ 44 (Smith Dec. Ex. E).

- 10 -

that the bar described in *Maharaj* (and numerous other decisions) requires a dismissal of this case in favor of C&S.

## Conclusion

For the reasons stated above, this Court should dismiss Plaintiff's claims against C&S with prejudice and with costs and fees in favor of C&S.

Dated: September 5, 2007

                                    NIXON PEABODY LLP

By: _____
       Christopher M. Mason
       CM-7146

437 Madison Avenue
New York, New York 10022
(212) 940-3000

Attorneys for Defendant
C&S Wholesale Grocers, Inc.