UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAYNE BERRY,<br><br>        Plaintiff,<br><br>   vs.<br><br>DEUTSCHE BANK TRUST COMPANY AMERICAS (F.A. BANKERS TRUST COMPANY) AND JP MORGAN CHASE BANK IN THEIR SEPARATE CAPACITIES AND AS AGENTS FOR THE PRE AND POST-PETITION LENDERS OF FLEMING COMPANIES, INC.; GENERAL ELECTRIC CAPITAL CORPORATION; C&S Wholesale Grocers, Inc., DOES 1 TO 200.<br><br>   Defendants.<br>_____ | No. 07-CV-07634 (PKC) (AJP)<br><br>**PLAINTIFF WAYNE BERRY'S BRIEF IN OPPOSITION TO DEFENDANT C&S WHOLESALE GROCER'S, INC'S. MOTION TO DISMISS** |

Table of Contents

Table of Contents ............................................................................................................. ii

Table of Authorities ........................................................................................................ iii

I. FACTUAL BACKGROUND. ............................................................................... 1

II. DISCUSSION. ...................................................................................................... 4

 A. The C&S Motion Must Be Denied Because they Continue to Infringe ....... 4

 1. The First Amended Complaint Alleges C&S is an Infringer for its Current Conduct. ............................................................................ 4

 2. The Complaint Does Not Seek To Recover for Copyright Claims that Could have Been Brought in the First Case Because they Had not Been Committed. ..................................................................... 6

 B. The Most Recent RICO Predicate is Alleged to Have Occurred Just Prior to the Filing of the Second Amended Complaint. ....................................... 7

III. CONCLUSION. .................................................................................................... 9

Table of Authorities

## CASES

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365 (2d Cir. 1997) ........................... 6

*Curtis v. Citibank, N.A.*, 226 F.3d 133 (2nd Cir. 2000) ........................................................ 6

## STATUTES

Copyright Act, 17 U.S.C. ' 201(e) ........................................................................................ 5

Copyright Act, 17 U.S.C. ' 302(a) ........................................................................................ 5

Hobbs Act ................................................................................................................................ 8

RICO ................................................................................................................................. 5, 7

RULES

Fed. R. Civ. P. 56 .................................................................................................. 7, 8

Fed. R. Civ. P.12(b).................................................................................................. 7

**PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION TO DISMISS**

COMES NOW, Plaintiff Wayne Berry, by and through his undersigned counsel and hereby respectfully submits his Memorandum In Opposition to Motion to Dismiss filed by Defendant C&S Wholesale Grocers, Inc. (AC&S@) on September 6, 2007.

I.   FACTUAL BACKGROUND.

On March 6, 2003, a federal jury in *Wayne Berry v. Fleming Companies, Inc.*, 01-CV-446 SPK LEK (U.S.D.C. Hawaii) handed down its verdict finding Fleming Companies, Inc. (AFleming@) a willful infringer regarding Fleming's creation and use of certain illegal derivatives of one of Mr. Berry's original works, Freight Control System (AFCS@) registered with the United States Copyright Office as TX 5-079-445. Declaration of Timothy J. Hogan (AHogan Dec.@) Exhibit A1.@

Twenty-six days later, and before Mr. Berry could obtain a permanent injunction, on April 1, 2003, Fleming and several of its subsidiaries filed for Chapter 11 Bankruptcy protection in the District of Delaware. Hogan Dec. Exhibit A2.@ The finding of willful infringement in *Wayne Berry v. Fleming Companies, Inc.*, 01-CV-446 SPK LEK (U.S.D.C. Hawaii) has been affirmed by the Court of Appeals for the 9th Circuit on July 25, 2007. Hogan Dec. Exhibit A3.@

On July 22, 2003, Mr. Berry filed *Wayne Berry v. Hawaiian Express Service, Inc.*, CV 03-00385 SOM-LEK (U. S. D. C. Hawaii) (what C&S refers in its Memorandum in Support of Motion as the AHawaii Case@). Hogan Dec. Exhibit A4.@ Neither Fleming nor C&S Wholesale Grocers, Inc. (AC&S) were initially named as parties. The complaint originally sought damages solely against Hawaii Express Service, Inc.

(AHEX@) Fleming's (and C&S's current) west coast freight forwarder for its unlicensed use of the FCS.[1]

On or about August 1, 2003, but after the commencement of the Hawaii Case, Fleming, through the instant Lender defendants' attorneys Kirkland & Ellis,[2] commenced a Delaware adversary proceeding *Fleming Companies, Inc. v. Wayne Berry*, Adv. Proc. No. 03-54809 MFW (Bankr. Del.) seeking, among other relief, a declaratory judgment that Fleming had not engaged in infringement post-petition, and sought an immediate injunction to prevent Mr. Berry from reporting Fleming's infringement to federal law enforcement. The Delaware Bankruptcy court denied the request for an injunction *sua sponte* by Order dated August 8, 2003. Hogan Dec. Exhibit A5.@[3]

After learning the Fleming was attempting a Afirst filed@ strategic filing in Delaware, on August 13, 2003, Mr. Berry amended his complaint in the Hawaii Case prior to the filing of a responsive pleading and named Fleming, C&S the proposed purchaser of Fleming's wholesale operations, and others. *See* Declaration of Lex Smith (ASmith Dec.@) filed in Support of the C&S Motion at Exhibit AB.@ Through the relation-

---

[1] HEX eventually settled and agreed to the entry of a stipulated injunction.

