# Exhibit
# 8

proceeds of the sale. This is an "unwarranted factual deduction" if ever there was one. *See Clegg*, 18 F.3d at 754-55 (recognizing that the Court need not accept as true unwarranted factual deductions). It is also beside the point.

Regardless of what led to the C&S sale, once it was complete, the sale proceeds were intermingled with the millions of dollars of cash that Fleming's estate held at that time.[12] Hogan Decl., Ex. 11 at 6-7 (Interim Payment Motion) (stating that as of October 10, 2003, Fleming held more than $575.1 million in cash, just $255.8 million of which was obtained through the C&S sale). The Fleming estate held all of this cash for the benefit of creditors, to be paid according to each creditor's adjudicated priority. Defendants, being senior secured creditors, were entitled to be paid first out of this pool of assets pursuant to Bankruptcy Court orders. *Id.* Under the circumstances, Defendants did not receive a direct financial benefit from the infringing activity. The only "benefit" they received came as a result of payments from Fleming's bankruptcy estate, which were made pursuant to Bankruptcy Court orders that Berry did not contest or appeal.[13]

Finally, Berry claims that Defendants had the power to stop the infringement, presumably by cutting off Fleming's loans. Whether or not they had this power (and the Complaint makes no specific allegations that they did), the issue is irrelevant in light of the fact that Defendants did not receive a direct financial benefit from the infringement.[14] Moreover, the Ninth Circuit has held

---

[12] Although it is not material, it is worth noting that C&S purchased all of Fleming's wholesale distribution assets -- not just its Hawai'i or Hawai'i-related assets. Ex. E (Sale Order). Whether or not C&S was more or less interested in the Hawai'i assets as opposed to the other assets is irrelevant. Moreover, as Fleming's other assets were subsequently purchased from C&S by third parties, there is no reason to believe that Fleming could not have sold these assets to a party other than C&S. *Id.*

[13] Berry also cites the Plan's "Exculpation Clause" to argue that he can bring his claims against Defendants. Opp. at 10-11. This is of no import. The issue, again, is not whether he can file claims, but whether he can maintain them.

[14] Additionally, the Bankruptcy Court has already determined that Defendants did not have control over Fleming or its infringement by reason of its loans.

K&E 11954567.6