UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                         :
WAYNE BERRY,                        :
                         :
                 Plaintiff, :
                         :
      - against -               :   No. 07-CV-07634 (RMB) (AJP)
                         :
DEUTSCHE BANK TRUST COMPANY    :
AMERICAS (F.A. BANKERS TRUST      :
COMPANY) AND JP MORGAN CHASE BANK  :
IN THEIR SEPARATE CAPACITIES AND AS :
AGENTS FOR THE PRE AND POST-PETITION :
LENDERS OF FLEMING COMPANIES, INC., :
GENERAL ELECTRIC CAPITAL           :
CORPORATION; C&S WHOLESALE        :
GROCERS, INC., DOES 1-20 TO 200,      :
                         :
               Defendants. :
                         :
------------------------------------------------------------ X

## REPLY BRIEF OF DEFENDANT C&S WHOLESALE GROCERS, INC.
## IN SUPPORT OF MOTION TO DISMISS

Christopher M. Mason
CM-7146
NIXON PEABODY LLP
437 Madison Park Avenue
New York, New York 10022
(212) 940-3000

Attorneys for Defendant
C&S Wholesale Grocers, Inc.

Dated: October 2, 2007

10746867.6

Table of Contents

|  | Page |
|---|---|
| Table of Authorities | ii |
| Preliminary Statement | 1 |
| Argument | 1 |
| Conclusion | 8 |

Table of Authorities

**Cases**   **Pages**

*AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63 (2d Cir. 2003) .................... 5

*B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*, 439 F.3d 653 (10th Cir. 2006) .................... 4 n.3

*Canady v. Allstate Ins. Co.*, 282 F.3d 1005 (8th Cir. 2002) .................... 4

*Celeste Trust Reg. v. CBQ, Inc.*, No. 03-9650 (RMB), 2006 U.S. Dist. LEXIS 50367 (S.D.N.Y. July 21, 2006) .................... 5

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365 (2d Cir. 1997), *cert denied*, 523 U.S. 1106 (1998) .................... 3 n.2

*Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000) .................... 5 n.4

*Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173 (3d Cir. 2002), *cert. denied*, 532 U.S. 1038 (2001) .................... 6 n.6

*Hall v. Tressic*, 381 F. Supp. 2d 101 (N.D.N.Y. 2005) .................... 6, 7

*L-TEC Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85 (2d Cir. 1999) .................... 5

*Monahan v. New York City Dep't of Corr.*, 214 F.3d 275 (2d Cir. 2000) .................... 3

*Pavia v. 1120 Ave. of the Americas Assocs.*, 901 F. Supp. 620 (S.D.N.Y. 1995) .................... 5 n.4

*Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1 (1st Cir. 1983) .................... 4 n.3

| Cases | Pages |
| --- | --- |
| *Ramallo Bros. Printing, Inc. v. El Dia, Inc.*, 490 F.3d 86 (1st Cir. 2007) | 4 n.3 |
| *Ruple v. Vermillion*, 714 F.2d 860 (8th Cir. 1999) | 3 |
| *Weizmann Inst. of Sci. v. Neschis*, 421 F. Supp. 2d 654 (S.D.N.Y. 2005) | 4 n.3 |
| *Williams v. United States Dep't of Educ.*, No. 03 Civ. 4165 (RMB)(THK), 2004 U.S. Dist. LEXIS 5064 (S.D.N.Y. March 26, 2004) | 3 n.2 |

**Statutes and Rules**

| | |
| --- | --- |
| 18 U.S.C.A. § 1951 (West 2007) | 6 |

Defendant C&S Wholesale Grocers, Inc. ("C&S") respectfully submits this reply memorandum of law in support of its motion to dismiss on grounds of *res judicata*.

Preliminary Statement

In its opening brief, C&S demonstrated that the Hawaii Case brought by Plaintiff arose out of, and depends on, the same basic factual allegations as Plaintiff's current claims against C&S.[1]  Nothing in Plaintiff Wayne Berry's Brief in Opposition to Defendant C&S Wholesale Grocers, Inc.'s Motion To Dismiss ("Plaintiff's Br.")—not his contradictory factual assertions, not his unsupported argument that *res judicata* cannot bar claims based on continuing conduct, and not the cases he cites on other issues—can change this.  Accordingly, the decision of the United States District Court for the District of Hawaii and its 2006 final judgment on the merits against Plaintiff and in favor of C&S still require dismissal of the current First Amended Complaint (New York) against C&S.

