UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

WAYNE BERRY,

                 Plaintiff,

           -against-

DEUTSCHE BANK TRUST COMPANY
AMERICAS (F/K/A BANKERS TRUST
COMPANY) AND JP MORGAN CHASE BANK IN
THEIR SEPARATE CAPACITIES AND AS
AGENTS FOR THE PRE AND POST-PETITION
LENDERS OF FLEMING COMPANIES, INC.;
GENERAL ELECTRIC CAPITAL CORPORATION;
C&S WHOLESALE GROCERS, INC.; THE POST-
CONFIRMATION TRUST OF FLEMING
COMPANIES, INC.; ROBERT KORS; CORE-
MARK HOLDINGS INC.; AND DOES 1-200,

                 Defendants.

------------------------------------- x

    :   Index No. 07-CV-7634 (Judge
    :   William H. Pauley III)
    :
    :   ECF Case

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT GENERAL ELECTRIC CAPITAL CORPORATION'S
## MOTION TO DISMISS

LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
321 West 44th Street, Suite 510
New York, NY 10036
(212) 850-6100
Robert Penchina
*Attorneys for Defendant General Electric Capital
Corporation*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION .......................................................................................................................1

STATEMENT OF PLEADED FACTS ........................................................................................2

STANDARD OF REVIEW ..........................................................................................................6

ARGUMENT ................................................................................................................................8

I.  BERRY'S CLAIM FOR CONTRIBUTORY OR VICARIOUS
    LIABILITY FAILS TO STATE ANY PLAUSIBLE BASIS FOR RELIEF
    AGAINST GECC ..............................................................................................................8

    A.  Berry Did Not and Cannot Plead the Elements Needed to Establish
        Secondary Liability ................................................................................................8

        1.  Berry Does Not Allege GECC Had Any Knowledge of the
            Alleged Infringement .............................................................................10

        2.  GECC Did Not Substantially Participate in the Alleged
            Direct Infringement ...............................................................................11

        3.  GECC Did Not Have an Obvious and Direct Financial
            Interest in Any Infringement .................................................................12

    B.  Berry Did Not Establish a Primary Infringement Required to
        Support Secondary Liability .................................................................................13

II. BERRY'S UNJUST ENRICHMENT CLAIM IS PREEMPTED BY THE
    COPYRIGHT ACT ...........................................................................................................17

III. BERRY'S RICO CLAIM FAILS FOR LACK OF ANY PLAUSIBLE
    ALLEGATION OF A PATTERN OF RACKETEERING ACTIVITY ............................20

CONCLUSION ...........................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ...............................6

*Artists Music Inc. v. Reed Publishing (USA), Inc.*, 31 U.S.P.Q. 2d 1623, 1994 WL
 191643 (S.D.N.Y. May 17, 1994)...................................................................................10

*Association of American Medical Colleges v. Mikaelian*, Civ. A. No. 83-2745, 1986 WL
 332 (E.D. Pa. Mar. 18, 1986)........................................................................................21

*Auscape International v. National Geographic Society*, 409 F. Supp. 2d 235 (S.D.N.Y.
 2004) ....................................................................................................................13, 14

*Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S. Ct. 1955 (2007).................................................6

*Berry v. Hawaiian Express Service, Inc.*, Civ. No. 03-00385, 2006 WL 4102120 (D.
 Haw. Oct. 25, 2006)....................................................................................3, 11, 14

*Bespaq Corp. v. Haoshen Trading Co.*, No. C 04-3698, 2005 WL 14841 (N.D. Cal. Jan.
 3, 2005) ...............................................................................................................15

*Blue Tree Hotels Investment (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide,
 Inc.*, 369 F.3d 212 (2d Cir. 2004) ...........................................................................3

*Bonito Boats Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989)...........................................17

*Breakthrough Management Group, Inc. v. Chukchansi Gold Casino & Resort*, Civ. A.
 No. 06-CV-01596, 2007 WL 2701995 (D. Co. Sept. 12, 2007).......................................23, 24

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004).........................18, 19

*Brought to Life Music, Inc. v. MCA Records, Inc.*, 65 U.S.P.Q. 2d 1954, 2003 WL
 296561 (S.D.N.Y. Feb. 11, 2003) .............................................................................. 7-9

*Cole v. Allen*, 3 F.R.D. 236 (S.D.N.Y. 1942) ...............................................................................15

*Computer Associates International, Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992)) .................18

*Del Madera Properties v. Rhodes & Gardner*, 820 F.2d 973 (9th Cir. 1987), *overruled on
 other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)................................................19

*Demetriades v. Kaufmann*, 690 F. Supp. 289 (S.D.N.Y. 1988)................................................. 8-12

*Felix the Cat Products, Inc. v. California Clock Co.*, 04 Civ. 5714, 2007 WL 1032267
    (S.D.N.Y. Mar. 30, 2007) ............................................................................................15

*First Capital Asset Management v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004)............... 22-24

*Flynn v. Health Advocate, Inc.*, No. Civ. A 03-3764, 2004 WL 51929 (E.D. Pa. Jan. 13,
    2004) ......................................................................................................................14, 15

*Gee v. CBS, Inc.*, 471 F. Supp. 600 (E.D. Pa.), *aff'd*, 612 F.2d 572 (3d Cir. 1979)......................15

*Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159 (2d
    Cir. 1971) ......................................................................................................................8

*Gregory v. Daly*, 243 F.3d 687 (2d Cir. 2001) ..............................................................................3

*Hayden v. County of Nassau*, 180 F.3d 42 (2d Cir. 1999)..............................................................3

*H.J. Inc. v. Northwestern Bell Telegraph Co.*, 492 U.S. 229 (1989)............................................20

*Home & Nature Inc. v. Sherman Specialty Co.*, 322 F. Supp. 2d 260 (E.D.N.Y. 2004) ...............15

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) .................................................................................6

*Jones v. Ocwen Federal Bank*, 147 F. Supp. 2d 219 (S.D.N.Y. 2001)...........................................3

*Jordan (Bermuda) Investment Co. v. Hunter Green Investments Ltd.*, 154 F. Supp. 2d 682
    (S.D.N.Y. 2001)............................................................................................................20

*Kowal v. MCI Communications Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) ..........................................3

*Kwan v. Schlein*, 441 F. Supp. 2d 491 (S.D.N.Y. 2006)................................................................7

*Livnat v. Lavi*, Case No. 96-Civ-4967, 1998 WL 43221 (S.D.N.Y. Feb. 2, 1998)) ........................9

*Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225 (S.D.N.Y. 2000)..............................................16

*Matthew Bender & Co. v. West Publishing Co.*, 158 F.3d 693 (2d Cir. 1998)..........................8, 13

*Metropolitan-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005).............8, 9, 11

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5 (2d Cir. 1983)...................................................7, 20, 22

*National Basketball Association v. Motorola, Inc.*, 105 F.3d 841 (2d Cir. 1997).........................18

*Papasan v. Allain*, 478 U.S. 265 (1986) .......................................................................................3

