UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| WAYNE BERRY,<br><br>       Plaintiff,<br><br>   vs.<br><br>DEUTSCHE BANK TRUST COMPANY AMERICAS (FKA BANKERS TRUST COMPANY) and JP MORGAN CHASE BANK in their separate capacities and as agents for the pre- and post-petition lenders of Fleming Companies, Inc.; GENERAL ELECTRIC CAPITAL CORPORATION; C&S WHOLESALE GROCERS, INC.; THE POST-CONFIRMATION TRUST OF FLEMING COMPANIES, INC.; ROBERT KORS; CORE-MARK HOLDINGS INC. and DOES 1 to 200,<br><br>       Defendants. | Case No. 01:07 CV 7634 (WHP)<br><br>ECF Case |

DEUTSCHE BANK TRUST COMPANY AMERICAS AND JP MORGAN CHASE BANK'S
MOTION TO DISMISS AND MEMORANDUM IN SUPPORT OF MOTION

KIRKLAND & ELLIS LLP
Michael E. Baumann (admitted *pro hac vice*)
Erin N. Brady (admitted *pro hac vice*)
777 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

- and -

WHITE & CASE LLP
Andrew DeNatale (ADN 2429)
Jonathan Moskin (JM 9814)
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113

## TABLE OF CONTENTS

Page(s)

I.    Introduction ................................................................................................1

II.   Factual and Procedural Background ...........................................................3

III.  Legal Standard ...........................................................................................6

IV.   Argument ....................................................................................................7

      A.    Berry's Claims Are Barred By Claim Preclusion. .............................7

            1.    Berry's allegations establish that Defendants and Fleming are
                  sufficiently related to permit Defendants to invoke claim
                  preclusion. .............................................................................8

            2.    Berry brought or could have brought his claims against Defendants
                  in his earlier lawsuits against Fleming. ...................................9

            3.    The first and second lawsuits are both final judgments on the
                  merits. ..................................................................................12

      B.    Berry's Unjust Enrichment Claim Must Be Dismissed With Prejudice. ....................12

      C.    Berry's Copyright Claims Must Be Dismissed With Prejudice. ...................................13

            1.    Berry's pre-March 30, 2003 copyright claims are barred by the
                  statute of limitations. ............................................................13

            2.    Berry's post-March 30, 2003 vicarious infringement claims fail
                  because Defendants had no direct financial interest in Fleming's
                  infringement. .......................................................................15

            3.    Berry's post-March 30, 2003 contributory infringement claims are
                  barred by collateral estoppel. ...............................................19

      D.    Berry's RICO Claims Must Be Dismissed With Prejudice. ...........................21

V.    Conclusion ................................................................................................23

TABLE OF AUTHORITIES

Page(s)

## CASES

*Achtman v. Kirby, McInerney & Squire LLP,*
   464 F.3d 328 (2d Cir. 2006)..................................................................... 6

*Armstrong v. McAlpin,*
   699 F.2d 79 (2d Cir. 1983).................................................................... 14

*Auscape Int'l v. Nat'l Geographic Soc'y,*
   409 F. Supp. 2d 235 (S.D.N.Y. 2004)................................................... 13

*Bell Atl. Corp. v. Twombly,*
   127 S. Ct. 1955 (2007)............................................................................ 6

*Berry v. Fleming Companies, Inc. et al.,*
   Case No. 0100446 (SPK/LEK) (D. Hawai'i)......................................... 3

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,*
   369 F.3d 212 (2d Cir. 2004).................................................................... 7

*Boyle v. Stephens, Inc.,*
   No. 97 Civ. 1351 (SAS), 1998 WL 690816 (S.D.N.Y. September 29, 1998) ................. 12

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.,*
   373 F.3d 296 (2d Cir. 2004).................................................................. 12

*Bronx Household of Faith v. Bd. of Educ.,*
   331 F.3d 342 (2d Cir. 2003).................................................................... 7

*Cahill v. Arthur Andersen & Co.,*
   659 F. Supp. 1115 (S.D.N.Y. 1986)........................................................ 9

*Cameron v. Church,*
   253 F. Supp. 2d 611 (S.D.N.Y. Mar 24, 2003)............................ 7, 8, 10

*Citibank, N.A. v. Data Lease Fin. Corp.,*
   904 F.2d 1498 (11th Cir. 1990) .............................................................. 9

*Commer v. McEntee,*
   283 F.Supp.2d 993 (S.D.N.Y. Sep 24, 2003)........................................ 11

*Demetriades v. Kaufmann,*
   690 F. Supp. 289 (S.D.N.Y. 1988) ....................................................... 19

*Deutsch v. Arnold,*
   98 F.2d 686 (2d Cir. 1938).................................................................... 18

*Ellison v. Robertson,*
   357 F.3d 1072 (9th Cir. 2004) ........................................................ 16, 18

*Faulkner v. Nat'l Geographic Soc'y*,
   211 F. Supp. 450 (S.D.N.Y. 2002) ................................................................ 12

*Federated Dep't Stores, Inc. v. Moitie*,
   452 U.S. 394 (1981) ....................................................................................... 10

*First Nationwide Bank v. Gelt Funding Corp.*,
   820 F. Supp. 89 (S.D.N.Y. 1993) ................................................................... 23

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
   443 F.2d 1159 (2d Cir. 1971) .................................................................... 19, 20

*I. Meyer Pincus & Assocs. P.C. v. Oppenheimer & Co., Inc.*,
   936 F.2d 759 (2d Cir. 1991) ............................................................................. 7

*In re Big Wheel Holding Co., Inc.*,
   214 B.R. 945 (D. Del. 1997) ........................................................................... 17

*In re DiBerto*,
   171 B.R. 461 (Bankr. D.N.H. 1994) ............................................................... 18

*In re Fleming Companies, Inc.*,
   Case No. 03-10945 (MFW) (Bankr. D. Del. Apr. 1, 2003) ................................ 4

*In re Merrill Lynch Ltd. P'ship Litig.*,
   154 F.3d 56 (2d. Cir. 1998) ............................................................................ 14

*Indus. Bank of Latvia v. Baltic Fin. Corp.*,
   No. 93 Civ. 9032 (LLS), 1994 WL 286162 (S.D.N.Y. June 24, 1994) ............ 21

*Int'l Distrib. Centers, Inc. v. Walsh Trucking Co.*,
   62 B.R. 723 (S.D.N.Y. 1986) .......................................................................... 11

*Iqbal v. Hasty*,
   490 F.3d 143 (2d Cir. 2007) ................................................................... 3, 6, 20

*Jubelirer v. Mastercard Int'l, Inc.*,
   68 F. Supp. 2d 1049 (W.D. Wis. 1999) ........................................................... 22

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005) ................................................................................. 15, 19

*Miller v. Meinhard-Commercial Corp.*, 4
   62 F.2d 358 (5th Cir. 1972) ............................................................................ 18

*Moll v. U.S. Life Title Ins. Co. of New York*,
   700 F. Supp. 1284 (S.D.N.Y. 1988) ................................................................ 14

*Morgan Consultants v. American Telephone and Telegraph Co.*,
   546 F. Supp. 844 (S.D.N.Y. 1982) ........................................................ 1, 10, 21

