# EXHIBIT A

FILED IN THE
UNITED STATES DISTRICT COURT,
DISTRICT OF HAWAII     LRS
                       AEL
JAN 26 2005
at 2 o'clock and 28 min. P. M.
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen, | ) ) ) | Civ. No. 03-00385 SOM/LEK |
| Plaintiff, | ) ) | ORDER GRANTING DEFENDANT FOODLAND'S MOTION FOR SUMMARY |
| vs. | ) ) ) | JUDGMENT; GRANTING DEFENDANT HAWAII TRANSFER COMPANY'S |
| HAWAII EXPRESS SERVICE, INC., a California corporation; et al. | ) ) ) ) | MOTION FOR SUMMARY JUDGMENT; AND GRANTING IN PART, DENYING IN PART DEFENDANTS DILLON, |
| Defendants. | ) ) ) ) | NOA, AND CHRISTENSEN'S MOTION FOR SUMMARY JUDGMENT. |

ORDER GRANTING DEFENDANT FOODLAND'S MOTION FOR SUMMARY JUDGMENT;
GRANTING DEFENDANT HAWAII TRANSFER COMPANY'S MOTION FOR SUMMARY
JUDGMENT; AND GRANTING IN PART, DENYING IN PART DEFENDANTS
DILLON, NOA, AND CHRISTENSEN'S MOTION FOR SUMMARY JUDGMENT.

I.     INTRODUCTION.

Plaintiff Wayne Berry is suing multiple defendants for

copyright infringement and related matters.  Defendant Foodland

Super Market, Limited ("Foodland"), moves to dismiss the Second

Amended Verified Complaint ("SAVC"), or, in the alternative, for

summary judgment on all claims in which it is named.[1]  In a

separate motion, Defendant Hawaii Transfer Company, Limited

("HTC"), moves for summary judgment.  In a third motion,

Defendants Mark Dillon, Brian Christensen, and Teresa Noa

_____

[1] Because the court considers evidence beyond the pleadings,
the court treats the motion as one for summary judgment with
respect to Counts I, II, III, and VI.

1

(collectively, "Employee Defendants") also move for summary
judgment.  The court grants the motions brought by Foodland and
HTC.  The court grants in part and denies in part Employee
Defendants' motion.

II.        BACKGROUND.

        In 1993, Berry created Freight Control System ("FCS"),
a computer program that can be used to coordinate shipments of
goods.  In 1999, Berry gave Fleming, a wholesale grocery
distributor, a nonexclusive license to use FCS.

        In 2001, Berry sued Fleming in this district for
infringing his copyright to FCS, and his copyrights to two other
programs.  Berry v. Fleming Companies, Inc. et al., Civ. No. 01-
00446 SPK/LEK.  On March 6, 2003, a jury found that Berry owned
the copyrights to all three programs and that Fleming had a
license to use all three programs.  The jury further found that
Fleming had made unauthorized changes to Berry's software and
awarded Berry $98,250 in damages.

        After the jury verdict, Fleming attempted to comply
with Berry's copyright by reverting back to the version of FCS
that Berry had licensed Fleming to use in 1999.  Ex. N to Hogan
Dec. ¶ 11.  Dillon, Fleming's Local Area Network Administrator,
found that the oldest archived copy of FCS was from June 2000.
Id. ¶ 13.  The June 2000 version was identical to the 1999

version, except for three kinds of changes Fleming had made: a Y2K feature, a field scratch name, and two label changes.  Id. Dillon removed the Y2K feature and continued using FCS.  Dillon has explained that he simply forgot about the other changes at the time.  Ex. C to Hogan Dec. at 29.

On May 6, 2003, Dillon sent an email to Brian Christensen, Fleming's Hawaii Division President.  Dillon reported that the original FCS version was inadequate for Fleming's needs.  See Ex. L to Hogan Dec.  Access to the FCS database was slow, and the program no longer fit Fleming's needs. See Ex. N. to Hogan Dec. ¶ 15.  Fleming eventually instructed Dillon to "get completely away" from FCS by taking Fleming's data out of the program and putting it into Excel spreadsheets.  See id. ¶ 17.  Dillon did this, using a program called MS Query, which requested Fleming's data from FCS and inserted the data into spreadsheets.  See id. ¶ 18.  According to Dillon, after June 9, 2003, Fleming used only Excel, and has not used FCS.  See id. ¶ 21.  Fleming has subsequently been purchased by Defendant C&S Logistics of Hawaii ("C&S").

Foodland is a retail grocery chain, which purchased some of its groceries from Fleming.  Foodland placed its orders with Fleming over the telephone, Oshiro Dec. ¶ 4, and, after C&S bought Fleming, has been doing business with C&S.

3

HTC is a trucking company that contracted with Fleming to provide transportation services for containers and products between the Honolulu docks and the Fleming storage facility. HTC has continued to provide services to C&S.

All three Employee Defendants moved from Fleming to C&S when C&S bought Fleming. Mark Dillon is now the Local Area Network Administrator for C&S. Teresa Noa, formerly Dillon's supervisor at Fleming, is the Logistics Supervisor at C&S. Brian Christensen is now the President of C&S in Hawaii.

On June 18, 2004, Berry filed the SAVC with this court, alleging direct infringement of his FCS software (Count I), contributory and vicarious infringement (Count II), a conspiracy to infringe (Count III), the Misappropriation of Trade Secrets (Count IV), violations of the Sherman Act (Count V), and Racketeer Influenced and Corrupt Organizations (RICO) violations (Count VI). Berry names Foodland and HTC as Defendants in Counts I, II, III, V, and VI. Berry names Dillon, Christensen, and Noa in Counts III and VI. Although Berry does not identify them by name in Count I, the court construes Berry's reference to "each employee and/or agent of defendants named" as including Dillon, Christensen, and Noa, as each was employed by Fleming, which is named as a defendant.

4

III.    <u>STANDARD OF REVIEW.</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal upon the "failure to state a claim upon which relief can be granted." On a motion to dismiss pursuant to Rule 12(b)(6), the court is limited to the contents of the complaint, and all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. <u>See</u> <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996) (citations omitted). <u>Accord</u> <u>Kennedy v. H & M Landing, Inc.</u>, 529 F.2d 987, 989 (9th Cir. 1976) ("On a motion to dismiss, material allegations of the complaint are taken as admitted, and the complaint is to be liberally construed in favor of the plaintiff.").

