# EXHIBIT B

# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Fleming Companies, Inc., et al.,[1] | ) | Case No. 03-10945 (MFW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Related to Docket No. 16 |

### INTERIM STIPULATION AND ORDER AUTHORIZING (A) USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (B) GRANT OF ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363 NUNC PRO TUNC TO THE PETITION DATE

This Stipulation and Order is made by and among Fleming Companies Inc. (the "Borrower"), the entities listed on Exhibit A hereto (the "Guarantors" and, collectively with the Borrower, the "Debtors"), debtors and debtors-in-possession, and the lenders from time to time party to that certain Credit Agreement, dated as of June 18, 2002 (as amended, supplemented or otherwise modified prior to the commencement of these Chapter 11 cases, the "Pre-Petition Credit Agreement", and together with all documents at any time executed in connection therewith, the "Pre-Petition Loan Documents") among the Borrower, the lenders thereto (the

---

[1] The Debtors are the following entities: Core-Mark International, Inc.; Fleming Companies, Inc.; ABCO Food Group, Inc.; ABCO Markets, Inc.; ABCO Realty Corp.; ASI Office Automation, Inc.; C/M Products, Inc.; Core-Mark Interrelated Companies, Inc.; Core-Mark Mid-Continent, Inc.; Dunigan Fuels, Inc.; Favar Concepts, Ltd.; Fleming Foods Management Co., L.L.C.; Fleming Foods of Texas, L.P.; Fleming International, Ltd.; Fleming Supermarkets of Florida, Inc.; Fleming Transportation Service, Inc.; Food 4 Less Beverage Company, Inc.; Fuelserv, Inc.; General Acceptance Corporation; Head Distributing Company; Marquise Ventures Company, Inc.; Minter-Weisman Co.; Piggly Wiggly Company; Progressive Realty, Inc.; Rainbow Food Group, Inc.; Retail Investments, Inc.; Retail Supermarkets, Inc.; RFS Marketing Services, Inc.; and Richmar Foods, Inc.

"Pre-Petition Lenders"), Deutsche Bank Trust Company Americas, as Administrative Agent (the "Administrative Agent"), JPMorgan Chase Bank, in its capacity as Collateral Agent and provider of Treasury Services ("JPMC") and together with Citicorp North America, Inc., as Syndication Agents, Lehman Commercial Paper Inc. and Wachovia Bank, National Association, as Documentation Agents, Deutsche Bank Securities Inc. and J.P. Morgan Securities Inc., as Joint Book Managers and Deutsche Bank Securities Inc., J.P. Morgan Securities Inc. and Salomon Smith Barney Inc., as Joint Lead Arrangers (collectively with the Administrative Agent, the "Agents").

### THE COURT HEREBY FINDS THAT:

A.    On April 1, 2003 (the "Petition Date"), each Debtor filed a voluntary petition for relief with this Court under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code", and the cases commenced thereunder (Case Nos. 03-10944 (MFW) through 03-10972 (MFW)), the "Chapter 11 Cases"). The Debtors are authorized to continue to operate their businesses and to manage their properties as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

B.    The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered. No trustee, examiner or creditors' committee has yet been appointed in the Chapter 11 Cases nor has a request for the appointment of a trustee or examiner been made.

C.    This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of this Stipulation and Order constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are Sections 105, 361, 362 and 363(c)(2)(B) of the Bankruptcy Code and Rules 4001(b)

and (d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Venue of the

Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

      D.    On April 1, 2003, the Agents and the Pre-Petition Lenders consented to

the emergency use by the Debtors of the Cash Collateral (as defined below) to pay the April 1,

2003 net payroll to the Debtors' employees in an amount not to exceed $8 million; on April 2,

2003 to purchase goods for inventory in an amount not to exceed $50 million and on April 3,

2003 to purchase goods for inventory in an amount not to exceed $20 million pending approval

of this Stipulation and Order by the Court (the "Emergency Cash Collateral Use"). The Agents'

and the Pre-Petition Lenders' consent to the use of Cash Collateral hereunder is conditioned

upon the Court's approval of this Stipulation and Order nunc pro tunc to the Petition Date and

the coverage of the Emergency Cash Collateral Use by the provisions of this Stipulation and

Order.

      E.    Each Debtor acknowledges, admits and agrees that, as of the Petition Date

and pursuant to the Pre-Petition Loan Documents, the Pre-Petition Lenders made loans and

advances to the Borrower, issued or caused to be issued letters of credit on the Borrower's behalf

and incurred obligations in connection with Treasury Services[2], secured by first-priority security

interests and liens on all or substantially all of the Debtors' then existing and after acquired

assets set forth in Section 1.1 of the Security Agreement and Section 3.1 of the Pledge

Agreement, including, without limitation, accounts receivable, inventory, instruments and chattel

paper evidencing accounts receivable or into which any accounts receivable have been, or

hereafter are, converted, securities, limited liability company interests, partnership interests,

---

[2]   Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in
the Pre-Petition Loan Agreement.

security entitlements, financial assets and investment property, and all proceeds and products of any and all of the foregoing (the "Pre-Petition Collateral").

      F.    As of the Petition Date, each Debtor acknowledges, admits and agrees that it was in default under the Pre-Petition Credit Agreement and was indebted to the Pre-Petition Lenders under the Pre-Petition Loan Agreement in the aggregate principal sum of not less than $604 million (including outstanding letters of credit and fees associated therewith of approximately $146 million), together with interest accrued thereon, plus costs, fees and expenses pursuant to Section 9.03 of the Pre-Petition Credit Agreement as well as any obligations incurred in connection with Treasury Services not to exceed $50 million (collectively, the "Pre-Petition Indebtedness"). Each Debtor acknowledges and admits, after due inquiry and without waiver of any rights of other parties set forth in paragraph 24 hereof, (a) the legality, validity and enforceability of the Pre-Petition Indebtedness owing to the each Pre-Petition Lender and each Agent as shown on the books and records of such Pre-Petition Lender and/or such Agent, (b) that the security interests and liens held by the Pre-Petition Lenders and the Agents in and upon the Pre-Petition Collateral (the "Pre-Petition Financing Liens") are duly perfected, legal, valid, binding and enforceable first-priority liens and security interests on the Pre-Petition Collateral, not subject to avoidance, defense, objection, action, counterclaim, setoff or subordination under the Bankruptcy Code or applicable non-bankruptcy law, except to the extent that such liens and security interests are subject to the Carve-Out (as defined below), (c) the legality, validity and non-avoidability of all payments made to or on behalf of the Pre-Petition Lenders and the Agents prior to the Petition Date, (d) that the Pre-Petition Lenders' and the Agents' pre-petition claims, liens and security interests against the Debtors' estates and their property are not subject to avoidance, defense, objection, action, counterclaim, setoff or

subordination, (e) that the Debtors do not possess, may not assert and have waived any claim, objection, action, counterclaim, set-off, right or defense of any kind or nature which could in any way affect the validity, priority, enforceability and nonavoidability of the Pre-Petition Indebtedness or the liens and security interests of the Pre-Petition Lenders and the Agents upon the Pre-Petition Collateral or which would reduce or affect the obligation of the Debtors to pay the Prepetition Indebtedness, and (f) that the Debtors hereby release the Pre-Petition Lenders and the Agents, and their agents and employees, from all claims and causes of action of the Debtors arising out of the Pre-Petition Loan Documents or any other loan agreement or other relationship with the Debtors prior to the entry of this Stipulation and Order.

