# EXHIBIT D

# ORIGINAL

### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Fleming Companies, Inc., et al.,[1] | ) | Case No. 03-10945 (MFW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**FINAL ORDER AUTHORIZING (I) POST- PETITION FINANCING PURSUANT TO 11 U.S.C. § 364 AND BANKRUPTCY RULE 4001(c); (II) USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND BANKRUPTCY RULES 4001(b) AND (d); (III) GRANT OF ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363; AND (IV) APPROVING SECURED INVENTORY TRADE CREDIT PROGRAM AND GRANTING OF SUBORDINATE LIENS, PURSUANT TO 11 U.S.C. §§105 AND 364(c)(3) AND RULE 4001(c)**

Upon the motion (the "Motion") dated April 14, 2003 of Fleming Companies, Inc.

("Fleming") and each of its subsidiaries which have filed petitions for relief under Chapter 11 of

title 11 of the United States Code (the "Bankruptcy Code"), debtors and debtors-in-possession

(Fleming and each such entity, a "Debtor" and, collectively, the "Debtors"):

---

[1] The Debtors are the following entities: Core-Mark International, Inc.; Fleming Companies, Inc.; ABCO Food Group, Inc.; ABCO Markets, Inc.; ABCO Realty Corp.; ASI Office Automation, Inc.; C/M Products, Inc.; Core-Mark Interrelated Companies, Inc.; Core-Mark Mid-Continent, Inc.; Dunigan Fuels, Inc.; Favar Concepts, Ltd.; Fleming Foods Management Co., L.L.C.; Fleming Foods of Texas, L.P.; Fleming International, Ltd.; Fleming Supermarkets of Florida, Inc.; Fleming Transportation Service, Inc.; Food 4 Less Beverage Company, Inc.; Fuelserv, Inc.; General Acceptance Corporation; Head Distributing Company; Marquise Ventures Company, Inc.; Minter-Weisman Co.; Piggly Wiggly Company; Progressive Realty, Inc.; Rainbow Food Group, Inc.; Retail Investments, Inc.; Retail Supermarkets, Inc.; RFS Marketing Services, Inc.; and Richmar Foods, Inc.

NEWYORK 388909 v4 (2K)

DOCKET # 743
DATE 5-7-03

(a) for authorization pursuant to Sections 364(c)(1), (2) and (3) and 364(d)(1) of the

Bankruptcy Code, and Rules 4001(c) and 9014 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), inter alia,

(i) for the Debtors[2] to obtain post-petition financing (the "Post-Petition Financing", the aggregate principal sum of which, plus interest, costs, fees, expenses and other amounts which may become owing, the "Post-Petition Indebtedness") from those lenders from time to time party to that certain Post-Petition Loan Agreement (as defined below) (the "Post-Petition Lenders"), which shall not exceed, at any one time outstanding, $150 million (with the ability to increase the amount of indebtedness in accordance with Section 6.03(a)(iv) of the Post-Petition Loan Agreement (as defined below) (the "Incremental Indebtedness") (less the amount of any post-petition indebtedness, other than the Post-Petition Indebtedness, approved by the Post-Petition Agents and the Required Lenders and obtained by the Debtors) without further court approval, subject to the approval of the Post-Petition Agents and the Required Lenders) (the "DIP Facility"), with a sublimit for standby and/or trade letters of credit of $40 million (the "Post-Petition Letters of Credit");

(ii) for the Debtors to execute and deliver to the Post-Petition Lenders and Deutsche Bank Trust Company Americas ("DBTCA"), as administrative agent for the Post-Petition Lenders (in such capacity, the "Administrative Agent") and JPMorgan Chase Bank ("JPMC"), as collateral agent for the Post-Petition Lenders (in such capacity, the "Collateral Agent" and together with the Administrative Agent, the "Post-Petition Agents") that certain credit agreement, dated as of May 6, 2003 with respect to the Post-Petition Financing (as amended, supplemented, restated or otherwise modified from time to time, the "Post-Petition Loan Agreement")[3];

(iii) for the Debtors, if so requested by any Post-Petition Lender, to execute a promissory note (a "Note") in favor of such Post-Petition Lender evidencing the Debtors' obligation to pay the principal of and interest on all Post-Petition Loans made to the Debtors by such Post-Petition Lender (the Notes, if any, together with the Post-Petition Loan Agreement and all documents at any time executed in connection therewith, or executed and delivered in connection with the Existing Credit Agreement and ratified and

---

[2]   Notwithstanding anything to the contrary in this Order, ASI Office Automation, Inc. and Marquise Ventures Company, Inc. are not Borrowers under the Post-Petition Loan Agreement (as defined below) and shall incur no Post-Petition Indebtedness (as defined below) grant any Post-Petition Financing Liens (as defined below) or participate in the Trade Credit Lien Program (as defined below) but shall be considered "Debtors" hereunder for all other purposes, including for purposes of granting Pre-Petition Lender Replacement Liens (as defined below) upon Post-Petition Replacement Collateral (as defined below).

[3]   Capitalized terms used herein that are not otherwise defined shall have the meanings ascribed to such terms in the Post-Petition Loan Agreement (as defined above), which shall be substantially in the form attached hereto as Exhibit "A".

assumed by the Debtors pursuant to the Post-Petition Loan Agreement, herein collectively referred to as the "Post-Petition Loan Documents");

(iv) for the Debtors to be jointly and severally liable for the payment in full of all Post-Petition Obligations (as defined below) and the Post-Petition Indebtedness;

(v) for the Debtors to grant to the Administrative Agent, for its own benefit and the benefit of the Post-Petition Lenders, as security for the Post-Petition Obligations, security interests, liens and superpriority claims pursuant to Sections 364(c) and (d) of the Bankruptcy Code; and

(vi) for the Debtors to grant junior trade liens in favor of certain trade vendors as an incentive to induce critical trade vendors to continue to supply the Debtors on trade terms consistent with past practices and to extend credit to the Debtors (the "Trade Credit Lien Program");

(b) for authorization:

(i) pursuant to Section 363(c) of the Bankruptcy Code to use cash collateral securing the Pre-Petition Obligations, including the Pre-Petition Indebtedness (as defined below) under the Existing Credit Agreement and all ancillary documents executed in connection therewith (together with the Existing Credit Agreement, the "Pre-Petition Loan Documents"); and

(ii) to provide adequate protection pursuant to Sections 361 and 363 of the Bankruptcy Code to the Pre-Petition Lenders (the Pre-Petition Lenders and the Post-Petition Lenders hereinafter collectively referred to as the "Lenders") and the Pre-Petition Agents (the Pre-Petition Agents and the Post-Petition Agents hereinafter collectively referred to as the "Agents") in respect of their interests in the Pre-Petition Collateral (as defined below), for any diminution in the value of the Pre-Petition Lenders' and the Pre-Petition Agents' interest in the Pre-Petition Collateral;

(c) requesting in accordance with Bankruptcy Rule 4001(c)(2), that this Court schedule a hearing (the "Interim Hearing") to consider entry of an order (the "Interim Order") authorizing the Debtors, on an interim basis:

(i) to borrow from the Post-Petition Lenders up to $50 million at any one time outstanding upon the terms and conditions set forth in the Post-Petition Loan Documents and/or the Interim Order pending the Final Hearing referred to below; and

(ii) to use the Cash Collateral upon the terms and conditions set forth in the Interim Order pending the Final Hearing referred to below; and

(d) in accordance with Bankruptcy Rule 4001(c)(2) and (d)(3) requesting that this Court schedule a hearing (the "Final Hearing") to consider entry of a final order (the "Final Order")

authorizing, inter alia, the use of the Cash Collateral (as defined below) and the Post-Petition Financing through and including the Termination Date.

The Court having considered the Motion, the Post-Petition Loan Documents and any and all documents and instruments delivered pursuant thereto and in connection therewith; and in accordance with Bankruptcy Rule 4001(c) and (d), due and proper notice of the Motion and the Post-Petition Loan Documents having been provided; and the Interim Hearing having been held before this Court on April 21, 2003 and April 22, 2003; and the Interim Order having been entered by the Court on April 24, 2003; and the Final Hearing having been held before this Court on May __, 2003; and upon all the pleadings filed with the Court in connection with the Interim Hearing and the Final Hearing and all of the proceedings held before the Court and upon the record made at the Interim Hearing and the Final Hearing; and the Court having noted the appearances of all parties in interest present at the Interim Hearing and the Final Hearing and in the record of the Court; and objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration and good and sufficient cause appearing therefor,

IT IS HEREBY FOUND that:

A.      On April 1, 2003 (the "Petition Date"), each Debtor filed a voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code (Case No. 03-10944 through 10972 (MFW)) (the "Chapter 11 Cases"). The Debtors are authorized to continue to operate their respective businesses and to manage their respective properties as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

B.      The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered. On April 10, 2003, the Office of the United States

Trustee formed an Official Committee of Unsecured Creditors (the "Committee") in the Chapter 11 Cases. No trustee or examiner has been appointed in the Chapter 11 Cases nor has a request for the appointment of a trustee or examiner been made.

C.    This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of this Order constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 4001(b), (c) and (d). Venue of the Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    Each Debtor acknowledges, admits and agrees that, as of the Petition Date and pursuant to the Pre-Petition Loan Documents, the Pre-Petition Lenders made loans and advances to Fleming, issued or caused to be issued letters of credit on Fleming's behalf and incurred obligations in connection with Treasury Services (collectively, the "Pre-Petition Loans") secured by first-priority security interests and liens on all or substantially all of the Debtors' then existing and after acquired assets set forth in Section 1.1 of the Security Agreement (as defined in the Existing Credit Agreement) and Section 3.1 of the Pledge Agreement (as defined in the Existing Credit Agreement), including, accounts receivable, inventory, instruments and chattel paper evidencing accounts receivable or into which any accounts receivable have been, or thereafter were, converted, securities, limited liability company interests, partnership interests, security entitlements, financial assets and investment property, and all proceeds and products of any and all of the foregoing (the "Pre-Petition Collateral").

