# EXHIBIT R

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

IN RE:                              .    Case No.: 03-10945 (MFW)

                                    .    821 North Market Street
FLEMING COMPANIES, INC. et al.    Wilmington, Delaware 19801

              Debtor,               .

. . . . . . . . . . . . . . . .    Date:  July 26, 2004
                                   Time:  9:46 a.m.


TRANSCRIPT OF OMNIBUS HEARING
BEFORE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:               Pachulski, Stang, Ziehl, Young,
                               Jones & Weintraub, P.C.
                              By: LAURA DAVIS JONES, ESQ.
                                   CHRIS J. LHULIER, ESQ.
                              919 North Market Street
                              Wilmington, DE 19899-8705


For the Debtor:               Kirkland & Ellis, LLP
                              By: RICHARD L. WYNNE, ESQ.
                                   ERIC LIEBELER, ESQ.
                              200 East Randolph Drive
                              Chicago, IL 60601




Audio Operator:               Danielle R. Cherry



Proceedings recorded by electronic sound recording, transcript
Produced by transcription service.

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-Mail:  jjcourt@optonline.net

(609)586-2311     Fax No. (609) 587-3599

2

APPEARANCES: (cont'd)

| | |
|---|---|
| For AWG | Buchanan Ingersoll, P.C.<br>By: SELINDA A. MELNIK, ESQ.<br>Chase Manhattan Centre<br>1201 N. Market Street<br>Wilmington, DE 19801 |
| For Farris Class Action<br>  Plaintiffs | Werb & Sullivan<br>By: DUANE D. WERB, ESQ.<br>300 Delaware Avenue<br>Wilmington, DE 19899 |
| For Kemps, LLC, et al. | Morris James Hitchens & Williams<br>By: STEPHEN MILLER, ESQ.<br>222 Delaware Avenue<br>Wilmington, DE 19899 |
| For Raymond Choy | Potter, Anderson & Corroon<br>By: MADISON L. CASHMAN, ESQ.<br>1313 N. Market Street<br>Wilmington, DE 19899 |
| For SuperValu | Sidley Austin Brown & Wood<br>By: WILLIAM EVANOFF, ESQ. |
| For Office of U.S. Trustee | United States Dept. of Justice<br>By: JOSEPH McMAHON, ESQ.<br>J. Caleb Boggs Federal Bldg.<br>844 N. King Street<br>Wilmington, DE 19801 |
| For Russell Stover | Connolly, Bove, Lodge & Hutz, LLP<br>By: JEFFREY WISLER, ESQ.<br>1220 Market Street<br>Wilmington, DE 19899 |
| For Pre- & Post-Petition<br>  Agents | Greenberg Traurig, LLP<br>By: DENNIS A. MELORO, ESQ.<br>The Brandywine Bldg.<br>1000 West Street<br>Wilmington, DE 19801 |
| For ACE | White & Williams, LLP<br>By: MARC S. CASARINO, ESQ.<br>    LEONARD GOLDBERGER, ESQ.<br>824 N. Market Street<br>Wilmington, DE 19899 |

3

```
For OUCC                    Pepper Hamilton, LLP
                            By: WILLIAM COHEN, ESQ.
                            1201 Market Street
                            Wilmington, DE 19899

For C&S Acquisition         Landis Rath & Cobb
                            By: RICHARD S. COBB, ESQ.
                                MEGAN N. HARPER, ESQ.
                            919 Market Street
                            Wilmington, DE 19801

For Sonitrol Management     Reed Smith, LLP
                            By: KIMBERLY E. C. LAWSON, ESQ.
                            1201 Market Street
                            Wilmington, DE 19801

For Teamsters Union & UFCW  Previant, Goldberg Uelmen Gratz
                              Miller & Brueggeman
                            By: FREDERICK PERILLO, ESQ.
                            Milwaukee, Wisconsin


                            Heiman Gouge & Kaufman
                            By: SUSAN KAUFMAN, ESQ.
                            800 King Street
                            Wilmington, DE 19899

For Wayne Berry             William W. Erhart, PA
                            By: WILLIAM W. ERHART, ESQ.
                            800 King Street
                            Wilmington, DE 19899

For Buy For Less, Northstar Walsh, Monzack & Monaco, P.A.
                            By:  RACHEL B. MERSKY, ESQ.
                            1201 North Orange Street
                            Wilmington, DE 19899

For Big 8                   Campbell & Levine
                            By: MARK HURFORD, ESQ.
                            800 N. King Street
                            Wilmington, DE 19801

By Phone:

For Debtors                 Kirkland & Ellis
                            By: JAMIE SPRAYREGEN, ESQ.
                                SHIRLEY CHO, ESQ.
                            200 East Randolph Drive
                            Chicago, IL 60601
```

4

For Bradley Operating, LP     McGuire Woods, LLP
By: MICHAEL SCHMAHL, ESQ.
150 North Michigan Avenue
Chicago, IL 60601

For Wayne Berry     Lynch Ichida Thompson Kim &
Hirota
By: TIMOTHY HOGAN, ESQ.
1132 Bishop Street
Honolulu, HI 96813

For BP Products     Kelley Drye & Warren, LLP
North America     By: DEBRA SUDOCK, ESQ.
101 Park Avenue
New York, NY 10178

For General Mills and     Frederickson & Byron
Marigold     By: FAY KNOWLES, ESQ.

For Application to retain     By: BOB REYNOLDS, ESQ.
Bob Reynolds

For Lexington Insurance     Grotefeld & Denenberg
By: LYNN WEAVER, ESQ.
105 West Adams Street
Chicago, IL 60603

5

<u>**I N D E X**</u>

Court's ruling on estimation issue                173

Court's ruling on confirmation of plan            224

<u>**WITNESSES:**</u>                                        <u>**PAGE**</u>

EDWARD TED STENGER

    Direct Examination by Mr. Paris         47

    Cross-Examination by Mr. Hogan          61

    Redirect Examination by Mr. Paris       64

    Cross-Examination by Mr. Hertzberg      66

MICHAEL KENNETH SCOTT

    Direct Examination by Mr. Paris         67

    Cross-Examination by Mr. Hogan          70

    Redirect Examination by Mr. Paris       75

    Cross Examination by Mr. Hertzberg      76

    Recross Examination by Mr. Hogan        79

MARK DILLON

    Direct Examination by Mr. Liebeler      82

    Cross-Examination by Mr. Hogan          97

    Redirect Examination by Mr. Liebeler    114

    Recross Examination by Mr. Hogan        117

MR. ANDERSON'S VIDEOTAPED DEPOSITION              121

WAYNE BERRY'S DEPOSITION READ                     123

PAUL HUFFARD

    Direct Examination by Mr. Bledsoe       196

6

1  BARRY J. FOLSE

2       Direct Examination by Ms. Huber                    203

3       Cross-Examination by Mr. Hertzberg                 215

4       Cross-Examination by Mr. Hogan                     216

5  **EXHIBITS**                                           **EVID.**

6  1-9      Affidavits and exhibits of Mr. Stenger,

7           Mr. Scott and Mr. Folse.                       26

8  10       Documents relating to substantive

9           consolidation                                  26

10  11-23    Incorporate documents                         26

11  24-176   Documents relating to substantive

12           consolidation                                 26

13  177-179  Unidentified documents                        26

14  189-192  Demonstrative exhibits                        26

15  180-188  Various documents relating to solicitations

16           procedures, affidavits of publication,

17           compliance with all of the various notice

18           provisions of the Code and the solicitation

19           procedures order                              26

20  193-204  Corporate documents or bankruptcy

21           procedure documents                           27

22  310      Paragraphs 17-25 of Mr. Berry's declaration   141

23  317      Second amended complaint of prior litigation  138

J&J COURT TRANSCRIBERS, INC.

7

1              (Call to order of the Court)

2        THE COURT:  Good morning.

3        MS. JONES:    Good morning, Your Honor.  Laura Davis

4    Jones, Pachulski, Stang, Ziehl, Young, Jones & Weintraub.  Your

5    Honor, four Fleming companies and the related debtors.  If I may

6    refer the Court to the amended notice of agenda for matters

7    scheduled for hearing this morning.  Your Honor, on that agenda,

8    matters 1-6 are continued.

