# EXHIBIT C

LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

**ORIGINAL**

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUN 16 2004

at 4 o'clock and 0? min 2 M
WALTER A.Y.H. CHINN, CLERK

Attorney for Plaintiff
WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | SECOND AMENDED VERIFIED |
| vs. | ) | COMPLAINT; EXHIBIT "A"; |
| | ) | DEMAND FOR JURY TRIAL; AND |
| HAWAIIAN EXPRESS SERVICE, | ) | SUMMONS |
| INC., a California corporation; H.E.S. | ) | |
| TRANSPORTATION SERVICES, | ) | |
| INC., a California corporation; | ) | |
| CALIFORNIA PACIFIC | ) | |
| CONSOLIDATORS, INC., a | ) | |
| California corporation; JEFFREY P. | ) | |
| GRAHAM and PETER SCHAUL, | ) | |
| California citizens; MARK DILLON | ) | |
| and TERESA NOA, BRIAN | ) | |
| CHRISTENSEN, Hawaii citizens; | ) | |
| FLEMING COMPANIES, INC., an | ) | |
| Oklahoma corporation; C & S | ) | |
| LOGISTICS OF HAWAII, LLC, a | ) | |
| Delaware LLC; C & S WHOLESALE | ) | |
| GROCERS, INC., a Vermont | ) | |
| corporation; | ) | |

210

C & S ACQUISITIONS, LLC;                    )
FOODLAND SUPER MARKET,                      )
LIMITED, a Hawaii corporation;              )
HAWAII TRANSFER COMPANY,                    )
LIMITED, a Hawaii Corporation,              )
RICHARD COHEN, a New Hampshire)
citizen ES3, LLC, a Delaware Limited        )
Liability Company, MELVIN PONCE,            )
SONIA PURDY, JUSTIN                         )
FUKUMOTO, AFREDDA                           )
WAIOLAMA, JACQUELINE RIO,                   )
Hawaii citizens; JESSIE GONZALES,           )
LUIZ RODRIGUES, AL PEREZ and                )
PATRICK HIRAYAMA , California               )
citizens; GUIDANCE SOFTWARE,                )
LLC, a California, LLC; MICHAEL             )
GURZI, a California citizen; ALIX           )
PARTNERS, LLC, a Delaware LLC  ;            )
DOE INDIVIDUALS 2-350; DOE                  )
PARTNERSHIPS, CORPORATIONS                  )
and OTHER DOE ENTITIES 2-20,                )
                                            )
                Defendants.                 )
_____    )

## SECOND AMENDED VERIFIED COMPLAINT

COMES NOW, Plaintiff Wayne Berry ("Plaintiff"), by and through his

undersigned counsel, and hereby complains of the above-entitled Defendants and

alleges as follows:

2

## JURISDICTION AND VENUE

1.    This Court has jurisdiction under federal subject matter jurisdiction pursuant to the Federal Copyright Act 17 U.S.C. §§ 101, et seq. and 28 U.S.C. § 1338 (b) and The Sherman Act, 15 U.S.C. §§ 1 & 2, and the Clayton Act, 15 U.S. C. §§ 15 & 26.    In addition, this Court has federal subject matter jurisdiction pursuant to §1964(c) of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1964(c) and the state law claims are brought pursuant to pendent jurisdiction.

2.    Venue is proper in the District pursuant to 15 U.S.C. § 22, 28 U.S.C. §§ 1391and 1400 because the wrongs that are the subject of this complaint occurred in the State of Hawaii and were directed against one of its citizens.    As set forth herein, each of the Defendants named herein have had sufficient minimum contacts with the state of Hawaii to be amenable to service of process by a Hawaii court.    Venue is also proper in the District of Hawaii pursuant to §1965(a) of RICO, 18 U.S.C. §1965(a) because each of the defendants resides and/or is found to have an agent and/or transact their affairs in this district.    As to foreign defendants, in accordance with §1965(b) of RICO, the ends of justice require that all defendants be brought before this Court.

3

## THE PARTIES

3.    Defendant Hawaiian Express Service, Inc. ("HEX") is a corporation, formed under the laws of the State of California, with its principal place of business in the State of California.  HEX also maintains a place of business in the State of Hawaii and transacts business in the State of Hawaii.  HEX, HEST and CALPAC, through the unauthorized use of Plaintiff's intellectual property ship a significant portion of all food stuffs sold to consumers in the State of Hawaii. HEX may be found in the State and maintain offices and agent in the State of Hawaii and conducts sufficient business in the State of Hawaii that it has availed itself of the benefits of the State of Hawaii and has more than sufficient minimum contact with Hawaii to make it amenable to service in the State of Hawaii because it is found in the State.

