same function for the Kmart bankruptcy.   Kmart is a knowing user of Mr. Berry's original works and Alix Partners, LLC sought to protect both of its clients, Kmart and Fleming by assisting in the criminal infringement of Mr. Berry's original works. Alix Partners, LLC knew or was willfully blind to the wrongful conduct.  The actions of Michael Scott are imputed to Alix Partners, LLC under the theory of vicarious liability.

91. The Declaration of Damian Capozzola filed in Delaware Bankruptcy Court on August 1, 2003, in ADV Proc. 03-54809 contained as Exhibit "R" a document signed on June 26, 2003 by Michael Scott,  authorizing the payment to Guidance to perform the unlawful copying of Mr. Berry's original work and to later file false declaration in the bankruptcy court that were filed in the Capozzola declaration on August 1, 2003.  The Declaration of Michael Gurzi that swore under penalty of perjury that he could verify that no Fleming employee had a copy of Mr. Berry's original work when Mark Dillon had told he might still have one.

92.    Alix Partners, LLC is liable for the acts of its principal and agent whose commission of these wrongs were to the benefit of his principal.

93.    Fleming, Foodland, HTC, HEX, HEST, CALPAC, Christensen, Dillon, Noa, Gurzi, Scott and C&S as co-conspirators are liable for all wrongs, including the wrongs of all Fleming subagents including the Fleming Employees and Graham

Agents and all damages for Fleming's infringement until the defendant withdraws from the conspiracy.

94.     Should Mr. Berry elect statutory damages, each defendant will be liable for no more than $150,000 per member of the conspiracy, for each work infringed times three under the Clayton Act.

95.     Fleming's liability is limited to the period from and after April 1, 2004 and plaintiff shall not seek to execute on any judgment without order of the Delaware Bankruptcy Court.

## COUNT IV
## (MISAPPROPRIATION OF TRADE SECRETS)

96.     Plaintiff restates the previous paragraphs that are incorporated by this reference.

97.     Fleming and C&S began to negotiate the sale of Fleming Wholesale operations to C&S sometime in the Spring of 2003.

98.     Upon information and belief, C&S learned that the Hawaii Fleming division had a monopoly over both the Civilian and the Military Wholesale grocery market.

99.     Further, due the efficiencies of Mr. Berry's Freight Control System and the use of practices such as product diversions, the large profits earned by the Fleming-Logistics Department became material inducement for the C&S to acquire

32

the Fleming Wholesale Business.

100.    To facilitate C&S ability to recreate the Fleming business model, C&S required the automation that was provide by the Berry Freight Control System and the trade secrets that were contained in the numerous other computer software programs developed by Mr. Berry and loaned, as an interim measure to Fleming while it was in the process of replacing these programs and the processes with ones to be supplied by Manugistics.

101.    In deposition testimony, Mark Dillon testified that certain Web Pages what were developed by Mr. Berry remained on the Fleming system and have been used by HEX/HEST/CALPAC.

102.    The Guidance Report contained a listing of certain files that evidence that no less than 30 of the other programs created by Mr. Berry remained on the Fleming server when it was sold to C&S.

103.    These programs were illegally transferred to C&S when its became the owner and operator of the Fleming-Logistics Department.

104.    This transfer was made by "improper means" including theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

105.    This transfer constitutes "misappropriation" because C&S' attorney Mr.

Ziman and Fleming's attorney Mr. Liebeler and others knew that Mr. Berry had claims regarding his software, and appeared in the Delaware Bankruptcy Court on August 4, 2003, and misrepresented to the Bankruptcy Court that Mr. Berry's software was "not on the list" while knowing that they were intending to transfer Mr. Berry's trade secrets. These attorneys were under a duty of condor to the Bankruptcy court that makes any misstatement or attempt to deceive a misrepresentation. The Bankruptcy Court has entered findings that Fleming's counsel has committed repeated misrepresentations in regard to their conduct in the Delaware proceedings.

