# EXHIBIT E

LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff WAYNE BERRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; )<br><br>Plaintiff, )<br><br>vs. )<br><br>HAWAIIAN EXPRESS SERVICE, )<br>INC., a California corporation; et )<br>al., )<br><br><br><br>Defendants. )<br> )<br> )<br> )<br> )<br> )<br> )<br> )<br> )<br> )<br> )<br> )<br> )<br> )<br> )<br> )<br> )<br> )<br> )<br> ) | Civ. No. CV03 00385 SOM-LEK (Copyright)<br><br>**NOTICE OF MOTION; PLAINTIFF WAYNE BERRY'S MOTION FOR ISSUANCE OF PERMANENT INJUNCTION AND ORDER DIRECTING RETURN, DESTRUCTION OR OTHER REASONABLE DISPOSITION OF ALL COPIES OF FREIGHT CONTROL SYSTEM; MEMORANDUM IN SUPPORT OF MOTION; DECLARATION OF TIMOTHY M. HOGAN; EXHIBITS "A" - "G"; DECLARATION OF WAYNE BERRY; EXHIBITS "A"- "E"; CERTIFICATE OF SERVICE**<br><br>Hearing:<br>DATE:   January 30, 2006<br>TIME:   10:30 a.m.<br>JUDGE:  Susan Oki Mollway |

OCT 2 5 2005

## NOTICE OF MOTION

TO:   LEX R. SMITH, ESQ.
      ANNE E. LOPEZ, ESQ.
      Kobayashi Sugita & Goda
      First Hawaiian Center
      999 Bishop Street, Suite 2600
      Honolulu, Hawaii 96813
      Attorneys for Defendant
      Fleming Companies, Inc.
      C&S Wholesale Grocers, Inc.,
      C&S Logistics of Hawaii, LLC,
      C&S Acquisitions, LLC, ES3, LLC
      and RICHARD COHEN

      ERIC C. LIEBELER, ESQ.
      DAMIAN CAPOZZOLA, ESQ.
      MELISSA M. DULAC, ESQ.
      R. OLIVIA SAMAD, ESQ.
      Kirkland & Ellis
      777 South Figueroa Street
      Los Angeles, CA 90017
      Attorneys for Defendant Fleming Companies, Inc.

      SHELDON S. TOLL, ESQ.
      2000 Town Center, Suite 2550
      Southfield, MI 48075
      Attorney for Defendant
      ALIX PARTNERS, LLC

      LYLE HOSODA, ESQ.
      345 Queen Street, Suite 804
      Honolulu, Hawaii 96813
      Attorney for Defendants Mark Dillon,
      Brian Christensen and Teresa Noa
      Melvin Ponce, Alfredda Waiolama,

2

Jacqueline Rio, and Justin Fukumoto

REX FUJICHAKU, ESQ.
Bronster Crabtree & Hoshibata
1001 Bishop Street, Suite 2300
Pauahi Tower
Honolulu, Hawaii 96813
Attorneys for Defendants
GUIDANCE SOFTWARE, LLC
and MICHAEL GURZI

WESLEY H. H. CHING, ESQ.
Fukunaga, Matayoshi, Hershey & Ching, LLC
1200 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii 96813
Attorney for Defendant
Hawaii Transfer Company, Limited

JOHN T. KOMEIJI, ESQ,
GREGORY Y.P. TOM, ESQ.
KAREN Y. ARIKAWA, ESQ.
First Hawaiian Center
999 Bishop Street, 23rd Floor
Honolulu, Hawaii 96813
Attorneys for Defendant
ALIX PARTNERS, LLC

NOTICE IS HEREBY GIVEN that Plaintiff Wayne Berry's Motion

for Issuance of Permanent Injunction and Order Directing Return,

Destruction Or Other Reasonable Disposition of All Copies of Freight

Control System shall come on for hearing before the Honorable Susan

Oki Mollway, United States District Judge of the above-entitled Court, in

3

her courtroom in the United States District Court, 300 Ala Moana

Boulevard, Honolulu, Hawaii 96813 on Monday, January 30, 2006 at

10:30 a.m., or as soon thereafter as counsel can be heard.

DATED: Honolulu, Hawaii, _____ OCT 2 6 2005 _____.


TIMOTHY J. HOGAN
Attorney for Plaintiff
WAYNE BERRY

4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; )<br><br>Plaintiff,<br><br>vs.<br><br>HAWAIIAN EXPRESS SERVICE, )<br>INC., a California corporation; et<br>al.,<br><br>Defendants. | Civ. No. CV03 00385 SOM-LEK<br>(Copyright)<br><br>**PLAINTIFF'S WAYNE<br>BERRY'S MOTION FOR<br>ISSUANCE OF PERMANENT<br>INJUNCTION AND ORDER<br>DIRECTING RETURN,<br>DESTRUCTION OR OTHER<br>REASONABLE DISPOSITION<br>OF ALL COPIES OF FREIGHT<br>CONTROL SYSTEM** |

**PLAINTIFF WAYNE BERRY'S MOTION
FOR ISSUANCE OF PERMANENT INJUNCTION AND
ORDER DIRECTING RETURN, DESTRUCTION OR OTHER
REASONABLE DISPOSITION OF ALL COPIES
OF FREIGHT CONTROL SYSTEM**

COMES NOW, Plaintiff Wayne Berry ("Plaintiff"), by and through his

undersigned counsel and hereby moves this Honorable Court for issuance of

a injunction prohibiting the use, reproduction and/or transfer of the Berry

Freight Control System computer software and any derivative works that are

the subject of this case. In addition, Plaintiff seeks issuance of an order

directing the return, destruction or other reasonable disposition of all copies

of the Berry Freight Control System computer software including any

derivatives.

