# EXHIBIT F

LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF WAYNE BERRY'S** |
| vs. | ) | **REPLY TO C&S LOGISTICS OF** |
| | ) | **HAWAII, LLC, C&S WHOLESALE** |
| HAWAIIAN EXPRESS SERVICE, | ) | **GROCERS, INC., C&S** |
| INC., a California corporation; et al. | ) | **ACQUISITION, LLC, ES3, LLC** |
| | ) | **AND RICHARD COHEN'S** |
| | ) | **MEMORANDUM IN OPPOSITION** |
| | ) | **TO PLAINTIFF WAYNE BERRY'S** |
| | ) | **MOTION FOR ISSUANCE OF** |
| | ) | **PERMANENT INJUNCTION AND** |
| | ) | **ORDER DIRECTING RETURN,** |
| | ) | **DESTRUCTION OR OTHER** |
| | ) | **REASONABLE DISPOSITION OF** |
| | ) | **ALL COPIES OF FREIGHT** |
| | ) | **CONTROL SYSTEM** |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | Hearing: |
| | ) | DATE:  January 30, 2006 |

)    TIME:  2:00 P.M.
)    JUDGE: Honorable Susan Mollway
)
)    TRIAL DATE: January 24, 2006
)
_____ )

## PLAINTIFF WAYNE BERRY'S REPLY TO C&S LOGISTICS OF HAWAII, LLC, C&S WHOLESALE GROCERS, INC., C&S ACQUISITION, LLC, ES3, LLC AND RICHARD COHEN'S MEMORANDUM IN OPPOSITION TO PLAINTIFF WAYNE BERRY'S MOTION FOR ISSUANCE OF PERMANENT INJUNCTION AND ORDER DIRECTING RETURN, DESTRUCTION OR OTHER REASONABLE DISPOSITION OF ALL COPIES OF FREIGHT CONTROL SYSTEM

COMES NOW Plaintiff Wayne Berry, by and through his undersigned counsel and hereby submits his reply to Plaintiff Wayne Berry's Reply to C&S Logistics of Hawaii, LLC, C&S Wholesale Grocers, Inc., C&S Acquisition, LLC, ES3, LLC and Richard Cohen's Memorandum in Opposition to Plaintiff Wayne Berry's Motion for Issuance of Permanent Injunction and Order Directing Return, Destruction or Other Reasonable Disposition of All Copies of Freight Control System (the "Opposition").  This Reply is supported Declaration of Timothy J. Hogan in Support of Reply to Memoranda in Opposition to Motion for Entry of Permanent Injunction and Order Directing Return, Destruction, or Other Reasonable Disposition of All Copies of Freight Control System; Exhibits "A" Through "I" (the "Hogan Dec.") and the Declaration of Wayne Berry Exhibits "A"

2

and "B."

C&S makes a fatal admission in its Opposition. It addresses the sixteen copies that were on the server when C&S bought Fleming's wholesale operations. It then says: "Since Fleming's possession of those files was lawful, there is certainly no basis for an injunction against C&S." Opposition at page 3. The transfer from Fleming, of those sixteen copies, to C&S is an altogether different legal issue than Fleming's right to maintain evidence in its litigation. C&S does not say that the copies were never on the servers only that Mr. Dillon claims he deleted them but doesn't know when or how.

C&S has been successful in preventing any investigation of its computers by Mr. Berry and apparently by the Discovery Master. Its concealment and obfuscation bode well for the Court's need to enjoin them. They simply had no right to possess those sixteen copies they now apparently admit to possessing. They make no claim to have had these copies lawfully transferred to them. In addition, C&S has, through its PCT's concurrent counsel, withheld evidence related to the After Guidance materials that they gave to their trial expert but withheld from Plaintiff on the claim the materials were privileged. Combined with Mr. Dillon's feeble explanation that he removed all these files but can't say when or how is simply too much.

3

In addition, the copies that were transferred to C&S were more than just 16 copies of the FCS Logistics Data.mdb database ("FCS"). The database screens, the Z Tables and other portions of the FCS Copyrighted work were also delivered to C&S. Mr. Berry has an absolute right to their return. *See* Declaration of Wayne Berry in Support of Reply to Memoranda in Opposition to Motion for Entry of Permanent Injunction and Order Directing Return, Destruction, or Other Reasonable Disposition of All Copies of Freight Control System; Exhibit "A." Leaving aside the hundreds of FCS derivatives that C&S likely pirated, C&S puts forth no credible evidence that it doesn't still have the sixteen copies . It simply stands pat and hopes that the Court will condone software piracy and permit them to take copies of Mr. Berry's software illegally and unlawfully in violation of Mr. Berry's exclusive rights.

Finally, there is already an injunction entered in this case. It will make very little difference to the overall operation of C&S if the injunction were entered because C&S' freight forwarder has already agreed to an injunction. If C&S causes its freight forwarder to infringe, as a person with notice of the injunction, C&S is already bound. If C&S doesn't have any of the Berry works then it won't have to lift a finger in complying. The Court must exercise its discretion and order C&S to return any and all copies of Mr. Berry's works in its possession, if any, and be

4

further permanently enjoined from any future possession and hopefully put an end

to over five years of litigation.

DATED:  Honolulu, Hawai`i, January 18, 2006.


/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY

LYNCH ICHIDA THOMPSON KIM & HIROTA

TIMOTHY J. HOGAN 5312-0
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel. No. (808) 528-0100
Fax No. (808) 528-4997
E-mail: tjh@loio.com

Attorney for Plaintiff
WAYNE BERRY

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen; | ) | Civ. No. CV03 00385 SOM-LEK |
| | ) | (Copyright) |
| Plaintiff, | ) | |
| | ) | DECLARATION OF TIMOTHY J. |
| vs. | ) | HOGAN IN SUPPORT OF REPLY |
| | ) | TO MEMORANDA IN OPPOSITION |
| | ) | TO MOTION FOR ENTRY OF |
| HAWAIIAN EXPRESS SERVICE, | ) | PERMANENT INJUNCTION AND |
| INC., a California corporation; et al. | ) | ORDER DIRECTING RETURN, |
| | ) | DESTRUCTION, OR OTHER |
| Defendants. | ) | REASONABLE DISPOSITION OF |
| | ) | ALL COPIES OF FREIGHT |
| | ) | CONTROL SYSTEM; EXHIBITS "A" |
| | ) | THROUGH "I" |
| | ) | |

### DECLARATION OF TIMOTHY J. HOGAN

I, TIMOTHY J. HOGAN, am an attorney licensed to practice before all the

courts of the State of Hawaii and I make this declaration under the penalty of

perjury. All the statements herein are true and correct to the best of my knowledge, information and belief. If called upon to testify regarding the matters herein, I am competent and willing to do so. I respectfully submit this declaration in support of the Plaintiff's replies the memoranda filed in opposition to his Motion for Issuance of Permanent Injunction.

1.     Attached hereto as Exhibit A is a true and correct  copy of the Order Denying Plaintiff Wayne Berry's Motion for Preliminary Injunction filed herein on October 8, 2004.

2.     Attached hereto as Exhibit B is a true and correct copy of the jury verdict in *Wayne Berry v. Fleming Companies, Inc.*, Civ. No.  01-00446 SPK/LEK.  That judgment is has not been set aside nor modified.

3.     Attached hereto as Exhibit C is a true and correct excerpt copy of the Chapter 11 Plan of Reorganization Debtors' and Official Committee of Unsecured Creditors' Third Amended and Revised Joint Plan of Reorganization of Fleming Companies, Inc. and Its Filing Subsidiaries Under Chapter 11 of the United States Bankruptcy Code Filed by FLEMING COMPANIES, INC.on May 28, 2004 in *In re Fleming Companies, Inc*. Bk. No. 03-10945 (MFW) (Bankr. Del.).

4.     Attached hereto as Exhibit D is a true and correct copy of the Order Granting Motion of Wayne Berry for an Order Granting Relief from the Automatic

2

Stay or, in the Alternative, Relief from the Discharge and Permanent Injunction Provisions of Debtors' and Official Committee of Unsecured Creditors' Third Amended and Revised Joint Plan of Reorganization of Fleming Companies, Inc. and Its Filing Subsidiaries Under Chapter 11 of the United States Bankruptcy Code. Signed in Court on 7/26/2004 filed in the in *In re Fleming Companies, Inc.* Bk. No. 03-10945 (MFW) (Bankr. Del.) on  July 27, 2004.

5.      Attached hereto as Exhibit E is a true and correct copy of a screen print of the list of tables that are in the Berry FCS Logistics Data.mbd database that was previously authenticated in the Declaration of Wayne Berry filed herein on June 6, 2005 and used by the PCT own expert Martin Walker referred to in his Second Supplemental Report where he confirmed that the number of tables in the real Berry FCS is 69.

6.      Attached hereto as Exhibit F is a true and  correct copy of a screen print of the list of tables that are in the copy of the Original Logistics Data.mdb Access database that I received from Anne Lopez, ESQ, attorney for the PCT that purported to be the Original Logistics Data.mdb database that Mr. Walker referred to in his Second Supplemental Report.  This program evidences 88 tables.

7.      Attached hereto as Exhibit G is a true and correct excerpt copy of the Protective Order filed herein.

8.    Attached hereto as Exhibit "H" is a true and correct copy of the Core-Mark Holdings Company, Inc.'s Form 10 K filed with the Securities and Exchange Commission and available on line on their web site.  The document is highlighted for the Court's convenience.

9.    Attached hereto as Exhibit "I" is a true and correct copy of an email Bates Number 305-306 that was produced to me by Lyle Hosoda, the Employee Defendants' counsel in this case in response to Mr. Berry's discovery request.

DATED:  Honolulu, Hawaii, January 19, 2006.


/s/ Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY

4

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WAYNE BERRY, a Hawaii citizen, | ) ) ) | Civ. No. 03-00385 SOM/LEK |
| Plaintiff, | ) ) ) | ORDER DENYING PLAINTIFF WAYNE BERRY'S MOTION FOR PRELIMINARY INJUNCTION |
| vs. | ) ) ) | |
| HAWAII EXPRESS SERVICE, INC., a California corporation, et al., | ) ) ) ) | |
| Defendants. | ) ) ) | |

**FILED IN THE**
**UNITED STATES DISTRICT COURT**
~~DISTRICT OF HAWAII~~

OCT 0 8 2004

~~at ___ o'clock and ___ min. ___ M~~
~~WALTER A. Y H. CHINN, CLERK~~

ORDER DENYING PLAINTIFF WAYNE BERRY'S
MOTION FOR PRELIMINARY INJUNCTION

I.      INTRODUCTION.

        Plaintiff Wayne Berry seeks an injunction against

Defendants C&S Wholesale Grocers, Inc., C&S Acquisitions, LLC,

and C&S Logistics of Hawaii, LLC (collectively, "C&S"), as well

as against Defendant Fleming Companies, Inc. ("Fleming"), and C&S

and Fleming affiliates, officers, agents, servants, and

employees, prohibiting the use, reproduction, and/or transfer of

the "Berry Freight Control System" computer software ("FCS").

Berry claims that he owns the copyright to FCS and that

Defendants have used and continue to use FCS and derivatives of

FCS in violation of his copyright.  Defendants deny that they are

now using FCS or a derivative of FCS.

        Berry's motion is DENIED.  Berry has not shown a

likelihood of success on his claim that Defendants are using, or

Exhibit A

intend to use in the future, FCS or a derivative of FCS. Berry similarly fails to show irreparable harm or a balance of hardships tipping sharply in his favor. The court is not persuaded by Berry's argument that present infringement must be presumed because of past infringement. Defendants rebut that presumption, showing that any infringement after July 2003 was innocent and that they have no intention of infringing in the future.

II.    STANDARD FOR INJUNCTIVE RELIEF.

To obtain a preliminary injunction, a party must demonstrate: 1) probable success on the merits and irreparable injury; or 2) sufficiently serious questions going to the merits to make the case a fair ground for litigation, with the balance of hardships tipping decidedly in favor of the party requesting relief.[1] Topanga Press, Inc. v. City of Los Angeles, 989 F.2d 1524, 1528 (9th Cir. 1993). These two formulations represent two points on a sliding scale, with the required degree of irreparable harm increasing as the probability of success decreases. Miller v. Cal. Pac. Med. Ctr., 19 F.3d 449, 456 (9th

---

[1] Traditionally, there were four factors to be considered in deciding whether an injunction or restraining order should issue: 1) the likelihood of the plaintiff's success on the merits; 2) the threat of irreparable harm to the plaintiff if the injunction is not imposed; 3) the relative balance of the harm to the plaintiff and the harm to the defendant; and 4) the public interest. Alaska v. Native Vill. of Venitie, 856 F.2d 1384, 1388 (9th Cir. 1988). These factors have been collapsed into the current test. See id.

2

Exhibit A

Cir. 1994). These formulations are not separate tests, but the extremes of a single continuum. <u>Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League</u>, 634 F.2d 1197, 1201 (9th Cir. 1980).

"If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." <u>Alaska v. Native Vill. of Venitie</u>, 856 F.2d 1384, 1389 (9th Cir. 1988) (<u>quoting</u> <u>Aguirre v. Chula Vista Sanitary Serv.</u>, 542 F.2d 779 (9th Cir. 1976)). If the plaintiff shows no chance of success on the merits, the injunction should not issue. Moreover, under any formulation, the moving party must demonstrate a "significant threat of irreparable injury." <u>Arcamuzi v. Continental Air Lines, Inc.</u>, 819 F.2d 935, 937 (9th Cir. 1987). Finally, a plaintiff must do more than merely allege imminent harm sufficient to establish standing; he or she must demonstrate immediate threatened injury as a prerequisite to injunctive relief. <u>Associated Gen. Contractors of Cal., Inc. v. Coalition For Econ. Equity</u>, 950 F.2d 1401, 1410 (9th Cir. 1991), <u>cert. denied</u>, 503 U.S. 985 (1992).

III.    <u>FINDINGS OF FACT.</u>

In an effort to rule quickly on the merits of this expedited motion for injunctive relief, and to avoid burdening the court's over-extended court reporters, the court did not

3

Exhibit A

request and therefore does not have a transcript of the live testimony, although the court was provided with a "rough" transcript.  Therefore, in referring to any live testimony in these findings of fact, this court is unable to give citations to specific pages or lines of a transcript.

This court has reviewed the briefs and accompanying papers.  All declarations and exhibits attached to the briefs are received in evidence for purposes of only the present motion (not trial), without objection by any party.  In addition, this court held an evidentiary hearing on September 28, 2004.  The court received further exhibits as evidence at the hearing and received live testimony from Mark Dillon.  In receiving live testimony, the court followed its nonjury civil evidentiary hearing procedures, posted on the court's web site under this judge's "Trial Procedures" at http://www.hid.uscourts.gov and described in Kuntz v. Sea Eagle Diving Adventures Corp., 199 F.R.D. 665 (D. Haw. 2001).  Under those procedures, all direct testimony is presented in the form of written declarations, and witnesses are made available for live cross-examination and redirect testimony. Defendants waived live cross-examination of Berry, but Berry exercised his right to cross-examine Dillon.  Based on the

4

Exhibit A

evidence presented, the court finds the following by a
preponderance of the evidence.[2]

      A.  In 1993, Berry created FCS, a computer program
that can be used to coordinate shipments of items.  Berry gave
Fleming, free of charge, a nonexclusive license to use FCS in
1999.  <u>See</u> Fleming Ex. A; Berry Depo. at 82, Fleming Ex. B.
While Berry hoped to sell FCS to other entities that shipped
items long distances, he did not succeed in that effort.  Berry
Depo. at 79.

      B.  Berry subsequently updated FCS, calling the new
version FCS 2003.  <u>Id.</u> at 41; Fleming Ex. B.  This program,
according to Berry himself, is "radically different in many ways
and much improved than the one that was left with Fleming in
October of 1999."  <u>Id.</u> at 29.  Berry has licensed, for a fee, FCS
2003 to at least one company not involved in the present
litigation.  <u>Id.</u>

      C.  The present lawsuit is a continuation of a dispute
that generated a previous lawsuit.  In 2001, Berry sued Fleming
in this district, alleging that Fleming had infringed on his

_____

    [2]To the extent any finding of fact should more properly be
designated a conclusion of law, it should be treated as a
conclusion of law.  Similarly, to the extent any conclusion of
law should more properly be designated a finding of fact, it
should be treated as a finding of fact.  For ease of reference to
particular findings and conclusions in later proceedings, if any,
the findings and conclusions are presented in lettered
paragraphs.

Exhibit A

copyright to FCS,[3] as well as on his copyrights to two other programs, "Crystal Reports Software" and "Flemingpo.exe Software." Berry v. Fleming Companies, Inc. et al., Civ. No. 01-00446 SPK/LEK.  On March 6, 2003, a jury found that Berry owned the copyrights to all three programs and that Fleming had a license to use all three programs. See Fleming Ex. 2.  The jury further found that Fleming had willfully violated Berry's copyright to FCS by making unauthorized changes to FCS.  Id. However, the jury rejected Berry's contention that Fleming had made unauthorized changes to the other two programs.  Id.  The jury awarded Berry $98,250.00 in damages for Fleming's infringement of the FCS copyright.  Id.

     D.   Fleming filed five post-trial motions challenging the verdict.  All of these post-trial motions remain pending before Judge King, and no hearing date has been set at this time. The delay was caused when Fleming filed a petition for voluntary bankruptcy that automatically stayed the proceedings before Judge King.  The Delaware Bankruptcy Court has recently lifted the stay on Berry's pre-petition suit.  See Fleming Ex. 3.

     E.   Even while challenging the verdict, Fleming took steps to end its use of FCS.  Mark Dillon, the Logistics LAN Administrator of Fleming's Hawaii division and now a C&S

---

    [3] Subsequent references to FCS refer to the original version of FCS, unless otherwise stated.

Exhibit A

employee, testified during the bankruptcy proceedings that
Fleming went back to the "Berry database in its original form,
the form under which it was licensed to us in October 1999."
Dillon Bankruptcy Testimony, Hearing Ex. 102 at 86, received in
evidence by this court.  Dillon acknowledged that Fleming did
not have an archived copy of FCS in the exact form that had been
licensed to Fleming in 1999, but said that he did have a copy
from June 2000.  Id.  Dillon stated that the only difference
between the June 2000 version and the version licensed in October
1999 was that the 2000 version had a feature he had added to
compensate for a Y2K failure, as well as a field scratch name
added to the company name table, and possibly two label changes
on other fields.  Dillon Affidavit ¶ 13 (as revised orally at the
hearing before this court).  Dillon said that he removed the Y2K
feature to try to return FCS to its original licensed version,
id. ¶ 14, having forgotten about the other changes, see Dillon
Live Testimony.

   F. Dillon and Teresa Noa, another former Fleming
employee who now works for C&S, said that reverting to the
original FCS database caused a variety of problems.  Hearing Ex.
102 at 86-87; Noa Aff. ¶ 14.  Therefore, Fleming opted to
discontinue use of FCS altogether on June 9, 2003.  Hearing Ex.
102 at 87; Noa Aff. ¶ 17.  Dillon says that the functions
formerly performed by Berry's software "have since been performed

7

Exhibit A

using a combination of Microsoft Excel and Crystal Reports,"
which are both "'off the shelf' products available to the public
over the Internet or any of numerous retail stores." Dillon
Decl. ¶ 4, Fleming Ex. D. To switch from FCS to Excel, Dillon
extracted the Fleming data that had been used with FCS, and then
imported that data into the Excel system. Hearing Ex. 102 at
108-09. Berry claims that this extraction violated his copyright
because Fleming transferred not only its data, but also
components of FCS.

      G.   At the hearing on the present motion, Berry
identified as such components certain spreadsheet fields and the
portion of FCS that assigned sequential numbers to orders.
Dillon countered that certain fields were necessary in any
spreadsheet in the industry. Berry noted that C&S now uses
spreadsheets with sequential numbers for orders, and argued that
Dillon had imported the numbering system from FCS. There is no
evidence before the court that the component of FCS that provided
for sequential numbers is somehow unique to FCS. Dillon
testified at the hearing that all tracking systems, including
systems that existed long before computers were in use, assigned
identifiers to orders. He likened the identifiers to ledger
numbers. The particular FCS components that Berry alleges Dillon
copied when Dillon imported data are necessary parts of any
freight tracking system.

8

Exhibit A

H.    On or about July 7, 2003, C&S agreed to purchase Fleming's wholesale division, including the division in Hawaii. See Fleming Ex. G.  C&S purchased the intellectual property owned and used by Fleming, but FCS was not listed among the assets being acquired.  Id. at Schedule 8.1.  Over Berry's objections, the Bankruptcy Court approved the sale on August 15, 2003, see Fleming Ex. 4, and the sale closed on or about August 23, 2003, see Fleming Ex. H.

I.    In early July 2003, Fleming hired Guidance Software, Inc. ("Guidance"), to remove any software created by Berry from its computer system and to ensure that no Fleming employee would have access to such software.  See Fleming Exs. E and F.  Guidance assigned Michael Gurzi to cleanse Fleming's computer system.  Gurzi said that he first made an image of each computer to "preserve the original data and hold it as evidence." Fleming Ex. F.  Gurzi next wiped the computers clean of all programs and data.  He then re-installed software, such as Microsoft Office, that was not owned by Berry.  Id.  Gurzi and Dillon also restored approximately 20,000 user files, such as Word documents and Excel Spreadsheets, to the system.  Hearing Ex. 102 at 92-93.  Gurzi then made a second image of each drive to preserve a record of the reconstructed data.  See Fleming Ex. F.  Gurzi said that, after his work, Fleming's files were "wiped of all data to include any software created by Mr. Wayne Berry,

9

Exhibit A

and any derivative thereof" as of July 7, 2003. Gurzi Aff. ¶ 8, Fleming Ex. E.

      J.   Berry alleges that the second image produced by Gurzi shows that sixteen files including the words "Fleming Logistics MDB" in their names remained on the network after the computers were supposedly scrubbed of all Berry files and software. These files, according to Berry, are FCS files. According to Dillon, those files "were among the user files that were retained on the network." Hearing Ex. 102 at 94. The retention, Dillon said, was inadvertent. He had created the files in connection with Berry's original lawsuit, and had placed them where he thought they would escape detection by Berry, who knew Fleming's system and could have examined files in Fleming's system. To hide any files that Berry might examine in connection with the prior litigation, Dillon put the files he created for litigation purposes on his home computer. Dillon sometimes also put information under file titles unlikely to arouse suspicion. Id.; Dillon Live Testimony. Dillon said that at some point before July 26, 2004, he did a search of every computer on the network and determined that the sixteen offending files were no longer on the system. Id. However, because it is unclear when these files were removed, it is unclear whether they were on the system when C&S took over.

10

Exhibit A

K.   On Sunday, July 13, 2003, after Gurzi had completed his work, Dillon reduced the size of the database still on the computer.  Dillon said he was only accessing Fleming's data, but Berry argues that Dillon was also accessing FCS or components of FCS.

L.   After Berry filed the present complaint, Fleming retained a second forensic software expert, New Technologies, Inc. ("NTI").  NTI was retained to examine the computers sold by Fleming to C&S to determine whether any files or software created by Berry were on the computers at the time of the sale.  See Stevens Depo. at 10, Fleming Ex. K.  If any files were found, NTI was to determine the last time that any such files had been opened or modified, and to erase any such software from the system.  Id.

M.   On learning that Fleming had retained NTI, Berry's counsel contacted NTI and warned NTI that it could face RICO charges, as Guidance already had, if it worked for Fleming and accessed the FCS program.  Anderson Depo. at 11-13, Fleming Ex. M.  Although it had already sent a consultant to Hawaii to work on the project, NTI cancelled its consulting agreement with Fleming to avoid a potential lawsuit.  Id. at 11, 14-15  NTI was to have performed its work by the first week of July 2004.  Stevens Depo. at 14.

11

Exhibit A

N.    The court is thus left without a definitive statement as to the present state of the computer files and must rely on what the parties argue happened earlier and on the inferences the parties urge upon the court.  Berry asserts that the information captured by Gurzi after the scrubbing, including the sixteen files containing Berry's software, "was what Fleming sold to C&S."  Motion at 7.  Berry's attorney, Timothy Hogan, says that Lex Smith, Fleming's counsel, "told me it was his understanding that the second acquired images contained the software that was sold to C&S."  Hogan Decl. ¶ 16.  Even if Hogan could serve as a fact witness while being counsel of record, and even if Smith's testimony were considered a party admission, it would be unpersuasive.  It is equivocal and does not represent concrete evidence that Berry's intellectual property was transferred in the sale.

O.    There is, however, some evidence that C&S did not use or access FCS, even if it was on its system.  The court therefore finds that Berry has not met his burden of showing that FCS, even if it was transferred to C&S, is still on C&S's computers or is still being used today.[4]

P.    Berry next asserts that Fleming "trick[ed] the

_____

[4] It would have been helpful to the court to have had NTI's report to corroborate, or disprove, Dillon's and Noa's testimony. Berry's efforts to impede NTI suggest that Berry's true objective may not be to protect any rights in FCS.

12

Exhibit A

Delaware Bankruptcy Court" into approving the sale to C&S by falsely claiming that it was not using FCS and falsely claiming that FCS would not be part of the sale.  Motion at 8-9.  Berry again points to the presence of Berry's software on the network when Guidance took the post-scrubbing image as proof that FCS was sold to C&S.  Id.; Berry Decl. ¶ 6.  As the court has explained, it is unclear whether FCS was on the Fleming computers at the time of the sale.

Q.    Berry further claims that Fleming and Gurzi committed "fraud" that was "clear and unmistakable" on the Bankruptcy Court when Gurzi, not having examined Dillon's home computer, told the court that he had made sure that no Fleming employee had access FCS.  Mot. at 11; Dillon Depo. at 321-323, Berry Ex. M; Gurzi Aff. ¶ 9, Berry Ex. I.  It does appear that Gurzi's report may have been incorrect.  Dillon was able at the time to access Berry software from home.  However, there is no evidence of an intent to defraud the court.  Gurzi apparently was unaware of what was on Dillon's home computer.  More importantly, there is no evidence that Dillon did access FCS from his home, and there is no evidence to refute Dillon's testimony that he has not used FCS since June 2003.  Having observed Dillon's demeanor, this court finds Dillon credible.  At worst, Dillon forgot about files on his home computer.

R.    Fleming acknowledges that a literal copy of FCS

13

Exhibit A

was made when Guidance recorded an image of all files on its computer before the scrubbing. Fleming argues, however, that Gurzi's copying, done as part of the effort to comply with the jury's finding of infringement, was fair use because it was done in an effort to preserve evidence in the ongoing litigation. Opp. at 18.

S.   Berry next contends that his intellectual property is at risk, and that he faces imminent harm, because Fleming intends to "create a replacement for Mr. Berry's work." Mot. at 16. Berry argues that a company called Manugistics, Inc., is doing work for Fleming post-bankruptcy, and that Manugistics is "engaged in ongoing software development regarding software that performs the same apparent functions" as FCS. Mot. at 17-18. Berry claims that Fleming, in conjunction with Manugistics, is improperly using FCS to reverse-engineer a program that will compete with FCS.

T.   While Fleming and Manugistics are admittedly working to develop software, there is no evidence that they are reverse-engineering FCS in the process. Certainly, a bankruptcy filing by Fleming suggests that Fleming continues to use Manugistics. Berry Ex. S. An e-mail from Noa to Dillon indicates that Fleming was considering using a Manugistics program to replace FCS. See Berry Ex. W. A replacement, however, is not necessarily a product of reverse-engineering.

14

Exhibit A