# EXHIBIT N

TIMOTHY J. HOGAN 5312-0
ATTORNEY AT LAW
1050 Bishop Street, No. 433
Honolulu, Hawaii 96813
Tel. No. (808) 382-3698
Fax No. (808) 356-1682
E-mail: tjh@timhogan.com

Attorney for Plaintiff
WAYNE BERRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WAYNE BERRY,<br><br>              Plaintiff,<br><br>vs.<br><br>DEUTSCHE BANK TRUST COMPANY AMERICAS (F.A. BANKERS TRUST COMPANY)AND JP MORGAN CHASE BANK IN THEIR SEPARATE CAPACITIES AND AS AGENTS FOR THE PRE AND POST-PETITION LENDERS OF FLEMING COMPANIES, INC.; GENERAL ELECTRIC CAPITAL CORPORATION; C&S Wholesale Grocers, Inc.,DOES 1 TO 200,<br><br>              Defendants. | Civ. No. 07 CV-0172 SOM-LEK<br>(Copyright)<br><br><br>FIRST AMENDED COMPLAINT;<br>DEMAND FOR JURY TRIAL;<br>AND SUMMONS |

## COMPLAINT

COMES NOW, Plaintiff Wayne Berry ("Plaintiff"), by and through his undersigned counsel, and hereby complains of the above-entitled Defendants and alleges as follows:

## PARTIES

1. Plaintiff is an independent software developer and inventor who at all times relevant to the matters complained of herein was a citizen and domiciliary of the State of Hawaii.

2. Defendants Deutsche Bank Trust Company Americas formerly known as Bankers Trust Company and JP Morgan Chase Bank are the lead agents of those certain credit facilities for a syndicate of lenders of the former debtor Fleming Companies, Inc. and its subsidiaries dated June 18, 2002 and twice amended. Defendant General Electric Capital Corporation ("GECC") was also a lender to the former Fleming Companies, Inc. and is presently a lender to two additional borrowers and infringers of Berry works, C&S Wholesale Grocers, Inc. ("C&S")and Core-Mark Holdings, Inc. ("Core-Mark") and their subsidiaries. Together these lenders and the participants in the syndication of the June 18, 2002 loans (hereinafter the "Pre-Petition Lenders").

3. Defendant C&S is, upon information and belief, a Vermont

2

Corporation doing business interstate and competes with Mr. Berry in the business of ocean freight logistics and is engaged in interstate commerce as the nation's second largest wholesale grocer.

4. Does 1 through 200 are defendants whose identities and liability are not yet fully known to Plaintiff who has after diligent review of the records and documents been unable to properly identify. When their identities are made known to Plaintiff these defendants shall be identified as Does as set forth herein.

5. On April 1, 2003, Fleming owed the Pre-Petition Lenders approximately $604,000,000 under the Pre-Petition Credit Agreement as of the Petition Date. $219,000,000 of that is owed under the revolving loan facility; $239,000,000 was owed on account of a term loan and $146,000,000 was committed to back outstanding letters of credit.

6. Upon the Filing of the Fleming Bankruptcy petition on April 1, 2003, the Pre-Petition Lenders chose to cease lending under the Pre-Petition Credit Agreement.

7. At the time of the filing of the Voluntary Petition on April 1, 2003, Fleming balance sheet showed liabilities far exceeding assets. Fleming possessed approximately $300,000,000 in inventory that was subject to claims under the Perishable Agricultural Commodities Act ("PACA") and the claims of creditors

exercising reclamation rights under state law that were both senior to the rights of the Pre-Petition Lenders. Fleming possessed certain contract rights under Facilities Standby Agreements ("FSA") with retail grocers but without additional product and the ability to service the FSA's Fleming's few marketable assets were in imminent risk of becoming virtually worthless.

8. Despite having touted state of the art distribution software, Fleming's actual interest in such technology was as a willful infringer of a work entitled Freight Control System 1993 ("FCS1993") and over one hundred subsidiary unpublished works that were and remain all owned by Wayne Berry as the author and copyright owner.

9. From on or about January 1, 2000 to the time of the filing of the voluntary Chapter 11 Bankruptcy petition on April 1, 2003, Fleming's Hawaii division was operating a freight logistics company using an illegal derivative of the Plaintiff's original work. This use continued to no earlier than June 9, 2003. This division along with feeder warehouses in California were the only parts of the Fleming wholesale operation that interested the only party willing to purchase the Fleming wholesale operations. The Hawaii division was entirely dependant on the use of illegal copies of Berry's works from the filing of the Petition to no earlier than June 9, 2003.

4

10.	To avoid an imminent shutdown of its operations and to further the Pre-Petition Lenders goal of repayment of the Pre-Petition Credit Agreement, Fleming sought and obtained fresh working capital to fund on-going post-petition operations including the new acts of infringement of Plaintiff's works. To that end, certain of the Pre-Petition Lenders including the Defendants named herein agreed to fund Flemings's wholesale operations with an emergency $50,000,000 in financing (the "Bridge Financing") to save Fleming's operations from an imminent shut down. Hereinafter these lenders are referred to as the Post-Petition Lenders."

11.	GECC despite having been given infringement warnings regarding the infringement of Berry works, for the purpose of financial gain, continues to provide financial support to Core-Mark and C&S and conducts the affairs of an enterprise engaged in interstate commerce as a principal, with full knowledge of the ongoing infringement of Berry works. The works that are being infringed include over one hundred separate works including over 20 registered works of original authorship and derivatives thereof all owned by Wayne Berry as the Copyright owner.

## JURISDICTION AND VENUE

12.	This Court has jurisdiction under federal subject matter jurisdiction pursuant to the Federal Copyright Act 17 U.S.C. §§ 101, et seq. and 28 U.S.C.

§ 1338 (b); RICO 18 U.S.C. § 1962. State law claims are also proper under pendent jurisdiction.

13. Venue is proper in the District pursuant to 28 U.S.C. §§ 1391and 1400 because the wrongs that are the subject of this complaint occurred in the State of Hawaii or were directed against one of its citizens. Each of the Defendants named herein have had sufficient minimum contacts with the state of Hawaii to be amenable to service of process by a Hawaii court.[1] Venue is also proper in the District of Hawaii pursuant to §1965(a) of RICO, 18 U.S.C. §1965(a) because each of the defendants resides and/or is found to have an agent and/or transact their affairs in this district. As to foreign defendants, in accordance with §1965(b) of RICO, the ends of justice require that all defendants be brought before this Court.

14. On or about 1993, Plaintiff created an original work of authorship which was then fixed as a tangible medium of expression. (Hereinafter "FCS 1993").

15. The work was an original work and contained substantial amounts of material created by Plaintiff's own skill, labor and judgment.

---

[1] State of Hawaii Bureau of Conveyances Grantor / Grantee Search on 12/29/06 Showed over 400 Transactions related to Deutsche Bank Trust Company Americas and over 500 for JP Morgan Chase Bank.

16. The subject software work is copyrightable under the laws of the United States of America and was authored in the United States of America.

17. On or about October 1999, Plaintiff complied with the statutory formalities for registering his copyright in FCS 1993 by fully complying with Federal laws and regulations by depositing with the Copyright Office, two copies of the best version of the FCS 1993 source code, filing the application and paying the required fees.

18. Shortly thereafter, Plaintiff received a filed registration for FCS 1993 from the Copyright Office. The date, class and registration number certificate received from the Registrar of Copyrights is as follows: "Freight Control System" dated October 19, 1999, Copyright Registration Number TX 5-079-445. Additional works that continue to be infringed by C&S and Core-Mark include, but are not limited to, Prepaid vendor invoice definition for Crystal report.txt TX-5-268-865, SQL export queries, TXu-11-277-726, FCS1993 Terminal Reporting System, version 1.0, TXu-1-302-622, FCS 1993, crystal reports, pallet tags, version 1.0, TXu-1-3-2-623, Crystal report receiving report, version 1.0, Txu-1-302-624.

19. Additional registered works by registration include but are not limited to, TXu-1-302-625 to Txu-1-302-627; Txu-1-340-295 to 302. Additional works,

7

too numerous to name are also Berry works that are being infringed by persons under the control of the former Fleming Lenders. All of these works, including any derivatives of these works are Berry authored original works and no license or grant of any interest authorized the use by Core-Mark and/or C&S and the use constitutes acts of willful infringement for financial gain. The money derived from their use that received by GECC constitutes the proceeds of a specified unlawful activity and a violation of RICO.

20. FCS 1993 is a software program Plaintiff wrote in Microsoft Access and Visual Basic using both the Visual Development Environment and hand-coding. FCS 1993 is primarily a database designed to control and monitor consolidation and containerization of freight.

21. FCS 1993 contains database tables, queries, screens and macros that handle Accounts Receivable, Accounts Payable, Job Costing, Logistic Scheduling and Real-Time Shipment Tracking. The principle unique feature of the database is the ability for a user of this system to control a large number of purchase orders and annotate shipping information to the records for billing and tracking purposes along with planning and scheduling efficiencies that translate directly to lower freight costs. The user can then build containers, which contain these individual Purchase Orders. The user can enter costs for both individual purchase orders and

8

for entire containers. The system will allocate container costs to the individual purchase orders. Finally, the "Bill To" party can be invoiced for the shipment and a profitability derived from the billed amount less the allocated costs.

## COUNT I
## CONTRIBUTORY AND/OR VICARIOUS INFRINGEMENT

22. During the period beginning in 2000, Fleming Companies, Inc. ("Fleming") infringed plaintiff's work by making illegal derivative copies and causing the use of these unlicensed works in Fleming's wholesale business.

23. On March 6, 2003 a jury in Wayne Berry v. Fleming Companies, Inc. CV 01-00446 SPK LEK found that Berry had a valid copyright in FCS and that Fleming engaged in willful infringement.

24. Starting in the Spring of 2002, Defendants Deutsche Bank Trust Company Americas and JP Morgan Chase Bank in their separate capacities and as agents for the secured lenders of Fleming Companies, Inc. had reason to know that Fleming might be engaged in infringing activities but because the Lenders enjoyed a direct financial benefit from the continued use of the Berry FCS they continued to provide funding and to exercise complete control over Fleming to cause Fleming to continue to infringe plaintiff's work. The infringement of Mr. Berry's work from after the Fall of 2002 when the Lenders were given infringement warning letters and became aware of Mr. Berry's right to be paid for infringing use of his

work that continued until the filing of the voluntary Chapter 11 Petition on April 1, 2003, the Lenders received significant sums of money derived from the infringing activities. The knowledge of the infringement is imputed to other Fleming Lender's.

26. The Lenders that responded to the Berry infringement warning letters all denied any infringement. It was not until March 2006 that Mr. Berry learned that these denials were false. Because the denials were made by publically traded and regulated financial institutions regarding whom false statements made regarding willful infringement would amount to misprision of a felony, it was reasonable that Mr. Berry relied on their denials and therefore his discovery of the true extent of their complicity was actively concealed from him.

26. At the time of this jury verdict Fleming's lack of creditworthiness combined with the ongoing Securities and Exchange Commission ("SEC") formal investigation caused certain of the Lenders to be Fleming's only available source of operating capital. Based on the then existing loan covenants and the fact that Fleming had no post-petition financing in place, the Lenders held total control over Fleming's operations and exercised that control to cause Fleming to continue to infringe Plaintiff's works after it filed for Chapter 11 protection.

27. Despite the knowledge that Fleming was an adjudicated willful

infringer the Lenders caused Fleming to continue to infringe so that the Lenders could be paid on their loan obligation.

28. In order to realize the Lenders' objective to sell the Fleming wholesale division it was necessary to keep the infringing Fleming freight operations in operation to preserve the value of the Fleming loans owed to the Lenders that, but for the use of the Berry FCS 1993, could not be repaid.

29. Because the March 6, 2003 willful infringement jury verdict meant that a permanent injunction might be issued any time, Fleming filed its chapter 11 petition despite the fact that it had no proper Debtor-in-Possession financing in place. The Lenders, though aware that Fleming was going to continue to infringe in the period after the jury verdict or, in the alternative, having knowledge of facts that would have put a reasonable lender on notice of ongoing infringement, directed Fleming to use another derivative of the Berry FCS 1993 as a replacement so that Fleming would continue to have the ability to pay the Lenders' loans from money derived from infringement post-petition.

30. The Lenders, undeterred by the potential for infringement liability believing that they could secretly control Fleming free from detection, directed Fleming to continue to operate the Fleming Freight logistics business using infringing software.

11

31. Starting no later than January 1, 2000 and continuing to no earlier than June 9, 2003, Fleming Companies, Inc. and its employees engaged in thousands of separate act of direct infringement.

32. The Lenders aided, facilitated, and enabled thousands of separate acts of FCS 1993 infringement.

33. The Lenders engaged in substantial participation in the infringing activities including providing finances that were intended to advance the infringement.

34. Even if the Lenders did not have actual knowledge of the infringing activity they had reason to know of the third party's direct infringement and had the power and ability to stop it and are liable for contributory infringement.

35. The Lenders had the power to control the infringement.

36. The Lenders had a direct financial interest in the continuation of Fleming's Hawaii logistics operation as the one asset of value securing the loans.

37. But for the continued infringement the Lenders would have received little or nothing on their secured loans and are liable to Plaintiff as vicarious infringers.

38. Starting in August of 2003, GECC, with full knowledge of the infringement of Berry's works began to support C&S and Core-Mark in their acts

12

of infringement that continue as of this date.

## COUNT II
## UNJUST ENRICHMENT

39. As a separate and distinct claim from the claims under the Copyright Act, starting in 2001, the Lenders knew that Mr. Berry had not licensed the use of any derivative copy of his work. The Lenders knew that if Fleming infringed Berry expected to be paid for the use of his work.

40. In the period after April 1, 2003, the Lenders directed Fleming to risk continued infringement so that the Lender's loans would be paid. But for the use of Plaintiff's work, the Lenders would have received little in the break up of Fleming's wholesale business.

41. Both the Lenders and Berry had an expectation that Berry would receive compensation for any unlicensed use of his works.

42. The Lenders received a substantial financial benefit conferred upon them by Mr. Berry and it would be unconscionable to permit them to retain the full amount of that benefit that was obtained with the knowledge that Berry would have to be paid if Fleming continued to infringe.

43. The Lenders are indebted to Mr. Berry in an amount to be determined at trail based upon the Lenders' implied promise to pay the reasonable value of the material infringed from which they derived a substantial benefit.

13

## COUNT III
## RICO

44. GECC and C&S are persons as defined by the Racketeering Influenced and Corrupt Organizations Act ("RICO") and as a principals of such enterprise has agreed, participated as a Principal in the operation of an Enterprise, committed overt acts and received money derived from specified unlawful activities in violation of 18 U.S.C. § 1962(a), (c) and (d). The predicate acts that first gave rise to liability in RICO involve acts of Criminal Copyright Infringement in violation of 18 U.S.C. § 2319 (relating to criminal infringement of a copyright) the number of these instances of violations of Title 18 are too numerous to be stated herein but include the daily booting up of computers that load, without any license, pirated copies of Mr. Berry's software each day the infringement continues. Additional predicate acts are derived form violations of the Hobbs Act and other Federal Criminal statutes. These predicate acts continue as of this writing.

45. Money knowingly derived from Criminal Copyright Infringement is then received by GECC in violation of 18 U.S.C. § 1962(a) and is not reported to the United States as money derived from a specified unlawful activity and constitutes money laundering as provided by Title 18 U.S.C. and constitutes additional predicate acts.

14

46. The RICO enterprise operates in interstate commerce and has existed for no less than two years and will continue to exists unless the Court acts to order that it cease existence and commission of acts that constitute RICO predicate acts.

47. Mr. Berry continues to be injured by the RICO enterprise because the market for lawful copies of his original works is destroyed by the pirated copies that C&S and Core-Mark use and he is subject to direct and indirect acts of threat to his person and property by the members of the Enterprise.

48. The Lenders, C&S, their agents, attorneys, including their attorneys in this case, officers and directors have all agreed and committed overt acts in furtherance of the objectives of the RICO Enterprise, including committing acts of physical threat and intimidation against Mr. Berry in violation of the Hobbs Act 18 U.S.C. § 1951 and are co-conspirators in violation of RICO 18 U.S.C. § 1962(d)

49. The Defendants including the RICO person C&S though its attorneys have attempted to induce Mr. Berry to give up his rights to his works through acts of physical threat and threat to his property, the most recent occurring on Monday August 13, 2007. By asking repeated irrelevant questions regarding Mr. Berry's ability to protect himself with licensed firearms, from criminal assault, in a deposition Lex Smith ("Smith") C&S and Fleming's attorney under the direction of Michael Baumann the Deutsche Bank, JP Morgan Chase Bank and Fleming-Core-Mark's attorney, all RICO persons, did induce or attempt to induce Mr.

15

Berry a criminal victim to give up property or property rights through acts of threat of violence and/or physical intimidation.

50.     On Monday August 13, 2007, and at earlier times, Smith, and other under Baumann's direction as the Lenders' C&S's ,Core-Mark's and Lenders' agents, used and/or attempt to use Plaintiff's reasonable fear of physical injury or economic harm in order to induce Mr. Berry to consent to give up his intellectual property. This conduct along with repeated and ongoing threats directed at Mr. Berry's customers actually or potentially obstruct, delay, or affect interstate or foreign commerce by preventing any competitor in the Hawaii Mainland USA ocean freight logistics market for food and restaurant supplies from competing with C&S that presently possesses the vast majority of the Hawaii market share.

WHEREFORE PLAINTIFF PRAYS FOR:

A.  As to JP Morgan Chase Bank and Deutsche Bank, damages for infringement of the copyright from and after January 2000, to and including March 31, 2003 as provided by the Copyright Act without limitation actual damages and accounting for all gains and profits derived by each of these defendants through the willful infringement of Plaintiff's copyright or Plaintiff's right to statutory damages for willful infringement if elected;

B.    As to JP Morgan Chase Bank and Deutsche Bank, for the period after

April 1, 2003 to no earlier than June 9, 2003, damages for infringement of the copyright as provided by the Copyright Act without limitation actual damages and accounting for all gains and profits derived by defendants through infringement of Plaintiff's copyright or Plaintiff's right to statutory damages is elected;

C. Damages to be determined at trial for the value of the benefit that the Lenders received with the expectation that Berry would receive payment for the unauthorized use of his work based on an implied promise;

D. Plaintiff reserves the right to elect statutory damages any time prior to entry of judgment;

E. Payment of the full costs of the action and reasonable attorney's fees at rates paid to the attorney for the opposing parties;

F. A temporary restraining order, preliminary and permanent injunction against all defendants an anyone with knowledge of the injunction to prohibit any further acts that assist, finance or otherwise facilitate the ongoing acts of infringement and threats of violence or intimidation regarding the Plaintiff and/or his works that are the subject of this action;

G. Treble damages against all defendants, including, but not limited to, GECC and C&S for all infringements after August 15, 2004 and continuing up to the date of this First Amended Complaint and an immediate injunction against the defendants, including GECC to prohibit the Defendants their agents, attorneys,

officers and directors from providing any further material support for C&S, Core-Mark or any other direct infringer of Berry works;

H. Should the Lenders persist in their support for criminal infringers, and for persons violating the Hobbs Act, Mr. Berry shall seek the imposition of a receiver or other Court appointed officer to take control of the defendants who continue to commit acts of willful infringement for financial gain or provide material support to infringers and direct other criminal act, as provided by law to require that they cease any material support for ongoing acts of willful infringement for financial gain;

I. Such other and further relief as may be just.

Dated:      Honolulu, Hawaii, August 15, 2007.

/S/Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY

## DEMAND FOR JURY TRIAL

Plaintiff Wayne Berry hereby respectfully demands a trial by jury of all issues triable thereto.

Dated: Honolulu, Hawaii, August 15, 2007/

/S/Timothy J. Hogan
TIMOTHY J. HOGAN
Attorney for Plaintiff WAYNE BERRY