# EXHIBIT O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| WAYNE BERRY,<br><br>         Plaintiff,<br><br>      vs.<br><br>DEUTSCHE BANK TRUST COMPANY AMERICAS (f.a. BANKERS TRUST COMPANY) and JP MORGAN CHASE BANK, in their separate capacities and as agents for the pre- and post-petition lenders of Fleming Companies, Inc.; GENERAL ELECTRIC CAPITAL CORPORATION; C&S WHOLESALE GROCERS, INC.; THE POST-CONFIRMATION TRUST OF FLEMING COMPANIES, INC.; ROBERT KORS; CORE-MARK HOLDINGS INC. and DOES 1 to 200.<br><br><br>         Defendants. | : 01:07 CV 7634 WHP<br>: Judge William H. Pauley III<br>: ECF Case<br>:<br>: **SECOND AMENDED<br>COMPLAINT AND JURY<br>DEMAND; EXHIBITS "A" TO<br>"R"**<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br><br>: |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SECOND AMENDED COMPLAINT

i

Table of Contents

(Submitted for Convenience and Not to Limit Any Claim or Allegation)

Table of Contents  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  Ii

Parties  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Jurisdiction and Venue  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
    Basis of Copyright Jurisdiction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

Prior Litigation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
    The First Hawaii Case  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13
    The Second Hawaii Case  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

The Lenders Join the Enterprise  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

GECC Agrees to Join the Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

Claim I Direct Copyright Infringement C&S, Core-mark and Doe Defendants . . . . . . . . 34

Claim II Contributory and Vicarious Copyright Infringement Chase, Deutsche Bank and
    GECC  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

Claim III Contributory And/Or Vicarious Copyright Infringement Core-Mark, C&S  . . 41

Claim IV Unjust  Enrichment and Quantum Meruit the Lenders  . . . . . . . . . . . . . . . . . . 42

Claim V Breach of Contract for Damages and  Specific Performance Kors and the PCT  43

**Claim VI Tortious Inducement of Breach of Fiduciary Duty PCT, Kors and C&S** . . . . . . 43

**Claim VII Aiding and Abetting Breach of Fiduciary Duty PCT, Kors and C&S** . . . . . . . . 45

**Claim VIII Tortious Interference with Contractual Relations PCT, Kors and C&S** . . . . . 46

**Claim IX Aiding and Abetting Conversion of Client Funds PCT, Kors and C&S** . . . . . . 47

**Claim X Abuse of Process PCT, Kors and C&S** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

**Claim XI Conversion or Alternatively Trespass to Material Objects C&S, Core-Mark** . 49

**Claim XII RICO All Defendants** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
       **The 18 U.S.C. § 1962(c) Enterprise** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
       **Pattern of Racketeering** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
             **Under Rico 18 U.S.C. § 1961(1)(A)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59
             **Under Rico 18 U.S.C. § 1961(1)(B)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60
       **RICO Offenses** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

**Additional RICO Predicates and Doe Defendants** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

**Prayer for Relief** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

COMES NOW, Plaintiff Wayne Berry ("Plaintiff"), by and through his undersigned counsel, and hereby complains of the above-named Defendants and alleges acts occurring up to the filing of this Second Amend Complaint as follows:

## PARTIES

1.      Plaintiff is an independent software developer and inventor who at times relevant to the matters complained of herein was a citizen and domiciliary of the State of Hawaii and presently resides in the State of Florida.  Mr. Berry has overseen logistics operations that have shipped well more than one billion dollars of commodities in interstate commerce.

2.      Upon information and belief, Defendant Deutsche Bank Trust Company Americas ("Deutsche Bank") formerly known as Bankers Trust Company is a New York chartered bank with its principal place of business in New York.

3.      Upon information and belief, JP Morgan Chase Bank ("Chase") is a Delaware corporation with its principal place of business in the state of New York.

4.      Together Chase and Deutsche Bank served as the lead agents of those certain credit facilities for a syndicate of lenders of the former debtor Fleming Companies, Inc. and its subsidiaries dated June 18, 2002 and twice amended.

5.      Defendant General Electric Capital Corporation ("GECC") was also a pre-bankruptcy lender to the former Fleming Companies, Inc. under the June 18, 2002 credit facility and is presently lender to two additional borrowers, defendants C&S Wholesale Grocers, Inc. ("C&S") and defendant Core-Mark Holdings, Inc. ("Core-Mark").

6.      Chase, Deutsche Bank and GECC and the other Doe participants in the syndication of the June 18, 2002 loans are hereinafter referred to collectively as the "Pre-Petition

1

Lenders" or the "Lenders."

7.      Upon information and belief, Core-Mark is a Delaware corporation with its principal place of business in the State of California.  Core-Mark transacts business in several states and Canada, and purports to be a lawful wholesale distributor of cigarettes in Hawaii.

8.      Defendant C&S is, upon information and belief, a Vermont Corporation with its principal place of business in New Hampshire and Vermont and is doing business interstate and competes with Mr. Berry in the business of ocean freight logistics and is engaged in interstate commerce and claims to be the nation's second largest wholesale grocer with sales reported of over $14 billion annually.

9.      C&S is the sole wholesale grocery distributor with a full line grocery warehouse located in the State of Hawaii.

10.      Defendant Robert Kors, upon information and belief, is a citizen and domiciliary of the state of California and is the principal of an unincorporated association known as the Post-Confirmation Trust of Fleming Companies, Inc. ("PCT").  Upon information and belief the PCT was intended to be a grantor trust created under the law of the State of Delaware but, upon information and belief, the purported trust instrument was drafted with no termination and therefore may be void *ab initio* under the Rule Against Perpetuities applicable to grantor trusts created under Delaware law.

11.      Does 1 through 200 are defendants whose identities and liability are not yet fully known to Plaintiff who has after diligent review of the records and documents been unable to properly identify.  When their identities are made known to Plaintiff these defendants shall be identified as Does as set forth herein.

2

12.    The actions of the corporate and/or other institutional defendants alleged herein whether directly or through their agents was authorized and/or ratified by the corporation or other institutional defendant.

## JURISDICTION AND VENUE

13.    This Honorable Court has federal subject matter jurisdiction pursuant to the Federal Copyright Act 17 U.S.C. §§ 101, et seq. and 28 U.S.C. § 1338 (a) and pursuant to the Racketeering Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962.  In addition, no defendant is a citizen of Hawaii or Florida and the amount in controversy exceeds $75,000 exclusive of interest and costs and therefore this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.  State law claims are also proper under pendent jurisdiction.

14.    Mr. Berry concedes that venue is presently laid in the Southern District of New York and the transfer from Hawaii is not appealable as an interlocutory order.  He preserves his right to appeal upon entry of final judgment by respectfully stating that venue is should not be laid in Southern District pursuant to 28 U.S.C. §§ 1391and 1400 because the wrongs that are the subject of this complaint occurred in the State of Hawaii or were directed against one of its citizens.  Each of the Defendants named herein have had sufficient minimum contacts with the state of Hawaii to be amenable to service of process by a Hawaii court.

15.    Mr. Berry has no purposeful contact with the state of New York. All of the tortious wrong and contracts alleged herein relate to events occurring in Hawaii or Florida directed  to a citizen of Hawaii.  Because this case involves the sole full line grocery wholesaler located in Hawaii that state has a greater interest in the instant case than any other state.

16.    Venue is proper in the District of Hawaii or may be proper in New York pursuant

3

to §1965(a) of RICO, 18 U.S.C. §1965(a) because each of the defendants resides and/or is found

to have an agent and/or transact their affairs in this district.  As to foreign defendants, in

accordance with §1965(b) of RICO, the ends of justice require that all defendants be brought

before this Court.

**BASIS OF COPYRIGHT JURISDICTION**

17.    Plaintiff is copyright owner of numerous works including, but not limited to,

Freight Control System running as "FCS Logistics Data.MDB" (hereinafter "FCS").

18.    FCS is a software literary work Plaintiff wrote in Microsoft Access® and Visual

Basic® using both the Visual Development Environment and hand-coding.  FCS primarily

consists of a database designed to control and monitor consolidation and containerization of

freight.  This work and its numerous illegal derivatives may also be run in the Microsoft SQL

Server® environment.  Among the names given to the illegal derivatives of the Berry FCS is

FHL Data.mdb, FCS Logistics Data.mdb,  FCS Logistics Screens.mdb, Original Logisitics

Data.mdb, Original Logistics Database.mdb, API Database.mdb, FCS Logistics Data

Original.mdb, Original Logisitcs Screens.mdb, FHL Data.mdb, FHL Data Screens.mdb, FHL

Forms.mdb, Utilities.mdb, PO Line Items.mdb, Auxillary Logistics Data.mdb, Auxillary

Logistics Database.mdb.

19.    FCS is a one of a kind system for handling ocean freight and maximizing freight

efficiencies unique to containerized ocean freight.

20.    FCS contains database tables, queries, screens and macros that handle Accounts

Receivable, Accounts Payable, Job Costing, Logistic Scheduling and Real-Time Shipment

Tracking.  The principle unique feature of the database is the ability for a user of this system to

4

control a large number of purchase orders and annotate shipping information to the records for billing and tracking purposes along with planning and scheduling efficiencies that translate directly to lower freight costs. The user can then "build" containers, which contain these individual Purchase Orders. The user can enter costs for both individual purchase orders and for entire containers. The system will allocate container costs to the individual purchase orders. Finally, the "Bill To" party can be invoiced for the shipment and a profitability derived from the billed amount less the allocated costs.

21.     The subject software work contains substantial amounts of original expression and are copyright able under the laws of the United States of America and was authored in the United States of America.

22.     Plaintiff complied with the statutory formalities for registering his copyright in FCS and the other related works that are the subject of this case, by fully complying with Federal laws and regulations by depositing with the Copyright Office, two copies of the best version of the FCS source code, filing the application and paying the required fees.

23.     Plaintiff received a filed registration for FCS and each of the works that are the subject of this case, from the Copyright Office. The date, class, registration number and title on the certificate received from the Registrar of Copyrights is as follows:

A.      Registration Date of 10/19/1999, Class: Literary Work (computer programs and databases), Registration Number: TX5-079-445, Titled: "Freight Control System", attached as Exhibit "A".

B.      Registration Date of 10/19/1999, Class: Literary Work (computer programs and databases), Registration Number: TX5-079-439, Titled: "FlemingPO.exe",

5

attached as Exhibit "B".

C.     Registration Date of 5/21/2001, Class: Literary Work (computer programs and databases), Registration Number: TX5-268-865, Titled: "Prepaid Vendor Invoice Definition for Crystal Reports **V6.0", attached as Exhibit "C".

D      Registration Date of 5/24/2006, Class: Literary Work (computer programs and databases), Registration Number: TXu1-227-726, Titled: "FCS1993 SQL EXPORT QUERIES (USED TO EXPORT AND TRANSLATE FREIGHT CONTROL SYSTEM DATA, DATABASE STRUCTURES AND DATA ORGANIZATION TO TEXT, CSV, XLS AND MDB FILE FORMATS)", attached as Exhibit "D".

E.     Registration Date of 5/3/2006, Class: Literary Work (computer programs and databases), Registration Number: TXu1-302-622, Titled: "FCS1993 – Terminal Reporting System – Version 1.0", attached as Exhibit "E".

F.     Registration Date of 5/3/2006, Class: Literary Work (computer programs and databases), Registration Number: TXu1-302-623, Titled: "FCS1993 Crystal Report – Pallet Tags – Version 1.0", attached as Exhibit "F".

G.     Registration Date of 5/3/2006, Class: Literary Work (computer programs and databases), Registration Number: TXu1-302-624, Titled: "FCS1993 Crystal Report – Receiving Report – Version 1.0", attached as Exhibit "G".

H.     Registration Date of 5/3/2006, Class: Literary Work (computer programs and databases), Registration Number: TXu1-302-625, Titled: "FCS1993 Crystal

6

Report – Profitability Report – Version 1.0", attached as Exhibit "H".

I.      Registration Date of 5/3/2006, Class: Literary Work (computer programs and databases), Registration Number: TXu1-302-626, Titled: "FCS1993 EDI 875 PO Database Program – Version 1.0", attached as Exhibit "I".

J.      Registration Date of 5/3/2006, Class: Literary Work (computer programs and databases), Registration Number: TXu1-302-627, Titled: "FCS1993 Container Inventory Database Program – Version 1.0", attached as Exhibit "J".

K.      Registration Date of 5/24/2006, Class: Literary Work (computer programs and databases), Registration Number: TXu1-340-295, Titled: "FCS1993 Crystal Report Daily Transportation Schedule Version 1.0", attached as Exhibit "K".

L.      Registration Date of 5/24/2006, Class: Literary Work (computer programs and databases), Registration Number: TXu1-340-296, Titled: "FCS1993 Crystal Report Sailing Chart Version 1.0", attached as Exhibit "L".

M.      Registration Date of 5/24/2006, Class: Literary Work (computer programs and databases), Registration Number: TXu1-340-297, Titled: "FCS1993 Crystal Report Trucking (FTL) Version 1.0", attached as Exhibit "M".

N.      Registration Date of 5/24/2006, Class: Literary Work (computer programs and databases), Registration Number: TXu1-340-298, Titled: "FCS1993 Crystal Report Trucking (LTL) Version 1.0", attached as Exhibit "N".

O.      Registration Date of 5/24/2006, Class: Literary Work (computer programs and databases), Registration Number: TXu1-340-299, Titled: "FCS1993 Crystal

7

Report Load Plan Version 1.0", attached as Exhibit "O".

P.    Registration Date of 5/24/2006, Class: Literary Work (computer programs and databases), Registration Number: TXu1-340-300, Titled: "FCS1993 Crystal Report Equipment Planning Version 1.0", attached as Exhibit "P".

Q.    Registration Date of 5/24/2006, Class: Literary Work (computer programs and databases), Registration Number: TXu1-340-301, Titled: "FCS1993 Crystal Report Inbound Container Dock Schedule Version 1.0", attached as Exhibit "Q".

R.    Registration Date of 5/24/2006, Class: Literary Work (computer programs and databases), Registration Number: TXu1-340-302, Titled: "FCS1993 Crystal Report Arrival Notice Version 1.0", attached as Exhibit "R".

24.    Additional works, too numerous to name, are also Berry works that are being infringed by persons under the control of the former Fleming Lenders who, through their attorneys and other agents actively engage in conduct in violation of Mr. Berry's exclusive rights. All of these works, including any derivatives of these works are unpublished Berry authored original works, and may include works then in development ordered turned over in litigation under protective orders regarding which there has been and no license or grant of any interest that authorized the use by Core-Mark and/or C&S and the use constitutes acts of willful infringement for financial gain and criminal contempt of court.

25.    The money derived from the use of these works received by the Lenders including GECC and constitutes the proceeds of a specified unlawful activity ("SUA") and is a violation of RICO and this Court has the jurisdictional power to sanction use and restrain further use pursuant to RICO regardless of whether the works are registered under the Court's broad

8

jurisdiction to punish and terminate Racketeering Enterprises pursuant to RICO and the Court's general equitable powers.

26.    After FCS's registration, in the Fall of 1999, Mr. Berry loaned a copy of FCS along with copies of the hundreds of subsidiary unpublished, unregistered original works to Fleming to allow Fleming to continue to operate as a temporary measure at no charge. Mr. Berry installed the software and delivered his End User License Agreement ("EULA"), at Fleming's request, to Fleming and his former employees who had been hired to start up the Fleming Logistics department. This EULA initially included one addendum.

27.    The EULA reserved to Mr. Berry all rights to the work including, but not limited to, the right to recast and make derivative works.

28.    About three weeks after Mr. Berry had delivered the requested EULA and addendum, Fleming's Hawaii Division President Ralph Stussi, contacted Mr. Berry to obtain permission for Fleming to make changes to certain of Mr. Berry's works that were used in conjunction with FCS.

29.    Fleming claimed that Fleming's need for Mr. Berry's works was temporary. Mr. Berry agreed to one additional addendum (the "Second Addendum") that permitted Fleming to develop new works and derivatives of Berry's freight control related works other than FCS regarding which Mr. Berry reserved all rights.

30.    On or about November 26, 1999, in consideration for Mr. Berry's agreement to permit development of FCS related recast and/or derivative works, Fleming agreed that any and all Fleming modified and/or created copies of any Berry works, including any new derivative works, remained forever Mr. Berry's intellectual property and subject to his rights as the

9

copyright owner.   The transfer of these rights occurs upon their creation when any expression
related to these works is first fixed in any tangible media.

31.     The final executed Second Addendum was drafted by Fleming on Fleming
letterhead.

32.     Fleming has repeatedly asserted its own and its employees' lawful right to the use
of Berry works is derived from the EULA and Second Addendum.

33.     In the Second Addendum, Fleming proposed and Mr. Berry agreed as follows:

"We understand that this product is licensed not sold and all title and
intellectual property right in and to the software product and any copies we make
are owned by you."

34.     In addition, under the terms of the EULA, Fleming agreed to disposition of all
Berry works upon Mr. Berry's unilateral right to terminate the EULA and addenda as follows:

"Termination. Without prejudice to any other rights, Wayne Berry may terminate this
EULA if you fail to comply with the terms and conditions of this EULA. In such
event, you must destroy all copies of the SOFTWARE PRODUCT and all of its
component parts."

35.     Commencing sometime in or about January 2000 and continuing to no earlier
than June 9, 2003, then recommencing on or about September 2005 and continuing without end
and with knowledge that its actions presently constitute acts of criminal infringement, Fleming
under the direction of its attorneys in particular, Carlos Hernandez and Lex Smith ("Smith"), and
then C&S, also under the direction of Smith and other attorneys, committed, directed, facilitated
and encouraged,  repeated acts of copyright infringement including acts of willful infringement

10

for financial gain.   The number of instances of willful infringement likely number in the

hundreds of thousands and constitute an ongoing pattern of criminal conduct to satisfy the

requirement of RICO.   These acts of willful infringement for financial gain are sufficient to

show the kind of threat to continuity to support a claim under RICO of a pattern of Racketeering

with a real threat of repeated acts.

   36. Despite having the means to reject the obligations of the Berry EULA and Second

Addendum and be free of its burdens imposed upon C&S, Core-Mark and the Fleming,

including those works transferred upon their creation to Berry through the operation of the

Second Addendum, Fleming, its PCT, its Lenders and C&S have not sought such rejection

through the executory contract rejection mechanisms of the Bankruptcy Code.   Each of these

entities remain bound by the obligations of the Berry EULA and Addenda and remain both

infringers and the developers of new Berry owned original works.

   37. Though having the ability to act to relieve the PCT, Core-Mark or C&S and its

unlicensed employee users from the obligations and duties imposed by the Berry EULA Second

Addendum by requiring C&S to return all Berry works to the PCT for its destruction and to

cease unauthorized use, Kors for financial gain has acted to assist the ongoing infringement by

providing money and other material support to advance what Kors knows to be ongoing willful

infringement for financial gain.

   38. In the Fleming-C&S Asset Purchase Agreement ("APA") entered into between

Fleming and C&S, Fleming recognized its lawful obligation to recover works transferred to C&S

in violation of the copyright owners' rights. The PCT and Kors through obligations imposed

upon them as Fleming's successors have assumed the duty to prevent unauthorized infringement

of Berry Technology. Specifically, the APA paragraph 7.3 entitled "Intellectual Property" made

applicable to Kors and the PCT through their voluntary ratification of the PCT Agreement,

delegates the duty to cause the end of infringing use of Berry Technology as follows:

> Following notice by Sellers to Purchaser, Purchaser shall promptly
>
> return to Sellers and shall promptly cease using any Third Party
>
> Intellectual Property that is neither an Acquired Asset nor the
>
> subject of an Acquired Contract.

39.     On or about December 17, 2007, after years of willful infringement, Kors and the

PCT sent a notice to C&S to return all of Berry's works.

## Prior Litigation

40.     Plaintiff has already twice litigated the issues of ownership and copyrightability

of his freight control system software including FCS and two of the subsidiary works. In both

prior cases Mr. Berry was determined to be the owner of works that are now the subject of this

case and has prevailed and received two final judgments on his claims of copyright infringement

including willful infringement in <u>Wayne Berry v. Fleming Companies, Inc.</u>, Civ. No. 01-0446

(SPK-LEK) (D. Hawaii) and infringement including vicarious and direct infringement against

Fleming and direct infringement against several of its employees in <u>Wayne Berry v. Hawaiian</u>

<u>Express Service, Inc. et al.</u>, Civ. No. 03-00385 (SOM-LEK) (D. Hawaii) in which Mr. Berry has

obtained a permanent injunction against Hawaiian Express Service, Inc, C&S' present freight

forwarder who, upon information and belief continues to infringe Mr. Berry's works with Kors,

the Lenders and C&S' knowledge and material assistance, the permanent injunction

notwithstanding.

12

41.     Mr. Berry's rights as copyright owner to the works that are the subject of this case, was established by the United States Court of Appeals for the Ninth Circuit's Memorandum Opinion dated July 5, 2007 (9th Cir. Docket Number 05-15223), in *Wayne Berry v. Fleming Companies, Inc.*, 01-CV-446 SPK LEK (D. Hawaii) and the subsequent issuance of the Writ of Mandate by the United Stats Court of Appeals for the Ninth Circuit.   To further establish Mr. Berry's indisputable rights to the works that are the subject of this case, on or about October 26, 2007, the District Court in Hawaii issued its notice to the Copyright Office that the issue of Mr. Berry's ownership in these works is finally decided.  This issue may not be lawfully challenged herein nor need Mr. Berry litigate it for a third time.

42.     Fleming, Core-Mark and C&S and anyone claiming to use FCS and its subsidiary works from them are bound by the judgments in the prior cases that regarding these issues are final and not appealable.

## The First Hawaii Case

43.     In 2000, Mr. Berry obtained information evidencing that Fleming had infringed upon his copyright in FCS Logistics Data.mdb and certain subsidiary works. Lex Smith who responded to Mr. Berry's infringement warning falsely claimed in written communication to Mr. Berry that Fleming was not engaged in infringement.

44.     On July 3, 2001, Mr. Berry filed suit commencing *Wayne Berry v. Fleming Companies, Inc.*, 01-CV-446 SPK LEK (D. Hawaii) in the United States District Court for the District of Hawaii for the infringements that had occurred up to that date.  The complaint alleged ownership, copyrightability and infringement of his freight control system software FCS, as well as two of the subsidiary works.

13

45.    Fleming contested all issues including ownership, copyrightability and infringement of all three works which issues were all tried on the merits to the jury.

46.    Fleming, under the direction of its attorneys, including Lex Smith ("Smith"), continued to falsely deny that Fleming was infringing in particular presented false evidence through Fleming's employee Mark Dillon that no modifications had been made to FCS to create derivatives related to Kmart. In fact, Fleming and Kmart had commenced a multibillion dollar supply agreement that utilized protected Berry works to facilitate that agreement.

47.    Fleming failed to prevail in its defense seeking to establish its ownership interest in the works that were created by Fleming under the Second Addendum. The claim of ownership over the works that were the subject of that case is identical to the claim of ownership if any that might be raised in this case and the works and the facts related to any such defense are derived from the same transaction or occurrence and may not be again litigated.

48.    Jury trial commenced in *Wayne Berry v. Fleming Companies, Inc.*, 01-CV-446 (SPK LEK) (D. Hawaii) in February 2003. Mr Berry elected statutory damages at trial before judgment for the infringements that occurred prior to the filing of the complaint.

49.    As to the issues of ownership and copyrightability, despite Fleming's vigorous litigation strategy to defeat Mr. Berry's claim of copyright ownership, attacking his copyright deposit, and claiming that the works were works done for hire, the jury found that Mr. Berry is the owner of a valid copyright in his works, including, but not limited to, FCS and the two subsidiary works that were the subject of that litigation. These works are among the several works that are the subject of this case.

14

50.     Two of the works that were the subject of the First Hawaii Case were actually Fleming created derivatives that Fleming defended pursuant to the Second Addendum.  The Jury found Mr. Berry the owner of the copyright to these works establishing the issue of Mr. Berry's ownership over all Fleming created works derived or created in conjunction with the Berry FCS as arising out of the same transaction or occurrence.

51.     In regard to the infringement of FCS, Fleming vigorously litigated and lost on the 17 U.S.C. § 117 issue that required proving it was an owner of a copy to FCS and the Fleming created derivative works.  In the Special Jury Verdict filed on March 6, 2003, the jury awarded Mr. Berry $98,250.00 for Fleming's willful infringement related to its willful infringement of FCS.

52.     The principals of res judicata prevent the re-litigation of issues regarding the ownership of the copyrights of the works that are the subject of this case and the jury further has found that Fleming owns no copies of Berry works.

53.     Fleming was found in two cases to be at best a licensee and owned no Berry works' copyrights or material objects related to the works and can pass no rights to anyone as to the Copyrights or rights to the material objects.

54.     In regard to the works that are the subject of this case,  the issues of copyright ownership and ownership of the material objects were already decided and C&S having alleged to accidentally received delivery of Mr. Berry's property from Fleming is in privity with Fleming as to the issue of ownership of Berry works.  Any copy derived from the works C&S received from Fleming or created in conjunction with the use of such works, is as a matter of the final judgments of previous litigation owned by Mr. Berry both as to the material object and the

15

copyrights. Fleming's failure to prevail on the defenses related to ownership and its failure to assert a counter-claim to establish ownership prevent Fleming or any other person deriving rights from Fleming from challenging Mr. Berry's ownership.

55.    Prior to the District Court deciding the post-trial motions in the First Hawaii Case, and prior to the entry of permanent injunction, and for the purpose of being able to continue to infringe under court protection, on April 1, 2003, Fleming, after obtaining permission from the instant Lenders and receiving assurances of continued material support from the Lenders, Fleming filed voluntary Chapter 11 petitions for it and its subsidiaries in the District of Delaware commencing In re Fleming Companies, Inc., Bk. No. 03-10945 (MFW) (Ch. 11 DE).

56.    Despite seeking the equity of the Bankruptcy court, Fleming, with unclean hands continued to infringe Berry works thus protecting the Lenders' continuing source of income derived from the continued infringement of Berry works.

57.    The automatic stay was eventually modified regarding the pre-petition infringement action the First Hawaii Case and final judgment entered against Fleming on January 20, 2005.

58.    Despite claiming that it had ceased operating, Fleming filed and prosecuted an appeal of the verdict and final judgment to the Court of Appeals for the Ninth Circuit to protect the ongoing operation of freight logistics operations for a variety of unlicensed users. In complete control over the aspects of Fleming related to the ongoing infringement of Berry works, the Lenders authorized the expenditure of the millions of dollars to continue to fight Berry's copyright claims and directed the daily actions of the litigation strategy to protect the income being generated through the daily acts of criminal infringement.

16

59.     In regard to the First Hawaii Case, Fleming appealed the judgment regarding fair use, ownership and the validity of the registration and other issues. The Jury Verdict and final judgment in the First Hawaii Case were affirmed on all issues including ownership, copyrightability of all works, willful infringement of FCS, and Fleming's status only as a licensee by the United States Court of Appeals for the Ninth Circuit's Memorandum Opinion dated July 5, 2007 (9th Cir. Docket Number 05-15223).

60.     Mr. Berry's ownership in FCS and the derivative works now used by C&S is already decided and by virtue of the jury verdict, final judgment and Ninth Circuit writ of mandate and is *res judicata* as to Fleming and as to Core-Mark and C&S, unlicensed users of Berry works (hereinafter "Berry Technology"). The rights of these defendants, if any, derive only from Fleming an adjudicated willful infringer.

## The Second Hawaii Case

61.     Because the automatic stay limited the scope of the  second case (the "Second Hawaii Case") to only claims against Fleming arising after April 1, 2003, Mr. Berry was not permitted and has never litigated the infringements nor received or sought any damages for infringement that occurred after July 3, 2001 when the First Hawaii Case was filed to the period ending April 1, 2003 when Fleming filed Bankruptcy, against anyone including, but not limited to, the Lenders who fraudulently concealed their involvement in the Berry infringement.

62.     By orders of the Hawaii district court in the Second Hawaii Case, Mr. Berry's claims in the Second Hawaii Case were limited to infringements that occurred prior to June 10, 2003.

17

63.    At the time Fleming filed for Bankruptcy protection on April 1, 2003, Fleming and its Lenders were the subject of a formal Securities and Exchange Commission ("SEC") investigation.

64.    At the time of the filing, Fleming's suppliers had place a credit freeze on Fleming purchases and its wholesale business was moving towards Chapter 7 liquidation.

65.    To continue to operate the Hawaii division, Fleming's most profitable division, Fleming's Lenders had to protect and advance the continued use of the infringing derivative of Berry FCS the finding of willful infringement notwithstanding.

66.    Fleming's management, despite knowing that Fleming had been found a willful infringer, under the direct control of the Lenders through their counsel and other attorneys associated with the White & Case firm, directly controlled the daily operation of Fleming's infringement to insure that Fleming continued to operate Fleming's logistics department with what they have termed "Berry Technology".

67.    At the time, the Lenders knew that Fleming was operating its business through a pattern of racketeering and agreed to participate as a principal in the operation of this enterprise.

68.    Though certain of Fleming unsophisticated employees claimed to have been unaware that the continued use of Berry Technology was infringement, White & Case's attorneys were sophisticated intellectual property attorneys and knew, or who were willfully blind to the fact, that the conduct was infringement.  Based on their position of control they were able to direct the continued infringement for financial gain.

69.    The conduct of the Lenders' agents is  imputed to them through the acts of their agents and have been ratified through acts including but not limited to their failure withdraw

18

from their agreement to aid and abet the infringement and join Mr Berry against the infringers and thereby evidence their unwillingness to withdraw from the RICO conspiracy as of the filing of this Second Amended Complaint.

70.    In the period after April 1, 2003, rather than cease infringement, Fleming under the direct control of the Lenders continued to infringe FCS. The Lenders concealed their actions until Fleming's attorneys during trial in the Second Hawaii Case in March 2006, when Fleming's PCT admitted documents and on the record admitted facts that evidence that the Lenders had engaged in overt acts in furtherance of a racketeering conspiracy. The District Court in the Second Hawaii Case denied the PCT' motion to exclude these materials that the PCT claimed were covered by the attorney client privilege. Until that time, Mr. Berry had been unaware of the Lenders' role in the infringement despite diligent attempt to investigate the lenders' who falsely and fraudulently claimed innocence.

71.    Final judgment was entered against Fleming's PCT and six of its former employees as direct infringers for the period of April 1, 2003 through June 9, 2003 and the judgment was not appealed and is a final judgment on the merits and the issue of direct infringement as to the lenders need is decided.

72.    At the time that Mr. Berry commenced the Second Hawaii Case, Fleming was a permitted user of the FCS subsidiary works that are the subject of this case and Mr. Berry could not have lawfully brought an infringement claim against Fleming at that time.

73.    At the time that Mr. Berry commenced the Second Hawaii Case, he had already prevailed at trial on the issues of ownership of FCS and all of the subsidiary works.

19

74.    At the time that Mr. Berry commenced the Second Hawaii Case, Fleming had not closed its sale of assets to C&S and no actionable transfer in violation of Mr. Berry's exclusive rights under the Copyright Act had occurred.  The only claim that was alleged in the Second Hawaii Case related to works other than FCS, was related to Fleming's act of exposing Berry Technology to C&S that occurred in June 2003 and was alleged to have constituted trade secret misappropriation.

75.    Had Mr. Berry sued for copyright infringement of works other than the derivative infringement of FCS for conduct that had occurred when the Second Hawaii Case was commenced, Mr. Berry and/or his counsel could have been subject to sanctions under Fed. R. Civ. P. Rule 11.

76.    As a result of the automatic stay, Mr. Berry was prohibited by Federal law from terminating the EULA and the Second Addendum under which Fleming was a permitted albeit unwelcome user.

77.    In the Second Hawaii Case, despite defending a claim of trade secret misappropriation both Fleming and C&S failed to make any claim ownership over any Berry works which was conceded and the defendants are estopped  from now re-litigating this issue.

78.    Fleming and C&S' failure to prevail on this issue or to assert an affirmative claim for ownership constitute an adjudication of ownership on the merits and C&S may not again litigate the issue that was already decided in favor of Mr. Berry as to the ownership of these works.

79.    Upon information and belief, the Fleming PCT under the direction of Robert Kors effected the illegal transfer of copies of the Berry works sometime in September 2005 on or

20