UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
WAYNE BERRY,                                                 :
                                                             :
                                     Plaintiff, :
                                                             :
            - against -                                      :    01:07 CV 7634 WHP
                                                             :    Judge William H. Pauley III
DEUTSCHE BANK TRUST COMPANY                                  :    ECF Case
AMERICAS (f.a. BANKERS TRUST COMPANY) :
AND JP MORGAN CHASE BANK, IN THEIR                           :
SEPARATE CAPACITIES AS AGENTS FOR                            :
THE PRE-AND POST-PETITION LENDERS OF                         :
FLEMING COMPANIES, INC.; GENERAL                             :
ELECTRIC CAPITAL CORPORATION; C&S                            :
WHOLESALE GROCERS, INC.; THE POST-                           :
CONFIRMATION TRUST OF FLEMING                                :
COMPANIES, INC.; ROBERT KORS; CORE-                          :
MARK HOLDINGS INC.; AND DOES 1 TO 200,                       :
                                                             :
                                     Defendants. :
                                                             :
------------------------------------------------------------ X

BRIEF OF DEFENDANT C&S WHOLESALE GROCERS, INC.
IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT



Christopher M. Mason
CM-7146
NIXON PEABODY LLP
437 Madison Park Avenue
New York, New York 10022
(212) 940-3000

Attorneys for Defendant
C&S Wholesale Grocers, Inc.



Dated:  January 25, 2008

Table of Contents

Page

Table of Authorities ................................................................................................ ii

Preliminary Statement .......................................................................................... 1

Statement of Facts ................................................................................................ 3

Argument ............................................................................................................... 7

I.     *RES JUDICATA* AND COLLATERAL
      ESTOPPEL PRECLUDE CLAIMS I, III,
      XI, AND XII IN THEIR ENTIRETY ................................................................. 7

        A.     The Hawaii Case Ended in an Adjudication
               on the Merits in Favor of C&S ............................................................. 9

        B.     The Plaintiff in this Case and the Hawaii
               Case is the Same ................................................................................. 10

        C.     The Current Claims Against C&S Were or
               Could Have Been Made in the Hawaii Case ....................................... 10

II.    THE COURT SHOULD STRIKE THE
      ALLEGATIONS AGAINST C&S IN
      CLAIMS VI, VII, VIII, IX, AND X PURSUANT
      TO RULES 8(D)(1) AND 12(F) AND SHOULD
      DISMISS THOSE CLAIMS PURSUANT TO
      RULE 12(B)(6) ............................................................................................... 13

Conclusion ............................................................................................................. 19

Table of Authorities

Cases                                                                          Pages

*Allen v. McCurry,*
    449 U.S. 90 (1980) ...................................................................    8

*Bell Atl. Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) ........................................... 14, 14 n. 10, 14 n. 11

*Blue Tree Hotels Inv. (Canada), Ltd. v.*
    *Starwood Hotels & Resorts,*
    369 F.3d 212 (2d Cir. 2004) ...................................................    9

*B-S Steel of Kansas, Inc. v. Texas Indus., Inc.,*
    439 F.3d 653 (10th Cir. 2006) ..............................................    13 n.9

*Clarke v. Frank,*
    960 F.2d 1146 (2d Cir. 1992) .................................................    8

*Computer Assocs. Int'l, Inc. v. Altai, Inc.,*
    126 F.3d 365 (2d Cir. 1997) ..................................................    8

*Conley v. Gibson,*
    355 U.S. 41 (1957) ............................................................    14 n.10

*Cullen v. Paine Webber Group, Inc.,*
    689 F. Supp. 269 (S.D.N.Y. 1988) .........................................    12 n.8

*EDP Medical Computer Sys., Inc. v. United States,*
    480 F.3d 621 (2d Cir. 2007) ..................................................    8

*Federated Dep't Stores, Inc. v. Moitie,*
    452 U.S. 394 (1981) ...........................................................    7

*Fennell v. TLB Kent Co.,*
    865 F.2d 498, 503 (2d Cir. 1989) ..........................................    7

*L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.,*
    198 F.3d 85 (2d Cir. 1999) ...................................................    8

*Lawyers' Fund for Client Protection v. Gateway State Bank,,*
    171 Misc. 2d 485, 655 N.Y.S.2d 228 (Sup. Ct. Albany County May 1, 1996) ....    17, 18

Cases                                                                                          Pages


*Mademoiselle Knitwear, Inc. v. Liz Claiborne, Inc.,*
   No. 98 Civ. 3252, 1999 U.S. Dist. LEXIS 8592
   (S.D.N.Y. June 9, 1999) ....................................................................................... 8, 12 n.8

*Maharaj v. BankAmerica Corp.,*
   128 F.3d 94 (2d Cir. 1997) ....................................................................................... 13

*Monahan v. New York City Dep't of Corrections,*
   214 F.3d 275 (2d Cir. 2000) ..................................................................................... 9

*Nevada v. United States,*
   463 U.S. 110 (1983) .................................................................................................. 8

*Petrella v. Siegel,*
   843 F.2d 87 (2d Cir. 1988) ....................................................................................... 9

*Pignons S.A. de Mecanique v. Polaroid Corp.,*
   701 F.2d 1 (1st Cir. 1983) ......................................................................................... 13 n.9

*Ponterio v. Kaye,*
   No. 06 Civ. 6289, 2007 U.S. Dist. LEXIS 4105
   (S.D.N.Y. Jan. 22, 2007) ........................................................................................... 9

*Ramallo Bros. Printing, Inc. v. El Dia, Inc.,*
   490 F.3d 86 (1st Cir. 2007) ....................................................................................... 13 n.9

*Saud v. Bank of New York,*
   929 F.2d 916 (2d Cir. 1991) ..................................................................................... 8, 10

*SEC v. First Jersey Secs., Inc.,*
   101 F.3d 1450 (2d Cir. 1996) ................................................................................... 8

*Takaki v. Allied Machinery Corp.*
   951 P.2d 507 (Haw. Ct. App. 1998) ......................................................................... 18

*In re Teltronics Servs.,*
   762 F.2d 185 (2d Cir. 1985) ..................................................................................... 8

*Thompson v. County of Franklin,*
   15 F.3d 245 (2d Cir. 1994) ....................................................................................... 9

Cases                                                                                    Pages

*Transaero, Inc. v. La Fuerza Aerea Boliviana,*
    162 F.3d 724 (2d Cir. 1998) ................................................................... 9 n.6

*U.S. v. Amodeo,*
    71 F.3d 1044 (2d Cir. 1995) .................................................................. 15

*Waldman v. Village of Kiryas Joel,*
    207 F.3d 105 (2d Cir. 2000) .................................................................. 9

*Weizmann Inst. of Sci. v. Neschis,*
    421 F. Supp. 2d 654 (S.D.N.Y. 2005) .................................................... 13 n.9

*Woods v. Dunlop Tire Corp.,*
    972 F.2d 36 (2d Cir. 1992) .................................................................... 8

Statutes and Rules

Fed. R. Civ. P. 8 (2008) ............................................................................ 3

Fed. R. Civ. P. 8(a)(2) (2008) .................................................................... 14

Fed. R. Civ. P. 8(d)(1) (2008) .................................................................... 13

Fed. R. Civ. P. 12(b)(6) (2008) .................................................................. 3, 9, 14

Fed. R. Civ. P. 12(f) (2008) ...................................................................... 3, 13, 16

Secondary Sources

Restatement (Second) of Judgments § 24 (1982) ....................................... 12

Defendant C&S Wholesale Grocers, Inc. ("C&S") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff's Second Amended Complaint and Jury Demand, Exhibits "A" To "R" (the "Second Amended Complaint").

<u>Preliminary Statement</u>

On March 16, 2006, the United States District Court for the District of Hawaii entered a final judgment in favor of C&S in a lawsuit (the "Hawaii Case") brought by Wayne Berry—who is also the Plaintiff here—against a slew of defendants, including C&S, its Chairman, and certain of its affiliates or subsidiaries. *See* Declaration of Lex R. Smith dated January 25, 2008 ("Smith Dec.") Ex. J. The Hawaii Case, like this one, involved allegations that C&S "illegally" used—and would continue in the future to use—either certain software acquired originally from the bankrupt Fleming Companies, Inc. ("Fleming"), or derivatives of that software. *See, e.g.,* Second Amended Verified Complaint (Hawaii) ¶¶ 7, 46, 57, 71-95, 103, 113-31, 132-49 (Smith Dec. Ex. C).[1] The Hawaii Case, like this one, involved claims of copyright infringement, violation of the Sherman and Clayton Acts, and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). *See* Second Amended Verified Complaint (Hawaii) ¶¶ 71-79, 114-31, 133-48 (Smith Ex. C). In addition, in the Hawaii Case, as in this one, Plaintiff sought a permanent injunction against C&S with respect to its alleged infringement of Plaintiff's rights. *See, e.g.,* Smith Dec. Exs. E through I.

Despite having lost on every point against C&S in the Hawaii Case, in the Summer of 2007 Plaintiff amended a new Hawaii lawsuit against several banks to add C&S as a

---

[1] To help distinguish Plaintiff's complaints in the Hawaii Case from his complaint now in this court, the explanatory parentheticals "(Hawaii)" or "(New York)" have been added to the titles of his pleadings.

defendant.  Once again, Plaintiff based his claims on C&S's supposed role in violating Plaintiffs' intellectual property rights in software originally acquired from Fleming, or its derivatives.  *See, e.g.,* First Amended Complaint (New York) ¶¶ 19, 22, 38 (Smith Ex. N).  Soon after the new case was transferred to this Court, C&S therefore moved to dismiss on grounds of *res judicata*.  Plaintiff, after receiving permission from this Court to amend the new lawsuit one last time, then filed the current Second Amended Complaint.

The claims against C&S in the new Second Amended Complaint can be broken into two basic categories.  Claims I, III, XI, and XII rehash the allegations of copyright infringement and racketeering that Plaintiff presented, or could have presented in his prior lawsuit.  *See* Second Amended Complaint (New York) ¶¶ 135-42, 171-77, 239-52, 253-310 (Smith Ex. O).[2]  Those claims are still barred in their entirety by *res judicata* and collateral estoppel.

In contrast, the allegations against C&S in Claims VI, VII, VIII, IX, and X contain some new matter.  Utterly lacking in any factual or evidentiary basis, they falsely allege misconduct by outside counsel for C&S in Hawaii with respect to Plaintiff's divorce from his wife and with respect to Plaintiff's relationship with the former law firm of Plaintiff's counsel.  Those allegations not only fail to state a claim upon which relief may be granted pursuant to

---

[2] Plaintiff may argue that these claims include a new allegation that, in the Fall of 2005, outside counsel for C&S in Hawaii (Lex R. Smith of Kobayashi Sugita & Goda) told Plaintiffs' counsel that Robert Kors—a new Defendant added by Plaintiff in the Second Amended Complaint—had at some unknown time in the past supposedly transferred to C&S software authored by Plaintiff.  *See* Second Amended Complaint (New York) ¶ 79 (Smith Ex. O).  As far as it is possible to understand the Second Amended Complaint, this is the same software or software derivatives at issue in the Hawaii action that was still pending at the time.  *See* Second Amended Complaint (New York) ¶ 17-25 (Smith Ex. O).  In any event, it is a claim that, on its face, could have been raised in the Hawaii Case.

Federal Rule of Civil Procedure 12(b)(6) because they fail adequately to allege a claim against C&S (as opposed to its counsel); they also fail to satisfy the basic requirements for clear and adequate pleading under Federal Rule of Civil Procedure 8, and should be stricken as scandalous and impertinent matter pursuant to Federal Rule of Civil Procedure 12(f).

Statement of Facts

Fleming was at one time one of the largest suppliers of packaged consumer goods to retailers in the United States.  In April 2003, however, it went bankrupt.  *See, e.g.*, Second Amended Verified Complaint (Hawaii) ¶ 12 (Smith Ex. C).  In August 2003, C&S, a grocery wholesaler based in New Hampshire, bought some of Fleming's assets in that bankruptcy.  *See, e.g.*, Second Amended Verified Complaint (Hawaii) ¶¶ 102-03 (Smith Dec. Ex. C).

Plaintiff believed that Fleming had been infringing his copyrights in certain Microsoft Access programming he calls the "Berry Freight Control System."  *See, e.g.*, Second Amended Verified Complaint (Hawaii) ¶¶ 6-7, 25 (Smith Ex. C).  In an August 4, 2003 bankruptcy court hearing, he therefore asserted that the assets C&S proposed to purchase from Fleming included infringing software:

> MR. HOGAN [Plaintiff's counsel]:  . . . we believe that the [Fleming] software that was created when it's properly litigated will be shown to be another derivative [of Plaintiff's software], the one that they're going to assume and use.
>
> THE COURT:  Well, the buyer says they're not buying it.  To the extent they use it you'll have to sue them for infringement.
>
> * * *
>
> MR. HOGAN:  Yes, Your Honor, and we believe that the software they're buying is infringed software, so we will pursue it.  Thank you.

Bankruptcy Proceeding Tr. p. 157 (Smith Dec. Ex. A).  Nine days later, on August 13, 2003, Plaintiff amended a preexisting complaint he had filed against other defendants in the United

States District Court for the District of Hawaii to add C&S as a defendant.  Among other things, he alleged that

> C&S Wholesale has stepped into the shoes of Fleming Companies, Inc. and is operating the Berry Freight Control System in full knowledge that such operation constitutes willful copyright infringement.  Through the unauthorized use of Plaintiff's intellectual property, C&S Wholesale and its agents presently ships (sic) a significant portion of all food-stuffs sold to consumers in the State of Hawaii.

First Amended Complaint (Hawaii) ¶ 7 (Smith Dec. Ex. B).

On June 18, 2004, Plaintiff expanded his Hawaii Case yet again to name, among others, the President of C&S individually as a defendant.  *See, e.g.*, Second Amended Verified Complaint (Hawaii) ¶ 18 (Smith Dec. Ex. C).  He alleged "unauthorized use of Plaintiff's intellectual property", claimed that "C&S [and other] Defendants have obtained a pirated copy of [Plaintiff's] software", and asserted that "[t]his software contains trade secrets and the use by Defendants constitute infringement and Plaintiff continues to suffer irreparable harm."  Second Amended Verified Complaint (Hawaii) ¶¶ 7, 52, 55 (Smith Dec. Ex. C).  He also alleged that C&S had violated his rights in "numerous other computer software programs developed by Mr. Berry and loaned, as an interim measure to Fleming" and argued that "no less than 30 of the other programs created by Mr. Berry" were "illegally transferred to C&S when its [sic] became the owner and operator of the Fleming-Logistics Department."  Second Amended Verified Complaint (Hawaii) ¶¶ 100, 102-03 (Smith Dec. Ex. C).  Supposedly, unless the court in Hawaii decided in Plaintiff's favor, infringements by C&S based on these programs and their derivatives would continue infinitely into the future.  *See, e.g.,* Second Amended Verified Complaint (Hawaii) ¶¶ 46, 135 (Smith Dec. Ex. C).  Finally, Plaintiff asserted a putative RICO claim based on these supposed wrongs.  *See* Second Amended Verified Complaint (Hawaii) ¶¶ 132-48 (Smith Dec. Ex. C).

In October, 2005, after litigating most of his case, Plaintiff moved for a permanent injunction against C&S, alleging that C&S and its employees were continuing to infringe his works. *See* Smith Dec. Exs. E, F, G. On March 7, 2006 District Judge Susan O. Mollway held an evidentiary hearing on this issue. *See, e.g.,* Smith Dec. Ex. H. Shortly afterwards, she denied Plaintiffs' request for injunctive relief. *See* Smith Dec. Ex. I. On March 16, 2006, having already denied this relief and granted summary judgment motions by C&S, *see* Smith Dec. Ex. D, Judge Mollway caused final judgment to be entered in favor of (among others) all C&S defendants. *See* Smith Dec. Ex. J.

A year later, on March 2, 2007, Judge Mollway adopted a Magistrate Judge's recommendation to enter a judgment for attorneys' fees in favor of C&S and against Plaintiff. *See* Smith Dec. L.[3] As the Magistrate Judge had noted in recommending an award of $84,758.98 against Plaintiff, "C&S . . . obtained a total victory on all of Plaintiff's claims." Smith Dec. Ex. K, at 17.

Plaintiff appealed to the United States Court of Appeals for the Ninth Circuit. He did not, however, stop litigating in the trial courts. On March 29, 2007 he commenced his current lawsuit against two banks (Deutsche Bank Trust Company Americas and JP Morgan Chase Bank) that had lent money to Fleming and somehow, according to Plaintiff, had therefore engaged in "contributory and/or vicarious infringement" of Plaintiff's rights. *See generally* First Amended Complaint (New York) ¶¶ 27-38 (Smith Dec. Ex. N). On August 15, 2007, two days

---

[3] The District Court in Hawaii noted that, while Plaintiff had characterized many of his claims as involving "trade secrets", "[b]ecause Berry's claims against C&S for copyright infringement and for misappropriation of trade secrets (Count 4) were based on the same course and conduct, they are related for purposes of attorneys' fees under the Copyright Act." Smith Dec. Ex. L, at 15.

after a contentious deposition of Plaintiff by counsel for C&S attempting to collect on the

attorney's fees award in the Hawaii Case,[4] and two days after Judge Mollway entered an order

transferring Plaintiff's new case to this Court, Plaintiff retaliated by amending his new lawsuit to

name C&S—once again—as a Defendant.

       Plaintiff has now filed a Second Amended Complaint.  He again alleges, in

Claims I, III, XI, and XII of this new (and final) pleading that C&S is infringing Plaintiff's

intellectual property and, in doing so, has become part of a "racketeering" conspiracy (one that

he now implies also involved the running of guns, the smuggling of cigarettes, and other wild

allegations—all of which could have been made in Hawaii given the time frames Plaintiff

asserts).  *See* Second Amended Complaint (New York) ¶¶ 70, 80, 89, 93, 97, 261, 266 (Smith

Dec. Ex. O).

       In addition, Plaintiff makes, in Claims VI, VII, VIII, IX, and X of the Second

Amended Complaint, allegations that are necessarily "new" because they involve allegedly

recent behavior not directly related to Plaintiff's supposed software.  *See, e.g.,* Second Amended

Complaint (New York) ¶¶ 193-238 (Smith Dec. Ex. O).  In essence, Plaintiff alleges that Mr.

Smith, C&S's outside counsel in Hawaii (and a member, incidentally of the Hawaii Ethics

Commission, *see* Second Amended Complaint (New York) ¶ 89 (Smith Dec. Ex. O)) used legal

process and discussion with Plaintiff's former counsel in order to harm Plaintiff.  As the first part

of this scheme, Mr. Smith supposedly caused civil process—in a divorce action involving

Plaintiff—to be served on Plaintiff in order to injure him.  *See* Second Amended Complaint

---

[4] The supposed "repeated irrelevant questions" asked of Plaintiff by C&S's outside
counsel in Hawaii in a deposition, *see* Second Amended Complaint (New York) ¶ 309 (Smith
Dec. Ex. O), involved efforts to enforce this award.  *See, e.g.,* Smith Dec. ¶ 15.

(New York) ¶¶ 229, 236 (Smith Dec. Ex. O).  Mr. Smith also supposedly deposed Plaintiff about

his assets, not as part of efforts by C&S to collect on its judgment for attorneys' fees and costs

against Plaintiff, but to "cause Mr. Berry to divulge his home address for the purpose of

intimidating him and causing him to fear for his personal safety."  Second Amended Complaint

(New York) ¶¶ 231-32 (Smith Dec. Ex. O).  Lastly, Mr. Smith supposedly "offered Mr. Berry's

attorney, Wesley Ichida money in exchange for his agreement to the breach of the fiduciary

duties owed to Mr. Berry", in particular, an agreement "that the money that was money paid in

partial settlement of the First and Second Hawaii Cases would not be disclosed to Mr. Berry."

Second Amended Complaint (New York) ¶¶ 197, 207 (Smith Dec. Ex. O).[5]

Argument

No matter how Plaintiff rewrites his complaints, at bottom, if they involve

anything other than fabrications, they involve the intellectual property addressed in the Hawaii

Case.  To that extent, they are barred by *res judicata* and collateral estoppel.  Beyond that, they

involve claims not adequately pleaded and subject to being stricken under the Federal Rules of

Civil Procedure.

POINT I

*RES JUDICATA* AND COLLATERAL ESTOPPEL PRECLUDE CLAIMS I, III,

XI, AND XII IN THEIR ENTIRETY

The doctrine of *res judicata* provides that a "final judgment on the merits of an

action precludes the parties or their privies from relitigating issues that were or could have been

raised in that action."  *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *accord*,

---

[5] Mr.Ichida is the managing partner of the law firm at which Plaintiff's current counsel
used to work.  *See* Smith Dec. ¶ 20.

*e.g., Mademoiselle Knitwear, Inc. v. Liz Claiborne, Inc.*, No. 98 Civ. 3252, 1999 U.S. Dist. LEXIS 8592, at *12 (S.D.N.Y. June 9, 1999) (*citing Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997), and *Maharaj v. BankAmerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997)). It is "a rule of fundamental repose important for both the litigants and for society . . . . [that] relieves parties of the cost and vexation of multiple lawsuits, conserves judicial resources, . . . prevent[s] inconsistent decisions, encourages reliance on adjudication", *EDP Medical Computer Sys., Inc. v. United States*, 480 F.3d 621, 624-5 (2d Cir. 2007) (quoting *In re Teltronics Servs.*, 762 F.2d 185, 190 (2d Cir. 1985) and *Allen v. McCurry*, 449 U.S. 90, 94 (1980)), while operating as an absolute bar "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996) (quoting *Nevada v. United States*, 463 U.S. 110, 129-30 (1983)).

As this indicates, *res judicata* "prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, *even if the issue or defense was not actually raised or decided.*" *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992) (emphasis added) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1150 (2d Cir. 1992)). This means that "[e]ven claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999). It does not matter that a particular legal theory was not expressly asserted in the prior action, because "it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." *Saud v. Bank of New York*, 929 F.2d 916, 919 (2d Cir.1991) (internal quotation marks omitted). As a "well-established" corollary to this principle, "a plaintiff cannot avoid the effects of *res judicata* by

'splitting' his claim into various suits, based on different legal theories." *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000).

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) is a proper vehicle for dismissal of a subsequent case on grounds of *res judicata*. *See, e.g.*, *Thompson v. County of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994); *Ponterio v. Kaye*, No. 06 Civ. 6289, 2007 U.S. Dist. LEXIS 4105 at *16, 21-24 (S.D.N.Y. Jan. 22, 2007). In deciding the issue, the Court may consider not only the current pleadings, but public records and pleadings from prior proceedings as well. *See, e.g.*, *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts*, 369 F.3d 212, 217 (2d Cir. 2004). To establish *res judicata*, a movant need only show three things from these sources: first, that a previous action involved an adjudication on the merits; second, that the previous action involved the movant and the plaintiff (or someone in privity with him); and third, that the claims in the subsequent action were, or could have been, raised in the prior action. *E.g., Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000). C&S easily meets all three parts of this test here.[6]

A.    *The Hawaii Case Ended in an Adjudication on the Merits in Favor of C&S.*

As noted above, the United States District Court for the District of Hawaii entered a final judgment in favor of C&S in the Hawaii Case on March 16, 2006. *See* Smith Dec. Ex. J. Thus, C&S has satisfied the first requirement for dismissal on grounds of *res judicata*—a previous adjudication on the merits.

_____

[6] The pendency of an appeal under federal law does not affect the Court's analysis. *See, e.g., Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 30 (2d Cir. 1998) (citing *Petrella v. Siegel*, 843 F.2d 87, 90 (2d Cir. 1988)).

B.    *The Plaintiff in this Case and the Hawaii Case is the Same.*

As the various complaints, orders, and final judgment all indicate, Wayne Berry is

the same individual who filed both the current lawsuit and the Hawaii Case. *See, e.g.*, Smith

Dec. Exs. B-J, O. Even the same individual attorney (albeit no longer at his former law firm)

continues to represent Plaintiff. Thus, C&S has satisfied the second requirement for a dismissal

on grounds of *res judicata*—that the prior action involved it and the same plaintiff.

C.    *The Current Claims Against C&S Were or Could Have Been Made in the Hawaii Case.*

For purposes of *res judicata* "it is the facts surrounding the transaction or

occurrence which operate to constitute the cause of action." *Saud*, 929 F.2d at 919. Here, for

example, Plaintiff's Second Amended Complaint (New York) is based on "a work entitled

Freight Control System 1993 ('FCS1993'). Second Amended Complaint (New York) ¶ 23

(Smith Dec. Ex. O). This is the same work central to the Hawaii Case. *Compare, e.g.*, Second

Amended Complaint (New York) ¶¶ 17-23 (Smith Dec. Ex. O) *with* First Amended Complaint

(Hawaii) ¶¶ 22-29 (Smith Dec. Ex. B) *and* Second Amended Verified Complaint (Hawaii) ¶¶ 25-

33 (Smith Dec. Ex. C).

Similarly, as in the Hawaii Case, Plaintiff claims here that, in addition to

FCS1993, his rights in numerous other computer programs have been violated. *Compare, e.g.*,

Second Amended Complaint (New York) ¶ 142 (Smith Dec. Ex. O) (alleging that from 2005 to

present C&S has committed "thousands of acts of willful infringement") *with* Second Amended

Verified Complaint (Hawaii) ¶¶ 102-03 (Smith Dec. Ex. C) (similarly asserting violation of

rights in "no less than 30 of the other programs created by Mr. Berry").

In his new lawsuit against C&S, Plaintiff initially asserted that C&S's infringement began when it acquired Fleming's assets and continued through the present. *See* First Amended Complaint (New York) ¶ 38 (Smith Dec. Ex. N) ("[s]tarting in August of 2003," the "acts of infringement . . . continue as of this date."). He continues to make this assertion. *See* Second Amended Complaint (New York) ¶ 103 (Smith Dec. Ex. O). It is the same basic assertion he made in the Hawaii case. *See* Second Amended Verified Complaint (Hawaii) ¶¶ 67-69 (Smith Dec. Ex. C).[7] For example, when Plaintiff first sued C&S, he asserted that, as of August 2003, "C&S . . . stepped into the shoes of Fleming Companies Inc." and began to engage in "unauthorized use of Plaintiff's intellectual property." First Amended Complaint (Hawaii) ¶ 7

---

[7] The on-line records of the United States Copyright Office confirm that each of the programs registered by Plaintiff and a subject of this lawsuit was purportedly created years before the Hawaii Case began. Those programs therefore either were or could have been litigated in the Hawaii Case. *See* Smith Dec. Ex. M. The dates claimed by Plaintiff for the creation of those programs emphasize the point:

| Registration Number | Date of Creation |
|---|---|
| TX0005079445 | 1993 |
| TX0005268865 | 1999 |
| TXu001277726 | 1999 |
| TXu001302622 | 1998 |
| TXu001302623 | 1997 |
| TXu001302624 | 1998 |
| TXu001302625 | 1998 |
| TXu001302626 | 2993 (sic) |
| TXu001302627 | 2993 (sic) |
| TXu001340295 | 1998 |
| TXu001340296 | 1996 |
| TXu001340297 | 1998 |
| TXu001340298 | 1998 |
| TXu001340299 | 1996 |
| TXu001340300 | 1998 |
| TXu001340301 | 1998 |
| TXu001340302 | 1996 |

(Smith Dec. Ex. B).  He then added to that core claim allegations that numerous other "programs were illegally transferred to C&S" when it acquired assets of Fleming; and that C&S was therefore liable to him for their unauthorized use.  *See* Second Amended Verified Complaint (Hawaii) ¶ 102-03, 111 (Smith Dec. Ex. C).

Today, Plaintiff continues to allege infringement or misuse of numerous such computer programs.  While he apparently now seeks to avoid *res judicata* by alleging an infringement date of "September of 2005" rather than "August of 2003", *compare* Second Amended Complaint (New York) ¶ 103 (Smith Dec. Ex. O) *with* First Amended Complaint (New York) ¶ 38 (Smith Dec. Ex. N), in fact, all of Plaintiff's claims against C&S still arise out of the August 2003 transaction in which C&S purchased assets from the bankrupt Fleming company, assets that supposedly included software infringing Plaintiff's intellectual property rights.  *See, e.g.,* Second Amended Complaint (New York) ¶¶ 38, 79, 103 (Smith Dec. Ex. O).  Under the well-settled principles of *res judicata* in this Circuit, the March 2006 judgment in favor of C&S in the Hawaii Case precludes Plaintiff from pursuing claims or theories about his rights in such software "transferred to C&S" at any time before that final judgment, *see* March 16, 2006 Final Judgment (Smith Dec. Ex. J), whether the beginning of the infringement itself can be dated to 2003 or 2005.[8]

---

[8] The slightly different RICO claim in Plaintiff's Second Amended Complaint (New York) does not change this.  As this Court noted in *Mademoiselle Knitwear*, "[n]ew legal theories do not amount to a new cause of action so as to defeat the application of the principle of *res judicata*."  1999 U.S. Dist. LEXIS at *15 (*quoting Cullen v. Paine Webber Group, Inc.*, 689 F. Supp. 269, 279 (S.D.N.Y. 1988) (applying principle to bar RICO claims later raised involving facts from prior case)).  Furthermore, the only comprehensible "predicate act" Plaintiff alleges for his "new" RICO claim that directly involves both him and C&S is the purported infringement for which C&S has already been exonerated by the 2006 final judgment in the Hawaii Case.  *See* Second Amended Complaint (New York) ¶ 35 (Smith Dec. Ex. O).

In the end, where *res judicata* exists, it "will bar any subsequent litigation by the same parties or those in privity with them concerning 'the transaction, or series of connected transactions, out of which the [first] action arose.'" *Maharaj*, 128 F.3d at 97 (*quoting* Restatement (Second) of Judgments § 24(1) (1982)). Here, given the identity of parties and the identity of the alleged facts giving rise to Plaintiff's supposed claims in both the Hawaii Case and this case, there can be no doubt that *res judicata* exists and that such a bar is necessary, appropriate, and legally required.[9]

POINT II

THE COURT SHOULD STRIKE THE ALLEGATIONS AGAINST C&S IN CLAIMS VI, VII, VIII, IX, AND X PURSUANT TO RULES 8(d)(1) AND 12(f) AND SHOULD DISMISS THOSE CLAIMS PURSUANT TO RULE 12(b)(6)

Federal Rule of Civil Procedure 8(d)(1), as recently revised, requires that each allegation in a complaint "be simple, concise, and direct." Federal Rule of Civil Procedure 12(f), also as recently revised, provides that this Court may on its own, or by motion of a party, strike any "redundant, immaterial, impertinent, or scandalous matter." And, as the United States

---

[9] Collateral estoppel would effectively preclude such claims as well, because it precludes forever relitigation of any ultimate issue (such as infringement of Plaintiff's rights in the software acquired by C&S) actually decided in a prior case. *See generally, e.g., Weizmann Inst. of Sci. v. Neschis,* 421 F. Supp. 2d 654, 675-76 (S.D.N.Y. 2005). Plaintiff's efforts to recharacterize his claims against C&S in the Second Amended Complaint (New York) based on continued activity do not change this. *See, e.g., Ramallo Bros. Printing, Inc. v. El Dia, Inc.*, 490 F.3d 86, 91 (1st Cir. 2007) ("we have held in the past that a plaintiff cannot avoid the bar of collateral estoppel simply by suing a defendant for continuing the same conduct that was found to be lawful in a previous suit . . . ."); *B-S Steel of Kansas, Inc. v. Texas Indus., Inc.*, 439 F.3d 653, 663 (10th Cir. 2006) ("a different time period alone does not necessarily preclude application of collateral estoppel. *See Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1, 2 (1st Cir. 1983) (applying collateral estoppel in a false advertising case based on advertisements published after 1980 where the prior case involved nearly identical advertisements published prior to 1980)").

Supreme Court recently held in *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 & n.3 (2007), while "detail[ed]" factual allegations are not required in the average complaint facing possible dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), Federal Rule of Civil Procedure "8(a)(2) still requires . . . some factual allegation[s]", factual allegations that are "enough to raise a right to relief above the speculative level . . . ."[10]  Whatever is left of Plaintiff's Second Amended Complaint (New York) after application of the principles of *res judicata* and collateral estoppel fails these new, enhanced pleading standards.[11]

   First, Plaintiff's new pleading on its face fails to be "simple, concise, and direct." In passages such as paragraphs 195 through 199, 205 through 207, 209, 210, 216, 217, 222 through 225, 231, 233, 257, 261, 268, 284, and 288, it is exceedingly hard to understand the point (if any) being made as to C&S.  As one example, in paragraph 288, Plaintiff alleges that:

> From the time that the reader began reading this Second Amended Complaint, more likely than not, a member of the Enterprise committed at least one additional predicate act.  These practices include, but are not necessarily limited to, the

---

[10] This new, heightened standard overturns the famous language in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  The purpose of the new standard is precisely to prevent cases such as this one, "lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Bell Atl. Corp*., at 127 S. Ct. at 1966 (internal quotations omitted).

[11] The Supreme Court has expressly rejected what is likely to be Plaintiff's rejoinder (despite having had full discovery in Hawaii) to the application of these rules:  "that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process." *Bell Atl. Corp.*, 127 S. Ct. at 1967; *see also id.* at 1967 n.6 (quoting an article by Judge Frank Easterbrook for the proposition that "[t]the portions of the Rules of Civil Procedure calling on judges to trim back excessive demands . . . have been, and are doomed to be, hollow.").  The Supreme Court has also rejected any assertion that its new, stricter pleading standard can be satisfied by pleading on information and belief.  *See id.* at 1963; *cf.* Second Amended Complaint (New York) ¶¶ 195, 197, 200, 205, 207, 210 (Smith Dec. Ex. O) (pleading on information and belief).

transportation of contraband cigarettes, mis-declaration of freight in violation of federal shipping laws, obtaining unearned and fraudulently reported discounts through the practice of freight diversions that is facilitated by the daily acts criminal infringement of the Berry FCS and the predicate acts identified herein committed against Mr. Berry.

Second Amended Complaint (New York) ¶ 288  (Smith Dec. Ex. O).  What this is supposed to mean as to C&S is impossible to tell, and the other paragraphs cited above are really no better.

Similarly, the allegations in Claims VI, VII, VIII, IX, and X concerning the supposed actions of C&S's outside counsel in Hawaii, and the wild allegations of some sort of involvement in cigarette smuggling, customs violations, and assault (the allegations upon which Claims VI, VII, VIII, IX, and X essentially depend in their entirety after application of the principles of *res judicata* and collateral estoppel) should be stricken pursuant to Federal Rule of Civil Procedure 12(f).  Plaintiff offers no factual basis for his assertions that, for example, "the defendants agreed upon a desperate scheme to seek to file Mr. Berry's involuntary bankruptcy to obtain control over his copyrights.  These schemes include encouraging a Hawaii divorce proceeding, attempting to force Mr. Berry to file bankruptcy and a scheme to corruptly coopt Mr. Berry's attorneys", or that "Lex Smith as agent for C&S, Kors, the PCT  . . . upon information and belief, offered Mr. Berry's attorney, Wesley Ichida money in exchange for his agreement to the breach of the fiduciary duties owed to Mr. Berry", or that "C&S engage[s] in the practice of 'diversions' where freight subsidies to offset the higher cost of shipping to Hawaii are fraudulently obtained from vendors for shipments it claimed were destined to be consumed by Hawaii consumers while instead are 'diverted' to Mainland distribution centers."  Second Amended Complaint (New York) ¶¶ 81, 197, 271 (Smith Dec. Ex. O).  The best way to deal with such inflammatory comments is to strike them because, as the Second Circuit noted in *U.S. v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995), a "court can strike a pleading as scurrilous under

- 15 -

Federal Rule of Civil Procedure 12(f)" even though it would be "powerless to discredit every statement or document turned up in the course of litigation."

Finally, most of Plaintiff's allegations remaining after the application of the principles of *res judicata* and collateral estoppel depend on attributing the actions of others who are not officers, directors, or employees of C&S to C&S. Sometimes these others are not identified. *See, e.g.,* Second Amended Complaint (New York) ¶ 300 (Smith Dec. Ex. O) ("agents of the defendants traveling to West Palm Beach Airport immediately thereafter to confront Berry after the deposition and to put him in fear for his personal safety, the Lenders, PCT and C&S, though their shared agents including Lex Smith intended to cause Berry to give up his rights to his property thereby allowing C&S to continue to commit criminal acts of infringement . . . ."); *accord, e.g.,* Second Amended Complaint (New York) ¶ 87 (Smith Dec. Ex. O) ("Upon information and belief, agents of Kors, C&S and the Lenders, . . . traveled to Florida and while having entered the West Palm Beach airport for the purpose of furthering the commission of a felony, identified Mr. Berry to a purported process server who followed Mr. Berry from the airport to his home and then from his home to a public restaurant. And while in the presence of friends the alleged process server approached Mr. Berry in an attempt to make service of the divorce complaint that was initiated by Lex Smith to further the criminal infringement."). Most often, however, a part of the example quoted above indicates, the person identified is C&S's outside counsel in Hawaii, Mr. Smith. *See, e.g.,* Second Amended Complaint (New York) ¶¶ 197, 207, 284 (Smith Dec. Ex. O).

Yet what Plaintiff fails to do in each of these instances is allege that C&S authorized the particular, out of court bad acts allegedly committed by Mr. Smith.[12]  Instead, Plaintiff simply asserts generically that the "conduct of the defendant's agents was authorized by defendants."  Second Amended Complaint ¶ 202 (Smith Dec. Ex. O); *accord, e.g.,* Second Amended Complaint (New York) ¶¶ 212, 220, 227, 238, 251 (Smith Dec. Ex. O).

Plaintiff cannot cure this defect by arguing that Mr. Smith was C&S's attorney. *See Lawyers' Fund for Client Protection v. Gateway State Bank,* 171 Misc. 2d 485, 488, 655 N.Y.S.2d 228, 230 (Sup. Ct. Albany County May 1, 1996) (absent apparent or implied authority, responsibility for attorney's actions not imposed on client).  Nor can he cure it by assuming that statements by Mr. Smith would constitute admissions by C&S.  For example, Plaintiff alleges (somewhat incomprehensibly) that:

> Upon information and belief, the Fleming PCT under the direction of Robert Kors effected the illegal transfer of copies of the Berry works sometime in September 2005 on or about the time his attorney Lex Smith who at the time also represented C&S, informed Mr. Berry that C&S, his concurrent client had commenced using his works.  Prior to that time C&S had claimed that it was not using any Berry works in numerous filings in the district court and in the Delaware Bankruptcy court.

---

[12] Those allegations are false, of course.  While Plaintiff's counsel claims, in his January 18, 2008 letter to the Court, that "Mr. Berry has evidence to support each of the allegations in the complaint including those related to abuse of process, breach of fiduciary duty and violation of Hawaii's commercial bribery statute," he does not even describe what such evidence might be. In fact, neither C&S, nor its counsel, has never made any agreement of any nature with Plaintiff's former law firm and has never exchanged anything of value with it.  *See* Smith Dec. ¶ 20.  Similarly, C&S and its Hawaii counsel had no role whatsoever in the service of Mr. Berry's wife's divorce papers on Mr. Berry.  *See* Smith Dec. ¶ 21.  C&S offers such testimony from Mr.. Smith not to convert this motion into one for summary judgment, but simply to note that to the extent this Court does not dismiss the Second Amended Complaint (New York) in its entirety as to C&S, the remaining claims should be narrowly limited to arguments about whether Mr. Smith actually did the things Plaintiff alleges; that such arguments should involve very limited discovery; and that C&S believes that summary judgment would then be granted in its favor on those issues.

Second Amended Complaint ¶ 79 (Smith Dec. Ex. O); *accord* Second Amended Complaint ¶ 109 (essentially the same) (Smith Dec. Ex. O). But statements by an attorney outside of court are not judicial admissions as to the attorney's client. *See, e.g., Takaki v. Allied Machinery Corp.* 951 P.2d 507, 69 n.18 (Haw. Ct. App. 1998). Nor, unless they are expressly authorized by the client or fall within the natural scope of the attorney's agency for the client, can they be attributed to the client itself. *See, e.g., Fennell v. TLB Kent Co.*, 865 F.2d 498, 503 (2d Cir. 1989) (an attorney does not have the power to bind the client to a settlement without either an express grant of authority or apparent authority created by the words or conduct of the client).

Plaintiff does not allege that Mr. Smith's statements were made in court or expressly authorized by C&S. Nor can committing crimes, *see* Second Amended Complaint ¶ 267, 270, or inducing breaches of fiduciary duty be connected to fall under the natural scope of agency attributes to an attorney hired to represent a party in a particular lawsuit. *See Lawyers' Fund for Client Protection,* 171 Misc. at 488-89, 655 N.Y.S.2d at 231 ("a principal is liable to a third party for an agent's actions only where the general type of conduct such as forgery may have reasonably been expected."). Indeed, in general, Plaintiff simply fails to connect his obvious anger at the attorneys who defeated him in Hawaii and won a judgment against him with anything done by their client, C&S. As a result, he has failed to state a claim upon which relief may be granted against C&S.

<u>Conclusion</u>

For the reasons stated above, this Court should dismiss Plaintiff's claims against

C&S with prejudice and with costs and fees in favor of C&S.


Dated:  January 25, 2008


NIXON PEABODY LLP


By:      _/s/ Christopher M. Mason____
         Christopher M. Mason
         CM-7146

         437 Madison Avenue
         New York, New York 10022
         (212) 940-3000

         cmason@nixonpeabody.com

         Attorneys for Defendant
         C&S Wholesale Grocers, Inc.