UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| WAYNE BERRY, | : 01:07 CV 7634 WHP |
| Plaintiff, | : Judge William H. Pauley III |
| vs. | : ECF Case |
| DEUTSCHE BANK TRUST COMPANY | : |
| AMERICAS (f.a. BANKERS TRUST COMPANY) | : **PLAINTIFF'S** |
| and JP MORGAN CHASE BANK, in their separate | **MEMORANDUM IN** |
| capacities and as agents for the pre- and post-petition | : **OPPOSITION TO** |
| lenders of Fleming Companies, Inc.; GENERAL | **DEFENDANT C&S** |
| ELECTRIC CAPITAL CORPORATION; C&S | : **WHOLESALE GROCERS,** |
| WHOLESALE GROCERS, INC.; THE POST- | : **INC.'S MOTION TO DISMISS** |
| CONFIRMATION TRUST OF FLEMING | **SECOND AMENDED** |
| COMPANIES, INC.; ROBERT KORS; CORE-MARK | : **COMPLAINT** |
| HOLDINGS INC. and DOES 1 to 200. | : |
| | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT C&S WHOLESALE GROCERS, INC.'S MOTION TO DISMISS SECOND
AMENDED COMPLAINT**

TIMOTHY J. HOGAN (Hawaii Bar No. 5312)
Attorney for Plaintiff WAYNE BERRY
Admitted *Pro Hac Vice*

1050 Bishop Street, Number 433
Honolulu, Hawaii 96813
Tel.  (808) 382-3698
Fax.  (808) 356-1682
Email tjh@timhogan.com

Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     FACTUAL BACKGROUND OF PRIOR ADJUDICATION. . . . . . . . . . . . . . . . . . . . . . . 2

        A.      The First Hawaii Case Writ of Mandate of the Court of Appeals Establishes that
                Berry owns The Works Fleming Sold to C&S  . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.      Fleming Files for Bankruptcy Protection in Delaware.  . . . . . . . . . . . . . . . . . . . 3

        C.      Mr. Berry Commences the Second Hawaii Case. . . . . . . . . . . . . . . . . . . . . . . . . 4

        D.      Berry Sues Fleming and C&S After Fleming Filed Suit against Berry Falsely
                Claiming it was not Infringing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        E.      C&S Buys Fleming's Wholesale Operations and Receives Copies of Berry
                Technology  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        F.      Berry Obtains Relief from Stay to Finish the First Hawaii Case . . . . . . . . . . . . . 6

        G.      The Court of Appeals Decides Issue of Ownership In Favor of Mr. Berry . . . . . . 8

        H.      Even if Mr. Berry had No Right to Damages, and He Does, He May Still
                Maintain this Action by the Mandate of the Court of Appeals.  . . . . . . . . . . . . . 10

        I.      The Second Hawaii Case Found Fleming to Be an Infringer and C&S Simply
                Claimed to Not Be Using Any Berry Works. . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III.    DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        A.      Claim Bar and Merger Result in C&S being a Willful Infringer for Commercial
                Advantage and to Violate RICO. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        B.      The Court Should Not Consider the Evidence Presented On The Other Claims.  16

        C.      The C&S Motion Must Be Denied Because C&S Admits It Continues to Infringe 17

        D.      The Complaint Does Not Seek To Recover for Copyright Claims that Could have

Been Brought in the First Case Because they Had not Been Committed

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

F.    The Most Recent RICO Predicate is Alleged to Have Occurred Just Prior to the

Filing of the Second Amended Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . 21

G.    C&S Continues to Hold Lex Smith out as Authorized to Bind the Company.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

III.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Table of Authorities

*Berry v. Fleming Companies, Inc*., 243 Fed. Appx. 260, 262, n.2, WL 1062946 (9th Cir.  (July 5, 2007, Hawaii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Berry v. Hawiian Express Service, Inc., et al.*, 2006 WL 618894 (March 9, 2006, Hawaii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Computer Assocs. Int'l, Inc. v. Altai, Inc*., 126 F.3d 365 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . 19

*Curtis v. Citibank, N.A.*, 226 F.3d 133 (2nd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*King v. Edward B. Marks Music Corporation*,  56 F.Supp. 446, 62 U.S.P.Q. 249 (D.C.N.Y. 1944)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*MMZ Associates, Inc. v. Gelco Corp*., 2006 WL 3531429 S.D.N.Y.,2006.) . . . . . . . . . . . . . . . . 15

*Pavia v. 1120 Ave. of the Americas Associates*, 901 F.Supp. 620 (S.D.N.Y.1995)  . . . . . . . . . 20

*Shmuel, Shmueli, Bashe, Inc. v. Lowenfeld*,  68 F.Supp.2d 161 (E.D.N.Y.,1999)  . . . . . . . . . . 15


STATUTES
18 U.S.C. § 152.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Copyright Act, 17 U.S.C. § 302(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

RICO  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 19, 21

The Copyright Act, 17 U.S.C. § 201(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18


RULES

Fed. R. Civ. P.12(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21


Fed. R. Civ. P. 56  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT C&S
WHOLESALE GROCERS, INC.'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT**

COMES NOW, Plaintiff Wayne Berry, by and through his undersigned counsel and hereby respectfully submits his Memorandum In Opposition to Motion to Dismiss filed by Defendant C&S Wholesale Grocers, Inc. ("C&S") on January 25, 2008.    This Opposition Memorandum is supported by the Declaration of Timothy J. Hogan; Exhibit "1" to "17" filed concurrently.  The materials in Exhibits "1" to "15" are all materials that are public record in the actions that preceded this case.  Mr. Berry respectfully asks that the Court take judicial notice of these materials.  The materials in Exhibits "16" and "17" are offered to rebut certain statements regarding the authority of Lex Smith that was raised in the C&S Motion that go outside of the pleadings.

**I.      INTRODUCTION.**

The C&S Motion makes two principal points. The first point is that, regardless of C&S' lack of license or ownership, regardless of the prior adjudication of the United States District Court for the District of Hawaii, United States Bankruptcy Court for the District of Delaware and United States Court of Appeals for the Ninth Circuit that all have found that the software works that are the subject of this case are Mr. Berry's intellectual property, C&S claims it is free to use the Berry works with impunity because it claims to have bought copies of the works from Fleming Companies, Inc.("Fleming") in an asset purchase agreement.  C&S bases its position on the principals of Res Judicata.

The second point C&S raises appears to not be related to dismissal but more of statement of position regarding the conduct of C&S' agents related to the allegations of intentional torts in the Second Amended Complaint filed herein (the "SAC").

In regard to the infringement claims, contrary to what C&S claims, the SAC is clear that C&S is being sued for infringements that occurred within three years of the filing of the instant complaint. A true and correct copy of the SAC is attached to the Declaration of Timothy J. Hogan (the "Hogan Dec.") as its Exhibit "1." None of those infringements could have been the subject of prior adjudication because they had not yet happened. Finally, while claiming that its Hawaii attorney lacks any authority related to C&S, movant bases its entire motion upon that very attorney's declaration.

## II.    FACTUAL BACKGROUND OF PRIOR ADJUDICATION.

### A.    The First Hawaii Case Writ of Mandate of the Court of Appeals Establishes that Berry owns The Works Fleming Sold to C&S.

On July 3, 2001 Mr. Berry sued Fleming for infringement of three of his then registered works by commencing *Wayne Berry v. Fleming Companies, Inc*., 01-CV-00446 SPK LEK (D.Hawaii). For clarity, Mr. Berry will hereinafter refer to this case as the "First Hawaii Case." The principal issue that developed during that case was whether Mr. Berry's Berry End User License Agreement ("EULA"), with its two addenda controlled or whether, as Fleming claimed, the EULA was irrelevant because Fleming, and not Mr. Berry, was the owner of the copyrights to the works. Fleming operated under a variety of theories including work for hire or alternatively, as a fall back that what Mr. Berry referred to as the "Second Addendum" controlled and not the entire EULA. The issues of whether Fleming had only obtained a limited license, the enforceability of the EULA and Mr. Berry's ownership of all the copies of the works, even the works that Mr. Berry permitted Fleming to create under the EULA which works Fleming then sold to C&S, was actually litigated and necessary to the judgment in the First Hawaii Case. A judgment finding Fleming a willful infringer.

2

On March 6, 2003, after Fleming attempted to prove its ownership over all of Mr. Berry's freight related works, a federal jury in the First Hawaii Case returned its verdict finding for Mr. Berry and found Mr. Berry the owner the Berry works loaned to Fleming. The jury also found Fleming at best, a licensee regarding the works, including the derivatives it had created, but a willful infringer regarding Fleming's creation and use of certain illegal derivatives of one of Mr. Berry's original works, Freight Control System ("FCS") registered with the United States Copyright Office as TX 5-079-445. A true and correct copy of the Special Verdict Form filed on March 6, 2003, is attached to the Hogan Dec. as Exhibit "2". Directly relevant to this case is the jury findings that established Mr. Berry's copyright ownership over all three works, including derivatives created by Fleming. The additional works included an executable program written in C++ language, "FlemingPO.exe," and an invoice definition developed in the Crystal Report©® environment. *See* SAC ¶¶ 23 and Exhibits "A to C" to the SAC.

### B.      Fleming Files for Bankruptcy Protection in Delaware.

Twenty-six days later, and while Mr. Berry's motion for a permanent injunction was pending, on April 1, 2003, Fleming and most of its subsidiaries filed for Chapter 11 Bankruptcy protection in the District of Delaware. The cases were eventually substantively consolidated as *In re Fleming Companies, Inc.*, Bk. No. 03-10945 (MFW) (Bankr. Delaware). Despite the jury verdict and Mr. Berry's objections, Fleming continued to infringe as debtor-in-possession.

At the time of the filing, Fleming's wholesale business was the major asset of this former Fortune 100 company. While the automatic stay was in effect, and with Fleming apparently banking that it would prevail on the issue of ownership, and for the purpose of paying the Lenders' loans, Fleming and C&S entered into an Asset Purchase Agreement ("APA") to sell

3

the Fleming wholesale operations to C&S upon Bankruptcy Court approval.

### C.    Mr. Berry Commences the Second Hawaii Case.

Treading softly by the automatic stay, on July 22, 2003, Mr. Berry commenced *Wayne Berry v. Hawaiian Express Service, Inc. et al.*, 03-CV-00385-SOM-LEK (D. Hawaii) that hereinafter will be referred to as the "Second Hawaii Case."   A true and correct copy of the complaint commencing the Second Hawaii Case is attached to the Hogan Dec. as Exhibit "3." This case sought to proceed based on the jury verdict in the first case against other ongoing infringers of Mr. Berry's works specifically against Fleming's freight forwarder and unlicensed user of his works.  Neither Fleming nor C&S were named as parties on July 22, 2003.

### D.    Berry Sues Fleming and C&S After Fleming Filed Suit against Berry Falsely Claiming it was not Infringing.

On or about August 1, 2003, but after the commencement of the Second Hawaii Case, Fleming, through the instant Lender defendants' counsel, Kirkland & Ellis, commenced a Delaware Bankruptcy adversary proceeding, *Fleming Companies, Inc. v. Wayne Berry*, Adv. Proc. No. 03-54809 MFW (Bankr. Del.) seeking, among other relief, a declaratory judgment that Fleming had not engaged in infringement post-petition, and sought an immediate injunction to prevent Mr. Berry from bothering Fleming with claims it was infringing (a now proven fact) and seeking to prevent Mr. Berry from reporting Fleming's infringement to law enforcement.   The Delaware Bankruptcy Court denied the request for an injunction *sua sponte* by Order dated August 8, 2003.  Hogan Dec. Exhibit.  "4".

After learning the Fleming was attempting a "first filed" strategic filing in Delaware, and claiming only infringements that occurred post-petition, on August 13, 2003, Mr. Berry promptly amended his complaint in the Hawaii Case, prior to the filing of a responsive pleading, and

named Fleming, the then Debtor-in-Possession and C&S a proposed purchaser of Fleming's wholesale operations, and others.  Hogan Dec. Exhibit "5."  Through the relation-back amendment, Mr. Berry effectively defeated the Fleming's plan to obtain the a "first filed" dominant position via the Delaware adversary proceeding that, like the transfer in this case, appeared calculated to increase the cost of the litigation to the individual litigant to the benefit of the publicly traded willful infringer and its Lenders with a multimillion dollar litigation fund.  As a result of Mr. Berry's amendment, Fleming's Delaware Adversary Proceeding was later dismissed in favor of the first filed Hawaii litigation.

> **E.    C&S Buys Fleming's Wholesale Operations and Receives Copies of Berry Technology.**

After Fleming and C&S were named as parties, on August 23, 2003, over a month after the filing of the initial complaint in the Second Hawaii Case and ten days after the August 13, 2003 filing of the First Amended Complaint in the Second Hawaii Case naming Fleming and C&S, and to apparently induce C&S to close the APA, Fleming entered into an agreement with C&S to indemnify C&S for C&S' unlicensed use of what the parties to that agreement called "Berry Technology".   Hogan Dec. Exhibit "6."  Then, after Fleming and C&S entered into the Berry Technology indemnity agreement, on the same day, the sale of Fleming's assets to C&S closed.  This sale of the Fleming assets to C&S occurred over one month after the Second Hawaii Case commenced.  The proceeds of the sale in the amount of $255.8 million were subsequently paid to the instant defendant Lenders.  *See*  Joint Motion of Fleming Companies, Inc. and the Pre-Petition Agents for Authorization Pursuant to Sections 363 and 105 of the Bankruptcy Code, to Pay Amounts to the Pre-Petition Agents on Behalf of the Pre-Petition Lenders, filed on October 10, 2003, in *In re Fleming Companies, Inc.*, Bk. No. 03-10945(MFW)

(Bankr. Del. Hogan Dec. Exhibit "7" at page 6, ¶ 11.

### F.     Berry Obtains Relief from Stay to Finish the First Hawaii Case.

On July 24, 2004, and just one docket entry prior to the entry of the Order Approving Fleming's Third Amended Plan of Reorganization in the Fleming Companies, Inc.'s Bankruptcy case in Delaware, Mr. Berry obtained relief from the automatic stay to enable him to complete the First Hawaii Case and to further protect his original works by obtaining a final judgment that determined his ownership over all the Berry works including those created by Fleming under the Berry EULA.  Hogan Dec. Exhibit "8." Prior to that, Mr. Berry would have violate the automatic stay if he took any actions to prevent Fleming from using the licensed non-infringing works that it had licensed from Mr. Berry in 1999.

After confirmation of the Fleming Reorganization Plan, on July 25, 2004,  the prosecution of Fleming's claim to ownership over Berry Technology fell to the Post-Confirmation Trust ("PCT") that was created to protect the class of beneficiaries of pre-petition Fleming creditors. The PCT was represented by  Kirkland & Ellis, the Fleming Debtor-in-Possession counsel.  By the time the Plan Confirmation Order was entered and the stay modified, C&S had been using the Berry works for eleven months under the terms and subject to the rights reserved to Mr. Berry by his EULA and its addenda notable among these is the clause that provides that any additional works created in association with Mr. Berry's FCS are owned by Mr. Berry.   A copy of the Berry EULA that was admitted into evidence in the First Hawaii Case is attached to Hogan Dec. at Exhibit "9."  A copy of the Second Addendum to the EULA is attached to the Hogan Dec. as Exhibit "10."

With the automatic stay modified, Mr. Berry immediately set out to complete the First

6

Hawaii Case.  The district court in the First Hawaii Case directed the filing of renewed post-trial motions.   On December 27, 2004, the District Court entered its Order denying all post trial motions in its Order Denying Fleming's Renewed Motion for Judgment as a Matter of Law Pursuant to 17 U.S.C. 117, filed on March 20, 2003; Fleming's Renewed Motion for Judgment as a Matter of Law that the 'End User License Agreement' is Unenforceable Against Fleming, filed on March 20, 2003; Berry's Motion for Entry of Permanent Injunction, filed March 20, 2003 all renewed on September 17, 2004. Hogan Dec. Exhibit "11."  In its Fleming's Renewed Motion for Judgment as a Matter of Law that the 'End User License Agreement' is Unenforceable Against Fleming, filed on March 20, 2003, Fleming had argued that the Berry EULA was unenforceable against it for lack of assent.   Fleming instead claimed that its rights derived from what Mr. Berry and the district court termed the EULA's second addendum, that was drafted by Fleming with Mr. Berry's input, to permit Fleming to recast certain of the works including several of the works that are the subject of this case,  with the exception of FCS, the principal MS Access®© database.   The District Court denied Fleming's motion.  Despite claiming a lack of assent regarding the terms in the EULA, the language that appeared in the EULA regarding the ownership of the Fleming created works also appears in the Second Addendum that Fleming agreed it had written with Mr. Berry's input as follows:

> INTELLECTUAL PROPERTY RIGHTS. All title and intellectual property rights in and to the SOFTWARE PRODUCT (including but not limited to any database designs, report designs, custom code, functional designs, images, photographs, animations, video, audio, music, text, and "applets" incorporated into the SOFTWARE PRODUCT), and <u>any copies you are permitted to make herein are owned by Wayne Berry. </u>You may not copy any printed materials accompanying the SOFTWARE PRODUCT.

*See* Berry-Fleming EULA.  Hogan Dec. Exhibit "9" at page 2 of 5, ¶ 3 (emphasis added). This

very same conspicuous transfer of all rights in the Fleming created works to Mr. Berry was also

in the Second Addendum drafted by Fleming as follows:

> …We only intend to use the software to support our local freight operation and will not sell or issue copies to other businesses. We do not intend to transfer copies of this software to other company locations beyond Hawaii. To this end, we understand that copyright laws and international copyright treaties, as well as other intellectual property laws and treaties protect the software product. We understand that this product is licensed, not sold and that all title and intellectual property rights in and to the software product and any copies we make are owned by you….

Hogan Dec. Exhibit "10" at first unnumbered page (emphasis added).   Regardless, when

Fleming sold the copies of works it claimed were created in-house to C&S on August 23, 2003,

it sold Berry Technology not Fleming Technology based on both the EULA and the Second

Addendum. That sale occurred after the filing of the complaint and after Fleming and C&S were

named as parties in the Second Hawaii Case.

        The District Court entered its Final Judgment in the First Hawaii Case on January 20,

2005 and Fleming filed a notice of appeal.   Mr. Berry timely filed a notice of cross-appeal

regarding the denial of a permanent injunction. Fleming's Post-Confirmation Trust was

represented by Kirkland & Ellis and C&S's local counsel, Lex Smith.

        **G.    The Court of Appeals Decides Issue of Ownership In Favor of Mr. Berry**.

        Fleming continued to prosecute its claim to ownership to all the works including, FCS.

In its appellate reply brief related to the appeal of the judgment in the First Hawaii Case, filed on

August 19, 2005, nearly two years after it had delivered the works to C&S on August 24, 2003,

Fleming's PCT, represented by the Lenders' concurrent counsel and C&S concurrent counsel,

Lex Smith, valiantly tried to salvage the ownership of the copies of works that it claimed to have

8

obtained from Mr. Berry but conceded that the ones that Fleming created and the C&S claims it

received from Fleming are Berry's as follows:

> Berry points the Court to language in the November 26, 1999 license agreement
> (E 034-035) and notes that the agreement states that the software was "licensed
> not sold and that all title and intellectual property rights in and to the software
> product and any copies ... are owned by you." Opp. at 14. **But the excerpt should
> conclude "any copies we make are owned by you" (emphasis added)**. Why has
> Berry omitted the two small words "we make" from that excerpt? Because he was
> trying to hide from the Court the fact that Fleming retained ownership of the copy
> Berry gave Fleming in connection with the overall API transaction, leaving in
> place the above analysis. Fleming owned a copy of Berry's software and had a
> license to use it, and Section 117 protects the necessary modifications Fleming
> made for internal use. Again, the Court should reverse.

Fleming-PCT 3d Brief on Appeal,  Hogan Dec. Exhibit "12" at page 7 (emphasis added).

By Memorandum Opinion Dated July 5, 2007, the Court of Appeals for the Ninth Circuit

rejected the PCT's last ditch effort to save C&S and the Indemnity, and held that the works that

C&S is claiming as their own, are all actually owned by Mr. Berry.  *See Berry v. Fleming*

*Companies, Inc.*, 243 Fed. Appx. 260, 262, n.2, 2007 WL 1062946 (9th Cir.  (Hawaii 2007).   A

copy of the 9th Circuit Memorandum Opinion is attached to the Hogan Dec. as Exhibit "13.

Simply stated, Fleming had no ability to lawfully transfer any of the custom software works to

C&S.  C&S is an infringer for using Mr. Berry's works as of this writing.

### H.     Even if Mr. Berry had No Right to Damages, and He Does, He May Still Maintain this Action by the Mandate of the Court of Appeals.

In its memorandum opinion dated July 5, 2007, that concluded the First Hawaii Case, the

Court of Appeals addressed the salient issue raised by C&S and others:  whether the prior

adjudication may act as a bar to Mr. Berry's right to protect his works.  Addressing Mr. Berry's

cross-appeal that sought to reverse the District Court's denial of an injunction, the Court of

Appeals held:

> Should facts come to light suggesting
> that Fleming is continuing to infringe on
> Berry's copyright, **nothing in this memorandum**
> **disposition precludes Berry from**
> **obtaining injunctive relief at that time**.

*Berry v. Fleming Companies, Inc*., 243 Fed. Appx. 260, 262, n.2, WL 1062946 \*\*2 (9th Cir. (Hawaii),2007) (emphasis added).  Hogan Dec. Exhibit "12."

    The "preclusion" on which the C&S Motion is predicated, in light of this Mandate of the Court of Appeals, that found Berry, not Fleming the owner,  is nothing more that wishful thinking of a willful infringer for commercial advantage.  If Fleming,  the actual party to the First Hawaii Case, is denied claim preclusion then the unauthorized, infringer-transferee must equally be denied.

**I.      The Second Hawaii Case Found Fleming to Be an Infringer and C&S Simply Claimed to Not Be Using Any Berry Works.**

    As stated above, on July 22, 2003, and during the pendency of the Fleming bankruptcy, and over a year before the automatic stay was lifted regarding the First Hawaii Case, Mr. Berry filed *Wayne Berry v. Hawaiian Express Service, Inc. et. al*, CV 03-00385 SOM-LEK (D. Hawaii).   Neither Fleming nor C&S were initially named as  parties.  The complaint originally sought damages solely against Hawaii Express Service, Inc.,  Fleming's and now C&S' West Coast freight forwarder for its unlicensed use of the FCS.  Notably, Hawaiian Express agreed to a permanent injunction as part of the settlement of its liability in the Second Hawaii Case.

    C&S escaped infringement liability in the Second Hawaii Case, by representing that it was not using any Berry works.  *See Order Denying Plaintiff's Motion for Permanent Injunction*

*in Berry v. Hawiian Express Service, Inc., et al.*, 2006 WL 618894, *6 (March 9, 2006, D.

Hawaii), Hogan Dec. Exhibit "14." If C&S' claim that the District Court in the Second Case

somehow granted it some rights in the works, this claim is also contrary to the District Court's

ruling. When the issue of C&S's continued use was put the District Court in the Second Hawaii

Case, rather than finding that C&S had some right to use the works as it now claims, relying on

C&S and Fleming's claims to have no intention to use them, the District Court ruled as follows:

> Berry also seeks an order directing Fleming, the PCT, C & S, Employees, and others to return, destroy, or otherwise reasonably dispose of Berry's FCS and any copies or derivatives thereof pursuant to 17 U.S.C. § 503(b). The court denies Berry's request.
>
> Section 503(b) of the Copyright Act provides:
> As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies or phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies of phonorecords may be reproduced.
>
> Pursuant to this statutory provision, "the court could order the infringing articles sold, delivered to the plaintiff, or disposed of in some other way that would avoid needless waste and best serve the ends of justice." 17 U.S.C. § 503(b) Historical and Statutory Notes. Furthermore, "[b]efore [the remedy in section 503(b) ] may be invoked, it is, of course, necessary that the infringement first be judicially established." 4 Nimmer on Copyright § 14.08 at 14-168-69.
>
> As noted above, only Fleming and Employees were found to have infringed Berry's copyright. However, Berry has not established that Fleming or Employees have any copies or derivatives of Berry's FCS, <u>or that C&S has such items</u>. Neither Fleming, Employees, <u>nor C&S currently uses the outdated FCS</u>. Although Defendants' attorneys may possess copies, Berry does not present any argument as to how those copies are likely to be used in the future for infringement by the attorneys, the parties, or anyone else. In any event, Berry excludes from his motion copies retained for litigation purposes, which necessarily includes what Fleming's and Employees' attorneys have.

*See Order Denying Plaintiff's Motion for Permanent Injunction in Berry v. Hawaiian Express*

*Service, Inc., et al.*, 2006 WL 618894, *6 (March 9, 2006, D. Hawai'i)(emphasis added).  Hogan

Dec. Exhibit"14."

At the time the Second Hawaii Case was filed, Fleming had a right to use any of the

originally licensed copies of the Berry works and the permitted derivative works.  Simply stated,

at the time the Second Hawaii Complaint was filed Mr. Berry had no claim against Fleming for

infringement other than the one claim that Mr. Berry brought regarding the spreadsheet

replacement that Fleming created <u>prior to the sale to C&S</u>.  Had Mr. Berry brought a claim

against Fleming who was still the permitted user of the non-infringing works, such a claim

would have arguably violated the automatic stay and have been legally and factually

unsupported.   All that Fleming and its ordinary course counsel hired under the indemnity to

represent C&S succeeded in obtaining summary judgment in the Second Hawaii Case was to

prevail over the issues of whether a "replacement" for the Berry FCS database that Fleming had

created, was an infringing derivative of FCS and whether Fleming's exposing Berry's works to a

potential customer violated his trade secret rights.  C&S never claimed it was using any Berry

works and in fact vigorously denied it.

The issue of who owned the Fleming created works like the other Berry works remained

a thing already decided  from the judgment entered in the First Hawaii Case subject only to

reversal on appeal.  At the time the Second Hawaii Case was filed there was no final judgment in

the First Hawaii Case and the Appeal was not to commence for almost another eighteen months.

Mr. Berry and his counsel kept plodding along, with C&S and Fleming both directed their

attention on attacks on Mr. Berry and simply took their eyes off the ball.

The only references to ownership that derives from the summary judgment motions in the

12

Second Hawaii Case that Mr. Berry could find is the District Court's finding that the "defendants do not contest, for the purpose of the present motions, that Mr. Berry has a valid copyright in his FCS software." *See* Order Granting in Part, Denying In Part Berry's Motion for Summary Judgment, etc., filed on June 27, 2005.   Hogan Dec. "15" at page. 5.   In that order, The District Court Found that Fleming's Excel Spreadsheet replacement for FCS was not a prohibited derivative of FCS.   C&S and Fleming avoided an injunction by representing to the District Court that C&S was not using any Berry works and had no future intention to use them.   Hogan Dec. Exhibit "14."   Contrary to C&S, nothing in the Second Hawaii Case can be shown to permit its apparent admitted use of the Berry Technology that it now concedes it bought from Fleming. The hiding of the works in litigation and claim to not be using them did not ripen into a license nor did it serve to transfer the copyright to C&S.

The instant Second Amended Complaint in the instant case pending in the Southern District of New York alleges that C&S is currently using unlicensed Berry Technology in its wholesale operations.   C&S claims that it bought the works related to the Hawaii freight operations from Fleming.   C&S can point to no order or finding that can support its claim that the copyrights to Berry Technology transferred to Fleming and/or C&S.   The instant SAC does not seek damages from C&S for any infringements that occurred prior to the filing of any amended complaint in the Hawaii Case, and none of the claims in this case could have been brought when the Second Hawaii Case was commenced against C&S because they relate to alleged infringing acts that had not yet been committed.   More importantly, when Fleming was sued in the First and Second Hawaii Cases, it had a license to use all but one of  the works that are the subject of this case.   Fleming contested Mr. Berry's ownership of the copyright to these

13

other works only in the First Hawaii Case, specifically Prepaid Vendor Invoice. Fleming

claimed that either it owned the copyrights to the works or, at a minimum, it owned the copies it

created. The Court of Appeals said Fleming owned nothing.

The issue of the application of the EULA to the rights of Fleming or anyone receiving

Berry works is what is bound by these prior rulings. The Court must take as true the factual

allegation that C&S is using these works without a license from Berry and deny the Motion. No

law, doctrine or finding can change the fact that the SAC makes out a claim that C&S is a

current willful infringer for financial gain of Berry Technology.

## III.  DISCUSSION.

### A.  Claim Bar and Merger Result in C&S being a Willful Infringer for Commercial Advantage and to Violate RICO.

In regard to both the First Hawaii Case and the Second Hawaii Case, all the rulings in the

Hawaii District Court that addressed ownership held that the works were owned by Wayne

Berry. Fleming is C&S' predecessor in interest regarding the Berry works. Fleming appealed the

findings of ownership and enforceability of the EULA to the Court of Appeals in the First

Hawaii Case. It waived it by not appealing these findings of ownership in the Second Hawaii

Case. Fleming specifically argued to the Court of Appeals, in the appeal of the First Hawaii

Case, that it owned the copies of the works it had developed under the Berry EULA.  The Court

of Appeals held that Mr. Berry was correct, that Fleming owned nothing and the works are Mr.

Berry's intellectual property.   Based on that ruling, all that C&S bought from Fleming regarding

these works is ongoing liability for willful infringement.

In addition, assuming that the Court of Appeals had not already determined the rights in

these works that C&S bought from Fleming, the claim that C&S owned the works that are the

14

subject of this case, if that claim arose out of the same transaction or occurrence, as C&S suggests, that claim was a compulsory counterclaim that C&S did not raise.  Claim Bar goes against C&S on every count.  *See Shmuel, Shmueli, Bashe, Inc. v. Lowenfeld*,  68 F.Supp.2d 161 (E.D.N.Y.,1999) (later claim barred that arose out of same transaction or occurrence); *accord MMZ Associates, Inc. v. Gelco Corp*., 2006 WL 3531429 S.D.N.Y.,2006).  It is well settled that a counterclaim is filed to contest ownership of a copyright.  *King v. Edward B. Marks Music Corporation*,  56 F.Supp. 446, 62 U.S.P.Q. 249 (D.C.N.Y. 1944).

In regard to the one work that C&S claims it prevailed upon, the Hawaii court held the work did not contain copyrightable elements of Mr. Berry's FCS that the court found was owned by Mr. Berry.  At the time the Second Hawaii case was commenced, Fleming, not C&S had the right to possess the other works that were not presently being infringed. Therefore, Fleming could continue to possess and use any properly licensed Berry work.   Fleming claimed that it sold nothing of Mr. Berry's to C&S.  C&S, admitting that it simply deceived the Hawaii District Court,  now claims it did.  The Court of Appeals has, more than a year after the final judgment in the Second Hawaii Case, refused to accept Fleming's Post-Confirmation Trust's claim that it was not bound by the EULA and affirmed the trial court and jury verdict related to willful infringement of FCS and the ownership of the Fleming created works that was set forth in the Berry EULA and Second Addendum.  The facts surrounding the issue of ownership regarding each of the works in this case is exactly the same as the facts in the First Hawaii Case.

The only substantive defense C&S claims it has to its infringement is that it "purchased assets from the bankrupt Fleming company. . ."  C&S Brief at page 12.  C&S's defense has problems for C&S on several levels.  First, C&S can point to no evidence that supports its view

that Fleming sold these assets to C&S.  Both C&S and Fleming categorically denied in the

Bankruptcy proceeding.  What C&S now admits is that, not only is it an infringer but also, that

it has obtained assets of a Bankrupt without authority thus admitting Bankruptcy Fraud another

serious RICO predicate.  *See* 18 U.S.C. § 152.

What C&S and Fleming appear to have been claiming, although never articulated, is that,

the works that Fleming created under the Berry EULA,  that were transferred to C&S were

Fleming's works and not Mr. Berry's.  The problem for the PCT and its software customer C&S

is that subsequent to the conclusion of the Second Hawaii Case, the Court of Appeals for the

Ninth Circuit has issued a ruling that established who owned these works, and the court held Mr.

Berry, not Fleming, owns them.  C&S has bought nothing but a claim of willful infringement for

commercial advantage, a racketeering predicate act.

### B.     The Court Should Not Consider the Evidence Presented On The Other Claims.

C&S hasn't even tried to address the numerous torts under the standard applied to a

motion to dismiss and effectively concedes the motion must be denied.   Presumably because

C&S's instant New York counsel has been misinformed by his client, C&S in its Memorandum

claims that Lex Smith is not authorized to speak for C&S on the issue of ongoing infringement.

On the contrary, C&S continues to represent to at least one publically traded entity attempting to

conduct an internal investigation of its own potential infringement liability, that Mr. Smith

remains the person authorized to speak for C&S.   *See* Hogan Dec. Exhibit "15" is a letter from

the office of the General Counsel, Sears Holdings Co. refuting C&S' Lex Smith disclaimer.

Hogan Dec. Exhibit "16" is an email thread where Sears' informs Mr. Berry's counsel that C&S'

Hawaii Division President, Brian Christensen, held Mr. Smith out as authorized to speak to the

issue.   Were Mr. Berry's evidence limited to Smith's admission then the issue of whether he

said it might have some relevance.  Its relevance is that Mr. Smiths statement is what alerted Mr.

Berry.   Mr. Berry has evidence from several sources to support his allegations of ongoing C&S

infringement.  Mr. Smith's statements were simply the event that started the closer scrutiny and

need not be offered for the truth of the matter asserted.   C&S' admission in the Motion that they

bought Mr. Berry's works from Fleming alone is proof of C&S's willful infringement for

commercial advantage and more that sufficient basis to find against C&S.

> **C.    The C&S Motion Must Be Denied Because C&S Admits It Continues to Infringe**.

The SAC alleges C&S is an Infringer for its current conduct.  Federal law provides that

Mr. Berry retains his copyright in his works until 70 years after his death.  *See* the Copyright

Act, 17 U.S.C. § 302(a).   In addition, Congress has protected the author from any involuntary

transfer of a work as follows:

> Involuntary Transfer.  When an individual author's ownership of a
> copyright, or of any of the exclusive rights under a copyright, has
> not previously been transferred voluntarily by that individual
> author, no action by any governmental body or other official or
> organization purporting to seize, expropriate, transfer, or exercise
> rights of ownership with respect to the copyright, or any of the
> exclusive rights under a copyright, shall be given effect under this
> title, except as provided under title 11.

The Copyright Act, 17 U.S.C. § 201(e).

C&S' own attorney, Lex Smith, appears as counsel for the PCT in regard to this Brief

(*See* Hogan Dec. Exhibit "12" at its cover page) and therefore, C&S must concede that its

interests in this matter were adequately represented such that it binds them to the Ninth Circuit's

holding.  C&S does not claim to be the owner of the copyright to any Berry Technology and

appears to concede that its use constitutes unlicensed use for commercial advantage. Its sole defense is predicated on the irrelevant claim that it bought the works from Fleming, hid the fact from the district court and now has the copyright. The Court of Appeals on July 5, 2007 ruled that the works that C&S bought are owned by Mr. Berry and that Mr. Berry is not barred from protecting his works *vis a vis* Fleming who was actually a party to that proceeding and regarding whom claim bar and merger might in other circumstances apply. C&S can't obtain a claim bar greater than its predecessor in interest, Fleming.

Mr. Berry has established claims of infringement and the RICO predicates of criminal copyright infringement. In the instant Second Amended Complaint, Mr. Berry seeks an injunction and to recover damages for infringements that occurred from September 1, 2005 to December 21, 2007. C&S has not put forward any evidence, license, proof or legal theory that would excuse its use of Berry Technology during this time nor can C&S demonstrate that Mr. Berry has ever sued C&S for the conduct that is the subject of the instant Second Amended Complaint. Despite attempting to couch Plaintiff's claims as a rehash of the earlier cases, the instant SAC seeks only to recover from C&S for infringements that occurred well after the filing of the Second Amended Complaint in the Second Hawaii Case on June 18, 2004 that occurred within the three years of the Copyright Act's three year statute of limitations foregoing the longer statute that might be available under the RICO Act. Therefore, unless the law requires that a Plaintiff allege claims for acts that have not yet been committed or contrary to federal law, the copyrights to Mr. Berry's works passed involuntarily to C&S, or that the holding of the Court of Appeals regarding Mr. Berry's ownership can be ignored by this Honorable Court, the instant motion must be denied. To the extent that C&S continues to infringe, Mr. Berry could lawfully

file successive actions on a daily basis for each day of infringing use, until it ceases.  Once every three years appears to be a reasonable mechanism to address C&S' undeterred conduct.  Mr. Berry believes that a permanent injunction might be sufficient to cease the ongoing infringement once and for all.

### D.    The Complaint Does Not Seek To Recover for Copyright Claims that Could have Been Brought in the First Case Because they Had not Been Committed.

It is well settled that the claims that are subject to res judicata had to exist at the time the original complaint was filed.  *Computer Assocs. Int'l, Inc. v. Altai, Inc*., 126 F.3d 365, 369 (2d Cir. 1997).  When the Hawaii Case was commenced, Fleming had a license to use the works that are the subject of the instant claims against C&S.   That complaint and the first amended complaint joining Fleming and C&S were both filed prior to the closing of the Fleming sale to C&S.  Just because C&S refuses to stop infringing upon the apparent belief that it has an agreement providing it indemnity for its future infringing use, does not change the fact that C&S is an infringer. Each time C&S uses the Berry works a new cause of action accrues.

In this regard, the limitations provision operates much like the New York common laws doctrine that continuous or recurring wrongs, such as nuisance or trespass, continually give rise to new causes of action.  *Pavia v. 1120 Ave. of the Americas Associates*, 901 F.Supp. 620, 625 (S.D.N.Y.1995) (citations omitted). Similarly, the doctrine of res judicata does not excuse ongoing wrongful acts.

While claim preclusion bars re-litigation of the events underlying a previous judgment, it does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit; the crucial date for this purpose is the date the complaint was filed.

19

*Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2nd Cir. 2000). C&S can not point to any finding to support a claim that it is the copyright owner of the works that are the subject of this case. The Court of Appeals for the Ninth Circuit has established that Berry owns the works that Fleming sold to C&S. The damages claimed in this case, including C&S' profits for the period of the instant infringement, are necessarily different from the damages for the earlier period and therefore not subject to res judicata. What C&S needed was the copyrights to Mr. Berry's works. It can point to nothing in the prior litigation that would support any such finding having been made in the Hawaii Case.

**E.    Res Judicata including claim bar and merger only operate to C&S's detriment.**

C&S appears to claim that the ownership issue of the works was the subject of the Second Hawaii Case. All of the rulings pointed to Mr. Berry's ownership not C&S. C&S admits however, that this issue was derived from the same transaction or occurrence between the same parties. C&S therefore concedes that it failed to raise a compulsory counterclaim in the Second Hawaii Case. Moreover, the record of that case proves that C&S and Fleming all conceded Mr. Berry's ownership and that concession was never appealed and operates as a bar against C&S now claiming ownership. If C&S is not the owner and has no license, and Mr. Berry is the owner then, as a matter of indisputable law and fact, C&S is a willful infringer for commercial advantage and is engaged in ongoing conduct that constitutes racketeering predicates.

**F.    The Most Recent RICO Predicate is Alleged to Have Occurred Just Prior to the Filing of the Second Amended Complaint.**

The Motion doesn't even really try to argue that the RICO claim can be dismissed based on *res judicata* because the most recent act occurred just days before the Second Amended Complaint was filed.  The Declaration of Lex Smith should not be considered in ruling on the Fed. R. Civ. P.12(b) motion and, if it is, the Court should convert the motion to a Fed. R. Civ. P. 56 motion for Summary judgment.  Mr. Berry must be permitted an opportunity to conduct discovery to have an adequate opportunity to respond to the motion.   Because the factual allegations of the Second Amended Complaint must be taken as true, the Court must deny the motion.  Even if the Court were to find that the Copyright damage claims were barred, the allegation that Mr. Berry has been the victim of the numerous other tort based claims that are raised in the Second Amended Complaint must be taken as true.   The motion makes no claim that the tort claims and RICO allegations are not properly alleged regarding the elements of the claims or that they don't make up the basis for a RICO claim.  The C&S motion doesn't even address the claim that it has converted the material objects of the Berry works.

Noteworthy, Mr. Smith's claim to have been simply engaged in asset discovery is on its face rebutted by the fact that he never asked any questions regarding the property's value but focused almost exclusively on location where the property was kept in Mr. Berry's home.  In addition, if Mr. Smith had no role in the service of the dismissed complaint, he fails to even give any reason for the call he admits he received right after service was effected.  Mr. Smith's declaration supports rather than refutes, the SAC and its allegations.

### G.    C&S Continues to Hold Lex Smith out as Authorized to Bind the Company.

C&S claims that Lex Smith,  the same attorney whose Declaration supports the Motion to dismiss who claims personal knowledge of the facts and who remains attorney of record for

21

C&S in the Hawaii case, lacks authority to speak for C&S related to its infringement of Berry works.  First, the statement that C&S is addressing is relevant at this stage not for its ability to bind the company but for the apparently undisputed fact that the statement was the basis for Mr. Berry bringing the claims when he did.  The statement need not be true to be relevant and therefore, is not hearsay.

The fact is that the statement is an admission.  An attorney is an agent.  The Hearsay Rule makes this not hearsay if it is reasonably within the scope of the agents' authority.  Ironically, despite the fact that Mr. Smith's knowledge is the sole basis for the C&S Motion, C&S has not disclosed Mr. Smith as a person with knowledge of the facts as required by Rule 26.

As to the issue of authority, Mr. Berry has received correspondence from one of Fleming and presumably one of C&S's largest corporate customers, Sears d.b.a.  Kmart, that has been informed by C&S Hawaii Division President, contrary to what appears in the C&S Memorandum in Support of its Motion,  Mr. Smith is the person authorized to speak for C&S regarding Berry related matters.

22

## III.    CONCLUSION.

For the reasons stated, Mr. Berry respectfully asks that C&S Motion be denied.

Respectfully Submitted: Honolulu, Hawaii, February 25, 2008.

> S/Timothy J. Hogan
> TIMOTHY J. HOGAN (Hawaii Bar No. 5312)
> Attorney for Plaintiff WAYNE BERRY
> Admitted *Pro Hac Vice*
>
> 1050 Bishop Street, Number 433
> Honolulu, Hawaii 96813
> Tel.  (808) 382-3698
> Fax.  (808) 356-1682
> Email tjh@timhogan.com