# Exhibit 12

DOCKET NUMBERS 05-15223 and 05-15347

RECEIVED
OFFICE OF THE CLERK
U.S. COURT OF APPEALS
PUBLIC INFORMATION UNIT

05 AUG 19 PM 1: 47

FILED_____
DOCKETED____ _____
DATE   INITIAL

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### FLEMING COMPANIES, INC.,

DEFENDANT, APPELLANT, AND CROSS-APPELLEE,

v.

### WAYNE BERRY,

PLAINTIFF, APPELLEE AND CROSS-APPELLANT

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

## REPLY AND RESPONSE BRIEF OF APPELLANT FLEMING COMPANIES, INC. (THIRD BRIEF ON CROSS-APPEAL)

Eric C. Liebeler (CA SBN: 149504)
Damian D. Capozzola (CA SBN: 186412)
R. Olivia Samad (CA SBN: 228611)
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, California 90017
(213) 680-8400 telephone
(213) 680-8500 facsimile
eliebeler@kirkland.com

Lex R. Smith (HI SBN 3485-0)
Suite 2600, First Hawaiian Center
999 Bishop Street
Honolulu, Hawaii 96813
(808) 539-8700 telephone
(808) 539-8799 facsimile
lrs@ksglaw.com

Attorneys for Defendant - Appellant Fleming Companies, Inc.

DOCKET NUMBERS 05-15223 and 05-15347

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FLEMING COMPANIES, INC.,

DEFENDANT, APPELLANT, AND CROSS-APPELLEE,

v.

WAYNE BERRY,

PLAINTIFF, APPELLEE AND CROSS-APPELLANT

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

**REPLY AND RESPONSE BRIEF OF APPELLANT FLEMING
COMPANIES, INC. (THIRD BRIEF ON CROSS-APPEAL)**

Eric C. Liebeler (CA SBN: 149504)
Damian D. Capozzola (CA SBN: 186412)
R. Olivia Samad (CA SBN: 228611)
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, California 90017
(213) 680-8400 telephone
(213) 680-8500 facsimile
eliebeler@kirkland.com

Lex R. Smith (HI SBN 3485-0)
Suite 2600, First Hawaiian Center
999 Bishop Street
Honolulu, Hawaii 96813
(808) 539-8700 telephone
(808) 539-8799 facsimile
lrs@ksglaw.com

Attorneys for Defendant - Appellant Fleming Companies, Inc.

# TABLE OF CONTENTS

                                                                    Page

I.    INTRODUCTION ................................................................. 1

II.   BERRY'S BRIEF SHOWS THAT HIS REGISTRATION WAS

      INADEQUATE. ................................................................. 1

III.  17 U.S.C. § 117 ALLOWS FLEMING TO MODIFY BERRY'S

      SOFTWARE FOR INTERNAL PURPOSES. ............................ 4

IV.   THERE WAS NO EVIDENCE OF WILLFULNESS, AND IT WAS

      ERROR FOR THE COURT TO INSTRUCT ON IT. .................... 7

V.    BERRY IS NOT ENTITLED TO ATTORNEY'S FEES BECAUSE

      FLEMING WAS THE PREVAILING PARTY. ......................... 11

VI.   THE COURT SHOULD AFFIRM THE DISTRICT COURT'S

      RULING DENYING AN INJUNCTION. ................................. 13

VII.  CONCLUSION AND RELIEF SOUGHT ................................. 14

# TABLE OF AUTHORITIES

Page

## Cases

*Aymes v. Bonelli*,
  47 F.3d 23 (2nd Cir. 1995) .................................................................4, 5

*Coles v. Wonder*,
  283 F.3d 798 (6th Cir. 2002) .................................................................3

*Columbia Pictures Television v. Krypton Broad. Of Birmingham, Inc.*,
  106 F.3d 284 (9th Cir. 1997) ...............................................................10

*Feltner v. Columbia Pictures Television, Inc.*,
  523 U.S. 340 (1998).............................................................................10

*Florentine Art Studio, Inc. v. Vedet K. Corp.*,
  891 F.Supp. 532 (C.D. Cal. 1995) ..................................................12, 13

*Geoscan, Inc. of Texas v. Geotrace Technologies, Inc.*,
  226 F.3d 387 (5th Cir. 2000) .................................................................2

*Kodadek v. MTV Networks, Inc.*,
  152 F.3d 1209 (9th Cir. 1998) ...............................................................2

*Krause v. Titleserv, Inc.*,
  402 F.3d 119 (2nd Cir. 2005) ............................................................5, 6

*Lindy Pen Co., Inc. v. Bic Pen Corp.*,
  982 F.2d 1400 (9th Cir. 1993) .............................................................10

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*,
  793 F.2d 1132 (9th Cir. 1986) .............................................................13

*White v. Ford Motor Co.*,
  312 F.3d 998 (9th Cir. 2002) ...............................................................11

## Statutes

17 U.S.C. § 117..................................................................1, 4, 5, 7, 16

17 U.S.C. §§ 407-412 .............................................................................3

17 U.S.C. §§ 408(b) ...................................................................................................3

17 U.S.C. § 409(7) .....................................................................................................3

17 U.S.C. § 410(a) .....................................................................................................3

17 U.S.C. § 506(e) .....................................................................................................3

## I.   INTRODUCTION

Berry's Answering Brief accomplishes little other than to preserve if not prove Fleming's points.  In particular:

► Berry's own brief shows that his copyright registration form is materially false.  Ans. Brf. at 25-33.

► Berry installed a copy of his software onto Fleming's computers and licensed Fleming to use it, Ans. Brf. at 38-40, affording Fleming the protections of 17 U.S.C. § 117.

► Berry has no evidence on willfulness other than a memorandum concerning a proposal Fleming rejected and authored by an employee who lacked authority to bind Fleming.  Ans. Brf. at 42-44.

► Berry won below on only one of many issues, Ans. Brf. at 46, making Fleming the prevailing party for purposes of attorney's fees.

► Berry's sole basis for injunctive relief is a hearsay, out-of-date website printout that Berry interprets to argue that Fleming "continues to do business" in the wholesale industry.  Ans. Brf. at 53 and SE 192.

For these reasons and the reasons explained in the balance of this reply, this Court should deny Berry's requests for relief, and grant Fleming's.

## II.   BERRY'S BRIEF SHOWS THAT HIS REGISTRATION WAS INADEQUATE.

Berry's answering brief avoids the critical issue in hopes of distracting the

Court's attention from it: Berry's copyright registration states that it was created in 1993, but he concedes that what he deposited and allegedly licensed to Fleming had been changed dozens if not hundreds of times since the time of alleged creation.

Against this background there are only two logical possibilities. One is that Berry has a valid copyright in the 1993 software he attempted to register with the copyright office, but that work is materially different from the work he deposited and gave Fleming, and therefore materially different from the work Fleming allegedly infringed. This would moot Berry's lawsuit entirely, as a valid copyright registration is a prerequisite to a lawsuit for copyright infringement. *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1211 (9th Cir. 1998). The only other possibility is that Berry's attempt to copyright the work he ultimately gave Fleming necessarily failed, as his registration is willfully, materially false and he thus did not comply with the registration requirements.

Berry's quibbling distinction between "deposit" and "registration" (Ans. Brf. at 24-25) carries no weight. The deposit is of course part of the registration process; if the deposit is defective, so is the registration. 17 U.S.C. §§ 408(b), 410(a); *Geoscan, Inc. of Texas v. Geotrace Technologies, Inc.*, 226 F.3d 387, 393 (5th Cir. 2000). Registration requires a deposit of an exact copy of the work in which one claims copyright and seeks the right to sue for violations. 17

U.S.C. §§ 407-412. In particular it requires that the application accurately state the year in which creation was completed. 17 U.S.C. § 409(7). Any person who knowingly makes a false representation in this regard is subject to criminal punishment. 17 U.S.C. § 506(e). The policies behind these requirements are critically important, and must be strictly applied in order to properly benefit all artists:

> Rather than put the interests of creative artists at risk, [strict application of rules] protects those interests by encouraging artists to either register copyrights upon creation of a new work or, at least, to retain copies of their work. By doing so, they can protect themselves against claims of copyright infringement or, if necessary, enforce their own copyrights.

*Coles v. Wonder*, 283 F.3d 798, 802 (6th Cir. 2002).

Berry does not dispute that the software he gave Fleming was not written in 1993, as indicated on his registration form. Ans. Brf. at 27. Berry's deposit thus does not match with the information stated on his registration, Ans. Brf. at 25-33, and the entire registration is therefore flawed. Whichever way the Court applies these facts, the result is the same: Berry has no basis for suing Fleming for infringing the software he allegedly created in 1993, changed throughout the 1990s, and finally gave Fleming in the fall of 1999. Fleming does not need to show prejudice, because Berry's lawsuit -- premised on what he unabashedly

3

concedes is a backdated registration application -- prejudices all artists by threatening the entire system. The Court should reverse.

## III.    17 U.S.C. § 117 ALLOWS FLEMING TO MODIFY BERRY'S SOFTWARE FOR INTERNAL PURPOSES.

Berry refuses to acknowledge the well-developed distinction between ownership of a copyright in software and ownership of a copy of software. It is thus unsurprising that Berry does not even mention *Aymes v. Bonelli*, 47 F.3d 23 (2nd Cir. 1995), which is squarely on point.

In *Aymes*, the plaintiff software developer held the copyright in the software while the defendant owned its copy of the software. *Aymes*, 47 F.3d at 24. Here, Berry claims to hold the copyright, but Fleming bought all of API's computers and, to the extent that did not include Berry's software, Berry gave them a copy.[1] And in both the *Aymes* matter and here, the critical issue was whether modifications made for internal use constituted infringement. *Aymes*, 47 F.3d at 25 ("On this appeal, Aymes argues principally that he owns the copyright to CSALIB and that any modifications that Island made to the program, even for its own internal purposes, constituted copyright infringement."); *see also* Special Verdict Form, E 207-211, CR 210 (jury verdict finding Fleming was licensed to use the software but made unauthorized changes).

---

[1]    E 026-030 (Asset Purchase Summary, Trial Ex. 66); E 108 (Berry's Testimony, February 25, 2003, at 96:12-96:20, CR 189).

The *Aymes* court exhaustively examined the legislative history of 17 U.S.C.

§ 117 and determined that it should be expected that persons who own a copy of

certain software may modify it and, so long as the modifications are for internal

use only, such modifications fall within the safe harbor § 117 provides from

§ 106's exclusive right to create derivatives.

> Bonelli and Island, as rightful owners of a copy of CSALIB, did not infringe
>
> upon Aymes's copyright, because the changes made to CSALIB were
>
> necessary measures in their continuing use of the software in operating their
>
> business. . . . According to the Contu Report, copyright laws should reflect
>
> the fact that transactions involving computer programs are entered into with
>
> full awareness that users will modify their copies to suit their own needs. . . .

*Aymes*, 47 F.3d at 26. The court went on to point out that the legislative history

specifically contemplates that § 117 would include "the right to add features to the

program that were not present at the time of rightful acquisition." *Id*. The *Aymes*

court thus concluded that because the defendants there had simply modified their

copy of the software to meet their own needs, they had not infringed plaintiff's

copyright.

The Second Circuit recently reaffirmed its commitment to *Aymes* in *Krause*

*v. Titleserv, Inc.*, 402 F.3d 119 (2nd Cir. 2005). There, plaintiff software designer

broke relations with defendant on less than amicable terms but agreed that

defendant was free to use the code to his programs as they existed on the day he left. *Krause*, 402 F.3d at 121. Plaintiff insisted that defendant had no right to modify the code, which would have severely limited the value of the programs to defendants because routine functions and maintenance often required changes to the source code. *Krause*, 402 F.3d at 121. Defendant made such modifications, and plaintiff sued, alleging unauthorized copying and production of derivatives, just like plaintiff here. *Krause*, 402 F.3d at 121; E 072-073.

Defendant sought protection under 17 U.S.C. § 117, and the Second Circuit agreed. Noting that ownership of property "is often described as a bundle of rights," the court examined the legislative history and concluded that "formal title in a program copy is not an absolute prerequisite" for § 117 protection where, as here, the defendant had the right to use the programs indefinitely and to discard or destroy its copy of the program at will. *Krause*, 402 F.3d at 123-124. The court then went on to follow *Aymes* and hold that where the defendant (like Fleming) had modified the program only to facilitate its use for essential business purposes and no other reason, Section 117 applied and defendant's actions were not infringement. *Krause*, 402 F.3d at 125-130.

The rationales from *Aymes* and *Krause* should apply here. Fleming's modifications were exclusively for its own working purposes, as the parties had in fact contemplated when they entered the November 26, 1999 agreement stating

that Fleming would "have the ability to change and modify reports that come out of the system."[2]

Berry points the Court to language in the November 26, 1999 license agreement (E 034-035) and notes that the agreement states that the software was "licensed not sold and that all title and intellectual property rights in and to the software product and any copies . . . are owned by you." Opp. at 14. But the excerpt should conclude "any copies **we make** are owned by you" (emphasis added). Why has Berry omitted the two small words "we make" from that excerpt? Because he was trying to hide from the Court the fact that Fleming retained ownership of the copy Berry gave Fleming in connection with the overall API transaction, leaving in place the above analysis. Fleming owned a <u>copy</u> of Berry's software and had a license to use it, and Section 117 protects the necessary modifications Fleming made for internal use. Again, the Court should reverse.

## IV.    THERE WAS NO EVIDENCE OF WILLFULNESS, AND IT WAS ERROR FOR THE COURT TO INSTRUCT ON IT.

Berry's answering brief largely asks the Court to build speculation upon conjecture about what the jury might have been thinking. In fact, Berry's entire argument on the willfulness point contains not a single specific citation to record

---

[2]    E 034-035 (November 26 License, Trial Exhibit 52); Stussi testimony at E 179-181 (Transcript of Trial Proceedings, March 3, 2003, at 104:9-104:22, 105:8-105:21, 106:1-106:8, CR 201).

evidence. Ans. Brf. at 40-44. In the end, Berry confirms that the only piece of

hard evidence he can present on willfulness is the Wardlaw memorandum, a

memorandum written by someone subordinate to Mr. Stussi about a document that

was "not at all acceptable to Fleming."[3] Ms. Wardlaw's memorandum -- and

therefore Berry's willfulness claims -- hinge on Berry's October 29, 1999 proposed

End-User License Agreement. As Fleming never agreed to that document, and in

fact directly rejected it before working with Mr. Berry to jointly draft the

November 26, 1999 agreement that nowhere even references the October 29, 1999

document,[4] the October 29, 1999 document provides no legal support and Berry's

willfulness claims collapse.

Berry does not even attempt to contest Fleming's assertion that Mr. Stussi,

not Ms. Wardlaw, was the person in charge of Fleming's Hawaii operations and

the only person that could rightly agree on Fleming's behalf to the October 29,

1999 proposed End-User License Agreement.[5] When Stussi finally saw the

proposal, he immediately informed Berry that Fleming did not agree, and worked

with Berry to draft a new agreement, resulting in the November 26, 1999 letter

---

[3]   E 034-035 (November 26, 1999 License, Trial Exhibit 52); Ans. Brf. at 41, 44.

[4]   E 032-033 (November 24, 1999 Letter, Trial Exhibit 62).

[5]   Brf. at 31-32 (citing E 154 (Stussi Testimony, February 28, 2003, at 109:9-
      109:14, CR 194); E 173-174 (Stussi Testimony, March 3, 2003, at 87:23-88:1,
      CR 201)).

agreement.[6] Even the trial court could not help but observe that Berry's

characterization of the October 29, 1999 document as a binding contract was

deceptive.

> A.    (Berry) Yes. So it appears Amy Wardlaw after
> reading it, she's detected that what concerns her is a
> violation of the licensing agreement that she felt they
> were operating under.
>
> THE COURT: The **proposed** licensing agreement.
>
> THE WITNESS: No. That was dictatorial. That was my
> licensing agreement.
>
> THE COURT: It's not signed by them, tough.
>
> THE WITNESS: It doesn't have to be. It's a shrink
> wrap license.
>
> THE COURT: Okay. Then you don't call it an
> agreement.
>
> MR. HOGAN: It's a license, Your Honor.
>
> THE COURT: Yeah, your license.
>
> MR. HOGAN: It's a license. I think the term
> "agreement" might be --
>
> THE COURT: **A little misleading**.[7]

Importantly, the proposal Fleming rejected had contained a clause

---

[6]   E 156 (Stussi Testimony, February 28, 2003, at 113:4-113:17, CR 194); E 177
    (Stussi Testimony, March 3, 2003, at 97:12-97:15, CR 201).

[7]   E 118 (Berry's Testimony, February 25, 2003, at 145:4-145:22, CR 189
    (emphasis added)).

prohibiting modifications.[8]  The license which Berry negotiated and accepted

allowed Fleming to change the system and modify reports that came out of it.[9]

Prior to the transition from API to Fleming, the system had frequently been

modified, and it was Fleming's understanding that the license it had negotiated

allowed for continued changes as may be necessary to serve Fleming's internal

business purposes.[10]

      Against this background, Fleming had no actual knowledge that it was

infringing, and thus could not have continued to infringe in the face of that

knowledge, which is what the law requires for willfulness. *Columbia Pictures*

*Television v. Krypton Broad. Of Birmingham, Inc.*, 106 F.3d 284, 293 (9th Cir.

1997), overruled on other grounds by *Feltner v. Columbia Pictures Television,*

*Inc.*, 523 U.S. 340 (1998); *see also Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d

1400, 1406 (9th Cir. 1993) (plaintiff must present sufficient evidence to establish

knowledge sufficient to show a deliberate intent).  And for all of the same reasons,

it was error to instruct the jury on willfulness.  Jury instructions must be

formulated so that they fairly and adequately cover the issues presented, and must

be based on evidence in the record.  *White v. Ford Motor Co.*, 312 F.3d 998, 1012

---

[8]  E 022 (October 29, 1999 proposal, at page 2 of 5, § 2(d)).

[9]  E 034-035 (November 26, 1999 license)

[10]  Brf. at pp. 10-12; E 179-181 (Stussi's Testimony, March 3, 2003, at 104:16-
104:22; 105:8-105:21; 106:1-106:8, CR 201).

(9th Cir. 2002), *amended by* 335 F.3d 833 (9th Cir. 2003). The Court should

reverse the willfulness aspect of the verdict and reduce the damages to the $30,000

statutory maximum.

## V.   BERRY IS NOT ENTITLED TO ATTORNEY'S FEES BECAUSE FLEMING WAS THE PREVAILING PARTY.

Berry repeatedly asserts that he prevailed on the issue of ownership of the

three works at issue in the jury verdict. Ans. Brf. at 46, 48. In doing so, Berry

selectively and erroneously defines the relevant universe of claims, then

mischaracterizes their outcomes. Berry initially explored at least eight different

claims -- including claims that Fleming had provided Berry's software to K-Mart

and that Fleming was using the software on its mainframe computer in Texas --

that were simply abandoned before trial.[11] Ultimately the jury addressed only three

issues: whether Fleming had willfully infringed (a) Berry's Freight Control

System software, (b) Berry's Crystal Reports software, and (c) Berry's

FlemingPO.exe software.[12] As to (b), Berry lost -- the jury determined that

Fleming had not infringed at all. As to (c), Berry lost -- the jury again determined

that Fleming had not infringed at all. As to (a), the jury determined that Fleming

---

[11]   E 36-E 64 & E 65-E 93 (Berry Verified Complaint and First Amended Verified Complaint); E 311-313 (Smith Decl. at ¶¶ 3-10, CR 223); E 305-306 (Plaintiff's December 18, 2002 Letter, Ex. A to Fleming's Motion for Fees and Costs, CR 219, at E 292-308).

[12]   E 207-211 (Special Verdict Form, CR 210).

had willfully infringed, and awarded Berry $98,250 at the end of almost two years

of litigation in which Berry had claimed damages "from several million to several

billion."[13]

Berry does not rebut, or even discuss, Fleming's analysis of *Florentine Art*

*Studio, Inc. v. Vedet K. Corp.*, 891 F.Supp. 532 (C.D. Cal. 1995), an opinion which

should carry significant persuasive weight. The principal defendants there

prevailed on seven of nine infringement counts, just as Fleming prevailed on ten of

eleven claims here.[14] Where the principal *Florentine* defendants had infringed, the

infringement was innocent,[15] just as Fleming's infringement was innocent for the

reasons stated in the preceding section. And just like here, there were no complex

or novel legal issues that justified the *Florentine* plaintiff's insistence on

prosecuting the matter to trial in the face of very reasonable settlement offers from

the defense.[16] In *Florentine*, as here, "Defendants clearly succeeded in a

---

[13] E 095 (January 17, 2003 hearing transcript); *see also* E 379 (alleging maximum statutory damages of $3,626,596,208).

[14] *Florentine*, 891 F.Supp. at 541; E 207-211 (Special Verdict Form, CR 210); E 305-306 (Plaintiff's December 18, 2002 Letter, Ex. A to Fleming's Motion for Fees and Costs, CR 219, at E 292-308).

[15] *Florentine*, 891 F.Supp. at 541.

[16] *Florentine*, 891 F.Supp. at 542; E 307-E 308 (October 28, 2002 letter containing $100,000 settlement offer); E 310-E318 (March 20, 2003 Declaration from Fleming's trial counsel) at ¶ 17 (Fleming repeatedly offered $200,000 to Berry to settle the case).

substantial part of this litigation, and achieved substantially all the benefits they hoped to achieve in defending the suit." *Florentine*, 891 F.Supp. at 541. This Court should reverse the trial court's determination that Berry prevailed, determine that Fleming prevailed, and direct the trial court to award costs to Fleming in an amount consistent with this Court's ruling.

## VI. THE COURT SHOULD AFFIRM THE DISTRICT COURT'S RULING DENYING AN INJUNCTION.

Here again Berry mischaracterizes the issue. Berry posits that when the "District Court relied upon the rational [sic] applied in Judge Mollway's Order in the ongoing post-petition litigation, the Court did not apply the standard for entry of a permanent injunction." Ans. Brf. at p. 51. But this is not the case. The District Court referred to the postpetition case only to supplement the conclusion it had already reached, agreeing with Fleming that given the passage of time since the verdict "the request for a permanent injunction is now pointless. Fleming cannot resume using the software because it essentially is no longer in operation." Drawing on the authority Berry cites, *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132 (9th Cir. 1986), it is difficult to conceive of how "reform of the defendant" can be more "irrefutably demonstrated and total" than when a defendant has exited the business entirely. Against this background, the District Court correctly rejected Berry's request for injunctive relief.

Further demonstrating the weakness of his own argument, Berry actually

makes the outrageous allegation that "Fleming continues to do business" even though all aspects of Fleming's bankruptcy, including the sale of the Hawaii facility to C&S and overall plan confirmation, transpired well over a year ago in front of the Delaware Bankruptcy Court as well as the national bankruptcy bar and media.[17] The "evidence" on which Berry premises his argument turns out to be nothing more than a hearsay, unauthenticated, one-page printout from a website that apparently hasn't kept itself current.[18]

This Court already denied Berry's direct request for an injunction. Order dated June 24, 2005. As Fleming explained in its briefing then, that request was Berry's **fifth** injunction request in front of three different Courts. This sixth request, like the others, must also fail. There is simply nothing to enjoin.

## VII.   CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, Fleming requests this Court to enter an Order directing the District Court to: (a) reverse its erroneous finding of sufficiency of copyright registration, (b) reverse its erroneous interpretation of owner modification under 17 U.S.C. § 117, (c) reverse the verdict of willful infringement, (d) enter an order of judgment in favor of Fleming, (e) vacate the order awarding

---

[17]  *See* E 406 (December 27, 2004 Order denying post-trial motions) (injunction request is "pointless" because "Fleming cannot resume using the software because it essentially is no longer in operation.").

[18]  SE 192.

attorney's fees and costs to Berry and instead enter an order awarding attorney's

fees and costs to Fleming.  Fleming also requests this Court deny Berry's request

to remand the injunction issue to the District Court for further proceedings.

DATED:  August 19, 2005.                    Respectfully submitted,

By:  _Damian Capozzola_____

Damian D. Capozzola (CA SBN: 186412)
KIRKLAND & ELLIS, LLP
777 S. Figueroa Street, Ste. 3400
California, CA 90017
(213) 680-8400 Telephone
(213) 680-8500 Facsimile
eliebeler@kirkland.com

Lex R. Smith (HI SBN 3485-0)
Suite 2600, First Hawaiian Center
999 Bishop Street
Honolulu, Hawaii  96813
(808) 539-8700 telephone
(808) 539-8799 facsimile
lrs@ksglaw.com

Attorneys for Defendant - Appellant
Fleming Companies, Inc

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing

document duly was served on the following party by email and Federal Express

overnight delivery, to his last known address as follows on August 19, 2005:

**REPLY AND RESPONSE BRIEF OF APPELLANT FLEMING
COMPANIES, INC. (THIRD BRIEF ON CROSS-APPEAL)
[2 COPIES]**

      Timothy J. Hogan, Esq.
      LYNCH, ICHIDA, THOMPSON,
      KIM & HIROTA
      1132 Bishop Street, Ste. 1405
      Honolulu, HI 96813
      (808) 528-0100 Telephone
      (808) 528-4997 Facsimile
      tjh@loio.com

      Attorney for Plaintiff WAYNE BERRY

DATED:  August 19, 2005          By:

                              _____
                                Frank V. Carlow