UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| WAYNE BERRY, | : 01:07 CV 7634 WHP |
| Plaintiff, | : Judge William H. Pauley III |
| vs. | : ECF Case |
| DEUTSCHE BANK TRUST COMPANY | : |
| AMERICAS (f.a. BANKERS TRUST COMPANY) | : PLAINTIFF WAYNE BERRY'S |
| and JP MORGAN CHASE BANK, in their separate | MEMORANDUM IN |
| capacities and as agents for the pre- and post-petition | : OPPOSITION TO DEFENDANT |
| lenders of Fleming Companies, Inc.; GENERAL | GENERAL ELECTRIC |
| ELECTRIC CAPITAL CORPORATION; C&S | : CAPITAL CORPORATION'S |
| WHOLESALE GROCERS, INC.; THE POST- | : MOTION TO DISMISS |
| CONFIRMATION TRUST OF FLEMING | |
| COMPANIES, INC.; ROBERT KORS; CORE-MARK | : |
| HOLDINGS INC. and DOES 1 to 200. | : |
| | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFF WAYNE BERRY'S MEMORANDUM IN OPPOSITION TO DEFENDANT
GENERAL ELECTRIC CAPITAL CORPORATION'S MOTION TO DISMISS**

TIMOTHY J. HOGAN (Hawaii Bar No. 5312)
Attorney for Plaintiff WAYNE BERRY
Admitted *Pro Hac Vice*

1050 Bishop Street, Number 433
Honolulu, Hawaii 96813
Tel.  (808) 382-3698
Fax.  (808) 356-1682
Email tjh@timhogan.com

Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       A.     Mr. Berry has Properly Alleged  Claims for Contributory and Vicarious
              Infringement Against GECC. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

              1.     Contributory Infringement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

                     a.     GECC had Knowledge of the Infringing Activity . . . . . . . . . . . . 2

                     b.     Direct Infringement is Already Established . . . . . . . . . . . . . . . . . 2

                     c.     The SAC Properly Set forth the Element of Material Contribution
                            or Inducement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

              2.     The SAC Alleges the Lenders Including GECC Had a Direct Financial
                     Interest in the Infringement and are Liable for Vicarious Infringement  . . 6

              3.     The Statue of Limitations is not a Bar to the Copyright Claims. . . . . . . . 7

       B.     The Unjust Enrichment Claim is Not Preempted. . . . . . . . . . . . . . . . . . . . . . . . 12

       C.     The Complaint Properly Alleges that GECC Violated RICO . . . . . . . . . . . . . . 15

III.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Table of Authorities

CASES

*Demetriades v. Kaufmann*, 690 F.Supp. 289 (S.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 3

*Auscope Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235 (S.D.N.Y. 2004) . . . . . . . . . . 7, 8

*Berry v. Fleming Companies, Inc*., 243 Fed. Appx. 260, WL 1062946  (9th Cir.  (Hawai'i,2007)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Brought To Life Music v. MCA*, 2003 WL 296561 (S.D.N.Y., Feb. 11, 2003) . . . . . . . . . . . . . . 5

*Conerly v. Westinghouse Electric Corp*., 623 F.2d 117 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . 11

*Demetriades v. Kaufmann*, 690 F.Supp. 289 (S.D.N.Y., 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Gershwin Publ'g corp. v. Columbia Artists Mgmt*., Inc., 4443 F.2d 1159 (2nd Cir. 1998) . . . . . . 4

*Grosso v. Miramax Film Corp*., 383 F.3d 965 (9th Cir. Cal., 2004) . . . . . . . . . . . . . . . . . . . . . . 12

*Grosso v. Miramax Film Corp*., 400 F.3d 658 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Kregos v. Associated Press*, 3 F.3d 656 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Livnat v. Lavi*, Case No. 96–CV-4967, 1998 WL 43221 (S.D.N.Y. Feb 2, 1998) . . . . . . . . . . . 5

*Plunket v. Doyle*, NO. 99 Civ. 1106, 2001 WL 175252 (S.D.N.Y. Feb. 22, 2001) . . . . . . . . . . 12

*Stone v. Williams*, 970 F.2d 1043 (2nd Cir. 1992)     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Labate*, 2001 WL 533714 (S.D.N.Y., May 18, 2001) . . . . . . . . . . . . . . . . . . . 16

*Vasquez v. Torres-Negron*, 2007 WL 2244784 (S.D.N.Y., July 11, 2007) . . . . . . . . . . . . . . . . 9

*Zito, v. Leasecomm Corporation*, 2003 WL 22251352 (S.D.N.Y, Oct. 10, 2002.) . . . . . . . . . . 16

STATUTES

Racketeering Influence and Corrupt Organizations Act . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15, 16

Copyright Act, 17 U.S.C. § 202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

RULES

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO MOTION TO DISMISS**

COMES NOW, Plaintiff Wayne Berry, by and through his undersigned counsel and hereby respectfully submits his Memorandum In Opposition to Motion to Defendant General Electric Capital Corporation's ("GECC") Motion to Dismiss filed on January 25, 2008. Mr. Berry respectfully asks that the Court take judicial notice of the materials attached to the Declaration of Timothy J. Hogan, filed concurrently.

## I.    INTRODUCTION.

GECC makes three arguments to support the motion as follows:

1.    That the claim for contributory or vicarious liability fails to state any plausible basis for relief against GECC.

2.    That the unjust enrichment claim is preempted.

3.    That the RICO allegations fail for lack of any plausible allegation of a pattern of racketeering activity.

Mr. Berry will discuss each of the these arguments in the order presented.

## II.    DISCUSSION

### A.    Mr. Berry has Properly Alleged  Claims for Contributory and Vicarious Infringement Against GECC.

### 1.    Contributory Infringement.

GECC concedes, at pages 8 to 9 of its Memorandum of Law, that to withstand a motion to dismiss, Mr. Berry must plead the following elements of the claim:

GECC had knowledge of the infringing activity,

GECC induced, caused or materially contributed to,

The infringing conduct of another.

     **a.**       **GECC had Knowledge of the Infringing Activity.**

Mr Berry took great pains to describe the GECC's role in the Core-Mark SEC Form 10 fraud and its relation to the infringement but, like Mr. Berry's infringement warning, GECC chose to ignore it in its Memorandum in Support of Motion.  These detailed allegations cannot be dismissed under the offhand claim that they are "implausible." *See* Plaintiff's Second Amended Complaint ("SAC") at paragraphs 107 to 134.  A copy of the SAC is attached to the Hogan Dec. as Exhibit "1."  In addition, Mr. Berry has alleged knowledge going back to 2002.  Well beyond its conduct related to the Core-Mark Form 10, the SAC alleges GECC's knowledge of the infringing activity.  *See*  SAC ¶¶ 146, 150, 152, 156, 157, 160.

     **b.**       **Direct Infringement is Already Established.**

GECC does not appear to dispute that its borrowers, Fleming Companies, Inc.("Fleming") and C&S Wholesale Grocers, Inc. ("C&S")  have each engaged in direct infringement. The direct infringement regarding Fleming was already established in two previous lawsuits.  *See  Berry v. Fleming*, CV01-00446 SPK-LEK (D. Hawaii) and *Berry v. Hawaii Express Service, Inc.*, CV01-00385 SOM-LEK (D. Hawaii).   GECC tries to rid itself of liability as a Fleming Lender by asking the Court to re-write the SAC that defines GECC as Lender under pre-petition Fleming loans.  *See* SAC at ¶ 6.

     **c.**       **The SAC Properly Set forth the Element of Material Contribution or Inducement**.

Mr. Berry concludes that GECC's position is that  Mr. Berry has not pled that GECC, induced, caused or materially contributed to, the admitted direct infringement.  The SAC proves that GECC is wrong and the motion should be denied.   In regard to allegations related to the

element of inducement, causing or materially contributing to the infringement, *see* SAC ¶¶ 161 to 165.

In *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 796-97 (9th Cir. 2007), the Ninth Circuit Court of Appeals addressed the degree of participation necessary to impose liability on defendants who provide financial services to infringers. The direct infringers in *Perfect 10* were trafficking copies of infringing adult content over the internet. The financial institutions' involvement in *Perfect 10* included the processing of credit card transactions through their automated systems. It is not even clear whether the card issuers actually knew of the infringement because the court didn't need to reach that issue. *Id.* at 795. The court, with a strong dissent from Judge Kosinski who would have found liability, held that the conduct was too attenuated to be actionable. In sharp contrast, the SAC alleges that the decisions to commit the infringement in this case was undertaken **by the Lenders** in this case and that the infringer were acting under their control. Under *Perfect 10*, the Lenders would be liable.

These Lenders, including GECC, weren't just lending money and processing credit card payments. They were in the trenches with Fleming, who was just weeks away from a jury finding of willful infringement. Fleming reaction to a verdict that said that making an unauthorized derivative was willful infringement by making another one. GECC, through the principals of agency law was charged with the knowledge that the lead lenders' gained in regard to the Berry matters.

In passing on Fleming's claim to have inadvertently infringed in the First Hawaii Case, the Court of Appeals for the Ninth Circuit found Fleming's earlier claim to be unclear of its rights insufficient to avoid willful infringement liability. Simply stated, when a party ignores an

3

infringement warning, even if the issues are complicated, that mistake as to the legal

ramifications does not relieve them of willful infringement liability as follow:

> Additionally, the jury's "willful" finding under § 504(c)(2) is supported by the record. Fleming authorized one of its computer programmers to make changes to the FCS because Berry had received compensation for the program. Given that the License Agreement did not specifically address what changes Fleming could make to the FCS, and that Berry never received any compensation from Fleming, the district court properly instructed the jury on willfulness. *See* Dolman v. Agee, 157 F.3d 708, 715 (9th Cir.1998) (district court's willfulness finding supported by the evidence where defendant was told that the situation with respect to the disputed songs was "a mess").

*Berry v. Fleming Companies, Inc*., 243 Fed. Appx. 260, 262, WL 1062946 *1 (9th Cir.

(Hawai'i,2007) (citations in the original).

Knowing that in order to be paid the Lenders had to keep their hand tightly on the

infringing works and keep funding the efforts, the Lenders, including GECC through its agents,

actively and knowingly contributed to the infringement lest their investment in Fleming would

be lost.  That is precisely the motivation that secondary infringement liability is meant to thwart

but in this case, with well over $200 million at stake the Lenders risked it and moved forward.

Similarly, the Second Circuit finds secondary infringement liability where "one who,

with knowledge of the infringing activity, induces, causes or materially contributes to the

infringing conduct of another, may be held liable as a 'contributory' infringer."  *Gershwin*

*Publ'g corp. v. Columbia Artists Mgmt*., Inc., 4443 F.2d 1159, 1162 (2nd Cir. 1998).  In

*Gershwin*,  the Second Circuit found material contribution in defendant's "pervasive

participation in the formation and direction of [an] association" which put on concerts at which

copyrighted musical compositions were performed.  *Id.* at 1163.  In this case, the Lenders,

including GECC, were the driving force behind the decision to infringe.

GECC concedes, at page 8 of its Brief that, at this stage, Mr. Berry need only plead that "the defendant knew of, and "substantially participated in," the alleged direct infringement citing *Brought To Life Music v. MCA*, 2003 WL 296561, at *2 (S.D.N.Y., Feb. 11, 2003) and *Demetriades v. Kaufmann*, 690 F. Supp. 289, 293 (S.D.N.Y., 1988). In *Brought to Life*, the court specifically found that:

> ". . the complaint does not allege that Storch had knowledge of, or reasonably should have anticipated the alleged infringement and alleges only that (i) Storch gave defendant Andre Young a copy of BTLMI's song, and that (ii) its copyright was infringed with knowledge."

*Brought to Life* at *2 . In this case, the complaint alleges what is required to sustain a motion to dismiss. *See* SAC ¶¶ 40, 125, 126, 146, 150-161. In *Brought to Life* the court found that the complaint contained none of these allegations. The SAC has property made out a claim of contributory infringement. The allegations go well beyond the "merely providing the means to accomplish an infringing activity." 2003 WL 2966561, at *2 (*quoting Livnat v. Lavi*, Case No. 96–CV-4967, 1998 WL 43221, at *3 (S.D.N.Y. Feb 2, 1998). In *Livnat*, the court ruled that the "contributory infringer must have acted in concert with the direct infringer." *Livna*t, 1998 WL 43221, at *3. Fleming's attorneys in the Second Hawaii Case, filed a motion admitting that the Lenders were engaged in Berry related matters because of Mr. Berry's claims that would have a direct impact on their ability to be paid. *See* Transcript of Proceedings dated March 2, 2006, in *Wayne Berry v. Hawaiian Express Service, Inc*., CV 03-00385 SOM-LEK. Hogan Dec. Exhibit "2" at page 108:9-17. This conceded not only the Lenders' knowledge but also that the Lenders were acting in concert with the infringer in the conduct of what has already been found to be infringement as a matter of law.

5

    2.      **The SAC Alleges the Lenders Including GECC Had a Direct Financial Interest in the Infringement and are Liable for Vicarious Infringement**.

According to GECC, the elements of vicarious infringement require allegations of (1) Direct infringement (2) Defendants' right and ability to supervise the infringing activity and (3) Direct financial interest in the infringing activity.

As stated above, the direct infringement was already established in two previous lawsuits, *Berry v. Fleming*, CV01-00446 SPK-LEK (D. Hawaii) and *Berry v. Hawaii Express Service, Inc.*, CV01-00385 SOM-LEK (D. Hawaii) and C&S's instant apparent admission that it continues to use the Berry works it bought from Fleming evidence C&S's ongoing infringement. Core-Mark's infringement was surplusage not necessary to sustain a claim against the Lenders, including GECC for infringement including ongoing infringement of C&S.

In regard to the right and ability to supervise the infringing activity, the SAC details the facts related to the control of but more importantly alleges that the Lenders that includes GECC, controlled the infringement during a time that Fleming has already been determined to have been engaged in infringement, including willful infringement. *See* SAC ¶¶ 66-70.

As to the financial interest the SAC alleges that the interest was real and direct making out "but for" connection between the Lenders' receipt of over $200 million and the direct infringement. *See* SAC ¶¶ 151, 167, 180 and 192. The continued operation of the Hawaii wholesale division resulted in the sale to C&S along with pirated copies of Berry works, the proceeds of these funds went to the payoff of the Lenders' loans as proceeds derived from the continued infringing use of Berry's work. This evidences the direct financial benefit from the infringement. *See* SAC ¶¶ 166 -170.

The Lenders, including GECC, were in a position to stop the infringement but didn't. The reason is simple, they wanted to be paid from the proceeds of the ongoing infringing activities related to the sale of the wholesale operation in Hawaii. SAC ¶¶ 152-156.  That is vicarious infringement that the law is not powerless to remedy.

GECC concedes that to withstand a motion to dismiss Mr. Berry need allege that "some degree of control or supervision over the individual(s) directly responsible for the infringement is of crucial importance."  *See* GECC Memorandum In Support at pages 9-10 citing *Demetriades v. Kaufmann*, 690 F.Supp. 289, 292 (S.D.N.Y. 1988).  As to allegations of control, *see* SAC  ¶¶ 24, 58, 66, 68, 70, 140, 146, 149, 153, 156, 165 and 276.

> ### 3.    The Statue of Limitations is not a Bar to the Copyright Claims.

GECC, like the other Lenders, cites *Auscope Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235, 247 (S.D.N.Y. 2004) for the proposition that a "claim of copyright infringement accrues when the injury takes place, that is, when infringement occurs, regardless of whether the plaintiff has knowledge of the infringement at the time."   GECC completely ignores the fact that C&S appears to be admitting that it is still infringing the Berry works under erroneous belief that it received some rights to the works as the result of the Second Hawaii Case.  As set forth in the Plaintiff's response to the C&S motion, that is incorporated by this reference, C&S bought no rights from Fleming, only infringement liability derived from the receipt and use of pirated software.

Even if C&S were not still infringing, the Second Circuit still recognizes equitable tolling under the circumstances of this case as follows:

> Thus, plaintiffs may recover only for acts of infringement that occurred
> within the three years next preceding suit unless, of course, the cause of

action accrued later than the infringement date or they can demonstrate
that the statute of limitations has been tolled.

*Auscape* at 241 *citing Kregos v. Associated Press*, 3 F.3d 656, 662 (2d Cir. 1993).  In *Kregos*,

the court noted that Second Circuit does not recognize continuing infringement doctrine but

acknowledged that the district court had discretion to apply equitable tolling.

Mr. Berry has alleged facts that would give rise to both contractual and equitable tolling.

More to the point, ongoing infringement, as in this case, is never given a pass simply because the

copyright owner failed to sue within the period of the statute even if tolling were not applicable.

> The holder of a copyright has a property interest which, when
> invaded by an infringer, may be vindicated by an infringement
> action. Each act of infringement is a distinct harm giving rise to an
> independent claim for relief.  This does not mean that when
> infringements occur during the limitations period recovery may be
> had for past infringements. Recovery is allowed only for those acts
> occurring within three years of suit, and is disallowed for earlier
> infringing acts.  Application of the continuous wrong doctrine
> generally has been rejected in the infringement context.

*Stone v. Williams*, 970 F.2d 1043, 1049-50 (2nd Cir. 1992) (citations omitted).

Like C&S, and the other Lenders, GECC appears to argue that, because the infringements

commenced outside of the statute of limitation, the copyright has passed to the infringers. That is

not the law in this Circuit.

> The same rule that governs infringements of copyrights applies to
> renewal royalties. Infringements of copyrights are actionable
> because they deprive the copyright holder of the exclusive benefit
> from exploitation of that work to which he or she is statutorily
> entitled. See 17 U.S.C. § 106. Cf. Washingtonian Publishing Co. v.
> Pearson, 306 U.S. 30, 39, 59 S.Ct. 397, 401-02, 83 L.Ed. 470
> (1939) (value of copyright depends on the possibility of its
> enforcement). Similarly, copyright renewals are a property interest
> created by statute for the remunerative benefit of the author, or if
> the author is not alive at the expiration of the original term, for a
> class of designated statutory beneficiaries. See, e.g., Stewart v.

8

> Abend, 495 U.S. 207, 217-19, 110 S.Ct. 1750, 1758-59, 109
> L.Ed.2d 184 (1990). Each time the holder of a copyright renewal is
> deprived of his or her statutory entitlement, for example, by
> non-payment of royalties, a distinct harm is done to the owner's
> property interest. <u>Stone's failure to seek relief promptly for
> violations of her entitlement to renewal copyrights does not make
> defendants immune from suit for later violations</u>.

*Stone*, Id. at 1050 (citations in the original) (emphasis added).

GECC also relies on *Vasquez v. Torres-Negron*,  2007 WL 2244784 (S.D.N.Y., July 11, 2007) where the district court refused to apply the 2nd Circuit's prior holding hin *Stone v. Williams*, 970 F.2d 1043 (2nd Cir. 1992) on other grounds.  The district court in *Vasquez* noted the distinction between the Berry infringements, alleged in the SAC, and the claims brought in *Vasquez*, by noting as follows:

> All allegedly infringing activities, however, ceased more than three
> years before the plaintiffs filed suit.

*Vasquez* at *5.   In this case, in contrast, the infringement is occurring as of this writing.  In *Vasquez* the district court cites *TRW Inc. v. Andrews*, 534 U.S. 19, 30, 122 S. Ct. 441, 448 (2001) to support its view that the Supreme Court has effectively overruled *Stone v. Williams*, 970 F.2d 1043 (2nd Cir. 1992).  In apparent contradiction, the Supreme Court actually cites *Stone v. Williams* approvingly regarding the duty of a plaintiff who is presented with facts giving rise to a duty to inquire. Consistent with all cases cited, Mr Berry entered into a tolling agreement then sued within the period of the tolling agreement when he had evidence of the Fleming Lenders' complicity.  In any event, the infringement continues and none of the authority cited by the Lenders including GECC can overcome that fact even though it claims that it was one of the small group of Fleming lenders who chose not to agree to the tolling agreement.

9

The SAC alleges facts that support tolling based on fraudulent concealment. As set forth above, in passing on a Fed. R. Civ. P. 12(b)(6) motion the Court is required to take all the factual allegations as true.  The Complaint alleges the date of accrual of the claims and fraudulent concealment against the Lenders, including GECC, as follows:

> 146.    Starting in the Spring of 2002, Defendants Deutsche Bank Trust Company Americas and  JP Morgan Chase Bank in their separate capacities and as agents for the secured lenders of Fleming Companies, Inc., including GECC,  had reason to know that Fleming might be engaged in criminal infringing activities but because the Lenders enjoyed a direct financial benefit from the continued use of the Berry FCS they continued to provide funding and to exercise control over Fleming to cause Fleming to continue to infringe plaintiff's work.  The infringement of Mr. Berry's work from after the Fall of 2002 when the Lenders were given infringement warning letters and became aware of Mr. Berry's right to be paid for infringing use of his work that continued until no earlier than June 9, 2003, the Lenders received significant sums of money derived from the infringing activities.   The knowledge of the infringement is imputed to other Fleming Lender's whose role in the infringement is not yet fully known to Plaintiff and who will be named as Doe Defendants upon their identification through discovery.

> 147.    The Lenders that responded to the Berry infringement warning letters all denied any infringement.  It was not until March 2006 that Mr. Berry learned that these denials were false.  Because the denials were made by publically traded and regulated financial institutions regarding whom false statements made regarding willful infringement would amount to misprision of a felony, and evidence a lack of institutional soundness, it was reasonable that Mr. Berry  relied on their denials and therefore his discovery of the true extent of their complicity was actively concealed from him and during the time of the infringement the statute of limitations was tolled by fraudulent concealment.

SAC Hogan Dec. Exhibit "1."

Therefore, as alleged in the SAC, that this Court must accept as true, Mr. Berry first had the factual knowledge of the Lenders', including GECC's involvement in the infringement in March 2006, when the Fleming pre-petition Lenders instant attorneys admitted in court that the

Lenders were actively involved in controlling the infringement, the Lender's admission in their Motion that they joined the infringement in 2001, notwithstanding.  As a foot note, the fact of the accrual was memorialized at trial.  Hogan Dec. Exhibit Transcript of Proceedings dated March 2, 2006, in *Wayne Berry v. Hawaiian Express Service, Inc*., CV 03-00385 SOM-LEK.  Hogan Dec. Exhibit "2" at page 108:9-17. Mr. Berry and certain of the Lenders' pre-petition agents immediately entered into a tolling agreement. The Complaint alleges that it was reasonable for Mr. Berry to rely on the denial of their knowledge of the infringement and that the Lenders actively concealed it from him.  These are factual allegations that the Court must be accepted as true if they are plausible.   The copyright statute of limitations therefore, will run in March 2009.

### 3.    GECC is Wrong that C&S Is Not Using Berry Works.

Even C&S doesn't really claim that it isn't using the Berry works.  The C&S argument is that it was able to hide its intent to use them from the District Court and the Bankruptcy Court, and by doing so it now owns the copyright.  C&S has not been able to cite any case that supports that view.  Since the Second Hawaii Case was concluded, the Court of Appeals for the Ninth Circuit has decided an issue that Fleming claimed in that case that was still in play in the Second Hawaii Case, specifically, who owns the works that Fleming created that it sold to C&S.  Long after the District Court in Hawaii had concluded its rulings, the Court of Appeals ruled that these works that C&S will no doubt claim it is using are also owned by Berry. C&S has no license and is therefore an infringer.

### 4.    GECC Is Wrong that Mr. Berry Did Not Identify the Works.

On pages 14 & 16 of the GECC Memorandum, GECC tries to claim that Mr. Berry has not identified any work that is being infringed by Core-Mark, citing a case that stand for the

proposition that "when a plaintiff does not clearly identify the preexisting work" the complaint is defective and should be dismissed." *See Plunket v. Doyle*, NO. 99 Civ. 1106, 2001 WL 175252 (S.D.N.Y., Feb. 22, 2001) (plaintiff did not identify works sufficiently when claiming rights in Sherlock Holmes novels and did not allege what expression was sought to protect).   Again,  the SAC details the infringement of Mr. Berry's work FCS, Registration Date of 10/19/1999, Class: Literary Work (computer programs and databases), Registration Number: TX5-079-445, Titled: "Freight Control System", A copy of the registration is attached as to the SAC as its Exhibit "A" is attached to the Hogan Dec. as Exhibit "3."  *See* SAC  ¶¶ 17, 18, to 23, 42, 60, 70 130 to 131, 146, 155 and 156 related to Mr. Berry's FCS. *See* also SAC Exhibits "B to R" identifying to the other works by registration certificate.

**B.    The Unjust Enrichment Claim is Not Preempted.**

The instant claim derived from Hawaii law, was brought under controlling 9th Circuit case law that demonstrates that the Motion must be denied as to the unjust enrichment claim:

> In *Del Madera* we held that a claim for unjust enrichment was equivalent to a claim for copyright infringement, and thus preempted, because the claim lacked an <u>extra element-the bilateral expectation of compensation</u>. Here, Grosso has alleged that the extra element is present. Therefore, his claim for breach of an implied-in-fact contract is not preempted  by the Copyright Act, because it alleges an extra element that transforms the action from one arising under the ambit of the federal statute to one sounding in contract. Grosso's complaint alleged circumstances that, if true, would sustain an action under *Desny* that is not preempted.

*Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. Cal., 2004) *amended by Grosso v. Miramax Film Corp.*, 400 F.3d 658, 659 (9th Cir. 2005)(emphasis added).[1]  As dictated by

---

[1]  The text of the amendment is as follows:
The opinion is amended to add a new penultimate paragraph as follows: We

*Grosso*, this Court, in assessing whether dismissal is warranted under Fed. R. Civ. P. 12(b)(6), is

confined to the four corners of the Complaint that alleges that:

> 179.    As a separate and distinct claim from the claims under the Copyright Act, and recognizing that the law in the Ninth Circuit where the case was field that was intend as the law applicable to this claim is at odds with the law in the Second Circuit that should adopt the Ninth Circuit view, and because the contract was pursuant to Hawaii law, starting in 2002, the Lenders knew that Mr. Berry had not licensed the use of any derivative copy of his work. The Lenders knew that if Fleming infringed Berry expected to be paid for the use of his work.

> 180.    In the period after April 1, 2003, the Lenders directed Fleming to risk continued infringement so that the Lender's loans would be paid. But for the use of Plaintiff's work, the Lenders would have received little in the break up of Fleming's wholesale business.

> 181.    Both the Lenders and Berry had an expectation that Berry would receive compensation for any unlicensed use of his works.

> 182.    The Lenders received a substantial financial benefit conferred upon them by Mr. Berry and it would be unconscionable to permit them to retain the full amount of

---

express no opinion on the question whether the facts adduced during the summary judgment proceedings on Grosso's copyright claim can support the Desny claim set forth in Grosso's complaint. Our decision is compelled by the procedural posture of the Desny claim. Because the district court granted Miramax' motion to dismiss under Rule 12(b)(6), our inquiry begins and ends with Grosso's First Amended Complaint. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (stating that "the focus of any Rule 12(b)(6) dismissal -- both in the trial court and on appeal -- is the complaint"). Further, we must take all factual allegations as true and must construe them in the light most favorable to the non-moving party. *Allied Signal, Inc. v. City of Phoenix*, 182 F.3d 692, 695 (9th Cir. 1999). With those limitations on our review in mind, we hold only that the First Amended Complaint states a *Desny* claim. We need not and do not decide whether the summary judgment record or any future record, yet to be developed, supports that claim.

*Grosso v. Miramax Film Corp.*, 400 F.3d 658, 659 (9th Cir. 2005).

that benefit that was obtained with the knowledge that Berry would have to be paid if Fleming continued to infringe.

183.    The Lenders are indebted to Mr. Berry in an amount to be determined at trial based upon the Lenders' implied promise to pay the reasonable value of the material infringed from which they derived a substantial benefit.

Second Amended Complaint, Hogan Dec. Exhibit "1".

The Motion must be denied because as in *Grosso*, the Complaint alleges, and the Court must take as true, that there was a "bilateral expectation" that Mr. Berry would be compensated for the unauthorized use of his work by the very entities that profited most from its unlawful use.

Mr. Berry has alleged a claim that the material objects of the software that was delivered to C&S is subject to a conversion claim.  Under the Copyright Act, 17 U.S.C. § 202, "[o]wnership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied."   The Lender's, including GECC received the benefit of Mr. Berry's works, provided to C&S at no charge. This included not only the rights derived from the copyright but also the value imparted from the material objects that were delivered to C&S without compensating Mr. Berry, the undisputed owner of the material objects.  The ability to be compensated for misappropriated software, implicates more than just the copyright.

When one buys software, one pays for the material object and the license.  They are two sticks in the bundle of rights to software.  Were a shipment of books delivered by accident to Borders, but charged and paid for by  Barnes & Noble, would anyone claim that Barnes & Noble would be without a remedy of unjust enrichment because the Copyright Act preempts it? Because this claim is not subject to dismissal the Court should give short shrift to the arguments

14

related to the copyright statute of limitation until the record has been further developed  and

revisit it, if at all, under the standard of a Fed. R. Civ. P. 56 motion or at trial.

### C.     The Complaint Properly Alleges that GECC Violated RICO.

GECC supports is argument solely on the claim that the SAC fails to allege a pattern of

racketeering sufficient to state a claim under the Racketeering Influence and Corrupt

Organizations Act ("RICO").   The SAC ¶¶ 282-293 sets forth numerous  predicate acts,

including those committed by GECC that are far greater than the two required by the cases sited

by GECC.  GECC tries to bootstrap its defective argument that Mr. Berry failed to allege a

substantive copyright infringement claim against it.  In addition to acts committed against Mr.

Berry, GECC ignores the allegations of the detailed fraud that it committed on the SEC when it

was seeking to both retain its financial interest in the ongoing infringement while take a back

seat to other more willing principals.  GECC cannot escape the allegations that detail more than

just commissions of overt act but more to the point agreement to the commission and the

operation of an enterprise. By conspiring to violate RICO, GECC is liable for all damages done

by the enterprise both before it joined and up until it withdraws.

In addition, Mr. Berry makes clear that a major underlying criminal purpose of the

enterprise is the commission of frauds on civilian and government customers of Fleming-

Logistics.  Mr. Berry has alleged that these acts have been continuing despite changes in the

members of the Enterprise for over ten years.   When GECC chose to participate in the fraud on

the SEC that was intended to conceal other infringement, or at a minimum, a securities fraud, it

joined the conspiracy and rejuvenated any stale claims regarding which the statute might have

run.

Likewise GECC is wrong that Mr. Berry has not adequately alleged a RICO enterprise.

15

The second amended complaint details the creation, composition, including the comings and goings of the principals, and unlawful activities of Fleming-Logistics enterprise that operates, consistent with a criminal enterprise, in several areas of criminality.  The detailed history and role and function of the members of this enterprise are more than adequately alleged, the Lenders' motion notwithstanding.

The SAC identifies the role and function of the various participants including the lenders who supply money, act as principals and then launder the proceeds.  By controlling the money, they control the enterprise that the SAC alleges and GECC cannot deny is engaged in ongoing unlawful activity in violation of RICO.  *See  Zito, v. Leasecomm Corporation*, 2003 WL 22251352  (S.D.N.Y, Oct. 10, 2002.) (Civil RICO claims should track a criminal indictment); *see United States v. Labate*, 2001 WL 533714 (S.D.N.Y., May 18, 2001) (RICO indictment sufficient when it tracks the language of the RICO statute and describe the factual basis for the charge).

In ruling on a Motion to Dismiss, the factual allegations are deemed true.  The SAC alleges that the Lenders, including GECC as the participants with the largest stake in the conduct of the enterprises and alleged to be the persons in control.  The other actors and participants' separate rolls in the Enterprise are set forth in detail including the roll of C&S, its truckers and employees and other agents who have committee acts in furtherance of the Enterprise underlying scheme to reap money derived from fraudulent invoicing of private and government customers. To accomplish this unlawful purpose the Enterprise continues to require the unlicensed criminal use of Berry Technology, a one of a kind original work, regardless of the litigation costs that are incurred to defend its use.

16

### III.    CONCLUSION.

Mr. Berry respectfully asks that the GECC  Motion be denied.

Respectfully Submitted: Honolulu, Hawaii, February 25, 2008.

S/Timothy J. Hogan
TIMOTHY J. HOGAN (Hawaii Bar No. 5312)
Attorney for Plaintiff WAYNE BERRY
Admitted *Pro Hac Vice*

1050 Bishop Street, Number 433
Honolulu, Hawaii 96813
Tel.  (808) 382-3698
Fax.  (808) 356-1682
Email tjh@timhogan.com

17