UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

| | | |
|---|---|---|
| WAYNE BERRY, | : | 01:07 CV 7634 WHP |
| Plaintiff, | : | Judge William H. Pauley III |
| vs. | : | ECF Case |
| DEUTSCHE BANK TRUST COMPANY | : | |
| AMERICAS (f.a. BANKERS TRUST COMPANY) | : | PLAINTIFF WAYNE BERRY'S |
| and JP MORGAN CHASE BANK, in their separate | | MEMORANDUM IN |
| capacities and as agents for the pre- and post-petition | : | OPPOSITION TO DEUTSCHE |
| lenders of Fleming Companies, Inc.; GENERAL | | BANK TRUST COMPANY |
| ELECTRIC CAPITAL CORPORATION; C&S | : | AMERICAS and JP MORGAN |
| WHOLESALE GROCERS, INC.; THE POST- | : | CHASE BANKS MOTION TO |
| CONFIRMATION TRUST OF FLEMING | | DISMISS SECOND AMENDED |
| COMPANIES, INC.; ROBERT KORS; CORE-MARK | : | COMPLAINT AND JURY |
| HOLDINGS INC. and DOES 1 to 200. | : | DEMAND |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

PLAINTIFF WAYNE BERRY'S MEMORANDUM IN OPPOSITION TO DEUTSCHE BANK
TRUST COMPANY AMERICAS and JP MORGAN CHASE BANKS MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND JURY DEMAND

TIMOTHY J. HOGAN (Hawaii Bar No. 5312)
Attorney for Plaintiff WAYNE BERRY
Admitted *Pro Hac Vice*

1050 Bishop Street, Number 433
Honolulu, Hawaii 96813
Tel.  (808) 382-3698
Fax.  (808) 356-1682
Email tjh@timhogan.com

Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

I.     INTRODUCTION.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       A.    Mr. Berry has Not claimed that Claim Bar Applies to this Case Related to the
             Lenders only Issue Preclusion as to the Issue of Ownership vis a vis C&S. . . . . . 1

       B.    That the Lenders' Claim to Have Been Conspiring Doesn't Change the
             Allegations of the Second Amended Complaint  . . . . . . . . . . . . . . . . . . . . . . . . . 6

       C.    The Claims in this Case Are Different From the Claims in Any Other Case.
             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       D.    The Unjust Enrichment Claim is Not Preempted. . . . . . . . . . . . . . . . . . . . . . . . 9

       E.    The Copyright Claims Against the Lenders Should not be Dismissed  . . . . . . . . 11

             1.    The Statue of Limitations is not a Bar to the Copyright Claims. . . . . . . 11

             2.    Fraudulent Concealment Was Properly Alleged.  . . . . . . . . . . . . . . . . . . 14

             3.    The SAC Alleges the Lenders Had a Direct Financial Interest in the
                   Infringement and are Liable for Vicarious Infringement . . . . . . . . . . . . . 17

             4.    The Post March 30, 2003 Contributory Infringement Claims Are Also Not
                   Barred by Collateral Estoppel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

             5.     Even if Mr. Berry had No Right to Damages He May Still Maintain this
                   Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

       F.    The SAC Properly Alleges that the Lenders Have Violated RICO.  . . . . . . . . . . 23

III.   CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Table of Authorities

CASES

*Citibank, N.A. v. Data Lease Fin.Corp.*, 904 F.2d 1498 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . 5

*Morgan Consultants v. Am. Tel. And Tel. Co.*, 546 F. Supp. 844 (S.D.N.Y. 1982) . . . . . . . . . . 9

*Aldape v. Akins*, 105 Idaho 254, 668 P.2d 130 (Idaho App.1983) . . . . . . . . . . . . . . . . . . . . . . . . 2

*Alpert's Newspaper Delivery, Inc. v. New York Times Co.*, 876 F.2d 266 (2d Cir.1989) . . . . . . 3

*Auscope Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235 (S.D.N.Y. 2004) . . . . . . . . . . 12

*Berry v. Fleming Companies, Inc.*, 243 Fed. Appx. 260, 262, n.2, WL 1062946 **2 (9th Cir. (Hawai'i,2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 23

*Cameron v. Church*, 253 F. Supp. 611 (S.D.N.Y. March 24, 2003) . . . . . . . . . . . . . . . . . . . . . . 8

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . 17

*Conerly v. Westinghouse Electric Corp.*, 623 F.2d 117 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . 15

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Federated Dep't Stores, Inc. v.. Moitie*, 452 U.S. 394 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Golden State Bottling Co. v. NLRB*, 414 U.S. 168 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 386 N.E.2d 1328

(N.Y., 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Grosso v. Miramax Film Corp.*, 383 F.3d 965 (9th Cir. Cal., 2004) . . . . . . . . . . . . . . . . . . . . . . 9

*Grosso v. Miramax Film Corp.*, 400 F.3d 658 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Merrill Lynch Ltd. P'ship Litig.*, 154 F.3d 56 (2$^d$ Cir. 1998) . . . . . . . . . . . . . . . . . . . . 15, 16

*Interdigital Technology Corporation v. Oki America, Inc. and Qualcomm Incorporated*, 866
F.Supp. 212 (E.D.P.A. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Kregos v. Associated Press*, 3 F.3d 656 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*, 750 F.2d 731 (9th Cir. 1984)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Moran v. City of New Rochelle*, 346 F.Supp.2d 507 (S.D.N.Y.,2004) . . . . . . . . . . . . . . . . . . . . 4

*Phoenix Companies, Inc. v. Abrahamsen*, No. 05 Civ. 4894 (WHP), 2006 WL 2847812
(S.D.N.Y.,Sept. 28, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Ruskay v. Jensen*, 342 F.Supp.264 (S.D.N.Y. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Stone v. Williams*, 970 F.2d 1043 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Sure-Snap Corp. v. State St. Bank & Trust Co.*, 948 F.2d 869 (2$^d$ Cir. 1991) . . . . . . . . . . . . . . 7

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Vasquez v. Torres-Negron*, 2007 WL 2244784 (S.D.N.Y.,2007) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Waldman v. Village of Kiryas Joel*, 39 F.Supp 2d 370 (S.D.N.Y.1999) . . . . . . . . . . . . . . . . . . . . 6

*World Wrestling Entm't, Inc. V. Jakks Pak., Inc*., No. 04-CV-8223 (KMK), 2007 WL 462327 (S.D.N.Y. Dec. 21, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

STATUTES

Bankruptcy Code §363 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

RICO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

Copyright Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Copyright Act, 17 U.S.C. § 202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

RULES

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**PLAINTIFF'S MEMORANDUM IN
OPPOSITION DEUTSCHE BANK TRUST COMPANY AMERICAS and JP MORGAN
CHASE BANKS MOTION TO DISMISS SECOND AMENDED COMPLAINT**

COMES NOW, Plaintiff Wayne Berry, by and through his undersigned counsel and hereby respectfully submits his Memorandum In Opposition to Deutsche Bank Trust Company Americas and JP Morgan Chase Bank's Motion to Dismiss filed on January 25, 2008. Mr. Berry respectfully asks that the Court take judicial notice of the materials attached to the Declaration of Timothy J. Hogan, filed concurrently.

## I.    INTRODUCTION.

Lenders' make four arguments to support their motion.

1.    That Berry has claimed that claim preclusion prevents Mr. Berry from bringing the claims against the Lenders, in part, because the Lenders concede they were conspiring with Fleming going back to 2001.

2.    That the Unjust Enrichment claim brought under Hawaii law is preempted by the Copyright Act..

3.    That the Copyright claims are time barred.

4.    The RICO allegations fail because the Enterprise is not adequately alleged.

Mr. Berry will discuss each of the four arguments in the order presented.

## II.    DISCUSSION.

### A.    Mr. Berry has Not claimed that Claim Bar Applies to this Case Related to the Lenders only Issue Preclusion as to the Issue of Ownership vis a vis C&S.

The Lenders attempt to re-characterize the Second Amended Complaint ("SAC") and the simple factual allegation regarding the earlier findings that Berry owns the works that are the subject of this case. A true and correct copy of the SAC, without exhibits, is attached to the

Declaration of Timothy J. Hogan (the "Hogan Dec.")  as Exhibit "1."

On page 8 of the Lenders' Memorandum In Support, the Lenders try misconstrue Mr.

Berry's allegation in the SAC regarding the issue of ownership of the works Fleming sold to

C&S. Mr. Berry alleged that this discrete issue regarding the ownership of property has been

decided, twice, and that prevents, "Fleming or any party deriving rights from Fleming from

challenging Mr. Berry's ownership."  Mr. Berry's reference to res judicata relates to one of the

two legs of res judicata.

> Res judicata denotes "a thing or matter settled by judgment." BLACK'S LAW
> DICTIONARY 1174 (rev. 5th ed. 1979). The doctrine of res judicata precludes
> the relitigation of a matter previously adjudicated. Functionally, the doctrine has
> two components-claim preclusion and issue preclusion.

*Aldape v. Akins*, 105 Idaho 254, 256, 668 P.2d 130,132 (Idaho App.,1983).  Mr. Berry has

alleged issue preclusion as to who owns the works, not as the Lenders would have it, claim

preclusion.

> The doctrine of "[c]ollateral estoppel, or issue preclusion, bars the relitigation of
> issues actually litigated and decided in the prior proceeding, as long as that
> determination was essential to that judgment." Central Hudson Gas & Elec. Corp.
> v. Empresa Naviera Santa S.A., 56 F.3d 359, 368 (2d Cir.1995). For a party to bar
> another from litigating an issue on collateral estoppel grounds, "(1) the issues in
> both proceedings must be identical, (2) the issue in the prior proceeding must
> have been actually litigated and actually decided, (3) there must have been a full
> and fair opportunity for litigation in the prior proceeding, and (4) the issue
> previously litigated must have been necessary to support a valid and final
> judgment on the merits." Gelb v. Royal Globe Ins. Co., 798 F.2d 38, 44 (2d
> Cir.1986). Use of collateral estoppel "must be confined to situations where the
> matter raised in the second suit is identical in all respects with that decided in the
> first proceeding and where the controlling facts and applicable legal rules remain
> unchanged.

*Phoenix Companies, Inc. v. Abrahamsen*, No. 05 Civ. 4894(WHP), 2006 WL 2847812 at *8
(S.D.N.Y.,Sept. 28, 2006)(citations in the original).

The concept of party identity also may serve to bind a non-party.

> The second requirement of collateral estoppel under New York law, party identity, is also satisfied in this case. Collateral estoppel binds not only the actual parties to a lawsuit, but also their privies.  Under New York law, literal privity need not exist among parties for collateral estoppel to apply. The presence of a single driving force behind both lawsuits creates sufficient identity between the parties for collateral estoppel to apply. Thus, the Foundation's absence from the State court lawsuit does not preclude the application of collateral estoppel in this action.

Christopher D. Smithers Foundation, Inc. v. St. Luke's-Roosevelt Hosp., No. 00 Civ. 5502(WHP),  2003 WL 115234 at *3 (S.D.N.Y. January 13, 2003) *citing Alpert's Newspaper Delivery, Inc. v. New York Times Co.*, 876 F.2d 266, 270 (2d Cir.1989) (citations omitted).

The factual and legal issue of copyright ownership of the Berry works, a property interest, that was the subject of two cases against Fleming, are the facts that Mr. Berry alleges are subject to issue preclusion.  In a prior case Fleming claimed ownership of Mr. Berry's intellectual property, the issue of ownership was necessary to establish infringement and Fleming vigorously defended the case that was tried to a jury over eight days.  In the Second Hawaii Case, Fleming conceded ownership. Both times Mr. Berry prevailed, on the merits, by establishing his ownership that has now been rendered unassailable by virtue of the writ of mandate issued in the Court of Appeals for the Ninth Circuit, on July 5, 2007.  *See Berry v. Fleming Companies, Inc*., 243 Fed. Appx. 260, 262, n.2, WL 1062946 (9th Cir.  (Hawaiii,2007). The factual issue that was already decided establishes who owns the Berry Freight System and its numerous derivative works' that Fleming was permitted to develop.  These issues can't be re-litigated if the defendants claims their rights, if any, derive from a transfer of these works from Fleming.  C&S Wholesale Grocers, Inc. ("C&S") apparently bases its rights, if any, to use the works, because they were sold to C&S in the Fleming-C&S asset purchase agreement. Defendants, including the Lenders may not re-litigate this issue of ownership that is already

3

decided.

"[A] nonparty who has succeeded to a party's interest in property are in privity for collateral estoppel purposes." *Moran v. City of New Rochelle*, 346 F.Supp.2d 507 (S.D.N.Y.,2004)(*citing Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973)). It is also well settled that where rights to property were being litigated when a party received its rights to the property, they, though not parties, are bound by the factual findings related to the property from which their rights, if any, derive:

> In the assignor-assignee relationship, privity must have arisen after the event out of which the estoppel arises. Hence, an assignee is deemed to be in privity with the assignor where the action against the assignor is commenced before there has been an assignment. In that situation, at the time the assignee succeeded to the rights of the assignor, the subject matter of the assignment was then embroiled in litigation and was subject to the claims of third parties and the assignee is charged with notice that his rights to the assignment are subject to competing claim. Conversely, an assignee is not privy to a judgment where the succession to the rights affected thereby has taken place prior to the institution of the suit against the assignor. In the present case, since there is no dispute that the assignment was made well before commencement of the consumer fraud action against plaintiff's assignor, plaintiff is not bound by the terms of that judgment

*Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 486-7, 386 N.E.2d 1328, 1332 (N.Y., 1979) (citations omitted).

In addition, claim bar is not a defense to contributory infringement if based on the prior findings against the direct infringer. In a case involving contributory patent infringement, *Interdigital Technology Corporation v. Oki America, Inc. and Qualcomm Incorporated*, 866 F.Supp. 212 (E.D.P.A. 1994) the patent holder had settled with the direct infringer who was dismissed with prejudice thus giving rise to claim bar. On that grounds, the alleged indirect

4

infringer filed motions *in limine* to prevent evidence concerning claims of its contributory infringement and inducement of infringement. The district court held that doctrines of issue preclusion and claim preclusion did not bar contributory infringement and inducement of infringement claims even though the dismissal operated as an adjudication related to the direct infringer.

In this case, Mr. Berry seeks only to impose issue preclusion regarding Mr. Berry's ownership rights in the works that are the subject of this case.   Unlike claim bar, issue preclusion may be invoked by a person or entity who was not a party or in privity with a party in an earlier adjudication.  *See Id.* 866 F. Supp. at  page 214.

In regard to the vicarious infringement claim, the acts that are the subject to this case include acts that occurred after the filing of the complaint in the Second Hawaii Case.  The Lenders cite *Citibank, N.A. v. Data Lease Fin.Corp.*, 904 F.2d 1498 (11th Cir. 1990) and claim that the case stands for the proposition that Mr. Berry's vicarious infringement claim is barred. In determining the application of the preclusive effect of a prior dismissal with prejudice, the court applying Florida law predicated its decision on the legal finding that "[u]nder Florida law, a principal cannot be held liable if the agent is exonerated."  *Citibank*, 904 F.2d at 1500.  In this case, Fleming was not dismissed with prejudice that the court in *Citibank* recognized was an adjudication against the plaintiff.  Far from Fleming having been exonerated, twice Fleming has been adjudged to be an infringer, including a willful infringer, and Mr. Berry has received two federal court final judgments to prove it.

The lenders also cite *Federated Dep't Stores, Inc. v.. Moitie*, 452 U.S. 394, 398 (1981). In *Moitie*, the court held that the failure to appeal a prior adverse judgment exposes the Plaintiff

5

to claim bar.  In this case, the Lenders, who now claim to have been in privity with Fleming,

failed to prevail in the appeal of the First Hawaii Case.  Unlike the Plaintiffs in *Moitie*, Mr. Berry

won the first two cases and has defeated the Fleming's appeal of the First Hawaii Case.

**B.    That the Lenders' Claim to Have Been Conspiring Doesn't Change the Allegations of the Second Amended Complaint**.

First, the SAC alleges the date that Mr. Berry commenced the First Hawaii Case, and

alleges that the Lenders weren't involved, their instant admission to the contrary notwithstanding

(this may serve later as a judicial admission).  Even if the Lenders were conspiring going back

prior to 2001, as they now concede, because Mr. Berry did not know of it when the First Hawaii

Case was filed, even if claim bar were implicated, res judicata does not bar his claims *vis a vis*

the lenders even if as they now appear to conceded, they were in it from the beginning:

> Res judicata is available to a newly named defendant with a close or significant relationship to a defendant previously sued, when the claims in the new action are essentially the same as those in the prior action and the defendant's existence <u>and participation in the relevant events was known to the plaintiff</u>. *See Gambocz v. Yelencsics*, 468 F.2d 837, 840-842 (3d Cir.1972) (subsequent action barred against co-conspirator when essential allegations of second complaint paralleled those in the first, and sole material change was the addition of certain defendants, some of whom had been named in the original complaint as participants in a conspiracy); *Somerville House Management, Ltd. v. Arts & Entertainment Television Network*, 92 cv 4705, 1993 WL 138736, at *3 (S.D.N.Y. April 28, 1993); *Cahill v. Arthur Andersen & Co.*, 659 F.Supp. 1115, 1121-1123 (S.D.N.Y.1986), aff'd, 822 F.2d 14 (2d Cir.1987); *Ruskay v. Jensen*, III, 342 F.Supp. 264, 271 (S.D.N.Y.1972), *aff'd sub nom, Ruskay v. Waddell*, 552 F.2d 392 (2d Cir.), cert. denied, 434 U.S. 911, 98 S.Ct. 312, 54 L.Ed.2d 197 (1977) (<u>finding that sufficient relationship existed between alleged co-conspirators to permit newly named co-conspirators to assert res judicata when plaintiffs settled first action fully aware of the newly named defendants' role</u>).

*Waldman v. Village of Kiryas Joel*, 39 F.Supp 2d 370, 381-2 (S.D.N.Y.1999) (emphasis added)

(citations in the original).

More importantly, the transfer to C&S that produced the sales proceeds that were paid to the Lenders didn't occur until weeks after the Second Hawaii Case was commenced.

Whether Fleming's unsophisticated employees were unknowing victims of Fleming management and the erroneous advice of counsel has no relevance to the issue of whether these sophisticated Lenders had reason to know of the infringement and acted to advance it when they had the absolute power to stop it.  The Lenders strangely claim to be in privity with Fleming.  The Lenders appear to have forgotten that Fleming is an adjudicated willful infringer.

There is also nothing inconsistent with the Hawaii District Court findings if the Lenders are liable.  The Lenders cite *Sure-Snap Corp. v. State St. Bank & Trust Co.*, 948 F.2d 869, 874 (2d Cir. 1991) for the apparent proposition that this case will have a negative impact on the relief Mr. Berry obtained in the first two cases.  *Sure-Snap* dealt with a case in which there had been a confirmed Chapter 11 Plan and the debtor, not another creditor, then sued the lenders based on a claim of lender liability.  If Fleming was suing the Lenders this case might apply.  Mr. Berry is not seeking to revisit, through this case,  Fleming's liability for the infringement that was already established in the two earlier cases.

**C.     The Claims in this Case Are Different From the Claims in Any Other Case**.

The complaint in the First Hawaii Case was filed on July 3, 2001.  It addressed infringements occurring prior to that  period.  The Second Hawaii Case, by the Defendants own admission, had only to do with infringements from March 7, 2003 to the filing of the Complaint on July 22, 2003.   There has never been any case that addressed the infringement claims in the period from July 3, 2001 to March 7, 2003, or after June 9, 2003.   The sale of Fleming's

7

wholesale division to C&S occurred August 23, 2003.  At the time of the sale the Lenders appeared to Mr. Berry as disinterested lenders with no involvement in the Berry infringements. Fleming's PCT admitted in March 2006 that the adjudicated infringer and the Lenders were engaged in a cooperative venture directly related to Mr. Berry far beyond the claimed role of innocent lenders. Their de facto ability to control the infringement is not even really disputed.

The Lenders rely heavily on *Cameron v. Church*, 253 F. Supp. 611, 620 (S.D.N.Y. March 24, 2003) and claim that they should be treated as if they were Fleming.  The Lenders now admitted role in the willful infringement opens an entire new arena of commercial misconduct was never within the scope of the earlier cases that dealt with discrete acts of infringement of a grocery wholesaler, not the admitted criminal conduct of two of the world's biggest financial institutions.

The Court must take as true Mr. Berry's claim that he did not know of the Lenders' role in the infringement until it was disclosed by the PCT's counsel in March 2006.  The law of mutuality applied in this Court, that is relied upon by the Lenders, demonstrates that Mr. Berry is not barred because he did not know the Lenders were conspiring when he brought the earlier cases.

> The present case is a proper one for dispensing with the mutuality requirement. The plaintiffs in Horenstein/Ruskay chose the forum in which they litigated, had complete discovery on all issues, and voluntarily surrendered United's claims in exchange for the $650,000 settlement payment. Furthermore, they were fully aware of the role played by the present defendants who were not parties to the earlier proceeding. The participation of these defendants in the challenged transactions was not independent of that of the other defendants, and in fact in the present complaint they are named merely as co-conspirators with the Horenstein/Ruskay defendants.

*Ruskay v. Jensen*, 342 F.Supp.264, 271 (S.D.N.Y. 1972) (emphasis added).

The Lenders also cit *Morgan Consultants v. Am. Tel. And Tel. Co.*, 546 F. Supp. 844, 848 (S.D.N.Y. 1982) to support the claim that Mr. Berry's claims are barred.  In contrast, the plaintiff in *Morgan* had his first two complaints dismissed.  In this case, Mr. Berry has prevailed and the prevailing party in both prior case and received final judgments proving the infringement.

**D.      The Unjust Enrichment Claim is Not Preempted**.

The instant claim derived from Hawaii law, was brought under controlling 9th Circuit case law where the case was commence.  The Motion  must be denied as to the unjust enrichment claim:

> In *Del Madera* we held that a claim for unjust enrichment was equivalent to a claim for copyright infringement, and thus preempted, because the claim lacked an <u>extra element-the bilateral expectation of compensation</u>. Here, Grosso has alleged that the extra element is present. Therefore, his claim for breach of an implied-in-fact contract is not preempted  by the Copyright Act, because it alleges an extra element that transforms the action from one arising under the ambit of the federal statute to one sounding in contract. Grosso's complaint alleged circumstances that, if true, would sustain an action under *Desny* that is not preempted.

*Grosso v. Miramax Film Corp.*, 383 F.3d 965, 968 (9th Cir. Cal., 2004) *amended by Grosso v. Miramax Film Corp.*, 400 F.3d 658, 659 (9th Cir. 2005)(emphasis added).[1]  As dictated by

---

[1]  The text of the amendment is as follows:

The opinion is amended to add a new penultimate paragraph as follows: We express no opinion on the question whether the facts adduced during the summary judgment proceedings on Grosso's copyright claim can support the Desny claim set forth in Grosso's complaint. Our decision is compelled by the procedural posture of the Desny claim. Because the district court granted Miramax' motion to dismiss under Rule 12(b)(6), our inquiry begins and ends with Grosso's First Amended Complaint. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (stating that "the focus of any Rule 12(b)(6) dismissal -- both in the trial court and on appeal -- is the complaint"). Further, we must take all factual

*Grosso*, this Court, in assessing whether dismissal is warranted under Fed. R. Civ. P. 12(b)(6), is

confined to the four corners of the Complaint that alleges that:

> 179.    As a separate and distinct claim from the claims under the Copyright Act, and recognizing that the law in the Ninth Circuit where the case was field that was intend as the law applicable to this claim is at odds with the law in the Second Circuit that should adopt the Ninth Circuit view, and because the contract was pursuant to Hawaii law, starting in 2002, the Lenders knew that Mr. Berry had not licensed the use of any derivative copy of his work. The Lenders knew that if Fleming infringed Berry expected to be paid for the use of his work.

> 180.    In the period after April 1, 2003, the Lenders directed Fleming to risk continued infringement so that the Lender's loans would be paid. But for the use of Plaintiff's work, the Lenders would have received little in the break up of Fleming's wholesale business.

> 181.    Both the Lenders and Berry had an expectation that Berry would receive compensation for any unlicensed use of his works.

> 182.    The Lenders received a substantial financial benefit conferred upon them by Mr. Berry and it would be unconscionable to permit them to retain the full amount of that benefit that was obtained with the knowledge that Berry would have to be paid if Fleming continued to infringe.

> 183.    The Lenders are indebted to Mr. Berry in an amount to be determined at trial based upon the Lenders' implied promise to pay the reasonable value of the material infringed from which they derived a substantial benefit.

---

allegations as true and must construe them in the light most favorable to the non-moving party. *Allied Signal, Inc. v. City of Phoenix*, 182 F.3d 692, 695 (9th Cir. 1999). With those limitations on our review in mind, we hold only that the First Amended Complaint states a *Desny* claim. We need not and do not decide whether the summary judgment record or any future record, yet to be developed, supports that claim.

*Grosso v. Miramax Film Corp.*, 400 F.3d 658, 659 (9th Cir. 2005).

SAC, Hogan Dec. Exhibit "1".

The Motion must be denied because as in *Grosso*, the Complaint alleges, and the Court must take as true, that there was a "bilateral expectation" that Mr. Berry would be compensated for the unauthorized use of his work by the very entities that profited most from its unlawful use. The Lenders concede that should this claim survive, as it must on the face of the Complaint, the six year Hawaii statute of limitations is no impediment to proceeding.

Mr. Berry has alleged a claim that the material objects of the software that was delivered to C&S is subject to a conversion claim. Under the Copyright Act, 17 U.S.C. § 202, "[o]wnership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied." The Lender's received the benefit of Mr. Berry's works, provided to C&S. This included not only the rights derived from the copyright but also the value imparted from the material objects that were delivered to C&S without compensating Mr. Berry, the undisputed owner of the material objects. The ability to be compensated for misappropriated software, implicates more than just the copyright.

When one buys software, one pays for the material object and the license. They are two sticks in the bundle of rights to software. If a shipment of books delivered by accident to Borders, but charged and paid for by Barnes & Noble , would anyone claim that Barnes & Noble would be without a remedy of unjust enrichment because the Copyright Act preempts it? Because this claim is not subject to dismissal the Court should give short shrift to the arguments related to the copyright statute of limitation until the record has been further developed and revisit it if at all, under the standard of a Fed. R. Civ. P. 56 motion or at trial.

**E.     The Copyright Claims Against the Lenders Should not be Dismissed.**

**1.     The Statue of Limitations is not a Bar to the Copyright Claims.**

11

First, the lenders claim that "Berry's pre-March 30, 2003 copyright claims are barred by the statute of limitations."  Lenders Memorandum In Support at page 13.  In support, the Lenders cite *Auscope Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235, 247 (S.D.N.Y. 2004) for the proposition that a "claim of copyright infringement accrues when the injury takes place, that is, when infringement occurs, regardless of whether the plaintiff has knowledge of the infringement at the time."  First, in *Auscope*, the court acknowledge that the Second Circuit has held that tolling principals apply in this context.

> Thus, plaintiffs may recover only for acts of infringement that occurred within the three years next preceding suit unless, of course, the cause of action accrued later than the infringement date or they can demonstrate that the statute of limitations has been tolled.

*Auscape*  at 241 *citing Kregos v. Associated Press*, 3 F.3d 656, 662 (2d Cir. 1993).  In *Kregos*, the court noted that Second Circuit does not recognize continuing infringement doctrine but acknowledged that the district court had discretion to apply equitable tolling.

Mr. Berry has alleged facts that would give rise to both contractual and equitable tolling. More to the point, ongoing infringement, as in this case, is never excused simply because the copyright owner failed to sue within the period of the statute even if tolling were not applicable.

> The holder of a copyright has a property interest which, when invaded by an infringer, may be vindicated by an infringement action. Each act of infringement is a distinct harm giving rise to an independent claim for relief. This does not mean that when infringements occur during the limitations period recovery may be had for past infringements. Recovery is allowed only for those acts occurring within three years of suit, and is disallowed for earlier infringing acts. Application of the continuous wrong doctrine generally has been rejected in the infringement context.

*Stone v. Williams*, 970 F.2d 1043, 1049-50 ([2d] Cir. 1992) (citations omitted).

Like C&S, the Lenders appear to say that, because some of the infringements commenced outside of the statute of limitation, the copyright has passed to the infringers. That is not the law in this circuit.

> The same rule that governs infringements of copyrights applies to renewal royalties. Infringements of copyrights are actionable because they deprive the copyright holder of the exclusive benefit from exploitation of that work to which he or she is statutorily entitled. Similarly, copyright renewals are a property interest created by statute for the remunerative benefit of the author, or if the author is not alive at the expiration of the original term, for a class of designated statutory beneficiaries. Each time the holder of a copyright renewal is deprived of his or her statutory entitlement, for example, by non-payment of royalties, a distinct harm is done to the owner's property interest. <u>Stone's failure to seek relief promptly for violations of her entitlement to renewal copyrights does not make defendants immune from suit for later violations.</u>

*Stone, id.* at 1050 (citations omitted) (emphasis added).

The Lenders also rely on *Vasquez v. Torres-Negron*, 2007 WL 2244784 (S.D.N.Y.,2007) where the district court refused to apply the Second Circuit's prior holding hin *Stone v. Williams*, 970 F.2d 1043 ([2d] Cir. 1992) on other grounds. The district court in *Vasquez* noted the distinction between the Berry infringements, alleged in the SAC, and the claims brought in *Vasquez*, by noting as follows:

> All allegedly infringing activities, however, ceased more than three years before the plaintiffs filed suit.

*Vasquez* at *5. In this case, in contrast, the infringement is occurring as of this writing. In *Vasquez* the district court cites *TRW Inc. v. Andrews*, 534 U.S. 19, 30, 122 S.Ct. 441, 448 (2001) to support its view that the Supreme Court has effectively overruled *Stone v. Williams*, 970 F.2d 1043 ([2d] Cir. 1992). The Supreme Court actually cites *Stone v. Williams* approvingly regarding the duty of a plaintiff who is presented with facts giving rise to a duty to inquire. Consistent

13

with all cases cited, Mr Berry entered into a tolling agreement then sued within the period of the

tolling agreement with allegations that Lenders' complicity relates to much more than just

lending money. In any event, the infringement continues and none of the authority cited by the

Lenders who can still stop it and can overcome that simple fact.

     **2.**     **Fraudulent Concealment Was Properly Alleged.**

The Lenders try to re-write the SAC to change the definition of "Lenders" in paragraph 6,

so that they may then claim that Mr. Berry has not alleged tolling with particularity. The SAC

alleges facts that support tolling based on fraudulent concealment. As set forth above, in passing

on a 12(b)(6) motion the Court is required to take all the factual allegations as true. The

Complaint alleges the date of accrual of the claims and fraudulent concealment against the

Lenders as follows:

> 146.    Starting in the Spring of 2002, Defendants Deutsche Bank Trust Company Americas and JP Morgan Chase Bank in their separate capacities and as agents for the secured lenders of Fleming Companies, Inc., including GECC, had reason to know that Fleming might be engaged in criminal infringing activities but because the Lenders enjoyed a direct financial benefit from the continued use of the Berry FCS they continued to provide funding and to exercise control over Fleming to cause Fleming to continue to infringe plaintiff's work. The infringement of Mr. Berry's work from after the Fall of 2002 when the Lenders were given infringement warning letters and became aware of Mr. Berry's right to be paid for infringing use of his work that continued until no earlier than June 9, 2003, the Lenders received significant sums of money derived from the infringing activities. The knowledge of the infringement is imputed to other Fleming Lender's whose role in the infringement is not yet fully known to Plaintiff and who will be named as Doe Defendants upon their identification through discovery.

> 147.    The Lenders that responded to the Berry infringement warning letters all denied any infringement. It was not until March 2006 that Mr. Berry learned that these denials were false. Because the denials were made by publically traded and regulated financial institutions regarding whom false statements made regarding willful infringement would amount to misprision of a felony, and evidence a lack of institutional soundness, it was reasonable that Mr. Berry relied on their denials

> and therefore his discovery of the true extent of their complicity was actively concealed from him and during the time of the infringement the statute of limitations was tolled by fraudulent concealment.

SAC, Hogan Dec. Exhibit "1."

Therefore, as alleged in the SAC, that this Court must accept as true, Mr. Berry first had the knowledge of the Lenders' involvement in the infringement in March 2006, when the Lenders instant attorneys admitted, in open court, that the Lenders had  were actively involved in the infringement.  As a foot note, the fact of the accrual was memorialized at trial when the Lender's instant counsel disclosed their direct involvement in the proven infringement.  *See* Transcript of Proceedings dated March 2, 2006, in *Wayne Berry v. Hawaiian Express Service, Inc.*, CV 03-00385 SOM-LEK.  Hogan Dec. Exhibit "2" at page 108:9-17. Mr. Berry and the Lenders immediately entered into a tolling agreement. Hogan Dec. Exhibit "3."  This transcript excerpt level of involvement that was admitted on the record.  The Complaint alleges that it was reasonable for Mr. Berry to rely on the denial of their knowledge of the infringement and that the Lenders actively concealed it from him.  These are factual allegations that the Court must be accepted as true and an issue of fact for the jury.   The copyright statute of limitations therefore, will run in March 2009.  As for the infringement that occurred the day this memorandum is due, the statute will run on February 25, 2011.

The Lenders cite *In re Merrill Lynch Ltd. P'ship Litig.*, 154 F.3d 56, 60 ([2d] Cir. 1998) for the proposition that Mr. Berry's claims are barred.  In *Merrill Lynch*, the court stated that the "[i]nvestors did not allege in the SAC that they exercised due diligence; they make no allegation of any specific inquiries of Merrill Lynch, let alone detail when such inquiries were made, to whom, regarding what, and with what response." *Id*.  In this case, the SAC details Mr. Berry's inquiries to the Lenders, defined in paragraph 6 as Deutsche Bank, JP Morgan Chase and

15

GECC..  The specific inquires that were made in 2002 regarding which no Lender responded

other than to deny, is consistent with *Merrill Lynch*.

Similarly, *World Wrestling Entm't, Inc. v. Jakks Pak., Inc*., No. 04-CV-8223 (KMK),

2007 WL 462327, at *37 (S.D.N.Y. Dec. 21, 2007) is unavailing.  *In Jakks Pak*, the court noted

that the Plaintiffs, unlike Mr. Berry, had made no inquiry at all.

> Investors did not allege in the SAC that they exercised due
> diligence; they make no allegation of any specific inquiries of
> Merrill Lynch, let alone detail when such inquiries were made, to
> whom, regarding what, and with what response

*Id.*

Even ignoring the pre-bankruptcy infringement, and the ongoing infringement, the

Lenders cannot deny that the infringement continued until no earlier than June 9, 2003 because

that fact has been found in the Second Hawaii Case and not appealed.    Therefore, the statute

would run, if not tolled, on June 9, 2006.  The Lender cannot deny and in fact admit that they

tolled the statute to March 30, 2007.  Based on the Lender's role in, and receipt of payment from

the sale of Mr. Berry's works to C&S that occurred on August 23, 3003, with the money paid in

that last quarter of 2003, there is no possible basis for claiming that the claims are barred in light

of the tolling agreement.  *See* Tolling Agreement, Hogan Dec. Exhibit "3" a copy of which was

included in the Lenders Request for Judicial Notice as Exhibit N.

Moreover, the Lenders admission to have been conspiring as far back as 2001 is of no

avail.  The instant Complaint alleges the Lenders' infringement that occurred "starting in the

Spring of 2002", well after the fling of the Verified Complaint in the first case, the admission

notwithstanding.

Therefore, none of what Mr. Berry is seeking in this case could possibly be bound up in

the prior judgment because the claims that are bound in the earlier judgment in *Berry v. Fleming*,

16

01-00446 SPK-LEK don't include claims arising after the filing of the Verified Complaint on

July 3, 2001.   It is well settled that the claims that are subject to res judicata had to exist at the

time the original complaint was filed.  *Computer Assocs. Int'l, Inc. v. Altai, Inc*., 126 F.3d 365,

369 (2d Cir. 1997); *see also Los Angeles Branch NAACP v. Los Angeles Unified School Dist*.,

750 F.2d 731, 739 (9th Cir. 1984) (the scope of litigation is framed by the complaint at the time

it is filed).  The Court must accept the factual allegations in the SAC as true and the Motion must

be denied.

> **3.    The SAC Alleges the Lenders Had a Direct Financial Interest in the Infringement and are Liable for Vicarious Infringement.**

According to the Lenders, the elements of vicarious infringement require a showing of

(1) Direct infringement (2) Defendants' right and ability to supervise the infringing activity and

(3) Direct financial interest in the infringing activity.  Lenders' Memorandum in Support, at

page15. Mr. Berry agrees.

a.    The Direct Infringement:   This element has already established in two previous

lawsuits.  *See  Berry v. Fleming*, CV01-00446 SPK-LEK  and *Berry v. Hawaii Express Service,

Inc.*, CV01-00385 SOM-LEK. It is further alleged in regard to C&S's continues to use  Berry

Technology transferred in the asset purchase agreement with Fleming. This fact is taken as true.

b.    The right and ability to control the infringement:   The SAC details this element.

*See* SAC ¶¶ 144 to 170,  Hogan Dec. Exhibit "1."  In addition, the very documents that the

Lenders offer related to the bankruptcy all prove that the Lenders had the power cease providing

funding and terminate advances to end the Fleming infringement.

c.    Financial interest in the infringing activity.  The continued operation of the

Hawaii wholesale division that required the use of the infringing work resulted in the sale to

C&S that required the Berry works and an indemnity. The funds from this sale went to directly to payoff of the Lenders' loans as proceeds derived from the continued infringing use of Berry's works.  All of this is detailed in the SAC that the Court must take as true.  *See* SAC paragraph 144 to 170.   For example, the SAC alleges that:

> 165.    The Lenders had the power to control the infringement and materially contributed to the infringement and aided and abetted the infringement.

> 166.    The Lenders had a direct financial interest in the continuation of Fleming's Hawaii logistics operation as the one asset of value securing the Lenders' loans.

> 167.    But for the continued infringement the Lenders would have received little or nothing on their secured loans and are liable to Plaintiff as vicarious infringers.

SAC, Hogan Dec. Exhibit "1.".

The Lenders were in a position to stop the infringement but didn't.  The reason is simple, they wanted to be paid from the proceeds of the ongoing infringing wholesale operation in Hawaii. That is vicarious infringement.

The Lenders seek to hide behind some alleged Bankruptcy Court order that they are unable to point to that granted them a discharge of these claims in the Fleming Bankruptcy.  In actuality, the Lenders attempted to leave Delaware with an exculpation order buried in the volumes of paper related to the reorganization but their plan was discovered and thwarted.  The SAC  alleges the facts of the Lender's attempt obtain a Bankruptcy Court order granting the dispensation they claim was granted in their motion.   The language was discovered by the Department of Justice and corrected before it ever took effect.  That order was never appealed and can't be revisited in this case.  *See* SAC paragraph 157, Hogan Dec. Exhibit "1."

The Lenders try to make a case that the loans made by the Lenders themselves gave rise

18

to some claim that Berry was required to litigate with them in the Fleming Bankruptcy. On the contrary, the Bankruptcy did not adjudicate claims *vis a vis* third-party creditors nor is it meant to. The Lender's liability, if any, to Mr. Berry is independent of the bankruptcy and the Bankruptcy Court specifically limited the reach of the exculpation language to creditors who had voted to accept the plan. The Hogan Dec. Exhibit 4, is an excerpt from the Transcript of Proceedings in *In re Fleming Companies, Inc.*, Bk. No. 03-10945(MFW) (Bankr. DE) regarding the Fleming Bankruptcy Plan Confirmation Hearing in the United States Bankruptcy Court for the District of Delaware, on July 24, 2004 where the Debtors' counsel discusses the scope of the modified exculpation language. The Hogan Dec. Exhibit "5" is an excerpt from the Fleming Confirmation Order filed on July 25, 2004 that evidences the modified language.

   The nearly three pages that the Lenders committed to this argument, notable for the relative lack of cited authority, is nothing more than an attempt to change the actual outcome of the Fleming confirmation that specifically denied the Lenders the discharge they now claim they received. The one thing Mr. Berry and the Lenders both agree upon in regard to this issue is that res judicata prevents the revisiting of this issue in this proceeding.

   The Lenders cite, *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004) for the proposition that there must be a "causal relationship between the infringing activity and any financial benefit a defendant reaps." Memorandum in Support at page16. Once again, the SAC must be taken as true. As set forth above, Mr. Berry has alleged the necessary causal connection and the Motion must be denied. *See* SAC paragraphs 165-167, Hogan Dec. Exhibit "1." Where the sale of the Berry works was the last act prior to closing the sale to C&S the causal connection is inescapable.

   The Lenders, on page 18 of their Memorandum in Support, mis-characterize Mr. Berry's

19

SAC by claiming that the "crux" of Mr. Berry's claim is that Fleming used its profits to repay the Lender's loans.  That is not what is alleged.  Mr. Berry has made it clear that to continue to have any value in its collateral the Lenders directed the ongoing infringement that culminated in the sale of pirated software to C&S with the proceeds paid to the Lenders.  None of that has anything specifically to do with any of the bankrupt Fleming's non-existent operating profits and the Lenders have put forward no basis for the Court not to accept this allegation as true.

The Lenders also make a claim that Mr. Berry is engaged in a collateral attack on the Plan Confirmation Order. Where the Bankruptcy Court specifically denied the Lenders the exculpation that they now erroneously claim bars Mr. Berry, it is the Lenders, not Mr. Berry who have attacked the Confirmation Order and its finality.

The Lenders unabashedly claim that they had no financial interest in getting over $200 million from the sale of Fleming's wholesale business to C&S.  The direct financial interest is shown by the motion seeking payment of the C&S sale proceeds that evidences their claim to have been paid from a general pool of funds to be a fiction.  *See* Joint Motion of Fleming Companies, Inc. and the Pre-Petition Agents for Authorization Pursuant to Sections 363 and 105 of the Bankruptcy Code, to Pay Amounts to the Pre-Petition Agents on Behalf of the Pre-Petition Lenders, filed on October 10, 2003, in *In re Fleming Companies, Inc*., Bk. No. 03-10945(MFW) (Bankr. Del.) (the "Joint Motion"), a true and correct copy of which is attached to the Hogan Dec. as Exhibit "6."  As the Court may note, the Joint Motion is brought under Bankruptcy Code, 11 U.S.C. § 363.  This section relates **to sales** free and clear of liens.

Any careful review of the Bankruptcy Court record would show that the Lenders have mis-characterized the rulings in the Bankruptcy proceeding, not just regarding the scope of the release language sought in the Fleming  Plan, but also the prior orders that dealt with issue of

20

control based, "solely" on the debtors loans.  The Plan Order is the operative document for res judicata purposes an contains the language discussed above and incorporates all the prior Pre and Post-Petition Financing orders (the orders that the Lenders say gave them a discharge) and grants a limited release of certain parties claims and operates as a final judgment.  The revised plan language makes it clear that the only parties who had claims released are those who had voted for the Plan.  *See* Hogan Dec. Exhibit "5" at page 14.  Mr. Berry never voted and could never vote because he hadn't filed a pre-petition claim prior to confirmation.  Hogan Dec. ¶ 7. Even if Mr. Berry was bound by the exculpation language, none of the conduct that is in this case (I.E. an intentional tort) would be released regardless of the party making the claim. Exhibit "5" at page 32 exempts the willful acts that are alleged even for creditors who voted to approve the Plan.

The real crux of the Lender's agreement is that, somehow, when all the dust settled, the Lenders were discharged from any liability for their past, present and future wrongdoings in regard to Mr. Berry.  They tried to obtain exculpatory language by the Bankruptcy Court but were denied. Were the Lenders really of a mind that the Bankruptcy Court orders have been disregarded they and their counsel have had many chances to apply to Delaware for relief.  They won't because the factual admission that is now a matter of record that the Debtor, under the watch of the current Lender's counsel, sold the Berry works to C&S, in violation of the Bankruptcy Court's specific orders, is a fact that the Lenders and the PCT likely prefer to keep from the Honorable Chief Bankruptcy Judge Walrath.

More importantly, the Memorandum completely ignores the fact that the Bankruptcy Court's orders dealt with the issue of whether those pre-petition and post-petition financing orders could be used to prove that the control was "solely" as the basis for the pre-petition and

post-petition financing.  It is clear that even on their face, the financing orders made no

determination of a carte blanche, get-out-of-jail free coupon for the Lenders regardless of their

conduct.

### 4.  The Post March 30, 2003 Contributory Infringement Claims Are Also Not Barred by Collateral Estoppel.

The Lenders concede that there is an established direct infringement for the period after

March 30, 2003.  The SAC paragraphs 144 to 170 detail the lenders' actual or constructive

knowledge of the infringement and the Lender's substantial participation in the infringing

activities.  Hogan Dec. Exhibit "1"

The Lenders base their defense to their own liability on the fact that the Fleming

employees had been given erroneous legal advice.  These employees were directed to create and

use a FCS derivative just days after a jury found the creation and use of the first one constituted

willful infringement.  The Lenders, as alleged, unlike Fleming's employees, were not relying on

Fleming's attorneys whose advise was found to have resulted in infringement, as a matter of law,

but rather were sophisticated parties who had reason to know the conduct that Fleming's

attorneys said was not infringement was in, fact, infringement.  In addition, Fleming made the

same inadvertent infringement claim in the First Hawaii Case and the defense has been rejected

by the Court of Appeals.  *Berry v. Fleming Companies, Inc*., 243 Fed. Appx. 260, 262, n.2, WL

1062946 **2 (9th Cir.  (Hawaii,2007) (liability exists for willful infringement when previously

warned).   The Lenders are not entitled to claim their rights were litigated along with the Fleming

employee infringers

### 5.   Even if Mr. Berry had No Right to Damages He May Still Maintain this Action.

In its memorandum opinion dated July 5, 2007, that concluded the First Hawaii Case, the

Court of Appeals addressed Mr. Berry's cross-appeal that sought to reverse the District Court's

denial of an injunction.  The Court held:

> Should facts come to light suggesting
> that Fleming is continuing to infringe on
> Berry's copyright, <u>nothing in this memorandum</u>
> <u>disposition precludes Berry from</u>
> <u>obtaining injunctive relief at that time</u>.

*Berry v. Fleming Companies, Inc*., 243 Fed. Appx. 260, 262, n.2, WL 1062946 **2 (9th Cir.
(Hawai'i),2007) (emphasis added).

So even it the Lenders were correct that they should have been parties to the first case

because they were, as they claim, already conspiring to commit criminal infringement, they

would still be subject to an injunction if they are, as they claim, in privity with Fleming and still

engaged in acts giving rise to infringement liability for commercial advantage.

### F.    The SAC Properly Alleges that the Lenders Have Violated RICO.

The Lenders make no plausible argument that they are did not engage in contributory

and/or vicarious infringement for commercial advantage.  The SAC paragraphs 143 to 170 allege

the lenders commission of these predicate acts.   The Lenders basis for claiming that the RICO

claim must be dismissed is that they were "merely lending money to an enterprise."  Lenders'

Brief at page 21.  The Second Amended complaint alleges much more.  First, Mr. Berry believes

that a *loan shark* who finances a bank robbery is engaged in a racketeering predicate.

The Lenders admit in their Memorandum to have been actively engaged in the willful

infringement going back to 2001 even before the acted as Fleming lenders. The SAC sets forth

the basis for the Lender's liability that includes active participation and control over the

infringers and the enterprise as principals.

The Lenders are wrong that Mr. Berry has not adequately alleged a RICO enterprise.

23

The SAC details the creation, composition and unlawful activities of Fleming-Logistics enterprise that operates, consistent with a criminal enterprise, in several areas of criminality that Congress has determined are racketeering predicate acts.  The detailed history and activities of this enterprise are more than adequately alleged, the Lenders' motion notwithstanding.  In ruling on a Motion to Dismiss, the factual allegations are deemed true.  The Lenders, as the party with the largest financial stake in the conduct of the enterprise with the ability to direct the other participants are principals and in control of the operation of the enterprise.  The other actors and participants' separate rolls in the enterprise are set forth in detail including the roll of C&S, its truckers and employees and other agents who have committee acts in furtherance of the enterprise underlying scheme to reap money derived from fraudulent invoicing of private and government customers. Mr. Berry's RICO injury to his business and property is derived from the pattern of racketeering but by no means is he the enterprise's only victim.

As to the Lenders' own commission of predicate acts,  Mr. Berry has properly alleged a claim of secondary copyright infringement *vis a vis* the Lenders.  That claim is a RICO predicate act. The  receipt of the money derived from the operation and conduct of the racketeering enterprise is one of the enumerated RICO violations and money laundering is another predicate act not even addressed by the Lenders.

### III.    CONCLUSION

Mr. Berry respectfully asks that the Lenders' Motion be denied.

Respectfully Submitted: Honolulu, Hawaii, February 25, 2008.

<div style="margin-left: 40%;">

S/Timothy J. Hogan
TIMOTHY J. HOGAN (Hawaii Bar No. 5312)
Attorney for Plaintiff WAYNE BERRY
Admitted *Pro Hac Vice*

1050 Bishop Street, Number 433
Honolulu, Hawaii 96813
Tel.  (808) 382-3698
Fax.  (808) 356-1682
Email tjh@timhogan.com

</div>