UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAYNE BERRY,<br><br>    Plaintiff,<br><br>  vs.<br><br>DEUTSCHE BANK TRUST COMPANY AMERICAS (FKA BANKERS TRUST COMPANY) and JP MORGAN CHASE BANK in their separate capacities and as agents for the pre- and post-petition lenders of Fleming Companies, Inc.; GENERAL ELECTRIC CAPITAL CORPORATION; C&S WHOLESALE GROCERS, INC.; THE POST-CONFIRMATION TRUST OF FLEMING COMPANIES, INC.; ROBERT KORS; CORE-MARK HOLDINGS INC. and DOES 1 to 200,<br><br>    Defendants. | Case No. 01:07 CV 7634 (WHP)<br><br>ECF Case |

THE POST CONFIRMATION TRUST'S AND ROBERT KORS' MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

KIRKLAND & ELLIS LLP
Richard L. Wynne (RW 5630)
Michael E. Baumann (*pro hac vice* pending)
Erin N. Brady (*pro hac vice* pending)
777 South Figueroa Street
Los Angeles, California 90017
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
E-mail:  ebrady@kirkland.com

Counsel for Defendants Post Confirmation Trust
and Robert Kors

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     FACTS AND PROCEDURAL HISTORY .........................................................3

III.    LEGAL STANDARD............................................................................................6

IV.     ARGUMENT .........................................................................................................7

      A.      The Abuse of Process Claims Fail As A Matter of Law And There Is No
             Evidence To Support Them. ...................................................................7

            1.      Serving a divorce complaint is not an abuse of process as a matter
                 of law and, in any event, the evidence shows that the allegations
                 are false. ...................................................................................7

            2.      Conducting a court-ordered judgment debtor exam is not an abuse
                 of process as a matter of law and, in any event, the exam was
                 conducted by a third party...............................................................9

      B.      The Breach of Contract Claim Fails As A Matter of Law And There Is No
             Evidence To Support It. ........................................................................10

            1.      The PCT cannot be liable for breach of contract because Fleming
                 rejected the contract in bankruptcy............................................10

            2.      Mr. Kors cannot be liable for breach of contract because he was
                 never a party to the contract sued upon. .....................................13

      C.      There Is No Evidence To Support The Claims Alleging Bribery of Berry's
             Former Law Firm. .................................................................................13

      D.      The RICO Claims Fail As A Matter of Law, and There Is No Evidence To
             Support Them.........................................................................................16

V.      CONCLUSION.....................................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Azer v. Myers*,
    793 P.2d 1189 (Haw. App. 1990) ...................................................................... 7

*Buscher v. Boning*,
    159 P.3d 814 (Haw. 2007) ............................................................................. 13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)........................................................................................ 6

*Center Cadillac, Inc. v. Bank Leumi Trust Co. of N.Y.*,
    859 F. Supp. 97 (S.D.N.Y. 1994)................................................................... 16

*Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*,
    576 F. Supp. 312 (D. Md. 1983) .............................................................. 10, 12

*Cruickshank & Co. v. Sorros*,
    765 F.2d 20 (2d Cir. 1985)............................................................................ 12

*Highlands Ins. Co. v. PRG Brokerage, Inc.*,
    No. 01 Civ. 2272 (GBD) 2004 WL 35439 (S.D.N.Y. Jan. 6, 2004)................................ 10

*In re Alongi*,
    272 B.R. 148 (Bankr. D. Md. 2001) ............................................................... 11

*Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel*,
    151 P.3d 732 (Haw. 2007) ............................................................................. 13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)......................................................................................... 6

*Moss v. Morgan Stanley, Inc.*,
    719 F.2d 5 (2d Cir. 1983) ....................................................................... 15, 17

*Moy v. Terranova*,
    No. 87 CV 1578 (SJ) 1999 WL 118773 (E.D.N.Y. Mar. 2, 1999) .................................. 17

*N.L.R.B. v. Bildisco & Bildisco*,
    465 U.S. 513 (1984)........................................................................................ 11

*Official Publ'ns v. Kable News*,
    811 F.Supp. 143 (S.D.N.Y. 1993).................................................................. 12

*Peterson v. Phil. Stock Exch.*,
    717 F. Supp. 332 (E.D. Pa. 1989) ................................................................ 16

*Price v. Worldvision Enters., Inc.*, 455 F. Supp.
    252 (S.D.N.Y. 1978) ....................................................................... 6, 15

*S & K Sales Co. v. Nike, Inc.*,
    816 F.2d 843 (2d Cir. 1987) ................................................................. 13

*Schmidt v. Tremmel*,
    No. 93 Civ. 8588 (JSM) 1995 WL 6250 (S.D.N.Y. Jan. 6, 1995) ...................................... 6

*Shaw v. Rolex Watch U.S.A., Inc.*,
    776 F. Supp. 128 (S.D.N.Y. 1991) ............................................................ 17

*Television Events & Mktg., Inc. v. Amcon Distrib. Co.*,
    488 F. Supp. 2d 1071 (D. Haw. 2006) ......................................................... 13

*Tops Mkts., Inc. v. Quality Mkts., Inc.*,
    142 F.3d 90 (2d Cir.1998) .................................................................... 6

*U.S. v. Turkette*,
    452 U.S. 576 (1981) ......................................................................... 17

*Wong v. Panis*,
    772 P.2d 695 (Haw. App. 1989) .............................................................. 7, 9

**Statutes**

11 U.S.C. § 365 ................................................................................. 3, 10, 11

Federal Rule of Civil Procedure 56(c) ................................................................. 6

RESTATEMENT (SECOND) OF TORTS § 876 ........................................................... 13

## I.    INTRODUCTION

The Fleming Post-Confirmation Trust (the "PCT") is a creditors' trust, supervised by the Delaware bankruptcy court, that administers the remaining assets and liabilities of the Fleming Companies, Inc. bankruptcy estate.  Robert Kors (together with the PCT, "Defendants") is a former lawyer who now serves as the principal of Castellammare Advisors, LLC, the company that the Delaware bankruptcy court appointed as the PCT's official representative.  In his Second Amended Complaint, Berry alleges that these two Defendants are part of a worldwide conspiracy aimed at persecuting Berry for the purpose of stealing his obsolete 1993 freight control software. As part of this conspiracy, Berry claims that Defendants may be held liable for such activities as:

- obtaining a court order *compelling him to sit for a judgment debtor exam* so that they could obtain his address;

- putting him in fear of physical harm during his Court-supervised judgment debtor exam by *asking him whether he owned any firearms*;

- convincing his wife to *divorce* him;

- sending Michael Baumann, the PCT's Los Angeles counsel, to Florida to *point Berry out to a process server* so that the process server could serve him with a divorce complaint;

- breaching a contract to which they *are not parties*;

- *paying off his former counsel*, Lynch Ichida Thompson Kim & Hirota ("Lynch Ichida"), in exchange for an interest in their attorney lien in any proceeds of Berry's litigation;

- laundering money derived from their *criminal infringement* of Berry's 1993 software; and

- bribing Lex Smith, a Hawaii attorney who is also a member of the Hawaii Ethics Commission, *to stop the Hawaiian police from investigating* their gun running and cigarette trafficking.

These allegations are as far-fetched as they sound.

In reality, there is no basis for any of the allegations Berry makes in his Second Amended Complaint, and Berry knows it. In fact, Berry has been told time and time again—by any number of people—that his claims against Defendants have no merit. Wesley Ichida, Lynch Ichida's managing partner, told Berry's counsel *before* he filed the Second Amended Complaint that his firm did not receive any money from anyone relating to Berry or his claims. Michael Baumann, Defendants' counsel, told Berry's counsel on the court record that he did not fly to Florida to facilitate the service of Berry's wife's divorce complaint. Mr. Baumann also told Berry's counsel that the license agreement Berry alleges that Fleming assumed in its bankruptcy case was actually rejected by bankruptcy court order, and referred him to a letter and court filing where Berry himself acknowledged that fact.

Berry, however, ignores fact and reason, choosing instead to persist in and rely upon his fantasies. Indeed, Berry's counsel has acknowledged in a letter he sent to the Hawaii Office of Disciplinary Counsel that the basis for many of the claims Berry asserts in this lawsuit is a creative brainstorming session between Berry and his counsel:

> After discussing the matter at length with Mr. Berry he and I conclude that sometime when the [Lynch, Ichida] firm was still attorney of record for Mr. Berry it negotiated a payment based on their rights to payment under the contingent fee agreement with the adverse party and did not disclose it to Mr. Berry.

Smith Aff., Ex. A at 2-3 (12/18/2007 Disciplinary Counsel letter).

Putting aside the failure of evidence in support of Berry's claims, his claims also fail as a matter of law. Even if Mr. Baumann had flown cross-country at Defendants' behest just to point Mr. Berry out to a process server, Defendants would not have been involved in an abuse of process because service of a complaint is not an abuse of process as a matter of law. Moreover, the PCT and Mr. Kors cannot be liable for breaching a contract to which neither was ever a

party.  And the PCT and Mr. Kors can hardly be liable for abuse of process relating to a court-ordered judgment debtor exam taken by another party.

In short, there is no basis for Berry's random and, frankly, bizarre claims against the PCT and Mr. Kors.  Indeed, the evidence submitted with this Motion—all of which was available to Berry before he filed these claims—proves that neither the PCT nor Mr. Kors has done any of the acts of which it is accused and that this lawsuit has been filed only to harass them.  Berry's motive of harassment is further evidenced by the fact that he has sued Mr. Kors individually in this lawsuit even though the only allegations he purportedly makes against him have to do with actions allegedly taken by the PCT.

Defendants request that this Court grant their Motion for Summary Judgment.

## II.    FACTS AND PROCEDURAL HISTORY

Berry and Fleming entered into a license agreement in 1999, under which Berry gave Fleming a free, nonexclusive license to use his freight control software in Fleming's business. *See* Statement of Material Facts ("SOMF") ¶ 9.  Berry has since filed numerous lawsuits against Fleming and others, alleging copyright infringement of his freight control software, as well as RICO violations predicated on criminal copyright infringement, money laundering, cigarette trafficking, and gun running, among other things.

In April 2003, Fleming filed for Chapter 11 bankruptcy in the Bankruptcy Court for the District of Delaware.  SOMF ¶ 1.  During the bankruptcy proceedings, Fleming rejected its license agreement with Berry under Section 365 of the Bankruptcy Code, and, on July 26, 2004, the bankruptcy court in Delaware approved that rejection.  *See id.* ¶¶ 2, 5; Req. Jud. Not., Ex. B (07/26/2004 Confirmation Order) (incorporating Reorganization Plan); Brady Aff., Ex. A

(Reorganization Plan) at 34 (providing that "all executory contracts of the Debtors will be deemed rejected" with limited exceptions not applying to the license agreement).[1]

Subsequently, in August 2004, Defendant Post-Confirmation Trust (the "PCT"), a creditor trust formed pursuant to Fleming's Plan of Reorganization and the PCT Agreement, was vested with certain of the assets and liabilities that Fleming held as of August 23, 2004, the effective date of Fleming's Reorganization Plan. *See* SOMF ¶¶ 2-4,6. The Plan appointed Castellammare Advisors as the PCT Representative. *Id.* ¶ 7. Defendant Robert Kors, whom Wayne Berry has sued personally in this lawsuit, is the principal of Castellammare Advisors LLC. *Id.* ¶ 8.

Under the terms of the Plan, parties to rejected contracts had 30 days to file "rejection damage" claims, asserting damages arising from the contracts' rejection (i.e., breach). *See id.* ¶ 6; Brady Aff., Ex. A (Reorganization Plan) at 34. Berry did so, filing a proof of claim he titled "rejection damages." SOMF ¶ 10; Brady Aff., Ex. L (Berry Proof of Claim). Before he filed that proof of claim, the bankruptcy court had given him permission to liquidate all of his claims against Fleming in the District Court of Hawaii, where he had litigation pending against Fleming and more than 20 other parties, including C&S Wholesale Distributors (the party that had purchased substantially all of Fleming's assets in a court-approved bankruptcy sale). *See* Brady Aff., Ex. M (7/26/04 Omnibus Hearing transcript excerpts) at 225-26. Berry litigated his claims in the Hawaii district court, obtaining a judgment for a total of $57,534 for inadvertent copyright infringement by Fleming and two of its employees. *See* Req. Jud. Not., Ex. F (03/09/2006

---

[1]    All references to the "Req. Jud. Not." refer to the Request for Judicial Notice in Support of Defendants' Joint Motion for Security and the Post-Confirmation Trust's and Robert Kors' Motion for Summary Judgment. All references to the "Brady Aff." refer to the Affidavit of Erin N. Brady in Support of Defendants' Joint Motion for Security and the Post-Confirmation Trust's and Robert Kors' Motion for Summary Judgment.

Judgment).  In that same proceeding, Berry also sought an injunction requiring that Fleming and

the PCT destroy all copies of the freight control software.  *See* Req. Jud. Not., Ex. G (03/09/2006

Order) at 1.  The court denied the request for injunctive relief, finding that Berry "fail[ed] to

point to any evidence" that Fleming or the PCT (who, after being vested with certain of

Fleming's liabilities, had taken over as defendant in the Hawaii litigation) retained copies for

itself or transferred copies of the software to others, making an injunction unnecessary.  *Id.* at 9-

10.

      Berry has recovered less from his litigation campaign than he now owes in costs and fees

to the many parties he has sued.  *Compare* Req. Jud. Not., Ex. F (3/9/2006 Judgment) (awarding

Berry just $57,534 for inadvertent infringement) *with* Req. Jud. Not., Ex. H (Order For

Attorneys' Fees and Costs) (awarding Fleming, C&S, Guidance Software, and one of Fleming's

executives a total of nearly $235,000 in costs and attorneys' fees).  In fact, a number of the

Defendants who were subjected to Berry's lawsuits are now undertaking collection efforts

against him.  C&S, for example, obtained a court order compelling Berry to appear before the

Magistrate Judge for a judgment debtor exam after he failed to pay C&S' attorney fee award.

SOMF ¶ 46; Brady Aff., Ex. G (8/10/07 Order).  Nonetheless, Berry continues to refuse to pay

any of the attorney fee awards levied against him.

      At the same time, however, Berry continues, and has even expanded, his litigation

campaign.  On March 29, 2007, Berry filed the present action in the District Court of Hawaii

against a number of parties, though not initially against the PCT and Mr. Kors.  After the Hawaii

court transferred the case to this Court, and pursuant to this Court's order giving Berry a final

opportunity to amend and supplement his claims, Berry filed his Second Amended Complaint on

December 21, 2007. Therein, he added Mr. Kors and the PCT as Defendants. Berry, in effect, asserts four causes of action against the two Defendants, alleging that they:

- committed an abuse of process by causing a process server to serve a divorce complaint on him and by obtaining a court order requiring his attendance at a judgment debtor exam (Compl. ¶ 228-38);

- breached the license agreement that Berry had with Fleming (Compl. ¶¶ 184-92);

- paid money to Berry's former law firm (who formerly employed his current counsel and represented Berry in the prior lawsuits against Fleming) to induce the firm to breach its fiduciary duty in a variety of ways (*id.* ¶ 193-227);[2] and

- participated in a RICO conspiracy, committing acts including money laundering, extortion, and commercial bribery (*id.* ¶¶ 253 *et seq.*).

As explained below, there is either no evidence supporting these claims, or they fail as a matter of law, or both. All of them must be summarily adjudicated in Defendants' favor.

## III.    LEGAL STANDARD

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate when, after reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact. *See* Fed. R. Civ. P. 56(c); *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 95 (2d Cir.1998). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If a claim is completely lacking in factual support, therefore, such that no

---

[2]    Berry in fact asserts four different counts here: tortious inducement of breach of fiduciary duty (Compl. ¶¶ 193-202); aiding and abetting a breach of fiduciary duty (*id.* ¶¶ 203-12); tortious interference with contractual relations (*id.* ¶¶ 213-20); and aiding and abetting conversion of client funds (*id.* ¶¶ 221-227). All of these claims center around the same alleged conduct: the payment of money to Berry's former law firm to induce it to breach its duties to Berry.

jury could find for the claimant, the party moving for summary judgment satisfies its burden
merely by "pointing out . . . that there is an absence of evidence to support the nonmoving
party's case." *Celotex Corp.*, 477 U.S. at 325.

Moreover, a non-moving party does not create an issue of material fact by presenting
implausible evidence. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Price v. Worldvision
Enters., Inc.*, 455 F. Supp. 252, 266 n.25 (S.D.N.Y. 1978) (granting summary judgment where
"contradicting or impeaching evidence [was] 'too incredible to be believed by reasonable
minds'"). Where "[n]o reasonable person would undertake the suspension of disbelief necessary
to give credit to the allegations made in [the] complaint or in . . . subsequent missives to the
court," summary judgment is appropriate. *Schmidt v. Tremmel*, No. 93 Civ. 8588 (JSM) 1995
WL 6250, at *3 (S.D.N.Y. Jan. 6, 1995).

## IV.    ARGUMENT

### A.    The Abuse of Process Claims Fail As A Matter of Law And There Is No Evidence To Support Them.

Berry appears to have two separate abuse of process claims. The first involves service of
a divorce complaint in West Palm Beach, Florida. *See* Compl. ¶¶ 229-230, 233. The second
involves service of a court order requiring Berry's attendance at a judgment debtor exam. *Id.* ¶¶
231-232. Both claims not only fail as a matter of law, but also lack any evidence to support
them.

#### 1.    Serving a divorce complaint is not an abuse of process as a matter of law and, in any event, the evidence shows that the allegations are false.

The tort of abuse of process requires both: (1) a primary ulterior purpose; and (2) a
willful act in the use of the process which is not proper in the regular conduct of the proceeding.
*Wong v. Panis*, 772 P.2d 695, 699-700 (Haw. App. 1989), *abrogated on other grounds by Hac v.*

*Univ. of Hawaii*, 73 P.3d 46 (Haw. 2003).  Although the allegations in the Complaint are far

from clear, a letter that Berry filed with the Hawaii Office of Disciplinary Counsel against Lex

Smith, C&S and the PCT's Hawaii counsel, explains how it is that the PCT and Mr. Kors are

supposed to have abused process.  *See* Smith Aff., Ex. B (1/9/2008 Disciplinary Counsel letter).

According to Berry's letter, the PCT and Mr. Kors furthered their alleged scheme to obtain

Berry's copyrights in FCS by having Mike Baumann, a Kirkland & Ellis partner, travel to West

Palm Beach airport for the sole purpose of identifying Berry to a process server.  *Id.* at 4-5.  That

process server then allegedly followed Berry from the airport and served him with a divorce

complaint.  *Id.*

Under Hawaii law, however, "[t]he mere institution of an action by the filing and service

of a summons or complaint does not amount to an abuse of process."  *Azer v. Myers*, 793 P.2d

1189, 1215 n.38 (Haw. App. 1990), *rev'd on other grounds*, 795 P.2d 853 (Haw. 1990).[3]  As a

result, even assuming that Mr. Baumann did fly across the country to ensure service of Mrs.

Berry's divorce complaint, he would not have been involved in a "willful act" constituting an

abuse of process.

But in reality, Mr. Baumann was nearly 3,000 miles away from West Palm Beach on

August 14, 2007, at the time he was supposed to be stalking around the airport, process server in

tow, in search of Mr. Berry.  *See* M. Baumann Aff. ¶ 3.  He had flown to Hawaii on August 13,

2007 to attend a hearing in this lawsuit, before its transfer to this Court.  *Id.*; Benson Aff. ¶ 2.

---

[3]   Berry may argue that Hawaii, New York or Florida law applies to his claims.  As there is no
    significant difference between the law in the various jurisdictions on the issues presented in
    this Motion, the Court need not conclude which law applies.  *See, e.g., Della-Donna v. Nova
    University, Inc.*, 512 So.2d 1051, 1055 (Fla. App. 1987) (holding that "the mere filing of a
    complaint and having process served is not enough to show abuse of process"); *Curiano v.
    Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. 1984) (same).  Accordingly, for simplicity, Defendants
    cite to Hawaii law, but do not concede that Hawaii law applies.

The hearing was cancelled and Mr. Baumann traveled back to Los Angeles on the redeye on August 13, 2007, arriving in Los Angeles early in the morning on August 14, 2007.  M. Baumann Aff. ¶ 3; T. Baumann Aff. ¶¶ 3, 4; Benson Aff. ¶¶ 3, 4, Ex. A.  He remained at his home in Los Angeles for the rest of the day.  M. Baumann Aff. ¶ 3; T. Baumann Aff. ¶ 4; Benson Aff. ¶ 5.

The facts are that a process server did not serve Berry with a divorce complaint because there is a vast conspiracy to steal Berry's software.  Mr. Berry was served by his wife because she wanted a divorce.  SOMF ¶ 31.  Neither the PCT nor Mr. Kors played any role in Mrs. Berry's decision to seek a divorce, nor did they participate in any issuance of process in the Berrys' divorce proceedings.  SOMF ¶¶ 32-44.

Because this abuse of process claim fails as a matter of law, and because the evidence shows that the allegations are false, summary judgment is appropriate.

> **2.    Conducting a court-ordered judgment debtor exam is not an abuse of process as a matter of law and, in any event, the exam was conducted by a third party.**

Berry's second abuse of process claim is that the PCT and Mr. Kors abused process because Lex Smith, the attorney for C&S, obtained from the Hawaii District Court an order compelling Berry to appear for a judgment debtor examination by C&S for the allegedly illicit purpose of obtaining his address and information about his assets.  *See* Compl. ¶ 231 (alleging that Defendants "caused process to issue that required Mr. Berry to travel interstate to attend a deposition").  This abuse of process claim fails for two independent reasons.

First, putting aside whether the PCT or Mr. Kors can be liable for Mr. Smith's acts (which will be addressed next), Mr. Smith's alleged act of questioning Berry regarding his address at a court-supervised judgment debtor exam simply does not constitute an abuse of process as a matter of law.  Mr. Smith noticed Berry's judgment debtor exam because he was

trying to recover $84,000 in unpaid costs and attorneys' fees from a previous frivolous lawsuit

Berry initiated against his client, C&S, which Berry now refuses to pay.  Brady Aff., Ex. G at 3-4

(8/10/07 Order);  Smith Aff. ¶ 32.  Ultimately, because Mr. Berry's counsel refused to accept

service of the notice, Berry's deposition was conducted under the supervision of the Magistrate

Judge by her order.  Smith Aff. ¶ 34; Brady Aff., Ex. G (8/10/07 Order).  Despite the

intimidation tactics Mr. Smith is supposed to have employed to obtain Berry's address and

information about his assets, neither Berry nor his counsel sought to terminate the deposition or

seek protection because of any question asked.  *See* Smith Aff. ¶ 34; *see also Wong*, 772 P.2d at

700 (rejecting abuse of process claim, where despite allegation of abusive and harassing

questioning, the primary purpose—obtaining settlement—was legitimate).  Seeking to enforce a

judgment through a validly obtained court order is not an abuse of process, and summary

judgment should be granted on this claim.

In any event, neither the PCT nor Mr. Kors can be liable for Mr. Smith's act of obtaining

a court order compelling Mr. Berry to appear at his judgment debtor exam because Mr. Smith

obtained this order as counsel for and on behalf of C&S.  Smith Aff. ¶ 32.  Other than the fact

that all are targets of Berry's unfounded claims, C&S is not at all affiliated with the PCT or Mr.

Kors.  And neither the PCT nor Mr. Kors played any part in the judgment debtor examination.

SOMF ¶ 45.

### B.    The Breach of Contract Claim Fails As A Matter of Law And There Is No Evidence To Support It.

#### 1.    The PCT cannot be liable for breach of contract because Fleming rejected the contract in bankruptcy.

Berry first claims that the PCT is liable for breaching the license agreement he had with

Fleming, and that he is therefore entitled to specific performance or, in the alternative, $2

million.  *See* Compl. ¶¶ 184-92.  To be liable for breaching the license agreement, however, the

PCT must have been a party to that agreement. *See Highlands Ins. Co. v. PRG Brokerage, Inc.*, No. 01 Civ. 2272 (GBD) 2004 WL 35439, at *8 (S.D.N.Y. Jan. 6, 2004) (holding that "Highlands may not hold PRG liable for breaching a contract to which it was not a party"); *Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F. Supp. 312, 322 (D. Md. 1983) (describing as "hornbook law" the principle that a contract may be enforced only against the parties to the contract). Berry cannot establish this basic requirement.

Section 365(a) of the Bankruptcy Code permits a debtor to assume or reject a pre-petition executory contract. *See* 11 U.S.C. § 365. Although Berry falsely alleges that the PCT "assumed all duties" under the Berry/Fleming license agreement (Compl. ¶ 185), Fleming, in fact, rejected the license agreement before the PCT was vested with any of Fleming's assets or liabilities. *See id.* ¶¶ 2, 5; Req. Jud. Not., Ex. B (07/26/2004 Confirmation Order) (incorporating Reorganization Plan); Brady Aff., Ex. A (Reorganization Plan) at 34 (providing that "all executory contracts of the Debtors will be deemed rejected" with limited exceptions not applying to the license agreement); SOMF ¶ 4. Berry has previously conceded as much. *See* Brady Aff., Ex. N (12/24/2004 Berry letter) at 2 ("These violations of my copyright license, ***along with Fleming Companies, Inc.'s rejection of the license in its Bankruptcy***, constitute material breaches giving rise to my right to revoke and terminate as set forth herein."); SOMF ¶ 10 (Berry asserting claim to rejection damages).

When a debtor rejects a contract, as Fleming did here, the non-debtor party to that contract cannot then sue the bankruptcy estate or any party succeeding to its assets for breaching that contract. "Because the bankruptcy estate is not a party to an unassumed contract, there is neither a right of specific performance against the estate nor a right to recover damages against the estate, apart from the claims process." *In re Alongi*, 272 B.R. 148, 154 (Bankr. D. Md.

2001). Berry's attempt to obtain specific performance and damages from the PCT fails as a matter of law.

Moreover, even if Berry could sue the PCT for breaching a contract to which it was never a party, he is seeking to relitigate claims he has already brought. When a debtor rejects a contract in bankruptcy, it is treated as if the debtor (not the bankruptcy estate) had breached the contract on the date "immediately before the date of the filing of the petition." 11 U.S.C. § 365 (g)(1). The non-debtor party to the contract then has a pre-petition general unsecured claim for breach of contract or "rejection" damages. *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984). Berry sought rejection damages, filing a proof of claim in the bankruptcy court in Delaware on October 6, 2004. SOMF ¶ 10. Moreover, with leave of the bankruptcy court (Brady Aff., Ex. M (7/26/04 Omnibus Hearing transcript excerpts) at 225-26), he then litigated what was supposed to be all of his claims against Fleming to judgment in Hawaii, obtaining $57,534 for copyright infringement and nothing for his other claims. *See* Req. Jud. Not., Ex. F (03/09/2006 Judgment). In that same proceeding, Berry also sought the same specific performance he seeks here, which the court denied. *See* Req. Jud. Not., Ex. G (03/09/2006 Order) (denying request that the court order destruction of software because there was no evidence that any party still possessed the software in question). Because Berry has litigated these same claims before, the doctrine of claim preclusion prevents him from relitigating them here. *See Official Publ'ns v. Kable News*, 811 F.Supp. 143, 147 (S.D.N.Y. 1993).

Because the PCT cannot be liable for breaching a contract to which it was never a party, and because Berry has litigated these same claims before, the PCT is entitled to summary judgment.

2.    **Mr. Kors cannot be liable for breach of contract because he was never a party to the contract sued upon.**

The same axiom that defeats Berry's breach of contract claim against the PCT—that a nonparty to a contract cannot be sued for breaching that contract—also defeats his claim against Mr. Kors. *See Toshiba Corp.*, 576 F. Supp. at 322; *see also Cruickshank & Co., Ltd. v. Sorros*, 765 F.2d 20, 26 (2d Cir. 1985) (holding that someone "not a party to the contract at issue, cannot be found liable for damages resulting from its breach, notwithstanding his status as an agent of one of the parties in breach"). Mr. Kors, whom Berry has sued personally, has never been a party to Berry's license agreement with Fleming, and Berry does not even allege otherwise. *See* Compl. ¶¶ 184-92 (no mention of Kors in breach of contract allegations).

Mr. Kors is entitled to summary judgment on this count.

C.    **There Is No Evidence To Support The Claims Alleging Bribery of Berry's Former Law Firm.**

Berry alleges that the PCT and Mr. Kors paid money to the law firm, Lynch Ichida, that represented Berry in prior Fleming litigation. *Id.* ¶ 197. According to Berry, they did so in partial settlement of the previous lawsuits against Fleming, and for the purpose of inducing Wes Ichida, the managing partner, to breach his fiduciary duties to and his contract with Berry. *Id.* ¶¶ 197-98, 216. Based on this supposed conduct, Berry asserts four related claims against Kors and the PCT: (1) tortious inducement of breach of fiduciary duty (*id.* ¶¶ 193-202); (2) aiding and abetting a breach of fiduciary duty (*id.* ¶¶ 203-12); (3) tortious interference with contractual relations (*id.* ¶¶ 213-20); and (4) aiding and abetting conversion of client funds (*id.* ¶¶ 221-227).

It is unclear whether some of these claims actually exist as causes of action. *See, e.g., Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel*, 151 P.3d 732, 756 (Haw. 2007) (declining to consider whether to recognize the "novel tort" of tortious inducement of breach of

fiduciary duty).[4]  To the extent they do, all require at least both knowledge and an affirmative act

on the part of the defendant.  *See Television Events & Mktg., Inc. v. Amcon Distrib. Co.*, 488 F.

Supp. 2d 1071, 1076 (D. Haw. 2006) (requiring knowledge and "substantial assistance or

encouragement" to be liable for aiding and abetting breach of fiduciary duty); RESTATEMENT

(SECOND) OF TORTS § 876 (requiring knowledge and "substantial assistance or encouragement"

for aiding and abetting any tort); *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 847-48 (2d Cir.

1987) (requiring "knowingly induced or participated" in the breach for tortious inducement of

breach of fiduciary duty under New York law); *Buscher v. Boning*, 159 P.3d 814, 828 n.6 (Haw.

2007) (requiring "intentional inducement" for tortious interference with contract).

There is no evidence, however, that the conduct that Berry alleges actually happened,

much less that the PCT or Mr. Kors knew about it.  In fact:

- Neither the PCT nor Mr. Kors paid any money to or received any money from anyone associated with Lynch Ichida for any purpose.  SOMF ¶¶ 11-14, 19-22.

- Neither the PCT nor Mr. Kors offered any money to anyone associated with Lynch Ichida for Lynch Ichida to breach its ethical duties to Mr. Berry.  SOMF ¶¶ 15-18.

- Neither the PCT nor Mr. Kors know about or authorized a settlement agreement, secret or otherwise, relating to Berry's claims.  SOMF ¶¶ 23-26.

- Neither the PCT nor Mr. Kors purchased anything from Lynch Ichida relating to Mr. Berry.  SOMF ¶¶ 27-30.

Berry's attorney was told as much even before he named Defendants in this lawsuit.

Days before filing his claims against Defendants, Berry's counsel, Timothy Hogan, sent an email

to Wesley Ichida, the managing partner of Lynch Ichida, informing him that he intended to

amend his complaint in this case to allege that Lex Smith, C&S and the PCT's Hawaii counsel,

---

4    The allegations made in support of the tortious inducement of fiduciary duty cause of action are identical to those made in support of the aiding and abetting a breach of fiduciary duty cause of action.  *Compare* Compl. ¶¶ 193-202 *with* ¶¶ 203-12.  These causes of action are therefore duplicative.

had offered to purchase the firm's interest in its attorney lien on Berry's recoveries.  *See* Smith

Aff., Ex. B (1/9/2008 Disciplinary Counsel letter) at 1-2.  In that same email exchange, Mr.

Hogan asked Mr. Ichida whether any assignment or payment was ever made in conjunction with

that purported offer.  *Id.*  Mr. Ichida told Mr. Hogan that he "cannot and will not confirm" Mr.

Hogan's allegation that Lex Smith had "offered" to purchase the firm's lien rights, and further

informed Mr. Hogan that Berry was still liable to the firm (as opposed to Lex Smith or some

other third party) for unpaid costs.  *Id.*  Berry nonetheless filed four claims in his Second

Amended Complaint premised on Mr. Smith's purported offer.

Despite filing these claims on Berry's behalf, Mr. Hogan himself has admitted that he

does not have sufficient evidence to support them.  In the past few months, Mr. Hogan has filed

letters with the Hawaii Office of Disciplinary Counsel, complaining of Lynch Ichida's alleged

breach of its fiduciary duty to Berry.  *See* Smith Aff., Ex. B (1/9/2008 Disciplinary Counsel

letter); *id.*, Ex. A (12/18/2007 Disciplinary Counsel letter).  In one of those letters, he conceded

that he was "not clear whether there is sufficient evidence for disciplinary proceedings."  *Id.*, Ex.

B (1/9/2008 Disciplinary Counsel letter) at 4.  Nevertheless, undeterred by a lack of evidence

that these instances of unethical conduct actually took place, Mr. Hogan and Berry have asserted

these same claims against the PCT and Mr. Kors in this lawsuit.

Unable to even determine the basis of these claims (because no basis exists), counsel for

Defendants has on a number of occasions asked Mr. Hogan to provide some evidence in support

of these claims.  Baumann Aff. ¶ 5.  Those requests have been met by bluster, but no evidence.

*Id.*  In fact, it appears from the Disciplinary Counsel letters that the sole basis for Berry's

attorney's belief that there was wrongdoing here is a discussion he had with his own client,

Berry:

> After discussing the matter at length with Mr. Berry he and I conclude that sometime when the [Lynch, Ichida] firm was still attorney of record for Mr. Berry it negotiated a payment based on their rights to payment under the contingent fee agreement with the adverse party and did not disclose it to Mr. Berry.

Smith Aff., Ex. A at 2-3 (12/18/2007 Disciplinary Counsel letter).

The law requires, however, that Berry come forth with something more than idle conjecture to substantiate the allegations he has leveled against the PCT and Mr. Kors. *See Price*, 455 F. Supp. at 266 n.25 (requiring that a party opposing summary judgment present evidence that could be "believed by reasonable minds"). Because he is unable to do so, Defendants' motion for summary judgment should be granted.

**D.    The RICO Claims Fail As A Matter of Law, and There Is No Evidence To Support Them.**

To make out a civil RICO claim, a plaintiff must prove seven elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). He must also prove that he was "injured in his business or property" as a result of the RICO violation. *Id.* Berry's RICO claim fails on a number of these fronts.

*First*, Berry cannot prove that the PCT and Mr. Kors engaged in two or more predicate acts. In fact, he can prove none. Although Berry purports to make his RICO claims against all Defendants, the PCT and Mr. Kors are mentioned only in relation to alleged acts of commercial bribery (Compl. ¶¶ 283, 285), a Hobbs Act violation (*id.* ¶ 285(2)), and money laundering (*id.* ¶ 285(4)). As discussed above, there is no evidence to support the allegations that the Defendants bribed anyone at Lynch Ichida (*see* Section IV.C, *supra*). And the allegation that the

PCT and Kors bribed Lex Smith in his capacity as a member of the Honolulu Ethics Commission is also false. *See* SOMF ¶¶ 47-54.[5]

Berry also cannot prove a Hobbs Act violation. To do so, he would have to show that the PCT and Kors "used actual or threatened force, violence or fear to obtain money or property to which they had no lawful claim." *Center Cadillac, Inc. v. Bank Leumi Trust Co. of N.Y.*, 859 F. Supp. 97, 105 (S.D.N.Y. 1994) (internal quotations and citations omitted). The most Berry can prove, however, is that an attorney for another party asked him questions at a judgment debtor examination to find out whether he had assets to cover an outstanding judgment against him. *See* Smith Aff. ¶ 32. Because "[t]he ordinary resort to legal process does not rise to the level of a wrongful use of force or fear," *Peterson v. Phil. Stock Exch.*, 717 F. Supp. 332, 336 (E.D. Pa. 1989), Berry cannot prove this predicate act.

The only other predicate act alleged against the PCT and Mr. Kors is a passing reference to money laundering with no supporting facts. *See* Compl. ¶ 285(4). There is again no evidence to support this allegation because neither the PCT nor Mr. Kors has participated in money laundering, whether related to Berry's software or otherwise. *See* PCT Aff. ¶ 20; Kors Aff. ¶ 17. Moreover, it is implausible that they would be; the PCT is a trust, not an operating entity, and does not engage in any activity that would allow it to launder money in the way Berry alleges. SOMF ¶¶ 55-60. Mr. Kors is merely an individual who happens to also be the trust's representative. *Id.* ¶ 56.

***Second***, even if Berry could prove the requisite predicate acts, he cannot prove that he has been injured "in his business or property" as required by RICO. *Moss*, 719 F.2d at 17.

---

[5]  The allegation also makes no sense given that Mr. Smith is supposed to be a part of this vast conspiracy, and would therefore presumably not need to be bribed to engage in any cover-up. Moreover, Mr. Smith's public role calls for barely any contact with the police officers he is supposed to have influenced. *See* Smith Aff. ¶ 35.

Indeed, Berry has not even alleged how it is that these supposed acts of money laundering, extortion, and commercial bribery have injured him, other than to allege fear for his personal safety.  "[C]ourts have uniformly held that injuries such as emotional distress or physical injury are not cognizable under RICO."  *See Shaw v. Rolex Watch U.S.A., Inc.*, 776 F. Supp. 128, 134 (S.D.N.Y. 1991).

*Third*, Berry has not adequately alleged that any RICO "enterprise" exists.  An enterprise under RICO is "a group of persons associated together for a common purpose of engaging in a course of conduct."  *U.S. v. Turkette*, 452 U.S. 576, 583 (1981).  All Berry has done, however, is to name unconnected people, allege that they did a number of unconnected acts, and call them an "enterprise."  That is not sufficient to state a RICO claim.  *See Moy v. Terranova*, No. 87 CV 1578 (SJ) 1999 WL 118773, at *5 (E.D.N.Y. Mar. 2, 1999) (dismissing RICO complaint because Plaintiff's "conclusory 'naming of a string of entities' does not adequately allege an enterprise").

There is no evidence to support Berry's RICO claims, and they fail as a matter of law. Defendants' motion for summary judgment should be granted.

/ / /

/ / /

/ / /

/ / /

## V.    CONCLUSION

There is no evidence to support Berry's claims for abuse of process, breach of contract, breach of fiduciary duty, or RICO violations.  These claims also fail as a matter of law. Defendants therefore request that this Court grant their Motion for Summary Judgment.

DATED:  February 26, 2008

By:    /s/ Richard L. Wynne
KIRKLAND & ELLIS LLP
Richard L. Wynne (RW 5630)
Michael E. Baumann (*pro hac vice* pending)
Erin N. Brady (*pro hac vice* pending)
777 South Figueroa Street
Los Angeles, California  90017
Telephone:    (213) 680-8400
Facsimile:    (213) 680-8500
E-mail:        ebrady@kirkland.com

Counsel for Defendants Post Confirmation
Trust and Robert Kors