# EXHIBIT H

judgment debtor exam.TXT

1

1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF HAWAII

3    WAYNE BERRY, a Hawaii  ) CIVIL NO. CV03-00385 SOM-LEK
     citizen               ) (Copyright)
4                          )
          Plaintiff,       )
5                          )
           vs.             )
6                          )
     HAWAIIAN EXPRESS       )
7    SERVICE, INC, et al.,  )
                           )
8         Defendants.      )
     _____)
9

10

11

12

13               DEPOSITION OF WAYNE BERRY

14   Taken on behalf of the Defendants C&S Logistics of

15   Hawaii, LLC, C&S Wholesale Grocers, Inc., C&S

16   Acquisitions, LLC, ES3, LLC and Richard Cohen, at the

17   offices of Kobayashi Sugita & Goda, 999 Bishop

18   Street, Suite 2600, Honolulu, Hawaii, on Monday,

19   August 13, 2007, commencing at 11:31 a.m. Pursuant to

20   Notice.

21

22

23

24   Reported by:
     Priscilla Gonzaga, CSR #127
25   Notary Public, State of Hawaii

2

1    APPEARANCES:

2    For the Plaintiff:

```
                    judgment debtor exam.TXT
3         TIMOTHY J. HOGAN, ESQ.
          1050 Bishop Street, Number 433
4         Honolulu, Hawaii 96813

5

6
    For the Defendants C&S Logistics of Hawaii, LLC, C&S
7   Wholesale Grocers, Inc., C&S Acquisitions, LLC, ES3,
    LLC and Richard Cohen:
8
          LEX R. SMITH, ESQ.
9         Kobayashi Sugita & Goda
          999 Bishop Street, Suite 2600
10        Honolulu, Hawaii 96813

11

12
    For the Defendant Guidance Software:
13
          MARGERY S. BRONSTER, ESQ.
14        JAE PARK, ESQ.
          Bronster Crabtree & Hoshibata
15        Pauahi Tower, Suite 2300
          1001 Bishop Street
16        Honolulu, Hawaii 96813

17

18

19  For the Defendant Brian Christensen:

20        LYLE HOSODA
          345 Queen Street, Suite 804
21        Honolulu, Hawaii 96813

22

23

24

25
```

                                                3

```
1                    I N D E X

2   EXAMINATION BY:                          PAGE

3     MR. SMITH                                4

4

5   EXHIBITS FOR IDENTIFICATION:

6     EXHIBIT A                                6

7     EXHIBIT B                               76
```

                        Page 2

judgment debtor exam.TXT

17    Q    And that would be sometime in 2007?

18    A    Yes.

19    Q    And you can't remember whether it was within

20   the last month or not?

21    A    No.

22    Q    Are you renting or do you own a home in

23   Florida now?

24    A    Just rent.

25    Q    And who pays the rent on your residence in

                                                    27

1    Florida?

2    A    To who, the owner of the home or --

3    Q    Well, I don't know.  Do you pay rent for the

4    place you live now?

5    A    Yes.  I pay part of the rent.

6    Q    How much rent do you pay?

7    A    About somewhere between a thousand and 1100

8    a month.

9    Q    And to whom do you pay your rent?

10   A    To Sally Apgar.

11   Q    Do you pay by check?

12   A    Yes.

13   Q    What bank is the check drawn on?

14   A    The Bank Atlantic.  You've got the documents

15   on here.

16   Q    How long have you had the account with Bank

17   Atlantic?

18   A    I got it shortly after moving to Florida.

19   Q    Did you have any account -- any bank

20   accounts prior to the Bank Atlantic account?

                        Page 23

judgment debtor exam.TXT

21    MR. HOGAN:    Objection, vague as to time.

22    Q    (By Mr. Smith) In the five years prior to

23    moving to Florida.

24    A    Not -- yes.

25    Q    Where?

28

1    A    It's in here.  Scottrade.

2    Q    Do you still have an account with Scottrade?

3    A    Yes.

4    Q    And where -- is that a Scottrade office in

5    Hawaii?

6    A    Yes.

7    Q    Any other accounts that you had in the last

8    five years other than Scottrade and Bank Atlantic?

9    A    Yes.  They're also in here.  There's an

10    account at optionsxpress.

11    Q    Where?

12    A    Optionsxpress.  There's no E in that.

13    Q    Okay.

14    A    And there's an account at E Trade.  There's

15    an E in that.

16    Q    Okay.  Well, that takes us right to item 2

17    on the list.  Can you show me where the account

18    statements are that you have produced?

19    A    I grabbed what I could find and I think if

20    you go to page 28, it's where they start.

21    Q    So page 28 as it relates to optionsxpress,

22    correct?

23    A    Yes.

24    Q    And it refers to Wayne's account overview as

25    of 8/11/2007, correct?

Page 24

judgment debtor exam.TXT

29

1    A    Yes.

2    Q    And it reflects that you have -- your

3    account has a value of $5,032?

4    A    Correct.

5    Q    Have you made any deposits into that account

6    in the last year?

7    A    Yes.

8    Q    How many?

9    A    I don't know offhand.

10    Q    Have you made any withdrawals from that

11    account in the last year?

12    A    I may have but I don't think so.

13    Q    What is page 29?

14    A    That's the Scottrade account I told you

15    about.  These people -- option stuff they don't send

16    statements.  They don't have the record type

17    printing.  And Scottrade I lost my password.  I

18    couldn't even do a current screen print.  So I

19    photocopied the books so you could see what it was.

20    Q    What is your -- the balance on your

21    Scottrade account?

22    A    I haven't a clue.

23    Q    Is it more or less than $20,000?

24    A    I haven't a clue.  I honestly don't know.

25    Q    So is it more or less than $100,000?

30

1    A    I don't think I have $100,000 so no.  It's

2    got to be less than that.

judgment debtor exam.TXT

3    Q    So less than 100,000 but you honestly don't

4    know whether it's more or less than 20,000?

5    A    I don't think it's 20,000.  It's less than

6    that unless someone's been very nice to me that I

7    don't know about.

8         MR. HOGAN:  Scott.

9         THE WITNESS:  Yeah, Mr. Scott maybe.

10   Q    (By Mr. Smith) The address on Keahole Street

11   that's reflected on your check, where is that?

12   A    That's in Hawaii Kai.

13   Q    And is that a home in Hawaii Kai?

14   A    It's that postal service.  It's a street

15   address.

16   Q    It's a mail drop in Hawaii Kai Shopping

17   Center?

18   A    It was.  They're out of business.

19   Q    Okay.  And they charged you a monthly fee

20   for the use of that address, right?

21   A    Yes.

22   Q    Who paid that fee?

23   A    I did.

24   Q    And what was the source of the funds?  Did

25   you pay with a check?

                                                      31

1    A    Not sure but I think I always paid them

2    cash.

3    Q    Did you give them a credit card number?

4    A    I don't think so.

5    Q    By the way, when I asked you if you had any

6    credit cards, you said no, only a debit card.  Have

7    you had any credit cards in the last five years?

                        Page 26

judgment debtor exam.TXT

8    A    Not that I can recall.  I think the last

9    credit card I may have had was in maybe 2001.

10    Q    Who was the issuing bank of that credit

11    card?

12    A    I don't know.  A long time ago.

13    Q    And why does the year 2001 occur to you as

14    the time when you last had a credit card?

15    A    Just it's -- I can just recall the

16    approximate date.

17    Q    But you can't remember -- was it a bank

18    that's in Hawaii?

19    A    No.

20    Q    Were you a resident of Hawaii at that time?

21    A    Yes.

22    Q    What is your balance in the E Trade account

23    reflected on page 30?

24    A    $5000.96.

25    Q    Page 31 reflects a Bank Atlantic account

                                                    32

1    with $38,878 in it?

2    A    Yes.

3    Q    What is the source of the funds that is in

4    the Bank Atlantic account?

5    A    That came from Y. Hata.

6    Q    Has any money got into the Bank Atlantic

7    account from any source other than Y. Hata?

8    A    Not that I can recall.  I don't think so.

9    Q    And this account reflected on page 31 is the

10    source from which you pay your rent, is that right?

11    A    During this last year?  I'm trying --

Page 27

judgment debtor exam.TXT

12    Q    I'm happy to narrow the question to during

13  this last year.

14    A    Yes.

15    Q    What source did you use to pay your rent

16  before this past year?

17    A    Some of -- as we're talking, I remember more

18  as we talk.  Some of this may have come from the

19  Scottrade account.  That's an older account.  It goes

20  back away further.  I'm trying to remember when I set

21  that up.

22    Q    Did you make any payments to Sally Apgar out

23  of the Scottrade account?

24    A    I believe I did.

25    Q    What was the reason for those payments?

                                                    33

1    A    Rent payment, repayment of loan, things like

2  that.

3    Q    How much has Sally Apgar loaned you?

4    A    I don't know.

5    Q    Well, you indicated that you've made some

6  repayments of the loan from her with your Scottrade

7  account.  So --

8    A    I said I may have.  I'm not completely sure

9  and I'm not exactly sure of the balances or --

10    Q    Does Ms. Apgar know how much you owe her?

11        MR. HOGAN:    Objection, calls for

12  speculation.

13    Q    (By Mr. Smith) You may answer.

14    A    I don't know.

15        MR. SMITH:  I want to state for the record

16  that the documents that you have provided in

                            Page 28

judgment debtor exam.TXT

17  connection with your accounts are incomplete and do
18  not meet the requirements of the court's order
19  entered May 30, 2007.  And that I'm reserving all
20  rights related to the lack of a complete compliance
21  under the documents.
22      MR. HOGAN:  You know, counsel, why don't you
23  state for the record what you think is missing rather
24  than just play this little game so that you can keep
25  Mr. Berry in your little judgment collection

34

1   nightmare for the rest of his life.  Why don't you
2   just put on the record what you think is missing if
3   you think anything is missing.
4       MR. SMITH:  That's a very fair request
5   although you don't need to be quite so grouchy about
6   it.
7       MR. HOGAN:  Well, your motivation is quite
8   clear, Mr. Smith, that your motivation has something
9   to do with some personal longing for Sally Apgar that
10  you seem to have.
11      MR. SMITH:  The documents that have been
12  produced -- the order says all bank statements or
13  reports with respect to checking accounts, savings
14  accounts, money market accounts or other bank
15  accounts of any nature in your name to which you are
16  signatory for the past five years.  These records are
17  highly incomplete as they relate -- they contain far
18  less than all of those documents.  I have -- there
19  are a few pages from those accounts and he has
20  identified the accounts.  And I'm just stating that

Page 29

judgment debtor exam.TXT

21    they're not complete.

22        MR. HOGAN:  And have you asked him whether

23    he has possession of any of the documents?  I mean

24    isn't that usually the question?  Do ever -- did you

25    have them, did you fail to bring them?

35

1            It's pretty clear, Mr. Smith, that this is

2    simply an attempt to bushwhack Mr. Berry.  At least

3    ask him the question about whether or not he's

4    complied with the request and whether he -- and what

5    efforts he made to comply so you have a record.

6        Q    (By Mr. Smith) Other than the accounts that

7    you have identified at pages 28 through 34, so what

8    is that, six or seven pages, do you have any other

9    accounts relating to or within the description

10   contained in paragraph 2 which I'll read to you.

11   "All bank statements or reports with respect to a

12   checking account, savings account, money market

13   account or other bank account of any nature in your

14   name or to which you are signatory for the past five

15   years."

16       A    This is all I've got.  You've got something

17   from each of the accounts.  And I grabbed whatever

18   papers I had from each of those accounts.

19       Q    Okay.  So my question is are there any other

20   accounts for the past five years?

21       A    Not that I'm aware of.  Not that I could

22   find.  I think that's it.

23       Q    And you have -- you possess no records

24   relating to any of those accounts other than the six

25   pages that you've brought here today?

Page 30

judgment debtor exam.TXT

36

1    A    That's all I could find.  And I had to --
2  like I say, three options accounts, they don't even
3  send monthly statements or anything.  So I gave you a
4  screen print off the internet.
5    Q    Okay.  Number 8 on the list.  Let me just
6  confirm.  Items 3, 4, 5, 6 and 7, it's your testimony
7  that you have nothing?
8    A    Yes.
9    Q    Number 8 on the list, deeds, contracts or
10  other evidence of ownership in real property in which
11  you currently hold or have held an interest in the
12  past five years.
13    A    None.
14    Q    Number 9, life insurance.
15    A    None.
16    Q    All documentation pertaining to any accounts
17  receivable or notes receivable from any person or
18  entity to you.
19    A    I don't think anyone owes me any money and I
20  don't have any documents to it.  To your clients, Mr.
21  Hosoda, Dillon and Noah owe me money but I don't have
22  any documents that state that.
23    Q    So you're not aware of anyone who owes you
24  any money? .
25         MR. HOGAN:  Objection, that misstates his

37

1  testimony.
2         THE WITNESS:  I think I just --
                          Page 31

judgment debtor exam.TXT

3    Q    (By Mr. Smith) So you identified Dillon and

4  Noah?

5    A    Yes.

6    Q    Anybody else who to your understanding owes

7  you money?

8       MR. HOGAN:  I'm going to object.  Other than

9  the defendants in this case that may be judgment

10  debtors?

11    Q    (By Mr. Smith) I'll let you answer.  Whoever

12  in the word you think owes you money.

13       MR. HOGAN:  Objection, vague as to what the

14  term "owes" means.

15       THE WITNESS:  My personal definition of

16  owing me money, it's a long list.  But as far as

17  something I think you're looking for here where you

18  could go take the document and collect money from

19  someone to satisfy a judgment, no.  Only the stuff

20  you're aware of in the court cases and things like

21  that.  I don't think even Dillon and Noah, I don't

22  think you could collect from them because there's no

23  written documentation that's says that they owe the

24  money.

25    Q    (By Mr. Smith) Actually, I'm asking for you

38

1  to identify anybody who you think you have a valid

2  claim against.

3    A    This is three hours.

4       MR. HOGAN:  I'm going to object.  It calls

5  for a legal conclusion.  Why don't you ask me the

6  question.  You're going to ask me a question as it

7  relates to litigation and ongoing litigation, I mean

Page 32

judgment debtor exam.TXT

8    it's just -- you've done this before.  I believe this

9    is creditor harassment and Fair Debt Collection

10   Practices Act is very well in place in this

11   deposition.

12        MR. SMITH:  You may answer.

13        THE WITNESS:  All the parties in this

14   lawsuit.

15        MR. SMITH:  Okay.

16        THE WITNESS:  And I believe when the appeals

17   are done, they will all owe me money.

18        MR. SMITH:  Okay.

19        THE WITNESS:  I think when other issues are

20   done, I think just about all the attorneys, maybe

21   with one or two exceptions, will owe me money.

22   Q    (By Mr. Smith) All the attorneys in the suit

23   that we're here on today?

24   A    In all the suits we're here on today.  Okay?

25   Q    All the attorneys in any suit that --


                                                    39

1    A    You've got a eight year history here, okay?

2    Q    I know you're talking about me.  I'm just

3    trying to understand if you're talking about only

4    this case or more than this case.

5    A    I'm talking about the first case, the second

6    case and things to come.  Okay.  Let's leave it at

7    that.

8    Q    Okay.  So all the attorneys that have

9    opposed your claims in any case you filed up to

10   today?

11   A    Oh, no.  All the attorneys who advised their

                   Page 33

judgment debtor exam.TXT

12   clients to commit criminal acts of infringements.

13       Q    I'm only asking for who, okay.  Can you just

14   list who you think?

15       A    I don't want to get into a debate with you

16   'cause we'll take off and we'll be here for ten

17   hours.  But you changed the question on me there

18   twice.

19       Q    The question is who owes you money?

20       A    Okay, I told you.  All the people in the

21   litigation and the people in -- I believe the

22   attorneys who have performed badly in the

23   litigations.

24       Q    Okay.

25       A    That's a nice way to put it if you

                                                      40

1    understand me.

2        Q    All I'm asking for is for you to say what

3    you mean by the litigation.

4        A    I'm talking about if we can call Berry One

5    and Berry Two.  First one Berry vs. Fleming.  Second,

6    Berry vs. Hawaiian Express, et al.  And the third one

7    with the lenders that's a whole thing by itself and

8    it's probably going to be -- we'll see what happens

9    with that.

10       Q    Okay.  Other than the lawyers who represent

11   defendants in those cases, is there anybody else that

12   you think owes you money?

13            MR. HOGAN:  I'm going to object.  It's vague

14   if you mean others and you're not including the

15   defendants as well.

16            MR. SMITH:  Fair enough.
                    Page 34

judgment debtor exam.TXT

17      Q      (By Mr. Smith) Other than everybody you've
18   identified up to now?
19      A      Well, probably the largest claim someone
20   owes me money is the United States Government.
21      Q      Okay.  Anybody else?
22      A      No.  I think they'll take care of the other
23   people.  They'll collect it from others.
24      Q      What about do you believe you have any
25   claims against a lawyer other than the lawyers who

0

41

1    represented the defendants in the litigation that
2    you've already described?
3       A      Yes.
4       Q      Who?
5       A      Well, I can think off the top of my head is
6    probably Roger Fulgrum at Baker Botts.
7       Q      Anybody else?
8       A      Brad Beuhler but I don't think he's an
9    attorney.
10      Q      Brad, what's his last name?
11      A      He's your friend.  You should know it.
12   Buehler, B-u-e-h-l-e-r or something like that.
13      Q      Anybody else?
14      A      Probably others but I have to sit and think
15   about it a while.
16      Q      As you sit here today, are you able to think
17   of any others that you -- any other lawyers that you
18   think you have claims against other than what I've
19   listed or what you've listed so far?
20      A      There's others but I can't remember their

judgment debtor exam.TXT

21  names.  I know one is at Sonnenschein who advised the

22  PTC or I guess it was in Fleming, the -- what do they

23  call that when they've got the board of directors

24  and -- audit committee, audit committee.  Advised the

25  audit committee it was okay for him to start wiping

                                                        42

1   computer files and records in the phase of the air

2   defense with the FCC.  He's the one that helped

3   Guidance --

4       Q    Alright.  We didn't ask you that question.

5       A    Yes, you did.

6       Q    I think you mentioned Sonnenschein and

7   that's fine.  If you can only name the firm and not

8   the individual lawyer, that's fine.  Any other

9   lawyers or law firms that you believe owe you money

10  other than the ones you've named so far?

11      A    Lynch Ichida, Mr. Hogan's old firm.

12      Q    Any other lawyers or law firms that you

13  believe owe you money other than the ones you've

14  listed so far?

15      A    There may be some but not to a point where I

16  can pursue them yet.

17      Q    Regardless of whether you're going to pursue

18  the claim, what other lawyers or law firms do you

19  believe --

20      A    I can't remember offhand.

21      Q    As you sit here today, you can't think of

22  any others?

23      A    There's others but I can't think of the

24  names.  And you don't like my stories describing it

25  so I don't know what to tell you.

                        Page 36

judgment debtor exam.TXT

43

1    Q    Are they Hawaii law firms or located
2    somewhere else?
3    A    I don't know.
4    Q    Okay.  Item 11 on the list.  Check stubs,
5    have you produced any check stubs?
6    A    I don't have any.
7    Q    Cancelled checks, have you produced any
8    cancelled checks?
9    A    I don't have any.
10    Q    Ledgers, have you produced any ledgers?
11    A    I don't have any.
12    Q    Other documentation illustrating any wage,
13    salary or other forms of compensation you have
14    received in the past five years?
15    A    I produced everything I have.
16    Q    And what is that?  You produced the contract
17    with Hawaiian or with Y. Hata.  Have you produced
18    anything else within the description of number 11 on
19    this list?
20    A    No.  The only thing I can think that could
21    have been in there could have been some 1099 or
22    something like that.  And in moving and shuffling
23    boxes, I've looked, I can't find it.  I know that
24    things were lost moving around so.
25    Q    How does Y. Hata pay you?

44

1    A    By check.
2    Q    They pay you with check?

Page 37

judgment debtor exam.TXT

3    A    Yes.

4    Q    And do they mail that check somewhere?

5    A    Yes.

6    Q    Where do they mail it?

7    A    To addresses in here.  I guess it's not.  I

8 think it's 5500 Military Trail and that's in Jupiter,

9 Florida and I think it's 33468.

10        MR. HOGAN:  I'll state for the record that

11 in the Lynch Ichida withdrawal and substitution that

12 they filed recently in the case, they put that

13 address in and I believe it's in the record in the

14 case.

15        MR. SMITH:  Okay.  And is -- do you know if

16 the address he's given is the correct one he's --

17        MR. HOGAN:  Well, Military Trail is what

18 rings a bell.  I don't have it specifically committed

19 to memory.

20    Q    (By Mr. Smith) Okay.  What is 103 East

21 Thatch Palm Circle, Jupiter, Florida?

22    A    That's a house address.

23    Q    And who lives at that house?

24    A    I do.

25    Q    Anybody else?

45

1    A    Sally Apgar.

2    Q    And I take it the Military Trail address is

3 not a house address?

4    A    It's a street address.  It's a UPS store.

5    Q    Okay.  And what do you do with the check

6 from Y. Hata when it arrives?

7    A    I deposit it to the Bank Atlantic normally.

Page 38

judgment debtor exam.TXT

8     Q     Okay.  Did Y. Hata pay by a check before you
9  lived in Florida?
10    A     Yes.
11    Q     And where did they mail the check?
12    A     The Hawaii Kai address, the -- my P.O. Box
13 where the guy is no longer in business.
14    Q     And what did you do with the check when you
15 received it there?
16    A     Usually cash it.
17    Q     Where did you go to cash it?
18    A     I think maybe Bank of Hawaii.  That's where
19 Y. Hata's account was and they would cash it for me.
20    Q     The checks were drawn on Y. Hata and you
21 cashed them?
22    A     Yes.
23    Q     You didn't have an account that you
24 deposited them into the way you're doing now that you
25 live in Florida?

                                                      46

1     A     No.
2     Q     And it's your sworn testimony you have no
3  record of any of those payments that you could have
4  produced today?
5     A     Not that I could find, no.
6     Q     How often does Y. Hata pay you?
7     A     Over what period of time?  I mean this last
8  recently?
9     Q     Well, let's say in 2007, do you receive a
10 check once a month or --
11    A     Once a month.  Sometimes they skip a month.
                        Page 39

judgment debtor exam.TXT

12    It varies.

13         Q    What about in 2006?

14         A    Same thing.

15         Q    2005?

16         A    Pretty much consistently over the term of

17    the contract they pay monthly or sometime skip a

18    month or two but catch up.

19         Q    The checks come monthly in general at least?

20         A    In general.

21         Q    Number 12.  Pleadings containing the full

22    caption of any lawsuit that you've been a party to.

23    I notice you do have some captions in here.  Have you

24    produced copies of the caption of any suit you've

25    been a party to in the last five years?

                                                        47

1         A    All the captions I had, yes.

2         Q    Are there any suits that you have been a

3    party to in the last five years for which you have

4    not produced a caption today?

5         A    Not that I'm aware of.

6         Q    12.  Lease agreements or other contracts

7    providing for payment of any monetary sums.

8         A    That's 13.

9         Q    I'm sorry, 13.  Lease agreements or other

10    contracts providing for payment of any monetary sums

11    to you from any individual or entity.

12         A    I produced the Y. Hata contract.  That's all

13    I could find to be responsive to that.

14         Q    Okay.  Are you aware of anything that's

15    responsive to this that you could not find a copy of?

16         A    No.

                      Page 40

judgment debtor exam.TXT

17    Q    So it's your sworn testimony today that

18    there are no lease agreements or other contracts

19    providing for payments of any monetary sum to you

20    from any individual or entity other than Y. Hata?

21    A    As long as we leave the definition of the

22    term contract does not include anything regarding the

23    lawsuits and all that stuff, yes.

24    Q    14.  Qualified retirement plans in which you

25    have an interest or that have been adopted by your

                                                        48

1    employer including but not limited to 401(k) plans

2    profit-sharing plans, pension plans and simplified

3    employee pension plans.

4    A    No.

5    Q    I take it then your answer to 15 is none?

6    A    Correct.

7    Q    Non-qualified deferred compensation plans?

8    A    None.

9    Q    17.  Stock certificates in corporations of

10    which you are a record holder of any stock.

11    A    None.

12    Q    What about Atlantic Pacific International,

13    Inc.?

14    A    I think it's gone.  I wouldn't consider that

15    an active company.

16    MR. HOGAN:  I'll state for the record that

17    the official -- the original shares were given to the

18    U.S. Attorney's office.  I delivered them the weekend

19    before Lokelani's trial and I had delivered them on a

20    Friday.  I dropped a little box and if you want to

                      Page 41

judgment debtor exam.TXT

21  get them, call the FBI.  They have them.

22      Q    (By Mr. Smith) Do you have an understanding

23  whether you are the owner of the shares of Atlantic

24  Pacific International, Inc.?

25      A    I don't know how that works once

49

1   everything -- company's done and gone.  I don't know

2   if I could answer that one way or another.

3       Q    Okay.

4       A    I was at one time.

5       Q    Does Atlantic Pacific International, Inc.

6   have any assets at the present time to your

7   knowledge?

8       A    Not that I'm aware of.

9       Q    You were a president and sole shareholder of

10  Atlantic Pacific International, Inc. at one time,

11  right?

12      A    Yes.

13      Q    Did anybody succeed you as president of

14  Atlantic Pacific International, Inc.?

15      A    Not that I'm aware of.

16      Q    18.  Balance sheets, income and expense

17  statements and other corporate documents of the

18  corporation in which you hold stock.  I take it the

19  answer is no?

20      A    Correct.

21      Q    All -- 19.  All documents indicating any

22  interest in which you way have or evidence of

23  ownership of any individual retirement account?

24      A    None.

25      Q    20.  Trust documents by which you have

Page 42

judgment debtor exam.TXT

50

1    transferred money or property to any trust within the
2    last five years.
3        A    None.
4        Q    Have you transferred any property to a trust
5    in the last five years?
6        A    No.
7        Q    Do you have any individual retirement
8    accounts?
9        A    No.
10       Q    Did I -- do you have any deferred
11   compensation plans?
12       A    No.
13       Q    Do you have any 401(k) plans, pension plans
14   or simplified employee pension plans?
15       A    No.
16       Q    Are you a beneficiary of any trust?
17       A    I don't think so.
18       Q    Are there any -- are you aware of any trusts
19   that you might be a beneficiary of?
20       A    The only reason I said I don't think so is I
21   know my father had a trust set up.  He's passed away.
22   And there was the last documents I saw in the '90s I
23   was the executor and sole beneficiary.  But I think
24   he probably changed that.  I never saw the change.
25       Q    Your father had a judgment against you at

51

1    one time, right?
2        A    Yes.

Page 43

judgment debtor exam.TXT

3    Q    What is the status of that judgment?

4    A    Expired.

5    Q    Since your father passed away, who became

6    the owner of that judgment?

7    A    I have no idea.

8         MR. HOGAN:  For what it's worth, it probably

9    could be him.

10        THE WITNESS:  I may still be the trustee and

11   executor and sole beneficiary for all I know.  No

12   one's told me.

13   Q    (By Mr. Smith) You haven't heard anything

14   from the estate of your father after he passed away?

15        MR. HOGAN:  That wasn't renewed within ten

16   years.

17        THE WITNESS:  I've heard absolutely nothing.

18   No one notified me, nothing.

19   Q    (By Mr. Smith) I'm not limiting the question

20   to the judgment now.  I'm asking more generally

21   whether you heard anything from anyone on behalf of

22   your father's estate after he passed away.

23   A    I've heard from no one regarding my father.

24   I had to find a death record on my own.

25   Q    Other than your father's estate, are you

D

52

1    aware of any other trusts in which you may have an

2    interest?

3    A    I'm not aware of any, no.

4    Q    Number 21.  Documents reflecting transfer of

5    title of any assets by you in the last five years.

6    A    To me or from me?

7    Q    Question 21 is asking about transfers made

judgment debtor exam.TXT

8    from you to someone else.

9        A    From me to someone else.  No.

10       Q    Okay.  What about transfers of assets to you

11   from someone else?

12       A    Is that one of the questions?

13       Q    That's my question.

14       A    Okay.  You got the document too.  The second

15   EULA addendum which I've filed with the United States

16   Copyright Office where Fleming transferred anything

17   they wrote regarding that freight control system to

18   me and I'm . . .

19       Q    Okay.

20            MR. HOGAN:  It's all the software your

21   client is using out there at Kapolei.

22            THE WITNESS:  Right.

23       Q    (By Mr. Smith) Okay.  So that's a transfer

24   to you from somebody else?

25       A    Yes.


                                                    53

1        Q    Is a Second EULA Addendum.  Says the

2    document is entitled Second EULA Addendum so I'll

3    have no trouble finding it?

4        A    Oh, I'm sure you can find it.  It's -- we

5    jockey back and forth about the title but that's what

6    it is.

7        Q    Okay.  I think I know what you're talking

8    about.  So that is the document that your testimony

9    is that transferred assets to you.  Are you aware of

10   any other transfer of assets to you over the last

11   five years?

Page 45

judgment debtor exam.TXT

12    A    No, I didn't say it was transferred to me

13  over the last five years.  That's a transfer to me of

14  1999 continuing to this day.  And all I said was I

15  am -- I filed it.  I don't know if it's recorded yet

16  with the United States Copyright Office just to be

17  clear.

18    Q    Okay.  My question is are you aware of any

19  other transfers of assets to you from somebody else

20  other than what you just described?

21    A    No.

22    Q    Where did you purchase -- well, we discussed

23  some firearms that you own, right?

24    A    Yes.

25    Q    Where did you acquire them?

54

1    A    In Hawaii.

2    Q    And can you be more specific about where in

3  Hawaii you acquired them?

4    A    I can't remember the gun store.

5    Q    Where was it located?

6    A    It seems like it was over in the Mapunapuna

7  area.

8    Q    Okay.  Do you have any records relating to

9  those weapons?

10    A    I'm sure I do.  And the other one was

11  acquired at a gun store.  It used to be close to

12  Fisher.  I think they went out of business.

13    Q    How many firearms do you own?

14    A    Three.

15    Q    Can you list them please?

16    A    A Benelli M90 and two H & K USP 45s.

Page 46

judgment debtor exam.TXT

17          MR. HOGAN:  Did your friends find another

18   trail to Mr. Berry's house, Lex?

19          Q    (By Mr. Smith) The first one, does that

20   start with a B, Benelli?

21          A    Yes.

22          Q    How much did you pay for it?

23          A    I don't recall.

24          Q    What was the source of the money that you

25   used to pay for it?

                                                    55

1           MR. HOGAN:  I'm going to state for the

2    record that this has very little to do with a proper

3    judgment debtor examination.

4           I'll state for the record that there is a

5    series of time records where on a weekend in which

6    Mr. Berry's brother-in-law was assaulted in his house

7    in which we believe persons carrying firearms,

8    entered the State of Hawaii on a private jet and Mr.

9    Smith met with them and that he has time records were

10   excised in the first case for approximately $4,000 of

11   time for the very days that these gentlemen were

12   here.

13          I believe these questions are being asked

14   for the purpose of advancing racketeering activities

15   that has occurred and will occur again in the State

16   of Hawaii.  I believe it violates the Fair Debt

17   Collections Practices Act as well as the RICO Act.

18   And you can answer the question.  And it's meant to

19   intimidate the witness.

20          Q    (By Mr. Smith) The question was what was the

Page 47

judgment debtor exam.TXT

21    source of the money you used to pay for the Benelli?

22        A    I guess it's money I earned at API.

23        Q    When did you buy the Benelli?

24        A    Mid '90s somewhere.

25        Q    Then you identified two H & K firearms.

56

1    What was the date that you acquired those?

2        A    I think it was shortly after you sent the

3    goons to my house.  So what was that?  You should

4    know.

5        Q    Let me just state for the record that I deny

6    all of the accusations about me sending goons to your

7    house.

8        A    Can we get your time records for these ten

9    days?

10        Q    Just so that it's clear, I state for the

11    record that this is a bunch of hogwash --

12        A    Can we get your missing --

13        Q    Now, I ask the questions here.  And the

14    question is when did you buy the H & K weapons?

15        A    Shortly after -- I told you.  Shortly after

16    that was November 2001.  I don't remember exactly

17    when.  Sometime after that.

18        Q    And what was the source of the funds for

19    those weapons?

20        A    I don't recall.

21        Q    You said that the United States Government

22    owes you a lot of money.  Could you please explain

23    what the government owes you money for?

24        A    For using the freight control system that

25    you and Mr. Fulgrum got the copy from the United

Page 48

judgment debtor exam.TXT

57

1    States Copyright Office without permission and used
2    it to verify KBR's LOGCAP contract in 2002.
3         Q    Anything else?
4         A    I think that's enough.
5         Q    I'm not asking whether you think it's
6    enough.  I'm asking whether there's any other basis
7    on which you think the U.S. Government owes you
8    money?
9         A    I'm sure it goes into other departments and
10   other things but, you know, government auditors can't
11   even get a look at some of this stuff from KBR so I
12   guess it's just going to be -- just got to file a
13   claim and see where it goes.  And I guess that will
14   kind of detail it and figure it out.
15        Q    Now, what -- does KBR stand for something?
16        A    Kellogg Brown & Root.
17        Q    And you said something about log caps,
18   correct?
19        A    Yes.
20        Q    What does that mean?
21        A    That's the logistics contract that KBR won
22   in December of 2001 right after the 9/11 incident to
23   supply the military with logistic support for various
24   products, food, restaurant supplies, gasoline, things
25   like that in areas of operations.

58

1         Q    Okay.  And you believe the U.S. Government
2    is using something that you authored in order to

Page 49

judgment debtor exam.TXT

3    perform that contract?

4        A    Yes.

5        Q    Or that Kellogg Brown & Root is using

6    something you authored to perform their contract?

7        A    I'm not sure how that would work.  Kellogg

8    Brown & Root charged the government a large amount of

9    money for an access database produced to the United

10   States Government they claim to be proprietary and

11   secretive.  So they'll sort it out somehow I'm sure.

12       Q    Okay.  Is this a lawsuit that you're

13   planning on filing soon?

14       A    Yes.

15       Q    Are you planning on filing it in Hawaii?

16       A    No.  It will be in the U.S. Court of Claims.

17       Q    Okay.  22.  Document reflecting transfers of

18   real property by you within the last five years.

19       A    If I understand the definition of real

20   property, I don't believe there are -- I had any to

21   transfer.  There's no transfers.

22       Q    So you have made no transfers of real

23   property in the last five years?

24       A    Not that I'm aware of.

25       Q    Do you own any real property today?

59

1        A    Not that I'm aware.

2        Q    23.  Gift tax returns for the last five

3    years.

4        A    I don't have any.

5        Q    Have you made any gifts to anyone in the

6    last five years?

7        A    Not that I'm aware of.

Page 50

judgment debtor exam.TXT

8     Q     You made any loans to anyone in the last

9   five years?

10     A     Not that I can recall.

11     Q     All partnership agreements in which you are

12   either a general partner or limited partner.

13     A     I don't believe I've entered into any

14   partnership agreements.

15     Q     So as far as you know, you're not a party to

16   any partnership agreement today?

17     A     I don't think so.

18     Q     What about with Alan Sinesky?

19     A     There's no partnership agreements.

20     Q     Do you have any co-venture arrangements with

21   Mr. Sinesky at all?

22         MR. HOGAN:  Objection, vague as to the term

23   co-venture.  Calls for a legal conclusion.

24     Q     (By Mr. Smith) You may answer to the extent

25   you understand.

                                                    60

1     A     There's no co-venture agreements of any kind

2   between him and me.

3     Q     25.  Any contracts between you and anyone

4   else including but not limited to the government for

5   any works performed by you under which you are owed

6   any money?

7     A     I don't think there are any.

8     Q     There are none other than Y. Hata?

9     A     I don't believe so.  That's correct.

10     Q     Number 26.  All contracts between you and

11   any other person including but not limited to the

Page 51

judgment debtor exam.TXT

12  government for any work that you are currently

13  performing?

14      A    There are none.

15      Q    Now, you have, in the past, worked on a lot

16  of different software projects, right?

17      A    Over my lifetime, yes.

18      Q    Right.  And sometimes it's on your shoulders

19  to create something and then demonstrate the project

20  and get a sale for it, right?

21      A    Yes.

22      Q    That's how you made your living, right?

23      A    Yes.

24      Q    Is that still how you make your living?

25      A    Yes.

                                                    61

1      Q    Okay.  So what projects have you worked on

2  like that in the last five years?

3      A    Nothing -- for a demonstration purpose?  The

4  only ones I can think of is I've done variance of the

5  freight control system like with Horizon Lines on

6  some of the EDI stuff.  Some has worked, some hasn't.

7  They're not quite up to speed on certain things.  I

8  was looking at that and talking to some of the food

9  vendors as a variant of the freight control system to

10  work for them for placing direction orders.

11      Q    Okay.  So you have made some kind of a

12  proposal to Horizon Lines within the last five years?

13      A    No, no, nothing that formal.  I've worked

14  with their EDI by sorting out different transaction

15  sets that they were bringing on-line because they've

16  been going through a lot of rewrites and changes.

Page 52

judgment debtor exam.TXT

17    Q    And you have not produced any documents from

18    any of those parties as you sit here today?

19         MR. HOGAN:  Objection, he's not asked to

20    produce.

21    Q    (By Mr. Smith) I'm not trying to get into a

22    debate over that.  I just want to know is anything

23    from any of those parties contained in what you

24    produced today?

25    A    No.


                                                      69

1          MR. SMITH:  Okay.  Let's take five minutes.

2     My three hours are running fast.

3          (Recess taken.)

4     Q    (By Mr. Smith) I would like to go back to

5     the bank statement you provided from the bank in

6     Florida.  Your testimony again is that you produced

7     all the records that you had from Bank Atlantic,

8     right?

9     A    Yes.

10    Q    So if we look at page 31 on the right hand

11    side, it says page 1 enclosures 2.  What are the

12    enclosures that are referred to there?

13    A    I don't know.  I usually don't keep the

14    first page.

15    Q    You threw the rest of the statement out?

16    A    Yes.

17    Q    As well as any enclosures?

18    A    Yes.

19    Q    Was there more than one statement or one

20    page of this statement?

                        Page 59

judgment debtor exam.TXT

21     A     I don't know.  I'm usually after this thing

22   where it's got the summaries and balances like I can

23   see what all that is.

24     Q     So you started with a balance of $64,147.95,

25   correct?

70

1     A     Okay.

2     Q     As of April 17, right?

3     A     Where do you see the April 17?  At the top

4   there, okay.

5     Q     And then it says debits of $25,295.19?

6     A     Okay.

7     Q     Where is the portion of the statement that

8   identifies the debits?

9     A     I don't know.

10     Q     You don't know so you don't have it in your

11   possession?

12     A     This is -- no.  This is all I had in the

13   stack of papers.

14     Q     Is it your testimony you threw out the rest

15   of the statement that identified what the debits you

16   had made?

17     A     I most likely did, yes.  I didn't find it,

18   produce it.  Or else I would have scanned it in too.

19     Q     Okay.  And page 32 is again page 1

20   enclosures 2.  And my question again is where are the

21   enclosures?

22     A     I don't know.  This is the only page I had.

23     Q     What are the debits?  Can you just tell me

24   what were the amounts that came out of this account

25   of $25,820?  That's in the month for May 17 to June

Page 60

judgment debtor exam.TXT

⬜

71

1   17, 2007.  Where did that money go?

2       A   I don't know.

3       Q   You're not able to say what happened to any

4   of that $25,870?

5       A   Not offhand, no.

6       Q   What about the 25,295 that was expended from

7   April 17 to May 17 out of this account?

8       A   I don't know.

9       Q   What are the enclosures that come with your

10  bank statements?

11      A   I don't know.

12      Q   Okay.

13      A   I don't look at them.

14      Q   You don't look at them and you don't know

15  what you spent your money on during those two months?

16      A   Not as we sit here, no.

17      Q   Do you have any records that would reflect

18  what you spent your money on?

19      A   No.  I would have produced them.

20      Q   Does Bank Atlantic provide your cancelled

21  checks with your statements?

22      A   No.  I think most banks hold those now.

23      Q   I'm not asking about what most banks do.

24      A   I don't -- they don't send them to me so I

25  assume they have them.

⬜

72

1           MR. HOGAN:  They shred them.

2       Q   (By Mr. Smith) So -- but your testimony is

Page 61

judgment debtor exam.TXT

```
12    A    I don't know.  I don't recall.

13    Q    Do you own any other URL besides

14  FCS2003.com?

15    A    I think I do.  I'm just not sure if they're

16  still active.

17    Q    What are the ones that you think you may

18  own?

19    A    I've got a couple for Y. Hata.  I think

20  it's -- there's ymlogistics.com and there's a

21  yhatalogistics.com.

22    Q    Any others?

23    A    That's all I can think of right now.

24    Q    What was the source of the funds used to pay

25  for those URL registrations?
```

                                                      82

```
1    A    I don't know.

2    Q    What is the license fee that Y. Hata pays

3  you?

4         MR. HOGAN:  Objection, vague as to time.

5    Q    (By Mr. Smith) At the present time.

6    A    I don't know offhand.

7    Q    Okay.  Do you have any understanding of how

8  the amount that Y. Hata pays you is determined?

9    A    Yeah.  It went through a formula and it's

10  calculated, divided up over a period of time, all

11  that kind of stuff.  So I don't know what the license

12  fee component is and that sort of thing.

13    Q    Okay.  Is there a minimum amount that you

14  receive from Y. Hata?

15    A    No.  They were -- like I said, we totalled

16  the total amount over a period of years and divided
```
                        Page 70

judgment debtor exam.TXT

17    it up and came to some agreement on what the average

18    monthly payment was going to be.

19        Q    Okay.  And so you receive the same amount

20    every month from them?

21        A    Pretty much, yeah.

22        Q    Well, you say pretty much.  Is there

23    variables that determine how much you get?

24        A    Yes.  Sometimes they skip a month.

25        Q    Okay.  You're owed the same amount every

                                                          83

1    month regardless of whether they're late in payment?

2        A    A different question, yes.

3        Q    The answer is yes, you get a flat amount

4    every month?

5        A    Yes.

6        Q    And it doesn't vary depending on how many

7    questions they ask you or how much time you take in a

8    particular month to respond to their questions?

9        A    I guess it could but I don't.

10       Q    Up to now, it has not varied -- the amount

11    they pay you has not varied based on any sort of

12    amount of time you spend?

13       A    No.

14       Q    What approximately is that monthly number?

15       A    $5,000 something.

16       Q    So going back to these bank statements that

17    show over $20,000 moving through your account in

18    various months, what's the source of those funds?

19       A    That would be Y. Hata.

20       Q    Okay.  Are they paying you 20,000 in one

                        Page 71

judgment debtor exam.TXT

21    month or are they five months behind or what?  How do

22    you reconcile the $5,000 a month payment with the

23    larger amounts moving through your account in April,

24    May, June of 2007?

25        A    They -- as I was telling you, I'm trying to

84

1    get new business.  And in talking to them, I

2    discounted a balance of payment over a period of time

3    to them for bulk payment to buy new software, things

4    so I can get new business.

5        Q    If I understand you correctly, you -- they

6    gave you a larger lump sum payment and then for some

7    number of months in the future, there won't be any

8    payment made, is that right?

9        A    Correct.

10        Q    I see.  And is that agreement contained in

11    the materials that you've brought today?

12        A    No.

13        Q    Where is that agreement?

14        A    It doesn't exist anywhere to my knowledge.

15        Q    It was an oral agreement only?

16        A    It was something I asked them if they would

17    help me 'cause I needed this new business and they

18    said they wanted something in exchange for it and we

19    worked out a discount that they were happy with and

20    it satisfied both parties for the time being.

21        Q    Okay.  So how much did they -- explain that

22    agreement.  How much did they agree to give you?

23        A    I don't recall the exact amount.

24        Q    Approximately.

25        A    They're fairly reflected in those couple

Page 72

judgment debtor exam.TXT

85

1    statements.

2        Q     Approximately how much?

3        A     I don't know.  Something in the 50 to 60

4    range, something like that.

5        Q     They agreed to give you somewhere between 50

6    and $60,000 in exchange for how many months of no

7    payments?

8        A     I don't know.  But they got a discount on

9    the entire license fee that was originally agreed to

10   in exchange for that.

11       Q     How much was the discount?

12       A     I don't recall the number.

13       Q     Approximately how much?

14       A     Could have been 10, 20 percent, something

15   like that.

16       Q     When was this agreement reached?

17       A     We started talking about it in late 2006.

18   It was part of the move to Florida to get new

19   business and I asked them if they would be agreeable

20   to as I saw what was coming if they worked with me so

21   I could try and get some of this new business.  And I

22   don't remember exactly when we came to a final

23   agreement but they were agreeable from the beginning

24   when I told them I was going to go after new business

25   in another part of the country.

86

1        Q     And you have absolutely no record that

2    reflects the amount that you agreed to discount of

Page 73

judgment debtor exam.TXT

3    their obligation to you?

4         A    No.    These are good people.  Whatever it

5    was, it was fair at the time and we discussed it and

6    it was acceptable to everyone.  I don't recall

7    offhand.  You know, Y. Hata, they're good people.

8    This is a little different.

9         Q    So does Y. Hata possess any documents that

10   reflect the terms of this agreement?

11        A    I don't know.

12        Q    Okay.  Was the agreement entered before

13   April of 2007?

14        A    Yes.

15        Q    So it's between January of 2007 and April?

16        A    I don't know exactly when but as I told you,

17   when the medical situations came up last summer over

18   a year ago, I had some meetings with Y. Hata where I

19   discussed the situation and I was looking for new

20   business and things.  And that's where the agreement

21   started.

22        Q    Who were you meeting with at Y. Hata?

23        A    I think it was probably Brian Marting.

24        Q    When is the next payment that you expect to

25   receive from Y. Hata?

87

1         A    I don't know.

2         Q    Do you expect to receive a payment this

3    month?

4         A    Other than this in the future, yes.

5         Q    Do you expect to receive any payment for the

6    month of September?

7         A    I don't know.

Page 74

judgment debtor exam.TXT

8    Q    Do you expect -- I'm only asking what you
9    expect, not whether you know.  Do you expect to
10   receive a payment for the month of September?
11   A    I'm not sure.
12   Q    Do you expect to receive any payments from
13   Y. Hata through the end of the year?
14   A    I'm not sure.
15   Q    At the time you made your agreement with Y.
16   Hata, isn't it a fact that you were aware that
17   various parties had made motions to recover attorney
18   fees from you?
19   A    Not sure.  I don't remember when the motions
20   were filed.
21   Q    So you may have been aware and you may not
22   have been aware?  You don't know?
23   A    I'm not sure.  I'm not sure that had
24   anything really to do with it one way or the other.
25   Q    You're a party to a divorce proceeding, is

                                                      88

1    that right?
2    A    No.  I'm in the process of filing an
3    annulment.  That's all I'm aware of.
4    Q    Have you ever prepared any asset information
5    in connection with a divorce proceeding?
6    A    No.
7    Q    You've never provided any assets or income
8    information in connection with a divorce?
9    A    Not that I'm aware of.
10   Q    Now, you said there's already one divorce
11   matter pending, is that right?
                    Page 75