# EXHIBIT A



Kelly Warren/Los Angeles/Kirkland-Ellis
02/24/2008 04:52 PM

To   Kelly Warren/Los Angeles/Kirkland-Ellis,
cc
bcc
Subject   Fw: Berry and the EULA



"Tim Hogan"
<tjh@timhogan.com>
01/30/2008 12:32 PM

To   "Michael Baumann" <mbaumann@kirkland.com>
cc   "Erin Brady" <ebrady@kirkland.com>, "Richard Wynne" <rwynne@kirkland.com>
Subject   RE: Berry and the EULA

Mike:

I've color coded my responses in Green.

I guess the problem is that Fleming never sought the rejection and never conducted itself as if there had been one. There are several places in the Plan that supports this view.

Fleming retained, for the PCT, its rights in intellectual property and ongoing litigation under the Plan section VII B related to intellectual property and litigation generally. I don't think it makes any sense to actively pursue the rights under a license that has been rejected. Why not just walk away? The debtor couldn't because it is now proven that Fleming sold the works to C&S based on what C&S claims in its motion to dismiss.

Obviously we disagree. You have quoted, and we have provided you with quotes, demonstrating that at the time of the sale to C & S there was no **court authorized** sale of intellectual property of Mr. Berry's. This was made clear before the Bankruptcy Court and acknowledged by C & S. The confirmation plan and order does constitute a rejection of the license, a position you and your client understood and acknowledged in the materials I identified to you. As to your argument that rights in the license were pursued in a manner inconsistent with rejection, that is simply not the case. The claim of your client that was adjudicated dealt with the alleged infringement prior to the rejection of the license and the sale of assets to C & S. The period of inadvertent infringement was from April 1 through June 9 2003. That case was filed on July 18, 2003. The transfer occurred when your clients' CEO signed the indemnity agreement on August 23, 2003. That agreement evidences the transfer and because C&S continues to be a beneficiary of that agreement that the Berry Eula was never rejected.

The Plan permitted additions to the assumed contracts list, post-confirmation, to be done outside of the view of the creditors and stated that exceptions to the general rejection that were in the Plan controlled over those sections. Something that "wasn't on the list" to quote the APA hearing, could easily be put on it post confirmation. Preserving the claim of ownership was indisputable proof that the PCT exercised the exception contained in the Plan embodied at least by the retention of causes of action.

You are simply wrong if you are suggesting that the license was added to the assumed contracts list post-confirmation and mere speculation that the license "could easily be put on it post confirmation" is not a justification for filing a suit that is factually incorrect. Even if not on the list, the retained causes of action where you client claimed to be the "owner" of the works continued post confirmation.

Even without an executory contract, the PCT, by continuing the false claim of ownership under Kors' direction stepped into a claim that it could have avoided by simply acting consistent with a rejected contract to simply allow the claim to be completed and waive any false claims of ownership. The claim of ownership was argued by you personally at the 9th Circuit and you can't avoid the result of the judicial estoppel. I've attached a page from Mr. Capozzola's reply brief filed on behalf of Mr. Kors on August 19, 2005, well after your alleged rejection, where the continuing false claim of ownership over the Fleming created works was made, and a page from the 9th Circuit Memo where the court held against the PCT that just days ago refused to make clear that all the works are Berry's. In the face of the disregard for the 9th Circuit's ruling in my view, this shows the type of distain for the justice system that you claim is the basis for your threats.

To continue the analogy, the debtor claims that the truck is owned by the debtor and transfers it to the purchaser. After litigation over ownership the debtor is just found to be a licensee. The unpaid license fee or truck lease rent remains an administrative claim, the erroneous view regarding ownership notwithstanding.

The PCT erroneously continued to claim ownership of the works up until that claim became frivolous upon the entry of the Writ of Mandate in October. The APA had litigation over assumed-rejected contracts going back to 2006. If they were all rejected that should have been that. I know that there was settlement agreement. Can you provide me a copy of the C&S settlement documents? I'm sure they discuss this issue.

Again, you are wrong about the PCT claiming ownership. The PCT and Mr. Kors are not using Berry software, have not claimed ownership of it and have no need to. The license was rejected. Wrong about ownership and wrong about use as proven by the indemnity agreement that Kors' continues to honor. Do I need to pull your appellate briefs and motions to show that you continued to attack Berry's ownership including the ownership of the works that Fleming created under the EULA? As I recall your answers filed in the Berry v. Hex also put forward the defense of ownership regarding which defense your client lost, again. Even if you assume *arguendo* that the license was rejected, rejection does not change the rights that were in the license. Where there was no benefit imparted to the Estate, it generally operates to cause the damages to be considered pre-petion. But in this case, where the Estate benefited from the use it is an administrative claim to be paid in cash. Kors in liable because the PCT agreement says if he does something that is willful (contributing to C&S infringement by failing to cause them to return the works a power he now admits he had) he is personally liable. As you may recall, your firm wrote the agreement.

If you have a date that you think the rejection occurred let me know. If it was plan confirmation, why did Fleming and the PCT continue to assert ownership over the works for over 3 years after that? I think anyone looking at this would believe that Fleming, in contempt for Judge Walrath, sold them to C&S with a promise to deliver title after tormenting Mr. Berry. The Debtor failed in that and now you've got to either return them to Berry or pay the price under the agreement. Had you returned them upon confirmation, you might have had an argument. Instead, you continued to assert ownership supporting C&S's unlicensed use and that results in ongoing liability of the PCT and Mr. Kors for directing it. If you claim rejection occurred as of the petition date, you better win the appeal because if you don't then all the defenses based on the license would be waived and you would admit willful infringement as to all the work on remand.

Your argument ignores the acknowledgement of the rejection by you and your client, including the filing of rejection damage claims. Your argument is based on the incorrect assertion that PCT or Fleming continued to assert ownership over the works following plan confirmation. There was no promise to

deliver title to C&S "after tormenting Mr. Berry." Let's go back to the analogy. Say the truck lease was rejected. Then after rejection, the PCT representative (Mr. Kors) who admit now that knew he had a duty to return the truck takes it to a demolition derby and trashes it. You would say, he's free, I'd say he, at a minimum converted the truck. In this case, he materially participated in the agreement to allow another person to take the truck to the demolition derby. Because it is a "willful" act under the PCT agreement he is personally liable. Assuming for argument sake, the confirmation results in the agreement being rejected. Mr. Kors had no rights to use and no right to assist the user of the works. He continued to actively claim ownership, assist infringers by paying their attorneys' fees under the indemnity and otherwise tormenting Mr. Berry. Where in that conduct does it appear to you that the PCT evidence a belief that it had no rights in the Berry works? Why not just walk away, at least regarding the ownership claim?

We believe the PCT and Mr. Kors assumed the duty to indemnify and support the infringers and have acted upon it to assist the infringers. I can't see how you can claim that the license has been rejected regardless of what Mr. Berry thought in his letter. In addition, the material support for the willful infringers and the accrued liability doesn't get fixed by us agreeing that the contract was rejected. What if this was a lease to a truck. The debtor gives the keys to the purchaser without lessor consent or cure and says, "Okay, here is your truck. Don't forget to keep up the lease payments." The purchaser won't pay. Your position is they get to keep the truck and the estate has no administrative liability. If Mr. Wynne has a case that says that I'd would be interested in seeing it.

Mr. Berry did not just "think" the license was rejected, he filed a claim in the bankruptcy court on that basis. You were his lawyer in that regard I believe. Your analogy doesn't work because Fleming did not sell, lease or transfer intellectual property to C & S and there were no "lease payments" required. Wrong about the claim. Mr. Berry had to meet a bar date. At some point the agreement might be rejected. The plan definitely provided for filing of rejection claims during a period where the debtor and PCT retained the rights to add these to assumed contact lists and "unreject" the contracts, so to speak. C&S says Fleming sold the freight software to C&S. The "lease payments" in the analogy are the license fee and profits derived from the infringement or as we claimed the liquidated damages under the EULA. I frankly thought you would appreciate my willingness to cap the damages at $2 million. No good deed goes unpunished. Anyway, the RICO claims has in for a lot more than the EULA. Because he refuses to perform the statutory duties to report C&S I don't see how he ever gets away from the liability.

If what you are trying to do is to show that the license was rejected the works were delivered to C&S that won't work. It happened about a year prior to plan confirmation. At that point they were locked in because everything they got was Berry's and still is.

If you can let us know why it is so important I would be happy to consider it. If you want to discuss some accommodation regarding Mr. Kors I suggest that you stop making threats and commence some constructive dialogue. I think a joint motion in Delaware where we seek the return of the works or a criminal referral against C&S would be something I could use to move Mr. Berry.

Tim it is important because you are making wild accusations against the PCT and Mr. Kors as an individual that are without basis. It is important because you filed suit on behalf of Mr. Berry without basis and that is causing the PCT and Mr. Kors to incur the expense of responding. It is important because confidence and trust in the legal system requires that such claims not be made without some basis. I was not making threats in providing you with this information; I was simply providing you with information so you could understand why the claims should be withdrawn. We have no choice but to protect the PCT and Mr. Kors by seeking sanctions, a route I would prefer to avoid.

The basis for his personal liability, as I said above, is the PCT Agreement that says where he acts

willfully he is personally liable. I recommend that Mr. Kors consider that we put these allegations, including the intentional torts, in the Second Amended Complaint, because we can withstand any such threats with proof. I think Lex's declaration has given me enough for summary on at least one of the claims. I take your response to mean that Mr. Kors continues to advance C&S' infringement when all he has to do is report C&S to the Court, because, as we both know, he is working with your firm and the Lenders to complete the sale of Berry's works to C&S, the denials notwithstanding.

In sum, I take your threats to mean that Mr. Kors continues to provide material support, including making personal threats, for the continued unauthorized use of Mr. Berry works despite a 9th Circuit Writ of Mandate telling him Berry owns the works. Mr. Kors has the power but not the will to cause the infringers to cease their infringement. To coin the phrase, Mr. Berry reserves all rights.

Tim

---

**Timothy J. Hogan**
Attorney at Law
1050 Bishop Street, No. 433
Honolulu, Hawaii 96813
Tel    (808) 382-3698
Fax.   (808) 356-1682
Email  tjh@timhogan.com
www    timhogan.com

NOTICE: This email may contain confidential information that may be subject to privilege. If you are not the intended recipient or received this message in error, please do not make any copies, contact the sender at tjh@timhogan.com and delete the message immediately.

**From:** Michael Baumann [mailto:mbaumann@kirkland.com]
**Sent:** Wednesday, January 30, 2008 8:49 AM
**To:** Tim Hogan
**Cc:** Erin Brady; Richard Wynne
**Subject:** Re: Berry and the EULA

Tim:

My response is interlineated in red below.

Mike

"Tim Hogan"

|  |  |
|---|---|
| <tjh@timhogan.com> | To "Michael Baumann" <mbaumann@kirkland.com>, "Richard Wynne" <rwynne@kirkland.com>, "Erin Brady" <ebrady@kirkland.com> |
| 01/29/2008 06:00 PM | cc |
|  | Subject Berry and the EULA |

Mike:

I guess the problem is that Fleming never sought the rejection and never conducted itself as if there had been one. There are several places in the Plan that supports this view.

Fleming retained, for the PCT, its rights in intellectual property and ongoing litigation under the Plan section VII B related to intellectual property and litigation generally. I don't think it makes any sense to actively pursue the rights under a license that has been rejected. Why not just walk away? The debtor couldn't because it is now proven that Fleming sold the works to C&S based on what C&S claims in its motion to dismiss.

Obviously we disagree. You have quoted, and we have provided you with quotes, demonstrating that at the time of the sale to C & S there was no sale of intellectual property of Mr. Berry's. This was made clear before the Bankruptcy Court and acknowledged by C & S. The confirmation plan and order does constitute a rejection of the license, a position you and your client understood and acknowledged in the materials I identified to you. As to your argument that rights in the license were pursued in a manner inconsistent with rejection, that is simply not the case. The claim of your client that was adjudicated dealt with the alleged infringement prior to the rejection of the license and the sale of assets to C & S. The period of inadvertent infringement was from April 1 through June 9 2003.

The Plan permitted additions to the assumed contracts list, post-confirmation, to be done outside of the view of the creditors and stated that exceptions to the general rejection that were in the Plan controlled over those sections. Something that "wasn't on the list" to quote the APA hearing, could easily be put on it post confirmation. Preserving the claim of ownership was indisputable proof that the PCT exercised the exception contained in the Plan embodied at least by the retention of causes of action.

You are simply wrong if you are suggesting that the license was added to the assumed contracts list post-confirmation and mere speculation that the license "could easily be put on it post confirmation" is not a justification for filing a suit that is factually incorrect.

The PCT erroneously continued to claim ownership of the works up until that claim became frivolous upon the entry of the Writ of Mandate in October. The APA had litigation over assumed-rejected contracts going back to 2006. If they were all rejected that should have been that. I know that there was settlement agreement. Can you provide me a copy of the C&S settlement documents? I'm sure they discuss this issue.

Again, you are wrong about the PCT claiming ownership. The PCT and Mr. Kors are not using Berry software, have not claimed ownership of it and have no need to. The license was rejected.

If you have a date that you think the rejection occurred let me know. If it was plan confirmation, why did Fleming and the PCT continue to assert ownership over the works for over 3 years after that? I think

anyone looking at this would believe that Fleming, in contempt for Judge Walrath, sold them to C&S with a promise to deliver title after tormenting Mr. Berry. The Debtor failed in that and now you've got to either return them to Berry or pay the price under the agreement. Had you returned them upon confirmation, you might have had an argument. Instead, you continued to assert ownership supporting C&S's unlicensed use and that results in ongoing liability of the PCT and Mr. Kors for directing it. If you claim rejection occurred as of the petition date, you better win the appeal because if you don't then all the defenses based on the license would be waived and you would admit willful infringement as to all the work on remand.

Your argument ignores the acknowledgement of the rejection by you and your client, including the filing of rejection damage claims. Your argument is based on the incorrect assertion that PCT or Fleming continued to assert ownership over the works following plan confirmation. There was no promise to deliver title to C&S "after tormenting Mr. Berry."

We believe the PCT and Mr. Kors assumed the duty to indemnify and support the infringers and have acted upon it to assist the infringers. I can't see how you can claim that the license has been rejected regardless of what Mr. Berry thought in his letter. In addition, the material support for the willful infringers and the accrued liability doesn't get fixed by us agreeing that the contract was rejected. What if this was a lease to a truck. The debtor gives the keys to the purchaser without lessor consent or cure and says, "Okay, here is your truck. Don't forget to keep up the lease payments." The purchaser won't pay. Your position is they get to keep the truck and the estate has no administrative liability. If Mr. Wynne has a case that says that I'd would be interested in seeing it.

Mr. Berry did not just "think" the license was rejected, he filed a claim in the bankruptcy court on that basis. You were his lawyer in that regard I believe. Your analogy doesn't work because Fleming did not sell, lease or transfer intellectual property to C & S and there were no "lease payments" required.

If what you are trying to do is to show that the license was rejected the works were delivered to C&S that won't work. It happened about a year prior to plan confirmation. At that point they were locked in because everything they got was Berry's and still is.

If you can let us know why it is so important I would be happy to consider it. If you want to discuss some accommodation regarding Mr. Kors I suggest that you stop making threats and commence some constructive dialogue. I think a joint motion in Delaware where we seek the return of the works or a criminal referral against C&S would be something I could use to move Mr. Berry.

Tim it is important because you are making wild accusations against the PCT and Mr. Kors as an individual that are without basis. It is important because you filed suit on behalf of Mr. Berry without basis and that is causing the PCT and Mr. Kors to incur the expense of responding. It is important because confidence and trust in the legal system requires that such claims not be made without some basis. I was not making threats in providing you with this information, I was simply providing you with information so you could understand why the claims should be withdrawn. We have no choice but to protect the PCT and Mr. Kors by seeking sanctions, a route I would prefer to avoid.

Tim

---

**Timothy J. Hogan**

Attorney at Law
1050 Bishop Street, No. 433
Honolulu, Hawaii 96813
Tel   (808) 382-3698
Fax.  (808) 356-1682
Email  tjh@timhogan.com
www   timhogan.com


NOTICE: This email may contain confidential information that may be subject to privilege. If you are not the intended recipient or received this message in error, please do not make any copies, contact the sender at tjh@timhogan.com and delete the message immediately.


**From:** Michael Baumann [mailto:mbaumann@kirkland.com]
**Sent:** Tuesday, January 29, 2008 2:42 PM
**To:** Tim Hogan
**Cc:** Erin Brady; Richard Wynne
**Subject:** Re:


Tim:

The Bankruptcy Court's July 27, 2004 confirmation order approving Fleming's Reorganization Plan approves Fleming's rejection of all of its remaining executory contracts. That same order also provides that any counter-parties to these rejected contracts had 30 days to file breach of contract damage claims in the Bankruptcy Court. Mr. Berry filed a claim for "rejection damages" in Fleming's bankruptcy case on October 4, 2004, an acknowledgment that the license agreement was rejected. In your December 24, 2004 letter, you specifically refer to *"Fleming Companies, Inc.'s rejection of the license in its Bankruptcy"*.

Mike

"Tim Hogan"
<tjh@timhogan.com>

01/29/2008 12:52 PM

To "Michael Baumann" <mbaumann@kirkland.com>, "Erin Brady" <ebrady@kirkland.com>, "Richard Wynne" <rwynne@kirkland.com>, "Jonathan Moskin" <jmoskin@ny.whitecase.com>
cc
Subject

Mike:

In your email you wrote:

Your response did not address the point I made. In both your December 2004 letter, and in court filings, you and Mr. Berry have acknowledged that the license agreement was rejected by the debtor. The claim that the license was not rejected in the bankruptcy is untrue.

Can you please direct me to the specific places in the record that you claim support your view that "the license agreement was rejected by the debtor" and where you claim we have acknowledged this fact. Then I will be able to further respond to your email.

Tim

---

**Timothy J. Hogan**
Attorney at Law
1050 Bishop Street, No. 433
Honolulu, Hawaii 96813
Tel     (808) 382-3698
Fax.    (808) 356-1682
Email   tjh@timhogan.com
www     timhogan.com

NOTICE: This email may contain confidential information that may be subject to privilege. If you are not the intended recipient or received this message in error, please do not make any copies, contact the sender at tjh@timhogan.com and delete the message immediately.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
*************************************************************

 
Pages from Fleming's Reply Brief.pdf   Pages from 9th Circuit Memo.pdf