UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAYNE BERRY,<br><br>    Plaintiff,<br><br>vs.<br><br>DEUTSCHE BANK TRUST COMPANY AMERICAS (FKA BANKERS TRUST COMPANY) and JP MORGAN CHASE BANK in their separate capacities and as agents for the pre- and post-petition lenders of Fleming Companies, Inc.; GENERAL ELECTRIC CAPITAL CORPORATION; C&S WHOLESALE GROCERS, INC.; THE POST-CONFIRMATION TRUST OF FLEMING COMPANIES, INC.; ROBERT KORS; CORE-MARK HOLDINGS INC. and DOES 1 to 200<br>,<br>    Defendants. | Case No. 01:07 CV 7634 (WHP)<br>ECF Case |

**AFFIDAVIT OF LEX R. SMITH IN SUPPORT OF THE PCT'S AND ROBERT KORS' <u>MOTION FOR SUMMARY JUDGMENT</u>**

K&E 12471358.1

## AFFIDAVIT OF LEX R. SMITH

I, LEX R. SMITH, testify as follows:

1. I am co-counsel of record for the Post Confirmation Trust in Case No. 03-00385 SOM. I am also counsel of record to C&S Wholesale Grocers, Inc. in that same proceeding. I am not counsel to Robert Kors in his personal capacity.

2. This affidavit addresses the allegations Mr. Berry has made against the Fleming Post Confirmation Trust (the "PCT") and Robert Kors in Counts VI-X and Count XII of his Second Amended Complaint.

3. In Counts VI through IX of the Second Amended Complaint, Mr. Berry alleges that, acting on behalf of the PCT, Robert Kors and C&S, I brokered a deal whereby one or all of these parties paid or promised to pay funds or other consideration to Mr. Berry's former counsel, Lynch Ichida Thompson Kim & Hirota ("Lynch Ichida"), to breach its contract with and duties relating to Mr. Berry. This is false.

4. Mr. Hogan notified the Hawaii District Court that he was leaving his firm Lynch Ichida in or about July 2007. After he did so, and in my capacity as counsel for C&S, I had a conversation with the managing partner of that firm, Wesley Ichida regarding his request to postpone a motion that I had on the calendar for the following Monday. In the course of that conversation, I asked him, in words or substance, "is your attorney lien for sale?" Mr. Ichida responded, in words or substance, "we thought of that too." I have had no further discussions with Mr. Ichida or any other member of Mr. Hogan's former law firm about this issue. I did not pay or agree to pay any money to Lynch Ichida for any attorney lien Lynch Ichida may have with respect to Mr. Berry and no one to my knowledge has paid or agreed to pay anything for such an attorney lien.

5. I have no knowledge of any of the specifics of the past or current relationships that Messrs. Hogan and Berry have with Mr. Hogan's former law firm, including the existence or terms of an attorney-client retainer agreement between Lynch Ichida and Mr. Berry, whether Lynch Ichida breached any such agreement, whether a fiduciary duty existed among the parties,

if or when that fiduciary duty ended, or whether Lynch Ichida breached its fiduciary duty to Berry. I certainly never asked or suggested that anyone at Lynch Ichida breach any duty to Mr. Berry.

6. To the best of my knowledge, no one has paid or promised to pay or offered to pay any funds or other consideration to the Lynch Ichida firm or its lawyers or anyone acting on their behalf in connection with the Wayne Berry matter.

7. Neither the PCT nor anyone purporting to act on its behalf directed or authorized me to pay, promise to pay or offer to pay any funds or other consideration on its behalf to the Lynch Ichida firm or its lawyers or anyone acting on their behalf, nor did I do so.

8. Similarly, neither Robert Kors nor anyone purporting to act on his behalf directed or authorized me to pay, promise to pay or offer to pay any funds or other consideration on his behalf to the Lynch Ichida firm or its lawyers or anyone acting on their behalf, nor did I do so.

9. Similarly, neither C&S nor anyone purporting to act its behalf directed or authorized me to pay, promise to pay or offer to pay any funds or other consideration on its behalf to the Lynch Ichida firm or its lawyers or anyone acting on their behalf, nor did I do so.

10. To the best of my knowledge, no one has ever entered into or promised to enter into a settlement agreement with the Lynch Ichida firm or its lawyers or anyone acting on their behalf relating to Mr. Berry.

11. Neither the PCT nor anyone purporting to act on its behalf directed or authorized me to enter into or promise to enter into a settlement agreement on its behalf with the Lynch Ichida firm or its lawyers or anyone acting on their behalf relating to Mr. Berry, nor did I do so.

12. Similarly, neither Robert Kors nor anyone purporting to act on his behalf directed or authorized me to enter into or promise to enter into a settlement agreement on his behalf with the Lynch Ichida firm or its lawyers or anyone acting on their behalf relating to Mr. Berry, nor did I do so.

13. Similarly, neither C&S nor anyone purporting to act on its behalf directed or authorized me to enter into or promise to enter into a settlement agreement on its behalf with the

Lynch Ichida firm or its lawyers or anyone acting on their behalf relating to Mr. Berry, nor did I do so.

14. To the best of my knowledge, no one has purchased or received anything of value from the Lynch Ichida firm or its lawyers or anyone acting on their behalf relating to Mr. Berry.

15. Neither the PCT nor anyone purporting to act on its behalf directed or authorized me to purchase or receive anything on its behalf from the Lynch Ichida firm or its lawyers or anyone acting on their behalf relating to Mr. Berry, nor have I done so.

16. Similarly, neither Robert Kors nor anyone purporting to act on his behalf directed or authorized me to purchase or receive anything on his behalf from the Lynch Ichida firm or its lawyers or anyone acting on their behalf relating to Mr. Berry, nor have I done so.

17. Similarly, neither C&S nor anyone purporting to act on C&S's behalf directed or authorized me to purchase or receive anything on its behalf from the Lynch Ichida firm or its lawyers or anyone acting on their behalf relating to Mr. Berry, nor have I done so.

18. Finally, I have never received any funds or other consideration intended for myself or any other person or party from the Lynch Ichida firm or anyone acting for the firm or its lawyers with respect to the Berry matters or any other matter.

19. In Count X of his Second Amended Complaint, Mr. Berry alleges that Mrs. Berry instituted a divorce action against Mr. Berry in the State of Hawaii and served him with process. He alleges that I -- acting on behalf of one or all of the PCT, Robert Kors or C&S -- had something to do with this. I did not.

20. Neither the PCT nor anyone purporting to act on its behalf directed or authorized me to advise Mrs. Berry with respect to her divorce proceeding on his behalf, nor did I do so.

21. Neither Robert Kors nor anyone purporting to act on his behalf directed or authorized me to advise Mrs. Berry with respect to her divorce proceeding on his behalf, nor did I do so.

22. Neither C&S nor anyone purporting to act on its behalf directed or authorized me

-4-

to advise Mrs. Berry with respect to her divorce proceeding on its behalf, nor did I do so.

23. Neither the PCT nor anyone purporting to act on its behalf directed or authorized me to hire anybody to serve Mr. Berry with process in the divorce proceeding, nor did I do so.

24. Neither Robert Kors nor anyone purporting to act on his behalf directed or authorized me to hire anybody to serve Mr. Berry with process in the divorce proceeding, nor did I do so.

25. Neither C&S nor anyone purporting to act on its behalf directed or authorized me to hire anybody to serve Mr. Berry with process in the divorce proceeding, nor did I do so.

26. Neither the PCT nor anyone purporting to act on its behalf directed or authorized me to pay or promise to pay anybody to serve Mr. Berry with process in the divorce proceeding, nor did I do so.

27. Neither Robert Kors nor anyone purporting to act on his behalf directed or authorized me to pay anybody to serve Mr. Berry with process in the divorce proceeding, nor did I do so.

28. Neither C&S nor anyone purporting to act on its behalf directed or authorized me to pay or promise to pay anybody to serve Mr. Berry with process in the divorce proceeding, nor did I do so.

29. In fact, I had no part at all in Mrs. Berry's decision to seek a divorce from Mr. Berry, nor did I participate in causing the service of her divorce complaint. I did receive a phone call from someone (I do not remember whom) who wanted to know how to effectuate service on Mr. Berry in the divorce proceeding. I told the caller the time and date I understood Mr. Berry and his counsel were to be at court to attend a settlement conference. To my knowledge, no one attempted or effectuated service at that settlement conference.

30. Sometime in mid-August 2007, I received a telephone call from Mrs. Berry's counsel informing me that Mr. Berry had been served at a restaurant in Florida with some sort of process in his divorce action. I had no prior knowledge of or part in this service of process.

31. Mr. Berry also alleges that Mr. Baumann, the PCT's counsel, directed me to take

a judgment debtor examination of Mr. Berry for the purpose of putting Mr. Berry in fear for his personal safety or the safety of his property in violation of the Hobbs Act. This is untrue.

32. In the course of my representation of C&S, I obtained a judgment against Mr. Berry for approximately $84,000 in attorneys' fees incurred defending Mr. Berry's claims. In May of 2007, in the further course of my representation of C&S I noticed a judgment debtor examination of Mr. Berry.

33. Mr. Berry's counsel of record, Timothy Hogan, was served with the Court's order for Berry to appear for the judgment debtor examination, but his counsel insisted that personal service on Mr. Berry was required. I was therefore required to file a motion to compel Mr. Berry's appearance; the Magistrate Judge's order granting my motion to compel was entered in late July of 2007, but Mr. Berry appealed to the U.S. District Judge. U.S. District Judge Susan O. Mollway affirmed the Magistrate's order and on August 13, 2007 Mr. Berry appeared for his examination.

34. On August 13, 2007, Mr. Berry appeared in the Magistrate Judge's courtroom for his judgment debtor examination. Thereafter, with Mr. Berry's agreement and for the convenience of the Court, we adjourned to my office, where I took the examination, in the presence of a court reporter. Contrary to the allegations in Mr. Berry's Second Amended Complaint, I did not take the examination with any intent of putting Mr. Berry in fear for his personal safety or the safety of his property. Neither Mr. Baumann nor anyone else directed me to do so. Mr. Baughmann was not present at the examination; he did not in any way participate in the examination; he never told me any questions to ask at the examination. At no time during the examination did Mr. Berry appear to be in any fear, nor did he or his attorney ask to adjourn the examination to seek relief from the Magistrate Judge.

35. Finally, Mr. Berry alleges that the PCT, Robert Kors and others have paid or offered to pay me funds or other consideration to use my position as a member of the Honolulu Ethics Commission to influence law enforcement officials to ignore crimes that Fleming and C&S are allegedly committing in Hawaii. This is false. I have never exerted such influence, nor

-5-
AFFIDAVIT OF LEX R. SMITH IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT

could I. To the best of my recollection there are two matters involving law enforcement that have come before the ethics commission during the entire period that I have been a commissioner. One involved a non-attorney employee of the Honolulu prosecutor's office who attempted to gain an advantage in a disagreement with her neighbor by pretending to check the neighbor's license plate. The other involved a question of whether Honolulu police officers can hold active real estate licenses. Obviously, neither of these things had anything to do with Mr. Berry or his software.

36.  I have not received any money from the PCT, Robert Kors, C&S or anyone to exert influence on law enforcement officials, nor have I actually exerted any pressure on law enforcement officials.

37.  Attached hereto as Exhibit "A" is a true and correct copy of a letter dated January 24, 2008 that I received from the State of Hawaii Office of Disciplinary Counsel requesting that I respond to the allegations made against me by Mr. Timothy Hogan.

38.  Attached hereto as Exhibits "B" and "C" are true and correct copies of the two enclosures that were enclosed with the ODC's letter to me.

39.  Attached hereto as Exhibit "D" is a true copy of my response which I sent to the ODC on or about January 29, 2008 to the ODC.

So sworn under penalty of perjury under the laws of the United States of America in Honolulu, Hawaii on February 25, 2008.

_____
Lex R. Smith

Subscribed and sworn to before me this
25th day of February, 2008.

_____
Name: TAMMY M. YOSHIMURA
Notary Public, State of Hawaii
My commission expires: 9-22-2008

L.S.

-6-
AFFIDAVIT OF LEX R. SMITH IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT