# Timothy J. Hogan

**Attorney at Law**

1050 Bishop Street, Number 433
Honolulu, Hawaii 96813
Telephone (808) 382-3698
Facsimile (808) 356-1682
Email tjh@timhogan.com

OFFICE OF DISCIPLINARY COUNSEL

**R E C E I V E D**

18 December 2007

2:30 pm

HAND DELIVERED

December 18, 2007

**CONFIDENTIAL**

**VIA HAND DELIVERY**

Office Of Disciplinary Counsel
1132 Bishop Street
Suite 300
Honolulu, Hawaii 96813

Re:     Wesley Ichida, Steven Kim, Paul Lynch, Maile Hirota
and William Thompson.

Dear Disciplinary Counsel:

I have attempted to investigate what I believe may be violations of the duty of loyalty, obtaining interest in litigation adverse to a client, conversion of client funds and the failure of other counsel who have knowledge of these violations of the DR's to report them.

In or about July this year, I was employed as Counsel in the firm of Lynch Ichida Thompson Kim & Hirota ("LITK&H" or the "Firm"). I was an employee of LITK&H, and neither a partner, shareholder nor director.

On or about Friday July 13, 2007, Paul Lynch came to my office to discuss Firm related financial matters. At that time I was compensated on a straight salary with a set percentage bonus for any annual collections over $185,000. For many years my time was taken by an hourly case for a large institutional client that produced the majority of my receivables. In addition I had a contingency case that had first commenced in 2001 for a copyright owner and software developer, Wayne Berry. I have twice won judgments regarding the infringement of his works. As luck would have it just three weeks after the jury verdict in the first case the company filed for Chapter 11 Bankruptcy protection.

In the July 13, 2007 meeting, Paul Lynch informed me that effective immediately the Firm was putting me on what I would describe as eat-what-you-kill compensation. The Firm wanted to continue to seek to be paid in the even the contingency fee based Berry matter was concluded successfully, but could no longer afford to pay my salary in the interim in the light of my lower hourly collections. I asked to have the weekend to consider the proposal.

Exhibit B

Office of Disciplinary Counsel
**CONFIDENTIAL**
December 18, 2007
Page 2

After discussion with my spouse and recognizing that I would likely go months with little or no compensation, on the following Monday morning July 16, 2007, I tendered my resignation to Wesley Ichida. My intention was to work until the end of the month and attempt to complete certain pending matters including the filing of fee related motions in cases that I had pending including the successful appeal of the first case in the Court of Appeals for the Ninth Circuit.

After a short time, the morning of the 16th, Paul Lynch and Wes Ichida, the two former Case & Lynch partners who generally dealt with business matters came to my office and in a fit of anger Paul Lynch said that he wanted me out right away.

I went for a walk to address the stress and later in the day, after lunch time as I recall, both Wes Ichida and Paul Lynch acted like Paul had never blown up and they said that they wanted me to stay to finish things up. Their change in demeanor was striking.

They immediately stated that they could not keep the Berry contingency matter because with my leaving they would not have an attorney who could competently work the case. They contacted the Client and informed him they were voluntarily withdrawing from his case. Despite what appeared to be the voluntary abandonment of the client's matter, the Firm continued to claim that they were entitled to be paid under the contingent fee agreement based on their claim to having a lien. I have researched the matter and it seemed well settled that a lien only attaches to money actually produced under the contingent fee agreement and in no case could I find support for a lien under the circumstances of voluntary withdrawal under these circumstances let alone the transfer of such a lien in a secret arrangement with the opposing counsel.

For some time after that, Wes Ichida tried to negotiate an agreement where I would agree to complete the matter and share the contingency fee with the Firm 50/50. I was seriously considering the arraignment but the negotiations got bogged down on some of the terms and on the issue of whether all the LITK&H shareholders were in agreement. I wanted an estoppel from all so that there could be no claim that Wes Ichida was acting without authority but William Thompson did not provide the required estoppel. At first I thought Mr. Thompson was attempting to create a claim that would result in my losing my share of the fee but in retrospect I believe that he may have been unwilling to put his name on what the other members of the Firm were planning.

In the past few weeks in the process of proposing settlement with the opposing counsel Richard Wynne of Kirkland & Ellis in Los Angeles, LITK&H became an issue. I could not see why Kirkland & Ellis would care about whether Mr. Berry had a dispute with LITK&H over their right to be paid after their voluntary withdrawal.

After discussing the matter at length with Mr. Berry he and I conclude that sometime while the

Office of Disciplinary Counsel
**CONFIDENTIAL**
December 18, 2007
Page 3

Firm was still attorney of record for Mr. Berry, it negotiated a payment based on their rights to payment under the contingent fee agreement with the adverse party and did not disclose it to Mr. Berry. I believe the Firm agreed to keep this agreement secret to permit the opposing party to assert what the Firm believed it had the right to assert, a claim in form of an attorney's lien to be able to spring the lien on the Client and assert rights over his intellectual property. It is important to note that the first case the conduct was willful that if for financial gain is a serious federal crime. I believe that such conduct continues as of this writing. I also believe that the offering of this compensation constitutes commercial bribery under Hawaii law.

I believe that the Firm intended to induce me to unknowingly enter into an agreement, the effect of which was adverse to our client's interest, by fraudulently inducing me to execute the agreement knowing that the Firm had made a secret deal with opposing counsel to whom my performance as attorney would be due. Arguably, they engaged in an undisclosed fee split with the opposing counsel who sought to be paid from the money obtained in settlement. I have attempted to find guidance through research to find another instance of such conduct and have not found anything that would indicate that such secret agreements are permitted. I believe that the public confidence in the legal profession would be lost if attorneys were free to cut side deals with the opposition and keep them secret to assist the opposition in their desire to continue what amounts to ongoing criminal conduct directed at the Firm's own client.

The contingent fee agreement conditioned LITK&H's right to be paid on their recovery of money in the case that, under the terms of the fee agreement, was to be shared with the client. Not only did the Firm not share the money I believe it received with the client, they have resisted my attempts to discover the facts surrounding this matter claiming that their right to collect accounts receivable is "a Firm matter." I believe, but cannot yet prove, that the agreement was entered during the time that the Firm was still attorney of record for Mr. Berry and under a duty to communicate with him regarding his matters especially regarding matters intended to provide a strategic advantage to the opposing party. Instead, I believe they entered into an agreement to conceal the transaction from the client and me knowing that the client would act rely on their duty to disclose relevant facts and accept the agreement that they were negotiating without being aware of the facts then known to the Firm and attempting to deceive me for the purpose of causing me to become the unwitting agent of my own client's demise.

I have exhausted all means that I presently have to obtain information regarding this affair from LITK&H and request that the Office of Disciplinary Counsel commence a formal investigation regarding the matter. I believe that in addition to Wesley Ichida and Paul Lynch, the above other members of the Firm were aware of the transaction, and have taken no action to alleviate the damage done to their client and if there was a payment have accepted the benefit of the funds personally. Lex Smith, I believe, induced the conduct with the possible assistance of other

Office of Disciplinary Counsel
**CONFIDENTIAL**
December 18, 2007
Page 4

attorneys.  I will of course cooperate fully with your office.

Sincerely,

Timothy J. Hogan

cc: Wayne Berry