# Timothy J. Hogan

**Attorney at Law**

1050 Bishop Street, Number 433
Honolulu, Hawaii 96813
Telephone (808) 382-3698
Facsimile (808) 356-1682
Email tjh@timhogan.com

January 9, 2008

**CONFIDENTIAL**

OFFICE OF DISCIPLINARY COUNSEL

**R E C E I V E D**

9    January   2008
DAY      MONTH      YEAR

TIME   8:00am   BY   lu

HAND DELIVERED

Charles H. Hite, Esq.
Deputy Chief Disciplinary Counsel
1132 Bishop Street
Suite 300
Honolulu, Hawaii 96813

**VIA HAND DELIVERY**

Re: Lex R. Smith and your Letter dated December 26, 2007.

Dear Deputy Chief Disciplinary Counsel Hite:

I am writing in response to your letter to me dated December 26, 2007 in which you requested a response by January 9, 2008 regarding what, if any, evidence I had to support my belief that Lex Smith had engaged in conduct in violations of the DR's related to Mr. Berry, specifically whether Mr. Smith acted to induce a breach of duty related to Mr. Berry's attorneys Lynch Ichida Thompson Kin & Hirota ("LITK&H"). To date I have received your December 26, 2007 letter regarding Mr. Smith and the carbon copies of your letters to Wesley Ichida, William Thompson, Paul Lynch, Maile Hirota and Steven Kim. I have received no other correspondence from your office to date related to my letter dated December 18, 2007. If any other correspondence was directed to me, please advise me and I will respond immediately.

To address your letter, attached as Exhibit "A" is a true and correct copy of an email dated December 17, 2007 from Mr. Ichida to me where on page 2 of 5 he refuses to confirm the fact that Mr. Smith had made an offer to purchase LITK&H's purported lien related to Mr. Berry. In response by my question, "Was there any assignment of the firm's claimed right to be paid as the result of their contingency fee agreement? If so, was any money paid to the firm?" Mr. Ichida responded: "Tim: Whether or not we have assigned Berry's or any other client's receivable is the Firm's business." I have highlighted the response and other relevant parts of the Exhibits in red. In contrast to the Firm's earlier position where it had claimed a right to collect upon the contingency fee agreement, this email only makes a claim for unpaid costs. The Firm's right to collect upon the lien is conspicuously absent.

When presented with the claim that Mr. Smith had made an earlier offer to purchase the Firm's Berry contingent fee agreement, Mr. Ichida wrote: "Nevertheless, I cannot and will not confirm

Exhibit C

Office of Disciplinary Counsel
**CONFIDENTIAL**
January 9, 2008
Page 2

that "Lex Smith made an offer to purchase the purported lien rights."  See Exhibit A at pages 3 and 4 of 5.  The apparent denial regarding Mr. Smith's offer contained in Exhibit "A" is contradicted by the attached Exhibits "B", "C" and "D" that are the earlier emails dated July 27, 2007 from Mr. Ichida to Wayne Berry where he informs Mr. Berry that Mr. Smith made the offer that in the December 17, 2007 email Mr. Ichida inexplicably would not then confirm was ever made.

In Exhibit "D" Mr. Ichida concedes that he informed Mr. Smith that Mr. Ichida was not clear whether Mr. Smith's proposal "would be a breach of our fiduciary duty." If Mr. Ichida acted to accept Mr. Smith's offer, that he claims would be a matter of Firm business that he need not share with the client, sometime from July 27, 2007 to December 17, 2007, Mr. Ichida had a change of heart regarding what he had perceived was his ethical obligation to Mr. Berry in regard to this matter.  Exhibit "A" evidences that the Firm no longer claims to have a lien on the Berry contingent fee expectancy.  Exhibits "B", "C" and "D" evidence that Mr. Smith made the offer and I believe a reasonable conclusion follows from Mr. Ichida's refusal to deny the fact of the transaction that Mr. Smith eventually persuaded Mr. Ichida to accept his offer for money and assigned the contingent fee agreement to Mr. Smith.  At a minimum it evidences Mr. Ichida's agreement to conceal Mr. Smith's proposal from discovery by Mr. Berry.  When Mr. Ichida told Mr. Smith that he had questions regarding the ethics of such an agreement the matter should have been dropped.  My understanding of Hawaii law is that an offer to an agent to breach a fiduciary duty is serious violation of Hawaii law.[1]

It is important to note that the entire purpose of Lynch Ichida Thompson Kim & Hirota's ("LITK&H") long representation of Mr. Berry was to protect his copyrights from an unprecedented assault from willful infringers represented by Lex Smith.  Mr. Berry never

---

[1]    (1) A person commits the offense of commercial bribery if:

(a)    He confers or offers or agrees to confer, directly or indirectly, any benefit upon:

(i)    An agent with intent to influence the agent to act contrary to a duty to which, as an agent, he is subject

(a)    "Agent" means:

    . . .

(iii)    A lawyer,

(3)    Commercial bribery is a misdemeanor, except in the event that the value of the benefit referred to in subsection (1) exceeds $1,000, in which case commercial bribery shall be a class C felony.

Hawaii Rev Stat. §708-880 Commercial bribery (emphasis added).

Office of Disciplinary Counsel
**CONFIDENTIAL**
January 9, 2008
Page 3

authorized any transfer of any of his property or contract obligations or rights to anyone but especially not to Lex Smith nor his clients. This is in no small part due to the proven fact the Mr. Smith is the person who evidence had shown had represented a company that committed numerous acts of willful infringement against Mr. Berry. A recent 9th Circuit Memorandum Opinion dated July 5, 2007, has finally established that Mr. Smith's client was engaged in willful infringement. The record in court proceedings demonstrates that the persons who engaged in the conduct did so under advice of counsel. Mr. Smith was the attorney representing the infringer. Willful infringement for commercial advantage or personal financial gain is a federal crime. See the Copyright Act, 17 U.S.C. § 506 (a).

Had LITK&H actually produced a fund of money on behalf of Mr. Berry then they could have claimed a right to that fund while they represented Mr. Berry. If Mr. Berry then discharged them they could assert their right as a charging lien. Their right to be paid was never put in jeopardy by Mr. Berry's refusal to honor his agreement. LITK&H however, chose to voluntarily terminate the representation without producing any recovery. In late July Mr. Ichida and his partners tried to induce me into accepting an agreement to collect their contingent fee by continuing to pursue the claims. My concern remains that they were engaged in advancing a secret deal with the opposing party that was not disclosed to Mr. Berry who at the time was, and still likely is, their client. Mr. Ichida apparently discussed this agreement with Mr. Smith as evidenced by Exhibit "D." It is my understanding that even after withdrawal, and there has not been a withdrawal in all the Berry matters, an attorney has ongoing duties to the client that their current position appears to violate. At no time did Mr. Ichida inform me or Mr. Berry that he had the right to assign this agreement to Mr. Smith.

In December, when I attempted to investigate whether there had been an actual payment made to LITK&H, Mr. Ichida denied his earlier admission that Mr. Smith had made the offer to purchase LITK&H's purported lien claim. This denial was in the face of the clear evidence Mr. Ichida had sent to Mr. Berry that had conceded that Mr. Smith had in fact made the offer. This combined with Mr. Ichida's refusal to simply state that no such payment was made is what prompted the complaint. His statement that what he did with firm "receivables" was a firm matter begs the question, "what receivable?" The retainer was based on a contingent fee. Mr. Ichida confirmed that the firm still claims a right to be paid for its in-house costs. If Mr. Berry recovered any money on LITK&H's watch this would likely be subject to their claimed percentage under the contingent fee agreement. If the Firm recovered money based on the contingent fee agreement then Mr. Berry has rights to the money. Mr. Berry also has a claim of an expert that has been awaiting payment that would appear to have also been disregarded by the effect of this agreement if the money was paid to the firm in secret.

My belief is well founded upon the evidence, including circumstantial evidence that I will not dwell on here, that I believe is sufficient for a finding that Mr. Smith induced Mr. Ichida and his

Office of Disciplinary Counsel
**CONFIDENTIAL**
January 9, 2008
Page 4

associates to breach the fiduciary duty that Mr. Ichida informed Mr. Smith was implicated by his offer. I concede that I am not clear whether there is sufficient evidence for disciplinary proceedings. At a minimum, getting Mr. Ichida to disclose the ongoing attorney-client discussions that were made necessary by their withdrawal appears to be a breach of the duty to maintain confidences and secrets. In a letter that was sent to Mr. Ichida on July 26, 2007 before Smith began to negotiate the sale of the contingent fee agreement, Mr. Ichida was directed by the client to have no such discussions with anyone. *See* Exhibit "E." As evidence by Exhibits "B", "C" and "D", Mr. Ichida continued to discuss these on going attorney-client matters with Mr. Smith. I remain of the belief that the offer to LITK&H to breach its duty to Mr. Berry, at a minimum, to inform him of all matters related to his case, that is conceded in the December emails where Mr. Ichida claims that whether they sold his case to the opposition is none of his business, constitutes a violation of the DR's duty of loyalty.

Any claim that Mr. Smith's acts were not done with malice directed towards Mr. Berry is negated by the long history of acts related to Mr. Berry. Mr. Smith and/or attorneys under his authority have communicated with Mr. Berry's estranged spouse starting no later than 2005. In my view they would have necessarily entered into the areas protected by the spousal privilege. No notice to Mr. Berry or his counsel ever preceded these contacts. This fact is evidenced by Kobayashi Sugita & Gota's time records filed in the US District Court. Exhibit "F."

In addition, I have spoken with Mr. Berry's estranged spouse's divorce attorney Cheryl Brawley, who told me that her client, had told her that Lex Smith had communicated with her (Mrs. Berry) after telling Mrs. Berry that he (Mr. Smith) represented Mr Berry.

Mr. Smith has conceded to having communications with Ms. Brawley on several occasions. I believe the evidence shows that Lex Smith working with his co-counsel Michael Baumann, a principal partner in the Los Angeles office of Kirkland & Ellis who, with Mr. Smith, together encouraged the advance of a divorce complaint by promising Mrs. Berry that she would share in money that they would pay if an equitable division gave her rights in Mr. Berry's copyrights. I believe that they were under the impression that such a division could cure the ongoing criminal infringement in which their clients had participated. Their apparent goal was to obtain interests in Mr. Berry's copyrights to then defend the ongoing criminal infringement.

As further proof of Mr. Smith's plan to obtain an interest in the Berry divorce proceeding, on August 13, 2007, Lex Smith, compelled Mr. Berry to travel from Florida to Hawaii to conduct an examination. The next day his co-counsel Michael Baumann appeared at the West Palm Beach airport the following day to identify Mr. Berry upon his return to Florida to a purported process server. The process server then followed Mr. Berry from the airport to effect service of the <u>Berry v. Berry</u> already dismissed divorce complaint within minutes of Mr. Berry's transit through the West Palm Beach Airport where Mr. Berry identified Mr. Baumann, Mr. Smith's co-counsel,

Office of Disciplinary Counsel
**CONFIDENTIAL**
January 9, 2008
Page 5

waiting at a point in the terminal where all departing passengers had to pass.

Mr. Ichida's denial that Mr. Smith made the offer evidences Mr. Smith's complicity in LITK&H's breach of duty, that includes withholding material facts related to the representation, self-dealing, failure to maintain client funds and obtaining an interest in the client's matter adverse to the client. What possible reason would Mr. Ichida have to make the false statement about the Smith offer other than to cover for Mr. Smith?

This case is on all fours with a classic act of *champertry* that from my research I understand was originally derived from a fact pattern involving a false claim raised against a person's property by a third party who then sold the claim to a powerful noble who, because of his position, had little trouble enforcing it in a common law court. The classic officious intermeddler, Mr. Smith, a powerful public official and his co-counsel at Kirkland & Ellis, didn't need to have a real claim against Mr. Berry but only one that passed a "giggle test" to cause mischief in regard to Mr. Berry attempts to be free from criminal infringement. By inducing LITK&H to become an instrument against their own client by, at a minimum, not disclosing the transaction, Smith would effectively obtain one of the keys to his plan to continue to advance the infringement. This is *champertry* enhanced by commercial bribery and criminal infringement.

If this conduct is permissible then a plaintiff's attorney would be free to advertise for contingency plaintiff clients, then secretly sell them out to the other side or their attorney when the plaintiff's attorney voluntarily abandon his/her case but claims a charging lien. I can't imagine that the DR's are powerless to prevent this conduct from becoming an accepted practice in our profession both from the prospective of the seller and buyer attorney's. The evidence I have presented proves Mr. Smith made the offer. Contrary to Mr. Ichida, whether or not a plaintiff's attorney has actually entered into such an agreement related to the representation is not something that can be kept secret from the client.

Sincerely,

Timothy J. Hogan

Enclosures - Exhibits A to F

# Exhibit
# A

**CONFIDENTIAL**

**Tim Hogan**

| | |
|---|---|
| **From:** | Tim Hogan |
| **Sent:** | Tuesday, December 18, 2007 10:04 AM |
| **To:** | 'WayneBerry@FCS2003.com' |
| **Subject:** | FW: Berry Matters |

---

**Timothy J. Hogan**
Attorney at Law
1050 Bishop Street, No. 433
Honolulu, Hawaii 96813
Tel      (808) 382-3698
Fax.     (808) 356-1682
Email   tjh@timhogan.com
www    timhogan.com

NOTICE: This email may contain confidential information that may be subject to privilege. If you are not the intended recipient or received this message in error, please do not make any copies, contact the sender at tjh@timhogan.com and delete the message immediately.

**From:** Wesley W. Ichida [mailto:wes@loio.com]
**Sent:** Tuesday, December 18, 2007 9:54 AM
**To:** Tim Hogan
**Cc:** Steven J. Kim; Paul A. Lynch; Maile M. Hirota; WFT
**Subject:** RE: Berry Matters

Please see my e-mails of 3:36pm and 4:46p.m of 12/17/07.

**From:** Tim Hogan [mailto:tjh@timhogan.com]
**Sent:** Monday, December 17, 2007 9:04 PM
**To:** Wesley W. Ichida
**Cc:** Steven J. Kim; Paul A. Lynch; Maile M. Hirota; WFT; WayneBerry@FCS2003.com
**Subject:** RE: Berry Matters
**Importance:** High

LLITK& Shareholders:

In regard to your claim to be owed for costs, you agreed with Mr. Berry that in exchange for a payment of, as I recall $5,000, the payment for these remaining amounts, that Berry disputed some time ago, would be out of funds collected from the case either from settlement or judgment. Because you have collected funds but converted them to your own without disclosing them to your client any right you may have had to recover these costs is gone. If you have been paid your claim for these funds is fraudulent. If you believe that the amount you collected was such that you are still entitled to be paid you costs, please disclose the amount that you have recovered so that I may advise Mr. Berry. Send a copy of the check and/or wire transfer to my attention. Barring that, on Mr. Berry's behalf I demand that you immediately return his retainer. Advise me by 9:00 am of your intentions.

Tim Hogan

**CONFIDENTIAL**

**Timothy J. Hogan**
Attorney at Law
1050 Bishop Street, No. 433
Honolulu, Hawaii 96813
Tel    (808) 382-3698
Fax.    (808) 356-1682
Email    tjh@timhogan.com
www    timhogan.com

NOTICE: This email may contain confidential information that may be subject to privilege. If you are not the intended recipient or received this message in error, please do not make any copies, contact the sender at tjh@timhogan.com and delete the message immediately.

**From:** Wesley W. Ichida [mailto:wes@lolo.com]
**Sent:** Monday, December 17, 2007 3:36 PM
**To:** Tim Hogan
**Cc:** Steven J. Kim; Paul A. Lynch; Maile M. Hirota; WFT
**Subject:** RE: Berry Matters

> Tim: Whether or not we have assigned Berry's or any other client's receivable is the Firm's business. Suffice it to say that Berry still owes us for the costs advanced, the amount of which you are aware. I have other work to do than to answer your questions all day. Therefore, I will not respond to any more of your questions, comments, or allegations. However, do not take my lack of response as agreement or acquiescence to anything you may say to me or ask me. Wes

**From:** Tim Hogan [mailto:tjh@timhogan.com]
**Sent:** Monday, December 17, 2007 3:20 PM
**To:** Wesley W. Ichida
**Cc:** Steven J. Kim; Paul A. Lynch; Maile M. Hirota; WFT
**Subject:** RE: Berry Matters

Was there any assignment of the firm's claimed right to be paid as the result of their contingency fee agreement? If so, was any money paid to the firm?

**Timothy J. Hogan**
Attorney at Law
1050 Bishop Street, No. 433
Honolulu, Hawaii 96813
Tel    (808) 382-3698
Fax.    (808) 356-1682
Email    tjh@timhogan.com
www    timhogan.com

NOTICE: This email may contain confidential information that may be subject to privilege. If you are not the intended recipient or received this message in error, please do not make any copies, contact the

**CONFIDENTIAL**

sender at tjh@timhogan.com and delete the message immediately.

**From:** Wesley W. Ichida [mailto:wes@loio.com]
**Sent:** Monday, December 17, 2007 3:09 PM
**To:** Tim Hogan
**Cc:** Steven J. Kim; Paul A. Lynch; Maile M. Hirota; WFT
**Subject:** RE: Berry Matters

Tim:  Mr. Berry is still responsible for the unreimbursed costs advanced by this Firm.
Wes

**From:** Tim Hogan [mailto:tjh@timhogan.com]
**Sent:** Monday, December 17, 2007 2:16 PM
**To:** Wesley W. Ichida
**Cc:** Steven J. Kim; Paul A. Lynch; Maile M. Hirota; WFT
**Subject:** RE: Berry Matters

Wes:

I don't need you to confirm the Smith offer. I already have the proof.  What I need from you is a statement confirming whether the assignment occurred.  The next question is whether the firm received money from the Berry matters, when, from whom and how much. You may recall that you are holding client funds that belong to Mr. Berry. If you have no claim you have no right to hold them.  Did you assign any of your rights to anyone? That is a simple yes or no question. If the answer is yes, did you get paid?  If the answer is yes, who paid, how much did they pay and when was it received?

Tim Hogan

---

**Timothy J. Hogan**
Attorney at Law
1050 Bishop Street, No. 433
Honolulu, Hawaii 96813
Tel    (808) 382-3698
Fax.   (808) 356-1682
Email  tjh@timhogan.com
www   timhogan.com

NOTICE: This email may contain confidential information that may be subject to privilege.  If you are not the intended recipient or received this message in error, please do not make any copies, contact the sender at tjh@timhogan.com and delete the message immediately.

**From:** Wesley W. Ichida [mailto:wes@loio.com]
**Sent:** Monday, December 17, 2007 2:01 PM
**To:** Tim Hogan
**Cc:** Steven J. Kim; Paul A. Lynch; Maile M. Hirota; WFT
**Subject:** RE: Berry Matters

Tim: I do not understand how LJTK&H's claim for an attorneys' fees lien for cases other than the Deutsche Bank case in N.Y. can be part of any claim in the NY case, even though you have not disclosed against whom and by whom the claim would be asserted.  Nevertheless, I cannot and will not confirm that "Lex Smith made an offer to

**CONFIDENTIAL**

purchase the purported lien rights." If you will recall our past discussion accurately instead of twisting things around in your mind to suit your purposes, you will understand why I will not, and indeed, cannot, confirm that statement. Wes

**From:** Tim Hogan [mailto:tjh@timhogan.com]
**Sent:** Monday, December 17, 2007 1:52 PM
**To:** Wesley W. Ichida
**Cc:** WayneFBerry@Hotmail.com; Steven J. Kim; Paul A. Lynch; Maile M. Hirota; WFT
**Subject:** RE: Berry Matters

Wes:

The "Claim" refers to any claim that LITK&H presently claims (disputed or otherwise) against Berry for costs and/or fees. If you have sold or in any way transferred any rights to such a claim or claims to anyone then please advise to whom and what was transferred and what if anything remains claimed to be owed to LITK&H.   Lex Smith made an offer to purchase the purported lien rights and I am checking to determine whether there was anything other than the Smith offer.

The New York case is the lender case regarding which LITK&H filed a withdrawal and waiver of lien rights.  I am proceeding to file a second amended complaint and am not at liberty to share the detailed contents with you at this time.

Tim Hogan

_____

**Timothy J. Hogan**
Attorney at Law
1050 Bishop Street, No. 433
Honolulu, Hawaii  96813
Tel     (808) 382-3698
Fax.    (808) 356-1682
Email   tjh@timhogan.com
www    timhogan.com

NOTICE: This email may contain confidential information that may be subject to privilege.  If you are not the intended recipient or received this message in error, please do not make any copies, contact the sender at tjh@timhogan.com and delete the message immediately.

**From:** Wesley W. Ichida [mailto:wes@lolo.com]
**Sent:** Monday, December 17, 2007 1:13 PM
**To:** Tim Hogan
**Cc:** WayneFBerry@Hotmail.com; Steven J. Kim; Paul A. Lynch; Maile M. Hirota; WFT
**Subject:** RE: Berry Matters

Tim:  Before I respond to your specific questions, I need some clarification:  What "claim" and against whom is the claim intended to be asserted?  What is the title of the New York lawsuit you are referring to?  I.e.: identify the parties.  Also, please identify the other claims being asserted by the parties.  Until these questions are fully answered and clarified, I cannot respond adequately or completely.  However, pending your

**CONFIDENTIAL**

response, I can tell you that you have misstated "the facts." Wes

**From:** Tim Hogan [mailto:tjh@timhogan.com]
**Sent:** Friday, December 14, 2007 10:51 AM
**To:** Wesley W. Ichida; Paul A. Lynch
**Cc:** WayneFBerry@Hotmail.com
**Subject:** Berry Matters

Dear Wes and Paul:

Recognizing that a lot of bad blood has been spilled I am still charged with prosecuting Mr. Berry's pending cases.

We have evidence that Lex Smith made an offer to purchase Lynch Ichida Thompson Kim & Hirota's purported interests in the Berry cases. I am filing an amended complaint in New York that will include this issue. I am writing to confirm that in regard to Mr. Berry's maters, any rights that may have existed to these matters have remained for all times a claim owned by Lynch Ichida Thompson Kim & Hirota and no agreement related to Mr. Berry's matters was ever entered into and that no such agreement is presently contemplated. Please advise me immediately if I have misstated the facts as they are known to Lynch Ichida Thompson Kim & Hirota.    Otherwise I will assert the claim as set forth herein.

Regards,


Tim Hogan


**Timothy J. Hogan**
Attorney at Law
1050 Bishop Street, No. 433
Honolulu, Hawaii  96813
Tel    (808) 382-3698
Fax.   (808) 356-1682
Email   tjh@timhogan.com
www    timhogan.com


NOTICE: This email may contain confidential information that may be subject to privilege.  If you are not the intended recipient or received this message in error, please do not make any copies, contact the sender at tjh@timhogan.com and delete the message immediately.

**CONFIDENTIAL**

# Exhibit B

CONFIDENTIAL

**EDI@YNLogistics.com**

From:       "Wesley W. Ichida" <wes@loio.com>
To:         <WayneBerry@FCS2003.com>
Sent:       Friday, July 27, 2007 8:18 PM
Subject:    RE: Activity in Case 1:03-cv-00385-SOM Berry v. Hawaiian Express Ser, et al Link

> Mr. Berry: I was the only one of the Firm who spoke with Lex. Lex called me this
> morning and said that he had heard from Lyle that Tim was/is leaving the Firm, and that
> there was a battle over the attorneys lien. I told Lex that I thought the issue was
> resolved and that an Agreement will be signed. Then after I spoke with Tim, with you on
> the line, in my next conversation I told Lex that the
> Agreement will not be signed and that we will be moving to withdraw. That is
> essentially it as far as your cases. Regards, Wes

From: WayneBerry@FCS2003.com [mailto:WayneBerry@FCS2003.com]
Sent: Friday, July 27, 2007 9:20 PM
To: Wesley W. Ichida
Subject: Re: Activity in Case 1:03-cv-00385-SOM Berry v. Hawaiian Express Ser, et al Link
Importance: High

Dear Mr. Ichida,

Have you or anyone in your firm discussed any issues with Smith regarding me or my cases other than this
request for an extension in the last two weeks ?

If so, please send me detailed information as to when those discussions were held, who was present and the
particulars of what was discussed and any related notes or emails referencing those discussions.

Sincerely,

Wayne Berry

----- Original Message -----
From: Wesley W. Ichida
To: WayneBerry@FCS2003.com
Cc: Steven J. Kim ; Maile M. Hirota ; Paul A. Lynch ; WFT
Sent: Friday, July 27, 2007 2:55 PM
Subject: RE: Activity in Case 1:03-cv-00385-SOM Berry v. Hawaiian Express Ser, et al Link

> Mr. Berry: Lex and I just contacted the Court and Judge Kobayashi was not in today.
> We will try to see her at 9:30am, before the hearing, Monday. I will let you know.
> Regards, Wes

From: WayneBerry@FCS2003.com [mailto:WayneBerry@FCS2003.com]
Sent: Friday, July 27, 2007 8:27 PM
To: Wesley W. Ichida
Subject: Re: Activity in Case 1:03-cv-00385-SOM Berry v. Hawaiian Express Ser, et al Link
Importance: High

**CONFIDENTIAL**

# Exhibit
# C

CONFIDENTIAL

EDI@YNLogistics.com

| | |
|---|---|
| **From:** | "Wesley W. Ichida" <wes@loio.com> |
| **To:** | <WayneBerry@FCS2003.com> |
| **Cc:** | "Steven J. Kim" <sjk@loio.com>; "Paul A. Lynch" <pal@loio.com>; "Maile M. Hirota" <maile@loio.com>; "WFT" <THOMPSONHI@AOL.COM> |
| **Sent:** | Friday, July 27, 2007 8:30 PM |
| **Subject:** | RE: Activity in Case 1:03-cv-00385-SOM Berry v. Hawaiian Express Ser, et al Link |

**Mr. Berry: I forgot. Lex asked me if we will consider selling/assigning our lien to them (assuming we withdraw and perfect our lien). Wes**

---

**From:** WayneBerry@FCS2003.com [mailto:WayneBerry@FCS2003.com]
**Sent:** Friday, July 27, 2007 9:20 PM
**To:** Wesley W. Ichida
**Subject:** Re: Activity in Case 1:03-cv-00385-SOM Berry v. Hawaiian Express Ser, et al Link
**Importance:** High

Dear Mr. Ichida,

Have you or anyone in your firm discussed any issues with Smith regarding me or my cases other than this request for an extension in the last two weeks ?

If so, please send me detailed information as to when those discussions were held, who was present and the particulars of what was discussed and any related notes or emails referencing those discussions.

Sincerely,

Wayne Berry

---

—— Original Message ——
**From:** Wesley W. Ichida
**To:** WayneBerry@FCS2003.com
**Cc:** Steven J. Kim ; Maile M. Hirota ; Paul A. Lynch ; WFT
**Sent:** Friday, July 27, 2007 2:55 PM
**Subject:** RE: Activity in Case 1:03-cv-00385-SOM Berry v. Hawaiian Express Ser, et al Link

**Mr. Berry: Lex and I just contacted the Court and Judge Kobayashi was not in today. We will try to see her at 9:30am, before the hearing, Monday. I will let you know. Regards, Wes**

---

**From:** WayneBerry@FCS2003.com [mailto:WayneBerry@FCS2003.com]
**Sent:** Friday, July 27, 2007 8:27 PM
**To:** Wesley W. Ichida
**Subject:** Re: Activity in Case 1:03-cv-00385-SOM Berry v. Hawaiian Express Ser, et al Link
**Importance:** High

Mr. Ichida,

**CONFIDENTIAL**

12/10/2007

# Exhibit D

CONFIDENTIAL

EDI@YNLogistics.com

| | |
|---|---|
| **From:** | "Wesley W. Ichida" <wes@loio.com> |
| **To:** | <WayneBerry@FCS2003.com> |
| **Cc:** | "Maile M. Hirota" <maile@loio.com>; "Paul A. Lynch" <pal@loio.com>; "WFT" <THOMPSONHI@AOL.COM>; "Steven J. Kim" <sjk@loio.com> |
| **Sent:** | Friday, July 27, 2007 11:09 PM |
| **Subject:** | RE: Activity in Case 1:03-cv-00385-SOM Berry v. Hawaiian Express Ser, et al Link |

Mr. Berry:  I thought I had answered this, but after checking my sent file, I apparently got mixed up with all the e-mails and calls from other clients, and did not finish it.

Lex was talking about the Firm's attorneys fees lien during our first morning conversation.  I think it was about 9:00 or so.  I told him that the Firm has not withdrawn yet, nor have we researched and reviewed the ethics of such an assignment, and whether it would be a breach of our fiduciary duty.  I told him that in any event, I thought that the Agreement Tim drafted would be signed by you.  [I thought that you would sign it because it was drafted by Tim and we virtually did not make any changes, and agreed to the numbers he had proposed].  (I did not tell him about who drafted the Agreement or anything about it.)  This was before the conversation that he had with you on the line, where he told me that he did not intend to ask you to sign the Agreement, and that he will have his own agreements with you.

That was all.  It was not mentioned again.

I assume you will not be attending the Motion on Monday.  Please call me if you want to attend and let's discuss it before Monday.  My cell no. is 230-5217, and it is on 24-7.  Please feel free to call me anytime.  If I do not answer, I will call you within the day.

**Regards, Wes**

---

**From:** WayneBerry@FCS2003.com [mailto:WayneBerry@FCS2003.com]
**Sent:** Friday, July 27, 2007 9:45 PM
**To:** Wesley W. Ichida
**Subject:** Re: Activity in Case 1:03-cv-00385-SOM Berry v. Hawaiian Express Ser, et al Link

Mr. Ichida,

What leins are you talking about ?

What day and time did Smith ask you this and what did you tell him in repsonse ?

Sincerely,

Wayne Berry

----- Original Message -----
**From:** Wesley W. Ichida
**To:** WayneBerry@FCS2003.com

**CONFIDENTIAL**

12/10/2007

# Exhibit
# E

**CONFIDENTIAL**

**Tim Hogan**

| | |
|---|---|
| **From:** | Wayne Berry [WayneFBerry@Hotmail.com] |
| **Sent:** | Thursday, July 26, 2007 2:02 AM |
| **To:** | WWI@LOIO.COM |
| **Cc:** | SJK@LOIO.COM; PAL@LOIO.COM |
| **Subject:** | 20070726 WB 2 WI.pdf - Adobe Reader |
| **Importance:** | High |
| **Attachments:** | 20070726 WB 2 WI.pdf |

July 26, 2007

Dear Mr. Ichida;

I am in the process of reviewing your letter of July 20, 2007. I do have some questions regarding the statement you sent but I am still working on them. I have also not seen any invoice for any time spent in the Deutsche Bank case. So I will be sending you a response along with my questions and concerns in due course.

However, it has come to my attention that your firm and Mr. Hogan have not been able to work out issues that may involve immediately pending matters in my cases. I understand that there are pending matters in my cases as early as next Monday, July 30, 2007 which require your immediate attention.

In paragraph 3 of your letter you wrote:

> We do not wish to prejudice your rights in any way and will therefore obtain appropriate extensions of time upon your request.

Please consider this email a formal request in response to that paragraph for you to contact opposing council and/or courts to obtain those necessary and appropriate extensions for all matters while I look for new counsel to represent me in my cases.

As always, please do not enter into any discussions regarding me or my cases with opposing counsel except the facts supporting the circumstances and necessity for requesting these extensions in my cases.

If you have any questions or concerns regarding this request, please do not hesitate to call me at 808-258-7144 or email me at WayneFBerry@Hotmail.com.

Sincerely,


Wayne Berry

**CONFIDENTIAL**

# Exhibit
# F

CONFIDENTIAL

| Date | Initials | Hours | Rate | Amount | Description |
|---|---|---|---|---|---|
| 4/15/2005 | AEL | 0.39 | $120 | $47 | Review most recent correspondence; document management |
| 4/18/2005 | AEL | 0.65 | $120 | $78 | Research re legal standard for expert opinion and documents relevant to that standard. Research files for appropriate documents |
| 4/18/2005 | ACT | 0.75 | $150 | $113 | Telephone conversation with Julieann Berry; interoffice conference re same |
| 4/19/2005 | LRS | 4 | $200 | $800 | Research regarding plaintiff's damage claim; correspondence with Hogan; work on motion for summary judgment regarding logistics software; prepare proposed schedule for Matsui; telephone calls regarding scheduling and mainland depositions; correspondence regarding mediation |
| 4/20/2005 | LRS | 4.25 | $200 | $850 | Review new minutes from Judge Mollway; review Master report and prepare letter to Court; correspondence regarding scheduling of experts and motions; correspondence with Hogan regarding production; work on motions; logistics regarding protective order; review correspondence from Fujichaku |
| 4/20/2005 | JSL | 0.375 | $35 | $13 | Deliver filings |
| 4/25/2005 | LRS | 3.25 | $200 | $650 | Correspondence with Hogan regarding mainland depositions; correspondence regarding production of 1993 FCS; |
| 4/25/2005 | JSL | 3.75 | $35 | $131 | Document and file management |
| 4/25/2005 | ACT | 1.45 | $150 | $218 | Work on discovery and motions schedule; interoffice conference regarding schedule; work on correspondence to Judge regarding motions cutoff; review new correspondence |
| 4/26/2005 | JSL | 2.25 | $35 | $79 | Document and file management |
| 4/27/2005 | JSL | 3 | $35 | $105 | Document and file management |
| 4/28/2005 | JSL | 2.75 | $35 | $96 | Document and file management |
| 4/29/2005 | LRS | 1 | $200 | $200 | telephone call from court staff regarding conference call; review new pleadings; work on Johnson depo prep |
| 4/29/2005 | JSL | 3 | $35 | $105 | Document and file management |
| 5/2/2005 | JSL | 1.25 | $35 | $44 | Document and file management |
| 5/2/2005 | JSL | 2.5 | $35 | $88 | Index Special Master documents |
| 5/3/2005 | JSL | 3.5 | $35 | $123 | Prepare index of Special Master correspondence |

**CONFIDENTIAL**