UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAYNE BERRY,<br><br>        Plaintiff**,**<br><br>    vs.<br><br>DEUTSCHE BANK TRUST COMPANY AMERICAS (FKA BANKERS TRUST COMPANY) AND JP MORGAN CHASE BANK IN THEIR SEPARATE CAPACITIES AND AS AGENTS FOR THE PRE- AND POST-PETITION LENDERS OF FLEMING COMPANIES, INC.; GENERAL ELECTRIC CAPITAL CORPORATION; C&S WHOLESALE GROCERS, INC.; THE POST-CONFIRMATION TRUST OF FLEMING COMPANIES, INC.; ROBERT KORS; CORE-MARK HOLDINGS INC. AND DOES 1 TO 200,<br><br>        Defendants. | Case No. 01:07 CV 7634 (WHP)<br><br>ECF Case |

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SECURITY PURSUANT TO LOCAL RULE 54.2

KIRKLAND & ELLIS LLP
Michael E. Baumann (admitted *pro hac vice*)
Erin N. Brady (admitted *pro hac vice*)
777 South Figueroa Street
Los Angeles, California  90017
Telephone:    (213) 680-8400
Facsimile:    (213) 680-8500
E-mail:        ebrady@kirkland.com

Counsel for Defendants Post Confirmation
Trust, Robert Kors, Deutsche Bank Trust
Companies Americas and JP Morgan Chase
Bank

**TABLE OF CONTENTS**

Page

Factual Background ...............................................................................................................2

     Summary of Prior, Related Litigation.................................................................................2

     Cost And Fee Awards .......................................................................................................4

     Collection Efforts.............................................................................................................6

Argument ............................................................................................................................8

        A.     Berry Will Be Unable To Satisfy Any Award Of Costs Or
              Attorneys' Fees In This Action....................................................................9

        B.     Berry Is A Non-Resident Of New York. ......................................................9

        C.     Berry's Claims In This Action Are Without Merit...................................10

        D.     Berry Intends To Seek Substantial Discovery. ..........................................11

        E.     Berry's Claims, If Allowed To Proceed, Will Cause Defendants To
              Expend Substantial Costs and Attorneys' Fees, And Will Likely
              Subject Berry To Sanctions. ......................................................................11

        F.     Berry Has Refused To Comply With Prior Court Orders..........................12

Amount of Security Requested ..........................................................................................12

Conclusion .......................................................................................................................14

## TABLE OF AUTHORITIES

Page

**Cases**

*Baker v. Urban Outfitters, Inc.*,
    No. 01 Civ. 5440 (LAP) 2004 WL 2546805 (S.D.N.Y., November 10, 2004) .................. 8

*Beverly Hills Design Studio (N.Y.) Inc. v. Morris*,
    126 F.R.D. 33 (S.D.N.Y. 1989) ..................................................................................... 8

*Bressler v. Liebman, Esq.,* No. 97-310 (LAP),
    1997 WL 466443 at *1 (S.D.N.Y. Aug. 14, 1997) ...................................................... 8

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994) ..................................................................................................... 12

*RLS Assoc., LLC v. United Bank of Kuwait PLC*,
    464 F. Supp. 2d 206 (S.D.N.Y. 2006) ......................................................................... 13

*Seletti v. Carey*,
    173 F.R.D. 96 (S.D.N.Y. 1997) ..................................................................................... 8

*Verone v. Taconic Tel. Corp.*,
    No. 85 Civ. 8574 (MJL), 1988 WL 10871 at *3 (S.D.N.Y. Feb. 9, 1988) .......................... 9

**Statutes**

11 U.S.C. § 1927 ............................................................................................................... 12

15 U.S.C. § 1117(a) ............................................................................................................. 8

17 U.S.C. § 505 ................................................................................................................... 8

**Rules**

Local Rule 54.2 ............................................................................................................. 2, 8

Rule 11 ............................................................................................................................... 12

Plaintiff Wayne Berry's claims in this lawsuit are completely without merit. Most are duplicative of claims he has already litigated to judgment in prior proceedings -- proceedings in which he caused the named defendants to incur costs and fees far in excess of the amounts they offered him in settlement or he ultimately received as a judgment. Others are based solely on legal conclusions, devoid of the factual allegations necessary to state a viable cause of action. And still others -- including those that the PCT, a creditors' trust, entered into secret deals with Berry's former law firm to purchase its attorney lien -- are based on nothing more than Berry and his counsel's suppositions and imaginative conspiracy theories.

Nonetheless, Berry stands by his claims, leaving Defendants with no choice but to defend them on the merits. In the absence of *any* plausible facts thus far pleaded to support *any* of Berry's claims, Defendants respectfully submit that they will prevail, entitling them to recover their taxable costs and, where appropriate, attorneys' fees under the Copyright Act. And because Berry has brought his claims without conducting an adequate investigation of the underlying facts, Defendants also respectfully submit that many if not all of them will be entitled to sanctions awards against Berry and his counsel.

That said, it is unlikely that Defendants will ever recover any of the costs, fees or sanctions Berry may be ordered to pay them. As evidence of this, the Court need look no further than the current collection actions against Berry taking place in the District of Hawaii. After Berry concluded his last round of litigation, the Hawaii District Court ordered Berry to pay more than $223,000 in costs and attorneys' fees to, among others, C&S and the PCT, both defendants in this action. Berry has refused to pay, forcing C&S and others to institute collection actions. In the course of these collection actions, Berry has testified that his only assets are his copyrights, his pending litigation claims, and certain other litigation he claims he will bring against various parties and their attorneys. He has also testified that he cannot remember what he did with more than $60,000 that was withdrawn from his bank account over a three or four month period -- the same period during which the fee awards were issued. His evasiveness is evident.

1

Berry's past history also demonstrates the unlikelihood that he will ever satisfy any award this Court may order him to pay. Berry has failed to pay his taxes, as evidenced by an outstanding tax lien the IRS filed in 2000. He also failed to pay a $300,000 judgment against him held by his father. By all accounts, it will be difficult, if not impossible, to collect any fee award, costs or sanction Berry is ordered to pay as a result of this lawsuit.

For this reason, all Defendants jointly request, pursuant to Local Rule 54.2, that Berry be required to post security before he is allowed to proceed in this action. If he fails to timely do so, Defendants further request that the Court stay or dismiss this action in its entirety.

### Factual Background

### Summary of Prior, Related Litigation

Berry began his string of FCS-related lawsuits in 2001, suing Fleming Companies, Inc. in the District of Hawaii on claims that Fleming had infringed Berry's software by, among other things, giving it to K-Mart, Pillsbury and Manugistics, Inc., all of whom were using it worldwide. (D.I. 138 from *Berry v. Fleming Companies, Inc., et al.*, Civil No. CV 0100446 SPK LEK (hereinafter "First Berry Case" or "FBC")). For this alleged infringement, Mr. Berry claimed he was entitled to statutory damages ranging from a minimum of $4.8 million up to a maximum in excess of $3 billion. *Id.* These claims were rejected before they even got to the jury. In the end, a jury found in his favor on one claim of "making unauthorized changes" to a program he had licensed to Fleming for free and awarded him $98,000. (FBC D.I. 276)

Shortly after the jury's verdict, and for entirely unrelated reasons, Fleming filed for bankruptcy in the Delaware Bankruptcy Court. Despite holding a claim against Fleming on account of the jury verdict, Berry did not file a claim in Fleming's bankruptcy case. Having failed to do so, he waived his right to collect or enforce his pre-bankruptcy judgment -- including any purported right to setoff the value of the judgment against amounts he owes to Fleming.

Berry filed his next FCS-related lawsuit in July 2003. In that lawsuit, he sued no fewer than 28 defendants on claims of copyright infringement, vicarious copyright infringement, contributory copyright infringement, conspiracy to infringe, trade secret misappropriation,

2

Sherman Act violations, and RICO violations.  (D.I. 210 from *Berry v. Hawaiian Express Services, et al.*, Case No. 1:03-CV-00385-SOM (hereinafter "Second Berry Case" or "SBC")). Among the defendants he sued were Fleming, eight of Fleming's employees, C&S Wholesale Grocers (the entity that purchased certain of Fleming's assets in a bankruptcy court approved sale), Guidance Software (the computer forensics company that Fleming hired to remove Berry's software from its computers in an attempt to avoid further litigation), and AlixPartners (the financial advisory company that Fleming hired, pursuant to bankruptcy court order, to advise it in bankruptcy).  *Id.*  The underlying theory of his case was that Fleming improperly sold Berry's software to C&S as part of its bankruptcy court approved sale by hiring Guidance to pretend to scrub Fleming's computers while secretly retaining copies of the software for C&S' benefit (thereby participating in an ongoing RICO enterprise and committing bankruptcy fraud).  *Id.*  He maintained this theory despite a bankruptcy court ruling that Fleming ***did not sell*** Berry's software to C&S as part of its bankruptcy sale.  Ex. B[1] (Excerpts of 8/4/03 Transcript).

Undeterred, Berry made it his practice to pursue costly and irrelevant discovery in an attempt to find some basis for his unfounded claims.  As just one example, Berry attempted to obtain from Fleming discovery of certain "F-1 materials" that he claimed were directly relevant to the issue of damages.  He claimed, without support, that Fleming retained CAP Gemini, an Ernst & Young subsidiary, in 2001 to reverse engineer or copy Berry's FCS to create a company-wide automation system -- or "F-1."  On appeal of the special master's order denying this discovery (and imposing sanctions on Berry), the District Court ruled that Berry's "guesses" and speculation notwithstanding, "Berry does not make even a plausible argument as to how the anticipated content of [the F-1] materials will somehow relate to the time period in issue here." Ex. C (Excerpts of 10/21/05 Order).

---

[1]  All references to "Ex. __" refer to exhibits attached to the Affidavit of Erin N. Brady in Support of Defendants Post Confirmation Trust's and Robert Kors' Motion for Summary Judgment and All Defendants' Joint Motion for Security.

Eventually, the Hawaii District Court dismissed nearly all of Berry's claims on pretrial motions, including his marquee claim that Fleming covertly sold or transferred Berry's software to C&S.  (SBC D.I. 569).  In doing so, the District Court ruled:

- Berry argues that the true purpose of [hiring Guidance] was to "trick the Delaware Bankruptcy Court to cause it to approve the sale to C&S"[] and "trap Mr. Berry in new litigation in Delaware while his software was being transferred to a third party C&S [sic]."  [citation omitted]  Berry, however, presents *no evidence of such a scheme*.  Ex. D at 23-24 (Excerpts of 6/27/05 Order)

- Berry does not show that any files that were on [the computers Fleming sold to C&S] qualify as his trade secrets.  *Berry has not presented any evidence* that those files had any independent economic value resulting from not being generally known.  *Id*. at 32.

- Berry *presents no evidence* of laundering "money derived from the infringing use of FCS" [for purposes of RICO].  *Id*. at 37.

- Berry [] *presents no evidence* of any conspiracy to commit any of the alleged predicate RICO acts.  *Id*. at 37.

For the claims the District Court did not dismiss -- namely that Fleming and two of its employees unknowingly used a derivative of Berry's software for a period of approximately 70 days after filing for bankruptcy -- a jury awarded Berry just $54,374 (which was a far cry from the hundreds of millions he was seeking).  Ex. E at 6 (Excerpts of 12/4/06 Special Master Report)

**Cost And Fee Awards**

In light of Berry's unsupported and frivolous claims, at the conclusion of his second lawsuit, a number of defendants filed motions for costs and attorneys' fees under the Copyright Act and other applicable statutes.  In March 2007, the Hawaii District Court entered an order awarding costs and attorneys' fees to four of those parties:  (1) the Fleming Post Confirmation Trust (the grantor trust created after Fleming's bankruptcy to distribute its assets to creditors); (2) Brian Christensen (a former Fleming executive that Berry claimed orchestrated Fleming's infringement); (3) C&S; and (4) Guidance.  (SBC D.I. 1037).  In doing so, the District Court made or adopted the following findings:

- Plaintiff's copyright claims against Guidance were *without legal and factual basis*.  Plaintiff's copyright claims against Guidance were *frivolous and*

4

*objectively unreasonable*.  Ex. F at 23 (Excerpts of 10/25/06 Special Master Order)

- Plaintiff's pursuit of claims against Guidance, in spite of notice that its copying constituted fair use, is a strong indication that he had *improper motivation*. Plaintiff had access to counsel who could have easily determined that such claims were without legal or factual basis.  *Id*.

- In light of the *utter lack of any evidence* supporting Plaintiff's copyright infringement claims against Christensen, this Court finds that they were *frivolous and objectively unreasonable*.  Ex. E at 32-33 (Excerpts of 12/4/06 Special Master Report)

- This Court also finds that Plaintiff's pursuit of his copyright claims against Christensen, in spite of the *lack of evidence supporting them*, is a strong indication that he had an *improper motive*.  *Id*. at 33.

- The Court notes . . . that Plaintiff's claimed damages, which at one point were upwards of $200 million, were *frivolous and objectively specious*.  *Id*. at 34.

- This Court finds that Plaintiff's trade secrets claim against Fleming was *objectively specious* because there was a *complete lack of evidence* supporting his claim.  *Id*. at 45.

- This Court therefore finds that Plaintiff made the misappropriation of trade secrets claim against Fleming in *bad faith* and that it is entitled to fees incurred in defending that claim.  *Id*.

The list goes on.

All told, Berry now owes the Defendants he sued in his last lawsuit a total of $223,800.20, plus interest and costs of collection.  This amount is broken down as follows:

| Party | Attorneys' Fees Awards | Costs | Total |
|---|---|---|---|
| Fleming/PCT | $43,509.60 | $16,366.92 | $59,876.52 |
| Guidance | $47,561.18 | $ 4,096.32 | $51,657.50 |
| C&S | $84,758.98 | $     0.00 | $84,758.98 |
| Brian Christensen | $27,507.20 | $     0.00 | $27,507.20 |

Berry, on the other hand, is entitled to collect just $87,607.72, which amount includes his $54,574 judgment against Fleming and its employees and $30,073.72 in taxable costs.  (SBC D.I. 1037).  The District Court denied Berry's request for attorneys' fees based upon the unreasonableness of his claims.  *Id*. at 50-54.  To the extent Berry is entitled to offset this amount

5

against amounts he owes to defendants in his second lawsuit, he can only exercise such an offset against Fleming (and then only to the extent the bankruptcy court allows him to do so). He was awarded no judgments, costs or fees relating to any other defendants who received fee awards -- they obtained a total victory on all of Berry's claims.

**Collection Efforts**

Upon receiving their awards, C&S, Guidance and Mr. Christensen asked Berry to pay them. Berry refused. C&S noticed Berry's judgment debtor examination. Berry's counsel (Timothy Hogan) denied his continuing representation of Berry and refused to accept service on his behalf. Ex. G at 4 (8/10/07 Order). C&S moved to compel Berry to attend the examination. *Id*. Berry opposed. The Magistrate Judge granted C&S' request, and ordered Berry to appear before her for the examination. *Id*. Berry appealed. *Id*. The District Court affirmed, ruling that "[i]f Berry does not attend the August 13, 2007, examination of judgment debtor, C&S may move for appropriate relief, including, but not limited to, a request that Berry be held in contempt and be subject to a fine, a sanction, and/or a warrant for his arrest." *Id*. at 8.

Berry appeared for his judgment debtor examination on August 13, 2007. Ex. H (Excerpts of Berry Exam). Therein, he testified that he owns no real property, no mutual funds, no stocks, bonds or equities, no titles or registrations to any motor vehicle or recreational vehicle, no life insurance policies, no accounts receivable (except the amounts he continues to claim that C&S and other parties to the prior lawsuit owe him), no retirement accounts, no rights to receive payments on any leases and no rights in any deferred compensation plans. *Id*. at 23-52. He further testified that his sole source of income is through a contract he has with a company called Y-Hata, and that while he is contractually entitled to approximately $5,000 per month under that contract, Y-Hata prepaid him a lump sum at some point between January and April of 2007 (which, notably, was immediately after the Special Master recommended that Berry be taxed with substantial costs and attorneys' fees in his last lawsuit). *Id*. at 70-75. He testified that he did not know when he will again begin receiving payments from Y-Hata. *Id*. at 74.

6

The limited bank statements Berry produced showed that Berry had more than $64,000 in his bank account on April 17, 2007. *Id*. at 59-61. Over the following few months, he withdrew nearly all of that money from his account (while conveniently failing to produce the pages of his bank statements that would show the beneficiary of the withdrawals). *Id*. When asked where all of this money went, Mr. Berry evaded and merely testified "I don't know." *Id*. at 61.

C&S and others have been forced to explore their options in collecting their awards from Berry. To that end, C&S recently filed a motion in the Hawaii District Court seeking a writ of execution on, among other things, Berry's registered and unregistered copyrights (including FCS) and his accrued litigation claims, which appear to be Berry's only assets. (SBC D.I. 1088); Ex. H at 23-52 (Excerpts of Berry Exam). It is possible that the IRS will claim a superior interest to C&S, Guidance and Christensen in that proceeding, as it appears that the IRS filed a tax lien against Berry in the amount of $44,639.77 in 2000 for unpaid taxes (which amount has presumably been accruing interest and additional penalties over the years). Ex. I (IRS Lien). It is also possible that Berry's father's estate will assert a claim, as Berry testified that his father once held a $300,000 judgment against him as well. Ex. H at 43 (Excerpts of Berry Exam).

Against this backdrop, Berry continues to prosecute his vastly expanded Second Amended Complaint, naming many of the same parties and asserting many of the same claims -- and some new ones -- in this Court. All indications are that if permitted, this lawsuit will proceed much like the last. Like last time, Berry cannot point to any evidence to support his claims. Like last time, Berry wants extensive, expensive and irrelevant discovery (as evidenced by his initial disclosures). Like last time, Berry's claims likely will be dismissed. Like last time, Defendants likely will be entitled to costs and attorneys' fees under the Copyright Act, as well as sanctions. And like last time, Berry will be unable or unwilling to satisfy any such awards. Under the circumstances, Berry should be required to post a bond in favor of Defendants before proceeding any further in this lawsuit.

7

**Argument**

Local Rule 54.2 allows a court to "order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate." Security for costs may include attorneys' fees to which a party is entitled, or potentially entitled, by statute, including attorneys' fees allowable to a prevailing party under the Copyright Act. *See e.g., Beverly Hills Design Studio (N.Y.) Inc. v. Morris*, 126 F.R.D. 33, 37 (S.D.N.Y. 1989) (ordering bond to include attorneys' fees because recovery of fees was available under 17 U.S.C. § 505 and 15 U.S.C. § 1117(a)); *Baker v. Urban Outfitters, Inc.*, No. 01 Civ. 5440 (LAP) 2004 WL 2546805 (S.D.N.Y., November 10, 2004) (ordering $450,000 bond to cover defendant's costs and attorneys' fees); *Seletti v. Carey*, 173 F.R.D. 96, 101–02 (S.D.N.Y. 1997) (ordering security for attorneys' fees as well as cost where recovery of fees available under 17 U.S.C. § 505). Security for costs may also include an award of sanctions to which a party may be entitled. *Bressler v. Liebman, Esq.,* No. 97-310 (LAP), 1997 WL 466443, at *1 (S.D.N.Y. Aug. 14, 1997) (ordering bond to ensure any subsequently imposed sanctions would be meaningful).

The primary purpose behind Local Rule 54.2 "is to ensure that the prevailing party will be able to collect the costs and fees owed to it in situations where the other party is unlikely or unwilling to pay." *Seletti*, 173 F.R.D. at 101–02 (ordering security for costs where "there is a serious risk that [plaintiff] will be unable to pay the reasonable costs to which the Defendants may be entitled should they prevail"). Accordingly, where a party fails to post a requisite bond, the Court may strike the pleadings, stay the action or dismiss the case. *Verone v. Taconic Tel. Corp.*, No. 85 Civ. 8574 (MJL), 1988 WL 10871, at *3 (S.D.N.Y. Feb. 9, 1988) (dismissing case where plaintiff failed to post security for costs, attorney's fees and possible sanctions).

When ordering security for costs, courts in the Southern District typically consider a variety of factors, including: (1) the non-movant's financial condition and ability to pay; (2) whether that party is a non-resident or foreign corporation; (3) the merits of the action; (4) the extent and scope of discovery; (5) the expected legal costs to be incurred; and (6) the non-movant's compliance with prior court orders. *See e.g., Urban Outfitters*, 2004 WL 2546805, at

8

*2. As demonstrated below, these factors weigh in favor of requiring Berry to post security for Defendants' costs and attorneys' fees.

**A.      Berry Will Be Unable To Satisfy Any Award Of Costs Or Attorneys' Fees In This Action.**

It is unlikely that Berry will be able to satisfy any award of costs or attorneys' fees in this action.  Berry has testified that he owns no real property, no mutual funds, no stocks, bonds or equities, no titles or registrations to any motor vehicle or recreational vehicle, no life insurance policies, no accounts receivable (except the amounts he claims are owed to him by C&S and other parties he may sue), no retirement accounts, no rights to receive payments on any leases and no rights in any deferred compensation plans.  Ex. H at 23-52 (Berry Exam).  He has testified that he has no current source of income -- having recently received a substantial advance from Y-Hata, his sole source of income -- and does not know when he will begin receiving income again.  *Id*. at 70-75.  And he apparently cannot use his substantial Y-Hata advance to satisfy any costs or fee awards, as he cannot remember what he did with it.  *Id*. at 61.

At the same time, his assets are subject to (1) a sizable IRS lien; (2) C&S' $84,758.98 fee award from his last lawsuit; (3) Guidance's $51,657.50 fee award from the last lawsuit; (4) Brian Christensen's $27,507.20 award from his last lawsuit; and (5) a potential claim by his father's estate on an unpaid judgment.  *See, supra*, at 6-9.  To Defendants' knowledge, Berry has no valid right of setoff against any of these parties.  And given the pending proceedings in the District of Hawaii, it is quite possible that C&S (and any other similarly situated defendants who have been or will be joined in those proceedings) will obtain a writ of execution on Berry's copyrights and litigation claims to satisfy their earlier fee award (or that the IRS will seize these assets itself), disposing of what Berry claims are his sole assets.

**B.      Berry Is A Non-Resident Of New York.**

Berry is not a New York resident and, to Defendants' knowledge, has no property located in the State of New York.  Additionally, although he claims to be domiciled in Hawaii, he apparently resides in Florida.  Berry was unable or unwilling to testify as to whether his assets, if

any, are located in Florida or Hawaii.  In any event, to collect any award of costs or fees

Defendants may obtain, Defendants will have to domesticate the judgment in at least one or more

states (and likely compel him to comply with the collection process).

**C.      Berry's Claims In This Action Are Without Merit.**

The facts and arguments that Defendants present in their pending motions to dismiss and

motions for summary judgment establish that Berry's claims in this action are objectively

unreasonable and without merit.  *See* D.I. 5, 29, 31, 34.  In summary, Berry's copyright

infringement claims against C&S are barred by *res judicata*.  Berry's copyright infringement

claims against Deutsche Bank and JP Morgan Chase Bank are barred by *res judicata*, the statute

of limitations and collateral estoppel, and are lacking any legitimate basis.  Berry has not even

pled the facts necessary to establish a viable claim for copyright infringement or anything else

against GECC.  Similarly, his tort and contract claims against Mr. Kors, the PCT and C&S have

no basis in reality, premised as they are on the admittedly unsupported suppositions of Berry and

his counsel.  Finally, Berry's RICO claim fails for any number of reasons, not the least of which

is that he cannot establish the necessary predicate acts or a RICO enterprise.

In fact, Berry's counsel himself has acknowledged to the Hawaii Office of Disciplinary

Counsel that his claims against Robert Kors and the PCT are tenuous at best.  Four of Berry's

claims against the PCT and Robert Kors are premised upon a secret "deal," whereby the PCT

and Mr. Kors allegedly induced and assisted Berry's former law firm in breaching its fiduciary

duty to Berry.  In a December 18, 2007 letter to the Hawaii Office of Disciplinary Counsel --

submitted just days before Berry filed his claims against Mr. Kors and the PCT in this action --

Mr. Berry's counsel, Timothy Hogan, asks the disciplinary counsel's office to investigate "what

may be . . . conversion of client funds" by Mr. Berry's former law firm.  Mr. Hogan then reveals

the basis for this charge:  "After discussing the matter at length with Mr. Berry, he and I

concluded that sometime while [his old firm] was still attorney of record for Mr. Berry, it

negotiated a payment . . . with the adverse party and did not disclose it to Mr. Berry."  Affidavit

of Lex Smith Filed February 26, 2008, Ex. B at 4 (1/9/2007 Disciplinary Letter).  After being

pressed by the Office for Disciplinary Counsel for evidence to support his allegations, Mr.
Hogan conceded on January 9, 2008 that he is "not clear whether there is sufficient evidence for
disciplinary proceedings." Smith Aff., Ex. A at 2-3 (12/18/07 Disciplinary Letter). Despite this
admission, Berry has continued to press his claims against Mr. Kors and the PCT in this action --
claims premised on the same "secret" deal that forms the basis for his disciplinary complaint.
And Defendants have recently learned that Berry's former law firm told Mr. Hogan *before he
filed the Complaint* that no such "secret" deal existed. Affidavit of Wes Ichida Filed February
26, 2008, ¶ 4. In light of Berry's tenuous claims against these and the other Defendants, a bond
is necessary to protect Defendants' interests.

### D.    Berry Intends To Seek Substantial Discovery.

Berry's initial disclosures name 96 individuals as witnesses -- which number does not
include "all Fleming-Logistics employees, all Fleming and [sic] or C&S accounting employees"
and "C&S employees not yet identified." Ex. J at 9 (Initial Disclosures). According to Berry,
these witnesses will testify regarding topics such as the "Rock Island Arsenal," Michael
Baumann's hiring of an agent "to intimidate Plaintiff and put him in fear for his life and
livelihood and effect service of dismissed divorce complaint," and "fraud upon the copyright
office committed to obtain copy of FCS to deliver to KBR and/or Halliburton." *Id*. at 1-9. They
will also testify regarding "copying FCS into Fleming's F1 and/or other Ernst & Young
products," a topic that is reminiscent of the "F-1" discovery he sought (and was sanctioned for)
in his last lawsuit against Fleming and C&S. *Id*. If past is prologue, even if the Court denies
him this absurd and irrelevant discovery, Defendants will nonetheless expend considerable time
and expense defending against Berry's pursuit of the same.

### E.    Berry's Claims, If Allowed To Proceed, Will Cause Defendants To Expend Substantial Costs and Attorneys' Fees, And Will Likely Subject Berry To Sanctions.

As discussed above, Berry has a history of causing his adversaries to incur significant
amounts of costs and attorneys' fees defending his baseless claims. *See* Ex. K (Excerpts of
1/23/07 Hearing Transcript) (denying Mr. Berry's request to hold up distributions to legitimate

11

PCT beneficiaries until his appeals are resolved, notwithstanding his efforts to keep other creditors "hostage" on the "remote possibility" that he will prevail on his appeal).  Moreover, given the lack of evidence supporting his claims in this case (and the fact that he has already litigated many of these claims in prior proceedings), Defendants will likely be entitled to sanctions under both Rule 11 and § 1927.  And because Berry's copyright claims are objectively unreasonable, Defendants likely will also be entitled to recover their costs and attorneys' fees incurred defending against them.  *See, e.g., Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994) ("[D]efendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement" through the award of attorneys' fees in appropriate circumstances.").

**F.     Berry Has Refused To Comply With Prior Court Orders.**

Finally, Berry has demonstrated his unwillingness to comply with court orders.  Among other things, he failed to satisfy the judgment awarded against him in favor of his father.  And he failed to satisfy the outstanding fee awards from the last lawsuit -- notwithstanding the fact that he may soon be subject to a writ of execution.  Berry believes he is above the law, using the courts as a weapon when it suits him, flouting the courts when it does not.  There is no reason to believe this time will be any different.

<u>**Amount of Security Requested**</u>

At the conclusion of Berry's last FCS-related lawsuit, four defendants were each awarded an average of $55,000 in costs and fees.  This lawsuit promises much the same.  Berry has sued four Defendants for claims arising under the Copyright Act, each of which will be entitled to costs and fees under the Copyright Act upon dismissal of Berry's claims.  At the same time, he has also sued Mr. Kors, the PCT and C&S for baseless tort and contract claims, giving each a right to seek sanctions under Rule 11 and § 1927.  Accordingly, Defendants believe that it is appropriate for the Court to require Berry to post a bond in the modest amount of $100,000, pending the Court's decision on Defendants' dispositive motions, allowing leave for the Court to

adjust that amount should this case ever move beyond those motions.  This amount is vastly

below full security, but is nonetheless fair and reasonable under the standards set by the Second

Circuit and the Southern District of New York (as Berry cited to this Court in his January 18,

2007 letter brief on this issue).  *See RLS Assoc., LLC v. United Bank of Kuwait PLC,* 464 F.

Supp. 2d 206, 224 (S.D.N.Y. 2006) (imposing a bond in favor of defendant for less than full

security when plaintiff was likely to prevail on some or all of its claims, but distinguishing that

from the instance where "a plaintiff whose implausible and farfetched claim is nonetheless

immune from dismissal or summary disposition and must be tried," in which full security may be

appropriate).

If Berry fails to timely post a bond, Defendants submit that dismissal or stay of the case is

warranted.


/ / /


/ / /


/ / /


/ / /


/ / /


/ / /


/ / /


/ / /

13

## Conclusion

For the foregoing reasons, Defendants request that the Court require Berry to post a

$100,000 bond and, should Berry fail to timely do so, that the Court stay or dismiss this case in

its entirety.


DATED:  February 26, 2008

By: /s/ Erin N. Brady
KIRKLAND & ELLIS LLP
Michael E. Baumann (admitted *pro hac vice*)
Erin N. Brady (admitted *pro hac vice*)
777 South Figueroa Street
Los Angeles, California  90017
Telephone:     (213) 680-8400
Facsimile:     (213) 680-8500
E-mail:          ebrady@kirkland.com

Counsel for Defendants Post Confirmation
Trust, Robert Kors, Deutsche Bank Trust
Companies Americas and JP Morgan Chase
Bank


                        and

NIXON PEABODY LLP
Christopher May Mason
437 Madison Avenue
New York, New York 10022
Telephone:     (212) 940-3000
Facsimile:     (212) 940-3111
E-mail:          cmason@nixonpeabody.com

Counsel for Defendant C&S Wholesale
Grocers, Inc.
                        and

LEVINE, SULLIVAN, KOCH & SCHULZ,
LLP
Robert Penchina
321 West 44th Street, Suite 510
New York, New York  10036
Telephone:     (212) 850-6100
Facsimile:     (212) 850-6299
E-mail:          rpenchina@lskslaw.com

Counsel for Defendant General Electric Capital
Corporation

14