# EXHIBIT E

1

82DFBERC

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    WAYNE BERRY,

4                    Plaintiff,

5            v.                        07 CV 7634 (WHP)

6    DEUTSCHE BANK TRUST COMPANY
     AMERICAS, et al,
7
                    Defendants.
8
     ------------------------------x
9                                      New York, N.Y.
                                       February 13, 2008
10                                     12:30 p.m.

11   Before:

12                HON. WILLIAM H. PAULEY III,

13                                        District Judge

14                        APPEARANCES

15   TIMOTHY JOSEPH HOGAN (by telephone)
          Attorney for Plaintiff
16
     WHITE & CASE LLP
17        Attorney for Defendant Deutsche Bank
     JONATHAN E. MOSKIN
18
     KIRKLAND & ELLIS LLP
19        Attorneys for Defendant Deutsche Bank
     MICHAEL EDWARD BAUMANN
20

21   LEVINE, SULLIVAN, KOCH & SCHULZ, LLP
          Attorneys for Defendant General Electric
22   ROBERT PENCHINA

23   NIXON PEABODY LLP
          Attorneys for Defendant C&S Wholesale Grocers, Inc.
24   CHRISTOPHER MAY MASON

25
```

1

82DFBERC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   WAYNE BERRY,

4               Plaintiff,

5          v.                              07 CV 7634 (WHP)

6   DEUTSCHE BANK TRUST COMPANY
    AMERICAS, et al,
7
                Defendants.
8
    ------------------------------x
9                                          New York, N.Y.
                                           February 13, 2008
10                                         12:30 p.m.

11  Before:

12              HON. WILLIAM H. PAULEY III,

13                                         District Judge

14                  APPEARANCES

15  TIMOTHY JOSEPH HOGAN (by telephone)
         Attorney for Plaintiff
16
    WHITE & CASE LLP
17       Attorney for Defendant Deutsche Bank
    JONATHAN E. MOSKIN
18
    KIRKLAND & ELLIS LLP
19       Attorneys for Defendant Deutsche Bank
    MICHAEL EDWARD BAUMANN
20

21  LEVINE, SULLIVAN, KOCH & SCHULZ, LLP
         Attorneys for Defendant General Electric
22  ROBERT PENCHINA

23  NIXON PEABODY LLP
         Attorneys for Defendant C&S Wholesale Grocers, Inc.
24  CHRISTOPHER MAY MASON

25

                SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

82DFBERC

1              (Case called)

2              (In open court)

3              THE COURT:  Good morning.  Mr. Hogan, can you hear me?

4              MR. HOGAN:  Yes, I can.  Your Honor?

5              THE COURT:  Yes.

6              MR. HOGAN:  Good morning, your Honor.

7              THE COURT:  Good morning.  You're on a speakerphone in

8    a courtroom and a court reporter is present recording what's

9    being said.  I'm joined here in the well of the courtroom by

10   counsel for various defendants, each of whom I'll ask to give

11   his appearance at this time.

12              MR. MASON:  This is Chris Mason for C&S Wholesale

13   Grocers Inc.

14              MR. MOSKIN:  Jonathan Moskin for Deutsche Bank and

15   J.P. Morgan Chase.

16              MR. PENCHINA:  Robert Penchina for General Electric

17   Credit Corporation.

18              MR. BAUMANN:  Michael Baumann for Deutsche Bank and

19   J.P. Morgan and the PCT and Robert Kors.

20              THE COURT:  All right.  This is a premotion

21   conference, gentlemen, and I have a couple of preliminary

22   matters.  First, Mr. Hogan, your second amended complaint

23   asserted nine additional claims, and added three defendants,

24   but by my count, only two of those defendants have been served.

25   What is the status of Core-Mark?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

82DFBERC

1          MR. HOGAN:  I believe, your Honor -- this is Timothy

2      Hogan.  I believe, your Honor, that there was a return filed

3      for Core-Mark that should appear in the docket.  I don't have

4      the number in front of me, the waiver of service, waiver of

5      summons.

6          THE COURT:  All right, well, are counsel aware of any

7      service on Core-Mark?

8          MR. BAUMANN:  I'm aware that Core-Mark was requested

9      to waive service and there have been discussions between

10     Mr. Hogan and Core-Mark and including my firm about dismissing

11     Core-Mark without prejudice, and I don't know where they stand,

12     because I've been traveling, I don't know if that's going to

13     happen in the next couple of dates or not.

14         THE COURT:  Mr. Hogan, who do you understand is

15     representing Core-Mark?

16         MR. HOGAN:  Well, presently, I believe Mr. Baumann has

17     indicated that he's representing Core-Mark.

18         MR. BAUMANN:  That's technically correct, and, your

19     Honor, if I can explain.

20         THE COURT:  All right.

21         MR. BAUMANN:  Core-Mark does not have an in-house

22     counsel and they wrote to Mr. Hogan explaining various things.

23     I don't want to characterize this, but in effect they're a

24     holding company, and he had sued the wrong entity and they

25     asked him to dismiss, and they also provided some information

82DFBERC

1   that they never used this software.

2           There was some discussion between Mr. Hogan in

3   writing, between Mr. Hogan and the CEO of Core-Mark, at which

4   point I think Mr. Hogan suggested that if they entered into a

5   stipulation, Core-Mark might want to talk to a lawyer and they

6   contacted us because they were aware of this.  So we talked,

7   someone in my office talked to Mr. Hogan about whether there

8   could be a dismissal in this case, so I believe they will be

9   dismissed out of the case.  We have not entered a formal

10  appearance, which is why it hasn't been done yet.

11          THE COURT:  The only purpose for my inquiry is just to

12  make sure that I don't have some other motion presumably coming

13  along at a later point in time.

14          Now --

15          MR. HOGAN:  Your Honor, if I may -- your Honor, this

16  is Timothy Hogan -- document 27 filed on 1/16/2008 was a waiver

17  of summons executed by Core-Mark.

18          THE COURT:  All right.  I missed it earlier in my

19  review.

20          Now, the two other new defendants want to make a

21  motion for summary judgment as well as a motion for sanctions.

22  Before we address that question, on the motion for summary

23  judgment, Mr. Hogan, would it be the plaintiff's position that

24  any discovery was needed?

25          MR. HOGAN:  Yes, your Honor.  I've been sent -- the

5

82DFBERC

1  Court was provided with a letter requesting this.  I have been

2  accelerating my attempts to obtain materials and, yes, there

3  will be discovery needed before summary judgment would be

4  appropriate.

5          THE COURT:  Well, specifically, what discovery would

6  you want to have in order to oppose a motion for summary

7  judgment?  Because I'm going to fix a schedule for a summary

8  judgment motion and the one thing that I don't want to be

9  greeted with in opposition to that motion is a 56(f)

10  application.

11          MR. HOGAN:  Yes, your Honor, and I fully understand

12  the wastefulness of those.  Your Honor, there are several

13  claims that are bound up in what Mr. Baumann has presented to

14  the Court.  In regard to the PCT, your Honor, I would want to

15  take Mr. Kor's deposition.  I also have requested documents

16  that are related to two transactions, and I've asked that the

17  documents be produced on an expedited basis, and I've not

18  received an affirmative response.  The two transactions are an

19  indemnity agreement in which Fleming, in order to complete the

20  sale to C&S, agreed to indemnify C&S for its unlicensed use of

21  what they termed Berry technology.  There is a single document,

22  a small indemnity agreement that has been made part of the

23  record in the Fleming bankruptcy, but there is, we believe, a

24  myriad of documents surrounding that that have never been

25  disclosed or produced.

6

82DFBERC

1          There is subsequently a settlement agreement that was

2     entered between Fleming and C&S. This was, I believe, in 2006,

3     sometime in the fall in which all the issues related to

4     executory contracts were resolved between Fleming and C&S, with

5     the exception of the Berry matters that were retained. That

6     settlement agreement, although it was part of a bankruptcy

7     proceeding and was, I believe, part of settling an adversary

8     proceeding, was never made record, had never been produced. We

9     requested documents related to that agreement as well as the

10     agreement and they have not provided it.

11          Those are the areas regarding the PCT, and we believe

12     there would be correspondence between the PCT -- PCT's

13     attorneys and C&S and probably the lenders in which they

14     concede that C&S is presently engaged in unlicensed use of

15     Berry works. These are, obviously, important to all issues in

16     this case, but they are very important to the PCT liability

17     under the RICO claims in which it claims to be blameless for

18     everything that's occurred, and we believe the evidence will

19     show that they have effectually entered into an agreement to

20     allow someone to infringe software in violation of Title 17 for

21     financial gain.

22          My experience has been in dealing with this firm when

23     it represented -- and I'm speaking about Kirkland & Ellis --

24     when they represented the debtors in the bankruptcy, now it

25     represents the PCT and the lenders in this case, is that they

7

82DFBERC

1  will not provide documents when requested.  I expect there will

2  be a discovery fight over it and we will appear again in front

3  of your Honor on the same issue.

4          THE COURT:  Let's not contemplate so many future

5  disputes.  The question I posed was a narrow one about 56(f)

6  discovery.  You've provided me, as I distill it, with three

7  things that you want; Kor's deposition, documents relating to a

8  purported indemnification agreement, and documents relating to

9  a settlement agreement between Fleming and C&S, is that

10  correct?

11          MR. HOGAN:  That is correct, and there's one other

12  area, your Honor, what has occurred in Florida.  I have been

13  attempting to communicate -- there were three detectives that

14  were hired in Florida.  I have confirmed they were not hired by

15  Mr. Berry's estranged spouse's divorce attorney, they were

16  hired by someone else.  I have been trying to get through to

17  who hired them, and there have been various privileges asserted

18  as to the communications with the detectives.  Florida law,

19  apparently, is strict regarding detectives disclosing what went

20  on in those matters, and that's going to have to be addressed

21  as well.

22          THE COURT:  But how does that bear on the contemplated

23  summary judgment motions?

24          MR. HOGAN:  I believe Mr. Baumann's letter to the

25  Court on January 30th dealt with that issue as well, your

8

82DFBERC

1  Honor, and I'm looking at it to make sure that I haven't spoken

2  out of school.

3          THE COURT:  Why don't I just hear from Mr. Baumann,

4  all right?

5          MR. HOGAN:  Yes.  Thank you, your Honor.

6          MR. BAUMANN:  Your Honor, there is an abuse of process

7  count alleged against the PCT and Kors.  I have told Mr. Hogan

8  in writing, orally and otherwise that the PCT and Kors did not

9  serve process in Mr. Berry's divorce proceeding, they did not

10  cause process to be served in the divorce proceeding.  I now

11  understand the origins of the original complaint that had my

12  name in it.  Apparently, there's been a filing in Hawaii

13  accusing me of staking out the West Palm Beach airport and

14  pointing out Mr. Berry to a process server.  I told Mr. Hogan

15  that didn't happen, and, you know, I don't know what to do when

16  you ask for discovery of events that never transpired.

17          We want to submit a declaration from Kors on behalf of

18  the PCT demonstrating that we had nothing to do with the

19  service of process in Mr. Berry's divorce proceeding, so I

20  don't think there should be any discovery in that case.  I

21  don't know what investigators he's talking about. they have

22  never been identified by me, none have been retained by my firm

23  or by the PCT or Mr. Kors.

24          THE COURT:  What about the other discovery issues that

25  Mr. Hogan has raised?

82DFBERC

1          MR. BAUMANN:  First, the indemnity was approved by the

2     bankruptcy court.  Mr. Hogan and Mr. Berry were present and

3     received it, it's on the public docket.  The settlement that

4     he's referring to between C&S and the Fleming/PCT bankruptcy,

5     what happened was that C&S in an approved bankruptcy sale

6     purchased assets of Fleming out of the bankruptcy, and as in

7     most of those purchase transactions, there were a number of

8     issues that had to be resolved between the parties, and they

9     were.  It has nothing to do with Mr. Berry's software or

10     anything else.

11          There is ongoing, currently, there was an indemnity

12     agreement at the time of the sale, because Mr. Berry had filed

13     a lawsuit, and at the time of the sale, the PCT or Fleming --

14     the PCT didn't exist at that time -- had agreed to indemnify

15     C&S against the claim in Hawaii and they have provided an

16     indemnification.  The settlement that he's referring to has

17     nothing to do with the software, but has to do with the fact

18     that the indemnity obligation has been fulfilled.  There was a

19     $200,000 amount up to which C&S bore the expense, and the

20     question between those two parties is who pays if anybody ever

21     collects money from Mr. Berry.  Does it come out of the first

22     200,000 or the last 200,000?  Since he's never been paid,

23     that's not been resolved.

24          To that extent, I suppose the settlement agreement

25     carves out something with regard to Mr. Berry, but it has

10

82DFBERC

1  nothing to do with the basis for the summary judgment motion

2  dealing with the PCT and Mr. Kors.

3       THE COURT:  What about Mr. Kors' deposition?

4       MR. BAUMANN:  I don't know what would be asked.  I

5  would expect that what Mr. Kors will say in a declaration is

6  he's not hired anybody, he's not made any payment to the Lynch,

7  Ichida firm, he's not obtained a lien on behalf of the PCT,

8  didn't hire detectives, didn't cause process to be served.

9  They certainly are not using Mr. Berry's software and we have

10  bankruptcy court records and hearings that Mr. Hogan not only

11  filed in the bankruptcy court demonstrating that the license on

12  which he is suing, the one count related to bankruptcy was

13  rejected in the bankruptcy court.  He filed on behalf of

14  Mr. Berry a rejection claim acknowledging that the executory

15  license had been rejected and made a claim in the bankruptcy on

16  that basis.  He's now suing on that rejected contract claiming

17  that it should be specifically enforced.  That's a purely legal

18  issue.  There's nothing to ask Mr. Kors about in connection

19  with that.

20       Frankly, your Honor, I anticipated at the time we

21  asked for this that the likely response would be you can't

22  grant summary judgment, we need discovery.  I assumed that some

23  such claim would be made.  My expectation was that if the rule

24  is followed, Rule 56(f), and very specific need is demonstrated

25  and specific examples of how and why it relates to the summary

82DFBERC

1   judgment, that it would be denied, and that we would be able to

2   move forward on a summary judgment motion.

3        So I anticipated that this would happen.  I just don't

4   see the need for it on the material factual issues that relate

5   to each of those counts against the PCT and Kors that we would

6   move on.  There is nothing to take discovery of, for the most

7   part, because none of these events happened.  They just didn't

8   happen.  There's nothing we can give him, there's nothing that

9   will be said differently.

10        THE COURT:  When will you be prepared to file the

11   motion for summary judgment?

12        MR. BAUMANN:  By the end of February, beginning of

13   March.

14        THE COURT:  All right.  Do any other defense counsel

15   want to be heard on this question?  I mean, let's turn for a

16   moment to the sanctions -- excuse me, the motion for, well, the

17   motion for sanctions.  Obviously, fixing a briefing schedule

18   for that includes the need to establish a safe harbor

19   provision, and I'm taking it that as much as I'd like to try to

20   hear all of these motions at one time, what's the parties'

21   respective views about the possibility of being able to do

22   that?  It seems like we could not hold to the April 4, if that

23   is our date --

24        MR. BAUMANN:  That is the date, your Honor.

25        THE COURT:  Our April 4 oral argument date, but is

82DFBERC

1   there any view as to whether or not if we put it off for a

2   short period of time we would be able to hear -- I'd be able to

3   hear all the motions at once?

4          MR. BAUMANN:  We certainly could do the summary

5   judgment motion and have it heard by the April 4 date, I

6   believe.  I agree with you that because of the 21-day safe

7   harbor provision that it would be difficult, if not impossible,

8   to meet the April 4 deadline.  So the solution -- I'm a little

9   hesitant to move out the time that we have to stay involved in

10  this case by moving the April 4 date.  I'd rather have -- I

11  guess I'd rather have the sanctions heard at a later time and

12  go ahead and tee up the actual substantive motions and set a

13  different briefing schedule on the sanctions motion.  It would

14  still give an opportunity within the safe harbor period to

15  avoid the need to even have the summary judgment hearing.

16         THE COURT:  Mr. Hogan, do you have a view on that?

17         MR. HOGAN:  Yes, your Honor.  If I may just get off

18  for just a bit, your Honor.  One of the issues in this case I

19  think would be decided on summary judgment is the ongoing

20  infringement of C&S, the PCT's involvement in that and its

21  liability under the RICO statute.  If we're going to set a

22  briefing schedule for summary judgment, rather than do it

23  piecemeal -- and that's what counsel is suggesting -- in order

24  to get the PCT out as soon as possible, it makes more sense to

25  set a rational briefing schedule for summary judgment motions

82DFBERC

1    in total in this case.  If this were not done under the Hawaii

2    rules, your Honor, I would file a counter motion to the motions

3    that are pending and seek summary judgment.  That's what was

4    pending when this case was moved from Hawaii.  We believe the

5    prior adjudications, the writ of mandate of the Ninth Circuit,

6    indicate that C&S is using Mr. Berry's software.  It has no

7    license.  The PCT has facilitated that use and that the parties

8    are liable for infringement.  If we prevail on that, your

9    Honor, you know, I, frankly, can move off of the other issues

10   regarding the PCT, because it's a significant hit against the

11   PCT and I don't need to go forward on the other matters.

12           What they're trying to do, and they've been successful

13   in the past, is to nibble at this thing, and the reality is, I

14   think when your Honor reads the responses to the motions that

15   are pending now, it will either, you're either going to say Mr.

16   Hogan, goodbye, you lose, or C&S, PCT and the lenders may be n

17   a different class, you lose, and it's going to be very, very

18   obvious that it's something that can be decided on summary

19   judgment, because it's based on prior adjudication.  It's not

20   based on a -- and I will just tell you, your Honor, I'll put it

21   out here.  Mr. Berry will testify that he saw Mr. Baumann in

22   the airport when he got off his plane on August 14.  So

23   Mr. Baumann is going to put in a declaration that says "I

24   wasn't there" and Mr. Berry is going to put in a declaration

25   that says he was.  Mr. Baumann has apparently already seen --

14

82DFBERC

1  Mr. Berry filed that months ago in another proceeding, it's not

2  something he just made up.  What he's trying to do is

3  essentially increase the cost of the litigation; to bury

4  Mr. Berry, no pun intended, your Honor, and to make it

5  impossible for him to protect his copyrights, while a case is

6  pending in the Ninth Circuit that will decide many of the

7  issues as well.

8       I understand Mr. Kors -- I want to take his deposition

9  because Mr. Kors knows what happened, and if Mr. Kors testifies

10  under oath, he will testify that he is aware that the PCT is an

11  infringer, he has given them aid and that he is liable for

12  that.

13       Now, what I'm saying is, I fully agree this case

14  should be done on summary judgment.  I do not believe there's

15  going to be a need to hold a trial with the exception of

16  damages, if I prevail, just like the last trial.  But what

17  Mr. Baumann is suggesting is, one, don't give me any discovery.

18       I just want to make one comment, your Honor.  The

19  $200,000 that Mr. Baumann just mentioned regarding the

20  settlement and who owes who, I don't think I've ever seen that

21  number appear in any document that was filed in court or

22  produced in discovery.  This is an issue that I've never been

23  aware of until Mr. Baumann mentioned it in court.  I admit I'm

24  getting old, but I have a pretty good memory for the facts of

25  this case, and that's evidence that there's things out there

82DFBERC

1    between the PCT and C&S related to Mr. Berry that have never

2    been produced.  It is not privileged.  It's buyer and seller in

3    a transaction in which I believe reading this indemnity

4    agreement one would presume they've sold Mr. Berry's works to

5    C&S, their debts notwithstanding.  So I understand Mr. Baumann

6    is going to proceed and attempt to sanction me personally in

7    this case, your Honor, but I believe I'm obligated to proceed

8    with my client's case as it is.  The evidence -- what I believe

9    this has been is attempts to get discovery from me by

10   threatening me.  I object to that.  I believe there's a

11   rational -- first, this case may go away on the motions that

12   are presently set.  It's possible, although when one looks at

13   what's being filed, it doesn't look as though the parties are

14   really thinking that it will, otherwise they would just sit and

15   wait.

16        Mr. Kors and the PCT are under the RICO count, your

17   Honor.  If we were to even dismiss the ones that Mr. Baumann

18   suggests are sanctionable, he hasn't even addressed that count.

19   So what we're doing is partial summary judgment, and that is

20   wasteful, your Honor.  This Court has given us this lunch break

21   to deal with this.  I don't think it makes sense to keep doing

22   these little nibbling bits in this case.  We have motions that

23   are set to be heard.  The Court may throw Mr. Berry out on his

24   ear and they could come in and try to get sanctions and

25   everything they want after that.  If they prevail, I will think

82DFBERC

1    the Court will see there's no need to do a trial in this case

2    regarding C&S and its liability to Mr. Berry.  That is the key

3    to this case.  Once C&S is shut down in Hawaii, this case will

4    go away.

5             My goal is, your Honor -- this is what my plan is for

6    the case.  Summary judgment and a preliminary injunction

7    against further infringement, and I believe this case will wrap

8    up.  I would like us to have when summary judgments are heard

9    for me to be able to put my motions before the Court so it can

10   all be decided at once.

11            THE COURT:  All right.  Briefly, does any defense

12   counsel want to respond to Mr. Hogan's comments?  And we're

13   really directed at the briefing schedule that the Court should

14   establish.  The one thing I'm garnering that the parties are in

15   agreement on is that motions for sanctions need not be in

16   tandem with the summary judgment and motions to dismiss.

17            MR. BAUMANN:  Agreed, your Honor.

18            MR. PENCHINA:  That's correct for us as well, your

19   Honor.

20            THE COURT:  So on the issue of putting off the summary

21   judgment motions or hearing the motions to dismiss as scheduled

22   now, are the parties ready to get their motions for summary

23   judgment in and fully briefed so that they could be heard with

24   the motions to dismiss on April 4?

25            MR. BAUMANN:  On behalf of the PCT and Kors, yes, your

82DFBERC

1   Honor.

2           MR. PENCHINA:  We don't have, on behalf of GE, a

3   motion for summary judgment.

4           THE COURT:  I understand that's true with respect to

5   the other parties, Deutsche Bank and J.P. Morgan.

6           All right.  Mr. Hogan, I'm going to suggest this:

7   That you see what the Rule 56.1 statement looks like, and if

8   you can make a showing to me as to why you need discovery on an

9   issue that's specifically delineated in the 56.1, I will

10  entertain that application and it might wind up derailing oral

11  argument on the summary judgment motions on April 4, but it's

12  not going to derail argument on the motions to dismiss.

13  There's an enormous amount of work that I have to do to get

14  ready to hear these motions.  I was hoping just to have to do

15  it once.  It's against that hope that you'll have to make your

16  showing to me of the need for discovery on the new defendants'

17  summary judgment motions.  Do you understand?

18          MR. HOGAN:  Yes, your Honor.  So I'm understanding, I

19  have to file oppositions to the three motions that are pending

20  on the 25th and I have to respond to a motion for summary

21  judgment that I haven't seen yet at some time soon?  I'm just

22  trying to figure out when I'm going to get all this done.  And

23  I guess I don't understand how I submit what the Court has

24  suggested that I submit, a 56.1 statement and when do I do

25  that?

82DFBERC

1          MR. BAUMANN:  I would recommend, your Honor, that we

2   file no later than March 3rd, which is a Monday, and under Rule

3   56(f), if the response is that he needs discovery, we should be

4   able to identify that fairly promptly.  I think you are also --

5   I mean, I could move it earlier on the summary judgment motion.

6          THE COURT:  I think you should.  I think you should

7   file your summary judgment motion by February 26th, so that

8   Mr. Hogan can oppose the motion by March 20th.  Can you do

9   that, Mr. Hogan?

10          MR. HOGAN:  Yes, your Honor.

11          THE COURT:  And any reply by March 28th.  Am I correct

12   to understand that the motion for summary judgment is not going

13   to resolve any issues with respect to the RICO claims?

14          MR. BAUMANN:  Your Honor, the only predicate acts

15   alleged against the PCT and Kors are in those same counts of

16   abuse of process and the same allegations, so I think that if

17   those are untrue and meritless, then the RICO claim is equally

18   untrue and meritless.

19          MR. HOGAN:  Your Honor, I don't think that's true.

20   I've got a 1962(d) conspiracy claim against the PCT that

21   encompasses the other predicate act of other participants.

22          THE COURT:  All right.  I'll have to wait to abide the

23   event.

24          Now, I have one other question on this for you, Mr.

25   Hogan.

82DFBERC

1          MR. HOGAN:  Yes, your Honor.

2          THE COURT:  Your second amended complaint was agreed

3   that it would be your final effort in this action to frame a

4   claim against defendants.  At least that's my understanding.

5   Am I correct in that?

6          MR. HOGAN:  That was the deal, your Honor.

7          THE COURT:  Well, all right.  But you still

8   nevertheless named John Does in the second amended complaint.

9   The presence of John Does always suggests a work that's

10  incomplete.  How do you reconcile that?

11         MR. HOGAN:  Well, I guess when I named them, your

12  Honor, I went through several pleadings that I found in the

13  Southern District and in particular copyright cases and found

14  that they are used.  And part of the reason is, your Honor, in

15  an infringement case like this, we may find through discovery

16  that the number of users has been, you know, significantly

17  larger than what we had originally intended and that we would

18  attempt to name them as Doe.  It isn't as a way of sort of

19  sandbagging, but it's a way to say we don't know who each of

20  the users of the Berry works are.  If C&S has put this across

21  its systems, then the numbers would be in the thousands.

22         I'm not saying I would name them all, but I at least

23  want to preserve my ability to attain some relief against the

24  unknown infringers.  I think there are comments in these

25  downloading cases where they go in and get the Does, because

82DFBERC

1   the whole complaint is based on Does and only on IP address.

2           THE COURT:  Right.  But --

3           MR. HOGAN:  I don't know how the Court resolves it.

4           THE COURT:  John Does are generally resolved by either

5   identifying them or they're out.  And courts grant discovery

6   requests all the time to identify John Does from IP addresses,

7   but that's for another day.

8           Let me clean up the other motions, then, that we have

9   here.  With respect to the motion for sanctions, shall we set a

10  briefing schedule with respect to that?

11          MR. BAUMANN:  That's fine, your Honor.

12          THE COURT:  What's your proposal?

13          MR. BAUMANN:  That I would propose, since we can't do

14  it by the same hearing date --

15          THE COURT:  It doesn't really matter, does it?

16          MR. BAUMANN:  No, it doesn't.  So --

17          THE COURT:  Do you want to wait until argument on

18  April 4 to fix a briefing schedule with respect to the motion

19  for sanctions?

20          MR. BAUMANN:  That would be fine, your Honor.  That

21  would be fine.

22          THE COURT:  All right.  Finally, there's a motion or

23  an application with respect to a bond in the case.  I think I

24  would like to hear that as a formal motion.  Is there any

25  reason why I can't hear that on April 4 as well?

82DFBERC

1          MR. BAUMANN:  I don't think there's any reason at all,

2     your Honor.

3          THE COURT:  All right.  Can we use the same schedule

4     that we've adopted for the summary judgment motion for the

5     motion for a bond?

6          MR. HOGAN:  I have no objection to that.  I have one

7     caveat, your Honor.  I have been trying to get debt

8     verification from counsel, particularly counsel for C&S, that

9     they are the ones actually holding the alleged claim for

10    Mr. Berry, I have not had a response.  That's important with

11    regard to the issues, because Mr. Berry believes he offsets

12    everything that they claim they're owed.  We believe that the

13    amount that C&S claims are actually owed to the PCT, but again,

14    I will simply ask for debt verification and I ask that I get

15    that prior to them filing or at least have it provided in their

16    motion.

17         THE COURT:  I think they'll --

18         MR. MASON:  Let me speak to that if I could, your

19    Honor.  The judgment in the case, which is Exhibit, I guess J

20    to our motion papers, is in favor of my client C&S Wholesale,

21    and this argument about who has the debt was actually raised by

22    Mr. Hogan in front of the magistrate judge in Hawaii on

23    attorneys fees and the magistrate judge pointed out that

24    Mr. Berry might well make the argument that because costs might

25    have been advanced by the PCT in favor of defendants for C&S

82DFBERC

1    that somehow the debt was not owed to C&S.  The magistrate

2    judge rejected that argument, recommended an order be entered,

3    attorneys fees in favor of C&S.  That judgment is still in the

4    name of my client.  That's all the certification he needs.

5            THE COURT:  All right.  Look.  In any event, it's

6    going to be laid out for the Court in the motion papers, and I

7    think that that's sufficient notice and you'll have the

8    opportunity to challenge it, Mr. Hogan.

9            MR. HOGAN:  Thank you, your Honor.

10            THE COURT:  All right.  Is there anything else that --

11    I think what I'll do is embody all of this in a scheduling

12    order and then I will docket it on ECF so everyone will have

13    it.  But is there any other issue that counsel want to raise?

14            MR. BAUMANN:  The only issue and I'm a little hesitant

15    is that on the Core-Mark issue, my understanding is that

16    Core-Mark is going to be dismissed.  If they are not, Core-Mark

17    has significant -- would join the bonding issue and they, too,

18    would be filing some type of motion in response to --

19            THE COURT:  When you say some type of motion, a motion

20    to dismiss or a motion for summary judgment?

21            MR. BAUMANN:  My guess is, your Honor, that it would

22    be a motion for summary judgment, because this is another

23    instance in which the declaration would say they don't use it,

24    they don't have it, they searched.  We would put that forward,

25    I'm guessing we would get a request for discovery of some type.

82DFBERC

1    But I'm a little hesitant to -- I'm very hopeful that Core-Mark

2    will be dismissed.  I'd like to know it, but as long as we're

3    here, it would be difficult for me to add them to a summary

4    judgment at this point in time because at this point we've been

5    operating on the assumption from correspondence that they are

6    very likely to be dismissed.

7             MR. HOGAN:  Your Honor, Timothy Hogan.  Your Honor, I

8    have been in discussion with Mr. Baumann's firm regarding

9    Core-Mark.  I have agreed that we will dismiss them with each

10   party to bear their own costs and fees.  There's some issue

11   regarding the manner of getting that accomplished presently,

12   your Honor, but that is what I have agreed to do, and that is

13   what I'm willing to do.  There was a draft circulated, so it is

14   my understanding that that would be accomplished, your Honor,

15   but it has not been signed off on.

16            THE COURT:  All right.  It sounds to me that it is

17   purely ministerial at this point, and I'm confident you folks

18   will work it out, and in any event, we now have it on the

19   record.  I'm confident it will be worked out.

20            All right?  Anything further?

21            MR. PENCHINA:  Nothing further on behalf of GE, your

22   Honor.

23            MR. MASON:  No, your Honor.  Thank you very much.

24            MR. MOSKIN:  Thank you very much.

25            MR. BAUMANN:  Nothing further.

82DFBERC

1          THE COURT:  Anything further Mr. Hogan?

2          MR. HOGAN:  No, other than to thank the Court for

3     allowing me to appear telephonically.

4          THE COURT:  Well, you're missing an absolutely

5     dreadful day New York.

6          MR. HOGAN:  I miss the weather, though, your Honor.  I

7     lived in New York for many years and I have to admit again I

8     miss the seasons.

9          THE COURT:  I don't miss a day like today.  All right?

10    Have a good afternoon.

11         MR. HOGAN:  Thank you, your Honor.

12         (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25