UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -    x

WAYNE BERRY,                                                   :    Index No. 07-CV-7634 (Judge
                                                               :    William H. Pauley III)
                                                               :
                          Plaintiff,                           :    ECF Case
                                                               :
              -against-                                        :
                                                               :
DEUTSCHE BANK TRUST COMPANY                                    :
AMERICAS (F/K/A BANKERS TRUST                                  :
COMPANY) AND JP MORGAN CHASE BANK IN                           :
THEIR SEPARATE CAPACITIES AND AS                               :
AGENTS FOR THE PRE AND POST-PETITION                           :
LENDERS OF FLEMING COMPANIES, INC.;                            :
GENERAL ELECTRIC CAPITAL CORPORATION;                          :
C&S WHOLESALE GROCERS, INC.; THE POST-                         :
CONFIRMATION TRUST OF FLEMING                                  :
COMPANIES, INC.; ROBERT KORS; CORE-                            :
MARK HOLDINGS INC.; AND DOES 1-200,                            :
                                                               :
                          Defendants.                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -    x


**MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT GENERAL ELECTRIC CAPITAL CORPORATION'S
<u>MOTION TO DISMISS</u>**


LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
321 West 44th Street, Suite 510
New York, NY 10036
(212) 850-6100
Robert Penchina
*Attorneys for Defendant General Electric Capital
Corporation*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

I.   BERRY DID NOT STATE A CLAIM FOR SECONDARY
     COPYRIGHT LIABILITY ............................................................................................... 2

II.  BERRY'S UNJUST ENRICHMENT CLAIM IS PREEMPTED ...................................... 7

III. BERRY HAS NOT STATED A RICO CLAIM .................................................................. 9

CONCLUSION ........................................................................................................................ 10

i

## TABLE OF AUTHORITIES
### CASES

*In re American Express Shareholder Litigation*, 39 F.3d 395 (2d Cir. 1994)................................9

*Antonios A. Alevizopoulos & Associates v. Comcast International Holdings, Inc.*, 100 F. Supp. 2d 178 (S.D.N.Y. 2000) ........................................................................................................4

*Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955 (2007) ............................................1

*Carell v. Shubert Organization, Inc.*, 104 F. Supp. 2d 236 (S.D.N.Y. 2000) ................................6

*Demetriades v. Kaufman*, 690 F. Supp. 289 (S.D.N.Y. 1988) ........................................................2

*First Capital Asset Management v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) .......................9

*Grosso v. Miramax Film Corp.*, 383 F.3d 965 (9th Cir. 2004) ......................................................8

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) .................................................................................1

*Mahoney v. Beacon City School District*, 988 F. Supp. 395 (S.D.N.Y. 1997)...........................3, 4

*Netzer v. Continuity Graphic Associates, Inc.*, 963 F. Supp. 1308 (S.D.N.Y. 1997)....................8

*Orange County Choppers, Inc. v. Olaes Enterprises, Inc.*, 497 F. Supp. 2d 541 (S.D.N.Y. 2007) ..............................................................................................................................8

*Rubin Brothers Footwear, Inc. v. Chemical Bank*, 119 B.R. 416 (S.D.N.Y. 1990)...................6, 7

*Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.*, 118 F.3d 955 (2d Cir. 1997)...................................................................................................................................7

*Sperber v. Boesky*, 849 F.2d 60 (2d Cir. 1988) .............................................................................9

*Stewart v. World Wrestling Federation Entertainment, Inc.*, 74 U.S.P.Q. 2d 1024, 2005 WL 66890 (S.D.N.Y. Jan. 11, 2005)..............................................................................................8

*Vasquez v. Torres-Negron,* 06 Civ 619, 2007 WL 2244784 (S.D.N.Y. July 11, 2007)...............6

*We v. Merrill Lynch & Co.*, 99 Civ. 9687, 2000 WL 1159835 (S.D.N.Y. Aug. 15, 2000)............6

### STATUTES & RULES

Fed. R. Civ. P. 9(b)........................................................................................................................4

17 U.S.C. § 301 ..........................................................................................................................7, 8

## PRELIMINARY STATEMENT

This reply memorandum respectfully is submitted by General Electric Capital Corporation ("GECC") in further support of its motion to dismiss the Second Amended Complaint ("SAC").

In opposition to GECC's motion, Berry simply repeats some of the broad conclusory allegations contained in the SAC which, as discussed in GECC's initial submission, cannot state a claim. In addition, Berry attempts to supplement his pleading by: (i) submitting documents neither part of nor referred to in the SAC; and (ii) by relying on Ninth Circuit, rather than Second Circuit, cases. Even taking those materials into account, however, Berry has not stated—and cannot state—a claim against GECC.

Berry has failed to cite a single case in which a mere lender has been held liable for infringing acts undertaken by its borrower, let alone for a RICO claim arising from those acts. Instead, Berry lumps GECC together with his broad allegations against "lenders"—but does not identify acts taken by GECC as distinct from acts allegedly committed by others.

Berry belittles GECC's position as merely an "offhand claim that [Berry's assertions] are 'implausible.'" (Berry Opp. 2). However, Berry ignores that the Supreme Court recently imposed a "plausibility standard," requiring a plaintiff "to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965, 1968 (2007), and that the Second Circuit now requires plaintiffs to plead facts "needed to render the[ir] claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). Nothing in Berry's opposition papers render his claims against GECC the least bit plausible.

1

## I.    BERRY DID NOT STATE A CLAIM FOR SECONDARY COPYRIGHT LIABILITY.

The SAC does not establish any participation by GECC in the alleged infringements committed by others, and Berry's opposition gives no basis for finding otherwise.

Berry asserts that "direct infringement was already established in two previous lawsuits," specifically in *Berry v. Fleming*, CV 01-00446 SPK-LEK (D. Haw.) and *Berry v. Hawaii Express Service, Inc.*, CV 03-00385 SOM-LEK (D. Haw.).  (Berry Opp. 6).  But a review of the pleadings in those lawsuits demonstrates that they do not support a claim against GECC.  First, as Berry himself explains in his opposition to the motion to dismiss filed by codefendant C&S Wholesale Grocers, Inc. ("C&S"), the first case was filed "on July 3, 2001" against Fleming and "[o]n March 6, 2003 . . . a federal jury . . . returned its verdict for Mr. Berry."  (Berry C&S Opp. at 2-3).  Yet, the SAC makes absolutely clear that "prior to September 2005, GECC's role in Fleming related matters was limited to being one of dozens of participating lenders."  (SAC ¶ 107).  Because that litigation related to alleged infringements occurring before September 2005—when GECC was just one of many lenders and not substantially participating in any infringing conduct—any direct infringements found in that prior case cannot be the basis for secondary liability against GECC.  *See, e.g., Demetriades v. Kaufman*, 690 F. Supp. 289, 294 (S.D.N.Y. 1988)("We are familiar with no concept of justice that would permit extension of third-party liability in this case on so attenuated a basis. Something more--deriving from one's substantial involvement--is needed.").

Second, according to Berry, the second case was commenced on "July 22, 2003" and "sought damages solely against Hawaii Express Service, Inc."  (Berry C&S Opp. at 10). Notably, the court held that *C&S did not infringe* Berry's works: "This court declines to enjoin those who have not been found to have infringed Berry's copyright.  Thus, the court does not

2

enjoin C&S . . . ." (*Berry v. Hawaii Express Serv., Inc.*, 03-00385 (D. Haw. 2006), Ex. 14 to

Hogan Decl. in Opp. To C&S). Accordingly, that case does not help Berry here. Moreover, it

too related to an alleged infringement occurring before September 2005, and thus cannot be a

predicate for a claim against GECC. Further, there is no connection whatsoever between GECC

and Hawaii Express Service ("HES"), and there are no allegations to the contrary in Berry's

pleadings. Therefore, any acts by HES cannot result in liability *against GECC*. [1]

     In addition, those cases fail to help Berry here because claims based on conduct that was

the subject of the two Hawaiian actions are barred by the three-year copyright statute of

limitations, as those cases involved conduct occurring before March 6, 2003, and this action was

not filed until March 29, 2007. Berry contends that the statute of limitations is subject to "tolling

[based on] fraudulent concealment." (Berry Opp. 10). He is wrong. Berry argues that he "first

had the factual knowledge of the Lenders', including GECC's[,] involvement in the infringement

in March 2006." (*Id.*). However, this argument is belied by Berry's own pleading that, "[o]n or

about *Friday, November 4, 2005*, Mr. Berry through his counsel, wrote to GECC's parent" and

"informed GE of facts that supported the claim that GE was providing material support to

advance the ongoing infringement of Berry works." (SAC ¶ 114 (emphasis added)). In fact, any

possible tolling period ended when Berry first pursued his initial claims against Fleming. *See,

e.g.*, *Mahoney v. Beacon City Sch. Dist.*, 988 F. Supp. 395, 400 (S.D.N.Y. 1997) ("Retaining an

attorney will end equitable tolling of a limitations period."). Moreover, tolling should be

---

[1] In addition to Fleming and C&S, the SAC contains a number of speculative allegations that Core-Mark Holdings, Inc. ("Core-Mark") had infringed Berry's copyrights and GECC somehow should be liable for that activity. However, Berry has now withdrawn his claims against Core-Mark and dismissed it from this case, and his opposition to GECC's motion does not identify any infringing conduct undertaken by Core-Mark that would sustain secondary liability against GECC.

rejected because Berry failed to plead fraudulent concealment with the specificity required by Fed. R. Civ. P. 9(b). For fraudulent concealment to apply, "plaintiff must plead all of the following three elements with particularity: (1) wrongful concealment by the defendant, (2) which prevented the plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing discovery of the claim." *Mahoney*, 988 F. Supp. at 400; *see, e.g., Antonios A. Alevizopoulos & Assocs. v. Comcast Int'l Holdings, Inc.*, 100 F. Supp. 2d 178, 184 (S.D.N.Y. 2000) ("[I]n pleading fraudulent concealment, a plaintiff must generally comply with the particularity requirements of Rule 9(b) . . . for each of the three elements."). Here, Berry has failed to plead at all, much less with specificity, any acts done *by GECC* to conceal anything, or specify any due diligence Berry undertook to pursue discovery of his "claims" against GECC.

To the extent Berry asserts that infringements have occurred within the statute of limitations period, Berry's claim is fatally defective for failing to identify the particular works that allegedly were infringed. Berry argues that "the SAC details the infringement of Mr. Berry's work FCS." (Berry Opp. 12). However, "FCS" was identified as the subject of the Hawaiian cases. (SAC ¶ 40). In this case, Berry alleges that "[t]he works that are being infringed include over one hundred separate works including numerous registered works of original authorship and derivatives thereof all owned by Wayne Berry." (SAC ¶ 125).

Even if Berry had sufficiently pleaded that someone had committed a direct copyright infringement, the SAC does not specify any participation by GECC. Berry's opposition identifies where he believes his complaint spells out GECC's role: "In regard to allegations related to the element of inducement, causing or materially contributing to the infringement, *see* SAC ¶¶ 161 to 165." (Berry Opp. 2-3). However, those paragraphs contain *no factual*

4

*assertions* of any conduct by GECC. Rather, they contain catch-all conclusory assertions that

"[t]he Lenders have induced, caused and/or materially contributed to the infringing conduct of

Fleming, C&S and Core-Mark." (SAC ¶ 161). Rather than pointing to factual assertions capable

of making his claims plausible, Berry asserts that "the Lenders have assisted other infringers of

Berry works who are not yet known to Mr. Berry" which "may include[ ] Haliburton and its spin

off entity KBR and its successor to the LOGCAPS no-bid government contract, Fluor, Inc., who

has hired one of the architects of the Berry criminal infringement, Carlos Hernandez, Fleming's

former General Counsel." (*Id.* ¶ 162).

     Whatever Berry may conclude based on *his* view "that in order to be paid the Lenders

had to keep their hand tightly on the infringing works" (Berry Opp. 4), the SAC *does not* even

establish that GECC was a lender *to C&S*. Rather, the SAC asserts that GECC was "one of the

dozens of participating lenders in the Fleming and later Core-Mark loan facilities." (SAC ¶ 107).

The SAC simply provides no basis whatsoever to tie GECC to any act allegedly undertaken *by*

*C&S*, let alone exert control over its allegedly infringing conduct.

     Berry also argues that the Lenders "conceded" that they "not only [had] knowledge" but

were "acting in concert with the infringer" based on a statement made by "Fleming's attorneys in

the Second Hawaii case." (Berry Opp. 5). However, to demonstrate this supposed concession,

Berry submitted and cites to a statement made in oral argument by *Berry's own attorney, Mr.*

*Hogan.* (Hogan Dec. Ex. 2 at 108:9-17). Similarly, Berry asserts that his claims against GECC

are actionable because "the Lenders pre-petition agents . . . entered into a tolling agreement."

(Berry Opp. 11). However, Berry submitted this tolling agreement in opposition to the motion to

dismiss made by Deutshe Bank Trust Co. Americas and JP Morgan Chase Bank, and GECC is

not a party to that agreement. (Berry Dec. (Banks' motion) Ex. 3 (identifying 66 lenders other

than GECC as parties to the agreement). This is illustrative of Berry's use of the term "Lenders" to try to assert claims against GECC, while not having pleaded (because there are no) facts upon which to find GECC liable for anything.

Not having identified any specific assistance given by GECC to any infringing act, Berry argues that he "took great pains to describe GECC's role in the Core-Mark SEC Form 10 fraud." (Berry Opp. at 2). However, identifying a work on an SEC form does not constitute copyright infringement. Indeed, any false assertions of ownership, even if any such assertions had been made, *do not* constitute infringement upon which secondary liability for infringement may be based. *Cf. Vasquez v. Torres-Negron*, 06-Civ. 619 (CM), 2007 WL 2244784, at *5 (S.D.N.Y. July 11, 2007) ("'Plaintiff's infringement claim is separate and distinct from the adjudication of her ownership claims,'" *quoting Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 254 (S.D.N.Y. 2000)).

Unable to find wrongful acts by GECC, Berry argues that GECC should be responsible for all the disparate acts of other parties "through principals of agency law." (Berry Opp. 3). Berry's pleading, however, is devoid of the facts needed to establish an agency relationship between GECC and anyone else. It is fundamental that "conclusory statements that [some defendants] were 'agents' of [other defendants] do not allege an agency relationship sufficient to withstand dismissal." *We v. Merrill Lynch & Co.*, 99 Civ. 9687 (CSH), 2000 WL 1159835, at *5 (S.D.N.Y. Aug. 15, 2000). To establish an agency, Berry must show three elements: "(1) there must be a manifestation by the principal that the agent shall act for him; (2) the agent must accept the undertaking; and (3) there must be an understanding between the parties that the principal is to be in control of the undertaking." *Rubin Bros. Footwear, Inc. v. Chemical Bank*, 119 B.R. 416, 422 (S.D.N.Y. 1990). "Plaintiffs must do more than state the legal conclusion that

6

[a party] was the defendants' agent, it must plead facts that support a finding that such agency existed." *We*, 2000 WL 1159835, at *5. Here, Berry has not provided any facts demonstrating any of the elements of an agency relationship. In fact, although he denominates GECC as a "Lender," he has not pleaded that GECC specifically was a party to any syndicated loan extended by other so called "Lenders" to C&S. In short, the SAC does not contain facts sufficient to support any agency relationship involving GECC.

Nor has Berry shown that GECC had a legally recognizable direct financial interest in the alleged infringements. Berry did not address any of the cases cited in GECC's initial submission (GECC Mem. 9-10, 13), nor cite any cases in support of his own position, but simply wants the Court to accept that there is a direct financial interest because he says so. Berry contends that GECC had a direct financial interest because Fleming's use of allegedly infringing software allowed Fleming to stay in business, and thus "resulted in the sale to C&S" of Fleming's "Hawaii wholesale division," and thereafter the proceeds of that sale led to "the Lenders' receipt of over $200 million." (Berry Opp. 6). This chain of suppositions flies in the face of the applicable law, which requires a specific direct financial interest, such as a royalty tied directly to the sale of infringing items, to support secondary liability. *See, e.g., Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 971-72 (2d Cir. 1997). The SAC does not identify any direct financial interest in the proceeds of infringement held by GECC.

Simply put, Berry's copyright claims against GECC should be dismissed.

## II.    BERRY'S UNJUST ENRICHMENT CLAIM IS PREEMPTED.

Berry ignores the law within the Second Circuit and instead relies instead on a single inapplicable Ninth Circuit case to argue that his unjust enrichment claim is viable. The law in this Circuit is clear, however, that claims sounding in unjust enrichment seeking to recover for uncompensated use of a copyrighted work are preempted by Section 301 of the Copyright Act,

7

17 U.S.C. § 301. *See, e.g., Orange County Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d

541, 556 (S.D.N.Y. 2007)("[U]njust enrichment claim is dismissed because it is preempted by

the Copyright Act."); *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1322

(S.D.N.Y. 1997)("While Defendants may have been enriched by the exploitation of [the work],

Netzer's claim of unjust enrichment is preempted by the federal Copyright Act."); *Stewart v.

World Wrestling Fed'n Entm't, Inc.*, 74 U.S.P.Q.2d 1024, 2005 WL 66890, at *5 (S.D.N.Y.

Jan. 11, 2005)("The overwhelming majority of courts in this circuit have held that an unjust

enrichment claim based upon the copying of subject matter within the scope of the Copyright

Act is preempted." (internal quotation marks and citation omitted)).[2]

   Although Berry now argues that his unjust enrichment claim is founded on "conversion"

of the "material objects of the software that was delivered to C&S" rather than unauthorized use

of his copyrighted works (Berry Opp. 14-15), the operative complaint asserts that his unjust

enrichment claim seeks a remedy for "the use of his work." (SAC ¶ 179; *see id.* ¶ 182 (seeking

to recover supposed benefit "obtained with the knowledge that Berry would have to be paid if

Fleming continued to infringe.")). Indeed, it is utterly implausible that any benefit was conferred

on GECC or anyone else by, or that Berry would pursue many years of litigation at untold cost to

recover, the few cents of value represented by the material objects—the diskettes or CDs—on

----

[2] Berry's reliance on *Grosso v. Miramax Film Corp.*, 383 F.3d 965 (9th Cir. 2004), (Berry Opp. 12-14) is misplaced not only because the case is not controlling in this Circuit but because it is inapplicable to the facts at issue here. *Grosso* involved a claim "alleging breach of contract under California law." *Grosso*, 383 F.3d at 967. There, "the plaintiff prepared the work, disclosed the work to the offeree for sale, and did so under circumstances from which it could be concluded that the offeree voluntarily accepted the disclosure knowing the conditions on which it was tendered and the reasonable value of the work." *Id.* Here, GECC was a complete bystander to any transaction entered into by Berry, Berry never offered anything to GECC and GECC never accepted anything from Berry. Irrespective of what Berry's dealings with other parties may have been, the SAC provides no basis to imply any contract between Berry and GECC, much less any breach thereof by GECC.

which Berry's software was saved. Plainly, Berry's unjust enrichment claim is preempted and should be dismissed.

### III.    BERRY HAS NOT STATED A RICO CLAIM.

Berry's RICO claim is defective on so many grounds that space limitations do not permit discussion of them all. Accordingly, only some of the fatal deficiencies will be highlighted here.

Berry repeatedly argues that the "underlying criminal purpose of the enterprise is the commission of frauds on civilian and government customers of Fleming-Logistics." (Berry Opp. 15; *see also id.* at 16 (the "participants' separate rolls [sic] in the Enterprise are set forth in detail including the roll [sic] of C&S, its truckers and employees and other agents who have committed acts in furtherance of the Enterprise['s] underlying scheme to reap money derived from fraudulent invoicing of private and government customers.")). The SAC, of course, does not allege that Berry is either a civilian or government customer of Fleming. Thus, Berry has no standing to assert his RICO claims. *See, e.g., In re Am. Express S'holder Litig.*, 39 F.3d 395, 399 (2d Cir. 1994)(no RICO standing where "plaintiffs were 'neither the target of the racketeering enterprise nor the competitors nor the customers of the racketeer,'" *quoting Sperber v. Boesky*, 849 F.2d 60, 64-65 (2d Cir. 1988)).

Berry has failed to plead the existence of an enterprise that is "separate from the pattern of racketeering activity" as was required to state a RICO claim. *First Capital Asset Mgmt. v. Satinwood, Inc.* 385 F.3d 159, 173 (2d Cir. 2004). Berry simply identified a wide ranging cast of characters whom he accuses of committing all manner of wrongdoing, but never described any organization, hierarchy, or activities of an enterprise of which they were part. Berry argues, without citation to the operative complaint, that he pleaded "the coming and goings of the principals" and "unlawful activities of Fleming-Logistics enterprise." (Berry Opp. 16). However, reciting a litany of related and unrelated criminal allegations against an ever-changing

9

cast of characters does not satisfy Berry's burden to show the existence of an ongoing enterprise that exists separate from the alleged pattern of racketeering.

Berry has not even identified any RICO predicate acts committed by GECC. He failed to identify a single case in which accusations of secondary copyright infringement qualified as RICO predicate acts. Since claims sounding in copyright are the only claims Berry has standing to assert, he cannot assert any RICO predicates, and thus he cannot state a RICO claim, against GECC.

## CONCLUSION

For the foregoing reason, Berry's claims against GECC should be dismissed with prejudice in their entirety, and Berry should be ordered to pay GECC's costs and fees, together with such other and further relief the Court deems just and proper.


Dated: March 7, 2008
      New York, New York


                    Respectfully submitted,

                    LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

                    By: _____
                    Robert Penchina (RP 5866)
                    321 West 44th Street, Suite 510
                    New York, NY 10036
                    (212) 850-6100
                    *Attorneys for Defendant General Electric Capital Corporation*