UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X
                                         :

WAYNE BERRY,                                 :
                                         :

                           Plaintiff, :

                                         :

                  - against -                   :      01:07 CV 7634 WHP
                                         :      Judge William H. Pauley III
DEUTSCHE BANK TRUST COMPANY        :      ECF Case
AMERICAS (f.a. BANKERS TRUST COMPANY) :
AND JP MORGAN CHASE BANK, IN THEIR    :
SEPARATE CAPACITIES AS AGENTS FOR      :
THE PRE-AND POST-PETITION LENDERS OF   :
FLEMING COMPANIES, INC.; GENERAL       :
ELECTRIC CAPITAL CORPORATION; C&S     :
WHOLESALE GROCERS, INC.; THE POST-     :
CONFIRMATION TRUST OF FLEMING        :
COMPANIES, INC.; ROBERT KORS; CORE-    :
MARK HOLDINGS INC.; AND DOES 1 TO 200, :
                                         :
                            Defendants. :
                                         :
--------------------------------------------------------------- X

REPLY BRIEF OF DEFENDANT C&S WHOLESALE GROCERS, INC.
IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

                                      Christopher M. Mason
                                       CM-7146
                                       NIXON PEABODY LLP
                                       437 Madison Park Avenue
                                       New York, New York 10022
                                       (212) 940-3000

                                       Attorneys for Defendant
                                       C&S Wholesale Grocers, Inc.

Dated: March 7, 2008

Table of Contents

Page

Table of Authorities ................................................................................... ii

Preliminary Statement................................................................................. 1

Argument .................................................................................................... 2

I.    PLAINTIFF CLEARLY PUT AT ISSUE IN
      THE PRIOR HAWAII CASE AGAINST C&S
      ALL SOFTWARE AUTHORED BY HIM.................................................. 2

II.   PLAINTIFF CANNOT AVOID *RES JUDICATA*
      BY CLAIMING DAMAGES FOR A LATER
      PERIOD OF TIME .............................................................. 5

III.  A $98,250 VERDICT IN A 2003 CASE IN
      WHICH C&S WAS NOT A PARTY DOES
      NOT CHANGE THE PRECLUSIVE EFFECT
      OF THE 2006 JUDGMENT IN C&S'S FAVOR.......................... 8

IV.   PLAINTIFF HAS NOT SHOWN WHY
      THE BALANCE OF HIS CLAIMS SHOULD
      NOT ALSO BE DISMISSED................................................ 8

Conclusion ................................................................................................ 10

Table of Authorities

Cases                                                                                                   Pages

*Berry v. Hawaii Express Serv., Inc.,*
   No. 03-00385, WL 618894
   (D. Haw. March 9, 2006) ..................................................................................... 3

*Berry v. Hawaii Express Serv., Inc.,*
   No. 03-00385 (D. Haw. June 25, 2007).............................................................. 4 n.3

*Cisco Sys., Inc. v. Alcatel USA, Inc.,*
   301 F. Supp. 2d 599 (E.D. Tex. 2004)................................................................ 4

*Computer Assocs. Int'l, Inc. v. Altai, Inc.,*
   126 F.3d 365 (2d Cir. 1997)................................................................................ 6 & n.6

*Curtis v. Citibank, N.A.,*
   226 F.3d 133 (2d Cir. 2000)................................................................................ 6 & n.5

*Exhibitors Poster Exch., Inc. v. National Screen Serv. Corp.,*
   517 F.2d 110 (5th Cir. 1975) ............................................................................. 7

*Federated Dep't Stores, Inc. v. Moitie,*
   452 U.S. 394 (1981)............................................................................................ 3

*Green v. Santa Fe Inds., Inc.,*
   70 N.Y.2d 244, 514 N.E.2d 105,
   519 N.Y.S.2d 793 (1987).................................................................................... 8

*L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.,*
   198 F.3d 85 (2d Cir. 1999)................................................................................. 7

*Pavia v. 1120 Ave. of the Ams. Assocs.,*
   901 F. Supp. 620 (S.D.N.Y. 1995) .................................................................... 6 & n. 7

*Saud v. Bank of New York,*
   929 F.2d 916 (2d Cir. 1991)............................................................................... 5

*Single Chip Sys. Corp. v. Intermec IP Corp.,*
   495 F. Supp. 2d 1052 (S.D. Cal. 2007)............................................................. 7

*Tang v. Appellate Div.,*
   487 F.2d 138 (2d Cir. 1973)............................................................................... 8

<u>Cases</u>                                                                                     <u>Pages</u>

*Williams v. United States Dep't of Educ.,*
    No. 03 Civ. 4165, 2004 U.S. Dist. LEXIS 5064
    (S.D.N.Y. March 26, 2004)...................................................................    6 n.6

*Woods v. Dunlop Tire Corp.,*
    972 F.2d 36 (2d Cir. 1992)..................................................................    3

Defendant C&S Wholesale Grocers, Inc. ("C&S") respectfully submits this reply memorandum of law in support of its motion to dismiss Plaintiff's Second Amended Complaint and Jury Demand, Exhibits "A" To "R" (the "Second Amended Complaint").

<u>Preliminary Statement</u>

In June 2004, Plaintiff asserted claims against C&S in the United States District Court for the District of Hawaii. Those claims directly raised questions of whether C&S was infringing Plaintiff's intellectual property rights by "illegally" using software written by Plaintiff or by using software written by others that was, supposedly, wrongfully derived from software written by Plaintiff. *See* Second Amended Verified Complaint (Hawaii) ¶¶ 7, 46, 57, 71-95, 100-03, 113-31, 132-49 (Smith Dec. Ex. C).[1] In making those claims, Plaintiff also expressly put at issue whether future use by C&S of either kind of software would infringe Plaintiff's rights. *See, e.g.,* Second Amended Verified Complaint (Hawaii) ¶¶ 46, 135 (Smith Dec. Ex. C).

Plaintiff litigated these claims and not only lost a motion for injunctive relief, *see, e.g.,* Smith Dec. Exs. E through I, but his entire case, *see, e.g.,* Smith Dec. Ex. J. Plaintiff acknowledges his lost motion for an injunction. *See* Plaintiff's Memorandum in Opposition to Defendant C&S Wholesale Grocers, Inc.'s Motion To Dismiss Second Amended Complaint ("Plaintiff's Br.") at 10. But Plaintiff somehow avoids mentioning in his brief to this Court that a subsequent final judgment closed the door not only on such claims for injunctive relief, but also on all other claims that Plaintiff had litigated or *could* have litigated against C&S. For this

---

[1] A copy of this pleading is attached as Exhibit C to the Declaration of Lex R. Smith dated January 25, 2008 ("Smith Dec."). To help distinguish Plaintiff's complaints in the Hawaii Case from his complaint now in this Court, the explanatory parentheticals "(Hawaii)" or "(New York)" have been added to the titles of his pleadings.

and the other reasons in C&S's motion papers, this Court should dismiss Plaintiff's claims against C&S.

Argument

Plaintiff makes many strong assertions in his brief to this Court, but cites almost nothing to support them. His arguments about what C&S supposedly "claims" or C&S's "position" are almost always devoid of any reference to any actual source. *See, e.g.,* Plaintiff's Br. at 1 (no citations for such items), 15 (falsely claiming, without any citation, that C&S has "admit[ted] that it simply deceived the Hawaii District Court"). He cites only six judicial opinions (other than the underlying decisions from this and his other cases in Hawaii) in his brief. None of them, nor anything else he cites, contradicts or defeats any of the many favorable cases already cited by C&S in its opening brief. *See, e.g., infra* at 6.

While it is hard to tell, at bottom Plaintiff's chief argument seems to be that C&S possessed and still possess software authored by him, and that because he won a small victory against other parties with respect to such software, he should still be entitled to litigate claims about that software against C&S despite his total loss to C&S in Hawaii during the same time. *See, e.g.,* Plaintiff's Br. at 8-14. He cites, of course, absolutely no authority on point for such an exception to the settled principles of *res judicata* and collateral estoppel.

POINT I

PLAINTIFF CLEARLY PUT AT ISSUE IN THE PRIOR HAWAII CASE AGAINST C&S ALL SOFTWARE AUTHORED BY HIM

Plaintiff claims to have authored various software. Nowhere in his current Second Amended Complaint does he allege any facts that would show that, after the judgment against him in Hawaii, C&S acquired new software authored by him. *See, e.g.,* Second Amended Complaint (New York) ¶¶ 38, 54, 60, 79, 95, 103, 113, 128, 139. Nor does he dispute

that all such software existed at the time of his prior case against C&S in Hawaii.  *See, e.g.,* Smith Dec. Ex. M.  As such, Plaintiff certainly could have litigated with C&S over such software.  That is all that the law of *res judicata* requires in this context.  *See, e.g., Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992); *see also* Brief of Defendant C&S Wholesale Grocers, Inc. In Support of Motion To Dismiss Plaintiff's Second Amended Complaint ("Opening Br.") at 7-9 *and cases cited therein.*

In fact Plaintiff not only could have litigated, but actually did litigate, with C&S about such software in his prior lawsuit.  He admits as much on page 11 of his brief by citing to the decision of the United States District Court in Hawaii denying his motion for a preliminary injunction.  That court found, among other things, that Plaintiff had failed to establish that "C&S currently uses the outdated FCS", the "Berry Freight Control" software Plaintiff claims to have authored.  Plaintiff's Br. at 11 (citing *Berry v. Hawaii Express Serv., Inc.*, No. 03-00385, WL 618894 at *6 (D. Haw. March 9, 2006) (order denying plaintiff's motion for permanent injunction) (Smith Dec. Ex. I)).[2]

As another example, Plaintiff claimed in his prior lawsuit that C&S's use of things authored by Mark Dillon, a former employee of the Fleming Companies, Inc. ("Fleming") who moved to C&S, violated Plaintiff's rights.  In particular, Plaintiff alleged that various files otherwise written by Mr. Dillon "[c]ontained elements of Mr. Berry's software and performed the same functions as the Berry copyrighted software" and, therefore, "constitute[d] an infringing

_____

[2] Incidentally, nowhere in his current briefing or pleadings does Plaintiff ever offer any reason why C&S would now want to use such "outdated" software, or any factual allegation showing that it does.  In fact, C&S still does not use Plaintiff's software.

derivative"; that Mr. Dillon "copied the . . . original work of Plaintiff's Access Database by using MS Query"; that C&S "conspired to create another illegal derivative of Plaintiff's Freight Control System"; and that Plaintiff's rights were violated by "the creation of the Dillon derivatives." Second Amended Verified Complaint (Hawaii) ¶¶ 62, 87-88, 136, 143 (Smith Dec. Ex. C).[3] But Plaintiff did not stop there. He also alleged "numerous other computer software programs developed by Mr. Berry", as well as "no less than 30 of the other programs," were "illegally transferred to C&S when it became the owner and operator of the Fleming-Logistics Department." Second Amended Complaint (Hawaii) ¶¶ 100-03 (Smith Dec. Ex. C). In short, claims relating to software authored by Plaintiff and supposedly acquired by C&S were an integral part of Plaintiff's prior case.

In this respect, Plaintiff's current arguments about whether C&S "owns" his software are like the arguments rejected in *Cisco Sys., Inc. v. Alcatel USA, Inc.*, 301 F. Supp. 2d

---

[3] Apparently, Plaintiff now claims that he owns anything Mr. Dillon authored while at Fleming. *See* Plaintiff's Br. at 7-8. But this issue was also litigated in the case Plaintiff lost, as a June 27, 2005 order from the court in Hawaii, commenting about former Fleming employees hired by C&S, indicates:

> Employees claim that, after June 9, 2003, they 'got away' from FCS and began using Microsoft Excel spreadsheets to track freight. . . . extract[ing] raw data that had been entered into FCS and transferr[ing] that data into Excel spreadsheets. Berry, however, contends that Employees extracted not only data, but also the structures of his software to create the spreadsheets that were really an unauthorized derivative of FCS.

*Berry v. Hawaii Express Serv., Inc.*, No. 03-00385, slip op. at 21 (D. Haw. June 25, 2007) (granting in part and denying in part Plaintiff's motion for summary judgment) (Smith Dec. D). The Hawaii court rejected Plaintiff's contention, holding that "[b]ecause the only similarities between the programs occur in nonprotectable elements, Berry does not establish any infringement. . . . The burden is on Berry in this regard, and Berry fails to show how he would meet this burden at trial." *Id.* (citation omitted). In other words, the court in Hawaii necessarily decided that the C&S employees, including Mr. Dillon, created their own software—which means that Plaintiff does not own it.

599 (E.D. Tex. 2004).[4]  There, after losing a claim that Cisco Systems, Inc. was violating the

rights of Alcatel USA, Inc. ("Alcatel") in certain copyrights and trade secrets, Alcatel filed a

counterclaim alleging ownership of the same works on which it had lost its claims of

infringement.  The court correctly rejected Alcatel's claim on the ground of *res judicata*:

> Res judicata bars all claims that were or could have been advanced in support of the
> cause of action on the occasion of its former adjudication.  The claim is barred, not only
> in respect of every matter which was actually offered and received to sustain the demand,
> but also as to every ground of recovery which might have been presented.  In other
> words, "one who has a choice of more than one remedy for a given wrong . . . may not
> assert them serially, in successive actions, but must advance all at once on pain of bar."

*Id.* at 603 (citing Restatement (Second) of Judgments § 24 comment c. (1982)).  For the same

reason, Plaintiff's characterization of his prior claims here as ones of "infringement", and his

current characterization of such claims as issues of "ownership", *see* Plaintiff's Br. at 8-9, does

not matter, for "it is the facts surrounding the transaction or occurrence which operate to

constitute the cause of action, not the legal theory upon which a litigant relies."  *Saud v. Bank of*

*New York*, 929 F.2d 916, 919 (2d Cir. 1991) (internal quotation marks omitted).

POINT II

PLAINTIFF CANNOT AVOID *RES JUDICATA* BY CLAIMING DAMAGES

FOR A LATER PERIOD OF TIME

As expected, *see, e.g.,* Opening Br. at 12-13, Plaintiff now tries to avoid dismissal

of his claims in this Court by arguing that principles of *res judicata* do not apply because "[t]he

---

[4] Because C&S does not use Plaintiff's software, because Plaintiff failed in a prior case to show that C&S has his software, because C&S has a judgment in its favor that what software it did use that might contain elements of Plaintiff's software does not infringe Plaintiff's rights, and because Plaintiff clearly did litigate and could have litigated ownership issues in Hawaii (*see, e.g.,* Plaintiff's Br. at 14, asserting that "[i]n . . . both the First Hawaii Case and the Second Hawaii, . . . the Hawaii District Court . . . held that the works were owned by Wayne Berry"), Plaintiff's discussion of ownership issues now seems to be no more than a smokescreen.

damages claimed in this case . . . are necessarily different from the damages for the earlier period

. . . ." Plaintiff's Br. at 19. He cites no authority for this proposition, and the three cases he cites

elsewhere in this section of his brief for somewhat different propositions — *Curtis v. Citibank,*

*N.A.,* 226 F.3d 133 (2d Cir. 2000),[5] *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365 (2d

Cir. 1997),[6] and *Pavia v. 1120 Ave. of the Ams. Assocs.*, 901 F. Supp. 620 (S.D.N.Y. 1995)[7] —

---

[5] Plaintiff cites *Curtis* for the proposition that "[w]hile claim preclusion bars re-litigation of the events underlying a previous judgment, it does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit." Plaintiff's Br. at 19. In *Curtis* the plaintiffs sued for race discrimination based on an e-mail containing objectionable racial humor. 226 F.3d at 136. The same plaintiffs (after having been refused leave to amend) later sued the same employer for retaliation and constructive discharge in a second lawsuit. *Id.* at 140. The court allowed the latter claims—but not others also brought in the second lawsuit—because the retaliation and constructive discharge claims were not based on the facts giving rise to the claim of discrimination, but on the employer's later reactions. *Id.* at 141. Here, Plaintiff's current claims are all based on the same allegedly infringing assets supposedly in C&S's hands beginning in 2003.

[6] Plaintiff cites *Computer Associates* for the proposition that when infringement is continuing, *res judicata* does not apply to acts of infringement occurring after the filing of an initial action. *See* Plaintiff's Br. at 19. But the decision in that case depended on issues of jurisdiction, not timing. The question was whether a judgment of non-infringement in the United States under United States law barred another lawsuit for infringement in France under French law. *See* 126 F.3d at 368. The Second Circuit found no bar to the second action for two reasons. First, no United States court had jurisdiction over some of the parties in France, so the French claims were not ones that "could have been raised" in the prior United States lawsuit. *Id.* at 370-71; *cf., e.g., Williams v. United States Dep't of Educ.*, No. 03 Civ. 4165, 2004 U.S. Dist. LEXIS 5064, at *7 (S.D.N.Y. March 26, 2004) ("a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (citation omitted). Second, there was no indication that the infringing computer program at issue was even in France at the time of the United States lawsuit. 126 F.3d at 369-70. Here, in contrast, the court in Hawaii had jurisdiction over all the relevant parties and there is no question that the supposedly infringing programs were in existence in this country at the time.

[7] Plaintiff cites *Pavia* for the proposition that *res judicata* does not apply where "continuous or recurring wrongs, such as nuisance or trespass, continually give rise to new causes of action." Plaintiff's Br. at 19. But *Pavia* has nothing to do with claim or issue preclusion. It announces a rule for determining when a statute of limitations runs for a New York common law nuisance cause of action. 901 F. Supp. at 625. Nowhere in the decision is

- 6 -

do not support it, either. Had he looked, however, Plaintiff would have found cases to the contrary of his argument.

In *Single Chip Sys. Corp. v. Intermec IP Corp.*, 495 F. Supp. 2d 1052 (S.D. Cal. 2007), for example, the plaintiff sued the same defendant twice, once in 2004 and once in 2007, for patent infringement. In arguing that this was permissible, the plaintiff "assert[ed] that the 2004 suit seeks damages for 'pre-2005 acts of making, using, selling and offering for sale" and "contrast[ed] these activities with the 2007 suit, stating that it 'seeks damages . . . [in that suit for] post-1/1/05 acts of making, using, selling and offering for sale . . . .'" *Id.* at 1062. The court rejected this argument, holding instead that common facts underlay both suits despite the claimed differences in time. *Id.* at 1063; *see also, e.g., L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999) ("Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence.").

Similarly, in *Exhibitors Poster Exch., Inc. v. National Screen Serv. Corp.*, 517 F.2d 110 (5th Cir. 1975), the court refused to permit the plaintiff to make a new antitrust claim similar to one it had already already lost, even though the plaintiff expressly tried to make the new claim for a different time period. The court held that where the plaintiff "complains of conduct identical to that on which it has once litigated and lost, the continuance of the defendants in conduct already declared lawful" cannot be the subject of a new claim. *Id.* at 114. Here, Plaintiff's theory is the same — that C&S has continued conduct over which he previously litigated and lost. *Res judicata* bars such claims.

---

there any indication that if a plaintiff litigated a nuisance complaint and lost, that plaintiff would not be barred from attempting to relitigate the same nuisance the next day.

POINT III

A $98,250 VERDICT IN A 2003 CASE IN WHICH C&S WAS NOT A PARTY
DOES NOT CHANGE THE PRECLUSIVE EFFECT OF THE 2006 JUDGMENT IN C&S'S
FAVOR

Because Plaintiff cannot rebut any of the authorities cited by C&S demonstrating
that *res judicata* and collateral estoppel preclude Plaintiff from raising claims that were, or could
have been, raised in the United States District Court for the District of Hawaii in the lawsuit
against C&S that went to trial in 2006, he instead tries to make arguments that the same court's
March 2003 verdict in a case against Fleming—a case in which C&S was not even a party—is
somehow *res judicata* that prevents C&S from winning its current defensive motion against
Plaintiff. *See* Plaintiff's Br. at 14-15. In making those arguments, however, Plaintiff completely
ignores settled law that the difference in parties defeats his own *res judicata* theory. *See, e.g.,
Tang v. Appellate Div.*, 487 F.2d 138, 145 (2d Cir. 1973) (where "the parties [are] different, *res
judicata* does not apply."). While Plaintiff attempts to avoid this rule by claiming that a
defendant in the other action had the same counsel as C&S here, *see* Plaintiff's Br. at 17, settled
law also rejects that argument. *See, e.g. Green v. Santa Fe Indus., Inc.*, 70 N.Y.2d 244, 254, 514
N.E.2d 105, 109, 519 N.Y.S.2d 793, 797 (1987). Thus, Plaintiff's argument is not only illogical,
but legally wrong.

POINT IV

PLAINTIFF HAS NOT SHOWN WHY THE BALANCE OF HIS CLAIMS
SHOULD NOT ALSO BE DISMISSED

As evidence submitted on a motion for summary judgment by other Defendants in
this case demonstrates, the balance of Plaintiff's claims against C&S in the Second Amended

Complaint have no basis in fact. *See* Affidavit of Lex R. Smith In Support of the PCT's and Robert Kors' Motion for Summary Judgment dated February 26, 2008 ("Smith SJ Aff.") ¶¶ 3-6, 9-10, 13-14, 17-19, 22, 25, 28-29, 30, 32-36 & Exs. A-D. This lack of any basis in fact underscores why, as plead, those claims against C&S fail to satisfy Federal Rules of Civil Procedure 8(d)(1) and 12(f).[8]

Plaintiff also fails to cite any authority of any kind in response to C&S's cases on this point. *See* Plaintiff's Br. at 20-22. This further underscores the weakness of his remaining claims. Thus to the extent anyone understands those claims, the evidence in this case shows they are wrong. Whether those claims are understandable or not, Plaintiff's utter lack of even the slightest legal authority (or facts) to support them indicates that they are outrageous with respect to C&S itself, and should be stricken.

---

[8] In fact, Plaintiff's counsel essentially admits that these claims are the result of speculation between him and his client, not any evidence or facts. As he wrote in a letter to the State of Hawaii Office of Disciplinary Counsel concerning the supposed wrongdoing of Lex R. Smith, "after discussing the matter at length with Mr. Berry he and I conclude[d] that sometime while the Firm was still attorney of record for Mr. Berry, it negotiated a payment based on their rights to payment under the contingent fee agreement with the adverse party and did not disclose it to Mr. Berry." Smith SJ Aff. Ex. B at 2-3. Those acts simply never occurred.

<u>Conclusion</u>

For the reasons stated above and in the prior briefing of C&S, this Court should dismiss Plaintiff's claims against C&S with prejudice and with costs and fees in favor of C&S.

Dated:  March 7, 2008

                                        NIXON PEABODY LLP

                        By:      /s/ Christopher M. Mason
                                Christopher M. Mason
                                CM-7146

                                437 Madison Avenue
                                New York, New York 10022
                                (212) 940-3000
                                cmason@nixonpeabody.com

                                Attorneys for Defendant
                                C&S Wholesale Grocers, Inc.