# Exhibit 1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                          . Case No. 03-10945
                                .
                                .
FLEMING COMPANIES, INC.,        .
  et al.,                       . 824 Market Street
                                . Wilmington, Delaware 19801
             Debtors.           .
                                . February 22, 2005
. . . . . . . . . . . . . . . . . 12:07 p.m.

                                              2005 MAR -4  AM 11:44
                                      U.S. BANKRUPTCY COURT,
                                      DISTRICT OF DELAWARE
                                                            FILED

            TRANSCRIPT OF OMNIBUS HEARING
          BEFORE HONORABLE MARY F. WALRATH
        UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtors:            Pachulski Stang Ziehl Young Jones
                              & Weintraub
                            By:  JAMES O'NEIL, ESQ.
                            919 North Market Street
                            16th Floor
                            Wilmington, DE 19899

For Kirkland & Ellis:       Kirkland & Ellis LLP
                            By:  ERIC LIEBELER, ESQ.
                                 DAMIAN CAPOZZOLA, ESQ.
                            777 South Figueroa Street
                            Los Angeles, CA 90017
                            (Telephonic Appearance)

Audio Operator:             Danielle R. Gadson

Proceedings recorded by electronic sound recording, transcript
           produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-Mail:  jjcourt@optonline.net**

**(609) 586-2311   Fax No.   (609) 587-3599**



2

APPEARANCES(Cont'd.):

For Target Corporation:           Faegre & Benson LLP
                                       By:  DENNIS M. RYAN, ESQ.
                                       2200 Wells Fargo Center
                                       90 South Seventh Street
                                       Minneapolis, MN 55402

For Franklin Foods:                Morris, James, Hitchens &
                                         Williams, LLP
                                       By:  STEPHEN M. MILLER, ESQ.
                                       222 Delaware Avenue, 10th Floor
                                       Wilmington, DE 19899

For DSD Class Action             Werb & Sullivan
Plaintiffs:                     By:  DUANE D. WERB, ESQ.
                                       300 Delaware Avenue, 10th Floor
                                       Wilmington, DE 19899

For Wayne Berry:                   Lynch Ichida Thompson Kim &
                                       Hirota
                                       By:  TIMOTHY J. HOGAN, ESQ.
                                     1132 Bishop Street, Suite 1405
                                     Honolulu, HI 96813
                                     (Telephonic Appearance)

For C& S Acquisition:             Landis Rath & Cobb, LLP
                                       By:  MEGAN HARPER, ESQ.
                                     919 Market Street
                                     Wilmington, DE 19801

1          THE COURT:  Good morning.  Excuse me -- good

2     afternoon.

3          MR. O'NEIL:  Good afternoon, Your Honor.  James

4     O'Neil, Pachulski Stang Ziehl Young Jones & Weintraub,

5     appearing on behalf of the Post-Confirmation Trust.

6          THE COURT:  Please, can you pull your microphone a

7     little closer.  I know the people on the phone might have

8     trouble hearing you.

9          MR. O'NEIL:  Certainly.

10         THE COURT:  Okay.  Appearing with me by telephone

11    today from the firm of Kirkland & Ellis LLP are Eric Liebeler

12    and Damian Capozzola.  Your Honor, we filed a second amended

13    agenda on Friday afternoon and delivered a copy of that to

14    chambers this morning.  Does Your Honor have a copy of that?

15         THE COURT:  I do.

16         MR. O'NEIL:  Okay.  Looking at that agenda, Your

17    Honor, Items Number 1 through 14 have been continued.  Item

18    Number 15, application for order modifying automatic stay, has

19    been resolved.  The Court has entered an order on that.  Item

20    Number 16, motion of C&S Acquisition, the movant has indicated

21    that they will be withdrawing the motion without prejudice.

22    Item Number 17, the Post-Confirmation Trust's 22nd Omnibus

23    Objection to claims, Your Honor, there were no formal

24    objections.  We did file a certification of counsel with a

25    slightly amended order and slightly amended exhibits to reflect

4

1  informal agreements.

2          THE COURT:  I did enter that order ths morning.

3          MR. O'NEIL:  Thank you, very much, Your Honor.  Item

4  Number 18 is the Post-Confirmation Trust's motion for an order

5  pursuant to Bankruptcy Rule 9006 extending the period within

6  which to remove actions.

7          THE COURT:  And I've entered that, as well.

8          MR. O'NEIL:  Thank you.  Item Number 19, Your Honor,

9  is the Target matter Fleming Companies -- I'm sorry -- Number

10 19 is the Fleming Companies against the Greenwich Insurance,

11 and that is continued -- the status conference is continued

12 until March 16th.  Item Number 20 is the Target matter and

13 appearing today on behalf of the Post-Confirmation Trust are

14 Eric Leibeler and Damian Capozzola.  This matter is going

15 forward for purposes of a status conference.

16         MR. CAPOZZOLA:  Good morning, Your Honor.  Damian

17 Capozzola of Kirkland & Ellis.

18         MR. LIEBELER:  Good morning, Your Honor.  Eric

19 Liebeler also of K&E.

20         MR. RYAN:  And good morning, Your Honor.  Dennis Ryan

21 of Faegre & Benson in Minneapolis representing Target

22 Corporation.

23         THE COURT:  Where are we?

24         MR. LIEBELER:  Your Honor, Eric Liebeler for the PCT.

25 Right now we have a trial scheduled for March 14th with

**J&J COURT TRANSCRIBERS, INC.**

5

1  pretrial disclosures at least vis-a-vis the parties coming up
2  at the end of this week.  When we had spoken with opposing
3  counsel last week we anticipated - obviously there is motions
4  practice in front of the Court and I think there are cross
5  motions for summary judgment and then there's the PCT's motion
6  for leave to emend the complaint.  And at least we thought that
7  it probably made sense to get resolution on those motions
8  before we went ahead and did the pretrial disclosures,
9  particularly the pretrial order, as much of what's in the
10 pretrial order really does depend on what the outcome of the
11 motions practice is.

12        THE COURT:  Well I note that they're motions for
13 partial summary judgment.  Do I really need to decide them if
14 we just go to trial?

15        MR. RYAN:  Your Honor, Dennis Ryan.  I would agree
16 with Mr. Liebeler.  I think there's going to be a substantial
17 change in the scope of the trial depending on whether any or
18 all of these motions are granted.  Target has moved for summary
19 judgment in full on Counts 1 and 3 and partial summary judgment
20 on Count 2.  The Post-Confirmation Trust has moved for summary
21 judgment on Count 3.  They've also moved to amend and add a new
22 Count 4.  If the Court were to grant some or all of the motions
23 for summary judgment I suspect we're looking at maybe a two or
24 three day trial on the remaining contract issues.  If the Court
25 were not to grant summary judgment on any of the pending

1  motions I think we're looking at at least a week of trial.   In
2  this case there have already been literally two dozen
3  depositions, rooms full of documents produced.   The scope
4  absent granting any of the summary judgment would be very much
5  larger.   Also, the motion to amend if that's granted we'll need
6  to reopen discovery because it raises some new issues.   There
7  are some witnesses that we deposed that we'd need to go back
8  and ask some new questions of and there would be some new
9  people who would need to be deposed in connection with that
10 proposed Count 4.   So I agree with Mr. Liebeler, I think there
11 -- it would be a substantial effort for both parties to put
12 together the pretrial stipulations and orders and identifying
13 literally hundreds of documents, which is certainly something
14 we can all do, but it might then be substantially changed
15 depending on how the Court rules on the pending motions.
16           THE COURT:  All right.  Well none of these have -- oh
17 you did file a notice of completion of briefing --
18           MR. RYAN:  Yes, Your Honor, both --
19           THE COURT:  -- with respect to some of them.
20           MR. RYAN:  I believe between us we have filed the
21 appropriate notices that briefing is complete on all of these
22 motions.   The Court will see they've been fairly substantially
23 briefed and responded to.   I don't -- we did not request -- I
24 don't believe the Confirmation Trust requested oral argument.
25 We think obviously it's been very thoroughly briefed and is

7

1  ready for the Court to consider.

2          THE COURT:  All right, well why don't I do this --

3  I'll suspend the trial date and look at the various motions and

4  endeavor to get something out.

5          MR. RYAN:  May I suggest whenever the Court rules if

6  at that point perhaps then would be appropriate to set a

7  pretrial hearing or scheduling conference of some kind so that

8  at that point when we each have a better sense we'll be able to

9  tell the Court how many days we anticipate for trial and how

10 long we may need to designate witnesses and exhibits.

11         THE COURT:  All right.  Well after I decide you can

12 just -- I'll as the Debtor to reset it for the next Omnibus.

13 That gives the parties sufficient time to come in.

14         MR. RYAN:  That would be fine.  Thank you.

15         THE COURT:  All right.  Thank you.

16         UNIDENTIFIED SPEAKER:  Very good, Your Honor.  Thank

17 you.

18         MR. O'NEIL:  Your Honor, Item Number 21 is the motion

19 of Franklin Foods for an order compelling class counsel and

20 claims administrator to comply, and Mr Miller is in the

21 courtroom.  I'll turn it over to him.

22         THE COURT:  Take your choice of tables.

23         MR. MILLER:  Good afternoon, Your Honor.  Stephen

24 Miller on behalf of Franklin Foods.  We filed, as Your Honor

25 knows, a motion to compel the class counsel and the claims

8

1   administrator with respect to the DSD to make the payments on
2   the Franklin --

3           THE COURT:  You're not being picked up.  I'm sorry,
4   the -- it's terrible.

5           MR. MILLER:  Stephen Miller on behalf of Franklin
6   Foods.  Your Honor, we filed the motion to compel the DSD class
7   counsel and the claims administrator to make the payments that
8   they're required to make under the settlement agreement that
9   they reached with the Debtors.  As Your Honor is aware, also up
10  today is the motion by the class counsel to make the third
11  interim distribution with respect to the DSD claims.  We filed
12  a response to that very limited just to say that we would like
13  to be on that list, also, and then we did go ahead and file a
14  motion to compel them to make the payment to us.  I just want
15  to give you a little bit of a history -- not too much, but just
16  a little bit of a history about --

17          THE COURT:  Well let me hear from the class claimant
18  -- class counsel.

19          MR. WERB:  Good afternoon, Your Honor.  Duane Werb --
20          THE COURT:  Why can't we resolve Franklin Foods?
21          MR. WERB:  Well we can, but it's premature at this
22  time to make that determination.

23          THE COURT:  Why?

24          MR. WERB:  The reason being is that the vendor ID
25  number, which has been provided by Franklin, is inconsistent

9

1  with the information that we've received from Fleming.  They

2  purport to have a vendor ID number which is in the 90,000

3  series.   There are no such numbers for any class claimants that

4  fall into that category.  And, quite frankly, we have not had

5  this issue with anyone else so far that we've dealt with.   In

6  point of fact of the 118 claims that  have been filed as of the

7  deadline on October 15th, including today's distribution, we

8  will have made pro rata distributions to 70 of those 118.

9  Furthermore, of the 70 Mr. Miller has represented a total of 12

10 of those vendors and we have paid out on the previous dates as

11 well as today 1 of those 12 vendors that Mr. Miller represents.

12 And we understand his frustration here with regard to payment

13 for Franklin Foods.  However, in the absence of having some

14 indicia or proof as to the accuracy of the correct vendor

15 number we are in a position right now where those funds could

16 not be deemed DSD, instead they could be determined to be

17 unsecured funds.

18         THE COURT:  Well but what does the vendor number have

19 to do with it?  He's provided invoices and the other indicia of

20 his client.

21         MR. WERB:  What we need to do at this point we need

22 to take it to the next level, which is now to go back to those

23 independent supermarkets and receive some type of information

24 or documentation from them with regard to the number that was

25 assigned by Fleming.  If the Court is so inclined to believe

10

1 that these -- that sufficient proof has been demonstrated here

2 by this claimant then the Court can surely make that

3 determination, but quite frankly, Your Honor --

4         THE COURT:  Well that's not for me to determine.  It

5 is for you in the first instance, but --

6         MR. WERB:  And we take the -- out fiduciary role in

7 disbursement of funds very seriously here, Your Honor, and

8 we're talking about a half-a-million dollars.  Now, payments

9 have been made December, January, and here we are in February.

10 Sixty days have passed by and we've made distributions to 70

11 out of 118.  There's no prejudice here to Mr. Miller's client.

12 We understand that he's anxious to get paid, but we need to

13 have the claims administrator complete the evaluation to insure

14 that Franklin Foods is entitled to the funds that are being

15 requested here, and once that determination is completed we

16 will gladly make the distribution to Mr. Miller's client.

17         THE COURT:  Okay.

18         MR. MILLER:  If I can briefly respond, Your

19 Honor, to some of those points.  Number one, the fact that my

20 clients have gotten paid I think just points to the fact that

21 the claims that were submitted were thoroughly and completely

22 prepared and furnished to the DSD claims administrator and also

23 reflect diligence on my part to make sure that those payments

24 were indeed paid, so I don't think that has any bearing on this

25 matter at all.  With respect to the Franklin claim as Your

11

1  Honor recognizes, everything that was required to be provided

2  pursuant to the Court's order has been provided.  What's being

3  sought now is additional information.  We have provided

4  additional information to the claims administrator and their

5  counsel in connection with this matter.  They've come back now

6  and requested additional information as Mr. Werb has described.

7  We are not opposed to providing that information and we've told

8  Mr. Werb that we will try to undertake to do that, recognizing

9  that those are independent supermarkets and the information

10 that they're requesting are bank records.  We're going above

11 and beyond the duty to provide information to try to resolve

12 this matter.  We would also like the claims administrator to go

13 forward and try to get whatever information it needs.  So we're

14 in a situation now where I think Mr. Werb and I are trying to

15 work to resolve this matter.

16        THE COURT:  Well should I really hold up the

17 distribution to others --

18        MR. MILLER:  No, and we're not --

19        THE COURT:  -- while you try to --

20        MR. MILLER:  We're not suggesting --

21        THE COURT:  Okay.

22        MR. MILLER:  -- and there's --a s I said, there's two

23 motions before you; one is the distribution to the other

24 creditors and we certainly don't oppose that distribution.  All

25 we're talking about is our motion to compel payment to require

12

1  compliance with the order.  And, quite frankly, we had talked

2  yesterday, actually agreed that we would try to get some

3  information to them and we would continue this matter to March

4  16th.  However, this morning Mr. Werb informed me that he's

5  taking a long overdue vacation and will be in London at that

6  time.  So we're trying to wrestle with that issue.  I have not

7  been able to get in touch with my client to talk about kicking

8  it out to a further date.

9        THE COURT:  Well why don't I do that for you.  I'll

10 continue this to the whatever hearing is after the 16th of

11 March.

12        MR. WERB:  Your Honor, that would be April 21st.

13        THE COURT:  We only have monthly hearings?

14        MR. O'NEIL:  That is the next one after March --

15        THE COURT:  And I hope it's resolved by then.  I

16 don't want to have to --

17        MR. WERB:  I know that Your Honor is not interested

18 in having an evidentiary hearing on this matter.  I have

19 indicated to Mr. Miller that we will do everything possible to

20 accommodate him and try to insure that this is a valid claim to

21 be paid at that time.

22        MR. MILLER:  Your Honor, if I could just make one

23 request with respect to the continuance.  I think it would be

24 helpful if by April 1 they identify if there is a problem with

25 respect to this claim that they identify in writing and file a

13

1  pleading with Court so I can prepare appropriately to go

2  forward on April 21.

3           THE COURT:  Is that a good date?

4           MR. WERB:  April 1st.  That's fine, Your Honor.

5           THE COURT:  All right.  If there's a problem and what

6  it is, okay.

7           MR. MILLER:  Thank you, Your Honor.

8           THE COURT:  Thank you.

9           MR. WERB:  Your Honor, with that in mind and with

10 there being no further objection by Mr. Miller with regard to

11 the proposed form of order for the third interim distribution

12 of DSD settlement funds may I approach with a clean copy of the

13 order?

14          THE COURT:  Yes, you may.  Thank you.  And I'll enter

15 that order.

16          MR. O'NEIL:  Thank you, Your Honor.  Going along with

17 the agenda Item Number 22 on the agenda is the motion of the

18 Post-Confirmation Trust for an order compelling arbitration.

19 That matter has been continued to our next Omnibus Hearing.

20 Item Number 23 is the motion of Northern California Advertising

21 Group Retailers for payment of administrative claim.  That

22 matter has also been continued by agreement to our next Omnibus

23 Hearing March 16th, 2005.  Item Number 24 is the motion of

24 judgment creditor Wayne Berry for order establishing

25 procedures, and I will turn it over to counsel for the movant.

14

1  Appearing by phone and representing the Post-Confirmation Trust

2  today on this matter is Eric Liebeler.

3         MR. LIEBELER:  Good morning, Your Honor.  Eric

4  Liebeler again with K&E for the PCT.

5         THE COURT:  All right, good morning.

6         MR. HOGAN:  Good afternoon, Your Honor.  Timothy

7  Hogan on behalf of Mr. Berry.

8         THE COURT:  All right.  Mr. Hogan, it's your motion.

9         MR. HOGAN:  Thank you, Your Honor.  Your Honor, as

10 the Court may recall at the confirmation hearing an order was

11 entered establishing that both pieces of litigation

12 pre-petition and post-petition would be not subject to the

13 discharge injunction as provided by the code and the planning.

14 Subsequent to that we agreed to come back to this Court to

15 address the manner in which Mr. Berry would collect upon his

16 judgment if it was ever entered.  The PCT has submitted their

17 opposing brief essentially citing Grogan v. Garner that Mr.

18 Berry hasn't made out a case of nondischargability.  I think

19 first I'd like to dispense with that.  The finding of willful

20 infringement is a finding of a civil -- finding of criminal

21 conduct on behalf of the Debtor, and I think under Grogan v.

22 Garner, which is a case that deals simply with collateral

23 estoppel, on nondischargability that Mr. Berry's judgment is

24 nondischargeable under that case.

25         THE COURT:  Well wait, wait, wait.  What section of

15

1  the Code says it's not dischargeable?   This is a corporation.

2          MR. HOGAN:  I agree, Your Honor.  523 really doesn't

3  apply.

4          THE COURT:  So why is it not discharged?

5          MR. HOGAN:  Because, Your Honor, we got an exemption

6  from the discharge under the order the Court signed.

7          THE COURT:  No, you got permission to liquidate your

8  claim.  You got relief from the injunction which prevented you

9  from continuing your suit.  You didn't get an exemption from

10  discharge.  And what --

11          MR. HOGAN:  Your Honor, the last line of the order

12  signed on July 26th -- it is further ordered the movant's claim

13  as set forth in the motion shall be exempted from the operation

14  of any discharge and any discharge injunction as is

15  contemplated by the Bankruptcy Code Section 524 or in the plan

16  or reorganization.

17          THE COURT:  Yes, and that was clarified.

18          MR. HOGAN:  It was clarified, Your Honor, that we

19  should return to this Court, Your Honor, if and when we were to

20  obtain the judgment.

21          THE COURT:  And what is the basis for it being exempt

22  from discharge?

23          MR. HOGAN:  It was the order, Your Honor.

24          THE COURT:  No, you were to come back here to talk

25  about whether or not it's discharged or not or to be dealt with

16

1  under the plan.  Why would it not be dealt with under the plan

2  like every  other pre-petition claim?

3           MR. HOGAN:  I'd agree that it's covered by the plan,

4  Your Honor.  The plan provides for nondischarge and that upon

5  entry of the plan and the order that this claim traveled

6  through to the other side of the plan, Your Honor.  I believe,

7  you know, the Code provides for the --

8           THE COURT:  Where does the Code provide for?

9           MR. HOGAN:  In 1141, Your Honor.

10          THE COURT:  And 1141 says all claims are covered by

11  the plan.

12          MR. HOGAN:  Except as otherwise provided in the

13  subsection or the plan or in the order confirming the plan,

14  Your Honor.  The plan provided that if Mr. Berry went forward

15  and obtained the nondischarge order it wouldn't be discharged,

16  that's what the plan provided for.  1141(d) says that under

17  those circumstances it's not discharged.

18          THE COURT:  The plan doesn't say your claim is not

19  discharged.  We're talking about the pre-petition part of your

20  claim, not the post-petition acts.

21          MR. HOGAN:  Yes, I understand that, Your Honor, but

22  the concern I have is that it would appear from the moving

23  papers that we'll be back here dealing with that one again.

24  But I understand that before the Court today is simply the

25  pre-petition claim.  The pre-petition claim, Your Honor, if it

17

1  is not subject to the discharge I do not see how it can be sort
2  of minimized by the proceeding that the PCT is proposing, which
3  they say is worthless.  To the extent that -- you know, the
4  question is whether Mr. Berry gets to execute on any of it I
5  think is the first question.

6          THE COURT:  Well I did not in my July order grant any
7  exemption from discharge if you think that's the purport of the
8  last paragraph.  I think it's clarified in the further order
9  that said that all you were giving was the right -- relief from
10 the stay and relief from the injunction of the plan
11 confirmation order to allow you to liquidate your claim and
12 that was it.

13         MR. HOGAN:  And then we would return to this Court to
14 see how the claim would be handled in the proceedings, Your
15 Honor.

16         THE COURT:  That's why I'm asking you -- now we're
17 back in this proceeding -- tell me why your claim should not be
18 treated like every other pre-petition claim.

19         MR. HOGAN:  And I guess the response would be the
20 same, Your Honor, that it was exempted from discharge.  I
21 understand --

22         THE COURT:  But it wasn't.  It's circular.  You're
23 giving me a circular argument.  Let's assume that order was not
24 entered.  What is your basis for saying the claim should not be
25 discharged?

18

1    MR. HOGAN:  Again, Your Honor, I'm not trying to make
2  a circular argument, but the only argument I have, Your Honor,
3  is that the order exempted it from discharge and I understand
4  the Court doesn't interpret it that way, but that is
5  essentially my position.

6    THE COURT:  Well and you have no other basis under
7  the Code or otherwise?

8    MR. HOGAN:  To the extent -- you know, I guess, Your
9  Honor, nondischarge in individual cases is very easy to deal
10  with in the Code, you know, it's not discharged and the
11  creditor goes forward against the Debtor after the case is, you
12  know, concluded or after the nondischarge is entered.  In these
13  cases, Your Honor, I must concede that I've racked the Code and
14  my ability Lexus to determine where we are in this case and at
15  least it would appear to me that Mr. Berry's claim has not been
16  wiped out by the confirmation process.  The position of the PCT
17  is that it has, and so at least that much I think under the
18  order we at least have a claim that's alive in the case.  Now
19  the question is what kind of claim.  Mr. Berry has filed
20  administrative claims based on the rejection of his license
21  that were filed within the bar date for the administrative
22  claims for rejection.  To the extent that the Debtor had tried
23  to assume Mr. Berry's license during the period of the case
24  these amounts that were put forth in the pre-petition
25  litigation would have arguably been within the pure amount.

1   Mr. Berry has filed his claim.  The PCT's position is that Mr.

2   Berry has no claim whatsoever.  I disagree with that.  I

3   believe that he has a claim, that it did at  least travel

4   through to this point, Your Honor.  And the reason we're

5   applying to the Court is for some guidance abut how to address

6   the claim.

7          THE COURT:  All right.  Does the PCT want to address

8   that?

9          MR. LIEBELER:  Yes, Your Honor.  Eric Liebeler for

10  the PCT.  It's not the PCT's position that Mr. Berry has no

11  claim,; it is the PCT's position that he has an unsecured claim

12  that should be treated just like every other unsecured claim in

13  the case.  And I actually think he has filed a pre-petition

14  unsecured claim and I think he may have blown the bar date, but

15  it's not my position that he has no claim.  The judgment that

16  he's reduced from the pre-petition litigation should be treated

17  just like every other pre-petition unsecured claim.

18         THE COURT:  Well I think there's agreement there

19  then, at least to that point.

20         MR. HOGAN:  I'm sorry, Your Honor, I couldn't hear

21  you.

22         THE COURT:  I think there's agreement on that point

23  that you have a claim that should be treated like any other

24  pre-petition claim.

25         MR. HOGAN:  Your Honor, you know, I think with the

20

1  orders and what was entered prior to the confirmation
2  specifically the plan says that those claims are not going to
3  be treated like any other pre-petition claims.  How they're
4  treated, Your Honor, I guess is the question, but to the extent
5  that it has been -- however the Court interprets it it has been
6  given a -- some degree of a pass at the confirmation process.
7  Now to say that that has no bearing or no effect at this point,
8  Your Honor, I think kind of -- you know is sort of changing the
9  deal after confirmation that, you know, creditors rely on the
10 confirmation order, rely on the procedures that go up to the
11 point of confirmation.  180 days have gone past.  The
12 confirmation order is solid in stone and now the rights that
13 Mr. Berry obtained at confirmation are now, essentially as I
14 hear the PCT's position, gone.

15          THE COURT:  They didn't say that.  They say you'd
16 have a claim like any other pre-petition unsecured claim.  The
17 State Court -- the Court in Hawaii has simply liquidated it so
18 now we know the amount.

19          MR. HOGAN:  Your Honor, I guess the real problem in
20 it, and it is a unique problem and perhaps it's just Mr.
21 Berry's problem, is they've appealed the judgment which is
22 their right -- no doubt about that -- but to the extent that
23 they increase the costs that are in this judgment this is all
24 occurring post-petition, it is all happening by the PCT going
25 forward to appeal the judgment without a bond.  Mr. Berry then

21

1  is essentially -- if this were not nondischargeable essentially

2  it has no way to recover for the costs of defending his

3  judgment where normally a creditor would be required to post a

4  bond.  The PCT is relying on the confirmation orders and those

5  orders to say Mr. Berry is estopped from collecting it.  They

6  are also using it affirmatively to use it as a form of bond and

7  I don't believe that's appropriate.

8         MR. LIEBELER:  Your Honor, Eric Liebeler again.  We

9  actually haven't taken the position that he can't proceed with

10  whatever the procedure is to collect on an unsecured claim.  We

11  haven't stopped him from doing that.  We haven't claimed that

12  he can't do that.  He can collect on his claim just as though

13  it's an unsecured claim.  He can go ahead and do that.  Our

14  appeal has nothing to do with the issue.

15         MR. HOGAN:  Well it's just an unusual case, Your

16  Honor, where Mr. Berry has gotten the ability to proceed to go

17  forward by the PCT and, you know, the PCT is continuing to

18  provide -- to C&S in this other companion litigation.  Mr.

19  Berry is attempting to protect his copyrights to be able to

20  prosecute the appeal without essentially -- I mean I don't hear

21  the PCT saying that they -- the costs they are incurring in

22  this appeal are nondischargeable.  In effect Mr. Berry could go

23  on for years the cert denied in this case and have absolutely

24  no way to recover for the costs of his appeal that is unbonded

25  by the estate's PCT.  I just think from an equitable

22

1  perspective, Your Honor, which is ultimately where we come to
2  this Court, that that's inequitable.

3          THE COURT:  Well except that to the extent that I had
4  dealt with the litigation here and there was an objection to
5  your claim which I had to liquidate they would have the right
6  to appeal and, you know, it may be years before your disputed
7  claim is ultimately resolved.  That's no different from any
8  other creditor.  I simply allowed you to liquidate it in Hawaii
9  because you had an action dealing with post-petition as well as
10 pre-petition alleged infringement.

11         MR. HOGAN:  I guess one of the problems -- assuming
12 hypothetically we go forward with the appeal we get an order
13 in the appeal that will require the Debtor to relinquish any
14 possession of Mr. Berry's property.  That might be construed as
15 an execution against the PCT or someone else that is
16 essentially blocked by the Court's ruling.  If it's
17 nondischargeable, Your Honor, to the extent that we go after
18 and try to obtain money from someone I could understand that,
19 but Mr. Berry has to have a least the ability to proceed in
20 these cases, Your Honor, to protect his interest in his
21 property.  To the extent that, you know, we're talking about
22 not going after the reorganized debtors -- and I understand
23 there argument was that they didn't do anything to you so you
24 don't have a judgment, but Fleming did.

25         THE COURT:  Well Mr. -- you're now going into issues

23

1  that are completely irrelevant.  You're talking about post-
2  petition acts and if they continue to use property that's owned
3  by Mr. Berry.  That's not the issue here.  The issue is you
4  have a judgment in the amount of 90 some thousand dollars for
5  pre-petition infringement.

6          MR. HOGAN:  Yes, Your Honor.

7          THE COURT:  And you have a claim that I guess is
8  still disputed  Has an appeal been filed by the PCT?

9          MR. HOGAN:  Yes, it has, Your Honor.

10          THE COURT:  All right.  Well to the extent it is
11  ultimately allowed by final order of a court it will be treated
12  like any other general unsecured claim entitled to a
13  distribution pursuant to the plan.  I think that's my only
14  thing I have to decide.

15          MR. HOGAN:  Thank you, Your Honor.

16          THE COURT:  All right.  I guess I'll deny the motion.

17          MR. LIEBELER:  Thank you, Your Honor.  Eric Leibeler
18  for the PCT.  I'm jumping off the phone.  I think I  have no
19  further matters.

20          THE COURT:  All right, I think we're done.  Are we?

21          MR. O'NEIL:  We're getting close.

22          THE COURT:  Okay.

23          MR. LIEBELER:  Thank you, Your Honor.

24          THE COURT:  Thank you.

25          MR. HOGAN:  Timothy Hogan.  I'll sign off now.  Thank

24

1  you, Your Honor.

2          THE COURT:  Is there anybody else left on the phone

3  then?

4          MR. O'NEIL:  No, that's it for the telephone.

5          THE COURT:  All right.

6          UNIDENTIFIED SPEAKER:  I'll be signing off, as well.

7  Thank you.

8          MR. O'NEIL:  Your Honor, Item Number 25 was handled

9  by Mr. Werb, the notices of assumption and assignment.  I think

10  Ms. Harper just has an update that she's going to give to the

11  Court.

12          THE COURT:  Okay.

13          MS. HARPER:  Good afternoon, Your Honor.  Megan

14  Harper of Landis Rath & Cobb for C&S Acquisition.  On Friday

15  C&S submitted an order to the Court which relates to Agenda

16  Item Number 33, that's a notice of assumption and assignment

17  pursuant to instruction from C&S Acquisition.

18          THE COURT:  Which one did that -- that does not look

19  familiar.

20          MS. HARPER:  Okay.

21          THE COURT:  I did sign one with respect to Bill's

22  IGA, was that it?

23          MS. HARPER:  No, that was not us.  That may have been

24  a -- I think that was an EWG matter.  This relates to a lease

25  identified as AZ041 and the lease is to be assumed and assigned

25

 1  to third party purchaser Bashas' Inc..

 2          THE COURT:  Well I'll assume it -- I'll assume you

 3  sent it to chambers and I'll get it in the ordinary course.

 4  Okay.

 5          MS. HARPER:  Thank you, Your Honor.

 6          THE COURT:  All right.  Anything else?

 7          MS. HARPER:  Nothing further.

 8          MR. O'NEIL:  Your Honor, just a quick housekeeping

 9  matter and this is on the resolution of the Pachulski fee

10  application with the United States Trustee.  I assume that that

11  matter is still under advisement.

12          THE COURT:  Yes.

13          MR. O'NEIL:  Okay.

14          THE COURT:  Sorry.

15          MR. O'NEIL:  And with that, Your Honor, that

16  concludes the matters that are on the agenda today.

17          THE COURT:  Thank you.  We'll stand adjourned.

18          MR. O'NEIL:  Thank you, Your Honor.

19                      *  *  *  *  *

20

21

22

23

24

25

26

## C E R T I F I C A T I O N

        I, Lori Auletta, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

        *Lori Auletta*                March 1, 2005

LORI AULETTA

J&J COURT TRANSCRIBERS, INC.