# Exhibit 6

**WHITE & CASE**

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036-2787

Tel   + 1 212 819 8200
Fax   + 1 212 354 8113
www.whitecase.com

Direct Dial + (212) 819-8303      adenatale@whitecase.com

June 6, 2006

<u>VIA E-MAIL AND FIRST CLASS MAIL</u>

Richard L. Wynne, Esq.
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA 90017-5800

Re:   <u>In re Fleming Companies, Inc., et al.</u>

Rick:

As discussed, we have been contacted by Timothy Hogan, counsel to Wayne Berry, with respect to potential infringement claims which he asserts Mr. Berry holds against the Agents and lending banks (collectively, the "<u>Banks</u>") stemming from, *inter alia*, their role in financing Fleming Companies, Inc. and its affiliates (collectively, "<u>Fleming</u>").[1]

As you are also aware, Mr. Berry previously brought two actions in the District Court of Hawaii asserting that Fleming engaged in willful copyright infringement with respect to software licensed to Fleming during the pre and post-bankruptcy periods, respectively.[2]  In a March 7, 2006 letter to me, Mr. Hogan asserts that "we believe that we can prove that [the Agents and Banks] provided material support to advance the infringing activities that are the subject of the most recent case."  Mr. Hogan's grounds for the stated belief are unclear.  After various communications with the Agents and certain of the Banks and in response to the threatened litigation, the Agents and a sub-group of the Banks entered into an agreement with Mr. Berry which, *inter alia*, tolls the statute of limitations effective March 30, 2006.

---

[1] As you are aware, we represent Deutsche Bank Trust Company Americas and JPMorgan Chase Bank, who acted as agents (the "<u>Agents</u>") with respect to a financing agreement dated June 18, 2002 (the "<u>Prepetition Credit Agreement</u>"), and, subsequent to the Fleming bankruptcy filing, with respect to a financing agreement dated May 6, 2003 (the "<u>Postpetition Credit Agreement</u>" and, together with the Prepetition Credit Agreement, the "<u>Credit Agreements</u>").

[2] Generally, the first action, <u>Berry</u> v. <u>Fleming Companies, Inc.</u>, No. 01-00446 (D. Haw.), pertains to Fleming's alleged pre-bankruptcy infringement and the second, <u>Berry</u> v. <u>Fleming Companies, Inc.</u>, No. 03-00385 (D. Haw.), pertains to its alleged post-bankruptcy infringement.

---

ALMATY   ANKARA   BANGKOK   BEIJING   BERLIN   BRATISLAVA   BRUSSELS   BUDAPEST   DRESDEN   DÜSSELDORF   FRANKFURT   HAMBURG   HELSINKI
HO CHI MINH CITY   HONG KONG   ISTANBUL   JOHANNESBURG   LONDON   LOS ANGELES   MEXICO CITY   MIAMI   MILAN   MOSCOW   MUMBAI   MUNICH   NEW YORK
PALO ALTO   PARIS   PRAGUE   RIYADH   SAN FRANCISCO   SÃO PAULO   SHANGHAI   SINGAPORE   STOCKHOLM   TOKYO   WARSAW   WASHINGTON, DC

Richard L. Wynne, Esq.

WHITE & CASE

June 6, 2006

Fleming's Third Amended and Revised Joint Plan of Reorganization (the "Plan") was confirmed on July 27, 2004 and, pursuant thereto, the Pre-Petition Lenders' Secured Claims[3] are classified as unimpaired.  See, Plan, Article III. Classification and Treatment of Classified Claims and Equity Interests, at pp. 15-17.  Section 1124 of the Bankruptcy Code makes clear that the legal, equitable, and contractual rights with respect to claims which are unimpaired remain unaltered and, accordingly, the Agents and Banks' contractual rights under the Prepetition Credit Agreement continue to exist post-confirmation.  11 U.S.C. § 1124.

In particular, the Prepetition Credit Agreement provides in relevant part as follows

> Borrower shall indemnify each Agent, each Joint Book Manager, each Joint Lead Arranger, each Issuing Lender and each Related Party of any of the foregoing Persons (each such person being called an "INDEMNITEE") against, and hold each Indemnitee harmless from, any and all losses, claims, damages, liabilities and related expenses, including the fees, charges and disbursements of any counsel for any Indemnitee, incurred by or asserted against any Indemnitee arising out of, in connection with, or as a result of (i) the execution or delivery of any Loan Document or any other agreement or instrument contemplated hereby, the performance by the parties to the Loan Documents of their respective obligations thereunder or the consummation of the transactions contemplated hereby… or (iv) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based in contract, tort or any other theory and regardless of whether any Indemnitee is a party thereto…"

Prepetition Credit Agreement, Section 9.03, at pp. 112-113.  Further, the Prepetition Credit Agreement provides that the foregoing provision "shall survive and remain in full force and effect regardless of the consummation of the transactions contemplated hereby, the repayment of the Loans, the expiration or termination of the Letters of Credit and the Commitments or the termination of this Agreement or any provision hereof."  Prepetition Credit Agreement, Section 9.05, at p. 116.

The Postpetition Credit Agreement contains analogous indemnification provisions.  See, Sections 9.03 and 9.05.  With respect to the Postpetition Credit Agreement, the Plan provides that "each Holder of an Allowed DIP Claim shall be paid in full in Cash in full satisfaction, settlement, release and discharge of each and every Allowed DIP Claim, unless such Holder consents to other treatment."  See, Plan, Aricle II. Unclassified Claims.  At no time have the Agents or Banks consented to treatment which would alter or waive their indemnification rights under the Postpetition Credit Agreement.  Further, neither the Plan nor the Payoff Letters (discussed below) provide for compensation on account of such a significant modification.

---

[3] The "Pre-Petition Lenders' Secured Claims" are defined in the Plan as "Claims arising under the Pre-Petition Credit Agreement."

2

Richard L. Wynne, Esq.

**WHITE & CASE**

June 6, 2006

Moreover, the letters with respect to the payoff (the "Payoff Letters") of the Credit Agreements, each dated August 23, 2004, specifically acknowledge and provide that "all Obligations shall be deemed to be satisfied in full, except for indemnification and other provisions of the Existing Credit Agreement and other Loan Documents which by their express terms survive the payment of the Obligations and the termination of the Commitments."[4]

Based on the foregoing, it is clear that any costs incurred by the Agents or the Banks in defending against Mr. Berry are subject to indemnification as the asserted claims relate directly to the performance by the Agents and Banks of their respective obligations under the Credit Agreements.

To date, the Agents and the Banks have incurred fees and costs totaling approximately $99,972.03 with respect to the threatened litigation by Mr. Berry through his attorney, Mr. Hogan.[5]  Therefore, the Agents and Banks hereby seek reimbursement of this amount as well as compliance with the indemnification obligations going forward.

Upon request, we will be happy to provide you with a more detailed statement of the fees and costs.

Please do not hesitate to contact me if you have any questions regarding the foregoing.

Sincerely,

Andrew DeNatale

AD:wu

cc:     Deutsche Bank Trust Company Americas
        JP Morgan Chase Bank

---

[4] Pursuant to the Plan, on the Effective Date, August 23, 2004, the Reorganized Debtors were authorized to operate their respective businesses and use, acquire or dispose of property without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code. See, Plan, Article V. Means for Implementation of the Plan, at p.23.  To take the position, however, that the obligations arising under the Payoff Letters were somehow discharged under the Plan is at best illogical.  Following this argument to its conclusion every document, agreement, security and instrument executed by the Debtors on the Effective Date would be without consequence.

[5] Such fees and costs pertain to, among other things, (i) negotiations with Mr. Hogan regarding the tolling agreement, (ii) communications with the Banks regarding the threatened litigation and the proposed tolling agreement, (iii) review of pleadings with respect to the actions against Fleming in the District Court of Hawaii, and (iv) a preliminary review of case law and analysis of potential claims against and defenses of the Agents and Banks.

3

NEWYORK 5617746 (2K)

20070804 Berry v. Deutsche Bank 1st Berry Production
PCT-B DE1500005