UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAYNE BERRY,<br><br>      Plaintiff,<br><br>  vs.<br><br>DEUTSCHE BANK TRUST COMPANY AMERICAS (FKA BANKERS TRUST COMPANY) AND JP MORGAN CHASE BANK IN THEIR SEPARATE CAPACITIES AND AS AGENTS FOR THE PRE- AND POST-PETITION LENDERS OF FLEMING COMPANIES, INC.; GENERAL ELECTRIC CAPITAL CORPORATION; C&S WHOLESALE GROCERS, INC.; THE POST-CONFIRMATION TRUST OF FLEMING COMPANIES, INC.; ROBERT KORS; CORE-MARK HOLDINGS INC. AND DOES 1 TO 200,<br><br>      Defendants. | Case No. 01:07 CV 7634 (WHP)<br><br>ECF Case |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR JOINT
MOTION FOR SECURITY PURSUANT TO LOCAL RULE 54.2**

KIRKLAND & ELLIS LLP
Michael E. Baumann (admitted *pro hac vice*)
Erin N. Brady (admitted *pro hac vice*)
777 South Figueroa Street
Los Angeles, California  90017
Telephone:   (213) 680-8400
Facsimile:   (213) 680-8500
E-mail:      ebrady@kirkland.com

Counsel for Defendants Post Confirmation Trust, Robert Kors, Deutsche Bank Trust Companies Americas and JP Morgan Chase Bank

12622099v

**I.     INTRODUCTION**

Berry's opposition is itself evidence of why the Court can and should require him to post a bond under Local Rule 54.2.  In the face of the motion, he provides no evidence at all that he will be able to pay the costs and fees that Defendants may be awarded in this litigation (and, in fact, concedes that he will not be able to pay).  He fails to discuss, much less bolster, the merits of his claims against Defendants.  He provides no valid explanation for his failure to comply with the Hawaii District Court's judgments requiring him to pay C&S Wholesale Grocers, Guidance Software and Brian Christensen hundreds of thousands of dollars in costs and attorneys' fees.  And while he argues on the one hand that he does not intend to do anything to run up the costs of this litigation, his conduct in this litigation to date suggests otherwise.

Rather than engage on the issues pertinent to whether he should be required to post a bond in favor of Defendants, Berry spends the bulk of his opposition discussing the irrelevant details of his earlier litigation against Fleming Companies, Inc. ("Fleming").  Peppered throughout this discussion is a series of false statements and irrelevant accusations presumably intended to detract from the fact that he has not satisfied a number of Hawaii judgments.  And in a typical display of fallacious logic, Berry ultimately concludes that the Defendants' motion to impose a bond altogether "proves . . . that defendants are engaged in a conspiracy under RICO." (Opp'n at 4).  None of this is relevant to whether the Court should impose a bond in this case.

What is relevant, however, is that Berry concedes that he does not have the financial ability to pay the costs, fees and sanctions that Defendants may be awarded in this action. (Opp'n at 1).  He concedes that he has not paid C&S' fee award.  (Opp'n at 8-9).  And he concedes that he is an out-of-state resident.  (Opp'n at 6).  Based on these concessions alone, a bond is proper.

**II.    BERRY'S ARGUMENTS ABOUT THE DEFUNCT FLEMING COMPANIES, INC. ARE IRRELEVANT.**

Berry takes great pains to set up Fleming—a now-defunct company that inadvertently infringed his copyright in 2003—as a strawman for Defendants in this case.  But Fleming is not a

defendant in this case. And nothing Berry says about Fleming in any way substantiates his baseless claims against Defendants (none of which he has proven and, with respect to C&S, most of which he has already lost), justifies his refusal to satisfy the Hawaii District Court's fee awards, nullifies his history of costly litigation against countless innocent defendants, or evidences his ability to satisfy any costs or fees that the Court may award Defendants in this case. Berry's arguments about Fleming are entirely irrelevant.

## III.    BERRY'S OPPOSITION IS RIDDLED WITH FALSE STATEMENTS.

Similarly irrelevant is the litany of false and misleading statements peppered throughout Berry's opposition, all of which are presumably intended to detract from the essential facts that his claims against Defendants are without merit and he has not satisfied the Hawaii fee awards. Berry falsely asserts, for example, that (1) he has not refused to pay his debts (Opp'n at 1-2), (2) that C&S owes him $700,000 in unpaid license fees (Opp'n at 3), (3) that the Delaware Bankruptcy Court's stay of a proceeding involving Berry and Fleming impacts his obligation to satisfy the Hawaii fee awards (Opp'n at 4-5), (4) that Defendants are trying to get this Court to enforce the Hawaii fee awards (Opp'n at 9), (5) that he has done nothing to run up this cost of this litigation (Opp'n at 8), and (6) that the PCT holds a $22 million "Berry war chest." (Opp'n at 5). Defendants will briefly rebut each of these assertions.

### A.    Berry refuses to comply with the Hawaii District Court fee award orders.

Continuing with his inappropriate fixation on Fleming, Berry contends that the "only party to have refused to pay its debts is Fleming, the bankrupt, not Mr. Berry." (Opp'n. at 1-2). This is false. Despite their repeated demands, Berry *has not paid* C&S' $84,758.98 judgment, he *has not paid* Guidance's $51,657.50 judgment, and he *has not paid* Brian Christensen's $27,507.20 judgment. *See*, *e.g.*, Brady Affidavit, Exs. L and M (Demand Letters).[1] He also *has not paid* a judgment in favor of his father, and he *has not paid* several years of back taxes. Berry

---

[1]    Exhibits L and M are attached to the Affidavit of Erin N. Brady concurrently filed in support of this reply brief.

has, indeed, failed to pay his debts. And there is little doubt that if given the chance, he will refuse to pay his debts to the Defendants here as well.

### B. Berry does not have an offset to C&S' fee award.

After first claming that he pays his debts, Berry then engages in an extended discussion attempting to justify his admitted refusal to pay the C&S fee award on the theories that (1) C&S owes him an "admitted unpaid license fee" of $729,600; and (2) C&S' judgment is really Fleming's judgment. Both arguments are without merit.

First, Berry baldly asserts (without any support or citations) that "C&S now claims that it bought Berry software from Fleming in its 2003 Asset Purchase agreement" and that C&S owes Berry an "admitted unpaid license fee" of $729,600. (Opp'n Br. at 3). Given C&S' vigorous defense in this proceeding, it can hardly be said that C&S admits that it owes Berry anything. More importantly, however, both the Delaware Bankruptcy Court and the Hawaii District Court have explicitly ruled that Fleming did not transfer any of Berry's software to C&S. (Mot. for Security at 3-4; Ex. G to Defendants' Request for Judicial Notice (S.D.N.Y. D.I. 62) at 6-7 (2/9/2006 Order) ("Berry fail[ed] to show that Fleming transferred any copies or derivates of [his software] to C&S.")). In fact, the Hawaii District Court awarded C&S attorneys' fees for defending itself against that very claim. (Ex. F to Defendants' Request for Judicial Notice (S.D.N.Y. D.I. 62) at 2, 46 (10/25/06 Special Master Order)). Berry simply ignores or misrepresents these earlier rulings, which are strong evidence that Berry will end up owing attorneys' fees and costs for repeating the same failed claims that resulted in unpaid fee and cost awards against him in Hawaii.

Second, Berry asserts that because "C&S and its counsel have refused to provide debt verification," and because C&S' counsel allegedly consulted with the PCT's counsel in Los Angeles before agreeing to continue a hearing scheduled in the Hawaii District Court (in a case in which they were both defendants), C&S' judgment is really Fleming's and is subject to offset against the amounts Fleming allegedly owes him. (Opp'n at 4). The Hawaii District Court order, however, is clear that the court was awarding $84,758.98 in fees *to C&S*. It was equally

3

clear that it was issuing *separate fee awards* for the PCT (which litigated on behalf of Fleming's estate after Fleming's bankruptcy plan was confirmed), Guidance and Mr. Christensen. Berry's unjustifiable refusal to pay C&S' $84,758.98 fee judgment—not to mention the separate judgments awarded in favor of Guidance and Mr. Christensen—strongly suggests that he will similarly refuse to pay any awards issued in favor of Defendants in this case.

**C.    The bankruptcy court stay has nothing to do with the Hawaii fee orders.**

Berry makes much of the Delaware Bankruptcy Court's stay of proceedings involving Berry's purported administrative proof of claim, insinuating that this is yet another reason why he need not comply with the Hawaii District Court judgments. The bankruptcy court's stay, however, involves the resolution of Berry's claim against Fleming in the context of the Fleming bankruptcy case. It has nothing to do with C&S, Guidance or Mr. Christensen. Each of those parties is free to collect its judgments, which each is trying to do.

**D.    Nobody is asking this Court to enforce the Hawaii District Court's judgments.**

Berry also claims that by seeking a bond in this case, Defendants "are asking this court to enforce [the Hawaii judgments]." (Opp'n at 9 (where Berry also asserts that the Hawaii District Court's judgments are not *really* judgments, while acknowledging that the Hawaii court disagrees with him)). This is absurd. Defendants are asking this Court to impose a bond to secure the costs, fees and sanctions that they may be awarded in this action. The Hawaii judgments are relevant only to the issue of whether Berry has complied with prior court orders (which he has not).

**E.    Berry has already run up the costs of litigation in this case.**

Berry asserts that he "has filed nothing that has caused either the parties or this Court to respond in any way." (Opp'n at 8). *Berry* filed the Second Amended Complaint, adding Robert Kors and the PCT as new defendants and expanding the allegations against other defendants. And in the matter of a few short months, that unsubstantiated, frivolous complaint has caused (1) four of the six named defendants to file motions to dismiss, (2) the PCT and Mr. Kors to file

4

answers and a motion for summary judgment, and (3) the PCT and Mr. Kors to serve a motion seeking sanctions (which Berry seems content to ignore, given that he filed his opposition to the pending summary judgment motion after having been served with the sanctions motion). Moreover, despite expressly agreeing on the record that his SAC would be his last pleading, Berry now threatens (in violation of that agreement) to add hundreds of additional parties, and his initial disclosures show that he intends to take substantial discovery of parties and non-parties alike. Rather than engage in cautious, sensible litigation methods to keep costs down (for example, not continuing to litigate claims that are without merit), Berry has done everything he can to make this litigation as expensive as possible.

      **F.    The PCT is not holding a "Berry war chest."**

Finally, Berry, citing to a reply brief that the PCT filed in Fleming's bankruptcy case in December 2006, claims that the PCT is holding a $22 million "Berry war chest" from which the PCT, C&S and "the instant Lenders" can turn to satisfy their costs in this litigation. (Opp'n at 8). But the reply brief says nothing of a "Berry war chest"—because there is no such thing. The $22 million referenced in the PCT's brief is the amount the PCT projected would remain (in trust, for the benefit of PCT beneficiaries) after the PCT made its initial, $57.5 million distribution to its beneficiaries. Of course, this is all irrelevant to Defendants' motion. There is no war chest and, even if there was, it would not justify allowing Berry to wage his frivolous litigation at the expense of the PCT's beneficiaries.

**IV.    THE COURT SHOULD IMPOSE A BOND AGAINST BERRY AND STAY THE CASE.**

As Berry has not presented any valid reason why the Court should refrain from requiring a bond in this case, the only remaining question is how much that bond should be. Defendants request that it be set at $100,000. Berry's claim that he is of limited financial means does not preclude the Court from imposing a bond in that amount (or such other amount that the Court deems appropriate). *See Beverly Hills Design Studio, Inc. v. Morris*, 126 F.R.D. 33, 36 (S.D.N.Y. 1989) (rejecting plaintiff's argument that a bond should not be imposed because of a

5

claimed lack of financial ability to post a bond and requiring plaintiff to post a $20,000 bond pursuant to former Local Rule 39, the predecessor of Rule 54.2); *Johnson v. Kassovitz*, 1998 WL 655534, at *2 (S.D.N.Y. September 24, 1998) (imposing $50,000 bond against plaintiff who did not have financial resources to satisfy an award of costs and attorneys' fees); *Baker v. Urban Outfitters, Inc.*, 2004 WL 2546805, at *2, *4 (S.D.N.Y. November 10, 2004) (imposing $450,000 bond on copyright plaintiff who admittedly was "unlikely to be able to pay an award of attorney's fees"). And if Berry fails to post the required bond, the Court should stay the action and permit Defendants to seek dismissal. *See Johnson*, 1998 WL 655534, at *2 ("all proceedings are stayed until the [Local Rule 54.2] bond is filed.").

## V.   CONCLUSION

Defendants' request for security will be rendered moot if the Court adjudicates the pending dispositive motions in their favor. Nonetheless, to the extent that the Court takes the dispositive motions under submission, Defendants respectfully request that the Court immediately impose a bond of $100,000, or in such amount as the Court deems appropriate, and stay further proceedings beyond ruling on the pending motions until Berry posts the required bond. Should Berry refuse to post the bond within 30 days of its issuance, Defendants request that the Court issue an order to show cause as to why the case should not be dismissed, with prejudice.

DATED: March 28, 2008

By: /s/ Erin N. Brady

KIRKLAND & ELLIS LLP
Michael E. Baumann (admitted *pro hac vice*)
Erin N. Brady (admitted *pro hac vice*)
777 South Figueroa Street
Los Angeles, California 90017
Telephone:   (213) 680-8400
Facsimile:    (213) 680-8500
E-mail:        ebrady@kirkland.com

Counsel for Defendants Post Confirmation Trust, Robert Kors, Deutsche Bank Trust Companies Americas and JP Morgan Chase Bank

and

NIXON PEABODY LLP
Christopher M. Mason
437 Madison Avenue
New York, New York 10022
Telephone:   (212) 940-3000
Facsimile:    (212) 940-3111
E-mail:        cmason@nixonpeabody.com

Counsel for Defendant C&S Wholesale Grocers, Inc.

and

LEVINE, SULLIVAN, KOCH & SCHULZ, LLP
Robert Penchina
321 West 44th Street, Suite 510
New York, New York 10036
Telephone:   (212) 850-6100
Facsimile:    (212) 850-6299
E-mail:        rpenchina@lskslaw.com

Counsel for Defendant General Electric Capital Corporation