UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAYNE BERRY,<br><br>      Plaintiff,<br><br>   vs.<br><br>DEUTSCHE BANK TRUST COMPANY AMERICAS (FKA BANKERS TRUST COMPANY) and JP MORGAN CHASE BANK in their separate capacities and as agents for the pre- and post-petition lenders of Fleming Companies, Inc.; GENERAL ELECTRIC CAPITAL CORPORATION; C&S WHOLESALE GROCERS, INC.; THE POST-CONFIRMATION TRUST OF FLEMING COMPANIES, INC.; ROBERT KORS; CORE-MARK HOLDINGS INC. and DOES 1 to 200,<br><br>      Defendants. | Case No. 01:07 CV 7634 (WHP)<br><br>ECF Case |

THE POST CONFIRMATION TRUST'S AND ROBERT KORS'
REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

                  KIRKLAND & ELLIS LLP
                  Michael E. Baumann (*pro hac vice* pending)
                  Erin N. Brady (*pro hac vice* pending)
                  777 South Figueroa Street
                  Los Angeles, California  90017
                  Telephone:   (213) 680-8400
                  Facsimile:    (213) 680-8500
                  E-mail:        ebrady@kirkland.com

                  Counsel for Defendants Post Confirmation
                  Trust and Robert Kors

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................1

II.  LEGAL STANDARD............................................................................................2

III. ARGUMENT..........................................................................................................3

    A.   Berry's Breach of Contract Cause Of Action Fails Because Neither The
         PCT Nor Mr. Kors Was Ever A Party To The Contract At Issue...........................3

    B.   Berry Has Abandoned One Abuse of Process Claim; The Other Fails As A
         Matter of Law And Lacks Any Evidence To Support It..........................................4

    C.   There Is No Evidence Of A Breach Of Fiduciary Duty, Much Less Any
         Evidence Implicating Defendants. ...........................................................................6

    D.   Berry Has Abandoned His RICO Claims. ..............................................................9

IV.  CONCLUSION....................................................................................................10

i

# TABLE OF AUTHORITIES

**Cases**

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144 (1970) .......................................................................................................... 2

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .......................................................................................................... 2

*Arias v. Nasdaq/Amex Mkt. Group*,
  2003 WL 354978 (S.D.N.Y. Feb. 18, 2003) ..................................................................... 4

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .......................................................................................................... 2

*Frink Am., Inc. v. Champion Road Machinery Ltd.*,
  48 F. Supp. 2d 198 (N.D.N.Y. 1999) .............................................................................. 4, 9

*Highlands Ins. Co. v. PRG Brokerage, Inc.*,
  2004 WL 35439 (S.D.N.Y. Jan. 6, 2004) .......................................................................... 3

*In re Alongi*,
  272 B.R. 148 (Bankr. D. Md. 2001) ................................................................................. 3

*Jabara v. Songs of Manhattan Island Music Co.*,
  1989 WL 16614 (S.D.N.Y. Feb. 24, 1989) ....................................................................... 8

*Jeffreys v. City of N.Y.*,
  426 F.3d 549 (2d Cir. 2005) .......................................................................................... 2, 8

*Krellman v. Livingston*,
  406 N.Y.S.2d 881 (N.Y. App. Div. 1978) ......................................................................... 5

*Price v. Worldvision Enters., Inc.*,
  455 F. Supp. 252 (S.D.N.Y. 1978) .................................................................................... 2

*Stroock & Stroock & Lavan v. Beltramini*,
  550 N.Y.S.2d 337 (N.Y. App. Div. 1990) ......................................................................... 5

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*,
  460 F.3d 281 (2d Cir. 2006) .............................................................................................. 8

**Other Authorities**

ABA Model Rule of Prof. Conduct 1.6(b)(5) ................................................................................. 8

CJS, *Assignment of Lien* § 449 (2008) ........................................................................................... 7

Restatement (Second) of Contracts § 24 ................................................................................ 8

**I.     INTRODUCTION**

After filing their motion for summary judgment, the PCT and Robert Kors (collectively, "Defendants") served Berry with a motion for sanctions on March 13, 2008, giving him the opportunity to withdraw his claims against them without penalty and before having to incur the expense of opposing the motion. Berry ignored this opportunity, opting instead to press on with his claims. And his opposition, which weaves a paranoid tale that under other circumstances might be seen as piteous, further demonstrates that his claims are wholly without merit.

In opposing the motion, Berry does not produce any evidence that would raise a triable issue of material fact, nor does he cite to any legal authority that would establish the viability of his claims. Rather, he fills his brief with citations to the bizarre, paranoid delusions in the Berry affidavit and makes wild and uncorroborated claims that the PCT, a creditor trust, and Mr. Kors, its representative:

- orchestrated a failed "murder for hire" plot, in which they were involved in hiring an armed process server to serve a dismissed divorce complaint on Berry in a restaurant. The process server either had a gun or "was sending the international signal for 'I've got a gun in my pocket.'" No evidence of a police report or a complaint by Berry to the police is offered, nor is any evidence offered that the process server was actually hired by or acted on behalf of the PCT or Mr. Kors.
- are secretly continuing Fleming's grocery distribution business—apparently unbeknownst to Fleming's creditors and the bankruptcy court—based solely on speculation about a tariff published by a non-party and the existence of a web site with the name Fleming in it.
- entered into a secret agreement to buy Berry counsel's "indentured servitude."

The reason Berry engages in this sideshow, rather than producing actual evidence or citing to applicable legal authority, is simple: he has none. The materials Berry attempts to pass off as evidence consist of idle speculation, inadmissible website printouts (without any discernible relevance to his claims), and unsupported assertions that any (or no) response to his ever-shifting accusations is an admission of liability. And when it comes to legal authority, Berry does not even address Defendants' citation of applicable legal authority that defeats his claim. Nor could he, as it is irrefutable, for example, that a non-party to a contract cannot breach a contract, and that service of a complaint, even if it had occurred, is not an abuse of process.

1

Because there is no admissible evidence to support elements of Berry's claims, and because the claims fail as a matter of law, Defendants' motion should be granted.

## II.    LEGAL STANDARD

The initial burden of demonstrating an absence of any genuine dispute of material fact rests with the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If a claim is completely lacking in factual support, the moving party may satisfy this burden merely by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once that initial burden is met, the non-moving party must then come forward with "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The non-moving party, therefore, "must do more than simply show that there is some metaphysical doubt as to the material facts, and [it] may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotations and citations omitted). Rather, "[a]t the summary judgment stage, a non-moving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id.*; *see also Price v. Worldvision Enters., Inc.*, 455 F. Supp. 252, 266 n.25 (S.D.N.Y. 1978) (granting summary judgment where "contradicting or impeaching evidence [was] 'too incredible to be believed by reasonable minds'").

In their summary judgment motion, Defendants not only pointed out the absence of evidence in support of Berry's claims, but also submitted countervailing evidence. Berry has responded with nothing but speculation and conjecture (in a format that, as discussed in the concurrently filed evidentiary objections, is itself utterly incomprehensible), and has therefore failed to meet his summary judgment burden as to any of his causes of action.

**III.     ARGUMENT**

      **A.     Berry's Breach of Contract Cause Of Action Fails Because Neither The PCT Nor Mr. Kors Was Ever A Party To The Contract At Issue.**

Contrary to Berry's flamboyant characterizations, Defendants do not seek summary judgment on Berry's breach of contract claim on the basis that "Kors is . . . the King." (Opp'n at 4). Rather, they seek summary judgment because they cannot be liable for breaching a contract to which they are not and have never been parties. *See* Mot. at 10-13; *Highlands Ins. Co. v. PRG Brokerage, Inc.*, 2004 WL 35439, at *8 (S.D.N.Y. January 6, 2004). The undisputed facts are these. Fleming and Berry had a license agreement, the contract that Defendants have now allegedly breached. (SOMF ¶ 9). In the course of Fleming's subsequent bankruptcy, Fleming rejected the Berry license agreement, a rejection that the bankruptcy court approved, and which Berry has repeatedly acknowledged. (SOMF ¶¶ 3, 10; BSOMF ¶ 10 (Berry admitting that he filed a claim for rejection damages)). Following that rejection, the PCT came into existence, and Mr. Kors' firm was named as its representative. (SOMF ¶¶ 6-8; BSOMF ¶¶ 6-8).

Based upon those facts, neither the PCT nor Mr. Kors could have become parties to the rejected contract. As Defendants noted in their Motion, a bankruptcy estate does not become a party to a contract that the debtor has rejected, and it cannot therefore be liable for breaching that contract as a matter of law. *In re Alongi*, 272 B.R. 148, 154 (Bankr. D. Md. 2001) (holding that where a debtor rejects a contract, there is "neither a right of specific performance against the estate nor a right to recover damages against the estate"). And Mr. Kors (whom Berry sues in his personal capacity) similarly could never have been a party to the license agreement. Berry makes no real attempt to address this case law, because he cannot. Instead, he tries to assert that the rejection is meaningless by citing to an inapposite bankruptcy court decision, in which the court ***denied*** a debtor's motion to reject. (Opp'n at 21 (citing *In re Fleming Cos., Inc.*, 308 B.R. 689, 692 (Bankr. D. Del. 2004))). Here, by contrast, there is no dispute that the bankruptcy court ***approved*** Fleming's rejection of the Berry license agreement. (BSOMF ¶ 10).

3

Without any cogent theory as to how non-parties to a contract could be liable for breach of contract, Berry is left to cite irrelevant authority on breach of trust (Opp'n at 19-20) and make pages of unsupported arguments about ratification, indemnity agreements and sub-licenses (*id.* at 1-4). But what Berry has asserted against Defendants is a ***breach of contract*** claim. Here, there is no signed agreement between Mr. Kors or the PCT and Berry, there is no allegation of an oral agreement, and it is undisputed that the license agreement between Fleming and Berry was rejected before the PCT came into existence. Moreover, Berry has cited no legal support for his theory that the license agreement was somehow revived without bankruptcy court approval and that Mr. Kors and the PCT suddenly became parties to it. Because Berry cannot show the existence of a contract between he and Defendants, his breach of contract claim fails.

### B.  Berry Has Abandoned One Abuse of Process Claim; The Other Fails As A Matter of Law And Lacks Any Evidence To Support It.

In the SAC, Berry asserts two claims of abuse of process: (1) that Defendants abused process when C&S conducted a court-ordered judgment debtor exam, and (2) that Defendants abused process when a process server served Berry with his wife's divorce complaint. (Mot. at 7-10). Berry's first abuse of process claim can be disposed of quickly: he fails to address it in his opposition brief and, as a result, Defendants are entitled to summary judgment. *See Frink Am., Inc. v. Champion Road Machinery Ltd.*, 48 F. Supp. 2d 198, 209 (N.D.N.Y. 1999) (holding claims that were not addressed in opposition papers abandoned); *Arias v. Nasdaq/Amex Mkt. Group*, 2003 WL 354978, at *13 (S.D.N.Y. February 18, 2003) (dismissing claims as "abandoned" where plaintiff's summary judgment opposition "neither refute[d] nor even mention[ed]" defendant's arguments for summary judgment).

Berry similarly fails to address Defendants' arguments regarding his second abuse of process claim, choosing instead to rely on unsupported leaps of logic and grandiose embellishment of the allegations in his SAC. First, Berry fails to discuss the legal authority Defendants cite for the proposition that service of a summons and complaint cannot be an abuse of process as a matter of law. (Mot. at 8). Instead, Berry says only (without citation to

4

authority) that this particular service is different because his wife's divorce complaint allegedly had been dismissed and was therefore served only to "terrorize" Berry. (Opp'n at 24). But even if the complaint already had been dismissed when served, as Berry now alleges, his claim fails because abuse of process requires "regularly issued process . . . *which compels the performance or forbearance of a prescribed act*." *Krellman v. Livingston*, 406 N.Y.S.2d 881, 882 (N.Y. App. Div. 1978) (emphasis added). Because a dismissed complaint—the invalidity of which Berry now asserts was obvious on its face (Berry Aff. ¶ 17)—would not require Berry to do or forbear from doing anything, it cannot form the basis of an abuse of process claim. Similarly, even if the complaint was served for an ulterior purpose (which Defendants can neither confirm nor deny, as they were not involved), it would not qualify as an abuse of process, as a party's motive in serving a summons and complaint is irrelevant. *See Stroock & Stroock & Lavan v. Beltramini*, 550 N.Y.S.2d 337, 338 (N.Y. App. Div. 1990) (noting that "service of a summons and complaint, *even if made with malicious intent*, is insufficient to state a cause of action for abuse of process") (emphasis added).

      Setting aside the legal infirmity of his claim, Berry has not linked Defendants to the service of Mrs. Berry's divorce complaint. In fact, the only evidence Berry submits to implicate Defendants in this service is his own testimony that he saw Defendants' counsel, Michael Baumann, in the West Palm Beach airport. (Berry Aff. ¶ 17). This testimony, which is contradicted by documentary evidence and three sworn affidavits, does not raise a triable issue of material fact given the complete absence of any evidence linking Baumann, Kors or the PCT to the process server. (M. Baumann Aff. ¶ 3; T. Baumann Aff. ¶¶ 3-4; Benson Aff. ¶¶ 2-5 & Ex. A). Berry does not even allege that the person he thought was Baumann talked to the process server, followed Berry in the airport, pointed him out, or did anything at all. Nor does the Berry affidavit provide any evidence of a link between the process server and Kors and the PCT.

      Apparently believing that, in the absence of evidence or supporting legal authority, he might survive summary judgment by making his allegations more outrageous, Berry asserts for the first time that this was not just a service of process, but a murder plot gone wrong. (Berry

5

Aff. ¶ 17). In an affidavit that reads like bad detective fiction, Berry claims that the process server who served the complaint was involved in a "failed attempt on [Berry's] life" (*id.*):

> While seated at Duffy's, without any hesitation, a woman walked directly up to me and placed some papers on our table and said, "sorry Mr. Berry" and backed away from my table slowly before turning and quickly exiting the restaurant. The woman did not identify herself nor did she attempt to ask me any questions including any attempt on her part to confirm my identity. The woman was wearing a coat and kept one of her hands in her coat pocket. My thoughts flashed back to the deposition with Lex Smith, just a day earlier and all the bizarre and alarming question that Lex Smith had asked me about my guns. I am certain that this woman was holding a gun in her pocket. If she wasn't she was sending the international signal for "I've got a gun in my pocket."

*Id.*

Berry's life allegedly was spared only because the restaurant is one that is "frequented by members of the Jupiter Florida police department." *Id.* Yet Berry said nothing to these police officers and did not file a police report. Instead, he waited several months and then filed an abuse of process claim in New York, in which he fails to mention that the process server was armed. (SAC ¶¶ 228-38 (no mention of process server having a gun)). Not only is Berry's story implausible, but it also does nothing to save his abuse of process claims. Because service of a complaint cannot be an abuse of process as a matter of law, and because there is nothing linking the PCT or Mr. Kors to the alleged conduct, summary judgment should be granted.

### C. There Is No Evidence Of A Breach Of Fiduciary Duty, Much Less Any Evidence Implicating Defendants.

Despite devoting half of his opposition to the inducement of breach of fiduciary duty and tortious interference allegations, Berry fails to establish any link between Defendants and Mr. Ichida. The inducement at issue amounts to Lex Smith, counsel for C&S and co-counsel for the PCT, allegedly paying or offering to pay money to Berry's former law firm to purchase its attorney lien. But there is no genuine dispute that Lex Smith has never represented Mr. Kors for any purpose. *Compare* Smith Aff. ¶ 1 ("I am not counsel to Robert Kors in his personal

6

capacity.") *with* Opp'n at 22 (claiming without citation to authority that "Lex Smith admits that he is an agent for . . . Kors"). And despite ten pages of discussion of this alleged transaction (Opp'n at 5-15), the only cited evidence linking the alleged transaction to the PCT is a hearsay email in which Mr. Ichida tells Berry that Mr. Smith has to "check with LA" as to whether the parties can agree to an extension on a hearing date. (Berry Aff., Ex. 4). Rather than take this statement to mean that Mr. Smith was checking with the PCT's counsel as to whether they were amenable to an extension in an action in which the PCT was also a party, Berry speculates that Smith was "getting his orders" from Los Angeles for all purposes (Opp'n at 8), and that the PCT and Mr. Kors must therefore have been "directing this sordid affair." *Id.* at 14. No reasonable juror could reach the same conclusion based on this single email, especially in the face of the alleged participants' sworn testimony to the contrary. (SOMF ¶¶ 11-30).

In any event, the underlying conduct alleged against Mr. Ichida and his firm does not constitute a breach of fiduciary duty (which breach is a necessary element of Berry's inducement claims). (Mot. at 13-16). Indeed, an attorney may freely assign an attorney charging lien without breaching his or her fiduciary duties. *See* CJS, *Assignment of Lien* § 449 (2008) (stating that "there is nothing in public policy or in the statutes which forbids" assignments of attorneys' charging liens or liens upon a judgment, or agreements whereby an attorney assigns part of a contingent fee). Accordingly, even if Mr. Ichida had sold the attorney lien to Mr. Smith or anyone else, he would not have breached his fiduciary duty.

But the fact is there was no purchase or sale of the lien. (SOMF ¶¶ 11-30). And Berry concedes as much, now arguing instead that Mr. Smith's inquiry as to whether Mr. Ichida would "*consider*" selling or assigning the firm's lien *if* the firm withdrew from representing Berry and perfected its lien—which Berry characterizes as an offer—by itself induced Mr. Ichida's breach of fiduciary duty. (Opp'n at 8). There are two problems with this theory. First, Mr. Ichida could not plausibly have breached any duty by merely listening to Mr. Smith ask if he would consider selling his firm's liens (particularly when an actual sale of the liens would not constitute such a breach). And second, Mr. Smith's statement asking Mr. Ichida whether his firm would consider

7

selling its liens is not an offer in the first place. *See* RESTATEMENT (SECOND) OF CONTRACTS § 24 (an offer is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it"); *Jabara v. Songs of Manhattan Island Music Co.*, 1989 WL 16614, at *10 (S.D.N.Y. February 24, 1989) (distinguishing an offer from "acts of mere preliminary negotiation"). Neither Ichida nor Smith considered the query to be an offer. (SOMF ¶¶ 15-18).

Berry also argues that his Lynch Ichida claims are not premised on the now discredited allegation of an actual sale of existing liens, but are instead based on a secret agreement between Lynch Ichida and Mr. Smith to sell Berry's counsel Hogan into Mr. Smith's indentured servitude. (Opp'n at 10). This bizarre theory simply makes no sense. Berry now seems to be arguing that Smith agreed to pay Ichida so that Ichida would negotiate a deal with Hogan for Hogan to share his contingency award with Ichida who would sell his share of the award to Smith's clients. This incoherent claim is founded on the kind of "unsubstantiated speculation" that is insufficient to defeat summary judgment. *Jeffreys*, 426 F.3d at 554.

Berry then goes on to claim that, by filing an affidavit in this action, Mr. Ichida has now breached his fiduciary duties to his former client, Berry, and that the Defendants induced that breach. (Opp'n at 6, 22-23). Berry asserts that summary judgment should be denied on this ground. *Id.* An attorney does not breach his duties, however, by revealing information related to a representation when he does so "to respond to allegations in any proceeding concerning the lawyer's representation of the client." ABA Model Rule of Prof. Conduct 1.6(b)(5). And in any event, this alleged "breach" is not even part of Berry's SAC. This argument, too, fails.

Finally, as to Berry's claim of tortious interference with contract (which relies on the same allegations as his fiduciary duty claim), Berry needs to prove that there was a contract, that it was breached, and that Defendants intentionally procured that breach. *See White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F.3d 281, 285 (2d Cir. 2006) (tortious interference requires proof of, among other factors, intentional procuring of a breach of contract). Berry does none of these things. He does not produce a written contract between himself and Lynch Ichida.

8

He does not produce any evidence that Lynch Ichida breached that contract. And most importantly, he does not produce *any* evidence that Defendants did anything at all (much less that they did anything intentionally) to procure a breach of that contract. Summary judgment should be granted on Berry's inducement and tortious interference claims.

### D. Berry Has Abandoned His RICO Claims.

When a non-moving party does not address a moving party's arguments as to why a claim fails on summary judgment, that claim is abandoned. *Frink Am., Inc.*, 48 F. Supp. 2d at 209. Here, Berry fails to respond in any way to Defendants' argument that Berry cannot prove that a RICO enterprise exists. (Opp'n at 24-25 (no discussion of RICO enterprise arguments)). He also fails to respond to Defendants' argument that he cannot prove that he has suffered injury to his business or property. *Id.* Berry's failure to provide any evidence in support of these challenged elements of his RICO claim defeats his RICO cause of action in its entirety.

Berry also expressly abandons part of his RICO claim, admitting the falsity of the charge that the PCT bribed any public official (BSOMF ¶¶ 47-54) and claiming confusion as to why Defendants would have spent time rebutting this charge when this conduct "is not even mentioned as a RICO predicate act in the Second Amended Complaint." (Opp'n at 17). But it is. In paragraph 285 of the SAC, in the section addressing RICO predicate acts, Berry alleges that "[t]he PCT . . . conferred or offered or agreed to confer, directly or indirectly, a pecuniary benefit upon Lex Smith . . . as a public servant with the intent to influence the public servant's vote, opinion, judgment, exercise of discretion, or other action in the public servant's official capacity." Confirming that he has lost track of his own shifting allegations, Berry goes on to argue that Defendants are involved in criminal copyright infringement, a predicate act of which neither defendant is accused. (SAC at 60-61 ¶ 1 (accusing only C&S, Core-Mark and "the Lenders" of criminal copyright infringement)).

In fact, Berry's RICO section is in large part devoted to his theory that Defendants are—unbeknownst to Fleming's creditors and the bankruptcy court—engaged in the ongoing

9

operation of Fleming's grocery distribution business using Berry's freight control software. (Opp'n at 17-19). First, it is not clear what RICO predicate act this story is supposed to support. Second, even if this discussion was relevant to an alleged predicate act, Berry's "compelling evidence" (*id.* at 18) in support of this improbable theory amounts to some inadmissible printouts of website pages he found when surfing the web. (Berry Aff., Exs. 6-12). These printouts show only that the domain name "Fleming-Logistics.com" still exists and has been in limited use by someone other than the PCT or Kors, and that there was a freight tariff under the name Fleming Foods in 2007, which was later changed. From this "evidence," and contrary to the sworn affidavits of both the PCT and Mr. Kors, Berry then argues that both Kors and the PCT must be secretly engaged in freight-related activities for nefarious ends. Other than Berry's fevered and unsupported speculation, there is nothing in this odd assortment of material to link Mr. Kors or the PCT with the web site, the posted freight tariff, Fleming Foods or Berry's freight shipping software. It is not even clear how these allegations would support a finding that Defendants violated RICO. Defendants' RICO claims must be dismissed.

## IV.  CONCLUSION

Because Berry has failed to present any plausible evidence in support of his claims and because they fail as a matter of law, Defendants request that this Court grant their Motion for Summary Judgment and award them costs and fees in this action as appropriate.

DATED: March 28, 2008

By:  /s/ Erin N. Brady
KIRKLAND & ELLIS LLP
Michael E. Baumann (*pro hac vice* pending)
Erin N. Brady (*pro hac vice* pending)
777 South Figueroa Street
Los Angeles, California  90017
Telephone:   (213) 680-8400
Facsimile:    (213) 680-8500
E-mail:        ebrady@kirkland.com

Counsel for Defendants Post Confirmation Trust and Robert Kors

10