UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAYNE BERRY,<br><br>       Plaintiff,<br><br>       vs.<br><br>DEUTSCHE BANK TRUST COMPANY<br>AMERICAS (FKA BANKERS TRUST<br>COMPANY) and JP MORGAN CHASE<br>BANK in their separate capacities and as<br>agents for the pre- and post-petition Lender<br>Defendants of Fleming Companies, Inc.;<br>GENERAL ELECTRIC CAPITAL<br>CORPORATION; C&S WHOLESALE<br>GROCERS, INC.; THE POST-<br>CONFIRMATION TRUST OF FLEMING<br>COMPANIES, INC.; ROBERT KORS;<br>CORE-MARK HOLDINGS INC. and DOES 1<br>to 200,<br><br>       Defendants. | Case No. 01:07 CV 7634 (WHP)<br><br>ECF Case |

DEFENDANTS POST CONFIRMATION TRUST'S AND ROBERT KORS'
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

KIRKLAND & ELLIS LLP
Richard L. Wynne (RW 5630)
Michael E. Baumann (admitted *pro hac vice*)
Erin N. Brady (admitted *pro hac vice*)
F. Wade Ackerman (admitted *pro hac vice*)
777 South Figueroa Street
Los Angeles, California 90017
Telephone:    (213) 680-8400
Facsimile:    (213) 680-8500
E-mail:     ebrady@kirkland.com

Counsel for Defendants Post Confirmation Trust
and Robert Kors

# TABLE OF CONTENTS

(Pages)

I.     INTRODUCTION...........................................................................................1

II.    FACTS AND PROCEDURAL HISTORY ...............................................2

III.   LEGAL STANDARD ....................................................................................9

    A.    Counsel Must Perform A "Reasonable Inquiry" Into Factual Contentions And Must Have Some Evidentiary Support.....................................................9

    B.    Counsel Must Perform Reasonable Legal Research And Legal Contentions Must Be Warranted By Existing Law Or Be Nonfrivilous Arguments For Extending The Law.............................................................................................10

    C.    A Pleading Cannot Be Filed For An Improper Purpose. ........................................11

    D.    Courts Have An Array Of Sanctions Available Under Rule 11. ...........................11

IV.   ARGUMENT ..................................................................................................12

    A.    Berry's Breach Of License Agreement Claim Violates Rule 11. ...........................13

    B.    Berry's Abuse Of Process Claim Violates Rule 11. ...............................................14

        (1)    Berry's Factual Contentions Lack Evidentiary Support. ...........................14

        (2)    Berry Advances a Meritless Legal Theory. ..............................................17

        (3)    The Maintenance Of Claim X In The Face Of The Factual Refutations Offered By New Defendants Is Evidence That Hogan Filed Claim X For An Improper Purpose Under Fed. R. Civ. P. 11 (B)(1).................................................................................................17

    C.    Berry's Claims Relating To Lynch Ichida Violate Rule 11....................................18

    D.    Berry's RICO Claim Violates Rule 11. ................................................................20

    E.    Suing Robert Kors In His Individual Capacity Violates Rule 11. .........................21

    F.    New Defendants Seek Monetary Sanctions And A "Leave To File" Injunction Against Both Hogan And Berry. .........................................................23

V.    CONCLUSION ............................................................................................25

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abner Realty, Inc. v. Adm'r of Gen. Servs. Admin.*,
    No. 97 Civ. 3075, 1998 WL 410958 (S.D.N.Y. July 22,1998) ............................. 9, 12, 20

*Adamson v. Bowen*,
    855 F.2d 668 (2d Cir. 1988)............................................................................ 9

*Berry v. Fleming Companies, Inc., et al.*,
    Civil No. CV 0100446 SPK LEK ...................................................................... 6

*Berry v. Hawaiian Express Services, et al.*,
    Case No. 1:03-CV-00385-SOM.................................................................. 6, 7, 8

*Berwick Grain Co., Inc. v. Illinois Dept. of Agric.*,
    217 F.3d 502 (7th Cir. 2000) .......................................................................... 11

*Boyce-Idlett v. Verizon Corporate Servs. Corp.*,
    No. 06 Civ. 975 (DAB)(KNF), 2007 WL 3355497 (S.D.N.Y. November 6, 2007) ........ 12

*Eastway Constr. Corp. v. City of New York*
    762 F.2d 243 (2d Cir. 1985)..................................................................... 9, 11, 12

*Geisinger Med. Ctr. v. Gough*,
    160 F.R.D. 467 (M.D. Pa. 1994) ...................................................................... 10

*Hoatson v. New York Archdiocese*,
    No. 05 Civ. 10467(PAC), 2007 WL 431098 (S.D.N.Y. February 8, 2007) ..................... 20

*In re Martin-Trigona*,
    9 F.3d 226 (2d Cir. 1993)......................................................................... 12, 24

*Jacques v. DiMarzio, Inc.*,
    216 F.Supp.2d 139 (E.D.N.Y. 2002) ................................................................. 10

*Levine v. F.D.I.C.*,
    2 F.3d 476 (2d Cir. 1993)............................................................................... 10

*Margo v. Weiss*,
    213 F.3d 55 (2d Cir. 2000)......................................................................... 9, 12

*O'Brien v. Alexander*,
    101 F.3d 1479 (2d. Cir. 1996).......................................................................... 10

*Riccard v. Prudential Ins. Co.,*
    307 F.3d 1277 (11th Cir. 2002) .................................................................. 12, 24

*Safir v. United States Lines, Inc.,*
    792 F.2d 19 (2d Cir. 1986)........................................................................... 12, 25

*Shafii v. British Airways, PLC,*
    83 F.3d 566 (2d Cir. 1996)........................................................................... 12, 24

*So. Leasing Partners, Ltd. v. McMullan,*
    801 F.2d 783 (5th Cir. 1986) ............................................................................. 15

*Sussman v. Bank of Israel,*
    56 F.3d 450 (2d Cir. 1995)................................................................................. 11

*Zaldivar v. City of Los Angeles,*
    780 F.2d 823 (9th Cir. 1986) ............................................................................. 11

**Statutes**

Fed. R. Civ. P. 11 ..................................................................................... passim

## I.    INTRODUCTION

This memorandum is respectfully submitted by Defendants the Post Confirmation Trust (the "PCT") and Robert Kors (collectively, "New Defendants") in support of their Motion for Sanctions Under Federal Rule of Civil Procedure 11.

In his Second Amended Complaint, Wayne Berry and his counsel, Timothy Hogan, assert seven claims against the PCT and Robert Kors—all of which were filed in violation of Rule 11. New Defendants repeatedly asked Hogan for the factual basis behind the frankly bizarre allegations, and were provided only with evasions and conclusory, empty accusations. Hogan and Berry have, broadly stated, accused the PCT and Mr. Kors personally of having breached a contract that neither was a party to and which was rejected in a bankruptcy case, of having bribed Hogan's former firm and paid that firm to breach its duties to Berry, to have secretly settled Berry's other claims with that firm, and to have sent the PCT's senior trial counsel 3,000 miles cross country to point out Berry to a process server so his wife could divorce him. That is not to mention the unintelligible (but rehashed from prior lawsuits against other parties) RICO allegations of some vague connections to gun running, cigarette smuggling, and freight overcharging, all alleged without any evidentiary basis or tied to the context of this lawsuit.

Hogan himself admitted in another proceeding that he does not have sufficient evidence to support the claims that he brought against New Defendants in this Court, stating to the Hawaii Office of Disciplinary Counsel that he was "not clear whether there is sufficient evidence for disciplinary proceedings" relating to Lynch Ichida's (Hogan's former firm) alleged breach of its fiduciary duty to Berry.  Hogan also admitted that he based his theories on mere discussions that he had with his client, not factual support or the "reasonable inquiry" required by Rule 11: "After discussing the matter at length with Mr. Berry he and I concluded that sometime while

1

[his old firm] was still attorney of record for Mr. Berry, it negotiated a payment . . . with the adverse party and did not disclose it to Mr. Berry." (Ex. A at 2-3 (12/18/2007 Disciplinary Letter)). The Second Amended Complaint is an unabashed violation of Rule 11.

Both the PCT and Mr. Kors recognize the gravity of seeking sanctions from this Court. Accordingly, before submitting this motion, and because New Defendants knew of no facts that would support Berry's conclusory allegations, New Defendants' counsel asked Hogan to provide the evidentiary bases for Berry's claims or, in the alternative, withdraw his claims. Hogan repeatedly refused to respond substantively to the request. New Defendants' counsel even informed Hogan of the actual facts, including that no payment was negotiated with or made to the Lynch Ichida firm, and that Mr. Baumann, the PCT's senior trial counsel, was in Los Angeles and not at the West Palm Beach Airport pointing out Berry to his wife's process server. However, because these claims have been brought for an improper purpose, Hogan and Berry have refused to withdraw them or respond with any factual evidence. Therefore, in this motion, the PCT and Mr. Kors seek sanctions sufficient to deter similar Rule 11 violations in the future. Because monetary sanctions alone in the form of attorneys' fees awards imposed for other parties in prior litigation have not acted as a deterrent, the Court should also enter a "leave to file" injunction against both Hogan and his client.

## II.    FACTS AND PROCEDURAL HISTORY

Plaintiff Wayne Berry, through his attorney Timothy Hogan, filed this lawsuit on March 29, 2007 in the District of Hawaii against Deutsche Bank Trust Company Americas and JP Morgan Chase Bank (collectively, the "Lender Defendants"). (Haw. D.I. 1). In the original complaint, Berry alleged causes of action for contributory and vicarious copyright infringement and unjust enrichment related to the Lender Defendants' alleged involvement in infringement by Fleming Companies, Inc. ("Fleming") of Berry's software copyright. New Defendants were not

2

involved in the allegations in Berry's original complaint, particularly because the PCT was created as a liquidating trust to act on behalf of the creditors of the Fleming to liquidate assets and distribute the proceeds to creditors, pursuant to the Fleming and affiliates Chapter 11 Plan of Reorganization confirmed on July 26, 2004. Mr. Kors had no connection to Fleming before Castellammare Advisors, LLC became the PCT representative. (Aff. of Robert Kors ¶ 9, filed concurrently herewith). The PCT does not run an operating business; it litigates and defends claims, performs accounting functions, maintains records and prepares required tax returns and other disclosure forms. The PCT was substituted in to defend against Berry's claims against Fleming in Hawaii, as it has done in other litigation matters. The PCT was not originally a party to Berry's actions against the Lender Defendants.

On December 21, 2007, Berry, again through his attorney Hogan, filed a vastly expanded Second Amended Complaint ("SAC"), naming the PCT and Mr. Kors, and several additional defendants, in a 72-page, 12-count complaint. (S.D.N.Y. D.I. 26). The claims that Berry asserts against New Defendants can be broken down into essentially four categories.

First, in Claim V Berry seeks damages and specific performance based on New Defendants' breach of a license agreement he had with Fleming. (SAC ¶¶ 184-192). Second, in Claim X Berry contends that New Defendants abused process by obtaining a court order compelling him to sit for a judgment debtor exam (which was actually initiated and conducted by a different party, C&S) and by sending a Kirkland & Ellis LLP partner to Florida to point out Berry to a process server for the purposes of serving his wife's divorce complaint. (SAC ¶¶ 228-238). Third, Berry asserts four causes of action—Claims VI, VII, VIII and IX—based on duplicative allegations that New Defendants paid off his former counsel, Lynch Ichida Thompson Kim & Hirota ("Lynch Ichida"), in exchange for an interest in their attorney lien in

3

any proceeds of Berry's litigation and also to induce the firm to breach its fiduciary duties to him. (SAC ¶¶ 193-227). Finally, Claim XII alleges that these two New Defendants (along with all other defendants) are part of a worldwide RICO enterprise engaged in activities such as money laundering, cigarette trafficking, gun running and, of course, infringing the copyright in Berry's obsolete 1993 freight control software. (SAC ¶¶ 253-314).

Given that New Defendants knew of no facts that would support Berry's conclusory allegations (because the alleged events never happened), New Defendants' counsel repeatedly asked Hogan to provide support for Berry's claims or, in the alternative, withdraw them. (Ex. B at 3 (1/30/08 Email)). Each time Hogan evaded these requests and sometimes went so far as to suggest that New Defendants had the duty to investigate his allegations, not the other way around. (Ex. B at 12-14 (1/16/08-1/30/08 Email Thread)). Given the gravity of seeking Rule 11 sanctions, New Defendants' counsel repeatedly urged Hogan to withdraw the baseless claims:

> Tim it is important because you are making wild accusations against the PCT and Mr. Kors as an individual that are without basis. It is important because you filed suit on behalf of Mr. Berry without basis and that is causing the PCT and Mr. Kors to incur the expense of responding. It is important because confidence and trust in the legal system requires that such claims not be made without some basis. I was not making threats in providing you with this information; I was simply providing you with information so you could understand why the claims should be withdrawn. We have no choice but to protect the PCT and Mr. Kors by seeking sanctions, a route I would prefer to avoid.

Despite New Defendants' attempts to obviate this motion, Hogan pressed on with the SAC, forcing New Defendants to answer, move for summary judgment, obtain affidavits from witnesses, oppose a request for discovery under Rule 56(f), and so on. (S.D.N.Y. D.I. 49, 50, 52, and 70). Even after being presented with what he characterized as a "mountain of contrary evidence" proving that the allegations are false (Hogan Rule 56(f) Aff. ¶ 6 (S.D.N.Y. D.I. 69)), Hogan refused to withdraw the claims against New Defendants. (Ex. C at 4 (2/27/08-2/28/08 Email Thread)).

4

The refusal to drop the claims appears to have more to do with harassing New Defendants so that New Defendants might exert influence over the Lender Defendants. At the February 13, 2008 hearing, Hogan told the Court that he "[doesn't] need to go forward on the other matters" against the PCT if he obtained the summary judgment that was pending in the District of Hawaii before the transfer to this Court. (Ex. D at 13 (2/13/2008 Hr'g Transcript)). However, Berry's summary judgment motion pending in Hawaii involved only claims of contributory and vicarious infringement against the Lender Defendants, not any of the claims asserted here against New Defendants. (Haw. D.I. 24). New Defendants were not even named parties in the District of Hawaii. Hogan appears to believe that the PCT and Mr. Kors can affect his claims against the Lender Defendants, possibly because of Lender Defendants' assertion of indemnity rights against the PCT, which is an improper basis for bringing claims against New Defendants in this Court.

In other briefing filed by New Defendants, the Court has become familiar with the extensive history of lawsuits filed by Hogan and Berry relating (however vaguely) to Berry's 1993 FCS software. The history of this litigation crusade, particularly its abusive, expansive and endless nature, is directly relevant to what sanctions would be appropriate to deter future violations of Rule 11. Hogan and Berry have a history of filing new versions of the same basic claims against an ever-expanding list of new parties who supposedly are now responsible for the "criminal infringement" of Berry's software by Fleming, a company to whom he had granted a free software license. Of course, Berry can only point to some unauthorized changes that Fleming made to his software, and that Fleming later unknowingly used a derivative of his software for 70 days. Of such molehills, Berry and Hogan have attempted to construct a mountain of hundreds of millions, if not billions, in damages. New Defendants respectfully refer

the Court to New Defendants' Joint Motion for Security Pursuant to Local Rule 54.2 for this

background (S.D.N.Y. D.I. 66 at 2-7), summarized herein.

Berry began his string of FCS-related lawsuits in 2001, suing Fleming in the District of

Hawaii on claims that Fleming had infringed Berry's software by, among other things, giving it

to K-Mart, Pillsbury and Manugistics, Inc., all of whom allegedly were using it worldwide.

(D.I. 138 from *Berry v. Fleming Companies, Inc., et al.*, Civil No. CV 0100446 SPK LEK

(hereinafter "First Berry Case" or "FBC")). For this alleged infringement, Berry claimed he was

entitled to statutory damages ranging from a minimum of $4.8 million up to a maximum in

excess of $3 billion. *Id.* These claims were rejected before they even got to the jury. In the end,

a jury found in his favor on one claim of "making unauthorized changes" to a program he had

licensed to Fleming for free and awarded him $98,000. (FBC D.I. 276).

Berry filed his next FCS-related lawsuit in July 2003. In that lawsuit, he sued no fewer

than 28 defendants on claims of copyright infringement, vicarious copyright infringement,

contributory copyright infringement, conspiracy to infringe, trade secret misappropriation,

Sherman Act violations, and RICO violations. (D.I. 210 from *Berry v. Hawaiian Express

Services, et al.*, Case No. 1:03-CV-00385-SOM (hereinafter "Second Berry Case" or "SBC")).

Among the defendants he sued were Fleming, eight of Fleming's employees, C&S Wholesale

Grocers (the entity that purchased certain of Fleming's assets in a bankruptcy court approved

sale), Guidance Software (the computer forensics company that Fleming hired to remove Berry's

software from its computers in an attempt to avoid further litigation), and AlixPartners (the

financial advisory company that Fleming hired, pursuant to bankruptcy court order, to advise it

in bankruptcy). *Id.* The underlying theory of his case was that Fleming improperly sold Berry's

software to C&S as part of its bankruptcy court approved sale by hiring Guidance to pretend to

scrub Fleming's computers while secretly retaining copies of the software for C&S's benefit

(thereby participating in an ongoing RICO enterprise and committing bankruptcy fraud). *Id.* He

maintained this theory despite a bankruptcy court ruling that Fleming *did not sell* Berry's

software to C&S as part of its bankruptcy sale. (Ex. E (Excerpts of 8/4/03 Bankruptcy

Transcript)).

Eventually, the Hawaii District Court dismissed nearly all of Berry's claims on pretrial

motions, including his marquee claim that Fleming covertly sold or transferred Berry's software

to C&S. (SBC D.I. 569). In doing so, the District Court ruled:

- Berry argues that the true purpose of [hiring Guidance] was to "trick the Delaware Bankruptcy Court to cause it to approve the sale to C&S"[] and "trap Mr. Berry in new litigation in Delaware while his software was being transferred to a third party C&S [sic]." [citation omitted] Berry, however, presents *no evidence of such a scheme.* (Ex. F at 23-24 (Excerpts of 6/27/05 Order)).[1]

- Berry does not show that any files that were on [the computers Fleming sold to C&S] qualify as his trade secrets. *Berry has not presented any evidence* that those files had any independent economic value resulting from not being generally known. *Id.* at 32.

- Berry *presents no evidence* of laundering "money derived from the infringing use of FCS " [for purposes of RICO]. *Id.* at 37.

- Berry [] *presents no evidence* of any conspiracy to commit any of the alleged predicate RICO acts. *Id.* at 37.

For the claims the District Court did not dismiss—namely that Fleming and two of its employees

unknowingly used a derivative of Berry's software for a period of approximately 70 days after

filing for bankruptcy—a jury awarded Berry just $57,534 (which was a far cry from the hundreds

of millions he was seeking). (Ex. G at 6 (Excerpts of 12/4/06 Special Master Report)).

---

[1]    Unless otherwise noted, emphasis is added.

In light of Berry's unsupported and frivolous claims, at the conclusion of his second lawsuit, a number of defendants filed motions for costs and attorneys' fees under the Copyright Act and other applicable statutes. In March 2007, the Hawaii District Court entered an order awarding costs and attorneys' fees to four of those parties: (1) the Fleming Post Confirmation Trust (the grantor trust created after Fleming's bankruptcy to distribute its assets to creditors); (2) Brian Christensen (a former Fleming executive that Berry claimed orchestrated Fleming's infringement); (3) C&S; and (4) Guidance. (SBC D.I. 1037). In doing so, the District Court made or adopted the following findings:

- Plaintiff's copyright claims against Guidance were *without legal and factual basis*. Plaintiff's copyright claims against Guidance were *frivolous and objectively unreasonable*. (Ex. H at 23 (Excerpts of 10/25/06 Special Master Order)).

- Plaintiff's pursuit of claims against Guidance, in spite of notice that its copying constituted fair use, is a strong indication that he had *improper motivation*. Plaintiff had access to counsel who could have easily determined that such claims were without legal or factual basis. *Id.*

- In light of the *utter lack of any evidence* supporting Plaintiff's copyright infringement claims against Christensen, this Court finds that they were *frivolous and objectively unreasonable*. (Ex. G at 32-33 (Excerpts of 12/4/06 Special Master Report)).

- This Court also finds that Plaintiff's pursuit of his copyright claims against Christensen, in spite of the *lack of evidence supporting them*, is a strong indication that he had an *improper motive*. *Id.* at 33.

- The Court notes . . . that Plaintiff's claimed damages, which at one point were upwards of $200 million, were *frivolous and objectively specious*. *Id.* at 34.

- This Court finds that Plaintiff's trade secrets claim against Fleming was *objectively specious* because there was a *complete lack of evidence* supporting his claim. *Id.* at 45.

- This Court therefore finds that Plaintiff made the misappropriation of trade secrets claim against Fleming in *bad faith* and that it is entitled to fees incurred in defending that claim. *Id.*

8

All told, Berry now owes the Defendants he sued in his last lawsuit a total of $223,800.20, plus interest and costs of collection. None of those awards have been paid.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 11 requires an attorney to certify that, to the best of that person's knowledge, a pleading is viable. *See* Fed. R. Civ. P. 11. The Rule imposes an affirmative duty on attorneys to conduct a reasonable inquiry *before* submitting pleadings to courts. *See Abner Realty, Inc. v. Adm'r of Gen. Servs. Admin.*, No. 97 Civ. 3075, 1998 WL 410958, at *3 (S.D.N.Y. July 22, 1998). "Simply put, 'an attorney must stop, look, and listen before signing a document subject to Rule 11.'" *Id.* (quoting *Adamson v. Bowen*, 855 F.2d 668, 673 (2d Cir. 1988)). To determine whether Rule 11 sanctions are warranted, courts assess whether the attorney's conduct was objectively reasonable at the time he or she signed the pleading. *See Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir. 2000).

Specifically, Rule 11 imposes three duties on attorneys: a pleading must (i) contain factual contentions having evidentiary support or, if specifically so identified, likely will have evidentiary support after a reasonable opportunity for discovery, (ii) advocate legal contentions that are warranted by existing law or nonfrivolous extensions of the law, and (iii) not be presented for any improper purpose. *See* Fed. R. Civ. P. 11(b). A violation of any one of these three duties is grounds for sanctions under the Rule. *See id.*

### A.    Counsel Must Perform A "Reasonable Inquiry" Into Factual Contentions And Must Have Some Evidentiary Support.

Rule 11 obligates an attorney to make a reasonable inquiry as to the basis of and the evidentiary support for any allegations or factual contentions *before* signing a pleading. *See Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985). A party cannot get around this requirement by simply pleading "on information or belief." *See* Fed. R. Civ. P.

9

11(b). "Tolerance of factual contentions in the initial pleadings by plaintiffs or defendants . . . does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it is not a license to join parties, make claims, or present defenses without any factual basis or justification." Fed. R. Civ. P. 11 1993 Advisory Committee's Note; *see also Geisinger Med. Ctr. v. Gough*, 160 F.R.D. 467, 469 (M.D. Pa. 1994).

An attorney must have an objectively reasonable factual basis for the asserted claims, and "the creativity of an attorney may not transcend the facts of a given case." *Levine v. F.D.I.C.*, 2 F.3d 476, 480 (2d Cir. 1993) (affirming imposition of sanctions where "counsel in his attempts at creativity concocted 'facts' that were not well grounded, and therefore exceeded the bounds of conduct . . . incorporated in Fed. R. Civ. P. 11"); *see also Geisinger*, 160 F.R.D. at 469 (rejecting proposition that Rule 11(b)(3) gives parties "a general license to plead a claim first and then allow[s] them to conduct the necessary investigation in support of it."). And while a plaintiff does not need to be able to prove a claim immediately upon filing it, a lack of any evidentiary bases for making a claim violates Rule 11. *See e.g. O'Brien v. Alexander*, 101 F.3d 1479, 1490 (2d Cir. 1996) (in malicious prosecution lawsuit, allegations made orally in court that nothing had been pleaded properly or proven in earlier lawsuit violated Rule 11(b)(3) because they were "totally lacking in evidentiary support"); *Jacques v. DiMarzio, Inc.*, 216 F.Supp.2d 139, 143 (E.D.N.Y. 2002) (sanctions warranted by "defendant's counsel's failure to offer any evidence to support defendant's claimed damages or any factual bases for his other conclusory assertions").

### B. Counsel Must Perform Reasonable Legal Research And Legal Contentions Must Be Warranted By Existing Law Or Be Nonfrivilous Arguments For Extending The Law.

When presenting a pleading to a court, an attorney certifies that "the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument

for the extension, modification, or reversal of existing law or the establishment of new law."
Fed. R. Civ. P. 11(b)(2). An argument will run afoul of this section where reasonable research
and inquiry would have revealed that the claim was legally meritless. *See Berwick Grain Co.,
Inc. v. Illinois Dept. of Agric.*, 217 F.3d 502, 504-05 (7th Cir. 2000) (motion to set aside
judgment seven years after it was filed deemed to be legally unreasonable because a "reasonable
and competent inquiry" would have revealed that the motion was time-barred."); *see also
Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985).

 **C. A Pleading Cannot Be Filed For An Improper Purpose.**

 Rule 11 also prohibits the filing of a pleading for an improper purpose, such as to harass,
cause unnecessary delay, or needlessly increase the cost of litigation. Fed. R. Civ. P. 11(b)(1).
Similar to the other prongs, courts assess an attorney's conduct using an objective standard of
behavior, rather than examining the subjective intent of the attorney. *See Sussman v. Bank of
Israel*, 56 F.3d 450, 458 (2d Cir. 1995). And although filing for an "improper purpose" is
separate and distinct from the other prongs of Rule 11, the fact that a pleading is frivolous,
legally unreasonable, or without factual foundation will bear on whether it violates the "improper
purpose" prong—regardless of whether an attorney filed the pleading with subjective bad faith.
*See Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986); *Sussman*, 56 F.3d at 459
("Since subjective evidence of the signer's purpose is to be disregarded, ... the 'improper
purpose' inquiry subsumes the 'frivolousness' inquiry in this class of cases [involving the
assessment of complaints that initiate actions]").

 **D. Courts Have An Array Of Sanctions Available Under Rule 11.**

 When a violation of Rule 11 has occurred, courts can impose sanctions "sufficient to
deter repetition of such conduct." Fed. R. Civ. P. 11(c)(2); *see also Boyce-Idlett v. Verizon
Corporate Servs. Corp.*, No. 06 Civ. 975 (DAB)(KNF), 2007 WL 3355497, at *2 (S.D.N.Y.

November 6, 2007). "Both the Supreme Court and the Second Circuit have emphasized that the purpose of the sanctioning mechanism of Rule 11 is not reimbursement but sanction . . . ." *Abner*, 1998 WL 410958, at *8. Thus, courts, at their discretion, can order payment to the movant of some or all of the reasonable attorneys' fees when such award would be an effective deterrent. *Id.* (*quoting* Fed. R. Civ. P. 11(c)(2)); *see also Margo*, 213 F.3d at 65; *Eastway*, 762 F.2d at 253.

Although the "legal contentions" prong of Rule 11 is directed toward attorneys only, a represented party can be sanctioned when a pleading violates the other provisions of Rule 11. Fed. R. Civ. P. 11(c)(5)(A). And in instances where monetary sanctions are insufficient to deter future conduct, courts have enjoined further abuses of the judicial process; a court can use either Rule 11 or the Court's own inherent authority to do so. *See Safir v. United States Lines, Inc.*, 792 F.2d 19, 25 (2d Cir. 1986), *cert. denied*, 479 U.S. 1099 (1987) (enjoining party from future abuses under the court's inherent authority); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1295 (11th Cir. 2002) (upholding a broad "leave to file" injunction issued for violations of Rule 11). "The filing of repetitive and frivolous suits constitutes the type of abuse for which an injunction forbidding further litigation may be an appropriate sanction." *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996); *In re Martin-Trigona*, 9 F.3d 226, 227-28 (2d Cir. 1993) (upholding "leave to file" procedure imposed on sanctioned party under the court's inherent authority). Courts also can impose sanctions such as an admonition, reprimand, censure, or referral of the matter to disciplinary authorities. *See Boyce-Idlett*, 2007 WL 3355497, at *2.

## IV.    ARGUMENT

Although Berry's 72-page SAC is littered with allegations and contentions ripe for sanctions under Rule 11, New Defendants address in this motion only certain allegations from the causes of action asserted against them. Not only does this allow for a more straightforward

12

motion, New Defendants need not point out every violation of Rule 11 to obtain the relief sought in this motion—sanctions that will once and for all deter Hogan and Berry from their endless harassment of anyone and everyone they can find that had any connection with the former Fleming Companies, Inc., no matter how tenuous.

A.    **Berry's Breach Of License Agreement Claim Violates Rule 11.**

Claim V of Berry's SAC constitutes a flagrant violation of Rule 11. Here Berry seeks damages and specific performance for New Defendants' alleged breach of the Berry/Fleming license agreement. (SAC ¶¶ 184-192). In order to bring this claim, Berry alleges that the PCT "assumed all duties" under the license agreement (SAC ¶ 185) and that "Fleming, its PCT, its Lender Defendants and C&S have not sought such rejection [of the license agreement] through the executory contract rejection mechanisms of the Bankruptcy Code." (SAC ¶ 36).

However, Berry and Hogan both know that the Berry/Fleming license agreement was rejected in the Fleming bankruptcy case. (Defendants' Mot. for Summary Judgment at 10-13 (S.D.N.Y. D.I. 52)). Berry himself acknowledged the rejection in at least two ways. First, Berry asserted a rejection damages claim in Fleming's bankruptcy case under penalty of perjury in the Bankruptcy Court. (Ex. I (Berry Proof of Claim)). Second, Berry acknowledged the rejection in a December 24, 2004 letter to Fleming stating that "[t]hese violations of my copyright license, along with Fleming Companies, Inc.'s *rejection of the license in its Bankruptcy*, constitute material breaches giving rise to my right to revoke and terminate as set forth herein." (Ex. J (12/24/2004 Berry Letter) (emphasis added)). Any reasonably objective attorney—let alone one as involved in the Fleming bankruptcy as Hogan—would know that Claim V lacks any factual support and advocates a meritless legal position. Certainly an "inquiry reasonable under the circumstances" would lead to this conclusion.

13

New Defendants' counsel repeatedly contacted Hogan after he filed the SAC to request that he withdraw the claim. (Ex. B at 7, 10, and 12 (1/16/08-1/30/08 Email Thread)). But in disregard of the true facts, the proper legal analysis, and the expense that New Defendants would incur litigating against a meritless claim, Hogan evaded New Defendants' requests and pressed forward. (Ex. B at 8, 10-11 (1/16/08-1/30/08 Email Thread)). The Court should consider the maintenance of this baseless claim—especially after New Defendants pointed out Berry's rejection damages claim and December 24, 2004 letter—as convincing evidence that Hogan filed Claim V for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. *See* Fed. R. Civ. P. 11(b)(1).

**B.    Berry's Abuse Of Process Claim Violates Rule 11.**

Berry asserted two separate abuse of process allegations in Claim X of his SAC. The first involves allegations that New Defendants abused process by "agreeing to cause the issuance of process in a Hawaii family court proceeding directed against Mr. Berry . . . to advance the purposes of the criminal infringers of Berry's works." (SAC ¶¶ 229-230, 233). The second involves service of a court order requiring Berry to attend a deposition conducted "for the purpose of intimidating him and causing him fear for his personal safety." (*Id.* ¶¶ 231-232).

**(1)    Berry's Factual Contentions Lack Evidentiary Support.**

Even setting aside the legal theory involved, Claim X violates the "factual contentions" prong of Rule 11 because Berry and Hogan have no evidentiary basis for these allegations (because none of them ever happened).[2] Even if Berry himself believes that he saw a person

---

[2]    Although the SAC does not provide all of the details as to how Defendants allegedly abused process in Berry's divorce proceeding, vagueness does not relieve Hogan of his duties under Rule 11. *See* Fed. R. Civ. P. 11; *see also* Section III *supra*. Although not subject to Rule 11 itself, a letter that Berry filed with the Hawaii Office of Disciplinary Counsel against Lex

(Continued...)

resembling a Kirkland & Ellis LLP attorney in a Florida airport, any reasonable attorney would not assert an abuse of process claim in federal court without at least some investigation first. Yet Hogan never contacted Michael Baumann (the Kirkland & Ellis LLP attorney who allegedly traveled across the country to identify Berry to a process server) before filing the SAC. (Ex. B at 19 (1/16/08-1/30/08 Email Thread); Ex. K at 2 (2/15/08-2/16/08 Email Thread)). Hogan admittedly never contacted the Florida process server until *well over a month after* he filed the SAC. (Ex. K at 2 (2/15/08-2/16/08 Email Thread); Rule 56(f) Aff. ¶ 7 (S.D.N.Y. D.I. 69)). And even after Hogan learned from the process server that Berry's wife had hired him, not New Defendants, and after being informed by Mr. Baumann that he had not gone to Florida to point out Berry, Hogan still would not withdraw the claims against New Defendants. (Rule 56(f) Aff. ¶ 10 (S.D.N.Y. D.I. 69)). Hogan failed to conduct the "reasonable inquiry" required *before* bringing serious allegations against New Defendants.

Even assuming *arguendo* that Berry believed he saw Michael Baumann in an airport in Florida, Hogan takes that innocuous fact and jumps from point A to point Z with only guesswork as support. The abuse of process claim alleges that "acting through their agents whom they

---

Smith, C&S' and the PCT's Hawaii counsel, sheds light on the theories underlying the SAC. (Ex. L (1/9/2008 Disciplinary Counsel letter)). In the letter Hogan alleges that the PCT and Mr. Kors furthered their alleged scheme to obtain Berry's copyrights in FCS by having Mike Baumann, a Kirkland & Ellis LLP partner, travel to West Palm Beach Airport for the sole purpose of identifying Berry to a process server. *Id.* at 4-5. As Defendants proved in their summary judgment briefing, Mr. Baumann was nearly 3,000 miles away from West Palm Beach on August 14, 2007, the time he was supposed to be stalking around the airport in search of Berry. (Defendants' Mot. for Summary Judgment at 8-9 (S.D.N.Y. D.I. 52)). Even if Berry himself thinks that he saw someone resembling a Kirkland & Ellis LLP partner in a Florida airport, Hogan still has a duty to conduct a "reasonable inquiry" under the circumstances before filing a complaint in federal court. *See* Section III.A *supra*. Hogan cannot simply rely on his client and then avoid his duties under Rule 11. *See So. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986) ("Blind reliance on the client is seldom a sufficient inquiry . . . ."). But that is exactly what he did here.

authorized to so act" (SAC ¶ 234) "Defendants devised a scheme to further the criminal

infringement of Plaintiffs works" (SAC ¶ 229) "to advance the purposes of the criminal

infringers of Berry's works" (SAC ¶ 230) and "to cause injury to the person and business of the

Plaintiff." (SAC ¶ 236). A reasonably objective attorney would not deduce such serious

allegations from his client seeing an attorney at an airport. Nor would a reasonably objective

attorney pursue such allegations in federal court without some evidence or a coherent legal

theory. Yet Hogan has no evidence that any of the New Defendants sent Mr. Baumann to

Florida, or that New Defendants engaged in any improper conduct. Hogan has no evidence that

New Defendants caused his wife to serve him with a divorce complaint. Mrs. Berry could have

many reasons for wanting a divorce. And Hogan certainly has no evidence linking service of a

divorce complaint to allegations that New Defendants seek "to cause injury to the person and

business of [Berry]." (SAC ¶ 236).

Berry also has no evidentiary support to allege that New Defendants had any involvement

with the deposition conducted by C&S. (Defendants Mot. for Summary Judgment at 10

(S.D.N.Y. D.I. 52)). C&S obtained a court order in Hawaii federal court directing Berry to

appear for his judgment debtor examination. Hogan, who appeared specially for Berry in that

proceeding, was certainly aware that the order was requested by C&S, not New Defendants.

There is not any evidence that there was some improper purpose behind the examination being

conducted by C&S in trying to collect an attorneys' fees award against Berry for his prior

unfounded allegations against C&S. At no point in the deposition did Hogan or Berry suspend

the examination and seek protection from the court in Hawaii for the allegedly improper or

threatening questions being posed. To this day, Hogan and Berry have not challenged the

conduct of the deposition in the court that ordered him to appear. Neither the PCT nor Mr. Kors

played any part in the judgment debtor examination of Berry, yet Hogan simply concludes, without any evidentiary basis, that New Defendants were somehow involved.

### (2)    Berry Advances a Meritless Legal Theory.

Claim X also violates the "legal contentions" prong of Rule 11 because, as discussed in Defendants' Motion for Summary Judgment, even if Berry's allegations are taken as true, he fails to state an abuse of process claim as a matter of law.  (Defendants' Mot. for Summary Judgment at 7-10 (S.D.N.Y. D.I. 52)).  Service of a complaint in a divorce proceeding or enforcement of a judgment through a validly-obtained court order are not abuses of process.  A reasonable attorney would realize, after even a minimal amount of legal research, that the SAC advances a frivolous legal theory.

### (3)    The Maintenance Of Claim X In The Face Of The Factual Refutations Offered By New Defendants Is Evidence That Hogan Filed Claim X For An Improper Purpose Under Fed. R. Civ. P. 11 (B)(1).

On February 16, 2008, Mr. Baumann on behalf of New Defendants wrote to Hogan about why the unfounded claims should be dropped.  Hogan's response shows that notwithstanding the facts, it is Hogan's and Berry's goal to cause all whom they target to have to go to the burden and expense of disproving even absurd allegations:

> Mike:
>
> I was tempted to address each point but then realized that you need to file a motion for summary judgment and I have no reason to assist you where you are seeking discovery and clearly not trying to address anything constructive under 408, just more threats.
>
> You can be certain that all the allegations are fully vetted and will withstand your motion.  Just to be sure, the small amount of discovery I am contemplating will, in my view, put an end to this absurdity once an for all.

17

So, like you, don't take my failure to respond as anything other than my right to hold my cards while you, Kors C&S, Hosoda and the Lenders go all in.

Tim Hogan

(Ex. K at 1 (2/16/2008 Email)).

**C.    Berry's Claims Relating To Lynch Ichida Violate Rule 11.**

Berry's four claims (Claims VI, VII, VIII and IX) relating to Hogan's former law firm, Lynch Ichida, also rest only on Hogan's and Berry's discussions and speculation. Hogan himself has admitted this. In one of his letters to the Hawaii Office of Disciplinary Counsel, Hogan wrote: "After discussing the matter at length with Mr. Berry, he and I concluded that sometime while [his old firm] was still attorney of record for Mr. Berry, it negotiated a payment . . . with the adverse party and did not disclose it to Mr. Berry." (Ex. A at 2-3 (12/18/2007 Disciplinary Letter)). Hogan himself also admitted that he does not have sufficient evidence to support these claims (this despite the fact that he brought claims against New Defendants in this Court just a few weeks before) when he conceded that he was "not clear whether there is sufficient evidence for disciplinary proceedings" relating to Lynch Ichida's alleged breach of its fiduciary duty to Berry. (Ex. L at 4 (1/9/2008 Disciplinary Counsel letter)).

Despite all of this, Hogan already had filed the SAC in this Court alleging that New Defendants paid money to Lynch Ichida in partial settlement of the previous lawsuits against Fleming, and for the purpose of inducing Wes Ichida, the managing partner, to breach his fiduciary duties to and his contract with Berry. (SAC ¶¶ 197-98, 216). No such payments were made and no such settlement was agreed to, and Hogan has no evidentiary support for these

18

allegations.[3] (Defendants' Mot. for Summary Judgment at 14 (S.D.N.Y. D.I. 52)). In fact, just

days before filing the SAC, Hogan sent an email to Wesley Ichida, the managing partner of

Lynch Ichida, informing him that he intended to amend his complaint in this case to allege that

Lex Smith, C&S' and the PCT's Hawaii counsel, had offered to purchase the firm's interest in its

attorney lien on Berry's recoveries. (Ex. L at 1-2 (1/9/2008 Disciplinary Counsel letter)). In that

same email exchange, Hogan asked Ichida whether any assignment or payment was ever made in

conjunction with that purported offer, to which Ichida told Hogan that he "cannot and will not

confirm" Hogan's allegation that Lex Smith had "offered" to purchase the firm's lien rights. *Id.*

Ichida also informed Hogan that Berry was still liable to the firm (as opposed to Lex Smith or

some other third party) for unpaid costs. *Id.*

   Hogan, as is his wont, twisted a statement of fact and went from point A to point Z with

his own unsupportable deductions. Here he took Ichida's statement that Ichida "cannot and will

not confirm" allegations about an offer from Lex Smith as evidence that "[D]efendants

intentionally induced Lynch Ichida . . . to breach the contract [with Berry]" (SAC ¶ 216), that

"[D]efendants provided and continue to provide substantial assistance to Lynch Ichida . . . to aid

them in concealing the conversion" (¶ 224), and that "[D]efendants agents [were] authorized by

defendants and [have] been intentional, knowing willful and done out of malice and so extreme,

outrageous and without any justification that punitive damages must be awarded." (SAC ¶ 212).

---

[3]  Berry pleads some of the allegations "upon information and belief" (SAC ¶¶ 195, 197, 200,
     205, 207, 210), while others he does not (SAC ¶¶ 196, 198, 199, 202, 206, 208, 209, 212).
     And in some instances, Berry pleads a factual allegation "upon information and belief" in
     one claim (SAC ¶¶ 197, 210), and then a few pages later pleads the very same allegation as a
     known fact in another claim. (SAC ¶¶ 196, 216, 224). Regardless of what Berry pleads,
     stating a factual contention "upon information and belief" does not relieve Hogan of his
     duties under Rule 11 to conduct a "inquiry reasonable under the circumstances" and to have
     some evidentiary basis for the allegations. *See* Section III.A *supra*.

But not only did Hogan lack evidence to support these claims, all factual signs pointed the other direction. For example, Lynch Ichida provided Hogan with an accounting of all of Berry's funds (Ex. C at 7 (2/27/08 Email)), yet Hogan pressed on with an Aiding and Abetting Conversion of Client Funds claim against New Defendants. (SAC ¶¶ 221-227). Lynch Ichida also had not perfected its own lien against Berry (Ex. C at 7 (2/27/08 Email); Aff. of Wesley Ichida ¶ 4 (S.D.N.Y. D.I. 59)), yet Hogan filed claims alleging that the firm sold the lien to New Defendants. (SAC ¶ 200). Hogan's true purpose simply may relate to whatever disputes he has against his former firm, as he has used this claim to seek to obtain financial records from his old firm. (Hogan Rule 56(f) Aff. ¶ 6 (S.D.N.Y. D.I. 69)). Ichida himself told Hogan that "[e]xcept for your imagination, you have absolutely nothing to support your allegations in any way. You are on a totally unsupportable fishing expedition." (Ex. C at 7 (2/27/08 Email)). Yet Hogan has pursued these claims against New Defendants with not only a lack of evidence, but also while having information that would make an objectively reasonable attorney "stop, look, and listen." *Abner Realty, Inc.*, 1998 WL 410958, at *3.

### D.    Berry's RICO Claim Violates Rule 11.

Because Berry's other claims violate Rule 11, it should follow that the RICO claim that relies on the other allegations as "predicate acts" also violates Rule 11. A civil RICO claim is a very serious allegation, and the Court should not allow Hogan to launch such a grave claim without performing a reasonable inquiry and having some evidentiary support for it. *See Hoatson v. New York Archdiocese*, No. 05 Civ. 10467(PAC), 2007 WL 431098, at *9 (S.D.N.Y. February 8, 2007) ("Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device. Accordingly, Rule 11 is particularly important in these cases because commencement of a civil RICO action has an almost inevitable stigmatizing effect on those named as defendants.") (citations omitted). Hogan takes innocuous facts (Berry allegedly seeing

20

Mr. Baumann in Florida) and, with the RICO claim, alleges that New Defendants are part of a worldwide conspiracy engaged in cigarette smuggling, money laundering, acts of violence in violation of the Hobbs Act, and stealing his software, among other things.

Hogan had every reason to know these claims were baseless before he brought them. This is the third time (that New Defendants know of) that Hogan has asserted baseless RICO claims. (Ex. M at 14-19 (*Sea-Land Serv., Inc. v. Atl. Pac. Int'l*); Ex. N at 22-25, 40-41 (1/26/2005 Order); Ex. F at 35-37 (6/27/2005 MSJ Order)). In a previous RICO suit against numerous defendants in Hawaii, Hogan filed a declaration of Berry that alleges, almost verbatim, the very same gun running, cigarette smuggling and criminal infringement allegations that he brought here. (*Compare* Ex. O ¶ 9 (12/20/2004 Berry Decl.) to SAC ¶ 257; Ex. O ¶ 11 to SAC ¶ 260; Ex. O ¶ 12 to SAC ¶ 266; Ex. O ¶ 13 to SAC ¶ 267; Ex. O ¶ 14 to SAC ¶ 268; Ex. O ¶ 15 to SAC ¶ 269; Ex. O ¶ 20 to SAC ¶ 271). Undeterred by prior dismissals, Hogan takes yet another bite at the apple in this Court, and sanctions are necessary to deter this conduct.

### E.    Suing Robert Kors In His Individual Capacity Violates Rule 11.

Hogan also should be sanctioned for suing Robert Kors in his individual capacity, which was done without factual support and for an improper purpose. Setting aside the fact that there is no evidentiary basis for any of the claims asserted against both the PCT or Mr. Kors (Sections IV.A, IV.B, IV.C, and IV.D *supra*), the SAC does not (and cannot) allege how Mr. Kors acted in his personal capacity in any of the allegations. (*See generally* SAC). For example, regarding Claim V for breach of the Fleming/Berry license agreement, Mr. Kors personally has never been a party to Berry's license agreement with Fleming, and Berry does not even allege otherwise. (SAC ¶¶ 184-92 (no mention of Mr. Kors in breach of contract allegations)). Nor does Berry allege how Mr. Kors participated in the alleged RICO "enterprise" in his personal capacity. *Id.*

In fact, the entire case against Mr. Kors defies logic. Mr. Kors, in his personal capacity, does no commercial freight shipping. Mr. Kors, in his personal capacity, has no use for Berry's software. Mr. Kors, in his personal capacity, has no incentive to hire a process server in Berry's divorce proceeding. And Mr. Kors, in his personal capacity, has no motive to spend his own money to bribe Hogan's former law firm to breach its duties. No reasonably objective attorney would have brought such baseless and irrational allegations against Mr. Kors in his personal capacity.

Mr. Kors graduated from the Wharton School at the University of Pennsylvania in 1979 and then graduated with a J.D. from Stanford Law School in 1982. (Aff. of Robert Kors ¶¶ 3-4). After clerking at the U.S. District Court in Los Angeles, Mr. Kors worked as an associate and then a partner at Latham & Watkins in Los Angeles. *Id.* ¶ 5. He then served as the CFO of Roll International Corporation, a privately-held company with $1 billion in revenue, for almost ten years. *Id.* ¶ 6. In 2004, Mr. Kors formed Castellammare Advisors, LLC to provide turnaround management, financial advisory and related services to distressed companies and bankruptcy estates. *Id.* ¶ 8. Before this lawsuit, Mr. Kors had never been sued. *Id.* ¶ 10. Since Mr. Kors' firm has been retained as a representative of unsecured creditors to act as a fiduciary, and he will continue to seek such positions in the future, he will have to disclose that he was sued for RICO violations to future prospective employers as well as other parties, a very serious matter. *Id.* ¶ 11.

The Court should consider all claims against Mr. Kors as violations of the "improper purpose" prong of Rule 11. The allegations against the PCT also lack support, but suing the PCT Representative in his personal capacity evidences that Hogan filed this suit solely to harass Mr. Kors. And it worked.

**F.    New Defendants Seek Monetary Sanctions And A "Leave To File" Injunction Against Both Hogan And Berry.**

Before bringing this motion, New Defendants pressed Hogan to provide *any* evidentiary basis for these claims, and provided him with the key facts refuting them.  (Ex. B at 10, 15, 19 (1/16/08-1/30/08 Email Thread)).  In response, Hogan evaded responding and provided no evidence.  (Ex. B at 12-14, 16 (1/16/08-1/30/08 Email Thread); Ex. K at 1 (2/16/08 Email)).  Hogan's conduct flies in the face of Rule 11, and only sanctions might deter such disregard to the duties in place to protect the integrity of the legal system.

New Defendants seek relief from the Court sufficient to stop Hogan's and Berry's litigation campaign against any entity they contrive to have had a relationship with the former Fleming Companies, Inc.  In the minds of Hogan and Berry, everyone associated with Fleming— from its former Lender Defendants and financial advisors to its Post Confirmation Trust, the PCT Representative, and their attorneys—is part of a worldwide conspiracy set on continuing criminal infringement of Berry's obsolete software, software that Berry licensed for free to Fleming and has never sold to another party.  The trail of defendants sued by Berry and Hogan is long, but can grow.  From allegations in the SAC, it now appears that even attorneys' *other clients* are at risk of suit by Hogan.  (SAC ¶ 311 ("FCS was obtained by Smith and Roger Fulghum, a partner at Baker Botts law firm in Houston, who at the time [sic] Haliburton, Inc.'s subsidiary Kellogg Brown & Root.  Upon information and belief, Haliburton [sic] used the illegally obtained copy to facilitate Haliburton's [sic] qualification for the no-bid government contract know as LOGCAPS III that required the contractor to have a freight control database to facilitate contract performance.")).  If the idea of "six degrees of separation" is true, soon nobody will be safe from these conspiracy theories.  And nothing seems to deter the litigation campaign,

especially not the doctrines of res judicata or collateral estoppel, the threat of Rule 11 sanctions, or reason.

In this case, monetary relief alone is not "sufficient to deter repetition of such conduct," the very purpose behind Rule 11 sanctions. Fed. R. Civ. P. 11(c)(2). Berry refused to pay any of the fee awards levied against him by the District of Hawaii, notwithstanding that court's findings that his claims wholly lacked merit. (Defendants Joint Mot. for Security at 4-7 (S.D.N.Y. D.I. 66)). Berry has testified that his registered and unregistered copyrights and his accrued litigation claims are his only assets. *Id.* And as is abundantly clear from Berry's SAC, the substantial award did not succeed as a deterrent because Hogan and Berry had no hesitation in bringing this lawsuit based on their same conspiracy theories, and with an even more tenuous connection to Berry's software.

Against this backdrop, New Defendants request not only the attorneys' fees and costs[4] and an admonition of conduct, but also for a "leave to file" injunction requiring both Berry and Hogan to seek permission from this Court before asserting any action against New Defendants, their employees or Board members, their attorneys or consultants, or any other people or entities associated with the former Fleming Companies, Inc. *See Riccard*, 307 F.3d at 1298 (upholding broad injunction against plaintiff because plaintiff had expanded his targets to include not only defendant, but defendant's attorneys as well). The repeated filing of baseless claims by Hogan and Berry is precisely the type of abuse for which an injunction forbidding further litigation is an appropriate sanction. *See Shafii*, 83 F.3d at 571; *see also In re Martin-Trigona*, 9 F.3d at 228.

---

[4]  If the Court grants New Defendants request for attorneys' fees and costs associated with defending against the SAC, New Defendants can provide a summary of these expenses in the manner and timing that the Court deems appropriate.

Finally, to the extent that the Court finds violations of the "factual contentions" and "improper purpose" prongs of Rule 11, New Defendants request that any award by entered against both Hogan and his client, Berry. Fed. R. Civ. P. 11(c)(5)(A); *Safir*, 792 F.2d at 25. In instances where the Court finds only violations of the "legal contentions" prong of Rule 11, the Court can enter sanctions against Hogan only. *See* Section III.D *supra*.

## V.    CONCLUSION

Hogan and his client Berry violated Rule 11 by filing and pursuing claims against New Defendants in the Second Amended Complaint. New Defendants therefore request that this Court grant their Motion for Sanctions Under Federal Rule of Civil Procedure 11 and deter such conduct in the future by (i) awarding New Defendants their attorneys' fees and costs incurred defending against SAC, (ii) entering a "leave to file" injunction requiring both Berry and Hogan to seek permission from this Court before asserting any action against New Defendants, their employees or Board members, their attorneys or consultants, or any other people or entities associated with the former Fleming Companies, Inc. and (iii) grant any further relief that the Court deems just and proper.

DATED: April 7, 2008

By:    /s/ Erin N. Brady
KIRKLAND & ELLIS LLP
Richard L. Wynne (RW 5630)
Michael E. Baumann (admitted *pro hac vice*)
Erin N. Brady (admitted *pro hac vice*)
F. Wade Ackerman (admitted *pro hac vice*)
777 South Figueroa Street
Los Angeles, California  90017
Telephone:    (213) 680-8400
Facsimile:    (213) 680-8500
E-mail:        ebrady@kirkland.com

Counsel for Defendants Post Confirmation
Trust and Robert Kors