# EXHIBIT B
# PART 2

Case 1:07-cv-07634-WHP     Document 94-4     Filed 04/07/2008     Page 1 of 5

<tjh@timhogan.com>

01/29/2008 06:00 PM

To "Michael Baumann" <mbaumann@kirkland.com>, "Richard Wynne" <rwynne@kirkland.com>, "Erin Brady" <ebrady@kirkland.com>

cc

Subject Berry and the EULA

Mike:

I guess the problem is that Fleming never sought the rejection and never conducted itself as if there had been one. There are several places in the Plan that supports this view.

Fleming retained, for the PCT, its rights in intellectual property and ongoing litigation under the Plan section VII B related to intellectual property and litigation generally. I don't think it makes any sense to actively pursue the rights under a license that has been rejected. Why not just walk away? The debtor couldn't because it is now proven that Fleming sold the works to C&S based on what C&S claims in its motion to dismiss.

Obviously we disagree. You have quoted, and we have provided you with quotes, demonstrating that at the time of the sale to C & S there was no sale of intellectual property of Mr. Berry's. This was made clear before the Bankruptcy Court and acknowledged by C & S. The confirmation plan and order does constitute a rejection of the license, a position you and your client understood and acknowledged in the materials I identified to you. As to your argument that rights in the license were pursued in a manner inconsistent with rejection, that is simply not the case. The claim of your client that was adjudicated dealt with the alleged infringement prior to the rejection of the license and the sale of assets to C & S. The period of inadvertent infringement was from April 1 through June 9 2003.

The Plan permitted additions to the assumed contracts list, post-confirmation, to be done outside of the view of the creditors and stated that exceptions to the general rejection that were in the Plan controlled over those sections. Something that "wasn't on the list" to quote the APA hearing, could easily be put on it post confirmation. Preserving the claim of ownership was indisputable proof that the PCT exercised the exception contained in the Plan embodied at least by the retention of causes of action.

You are simply wrong if you are suggesting that the license was added to the assumed contracts list post-confirmation and mere speculation that the license "could easily be put on it post confirmation" is not a justification for filing a suit that is factually incorrect.

The PCT erroneously continued to claim ownership of the works up until that claim became frivolous upon the entry of the Writ of Mandate in October. The APA had litigation over assumed-rejected contracts going back to 2006. If they were all rejected that should have been that. I know that there was settlement agreement. Can you provide me a copy of the C&S settlement documents? I'm sure they discuss this issue.

Again, you are wrong about the PCT claiming ownership. The PCT and Mr. Kors are not using Berry software, have not claimed ownership of it and have no need to. The license was rejected.

If you have a date that you think the rejection occurred let me know. If it was plan confirmation, why did Fleming and the PCT continue to assert ownership over the works for over 3 years after that? I think

EXHIBIT B
Page 5

anyone looking at this would believe that Fleming, in contempt for Judge Walrath, sold them to C&S with a promise to deliver title after tormenting Mr. Berry. The Debtor failed in that and now you've got to either return them to Berry or pay the price under the agreement. Had you returned them upon confirmation, you might have had an argument. Instead, you continued to assert ownership supporting C&S's unlicensed use and that results in ongoing liability of the PCT and Mr. Kors for directing it. If you claim rejection occurred as of the petition date, you better win the appeal because if you don't then all the defenses based on the license would be waived and you would admit willful infringement as to all the work on remand.

Your argument ignores the acknowledgement of the rejection by you and your client, including the filing of rejection damage claims. Your argument is based on the incorrect assertion that PCT or Fleming continued to assert ownership over the works following plan confirmation. There was no promise to deliver title to C&S "after tormenting Mr. Berry."

We believe the PCT and Mr. Kors assumed the duty to indemnify and support the infringers and have acted upon it to assist the infringers. I can't see how you can claim that the license has been rejected regardless of what Mr. Berry thought in his letter. In addition, the material support for the willful infringers and the accrued liability doesn't get fixed by us agreeing that the contract was rejected. What if this was a lease to a truck. The debtor gives the keys to the purchaser without lessor consent or cure and says, "Okay, here is your truck. Don't forget to keep up the lease payments." The purchaser won't pay. Your position is they get to keep the truck and the estate has no administrative liability. If Mr. Wynne has a case that says that I'd would be interested in seeing it.

Mr. Berry did not just "think" the license was rejected, he filed a claim in the bankruptcy court on that basis. You were his lawyer in that regard I believe. Your analogy doesn't work because Fleming did not sell, lease or transfer intellectual property to C & S and there were no "lease payments" required.

If what you are trying to do is to show that the license was rejected the works were delivered to C&S that won't work. It happened about a year prior to plan confirmation. At that point they were locked in because everything they got was Berry's and still is.

If you can let us know why it is so important I would be happy to consider it. If you want to discuss some accommodation regarding Mr. Kors I suggest that you stop making threats and commence some constructive dialogue. I think a joint motion in Delaware where we seek the return of the works or a criminal referral against C&S would be something I could use to move Mr. Berry.

Tim it is important because you are making wild accusations against the PCT and Mr. Kors as an individual that are without basis. It is important because you filed suit on behalf of Mr. Berry without basis and that is causing the PCT and Mr. Kors to incur the expense of responding. It is important because confidence and trust in the legal system requires that such claims not be made without some basis. I was not making threats in providing you with this information, I was simply providing you with information so you could understand why the claims should be withdrawn. We have no choice but to protect the PCT and Mr. Kors by seeking sanctions, a route I would prefer to avoid.

Tim

---

Timothy J. Hogan

Attorney at Law
1050 Bishop Street, No. 433
Honolulu, Hawaii 96813
Tel    (808) 382-3698
Fax.   (808) 356-1682
Email  tjh@timhogan.com
www    timhogan.com


NOTICE: This email may contain confidential information that may be subject to privilege. If you are not the intended recipient or received this message in error, please do not make any copies, contact the sender at tjh@timhogan.com and delete the message immediately.


**From:** Michael Baumann [mailto:mbaumann@kirkland.com]
**Sent:** Tuesday, January 29, 2008 2:42 PM
**To:** Tim Hogan
**Cc:** Erin Brady; Richard Wynne
**Subject:** Re:


Tim:

The Bankruptcy Court's July 27, 2004 confirmation order approving Fleming's Reorganization Plan approves Fleming's rejection of all of its remaining executory contracts. That same order also provides that any counter-parties to these rejected contracts had 30 days to file breach of contract damage claims in the Bankruptcy Court. Mr. Berry filed a claim for "rejection damages" in Fleming's bankruptcy case on October 4, 2004, an acknowledgment that the license agreement was rejected. In your December 24, 2004 letter, you specifically refer to " *Fleming Companies, Inc.'s rejection of the license in its Bankruptcy*".

Mike

"Tim Hogan"
<tjh@timhogan.com>

01/29/2008 12:52 PM

To "Michael Baumann" <mbaumann@kirkland.com>, "Erin Brady" <ebrady@kirkland.com>, "Richard Wynne" <rwynne@kirkland.com>, "Jonathan Moskin" <jmoskin@ny.whitecase.com>
cc
Subject

Mike:

In your email you wrote:

Your response did not address the point I made. In both your December 2004 letter, and in court filings, you and Mr. Berry have acknowledged that the license agreement was rejected by the debtor. The claim that the license was not rejected in the bankruptcy is untrue.

Can you please direct me to the specific places in the record that you claim support your view that "the license agreement was rejected by the debtor" and where you claim we have acknowledged this fact. Then I will be able to further respond to your email.

Tim

---

**Timothy J. Hogan**
Attorney at Law
1050 Bishop Street, No. 433
Honolulu, Hawaii 96813
Tel   (808) 382-3698
Fax.  (808) 356-1682
Email  tjh@timhogan.com
www   timhogan.com

NOTICE: This email may contain confidential information that may be subject to privilege. If you are not the intended recipient or received this message in error, please do not make any copies, contact the sender at tjh@timhogan.com and delete the message immediately.

***********************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
***********************************************************
***********************************************************