[2] Then representing Fleming as Debtor in Possession in the Fleming Bankruptcy case.

[3] Fleming continued to infringe post-petition. Declaration of Lex Smith, Exhibit AE@page 4 of 4. That finding of post-petition infringement was not appealed.

2

back amendment, Mr. Berry effectively defeated the Fleming's plan to obtain the Afirst filed@ dominant position via the Delaware adversary proceeding that, like the transfer in this case, appeared calculated to increase the cost of the litigation to the individual litigant to the benefit of the publicly traded willful infringer and its lenders.  As a result of Mr. Berry's amendment, Fleming's Delaware Adversary Proceeding was later dismissed in favor of the first filed Hawaii litigation.

On August 23, 2003, well after the filing of the initial complaint in what C&S refers to as the Hawaii Case and after the filing of the First Amended Complaint in the Hawaii Case on August 13, 2003 that named C&S,  Fleming agreed  to indemnify C&S  for C&S' unlicensed Afuture@ use of what the parties referred to as **ABerry Technology.@**  Hogan Dec. Exhibit A6.@   Then, after Fleming and C&S entered into the Berry Technology agreement, at the stoke of midnight on the same day,  the sale of Fleming's assets to C&S closed.   Hogan Dec. Exhibit A7.@[4]  The proceeds of the sale in the amount of $255.8 million were subsequently paid to the instant defendant lenders. Hogan Dec. Exhibit A8.@

---

[4]   This document is available on-line at the Security and Exchange Commission's web site, www.sec.gov.  Mr. Berry request that the Court take judicial notice of this document.

The instant First Amended Complaint alleges that C&S is **currently** using unlicensed Berry Technology in its wholesale operations.  C&S can point to no order or finding that can support its claim that the copyrights to Berry Technology transferred to C&S.  The instant first amended complaint does not seek damages from C&S for any infringements that occurred prior to the filing of any amended complaint in the Hawaii Case in June 2004, and none of the claims in this case could have been brought when the Hawaii Case was commenced against C&S because they relate to alleged infringing acts that had not yet been committed.[5]  More importantly, when Fleming was sued in the first and second cases, it had a license to use the works that are the subject of this case and never contested Mr. Berry's ownership of the copyright to the works that are the subject of this case identified in the instant First Amended Complaint as Prepaid vendor invoice definition for Crystal report.txt TX-5-268-865, SQL export queries, TXu-11-277-726, FCS1993 Terminal Reporting System, version 1.0, TXu-1-302-622, FCS 1993, crystal reports, pallet tags, version 1.0, TXu-1-3-2-623, Crystal report receiving report, version 1.0, Txu-1-302-624, TXu-1-302-625 to Txu-1-302-627; Txu-1-340-295 to 302.  Mr. Berry had no claim against Fleming for infringement at that time.  See Declaration of Wayne Berry filed concurrently at paragraph A1.@ The Court must take as true the factual allegation that C&S is using these works without a license.  No law, doctrine or finding can change the fact that C&S is admitting it is a current willful

---

[5] C&S states in its Memorandum on page 4 that certain of the claims that Plaintiff is pursuing as against C&S relate to it conduct in August 2003 citing paragraph 38 of the instant First Amended Complaint.  The paragraph applies only to Defendant GECC's liability and not to C&S.  *See* Smith Dec. Exhibit AI@ at page 12.

infringer for financial gain of Berry Technology.

As to the claims that Mr. Berry actually brought against C&S in the Hawaii Case, having learned that Fleming, at the time it was named a party in the first case, had exposed his works to a potential customer, C&S, Mr. Berry bought a claim for trade secret misappropriation. The acts related to that conduct had occurred at the time the first Amended Complaint was filed. That claim was dismissed and the dismissal is presently before the Court of Appeals and is not the subject of this case.

II.     DISCUSSION.

    A.     The C&S Motion Must Be Denied Because they Continue to Infringe.

    1.     The First Amended Complaint Alleges C&S is an Infringer for its Current Conduct.

Federal law provides that Mr. Berry retains his copyright in his works until 70 years after his death. Copyright Act, 17 U.S.C. ' 302(a). In addition, Congress has protected the author from any involuntary transfer of a work as follows:

> Involuntary Transfer.C When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, has not previously been transferred voluntarily by that individual author, no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title, except as provided under title 11.

The Copyright Act, 17 U.S.C. ' 201(e).

C&S does not claim to be the owner of the copyright to any Berry Technology and appears to concede that its use constitutes unlicensed use for financial gain. That is all that Mr.

Berry need prove to establish the RICO predicate of criminal copyright infringement. In the instant First Amended Complaint, Mr. Berry seeks an injunction and to recover damages for infringements that occurred from August 15, 2004 to August 15, 2007. C&S has not put forward any evidence, license, proof or legal theory that would excuse its use of Berry Technology during this time nor can it demonstrate that Mr. Berry has ever sued C&S for the conduct that is the subject of the instant First Amended Complaint. Despite attempting to couch Plaintiff's claims as a rehash of the earlier cases, the instant First Amended Complaint seeks only to recover from C&S for infringements that occurred well after the filing of the Second Amended Complaint on June 18, 2004 that occurred within the three years of the Copyright Act's three year statute of limitations foregoing the longer statute that might be available under the RICO Act. Therefore, unless the law requires that a Plaintiff allege claims for acts that have not yet been committed or contrary to federal law, the copyrights to Mr. Berry's works passed involuntarily to C&S, the instant motion must be denied. To the extent that C&S continues to infringe, Mr. Berry could file successive actions on a daily basis for each day of infringing use, until it ceases.

      2.      The Complaint Does Not Seek To Recover for Copyright Claims that Could have Been Brought in the First Case Because they Had not Been Committed.

It is well settled that the claims that are subject to res judicata had to exist at the time the original complaint was filed. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997). When the Hawaii Case was commenced, Fleming had a license to use the works that are the subject of the instant claims against C&S. Declaration of Wayne Berry, & 1. That complaint and the complaint joining Fleming and C&S were both filed prior to the closing of the Fleming sale to C&S. Just because C&S refuses to stop infringing upon the apparent belief that

6

it has an agreement providing it indemnity for its future infringing use, that does not change the fact that C&S is an infringer.  Each time C&S uses the Berry works a new cause of action accrues.

> The acts prohibited, therefore, have occurred continually since 1988, and a new cause of action has, in effect, accrued each day, with the three-year limitations period beginning to run each day that the piece has been displayed. In this regard, the limitations provision operates much like the New York common laws doctrine that continuous or recurring wrongs, such as nuisance or trespass, continually give rise to new causes of action.

*Pavia v. 1120 Ave. of the Americas Associates*, 901 F.Supp. 620, 625 (S.D.N.Y.1995) (citations omitted).

Similarly, the doctrine of res judicata does not excuse ongoing wrongful acts.

> While claim preclusion bars relitigation of the events underlying a previous judgment, it does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit; the crucial date for this purpose is the date the complaint was filed.

*Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2nd Cir. 2000).

C&S can not point to any finding to support a claim that it is the copyright owner of the works that are the subject of this case.  The damages claimed in this case, including C&S' profits for the period of the instant infringement, are necessarily different from the damages for the earlier period and therefore not subject to res judicata.  What C&S needed was the copyrights to Mr. Berry's works.  It can point to nothing in the prior litigation that would support any such finding having been made in the Hawaii Case.

Taken to the logical conclusion, C&S, not the copyright owner, must necessarily take the position that it is free to copy, transfer, create derivative works, recast and otherwise exercise the exclusive rights of the copyright owner regarding Berry Technology.  Should C&S confirm this in its reply brief, it will be clear that Mr. Berry

faces the kind of threat to his work to make an immediate restraining order appropriate and absolutely necessary.

  B.  The Most Recent RICO Predicate is Alleged to Have Occurred Just Prior to the Filing of the Second Amended Complaint.

The Motion doesn't even really try to argue that the RICO claim can be dismissed based on res judicata because the most recent act occurred just days before the First Amended Complaint was filed. The Declaration of Lex Smith should not be considered in ruling on the Fed. R. Civ. P.12(b) motion and, if it is, the Court should convert the motion to a Fed. R. Civ. P. 56 motion for Summary judgment. Mr. Berry must be permitted an opportunity to conduct discovery to have an adequate opportunity to respond to the motion.

Because the factual allegations of the First Amended Complaint must be taken as true, the Court must deny the motion. Even if the Court were to find that the Copyright claims were barred, the allegation that Mr. Berry has been the victim of a Hobbs Act violation must be taken as true. The motion makes no claim that the Hobbs Act predicates are not properly alleged or that they don't make up the basis for a RICO claim. Should the court consider the Declaration of Lex Smith and the transcripts attached in ruling on the Motion it should convert the motion to a motion for summary judgment and afford Mr. Berry an adequate opportunity to rebut it on a record developed under Fed. R. Civ. P. 56. Noteworthy, Mr. Smith's claim to have been simply engaged in asset discovery is on its face rebutted by the fact that he never asked any questions regarding the property's value but focused almost exclusively on location where the property was kept in Mr. Berry's home.

III.  CONCLUSION.

Mr. Berry believes that the motion should be denied. If the Court believes that any part of the Complaint is fatally defective, the Court is respectfully asked to permit an amendment rather than granting a dismissal.

Dated: September 19, 2007

                              Shaked & Posner

By:   */S/Dan Shaked*
      By: Dan Shaked (DS-3331)
      255 W. 36th St., 8th Floor
      New York, NY 10018
      (212) 494-0035

            - and -

Timothy J. Hogan, Esq.
1050 Bishop St., Number 433
Honolulu, HI 96813
(808) 382-3698

Attorneys for Plaintiff
Wayne Berry