Argument

In the Hawaii Case, Plaintiff alleged that C&S began infringing his copyright and trade secret rights in 2003 when C&S acquired certain assets from the Fleming Companies, Inc. ("Fleming").  *See, e.g.,* Second Amended Complaint (Hawaii) ¶¶ 7 (C&S "has . . . stepped into the shoes of Fleming . . . in full knowledge that such operation constitutes willful copyright infringement."), 57 ("After April 1, 2003, . . . C&S . . . ha[s] used an illegal derivative of Mr. Berry's software without any right."), 103 (Plaintiff's "programs were illegally transferred to C&S when it became the owner and operator of the Fleming-Logistics Department").  Plaintiff also alleged that, unless the court in Hawaii decided in his favor, the infringements would

---

[1] Unless otherwise noted, capitalized terms have the same meanings as in the opening Brief of Defendant C&S Wholesale Grocers, Inc. in Support of Motion To Dismiss.

continue into the future, with each use by C&S of its supposedly infringing assets constituting a new violation. *See, e.g.,* Second Amended Complaint (Hawaii) ¶¶ 46 ("C&S ha[s], and through future infringement will, . . . continue to derive revenue from" its infringement), 135 ("Each time the C&S system pirated version of the Berry software is used, another predicate offense [of willful infringement] occurs.").

The court in Hawaii decided against Plaintiff and in favor of C&S in all respects, giving C&S "a total victory on all of Plaintiff's claims." Declaration of Lex R. Smith ("Smith Dec.") Ex. F, at 17 (Magistrate Judge's report); *accord* Smith Dec. Exs. D (decision and order), E (final judgment). This means that the court in Hawaii not only decided that C&S had not infringed in the past, but that its continued activity would not—despite Plaintiff's allegations to the contrary—constitute infringement in the future.

In his new lawsuit, Plaintiff once again alleges that the infringement of his rights by C&S began in 2003 and continues into the future. *See* First Amended Complaint (New York) ¶ 38. ("Starting in August of 2003 GECC . . . began to support C&S and Core-Mark in *their acts of infringement that continue as of this date.*") (emphasis added). He once again argues that this infringement derives from the acquisition by C&S of assets from Fleming: *See, e.g.,* Plaintiff's Br. at 3 ("On August 23, 2003 . . . at the stroke of midnight . . . the sale of Fleming's assets to C&S closed"); *see also* First Amended Complaint (New York) ¶ 38. And he once again alleges that each time the "pirated copies of Mr. Berry's software" are used, "the infringement continues." First Amended Complaint (New York) ¶ 44; *accord* Plaintiff's Br. at 7. Thus, while Plaintiff has tried to change the words of his prior pleadings, the substance of his claims against

C&S remains the same: that assets it acquired from Fleming have infringed and will in the future infringe Plaintiff's rights.[2]

The complete rejection of these claims by the court in Hawaii would seem to end the discussion. Because he has had "one fair chance to present the substance of his . . . case", *Ruple v. Vermillion*, 714 F.2d 860, 861 (8th Cir. 1999), the "total victory" of C&S should preclude Plaintiff from making any such claims again, *see, e.g., Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2nd Cir. 2000). In an attempt to avoid this result, however, Plaintiff now proposes that his current allegation that C&S has infringed his rights since August of 2003 "applies only to Defendant GECC's liability and not to C&S", Plaintiff's Br. at 4 n.5, and that "[t]he damages claimed in this case, including C&S' profits for the period of the instant infringement, are [therefore] necessarily different from the damages for the earlier period", Plaintiff's Br. at 7.

---

[2] Plaintiff cites *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365 (2d Cir. 1997), *cert denied,* 523 U.S. 1106 (1998), for the proposition that "claims that are subject to res judicata had to exist at the time the original complaint was filed." Plaintiff's Br. at 6. As the comparison of Plaintiff's various complaints indicates, his claims today did exist in his prior lawsuit. In addition, the *Computer Associates* opinion is not really on point. The question in that case was whether a judgment of non-infringement in the United States under United States law barred a later lawsuit for infringement in France under French law. *See id.* at 368. The Second Circuit found no bar to the later action for two reasons. First, no United States court had jurisdiction over some of the parties in France, so the French claims were not ones that "could have been raised" in the prior United States lawsuit. *Id.* at 370-71; *cf., e.g., Williams v. United States Dep't of Educ.*, No. 03 Civ. 4165 (RMB)(THK), 2004 U.S. Dist. LEXIS 5064, at *7 (S.D.N.Y. March 26, 2004) ("a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been raised* in that action.") (citation omitted) (emphasis added). Second, "the infringing conduct which formed the basis of the French action occurred after the filing of the United States action", 126 F.3d at 371—more specifically, there was no indication that the infringing computer program at issue was even in France at the time of the United States lawsuit, *id.* at 369-70. Here, in contrast, the court in Hawaii had jurisdiction over all the relevant parties and there is no question that the supposedly infringing assets bought by C&S were in existence in this country at the time.

Were Plaintiff correct that, simply by alleging a different damages period, an otherwise identical lawsuit is "therefore not subject to *res judicata*", Plaintiff's Br. at 7, there would be nothing left of the doctrines of claim and issue preclusion.[3] Almost by definition, claim preclusion bars *subsequent* claims, and *subsequent* claims necessarily have a different damages period than the period of a prior, concluded case. But under Plaintiff's theory, a party could apparently file endless lawsuits repeatedly asserting the same claims, based on the same ultimate issues, against the same defendant, as long as each complaint limited its timeframe to the period after the last suit was lost.

In fact, Plaintiff makes exactly this argument when he asserts that "Mr. Berry could file successive actions on a daily basis for each day of infringing use, until it ceases." Plaintiff's Br. at 6. What Plaintiff does not do is cite any authority for this proposition, because it is not correct. As one court has said about arguments attempting to avoid *res judicata* by alleging different time frames, for example, "[w]e find this argument unpersuasive. The difference in time periods does not affect the underlying nature of the claims at issue, and therefore the difference in time periods is irrelevant in determining whether the issues were

---

[3] Collateral estoppel or issue preclusion precludes *forever* relitigation of any ultimate issue (such as, in this case, infringement of Plaintiff's rights by the assets C&S acquired) actually decided in a prior case. *See generally, e.g., Weizmann Inst. of Sci. v. Neschis,* 421 F. Supp. 2d 654, 675-76 (S.D.N.Y. 2005). Thus, to the extent that Plaintiff now or in the future tries to recharacterize his claims (despite having identified them, in both this case and the Hawaii Case, as infringement and RICO claims), issue preclusion will defeat his arguments. *See, e.g., Ramallo Bros. Printing, Inc. v. El Dia, Inc.,* 490 F.3d 86, 91 (1st Cir. 2007) ("we have held in the past that a plaintiff cannot avoid the bar of collateral estoppel simply by suing a defendant for continuing the same conduct that was found to be lawful in a previous suit . . . ."); *B-S Steel of Kansas, Inc. v. Texas Indus., Inc.,* 439 F.3d 653, 663 (10th Cir. 2006) ("a different time period alone does not necessarily preclude application of collateral estoppel. *See Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1, 2 (1st Cir. 1983) (applying collateral estoppel in a false advertising case based on advertisements published after 1980 where the prior case involved nearly identical advertisements published prior to 1980).").

identical." *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1017 (8th Cir. 2002).[4] Indeed, as this Court has held, one of the primary reasons for the doctrine of *res judicata* is to prevent "repetitive actions in different courts *or at different times*." *Celeste Trust Reg. v. CBQ, Inc.*, No. 03-9650 (RMB), 2006 U.S. Dist. LEXIS 50367, at *17 (S.D.N.Y. July 21, 2006) (emphasis added) (citing *AmBase Corp. v. City Investing Co. Liquidating Trust,* 326 F.3d 63, 73 (2d Cir. 2003), and *L-TEC Elecs. Corp. v. Cougar Elec. Org., Inc.,* 198 F.3d 85, 87-88 (2d Cir. 1999)).

Plaintiff also fails to note that, in his prior lawsuit, he did not limit his claims to the past, but *expressly* alleged that the actions of C&S would constitute infringements of his rights in the future. *E.g.,* Second Amended Complaint (Hawaii) ¶¶ 46, 135. Thus, even if *res judicata* were not otherwise intended to reach the issue of different time periods, here Plaintiff intentionally put the future at issue in his Hawaii Case.

Plaintiff cannot somehow hide one of the most obvious common nuclei of operative fact in his claims against C&S—the supposedly infringing assets C&S acquired from

---

[4] The *Pavia* and *Curtis* cases cited by Plaintiff are not to the contrary. Plaintiff cites *Pavia v. 1120 Ave. of the Americas Assocs.*, 901 F. Supp. 620, 625 (S.D.N.Y. 1995), for the proposition that a new cause of action arises every day an alleged infringement occurs or continues. *See* Plaintiff's Br. at 7. But *Pavia* has nothing to do with claim or issue preclusion. It announces a rule for determining when a statute of limitations runs for a New York common law nuisance cause of action. *Id.* Nowhere in the decision is there any indication that if a plaintiff litigated a nuisance complaint and lost, that plaintiff would not be barred from attempting to relitigate the same nuisance the next day. Similarly, Plaintiff cites *Curtis v. Citibank, N.A.,* 226 F.3d 133, 139 (2d Cir. 2000), for the proposition that events arising after the filing of a complaint can give rise to a new lawsuit. As the circumstances of *Curtis* indicate, however, Plaintiff has overreached with this argument. In *Curtis* the plaintiffs sued for race discrimination based on an e-mail containing objectionable racial humor. *Id.* at 136. The same plaintiffs (after having been refused leave to amend) later sued the same employer for retaliation and constructive discharge in a second lawsuit. *Id.* at 140. The court allowed the latter claims—but not others also brought in the second lawsuit—because the retaliation and constructive discharge claims were not based on the facts giving rise to the claim of discrimination, but on the employer's later reactions. *Id.* at 141. Here, Plaintiff's current claims are all based on the same allegedly infringing assets and their use by C&S beginning in 2003.

Fleming—by focusing on his own relationship with Fleming, either. To the contrary, his discussion of how he obtained a verdict against Fleming in 2003, Plaintiff's Br. at 1, or litigated with some success against Fleming in the United States Bankruptcy Court for the District of Delaware, Plaintiff's Br. at 2-3, or supposedly granted Fleming a free license authorizing it to use his intellectual property, Plaintiff's Br. at 4, 6, simply underscore the continuing similarity of his old claims against C&S based on the assets it purchased from Fleming and his current claims against C&S based on those same assets.

Finally, Plaintiff cannot avoid dismissal by arguing that his RICO claim now alleges a new predicate act. *See* Plaintiff's Br. at 8. The court in Hawaii awarded attorneys' fees to C&S for defeating Plaintiff. *See* Smith Dec. Exs. F, G. It then ordered Plaintiff to submit to a judgment debtor examination. Among the few things of value Plaintiff identified during that examination were three firearms. Smith Dec. Ex. J at 54. Hawaiian counsel for C&S asked Plaintiff where he bought those guns and where he kept them, *see* Smith Dec. Ex. J at 54—all legitimate questions of which this Court may take judicial notice as part of its own proceedings.[5] Plaintiff's allegations about those questions therefore are not "allegations . . . that demonstrate robbery, extortion, or threats of violence on the part of the defendants" under the Hobbs Act, 18 U.S.C.A. § 1951 (West 2007), and this Court is entitled to decide as much. *E.g., Hall v. Tressic*, 381 F. Supp. 2d 101, 108 (N.D.N.Y. 2005).[6]

---

[5] Even if "asking repeated irrelevant questions" about a party's "ability to protect himself with licensed firearms, from criminal assault", First Amended Complaint (New York) ¶ 49, could be a sufficient allegation of violation of the Hobbs Act, C&S's counsel never asked such questions. The supposed statements about "criminal assault" were made by Plaintiff's counsel, not C&S's counsel. *See* Smith Dec. Ex. J.

[6] Counsel for C&S was entitled by law to ask questions about Plaintiff's assets—another fact refuting any Hobbs Act or RICO claim by Plaintiff. *See, e.g., Doug Grant, Inc. v. Greate*

This one new supposed predicate act also could not, by itself, be a RICO violation, *see, e.g., Hall,* 381 F. Supp. 2d at 107 (RICO requires "two or more predicate acts") (citations omitted), and all the other claimed predicate acts in Plaintiff's current pleading are based on the same theories advanced in the Hawaii Case. He concedes today, for example, that the "predicate acts that first gave rise to liability in RICO involve acts of Criminal Copyright Infringement" through the "booting up of computers that load, without any license, pirated copies of Mr. Berry's software each day the infringement continues." First Amended Complaint (New York) ¶ 44. This is what he alleged in the Hawaii Case as well. *See* Second Amended Complaint (Hawaii) ¶ 135 ("Each time the C&S system pirated version of the Berry software is used, another predicate offense [of willful infringement] occurs."). In short, like his other claims, Plaintiff had a full and fair opportunity to purse a RICO theory in the Hawaii Case, and that claim cannot be revived by alleging a single new supposedly wrongful act, particularly not one refuted by the record in the case itself.

---

*Bay Casino Corp.,* 232 F.3d 173, 184-86 (3d Cir. 2002) (no violation of RICO or Hobbs Act where casino's actions permitted by law), *cert. denied,* 532 U.S. 1038 (2001).

<u>Conclusion</u>

For the reasons stated above and in C&S's opening brief, this Court should dismiss Plaintiff's claims against C&S with prejudice and with costs and fees in favor of C&S.

Dated: October 2, 2007

                  NIXON PEABODY LLP

By: _____
        Christopher M. Mason
        CM-7146

437 Madison Avenue
New York, New York 10022
(212) 940-3000

Attorneys for Defendant
C&S Wholesale Grocers, Inc.