*Perfect 10, Inc. v. Visa International Service Association*, 494 F.3d 788 (9th Cir. 2007) ..............9

*Plunket v. Doyle*, No. 99 Civ. 1106, 2001 WL 175252 (S.D.N.Y. Feb. 22, 2001)........................15

*Powers v. British Vita, P.L.C.*, 57 F.3d 176 (2d Cir. 1995)............................................................22

*Quiroga v. Fall River Music, Inc.*, Case No. 93-Civ-3914, 1998 WL 851574 (S.D.N.Y. Dec. 7, 1998)....................................................................................................................................9

*Roberts v. Keith*, Case No. 04-Civ-10079, 2006 WL 547252 (S.D.N.Y. Mar. 7, 2006) ...............13

*Semerdjian v. McDougal Littell*, No. 07 Civ. 7496, 2008 WL 110942 (S.D.N.Y. Jan. 2, 2008) ......................................................................................................................................6

*Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304 (2d Cir. 1963) ..................9, 10, 12, 13

*Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.*, 118 F.3d 955 (2d Cir. 1997) ......................................................................................................................................9

*Stone v. Williams*, 970 F.2d 1043 (2d Cir. 1992).........................................................................13

*Summit Machine Tool Manufacturing Corp. v. Victor CNC Systems, Inc.*, 7 F.3d 1434 (9th Cir. 1993)...........................................................................................................................17

*Tenamee v. Schmukler*, 438 F. Supp. 2d 438 (S.D.N.Y. 2006) ....................................................20

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) ....................................................................................14

*United States v. International Longshoremen's Association*, 518 F. Supp. 2d 422 (E.D.N.Y. 2007).............................................................................................................6, 7, 20

*Vasquez v. Torres-Negron*, Case No. 06-Civ-619, 2007 WL 2244784 (S.D.N.Y. July 11, 2007) ....................................................................................................................................14

*Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.*, 210 F. Supp. 2d 552 (D. N.J. 2002)................................................................................................................................18, 19

*Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458 (S.D.N.Y. 1999) ............................................7

*World Wrestling Entertainment, Inc. v. Jakks Pac., Inc.*, -- F. Supp. 2d --, 2007 WL 4623027 (S.D.N.Y. Dec. 21, 2007)................................................................................6, 20, 21

*Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022 (N.D. Cal. 2003) ....................................19

## STATUTES

Fed. R. Civ. P. 12(b)(6) ................................................................................................1

17 U.S.C. § 106 ...................................................................................................18, 19

17 U.S.C. § 301(a) ...........................................................................................2, 17, 18

17 U.S.C. § 506(a)(1) ...................................................................................................21

17 U.S.C. § 507(b) ........................................................................................................13

18 U.S.C. § 2319 ..........................................................................................................21

## MISCELLANEOUS

2 Paul Goldstein, *Copyright* § 6.0 (1996) ...................................................................13

4 *Nimmer on Copyright* § 15.01[A][2] ......................................................................21

Defendant General Electric Capital Corporation ("GECC") hereby respectfully submits this memorandum of law in support of its motion to dismiss the claims against GECC in the plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## INTRODUCTION

This case is the latest in an ongoing campaign of litigation brought by plaintiff Wayne Berry against an ever expanding universe of defendants on which he has set his sights. In each of the cases, Berry's claims derive from his assertion that "[c]ommencing sometime in or about January 2000," a company to which he licensed software exceeded the scope of its license and thereby infringed his copyright. Berry has made this claim in two prior cases in Hawaii, a case in Delaware, and now here, each time adding defendants further and further afield, culminating in this case against seven named defendants plus 200 unknown "Doe" defendants. Berry now repeats his earlier claims, and adds new claims apparently based upon his version of supposed conduct of participants in the prior litigations.

GECC was not a party to or involved in any of the prior litigations and is a stranger to Berry. Nevertheless, this time Berry has included GECC among the array of defendants from which he seeks to collect undue damages. However, Berry himself concedes in his now third complaint that GECC essentially was a bystander—its role "was limited to being one of the dozens of participating lenders" to companies that transacted with Berry. Nonetheless, inexplicably, Berry has attempted to plead three claims against GECC—secondary copyright infringement (Claim II), unjust enrichment (Claim IV), and a Section 1962(c) RICO violation

---

[1] Separately from GECC, other defendants in this case are scheduled to submit today their own motions directed at the Second Amended Complaint. GECC hereby adopts and joins in the arguments made in those other motions to the extent such arguments are applicable to GECC's circumstances.

(Claim XII). None of these claims, however, states a basis upon which relief may be granted. Berry's copyright infringement claim against GECC not only is implausible on its face but fails to meet the standards for either contributory or vicarious liability in this circuit. Berry's unjust enrichment claim is barred by the preemption provision of the Copyright Act, 17 U.S.C. § 301(a). And, Berry's RICO claim is barred by his failure to adequately allege the elements of a civil RICO cause of action, notably lacking a sufficient pattern of RICO predicate acts by GECC such that GECC may be said to have harmed Berry through its "racketeering activity." GECC should be dismissed with prejudice and judgment should be entered in GECC's favor.

### STATEMENT OF PLEADED FACTS

The following facts are alleged in the Second Amended Complaint and are accepted as true solely for the purposes of this motion. GECC does not accept legal conclusions in the Second Amended Complaint as true.

Berry is "an independent software developer" who, in 1999 or earlier, licensed the Fleming Companies ("Fleming") to use and modify Berry-created software in connection with its business. (Second Amended Complaint ("SAM") ¶¶ 1, 26, 29). "Commencing sometime in or about January 2000" and continuing to "June 9, 2003," Fleming allegedly "committed . . . repeated acts of copyright infringement" of Berry's software, and "Berry obtained information evidencing" this activity "in 2000." (*Id.* ¶¶ 35, 43). On April 1, 2003, "Fleming filed for Bankruptcy protection." (*Id.* ¶ 63). Although alleging elsewhere in his complaint that Fleming was an infringer (and that GECC among others somehow is contributorily or vicariously liable for that infringement), Berry concedes that "Fleming *was a permitted user of* the FCS subsidiary *works that are the subject of this case* and Mr. Berry could not have lawfully brought an infringement claim against Fleming at that time." (*Id.* ¶ 72 (emphasis added); *see id.* ¶ 76 ("Fleming was a permitted albeit unwelcome user.")).

Defendant C&S Wholesale Grocers, Inc. ("C&S") is "in the business of ocean freight logistics" and is a "wholesale grocery distributor." (*Id.* ¶¶ 8-9). At some time after Fleming sought bankruptcy protection, Fleming and C&S entered into "the Fleming-C&S Asset Purchase Agreement" pursuant to which C&S obtained various assets of Fleming. (*Id.* ¶ 38). "[N]o later than September 2005," C&S allegedly made "daily copies" of unspecified "Berry Technology." (*Id.* ¶ 139). In 2003, in a case captioned *Wayne Berry v. Hawaiian Express Service, Inc.*, Civ. No. 03-00385 (D. Haw.), Berry brought copyright infringement claims against C&S, among others, asserting that the same works at issue here had been infringed by C&S. (*Id.* ¶ 40). The court not only found that no infringement had been committed by C&S, but awarded C&S its costs and attorney fees because Berry's claims were "objectively unreasonable based on the facts of the case and the applicable law." *Berry v. Hawaiian Express Serv., Inc.*, Civ. No. 03-00385, 2006 WL 4102120, at *11 (D. Haw. Oct. 25, 2006).[2]

Defendant Core-Mark Holdings ("Core-Mark") "transacts business in several states" and is a "wholesale distributor of cigarettes in Hawaii." (SAM ¶ 7). Although Core-Mark's name is sprinkled throughout Berry's 70-plus page Second Amended Complaint, no specific acts of infringement allegedly undertaken by Core-Mark are identified. Rather, the Second Amended

---

[2] In deciding a motion to dismiss, the Court may take judicial notice of and consider public records and pleadings from prior proceedings. *E.g., Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004). Beyond that, the Court "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). The Court "must accept as true all of the factual allegations [of the] complaint." *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001). But, conclusory allegations that "fail to give notice of the basic events and circumstances of which the plaintiff complains" are insufficient. *Jones v. Ocwen Fed. Bank*, 147 F. Supp. 2d 219, 224 (S.D.N.Y. 2001). Moreover, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Complaint simply states in conclusory fashion that upon information and belief Core-Mark made use of unspecified "Berry Technology" because "copies" of unnamed Berry works "are loaded in random access memory of computer owned and operated by C&S and Core-Mark." (*Id.* ¶ 139). In addition, the Second Amended Complaint asserts that, in connection with the marketing of Core-Mark securities, Core-Mark identified in its registration statements that it held an interest in "a 'proprietary logistics system,'" and Berry surmises, "[u]pon information and belief," that the disclosed system identified in the filings "is a copy of or derived from the Berry FCS . . . or contains protectable elements of the Berry work." (*Id.* ¶¶ 112-13, 130). The Second Amended Complaint does not state that this work actually was ever reproduced, distributed or otherwise used.

GECC was "a pre-bankruptcy lender to the former Fleming Companies" and a lender to C&S and Core-Mark. (*Id.* ¶ 5). For a time, GECC was "lead arranger for the Core-Mark loans." (*Id.* ¶ 111). GECC lost the role of lead arranger to JP Morgan Chase Bank in or about October 2005. (*Id.* ¶ 122). GECC has never had a relationship with Berry and has never used any of Berry's copyrighted works. Berry concedes that "GECC's role in Fleming related matters was limited to being one of the dozens of participating lenders in the Fleming and later Core-Mark loan facilities." (*Id.* ¶ 107). Prior to this case, GECC has never been involved in litigation with Berry, nor in any of the conduct Berry asserts took place in connection with prior litigations which he implausibly contends give rise to claims in this action.

Essentially, Berry's assertions against GECC are that GECC became a wrongdoer because GECC was a lender to entities with whom Berry had disputes, Berry wrote a letter to GECC, and GECC did not take actions with respect to its borrowers or respond to Berry's letter in the way Berry wanted. (*Id.* ¶¶ 114, 121, 124). Thus, Berry contends that on November 4,

2005, his counsel wrote to GECC's indirect parent company and put that entity on notice that Berry had claims of copyright infringement by both Core-Mark and C&S. (*See id.* ¶ 114). By Berry's own admission, his November 2005 letter is the first occasion upon which GECC allegedly received any knowledge of the purported infringement by the entities to whom GECC had extended credit. Thus, these allegations make clear–despite Berry's loose use of the term "the Lenders" throughout the complaint–that his contentions concerning GECC relate exclusively to the events *after* GECC had participated in the bridge financing for Fleming in 2003, and *after* GECC had initiated the credit facility for Core-Mark in 2004. Thus, Berry's own pleadings make clear that as of the time GECC originally agreed to extend financial support to either Fleming or C&S and Core-Mark, *i.e.*, the alleged direct infringers in this action, GECC had *no knowledge* of Berry's claim of infringement.[3] (*See id.* ¶ 115).

Beyond GECC's refusal to terminate its involvement in the Core-Mark credit facility after having received Berry's November 2005 notice letter, Berry has not articulated what GECC purportedly has done to participate in any alleged infringement by Core-Mark or C&S. (*See id.* ¶ 125). Nor, for that matter, is there any specific allegation that GECC in particular has any power to control the purportedly infringing conduct by either Core-Mark or C&S. There is no specific allegation that GECC in particular has supervised the allegedly infringing activity by Core-Mark or C&S. Nor is there any specific allegation that GECC took steps to facilitate the allegedly

---

[3] Although the Second Amended Complaint contains several allegations concerning GECC's participation in a credit facility for Core-Mark, (*see* SAM ¶¶ 110, 111, 115, 119, 122), there is no parallel set of allegations concerning any involvement by GECC in a credit facility for C&S. The only allegation of a connection between GECC and C&S occurs in Paragraph 125, where the plaintiff asserts that GECC "continues to provide financial support to Core-Mark and C&S." (*Id.* ¶ 125). This contention fails to provide any basis for understanding what, how, when, or why GECC is allegedly providing such support. As a result, the Second Amended

*Continued on following page* . . . .

infringing activity by Core-Mark and C&S. There is also no specific allegation that GECC made any statements or offered any benefits specifically to induce Core-Mark or C&S to infringe Berry's copyrighted works. There is simply no specific allegation that GECC did anything other than comply with its contractual obligations for the Core-Mark credit facility that already had been created. GECC simply was a lender.

## STANDARD OF REVIEW

Dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is proper where Berry fails to make factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S. Ct. 1955, 1965 (2007); *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (concluding that the *Bell Atlantic* decision imposes a "plausibility standard" which "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible"); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 458-59 (E.D.N.Y. 2007) (herein, "*ILA*").[4] Courts have not hesitated to grant such motions on the grounds that a copyright plaintiff's claims are barred for failure to adequately allege contributory or vicarious liability, or that a RICO plaintiff has failed to adequate allege a RICO "enterprise" or cognizable predicate

---

*Continued from previous page . . . .*

Complaint is devoid of a sufficient basis for finding any actionable connection between GECC and C&S.

[4] Although *Bell Atlantic* was an antitrust case, courts in this district have applied its principles to claims sounding in copyright and RICO. *See, e.g., Semerdjian v. McDougal Littell*, No. 07 Civ. 7496, 2008 WL 110942, at *2 (S.D.N.Y. Jan. 2, 2008) (copyright and fraud claims); *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, -- F. Supp. 2d --, 2007 WL 4623027, at *4 (S.D.N.Y. Dec. 21, 2007) (RICO claims).

acts. *See, e.g.*, *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 19 (2d Cir. 1983); *ILA*, 519 F. Supp 2d at 475-77; *Kwan v. Schlein*, 441 F. Supp 2d 491, 499 (S.D.N.Y. 2006); *Brought to Life Music, Inc. v. MCA Records, Inc.*, 65 U.S.P.Q.2d 1954, 2003 WL 296561, at *2 (S.D.N.Y. Feb. 11, 2003); *Weber v. Geffen Records, Inc.*, 63 F. Supp. 2d 458, 467 (S.D.N.Y. 1999).

Here, Berry presents nothing more than an implausible tale of an alleged conspiracy, built on the infringement of plaintiff's copyright, supposedly bringing together an alleged infringer of plaintiff's software program with banks who lent money to plaintiff's customer, plus a cast including 200 John Does, "Mr. Berry's estranged spouse" (SAM ¶ 84), "an Ethics Commissioner of the City and County of Honolulu" (*id.* ¶ 89), "the Bishop Estate, the most powerful entity in the State of Hawaii" (*id.* ¶ 97), "the Hawaii law firm of Lynch Ichida Thompson Kim & Hirota," which firm represented Berry in the prior related litigations and with which Berry's current counsel was (but is no longer) affiliated (*id.* ¶¶ 194-98), Berry's former landlord, Jack Borja (*id.* ¶ 263-66), "Thomas Dahlen, [who] entered in the nighttime property rented by Mr. Berry and assaulted a member of Mr. Berry's family on his property seeking to extract Mr. Berry's whereabouts" (*id.* ¶ 270), the law firm of Kirkland & Ellis (*id.* ¶ 3[5]), "the White & Case firm" (*id.* ¶ 66), "the Baker Botts law firm in Houston" (*id.* ¶ 311), "Haliburton and/or its spin off of Kellogg Brown and Root" (*id.*), "Fluor, Inc. another Texas based corporate entity" (*id.* ¶ 312), "former Fleming customers, including, but not necessarily limited to, Kmart" (*id.* ¶ 314), *and* GECC.

---

[5] On page 60 of the SAM following paragraph 285, the numbering reverts to paragraph 1 through 5, and then picks up at 286 on page 62. The above cite to ¶3 is to the paragraph appearing on page 60.

**ARGUMENT**

## I.    BERRY'S CLAIM FOR CONTRIBUTORY OR VICARIOUS LIABILITY FAILS TO STATE ANY PLAUSIBLE BASIS FOR RELIEF AGAINST GECC.

In Claim II of the Second Amended Complaint, Berry asserts that GECC is liable for contributory or vicarious copyright infringement based on the allegedly infringing activities of three separate entities: the pre-confirmation conduct of Fleming and the post-confirmation conduct of Core-Mark and C&S. However, Berry's allegations fail to establish any basis whatsoever for imposing secondary liability for copyright infringement on GECC. As discussed below, Berry's claims are barred by his failure to allege all of the elements needed to establish secondary liability and because he has failed to demonstrate the existence of a primary infringement for which GECC could be held secondarily liable.

### A.    Berry Did Not and Cannot Plead the Elements Needed to Establish Secondary Liability.

In the Second Circuit, to establish a claim for contributory copyright infringement, the plaintiff must allege that the defendant "with knowledge of the infringing activity, induce[d], cause[d], or materially contribute[d] to the infringing conduct of another." *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971); *see also Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998); *Demetriades v. Kaufmann*, 690 F. Supp. 289, 293 (S.D.N.Y. 1988); *cf. Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement."). Courts cannot "find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement." *Id.* at 939 n.12. A plaintiff must allege that the defendant knew of, and "substantially participated in," the alleged direct infringement. *See Brought To Life Music*, 2003 WL 296561, at *2; *see also Demetriades*, 690 F. Supp. at 294 ("Something more – deriving from one's *substantial* involvement – is

needed.") (emphasis in original).  As Judge Sweet explained in the *Brought To Life Music* case:

"Significantly, with regard to the participation prong, an allegation that a defendant 'merely

provided the means to accomplish an infringing activity' is insufficient to establish a claim for

contributory infringement." 2003 WL 296561, at *2 (quoting *Livnat v. Lavi*, Case No. 96-Civ-

4967, 1998 WL 43221, at *3 (S.D.N.Y. Feb. 2, 1998)); *see also Quiroga v. Fall River Music,*

*Inc.*, Case No. 93-Civ-3914, 1998 WL 851574, at *37 (S.D.N.Y. Dec. 7, 1998) ("A mere

allegation that the defendant provided the third party with the opportunity to engage in wrongful

conduct would not even be enough to survive a motion to dismiss.").[6]  And finally, not only must

participation by the alleged contributory infringer be "substantial," but also, the "authorization or

assistance must bear a direct relationship to the infringing acts, and the contributory infringer

must have acted in concert with the direct infringer." *Livnat*, 1998 WL 43221, at *3.

As for vicarious copyright infringement, the plaintiff must allege that GECC had a "right

and ability to supervise [that] coalesce[d] with an obvious and direct financial interest in the

exploitation of copyrighted materials." *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d

304, 307 (2d Cir. 1963); *see also Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118

F.3d 955, 971 (2d Cir. 1997); *Demetriades*, 690 F. Supp. at 292; *cf. Grokster*, 545 U.S. at 930

("One . . . infringes vicariously by profiting from direct infringement while declining to exercise

a right to stop of limit it.").  Courts relying on the theory of vicarious copyright liability

"repeatedly have emphasized that some degree of control or supervision over the individual(s)

---

[6] The Ninth Circuit's decision last year in *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494
F.3d 788, 796-97 (9th Cir. 2007), holding that credit card and other payment processing
companies could not be held contributorily liable for infringement of the plaintiff's pornographic
photos by third-party websites, conforms to the rule in the Second Circuit described above,
requiring a plausible allegation of a direct connection between the defendant and the third-party
infringer that facilitates or induces the specific infringement conduct.

directly responsible for the infringement is of crucial importance." *Demetriades*, 690 F. Supp. at 292. Moreover, in order to be vicariously liable, a party's financial interest in the infringing activity must be "obvious and direct." *Dragon Med.*, 118 F.3d at 971. For instance, where a party receives "10%-12% of the sales of the infringing materials," a sufficiently direct financial interest may be demonstrated. *Id.* at 971-72. But, where as here, payment does not flow from the sale of an infringing item to the party accused of vicarious infringement, the interest "is too attenuated to establish a sufficiently 'direct' financial interest in the exploitation of copyrighted materials." *Id.*; *see, e.g., Artists Music Inc. v. Reed Publ'g (USA), Inc.*, 31 U.S.P.Q.2d 1623, 1994 WL 191643, at *6 (S.D.N.Y. May 17, 1994) ("[L]andlord that charged a fixed rent—rent not tied to the tenant's revenues or profits derived from the alleged copyright infringements— was not liable for the tenant's infringing activity.").

        **1.**     **Berry Does Not Allege GECC Had Any Knowledge of the Alleged Infringement.**

      Berry concedes that, prior to September 2005, GECC was one of dozens of lenders to Fleming and Core-Mark, and had no knowledge of any alleged infringements by them. (SAM ¶ 107). Berry asserts that GECC received notice of the alleged infringement when his counsel wrote to GECC's parent corporation on November 4, 2005. (*Id.* ¶ 114). However, by that time, according to Berry, GECC already had undertaken whatever acts Berry asserts constituted contributory or vicarious liability. The only specific act that GECC is alleged to have done was to lend money to Fleming and Core-Mark, but as Berry concedes, that was done "prior to September 2005"—in other words, before GECC obtained notice from Berry's November 2005 letter. (*Id.* ¶ 107). The only other activity of GECC asserted by Berry is that, "[s]tarting in August of 2003, GECC . . . began to support C&S and Core-Mark in their acts of infringement that continue as of this date." (*Id.* ¶ 168). However, Berry not only fails to identify anything at

all that GECC supposedly did in support of C&S or Core-Mark, but concedes that whatever

GECC had done occurred beginning in August 2003—again before GECC received any notice of

Berry's contentions.  Moreover, even if Berry's November 2005 letter could establish that GECC

had notice of wrongful conduct by the alleged primary infringers,[7] mere knowledge at that time

without specific acts undertaken by GECC to assist the infringement cannot state a claim for

secondary liability.  *See, e.g., Grokster*, 545 U.S. at 939 n.12 (courts are "unable to find

contributory infringement liability merely based on a failure to take affirmative steps to prevent

infringement.").

In short, because Berry fails to demonstrate that GECC had knowledge of any primary

infringement at the time GECC engaged in any conduct alleged by him, his claim for

contributory infringement must fail.

### 2.    GECC Did Not Substantially Participate in the Alleged Direct Infringement.

The Second Amended Complaint makes clear that GECC simply was a lender to

Fleming, C&S and Core-Mark.  To state a claim for secondary infringement, plaintiff must

establish that a defendant substantially participated in the infringement.  *Demetriades*, 690 F.

Supp. at 294.  However, completely absent from the Second Amended Complaint is any

allegation that plausibly asserts either "substantial participation" by GECC in anyone's alleged

infringement, or that  GECC had a right or ability to directly control or supervise the specific

allegedly infringing conduct of anyone.  Because plausible allegations on either element are

---

[7] The fact that Berry's letter may have alleged that infringement was taking place does not automatically give rise to knowledge on the part of GECC that infringement was going on. For instance, activity of C&S alleged by plaintiff to be infringing was found non-infringing by the court in *Berry v. Hawaiian Express*.  Had GECC reviewed Berry's assertion and come to the

*Continued on following page* . . . .

"crucial" for claims of either contributory or vicarious liability, respectively, *see id.* at 292-94, Berry here cannot go forward with his claims for secondary liability against GECC based on the alleged direct infringements asserted in the Second Amended Complaint.

### 3.    GECC Did Not Have an Obvious and Direct Financial Interest in Any Infringement.

GECC was a lender to various parties in this litigation, and GECC's *only* financial interest was to have its loans repaid in accordance with the terms of those loans. The Second Amended Complaint does not assert otherwise. Thus, there are no allegations that the amount of money to be received by GECC was tied to proceeds derived from the sale or licensing of infringing works, nor otherwise derived from allegedly infringing works. Rather, GECC's loans were to be repaid from the routine operation of its borrowers' businesses. To the extent that GECC's borrowers theoretically could have operated their businesses in part by using some infringing software cannot establish that GECC had a direct financial interest in that infringement. For example, Core-Mark is a "wholesale distributor of cigarettes in Hawaii" (SAM ¶ 7), and money generated in the operation of that business would be used to repay its loans from GECC and others. The fact that Core-Mark may have been using an infringing "system for handling ocean freight and maximizing freight efficiencies" to determine how it would deliver the cigarettes it sold provides no direct financial interest in the infringement of Berry's software to GECC. The same amount of money would have been due and owing to GECC whether Core-Mark scheduled its deliveries using infringing software, its own non-infringing software, or by hand calculations written on a blackboard. Accordingly, Berry cannot

---

*Continued from previous page* . . . .

same conclusion as the court, GECC would have no knowledge of infringement notwithstanding plaintiff's letter accusing some parties of infringement.

state a claim for vicarious infringement. *See, e.g., Dragon Med.*, 118 F.3d at 971 (such an interest "is too attenuated to establish a sufficiently 'direct' financial interest in the exploitation of copyrighted materials.").

**B.    Berry Did Not Establish a Primary Infringement Required to Support Secondary Liability.**

It is axiomatic that "'[f]or a defendant to be held contributorily or vicariously liable, a direct infringement must have occurred.'" *Matthew Bender & Co.*, 158 F.3d at 706 (quoting 2 Paul Goldstein, *Copyright* § 6.0 (1996)). Here, Berry does not adequately plead any primary infringement for which GECC can be secondarily liable.

Berry attempts to hold GECC secondarily liable for infringing activity of Fleming for the period "starting no later than January 1, 2000 and continuing to no earlier than June 9, 2003." (SAM ¶ 154).    However, the applicable statute of limitations bars any copyright claim against GECC based upon this activity.    All copyright infringement claims, including one for contributory or vicarious liability, are necessarily constrained by the three-year limitation period in the Act: "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b); *see also Stone v. Williams*, 970 F.2d 1043, 1049-50 (2d Cir. 1992) ("Recovery is allowed only for those acts occurring within three years of suit . . ."). Courts in this District have made clear that federal claims accrue when the allegedly wrongful act occurs, not when the plaintiff learns of the wrongful act. *See, e.g., Roberts v. Keith*, Case No. 04-Civ-10079, 2006 WL 547252, at *3 (S.D.N.Y. Mar. 7, 2006) (holding that the "injury" rule, rather than any "discovery" rule, "governs the application of the three-year statute of limitations" in copyright infringement cases); *Auscape Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235, 247 (S.D.N.Y. 2004) ("[T]he legislative history of Section 507(b) makes it strikingly clear that Congress intended to

adopt a three-year limitations period running from the date of the infringement, as a discovery

rule would have defeated its overriding goal of certainty.").[8]  Because more than three years

elapsed before Berry sought to hold GECC secondarily liable for infringing conduct of Fleming,

those claims are barred by the statute of limitations.

While Berry attempts to raise some claims against C&S and Core-Mark within the statute

of limitations, he does so by making conclusory assertions that "starting in August of 2003" C&S

and Core-Mark engaged in unspecified "acts of infringement that continue as of this date."

(SAM ¶ 168; see id. ¶ 142 ("From September 2005 to the filing of the complaint in this case,

Core-Mark, C&S and their employees and agents have committed thousands of act of willful

infringement.")).  To the extent that Berry attempts to state a claim based on purported

infringement by C&S, however, that claim must fail as a court already determined that C&S is

using its own original non-infringing work, not Berry's.  See Berry v. Hawaiian Express Serv.,

Inc., 2006 WL 4102120, at *11.  Moreover, Berry's allegations also do not state a claim for

infringement because he nowhere identifies which specific works allegedly were infringed, nor

what specific acts of the defendants allegedly constituted the infringement.

"To state a claim for copyright infringement under . . . Rule 8, the Complaint must state

'which specific original work is the subject of the copyright claim . . . .'" Flynn v. Health

Advocate, Inc., No. Civ. A 03-3764, 2004 WL 51929, at *12 (E.D. Pa. Jan. 13, 2004) (emphasis

---

[8] In TRW Inc. v. Andrews, 534 U.S. 19 (2001), the Supreme Court rejected the formerly prevalent view that federal courts should apply an injury rule only when explicitly adopted by Congress. See Auscape Int'l, 409 F. Supp. 2d at 244.  Since TRW, cases in this district that have explicitly considered whether to apply an injury rule or a discovery rule have concluded an infringement claim accrues on the date of the alleged wrongful act, not the date of discovery. See, e.g., Vasquez v. Torres-Negron, Case No. 06-Civ-619, 2007 WL 2244784, at *7 (S.D.N.Y. July 11, 2007).  Post-TRW decisions that refer to the discovery rule in infringement actions do

Continued on following page . . . .

14

in original), *quoting Gee v. CBS, Inc.*, 471 F. Supp. 600, 643 (E.D. Pa.), *aff'd*, 612 F.2d 572 (3d

Cir. 1979); *see, e.g., Bespaq Corp. v. Haoshen Trading Co.*, No. C 04-3698, 2005 WL 14841, at

*2 (N.D. Cal. Jan. 3, 2005) (allegations insufficient "when plaintiff does not clearly identify the

preexisting work" upon which the claim is based); *Home & Nature Inc. v. Sherman Specialty*

*Co.*, 322 F. Supp. 2d 260, 266 (E.D.N.Y. 2004) (complaint must allege "which specific original

works form the subject of the copyright claim."). "[M]erely alleging that Plaintiffs own certain

copyrights and that Defendants have infringed on such copyrights in their written materials is

insufficient to meet the . . . requirement of pleading in the Complaint the 'specific' original work

that is the subject of the copyright claim." *Flynn*, 2004 WL 51929, at *12. Moreover, this Court

has made clear that simply identifying a batch of works and asserting that defendants copied

from those works does not cure the deficiency. *See, e.g., Plunket v. Doyle*, No. 99 Civ. 1106,

2001 WL 175252 (S.D.N.Y. Feb. 22, 2001).

   In *Plunket*, the complaint contained a "multi-page schedule of the [plaintiff's] works . . .

and provides copyright registration numbers for nine of these works." *Id.* at *4. However, the

complaint asserted that the plaintiff's claims were "not limited to these works." *Id.* Citing *Cole*

*v. Allen*, 3 F.R.D. 236, 237 (S.D.N.Y. 1942), for the proposition that "allegations that defendant

copied from any of six books lacked sufficient specificity," the court concluded that by

mentioning additional unspecified works in her complaint, the plaintiff had failed to state a

claim. *Plunket*, 175252 at *4. The result should be no different here.

---

*Continued from previous page . . . .*

not address the impact of *TRW*, and rely on cases that precede it. *See, e.g., Felix the Cat Prods.,*
*Inc. v. California Clock Co.*, 04 Civ. 5714, 2007 WL 1032267, at *2 (S.D.N.Y. Mar. 30, 2007).

Berry identifies and provides copyright registration numbers for 18 works. (SAM ¶ 23). However, he purports to base his claims on "[a]dditional works, too numerous to name . . . that are being infringed." (*Id.* ¶ 24). For example, Berry alleges that "works that are being infringed include over one hundred separate works including numerous registered works of original authorship and derivatives thereof," but does not identify what these works might be nor how they allegedly had been infringed. (*Id.* ¶ 125). Having failed to identify the works that were the subject of the alleged primary infringement, plaintiff cannot state a claim for secondary liability relating to those unidentified works. *See, e.g., Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 229 (S.D.N.Y. 2000) ("Since the second amended complaint fails to adequately plead a direct copyright infringement, plaintiff's contributory infringement claim would fail.").

Likewise, Berry has failed to identify the acts that allegedly constitute the primary infringement. "A 'properly plead[ed] copyright infringement claim must allege . . . by what acts during what time the defendant infringed the copyright.' It must set out the 'particular infringing acts . . . with some specificity. Broad, sweeping allegations of infringement do not comply with Rule 8.'" *Id.* at 230 (citations omitted).

Here, Berry has not identified specific acts but has pleaded only conclusory assertions that his works have been infringed. At most, he makes the bare assertion that C&S and Core-Mark make "daily copies of his works that are loaded in random access memory" (SAM ¶ 139), but this allegation neither identifies which works purportedly were copied nor the new works that supposedly comprise the infringing copy. The only activity relating to defendants' purported use of Berry's work that is described with any specificity is Berry's contention that some Defendants improperly identified a "proprietary logistics system" in securities documents, which system Berry believes was derived from his works. (*Id.* ¶¶ 112-13, 130). However, this assertion does

not cure Berry's defective copyright claims because identifying a work in a securities registration does not constitute copyright infringement—which requires the exercise of one of the exclusive rights under section 106 of the Copyright Act. In other words, even if it was true (which it is not) that some defendants falsely stated that they owned an original logistics system, it is immaterial to whether the defendants made copies of a particular work owned by Berry. Accordingly, because Berry has neither identified the works allegedly infringed nor the particular acts that amounted to the primary infringement, his claim for secondary liability against GECC should be dismissd.

## II.    BERRY'S UNJUST ENRICHMENT CLAIM IS PREEMPTED BY THE COPYRIGHT ACT.

Berry's Claim IV asserts that GECC was unjustly enriched as a result of Fleming's "continued . . . use of Plaintiff's work." (SAM ¶ 180). The essence of Berry's theory of unjust enrichment is that Fleming only was able to stay in business, and thus could be sold out of bankruptcy to generate money to repay GECC, by infringing Berry's work. (*Id.* ¶¶ 180-83). However, this claim is expressly preempted by the Copyright Act, 17 U.S.C. § 301(a).

The Supreme Court has made clear that "state law is preempted when it enters 'a field of regulation which the [applicable federal] laws have reserved to Congress.'" *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc.*, 7 F.3d 1434, 1439 (9th Cir. 1993) (quoting *Bonito Boats Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 167 (1989)). Section 301 of the federal copyright statute expressly reserves to Congress the field of regulation over claims relating to works of authorship which claims seek to vindicate rights equivalent to those provided by the copyright law. Thus, Section 301 states, in pertinent part:

> [A]ll legal or equitable rights that are equivalent to any of the
> exclusive rights within the general scope of copyright as specified
> by § 106 in works of authorship that are fixed in a tangible
> medium of expression and come within the subject matter of

> copyright as specified by sections 102 and 103, . . . are governed
> exclusively by this title.  [N]o person is entitled to any such right
> or equivalent right in any such work under the common law or
> statutes of any State.

17 U.S.C. § 301(a).

In order for a state law claim to survive preemption by Section 301, either the subject matter of the claim must be a type of work that is not protected by the Copyright Act or the rights asserted must not be equivalent to those in the bundle of exclusive rights granted by the Act. *See Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 848 (2d Cir. 1997); *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 563-64 (D. N.J. 2002).   A state law claim, based on works covered by the Act, is deemed equivalent unless an "extra element," in addition "'to the acts of reproduction, performance, distribution or display,'" is alleged. *Nat'l Basketball Assoc.*, 105 F.3d at 850 (quoting *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992)).  Here, plaintiff's claims relate to a type of work, specifically software, squarely within the protection of the Copyright Act, and assert rights equivalent to those set forth in Section 106 of the Copyright Act, specifically the rights to reproduce and prepare derivative works of plaintiff's software.

It could not be clearer that the works upon which Berry's claims are based fall within the subject matter of copyright.  Berry attached to the Second Amended Complaint copyright registrations for those works, and has attempted to assert a number of claims for their infringement.

A state law right is equivalent to the rights under copyright law "when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law." *Briarpatch Ltd., L.P.  v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004).  "In other words, the state law claim must involve acts of reproduction,

adaptation, performance, distribution or display." *Id; see* 17 U.S.C. § 106. Where, as here, the subject matter of a claim falls within the subject matter of copyright, a state law cause of action is preempted unless the rights it seeks to vindicate are "qualitatively different" from those provided by the Copyright Act, such as claims which require "such elements as breach of fiduciary duty, or possession and control of chattels." *See, e.g., Briarpatch*, 373 F.3d at 306.

Here, Berry's unjust enrichment claim contains no extra elements but merely seeks additional remedies for the same conduct plaintiff alleges had infringed his copyright. He identifies no conduct other than the alleged "unlicensed use of his works" (SAM ¶ 181)—which is the essence of copyright infringement—and he seeks to recover "the reasonable value of the material infringed." (*Id.* ¶ 183). Berry's allegations add no facts or legal theories to establish any extra element from those that comprise a claim for copyright infringement. Plainly, Berry's unjust enrichment claim is preempted and should be dismissed. *See, e.g., Video Pipeline, Inc.*, 210 F. Supp. 2d at 567 ("'Courts have generally concluded that the theory of unjust enrichment protects rights that are essentially 'equivalent' to rights protected by the Copyright Act; thus, unjust enrichment claims relating to the use of copyrighted material are generally preempted.'") (citations omitted).[9]

---

[9] Berry suggests that Ninth Circuit law, rather than Second Circuit law, is controlling on preemption. (*See* SAM, ¶ 179). Not only is he incorrect, however, it makes no difference because the rule in the Ninth Circuit is no different than in the Second Circuit: State-law claims for unjust enrichment are preempted when the claim is premised on the use of an unauthorized copy of a copyrighted work. *See, e.g., Del Madera Props. v. Rhodes & Gardner*, 820 F.2d 973, 977 (9th Cir. 1987), *overruled on other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994); *Zito v. Steeplechase Films, Inc.*, 267 F. Supp. 2d 1022, 1027 (N.D. Cal. 2003).

III.   **BERRY'S RICO CLAIM FAILS FOR LACK OF ANY PLAUSIBLE ALLEGATION OF A PATTERN OF RACKETEERING ACTIVITY.**

Berry's Claim XII asserts Section 1962 RICO violations by all the defendants. (*See* SAM, ¶ 254 and 294-97). However, despite 66 paragraphs of allegations spread across 18 pages of the Second Amended Complaint, Berry's RICO allegations fail to meet the most basic pleading requirements necessary for such claims, *i.e.*, the allegation of a pattern of racketeering activity.

In this circuit, to make out a RICO claim, a plaintiff must allege "the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss*, 719 F.2d at 17; *see also Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd.*, 154 F. Supp. 2d 682, 690 (S.D.N.Y. 2001). Under the statute, a civil RICO plaintiff must "plead the pattern of racketeering activity and the existence of a RICO enterprise as distinct elements of a RICO offense." *See ILA*, 518 F. Supp. 2d at 473.

Regardless of which subsection of Section 1962 a plaintiff alleges, all four theories of RICO liability share "two constituents as required elements to establish a claim for damages: that the wrongful conduct the defendant allegedly engaged in occurred (1) through 'a pattern of racketeering activity,' (2) conducted by an 'enterprise.'" *Tenamee v. Schmukler*, 438 F. Supp. 2d 438, 447 (S.D.N.Y. 2006). To satisfy the "pattern of racketeering" requirement, a RICO plaintiff must show at least two racketeering predicate acts, that "the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original). Moreover, "[a] RICO plaintiff must

show that *each* defendant participated in the RICO enterprise by engaging in at least two predicate acts." *World Wrestling Entm't, Inc.,* 2007 WL 4623027 at *6 (emphasis in original).

Here, Berry has failed to plead two predicate acts engaged in by GECC. The only predicate acts that he tries to link with GECC are claims of criminal copyright infringement under 18 U.S.C. § 2319 (and the corresponding substantive provision of the Copyright Act, 17 U.S.C. § 506(a)(1)). (*See* SAM, at 60, ¶ 1). As noted above in Point I, however, Berry has failed to adequately allege even a civil copyright violation by GECC, and this failure is fatal to any theory of a criminal copyright offense: There simply can be no criminal copyright liability if the allegations are insufficient to establish even civil liability. *See Ass'n of Am. Med. Colleges v. Mikaelian,* Civ. A. No. 83-2745,1986 WL 332, at *16 (E.D. Pa. Mar. 18, 1986) ("The elements of a criminal violation of 17 U.S.C. § 506(a) include all of the requirements of civil infringement."); *see also* 4 *Nimmer on Copyright* § 15.01[A][2] ("Conduct that does not give rise to civil liability for copyright infringement cannot constitute criminal infringement either.").[10]

Attempting to plead a RICO claim, Berry inserted into the Second Amended Complaint far-fetched tales of money laundering in 1995 (SAM ¶ 265), an assault carried out to "extract Mr. Berry's whereabouts" (*id.* ¶ 270), bribery of plaintiff's prior attorneys (*id.* ¶ 283), "criminal infringement . . . committed in 2000" (*id.* ¶ 285(1)), conduct "in a deposition" taken of Berry in another case (*id.* ¶ 285(2)), use of a copy of Berry's work "to facilitate Haliburton's qualification for the no-bid government contract known as LOGCAPS III" (*id.* ¶ 311), and "resist[ing] efforts of the congressional committee investigating the IRAQ procurement fraud" (*id.*), among other

---

[10] Furthermore, diligent research has not located any case upholding a charge of criminal copyright infringement where the underlying conduct was nothing more than contributory or vicarious liability.

things. However, there are no allegations, much less plausible ones, tying GECC to any of these

activities. Rather, even Berry concedes that "prior to September 2005, GECC's role in Fleming

related matters was limited to being one of the dozens of participating lenders." (*Id.* ¶ 107).

Berry's concession excludes as predicate acts attributable to GECC not only the infringements

allegedly begun by Fleming, Core-Mark and C&S before September 2005, but the vast majority

of allegedly wrongful acts of any nature recounted in the Second Amended Complaint.

Moreover, Berry's allegations of wrongful conduct subsequent to September 2005 relate to

actions taken in connection with other litigation between Berry and some of the other defendants

in this case—litigation to which GECC has never been party or otherwise involved. In short,

because Berry did not plead the requisite predicate acts by GECC, his RICO claims against

GECC should be dismissed.[11]

In addition to this failure to allege a cognizable predicate act, Berry's contentions also do

not amount to a "continuing pattern" of racketeering activity *by GECC*. *See, e.g., First Capital*

---

[11] Berry suggests that GECC, along with other lenders, "participated in a fraud on the SEC." (SAM ¶ 128). This allegation in insufficient do establish a RICO predicate act. Every assertion of "fraud" does not amount to a RICO predicate. *See, e.g., Jordan (Bermuda) Inv. Co.*, 154 F. Supp. 2d at 691 ("none of the acts alleged—fraud, conversion, conspiracy and coercion— was racketeering activity."). Only "enumerated crimes, including mail fraud and wire fraud" may constitute RICO predicate acts. *Id.* at 690. To state a claim for mail or wire fraud, a plaintiff must plead facts demonstrating that the alleged fraud was "'furthered by the use of interstate mail or wires.'" *Id.* at 691 (citation omitted). There are no such allegations in the Second Amended Complaint. Moreover, allegations of fraud must by pleaded "with sufficient particularity to meet the pleading requirements of Fed. R. Civ. P. 9(b)." *Moss*, 719 F.2d at 19. Here, plaintiff utterly has failed to particularize any fraudulent conduct allegedly done by GECC. In any event, Berry's assertions of fraud on the SEC should be stricken because Berry lacks standing with respect to any such claims, as he has failed to identify any harm caused to *him* as a result of any alleged fraud on the SEC. *See, e.g., Powers v. British Vita, P.L.C.*, 57 F.3d 176, 188 (2d Cir. 1995) ("[Plaintiff] lacks standing to assert a predicate act of securities fraud with respect to [defendant's] initial purchase of Spartech securities under either the 'purchaser or seller' or the causation formulation. First of all, it is clear that [plaintiff] neither bought nor sold the securities in question. Second, as explained below, [plaintiff] does not sufficiently allege that defendants' fraudulent conduct proximately caused his loss.").

*Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004) (when assessing the pattern of activity, court should "evaluat[e] the RICO allegations with respect to each defendant individually."). Berry's allegations against GECC amount to, at most, three discrete acts: the extensions of credit to Fleming, Core-Mark and, perhaps, C&S. There is no plausible basis in the pleadings to infer that these purported predicate acts, if they can ever be shown to constitute secondary copyright infringement, let alone criminal copyright infringement, amount to a threat of continuing unlawful conduct.

As Berry himself asserts, the "Lenders" allegedly "agreed to the commission of numerous acts of criminal copyright infringement and to the operating of a racketeering enterprise . . . to insure their loans would be repaid with interest." (SAM ¶ 106). The Second Circuit has made clear that a scheme undertaken to accomplish a particular goal cannot establish a pattern of "continuing criminal activity" necessary to make out a RICO claim. *See, e.g. First Capital*, 385 F.3d at 180-181. In *First Capital*, the plaintiff asserted RICO claims based on an "alleged scheme to defraud [plaintiff's] creditors." *Id.* The court found such a scheme to be "inherently terminable" because once the defendant "fraudulently conveyed his assets . . . the scheme essentially came to its conclusion." *Id.* Likewise here, the Lenders' alleged scheme inherently is terminable when the loans they extended are repaid. Thus, as in *First Capital*, "'it defies logic to suggest that a threat of continued . . . activity exists'" based on an alleged scheme to recover specific monies due and owing. Moreover, no continuing pattern exists because Berry asserts that all of the infringing conduct was directed at him and his software. *Id.* at 181 (citation omitted). *See, e.g., Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort*, Civ. A. No. 06-CV-01596, 2007 WL 2701995, at \*11 (D. Co. Sept. 12, 2007) ("A set of predicate

acts constituting a single scheme to accomplish a discrete goal against a discrete victim . . . is

insufficient to show either type of continuity.").

Berry also has failed to adequately plead the existence of an enterprise. The Second

Circuit made clear that a RICO "enterprise must be separate from the pattern of racketeering

activity." *First Capital*, 385 F.3d at 173. Here, Berry has not identified any course of conduct of

an enterprise separate and apart from the alleged predicate acts. In addition, he has not specified

the hierarchy, organization, or activities of the alleged enterprise, nor described how the

enterprise functions as a unit. Instead, he just tossed together all sorts of disparate allegations

against unrelated parties ranging from a trustee of the Bishop Estate (SAM ¶ 256) to Kmart. (*Id.*

¶ 314).

In rejecting a similarly defective RICO pleading, the Second Circuit explained:

> The alleged illegal purpose of the [defendants'] Enterprise was to
> conceal [defendants'] assets from his creditors, the bankruptcy
> court, and [defendants'] Chapter 7 Trustee. The Amended
> Complaint fails, however, to detail any *course* of fraudulent or
> illegal conduct separate and distinct from the alleged predicate
> racketeering acts themselves—a requirement in this Circuit.
> Plaintiff's certainly have not advanced any factual allegations that
> the [defendants'] Enterprise was an ongoing organization, formal
> or informal, or any evidence that the various associates of the
> alleged enterprise functioned as a continuing unit. Moreover,
> Plaintiff [has] failed to provide us with any solid information
> regarding the hierarchy, organization and activities of this alleged
> association-in-fact enterprise from which we could fairly conclude
> that its members functioned as a unit. Thus, there is no basis to
> support the conclusion that the supposed constituent entities of
> [defendants'] Enterprise were associated together for a common
> purpose of engaging in a course of conduct.

*First Capital*, 385 F.3d at 174-75 (initial quotation marks and citations omitted (emphasis

added). The result should be no different here. Berry has not identified any actions supposedly

undertaken by the alleged enterprise other than the supposed wrongful conduct identified as

predicate acts. Berry has not described the structure of the supposed enterprise, nor how it is

organized or managed.  Indeed, Berry has not even made clear who the members of the

organization are, mentioning various individuals and companies purportedly engaged in such

unrelated acts as "cigarette smuggling" (SAM ¶ 267) and obtaining "no-bid contracts" to supply

Iraq.  (*Id.* ¶ 311-12).  Because Berry utterly has failed to meet his obligation to plead a RICO

enterprise, his RICO claims should be dismissed.

## CONCLUSION

For the foregoing reason, Berry's claims against GECC should be dismissed with

prejudice in their entirety, and Berry should be ordered to pay GECC's costs and fees, together

with such other and further relief the Court deems just and proper.


Dated: January 25, 2008
       New York, New York


                        Respectfully submitted,

                        LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

                        By: _____
                        Robert Penchina (RP 5866)
                        321 West 44th Street, Suite 510
                        New York, NY 10036
                        (212) 850-6100
                        *Attorneys for Defendant General Electric Capital
                        Corporation*