*Moy v. Terranova*,
   No. 87 CV 1578 (SJ), 1999 WL 118773 (E.D.N.Y. Mar. 2, 1999) ................... 23

*Official Publ'ns v. Kable News,*
    811 F. Supp. 143 (S.D.N.Y. 1993). ............................................................................ 7, 8

*Petrella v. Siegel,*
    843 F.2d 87 (2d Cir. 1988)............................................................................................ 12

*Reves v. Ernst & Young,*
    507 U.S. 170 (1993)...................................................................................................... 21

*Rotella v. Wood,*
    528 U.S. 549 (2000)...................................................................................................... 22

*Ruskay v. Jensen,*
    342 F. Supp. 264 (S.D.N.Y. 1972) ............................................................................ 7, 8

*Schmidt v. Fleet Bank,*
    16 F. Supp. 2d 340 (S.D.N.Y. 1998)........................................................................... 22

*Shaw v. Rolex Watch U.S.A., Inc.,*
    776 F. Supp. 128 (S.D.N.Y. 1991) .............................................................................. 22

*Smith v. Local 819 I.B.T. Pension Plan,*
    291 F.3d 236 (2d Cir. 2002).......................................................................................... 6

*Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.,*
    118 F.3d 955 (2d Cir. 1997).......................................................................................... 15

*Sure-Snap Corp. v. State St. Bank & Trust Co.,*
    948 F.2d 869 (2d Cir. 1991).......................................................................................... 11

*TRW, Inc. v. Andrews,*
    534 U.S. 19 (2001) ....................................................................................................... 13

*United States v. Turkette,*
    452 U.S. 576 (1981)...................................................................................................... 22

*Vasquez v. Torres-Negron,*
    No. 06 Civ. 619 (CM), 2007 WL 2244784  (S.D.N.Y. July 11, 2007)........................... 13

*Wayne Berry v. Hawaii Express Service, Inc., et al.,*
    Case No. 03-00385 (SOM-LEK) (D. Hawai'i) ............................................................... 4

*Window Headquarters, Inc. v. MAI Basic Four, Inc.,*
    Nos. 91 Civ. 1816 (MBM), 92 Civ. 5283 (MBM), 1993 WL 312899
    (S.D.N.Y. Aug 12, 1993) ............................................................................................... 15

*Woods v. Dunlop Tire Corp.,*
    972 F.2d 36 (2d Cir.1992)............................................................................................. 10

*World Wrestling Entm't., Inc. v. Jakks Pac., Inc.,*
    No. 04-CV-8223 (KMK), 2007 WL 4623027 (S.D.N.Y. December 21, 2007) ............... 14

## STATUTES

11 U.S.C. § 101(10)(A) .................................................................................................... 16

11 U.S.C. § 1128, ............................................................................................................ 17

11 U.S.C. § 1144 ............................................................................................................. 17

11 U.S.C. § 502(a ........................................................................................................... 16

11 U.S.C. § 510(c) .......................................................................................................... 16

17 U.S.C. § 301(a ........................................................................................................... 12

17 U.S.C. § 506(a) .......................................................................................................... 23

17 U.S.C. § 507(b) .......................................................................................................... 13

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 6

## TREATISES

MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 1.01(B)(1)(g)
     (2003) ....................................................................................................................... 12

RESTATEMENT (SECOND) OF JUDGMENTS § 24 ................................................................. 10

## I.    INTRODUCTION

In his 75-page Second Amended Complaint, Wayne Berry describes a vast criminal conspiracy (which includes opposing counsel and some of the world's largest companies) to appropriate his Hawaii freight control software ("FCS"), to intimidate him and his family, and to perpetrate various other unconnected acts against him.  Cutting through the storytelling and embellishment, however, reveals the folly of Berry's theory.  Berry claims that Fleming Companies, Inc. ("Fleming") inadvertently infringed FCS in one of its 50 nationwide divisions.  He claims Defendants Deutsche Bank Trust Company Americas and JP Morgan Chase Bank (collectively "Defendants" or "the Banks") loaned money to Fleming, both before and during its eventual bankruptcy, and were repaid on these loans as part of Fleming's court-approved plan of reorganization.  And from this he surmises that Defendants are part of a vast criminal conspiracy, and are liable for infringing FCS.

Berry has twice sued Fleming—and parties doing business with Fleming—for engaging in a criminal conspiracy to infringe Fleming's free license to use FCS, seeking hundreds of millions of dollars in damages.  All told, after nearly five years of litigation, he was awarded just $150,000 (and his conspiracy theories were debunked and dismissed).  More importantly, the Hawaii District Court has ordered him to pay nearly $235,000 in fees and costs to those defendants he most aggressively pursued (fees and costs he now refuses to pay).  Undeterred, Berry is in search of new and deeper pockets.  Fleming's lenders—from whom he seeks nearly $1 billion dollars—apparently fit the bill.

His claims, however, fail as a matter of law.  *First*, all of Berry's claims against Defendants are barred by claim preclusion.  Berry's own allegations establish that Fleming and Defendants are substantially related for purposes of this litigation and, for purposes of a motion to dismiss, these allegations are taken as true.  As a result, Berry is barred from bringing against Defendants any claims he brought or could have brought against Fleming in his earlier lawsuits.  All of Berry's claims against Defendants in this lawsuit are founded on Fleming's infringement

of FCS, which Berry has already had ample opportunity to litigate. Accordingly, his claims against Defendants must be dismissed.

*Second*, putting claim preclusion aside, Berry's unjust enrichment claim—which he likely pleads to avoid the Copyright Act's statute of limitations—is preempted by the Copyright Act and must be dismissed.

*Third*, Berry's copyright infringement claims against Defendants are time-barred, at least as to any claim that predates March 30, 2003. And for the roughly two months of Fleming infringement at issue after that date, Berry cannot state a claim for either contributory or vicarious infringement. First, Berry's vicarious infringement claim fails because Berry cannot plausibly allege that Defendants had a direct financial interest in Fleming's infringement. The proceedings in Fleming's bankruptcy case, of which this Court may take judicial notice, establish that Defendants were paid from the pool of funds comprising Fleming's bankruptcy estate—not directly from the modest proceeds of Fleming's infringement. Similarly, Berry's contributory infringement claim fails because the District Court in Hawaii has already concluded that neither Fleming nor its employees knew that they were infringing FCS after March 7, 2003. As Berry has not pled an independent basis upon which Defendants could have known that Fleming was infringing—when even Fleming itself did not—it is implausible that Defendants knowingly directed an oblivious Fleming to infringe.

*Finally*, Berry has not pled a proper RICO claim against Defendants (or, for that matter, against any defendant named in this lawsuit). Berry alleges that a random collection of individuals and businesses—from Defendants to Halliburton to opposing counsel—formed an enterprise to perform acts ranging from cigarette trafficking to serving Berry with divorce papers. He does not allege, however, how or why these individuals and companies associated together to accomplish these disparate tasks. Nor does he allege how Defendants were involved beyond lending money, which is not sufficient involvement for RICO liability to attach. Much like the rest of his complaint, Berry's RICO allegations lack sufficient facts to "render [his]

claim plausible" and the claim should be dismissed. *See Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In 1993, Berry created FCS, a computer program that can be used to coordinate shipments of goods. *See* Req. Jud. Not., Ex. A at 2 (1/26/2005 Summary Judgment Order).[1] Berry gave Fleming a free, nonexclusive license to use FCS in 1999 and, upon doing so, installed copies of FCS on Fleming's computers. *Id*. Since that time, Berry has waged nearly continuous litigation against Fleming and many with whom Fleming has come in direct or indirect contact.

Berry filed his first FCS-related lawsuit in 2001. *Id*. In that suit, he claimed that Fleming infringed his copyright in FCS and various other works. *See Berry v. Fleming Companies, Inc. et al.*, Case No. 0100446 (SPK/LEK) (D. Hawaii). After nearly two years of litigation, and after Berry had already narrowed his claims for trial, the jury rejected all but one of his claims. Ex. A at 2 (1/26/2005 Summary Judgment Order). Specifically, the jury found that while Fleming had a valid license to use each of the works in question, Fleming had made unauthorized changes to the FCS software residing on its computers. *Id*. For this it awarded Berry $98,250 in damages. *Id.*

Immediately after the March 2003 jury verdict, Fleming attempted to comply with Berry's copyright by reverting to the version of FCS that Berry had licensed to it—dated from 1999. *Id* The earliest version that Fleming could locate, however, was from June 2000. *Id*. The June 2000 version was identical to the 1999 version with the exception of three minor changes. *Id*. at 2-3. Specifically, the 2000 version contained a Y2K feature, a field scratch name and two label changes. *Id*. at 3. Fleming's network administrator, Mark Dillon, recognized that the 2000 version contained the Y2K feature and removed that feature before Fleming began using the program. *Id*. He did not, however, recall that Fleming had added the field scratch name or made the two label changes. *Id*. Accordingly, he did not know to reverse these changes. *Id.*

---

[1] All Exhibits cited herein are attached to Defendants' Request for Judicial Notice filed concurrently with this motion.

By May 2003, Fleming recognized that the original (or what it thought was the original) FCS version was inadequate for its needs. *Id.* Accordingly, Fleming decided to "get away completely" from FCS by taking Fleming's data out of the FCS program and putting it into Excel spreadsheets, which it planned to use to manage its freight operations. *Id.* Fleming began operating with the Excel spreadsheets—and stopped using FCS—on June 9, 2003. *Id.*

In the interim, Fleming filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Delaware. *See In re Fleming Companies, Inc.*, Case No. 03-10945 (MFW) (Bankr. D. Del. Apr. 1, 2003). Within a matter of weeks, the Court entered multiple orders finding that Defendants did not control Fleming's operations or management on account of their loans. *See generally* Exs. B (Cash Collateral Order), C (Bridge Financing Order), and D (Final Financing and Cash Collateral Order). And within a matter of months, in August of 2003, Fleming consummated a court-approved sale of substantially all of its assets to C&S Wholesale Grocers, Inc. and C&S Acquisition LLC (collectively, "C&S"). Ex. E (Order Approving Sale to C&S). At that point, Fleming ceased its wholesale distribution operations.

Nevertheless, in July 2003, Berry filed another lawsuit related to Fleming's use of FCS. *See Wayne Berry v. Hawaii Express Service, Inc., et al.*, Case No. 03-00385 (SOM-LEK) (D. Hawaii). In that lawsuit, he sued at least 28 different parties, including Fleming and certain Fleming employees (the "Employees"), and asserted three claims relevant to this litigation. Ex. F (Second Amended Complaint). *First*, Berry alleged that Fleming and the Employees directly infringed by using a derivative of FCS. *Id.* *Second*, Berry alleged that Fleming and certain Employees contributorily infringed by knowingly directing other Employees to use FCS. *Id.* *Third*, as part of his July 2004 Second Amended Complaint, Berry asserted RICO claims predicated on both Fleming's copyright infringement and many of the same unconnected acts he raises in his latest complaint. *Id.*

The Hawaii Court disposed of nearly all of these claims on summary judgment. In doing so, the Hawaii Court found that Fleming and the Employees were liable for direct infringement of FCS for the period between March 7, 2003 and June 9, 2003 (leaving the calculation of

damages for a jury). Ex. G at 25, 39-40 (6/27/2005 Summary Judgment Order). Notably, the Hawaii Court found that this infringement was *inadvertent* because neither Fleming nor the Employees knew that they were using an infringing version of the software during this period; rather, both thought Fleming was using a cleaned-up version of FCS identical to the original licensed version. *Id.* at 28. Later, the Hawaii Court modified its order to cover only the period between April 1, 2003, and June 9, 2003, because Berry was only seeking post-bankruptcy damages from Fleming. *See* Ex. H at n. 3 (10/21/2005 Order). Berry believed that the automatic stay provision of the Bankruptcy Code prevented him from pursuing damages for the pre-bankruptcy period. *See* Second Amended Complaint ("SAC") ¶ 61 (S.D.N.Y. Docket No. 26).

The Hawaii Court also found that Fleming and the Employees were not liable for contributory infringement. Specifically, the Hawaii Court found that Fleming did not induce or encourage the Employees to use an infringing version of FCS because, although the Employees used an unauthorized derivative, nobody knew that they were doing so at the time of the infringement. Ex. G at 28. Instead, the Court found that the Employees (and Fleming) thought that they were using the original, licensed version of FCS. *Id.* As a result, the Hawaii Court found that Berry could not establish that any Defendant had knowingly induced or encouraged any Employee to infringe. *Id.*

Finally, the Hawaii Court dismissed Berry's RICO claim, finding that Berry had not established any RICO predicate acts. *Id.* at 35-37. Notwithstanding the Hawaii Court's dismissal of these (and other) claims, Berry went to trial seeking tens of millions in damages for Fleming and its employees' inadvertent infringement of FCS. Ex. I (Berry 2005 Pretrial Statement). Ultimately, a jury awarded Berry just $57,534. Ex. J (3/9/2006 Judgment). And in early March 2007, the Hawaii District Court awarded Fleming, C&S, Guidance Software (Fleming's forensic expert, whom Berry sued for infringement), and one of Fleming's executives a total of nearly $235,000 in costs and attorneys' fees. Ex. K (Order For Attorneys' Fees and Costs).

At the conclusion of the litigation, Berry sought a permanent injunction against multiple defendants—including both C&S, who had been exonerated of all infringement claims on summary judgment, and Fleming, who had by that time been out of business for nearly three years. Ex. L (3/9/2006 Order Denying Permanent Injunction). The Hawaii Court denied Berry's request, ruling that Berry had provided no evidence that either one of them posed any risk of continuing infringement. *See id.* at 5, 10.

Berry pressed on. On March 29, 2007, Berry filed the present lawsuit against Defendants in the Hawaii Court, again premised solely on Fleming's infringement of the FCS. *See* Orig. Compl. (Hawaii Docket No. 1). After the Hawaii Court transferred the case to this Court, and pursuant to this Court's order giving Berry a final opportunity to amend and supplement his claims against Defendants, Berry filed his Second Amended Complaint ("SAC"), seeking nearly $1 billion in damages from the Banks for vicarious and contributory copyright infringement, unjust enrichment, and RICO violations. Ex. M (Pl.'s Initial Disclosures) at 12-14. Berry also named three additional defendants (who are allegedly part of the vast criminal conspiracy) and asserted nine additional causes of action.

## III.   LEGAL STANDARD

A defendant may seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Supreme Court recently clarified the specificity with which a plaintiff must plead its complaint in order to survive a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007); *see also Iqbal*, 490 F.3d at 157-58. In doing so, the Court recognized that "a plaintiff's obligation to provide the grounds of his 'entitle[ment] to relief' requires ***more than labels and conclusions***, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted); *see also Achtman v. Kirby, McInerney & Squire LLP*, 464 F.3d 328, 337 (2d Cir. 2006) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss" (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

In ruling on a motion to dismiss, a court may look beyond the plaintiff's complaint to **matters of public record** without converting the motion into one for summary judgment (i.e., it may take judicial notice). *See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (stating that courts may "look to public records . . . in deciding a motion to dismiss"); *I. Meyer Pincus & Assocs. P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991) (finding that a court can consider the full text of SEC filings, prospectuses, analyst's reports, and statements integral to the complaint without converting a motion to dismiss into a motion for summary judgment and dismiss claim after reviewing SEC prospectus).

## IV.    ARGUMENT

### A.    Berry's Claims Are Barred By Claim Preclusion.

All of Berry's claims against Defendants are barred by the doctrine of claim preclusion. The doctrine of claim preclusion bars a plaintiff from relitigating causes of action it specifically pled in an earlier-resolved action, as well as claims that it could have pled in that action. *See Official Publ'ns v. Kable News*, 811 F. Supp. 143, 147 (S.D.N.Y. 1993). Claim preclusion also bars the litigation of these same or similar causes of action against new defendants, so long as the newly-added defendants have a sufficiently close relationship to the original defendant. *See Cameron v. Church*, 253 F. Supp. 2d 611, 623 (S.D.N.Y. Mar 24, 2003) (dismissing claims on motion to dismiss on basis of claim preclusion and issue preclusion); *see also Ruskay v. Jensen*, 342 F. Supp. 264, 271 (S.D.N.Y. 1972) (recognizing that the Second Circuit has "greatly diluted" the doctrine of mutuality, and has held that "mutuality should not be used to preclude the defensive use of res judicata against a person who was a party to the earlier litigation"). Accordingly, where (1) the prior action involved the same or sufficiently related parties; (2) the claims asserted in the subsequent action were (or could have been) raised in the prior action; and (3) the prior action involved an adjudication on the merits, a party may invoke claim preclusion. *See Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 362 (2d Cir. 2003).

1. **Berry's allegations establish that Defendants and Fleming are sufficiently related to permit Defendants to invoke claim preclusion.**

"Claim preclusion operates to preclude claims, rather than particular configurations of parties." *Cameron*, 253 F.Supp.2d at 623 ("Plaintiff's addition of new defendants, in the context of allegations of their involvement in the series of alleged deprivations, does not entitle him to revive the previously-dismissed claims"). Accordingly, where new defendants are "sufficiently related to one or more of the defendants in the previous action which arises from the same transaction," those defendants may invoke claim preclusion. *Official Publ'ns*, 811 F.Supp. 143, 147 (S.D.N.Y. 1993).

Berry's own allegations, which the Court takes as true, establish a sufficient relationship between Defendants and Fleming to permit Defendants to invoke claim preclusion. Berry alleges, for example, that Defendants are bound by the Hawaii Court's disposition of his claims against Fleming. *See* SAC ¶ 71; *see also* ¶ 52 ("res judicata prevents the re-litigation of issues regarding the ownership of the copyrights of the works that are the subject of this case"); ¶ 54 ("Fleming's failure to prevail on the defenses related to ownership and its failure to assert a counter-claim to establish ownership prevent Fleming or any party deriving rights from Fleming from challenging Mr. Berry's ownership."). That, however, could only be true if Defendants, as non-parties to those previous lawsuits, are sufficiently related to Fleming to bind them to the results of those proceedings. *See Official Publ'ns*, 811 F. Supp. at 147 (claim preclusion can only bind parties in privity). If Berry can invoke claim preclusion against Defendants, they can certainly invoke it against Berry.

Along the same lines, Berry alleges that the Fleming and Defendants were part of a conspiracy to infringe his copyrights. *See* SAC ¶ 69 (alleging that the Banks failed to withdraw from the "conspiracy" to infringe Berry's copyrights). Co-conspirators are, by definition, substantially related for purposes of the litigation against them, and courts have found that a suit against one co-conspirator will bar a subsequent suit against the other. *See Ruskay v. Jensen*, 342 F. Supp. at 271 (finding that plaintiff's claims were barred by claim preclusion where a

defendant in second suit was alleged to be a "co-conspirator" with the defendant in the first lawsuit); *Cahill v. Arthur Andersen & Co.*, 659 F. Supp. 1115, 1123 (S.D.N.Y. 1986) (dismissing claim where alleged co-conspirator defendant allegedly participated in events subject to earlier action).

Finally, Berry also alleges that Defendants are vicariously liable for the copyright infringement perpetrated by Fleming, its borrower. *See* SAC ¶¶ 167, 170. If two entities have a relationship such that one of them is vicariously liable for the conduct of another, they are generally deemed to be substantially related, and a judgment in a suit against one will preclude a subsequent action against the other. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 51; *see also Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1502-03 (11th Cir. 1990) (finding a substantial relationship, or privity, for claim preclusion purposes where "the party seeking its benefit [was] related by vicarious liability or respondeat superior to a defendant in a prior lawsuit").

In short, and without addressing what other and further defenses the Banks might have that they were not afforded an opportunity to present in the prior litigation, Berry's own allegations establish that Fleming and Defendants are substantially related with respect to Berry's claims.

### 2. Berry brought or could have brought his claims against Defendants in his earlier lawsuits against Fleming.

Claim preclusion also requires that the claims asserted in the subsequent action were (or could have been) raised in the prior action. The infringement claims Berry now asserts against Defendants are nearly identical to those he asserted in his two prior lawsuits against Fleming. In his first two lawsuits, Berry claimed that Fleming infringed FCS for nearly four years, beginning in October 1999. In this case, Berry again claims that Fleming infringed FCS during that four-year period (specifically, from September 2002, when Defendants, according to Berry, learned of Fleming's infringement, to June 9, 2003)—but this time adds that Fleming was under Defendants' control when doing so. *See* SAC at ¶¶ 69-71. This is no more than a transparent

attempt to clothe his old claims in a new legal theory and obtain duplicative damages. This cannot, however, save his claims from dismissal. *See Morgan Consultants v. Am. Tel. and Tel. Co.*, 546 F. Supp. 844, 848 (S.D.N.Y. 1982) (dismissing claims founded on the very same injury, seeking virtually the same relief, and premised on the same factual predicate or transaction, even when the claims were clothed under a new legal theory, because it is "the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies") (internal citations omitted).

Moreover, even though Berry now alleges that he did not sue Fleming for certain periods at issue in this lawsuit (notwithstanding his repeated injunctive requests that allege continuing infringement, the last of which he briefed on appeal in the fall of 2007), his claims against Defendants are still barred by claim preclusion. To satisfy the "same claim" element of claim preclusion, a party need not show that a particular claim was actually litigated in the first case. Rather, it is enough that the party show that the claim *could have been litigated* in that prior suit. *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 24 (setting forth rule against the splitting of actions that could be brought and resolved together).

Whether a claim could have been raised in prior litigation depends on "whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir.1992) (internal quotations omitted). *See also Cameron*, 253 F. Supp. 2d at 619-60 (noting that in determining whether two actions arise from the same transaction or claim, "[we look] to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage") (internal citations and quotations omitted). Another consideration is "whether an independent judgment in a separate proceeding would impair or destroy rights or interests established by the judgment entered in the first action." *Sure-Snap Corp. v. State St. Bank & Trust Co.*, 948 F.2d

869, 874 (2d Cir. 1991) (internal quotations omitted); *Commer v. McEntee*, 283 F.Supp.2d 993, 1000 (S.D.N.Y. 2003) (same).

There is no claim in this lawsuit that Berry could not have raised in the previous lawsuits.[2] All of Berry's copyright infringement, RICO, and unjust enrichment claims arise from the same set of facts that was at issue in the Fleming litigations. Because Defendants' liability under Berry's vicarious and contributory infringement theories is secondary to Fleming's liability, this third lawsuit, too, will center around whether Fleming infringed, when it infringed, whether any infringement was knowing, how much money, if any, Fleming made from any infringement, and how much money, if any, Berry has lost as a result. If this Court allows Berry's lawsuit to proceed, all of the same evidence will be presented as was presented in the first two actions. And as Berry's Initial Disclosures reveal, the same witnesses will be called as well. Ex. M (Pl.'s Initial Disclosures).

Moreover, it is possible that relitigating the issue of Fleming's infringement of FCS will impair Fleming's rights, as adjudicated in the first and second lawsuits. *See Sure-Snap Corp.*, 948 F.2d at 874. In those lawsuits, Fleming demonstrated, among other things, that it did not willfully infringe after March 6, 2003, and capped its potential liability at the amounts of the prior jury verdicts. Berry now seeks to relitigate these issues through Defendants, Fleming's alleged privies. If, for example, a jury was somehow to find that Defendants knowingly directed Fleming to infringe FCS, this finding would disturb and contradict the Hawaii Court's ruling that Fleming's own infringement was inadvertent, leaving Fleming open to further litigation against Berry. This is just the situation claim preclusion is designed to avoid.

---

[2] Berry alleges that he litigated the issue of Fleming's infringement only up until the date that he filed his first Complaint in July 2001. *See* SAC ¶ 61. And as an (ineffective) excuse for failing to raise these claims against Fleming in his second lawsuit, he cites to the Bankruptcy Code's automatic stay provisions. *Id.* But he has alleged no reason why he could not have previously brought his claims against the Banks, who were never protected by the automatic stay imposed by Fleming's bankruptcy. *See Int'l Distrib. Centers, Inc. v. Walsh Trucking Co.*, 62 B.R. 723, 736 (S.D.N.Y. 1986) (holding that while automatic stay prevents action against a bankrupt defendant, it "does not prevent further judicial proceedings from advancing against non-bankrupt co-defendants").

3.    **The first and second lawsuits are both final judgments on the merits.**

The third element of claim preclusion requires a final judgment on the merits in the first action. Here, both of Berry's prior lawsuits against Fleming ended with final judgments on the merits. And while the second lawsuit is currently on appeal, that does not preclude an otherwise valid application of claim preclusion. *See Petrella v. Siegel*, 843 F.2d 87, 90 (2d Cir. 1988) (finding that an appealed judgment is entitled to res judicata effect). This final element of claim preclusion is satisfied, and Berry's claims are therefore barred.

B.    **Berry's Unjust Enrichment Claim Must Be Dismissed With Prejudice.**

Berry claims that Defendants were unjustly enriched because Fleming repaid Defendants' secured loans with money generated by its infringement of FCS. He therefore attempts to recover, as damages, the benefit that Defendants allegedly received from the infringing use of his works (i.e., the profits of Defendants' alleged infringement). Because Berry's unjust enrichment claim does not allege any rights or subject matter other than or different from the rights and subject matter the Copyright Act protects, federal copyright law expressly preempts this claim. *See* 17 U.S.C. § 301(a). The Court should dismiss it summarily.

Courts and commentators consistently have acknowledged that when a state law unjust enrichment claim applies to copyrighted subject matter, the Copyright Act preempts the unjust enrichment claim. *See, e.g., Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004) (preempting unjust enrichment claim); *Faulkner v. Nat'l Geographic Soc'y*, 211 F. Supp. 450, 476-77 (S.D.N.Y. 2002) (same); *Boyle v. Stephens, Inc.*, No. 97 Civ. 1351 (SAS), 1998 WL 690816, at *6 (S.D.N.Y. Sept. 29, 1998) (collecting cases); MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 1.01(B)(1)(g) (2003) ("[A] state law cause of action for unjust enrichment or quasi contract should be regarded as an 'equivalent right' and hence, pre-empted insofar as it applies to copyright subject matter."); *see also* 17 U.S.C. § 301(a) (indicating when the Copyright Act preempts state law).

Berry's unjust enrichment claim should be dismissed with prejudice.

## C.    Berry's Copyright Claims Must Be Dismissed With Prejudice.

Berry cannot state cognizable claims for either contributory or vicarious infringement. Any claim related to copyright infringement that is alleged to have occurred before March 30, 2003 is barred by the three-year statute of limitations. And infringement claims after March 30, 2003 fail because: (i) as to his vicarious infringement claim, Defendants had no direct financial interest in Fleming's infringement; and (ii) as to his contributory infringement claim, Defendants could not plausibly have known about Fleming's infringement when even Fleming itself did not.

### 1.    Berry's pre-March 30, 2003 copyright claims are barred by the statute of limitations.

A plaintiff must file an action for copyright infringement "within three years after the claim accrued." 17 U.S.C. § 507(b). A claim for copyright infringement accrues when the injury takes place, that is, when the infringement occurs, regardless of whether the plaintiff has knowledge of the infringement at that time. *See Auscape Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235, 247 (S.D.N.Y. 2004) (citing *TRW, Inc. v. Andrews*, 534 U.S. 19 (2001)); *see also Vasquez v. Torres-Negron*, No. 06 Civ. 619 (CM), 2007 WL 2244784, at *7 (S.D.N.Y. July 11, 2007) (following *Auscape* and adopting the date of the infringing activity as the date of accrual for the plaintiff's claims). An action may be brought for acts of infringement that occurred within the three years before the plaintiff filed its complaint. *Auscape Int'l*, 409 F. Supp. 2d at 241.

Although Berry did not file the instant lawsuit until 2007, he entered into a tolling agreement with Defendants on March 30, 2006 to toll his claims against them. Ex. N (Tolling Agreement). Under that tolling agreement, only those claims that accrued after March 30, 2003 (three years before the parties entered into the tolling agreement) would remain viable under the Copyright Act's three-year limitations period. *Id.* The tolling agreement did not revive claims that accrued before March 30, 2003, which were already barred by the statute of limitations.

Berry nonetheless tries to save these stale claims by asserting, in passing, that the "Lenders" fraudulently concealed them from him. *See* SAC ¶¶ 61, 147. To establish fraudulent

concealment, a plaintiff must plead, with specificity, (1) the defendant's wrongful concealment, (2) which prevented the plaintiff's discovery of the nature of the claim within the limitations period, and (3) the plaintiff's due diligence in pursuing the discovery of the claim. *See In re Merrill Lynch Ltd. P'ship Litig.*, 154 F.3d 56, 60 (2d. Cir. 1998). The SAC does not meet these requirements. First, Berry does not specifically plead that Defendants—as opposed to other "Lenders"—engaged in the alleged fraudulent concealment, nor does he plead when the alleged fraudulent concealment took place or what facts the "Lenders" supposedly concealed. *See Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983) (holding that fraudulent concealment must be pled with particularity and stating that "generalized and conclusory allegations of fraudulent concealment" are not enough). Additionally, Berry does not plead that he diligently investigated his potential claims during the period he seeks to toll. *See World Wrestling Entm't., Inc. v. Jakks Pac., Inc.*, No. 04-CV-8223 (KMK), 2007 WL 4623027, at *37 (S.D.N.Y. Dec. 21, 2007) (granting motion to dismiss where plaintiff did not plead that he had diligently investigated his claims during period to be tolled). In fact, Berry's only alleged act of diligence—his sending of infringement warning letters—is the very act he also claims first put Defendants on notice of Fleming's infringement, thereby first subjecting them to secondary liability. *See SAC* ¶ 146. His diligence therefore could not, by definition, have taken place during the period to be tolled.

Indeed, by Berry's own allegations, he knew of or at least suspected that he had claims against Defendants in 2002 when he sent his infringement warning letters. *See SAC* ¶ 147. And to the extent that Berry needed additional information regarding Defendants' alleged infringement before he could bring a claim, he had every opportunity to obtain it in discovery in either his ongoing litigation against Fleming (which continued nearly unabated from 2002 through 2006, and specifically addressed issues of contributory infringement) or in the context of Fleming's bankruptcy case (in which Defendants were parties subject to discovery). *See, infra,* Section IV.C.2; *see also Moll v. U.S. Life Title Ins. Co. of New York*, 700 F. Supp. 1284, 1293 (S.D.N.Y. 1988) (finding on a motion to dismiss that "a party seeking to avoid the bar of the statute on account of fraud must aver and show that he used due diligence to detect it, and if he

had the means of discovery in his power, he will be held to have known it") (internal citations omitted). It is implausible that Berry would not have discovered that Defendants were directing (or, in this case, were *not* directing) Fleming's infringement, as he now contends, had he reasonably investigated his suspected claims. *See Twombly*, 127 S. Ct. at 1964-65 (requiring that allegations be plausible to survive a motion to dismiss). Any claim for infringement that occurred before March 30, 2003 is therefore barred and must be dismissed.

### 2. Berry's post-March 30, 2003 vicarious infringement claims fail because Defendants had no direct financial interest in Fleming's infringement.

Berry claims that Defendants vicariously infringed FCS. One infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit the infringement. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 931 n.9 (2005). Thus, a prima facie case for vicarious infringement requires a plaintiff to allege (i) direct infringement, (ii) the defendant's right and ability to stop or limit the infringing activity, and (iii) the defendant's direct financial interest in the infringing activity. *Id.* Berry has not and cannot allege facts showing that Defendants obtained a direct financial benefit from the infringement.[3] *See Softel, Inc. v. Dragon Medical and Scientific Comm'n, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997) (finding that a shareholder and president of a company did not vicariously infringe because any financial benefit he might have received from the infringement was too attenuated to be

---

[3] In his original complaint, Berry asserted that Defendants' ability to control Fleming derived from loan agreements between the parties. *See* Orig. Compl. ¶¶ 2, 9, 23-24 (Hawaii Docket No. 1). And in their original motion to dismiss, Defendants demonstrated that three different Bankruptcy Court orders approving these loan agreements bar any finding that Defendants controlled Fleming's operations. *See* Def. Mot. to Dismiss (Hawaii Docket No. 17). In response, Berry now makes the conclusory allegation that the "Lenders required Fleming to agree to the Lenders' control over the ability of their borrower to commit act [sic] of copyright infringement specifically related to the Berry works [sic] the FCS database." *See* SAC ¶ 156; *see also* SAC ¶ 80. Berry's conclusory assertion (which does not even say whether the alleged agreement is oral or written) is insufficient to satisfy federal pleading standards. *See Window Headquarters, Inc. v. MAI Basic Four, Inc.*, Nos. 91 Civ. 1816 (MBM), 92 Civ. 5283 (MBM), 1993 WL 312899, at *2 (S.D.N.Y. Aug 12, 1993) (defendant is entitled to know whether an alleged contract is written or oral.). And notably, Berry himself did not even raise this supposed agreement in support of his own motion for partial summary judgment on the issue of whether Defendants controlled Fleming, which he filed in Hawaii just months ago. *See* Berry's Mot. For Partial Summary Judgment (Hawaii Docket No. 25).

"direct"); *see also Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004) ("The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps . . . ."). As a result, his claim should be dismissed.

The crux of Berry's vicarious infringement claim is that Fleming used the profits it made by infringing FCS to repay Defendants' loans. But Fleming did not repay Defendants' loans from earnings or profits derived from its infringement. Instead, Fleming, in its post-bankruptcy capacity as a debtor in possession, repaid Defendants' loans out of *the pool of assets comprising the Fleming bankruptcy estate* pursuant to (among other things) a bankruptcy court order confirming Fleming's plan of reorganization. Ex. O (Confirmation Order); Ex. P (Plan of Reorganization). Berry never contested those payments, and is now precluded from doing so.

As a Fleming creditor, Berry had the right to investigate the bases for Fleming's loan repayments to Defendants (also Fleming creditors), and to contest them if he saw fit. *See* 11 U.S.C. § 101(10)(A) (defining a creditor as anyone who "has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor"). Specifically, because bankruptcy proceedings are designed to adjudicate the rights of all creditors, vis-à-vis other creditors, to be paid on their alleged claims, the Bankruptcy Code and applicable case law provide creditors with ample opportunity to investigate and contest claims asserted by other creditors. For example, if a creditor has doubt as to whether another creditor's claim is proper, it can take discovery—even without instituting any formal action—by filing a motion pursuant to Bankruptcy Rule 2004. *See* FED. R. BANKR. P. 2004 (allowing any party in interest to take discovery of any entity). A creditor can also (either before or without taking Rule 2004 discovery) formally object to another's claim, asking the bankruptcy court to adjudicate whether the debtor may pay it. *See* 11 U.S.C. § 502(a) (permitting parties in interest, including creditors, to object to claims). Additionally, where appropriate, a creditor can institute a proceeding to equitably subordinate another creditor's claim, arguing the claim arose on account of that creditor's wrongdoing. *See* 11 U.S.C. § 510(c); *see also In re Big Wheel Holding Co., Inc.*, 214

B.R. 945, 951 (D. Del. 1997) (recognizing that a party can make a claim for equitable subordination if it can show inequitable conduct, unfair advantage to a particular creditor, and that subordination would not be inconsistent with the Bankruptcy Code). And once a party has proposed a plan of reorganization, a creditor can object to the payments contemplated under that plan—and appeal an adverse result. *See* 11 U.S.C. §§ 1128, 1144. In short, creditors like Berry have no shortage of mechanisms by which to stop another creditor from improperly receiving payment on a claim.

Despite these myriad options, Berry never once contested Defendants' claims. Ex. Q (List of Berry Filings in Fleming Bankruptcy Case). Berry did not take any discovery regarding Defendants in the bankruptcy case (even though he alleges in his SAC that he warned Defendants of the infringement as early as the fall of 2002), nor did he object to Defendants' claims, seek to have Defendants' claims equitably subordinated, or object to Defendants' proposed payments under the reorganization plan. *See* SAC ¶ 146 (alleging that the lenders "were given infringement warning letters" in the fall of 2002). He simply did nothing with respect to Defendants—for almost five years—until he filed the this lawsuit.[4] And now that a bankruptcy court has long since approved Defendants' payments from the entire pool of Fleming assets (notably, not from the assets or profits coming out of Hawaii or any other distinct FCS-related division), Berry cannot plausibly argue (and the SAC does not suggest) that the payments came as a direct result of the infringement. They came as a direct result of a bankruptcy court's orders, including the confirmation order, which must now be respected. *See In re DiBerto*, 171

---

[4] That is not to say that Berry was not actively involved in Fleming's bankruptcy case. He was. Berry filed no fewer than 33 papers in Fleming's bankruptcy case. Ex. Q (List of Berry Filings in Fleming Bankruptcy Case). He objected to the plan of reorganization (although *not* to Defendants' distribution as set forth in the Plan—which he now seeks to recover *for himself* here), and cross-examined the witnesses Fleming presented in support of confirmation of the plan. *Id.*; Ex. R (Confirmation Hr'g Tr.) at Index. At the conclusion of that proceeding, the Bankruptcy Court overruled Berry's objection, estimated the value of his claims against Fleming at $100,000, and entered an order confirming Fleming's plan and authorizing the payments to Defendants proposed therein. Ex. R (Confirmation Hr'g Tr.); Ex. O (Confirmation Order). Berry then appealed that order, only to withdraw his appeal days later. Ex. Q (List of Berry Filings in Fleming Bankruptcy Case). That order is now final—and has been for more than three years.

B.R. 461, 472 (Bankr. D.N.H. 1994) ("When [a] creditor has notice and [a] full opportunity to make its views and objections known during reorganization and confirmation process . . . . creditor is bound by terms of reorganization plan upon the entry of confirmation order. . . . Application of doctrine of res judicata to confirmation order supports strong policy of finality in reorganization process."); 11 U.S.C. § 1144 (providing the exclusive means to attack a confirmation order, which may only be done within 180 days of confirmation and only in the instance of fraud); *Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972) (holding an unsecured creditor's post-arrangement suit against a secured creditor for fraudulent misrepresentation at a creditors' meeting constituted a collateral attack on the confirmation order).

Putting aside the Bankruptcy Court's orders, the loan agreements themselves establish that Defendants did not—and could not—profit from Fleming's infringement. Under the loan agreements Fleming paid Defendants a fixed periodic fee—consisting of principle and interest—for the term of the loan. *See generally* Ex. S at Art. II (Prepetition Credit Agreement) (describing Fleming's payment obligations to Defendants); Ex. T at Art. II (Postpetition Credit Agreement) (same). This fixed fee was in no way dependent on the profits or losses of any of Fleming's many distribution centers—including its Hawaii center. Thus, even if Fleming had made additional profits on account of its infringement of Berry's works in Hawaii, Defendants were not entitled to any additional payments or revenues on account of such profits. *See Deutsch v. Arnold*, 98 F.2d 686, 687-88 (2d Cir. 1938) (holding that landlord who collected a $200 lease fee from her tenant was not vicariously liable for tenant's copyright infringement where the landlord "received nothing, and w[as] not entitled to receive anything through [the] tenant's acts of infringement"); *Artists Music*, 1994 WL 191643, at *6 (finding that a trade show organizer who charged a fixed rental fee and received an admission fee from attendees did not have a direct financial interest in infringement by 4 of 134 vendors because the limited infringement did not affect gate receipts at the show); *Ellison*, 357 F.3d at 1078 (finding that plaintiff did not show

that defendant's revenues—derived from one-time set up fees and fixed periodic fees—were at all dependent on the infringement).

Because the only payments Defendants received from Fleming were those authorized by Bankruptcy Court orders (which Berry did not contest), and because the amount of those payments did not increase or decrease on account of Fleming's infringement, Berry cannot show that Defendants stood to receive or actually received a direct financial benefit from Fleming's infringement. Berry's vicarious infringement claim must be dismissed.

### 3. Berry's post-March 30, 2003 contributory infringement claims are barred by collateral estoppel.

Berry claims that Defendants are liable for contributory infringement because they knowingly directed Fleming to use an infringing version of FCS after Berry's March 6, 2003 jury verdict. A party contributorily infringes when it intentionally induces or encourages direct infringement. *See Grokster*, 545 U.S. at 930. Liability under this theory requires substantial involvement in a specific act of infringement. *See Demetriades v. Kaufmann*, 690 F. Supp. 289, 294 (S.D.N.Y. 1988) ("[J]ust as benefit and control are the signposts of vicarious liability, so are knowledge and participation the touchstones of contributory infringement.") (citing *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). Thus, a prima facie case for contributory infringement requires (i) a third party's direct infringement, (ii) the defendant's actual or constructive knowledge of the direct infringement, and (iii) the defendant's substantial participation in the infringing activities. *Id.* Because Berry has not and cannot present any plausible theory under which the Court could find that Defendants had actual or constructive knowledge of Fleming's infringement during the operative period, his claim must be dismissed.

Berry alleges that after the March 6, 2003 jury verdict and continuing until June 9, 2003, Defendants, with knowledge that Fleming was going to continue to infringe, directed Fleming to use "another derivative" of FCS. SAC ¶¶ 152, 154-155. But the Hawaii Court has already held that *Fleming itself did not know that it was infringing* during this period. Ex. G at 28

(6/27/2005 Summary Judgment Order) (finding that "the evidence shows that the infringement was not willful, and that Employees believed that they were using the original licensed version of FCS"). Rather, Fleming (and its employees) believed that it had reverted back to and was properly using the original, licensed version that it had received from Berry in 1999. Ex. A at 28 (1/26/2005 Summary Judgment Order). In light of this finding, Berry cannot plausibly allege that Defendants knew or had reason to know of Fleming's infringement when even Fleming did not. *See Gershwin Publ'g Corp*, 443 F.2d at 1162 ("One who, with knowledge of [the] infringing activity, induces, causes or materially contributes to [the] infringing conduct of another may be held liable as a 'contributory' infringer"); *see also* Ex. G at 28 (6/27/2005 Summary Judgment Order) (finding that "[i]n light of the inadvertent nature of the infringement, Berry also fails to prove that any Defendant's action was 'intentional' . . . [and] therefore does not make out a prima facie case of contributory infringement").

Berry attempts to get around this problem by alleging that the Hawaii Court's ruling applies only to Fleming's post-April 1, 2003 infringement, leaving open the issue of whether Fleming knowingly infringed for the three weeks between March 6, 2003 and April 1, 2003. *See* SAC ¶ 62 (alleging that the second lawsuit related only to the period between April 1, 2003 and June 10, 2003). This argument is nonsensical. On summary judgment, the Hawaii Court ruled that Fleming's infringement of FCS from March 6, 2003 to June 9, 2003 was inadvertent. Ex. G at 28 (6/27/2005 Summary Judgment Order.) The court later modified that ruling because Berry told the court that he was only seeking damages from April 1, 2003 onward. Ex. H (10/21/2005 Order). On these facts, and given that after the first jury verdict Fleming is alleged to have used the exact same version of FCS both before and after April 1, 2003, Berry cannot plausibly allege that Fleming (or Defendants) knew it was infringing *before* April 2003 when the Hawaii Court ruled that it did not have knowledge thereafter. *See Iqbal*, 490 F.3d at 157-58 (2d Cir. 2007) (applying flexible "plausibility standard" to pleadings, "which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to

render the claim *plausible*") (emphasis in original).  Berry's contributory infringement claims therefore fail.

**D.    Berry's RICO Claims Must Be Dismissed With Prejudice.**

To state a civil RICO claim, a plaintiff must first plead seven elements:  "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983).  The plaintiff must also plead that he or she was "injured in his business or property" as a result of the RICO violation. *Id.*

Attempting to decipher Berry's SAC, he appears to claim that there is a vast criminal enterprise that is engaged in acts as diverse as cigarette trafficking (SAC ¶ 257), trafficking in firearms (*id.* ¶ 266), taking judgment-debtor exams (*id.* ¶ 281), money laundering (*id.* ¶ 265), assaulting Berry's family members (*id.* ¶ 270), serving Berry with divorce papers (*id.* ¶ 87), and, of course, appropriating Berry's FCS (*id.* ¶ 278).  Members of this enterprise apparently include Defendants, most of the lawyers representing Defendants (*see, e.g., id.* ¶ 95), other opposing counsel (*id.*), his former counsel (*id.* ¶283), Fleming (*id.* ¶278), the Fleming Post-Confirmation Trust (*id.* ¶283), Halliburton (*id.* ¶¶ 310-314), and others.

Berry has failed to allege, however, that Defendants were sufficiently involved in this so-called enterprise for RICO liability to attach.  All that Berry has alleged (beyond conclusory allegations of "control") is that Defendants loaned Fleming money.  But for Defendants to be liable under RICO, they would need to have played some part in "directing the enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  Multiple courts have held that lending institutions, merely by lending money to an enterprise, do not meet this standard. *See, e.g., Indus. Bank of Latvia v. Baltic Fin. Corp.*, No. 93 Civ. 9032 (LLS), 1994 WL 286162, at *3 (S.D.N.Y. June 24, 1994) (dismissing RICO claim against bank and individual officers on a motion to dismiss because "provid[ing] banking services—even with knowledge of the fraud—is

not enough" to state a RICO claim); *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998) (dismissing RICO claim where bank was only alleged to have actively assisted enterprise, not directed its affairs); *Jubelirer v. Mastercard Int'l, Inc.*, 68 F. Supp. 2d 1049, 1053 (W.D. Wis. 1999) (dismissing RICO claim against credit card company for providing funds that were used for gambling because "merely having a business relationship with and performing services for an enterprise . . . including financial, accounting and legal services, does not support RICO liability"). Indeed, adopting Berry's theory of RICO would fundamentally change the age-old nature of the relationship between a commercial lender and its borrower.

In addition, Berry's RICO claim is barred by the four-year statute of limitations. A RICO claim accrues when a plaintiff first discovers his RICO injury. *See Rotella v. Wood*, 528 U.S. 549, 554 (2000). As an initial matter, Berry has not alleged how he was injured (for purposes of RICO) on account of the enterprise's alleged Hobbs Act violations, witness retaliation, bribery, and money laundering. *See* SAC ¶ 283; *see also Shaw v. Rolex Watch U.S.A., Inc.*, 776 F. Supp. 128, 134 (S.D.N.Y. 1991) ("[C]ourts have uniformly held that injuries such as emotional distress or physical injury are not cognizable under RICO"). The only actual injury that he claims derives from the enterprise's continued infringement of his copyrighted works (which Defendants allegedly controlled). Berry, by his own admission, has been litigating these infringement claims since 2001, and has in fact received damages on account of these claims. *See* SAC ¶¶ 40-78. As Berry necessarily had to know of his injury in order to sue and recover on it, his RICO claim is barred by the statute of limitations (as well as, ostensibly, by the bar against duplicative damages).

Furthermore, Berry's claim fails because he has not adequately alleged that any "enterprise" exists. An enterprise under RICO is "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981) (emphasis added). In determining whether a RICO enterprise exists, courts in the Second Circuit look to the "'hierarchy, organization, and activities' of an association-in-fact to determine whether its members functioned as a unit." *First Nationwide Bank v. Gelt Funding*

*Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993) (citations omitted).  The only thing the individuals and companies named in Berry's SAC have in common is that they all are alleged to have wronged Berry.  Naming unconnected people, alleging that they did a number of unconnected acts, and calling them an "enterprise" is not sufficient to state a RICO claim.  *See Moy v. Terranova*, No. 87 CV 1578 (SJ), 1999 WL 118773, at *5 (E.D.N.Y. Mar. 2, 1999) (dismissing RICO complaint because plaintiff's "conclusory 'naming of a string of entities' does not adequately allege an enterprise . . .") (citations omitted); *First Nationwide Bank*, 820 F. Supp. at 98 (dismissing RICO claim because "[c]onclusory allegations that disparate parties were associated in fact" was insufficient to state a claim, "absent allegations as to how the members were associated together in an 'enterprise'").

Finally, for the reasons provided above, Berry cannot establish a claim for secondary copyright infringement—much less criminal copyright infringement—against Defendants.  *See* 17 U.S.C. § 506(a) (criminal infringement attaches only if willful infringement was committed for, among other things, commercial advantage or private financial gain).  Berry's RICO claims must be dismissed.

## V.    CONCLUSION

Defendants request that the Court dismiss Berry's SAC with prejudice and without leave to amend because:  (i) all of Berry's claims are barred by claim preclusion; (ii) Berry's unjust enrichment claim is preempted by the Copyright Act; (iii) Berry's copyright claims before March 30, 2003 are barred by the statute of limitations, and those occurring after that date fail as a matter of law; and (iv) Berry has not alleged the necessary elements of a RICO claim.

DATED:  January 25, 2008

By:    /s/ Michael E. Baumann

KIRKLAND & ELLIS LLP
Michael E. Baumann (admitted *pro hac vice*)
Erin N. Brady (admitted *pro hac vice*)
777 South Figueroa Street
Los Angeles, California  90017
Telephone:    (213) 680-8400
Facsimile:    (213) 680-8500
E-mail:  ebrady@kirkland.com

Counsel for Defendants

- and -

WHITE & CASE LLP
Andrew DeNatale (ADN 2429)
Jonathan Moskin (JM 9814)
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone:    (212) 819-8200
Facsimile:    (212) 354-8113
E-mail:  adenatale@ny.whitecase.com

Of Counsel for Defendants