If matters outside the pleadings are considered, the motion to dismiss is treated as one for summary judgment. <u>See</u> <u>Keams v. Tempe Tech. Inst., Inc.</u>, 110 F.3d 44, 46 (9th Cir. 1997); <u>Anderson v. Angelone</u>, 86 F.3d 932, 934 (9th Cir. 1996).

Summary judgment shall be granted when:

> the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); <u>see also</u> <u>Addisu v. Fred Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000). One of the principal purposes of summary judgment is to identify and dispose of factually

5

unsupported claims and defenses.  <u>Celotex Corp. v. Catrett</u>, 477

U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party who

fails to demonstrate facts to establish what will be an essential

element at trial.  <u>Id.</u> at 322.  The burden initially lies with

the moving party to identify for the court "the portions of the

materials on file that it believes demonstrate the absence of any

genuine issue of material fact." <u>T.W. Elec. Serv., Inc. v. Pac.</u>

<u>Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987)

(citing <u>Celotex Corp.</u>, 477 U.S. at 323).  "When the moving party

has carried its burden under Rule 56(c), its opponent must do

more than simply show that there is some metaphysical doubt as to

the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith</u>

<u>Radio Corp.</u>, 475 U.S. 574, 586 (1986) (footnote omitted).  The

nonmoving party may not rely on the mere allegations in the

pleadings and instead must set forth "specific facts showing that

there is a genuine issue for trial."  <u>Id.</u>  At least some

"'significant probative evidence tending to support the

complaint'" must be produced. <u>Summers v. A. Teichert & Son,</u>

<u>Inc.</u>, 127 F.3d 1150, 1152 (9th Cir. 1997) (quoting <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).  "[I]f the

factual context makes the non-moving party's claim implausible,

that party must come forward with more persuasive evidence than

would otherwise be necessary to show that there is a genuine

issue for trial." Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita, 475 U.S. at 587).

However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T. W. Elec. Serv., 809 F.2d at 631. All evidence and inferences must be construed in the light most favorable to the nonmoving party. Id. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. Id.

IV.    ANALYSIS.

A.    The Motions Filed By Foodland and HTC are Granted.

Foodland and HTC move for dismissal or summary judgment on all counts of the SAVC in which they are named. The court grants summary judgment to Foodland and HTC on all claims except the Sherman Act claims, which are dismissed.

1.    Summary Judgment is Granted to Foodland and HTC on Berry's Claim of Direct Infringement.

Count I of the SAVC alleges direct infringement of Berry's FCS software. Because there is no evidence that either Foodland or HTC was a direct infringer, the court grants the

7

motions for summary judgment with respect to Count I of the SAVC.[2]

  Direct copyright infrigement requires a showing by a plaintiff (1) that the plaintiff owns the copyright, and (2) "that the defendant himself violated one or more of the plaintiff's exclusive rights under the Copyright Act." Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004). A plaintiff may show a violation through direct copying, or through the defendant's access to the infringed work, and a substantial similarity between the infringed and infringing works. Pasillas v. McDonald's Corp., 927 F.2d 440, 442 (9th Cir. 1991).

   a. Berry Does Not Establish Direct Infringement by Foodland.

  Berry argues that Fleming allowed Foodland to use the FCS software, free of charge. This unauthorized use, Berry contends, directly infringed on his copyright. As evidence of Foodland's infringement, Berry states that Foodland's President, Abel Porter, told him that "Fleming had offered to agree to let Foodland use [Berry's] Freight Control Software without having to pay [Berry] anything." Berry Dec. ¶ 26. Berry further claims that "Mr. Porter said that Foodland did not see any reason to pay

---

  [2] As discussed below, the time frame covered by Count I is not clear. With respect to Foodland and HTC, however, the result is the same, regardless of whether Berry alleges conduct occurring before or after the actions in issue in his other case.

8

me to use my software when it could get the use of it from Fleming for free." Id.

Berry also notes that Brian Christensen, President of Fleming's Hawaii division, stated that Foodland sends invoices and other bills via electronic data interchange ("EDI") to an accounting office in Brattleboro and uses EDI to transmit data to Fleming and C&S. See Ex. T to Hogan Dec.[3] Berry claims that, because FCS also uses EDI, a material fact exists as to whether Foodland uses FCS. Berry further argues that, in September 2004, Foodland advertised a job opening for a computer programmer. Berry argues that the computer system described in the advertisement is "almost identical" to FCS, proving direct infringement. Berry Dec. ¶ 60.

Finally, Berry points to a printout of files on Fleming's system. See Ex. B to Berry Dec. He claims that numerous files containing the name "Foodland" are "Foodland related reports being run in my Freight Control System." See Berry Dec. ¶ 30.

The court is not persuaded. Foodland presents direct evidence, in the form of a Declaration by Robert Murphy,

---

[3] Christensen now claims that, contrary to his earlier statements, Foodland does not use EDI for transactions with C&S. Berry claims that this, in and of itself, creates a material issue of fact. For purposes of this motion, the court construes the facts in favor of Berry, assuming that Foodland used EDI to communicate with Fleming and C&S.

9

Foodland's Chief Information Officer, that Foodland has never used or possessed a copy of Berry's FCS. See Murphy Dec. ¶ 6 ("Foodland does not have a copy of the Berry Freight Control System. Foodland has never had a copy of the Berry Freight Control System."). Foodland has also answered Berry's interrogatories on the subject by clearly stating, "Foodland does not own or have access to any 'Freight Control Software.'" Ex. N to Hogan Dec.

Nor does Porter's statement prove Berry's case. Rather, the statement that "Fleming had offered to agree to let Foodland use [FCS] without having to pay anything" concerns only an offer by Fleming, not any agreement by Foodland. The statement therefore does not prove any actual infringement by Foodland.

Similarly, Foodland's use of EDI does not prove direct infringement of FCS. To the contrary, the sending of bills and invoices through electronic means has little to do with software designed to facilitate freight control. Murphy explained in his Declaration that Foodland began using EDI to communicate with McKesson Drug, one of its vendors, in June 2004. See Murphy Dec. ¶ 3. Even if the court accepted Christensen's statement that Foodland used EDI to communicate with C&S, that would establish only the use of some electronic form of communication, not infringing use of FCS.

10

With respect to the advertised job opening, Berry again fails to meet his burden.  The advertisement seeks candidates with a range of experience, including experience with "Oracle, MS SQL Server, SQL programming and at least two years experience with Crystal Reports." Ex. J to Berry Dec.  Berry presents no evidence beyond the job advertisement to explain how this proves infringement of FCS.  The job requires knowledge of several commercially available software programs that are unlikely to make Foodland's system "identical" to Berry's software.

Berry's reference to the printout is similarly unpersuasive.  Although Berry states that the printout lists Foodland reports being run in FCS, he does not explain how he knows that reports are being run in FCS.  Nor does Berry establish that infringement by Foodland occurred through Fleming's alleged use of FCS to record activities relating to Foodland.  Berry establishes no foundation for his assertion and does not explain how any file name demonstrates direct infringement by Foodland.  His bald assertion does not meet his burden for establishing triable facts.  See MAI Systems Corp. v. Peak Computer, 991 F.2d 511, 517–18 (9th Cir 1993) (unsupported assertions insufficient to defeat summary judgment).

Berry argues that, because he is the nonmoving party, the court must construe all inferences in his favor on a motion for summary judgment.  Berry, however, overstates the burden of

11

the moving parties on these motions.  The court need not draw all possible inferences in Berry's favor, only all reasonable ones. See <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002) ("We scrutinize the evidence and reasonable inferences to determine whether there is sufficient probative evidence to permit a finding . . . based on more than mere speculation, conjecture, or fantasy.") (citations omitted).

Because Berry fails to raise any issues of material fact, Foodland's motion for summary judgment on Count I is granted.

b.    Berry Does Not Establish Direct
      Infringement by HTC.

Berry's claim of direct infringement against HTC also fails.  Berry contends that HTC directly infringed by illegally accessing Fleming's version of FCS.  Berry alleges that "Fleming put HTC on the network in 2002, to use the Berry Freight Control System to allow them to input data directly in the Berry database."  As proof, Berry offers several files, discovered on the Fleming network, with names such as "HTC Schedule Rpt."  <u>See</u> Ex. B to Berry Dec.  Berry further points to the use by HTC employees of "fleming.com" and "cswg.com" email addresses, arguing that these email addresses prove that HTC employees are "on the network" to facilitate the unauthorized use of FCS.  As further proof, Berry points to an agreement between HTC and Fleming, whereby HTC agrees to "maintain accurate records and

12

documentation of the facts relating to . . . demurrage, detention or delays." Ex. E to Hogan Dec.

Berry again fails to meet his burden. He offers no evidence that the files on Fleming's system were created by HTC or demonstrate any HTC access to the Fleming system. He does not explain the contents of those files, but rather leaps to the conclusion that the names of the files demonstrate infringement. Contrary to Berry's assertions, the existence of files named "HTC Schedule" on Fleming's system does not necessarily indicate direct infringement by HTC. Berry needs to show how he would meet his burden at trial of tying that name to direct infringement.

Similarly, Berry's argument that HTC employees' email addresses establish infringement is not persuasive. The use by HTC employees of "fleming.com" email addresses does not mean that the HTC employees had access to Fleming's files, or to Fleming's system. Berry offers no evidence that HTC employees had this access; his assertion that HTC employees used FCS through Fleming's system is unsupported.

Finally, the detention and demurrage agreement that Berry presents says nothing about software and does not appear to implicate use of FCS in any way. HTC's agreement to track delays of its freight has no bearing on its purported illegal use of FCS.

13

Further, HTC presents direct evidence that its employees have never accessed any Freight Control System used by Fleming and/or C&S. See Kunimura Dec. ¶ 13; Hering Dec. ¶ 6.

The most Berry does is seek to have the court draw inferences from the evidence he presents. But, as the court notes above, in drawing inferences, the court does not speculate or accept every possible interpretation. See Villiarimo, 281 F.3d at 1065.

> 2.  The Court Grants Summary Judgment to Foodland and HTC on Berry's Claim of Contributory Infringement.

Berry does not establish contributory infringement by either Foodland or HTC. Accordingly, both defendants' motions for summary judgment are granted with respect to contributory infringement.

To succeed on a claim of contributory infringement, a plaintiff must show (1) direct infringement by a primary infringer, (2) knowledge of the infringement by the defendant, and (3) the defendant's material contribution to the infringement. Metro-Goldwyn-Meyer Studios, Inc. v. Grokster, Ltd., 380 F.3d 1154 (9th Cir. 2004).

> a.  Berry Does Not Show Contributory Infringement by Foodland.

As explained below, Berry does raise a material issue of fact as to direct infringement with respect to some other parties, at least within a limited time frame. Even assuming

14

that Berry establishes direct infringement, however, he fails to establish either that Foodland had knowledge of that infringement, or that Foodland made any material contribution to such infringement.  Berry thus fails to meet his burden of showing material issues of fact with respect to his claim against Foodland of contributory infringement.

As evidence of Foodland's alleged knowledge of Fleming's infringement, Berry points to Porter's statement that "Fleming had offered to agree to let Foodland use FCS without having to pay."  This statement, however, demonstrates only that Foodland knew Fleming had access to FCS, not that Foodland had knowledge of any infringement.  Berry does not present any other evidence to establish Foodland's knowledge of any infringement, and thus fails the second prong of the Metro-Goldwyn-Meyer test.

Regarding the third prong, Berry alleges that Foodland made material contributions to Fleming's infringement in two ways.  First, Berry alleges that Porter's statement that "Fleming had offered to agree to let Foodland use FCS without having to pay" demonstrates contribution to Fleming's infringement. Second, Berry claims that "The freight bills and the Guidance Software records show that Foodland continued to contribute to Fleming's unrelenting infringement."

With regard to Porter's statement, Berry does not establish that Foodland ever used FCS, that any agreement to

15

infringe was ever consummated, or that any contribution to infringement was ever offered or given by Foodland.

Berry also fails to explain how freight bills and Guidance Software records establish contributory infringement. Berry again cites to Exhibit B of his own Declaration, a list of files he claims are "numerous Foodland related reports being run in my Freight Control System." Berry, however, does not explain how these file names demonstrate any contributory infringement.

  b. Berry Does Not Establish Contributory
    Infringement By HTC.

Berry similarly fails to show any knowledge of or material contribution to infringement by HTC. Relying on the same facts he relied on in alleging direct infringement, Berry claims that HTC "materially contributed to the infringement by operating its business with the pirated derivative of the Berry system." As noted above, however, Berry does not present any evidence establishing that HTC ever accessed FCS. Accordingly, Berry's claim of contributory infringement against HTC fails for the same reasons as his claim of direct infringement.

  3. Berry's Claims of Vicarious Infringement by
    Foodland and HTC Fail.

As an initial matter, Berry does not contest HTC's assertion that he has abandoned his claim of vicarious infringement against HTC. Accordingly, the court grants HTC's motion for summary judgment with respect to vicarious

16

infringement and turns to the vicarious infringement claim against Foodland.

To hold a defendant vicariously liable for infringement, a plaintiff must prove (1) direct infringement by a primary infringer, (2) a direct financial benefit to the defendant, and (3) the right and ability to supervise the infringers. Metro-Goldwyn-Meyer, 380 F.3d at 1164.

Berry fails to show vicarious infringement by Foodland. Berry fails to establish the second and third prongs of the vicarious infringement analysis—the right and ability to supervise the direct infringer, and a direct financial benefit flowing from the primary infringer's use of the infringing product.  Accordingly, the court grants Foodland's motion for summary judgment with respect to vicarious infringement.

Berry claims "control" by citing the alleged agreement to infringe by Abel Porter.  Berry also claims that Foodland received a financial benefit from the infringement through a discount from Fleming.  Berry claims that Foodland's "Teamwork Score" discount from Fleming was actually a "special rebate for its agreement to conspire to infringe."  Berry further argues that Fleming overcharged Foodland for products, resulting in higher profits for Foodland when these costs were passed on to customers.

17

Foodland again presents direct evidence to contradict Berry's unsupported allegations.  In his Declaration, Beau Oshiro, Foodland's Director of Grocery Operations states that "Foodland orders from Fleming/C&S by trasmitting raw data over the telephone, and therefore has no way to know what particular freight control system is thereafter utilized by Fleming/C&S in filling the orders."  Oshiro Dec.¶ 4.  According to Foodland, it lacks supervisory control over the use of FCS and could not have exercised control over any infringement.

With regard to the alleged kickback scheme, Foodland explains that the Teamwork Score and other discounts were devices "by which Foodland was offered incentives to buy a larger amount of product from Fleming."  Wall Dec. ¶ 13.[4]  Because Berry presents no evidence to support his assertion that the "Teamwork Score" is an illegal kickback scheme, he does not meet his burden of establishing material facts in issue.

Foodland further points out the absurdity of Berry's claim that Foodland profitted by being overcharged by Fleming. Foodland's profit is decreased by any overcharges.  The idea that overcharges could be passed onto consumers without a corresponding drop in sales volume assumes that Foodland had a

_____

[4] Berry argues that the use of the past tense in the Wall Declaration is somehow "Noteworthy."  He fails, however, to explain why this is so.  The Declaration addresses events that occurred in 2001, making the past tense logical.

18

monopoly on groceries.  Nothing in the record suggests any such monopoly.  Because Berry does not establish any financial benefit to Foodland flowing from anyone's use of the infringing product, his claim of vicarious infringement fails.

> 4.    Foodland and HTC are Granted Summary Judgment on Berry's Conspiracy Claims.

Count III of the SAVC alleges that Foodland and HTC conspired with Fleming to infringe on Berry's FCS copyright. Berry, however, fails to establish that Foodland conspired with Fleming, or that any party committed overt acts in furtherance of a conspiracy.  Accordingly, the court grants summary judgment to Foodland with respect to Count III.

Berry does not oppose HTC's motion for summary judgment on Count III, and presents no evidence establishing an agreement between HTC and Fleming to infringe upon Berry's copyright. Accordingly, the court grants HTC's motion for summary judgment on Count III.

A cause of action for civil conspiracy to infringe a copyright is not created by the Copyright Act, and instead falls under state tort law.  See Schuchart v. Solo Serve Corp., 540 F. Supp. 928, 937 (W.D. Tex. 1982).  The accepted definition of a conspiracy is "a combination of two or more persons or entities by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose . . . by criminal or unlawful means."  Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co.,

19

Inc., 91 Haw. 224, 252 n.28; 982 P.2d 853, 881 (1999). Further, to be actionable, the conspiracy must result in overt acts, done in furtherance of the conspiracy, that are both the cause in fact and the proximate cause of the plaintiff's injuries. Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1990).

Berry does not establish any unlawful arrangement or concerted action between Foodland and Fleming. Berry repeatedly refers to Porter's statement that "Fleming had offered to agree" to let Foodland use an unauthorized copy of FCS. As noted earlier, however, Berry does not establish that Foodland ever accepted this offer.

Berry also claims that the "Teamwork Score" that Foodland received from Fleming demonstrates a conspiracy. As noted earlier, Berry does not present any evidence that the "Teamwork Score" is nefarious.

Foodland, by contrast, presents direct evidence that it did not make any illegal agreement with Fleming. Roger Wall, in his Declaration, states, "At no time has Foodland entered into any agreement or conspiracy with Fleming, C&S . . . to use or infringe on, or modify or create a derivative of, any software in which Plaintiff might have any rights including the so-called 'Berry Freight Control System.'" Wall Dec. ¶ 18.

Berry further fails to identify any overt acts in furtherance of the conspiracy. Berry claims that Fleming's

20

continued infringement is sufficient to sustain his conspiracy claim, but Berry does not establish this infringement. Accordingly, Berry's claims of conspiracy fail.

      5.    Berry's Claims Under the Sherman Act with Respect to Foodland and HTC Fail.

In Count V of the SAVC, Berry alleges violations of the Sherman Act, 15 U.S.C. §§ 1-2. Berry alleges that Fleming maintains a monopoly over shipping and distribution of groceries. Berry further alleges that Foodland has allowed Fleming to overcharge it for groceries, thus perpetuating the monopoly. Finally, Berry alleges that the existing conspiracy between Fleming and Defendants in this case allows Fleming to continue its monopolistic practices. Because of these violations, Berry seeks damages under the Clayton Act, 15 U.S.C. § 15.

Berry, however, lacks "antitrust standing" to bring a claim for damages under the Clayton Act. Accordingly, Berry's antitrust claims against both Foodland and HTC are dismissed. Only those who meet the requirements for "antitrust standing" may pursue a claim under the Clayton Act. To have "antitrust standing," a plaintiff must adequately allege and eventually prove "antitrust injury." See Glen Holly Entm't, Inc. v. Tektronix Inc., 343 F.3d 1000, 1007 (9th Cir. 2003). An antitrust injury is not merely an injury caused by an antitrust violation, but more restrictively an "injury of the type the antitrust laws were intended to prevent and that flows from that

21

which makes defendants' acts unlawful." Id. (quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc. 429 U.S. 477, 489 (1977)). Further, "a plaintiff must prove that his loss flows from an *anticompetitive* aspect of the defendant's behavior. If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal per se." Glen Holly, 343 F.3d at 1008 (emphasis in original) (quoting Pool Water Prods. v. Olin Corp., 258 F.3d 1024 (9th Cir. 2001)).

Berry alleges copyright infringement arising out of Defendants' use of unauthorized copies and derivatives of FCS. This is neither the type of injury that the antitrust laws were intended to prevent, nor an injury that flows from Defendants' anticompetitive conduct. At best, Berry's injury flows from Defendant's infringing conduct, which does not diminish competition. Accordingly, the court dismisses all claims under the Sherman Act against Foodland and HTC pursuant to Rule 12(b)(6). See Assoc'd Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519 (1983).

> 6.    Summary Judgment is Granted to Foodland and
>        HTC on Berry's RICO Claims

In Count VI of the SAVC, Berry alleges violations of RICO, 18 U.S.C. §§ 1962(c) and 1962(d). Berry, however, does not show how he would establish that either Foodland or HTC committed

22

any RICO violation. The court grants summary judgment to Foodland and HTC with regard to Berry's RICO claims.

> Section 1962(c) prohibits
>
>> any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce [] to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs though a pattern of racketeering activity or collection of unlawful debts.

18 U.S.C. § 1962(c). Section 1962(d) prohibits conspiracy to violate RICO provisions.

A viable cause of action under RICO requires a showing of (1) conduct, (2) of an enterprise, (3) through a pattern of (4) racketeering. Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 489-87 (1985). Liability under § 1962(c) for substantive violations of the RICO statute is limited to "those who participate in the operation or management of an enterprise through a pattern of racketeering activity." Reves v. Ernst & Young, 507 U.S. 170, 184 (1993).

Berry alleges that Defendants, including Foodland and HTC, committed the following predicate acts: (1) criminal copyright infringement, through the unlicensed and unauthorized use of FCS in the form of "daily boot ups of the Berry system"; (2) bankruptcy fraud for making false declarations; and (3) money laundering by engaging in monetary transactions with money derived from the infringing use of FCS. Berry further alleges a

variety of other criminal activity by Defendants, including machine gun smuggling, cigarette smuggling, and connections to "the Providence Rhode Island Patriarcha Crime Family." See Berry RICO Statement at 17-18; Berry Opp. at 7.

With regard to Berry's first allegation, he does not establish criminal copyright infringement. Criminal infringement involves the "willful" infringement of a copyright. See 17 U.S.C. § 506(a). As noted earlier in this order, however, there is no evidence that Foodland or HTC has willfully violated Berry's copyright.

Berry presents no evidence establishing the other criminal activity that he alleges. Berry does present a series of documents purportedly demonstrating the connection between HTC and organized crime figures in Rhode Island and Massachusetts. These documents, however, do not establish any wrongdoing by HTC or Foodland in this case.

Because Berry fails to establish any predicate RICO acts, his claim under 18 U.S.C. § 1962(c) fails with regard to both Foodland and HTC. Both parties' motions for summary judgment on this claim are granted.

Berry further alleges that Defendants conspired to commit racketeering activity, in violation of 18 U.S.C. § 1962(d). "A defendant is guilty of conspiracy to violate [RICO] if evidence establishes that she knowingly agreed to

24

facilitate a scheme with includes the operation or management of a RICO enterprise." United States v. Fernandez, 338 F.3d 1199, 1230 (9th Cir. 2004). Berry claims that "at least two predicate acts by the conspiracy were contemplated, specifically the daily booting up of Mr. Berry's freight system making an illegal copy in violation of the copyright laws . . . and the creation of the Dillon derviatives."

Just as Berry fails to establish that Foodland engaged in a conspiracy to infringe, however, he fails to establish Foodland's conspiracy to violate RICO. Once again, Berry refers to Porter's statement that Fleming had offered to agree to let Foodland infringe upon Berry's FCS copyright. As stated earlier in this order, Porter's statement does not establish that any agreement was actually reached and therefore fails to establish a conspiracy to violate RICO. The court grants Foodland's motion for summary judgment with respect to conspiracy to violate RICO.

Berry similarly fails to establish any agreement between HTC and anyone else to commit RICO violations. He does not present any new evidence of RICO conspiracies and resorts to the evidence he used to allege copyright infringement conspiracy. This evidence, insufficient to establish copyright infringement conspiracy, is similarly insufficient to establish any RICO conspiracy. Accordingly, the court grants HTC's motion for summary judgment on the claim of conspiracy to violate RICO.

       7.   Summary of Claims Against Foodland and HTC.

To summarize, the court grants Foodland's motion for summary judgment with respect to Counts I, II, III, and VI. The court grants Foodland's motion to dismiss Count V. The court similarly grants HTC's motion for summary judgment with respect to Counts I, II, III, and VI and HTC's motion to dismiss Count V.

      B.   The Court Grants in Part and Denies in Part Employee Defendants' Motion for Summary Judgment.

The court grants in part and denies in part Employee Defendants' motion for summary judgment with respect to Count I, which alleges direct infringement. The court grants Employee Defendants' motion for summary judgment with respect to all other counts.

      1.   The Court Grants in Part and Denies in Part Employee Defendants' Motion for Summary Judgment With Respect to the Direct Infringement Claim.

      a.   With Respect to Employee Defendants, Count I Refers Only To Conduct After the Jury Verdict in the Previous Case.

Count I of the SAVC does not allege claims against Employee Defendants for acts occurring before acts in issue in the earlier copyright case. Dillon, Noa, and Christensen are not identified by name in Count I of the SAVC, and are included as Defendants in Count I only by virtue of being "employee[s] and/or agent[s] of defendants named." Fleming is named as a defendant in Count I. Berry, however, could not be suing Fleming for the

actions underlying his earlier case against Fleming.   Present

claims against Fleming must therefore apply only to events

occurring after the acts in issue in the earlier case.   Because

Dillon, Noa, and Christensen are sued only as Fleming's former

employees and C&S's present employees, the court construes Count

I as applying only to events occurring after the acts in issue in

the earlier case.[5]

Under Rule 8(a) of the Federal Rule of Civil Procedure,

a pleading shall contain:

> (1) a short and plain statement of the grounds
> upon which the court's jurisdiction depends,
> unless the court already has jurisdiction and
> the claim needs no new grounds of jurisdiction
> to support it, (2) a short and plain statement
> of the claim showing that the pleader is
> entitled to relief, and (3) a demand for
> judgment for the relief the pleader seeks.

A complaint must therefore give a defendant fair notice of what

the plaintiff's claim is and the grounds upon which it rests.

Lee v. City of Los Angeles, 250 F.3d 668, 679 (9th Cir. 2001).

Berry claims that both the "General Allegations

Applicable to All Counts" and the relief sought make reference to

conduct going back to November, 1999.   These references, however,

were insufficient to put Employee Defendants on notice that they

---

[5] Berry's identification of Employee Defendants only as
former employees of Fleming and present employees of C&S
militates in favor of construing Count I as applying to their
actions only after the events in issue in the earlier action.   In
this regard, Employee Defendants have a stronger case for
limiting the time frame for Count I than Foodland and HTC do.

27

were being sued for alleged actions preceding the verdict against Fleming in the earlier case.

The "General Allegations" provide only the context for the actual claims laid out in the numbered counts. While the "General Allegations" are incorporated by reference into all of the numbered counts, a party looks to the numbered counts to see who is actually being sued for what and on what theory. Count I does not make it clear that Employee Defendants are now being sued for their alleged parts in the actions that formed the basis for Fleming's liability in the earlier lawsuit. In paragraph 71 of the SAVC, Berry says he is entitled to actual damages and lost profits "for each of the defendants and the Doe Defendants yet to be named." This paragraph clearly includes Fleming, who cannot be re-sued for matters covered by the previous lawsuit. Similarly, in paragraph 73, Berry alleges that "Fleming, C&S Logistics of Hawaii, LLL, C&S Acquisitions, LLC, C&S Wholesale Grocers, Inc., HEX, HEST, CALPAC, Guidance, Gurzi, each employee and/or agent of defendants named herein are a separate infringer . . . ." Again, Employee Defendants are treated the same way Fleming is treated. The lumping together of Employee Defendants with Fleming did not put Employee Defendants on notice that, with respect to their employment by Fleming, they were being sued for actions beyond the time frame in issue for Fleming in this lawsuit.

The prayer for relief provides:

> C. Damages for infringement of the copyright as provided by the Copyright Act without limitation against all non-bankrupt defendants and against all bankrupts from and after the date of their bankruptcy filing including actual damages and accounting for all gains and profits derived by non-bankrupt defendants through infringement of copyright including a detailed accounting of all non-bankrupt corporate and individual defendants' revenues produced from November 1, 1999 to the date of the order or the date that the infringement ceased, which ever is later . . . .

This prayer does not provide Employee Defendants with the requisite notice. Rule 8, after all, not only requires a statement of jurisdiction and a demand for relief, but also "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, a prayer cannot serve as a substitute for a statement of the claim. Moreover, the prayer itself refers to a specific time period only with respect to Berry's request for an accounting, not as the period during which damages must be paid. While it might be supposed that Berry was seeking an accounting for the period for which he was seeking damages, the prayer is far from clear. Read together with the text of Count I, Employee Defendants could fairly conclude that they were being sued for periods not already covered by the earlier lawsuit. If Berry

29

wishes to seek damages from Employee Defendants for earlier periods, he must clarify that in yet another amended pleading.[6]

### b.  Berry Does Raise Some Issues of Fact in Count I.

Berry alleges that, after the jury verdict, Employee Defendants committed copyright violations in two ways: (1) by using an illegally altered version of FCS between March 7, 2003, and June 9, 2003; and (2) by copying FCS, then using and distributing an illegal derivative of FCS after June 9, 2003. Each allegation is discussed below.

### i.  Berry Raises an Issue of Material Fact With Respect to Infringement By Dillon and Noa Between March 7, 2003, and June 9, 2003.

Berry raises an issue of material fact with respect to the conduct of Dillon and Noa between the time the verdict issued in the earlier case and June 9, 2003.  Berry establishes a triable issue of fact as to whether Dillon and Noa used an infringing version of FCS during this period.

---

[6] The court is not here giving Berry leave to file a Third Amended Complaint.  If he wishes to file such a pleading, Berry must seek leave from the Magistrate Judge to extend the now-expired deadline for filing amended pleadings and to file a Third Amended Complaint.  Even if the Magistrate Judge grants such requests, the presently scheduled trial date may not be moved as a result.  While this court is not here foreclosing an amendment, the court urges Berry to consider whether such an amendment may be futile absent evidence that Employee Defendants actually profited from the alleged infringement or absent a reason for Berry to be concerned that his total damage award or his ability to collect any judgment would be materially affected without such an amendment.

Under 17 U.S.C. § 106, the exclusive rights of a copyright holder are established. Among the sticks in this bundle is the right "to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106. A copyright holder therefore retains the exclusive right to alter the work. See Downing v. Abercrombie & Fitch, 265 F.3d 994 (9th Cir. 2001). Further, with respect to software, the use of an unauthorized derivative constitutes unlawful "copying." See MAI Sys. Corp., 991 F.2d at 517-18. Accordingly, the unauthorized use of altered software constitutes a copyright violation.

Berry establishes that Dillon and Noa used an altered version of Berry FCS between March 7, 2003, and June 9, 2003. Dillon admits that he attempted to comply with the March 6, 2003, jury verdict in the earlier case by reverting to an altered, June 2000 version of FCS. See Ex N to Hogan Dec. Although Dillon stated that he removed the Y2K feature, he apparently did not remove the other offending features, which included a scratch name field and two label changes. Id. ¶ 13. An expert report created by Professor Philip Johnson further establishes that the version of FCS being used in April 2003 was not the licensed October 1999 version. See Ex. W to Berry Dec. ("Fleming clearly was not using the October 1999 version of the Berry software on April 1, 2003").

Dillon claims that he ceased use of the infringing software on June 9, 2003, at which time Fleming says it ceased use of FCS entirely and began using Microsoft Excel. Berry presents no evidence to contradict this claim. Accordingly, the court finds that any infringing behavior by Dillon continued only until June 9, 2003.

A triable issue of fact also exists regarding whether or not Noa used the infringing version of FCS during this time period.

Berry presents no evidence that Christensen ever used the infringing version of FCS.

        ii.  Dillon and Noa Establish that Any Infringement During the Period of March 7, 2003, to June 9, 2003, Was Not Willful.

Although Berry establishes that Dillon and Noa may have infringed on his copyright between March 7, 2003, and June 9, 2003, Berry does not establish that Dillon's conduct was willful. Willful infringement occurs when a defendant acts "with knowledge that the defendant's conduct constitutes copyright infringement." Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1335 n.3 (9th Cir. 1990).

Berry does not establish that Dillon had knowledge of the infringement between March 7, 2003, and June 9, 2003. To the contrary, the only evidence before the court indicates that, after removing the Y2K feature, Dillon believed that he was

actually using the original, licensed version. <u>See</u> Ex. N to Hogan Dec. ¶ 14 ("I removed the feature I had added to revert to the database in the form under which Mr. Berry had licensed it to Fleming."); <u>see also</u> Ex. L to Hogan Dec. (May 6, 2003, email stating that one option for Fleming would be "to continue indefinitely to use the database in its original licensed form").

Berry, contending that the infringement was willful, makes repeated reference to the March 6, 2003, jury verdict, in which Fleming was held to have unlawfully altered FCS. Berry claims that this jury verdict put Employee Defendants on notice that future alterations to FCS would be similarly unlawful. However, the only evidence the court has on the subject establishes that Dillon was accessing FCS in an attempt to comply with the jury verdict by restoring the system to what he believed was its original, licensed form. <u>See</u> Ex. N to Hogan Dec. While the jury verdict put Fleming's employees on notice that unauthorized alterations would be copyright infringement, the jury verdict did not provide notice that attempts to return Fleming's version of FCS to the original, licensed version were unlawful.

Berry also claims that several emails between Dillon, Noa, and Christensen establish that they knew their conduct was unlawful. <u>See</u> Ex. J to Hogan Dec.; Ex. K to Hogan Dec. These emails, however, only further establish that Employee Defendants

33

were making every effort to comply with the jury verdict.  Any infringement was therefore inadvertent, and not willful.[7]

### iii. Berry Does Not Establish Direct Copyright Infringement after June 9, 2003.

After June 9, 2003, Dillon says, Fleming "got away" from FCS and began using Microsoft Excel spreadsheets to track freight.  See Ex. N to Hogan Dec. ¶ 21.  Berry alleges, however, that Fleming was not actually using Microsoft Excel, but an illegal derivative of FCS.  Berry contends that Dillon illegally used FCS to create an unauthorized derivative, which Fleming then used and distributed for its freight tracking needs.  Berry, however, presents no evidence to support his contention and therefore does not establish that Employee Defendants committed any infringement through their actions after June 9, 2003.

Berry presents three pieces of evidence that he claims demonstrate that the spreadsheet programs that Fleming used after June 9, 2003, were in fact illegal derivatives of FCS.

Berry first argues that Dillon admitted to copyright infringement in his July 26, 2004, testimony before the United

---

[7] The court does not here reach the issue of damages.  It is unclear whether Berry can show that the has sustained actual loss or that the Employee Defendants actually profited from their alleged infringement.  The court notes that, under 17 U.S.C. 504(c), the court has discretion to reduce any award of statutory damages to a sum of not less than $200 when the infringer "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright."  The parties may address the appropriateness of damages in further proceedings.

34

States Bankruptcy Court.  In that testimony, Dillon stated that he extracted data from Berry's database and inputted that data into Excel spreadsheets.

Dillon's testimony, however, does not establish any copyright violation.  All the testimony proves is that Dillon extracted raw data from FCS to create the Excel spreadsheets. The extraction of data is not a copyright violation.  See Assessment Technologies of Wisc. v. Wiredata, 350 F.3d 640, 644 (7th Cir. 2003).  Accordingly, Dillon's testimony does not prove any copyright violation.

Berry next claims that Dillon, in an August 5, 2003, email to Teresa Noa, makes reference to a "database."  See Ex. P to Hogan Dec.  Berry claims that use of the word "database" proves that his FCS software was still being used by Fleming.

The rest of the email, however, describes Dillon's efforts to comply with the jury verdict, and his reluctance to engage in any acts that might even be construed as copyright infringement.  Taken in context, therefore, the email does not prove infringement, but rather establishes Dillon's efforts to comply with the law.

Berry's final argument is that, in his review of the Guidance CD, he has uncovered numerous files on Fleming's system that appear to mirror files from his FCS system.  See Exhibit A to Berry's Declaration is a list of these files.  Several files

35

contain the words "Z Tables" in their filenames.  <u>See</u> Ex. A to
Berry Dec.  The existence of file names that refer to software
does not, however, prove that Employee Defendants infringed on
his copyright.

       As a further argument, Berry contends that Noa
maintained and accessed an illegal copy of FCS on her computer.
As evidence, Berry cites two emails sent by Noa.  In the first
email, Berry claims that Noa states, "You can base your report on
a query AND use the select expert and specify any criteria you
wish if the underlying query accesses all the records in the
database."  Ex. P to Hogan Dec.  Berry argues that the use of the
word "database" proves the continued use of FCS.  In that email,
however, it is Dillon who makes this statement, not Noa.
Accordingly, the email proves nothing about Noa's illegal
possession of Berry's software.  Further, the mere use of the
word "database" does not establish any infringement.

       Berry also cites an email sent from Noa to Dillon in
which she states, "Here is an adobe picture of an old report that
we had - let me know if this will help in pulling the info from
the new system."  Berry argues, without explanation, that "Noa's
email can only be interpreted as meaning that she opened the
Berry report in Crystal Reports and printed it to pdf."  Contrary
to Berry's arguments, there are numerous other interpretations
for Noa's actions, and the email does not establish that she

maintained a copy of FCS on her computer. Further, Noa has stated that she did not access the Berry system after June 9, 2003.

      c.   Summary of Count I.

Berry establishes an issue of fact with respect to Dillon and Noa's possible infringement between March 7, 2003, and June 9, 2003. The court, therefore, denies Employee Defendants' motion for summary judgment on Count I with respect to Dillon and Noa for actions during this time period. The court finds, however, that any infringement from March 7, 2003, to June 9, 2003, was not willful. The court grants summary judgment to Christensen on Count I for acts taking place between March 7, 2003, and June 9, 2003.

The court grants Employee Defendants' motion for summary judgment on Count I with respect to all actions taking place outside the period between March 7 and June 9, 2003.

      2.   Employee Defendants are Granted Summary Judgment With Respect to Claims of Contributory and Vicarious Infringement.

Although Berry includes both Dillon and Noa in Count II of the SAVC by his reference to "each of the defendants," he does not explain in his opposition papers how either of them is liable for either contributory or vicarious infringement. The court therefore deems their motion for summary judgment on Count II to be unopposed, and grants the motion.

Berry does argue in his opposition papers, however, that "Christensen is Liable as a Vicarious and Contributory Infringer." The court therefore addresses Berry's claim of contributory and vicarious infringement against Christensen.

To establish a claim of contributory infringement, Berry must prove that Christensen had knowledge of the infringement. Metro-Goldwyn-Meyer, 380 F.3d at 1154. As evidence of this knowledge, Berry presents several emails written by Christensen, in which Christensen states that a replacement may be needed for Berry's software. Ex. K to Hogan Dec.; Ex. L to Hogan Dec. These emails, however, demonstrate only that Christensen recognized the need to comply with the jury verdict. The emails do not establish any knowledge of infringement, nor do they establish that Christensen had knowledge at any time of infringing elements in Fleming's version of FCS. Berry thus does not establish knowledge by Christensen and cannot succeed on his claim of contributory infringement.

To establish vicarious infringement, Berry must prove that infringement resulted in a direct financial benefit to the defendant. Id. Berry fails to make this showing, and his claim of vicarious infringement against Christensen thus fails. Berry presents no evidence at all of any direct financial benefit to Christensen. By contrast, Christensen clearly states, "I am a salaried employee and have never received any additional

38

compensation in my capacity as president of C&S or for the development of any computer software for C&S." Christensen Aff. ¶ 2. Berry's claim of vicarious infringement thus fails.

       3.   Employee Defendants are Granted Summary Judgment with Respect to the Claim of Conspiracy to Infringe Copyright.

Count III of the SAVC specifically identifies Christensen, Dillon, and Noa as members of a conspiracy to infringe on his FCS copyright. Berry, however, fails to prove that any Employee Defendant agreed to infringe.

As evidence of a conspiracy to infringe, Berry points out that C&S is indemnifying Defendants for claims against them, and that C&S has provided Employees with a defense. A company's agreement to provide indemnity and independent counsel to its employees, however, does not demonstrate any wrongdoing, nor does it establish any conspiracy. See In re Holywell Corp., 177 B.R. 991, 999 (S.D. Fla. 1995) (indemnity letter between Trustee and bank insufficient to prove any agreement to conspire).

In contrast to Berry's assertions, the evidence demonstrates that Employee Defendants made substantial efforts to avoid infringing on the FCS copyright. For example, after the jury verdict, Employee Defendants frequently emailed each other to determine the best way to proceed without further violation. See Ex. N to Hogan Dec.

39

Berry fails to establish any triable issue of fact with respect to conspiracy by Employee Defendants.

### 4.   Berry's Sherman Act Claims are Dismissed With Respect to Employee Defendants.

In Count V, Berry alleges antitrust violations.  It is not clear whether Count V was intended to state claims against Employee Defendants.  The text of Count V does not refer to Employee Defendants, but Count V concludes in paragraph 131 by stating, "Pursuant to The Sherman Act, 15 U.S.C. §§ 1 & 2, and the Section 4 of the Clayton Act, 15 U.S.C. § 15, Plaintiff is entitled to recovery [sic] treble damages from the non-debtor defendants for all damages proven."  Berry may therefore have intended to assert Sherman Act claims against Employee Defendants.

As noted earlier in this order, however, Berry does not have "antitrust standing" to assert any antitrust claims because he does not allege any antitrust injury.  Accordingly, the court dismisses Count V with respect to Employee Defendants.

### 5.   Employee Defendants are Granted Summary Judgment with Respect to Berry's Claims of RICO Violations.

Count VI of the SAVC alleges RICO violations by Employee Defendants.  Each employee is named as a "RICO person."  Berry, however, fails to establish any predicate RICO acts by Employee Defendants.  Accordingly, his RICO claims against

Employee Defendants fail, and the court grants summary judgment to those employees.

To establish a RICO violation, Berry must prove a predicate RICO predicate act. With respect to Employee Defendants, Berry alleges only criminal copyright infringement. As noted earlier, however, to establish criminal copyright infringement, Berry must establish willful infringement. <u>See</u> 17 U.S.C. § 506(a). Berry fails to establish willful infringement by Employee Defendants. Accordingly, the court grants Employee Defendants' motion for summary judgment with respect to Count VI.

V.      <u>CONCLUSION.</u>

For the reasons stated above, the court grants summary judgment to Foodland and HTC on Counts I, II, III, and VI. The court dismisses Count V with respect to Foodland and HTC. The court denies summary judgment to Dillon and Noa with respect to Count I for acts occurring between the dates of March 7, 2003, and June 9, 2003, but grants summary judgment to Christensen with respect to Count I for that time period. The court grants summary judgment to all Employee Defendants with respect to Count

41

I for acts occurring outside the period from March 7, 2003, to June 9, 2003. The court grants summary judgment to Employee Defendants on Counts II, III, and IV, and dismisses Count V with respect to Employee Defendants.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 26, 2005.

SUSAN OKI MOLLWAY
UNITED STATES DISTRICT JUDGE

Berry v. Hawaiian Express Service, Inc., et al., Civ. No. 03-0385 SOM/LEK; ORDER GRANTING DEFENDANT FOODLAND'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT HAWAII TRANSFER COMPANY'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING IN PART, DENYING IN PART DEFENDANTS DILLON, NOA, AND CHRISTENSEN'S MOTION FOR SUMMARY JUDGMENT.

42