      G.      Each Debtor further acknowledges, admits and agrees, after due inquiry, that the Pre-Petition Collateral includes, without limitation, all proceeds of the Pre-Petition Collateral, whether existing before or after the commencement of the Chapter 11 Cases, which items constitute the Pre-Petition Lenders' and the Agents' cash collateral within the meaning of Section 363(a) of the Bankruptcy Code (the "Cash Collateral"). The Pre-Petition Lenders and the Agents are entitled, pursuant to Sections 361 and 363 of the Bankruptcy Code, to adequate protection of their interests in the Pre-Petition Collateral, including the Cash Collateral, for and to the extent of any diminution in value of the Pre-Petition Collateral, resulting from, without limitation, the granting of the Carve-Out (as defined below), the use of the Cash Collateral, the use, sale or lease of the Pre-Petition Collateral (other than the Cash Collateral) and the imposition of the automatic stay.

      H.      Good cause has been shown for the entry of this Stipulation and Order. The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their businesses without a source of post-petition financing, even after giving

effect to the proposed use of Cash Collateral. The ability of the Debtors to maintain business relationships with their vendors and suppliers, to purchase new inventory and otherwise to finance their operations is essential to the Debtors' continued viability. The Pre-Petition Lenders' consent to the use of the Cash Collateral (other than the Emergency Cash Collateral Use) is expressly conditioned upon, inter alia, Court approval of the order authorizing a $50 million post-petition bridge financing from the Administrative Agent and JPMC (the "Bridge Financing Order"). In the absence of such post-petition financing in addition to the use of the Cash Collateral, the continued operation of the Debtors' businesses will not be possible and serious and irreparable harm to the Debtors and their estates will occur. The preservation, maintenance and enhancement of the going concern value of the Debtors is of the utmost significance and importance to their successful reorganization under Chapter 11 of the Bankruptcy Code.

I.    The Pre-Petition Lenders will not permit the use of the Cash Collateral absent the approval of the terms and conditions set forth herein and the relief hereinafter ordered is necessary to avoid immediate and irreparable harm to the Debtors' estates pending the Final Hearing (as defined below) pursuant to Bankruptcy Rule 4001(b)(2). This Court concludes that entry of this Stipulation and Order is in the best interest of the Debtors' respective estates and creditors, as its implementation will, among other things, help the Debtor to maintain the operation of their businesses, preserve the value of the Debtors' estates and enhance the Debtors' prospects for an orderly reorganization.

J.    Pending finalization of post-petition financing, the Debtors are unable to obtain the required funds to replace the Cash Collateral, in the form of unsecured credit or unsecured debt allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative

expense pursuant to Section 364(a) or (b) of the Bankruptcy Code, unsecured credit or unsecured debt having the priority afforded by Section 364(c)(1) of the Bankruptcy Code, or debt or credit secured as described in Section 364(c)(2) or (3) of the Bankruptcy Code, other than the Bridge Financing Order.

K.    Notice of the hearing to consider this Stipulation and Order (the "Preliminary Hearing") and the terms hereof has been given via facsimile (i) to the twenty largest non-insider creditors of each Debtor, (ii) counsel to the Agents and (iii) the Office of the United States Trustee for the District of Delaware. In view of the urgency of the relief requested, such notice constitutes sufficient and appropriate notice of this Stipulation and Order and the Preliminary Hearing and no further notice need be given.

L.    The proposed use of the Cash Collateral has been negotiated in good faith and at arm's length between the Debtors, the Pre-Petition Lenders and the Agents, with all parties represented by counsel, and any credit extended to the Debtors pursuant to the Stipulation and Order shall be deemed to have been extended in good faith.

M.    The terms of the proposed use of the Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

N.    Pursuant to the Bankruptcy Code, the Debtors are required to provide adequate protection to the Agents and Pre-Petition Lenders in respect and to the extent of, inter alia, any diminution of the value of the Pre-Petition Collateral (including the Cash Collateral), their use of the Pre-Petition Collateral (including the Cash Collateral), the imposition of the automatic stay of Section 362 of the Bankruptcy Code and the granting of the Carve-Out.

O.     Certain third parties (the "PACA Trust Claimants") have asserted that the Debtors, among others, hold property in trust for them pursuant to the Perishable Agricultural Commodities Act, as amended, 7 U.S.C. § 499e(c) ("PACA"), the Packers and Stockyards Act of 1921, as amended, 7 U.S.C. §§ 181 et seq. ("PASA") or other statutes of similar import. The valid claims of such third parties that are demonstrated by such third parties to meet all of the requirements for the imposition of a trust under PACA, PASA or other statutes of similar import, are referred to herein collectively as the "PACA Trust Claims". "PACA Trust Claimants" shall mean those third parties holding PACA Trust Claims to the extent of such PACA Trust Claims.

P.     Based upon the foregoing findings and conclusions, and upon the record made by the Debtors at the Preliminary Hearing and any objections to this Stipulation and Order having been withdrawn, resolved or overruled, and good and sufficient cause appearing therefor,

**IT IS HEREBY STIPULATED, CONSENTED, AGREED AND ORDERED**

that



, subject to the agreements made on the record at the April 3, 2003 hearing:

Authorization

1.     This Stipulation and Order has no force or effect, and the Debtors are not authorized to use any of the Cash Collateral (other than in connection with the Emergency Cash Collateral Use), unless and until this Stipulation and Order is signed by the Court.

2.     The Debtors are authorized to use the Cash Collateral in accordance with the Budget and as further set forth in paragraphs 3, 10 and 14 below. The Debtors are authorized to use the Cash Collateral solely on the terms and subject to the conditions set forth in this Stipulation and Order, pending a final hearing (the "Final Hearing") on the Debtors' request to use the Cash Collateral pursuant to the terms hereof. If this Stipulation and Order becomes a final order in accordance with paragraph 41 hereof, the Debtors' authority to use Cash Collateral

shall terminate on April 18, 2003, unless the term of this Stipulation and Order is extended with the express written consent of the Required Lenders (such date, as may be extended with the express written consent of the Required Lenders, the "Expiration Date").  Notwithstanding any termination of the Debtors' authority to use the Cash Collateral pursuant to the terms hereof, all liens, priorities, rights and remedies provided to the Agents and/or the Pre-Petition Lenders in this Stipulation and Order shall survive such termination and remain in full force and effect with respect to any Pre-Petition Indebtedness, any claims and obligations arising under this Stipulation and Order, outstanding on such termination date and any fees incurred by the Agents and the Pre-Petition Lenders after termination of this Stipulation and Order in enforcing their rights under this Stipulation and Order.

3.    The Debtors are authorized to use the Cash Collateral in the operation of their businesses; provided that the proposed use of the Cash Collateral is consistent with the terms of this Stipulation and Order and the Budget (as defined below).  Notwithstanding anything herein to the contrary, no Cash Collateral may be used to object to or contest in any manner, or otherwise challenge, the validity, perfection, priority or enforceability of the Pre-Petition Indebtedness or any liens or security interests securing the Pre-Petition Indebtedness (or to undertake formal discovery proceedings in anticipation thereof) or to assert any claims or causes of action against any Agent, any Pre-Petition Lender or any Related Party of any of the foregoing persons (or to undertake formal discovery proceedings in anticipation thereof); provided, however, that nothing herein will prevent any official committee of unsecured creditors appointed in these Chapter 11 cases (a "Committee") from undertaking a normal and customary investigation of any such liens or security interests.

4.      This Stipulation and Order is approved nunc pro tunc to the Petition Date and the Emergency Cash Collateral Use shall be deemed to be covered by the provisions of this Stipulation and Order.

Replacement Liens; Stay Relief

5.      As adequate protection for, inter alia, the imposition of the automatic stay, the granting of the Carve-Out and the use by the Debtors of the Cash Collateral and the other Pre-Petition Collateral and as consideration for the Agents' and the Pre-Petition Lenders' consent to the Bridge Financing Order and the granting of the priming liens granted thereunder, the use by the Debtors of the Cash Collateral and the other Pre-Petition Collateral and the granting of the Carve-Out, the Agents and the Pre-Petition Lenders are hereby granted (effective as of the Petition Date and without the necessity of the execution by the Debtors, or filing, of security agreements, pledge agreements, mortgages, financing statements or otherwise) pursuant to Sections 361 and 363(c) of the Bankruptcy Code:

> (i) first priority liens and security interests on all assets of the Debtors (whether heretofore or hereafter acquired) not otherwise encumbered by validly perfected and unavoidable liens or security interests as of the Petition Date, subject only to the Carve-Out and any liens granted under the Bridge Financing Order; and

> (ii) junior liens and security interests on all assets encumbered as of the Petition Date by any valid and perfected senior liens, if any, junior and subordinate to the liens and security interests of the holders of such senior liens, subject only to the Carve-Out and any liens granted under the Bridge Financing Order; (collectively, the "Replacement Liens" and the collateral securing the Replacement Liens, the "Post-Petition Replacement Collateral").

6.      The Replacement Liens shall be deemed perfected as of the commencement of the Chapter 11 Cases, shall not be subject to or pari passu with any lien or security interest existing as of the Petition Date other than senior liens, if any, and except as otherwise specifically provided in this Stipulation and Order, shall be valid and enforceable against any trustee appointed in any Chapter 11 Case, or in a subsequent proceeding upon the

conversion of any Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code. Notwithstanding anything to the contrary in this paragraph 6, the Replacement Liens shall not attach to any actions commenced pursuant to Sections 544, 547, 548 and 550 of the Bankruptcy Code. Subject to the Carve-Out and the Bridge Financing Order, no lien or security interest in any property of the Debtors granted or arising on or after the Petition Date (including, without limitation, liens and security interests, if any, granted in favor of any federal, state, municipal or other governmental unit, commission, or board for any liability of the Debtors) shall be created or permitted to be pari passu with, or senior to, the Replacement Liens, including, without limitation, pursuant to Section 364(d) of the Bankruptcy Code.  For the sake of clarity and specificity, nothing contained herein shall in any way be construed as an order limiting or otherwise impairing the Pre-Petition Lenders' and/or the Agents rights as provided in Section 552 of the Bankruptcy Code.

      7.     Without the necessity of the filing of financing statements, mortgages or other documents, this Stipulation and Order shall be sufficient evidence of the Agents' and the Pre-Petition Lenders' perfected liens on and security interests in all Post-Petition Replacement Collateral as described herein to secure the obligations owed to the Agents and the Pre-Petition Lenders under the Pre-Petition Loan Agreement (the "Obligations").  Notwithstanding the foregoing, each Debtor, and its officers or agents on its behalf, is authorized and directed, if so requested by any Agent or any Pre-Petition Lender, to execute such documents including, without limitation, pledges, mortgages, deeds of trust and Uniform Commercial Code financing statements and to pay all costs and expenses as may be reasonably required to provide further evidence of the perfection of the Agents' and the Pre-Petition Lenders' liens in the Post-Petition Replacement Collateral as provided herein.  The stay imposed by Section 362(a) of the

Bankruptcy Code is hereby lifted to allow the filing and recording of a certified copy of this Stipulation and Order or any such financing statements, notices of lien, mortgages, deeds of trust or similar instruments, and all such documents shall be deemed to have been filed or recorded coincident with the execution of this Stipulation and Order.

8.     The Agents and the Pre-Petition Lenders may, in their discretion, file a photostatic copy of this Stipulation and Order as a financing statement in any jurisdiction in which the Post-Petition Replacement Collateral is or will be located, and in such event, the subject filing or recording officer is directed to file or record such copy of this Stipulation and Order.

## Superpriority Claims

9.     In addition to the grants of liens and security interests herein and subject to the Carve-Out and the Bridge Financing Order, if the Agents or the Pre-Petition Lenders shall have any claims against the Debtors to the extent that, inter alia, the use of the Cash Collateral and the other Pre-Petition Collateral and the granting of the Carve-Out and the Bridge Financing Order results in a decrease in the value of the Agents' or the Pre-Petition Lenders' interest in the Cash Collateral or the other Pre-Petition Collateral, or if the Agents' or the Pre-Petition Lenders shall have any other claims against the Debtors arising from or otherwise concerning the diminution in the value of the Pre-Petition Collateral and/or the Cash Collateral after the Petition Date, such claims shall be allowed administrative expense claims pursuant to Section 507(b) of the Bankruptcy Code, with priority in payment over all administrative expense claims and unsecured claims against the Debtors now existing or hereafter arising of any kind or nature whatsoever (other than any such priority administrative claim granted under the Bridge Financing Order), including, without limitation, administrative expenses of the kinds specified in

Sections 326, 328, 330, 331, 503(b), 507(a), 546(c) and 726 of the Bankruptcy Code (the "Superpriority Claims"). Except as expressly provided herein and in the Bridge Financing Order, no cost or expense of administration under Sections 105, 364(c)(1), 503(b), or 507(b) of the Bankruptcy Code or otherwise, including those resulting from the conversion of any of the Chapter 11 Cases pursuant to Section 1112 of the Bankruptcy Code, shall be senior to, or pari passu with, the Superpriority Claims.

Carve-Out

10.     The security interests and liens held by the Agents and the Pre-Petition Lenders in the Pre-Petition Collateral, the Replacement Liens and the Superpriority Claims granted to the Agents and the Pre-Petition Lenders pursuant to this Stipulation and Order shall be subordinate in priority to and subject to a carve-out for (x) in the event of the occurrence and during the continuance of a Termination Event, the payment of allowed and unpaid professional fees and disbursements incurred by the Debtors and any statutory committee appointed in the Chapter 11 Cases in an aggregate amount not in excess of $1 million (plus all unpaid professional fees and disbursements incurred prior to the occurrence of a Termination Event to the extent allowed by the Bankruptcy Court at any time) and (y) the payment of all unpaid fees payable pursuant to 28 U.S.C. § 1930(a)(6) and all unpaid fees payable to the Clerk of this Court or the United States Trustee (collectively, the "Carve-Out").

Cash Management

11.     The Debtors are directed to remit any payments for goods and services provided by the Debtors or for inventory or other property of the estates of the Debtors sold by the Debtors to an account or accounts previously established with JPMC (each, a "Collection Account").

12.    Each Debtor shall remit to JPMC, and as directed by JPMC, for deposit in a Collection Account, all funds and other property in its possession or payable to such Debtor (other than advances of Cash Collateral made pursuant to this Stipulation and Order and proceeds of loans made to the Debtor pursuant to the Bridge Financing Order), from and after the Petition Date, representing the proceeds of any and all of the Pre-Petition Collateral or the Post-Petition Replacement Collateral.

13.    Any and all payments or proceeds remitted, or deemed to be remitted, to JPMC pursuant to this Stipulation and Order shall be received free and clear of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, Section 552(b) of the Bankruptcy Code, all of which are hereby waived by the Debtors.

### The Budget

14.    The Cash Collateral provided by the Agents and the Pre-Petition Lenders to the Debtors and any loan extended to the Debtors under the Bridge Financing Order shall be used by the Debtors through and including the Expiration Date, for the purposes and in amounts not to exceed those set forth in the budget and forecast entered into evidence at the Preliminary Hearing and annexed as Exhibit B hereto (the "Budget") as such Budget may be amended, extended and supplemented from time to time with the express written consent of the Administrative Agent and JPMC, to pay the Debtors' operating and working capital and for any other budgeted expenses in accordance with the terms and conditions of this Stipulation and Order. So long as the Debtors shall have the right to use the Cash Collateral pursuant to this Stipulation and Order, the Debtors may expend funds in accordance with the Budget.

### Reporting Requirements

15.     During the term of this Stipulation and Order, the Debtors shall submit to
the Administrative Agent and JPMC by 12:00 p.m. of each Thursday, commencing Thursday,
April 10, 2003, a report in a form satisfactory to the Administrative Agent and JPMC, which
report shall include (i) a cash flow summary of receipts and disbursements during the previous
week, (ii) a report on collections of any amounts received as a result of asset sales outside of the
ordinary course of the Debtors' business, (iii) an accounts payable analysis, (iv) a reconciliation
of individual receipts and disbursements by line item to the Budget, (v) any non-privileged
information in the Debtors' possession or within their control regarding the operation of their
business, the Pre-Petition Collateral and/or the Post-Petition Replacement Collateral, as the
Administrative Agent and JPMC shall reasonably request, and (vi) a certificate of an authorized
officer of each Debtor, in form and substance satisfactory to the Administrative Agent and
JPMC, certifying that such Debtor is in full compliance with the provisions of this Stipulation
and Order.

### Adequate Protection Payments

16.     As additional adequate protection, the Debtor shall (i) within three (3)
business days of the approval of this Stipulation and Order, pay to the Administrative Agent all
accrued and unpaid interest due under the Pre-Petition Loan Agreement (calculated at the non-
default rate applicable on the Petition Date to outstanding amounts thereunder) and, (ii) from the
Petition Date through the Expiration Date, make timely payments of all interest due as set forth
in the Pre-Petition Loan Agreement (calculated at the non-default rate applicable on the Petition
Date to outstanding amounts thereunder).

17.    As additional adequate protection hereunder, the Agents and the Pre-Petition Lenders shall be entitled to reimbursement by the Debtors (a) promptly upon receipt by the Debtors, the Committee, and the Office of the United States Trustee, of invoices relating thereto, and without the necessity of the filing of fee applications or the obtaining of Court approval with respect thereto, of all reasonable costs and expenses incurred both before and after the Petition Date, in connection with (i) the Agents' and the Pre-Petition Lenders' claims and liens, and (ii) actions to preserve, protect and/or enforce their rights and remedies under, and to administer, the Pre-Petition Loan Agreement and/or the other Pre-Petition Loan Documents, including reasonable counsel fees and disbursements, filing fees, audit expenses, field examination expenses and reasonable fees and disbursements of accountants and financial advisors and (b) any expenses or fees incurred in connection with Treasury Services.

18.    Notwithstanding any other provision hereof, the protections granted to the Agents and the Pre-Petition Lenders pursuant hereto are without prejudice to the right of the Agents and the Pre-Petition Lenders to seek to modify the protections provided hereby so as to provide different or additional protections.    Nothing in this Stipulation and Order shall be construed as or deemed to constitute the consent of the Agents and the Pre-Petition Lenders to the use, sale or lease of the Pre-Petition Collateral, including the Cash Collateral, on any terms other than as expressly provided herein.

<u>No Implied Authorization</u>

19.    Except for transactions in the ordinary course of its business or authorized by an order of this Court, no Debtor shall sell, transfer, lease, encumber or otherwise dispose of any of the property of its estate without the prior written consent of the Required Lenders, and no

such consent shall ever be implied from any other action, inaction or acquiescence by any Agent or any Pre-Petition Lender.

Termination Events

20.     As long as any portion of the Pre-Petition Indebtedness remains unpaid, the Debtors shall not seek, and it shall constitute a "Termination Event" if, except with the express written consent of the Required Lenders which consent shall not be implied:

(a)     any of the Chapter 11 Cases shall be dismissed or converted to a case under Chapter 7 of the Bankruptcy Code; or a Chapter 11 trustee, or an examiner with expanded powers, shall be appointed any of in the Chapter 11 Cases; or

(b)     the Bankruptcy Court or any other court shall enter an order granting relief from the automatic stay applicable under Section 362 of the Bankruptcy Code to the holder or holders of any security interest (other than the security interests of the Agents and the Pre-Petition Lenders to the extent granted in this Stipulation and Order) in any assets of any Debtor allowing such holder or holders to foreclose or otherwise realize upon any such security interests which assets have an aggregate value in excess of $100,000; or

(c)     an order of the Bankruptcy Court or any other court shall be entered amending, supplementing, staying, vacating, reversing, revoking, rescinding or otherwise modifying this Stipulation and Order; provided that no Termination Event shall occur under this clause (d) to the extent that any such amendment, supplement or other modification is not adverse, in the reasonable judgment of the Administrative Agent, to the rights and interests of the Pre-Petition Lenders under this Stipulation and Order; or

(d)     an order of the Bankruptcy Court or any other court shall be entered granting any lien or security interest in any property of the Debtors in favor of any party other than the Agents and the Pre-Petition Lenders pursuant to this Stipulation and Order (other than the Carve-Out and any lien granted in connection with the Bridge Financing Order) or granting a claim (other than the Carve-Out and any super-priority claim granted in connection with the Bridge Financing Order) to any party other than the Agents and the Pre-Petition Lenders that is pari passu with or senior to the Superpriority Claims granted to the Agents and the Pre-Petition Lenders pursuant to this Stipulation and Order; or

(e)     any Debtor shall file any pleading seeking, or otherwise consenting to, or shall support or acquiesce in any other Person's motion as to, any of the matters set forth in paragraphs (a) through (e) above, or the Court shall grant any such motion filed by any other Person; or

(f)    this Stipulation and Order shall cease to be in full force and effect and the Final Order shall not have been entered or deemed to have been entered prior to such cessation, or the entry of the Final Order shall not have occurred within 30 days after the Petition Date, or the Final Order shall cease to be in full force and effect, or the Debtors' authority to use Cash Collateral hereunder shall have otherwise terminated; or

(g)    any Debtor shall make any payment (including "adequate protection" payments) on or in respect of any pre-Petition Date indebtedness or obligations other than (i) the obligations owed to the Agents and the Pre-Petition Lenders, (ii) as permitted under this Stipulation and Order, (iii) sales taxes and employee withholding taxes which have been collected by such Debtor but not yet paid, and (iv) as required under Section 365(b) of the Bankruptcy Code in connection with the assumption of leases and contracts, provided that the Required Lenders consent to such assumption; or

(h)    any Debtor shall fail to comply with the terms of this Stipulation and Order; or

(i)    the Debtors' cash expenditures exceed those permitted in accordance with the Budget; or

(j)    this Court shall abstain from hearing any Chapter 11 Case, or any Debtor shall so move or support any motion brought by any third party seeking such relief; or

(k)    any Debtor shall seek to, or shall support (in any such case by way of, inter alia, any motion or other pleading filed with this Court or any other writing to another party-in-interest executed by or on behalf of a Debtor) any other Person's motion to, disallow or subordinate in whole or in part any Pre-Petition Lender's claims in respect of the Pre-Petition Indebtedness or the obligations owed to such Pre-Petition Lender or to challenge the validity, enforceability, perfection or priority of the liens in favor of any Agent or any Pre-Petition Lender (including, without limitation, the Liens securing the obligations owed to such Agent or Pre-Petition Lender); or

(l)    except to the extent specifically provided for herein, the filing of any motion to obtain credit from any party other than the Agents and the Pre-Petition Lenders unless the terms of any such facility, or any motion and/or order to approve such facility, are acceptable to the Agents and the Pre-Petition Lenders in all respects, or, in connection therewith, all the obligations owed to the Agents and the Pre-Petition Lenders shall first be paid indefeasibly in full in cash (including the cash collateralization of Letters of Credit); or

(m)    any affiliate of any Debtor shall file for bankruptcy under Chapter 7 or Chapter 11 (or an order for relief shall be issued in connection with an involuntary case commenced against any affiliate of any Debtor) and shall fail to

become a party to this Stipulation and Order within five (5) business days from the date of the entry of an order for relief with respect to such affiliate; or

(n)    any order shall be entered limiting or otherwise impairing the Agents' and the Pre-Petition Lenders' rights under Section 552 of the Bankruptcy Code, or any Debtor shall file a pleading seeking to modify such rights, or any Debtor shall fail to object or shall in any way acquiesce to any pleading seeking to limit such rights filed by any other party; or

(o)    the occurrence of a termination event under the Bridge Financing Order.

<u>Remedies</u>

21.    Upon the occurrence of any of the foregoing Termination Events, and at all times thereafter, the Debtors' right to use the Cash Collateral will automatically terminate, and the Administrative Agent and the Pre-Petition Lenders may, at their absolute and sole discretion and option, exercise all rights and remedies and take all or any of the following actions without further modification of the automatic stay pursuant to Section 362 of the Bankruptcy Code (which is hereby deemed modified and vacated to the extent necessary to permit such exercise of rights and remedies and the taking of such actions) or further order of or application to this Court: (a) terminate all further advances or financial accommodations hereunder; (b) declare the principal of and accrued interest on the Pre-Petition Indebtedness, together with all fees and other liabilities constituting the obligations owed to the Agents and the Pre-Petition Lenders, to be immediately due and payable; (c) set off or seize and apply to the obligations owed to the Agents and the Pre-Petition Lenders the Pre-Petition Indebtedness amounts contained in any Collection Account or any other account maintained with or under the control of the Agents and the Pre-Petition Lenders; and/or (d) take any other action or exercise any other right or remedy permitted to the Agents and the Pre-Petition Lenders under the Pre-Petition Loan Documents, this Stipulation and Order or by applicable law. If all the obligations owed to the Agents and the Pre-Petition Lenders are not repaid in cash on the date that such obligations

become due and payable (whether by acceleration, upon the Expiration Date, a Termination Event or otherwise), the Agents and the Pre-Petition Lenders may immediately exercise their rights and remedies specified in clauses (a), (b) and (c) of this paragraph 21 and, commencing on the third (3rd) Business Day after the date that such obligations owed to the Agents and the Pre-Petition Lenders become due and payable (whether by acceleration, upon the Expiration Date, a Termination Event or otherwise), unless the ability of the Agents and the Pre-Petition Lenders to exercise their rights and remedies as provided in clause (d) of this paragraph 21 has been stayed as provided in paragraph 22 hereof, (i) the Agents and the Pre-Petition Lenders may exercise their rights and remedies specified in clause (d) of this paragraph 21 without further order of or application to this Court or further modification of the automatic stay pursuant to Section 362 of the Bankruptcy Code (which is hereby deemed and shall be modified and vacated to the extent necessary to permit such orderly liquidation) and (ii) the Debtors are directed to fully cooperate with the Agents and the Pre-Petition Lenders in the exercise by the Agents and the Pre-Petition Lenders of their rights and remedies specified in clause (d) of this paragraph 21. All of the rights and remedies set forth in this paragraph 21 shall be subject to the senior rights of the lenders under the Bridge Financing Order (the "Bridge Lenders") and may not be exercised without the consent of the Bridge Lenders.

22.    Upon the occurrence of any Termination Event, the Agents and the Pre-Petition Lenders shall, prior to exercising any of the rights and remedies specified in clause (d) of paragraph 21 on account thereof, give no less than three (3) Business Days' written notice thereof to the Debtors and their counsel, counsel to any statutory creditors' committee established in the Chapter 11 Cases, counsel to the Bridge Lenders and to the Office of the United States Trustee for the District of Delaware. The Debtors, any statutory creditors'

committee, the Bridge Lenders and/or the Office of the United States Trustee for the District of Delaware may, during the three (3) Business Day period following the giving of such notice, seek an order from this Court enjoining, staying or otherwise modifying the Agents' and the Pre-Petition Lenders' exercise of their rights and remedies specified in clause (d) of paragraph 21. Unless the exercise by the Agents and the Pre-Petition Lenders of such rights and remedies has been stayed by this Court as provided in this paragraph 22, each Debtor shall cooperate fully with the Agents and the Pre-Petition Lenders and shall not take any steps or actions to contest or otherwise challenge the exercise by the Agents and the Pre-Petition Lenders of each and all of the remedies permitted in this Stipulation and Order or the Pre-Petition Loan Documents or under applicable law. Except as otherwise provided in this paragraph 22, each Debtor is hereby irrevocably deemed to waive all of their rights to question or oppose the Agents and the Pre-Petition Lenders' exercise of their rights and remedies permitted in this Stipulation and Order or in the Pre-Petition Loan Documents or under applicable law upon the occurrence of a Termination Event. The Debtors and other parties in interest may only seek a determination whether or not any Debtor is in default under the terms of this Stipulation and Order, or whether such default exists or has been cured; no Debtor shall seek relief under Section 105 of the Bankruptcy Code, Bankruptcy Rule 7065, or pursuant to Rule 60(b) of the Federal Rules of Civil Procedure (as applied pursuant to Bankruptcy Rule 9024), or request in any way that the general equitable powers of this Court or any other court be invoked to enjoin the Administrative Agent and/or the Pre-Petition Lenders in pursuit of their rights and remedies under this Stipulation and Order, the Pre-Petition Loan Documents, the Bankruptcy Code, and/or applicable non-bankruptcy law.

<u>Survival</u>

23.    The provisions of this Stipulation and Order and any actions taken pursuant hereto shall survive entry of any order (a) confirming any plan of reorganization in any of the Chapter 11 Cases (and the obligations owed to the Agents and the Pre-Petition Lenders and the Pre-Petition Indebtedness shall not be discharged by the entry of any such order or pursuant to Section 1141 of the Bankruptcy Code, the Debtors having hereby waived such discharge), (b) converting any of the Chapter 11 Cases to a Chapter 7 Case, or (c) dismissing any of the Chapter 11 Cases or pursuant to which this Court abstains from hearing any of the Chapter 11 Cases, and the terms and provisions of this Stipulation and Order as well as the Carve-Out, and the Agents' and the Pre-Petition Lenders' claims, liens and security interests granted pursuant to this Stipulation and Order and the Pre-Petition Loan Documents shall continue in full force and effect notwithstanding the entry of any such order, and the Carve-Out and the Agents' and the Pre-Petition Lenders' liens, security interests and superpriority claims shall maintain their priority as provided by this Stipulation and Order and the Pre-Petition Loan Documents until all of the obligations owed to the Agents and the Pre-Petition Lenders and the Pre-Petition Indebtedness are indefeasibly paid in full in cash.   The Court shall retain jurisdiction to enforce the provisions of this Stipulation and Order.

<u>Limitation on Certain Actions</u>

24.    Except for the Debtors, who have expressly waived their rights to do so as provided herein, any party in interest, including any statutory committee of general unsecured creditors, may commence any adversary proceeding or contested matter challenging the validity, enforceability or priority of the obligations owed to the Agents and the Pre-Petition Lenders or the Pre-Petition Indebtedness or, to the extent they secure the obligations owed to the Agents and

the Pre-Petition Lenders or the Pre-Petition Indebtedness, the Agents' and the Pre-Petition

Lenders' liens on or security interests in the Pre-Petition Collateral, or otherwise assert any claim

or cause of action against the Agents and the Pre-Petition Lenders, no later than the date that is

seventy-five (75) days after the Petition Date.  If no such adversary proceeding or contested

matter is commenced as of such date, the obligations owed to the Agents and the Pre-Petition

Lenders and the Pre-Petition Indebtedness shall constitute allowed claims, not subject to

avoidance or subordination, for all purposes in the Chapter 11 Cases, and the Agents and the Pre-

Petition Lenders' liens on and security interests in the Pre-Petition Collateral shall be deemed

legal, valid, binding, perfected, enforceable and otherwise unavoidable, and the obligations owed

to the Agents and the Pre-Petition Lenders and the Pre-Petition Indebtedness and the Agents' and

the Pre-Petition Lenders' liens on and security interests in the Pre-Petition Collateral shall not be

subject to any other or further challenge by any party in interest.  The Agent and any Pre-Petition

Lenders reserve the right to seek the Debtors' waiver to assert a claim under Section 506 (c) of

the Bankruptcy Code at the Final Hearing.

### Preservation of Rights

25.    Except as otherwise specifically provided herein, entry of this Stipulation

and Order shall be without prejudice to any and all rights, remedies, claims and causes of action

which any Agent or any Pre-Petition Lender may have against any Debtor or any third parties,

and without prejudice to the right of any Agent or any Pre-Petition Lender to seek relief from the

automatic stay in effect pursuant to Section 362 of the Bankruptcy Code, or any other relief

under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the

right of the Agents and the Pre-Petition Lenders to (i) seek additional relief from the Court in

respect of its interests in the Pre-Petition Collateral (including, without limitation, the Cash

Collateral) or relief from or modification of the automatic stay under Section 362 of the Bankruptcy Code, (ii) request conversion of the Chapter 11 Cases to Chapter 7 of the Bankruptcy Code and (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan.

26.     Upon execution of this Stipulation and Order by the Court, the provisions hereof shall be immediately binding upon and inure to the benefit of the Agents, the Pre-Petition Lenders, the Debtors and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Chapter 11 Cases or in any superseding Chapter 7 case as a legal representative of the Debtors or the Debtors' estates.

<u>No Surcharge</u>

27.     [Intentionally Omitted]

<u>Right to Inspect</u>

28.     The Administrative Agent and JPMC shall have the right, upon reasonable telephonic notice to the Debtors, at any time during normal business hours, to inspect, audit, examine, check and make copies of, and extract non-privileged information from, the Debtors' records, and to obtain company information from the Debtors' management, and each Debtor shall make its records and management available to the Administrative Agent and JPMC for such purposes. Each Debtor shall timely file and serve upon the Administrative Agent and JPMC and their counsel all pleadings and other documents filed by such Debtor in such Debtor's Chapter 11 Case, including the financial reports required by the United States Trustee's office, and shall continue to supply such reports as are required under the Pre-Petition Loan Documents or as requested by the Administrative Agent and JPMC.

29.    The Debtors shall provide the Administrative Agent and JPMC with copies of all documents provided to any official committee of unsecured creditors, as well as copies of all non-privileged consultants' reports, appraisals, business plans, and similar documents as they become available to the Debtors, including, without limitation, any and all audits and other non-privileged reports prepared by the Debtors' accountants. The Debtors shall provide the Administrative Agent and JPMC with a description of all documents withheld as privileged and shall give the basis for such assertion of privilege.

<u>Debtors Must Maintain Insurance</u>

30.    The Debtors shall deliver to the Administrative Agent evidence satisfactory to the Administrative Agent that the Pre-Petition Collateral is adequately insured under insurance policies acceptable to the Administrative Agent under which the Administrative Agent is named as loss payee.

<u>No Deemed Lender Control</u>

31.    No Agent nor any Pre-Petition Lender shall be deemed to be in "control" of the operations of any Debtor, or to be acting as a "responsible person" or "owner" or "operator" with respect to the operation or management of any Debtor (as such terms or similar terms are used in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, or any similar federal or state statute), solely by reason of any credit extended to the Borrower under the Pre-Petition Loan Documents, or the grant to and/or exercise by any Agent or any Pre-Petition Lender of any rights or remedies hereunder or thereunder.

<u>No Release of Non-Debtors</u>

32.    Nothing contained in this Stipulation and Order shall be deemed to terminate, modify or release any obligations of any non-debtor guarantor to any Agent or any

Pre-Petition Lender with respect to the obligations owed to the Agents and the Pre-Petition Lenders, or the Pre-Petition Indebtedness, or otherwise.

### No Third-Party Beneficiaries

33. No rights are intended to be created hereunder for the benefit of any third party or creditor or any direct or indirect incidental beneficiary except as specifically provided herein. The Carve-Out shall not be available to any party other than those specifically authorized to receive payment therefrom as provided in paragraph 10 hereof.

### Effectiveness

34. This Stipulation and Order shall constitute findings of fact and conclusions of law and (other than the Emergency Cash Collateral Use) shall take effect and be fully enforceable immediately upon the later of (a) the entry of this Stipulation and Order by this Court and (b) entry of the Bridge Financing Order. Except as otherwise provided herein, the terms of this Stipulation and Order shall be valid and binding upon the Debtors, all creditors of the Debtors, any statutory committee appointed in these cases all other parties in interest from and after the execution of this Stipulation and Order by this Court.

### Waiver, Modification and Amendment

35. No waiver, modification, or amendment of any of the provisions hereof shall be effective unless it is set forth in writing, signed by the parties hereto and approved by this Court.

### Good Faith

36. Each Agent and each Pre-Petition Lender are hereby found to be an entity that extended or will extend credit, and that has consented to the use of the Cash Collateral, in good faith and is entitled to all of the protections provided to an entity that extended credit in

good faith, with respect to all loans and advances made, letters of credit issued and Cash Collateral used pursuant to this Stipulation and Order and the Pre-Petition Loan Documents. If this Stipulation and Order or any of the provisions hereof are hereafter modified, vacated, stayed or reversed by subsequent order of this Court or any other court, without the Required Lenders' express written consent, such stay, modification, vacation or reversal shall not affect (a) the validity of any obligation, indebtedness or liability incurred by any Debtor to any Agent or any Pre-Petition Lender that is or was incurred pursuant to this Stipulation and Order before the later of (i) the effective date of such stay, modification or vacation or reversal and (ii) the date of each Agent's and each Pre-Petition Lender's receipt of notice thereof, or (b) the validity and enforceability of the rights, remedies, liens, security interests and priorities authorized and created by this Stipulation and Order or (c) each Agent's or any Pre-Petition Lender's right and ability to collect and apply all amounts due to it under the Pre-Petition Loan Documents as approved by this Stipulation and Order.

37.    Notwithstanding any stay, modification, vacation, or reversal of this Stipulation and Order, any indebtedness, obligation or liability incurred by any Debtor pursuant to this Stipulation and Order arising prior to the later of the effective date of such stay, modification, vacation or reversal, or each Agent's and each Pre-Petition Lender's receipt of notice thereof, shall be governed in all respects by the original provisions of this Stipulation and Order, and each Agent and each Pre-Petition Lender shall continue to be entitled to all of the rights, remedies, privileges and benefits, including any payments authorized herein and all security interests, liens and priorities granted herein, with respect to all such indebtedness, obligations or liabilities incurred or existing prior to such date, and with respect to such Debtor's use of the Cash Collateral prior to such date. Without limiting the generality of the foregoing, in

the event this Court or any other court hereafter modifies any of the provisions of this Stipulation and Order, such modifications shall not affect the rights, remedies, liens and priorities of the Agents and the Pre-Petition Lenders granted or acknowledged pursuant to this Stipulation and Order with respect to the Obligations and the Pre-Petition Indebtedness and any Cash Collateral which is used prior to any such modifications.

### PACA Trust Claims

38.    The PACA Trust Claimants reserve any PACA Trust rights with respect to any assets, including any PACA Trust interests against non-Debtor third parties under applicable law.

39.    The protections afforded by this Stipulation and Order shall not be deemed a limitation, waiver, relinquishment or election of rights or remedies against the Debtors or any non-Debtor third parties which are otherwise available to PACA Trust Claimants under 7 U.S.C. § 449e, or under any other applicable statute.

### Notice

40.    The Debtors shall, within three (1) business days following entry of this Stipulation and Order, mail copies thereof, to the United States Trustee for the District of Delaware, counsel to the Agents and the Pre-Petition Lenders, counsel to the Bridge Lenders, all parties who appeared or otherwise responded to the relief requested herein, any other party which has filed a request for notices with this Court and served such notice upon the Debtors' counsel, counsel for Committee and to the entities listed on the each Debtor's list of its twenty (20) largest non-insider unsecured creditors. The notice of approval of this Stipulation and Order shall state that any party in interest objecting to this Stipulation and Order as a final order shall file written objections with the United States Bankruptcy Court for the District of Delaware no

later than five (5) business days prior to the date set for the Final Hearing on this matter, which

objections shall be served so that the same are received on or before 4:00 p.m. (Prevailing

*April 9, 2003, at Noon, on*

Eastern Time) of such date by: (a) counsel to the Debtors, Kirkland & Ellis, 777 South Figueroa

Street, 37th Floor, Los Angeles, CA 90012, Attn.: Richard L. Wynne, Esq. and Pachulski, Stang,

Zichl, Young, Jones & Weintraub, 919 N. Market Street, 16th Floor, Wilmington, DE 19899-

8705, Attn.: Laura Davis Jones, Esq., (b) counsel to the Agents, White & Case LLP,

1155 Avenue of the Americas, New York, New York 10036, Attn.: Andrew DeNatale, Esq. and

Greenberg Traurig, The Brandywine Building, 1000 West Street, Suite 1540, Wilmington, DE

19801, Attn.: Scott D. Cousins, Esq. and (c) the Office of the United States Trustee for the

District of Delaware.

       41.    A hearing to consider the entry of this Stipulation and Order on a ~~final~~ *further*

*Noon*

basis will be held on *April 10*, 2003 at *11:30* a.m.

Dated: *April 3*, 2003

                                                                                               UNITED STATES BANKRUPTCY JUDGE

Agreed as to form and content:

DEUTSCHE BANK TRUST COMPANY AMERICAS,
AS ADMINISTRATIVE AGENT and JPMORGAN CHASE
BANK, AS COLLATERAL AGENT, PROVIDER OF
TREASURY SERVICES AND SYNDICATION AGENT

By: _____
    Scott D. Cousins, Esq. (3079)
    William E. Chipman, Jr., Esq. (3818)
    GREENBERG TRAURIG, LLP
    The Brandywine Building
    Suite 1540
    Wilmington, Delaware 19801

(302) 661-7371

Counsel to the Agents

FLEMING COMPANIES, INC., *et al.*


By: ~~Laura Davis Jones~~
Laura Davis Jones, Esq.
PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB
919 N. Market Street, 16th Floor
Wilmington, DE 19899-8705

Counsel to the Debtors and Debtors-in Possession

# EXHIBIT  A

## LIST OF GUARANTORS

## EXHIBIT A

### Guarantors

Core-Mark International, Inc.
ABCO Markets, Inc.
ASI Office Automation, Inc.
Core-Mark Interrelated Companies, Inc.
Dunigan Fuels, Inc.
Fleming Foods Management Co., L.L.C.
Fleming International, Ltd.
Fleming Transportation Service, Inc.
Fuelserv, Inc.
Head Distributing Company
Minter-Weisman Co.
Progressive Realty, Inc.
Retail Investments, Inc.
RFS Marketing Service, Inc.

ABCO Food Group, Inc.
ABCO Realty Corp.
C/M Products, Inc.
Core-Mark Mid-Continent, Inc.
Favor Concepts, Ltd.
Fleming Foods of Texas, L.P.
Fleming Supermarkets of Florida, Inc.
Food 4 Less Beverage Company, Inc.
General Acceptance Corporation
Marquise Ventures Company, Inc.
Piggly Wiggly Company
Rainbow Food Group, Inc.
Retail Supermarkets, Inc.
Richmar Foods, Inc.

28587-001\DOCS_DE:67870.1

# EXHIBIT B

## 2-WEEK BUDGET

### Fleming Companies
### 2 Week Cash Forecast
### Cash Collateral

**Fleming Companies**
**Dailey Cash Flow Forecast**
**Through Week Ending April 19, 200**

| | Monday 4/7/2003 | Tuesday 4/8/2003 | Wednesday 4/9/2003 | Thursday 4/10/2003 | Friday 4/11/2003 | Weekly Total 4/13/2003 |
|---|---|---|---|---|---|---|
| **Cash Receipts** | | | | | | |
| Wholesale Receipts | $ 28,602,129 | $ 40,309,034 | $ 20,164,964 | $ 16,244,154 | $ 17,505,439 | $ 122,825,720 |
| Convenience Receipts | 20,415,759 | 28,771,968 | 14,393,441 | 11,594,827 | 12,640,517 | 87,816,512 |
| Retail Receipts | 6,927,529 | 9,762,980 | 4,884,020 | 3,934,387 | 4,289,214 | 29,798,130 |
| Other Receipts | - | - | - | - | - | - |
| **Total Receipts** | $ 55,945,417 | $ 78,843,981 | $ 39,442,425 | $ 31,773,368 | $ 34,435,170 | $ 240,440,362 |
| | | | | | | |
| **Cash Disbursements From Operations** | | | | | | |
| Wholesale Purchases/Retail (excluding payroll) | $ (30,609,912) | $ (23,447,213) | $ (29,883,094) | $ (25,738,580) | $ (19,239,989) | $ (128,918,788) |
| Convenience Purchases (excluding payroll) | (19,904,750) | (15,208,417) | (18,820,283) | (16,352,772) | (11,805,470) | (82,091,692) |
| Payroll & Related | - | (2,800,000) | - | - | (2,070,000) | (4,870,000) |
| Tax Disbursements-cigarettes | (1,911,000) | - | (100,000) | (200,000) | - | (2,211,000) |
| Tax Disbursements-other | - | - | - | - | (1,112,811) | (1,112,811) |
| Rent | - | - | - | - | - | - |
| Lease | - | (11,397,485) | - | - | - | (11,397,485) |
| Operational Disbursements | (3,454,756) | (2,500,147) | (1,651,268) | (1,817,515) | (175,900) | (9,599,586) |
| **Total Cash Disbursements From Operations** | $ (55,880,418) | $ (55,353,262) | $ (50,454,645) | $ (44,108,868) | $ (34,404,169) | $ (240,201,362) |
| | | | | | | |
| **Cash Disbursements From Non Operations** | | | | | | |
| Vendor Deposits | $ - | $ - | $ - | $ - | $ - | $ - |
| Capital Expenditures | | | | | | - |
| Restructuring Disbursements | | | | | | - |
| Professional Fees | | | | | | - |
| Interest and Financing Costs | (65,000) | (36,000) | (58,000) | (49,000) | (31,000) | (239,000) |
| Non Operating Other | | | | | | - |
| **Total Cash Disbursements From Non Operations** | $ (65,000) | $ (36,000) | $ (58,000) | $ (49,000) | $ (31,000) | $ (239,000) |
| | | | | | | |
| **Total Disbursements** | $ (55,945,418) | $ (55,389,262) | $ (50,512,645) | $ (44,157,868) | $ (34,435,169) | $ (240,440,362) |
| | | | | | | |
| Cash Excess/(Deficit) | $ - | $ 23,454,719 | $ (11,070,220) | $ (12,384,499) | $ - | $ - |
| Beginning Cash Balance | - | - | 23,454,719 | 12,384,499 | - | - |
| Ending Cash Balance | $ - | $ 23,454,719 | $ 12,384,499 | $ - | $ - | $ - |

mpany
ment's

## Fleming Companies
## 2 Week Cash Forecast
## Cash Collateral

**Fleming Companies**
**Dailey Cash Flow Forecast**
**Through Week Ending April 19, 2003**

| | Tuesday 4/1/2003 | Wednesday 4/2/2003 | Thursday 4/3/2003 | Friday 4/4/2003 | Weekly Total 4/6/2003 |
|---|---|---|---|---|---|
| **Cash Receipts** | | | | | |
| Wholesale Receipts | $ 34,713,917 | $ 18,808,222 | $ 14,355,965 | $ 16,019,531 | $ 83,897,634 |
| Convenience Receipts | 24,778,259 | - | - | 41,744,392 | 66,522,651 |
| Retail Receipts | 8,407,824 | - | - | 15,092,810 | 23,500,634 |
| Other Receipts | - | - | 28,000,000 | - | 28,000,000 |
|    *Total Receipts* | $ 67,900,000 | $ 18,808,222 | $ 42,355,965 | $ 72,856,733 | $ 201,920,920 |
| | | | | | |
| **Cash Disbursements From Operations** | | | | | |
| Wholesale Purchases/Retail (excluding payroll) | $ (32,959,911) | $ (10,986,637) | $ (27,466,593) | $ (37,354,566) | $ (108,767,708) |
| Convenience Purchases (excluding payroll) | (20,168,931) | (6,722,977) | (16,807,442) | (22,858,122) | (66,557,472) |
| Payroll & Related | (7,674,898) | (1,346,406) | (3,366,014) | (5,152,867) | (17,540,184) |
| Tax Disbursements-cigarettes | - | - | - | - | - |
| Tax Disbursements-other | - | - | - | (189,225) | (189,225) |
| Rent | - | - | - | - | - |
| Lease | - | - | - | - | - |
| Operational Disbursements | - | - | - | (13,136,485) | (13,136,485) |
|    *Total Cash Disbursements From Operations* | $ (60,803,740) | $ (19,056,020) | $ (47,640,049) | $ (78,691,265) | $ (206,191,074) |
| | | | | | |
| **Cash Disbursements From Non Operations** | | | | | |
| Vendor Deposits | $ - | $ - | $ - | $ - | $ - |
| Capital Expenditures | - | - | - | - | - |
| Restructuring Disbursements | - | - | - | - | - |
| Professional Fees | - | - | - | - | - |
| Interest and Financing Costs | (35,486) | (57,665) | (48,793) | (31,050) | (172,995) |
| Non Operating Other | - | - | - | - | - |
|    *Total Cash Disbursements From Non Operations* | $ (35,486) | $ (57,665) | $ (48,793) | $ (31,050) | $ (172,995) |
| | | | | | |
|    *Total Disbursements* | $ (60,839,226) | $ (19,113,685) | $ (47,688,843) | $ (78,722,315) | $ (206,364,069) |
| | | | | | |
| Cash Excess/(Deficit) | $ 7,060,774 | $ (305,463) | $ (5,332,878) | $ (5,865,582) | $ (4,443,149) |
| Beginning Cash Balance | 4,443,149 | 11,503,923 | 11,198,460 | 5,865,582 | 4,443,149 |
| Ending Cash Balance | $ 11,503,923 | $ 11,198,460 | $ 5,865,582 | $ - | $ - |

DISCLAIMER: This presentation is provided only as a general guideline to the estimated performance of the Co
and cannot be relied upon to reflect actual circumstances or results. It is based upon historical data and manage
assumptions. It is provided for the internal use of the Company.

12