E.    Each Debtor acknowledges, admits and agrees that, as of the Petition Date, it was in default under the Existing Credit Agreement and was indebted to the Pre-Petition

Lenders under the Existing Credit Agreement in the aggregate principal sum of not less than $604 million (including outstanding letters of credit and fees associated therewith of approximately $146 million), together with interest accrued thereon, plus costs, fees and expenses pursuant to Section 9.03 of the Existing Credit Agreement as well as any obligations incurred in connection with Treasury Services not to exceed $50 million (collectively, the "Pre-Petition Indebtedness").  Each Debtor acknowledges and admits, after due inquiry and without waiver of any rights of other parties set forth in paragraph 48 hereof, (a) the legality, validity and enforceability of the Pre-Petition Indebtedness owing to each Pre-Petition Lender as shown on the books and records of such Pre-Petition Lender and/or the Pre-Petition Agents, (b) that the security interests and liens held by the Pre-Petition Lenders and the Pre-Petition Agents in and upon the Pre-Petition Collateral (the "Pre-Petition Financing Liens") are duly perfected, legal, valid, binding and enforceable first-priority liens and security interests on the Pre-Petition Collateral, not subject to avoidance, defense, objection, action, counterclaim, setoff or subordination under the Bankruptcy Code or applicable non-bankruptcy law, (c) the legality, validity and non-avoidability of all payments made to or on behalf of the Pre-Petition Lenders and the Pre-Petition Agents prior to the Petition Date, (d) that the Pre-Petition Lenders' and the Pre-Petition Agents' pre-petition claims, liens and security interests against the Debtors' estates and their property are not subject to avoidance, defense, objection, action, counterclaim, setoff or subordination, (e) that the Debtors do not possess, may not assert and have waived any claim, objection, action, counterclaim, set-off, right or defense of any kind or nature which could in any way affect the validity, priority, enforceability and nonavoidability of the Pre-Petition Indebtedness or the liens and security interests of the Pre-Petition Lenders and the Pre-Petition Agents upon the Pre-Petition Collateral or which would reduce or affect the obligation of the

Debtors to pay the Pre-Petition Indebtedness and (I) that the Debtors hereby release the Pre-Petition Lenders and the Agents, and their agents and employees, from all claims and causes of action of the Debtors arising out of the Pre-Petition Loan Documents or any other loan agreement or other relationship with the Debtors prior to the entry of this Order.

F.    Each Debtor further acknowledges, admits and agrees, after due inquiry, that the Pre-Petition Collateral includes, without limitation, all proceeds of the Pre-Petition Collateral, whether existing before or after the commencement of the Chapter 11 Cases, which items constitute the Pre-Petition Agents' and the Pre-Petition Lenders' cash collateral within the meaning of Section 363(a) of the Bankruptcy Code (the "Cash Collateral"). The Pre-Petition Agents and the Pre-Petition Lenders are entitled, pursuant to Sections 361 and 363 of the Bankruptcy Code, to adequate protection of their interest in the Pre-Petition Collateral, including the Cash Collateral, for and to the extent of any diminution in value of the Pre-Petition Collateral, resulting from, without limitation, the use of the Cash Collateral, the use, sale or lease of the Pre-Petition Collateral (other than the Cash Collateral), the imposition of the automatic stay, the priming of the Pre-Petition Financing Liens, and the granting of the Carve-Out and the Post-Petition Financing Liens (as defined below).

G.    Each Debtor admits that, after the Petition Date and pursuant to the Bridge Financing Order, dated April 3, 2003 (the "Initial Bridge Order") and the Order Approving First Stipulation Extending Bridge Financing Order, dated April 10, 2003 (together with the Initial Bridge Order, the "Bridge Financing Order"), the Bridge Lenders (as defined in the Initial Bridge Order) made loans and advances to the Debtors in the principal amount of $30 million (the "Bridge Loan") secured pursuant to Section 364(d)(1) of the Bankruptcy Code by first, paramount and perfected liens upon, and security interests in, all property of the Debtors,

wheresoever located and whether then existing or thereafter arising or acquired by the Debtors, which liens primed the Pre-Petition Financing Liens (but did not prime valid, enforceable, unavoidable and perfected liens and security interests held by parties-in-interest other than the Pre-Petition Agents and the Pre-Petition Lenders which were properly perfected prior to the Filing Date and were subject to the Carve-Out), including, without limitation, the following property of the Debtors (collectively, the "Post-Petition Bridge Collateral"): all pre-petition and post-petition real and personal property of the Debtors, including, without limitation, all accounts, contract rights, chattel paper, instruments (including, without limitation, intercompany notes payable to any Debtor and certificated securities), deposit accounts, documents, goods (including, without limitation, machinery, equipment, fixtures and inventory), general intangibles (including, without limitation, rights to tax refunds), investment property, real property (including, without limitation, owned real property and leasehold interests) and other rights to payment, causes of action and choses in action, insurance policies and claims or rights to payment thereunder, uncertificated securities, and all additions and accessions thereto and all proceeds thereof, whether direct or indirect, realized from the sale, transfer, assignment, release, termination or other disposition or collection of any or all of the foregoing; provided, however, that the Post-Petition Bridge Collateral did not attach to any actions commenced pursuant to Sections 544, 547, 548 and 550 of the Bankruptcy Code.

    11.    Each Debtor acknowledges, admits and agrees that it is indebted to the Bridge Lenders under the Bridge Financing Order in the aggregate principal sum of not less than $30 million, plus accrued interest, costs, fees (including reasonable attorneys' fees) and expenses, along with other amounts which may become owing on account of events or occurrences after the Petition Date (collectively, the "Post-Petition Bridge Indebtedness"). Each

Debtor acknowledges and admits (a) the legality, validity and enforceability of the Post-Petition Bridge Indebtedness owing to each Bridge Lender as shown on the books and records of such Bridge Lender, (b) that the security interests and liens held by the Bridge Lenders in and upon the Post-Petition Bridge Collateral are duly perfected, legal, valid, binding and enforceable first-priority liens and security interests on the Post-Petition Bridge Collateral, not subject to avoidance, defense, objection, action, counterclaim, setoff or subordination under the Bankruptcy Code or applicable non-bankruptcy law, (c) the legality, validity and non-avoidability of all payments made to or on behalf of the Bridge Lenders, (d) that the Bridge Lenders' claims, liens and security interests against the Debtors' estates and their property are not subject to avoidance, defense, objection, action, counterclaim, setoff or subordination, (e) that the Debtors do not possess, may not assert and have waived any claim, objection, action, counterclaim, set-off, right or defense of any kind or nature which could in any way affect the validity, priority, enforceability and nonavoidability of the Post-Petition Bridge Indebtedness or the liens and security interests of the Bridge Lenders upon the Post-Petition Bridge Collateral or which would reduce or affect the obligation of the Debtors to pay the Post-Petition Bridge Indebtedness and (f) that the Debtors hereby release the Bridge Lenders, and their agents and employees, from all claims and causes of action of the Debtors arising out of the Bridge Loans or any documents executed in connection therewith.

1.      In order to grant adequate protection to the Pre-Petition Lenders for any diminution in the value of the Pre-Petition Collateral (the "Diminution Claim") resulting from, inter alia, the granting of the Liens and the carve-out provided for in the Bridge Financing Order, the priming of the Pre-Petition Financing Liens, the imposition of the automatic stay, and the use, sale or lease or other disposition of the Pre-Petition Collateral, the Debtors entered into the

Interim Stipulation and Order Authorizing (A) the Use of Cash Collateral Pursuant to §363 and (B) the Grant of Adequate Protection Pursuant to 11 U.S.C. §§361 and 363 Nunc Pro Tunc to the Petition Date, which was approved by order of the Bankruptcy Court (subject to the modifications agreed to on the record at the April 3, 2003 hearing), which Stipulation and Order has been extended through April 22, 2003.

      J.    Good cause has been shown for entry of this Order. The relief requested herein is necessary, essential and appropriate for the continued survival and operation of the Debtors' businesses, absent which the Debtors' ability to maximize the value of their estates for the benefit of their creditors will be irreparably jeopardized. The permission granted herein to enter into the Post-Petition Loan Documents and obtain funds thereunder and use the Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors. The Debtors do not have sufficient available sources of working capital and financing to carry on the operation of their business without the Post-Petition Financing, even after giving effect to the use of the Cash Collateral and the Bridge Loan. The Debtors' need for the Post-Petition Financing and the continued use of the Cash Collateral is immediate. In the absence of the Post-Petition Financing and the continued use of the Cash Collateral, the continued operation of the Debtors' businesses will not be possible, and serious and irreparable harm to the Debtors, their estates and their creditors would occur. Entry of this Order will minimize disruption of the Debtors' businesses and operations and will permit the Debtors to meet payroll and other operating expenses. This Court concludes that entry of this Order is therefore in the best interests of the Debtors, their estates and their creditors, as its implementation will, among other things, permit the Debtors to maintain the operation of their businesses, preserve the value of the Debtors' estates and enhance the Debtors' prospects for a successful reorganization.

K.    The Debtors have been unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. Financing on a post-petition basis is not otherwise available without the Debtors granting to the Administrative Agent for its own benefit and the benefit of the Post-Petition Lenders, as herein provided, (i) pursuant to Sections 361, 363, 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, liens and security interests on all property of the Debtors' estates, other than any Avoidance Actions (as defined below), but including the proceeds thereof, and (ii) pursuant to Sections 361, 363 and 364(c)(1) of the Bankruptcy Code, claims having a priority over any and all administrative expenses of the kinds specified in or incurred pursuant to Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c) and 726 of the Bankruptcy Code, subject only to the Carve-Out.

L.    The Post-Petition Lenders will not provide financing and the Pre-Petition Lenders will not permit the continued use of the Cash Collateral, respectively, absent the approval of the terms and conditions set forth herein and in the Post-Petition Loan Documents, and the relief hereinafter ordered is necessary to avoid immediate and irreparable harm to the Debtors, their estates and their creditors.

M.    The Debtors have an immediate need to resume normal relationships with trade vendors on the same or better terms as such vendors provided to the Debtors prior to the Petition Date to permit orderly continuation of the operation of the Debtors' businesses, and to preserve and maintain the going concern value of the Debtors. The resumption of normal trade credit is vital to the successful reorganization of the Debtors.

N.    The Debtors are unable to obtain adequate unsecured credit from trade creditors under Sections 503(b)(1) or 364(a) or (b) of the Bankruptcy Code as an administrative expense.

O.    Notice of the Final Hearing and the terms hereof has been given to (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Agents; (iii) counsel to the Committee; and (iv) all parties that have requested notice in these proceedings. Such notice constitutes sufficient and appropriate notice of the Final Hearing and no further notice need be given, except as provided in paragraph 54.

P.    The Post-Petition Financing and the proposed use of the Cash Collateral have been negotiated in good faith and at arms' length between the Debtors, the Lenders and the Agents with all parties represented by counsel, and any credit extended and loans made to the Debtors pursuant to the Post-Petition Loan Documents and/or this Order shall be deemed to have been extended or made, as the case may be, in good faith as required by, and within the meaning of, Section 364(e) of the Bankruptcy Code, and the liens and priorities granted to the Lenders and the Agents pursuant to this Order and the Post-Petition Loan Documents shall be entitled to the protections of Section 364(e) of the Bankruptcy Code.

Q.    The Trade Credit Program has been negotiated in good faith and at arm's-length among the Debtors, certain trade vendors, the Lenders and the Agents with all parties represented by counsel, and any credit extended by the Approved Trade Creditors pursuant to the Trade Credit Program shall be deemed to have been extended by the Approved Trade Creditors in good faith, as that term is used in Section 364(e) of the Bankruptcy Code.

R.    The terms of the Post-Petition Financing, the proposed use of the Cash Collateral, as modified herein, and the Trade Credit Program are fair and reasonable, reflect the

Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

S.    Certain third parties have asserted that the Debtors, among others, hold property in trust for them pursuant to the Perishable Agricultural Commodities Act, as amended, 7 U.S.C. § 499e(c) ("PACA"), the Packers and Stockyards Act of 1921, as amended, 7 U.S.C. §§ 181 et seq. ("PASA") or other statutes of similar import. The valid claims of such third parties that are demonstrated by such third parties to meet all of the requirements for the imposition of a trust under PACA, PASA or other statutes of similar import, are referred to herein collectively as the "PACA Trust Claims". "PACA Trust Claimants" shall mean those third parties holding PACA Trust Claims to the extent of such PACA Trust Claims.

T.    Certain third parties have asserted reclamation claims against the Debtors under Section 546 of the Bankruptcy Code and other statutes of similar import. The valid claims of such third parties that are demonstrated by such third parties to meet all of the requirements for the granting of a valid reclamation claim are referred to herein collectively as the "Reclamation Claims". "Reclamation Claimants" shall mean those third parties holding Reclamation Claims to the extent of such Reclamation Claims.

U.    Based upon the foregoing findings and conclusions, and upon the record made by the Debtors at the Interim Hearing and the Final Hearing, and any objections to this Order having been withdrawn, resolved or overruled, and good and sufficient cause appearing therefor,

NY:STONK 1834809 v4 (2K)                                    -13-

IT IS HEREBY ORDERED that:

<u>Authorization</u>

1.       The Motion is granted as modified by this Order and the Post-Petition Loan Documents are hereby approved as set forth herein.

2.       The Debtors shall promptly execute and deliver the Post-Petition Loan Agreement and the other Post-Petition Loan Documents and, if so requested by any Post-Petition Lender, the Note payable to the order of such Post-Petition Lender, and each Debtor shall promptly execute and deliver each other Post-Petition Loan Document to which it is a party or otherwise to be executed by it in connection therewith.  The Debtors shall upon execution and delivery of the Post-Petition Loan Documents immediately comply with their terms.  In furtherance of the foregoing, without further approval of this Court, each Debtor is authorized and directed to do and perform all acts, and to make, execute, deliver and perform all instruments and documents in connection with one or more amendments to the Post-Petition Loan Agreement which, among other things, may: add additional financial institutions as Post-Petition Lenders; reallocate the commitments for the Post-Petition Financing among the Post-Petition Lenders; and reflect agreements among the parties thereto in respect of matters deferred beyond the closing date thereunder that do not shorten the maturity of the extensions of credit thereunder or increase the commitments thereunder (other than the Incremental Indebtedness).  All loans made by the Post-Petition Lenders under the Post-Petition Loan Agreement or this Order (the "Post-Petition Loans", and together with the Pre-Petition Loans, the "Loans") and interest thereon, together with all other indebtedness, obligations and liabilities of the Debtors to the Administrative Agent and the Post-Petition Lenders under the Post-Petition Loan Documents and

-14-


*and arising in connection with Treasury Services*

this Order ~~in respect of the Post-Petition Loans~~, are hereinafter referred to as the "Post-Petition

Obligations", and together with the ~~Pre-Petition Obligations~~, the "Obligations".

*(exclusive of any Incremental Indebtedness and*

3.      The Debtors are expressly authorized to use the Cash Collateral on the

terms and subject to the conditions set forth herein and in the Post-Petition Loan Documents, and

to request Post-Petition Loans from the Post-Petition Lenders not exceeding $150 million at any

one time outstanding (with a sublimit for Post-Petition Letters of Credit of $40 million),

inclusive of any amounts outstanding under the Bridge Loan. Upon entry of this Order, any and

all outstanding Bridge Loans shall be deemed paid off and reborrowed under this Order and,

upon the Effective Date (as defined in the Post-Petition Loan Agreement), shall be deemed under

the Post-Petition Loan Agreement and to be part of the Post-Petition Loan in all respects, and the

Bridge Loans and all documents executed in connection therewith shall be deemed to no longer

be of any force or effect; provided, however, that the terms and conditions of this Order as it

relates to the Post-Petition Loans shall apply nunc pro tunc to the Petition Date.

4.      Notwithstanding any termination of the Debtors' authority to use the Post-

Petition Financing and/or the Cash Collateral pursuant to the terms of the Post-Petition Loan

Documents and/or hereof, all liens, security interests, priorities, rights and remedies provided to

the Agents and/or the Lenders pursuant to this Order shall survive such termination and remain

in full force and effect with respect to any Obligations, Pre-Petition Indebtedness and Post-

Petition Indebtedness outstanding on such termination date, any claims and obligations arising

under the Post-Petition Loan Documents and/or this Order outstanding on such termination date

and any fees incurred by the Agents and the Lenders after termination of the Post-Petition Loan

Documents in enforcing their rights under this Order or the Post-Petition Loan Documents,

subject to any Senior Liens (as defined below) and the Carve-Out (as defined below) to the extent applicable.

5.     The Debtors are authorized to use the proceeds of the Post-Petition Loans and the Cash Collateral in the operation of the Debtors' businesses, provided, that the proposed use of the proceeds of the Post-Petition Loans and the Cash Collateral is consistent with the terms of the Post-Petition Loan Documents and this Order, including the Budget (as defined below). In particular, the Debtors are authorized to use such funds to pay the fees and expenses associated with the Post-Petition Loans, repay the Bridge Loans, fund other amounts described in the Budget, including general corporate and working capital requirements of the Debtors, and make adequate protection payments to the Pre-Petition Agents and the Pre-Petition Lenders. Notwithstanding anything herein to the contrary, no Post-Petition Loans, no Cash Collateral and no portion of the Carve-Out may be used to investigate, object to or contest in any manner, or otherwise challenge, the validity, perfection, priority or enforceability of the Obligations, the Post-Petition Indebtedness or the Pre-Petition Indebtedness or any liens or security interests securing the Pre-Petition Obligations or the Pre-Petition Indebtedness or to assert any claims or causes of action against the Agents, or any Lender, or any of their agents, employees, representatives or affiliates, except that the Committee may undertake a normal and customary investigation of any of the Pre-Petition Agents' and the Pre-Petition Lenders' liens and security interests and the expenses related to any such normal and customary investigation may be reimbursed by the Debtors. The Post-Petition Indebtedness and all Obligations with respect thereto shall be due and payable in full upon the Termination Date.

Incremental Indebtedness

6.      To the extent that the Debtors incur Incremental Indebtedness (i) all terms and conditions of the documentation evidencing such Incremental Indebtedness shall be satisfactory to the Joint Lead Arrangers and the Required Lenders (as defined in the Post-Petition Loan Agreement) as well as the "Required Lenders" under and as defined in the Pre-Petition Loan Documents, (ii) the maturity for such Incremental Indebtedness shall not be earlier than one year following the Maturity Date, (iii) the documentation evidencing such Incremental Indebtedness shall include no amortization or scheduled commitment reductions, (iv) the terms of the documentation of such Incremental Indebtedness shall require no mandatory repayments or commitment reductions to be made with Asset Disposition proceeds, Incremental Indebtedness proceeds or tax fund refund proceeds, (v) the incurrence of such Incremental Indebtedness and the terms and conditions for the documentation therefor shall have been approved by the Bankruptcy Court and (vi) at the time of the initial incurrence of such Incremental Indebtedness no Default shall exist and be continuing.

7.      Further, any lien securing such Incremental Indebtedness shall in no event be more favorable to the holders of such Incremental Indebtedness, or less favorable to the Borrowers, the Pre-Petition Lenders or the Post-Petition Lenders, than the Liens permitted to be granted by the Borrowers to certain of their trade creditors pursuant to the Trade Credit Lien Program; and it being understood that the Liens permitted in connection with such Incremental Indebtedness shall be subordinated in priority to the Liens created under the Post-Petition Loan Agreement and the other Post-Petition Loan Documents and the Pre-Petition Lender Replacement Lien.

<u>Pre-Petition Lender Replacement Liens</u>

8.      As adequate protection for any Diminution Claim, the Pre-Petition Agents and the Pre-Petition Lenders are hereby granted (effective as of the Petition Date and without the

necessity of the execution by the Debtors, or filing, of security agreements, pledge agreements, mortgages, financing statements or otherwise) pursuant to Sections 361 and 363(c) of the Bankruptcy Code:

(i) first priority liens and security interests on all assets of the Debtors (whether heretofore or hereafter acquired) not otherwise encumbered by validly perfected and unavoidable liens or security interests as of the Petition Date, , including cash maintained in a cash collateral account with JPMorgan Chase Bank, but excluding any cash or other property which is determined by a final order of this Court either (a) to be held by one or more of the Debtors in actual or constructive trust for a third party, including, without limitation, a PACA Trust Claimant or a Federal or state taxing authority, or (b) not to be property of any of the Debtors' estates under Section 541 of the Bankruptcy Code (any such property, the "Trust Property") and provided that in the case of leasehold interests of the Debtors where the respective underlying lease prohibits the Debtor party thereto from granting a security interest in such leasehold interest, such lien shall be limited to the proceeds thereof, and subject only to the Carve-Out and the Post-Petition Financing Liens; and

(ii) junior liens and security interests on all assets encumbered as of the Petition Date by any valid, enforceable, perfected and unavoidable liens or security interests (other than the Pre-Petition Financing Liens) (any such liens or security interests, the "Senior Liens"), junior and subordinate to such Senior Liens, but excluding any Trust Property, and subject only to the Carve-Out and the Post-Petition Financing Liens

(collectively, the "Pre-Petition Lender Replacement Liens" and the collateral securing the Replacement Liens, the "Post-Petition Replacement Collateral").

9.      The Pre-Petition Lender Replacement Liens shall be deemed perfected as of the Petition Date, shall not be subject to or pari passu with any lien or security interest existing as of the Petition Date other than Senior Liens, if any, and, except as otherwise specifically provided in this Order, shall be valid and enforceable against any trustee appointed in any Chapter 11 Case, or in a subsequent proceeding upon the conversion of any Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code.   Notwithstanding anything to the contrary in paragraphs 8 or 9 hereof, the Pre-Petition Lender Replacement Liens shall not attach to any actions commenced pursuant to Sections 544, 547, 548 and 550 of the Bankruptcy Code (each,

an "Avoidance Action"); provided, however, that the Post-Petition Replacement Collateral shall include the proceeds of such actions. Subject to the Carve-Out and this Order, no lien or security interest in any property of the Debtors granted or arising on or after the Petition Date (including, without limitation, liens and security interests, if any, granted in favor of any federal, state, municipal or other governmental unit, commission, or board for any liability of the Debtors) shall be created or permitted to be pari passu with, or senior to, the Pre-Petition Lender Replacement Liens, including, without limitation, pursuant to Section 364(d) of the Bankruptcy Code. For the sake of clarity and specificity, nothing contained herein shall in any way be construed as an order limiting or otherwise impairing the Pre-Petition Lenders' and/or the Pre-Petition Agents' rights as provided in Section 552 of the Bankruptcy Code.

<u>Pre-Petition Lender Superpriority Claims</u>

10.    In addition to the grants of liens and security interests to the Pre-Petition Agents and the Pre-Petition Lenders herein, to the extent of any Diminution Claim, the Pre-Petition Agents and the Pre-Petition Lenders shall have and are hereby granted, effective as of the Petition Date, allowed administrative expense claims pursuant to Section 507(b) of the Bankruptcy Code, with priority in payment over all administrative expense claims and unsecured claims now existing or hereafter arising of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in Sections 326, 328, 330, 331, 503(b), 506(c), 507(a), 546(c) and 726 of the Bankruptcy Code (the "Pre-Petition Lender Superpriority Claims"), subject only to the Carve-Out and the Post-Petition Lender Superpriority Claims (as defined below). Except as expressly provided herein, or as expressly agreed by the Pre-Petition Lenders, which agreement shall not be implied, no cost or expense of administration under Sections 105, 364(c)(1), 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code or otherwise,

including those resulting from or subsequent to the conversion of any of the Chapter 11 Cases pursuant to Section 1112 of the Bankruptcy Code, and no priority claims, shall be senior to, or pari passu with, the Pre-Petition Lender Superpriority Claims.

### Adequate Protection Payments

11.    As adequate protection hereunder, the Pre-Petition Agents and the Pre-Petition Lenders shall, pursuant to the terms of the Pre-Petition Loan Documents, be entitled to the payment of interest on the amount outstanding as of the date of this Order of each Pre-Petition Loan as well as the payment of letter of credit fees due and payable under the Pre-Petition Loan Documents on or prior to the date of this Order and unpaid as of such date, which interest may be paid out of the Post-Petition Loans.  To the extent not already paid, the Debtors shall (i) within three (3) business days of the date of this Order, pay to the Administrative Agent all (x) accrued and unpaid interest and (y) accrued and unpaid letter of credit fees due under the Existing Credit Agreement (in each case calculated at the non-default rate applicable on the Petition Date to such amounts) and, (ii) from the date of this Order through the Termination Date, pay monthly in arrears all (x) interest and (y) letter of credit fees due as set forth in the Existing Credit Agreement (in each case calculated at the non-default rate applicable on the Petition Date to such amounts).

12.    As additional adequate protection hereunder, the Agents and the Lenders shall be entitled to reimbursement by the Debtors (a) promptly upon receipt by the Debtors, counsel to the Debtors, counsel to the Committee and the Office of the United States Trustee for the District of Delaware of invoices relating thereto, and without the necessity of the filing of fee applications or the obtaining of Court approval with respect thereto, of all reasonable costs and expenses incurred both before and after the Petition Date in connection with (i) the Agents' and

the Lenders' claims and liens and (ii) actions to preserve, protect and/or enforce their rights and remedies under, and to administer, the Existing Credit Agreement, the other Pre-Petition Loan Documents, the Post-Petition Loan Agreement and/or the other Post-Petition Loan Documents, including reasonable counsel fees and disbursements, filing fees, audit expenses, field examination expenses and reasonable fees and disbursements of accountants and financial advisors and (b) any expenses or fees incurred in connection with Treasury Services. Notwithstanding anything to the contrary contained herein, parties in interest shall retain their right to object to any professional fees and expenses paid pursuant to this paragraph 12 solely on the grounds of reasonableness.  To the extent that the Pre-Petition Agents and the Pre-Petition Lenders are determined, by final order of this Court, to be undersecured, then any payments made to such parties pursuant to paragraphs 11 and 12 hereof prior to the date of such determination shall be recharacterized as principal.

<u>Post-Petition Financing Liens</u>

13.    As security for the Post-Petition Obligations, the Administrative Agent is hereby granted, for its own benefit and the benefit of the Post-Petition Lenders, effective as of the Petition Date and without the necessity of the execution by the Debtors, or filing, of security agreements, pledge agreements, mortgages, financing statements or otherwise:

(i)    pursuant to Section 364(c)(2) of the Bankruptcy Code, enforceable first-priority liens and security interests on all unencumbered assets of the Debtors (whether heretofore or hereafter acquired), including cash maintained in a cash collateral account with JPMorgan Chase Bank but (A) excluding any Trust Property; <u>provided, however</u>, that no Trust Property shall be included in any Borrowing Base calculations, and (B) provided that in the case of leasehold interests of the Debtors where the respective underlying lease prohibits the Debtor party thereto from granting a security interest in such leasehold interest, such lien shall be limited to the proceeds thereof; <u>provided, however</u>, that the inventory located in such leasehold locations shall only be included in the Borrowing Base calculation if (i) the procedures for Liquidation Sales (as

defined below) are approved by a final order of this Court with respect to such leasehold location or (ii) the landlord with respect thereto has entered into an access agreement satisfactory to the Post-Petition Agents covering such leasehold, subject to the Carve-Out;

(ii) pursuant to Section 364(d)(1) of the Bankruptcy Code, enforceable first-priority liens and security interests priming all other security interests on the Pre-Petition Collateral (other than any Senior Liens), including the Pre-Petition Financing Liens, but excluding any Trust Property, and subject to the Carve-Out; and

(iii) enforceable junior liens and security interests on all assets of the Debtors encumbered as of the Petition Date by Senior Liens, if any, junior and subordinate to any such Senior Liens, but excluding any Trust Property, and subject to the Carve-Out.

14. The liens and security interests provided to the Administrative Agent and the Post-Petition Lenders in paragraph 13 are hereinafter collectively referred to as the "Post-Petition Financing Liens", and the collateral securing the Post-Petition Financing Liens is hereinafter referred to as the "Post-Petition Collateral". The Pre-Petition Collateral and the Post-Petition Collateral are hereinafter collectively referred to as the "Collateral". The Post-Petition Financing Liens shall be deemed perfected as of the Petition Date and shall not be subject to or pari passu with any lien or security interest existing as of the Petition Date other than any Senior Liens and subject to the Carve Out. Notwithstanding anything to the contrary contained in this Order, the Post-Petition Collateral shall not include any Avoidance Actions; provided, however, that the Post-Petition Collateral shall include the proceeds of such actions. Subject to the Carve-Out and any Senior Liens, no lien or security interest in the property of the Debtors granted or arising on or after the Petition Date (including, without limitation, liens and security interests, if any, granted in favor of any federal, state, municipal or other governmental unit, commission or board for any liability of the Debtors) shall be created or permitted to be pari passu with, or senior to, the Post-Petition Financing Liens.

<u>Post-Petition Lender Superpriority Claims</u>

15.    In accordance with Section 364(c)(1) of the Bankruptcy Code, the Post-Petition Obligations shall constitute administrative claims (the "<u>Post-Petition Lender Superpriority Claims</u>") having priority over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including but not limited to, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c) and 726 of the Bankruptcy Code, subject only to the Carve-Out. Except for the Carve-Out, no costs or expenses of administration under Sections 105, 364(c)(1), 503(b), 506(c), 507(b), or otherwise which have been or may be incurred in the Chapter 11 Cases or in subsequent cases under Chapter 7 of the Bankruptcy Code as a result of a conversion thereof pursuant to the Bankruptcy Code, and no priority claims, shall be senior to or <u>pari passu</u> with, the Post-Petition Lender Superpriority Claims.

16.    Other than in accordance with the Post-Petition Loan Agreement, if, in the course of these Chapter 11 cases, and contrary to the above provisions and without the consent of the Lenders, this Court grants liens or security interests to others pursuant to Section 364(d) or any other provision of the Bankruptcy Code, which liens or security interests are senior or equal to the liens or security interests of the Post-Petition Lenders described above, then any proceeds of loans or extensions of credit secured by such senior or equal liens or security interests shall be applied first to the payment of the Post-Petition Indebtedness, including all accrued interest, fees, reasonable attorneys' fees, costs and expenses, and the Post-Petition Lenders shall retain all liens and security interests held by them until all of the Post-Petition Indebtedness is paid in full.

<u>Secured Trade Credit Program of Fleming Companies, Inc.</u>

17.     The "Terms of Trade Creditor Lien", in the form attached hereto as Exhibit B, is hereby approved. The Debtors are immediately authorized to solicit participation of Approved Trade Creditors (as defined in the Statement of Qualifications (annexed to this Order)) to do and perform all acts, to make, execute and deliver all instruments and documents as may be required to grant the Trade Creditor Liens (as defined below) to Approved Trade Creditors (to the extent permitted by the Statement of Qualifications), including such documents as may be required to purchase merchandise on trade terms at least as favorable to the Debtors as were available 180 days prior to the Petition Date or as otherwise agreed to by the Debtors with notice of such agreement to be provided to the Post-Petition Agents.

18.     As security for the Secured Vendor Claims (as defined in the Statement of Qualifications), Approved Trade Creditors are hereby granted (effective as of the Petition Date and without the necessity of the execution or recordation of mortgages, security agreements, pledge agreements, financing statements, notices of lien or similar instruments in any jurisdiction or of the taking of any other action (other than actions required to qualify as an Approved Trade Creditor) to validate and perfect the security interests and liens granted pursuant to this Order), for as long as such Approved Trade Creditor remains an Approved Trade Creditor (and thereafter with respect to any Secured Vendor Claims arising prior to such time and which remain outstanding as of such time), pursuant to Section 364(c)(3) of the Bankruptcy Code, a junior security interest subordinated to the holders of the Senior Obligations (as defined in the Terms of Trade Creditor Lien) in the assets of the Debtors that secure the Senior Obligations and all proceeds resulting from the sale or disposition of such assets (the "<u>Trade Creditor Liens</u>"), which liens shall have the priorities and limitations set forth in the Terms of Trade Creditor Lien

annexed to this Order. Notwithstanding the foregoing, no Approved Trade Creditor shall be permitted to exercise any rights or remedies with respect to the Trade Creditor Liens except upon (i) payment in full, in cash, of the Secured Obligations (as defined in the Terms of Trade Creditor Liens) and (ii) receipt of approval of this Court, after notice and a hearing, to the exercise such rights and remedies. To the extent that any valid reclamation claim held by an Approved Trade Creditor and as set forth on such Approved Trade Creditor's Trade Credit Program Letter Agreement is not covered fully by such Approved Trade Creditor's Trade Creditors Lien, then the balance of such valid reclamation claim shall constitute an administrative expense under Section 503(b) of the Bankruptcy Code, junior in right to the Post-Petition Lender Superpriority Claims, the Pre-Petition Lender Superpriority Claims and the Carve-Out and up to an additional $6 million of professional fees and expenses approved by the Court.

### Bank Accounts

19.    The Debtors are directed to implement and maintain the bank accounts and accounts collection arrangement specified in the Post-Petition Loan Agreement or any account control agreement satisfactory to the Post-Petition Agents and to instruct all account debtors and other parties now or hereafter obligated to direct payments as provided in the Post-Petition Loan Agreement and/or such account control agreement.

### Payments Free and Clear of Liens

20.    Except as provided in paragraph 48 hereof, any and all payments or proceeds remitted, or deemed to be remitted, to the Agents pursuant to this Order or the Post-Petition Loan Documents shall be received, or deemed received, by the Agents for their own benefit and the benefit of the Lenders free and clear of any claim, charge, assessment or other liability including, without limitation, any such claim or charge arising out of or based on,

directly or indirectly, Sections 506(c) or 552(b) of the Bankruptcy Code, all of which are hereby waived by the Debtors.

<u>Automatic Perfection/Financing Documents</u>

21.     Without the necessity of the filing of financing statements, mortgages or other documents, this Order shall be sufficient evidence of the Agents' and the Lenders' perfected liens on and security interests in all Collateral as described herein to secure the Obligations,  <u>provided, however</u>, that, in the case of the Pre-Petition Lenders, such perfection shall only relate to claims held by the Pre-Petition Lenders for any diminution in value of the Pre-Petition Collateral and shall not cure any defects in the perfection of the Pre-Petition Financing Liens, if any, which existed as of the Petition Date.  Notwithstanding the foregoing, each Debtor and its officers or agents on its behalf is authorized and directed, if so requested by the Agents or any Lender, to execute such documents including, without limitation, pledges, mortgages, deeds of trust and Uniform Commercial Code financing statements and to pay all costs and expenses as may be reasonably required to provide further evidence of the perfection of the Agents' and the Lenders' liens on the Collateral as provided herein.  The stay imposed by Section 362(a) of the Bankruptcy Code is hereby lifted to allow the filing and recording of a certified copy of this Order or any such financing statements, notices of lien, mortgages, deeds of trust or similar instruments, and all such documents shall be deemed to have been filed or recorded coincident with the execution of this Order.

22.     The Agents and the Lenders may, in their discretion, file a photostatic copy of this Order as a financing statement in any jurisdiction, and in such event, the subject filing or recording officer is authorized and directed to file or record such copy of this Order.

## The Carve-Out

23.     On or after the date that the Obligations become due and payable (whether at maturity, by acceleration or otherwise), the Superpriority Claims granted to the Agents and the Lenders pursuant to the Post-Petition Loan Agreement, this Order and the Security Documents, if any, shall be subject to a carve-out for (i) in the event of the occurrence and during the continuance of a Termination Event, the payment of allowed and unpaid professional fees and disbursements incurred by the Debtors and any statutory committee appointed in the Chapter 11 Cases in an aggregate amount not in excess of $4.0 million (plus all unpaid professional fees and disbursements incurred prior to the occurrence of such Termination Event strictly in accordance with the Budget (including any variances permitted in connection therewith) and to the extent allowed by the Bankruptcy Court) and (ii) the payment of all fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and all unpaid fees payable to the Clerk of this Court or the United States Trustee (collectively, the "Carve Out"). So long as a Termination Event shall not have occurred and be continuing, the Debtors shall be permitted to pay all budgeted professional fees and expenses as they come due and payable and the same shall not reduce the Carve-Out.

24.     At no time shall the Carve-Out or any Collateral or the proceeds thereof be available for, or be used for payment of, any professional fees or disbursements incurred by any party in connection with (i) the investigation or assertion of any claims or causes of action against the Agents or any Lender (including, without limitation, formal discovery proceedings in anticipation thereof) or (ii) the investigation or challenging of the extent, validity, perfection or priority of any claim or Lien granted to the Agents or any Lender pursuant to this Order, the Post-Petition Loan Documents or the Pre-Petition Loan Documents or the amount of any such claim (and including, without limitation, formal discovery proceedings in anticipation of such a

challenge); provided, however, that the Committee may undertake a normal and customary investigation of any liens and security interests granted to the Pre-Petition Agents and the Pre-Petition Lenders. The subordination of the Agents' and the Lenders' super-priority claims pursuant to the Carve-Out shall not extend to, and neither the Carve-Out nor any portion of the Collateral shall at any time be used to pay any fees or expenses of, any claimant who asserts a claim against the Agents or any Lender or the Collateral under Section 506(c) of the Bankruptcy Code or otherwise for payment of any administrative expenses in excess of the Carve-Out. Neither the Carve-Out nor any Collateral shall be available to any party other than those specifically authorized herein or in the Post-Petition Loan Agreement to receive payment therefrom. Neither the Carve-Out nor any Collateral shall be available to pay any Chapter 11 trustee appointed in any of the Chapter 11 Cases or any Chapter 7 trustee appointed in any successor case, or to pay the fees and expenses of any professionals retained by any such Chapter 11 or Chapter 7 trustee. No Budget shall be construed as authorization or consent by the Lenders for any third party or creditor or any direct or indirect incidental beneficiary to receive payment of professional fees or other amounts from the Debtors' estates other than in accordance with, and subject to the terms of, the Carve-Out, this Order and the Post-Petition Loan Agreement. Notwithstanding anything to the contrary contained in the Post-Petition Loan Documents, the Agents and the Lenders reserve all rights to object to the professional fees and expenses sought from the Debtors' estates even if such fees comply with the terms of the Budget in effect at the time compensation for such fees and expenses is sought. Furthermore, notwithstanding anything to the contrary contained in the Post-Petition Loan Agreement, at all times, the Collateral shall be available to pay all fees and expenses incurred by any professionals retained by the Agents or any Lender.

Case 1:07-cv-00172-SOM-LEK    Document 17-7    Filed 06/12/2007    Page 30 of 52

## Budget

25.     The Post-Petition Financing and the Cash Collateral shall be used by the Debtors through and including the Termination Date, for the purposes and in amounts not to exceed those set forth in the budget provided to Alvarez & Marsal on May 5, 2003 (the "Budget") (subject to the permitted variances and subject to the Borrowing Base limitations and applicable conditions precedent), for operating and working capital purposes, and for any other expenses approved by the Court and the Agents in accordance with the terms and conditions of this Order and the Post-Petition Loan Documents.   Prior to the expiration of the period covered by the Budget, the Debtors may propose a subsequent budget to the Agents, and if such budget is accepted by the Agents, such budget shall become the Budget without further approval of this Court.

26.     During the term of this Order the Debtors' expenditures for operating disbursements (other than inventory purchases) shall not, without the express written consent of the Agents, be more than ten (10%) above the corresponding amount as set forth in the Budget for such week and the Debtors' aggregate expenditures for operating disbursements (other than inventory purchases) during the cumulative period from the first week set forth in the Budget through the week during which such expenditures are made shall not, without the express written consent of the Agents, be more than five (5%) above that projected for such items in the Budget during such cumulative period.   Combined Wholesale Receipts, Convenience Receipts, and Retail Receipts shall not, without the express written consent of the Agents, be less than ninety (90%) of the combined amounts set forth in the Budget on a weekly and cumulative basis.

## Fair and Reasonable

27.    Based upon the terms of this Order and the Agents' and the Lenders' consent thereto, the payments, liens, security interests, superpriority claims, and other protections provided in this Order are fair and reasonable to protect the interests of the Agents and the Lenders.

<u>Good Faith</u>

28.    The Post-Petition Financing and the proposed use of the Cash Collateral have been negotiated in good faith and at arms' length between the Debtors, the Lenders and the Agents with all parties represented by counsel, and any credit extended and loans made to the Debtors pursuant to the Post-Petition Loan Documents and/or this Order shall be deemed to have been extended or made, as the case may be, in good faith as required by, and within the meaning of, Section 364(e) of the Bankruptcy Code, and the Lenders, the Agents and the liens and priorities granted to the Lenders and the Agents pursuant to this Order and the Post-Petition Loan Documents shall be entitled to the protections of Section 364(e) of the Bankruptcy Code. Subject to paragraph 48, if this Order or any of the provisions hereof are hereafter modified, vacated, stayed or reversed by subsequent order of this Court or any other court, without the Required Lenders' express written consent, such stay, modification, vacation or reversal shall not affect (a) the validity of any obligation, indebtedness or liability incurred by any Debtor to any Agent or any Lender that is or was incurred pursuant to this Order before the later of (i) the effective date of such stay, modification or vacation or reversal and (ii) the date of each Agent's and each Lender's receipt of notice thereof, (b) the validity and enforceability of the rights, remedies, liens, security interests and priorities granted to the Post-Petition Agents and Post-Petition Lenders pursuant to this Order or (c) each Post-Petition Agent's or any Post-Petition

Lender's right and ability to collect and apply all amounts due to it under the Post-Petition Loan Documents, as approved by this Order.

29.    Subject to paragraph 48, notwithstanding any stay, modification, vacation, or reversal of this Order, any indebtedness, obligation or liability incurred by any Debtor pursuant to this Order arising prior to the later of the effective date of such stay, modification, vacation or reversal, or each Agent's and each Lender's receipt of notice thereof, shall be governed in all respects by the original provisions of this Order, and each Agent and each Lender shall continue to be entitled to all of the rights, remedies, privileges and benefits, including any payments authorized herein and all security interests, liens and priorities granted herein, with respect to all such indebtedness, obligations or liabilities incurred or existing prior to such date, and with respect to such Debtor's use of the Cash Collateral prior to such date. Subject to paragraph 48, without limiting the generality of the foregoing, in the event this Court or any other court hereafter modifies any of the provisions of this Order, such modifications shall not affect the rights, remedies, liens and priorities of the Agents and the Lenders granted or acknowledged pursuant to this Order with respect to the Obligations, the Pre-Petition Indebtedness and the Post-Petition Indebtedness and any Cash Collateral which is used prior to any such modifications.

<u>Asset Sales</u>

30.    Nothing in this Order shall be construed as or deemed to constitute the consent of any Agent or any Lender to the use, sale or lease of the Collateral, including the Cash Collateral, outside the ordinary course of the Debtors' business or on any terms other than as expressly provided in this Order. Except for transactions in the ordinary course of its business or except as otherwise expressly permitted in the Post-Petition Loan Agreement, no Debtor shall

sell, transfer, lease, encumber or otherwise dispose of any of the property of its estate without the approval of this Court. Except as provided in the Post-Petition Loan Agreement, in no event will the disposition of inventory pursuant to going out of business sales, store closing sales, liquidation sales or other similar sales constitute sales of inventory in the ordinary course of business.

31.    Collections of proceeds of collateral in the ordinary course will be applied (1) first, to the outstanding Post-Petition Loans (without reducing commitments thereunder, except after the occurrence and during the continuance of a Termination Event) and (2) second, to cash collateralize all outstanding Post-Petition Letters of Credit. After all Post-Petition Loans have been repaid and all outstanding Post-Petition Letters of Credit have been cash collateralized, such proceeds (as well as proceeds of collateral sold outside the ordinary course of the Debtors' business) shall be transferred into a cash collateral account with the Collateral Agent, and subject to the Borrowing Base limitation and applicable conditions precedent, may be used by the Debtors in compliance with the use described in paragraph 5 of this Order.

<u>Termination Events</u>

32.    As long as any portion of the Obligations, the Pre-Petition Indebtedness or the Post-Petition Indebtedness remains unpaid or any Post-Petition Loan Documents remain in effect, it shall constitute a "<u>Termination Event</u>" if, except as expressly permitted in the Post-Petition Loan Documents or with the express written consent of the Required Lenders, which consent shall not be implied, an Event of Default shall have occurred and is continuing under the Post-Petition Loan Documents.

<u>Remedies</u>

33.    Upon the occurrence of any Termination Event, and at all times thereafter, the Debtors' right to use the Cash Collateral will automatically terminate, and the Agents and the Lenders may, in their absolute and sole discretion and option, exercise all rights and remedies and take all or any of the following actions:  (a) terminate all further advances or financial accommodations hereunder and/or under the Post-Petition Loan Documents and require the cash collateralization of letters of credit; (b) declare the Loans then outstanding to be due and payable in whole (or in part, in which case any principal not so declared to be due and payable may thereafter be declared to be due and payable), and thereupon the principal of the Loans so declared to be due and payable, together with accrued interest thereon and all fees and other obligations of the Debtors accrued under the Pre-Petition Loan Documents or the Post-Petition Loan Documents, shall become due and payable immediately, without presentment, demand, protest or other notice of any kind, all of which are hereby waived by the Debtors; (c) require the Borrowers upon demand to forthwith deposit in the Concentration Account cash as required in accordance with Section 2.05(j) of the Post-Petition Loan Agreement; (d) freeze any funds in the Concentration Account, any Disbursement Account, any Collection Account or any other accounts, other than Trust Property, maintained with the Collateral Agent; (e) set-off or seize amounts contained in the Concentration Account, any Disbursement Account, any Collection Account or any other accounts, other than Trust Property, maintained with the Collateral Agent and apply such amounts to the obligations of the Debtors under the Post-Petition Loan Documents and the Pre-Petition Loan Documents; and/or (f) take any other action or exercise any other right or remedy permitted to the Agents and/or the Lenders under the Post-Petition Loan Documents, this Order, the other Loan Documents or by applicable law, subject to the Carve-Out to the extent applicable.  The Debtors shall immediately repay in full in cash all the

Obligations, the Pre-Petition Indebtedness and the Post-Petition Indebtedness which become due and payable upon the expiration of this Order (whether by acceleration, upon a Termination Event or otherwise). If the Obligations, the Pre-Petition Indebtedness and/or the Post-Petition Indebtedness are not repaid in cash on the date that the Obligations, the Pre-Petition Indebtedness and/or the Post-Petition Indebtedness become due and payable (whether by maturity, acceleration, upon a Termination Event or otherwise), then the Agent and the Lenders may immediately exercise their rights and remedies specified in clauses (a) through (e) of this paragraph (without further order of or application to this Court or further modification of the automatic stay pursuant to Section 362 of the Bankruptcy Code), and, commencing on the third (3rd) Business Day after the date that the Administrative Agent has provided the company (with a copy to counsel for the Committee and the United States Trustee) three (3) days prior written notice, unless the ability of the Agents and the Lenders to exercise their rights and remedies as provided in clause (f) of this paragraph has been stayed as provided in paragraph 35 hereof, (i) the Agents and the Lenders may exercise their rights and remedies specified in clause (f) of this paragraph without further order of or application to this Court or further modification of the automatic stay pursuant to Section 362 of the Bankruptcy Code (which is hereby deemed and shall be modified and vacated to the extent necessary to permit such orderly liquidation) and (ii) the Debtors are directed to fully cooperate with the Agents and the Lenders in the exercise by the Agents and the Lenders of their rights and remedies specified in clause (f) of this paragraph, and if requested by the Agent or the Lenders, the Debtors shall commence an orderly liquidation of their assets and properties (or any portion thereof so requested by the Agent or the Lenders) in order to generate proceeds sufficient to repay in full in cash all the Obligations, the Pre-Petition Indebtedness and the Post-Petition Indebtedness and to undertake and perform all other actions

reasonably necessary, or reasonably requested by the Agent and/or the Lenders, to implement such orderly liquidation in a commercially reasonable manner, in each case without further order of or application to this Court or further modification of the automatic stay pursuant to Section 362 of the Bankruptcy Code (except as provided below).

34.     Additionally, at the sole discretion of the Lenders and in addition to the other remedies granted to the Agents and the Lenders pursuant to this paragraph, the Agent and the Lenders shall have the right (i) to conduct, in this Court, pursuant to Section 363 of the Bankruptcy Code and without further order of the Court (but on three (3) Business Days written notice as provided below), a private sale or public auction of the Collateral and/or (ii) without further order of the Court (but on three (3) Business Days written notice as provided below), seek appointment of a receiver, to secure, operate and/or sell the Collateral for the benefit of the Lenders.  From and after the occurrence of any Termination Event interest shall accrue on all Post-Petition Obligations, and on any accrued and unpaid interest under the Pre-Petition Loan Documents, at the default rate set forth in the Post-Petition Loan Agreement.

35.     Upon the occurrence of any Termination Event, the Agents and the Lenders shall, prior to exercising any of the rights and remedies specified in clause (f) of paragraph 33 on account thereof, give no less than three (3) Business Days' written notice thereof to the Debtors and their counsel, counsel to the Committee, and to the Office of the United States Trustee for the District of Delaware.  The Debtors, the Committee and/or the Office of the United States Trustee for the District of Delaware may, during the three (3) Business Day period following the giving of such notice, seek an order from this Court enjoining, staying or otherwise modifying the Agents' and the Lenders' exercise of their rights and remedies specified in clause (f) of paragraph 33.  Unless the exercise by the Agents and the

Lenders of such rights and remedies has been stayed by this Court as provided in this paragraph, each Debtor shall cooperate fully with the Agents and the Lenders and shall not take any steps or actions to contest or otherwise challenge the exercise by the Agents and the Lenders of each and all of the remedies permitted in this Order or the Post-Petition Loan Documents or under applicable law. Except as otherwise provided in this paragraph, each Debtor is hereby irrevocably deemed to waive all of its rights to question or oppose the Agents' and the Lenders' exercise of their rights and remedies permitted in this Order or the Post-Petition Loan Documents or under applicable law upon the occurrence of a Termination Event. The Debtors and other parties in interest may only seek a determination whether or not any Debtor is in default under the terms of this Order, or whether such default exists or has been cured, and no such party shall be permitted to seek relief under Section 105 of the Bankruptcy Code, Bankruptcy Rule 7065, or pursuant to Rule 60(b) of the Federal Rules of Civil Procedure (as applied pursuant to Bankruptcy Rule 9024), or request in any way that the general equitable powers of this Court or any other court be invoked to enjoin the Agents and/or the Lenders in pursuit of their rights and remedies under this Order, the Post-Petition Loan Documents, the Bankruptcy Code, and/or applicable non-bankruptcy law.

36.    Notwithstanding anything to contrary set forth above, upon and after the occurrence of a Termination Event, and without further order of or application to this Court or further modification of the automatic stay pursuant to Section 362 of the Bankruptcy Code (subject to the notice provisions required by paragraph 34 of this Order), the Agents, or their agents, are authorized to, in connection with a liquidation of any of the Collateral, enter upon, occupy and conduct liquidation or going out of business ("GOB") sales (each, a "Liquidation Sale") on any owned or leased premises now or hereafter occupied by the Debtors and, during

any such Liquidation Sale, are authorized to use any employees, real property, fixtures, equipment, leases, trademarks, trade names, copyrights, licenses, patents or any other assets owned or leased by the Debtors in the furtherance of such Liquidation Sales; provided that such occupancy and/or use is in compliance with the going out of business ("GOB") sale procedures attached hereto as Exhibit C. The Debtors are directed to cooperate with the Agents in the execution of any Liquidation Sales.

37.    During the period of any occupation of the Debtors' leased real property (each, a "Leasehold Property") by the Agents, or their agents, for the purpose of conducting a Liquidation Sale, the Agents and the Lenders shall be responsible for the timely payment of the monthly rent (based upon the base rent which the Debtors have been required to pay the subject landlord immediately prior to the occupancy by the Agents and/or Lenders, exclusive of any rent based upon a percent of sales) calculated on a pro-rata, per diem basis for each day such Leasehold Property is occupied and used in connection with a Liquidation Sale and/or other charges relating to the real property leases which are due to the leasors thereof, including taxes, insurance, common area charges and utilities (the "Leasehold Obligations"). Any liability of the Agents or the Lenders for the timely payment of the Leasehold Obligations shall terminate as to any particular Leasehold Property on the Surrender Date (as defined below) as identified in the Agents' written notice to the landlord of such Leasehold Property of the intent of the Agents to vacate such premises and surrender possession thereof, including all property remaining at the location. Such notice shall (i) be sent by facsimile and by overnight mail to the landlord or its counsel, if an appearance has been entered in these Chapter 11 cases, (ii) identify with specificity the lease and/or Leasehold Property and mall names in question, (iii) specify the date possession of the Leasehold Property shall be surrendered to the Landlord (the "Surrender Date") and (iv)

provide that the Surrender Date shall occur no sooner than a date at least three (3) business days from and after the date of such notice. As of the respective Surrender Date, the lease for each Leasehold Property shall be deemed rejected under Section 365 of the Bankruptcy Code without the requirement of further order of this Court unless specific notice of assumption or assumption and assignment is served prior to the Surrender Date.

38.     All parties and persons of every nature and description, including, but not limited to, landlords, utilities, governmental agencies, sheriffs, marshals, and other public officers, creditors, and all those for or on their respective behalf (the "GOB Parties"), shall be restrained and enjoined from interfering in any way with, or otherwise impeding the conduct of, any Liquidation Sale or other disposition at any Leasehold Property, the maintenance of inventory at such Leasehold Property, the use of any operational infrastructure at any Leasehold Property in connection with a Liquidation Sale, or seeking process before any court or other administrative body (other than this Court), the object of which is to directly or indirectly impede in any way the conduct of any such Liquidation Sale or other disposition.

39.     The conduct of any Liquidation Sale or other disposition may be made without compliance with any licensing law, statute, ordinance, or regulation of any governmental authority; provided, however, that the foregoing shall not affect in any way any obligation of the Agents of the Lenders, or any of their respective agents, to comply with any law, statute, ordinance or regulation of any governmental authority incident to the protection of public safety and consumer protection.

40.     Notwithstanding anything to the contrary contained in this Order, all of the rights and remedies of the Post-Petition Agents and the Post-Petition Lenders under this Order or

the Post-Petition Loan Documents shall be senior to any rights and remedies of the Pre-Petition Agents and the Pre-Petition Lenders under this Order or the Pre-Petition Loan Documents.

41. All collateral sold or otherwise disposed of by the Agents and/or the Lenders pursuant to the terms of this Order may be sold or otherwise disposed of free and clear of any interests in such property (with such interests to attach to the proceeds of any such sale or other disposition) pursuant to Sections 363(b)(1) and 363(f) of the Bankruptcy Code.

42. The Debtors shall not, without the consent of the Agents, enter into any agreement to return any inventory to any of its creditors for application against any pre-petition indebtedness under Section 546(g) of the Bankruptcy Code, except as expressly permitted in the critical vendor program as to amount and terms, or consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to Section 553(b)(1) of the Bankruptcy Code or otherwise.

43. Neither the Agents nor the Lenders shall have any duty to marshal assets or to be bound by any other doctrine which could prohibit or restrict the ability of the Agents and/or the Lenders in choosing to foreclose or realize upon any portion of the Collateral, provided, that the Agents and the Lenders shall be obligated to apply the proceeds of any realization by the Lenders from such foreclosure in the manner set forth in paragraph 45 below, and further provided that the Post-Petition Lenders shall first apply all proceeds of Post-Petition Collateral other than the proceeds of any Avoidance Actions (such proceeds are hereinafter referred to as the "non-Avoidance Action Proceeds") to reduce the Post-Petition Obligations before applying the proceeds of any Avoidance Actions to reduce the Post-Petition Obligations, and thereafter the Pre-Petition Lenders shall first apply the non-Avoidance Action Proceeds to reduce any Diminution Claim before applying the proceeds of any Avoidance Actions to reduce

any Diminution Claim; *further provided*, *however*, that nothing herein shall affect the timing of, or otherwise limit, the commencement of any Avoidance Actions or other remedies, and the Agents shall hold any proceeds of any Avoidance Actions in escrow pending payment in full of the Post-Petition Obligations and any Diminution Claim.

44.    The right of the Agents and the Lenders to exercise all of their remedies in accordance with the provisions of this Order without delay is an integral and fundamental part of the Post-Petition Lenders' consent to provide the Post-Petition Financing and the Pre-Petition Agents' and the Pre-Petition Lenders' consent to the Debtors' use of the Cash Collateral, which consent has been given in reliance upon such right.

45.    The proceeds of any Collateral obtained as a result of any exercise of remedies pursuant to the terms of this Order and/or the Post-Petition Loan Documents shall be applied as follows:

(i)    first, to the payment of the Carve-Out;

(ii)    second, to the extent proceeds remain after the payment pursuant to preceding clause (i), to the payment of any and all expenses and fees (including, without limitation, reasonable attorneys' fees and expenses) incurred by the Agents and the Lenders in obtaining, taking possession of, removing, insuring, repairing, storing and disposing of such assets, as well as all other costs and expenses payable pursuant to this Order;

(iii)    third, to the extent proceeds remain after the payment pursuant to preceding clause (i) and (ii), if such assets are encumbered by a Senior Lien, and such assets have not been sold subject to such Senior Lien, an amount equal to the outstanding obligations owing to the holder of such Senior Lien which are secured thereby shall be paid into an escrow fund and held by an escrow agent satisfactory to such holder as substitute collateral for such obligations, and/or be paid directly to such holders, as the Court may deem appropriate in the circumstances;

(iv)    fourth, to the extent proceeds remain after the payment pursuant to preceding clauses (i), (ii) and (iii), an amount equal to the outstanding Post-Petition Obligations owing to the Administrative Agent and/or the Post-Petition Lenders, shall be paid to the Administrative

Agent, for the ratable benefit of the Post-Petition Lenders, for application to such Post-Petition Obligations;

(v)    fifth, to the extent proceeds remain after the payment pursuant to preceding clauses (i), (ii), (iii) and (iv), an amount equal to the amount necessary to cash collateralize all Post-Petition Letters of Credit;

(vi)    sixth, to the extent proceeds remain after the payment pursuant to preceding clauses (i), (ii), (iii), (iv) and (v), an amount equal to the outstanding Pre-Petition Obligations secured by the Pre-Petition Lender Replacement Liens, shall be paid to the Pre-Petition Agents, for the ratable benefit of the Pre-Petition Lenders, for application to such Pre-Petition Obligations;

(vii)    seventh, to the extent proceeds remain after the payment pursuant to preceding clauses (i), (ii), (iii), (iv), (v) and (vi), an amount equal to the outstanding Pre-Petition Obligations secured by the Pre-Petition Financing Liens, shall be paid to the Pre-Petition Agents, for the ratable benefit of the Pre-Petition Lenders, for application to such Pre-Petition Obligations;

(viii)    eighth, to the extent proceeds remain after the payment pursuant to preceding clauses (i), (ii), (iii), (iv), (v), (vi) and (vii), an amount equal to the amount necessary to cash collateralize all Pre-Petition Letters of Credit;

(ix)    ninth, to the extent proceeds remain after the payment pursuant to preceding clauses (i), (ii), (iii), (iv), (v), (vi), (vii) and (viii), an amount equal to the outstanding Incremental Indebtedness for application to such Incremental Indebtedness;

(x)    tenth, to the extent proceeds remain after the payment pursuant to preceding clauses (i), (ii), (iii), (iv), (v), (vi), (vii), (viii) and (ix), an amount up to $6 million to pay additional professional fees and expenses approved by the Court;

(xi)    eleventh, to the extent proceeds remain after the payment pursuant to preceding clauses (i), (ii), (iii), (iv), (v), (vi), (vii), (viii), (ix) and (x), an amount equal to the outstanding Secured Vendor Claims secured by the Trade Creditor Liens shall be paid to the Approved Trade Creditors for the ratable benefit thereof, for application to such Secured Vendor Claims; and

(xii)    twelfth, to the extent proceeds remain after the payment pursuant to preceding clauses (i), (ii), (iii), (iv), (v), (vi), (vii), (viii), (ix), (x) and (xi), any surplus then remaining shall be paid as ordered by the Court.

## Survival

46.     The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order (a) confirming any plan of reorganization in any of the Chapter 11 Cases (and the Obligations, the Pre-Petition Indebtedness and the Post-Petition Indebtedness shall not be discharged by the entry of any such order or pursuant to Section 1141 of the Bankruptcy Code, the Debtors having hereby waived such discharge), (b) converting any of the Chapter 11 Cases to a Chapter 7 case, or (c) dismissing any of the Chapter 11 Cases or pursuant to which this Court abstains from hearing any of the Chapter 11 Cases, and the terms and provisions of this Order and the Agents' and the Lenders' claims, liens and security interests granted pursuant to this Order, the Pre-Petition Loan Documents and the Post-Petition Loan Documents shall continue in full force and effect notwithstanding the entry of any such order, and the Agents' and the Lenders' liens, security interests and claims shall maintain their priority as provided by this Order and the Post-Petition Loan Documents until all of the Pre-Petition Indebtedness, the Post-Petition Indebtedness and all other Obligations (other than contingent indemnity obligations of which the Agents are not aware) are indefeasibly paid in full in cash. This Court shall refrain from entering any order dismissing any of the Chapter 11 Cases for so long as any of the Post-Petition Obligations remain outstanding.   The Court shall retain jurisdiction to enforce the provisions of this Order.

47.     In the event of any express conflict between the terms of this Order and the terms of the Post-Petition Loan Documents, the terms of this Order shall control.

## Limitation on Actions

48.     Any party in interest (other than the Debtors, who have expressly waived their rights to do so upon entry of this Order as provided herein), including the Committee, may

commence any adversary proceeding or contested matter challenging the validity, enforceability or priority of the Pre-Petition Obligations or the Pre-Petition Indebtedness or, to the extent they secure the Pre-Petition Obligations or the Pre-Petition Indebtedness, the Pre-Petition Agents' and the Post-Petition Lenders' liens on or security interests in the Pre-Petition Collateral, or otherwise assert any claim or cause of action against the Pre-Petition Agents and the Pre-Petition Lenders, including a derivative action, no later than the date that is seventy-five (75) days after the Petition Date. If no such adversary proceeding or contested matter is properly commenced as of such date, the Pre-Petition Obligations and the Pre-Petition Indebtedness shall constitute allowed claims, not subject to subordination, for all purposes in the Chapter 11 Cases, and the Pre-Petition Agents' and the Pre-Petition Lenders' liens on and security interests in the Pre-Petition Collateral shall be deemed legal, valid, binding, perfected, enforceable and otherwise unavoidable, and the Pre-Petition Obligations and the Pre-Petition Indebtedness and the Pre-Petition Agents' and the Pre-Petition Lenders' liens on and security interests in the Pre-Petition Collateral shall not be subject to any other or further challenge by any party in interest. Nothing in this Order will prejudice the relief the Court may award in response to a timely filed adversary proceeding or contested matter. Notwithstanding anything to the contrary in this Order, the Debtors shall, if requested by the Committee because the Committee may not be able to do so in its own right, file and prosecute a timely adversary proceeding or contested matter related to the actions described in this paragraph 48.

<u>Preservation of Rights</u>

49.    Except as otherwise specifically provided herein, execution of this Order, the grant of adequate protection hereunder and the terms and provisions hereof shall be without prejudice to any and all rights, remedies, claims and causes of action which the Agents and/or

any Lender may have against any Debtor or any third parties and without prejudice to the right of

the Agents and/or any Lender to seek relief from the automatic stay in effect pursuant to Section

362 of the Bankruptcy Code, or any other relief under the Bankruptcy Code or applicable non-

bankruptcy law, including, without limitation, the right of the Agents and/or the Lenders to (i)

request different or additional adequate protection of their interests in the Pre-Petition Collateral

(including, without limitation, the Cash Collateral) or relief from or modification of the

automatic stay under Section 362 of the Bankruptcy Code, (ii) request different or additional

liens, security interests, superpriority claims and other protections, (iii) request conversion of the

Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, and/or (iv) propose, subject

to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans.

<u>No Release of Non-Debtors</u>

50.    Nothing contained in this Order shall be deemed to terminate, modify or

release any obligations of any non-debtor guarantor to any Agent or any Lender with respect to

the obligations owed to the Agents and the Pre-Petition Lenders, or the Pre-Petition

Indebtedness, or otherwise.

<u>No Third-Party Beneficiaries</u>

51.    No rights are intended to be created hereunder for the benefit of any third

party or creditor or any direct or indirect incidental beneficiary except as specifically provided

herein. The Carve-Out shall not be available to any party other than those specifically authorized

to receive payment therefrom as provided in paragraph 23 hereof.

<u>No Lender Control</u>

52.    Neither the Lenders or the Agents shall be deemed in control of any of the Debtors by reason of the rights provided hereunder, the Post-Petition Loan Documents or the Pre-Petition Loan Documents, or their exercise of such rights.

<u>No Surcharge</u>

53.    Until the occurrence of a Termination Event, no party in interest in these Chapter 11 Cases shall be entitled to assert a claim under Section 506(c) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection, disposition or enhancement of, or realization by any party in interest on, the Collateral.

<u>Effectiveness</u>

54.    This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon execution by this Court. Except as otherwise provided herein, the terms of this Order shall, upon execution of this Order by the Court, be immediately valid and binding upon the Debtors, the Agents, the Lenders, all other creditors of the Debtors, any statutory committee appointed in these cases, all other parties in interest, and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in the Chapter 11 Cases or in any superseding Chapter 7 case as a legal representative of the Debtor or the Debtors' estates from and after the execution of this Order by this Court; <u>provided, however,</u> that the relief set forth in paragraphs 36, 37 and 38 of this Order concerning the GOB procedures shall be interim relief only; <u>provided, however,</u> that such interim relief shall become final against any entity that receives notice of this Order and does not file an objection to the GOB procedures referenced in the immediately preceding proviso on or before May __, 2003. Any such objection shall be served concurrently with its filing upon

counsel to the Committee, counsel to the Agents and the Pre-Petition Lenders and the United States Trustee. Any hearing concerning timely filed objections to the GOB procedures shall be held on May 19, 2003 at __:__ _.m. in this Court. Except as expressly set forth in this paragraph, all relief set forth in this Order is final relief, including, without limitation, the authorization provided for herein permitting the Debtors to obtain credit as more particularly set forth in this Order.

### Waiver, Modification and Amendment

55.     No waiver, modification, or amendment of any of the provisions hereof shall be effective unless it is (a) set forth in writing, (b) approved by this Court and (c) (i) with respect to any waiver, modification or amendment which pertains to the use of Cash Collateral, is approved by the Pre-Petition Required Lenders and (ii) with respect to any waiver, modification or amendment which pertains to the Post-Petition Loans, is approved by the Pre-Petition Required Lenders.

### Effect of Transfers

56.     Sales and transfers authorized pursuant to the Post-Petition Loan Documents and/or this Order shall, pursuant to Section 1146(c) of the Bankruptcy Code, be exempt from any law imposing a stamp tax or similar tax on such sales or transfers.

### PACA Trust Claims

57.     The PACA Trust Claimants reserve any PACA Trust rights with respect to any assets, including any PACA Trust interests against non-Debtor third parties under applicable law.

58.     The protections afforded by this Order shall not be deemed a limitation, waiver, relinquishment or election of rights or remedies against the Debtors or any non-Debtor

third parties which are otherwise available to the PACA Trust Claimants under 7 U.S.C. § 449e, or under any other applicable statute.

## Reclamation Claims

59.    The Reclamation Claimants reserve any reclamation rights with respect to any goods delivered by them to the Debtors prior to the Petition Date.

60.    The protections afforded by this Order shall not be deemed a limitation, waiver, relinquishment or election of rights or remedies against the Debtors or any non-Debtor third parties which are otherwise available to the Reclamation Claimants under applicable law. Any determination by the Court as to the validity of any Reclamation Claim shall be made as of the Petition Date. *[Insert 47]*

### GE/GECC Liens and Interests

61.    Accounts receivable (the "Deferred Receivables") that were assigned by the Debtors to GE Lighting Division of General Electric Company n/k/a GE Consumer Products f/k/a/ as GE Lighting, a division of General Electric Company ("GE") prior to the Petition Date pursuant to Deferred Payment Agreements between the Debtors and GE with respect to various resellers (and subsequently assigned by GE to General Electric Capital Company – GE Distribution Finance Division ("GECC" and together with GE, the "GE Entities") are not property of the Debtors' bankruptcy estates. The Debtors shall not actively attempt to collect any Deferred Receivables. Prior to July 31, 2003, the GE Entities shall not actively attempt to collect any Deferred Receivables, unless otherwise expressly agreed in writing by GECC and the Debtors. The GE Entities are hereby granted relief from the automatic stay of section 362(a), effective July 31, 2003, to collect, if they so elect in their sole discretion, the Deferred

Insert 47

To the extent that this Court grants any Reclamation Claimant lien rights pursuant to Section 546(c) of the Bankruptcy Code, such liens shall be immediately subordinate to the Trade Creditor Liens and have other rights and remedies similar thereto, and such liens shall not constitute a Default under the Post-Petition Loan Agreement.

Receivables. The Debtors shall not take any action to interfere with or delay the GE Entities' collection of the Deferred Receivables in accordance with this paragraph.

62.    In the event the Debtors currently have in their possession, custody or control, or later receive, any payments of the Deferred Receivables or proceeds thereof, the Debtors shall account for such payments and proceeds and the GE Entities' liens and interests shall attach to such payments and proceeds to the same extent and in the same priority as the GE Entities' liens and interests in the Deferred Receivables as of the Petition Date. The Debtors, on the first business day of each month, commencing June 2, 2003 shall pay to GE, as agent for GECC, in immediately available funds, the proceeds of the Deferred Receivables, if any, in the Debtors' possession, custody or control.

63.    Any Large Lamps (as defined in Attachment A to the Distributor Agreement, dated as of February 1, 1994, between the Debtors and GE, as amended by the First Addendum to Distributor Agreement, dated November 18, 1994 and by the Second Addendum to Distributor Agreement, dated May 12, 1998) that as of the Petition Date were not yet withdrawn from Debtors' stock for sale or distribution or other use ("GE Large Lamps") are property of GE and not property of the Debtors' bankruptcy estates. The Debtors and GE shall work together to determine as of the Petition Date an inventory of GE Large Lamps in the Debtors' possession, custody or control and an accounting of proceeds from the prepetition sale of GE Large Lamps. The Debtors shall account for any proceeds from the sale or other disposition of GE Large Lamps and GE's liens and interests shall attach to such proceeds to the same extent and in the same priority as GE's liens and interests in the GE Large Lamps as of the Petition Date. On the first business day of each month, commencing June 2, 2003, the Debtors shall pay to GE in immediately available funds an amount equal to the invoice cost of the GE

Large Lamps (x) withdrawn from Debtor's stock by the Debtors during the prior calendar month and (y) proceeds from the prepetition sale or other disposition of which were received by the Debtors during the prior calendar month. All such payments shall be net of credits arising from such sales or other dispositions of GE Large Lamps.

64.    The provisions of paragraphs 61, 62 and 63 of this Order shall be binding upon any trustee subsequently appointed in one or more of the Debtors' bankruptcy cases. Conversion of one or more of the Debtors' bankruptcy cases to one or more cases pursuant to Chapter 7 of the Bankruptcy Code shall not cause the automatic stay of section 362(a) of the Bankruptcy Code to be reinstated as to GECC or the relief granted herein to otherwise be affected.

### Dunigan Fuels, Inc. Agreements

65.    Notwithstanding anything to the contrary contained herein, no postpetition lien or administrative claim (including, but not limited to, the Trade Creditor Liens) shall attach to the assets of Dunigan Fuels Inc. ("Dunigan") except (i) to the limited extent of any actual benefit Dunigan received under the Post-Petition Loans, which benefit shall constitute Post-Petition Obligations in the amount of such actual benefit and shall be entitled to all of the benefits of this Order, including, but not limited to, the Post-Petition Financing Liens and Post-Petition Lender Superpriority Claims, and (ii) to the limited extent of any Diminution Claim relating specifically to the Pre-Petition Financing Liens on property of Dunigan ("Dunigan Diminution Claim"), the Dunigan Diminution Claim shall constitute a Diminution Claim entitled to all of the benefits of this Order, including, but not limited to, the Pre-Petition Lender Replacement Liens and the Pre-Petition Lender Superpriority Claims.

### Notice

66.    The Debtors shall, within three (3) business days following entry of this

Order, mail copies thereof, to the United States Trustee for the District of Delaware, counsel to

the Committee, counsel to the Agents and the Pre-Petition Lenders, all parties who appeared or

otherwise responded to the relief requested herein, all GOB Parties and any other party which

has filed a request for notices with this Court and served such notice upon the Debtors' counsel.

Dated: May 6, 2003

_____
UNITED STATES BANKRUPTCY JUDGE