9        Matters 7 and 10, Your Honor, are related, one being

10    the motion, one being the motion to file the settlement under

11    seal.  Your Honor, I'm going to need to pass on those until later

12    in the hearing as there have been some changes that have been

13    requested and the final documents are not here yet.

14        Your Honor has already signed orders with respect to

15    matters 8, 9 and 11.

16        Your Honor, then looking at matters 12, which is the

17    second omnibus section to claims.  Your Honor, we filed one

18    proposed order on the certificate of counsel with respect to this

19    one.  It resolves two more objections and continues the balance

20    of those that are outstanding until August 17.  Your Honor, that

21    certificate of counsel was filed Friday afternoon and it's docket

22    9024.

23        Your Honor, matter 13, the sixth omnibus objection to

24    claim.  On that one, Your Honor, we filed two orders under two

25    certificates of counsel.  One order, Your Honor, resolved the

8

1  Northcutt and Ryder claim which we thought in our agenda said we

2  would need to continue. But luckily, Your Honor, we were able to

3  resolve that as well. And so we have submitted that, an order

4  that does reflect that resolution under certificate of counsel.

5  And then we also submitted one other order that continues the

6  balance of the objections that are still open. And those are

7  docket numbers 9021 and 9022 with respect to those certificates

8  of counsel.

9         Matter 14, Your Honor, we'll pass over that. That's

10  with respect to the Put agreement. Mr. Sprayregen will have a

11  lot to say about that later in the hearing.

12         Matter 15, Your Honor, the sixteenth omnibus objection,

13  again on this one, we've filed two orders under two certificates

14  of counsel. One order, Your Honor, resolved the Bradley Limited

15  Partnership claim, Your Honor, which was the subject of the

16  sixteenth omnibus and the eighteenth omnibus objection. So under

17  certificate of counsel, No. 9026, we show the resolution of that

18  with respect to both, the sixteenth and eighteenth omnibus

19  objection to claims. Our other certificate of counsel, Your

20  Honor, continued the balance again of those objections and that

21  is certificate of counsel, Docket No. 9020.

22         Your Honor, moving on to matter 16. This is the

23  eighteenth omnibus objection that I just referenced and the

24  certificate of counsel, Docket 9026, will take care of this one

25  as well. And I'm pleased to tell Your Honor, that will be the

9

1 end of the eighteenth omnibus objections to claims.  They have

2 otherwise been all taken care of now.

3          THE COURT:  Could counsel on the telephone please mute

4 their phones?  Thank you.

5          MS. JONES:  Your Honor, so that brings us to all the

6 omnibus objections to claims.  Your Honor signed the order with

7 respect to No. 17 on the objection -- I'm sorry, on the agenda.

8 Thank you for that.

9          Matter 18, Your Honor, the parties have agreed to

10 continue to the August 17th hearing.

11          Your Honor, that brings us to the most important matter

12 on the agenda today, which is confirmation.  I'm going to yield

13 to Mr. Sprayregen for No. 19 on the agenda.

14          MR. SPRAYREGEN:  Good morning, Judge Walrath.  Jamie

15 Sprayregen from Kirkland & Ellis on behalf of the debtors.  Your

16 Honor, we here on the confirmation hearing on the joint plan of

17 the debtors and Officer Committee of Unsecured Creditors.  I

18 have, obviously, a lot of detail to go through.  Just -- the

19 headline is we have only one objection to the plan confirmation.

20 That objection is by Mr. Berry.  That objection goes to

21 feasibility and good faith.

22          So what I would suggest is we actually go through

23 everything else which I don't think will take long.  Then we move

24 on to address that objection specifically.

25          THE COURT:  All right.

10

1          MR. SPRAYREGEN:  Your Honor, as I noted, we are down to

2   one objection with respect to the plan.  This is the plan

3   pursuant to the approved disclosure statement of May 25.  We had

4   approximately 43 objections filed to the plan.  I say

5   approximately because there's 37 formal, some cured objections

6   and informal objections.  42 out of 43 are resolved.  I'm not

7   going to go through specific detail on those unless people ask,

8   but there are some of them I need to put settlements on the

9   records and others are settled in groups.

10          THE COURT:  All right.

11          MR. SPRAYREGEN:  Initially, though, I would note that

12  all classes have overwhelmingly accepted the plan.  That is,

13  there were votes in 1B, 3B, 3C, classified 6A, 6B and 7.  The

14  average acceptance was approximately 94 and change percent with

15  some other a little higher and a little lower depending on going

16  through them.  There's no dispute as to anything to do with

17  voting.  So I won't go through that in detail.

18          We did file an amended ballot report, Your Honor, on

19  July 23 simply to reflect a stipulation that we're asking to be

20  approved today with Excel, which assuming it is approved, will

21  actually increase the 6A, Class 6A approval dollar amount from

22  the 90 percent to 95 percent.  And -- actually, I'm sorry, the

23  Court has already entered an order approving that.  So that has

24  now gone up to 95 percent.  We did have --

25          THE COURT:  Well, to the extent that you're going to

11

1  make anything that's been filed a matter of record, you should

2  refer to it.

3         MR. SPRAYREGEN:  Your Honor, what I had planned to do,

4  I was going go on for a few minutes, but I have a exhibit list

5  for all of the trial exhibits for the confirmation hearing.  And

6  I was going to ask that the ones that don't relate to the Berry

7  objection, unless someone else has an issue, that those be

8  admitted and then we go to Berry.  So I'll get to that in a

9  moment.

10         THE COURT:  All right.

11         MR. SPRAYREGEN:  Your Honor, we did file, for the

12  Court's information, on July 16, after the July 2 voting and

13  objection date, a number of additional documents were filed, I

14  believe, in support of confirmation.  We filed a proposed

15  confirmation order and we filed the required plan supplement

16  which had the Exit (phonetic) facility loan documents with GECC

17  and the terms new loan facility with Sanctity (phonetic), had the

18  management incentive plan, the RCT and PCT agreements and the

19  required disclosures concerning identity of E's and O's and

20  compensation with respect to the three entities that will exist

21  on Exit.

22         I would note, Your Honor, Ms. Jones referenced the

23  Sanctity Put Agreement.  The Court, if you recall several

24  hearings ago, had approved fees related to that and had continued

25  the confirmation equivalent to the Put Agreement itself.  There's

12

1  no objections to that and we're now asking for that to be

2  approved separate from the confirmation assuming a confirmation

3  order were entered it's imbedded in that.  If it's not, we

4  obviously don't need it to be approved.

5          All of the documents that I just referenced were served

6  on all objecting parties including the one extant objection, the

7  committees, the U.S. Trustee and counsel to the lenders on July

8  16th.

9          We also filed on July 20 the Core-Mark Newco Articles

10 of Incorporation.  And on Friday, to help the Court and the

11 parties, we did file a risk of resolved objections with backup

12 documentation attached to that showing the objections that were

13 existing as of Friday which there were four of them at that

14 point.  As I said, we're down to one.  But we listed the

15 resolution of the other objections and attached the evidence, the

16 written confirmation evidence from the opposing party of that

17 resolution.

18          THE COURT:  Do you have a copy of that?

19          MR. SPRAYREGEN:  Yes, I do, Your Honor.  If I may

20 approach.

21          THE COURT:  You may.

22                    (Pause)

23          MR. SPRAYREGEN:  Okay.  Your Honor, unless the Court

24 desires, I wasn't planning on going through the mechanics and

25 workings of the plan.  I think those have all be said of record.

13

1 And I'm happy to discuss exactly how the plan works, separate and
2 apart from how it affects the Berry objection which we will
3 obviously get into at that point. But none of those seem to be
4 an issue at this point.

5       So let me turn to the resolved objections and the
6 document I just handed you I think will be helpful to that. As I
7 noted, there were 37 formal plan objections, 4 cured objections.
8 The U.S. Trustee did to file an objection, but we continue to
9 extend their time to object as we worked out their issues and
10 ultimately did work out their issues. There was one reservation
11 of right filed by Deloitte and Touche. That doesn't complete fit
12 with the amended agenda because of the way people file their
13 objections, but if you find it on the agenda, it says there were
14 27 formal objections filed including one reservation of rights,
15 that's because there were 12 formal withdrawals, so they don't
16 show up on that. And the four cured objections are listed
17 separately.

18       The objections fall into a couple categories, so I can
19 get through them actually fairly quickly. Out of the 43, there
20 were 13 taxing authority objections which, in essence, went to
21 interest rate on the priority tax claims. And we did agree to
22 provide a 5 percent interest rate with payment over three years
23 for Class 1B. And 5 percent over six years for unclassified
24 priority tax claimants which is actually better than the
25 treatment solicited. And that resulted in the resolution of

14

1  those 13 taxing authority objections.  Those are -- if you need

2  it, agenda items 19 A, B, D, H, W and Z.  And there were seven

3  formal notices of withdrawal associated with that.  On the

4  objection chart, Your Honor, those are 1-13.

5       There were another 10 objections filed relating to a

6  clarification sought with respect to a setoff or recoupment of

7  defenses being preserved.  And we have confirmed that there were

8  being preserved by adding some clarifying language in the

9  proposed plan to be confirmed, which as I said, amendment and it

10 addressed those objections and in particular, Atlantic Coast

11 Warehouse asked for that additional comfort in the confirmation

12 order also, so we helped -- in the proposed order, we put it in

13 there.  Those were agenda items 19F, J, N, O, P, S, U, V and X.

14 And those also were on the notice of withdrawal.  And on the

15 objection chart it's 14 to 23.

16      Then we had a number of miscellaneous objections

17 resolved.  There were two PACA (phonetic) objections which were

18 resolved by making it clear that the PACA trust would cover any

19 allowed PACA claims as opposed to just principle amount of PACA

20 claims.  So whatever the amount ultimately is, if it's more than

21 principle that is covered.  That's agenda items 19I and R.  And

22 on the objection chart 27 and 28.

23      Next objection was of some retailers concerning one of

24 the FSA reserve claimants.  And they wanted, in essence, to

25 clarify that we were invading the FSA reserve which we confirmed.

15

1  And that's objection chart 33, agenda item 19L.  So that resolved

2  that objection.

3          The U.S. Trustee requested several changes to the

4  proposed plan or confirmation order.  There were some extensions

5  of the proposed dates for a final professional obligations, some

6  issues concerning confirming quarterly fees would continued to be

7  paid.  And that was standard substantive consolidation and

8  timeliness to claims objections and clarifications concerning

9  estimation, procedures for claims and payment of indentured

10  trustee's fees.  All of those were issues raised by the U.S.

11  Trustee and were resolved in places in the plan and proposed

12  confirmation order.  At the right time, Your Honor, we have a

13  blacklined proposed confirmation order and proposed plan that

14  show that changes and a few others necessitated by the various

15  settlements with people.

16          Your Honor, CHEP USA, the -- there was a stipulation

17  filed Friday resolving that claim.  Your Honor had previously

18  denied a preliminary injunction based on our cash levels and, in

19  essence, we resolved concern that that might be effective post-

20  effective date by providing that if the case on hand dips below

21  the amounts asserted in CHEP's claim, they'll be able to trace

22  that amount against the PCT from that point forward.  That was

23  objection chart 29 and Item 19C.

24          THE COURT:  If the cash in the PCT Folse below?

25          MR. SPRAYREGEN:  No.  If -- yes.  They were concerned

16

1   about how --

2          THE COURT:  And they can trace what?

3          MR. SPRAYREGEN:  Your Honor, the PCT has many assets

4   other than straight cash.  So they're concerned that the ins and

5   outs and if at some point the rules of tracing would be

6   interrupted which is, sort of the reason that the Court denied the

7   preliminary injunction in the first place because we weren't

8   getting there.  We were just essence preserving the status quo.

9   I can --

10         THE COURT:  I'll look at the language.

11         MR. SPRAYREGEN:  Okay.  Thank you.  Your Honor, there

12  was an objection by the United States on behalf of the U.S. DA,

13  the IRS and the DCA.  We provided some clarifying language with

14  respect to some issues they had with respect to interest and the

15  application of the proposed releases only applying to people who

16  voted in favor of the plan or -- in favor of the plan or entities

17  that had voted in favor of the plan.  The item only applies to

18  agencies as opposed to the entire United States government.

19         Now, Your Honor, Domino Foods had a reclamation

20  objection and we resolved their administrative claim in an agreed

21  amount of $65,000 and change, and preserved those post-petition

22  deliveries made in the ordinary course of business and other

23  rights were preserved.  That's agenda item 19G and objection

24  chart 36.

25         Your Honor, Jackson Capital objected as a lead

17

1  plaintiff for the class action, securities claimants are pending

2  litigation elsewhere. That objection has been resolved through a

3  proposed stipulation which again provides confirmation that the

4  proposed releases with respect to the D's and O's only applies to

5  those who voted in favor of the plan. And the lead claimants on

6  -- lead plaintiffs on behalf of the class also agree under

7  certain circumstances that it would apply. And it's also subject

8  to any necessary approval by the class action court also. And I

9  have a proposed stipulation we can show you on that at the right

10 time.

11         The counsel to one of the insurance companies wanted me

12 to confirm that the language in the proposed stipulation that was

13 requested by the class claimants that goes to the issue of that

14 nothing we're doing in the plan it purports to impair insurance

15 coverage. It goes both ways. That is it doesn't diminish or

16 increase whatever rights there are to insurance and does not

17 effect whatever rights they may have, if any, to pursue recision

18 actions with respect to the D and O insurance. It doesn't go to

19 that issue.

20         THE COURT: Okay.

21         MR. SPRAYREGEN: Your Honor, there was an objection by

22 ACE which is really a casualty insurance company. And that has

23 been resolved and I've been asked to read a portion of the

24 settlement, it's a couple paragraphs, into the record to confirm

25 that objection. We briefly amended the -- I'm sorry, recently

**J&J COURT TRANSCRIBERS, INC.**

18

1  amended the plan on Friday to provide that certain provisions

2  with respect to ACE are deleted.  In essence, there was a dispute

3  as to whether something can be assumed or rejected, and indeed,

4  whether it's even executory.

5       Due to the dispute, we provided that it would be

6  rejected and that is not objected to at this point subject to,

7  basically, reservation of rights language where ACE has reserved

8  all of its rights to seek treatment as a Class 3A secured claim

9  and maintain that notwithstanding any purported rejection of any

10 of its policies, programs, agreements and any related agreements,

11 which we're defining as the ACE agreements, all terms,

12 provisions, conditions, limitations and/or exclusions contained

13 in the ACE agreements remain unmodified and continue in full

14 force and effect.  And that ACE's rights, claims and/or defenses

15 under the agreements, including without limitation, it's right

16 and sole discretion to pay public claims shall not be impaired by

17 the confirmation order or any injunction contained in the plan.

18       And that confirmation is without prejudice to any of

19 ACE's rights and/or defenses in subsequent litigation or

20 arbitration regarding the nature and/or extent of insurance

21 coverage under these agreements and their rights to access their

22 collateral and/or proceeds including without limitation the

23 various reservations of rights set forth in the ACE objections to

24 confirmation.

25       We're also confirming that we didn't create any

19

1  insurance coverage that does not exist under the plan.  That

2  would be difficult to do, but we're confirming we didn't.  And

3  that nothing in the confirmation order, if it were to be entered,

4  should be construed as acknowledgment that the ACE agreements

5  cover or otherwise apply to any claims, or that any claims are

6  eligible for payment under any of the ACE agreements.

7         And we also agree that we'll conduct a further review

8  of the assumption schedule which is the assumed contracts under

9  the plan to insure that all of ACE's worker compensation

10  policies, binders, program agreements and other related

11  agreements are specifically included, to be clear, those ones are

12  being casualty as being excluded and that the assumption schedule

13  may be amended by mutual agreement from time to time to actually

14  reflect this intent of the parties.  Those had been inadvertently

15  omitted previously.  So with that, that would resolve the ACE

16  objection.

17         THE COURT:  ACE has a comment?

18         MR. GOLDBERG:  Good morning, Your Honor.  Leonard P.

19  Goldberg for ACE.  I agree with what Mr. Sprayregen has

20  represented to the Court and based on that we can withdraw our

21  objection.  I also want to clarify one thing which I have

22  indicated by notes back and forth with Ms. Bear (phonetic).  ACE

23  filed proofs of claims against each of the debtor subsidiaries

24  and affiliates because they may be covered -- entities with

25  coverage under our policies.

20

1          It's our position that those claims against the

2   multiple debtors are not identical or duplicative and we would

3   like to have those claims considered as separate claims to the

4   extent that any particular debtor claims rights to insurance

5   coverage under the plan.

6          I understand that because -- the debtor's is that

7   because the estate is being substantively consolidated, there is

8   no longer any need to allow all of the claims and that of the

9   sole remaining claim which has not been either allowed or

10  disallowed yet can suffice.  And that the debtor's position is

11  that any disputes that would arise in connection with coverage

12  that was formally provided to any of the now consolidated debtor

13  affiliates and subsidiaries would be subsumed in that remaining

14  proof of claim and that -- yeah, that those rights are reserved.

15         MR. SPRAYREGEN:  Your Honor, there's obviously a number

16  of things going on behind me.  This is a new one.  There actually

17  is a notice that all duplicative claims would be as soon as the

18  confirmation is ordered and substantive consolidation is ordered,

19  there was specific claim objections to all the duplicative claims

20  providing that to the extent confirmation is ordered and in

21  compliance with Rule 3007 of the Bankruptcy Rules are that they

22  would all be disallowed so there's only one estate, so there's

23  only one claim left.

24         I believe, I'm going to have to check, that ACE's

25  claims are on there, they had notice, they had the opportunity to

21

1    object, they did not object on this rule. I think what we ought

2    to do is pass this and we'll get to this at the end if there's a

3    remaining objection. I don't know -- I can't tell from what Mr.

4    Goldberger said whether we have an issue or not.

5        MR. GOLDBERG: I don't think we do and I'm not trying

6    to create one. I just wanted to understand -- clarify what I

7    thought, I got a note from the debtor, what the debtor's position

8    that any of the claims that related to those now consolidated

9    subsidiaries and affiliates to the extent that they are different

10   because coverage and claims arise different are now subsumed in

11   that remaining claim.

12       MR. SPRAYREGEN: Again, Your Honor, I don't know from

13   standing here, we had a specific list of claims that were

14   disallowed that people were supposed to object to. I can't tell

15   from what Mr. Goldberger is saying whether he's trying to undue

16   what was --

17       THE COURT: I guess what he's trying to say is although

18   he has one consolidated claim, it does not impair his right to

19   say that his policy doesn't cover one subsidiary.

20       MR. SPRAYREGEN: If that's all he's saying, I'm fine

21   with that.

22       MR. GOLDBERG: Yeah. I just -- yes.

23       THE COURT: If it wasn't signed by --

24       MR. SPRAYREGEN: Okay. We can stop there.

25       THE COURT: Thank you.

22

1        MR. SPRAYREGEN:  Thank you, Your Honor.  Your Honor,

2  the other resolution of an individual objection, and I'm just

3  about done here, on the resolutions was by Mr. Bertram Block

4  (phonetic) who was a retired Godfrey executive who participates

5  in a retiree medical plan.

6        We have been informed that we're authorized to state

7  that their plan objection is withdrawn on the basis that the

8  debtor has agreed to continue the life-time benefits of Mr. Block

9  to be paid by the PCT which is exactly our view as what was

10  reflected in the plan in any event.

11        So that we don't think there's any change, we're just

12  confirming that, but we are still negotiating over what the

13  annual cap of that amount should be.  And just to get an order of

14  magnitude, it's somewhere between $35-45,000.  That's the spread

15  between the bid and the asset, so I assume somehow we're going to

16  resolve that consensually.  And we've also talked about some

17  potential buyout of Mr. Block from this.  Again, that would be a

18  PCT activity.

19        With that, and to the extent there's any disputes, we

20  would obviously come back to the Court with respect to those

21  issues or whatever court this Court directed us to.  I'm sorry?

22        MR. HOUSTON:  Good morning, Your Honor.  Joseph Houston

23  on behalf of Bertram Block.  And please forgive me for being

24  late.  I was a fairly popular guy this morning for some unknown

25  reason.

23

1      We are very close, but we do not yet have a final

2  agreement on this.  We do not wish to impede confirmation because

3  I'm hopeful that we will get to a result.  I just want to be sure

4  that we right this second do not have a final agreement.  I'm

5  hopeful that in a very short time we will.  I suspect if we spend

6  a little bit of time discussing the fine points of this in the

7  next little bit that we will get to where we need to be.

8      THE COURT:  Well, I'm certain that you'll have time

9  today to resolve that before the confirmation hearing concludes.

10     MR. HOUSTON:  Thank you, Your Honor.

11     MR. SPRAYREGEN:  Your Honor, as I noted, there were

12 also four cured objections which were agenda items 19BB through

13 EE.  And those were all resolved in essence by agreeing as to

14 cure amount or cure process.

15     And finally, I would note that the -- you had already

16 approved agenda item No. 17, the Excel specialty 3018 motion

17 claim, a $34 million administrative claim.  Stipulation was filed

18 on July 22 allowing admin claim 35 percent of the administrative

19 liability on tax bonds and performance liability is capped at

20 $1.5 million.  And there's a certification of counsel filed on

21 that July 22.

22     Your Honor, what I would suggest is we have passed out

23 prior to the start of the hearing our confirmation trial exhibit

24 list.  And I think I can deal with all of our exhibits that

25 generally I just went through other than the ones that will be

24

1  relevant to the extant objection.  If I might hand up the exhibit

2  list.

3          THE COURT:  You may.

4                  (Pause)

5          MR. LASTOWSKI:  Good morning, Your Honor.  Michael

6  Lastoski here for Twin City, one of the D and O carriers.  If I

7  may be heard for just a moment.  Earlier, Mr. Sprayregen

8  addressed one of our concerns relative to the D and O insurance.

9          Just briefly, the plan has a very broad indemnification

10  provisions.  Officer and Directors are indemnified for any claims

11  related to the debtors.  And arguably that would include

12  liability for avoidance actions.

13          It's -- however, the plan limits the liability to the

14  amount of D and O insurance.  And what we would like to clarify,

15  which I think Mr. Sprayregen did clarify, is that this is a

16  limiting paragraph.  In other words, the liability is limited to

17  the amount of D and O coverage and that this language does not

18  seek to expand D and O coverage to cover claims which would not

19  ordinarily be covered.  And I think he's already done that.  We

20  also had some concerns about preserving our rights, if any, to

21  rescission.  Mr. Sprayregen addressed that as well.

22          The only further refinement I seek is this.  This came

23  up in the context of a stipulation with the plaintiff's class

24  action lawyers where they were concerned about the continued

25  existence of D and O insurance.  I just wanted a clarification

25

1  that the statements that were made about our preserving our

2  rights and our liability being limited to the terms of the policy

3  extends beyond the class action, but it extends to other claims

4  as well.  I wouldn't want someone at some other future date to

5  argue that they are being pursued for an avoidance action, for

6  example, and under the broad indemnity provisions, we have a duty

7  to indemnify.

8          THE COURT:  Okay.  All right.  That clarification is

9  acceptable to the debtors?

10         MR. SPRAYREGEN:  Yes.  I mean I --

11         THE COURT:  Okay.

12         MR. SPRAYREGEN:  Okay.  Your Honor, the exhibit list

13  that I handed up to you has a list of -- if I can get to the last

14  page -- 204 proposed confirmation trial exhibits just to make it

15  easy because there's been varying versions of these.  We list

16  that the confirmation trial exhibit number on the left, where

17  it's referenced in the agenda letter, if it is, and most of them

18  are, what the document is in the middle.  And there are a number

19  of affidavits filed on July 16 and they had some of their own

20  exhibits attached.  So we cross-referenced it.  So anybody

21  looking at it from the variety of perspectives ought to be able

22  to figure out what we're doing.

23         THE COURT:  Well, is it -- just a question.  Are all of

24  the exhibits to all of the affidavits being included?  Or not

25  all?

26

1          MR. SPRAYREGEN:  All are, yes.

2          THE COURT:  Okay.

3          MR. SPRAYREGEN:  So, the exhibits that we have

4  identified that implicate the remaining objection are exhibits 1-

5  9 which are affidavits and exhibits of Mr. Stenger, Mr. Scott and

6  Mr. Folse.  Because of the objection, what we're going to do is

7  put them on as live witnesses and we'll go through 1-9 live and

8  because those go to both feasibility and good faith.

9          Then Exhibits 177-179 also go directly to the Berry

10 dispute.  And Exhibits 189-192 are demonstrative exhibits which

11 are really hard copies of those posters you see over on the

12 right, also go to feasibility.  So those are the ones that we

13 would ask to be admitted into evidence right now.

14         So on the flip side, the ones we would ask to be

15 admitted into evidence and that don't relate to the Berry

16 objection would be Exhibit 10, which relates to substantive

17 consolidation; Exhibits 11-23 which are incorporate documents;

18 Exhibits 24-176 which all relate to substantive consolidation, if

19 there's no objection from anybody on; Exhibits 180-188 which are

20 all of the various documents relating to solicitation procedures,

21 affidavits of publication, compliance with all of the various

22 notice provisions of the Code and the solicitation procedures

23 order.

24         And then 193-204 are either corporate documents or

25 bankruptcy procedure documents that follow on from all of what I

27

1  just referenced. And I will just note that the very last exhibit
2  was just added because we noticed a slight error in the affidavit
3  of service concerning notice of the confirmation hearing, so we
4  corrected that and filed that this morning and it was handed
5  Docket No. 8898. I suspect by the time the hearing's are over
6  we'll crack 9000, but that was given 8898.

7          Now, I will note, Your Honor, that other than the last
8  one I just mentioned, 204, in the exhibits we're not asking to
9  put in evidence or be received in evidence right now, those were
10 all previously served on July 16 or before on all objectors and
11 the 2002 list as well as the committees. And so, I don't believe
12 there ought to be any objections to the admission of all those
13 exhibits, but I am happy to address them if there are any
14 objections.

15         THE COURT: Anybody wish to object to the admission of
16 the exhibits identified? All right. They will be admitted and
17 made part of the record.

18         MR. SPRAYREGEN: Thank you, Your Honor. Your Honor,
19 with that, I think we would be ready to move into the evidentiary
20 part of the confirmation hearing with a couple of preliminaries.

21         We -- the one objector did identify one exhibit in
22 connection with the confirmation hearing and that was Mr. Berry
23 himself. We understand that he is not here in Delaware today,
24 although we're not positive about that. And so, we don't believe
25 that there's any witnesses by Mr. Berry.

**J&J COURT TRANSCRIBERS, INC.**

28

1          We have three witnesses that go directly to
2     confirmation issues. And as I noted, that's Mr. Stinger, Mr.
3     Scott and Mr. Folse. We think that direct testimony all in is
4     maybe an hour and a half of so. And then we do have a pending
5     motion to estimate Mr. Berry's claim, which procedurally we'll
6     have to talk about how to handle that in the context of the
7     confirmation also, but it probably goes together. And we would
8     have a maximum of four additional witnesses related to that. And
9     we think the direct case with respect to those four is an hour or
10    so. So we see two and a half to three hours of direct testimony
11    on our case. And we're not aware of additional witnesses.
12          And Mr. Liebeler reminds me actually that two of those
13    are by deposition designations. So that obviously would tend to
14    accelerate.
15          We obviously are quite hopeful of concluding favorably
16    actually the confirmation hearing today. We think it's doable.
17          THE COURT: All right.
18          MR. SPRAYREGEN: Obviously it would depend on some of
19    the objections.
20          THE COURT: Let me hear from the Berry side as to what
21    they intend to present.
22          MR. HOGAN: Timothy Hogan, Your Honor, on behalf of Mr.
23    Berry. Your Honor, we submitted documents and declarations, Your
24    Honor. We'd ask that the Court at least allow those to be
25    considered in these hearings. As to the --

29

1    THE COURT:  Which declarations are you asking me to
2 consider?

3    MR. HOGAN:  The declarations in support.  We've got --
4 essentially declarations have been submitted in support of our
5 opposition to the plan.  There have been declarations submitted
6 in support of our opposition to the non-substantive objection.
7 And to the estimation motion, Your Honor.

8    As to -- we believe there's an evidentiary foundation
9 with the materials that are in there.  They've been submitted --

10    THE COURT:  Well, let me hear if there's an objection
11 to those declarations.

12    MR. SPRAYREGEN:  There is, Your Honor.  This is a
13 confirmation hearing where witnesses were to be identified.
14 Those are out-of-court statements offered for the truth of the
15 matter asserted.  They're clearly hearsay.  And --

16    THE COURT:  Well, they've by Mr. Hogan, so do we want
17 to hear Mr. Hogan here?

18    MR. SPRAYREGEN:  Your Honor, there is a declaration by
19 Mr. Hogan, but also one by Mr. Berry.

20    THE COURT:  Regarding the review of the data.

21    MR. HOGAN:  Yes, Your Honor.  I guess, Your Honor, if I
22 may, Your Honor.  We had a -- something that was put over on the
23 9th hearing, Your Honor, that I think is at least germane to this
24 morning was the stay --

25    THE COURT:  Motion for relief, yes.

30

1    MR. HOGAN:  Much of why I'm here, Your Honor, is

2  regarding that matter.  And it would seem to be at least

3  something that I thought was going to be addressed prior to the

4  confirmation hearing, Your Honor.

5    THE COURT:  Well, it might have been.  I did not get

6  the debtor's supplemental brief although the debtor says that --

7  say in their amended agenda they filed it.

8    MR. LIEBELER:  Your Honor, I'll make sure we get a copy

9  of that to you right now.  This is Mr. Liebeler for the debtors.

10  But, by the way, Your Honor, as I recall at the end of the last

11  hearing the Court had indicated that there would not be an

12  additional hearing on the motion to lift stay, that the Court

13  would be prepared to rule on the papers rather than take

14  additional argument.

15    THE COURT:  Had I gotten them, July -- your brief, July

16  22nd, I might have been prepared to rule on it.

17    MR. LIEBELER:  That's fine.  I will run down and get

18  you a copy right now.  In fact, may I approach, Your Honor?

19    THE COURT:  Yes.

20    MR. LIEBELER:  I have a copy with me here.

21                    (Pause)

22    MR. LIEBELER:  But, Your Honor, I can see if we can

23  figure out when it was filed and where it was filed because I do

24  believe we filed it on time.  I don't know that.

25    THE COURT:  Well, filing doesn't help me.  It wasn't

31

1  delivered to chambers, so.

2      MR. HOGAN:  Your Honor, as to -- I believe their case

3  is going to be also through depositions, Your Honor.  Those are

4  not live witnesses under the local rules.  I believe we're

5  entitled to have live witnesses in regard to these hearings.

6      THE COURT:  Well, I'm not -- they're just identifying

7  what they're presenting.  I have not admitted anything in

8  relation to the Berry objection.  So.

9      MR. HOGAN:  and I guess the concern is, Your Honor, if

10  we go to confirmation and then go to the other issues, there are

11  issues that are bound up, in feasibility that were raised in the

12  objections to Mr. Berry's claim, particularly the issue of the

13  indemnities, Your Honor, that the debtors have stated unless Your

14  Honor is willing to essentially rule that Mr. Berry has no rights

15  against CNS, that the plan is unconfirmable.

16      THE COURT:  Well, I'll hear those issues.

17      MR. HOGAN:  Yes, Your Honor.

18      THE COURT:  I'm trying to get a feel for how long it

19  will be.

20      MR. HOGAN:  I don't present -- obviously, Your Honor,

21  mine will be rather brief, I think, Your Honor.

22      THE COURT:  Your testimony to the extent they object to

23  your affidavit.

24      MR. HOGAN:  That's correct, Your Honor.

25      THE COURT:  All right.

32

1    MR. SPRAYREGEN:  Your Honor, I apologize for the snafu

2  with the supplemental brief.  Ms. Jones informs me that we

3  believe it was delivered to your chambers Friday morning, but I

4  know there was a lot of paper going on Friday, so --

5    THE COURT:  I didn't receive it, so I don't know where

6  it went.

7    MR. SPRAYREGEN:  So, Your Honor, we have no problem

8  with actually hearing Berry's confirmation objection in the

9  estimation motion together.  We don't think there needs to be

10  separate processes.  Obviously, they're separate issues, but

11  we're just saying whatever the Rules of Evidence apply are that

12  they should apply here.  We're not --

13    THE COURT:  All right.  Any objection to having them --

14  the estimation and the confirmation heard together?

15    MR. HOGAN:  Well, Your Honor, I guess this would an

16  objection.  The confirmation, I understand, has a separate

17  evidentiary requirement than typical motions that are filed in

18  contested matters.  I don't think the Court is generally

19  requiring people in a contested matter motion to present live

20  testimony in the Court, Your Honor.

21    THE COURT:  Yes, I am.

22    MR. HOGAN:  I apologize, Your Honor.  I was under the

23  impression that most motions are ruled on on the papers.

24    THE COURT:  No, not in this court.

25    MR. HOGAN:  All right.

**J&J COURT TRANSCRIBERS, INC.**

33

1        THE COURT:  If it's contested, I hear testimony.

2        MR. HOGAN:  Okay, Your Honor.  Well, I -- we'll just go

3   forward as Your Honor thinks best.

4        THE COURT:  All right.  Well, the debtor can proceed

5   then.

6        MR. SPRAYREGEN:  Two items, Your Honor.  One is a

7   matter of efficiency.  There are -- Your Honor, the -- on the

8   agenda post -- the confirmation hearing post 19, there are a

9   number of landlord matters which we understand are all

10  uncontested.  I don't know if anybody's here solely for that

11  issue.  And maybe you'd want to take a couple of minutes and get

12  that out of the way.  We're ready to proceed now.  But if the --

13        THE COURT:  The notices of assumption and assignment?

14        MR. SPRAYREGEN:  Right.  It's a number of agenda items.

15        THE COURT:  We can proceed with that to the extent

16  there are not objections.  And then those parties can leave if

17  they want to.

18        MR. SPRAYREGEN:  Thank you.  That would go to -- that

19  would start with agenda item 23.

20        MS. HARPER:  Good morning, Your Honor.  Megan Harper of

21  Landis Rath & Cobb for C&S Acquisition.  Your Honor, we have one

22  item for today that's with respect to agenda item No. 24.  Last

23  week -- or, excuse me, Your Honor, the last hearing, we handed in

24  a 24th supplemental order approving assumption and assignment.

25  The order was for contrast, signed and franchise agreements to be

34

1  assumed and assigned to Piggly Wiggly.  That order inadvertently

2  included a contract with Dave Reinhart.  That particular contract

3  is for a franchise agreement that was noticed for assumption and

4  assignment to Super Value.

5         We have amended the order and also circulated that to

6  counsel for Super Value.  So I simply ask that we submit -- be

7  permitted to submit an amended order.

8         THE COURT:  You may.

9         MS. HARPER:  Thank you, Your Honor.

10        THE COURT:  And I'll enter that to correct the error.

11        MS. HARPER:  We have nothing further.

12        THE COURT:  All right.

13        MR. EVANOFF:  Good morning, Your Honor.  Bill Evanoff

14 on behalf of Super Value.

15        THE COURT:  Yes.

16        MR. EVANOFF:  Again, we only have a limited number of

17 matters going forward.  And both of them are already agreed, I

18 believe, and submitted under certification of counsel as

19 reflected on the agenda for today.  For agenda item No. 25, there

20 is a certification of counsel docketed as 8667 that I believe was

21 filed around, approximately July the 6th for which we've --

22        THE COURT:  Give me the docket number again.

23        MR. EVANOFF:  The notice -- I'm sorry, the

24 certification of counsel with proposed order is Docket No. 8667.

25        THE COURT:  Okay.

35

1      MR. EVANOFF:  And if it would assist the Court, I have
2  a copy of the certification of counsel and the proposed form of
3  order if you would like me to hand that up.
4      THE COURT:  You may hand it up.  I don't know if I've
5  entered it or not.
6      MR. EVANOFF:  Your Honor, if I may approach.
7      THE COURT:  You may.
8                      (Pause)
9      THE COURT:  All right.
10     MR. EVANOFF:  Similarly, with respect to agenda item
11  No. 32, there was a certification of counsel filed a week ago
12  with respect to two sets of leases, New York 035 and New York
13  060, reflected as agenda item 32 on the amended agenda as
14  certification of counsel and proposed form of order to which
15  we're requesting an order.  And again I have a form of order that
16  would assist the Court.
17     THE COURT:  You may hand that up.
18                      (Pause)
19     MR. EVANOFF:  And with those matters, Your Honor, I'm
20  pleased to say we are down to three sets of leases in total from
21  our starting position of a few 100 and if we're able to resolve
22  those, they will again be filed under certification of counsel if
23  that is acceptable with Your Honor.
24     THE COURT:  That is fine.
25     MR. EVANOFF:  And with that, I have nothing further.

36

1  Thank you.

2          MS. MELNICK:  Good morning, Your Honor.  Salinda

3  Melnik, Edwards & Angell for AWG Acquisition, Inc. and Associated

4  Wholesale Grocers, Inc.  My co-counsel, Mark Benedict, is on the

5  phone.  Our matters that are listed today are numbers 23, docket

6  numbers and the amended notice of agenda 23, 29 and 38.  We do

7  not have any orders going forward today, Your Honor, but we are

8  hopeful that we will soon be able to submit under certification

9  of counsel several orders resolving some of the matters.

10          THE COURT:  All right.

11          MS. MELNICK:  Thank you.  And there's --

12          THE COURT:  Thank you.

13          MS. MELNICK:  -- one more matter.  Thank you, Your

14  Honor.

15          THE COURT:  Thank you.  Anybody else?

16          MS. JONES:  Your Honor, we had, on the agenda skipped

17  over matters No. 7 and No. 10.  But Mr. Lapowsky, I believe, is

18  on the phone.  Mr. Houston is here.  With respect to those, Your

19  Honor, if I may yield to Mr. Lapowsky to tell Your Honor what the

20  status of that is.

21          THE COURT:  All right.

22          MR. LAPOWSKY:  Thank you, Your Honor.  This is Robert

23  Lapowsky and I apologize for appearing by phone, but I have a

24  hearing at 11:00 in Philadelphia.  This matters 7 and 10 relate

25  to an agreement that was reached between a number of retailers,

1   10 or 12 retailers that I represent, C&S and Fleming. And the

2   motion was filed in early July, the objection deadline was the

3   19th and I think that a certificate of no objection was filed.

4          But we discovered a mistake in the agreement after the

5   -- actually after the objection deadline had past that required

6   one change to address that mistake. And what I would like to do

7   with your permission is to describe to you what we were trying to

8   correct. Mr. Houston has a blackline of the agreement that shows

9   the change from what was filed, and then see if we can't get this

10  approved today.

11         THE COURT: All right. Do you have a blackline?

12         MR. HOUSTON: Your Honor, if I may approach, I have the

13  blackline that Mr. Lapowsky is going to refer to as I have it

14  under seal to leave with the Court.

15         THE COURT: All right. You may hand it up. I assume

16  the changes are for the parts that are not to be kept under seal?

17         MR. LAPOWSKY: That's correct.

18         THE COURT: All right.

19         MR. LAPOWSKY: There's only one portion that is under

20  seal and that is the consideration being paid for the notes, the

21  C&S, and that doesn't change.

22         THE COURT: All right.

23         MR. LAPOWSKY: Judge, the agreement, these retailers

24  all had supply agreements with Fleming. A number of them had a

25  notes, either forgiveness or promissory. Some of them had

38

1  accounts receivable that they owed to Fleming and some of them

2  had granted security interests to Fleming to cover various

3  things.

4          The agreement that was reached involved the payment of

5  a dollar amount to C&S for the assignment of the notes to another

6  client of mine, Affiliated Foods.  The payment of a compromised

7  amount for the accounts receivable, the rejection of the supply

8  agreements and releases all around between all the different

9  parties to the agreement, including releases of security

10 interests.

11         The mistake that we discovered was that one of the

12 retailers, a retailer by the name of Something More, was unique

13 in that all the other retailers were dealing only with C&S.  That

14 is C&S had their designation rights.  C&S had been assigned their

15 notes, whether they be promissory or forgiveness.  And AWG was

16 not involved at all.

17         The difference with Something More is that the

18 Something More supply agreement was designated to AWG and not to

19 C&S.  And Something More executed two notes, one was promissory,

20 the other was forgiveness.  The promissory note did go to C&S,

21 but the forgiveness note didn't.  It went to AWG.  So the

22 agreement as drafted and as put out for approval was too broad as

23 it related to Something More because it would have affected the

24 rejection of the supply agreement which C&S didn't have the right

25 to do.  It would have affected the release of security interests

**J&J COURT TRANSCRIBERS, INC.**

1 that related to the forgiveness note which nobody had a right to

2 do other than AWG.

3       When we discovered that, we went back into the document

4 and made three changes.  And if you have the document there in

5 front of you, I can show you where they are.

6       THE COURT:  I have it.

7       MR. LAPOWSKY:  In -- on the first page of the

8 blackline, you should have a whereas clause at the very bottom of

9 the page that's blacklined.

10       THE COURT:  Yes, I have it.

11       MR. LAPOWSKY:  What that does is that it takes the

12 defined term, FSA, which is the supply agreements, and it carves

13 out of the defined term the supply agreement with Something More

14 so that through the rest of the document, whether it references

15 to the FSA, for instance to them being rejected, it won't impact

16 the FSA that is designated for assignment to AWG.

17       THE COURT:  Okay.

18       MR. LAPOWSKY:  So that was the first change.  The

19 second change was on the next page in Section 1B.  The retailers

20 that I represent, Judge, had all filed an omnibus objection to

21 the assignment of the supply agreements and a request for the

22 termination of the sale of the note should be voided because

23 there were executory integrated with the supply agreements.

24       In 1B, we had said that all the retailers would

25 withdraw that objection, but we can't do that for Something More.

40

1  Something More needs to keep theirs alive.  We do have a pending

2  settlement with Something More that will be noticed up

3  separately, but as of right now, Something More needs to retain

4  its position in that omnibus objection.  So that's what happens

5  in 1B.

6          THE COURT:  All right.

7          MR. LAPOWSKY:  Then, the next change, Judge, is in 8F.

8  And all this does is carves Something More out of all the

9  releases that are given in the agreement so Something More

10 doesn't get releases, it doesn't give releases and it preserves

11 the -- any security interests which were granted to secure the

12 forgiveness note or preserve under 8F.

13         THE COURT:  Okay.

14         MR. LAPOWSKY:  And Judge, that's all the changes that

15 were made to the document that was circulated.  We believe that

16 the changes don't negatively impact anyone other than Something

17 More.  And Something More is obviously negatively impacted

18 because they're getting a reduction in the scope of the release

19 that they had gotten, but they were never entitled to that

20 release to begin with.  And I represent Something More and

21 they've consented to it.

22         And I believe that this -- these changes have been

23 reviewed by Mr. Benedict on behalf of AWG, and I believe that he

24 agrees that they get us where we need to be.  And I believe

25 they've also been reviewed by C&S although I'm not certain of

41

1  that.  But again, I don't think any of the changes that we've

2  made negatively impact C&S.

3          MR. BENEDICT:  May it please the Court, Your Honor,

4  Mark Benedict for AWG.  Mr. Lapowsky's correct, AWG has reviewed

5  that and those terms are now acceptable to AWG.

6          THE COURT:  All right.  Anybody else?  I take it that

7  all other parties then are agreeable.  All right.

8          MR. LAPOWSKY:  Judge, just before we leave these

9  matters, we will need in connection with this agreement an order

10 rejecting one of the -- a lease, an Adrian's (phonetic) lease.

11 I'm not sure whether the Fleming representatives are prepared

12 today to address that.  There is a pending motion.  I don't think

13 it's on the agenda for today, but I think we will have to provide

14 you with an order rejecting that lease as of the closing date

15 under this agreement.  Is there anyone from Fleming that can

16 speak to that?

17         MS. JONES:  Your Honor, we're going to need to take

18 care of that offline and provide it under certificate of counsel

19 if necessary.

20         THE COURT:  All right.  You can submit it under

21 certification of counsel.  Do you have a form of order on the --

22 to approve the amended agreement?

23         MS. JONES:  I do, Your Honor.  The form of order does

24 not change actually, it's what Mr. Lapowsky has informed me,

25 because this settlement agreement itself reflects the one change.

42

1    Or the changes that he outlined. Your Honor, we also have a

2    proposed form of order with respect to the under seal motion as

3    well.

4              THE COURT: All right. You may hand those up.

5              MS. JONES: Thank you.

6              MR. LAPOWSKY: Judge, I'm not -- if it's the same order

7    that's being handed up to approve the agreement that was attached

8    to the original motion, maybe we should just interlineate that

9    it's approved in the agreement as modified on the record today.

10             THE COURT: I --

11             MR. LAPOWSKY: I think it makes reference to the

12   agreement that was attached to the motion to approve.

13             THE COURT: Well, it simply says the motion is granted.

14             MR. LAPOWSKY: I don't have it in front of me.

15             MS. JONES: Your Honor, we'll be glad to provide any

16   words -- motion as modified on the record at today's hearing.

17             THE COURT: All right. Why don't you add those.

18             MR. SPRAYREGEN: Your Honor, a couple of --

19             THE COURT: Before we go further, is the reference

20   number on the order to seal should reference both of the

21   settlement agreements that you filed under seal. It only has one

22   reference number. I assume the later one.

23             MR. SPRAYREGEN: We'll address that.

24             MR. LLUHLIER: Your Honor, Chris Lluhlier. The

25   settlement agreement that was handed up today actually hasn't

43

1  been filed with the Court yet.  It's not on the docket.  It's

2  being presented to Your Honor.

3          THE COURT:  Well, are you going to file it?

4          MR. LLUHLIER:  Sure.  We certainly can.

5          THE COURT:  I think you should.

6          MR. LLUHLIER:  Okay.

7          THE COURT:  Do you need it back?

8          MR. BENEDICT:  Yeah, that blackline you would need to

9  black out the purchase price for the note because it -- that's

10 the redacted item and that is in the blackline.

11         THE COURT:  I have that, but they handed up the

12 unredacted copy which will be filed under seal.

13         MR. BENEDICT:  Good.

14         THE COURT:  In accordance with our procedures then.

15         MS. JONES:  (Attorney away from mike)

16         THE COURT:  You may hand it up.  And I'll enter the

17 order approving the settlement agreement as modified on the

18 record.  And I'll look for the form of order on the -- sealing

19 the complete settlement agreement.

20         MS. JONES:  Your Honor, we'll submit that as soon as we

21 get it --

22         MR. SPRAYREGEN:  Your Honor, that gets us back to

23 agenda item 19, the plain copy.

24         MR. LAPOWSKY:  Your Honor, may I be excused?

25         THE COURT:  You may.

44

1          MR. LAPOWSKY: Thank you.

2          MR. SPRAYREGEN: Then we've got -- for clarity that

3 would be the only remaining item on the agenda other than the

4 Sanctity agreement approval which is fairly long with the

5 confirmation. Your Honor -- I'm going through the resolutions of

6 objections. They're all contained in the proposed amendments to

7 the plan and confirmation order and if we get that far, we -- I

8 can go through. And we passed them out to everybody here before

9 the hearing.

10         With the exception of two stipulations I mentioned, one

11 with Jackson and one with CHEP, and I have those if the Court

12 wants them or we can wait till later. I didn't know if you --

13         THE COURT: Well, let's do it now.

14         MR. SPRAYREGEN: Okay. Let me -- we're not asking for

15 them to be signed because they don't have to be signed in

16 connection with the confirmation.

17         THE COURT: All right.

18         MR. SPRAYREGEN: The other small housekeeping matter,

19 Your Honor, is we did have a number of witnesses that were here

20 solely for the prospect that they would need to testify in

21 connection with substantive consolidation matters. Due to the

22 amount of objection there in the admission in evidence of their

23 affidavits, we don't see the necessity of that, but before we

24 release them, some of them have various places to go, I just

25 wanted to confirm that it would be alright for them to be

45

1  released.

2          THE COURT:  Anybody object?  All right.  Since your

3  affidavit's been admitted into the record, they may be released.

4          MR. SPRAYREGEN:  Your Honor, with that, we're prepared

5  to get into addressing the Berry objection.  And in mean, Mr.

6  Liebeler is going to handle that.  He has been the Kirkland Ellis

7  lawyer handling that process for quite some time.

8          I would note though preliminarily and he'll handle the

9  witnesses and the factual presentation and most of the argument,

10  but to the extent of some of the pure bankruptcy arguments, I

11  would step up.  So I wanted to say that in advance.  And I

12  thought we ought to start and it seems to me that before we get

13  into all of the evidentiary presentation, if we just look at the

14  plan confirmation objection, it really is based on --

15          THE COURT:  Well, let's save argument.

16          MR. SPRAYREGEN:  Okay.  We'll start with the evidence.

17          THE COURT:  Let me hear the evidence.  Somebody want to

18  give Mr. Hogan a space at the table.

19          MR. SPRAYREGEN:  Your Honor, I mentioned Mr. Liebeler

20  was going to handle the Berry specific items.  The -- Mr. Stenger

21  and Mr. Scott will be presented by Mr. Paris and then Mr. Folse

22  will be presented by Ms. Huber.  And then we'll move on to the

23  Berry specific items.

24          MR. PARIS:  Good morning, Your Honor.  Andrew Paris for

25  the debtors and Kirkland & Ellis.  If you just give me a moment,

46

1  I'll set the courtroom up for the testimony.

2             (Pause)

3        MR. SPRAYREGEN:  Your Honor, also just to clarify as a

4  reminder, while we have these witnesses to be presented to be

5  presented in connection with the Berry objection, their testimony

6  obviously goes to support plan confirmation in general.  We had

7  submitted affidavits of theirs, but Mr. -- and those were -- I

8  went through on the exhibit list, but --

9        THE COURT:  They've been admitted, yeah.

10       MR. SPRAYREGEN:  No, no, no, those weren't admitted

11 because Mr. Hogan asked for live testimony with respect to these

12 three witnesses.  So these are the ones they -- that I asked not

13 -- that I didn't ask to be admitted right now.

14       THE COURT:  I understand that.  The only ones that

15 you're talking about, that I just released, have been admitted.

16       MR. SPRAYREGEN:  Those have been admitted.

17       THE COURT:  All right.

18       MR. HOGAN:  Your Honor, I don't want to slow things

19 down.  As far as the Exhibits 1-9, Your Honor, I don't have a

20 problem with having those admitted, Your Honor.  Those are Mr.

21 Stenger --

22       THE COURT:  And Mr. Scott?

23       MR. SPRAYREGEN:  They are here, they're ready to

24 testify.  If Mr. Hogan is reserving cross-examination right, I'm

25 not sure if he is, if he is, well, that would be helpful to

Stenger - Direct/Paris                              47

1  present them for that.  If he's not, we could just have the

2  affidavits admitted.

3          MR. HOGAN:  I would like to cross them, Your Honor, so

4  however counsel would like to proceed.

5          THE COURT:  All right.  You may proceed as you wish.

6          MR. SPRAYREGEN:  Thank you.

7          MR. PARIS:  Your Honor, we call Mr. Ted Stenger.

8          THE COURT:  Good morning.

9          THE CLERK:  Place your hand on the Bible.  Please state

10  your full name and spell your last name for the Court.

11          THE WITNESS:  Edward Ted Stenger, S-T-E-N-G-E-R.

12          EDWARD TED STENGER, DEBTOR'S WITNESS, SWORN

13                      DIRECT EXAMINATION

14  BY MR. PARIS:

15  Q   Mr. Stenger, you've testified a number of times in this

16  Court, so just very briefly, can you summarize your position and

17  your role on this bankruptcy.

18  A   Yes.  I'm employed by Alex Partner Services.  My firm has

19  been retained to work for Fleming.  I am working a full-time

20  basis for approximately the last year as the chief restructuring

21  officer of the Fleming companies.

22  Q   What was your role in the drafting of the plan of the

23  organization, the disclosure statement and the exhibits thereto?

24  A   The personnel from the Fleming companies as well as from

25  Alex Partner Services that were involved in preparing that

1  generally reported up through me. So, I was intimately involved

2  in the development both initially and in the final drafts of

3  those documents.

4  Q    Did you have any role in the exhibits to the disclosure

5  statement?

6  A    Yes. The exhibits specifically 3 -- Exhibits 3 and 4 were

7  prepared by the staff of Fleming as augmented by temporary

8  employees from Alex Partners. That process and those individuals

9  reported directly to me.

10 Q    And, sir, I'd like to direct your attention to this board

11 over here on the right that we have marked as Exhibit 189.

12        MR. PARIS: And Your Honor, if I may approach, we have

13 copies for you.

14        THE COURT: You may. And I assume for Mr. Hogan and

15 anybody else who may be interested.

16        MR. PARIS: Yes, we do.

17 A    Can I get one? Thank you.

18 Q    Mr. Stenger, what does Exhibit 189 show?

19 A    Exhibit 189 is the summary that was prepared based on

20 information that's in Exhibit 3 of the disclosure statement with

21 some adjustments that were put in that are included in Mr.

22 Folse's declaration.

23 Q    What are the three entities that are shown on that board?

24 A    The three entities are the three entities that come -- are

25 included in -- come out of our plan of reorganization. And that

1 would be Core-Mark Newco which is the reorganized convenience

2 business; the post-confirmation trust; and the reclamation

3 creditors trust.

4 Q    And of these three, which will you be discussing today in

5 your testimony?

6 A    I'll be discussing Core-Mark Newco.

7 Q    Okay.  Mr. Stenger, what businesses will go into Core-Mark

8 Newco after confirmation?

9 A    All of the business that was formerly referred to as the

10 Fleming Convenience Store business will be included in Core-Mark

11 Newco.

12 Q    And have you and your staff done an analysis of Core-Mark

13 Newco's assets and liabilities?

14 A    Yes, we have.

15 Q    And based on that analysis, what is the estimated value of

16 Core-Mark's assets as of July 31st, 2004?

17 A    We're estimating that the assets would have a book value of

18 about $468 million which is the last number under the total on

19 the left-hand side here for Core-Mark Newco.

20 Q    And what would be the value of Core-Mark's liabilities as of

21 the same date?

22 A    The liabilities are expected have a book value of about $320

23 million.

24 Q    At inception, what is the estimated value of Core-Mark

25 Newco's shareholder equity?

1 A    It would be about 140 million, basically the subtraction of

2 the liabilities from the assets.

3 Q    And based on your projections as of July 31st, 2004, how are

4 the current assets compared to the current liabilities?

5 A    Current assets would be over twice the level of current

6 liabilities.

7 Q    So, sir, how would you characterize Core-Mark's financial

8 strength at inception?

9 A    I think it will be very strong.  It's coming out with a

10 nicely capitalized balance sheet with lots of working capital

11 available to it.  And a Exit facility that provides for adequate

12 liquidating both at closing and going forward.

13 Q    Have you also projected the level of Core-Mark's assets and

14 liabilities on a going forward basis?

15 A    Yes.  We've made projections to the end of calendar year

16 2008.

17 Q    I'd like to direct your attention to the binder that's in

18 front of you.  Within that binder at Tab 3 should be Exhibit 3.

19            THE COURT:  What binder are we talking about?

20            MR. PARIS:  This binder which I -- may I approach?

21            THE COURT:  You may.

22 Q    Sir, do you recognize Exhibit 3?

23            THE COURT:  For the record, can -- has this been marked

24 as a debtor's exhibit?

25            MR. PARIS:  Yes.  This is Debtor's Exhibit 3.