4.    Defendant H.E.S. Transportation Services, Inc. ("HEST") is a corporation, formed under the laws of the State of California, with its principal place of business in the State of California.  HEST transacts business in the State of Hawaii directly and through HEX and other entities.   HEX,  HEST and CALPAC, through the unauthorized use of Plaintiff's intellectual property, ships a significant portion of all food-stuffs sold to consumers in the State of Hawaii. HEST and its agents and bailees may be found in the State of Hawaii and maintain

offices in the State of Hawaii and conducts sufficient business in the State of

Hawaii that it has availed itself of the benefits of the State of Hawaii and has more

than the sufficient minimum contact with Hawaii make it amenable to service in

the State of Hawaii. By intentionally committing criminal and civil wrongs

against a citizen of Hawaii HEST has had sufficient minimum contacts with the

State of Hawaii to confer venue in this District.

5.    Defendant California Pacific Consolidators ("CALPAC") is a

California corporation doing business in the state of Hawaii. CALPAC is a large

supplier of refrigerated food products to the state of Hawaii and sells to both

civilian and military customers. HEX, HEST and CALPAC, through the

unauthorized use of Plaintiff's intellectual property, ships a significant portion of

all food-stuffs sold to consumers in the State of Hawaii. CALPAC and its agents

and bailees may be found in the State of Hawaii and maintain offices in the State

of Hawaii and conducts sufficient business in the State of Hawaii that it has

availed itself of the benefits of the State of Hawaii and has more than the sufficient

minimum contact with Hawaii make it amenable to service in the State of Hawaii.

By intentionally committing criminal and civil wrongs against a citizen of Hawaii

HEST has had sufficient minimum contacts with the State of Hawaii to confer

venue in this District.

6.     Defendant C & S Logistics of Hawaii, LLC ("C & S Logistics") is a

Delaware limited liability company registered to do business in the state of

Hawaii.   C & S Logistics is an entity formed by the principals of C & S

Wholesale Grocers, Inc., for the purpose of operating a freight logistics business

on behalf of other defendants, including, but not limited to, C & S Wholesale

Grocers, Inc., C & S Acquisitions, LLC and Foodland Super Market, Limited.  C

& S Logistics has stepped into the shoes of Fleming Logistics an unincorporated

association comprised of persons affiliated with Fleming Companies, Inc., and is

operating the Berry Freight Control System in full knowledge that such operation

constitutes willful copyright infringement.   Through the unauthorized use of

Plaintiff's intellectual property, C & S Logistics presently ships a significant

portion of all food-stuffs sold to consumers in the State of Hawaii.   C & S

Logistics maintains an agent for service in the state of Hawaii and its  agents and

bailees may be found in the State of Hawaii and conducts sufficient business in the

State of Hawaii that it has availed itself of the benefits of the State of Hawaii and

has more than the sufficient  minimum contact with Hawaii make it amenable to

service in the State of Hawaii.  By intentionally committing criminal and civil

wrongs against a citizen of Hawaii C & S Logistics has had sufficient minimum

contacts with the State of Hawaii to confer venue in this District.

6

7.     Defendant C & S Wholesale Grocers, Inc.("C & S Wholesale") is a

Vermont corporation doing business in the state of Hawaii.   C & S through its

agent C & S Logistics is selling groceries and operating a freight logistics business

on behalf of other defendants, including, but not limited to,  C & S Acquisitions,

LLC and Foodland Super Market, Limited and the principals of these companies.

C & S Wholesale  has stepped into the shoes of Fleming Companies, Inc. and is

operating the Berry Freight Control System in full knowledge that such operation

constitutes willful copyright infringement.   Through the unauthorized use of

Plaintiff's intellectual property, C & S Wholesale and its agents presently ships a

significant portion of all food-stuffs sold to consumers in the State of Hawaii.   C

& S Wholesale maintains no agent for service in the state of Hawaii but its agents

and bailees may be found in the State of Hawaii and conducts sufficient business

in the State of Hawaii that it has availed itself of the benefits of the State of

Hawaii and has more than the sufficient  minimum contact with Hawaii make it

amenable to service in the State of Hawaii.  By intentionally committing criminal

and civil wrongs against a citizen of Hawaii, C & S Wholesale has had sufficient

minimum contacts with the State of Hawaii to confer venue in this District.

8.     Defendant C & S Acquisition, LLC ("C & S Acquisition") is a

Delaware limited liability company doing business in the state of Hawaii.   C & S

7

Acquisition, through its agent C & S Logistics is operating a freight logistics business on its own behalf and on behalf of other defendants, including, but not limited to, C & S Wholesale Grocers, Inc., and Foodland Super Market, Limited. C & S Acquisition and its affiliates have stepped into the shoes of Fleming Companies, Inc. and is operating the Berry Freight Control System in full knowledge that such operation constitutes willful copyright infringement. Through the unauthorized use of Plaintiff's intellectual property, C & S and its agents presently ships a significant portion of all food-stuffs sold to consumers in the State of Hawaii. C & S Acquisition maintains no agent for service in the state of Hawaii but its agents and bailees may be found in the State of Hawaii and conducts sufficient business in the State of Hawaii that it has availed itself of the benefits of the State of Hawaii and has more than the sufficient minimum contact with Hawaii make it amenable to service in the State of Hawaii. By intentionally committing criminal and civil wrongs against a citizen of Hawaii C & S Acquisition has had sufficient minimum contacts with the State of Hawaii to confer venue in this District.

9.      Hereinafter the party defendants C & S Logistics, C & S Wholesale and C & S Acquisition shall be together referred to as "C & S."

10.     Hawaii Transfer Company, Limited ("HTC"), is a Hawaii

8

corporation, doing business in the state of Hawaii and using the Berry Freight
Control System without any license and is a willful infringer.

11.    Foodland Super Markets, Limited ("Foodland") is a Hawaii
corporation doing business in the state of Hawaii as its largest retail grocery
distributor doing business in the Hawaii civilian retail grocery market.

12.    Defendant Fleming Companies, Inc. ("Fleming") is an Oklahoma
corporation and is presently the debtor in a pending Delaware bankruptcy case.
Fleming is registered to do business in the state of Hawaii and maintains an agent
for service.  Fleming is the sole full line wholesale grocery distributor in the state
of Hawaii and by the illegal use of the Berry Freight Control System and earned
more than $500 million in food sales annually.  Fleming as debtor in possession is
made a party to this suit solely to enjoin its illegal conduct all committed after the
filing of the voluntary Chapter 11 petition.   Plaintiff does not seek to execute
upon any money judgment against Fleming or to otherwise assert rights to
property of the Fleming Bankruptcy Estate without order of the Bankruptcy Court.

13.    Defendant Jeffrey P. Graham ("Graham") is a California Citizen and
upon information and belief is the president of HEX, HEST and CALPAC.
Graham has responsibility for causing and directing the infringing activities that
are the subject of this complaint and derives a direct financial benefit from the

9

infringement. Graham conducts sufficient business in the State of Hawaii that he may be found in the District of Hawaii and has purposely availed himself of the benefits of the State of Hawaii and has more than the sufficient minimum contact with Hawaii make him amenable to service in the State of Hawaii. By committing intentional wrongs against a citizen of Hawaii, Graham has sufficient minimum contacts with the State of Hawaii to confer venue in this District.

14.    Defendant Peter Schaul ("Schaul") is a California Citizen and upon information and belief is the general manager of HEX, HEST and CALPAC. Schaul has certain responsibility for causing and directing the infringing activities that are the subject of this complaint and derives a direct financial benefit from infringement. Schaul conducts sufficient business in the State of Hawaii and may be found in the State of Hawaii and he has purposely availed himself of the benefits of the State of Hawaii and has more than the sufficient minimum contact with Hawaii make him amenable to service in the State of Hawaii. By committing intentional wrongs against a citizen of Hawaii, Schaul has sufficient minimum contacts with the State of Hawaii to confer venue in this District.

15.    Defendants Mark Dillon ("Dillon") and Teresa Noa ("Noa") are citizens of the state of Hawaii and have both used and made unauthorized changes to Plaintiff's intellectual property within the state of Hawaii and may be found in

10

the State of Hawaii.  Both Dillon and Noa had direct access to Plaintiff's software

as employees of Atlantic Pacific International, Inc, and later as Fleming

Companies, Inc.  Both Dillon and Noa have possession of the software including

its source code and have committed numerous acts of copyright infringement

regarding Plaintiff's intellectual property.   If not enjoined, Plaintiff is at real risk

that additional infringements will be committed by these individual defendants.

16.    Defendant Brian Christensen ("Christensen")  is a citizen of the state

of Hawaii and Fleming's Hawaii division president and responsible for the

direction of the July 7, 2003 infringement and the continued use of the Berry

Freight Control System after April 1, 2003.

17.    Upon information and belief, Defendant ES3, LLC ("ES3") is a

limited liability company with its principal place of business in the State of New

Hampshire and does business throughout the United States including Hawaii.  ES3

was identified previously as Doe Defendant Corporation Number 1.  ES3 purports

to develop software that directly competes with Mr. Berry.  ES3 operates the same

web server as defendant C&S Wholesale Grocers, Inc. and upon information and

belief shares common information technology personnel and infrastructure.

Because it can access C&S Wholesale Grocers, Inc.'s information systems and is a

developer of freight control software, its access to Mr. Berry's software that has

11

been illegal copied by agents of C&S, puts Mr. Berry at risk of imminent irreparable harm. In addition, any similar software developed by ES3 or modified since the access began would constitute an infringement of Plaintiff's original work. Further, ES3 combines horizontal competitors in the food distribution business and facilitates anti-competitive behavior among competing actors.

18.    Defendant Richard Cohen, is a New Hampshire citizen and the principal of ES3, C&S Wholesale Grocers, Inc., C&S Logistics of Hawaii, LLC and C&S Acquisitions, LLC (hereinafter "C&S"). Upon information and belief Mr. Cohen has traveled to the State of Hawaii to conduct business on behalf of C&S through the various entities he controls. Based on the admissions in the Guidance Report he has asserted ownership over Plaintiff's intellectual property without lawful right. Mr. Cohen had been given notice of the alleged infringement and, upon information and belief, has taken no actions to cause the infringing conduct of persons under his authority to cease. Mr. Cohen derives significant sums of money from the operation of Plaintiff's intellectual property, has the ability to control direct infringement but has chose to permit the infringement to continue for the purpose of his financial gain. Mr. Cohen conducts sufficient business in the State of Hawaii that he may be found in the District of Hawaii and has purposely availed himself of the benefits of the State of Hawaii and has more

12

than the sufficient minimum contact with Hawaii make him amenable to service in the State of Hawaii. By committing intentional wrongs against a citizen of Hawaii, Mr. Cohen has sufficient minimum contacts with the State of Hawaii to confer venue in this District.

19.    Defendants Melvin Ponce , Sonia Purdy,  Justin Fukumoto, Alfredda Waiolama, Jacqueline Rio (the "Fleming-Logistics Employees") are all Hawaii citizens and have during the relevant times operated the Berry Freight Control System as direct infringers.  Each of these individual defendants continues to derive personal financial gain from the operation of Mr. Berry's Freight Control System under Mr. Christensen's direction.  Because these individuals have had direct access to copies of Mr. Berry's intellectual property, they remain a threat to Plaintiff and his rights as a copyright owner.  Each of these defendants conducts sufficient business in the State of Hawaii that it they availed themselves of the benefits of the State of Hawaii and have more than the sufficient minimum contact with Hawaii make it amenable to service in the State of Hawaii.  By committing civil wrongs against a citizen of Hawaii each Graham Agent has had sufficient minimum contacts with the State of Hawaii to confer venue in this District.

20.    Jessie Gonzales, Luiz Rodrigues, Al Perez and Patrick Hirayama (hereinafter the "Graham Agents") are all California citizens and employees of

HEXT/HEST/and/or CalPac. Each of these defendants have used Mr. Berry's Freight control system and the Web Pages without a license and are therefore infringers.

21. Defendants Guidance Software, Inc., Michael Gurzi, Alix Partners and non-defendant RICO Person Michael Scott are named as participants in certain criminal conduct directed against Mr. Berry and are principally named in the RICO claim that Plaintiff seeks to add by this amendment. Upon information and belief, Guidance Software, Inc. is a California corporation and directed its agent Michael Gurzi, also a citizen of California to travel to Hawaii, commit multiple counts of copyright infringement, then file a false declaration in the Delaware Bankruptcy court on or about August 1, 2003, in Adv. Pro. No. 03-54809. Further, these knowing violations of federal law were authorized by Michael Scott, believed to be a Texas citizen to further the criminal infringement of Mr. Berry's software. Alix Partners, LLC is a company doing business in the United States of America and has principal places of business in several states and is the party directly responsible for the infringement and conspiracy to infringe caused by Michael Scott believe to be both agent and principal of Alix Partners, LLC and his acts are imputed to Alix Partners, LLC through vicarious liability.

22. Defendants Doe Individuals 2-350 and Doe Partnerships,

14

Corporations and Other Entities 2-20 are persons who may be liable to plaintiff for

that acts and omissions complained of herein, but whose names, identities and

capacities are presently unknown to plaintiff and his attorney.  These additional

Doe defendants will be identified upon their discovery by plaintiff.   Each user,

and entity that derives a benefit from the infringement including the customers of

each of the Defendants through the illegal use of the Berry Freight Control

System is a separate infringer and when their identities are made know to Plaintiff

will be made a party and serve as a separate basis for statutory damages should

such damages be elected by plaintiff.    Each of these Doe Defendants are

knowingly engaged in intentional wrongful acts of infringement directed against a

citizen of the State of Hawaii and it would be just that they be made a defendant in

this proceeding.

   23.    Plaintiff Wayne F. Berry (the "Plaintiff" and "Developer")  is an

individual national domiciliary of the United States and is a resident and citizen of

the State of Hawaii and, as the software developer victim of Fleming, C&S',

Foodland,  HEX, Graham, Schaul HEST , CALPAC, Guidance, Alix Partners and

others including the Doe Defendants' intentional, criminal and willful

infringement has standing to bring the instant action.  All software that is the

subject of this Second Amended Verified Complaint was authored in the United

15

States of America.

24.    Upon information and belief, the majority of all acts conferring

venue relevant to this proceeding occurred in the State of Hawaii.  Each of the

defendants are actively engaged in business activities in the State of Hawaii and/or

have derived a direct financial benefit from the infringement that is the subject of

this Complaint and may be found in the State of Hawaii.

## GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

25.    On or about 1993, Plaintiff created an original work of authorship

which was then fixed as a tangible medium of expression. (the "Freight Control

System").

26.    This original work was first published in 1995.

27.    The work was an original work and contained substantial amounts of

material created by Plaintiff's own skill, labor and judgment.

28.    All of the subject software work is copyrightable under the laws of

the United States of America and was authored in the United States of America.

29.    On or about October 1999, Plaintiff complied with the statutory

formalities for registering his copyright in "Freight Control System" by fully

complying with Federal laws and regulations by depositing with the Copyright

Office, two copies of the best version of the Freight Control System source code,

16

filing the application and paying the required fees.

30.    Shortly thereafter, Plaintiff received a filed registration for Freight

Control System from the Copyright Office.   The date, class and registration

number certificate received from the Registrar of Copyrights is as follows:

"Freight Control System" dated October 19, 1999, Copyright  Registration

Number TX 5-079-445.   A true and correct copy of the Filed Registration is

attached as Exhibit "A."

31.    All publications of the instant software have been with proper

statutory notice.

32.    Freight Control System is a program Plaintiff wrote in Microsoft

Access and Visual Basic using both the Visual Development Environment and

hand-coding.   Freight Control System is primarily a database designed to control

and monitor consolidation and containerization of freight.

33.    Freight Control System contains database tables, queries, screens and

macros that handle Accounts Receivable, Accounts Payable, Job Costing, Logistic

Scheduling and Real-Time Shipment Tracking. The principle unique feature of the

database is the ability for a user of this system to control a large number of

Purchase Orders and annotate shipping information to the records for billing and

tracking purposes along with planning and scheduling efficiencies that translate

17

directly to lower freight costs. The user can then build containers, which contain these individual Purchase Orders. The user can enter costs for both individual Purchase Orders and for entire containers. The system will allocate container costs to the individual Purchase Orders.   Finally, the "Bill To" party can be invoiced for the shipment and a profitability derived from the billed amount less the allocated costs. By operating the Berry System, independent from Fleming's "Foods" billing system, Fleming is able to conceal the true cost of freight delivery from its end user customers including, but not limited to, the United States of America.

34.    During the period after 1997, both Dillon and Noa had access to Plaintiff's software.   Beginning in November 1999, both Dillon and Noa had direct access to Plaintiff's source code for his Freight Control System and cannot make a replacement program to operate in the freight logistics software market without infringing.

35.    Starting no later than October 1999, HEX began to operate the Berry Freight Control System under the claim that it was authorized under a license granted by Plaintiff to Fleming Companies, Inc. ("Fleming").

36.    Fleming is an adjudicated willful infringer based on the jury verdict finding that Fleming has created unlicensed derivative copies of the Freight Control System.

18

37.    Dillon and Noa and certain Doe Defendants, under the direction of Fleming's agents defendant Christensen, and non-defendants Lex Smith, Michael Scott and Damian Capozzola, starting on or about May 9, 2003 and concluding on or about July 7, 2003, together created an illegal copy and separate derivative copy of the Berry Freight Control System knowing that they were committing willful copyright infringement.  The copy was taken from Fleming's location by Guidance Software, Inc., Fleming's agent.  Under agreement with Fleming, Guidance Software, Inc. agreed to analyze the Berry software in violation of Plaintiff's rights as a developer.   The continued possession of Plaintiff's copyrighted work is a threat to Plaintiff's property and grounds for an immediate injunction.

38.    Foodland has utilized Plaintiff's software to facilitate its direct store shipments.   Foodland has notice of the claim of infringement being committed by its agents, including Fleming, HEX and HTC but continues to derive financial gain from this activity with full knowledge that its agents are engaged in infringement.

39.    Upon information and belief, HEX,  HEST and/or CALPAC have obtained an illegal pirated copy of the Freight Control System and/or have been using a illegal unlicensed derivative of the Freight Control System.   Shane Kelley, HEX, HEST and/or CALPAC's computer consultant admitted in a telephone

19

conversation with Wayne Berry that he had "seen his code."  Shane Kelley informed Mr. Berry that he would investigate the infringement and call him back with the results unless his investigation showed serious infringement.  Mr. Kelley never called back.

40.    HEST, HEX and CALPAC have had access to Mr. Berry's original work and have used an illegal derivative that is used to generate financial gain for all defendants.

41.    Upon information and belief HEST, HEX and CALPAC continue to use the Freight Control System and/or its derivative software to make profits derived from the illegal use of a copyrighted work in violation of the Copyright Act or, by possessing a copy, threaten the future use of such illegal software.

42.    Plaintiff has never authorized this use and has informed defendants and their attorney that the use of the software constitutes infringement.

43.    On January 4, 2002, Defendant HEX answered Plaintiff Wayne Berry's First Request for Answers to Interrogatories, in Wayne Berry v. Fleming Companies, Inc., Civ. No. CV01-00446 SPK LEK. (the "Interrogatory Responses").

44.    In the Interrogatory Responses, HEX admitted, under oath, that, at the direction of Fleming Companies, Inc., HEST uses the Berry Freight Control System software to input information required by Fleming to comply with an oral contract

between Fleming and HEST.

45.    In a deposition, Fleming's Hawaii division president Ralph Stussi testified under oath that Fleming's contract was with HEX and had never heard of HEST.

46.    HEX, HEST, CALPAC, Shaul, Graham C & S, Fleming, Noa, Dillon, HTC , Christensen and Foodland have, and through future infringement will, all continue to derive revenue from the use of the Freight Control System.

47.    None of the defendants herein are licensed to use the Berry Freight Control System or any derivative.

48.    Neither HEX, HEST, CALPAC, Shaul and Graham nor any of their agents and/or bailees have any right to use the Freight Control System.

49.    Plaintiff has not given HEX, HEST, CALPAC Shaul, Graham, Fleming, C&S, Dillon, Foodland, Christensen and/or Noa permission to use his software and they are guilty of willful infringement.

50.    By letter dated April 9, 2003, Plaintiff demanded that HEX and HEST provide Plaintiff with satisfactory proof that they have stopped using his Freight Control System software.

51.    On May 1, 2003, defendants' attorney, Karen  Fine, Esq. wrote in response to the letter stating that all access to the Fleming system had been

terminated.

52.    Plaintiff alleges that C&S, Dillon, Guidance and the HEX affiliated Defendants have obtained a pirated copy of his software.

53.    Fleming, HEX and HEST's principal, has admitted that it has granted HEX permission to use Plaintiff's software.   Fleming has been found a willful infringer and had no lawful right to grant such a license.

54.    HEX has admitted that HEST is using Plaintiff's software.

55.    This software contains trade secrets and the use by Defendants constitute infringement and Plaintiff continues to suffer irreparable harm.

56.    On March 6,  2003, a jury found that Mark Dillon's unauthorized changes to the Berry Freight Control System constituted willful infringement and awarded Mr. Berry $98,500 in damages.  That finding terminated any and all licenses to the Berry Freight Control System.

57.    After   April   1,   2003,   Fleming,   C   &   S,   Fleming,   HTC, HEX/HEST/CALPAC, Mark Dillon, Teresa Noa, HTC, and Foodland have used the illegal derivative of Mr. Berry's software without any right.   Christensen has authorized that use.

58.    On or about July 7, 2003, despite being aware that this conduct clearly constitutes willful infringement, Mark Dillon, under Christensen's authority and with

full access to Mr. Berry's source code, created another illegal unauthorized derivative of the Freight Control System for his own personal financial gain.

59.    Upon information and belief, both Noa and Dillon maintain copies of the Berry software on their home computers to facilitate their infringement.

60.    This act of infringement was directed by certain of Fleming's agents.

61.    In addition to this infringement, these Fleming agents directed a third party developer, Guidance Software, without any authority form Mr. Berry, to access Plaintiff's software, make an unauthorized copy of the system and transport it to California for the purpose of analyzing the software to facilitate further acts of criminal infringement.

62.    The July 7, 2003, derivative contained elements of Mr. Berry's software and performed the same functions as the Berry copyrighted software. Due to the knowledge obtained by Mr. Dillon and Ms. Noa of Mr. Berry's Freight Control System, and its functional similarity this constitutes an infringing derivative of the Freight Control System.

63.    From and after October 1, 1999 to at least  May 9, 2003, the non bankrupt Defendants have infringed upon Plaintiff's copyright as follows:

a.    Using software by remote access that places a copy of the Plaintiff's software on the computer of no less than ten users;

23

b.      Using the software after receiving notice of the infringement and demand to cease and desist, and

c.      Providing illegal copies to third-parties including employees, agents, software developers and technicians who are not yet identified to Plaintiff by who are all infringers and who will be named later.

d.      Using third-party application sharing technology to permit unlicenced users to use the Plaintiff's software in violation of his copyrights.

e.      Deriving profits from the illegal use of the software.

64.    From April 1, 2003, Fleming Companies, Inc. as debtor in possession, has committed numerous acts of Copyright infringement as set forth herein. Plaintiff seeks to liquidate his claim against Fleming in this proceeding but does not seek to execute any judgement, other than a permanent injunction against the bankrupt and is agents and affiliates.

65.    Defendants' activities constitute infringement of Plaintiff's copyright and Defendants have continued such conduct notwithstanding such notice.

66.    As to Defendants Christensen, Dillon and Noa, the continued use of the Berry Freight Control System after April 1, 2003, and the creation of the July 7, 2003 Derivative and the copy given to Guidance Software constitutes a violation of the owners exclusive rights and is willful infringement.

24

67.    As to the C & S Defendants, these defendants have used the Berry Freight Control System to operate an illegal freight logistics enterprise in violation of the copyright laws of the United States. Mr. Berry is entitled to all profits derived from this infringing use.

68.    The C & S Defendants, through certain agreements with Fleming, have entered into an agreement with Fleming and certain of the other defendants to operate the Berry Freight Control System, and the illegal derivatives. The C & S Defendants have committed certain overt acts in furtherance of the illegal agreement with Fleming including establishing C & S Logistics for the purpose of continuing the Fleming infringement after the completion of the sale of Fleming's assets to C & S Acquisition, LLC or its nominee.

69.    Each time C & S transfers wholesale groceries through the Berry Freight Control System, it commits another act of copyright infringement. Each C & S, HEX/HEST/CALPAC, Foodland and/or HTC employee that in any manner utilizes the Berry Freight Control System or the reports generated by the system, is a separate infringer and is liable for the full damages for each infringement.

70.    The knowledge of the infringement is imputed to the individual defendants by their principals. Should Plaintiff elect statutory damages, each such employee is liable for the full $150,000 of statutory damages, or such other amount

as the jury may determine is just. C & S, HEX/HEST/CALPAC and/or HTC are liable as a vicarious infringers for the total sum of all employee infringements. Plaintiff is informed and believes that over 1,000 C & S, HEX/HEST/CALPAC and/or HTC employees are direct infringers.

## COUNT I
## (DIRECT INFRINGEMENT)

71.    For each of the defendants and the Doe Defendants yet to be named, Plaintiff is entitled to actual damages and his lost profits plus any profits made by the infringers from the use of the Freight Control System software by any of the defendants as a direct infringer. These amounts will be determined at time of trial. Plaintiff reserves his right to claim, at a later date, the right to statutory damages based on each defendants' separate liability for infringement.

72.    Each time the Berry Freight Control System was used by the infringers, a copy of the software was created and this constitutes illegal copying.

73.    Fleming, C&S Logistics of Hawaii, LLC, C&S Acquisitions, LLC, C&S Wholesale Grocers, Inc., HEX, HEST, CALPAC, Guidance, Gurzi, each employee and/or agent of defendants named herein are a separate infringer and Plaintiff is entitled to full statutory damages, upon election, for the willful infringement of each of these individual users up to $150,000 for each user for each work infringed.

26

## COUNT II
## (CONTRIBUTORY AND VICARIOUS INFRINGEMENT )

74.    For Fleming, C&S Logistics of Hawaii, LLC, C&S Acquisitions, LLC, C&S Wholesale Grocers, Inc., HEX, HEST, CALPAC, Schaul, Graham, Guidance, and Alix Partners, LLC, each of the defendants and the Doe Defendants yet to be named, Plaintiff claims the right to damages based on theories of contributory and/or vicarious infringement.

75.    As to vicarious liability, each defendant that has the ability to control the infringing use and is liable jointly and severally with the direct infringer for all damages resulting from the direct infringement.

76.    Defendants Fleming, C&S Logistics of Hawaii, LLC, C&S Acquisitions, LLC, C&S Wholesale Grocers, Inc., HEX, HEST, CALPAC, Schaul, Graham, Guidance, and Alix Partners, LLC, are vicarious and contributory infringers. Other officers, shareholders directors and principals are also liable as vicarious and contributory infringers these Doe Defendants shall be identified as they are discovered.

77.    As to contributory infringement each defendant who knowingly contributes to another's infringement is liable for the infringement based on the direct infringement by others and or Doe agents and employees as end-users. Defendants knew or should have known of the infringement and directly and materially

27

contributed to the direct infringement.

78.    As to vicarious infringement each defendant had the right and ability to supervise infringing activity and also has a direct financial interest in such activities.

79.    As to each of these defendants, Plaintiff reserves, but does not yet elect, his right to statutory damages based on the infringement of each employee, customer and other user of the Freight Control System regarding defendants each as a separate infringer and a separate basis for joint statutory damages should Plaintiff elect statutory damages.

**COUNT III**
**(CONSPIRACY TO INFRINGE)**

80.    In or about early 2001, Foodland, through Roger Wall, Kam Wong and Edward Chun requested that Wayne Berry provide Foodland with a proposal to, as Mr. Chun stated, "stop the bleeding" regarding the admitted overcharges that were being passed on to the Hawaii consumer.

81.    In an attempt to market his software to Foodland and at Foodland's request, Mr. Berry produced a demonstration of how his computer software could provide Foodland with a means to monitor and quantify the overcharge and then facilitate the independent shipping of goods by Foodland using Fleming only as a warehouse and delivery service, for a modest fee. This would, as Mr. Chun stated, "stop the bleeding."

28

82.    Mr. Berry continued to work on the Foodland proposal into the summer of 2001, and met with Foodland's president Able Porter to discuss the proposal.

83.    Rather than license a legal copy of Mr. Berry's software, Foodland, chose to contact Fleming, disclose the Berry proposal and then enter into an agreement with Fleming for what Fleming claimed to be the free, albeit unlicensed, use of Mr. Berry's software.

84.    On July 11, 2001, Foodland began to receive direct deliveries to its stores through the Berry Freight Control System.   Despite knowing that it had no intention of paying Mr. Berry for his intellectual property that Foodland decided it could just as easily obtain for free, Foodland's management, including Roger Wall continued to induce lead Mr. Berry into thinking that it was still considering Mr. Berry's system when Foodland had already entered into the agreement with Fleming to infringe upon Mr. Berry's original work.

85.    All of the use by Fleming on behalf of Foodland and  by HEX, HEST, CALPAC, Foodland and HTC are overt acts by each of the defendants in regard to this conspiracy.

86.    To facilitate the actors financial gain in regard to the conspiracy to infringe, Mark Dillon and Teresa Noa have together created at least one hundred unauthorized derivative copies in furtherance of the conspiracy.   Though aware that

29

their acts constitute infringement, Dillon and Noa have agreed with C&S to continue to infringe and in return C&S agreed with Dillon and Noa to compensate them for the infringement. Upon information and belief this agreement was made before Dillon and Noa's employment by C&S.

87. Mr. Dillon, in an act of intentional willful infringement for financial gain, copied the structure and original work of Plaintiff's Access Database by using MS Query. In his deposition, Mr. Dillon testified that he had changed some of the names in the relevant database components to make it look different from Mr. Berry's program.

88. This creation of a new derivative is an act of infringement and done for the purpose of financial gain.

89. Upon information and belief, Fleming also offered Foodland certain unearned rebates in the form of enhanced "team score" and by convincing Foodland that even though it was paying more than market price for the commodities it was buying the Fleming monopoly made it impossible for any Foodland competitor to receive a more favorable price. Foodland began to cause shipments of its food by through the Foodland/Fleming Copyright Infringement Conspiracy.

90. On or about May 2003, Fleming terminated its workout firm Gleacher Partners, LLC and engaged the service of Alix Partners, LLC that had served the