106. C&S, Guidance, Scott and Gurzi knew or had reason to know that the Berry trade secrets were acquired by improper means.

107. C&S, Guidance, Scott and Gurzi knew that the disclosure or use of Mr. Berry's trade secrets of was without his express consent.

108. C&S, Guidance, Scott and Gurzi knew that Fleming had used improper means to acquire knowledge of the trade secret or, at the time of disclosure or use, C&S knew or had reason to know that the knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it or acquired it under circumstances giving rise to a duty to maintain its secrecy or limit its use; or derived from or through a person who owed a duty to maintain its secrecy or limit its use.

34

109.   Mr. Berry's methods, program devices, and techniques, as evidenced by the at least 30 additional programs, constitute Trade Secrets as defined by Chapter 482B of the Hawaii Revised Statutes and derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.  Mr. Berry has taken efforts that are reasonable under the circumstances to maintain the secrecy of his property.

110.   Pursuant to Hawaii Rev. Stat. Plaintiff, is entitled to damages against C&S, Guidance, Scott and Gurzi  and Fleming including both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.

111.   In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty for a misappropriator's unauthorized disclosure or use of a trade secret.

112.   C&S, Guidance, Scott and Gurzi , by participating in the fraud upon the Bankruptcy Court and evidenced by its hiring of Fleming's attorneys who had represented an adjudicated willful infringer, shows that its misappropriation was willful and malicious and therefore, Plaintiff shall seek an award of exemplary damages.

35

## COUNT V
## (VIOLATION OF THE SHERMAN ACT
## <u>AGAINST NON-DEBTOR DEFENDANTS</u>.)

113.  Plaintiff restates the preceding allegations that are incorporated by this reference.

114.  Starting in or about the Winter of 2000, defendant Foodland initiated contact with Plaintiff.  The stated purpose of the communication was to assess the amount of food overcharges that Foodland was paying Fleming and to "stop the bleeding."

115.  Plaintiff proposed a computer software system that would allow Foodland to cease to use Fleming as its sole source of wholesale supply and to begin to operate as a independent logistics entity to avoid the additional charges that Fleming, and the HEX related entities were passing on to Foodland.  These overcharges are estimated to be between 10 to 25 %.

116.  Foodland realized that Fleming's monopoly could permit the overcharges to be safely passed on the Hawaii consumers allowing Foodland to collect its percentage profit on a much higher total sales number figure.

117.  Foodland also owns Fleming's warehouse in Kapolei that allows Foodland to recover some of the overcharges through its lease rent.

118.  Recognizing that Fleming operates a monopoly in the market defined as

36

the Hawaii wholesale grocery market, encompassing all sales of groceries in the geographic territory of the state of Hawaii, Foodland agreed to continue to allow Fleming and the HEX entities to overcharge it, under the agreement that the Fleming monopoly including the HEX entities would not allow any Foodland competitor to receive a better price. By virtue of the "Team Score" facility in the Fleming/Foodland sales agreements, Foodland, and Fleming have agreed to a rebate scheme that would allow both parties to enjoy the benefits of the Fleming monopoly.

119.   To further enhance the Fleming monopoly, large mainland vendors have further caused Fleming to become the exclusive distributor of its products, thereby solidifying the Hawaii wholesale grocery monopoly.

120.   The Berry Freight Control System, is necessary to the monopoly that facilities the overcharges to all Fleming customers.  By creating false records that demonstrate that the military, Fleming's second largest customer, is being charged the same or less than Foodland, Fleming is able to continue its monopolistic activities, and succeed in effecting an approximate 25% overcharge of both the civilian and the military consumers in Hawaii.  In addition, the assertion of ownership over the July 7, 2003, Dillon Derivative is intended to further the Fleming monopoly and further deprive Mr. Berry of a market for his software.

121.   Additionally, the Berry Freight Control System is used to track

37

commercial bribery and illegal rebating between HTC, HEX/HEST/CALPAC Fleming and the Doe Vendors who utilized freight charges and subsidies to facilitate the maintenance of the Fleming monopoly further used to effect price fixing for civilian and military food commodities in Hawaii. Money is exchanged between a variety of actors ,some of which yet to be discovered, that together comprises a combination and/or conspiracy to restrain trade in regard to Mr. Berry's software market defined as the market for ocean freight software sales in the geographic area comprised by the state of Hawaii and Guam.

122.   Were these actors to pay and receive a license for the use of the software, that license would require payment based on volume of ocean containers moved through the system and would disclose the scope and extent of the Fleming monopoly.

123.   But for the conspiracy with Foodland, and the HEX defendants, Fleming would not require the illegal use of Mr. Berry's Freight Control System to continue to operate its Hawaii monopoly. By allowing the Fleming co-conspirator to use Mr. Berry's software without payment to Mr. Berry limits Mr. Berry's ability to develop and to provide his software to other competitors of Fleming thereby reducing competition in the civilian and military wholesale grocery market. This injury is traceable to the anti-competitive conduct complained of herein.

38

124.   All of the acts that are the subject of this complaint against Fleming or any of its agents, have been committed by Fleming after the filing of the Bankruptcy on April 1, 2003.

125.   All of these acts have been committed with the specific intent to maintain the Fleming Hawaii market wholesale grocery monopoly with the hope to sell the Hawaii division to a new monopolist that would continue the earlier illegal practices including the infringement of Mr. Berry's intellectual property rights.

126.   Alternatively, the conspiring defendants have attempted to create a monopoly and/or conspired to created a monopoly also in violation of the Sherman Act 18 U.S.C. § 2.  Further, the use of Fleming and now C&S by mainland vendors effects a price fix over the wholesale and retail price of food in Hawaii and violates the Sherman Act, 18 U.S.C. § 1.

127.   Plaintiff has been injured in his business and property by the agreement between C & S, Fleming and Foodland to sell the Hawaii division and continue to use illegal pirated versions of his software.

128.   This agreement constitutes a restraint of trade and violates the laws of the United States and the State of Hawaii.

129.   But for this illegal agreement, the C & S Defendants would have no reason to violate the Plaintiff's exclusive rights.

39

130.  As a direct and proximate result of these acts, the Plaintiff has suffered injury in amounts to be determined at time of trial.

131.  Pursuant to The Sherman Act, 15 U.S.C. §§ 1 & 2, and the Section 4 of the Clayton Act, 15 U.S.C. § 15, Plaintiff is entitled to recovery treble damages from the non-debtor defendants for all damages proven.

### COUNT VI
### (VIOLATIONS OF RICO AGAINST THE NON-BANKRUPTS)

132.  Plaintiff re-alleges the preceding allegations that are incorporated by this reference.

133.  The parties to the conspiracy to infringe are members of a Enterprise engaged in interstate shipment of goods through a pattern of racketeering.  The individual defendant infringers are individually liable or if lacking criminal intent their acts were intentional as to their principal who directed it and therefore their continued membership in the conspiracy threatens to cause the Enterprise to continue.

134.  Because Mr. Berry's freight control System is necessary to the success of the Enterprise the members have conspired to infringe as set forth herein.

135.  Fleming has already been found by a jury to have committed the predicate act of wilful infringement in the period of 1999 to 2001 and the doctrine of collateral estoppel prevents the re-litigation of that issue.  Each time the C&S system pirated version of the Berry software is used, another predicate offence occurs.

40

136.   Fleming and C&S together along with the other defendants, conspired to create another illegal derivative of Plaintiff's Freight Control System in or about May 2003.

137.   Based on RICO, Plaintiff names all defendants herein as RICO persons and seeks to impose RICO liability on all defendants except Fleming that is bankrupt. Fleming acts in furtherance of the conspiracy are imputed to the other conspirators.

### (Violations of 18 U.S.C. §1962(c))

138.   The RICO persons, including, but not limited to, Mark Dillon, Teresa Noa, Fleming, Gurzi, Guidance Software, LLC, Scott, C&S are persons employed by or associated with an enterprise engaged in interstate commerce and directly and/or indirectly conducted or participated in the conduct of that enterprise through a pattern of racketeering.  These RICO Persons have engaged in activities affecting interstate or foreign commerce, and conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity in violation of RICO §1962(c), 18 U.S.C. §1962(c) as set forth herein.

139.   Each RICO Person is legally distinct and separate from the Enterprise, which is an association in fact of these RICO Persons.  This Enterprise was formed sometime in 1999 and continues as of this writing.

41

**(Violations of 18 U.S.C. §1962(d))**

140.     Defendant C&S became a member of a conspiracy as alleged herein and, with the other members of the conspiracy agreed to conduct or participate in the affairs of the Enterprise through a pattern of racketeering activity.

141.     Defendant C&S, knew that the object of the conspiracy was conducted in violation of RICO 18 U.S.C. §1962 through repeated violations of 18 USC.

142.     C&S and its attorneys knew that Fleming was engaged in copyright infringement but chose to allow the sale to proceed under the agreement that Fleming would deliver the pirated copy of Mr. Berry's original work or an illegal derivative.

143.     At that time, C&S was aware of the existence of the Enterprise and it agreed that the Enterprise would be conducted through a pattern of racketeering activity and that to accomplish the goal and purpose of the Enterprise, at least two predicate acts by the conspiracy were contemplated, specifically the daily booting up of Mr. Berry's freight system making an illegal copy in violation of the copyright laws of the United States and the creation of the Dillon derivatives. By these acts, C&S and all other non-bankrupt defendants have

42

violated RICO 18 U.S.C. §1962(d). The agreement is also, in part, evidenced by the asset purchase agreement and other documents related to the sale.

144.    All the money derived by C&S from infringement that is derived from the infringement of Mr. Berry's intellectual property constitutes a violation of 18 U.S.C. § 1956 that prohibits the laundering of monetary instruments regarding funds derived from copyright infringement.

145.    Fleming had a finding of liability on a RICO predicate on March 6, 2003 and the most recent predicate offense occurred the last time the Dillon derivative of Mr. Berry's system was used.   There were predicate acts too numerous to be contained in a short plain statement.  At least from January 2000 to the present no less than 10,000 separate acts of criminal infringement related to the illegal use of Mr. Berry's system have transpired.

146.    Each use of the Dillon derivatives constitutes a separate predicate act of Copyright Infringement in violation of the Copyright Act 17 U.S.C. § 506(a) and 18 U.S.C. § 2319.

147.    Additional predicate offenses shall be set forth in the RICO statement, incorporated by this reference.

148.    Plaintiff has standing to proceed because it has been injured in its business or property by reason of a violation of section 1962 of RICO and may sue

43

therefor in any appropriate United States district court and shall recover threefold
the damages sustained and the cost of the suit, including reasonable attorneys'
fees and the costs of bringing suit.

149.     Plaintiff also gives notice of his intent to seek costs and attorney's
fees as provided by law for both willful and malicious trade secret
misappropriation and for the violation of his copyrights.

## PRELIMINARY INJUNCTION

150.     Based on the threat of continued violation of the copyright laws,
misappropriation of trade secrets by its unauthorized use and transfers of
unauthorized copies to third parties through application sharing technology or
otherwise, Plaintiff is suffering irreparable injury and, because HEX, HEST and
CALPAC have no lawful right to use the Freight Control System. Plaintiff has a
strong likelihood of success on the merits and seeks a preliminary injunction as
follows:

a.     preliminary injunction against all defendants and anyone claiming
any rights to use the software derived from Mr. Berry's original work,

b.     impoundment of the infringing software during the pendency of
this litigation,

c.     preliminary injunction against infringing of the copyright,

44

d.  permanent injunction against the infringement of the copyright,

e.  seizure of all computer files derived from the infringement.

f.  a temporary and permanent injunction against all defendants, including Fleming, Christensen, Dillon, Noa, C&S, Guidance, ES3, Cohen and certain Doe Defendants to prohibit the creation of any additional freight control software including, but not limited to, derivatives of Mr. Berry's original work and to prohibit the use of any such infringing software.

g.  an order permanently prohibiting Noa and Dillon and certain Doe defendants for conducting any business related to the shipment of goods. temporary and permanent injunction against C&S and anyone claiming rights under it for misappropriation of Plaintiff's Trade Secrets including Mark Dillon and Teresa Noa and that Plaintiff or his agents or Court appointed agents be permitted to inspect the defendant's business premises during normal business hours to verify that defendant's have complied with the Court's injunction.

WHEREFORE PLAINTIFF PRAYS FOR:

A.  A temporary and permanent injunction directed to Defendants, and any agent or bailee of Defendants, as set forth herein and in the accompanying Motion, from using any software derived in part from the source code of Plaintiff's software as evidenced by the registration of copyrights;

45

B.   An order authorizing Plaintiff and or the United States Marshall or his/her Deputy to enter upon Defendants' or their agents' and/or bailees' premises and to enter upon the defendant's property and take possession of all software and data derived from the software that relates in any way to the software that is the subject of this case;

C.   Damages for infringement of the copyright as provided by the Copyright Act without limitation against all non-bankrupt defendants and against all bankrupts from and after the date of their bankruptcy filing including actual damages and accounting for all gains and profits derived by non-bankrupt defendants through infringement of copyright including a detailed accounting of all non-bankrupt corporate and individual defendants' revenues produced from November 1, 1999 to the date of the order or the date that the infringement ceased, which ever is later;

D.   Damages, including exemplary damages, against all defendants, including, but not limited to, C&S, Guidance, Guidance, Gurzi, Noa and Dillon for misappropriation of Mr. Berry's trade secrets plus attorneys fees and costs,

E.   Delivery by Defendant of all copies of the offending software and all data created and the database associated with the software for destruction;

F.   Payment of the costs of the action and reasonable attorney's fees at rates

46

paid to the attorney for the opposing parties;

G. The trebling of all damages for violations of RICO and/or the Clayton Act;

H. Exemplary damages as provided by Hawaii Uniform Trade Secrets Act.

I. A liquidation of all damages for all acts by Fleming from April 1, 2004 to the date of trial with no execution thereon without further order of the United States Bankruptcy Court for the District of Delaware, and

J. Such other and further relief as may be just.

Dated: Honolulu, Hawaii, _____ JUN 1 8 2004 _____.

TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY

47

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

WAYNE BERRY, a Hawaii citizen;   )
                          )
          Plaintiff,     )
                          )
    vs.               )
                          )
HAWAIIAN EXPRESS SERVICE,   )
INC., a California corporation; H.E.S. )
TRANSPORTATION SERVICES,   )
INC., a California corporation;    )
CALIFORNIA PACIFIC       )
CONSOLIDATORS, INC., a     )
California corporation; JEFFREY P. )
GRAHAM and PETER SCHAUL,   )
California citizens; MARK DILLON  )
and TERESA NOA, BRIAN     )
CHRISTENSEN, Hawaii citizens;  )
.FLEMING COMPANIES, INC., an  )
Oklahoma corporation; C & S    )
LOGISTICS OF HAWAII, LLC, a  )
Delaware LLC; C & S WHOLESALE )
GROCERS, INC., a Vermont    )
corporation;               )
C & S ACQUISITIONS, LLC;    )
FOODLAND SUPER MARKET,   )
LIMITED, a Hawaii corporation;   )
HAWAII TRANSFER COMPANY,  )
LIMITED, a Hawaii Corporation,   )
RICHARD COHEN, a New Hampshire)
citizen ES3, LLC, a Delaware Limited )
Liability Company, MELVIN PONCE, )
SONIA PURDY, JUSTIN      )
FUKUMOTO, AFREDDA     )
WAIOLAMA, JACQUELINE RIO,  )

Civ. No. CV03 00385 SOM-LEK
(Copyright)

VERIFICATION

Hawaii citizens; JESSIE GONZALES, )
LUIZ RODRIGUES, AL PEREZ and )
PATRICK HIRAYAMA , California )
citizens; GUIDANCE SOFTWARE, )
LLC, a Delaware, LLC; MICHAEL )
GURZI, a California citizen; ALIX )
PARTNERS, LLC a Delaware, LLC; )
DOE INDIVIDUALS 2-350; DOE )
PARTNERSHIPS, CORPORATIONS )
and OTHER DOE ENTITIES 2-20, )
　　　　　　　　　　　　　　　　 )
　　　　　　　　　Defendants. )
_____ )

## VERIFICATION

I, WAYNE BERRY, have read the foregoing Complaint; Exhibit "A", the facts and the allegations stated herein are true and correct to the best of my knowledge, information and belief. The document attached as Exhibit "A" is a true and correct copy of my business records kept in the regular course of business.

DATED: Honolulu, Hawaii, _____ JUN 1 8 2004 _____.

_____
WAYNE BERRY

Subscribed and sworn to before me
this 18th day of _____ June _____, 2004

_____
Tome Sung
Notary Public, State of Hawaii
My commission expires: 3/18/2005

CERTIFICATE OF REGISTRATION



F **RM TX**
For a Nondramatic Literary Work
UNITED STATES COPYRIGHT OFFICE

REGISTRATION NUMBER

**TX 5-079-445**



EFFECTIVE DATE OF REGISTRATION

*Oct. 19, 1999*

Month   Day   Year

Marybeth Peters

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

## 1

**TITLE OF THIS WORK ▼**
Freight Control System

**PREVIOUS OR ALTERNATIVE TITLES ▼**

**PUBLICATION AS A CONTRIBUTION** If this work was published as a contribution to a periodical, serial, or collection, give information about the collective work in which the contribution appeared.   **Title of Collective Work ▼**

If published in a periodical or serial give   Volume ▼   Number ▼   Issue Date ▼   On Pages ▼

## 2

**a**

**NAME OF AUTHOR ▼**
Wayne Foster Berry

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼
1955

Was this contribution to the work a "work made for hire"?
☐ Yes
☑ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶ USA
Domiciled in▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes ☑ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼
Computer Program

**NOTE**
Under the law, the "author" of a "work made for hire" is generally the employer, not the employee (see instructions). For any part of this work that was "made for hire" check "Yes" in the space provided, give the employer (or other person for whom the work was prepared) as "Author" of that part, and leave the space for dates of birth and death blank.

**b**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

**c**

**NAME OF AUTHOR ▼**

**DATES OF BIRTH AND DEATH**
Year Born ▼   Year Died ▼

Was this contribution to the work a "work made for hire"?
☐ Yes
☐ No

**AUTHOR'S NATIONALITY OR DOMICILE**
Name of Country
OR { Citizen of ▶
Domiciled in▶

**WAS THIS AUTHOR'S CONTRIBUTION TO THE WORK**
Anonymous?   ☐ Yes ☐ No
Pseudonymous?   ☐ Yes ☐ No
If the answer to either of these questions is "Yes," see detailed instructions.

**NATURE OF AUTHORSHIP** Briefly describe nature of material created by this author in which copyright is claimed. ▼

## 3

**a**

**YEAR IN WHICH CREATION OF THIS WORK WAS COMPLETED** This information must be given ▼ Year in all cases.
1993

**DATE AND NATION OF FIRST PUBLICATION OF THIS PARTICULAR WORK** Complete this information ONLY if this work has been published.
Month▶ 11   Day▶ 27   Year▶ 95   Nation ◀ USA

## 4

**COPYRIGHT CLAIMANT(S)** Name and address must be given even if the claimant is the same as the author given in space 2. ▼
Wayne Foster Berry
425 South Street, #2603 A
Honolulu, Hawaii 96813

**TRANSFER** If the claimant(s) named here in space 4 is (are) different from the author(s) named in space 2, give a brief statement of how the claimant(s) obtained ownership of the copyright. ▼

See instructions before completing this space.

APPLICATION RECEIVED
JUL. 19 1999
ONE DEPOSIT RECEIVED
TWO DEPOSITS RECEIVED
Oct. 19 1999
FUNDS RECEIVED

DO NOT WRITE HERE

**MORE ON BACK ▶** • Complete all applicable spaces (numbers 5-9) on the reverse side of this page.
• See detailed instructions.   • Sign the form at line 8.

DO NOT WRITE HERE
Page 1 of 2 pages



EXAMINED BY _____    FORM TX

CHECKED BY _____

☐ CORRESPONDENCE    FOR
☐ Yes                COPYRIGHT
                     OFFICE
                     USE
                     ONLY

**DO NOT WRITE ABOVE THIS LINE. IF YOU NEED MORE SPACE, USE A SEPARATE CONTINUATION SHEET.**

**PREVIOUS REGISTRATION** Has registration for this work, or for an earlier version of this work, already been made in the Copyright Office?
☐ Yes  ☐ No  If your answer is "Yes," why is another registration being sought? (Check appropriate box) ▼

a. ☐ This is the first published edition of a work previously registered in unpublished form.

b. ☐ This is the first application submitted by this author as copyright claimant.

c. ☐ This is a changed version of the work, as shown by space 6 on this application.

If your answer is "Yes," give: **Previous Registration Number ▶**        **Year of Registration ▶**

**5**

**DERIVATIVE WORK OR COMPILATION**
**Preexisting Material** Identify any preexisting work or works that this work is based on or incorporates ▼

**6**

See instructions before completing this space

**Material Added to This Work** Give a brief, general statement of the material that has been added to this work and in which copyright is claimed. ▼

**DEPOSIT ACCOUNT** If the registration fee is to be charged to a Deposit Account established in the Copyright Office, give name and number of Account.
**Name ▼**        **Account Number ▼**

**7**

**CORRESPONDENCE** Give name and address to which correspondence about this application should be sent.    Name / Address / Apt / City / State / ZIP ▼
Wayne Foster Berry
425 South Street, #2603
Honolulu, Hawaii 96813

Area code and daytime telephone number ▶ 808-545-5817        Fax number ▶ 808-545-5837

Email ▶ WayneB@pxg.com

**CERTIFICATION*** I, the undersigned, hereby certify that I am the
Check only one ▸
☑ author
☐ other copyright claimant
☐ owner of exclusive right(s)
☐ authorized agent of _____
Name of author or other copyright claimant, or owner of exclusive right(s) ▲

of the work identified in this application and that the statements made
by me in this application are correct to the best of my knowledge.

**8**

**Typed or printed name and date ▼** If this application gives a date of publication in space 3, do not sign and submit it before that date.
Wayne Foster Berry        Date ▶ 9-27-99

___ Handwritten signature (X) ▼

X _____ Wayne Berry _____

Certificate
will be
mailed in
window
envelope
to this
address:

Name ▼
Wayne Foster Berry

Number/Street/Apt ▼
425 South Street, #2603 A

City/State/ZIP ▼
Honolulu, Hawaii 96813

**YOU MUST:**
• Complete all necessary spaces
• Sign your application in space 8

**SEND ALL 3 ELEMENTS IN THE SAME PACKAGE:**
1. Application form
2. Nonrefundable filing fee in check or money order payable to Register of Copyrights
3. Deposit material

As of
July 1,
1999,
the
filing
fee for
Form TX
is $30

**MAIL TO:**
Library of Congress
Copyright Office
101 Independence Avenue, S.E.
Washington, D.C. 20559-6000

**9**

*17 U.S.C. § 506(e): Any person who knowingly makes a false representation of a material fact in the application for copyright registration provided for by section 409, or in any written statement filed in connection with the application, shall be fined not more than $2,500.

June 1999—200,000
WEB REV: June 1999

☼ PRINTED ON RECYCLED PAPER

☼ U.S. GOVERNMENT PRINTING OFFICE: 1999-454-879/49

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

WAYNE BERRY, a Hawaii citizen;  )  Civ. No. CV03 00385 SOM-LEK
   )  (Copyright)
        Plaintiff,  )
   )  DEMAND FOR JURY TRIAL
      vs.  )
   )
HAWAIIAN EXPRESS SERVICE,  )
INC., a California corporation; H.E.S.  )
TRANSPORTATION SERVICES,  )
INC., a California corporation;  )
CALIFORNIA PACIFIC  )
CONSOLIDATORS, INC., a  )
California corporation; JEFFREY P.  )
GRAHAM and PETER SCHAUL,  )
California citizens; MARK DILLON  )
and TERESA NOA, BRIAN  )
CHRISTENSEN, Hawaii citizens;  )
FLEMING COMPANIES, INC., an  )
Oklahoma corporation; C & S  )
LOGISTICS OF HAWAII, LLC, a  )
Delaware LLC; C & S WHOLESALE  )
GROCERS, INC., a Vermont  )
corporation; C & S ACQUISITIONS,  )
LLC; FOODLAND SUPER  )
MARKET, LIMITED, a Hawaii  )
corporation; HAWAII TRANSFER  )
COMPANY, LIMITED, a Hawaii  )
Corporation, RICHARD COHEN, a  )
New Hampshire citizen ES3, LLC, a  )
Delaware Limited Liability Company,  )
MELVIN PONCE, SONIA PURDY,  )
JUSTIN FUKUMOTO, AFREDDA  )
WAIOLAMA, JACQUELINE RIO,  )
Hawaii citizens; JESSIE GONZALES,  )
LUIZ RODRIGUES, AL PEREZ and  )

PATRICK HIRAYAMA , California )
citizens; GUIDANCE SOFTWARE, )
LLC, a California, LLC; MICHAEL )
GURZI, a California citizen; ALIX )
PARTNERS, LLC, a Delaware LLC  ; )
DOE INDIVIDUALS 2-350; DOE )
PARTNERSHIPS, CORPORATIONS )
and OTHER DOE ENTITIES 2-20, )
)
                    Defendants. )
_____ )


## DEMAND FOR JURY TRIAL

Plaintiff Wayne Berry hereby respectfully demands a trial by jury of all

issues triable thereto.

Dated: Honolulu, Hawaii, _____ JUN 1 8 2004_____

_____
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY

4

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

DISTRICT OF _____ Hawaii _____

## SUMMONS IN A CIVIL CASE

Wayne Berry

**V.**

CASE NO.: **Civil. No. CV03-00385 SOM LEK**

Hawaiian Express Service, Inc. et. al,

TO: (Name and address of defendant)

Above-Named Defendants

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Lynch Ichida Thompson Kim & Hirota
TIMOTHY J. HOGAN 5312-0
1132 Bishop Street
Suite 1405
Honolulu, Hawaii 96813
Phone: 808-528-0100
Fax: 808-528-4997
Attorney for Wayne F Berry
Plaintiff(s)

Second Amended Verified
an answer to the complaint which is herewith served upon you, within    Twenty (20)  days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

CLERK

DATE    JUN 1 8 2004

(BY) DEPUTY CLERK