Plaintiff seeks an injunction against Defendants Fleming Companies, Inc. ("Fleming") the Post Confirmation Trust ("PCT"), C&S Wholesale Grocers, Inc., their affiliates, officers, agents, attorneys, servants and employees.  In addition, Plaintiff seeks the same as to Defendants Mark Dillon, Teresa Noa Melvin Ponce, Alfredda Waiolama, Jacqueline Rio, Justin Fukumoto and any internet service providers, the Defendants' attorneys and any other person in active concert with them who receives actual notice of the order by personal service or otherwise, from further acts of infringement including the continued possession,  use and or creation and/or use of the Berry Freight Control System Software and any and all derivative works.

Plaintiff brings this Motion on the grounds that its has been established in this proceeding that on or about July 2003, Fleming caused no less than sixteen copies of Plaintiff's copyrighted work to be transferred to computers that were sold to C&S and are used by Fleming's  Employee Defendants. Further the Court has ruled that the use of the Dillon created derivatives after April 1, 2003 was infringement.   Because Fleming and the Employee Defendants  have been found to have committed infringement there remains a real risk of additional infringements should these copies of Mr. Berry's works be left in C&S or its employee's possession. Unlike Fleming that once had a

2

license for the use of the original unmodified Berry work, C&S has no license and any use including any routine backup of the software would necessarily violate Mr. Berry's exclusive rights.  Other than copies properly preserved for litigation purposes under Court order, there is no lawful basis to leave copies of the Berry works in possession of anyone other than Mr. Berry.

The injunction should be broad in scope to prohibit corporate entities including, their affiliates, subsidiaries, officers, attorneys, directors, internet service providers, employees, including, but not limited to, the Employee Defendants and all other agents or persons in active concert with Fleming and/or the PCT from engaging in any future acts of infringement, including the continued attempt to reverse engineer Plaintiff's software through copies claimed to be maintained for litigation purposes or otherwise.

This motion is brought pursuant to The Copyright Act, 17 U.S.C. §§ 106, 117, 502 & 503, Fed. R. Civ. P. 65, LR 7 and is supported by the attached Memorandum in Support,  Declaration of Counsel, and Declaration of Wayne Berry and Exhibits attached thereto and all the record of this case all of which is incorporated herein by this reference.

3

Dated: Honolulu, Hawaii,_____OCT 2 6 2005_____.

_____

TIMOTHY J. HOGAN
Attorney for Plaintiff
Wayne Berry

4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; )<br>                       )<br>       Plaintiff,    )<br>                       )<br>   vs.             )<br>                       )<br>HAWAIIAN EXPRESS SERVICE, )<br>INC., a California corporation; et al., )<br>                       )<br>       Defendants.   )<br>                       ) | Civ. No. CV03 00385 SOM-LEK<br>(Copyright)<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

## MEMORANDUM IN SUPPORT OF MOTION

## I. INTRODUCTION.

Plaintiff Wayne Berry moves this Court for the issuance of a permanent injunction to enjoin, Fleming Companies, Inc. ("Fleming"), the Post Confirmation Trust ("PCT"), C&S Wholesale Grocers, Inc., their affiliates, officers, agents, attorneys, servants, employees, including, but not limited to Mark Dillon, Teresa Noa, Melvin Ponce, Alfredda Waiolama, Jacqueline Rio, and Justin Fukumoto, internet service providers, attorneys and any person in active concert with them who receives actual notice of the order by personal service or otherwise, from further infringing Mr. Berry's computer software copyrights and violating his exclusive rights. In addition,

2

Mr. Berry requests an order regarding the disposition of the relevant works.

## II. BACKGROUND.

### A.    Mr. Berry Has Once Again Proven Infringement.

On June 27, 2005, this Court ruled that Fleming and the Employee defendants have infringed Mr. Berry's Freight Control System software. *See* Excerpt of Order Granting In Part and Denying in Part Berry's Motion for Summary Judgment, etc. filed June 27, 2005, Hogan Dec. Exhibit "A," at pp. 6 to 12, 25 and pg. 50.

### B.    Infringing Copies of Mr. Berry's Work Remain Unaccounted For.

The Guidance After images proved that 16 copies of Mr. Berry's work were transferred along with the computers sold to C&S.  *See* Hogan Dec., Exhibit "A" at p. 26.  These copies are not licensed as a matter of law.  They are not covered by any protective order.   Any potential to access to these copies by adjudicated infringers (the Employees) should be prohibited. Despite a statement that he couldn't find a copy of Mr. Berry's work when he looked, neither Mr. Dillon nor his present employer has ever explained the disposition of the Berry FCS Logistics Data.mdb.  More important, is the fact that the screens for the Original Logistics Data.mdb, the split screens from the adjudicated infringing derivative, remained on the computers along with

3

the copies of FCS Logistics Data.mdb.  Hogan Dec. Exhibit "G."

A Mr. Berry has been the subject to serial acts of infringement, including willful infringement, regarding this work.  Other than copies that might be maintained for the purpose of litigation under an appropriate order, there is no rational or legal basis for leaving copies of the Berry software in C&S's and/or its employees' possession on working servers and/or computers. Legitimately maintained and inventoried copies of the Berry work can be maintained by the Court or in an appropriate lock box arrangement. Leaving Fleming's former and C&S present employees in possession of the work would be manifest injustice.

Evidence shows that Mark Dillon maintained during relevant periods a Berry derivative on his home computers.   C&S and the PCT's concurrent counsel confirm that Mr. Dillon and Mrs. Noa continue to access the system from home.    Hogan Dec., Exhibit "B" is a letter from C&S's counsel with a diagram showing the connections.

In his deposition, Mr. Dillon testified he worked from home and admitted to using his own computer to maintain his derivative works in progress.  Hogan Dec., Exhibit "C" at ¶¶ 305:14 to 307:17.  It has already been established in this proceeding that Mr. Gurzi did nothing to insure that

the copies on the employee computers were removed.  *See* Hogan Dec.

Exhibit "F" an excerpt of the Deposition of Mark Dillon, taken herein on

December 16, 2003, at pg. 12:7 to 12:25.  The continued existence of such

un-licenced works is a violation of Mr. Berry's exclusive rights.

> **C.    In Light of the Evidence that Dillon was Still Linking to the Berry Database as Late as July 3, 3003, The Order Must Issue.**

Mark Dillon was employing a derivative copy of the Berry work in the

form of FCS Logisitics Data.mdb, Original Logistics Data.mdb and/or FHL

Data.mdb after Mr. Dillon claims to have switched to the spreadsheet

program.  *See* Declaration of Professor Philip Johnson PhD, filed previously

on July 12, 2005.  Hogan Dec. Exhibit "D" at paragraphs 1 to 8.  The

continued access to these works will only act as a temptation to Mr. Dillon

who may then, unbeknownst to this co-workers, again expose them to new

claims of infringement. The Court should not let this happen to the other

defendants and should enter an appropriate order to prevent any future such

acts of infringement.

> **D.    Fleming Continues to Do Business in Hawaii.**

Fleming will no doubt claim it is out of business and therefore, the

injunction serves no purpose as to it.   The Declaration of Wayne Berry, ¶¶

5

1-8 and Exhibits "A" to "E" evidences Fleming continues to do business by continuing to sell "Best Yet" products in Hawaii manufactured by Fleming Companies, Inc.  Fleming previously represented that it had ceased all sales related activities to the Court of Appeals to successfully defeat a motion for injunction pending appeal filed in appeal of the first infringement case. Hogan Dec. Exhibit "E" at its page 5.   In its memorandum the PCT represents to the Court of Appeals that "It isn't selling anything to anyone." Mr. Berry respectfully asks that the Court take notice of the fact that Fleming is selling "Best Yet" milk and other products to consumers in Hawaii the next time the Court is in Foodland.  In any event, the Berry Dec. ¶¶ 8 to 14 and Exhibits "A" to "E"  establishes that the PCT incorrectly represented this fact to the Court of Appeals, making the logical argument that, because it is not selling to anyone, it can't infringe.  Because the evidence proves that Fleming continues to sell, Fleming must concede that it therefore can infringe.

**E.    Mr. Berry's Original Work Is At Risk And He Faces Imminent Harm If The Injunction Is Not Issued Forthwith.**

Fleming transferred Mr. Berry's work, sixteen copies of it, to C&S. C&S, despite being a party in this case has refused to relinquish its control over Mr. Berry's software or provide any proof that the materials have been removed.   Presently, there is no licensed copy of Mr. Berry's software

6

outside of his possession, Fleming having voluntarily rejected the license in its failure to assume it prior to confirmation. Mr. Dillon was "linking" to derivatives as late as July 2003. This software is a "vertical" application that has limited marketability. If one of the few potential licensee's is allowed to keep pirated copies, Mr. Berry's rights are all but destroyed.    Berry Dec. ¶¶ 1 to 6.    His right to his limited monopoly provided by his copyright is being destroyed by the existence of these sixteen copies of his work in the possession of C&S.  Plaintiff has only one thing to protect his copyright, an injunction.

## III. <u>ARGUMENT</u>.

### A.    <u>Mr. Berry is Legally Entitled to A Permanent Injunction</u>.

The Copyright Act provides the legal basis for entry of the injunction as follows:

> Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

The Copyright Act, 17 U.S.C. § 502(a).

In addition, the Copyright Act provides for the destruction of infringing materials.

As part of a final judgment or decree, the court may order the

> destruction or other reasonable disposition of all copies or
> phonorecords found to have been made or used in violation of
> the copyright owner's exclusive rights, and of all plates, molds,
> matrices, masters, tapes, film negatives, or other articles by
> means of which such copies or phonorecords may be
> reproduced.

The Copyright Act, 17 U.S.C. § 503(b).

Mr. Berry respectfully submits that he is entitled to both a § 503(a)

injunction and the § 503(b) disposition order.

### B.    Standard of Review.

The legal standard that the district court applies in passing on a motion

for permanent injunction is reviewed de novo.  Polo Fashions, Inc. v. Dick

Bruhn, Inc., 793 F.2d 1132, 1135 (9th Cir. 1986).  The district court's

decision to grant permanent injunctive relief is reviewed for an abuse of

discretion or application of erroneous legal principles.  See Fortyune v.

American Multi-Cinema, Inc., 364 F.3d 1075, 1079 (9th Cir. 2004)

(reviewing summary judgment); Ashker v. California Dep't of Corrections,

350 F.3d 917, 921 (9th Cir. 2003); Ting v. AT&T, 319 F.3d 1126, 1134-35

(9th Cir. 2003) (noting underlying facts are reviewed for clear error and

conclusion of law is reviewed de novo), cert. denied, 124 S. Ct. 53 (2003);

Biodiversity Legal Found. v. Badgley, 309 F.3d 1166, 1176 (9th Cir. 2002)

(noting underlying legal rulings are reviewed de novo).

8

### C.    <u>The Facts Show that Mr. Berry is Entitled to the Relief</u>.

Fleming and its employees have lost on the issue of infringement. This issue of likelihood of success on the merits that was relevant to Mr. Berry's right to a preliminary injunction has no relevance to a request for issuance of a permanent injunction upon entry of the final judgment. Accepting Fleming's claim that it accidentally transferred the copies of Berry system to its unlicensed successor C&S Wholesale Grocers, Inc., this Court found that Mr. Berry's showing did not support the grant of a preliminary injunction because any infringement wasn't "willful." However, in light of the earlier judgment that Fleming was a willful infringer, and this Court's finding that despite such finding Fleming continued to infringe, the Court must grant the Plaintiff the injunction. No developer should be forced to continue expensive litigation when the simple act of an injunction would put an end to the apparent serial infringement.

### D.    **In Passing on Whether to Grant the Plaintiff's Motion for Issuance of a Permanent Injunction, the Standard to Be Can't Be Met by Fleming Or the Employee's.**

The Court of Appeals has set a burden for Fleming and its employees to meet that cannot be met to overcome the Plaintiff's right to an injunction.

> In this case, the district court refused to grant an injunction because the plaintiffs had not introduced any specific evidence to

9

demonstrate that the defendants would infringe in the future. The court was correct in noting that cessation of the unlawful conduct can moot such a dispute, but it failed to recognize that "<u>the reform of the defendant must be irrefutably demonstrated and total</u>." The defendants had willfully violated [Plaintiff's] trademark rights. The defendants refused to stop violating those rights until [Plaintiff] brought suit in federal district court. We should not require [Plaintiff] also to introduce concrete evidence that the defendants are likely to infringe again. If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [Plaintiff] substantial protection of its trademark. Accordingly, we reverse the district court's refusal to grant permanent injunctive relief.

*Polo Fashions, Inc.,* 793 F.2d at 1135-6 (emphasis added) (citations omitted).

The Court found earlier at the preliminary injunction stage that there was no risk to Mr. Berry because Fleming is no longer using his software. As the above citation evidences, the Court must apply a more rigorous standard to the infringers claim to have stopped infringing when addressing a permanent injunction. Mr. Berry has twice prevailed on the merits against Fleming as evidenced by the jury verdict and final judgment and this Court's grant of summary judgment, Fleming and the Employees cannot meet the burden imposed in such cases of showing "<u>the reform of the defendant must be irrefutably demonstrated and total</u>" and "<u>any doubt in respect of the extent thereof must be resolved in [Mr. Berry's] favor</u>." *Polo Fashions, Inc.,* 793 F.2d at 1135 (emphasis added). The evidence submitted in Support of Mr.

10

Berry's Motion showed that Fleming continues to do business and has infringed post-petition. It misrepresented this fact to the Court of appeals in response to Mr. Berry's motion for injunction pending appeal. This conduct is more than enough to refute any additional claims to be out of business.

Mr. Berry has produced evidence that Mr. Dillon continued to work with Mr. Berry's software even after he claims that they switch to spreadsheets. Hogan Dec. Exhibit "D". Whether he was actually running it or extracting some data from it, C&S, who now possesses it, has no right to do either. While C&S's employees have this software, and Mr. Dillon continues to feel free to use it, Mr. Berry and the other employees remain at risk and the injunction must issue.

### E.    The Lack of Injunction Relief Makes Repeated Law Suits a Wasteful Necessity.

Without an injunction, Mr. Berry must continue to protect his works from the infringer through additional costly litigation. This need to burden the District Court would be unnecessary were an injunction to enter because Mr. Berry could apply to the Court for contempt sanctions rather than file another law suit. The HEX defendant has already agreed to such a consent order and this request does nothing more than to close the loop on the infringement. The prejudice to the developer, who has already prevailed at trial and them

11

again on summary judgment is the cost of continued litigation and the continued threat against his exclusive rights.

"When a copyright plaintiff has established a threat of continuing infringement, he is entitled to an injunction" *Walt Disney Co. v. Powell*, 897 F.2d 565, 567-8 (U.S. App. D.C. 1990) *citing Universal City Studios v. Sony Corp. of America*, 659 F.2d 963, 976 (9th Cir. 1981), *rev'd on other grounds*, 464 U.S. 417, 78 L. Ed. 2d 574, 104 S. Ct. 774 (1984). "Generally, it would appear to be an abuse of discretion to deny a permanent injunction where liability has been established and there is a threat of continuing infringement." 3 *Nimmer on Copyright*, § 14.06[B] at 14-55-14-56 (1989).

The D.C. Court of Appeals in *Powell*, addressed and argument that it is no longer using the software so should be free from an injunction as follows:

> Powell argues that since he voluntarily ceased infringing Disney's copyrights, there is no basis to assume that he will infringe them again in the future. The judge disagreed. He interpreted appellant's decision to cease infringing in a more Machiavellian light. The judge concluded that like Boris and Natasha, Snidely Whiplash and Bluto, Powell simply took the action that best suited him at the time; he was caught red-handed, thus "as the illegality of his affairs faced increasing exposure, Powell suddenly reformed. Consequently, the judge found it not unlikely that Powell would attempt to infringe Disney's copyrights in the future.

*Powell*, 897 F.2d at 568.

12

The Defendants have no reason to resist the injunction other than that they either are still infringing or plan to soon. The Court should and must grant the motion to enjoin the any future acts of infringement and require the return, destruction or other reasonable disposition of the infringing works.

### F.    C&S Can Be Covered by the Injunction and Disposition Order Even Though Not Found an Infringer.

C&S can not claim, and has not claimed, any right to possess or use any of Mr. Berry's works. It's employee have been found infringers. Any possession or access by the employee's or their employer would necessarily violate Mr. Berry's exclusive rights. There is no way that C&S can continue to possess Mr. Berry's works without infringing. This Court has jurisdiction over C&S and should issue an appropriate order under § 503.

Prior to the enactment of 17 U.S.C. § 117, it was unclear whether the making of a copy of software in regard to a backups or loading a copy in RAM was permitted. Congress enacted § 117 to settle the uncertainty:

> Section 117 allows "the 'owner' of a copy of a computer program to make or authorize the making of another copy" without infringing copyright law, if it "is an essential step in the utilization of the computer program" or if the new copy is for "archival purposes only."

*MAI Sys. Corp. v. Peak Computer*, 991 F.2d 511, 518-519 (9th Cir. 1993).

13

For C&S to maintain copies on its logistics computers, it will necessarily infringe.  This is because C&S is not an owner of a copy and has argued that to the Court.  "Since MAI licensed its software, the Peak customers do not qualify as "owners" of the software and are not eligible for protection under § 117." *MAI Sys. Corp.*, 991 F.2d at 519 n5. In this case, C&S has no license and has no right to maintain any copies of Berry's works or make backups.   Backup (archival) copies are only permitted by the Copyright Act.17 U.S.C.  § 117 for an "owner of a copy."  Therefore, when the copies remaining on the C&S server and client stations are backed up as the routine function of the logistics network by Mark Dillon or anyone else, an infringing copy is made, as a matter of law.  *See* Hogan Dec. Exhibit "F" an excerpt of the Deposition of Mark Dillon, taken herein on December 16, 2003, at pg. 30:5 to 30:10, evidencing that if the copies of the Berry works remain on the C&S user folders they will be backed up in routine backups thus creating infringing copies.   For Mr. Dillon to make a backup copy of these files, as an adjudicated infringer he might be subject to greater sanctions that those in this civil proceeding.  Mr. Dillon needs to be freed from any claim of future infringements that can only derive from an injunction that covers C&S. The fact of the "accidental" transfer to C&S was established and that the files

14

remained in the user directories. Even though the Court did not find infringement the Court must prohibit C&S from any possession of Berry works and order their return or destruction, for C&S and its employee's own good.

## IV. **CONCLUSION**.

For the reasons stated, Plaintiff respectfully asks that the Motion be granted.

DATED: Honolulu, Hawaii, _____ OCT 2 6 2005 _____.

_____
TIMOTHY J. HOGAN
Attorney for Plaintiff
WAYNE BERRY

15

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen; )<br>)<br>      Plaintiff,    )<br>)<br>   vs.       )<br>)<br>HAWAIIAN EXPRESS SERVICE, )<br>INC., a California corporation; et al., )<br>)<br>)<br>     Defendants.   )<br>_____ ) | Civ. No. CV03 00385 SO-LEK<br>(Copyright)<br><br>**DECLARATION OF TIMOTHY<br>J. HOGAN; EXHIBITS "A" - "G"** |

## DECLARATION OF TIMOTHY J. HOGAN

I, TIMOTHY J. HOGAN, am an attorney licensed to practice before all the courts of the State of Hawaii and I make this declaration under penalty of perjury. All the statements herein are true and correct to the best of my knowledge, information and belief. If called upon to testify regarding the matters stated herein, I am competent and willing and able to testify.

1.    Attached hereto as Exhibit "A" is a true and correct excerpt copy of the Court's June 27, 2005 Order regarding Summary Judgment.

2.    Attached hereto as Exhibit "B" is a true and correct copy of the letter from the PCT and C&S concurrent counsel with an attached diagram of the C&S Logistics Department computer network.

3.    Attached hereto as Exhibit "C" is a true and correct of an except from the deposition of Mark Dillon taken herein on December 23, 2003 with and excerpt of its Exhibit "12."

4.    Attached hereto as Exhibit "D" is a true and correct copy of the Declaration of Professor Philip Johnson Ph.D., Exhibits "A"-"C" that was filed herein on July 12, 2005.

5.    Attached hereto as Exhibit "E" is a true and correct copy of the PCT's Opposition to Wayne Berry's Motion For Injunction Pending Appeal filed on or about April 13, 2005 in *Wayne Berry v. Fleming Companies, Inc.*, Court of Appeals Docket No. 05-15233 and 05-15347 (9th Circuit).

6.    Attached hereto as Exhibit "F" is a true and correct excerpt from the Deposition of Mark Dillon taken herein on December 16, 2003.

7.    Attached hereto as Exhibit "G" is true and correct printed page from the Guidance After listings of files provided to me by Lex Smith in the spring of 2004 evidencing a copy of Original Logistics Screens.mdb was transferred to C&S.

I hereby declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

2

Executed at Honolulu, Hawai'i, _____ OCT 2 6 2005 _____ .

TIMOTHY J. HOGAN

3

( ORIGINAL (

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JUN 2 7 2005

at 10 o'clock and 45 min. A M
SUE BEITIA, CLERK

WAYNE BERRY, a Hawaii
citizen,

         Plaintiff,

    vs.

HAWAII EXPRESS SERVICE, INC.,
a California corporation; et
al.

         Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civ. No. 03-00385 SOM/LEK

ORDER GRANTING IN PART,
DENYING IN PART BERRY'S
MOTION FOR SUMMARY JUDGMENT;
ORDER GRANTING C&S LOGISTICS
OF HAWAII, LLC, C&S WHOLESALE
GROCERS, INC., C&S
ACQUISITION, LLC, ES3, LLC,
AND RICHARD COHEN'S MOTION
FOR SUMMARY JUDGMENT; ORDER
GRANTING GUIDANCE SOFTWARE,
INC., AND MICHAEL GURZI'S
MOTION FOR SUMMARY JUDGMENT;
ORDER GRANTING IN PART,
DENYING IN PART REMAINING
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

ORDER GRANTING IN PART, DENYING IN PART BERRY'S MOTION FOR
SUMMARY JUDGMENT; ORDER GRANTING C&S LOGISTICS OF HAWAII, LLC,
C&S WHOLESALE GROCERS, INC., C&S ACQUISITION, LLC, ES3, LLC, AND
RICHARD COHEN'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING
GUIDANCE SOFTWARE, INC., AND MICHAEL GURZI'S MOTION FOR SUMMARY
JUDGMENT; ORDER GRANTING IN PART, DENYING IN PART REMAINING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

I.    INTRODUCTION.

        Plaintiff Wayne Berry is suing multiple defendants for

copyright infringement and related matters.  This court has

previously ruled on several motions in this case.  In this latest

round of what seems to this court to be a never ending stream of

motions, Berry moves for summary judgment against all remaining

Defendants.  Defendant Post Confirmation Trust ("PCT")[1];

Defendants C&S Logistics of Hawaii, LLC, C&S Wholesale Grocers,

───────────────

    [1] PCT represents the interests of Defendant Fleming
Companies, Inc. ("Fleming"), during Fleming's bankruptcy.

EXHIBIT "A"

version of his FCS software.[3]  Second, Berry alleges that after

June 9, 2003, Fleming, Employees, and C&S used a derivative of

the FCS program.  Third, Berry alleges that Guidance, at

Fleming's direction, made unauthorized copies of his software

that were then retained on Fleming computers.  Fourth, Berry

alleges that Fleming sold illegal copies of FCS to C&S by leaving

the unauthorized copies that Guidance had made on the computers

when C&S took over Fleming's operations.

    1.  Employees.

    The court has already addressed several of Berry's

claims against Employees.  In its January 26, 2005, order, the

court granted summary judgment to Dillon and Noa with respect to

all claims relating to activities outside the period of March 7,

2003, to June 9, 2003.  The court, however, denied Dillon and

Noa's motion for summary judgment with respect to direct

infringement that might have occurred during that time period.

In its April 12, 2005, order, the court denied without prejudice

Ponce, Purdy, Fukumoto, Wailoama, and Rio's motion for summary

judgment on all Counts, and also denied without prejudice Berry's

counter-motion for summary judgment on all Counts.

_____

    [3] At the June 20, 2005, hearing on the present motions,
Berry said that, in prior orders, the court limited the direct
infringement claim to the period after April 1, 2003.  This
court, however, found no such limitation in its earlier orders in
this case.

a. Dillon and Noa Infringed on Berry's
Copyright Between March 7, 2003, and
June 9, 2003.

The court grants Berry's motion for summary judgment with respect to Dillon and Noa's liability for conduct between March 7, 2003, and June 9, 2003.

In its January 26, 2004, order, this court granted summary judgment to Dillon and Noa with respect to conduct occurring outside the period between March 7, 2003, and June 9, 2003. The court, however, denied Dillon and Noa's motion for summary judgment with respect to infringement allegedly occurring between March 7, 2003, and June 9, 2003. Given Dillon's declaration stating that he had attempted to revert to the original version of FCS following the jury verdict of March 6, 2003, but had inadvertently failed to remove a scratch name field and two label changes, the court concluded that Dillon had used an altered version of FCS. An expert report by Dr. Philip Johnson confirmed that the version of FCS in use by Dillon was not the original licensed version of the software. Because only a copyright holder has the right to prepare and use derivative works, see Downing v. Abercrombie & Fitch, 265 F.3d 994 (9th Cir. 2001), the unauthorized use of the altered version of FCS constituted a copyright violation.

Berry has established that Dillon and Noa used an altered version of the FCS software between March 7, 2003, and

7

June 9, 2003.  See Ex. L to Hogan Decl.; Ex. P to Hogan Decl.

The unauthorized use of a software derivative constitutes

impermissible "copying."  See MAI Sys. Corp. v. Peak Computer,

Inc., 991 F.2d 511, 517-18 (9th Cir 1993).  The use of the

altered version of FCS therefore violated Berry's copyright.

Dillon and Noa now contend that the changes made to the

software were de minimis and that they therefore cannot be said

to have used an unauthorized derivative.  Dillon and Noa rely on

an expert report by Dr. Martin Walker, stating that there were

only seven differences between the altered version of FCS used by

Employees and Berry's original FCS.  See Ex. C to Hosoda Decl.

¶ 41.  Walker's report also states that the changes made to FCS

either facilitated the exporting of Fleming's data or aided

recovery of lost data.  Id. ¶ 42.  Walker therefore concludes

that the alterations were not part of the normal operation of the

database and that "the two databases are practically identical

from both a numerical perspective and a functional perspective."

Id.

Dillon and Noa cite Apple Computer, Inc. v. Microsoft

Corp., 35 F.3d 1435 (9th Cir. 1994), and Newton v. Diamond, 388

F.3d 1189 (9th Cir. 2004), for the proposition that de minimis

changes do not rise to the level of infringement.  Those cases,

however, do not apply here.  In Apple Computer, the plaintiff

alleged that Microsoft had copied its software by using a

8

graphics interface on Microsoft software that was similar to the interface employed by Apple computers. The Ninth Circuit concluded that the similarities between the two software programs were de minimis, and that therefore the defendants had not violated a copyright. Id. at 1439. Similarly, the court in Newton held that de minimis use of a musical composition was insufficient to sustain a claim of infringement. 388 F.3d at 1196.

This case, by contrast, involves the creation and use of an impermissible derivative. The situation in this case thus arises in a context entirely different from the literal copying at issue in Apple Computer or the use of an unaltered composition in Newton. Dillon and Noa cite no law suggesting that a derivative is allowed if the changes are small.

Fleming and Employees, citing Melville B Nimmer & David Nimmer, Nimmer on Copyright § 13.05[D][2] (2005), say that "[t]rivial changes and inconsequential modifications such as underlining, highlighting, [and] cropping pages" do not rise to the level of creating a derivative. The alterations in this case, however, extend beyond mere underlining or highlighting. Underlining and highlighting emphasize particular aspects of a work. Here, by contrast, Dillon made alterations to FCS that changed the content and structure of the program. These types of

9

alterations, even if they constitute a small percentage of the total code, resulted in a derivative.

Dillon and Noa have admitted that they used an altered version of FCS. The court therefore grants Berry's motion for summary judgment against Dillon and Noa with respect to their liability under Count I, alleging direct infringement, for acts occurring between March 7, 2003, and June 9, 2003.

> b.    Ponce, Purdy, Fukumoto, Waiolama, and Rio Infringed on Berry's Copyright Between March 7, 2003, and June 9, 2003.

In its April 12, 2005, order, this court denied a motion for summary judgment filed by Defendants Ponce, Purdy, Fukumoto, Waiolama, and Rio, noting those persons had admitted to using a computer for various tasks while at Fleming. As these Employees worked for Fleming at some point between March 7, 2003, and June 9, 2003, the court found a genuine issue of material fact as to whether each had used the unauthorized altered version of FCS. The court, however, also denied Berry's counter-motion for summary judgment, noting that Berry had failed to establish that any of the employees had actually used an infringing version of FCS. Berry now renews his motion for summary judgment against the remaining Employees, and the court now grants Berry's motion with respect to their conduct between March 7, 2003, and June 9, 2003.

The evidence now establishes that Ponce, Purdy, Fukumoto, Waiolama, and Rio used the same unauthorized derivative of Berry's FCS software as Dillon and Noa between March 7, 2003, and June 9, 2003. An affidavit by Teresa Noa states that Fleming "went back to the original" version of FCS after the March 6, 2003, jury verdict. Ex. E to Hogan Decl. What Noa believed to be the "original" FCS, however, was actually the modified version of FCS created by Dillon on March 7, 2003. Employees offer no evidence to contradict Noa's statement, and each admits to using a computer to track shipments or enter data relating to freight orders between March 7, 2003, and June 9, 2003. See Ex. J to Hosoda Decl.; Ex. K to Hosoda Decl.; Ex. L to Hosoda Decl.; Ex. M to Hosoda Decl.; Ex. N to Hosoda Decl. Employees, therefore, do not raise any triable issue of fact, and the court grants Berry's motion for summary judgment with respect to Ponce, Purdy, Fukumoto, Waiolama, and Rio's liability for acts between March 7, 2003, and June 9, 2003. The court denies these Employees' counter-motion for summary judgment with respect to infringement during this period.

        c.    Any Infringement by Employees Between March 7, 2003, and June 9, 2003, was Not Willful.

In its January 26, 2003, order, this court held that "any infringement [by Dillon and Noa] during the period of March 7, 2003, to June 9, 2003, was not willful." This determination

11

was based on the inadvertence of Dillon's failure to remove all infringing elements from the version of FCS in use between March 7, 2003, and June 9, 2003.

The court now similarly concludes that any infringement by the other Employees was not willful. Employees were not aware that they were using an infringing version of FCS; they were merely using the software given to them by their supervisors, Dillon and Noa. Neither Dillon nor Noa was aware that the version of FCS in use between March 7, 2003, and June 9, 2003, was not the original licensed version, and there is no evidence that Employees had any reason to believe that they were not allowed to use the software. Employees have established that their infringement was not willful.

d.    Employees Did Not Infringe By Using the Excel Spreadsheets After June 9, 2003.

Employees claim that, after June 9, 2003, they "got away" from FCS and began using Microsoft Excel spreadsheets to track freight. Employees claim that they extracted raw data that had been entered into FCS and transferred that data into Excel spreadsheets. Berry, however, contends that Employees extracted not only data, but also the structures of his software to create spreadsheets that were really an unauthorized derivative of FCS. In its January 26, 2005, order, this court granted summary judgment to Dillon and Noa with respect to this claim. The court now grants summary judgment to the remaining Employees.

12

days after Berry receives any new evidence justifying such a motion or 10 working days from the date of this order.

      3.   <u>Fleming.</u>

Berry alleges that Fleming directly infringed on his software in three ways. First, Berry alleges that Fleming is liable for using altered FCS software between March 7, 2003, and June 9, 2003. Second, Berry alleges that Fleming distributed 16 copies of FCS to C&S, in violation of Berry's exclusive right of distribution. Third, Berry alleges that Fleming directly infringed on FCS by creating the Excel spreadsheets that Berry claims are an illegal derivative of FCS.

      a.   Fleming Infringed By Using An Altered Version of Berry's Software from March 7, 2003, to June 9, 2003.

As discussed earlier, Employees used an unauthorized altered version of FCS from March 7, 2003, to June 9, 2003, while working for Fleming. Fleming is liable for the infringement during this time. Berry's motion for summary judgment is granted with respect to Fleming's liability for direct infringement through the use of an altered version of FCS from March 7, 2003, to June 9, 2003. Fleming's counter-motion for summary judgment is denied with respect to these acts.

b. Fleming's "Distribution" of 16 Copies of
FCS to C&S Was Protected by the Fair Use
Doctrine.

As noted above, Berry alleges that Fleming
impermissibly retained 16 copies of FCS on its computers after
claiming it had purged the software from its system. Berry
further alleges that these copies were retained on the computers
when the computers were sold to C&S, constituting an improper
sale of his software to C&S. The court grants Fleming's motion
for summary judgment with respect to this claim.

Fleming had a right to retain the 16 FCS files for
litigation purposes under the fair use doctrine. The transfer of
the computers containing these files, as well as all other user
files for Dillon, Noa, and the other Employees, was also
permissible under the fair use doctrine, as Employees had a right
to retain the files for their own litigation purposes.

There is no evidence that C&S paid any premium for the
files or that Fleming otherwise stood to benefit from the alleged
scheme to defraud the Bankruptcy Court. In fact, the record
establishes that, even though Employees had a right to retain the
files for litigation, the retention was inadvertent. See Ex. G
to Hosoda Decl ¶ 30; Ex. K to Hogan Decl. at 156-57. Given
Berry's failure to show that there is any issue of material fact
with respect to Fleming's transfer of the files, the court grants
Fleming's motion for summary judgment with respect to this claim.

26

infringement and the issue of any direct benefit to Fleming for alleged vicarious infringement.  Motions for summary judgment on damages or on Fleming's alleged vicarious infringement may be filed on or before the dispositive motions cutoff.  Berry's motion for summary judgment is denied in all other respects.

Employees' motion for summary judgment is denied with respect to liability for direct infringement between March 7, 2003, and June 9, 2003, and for vicarious infringement. Employees' motion for summary judgment is granted in all other respects.

Fleming's motion for summary judgment is denied with respect to liability for direct infringement between March 7, 2003, and June 9, 2003, and with respect to vicarious infringement.  Fleming's motion for summary judgment is granted in all other respects.

All other Defendants' motions for summary judgment are granted.  The tentatively reserved hearing date of August 9, 2005, is vacated with respect to Guidance and Gurzi.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 27, 2005.

SUSAN OKI MOLLWAY
UNITED STATES DISTRICT JUDGE

Berry v. Hawaiian Express Service, Inc., et al., Civ. No. 03-00385 SOM/LEK, ORDER
GRANTING IN PART, DENYING IN PART BERRY'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING
C&S LOGISTICS OF HAWAII, LLC, C&S WHOLESALE GROCERS, INC., C&S ACQUISITION, LLC, ES3,
LLC, AND RICHARD COHEN'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING GUIDANCE
SOFTWARE, INC., AND MICHAEL GURZI'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN
PART, DENYING IN PART REMAINING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT.