# EXHIBIT F

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JUN 2 7 2005

at 10 o'clock and 45 min A M
SUE BEITIA, CLERK

| | |
|---|---|
| WAYNE BERRY, a Hawaii citizen, | Civ. No. 03-00385 SOM/LEK |
| Plaintiff, | ORDER GRANTING IN PART, DENYING IN PART BERRY'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING C&S LOGISTICS OF HAWAII, LLC, C&S WHOLESALE GROCERS, INC., C&S ACQUISITION, LLC, ES3, LLC, AND RICHARD COHEN'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING GUIDANCE SOFTWARE, INC., AND MICHAEL GURZI'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART, DENYING IN PART REMAINING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |
| vs. | |
| HAWAII EXPRESS SERVICE, INC., a California corporation; et al. | |
| Defendants. | |

ORDER GRANTING IN PART, DENYING IN PART BERRY'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING C&S LOGISTICS OF HAWAII, LLC, C&S WHOLESALE GROCERS, INC., C&S ACQUISITION, LLC, ES3, LLC, AND RICHARD COHEN'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING GUIDANCE SOFTWARE, INC., AND MICHAEL GURZI'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART, DENYING IN PART REMAINING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

I.  INTRODUCTION.

Plaintiff Wayne Berry is suing multiple defendants for copyright infringement and related matters. This court has previously ruled on several motions in this case. In this latest round of what seems to this court to be a never-ending stream of motions, Berry moves for summary judgment against all remaining Defendants. Defendant Post Confirmation Trust ("PCT")[1]; Defendants C&S Logistics of Hawaii, LLC, C&S Wholesale Grocers,

---

[1] PCT represents the interests of Defendant Fleming Companies, Inc. ("Fleming"), during Fleming's bankruptcy.

Guidance assigned Gurzi to perform this work. Before beginning the removal, Gurzi made an image of each computer to preserve the original data and hold it as evidence in the pending litigation between Berry and Fleming. Gurzi then wiped the computers clean of all programs and data. Gurzi next re-installed software that was not owned by Berry. At Dillon's direction, Gurzi also restored approximately 20,000 user files to the system. Gurzi then made a second image of each drive as a record of the reconstructed data.

Berry alleges that the second image produced by Gurzi shows that 16 FCS files remained on the system after the attempt to purge the computers of Berry's software. Berry contends that these files establish that Guidance made unauthorized copies of FCS, both in the initial (pre-removal) imaging of the drives and in the restoration of the FCS copies to the system. Dillon says that he created the 16 FCS files at issue in connection with Berry's original lawsuit. See Ex. G to Hosoda Decl. ¶¶ 25-26.

Not all copying constitutes copyright infringement. See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 348 (1991). Certain uses of copyrighted works are "fair use" and do not infringe on the owner's copyright. See 17 U.S.C. § 107. Factors to be considered in a fair use analysis include: 1) the purpose and character of the use; 2) the nature of the copyrighted work; 3) the amount and substantiality of the portion

22

used in relation to the copyrighted work as a whole; and 4) the effect of the use on the potential market for or value of the copyrighted work. Id. A fair use inquiry "calls for case-by-case analysis" of the four factors "in light of the purposes of copyright." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 577-78 (1994). In considering the final factor, a court must consider the impact on the market not only for the original work, but also for any derivative work. Id. at 590.

The copying of computer files and programs for the purpose of preserving evidence is a fair use. See Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 367 (9th Cir. 1992); Jartech, Inc. v. Clancy, 666 F.2d 403, 407 (9th Cir. 1982).

In this case, the initial copy of the hard drive was created for the purpose of preserving evidence for litigation. See Gurzi Decl. ¶ 3. Further, the 16 FCS files allegedly retained on the system (and copied by the second image) were also retained for litigation purposes. See Ex. G to Hosoda Decl. ¶ 22. Accordingly, the creation of these copies was a fair use of FCS and was not a copyright violation.

Berry argues that the true purpose of the copying was to "trick the Delaware Bankruptcy Court to cause it to approve the sale to C&S"[5] and "trap Mr. Berry in new litigation in

---

[5] Citing to Ex. J to the Hogan Decl., Berry contends that "Fleming now admits" to this nefarious scheme. Careful review of the cited document, however, reveals no such admission.

23

Delaware while his software was being transferred to a third party C&S [sic]." Berry Opp. at 6. Berry, however, presents no evidence of such a scheme. The pendency of bankruptcy proceedings in Delaware while Guidance was performing its work does not prove that Guidance was attempting to infringe. To the contrary, the existence of proceedings in both Delaware and Hawaii explains why Guidance was making a record of its actions.

Because any copies that Guidance made of FCS files were protected by the fair use doctrine, Berry's motion for summary judgment with respect to direct infringement by Guidance is denied. Guidance's counter-motion for summary judgment on the direct infringement claim is granted.

The court acknowledges Berry's concern that Guidance has not yet produced all documents required by Berry. It is theoretically possible that some of those documents might raise questions of fact with respect to Berry's direct infringement claims against Guidance and Gurzi. Berry, however, makes no showing sufficient to justify a continuance under Rule 56(f) of the motions concerning those claims. If the documents ultimately do go to these claims, Berry may seek reconsideration based on newly discovered evidence. The court extends the time in which Berry may file a reconsideration motion with respect to direct infringement by Guidance and Gurzi to the later of 10 working

24

days after Berry receives any new evidence justifying such a motion or 10 working days from the date of this order.

   3.   Fleming.

Berry alleges that Fleming directly infringed on his software in three ways. First, Berry alleges that Fleming is liable for using altered FCS software between March 7, 2003, and June 9, 2003. Second, Berry alleges that Fleming distributed 16 copies of FCS to C&S, in violation of Berry's exclusive right of distribution. Third, Berry alleges that Fleming directly infringed on FCS by creating the Excel spreadsheets that Berry claims are an illegal derivative of FCS.

   a.   Fleming Infringed By Using An Altered Version of Berry's Software from March 7, 2003, to June 9, 2003.

As discussed earlier, Employees used an unauthorized altered version of FCS from March 7, 2003, to June 9, 2003, while working for Fleming. Fleming is liable for the infringement during this time. Berry's motion for summary judgment is granted with respect to Fleming's liability for direct infringement through the use of an altered version of FCS from March 7, 2003, to June 9, 2003. Fleming's counter-motion for summary judgment is denied with respect to these acts.

25

D. <u>Count IV: Misappropriation of Trade Secrets.</u>

Berry sues Fleming, C&S, and Guidance for misappropriation of trade secrets.

Hawaii's Trade Secret Act, Haw. Rev. Stat. § 482B, follows the Uniform Trade Secrets Act. <u>Merrill Lynch v. McClafferty</u>, 287 F. Supp. 2d 1244, 1249 (D. Haw. 2003). To succeed on a claim for misappropriation of trade secrets, a plaintiff must establish (1) the existence of a trade secret; and (2) the misappropriation of the trade secret. See Haw. Rev. Stat. § 482B. A "trade secret" is any information that (1) "[d]erives independent economic value . . . from not being generally known to, and not being readily ascertainable by proper means"; and (2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." <u>Id.</u> The statute defines "misappropriation" as follows:

> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (2) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>
>> (A) Used improper means to acquire knowledge of the trade secret; or
>>
>> (B) At the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:
>>
>>> (i) Derived from or through a person who had utilized improper means to acquire it;

31

> (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>
> (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>
> (C) Before a material change of the person's position, knew or has reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Haw. Rev. Stat. § 482B-2.

Berry does not identify the theory under which he seeks relief, but alleges generally that "no less than 30 of the other programs created by Mr. Berry remained on the Fleming server when it was sold to C&S." SAVC at 33. Berry further alleges, "This transfer was made by 'improper means' including theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic means." Id.

As an initial matter, Berry does not show that any files that were on the computers qualify as his trade secrets. Berry has not presented any evidence that those files had any independent economic value resulting from not being generally known. In fact, Berry initially gave FCS to Fleming for free. Further, Berry has not yet identified the "30 of the other programs" that he alleges were transferred.

With respect to the alleged "misappropriation," Berry argues that Fleming, Guidance, and C&S misled the Bankruptcy

32

Court by claiming that no copies of Berry's software remained on the Fleming computers when they were sold to C&S. See Ex. K to Hogan Decl. This, according to Berry, allowed C&S to obtain the programs "by improper means."

Guidance explains that any misstatement to the Bankruptcy Court was inadvertent and caused by Dillon's use of a different name for the files. See Ex. G to Hosoda Decl. ¶ 32 (Dillon's copies of 16 FCS files were accidentally retained because "they were located in a place where I do not usually keep software files"). Berry presents only argument, not evidence, in response to Guidance's explanation.

There is no evidence that Guidance tried to mislead the court. On the present record, Guidance cannot be said to have used any "improper means" to effect the transfer of any Berry files to C&S. As Guidance's statement to the Bankruptcy court appears to be the only "improper means" that Berry alleges as a basis for his trade secret claims, Berry does not establish any material issue of fact for trial with respect to his trade secret claims. Summary judgment is granted to Defendants on this Count.

E. Count V: Violations of the Sherman Act.

In Count V, Berry alleges violations of the Sherman Act, 15 U.S.C. §§ 1-2. Berry seeks damages under the Clayton Act, 15 U.S.C. § 15. Berry, however, lacks "antitrust standing" to bring a claim for damages under the Clayton Act.

33

Only those who meet the requirements for "antitrust standing" may pursue a claim under the Clayton Act. To have "antitrust standing," a plaintiff must adequately allege and eventually prove "antitrust injury." See Glen Holly Entm't, Inc. v. Tektronix Inc., 343 F.3d 1000, 1007 (9th Cir. 2003). An antitrust injury is not any injury caused by an antitrust violation, but is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Id. (quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc. 429 U.S. 477, 489 (1977)). "A plaintiff must prove that his loss flows from an *anticompetitive* aspect of the defendant's behavior. If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal per se." Glen Holly, 343 F.3d at 1008 (emphasis in original) (quoting Pool Water Prods. v. Olin Corp., 258 F.3d 1024 (9th Cir. 2001)).

Berry alleges copyright infringement arising out of Defendants' use of unauthorized copies and derivatives of FCS. This is neither the type of injury that the antitrust laws were intended to prevent, nor an injury that flows from anticompetitive conduct. There is no evidence that Defendant's infringing conduct diminished competition. Accordingly, the court grants summary judgment to all Defendants on Berry's claims

34

under the Sherman Act. See Assoc'd Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519 (1983).

F.  Count VI: RICO Violations.

In Count VI, Berry alleges violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and 1962(d). Section 1962(c) prohibits:

> any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce [] to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs though a pattern of racketeering activity or collection of unlawful debts.

18 U.S.C. § 1962(c). Section 1962(d) prohibits conspiracy to violate RICO provisions.

A viable cause of action under RICO requires a showing of (1) conduct, (2) of an enterprise, (3) through a pattern of (4) racketeering. Sedima, S.P.R.L. v. Imrex Co. Inc., 473 U.S. 479, 489-87 (1985). Liability under § 1962(c) for substantive violations of RICO is limited to "those who participate in the operation or management of an enterprise through a pattern of racketeering activity." Reves v. Ernst & Young, 507 U.S. 170, 184 (1993).

Berry alleges that Defendants engaged in a pattern of racketeering activity by committing the following predicate acts: (1) criminal copyright infringement, through the unlicensed and unauthorized use of FCS in the form of "daily boot ups of the

35

Berry system"; (2) bankruptcy fraud in the form of false declarations; and (3) money laundering by engaging in monetary transactions with money derived from the infringing use of FCS. See Berry RICO Statement at 17-18; see also Turner v. Cook, 362 F.3d 1219 (9th Cir. 2004) (predicate acts of racketeering activity required for RICO violation).

Berry does not establish criminal copyright infringement. Criminal infringement involves the "willful" infringement of a copyright. See 17 U.S.C. § 506(a). There is no evidence of any willful copyright infringement.

With respect to Berry's allegation of bankruptcy fraud, Berry does not establish any triable issue of fact. Berry presents no evidence of any fraud committed on the Bankruptcy Court. Berry does cite to a statement by a Mr. Ziman, who apparently represented C&S, that, "I do not believe that this software license is on any list to be assumed and assigned, and if – to the extent that we can't assume it and assign it under 365, we won't, and we're certainly not going to infringe." Ex. K to Hogan Decl. at 156. This statement, however, does not establish any fraud. Ziman says only that FCS does not appear on any list to be assumed and assigned and that it is not C&S's intention to use FCS or infringe on Berry's copyright. This is consistent with Dillon's statement that he and Gurzi both believed that the FCS files were no longer on any computer.

36

Finally, Berry presents no evidence of laundering of "money derived from the infringing use of FCS." Berry's accountant's expert report, see Ex. I to Hogan Decl., does not address whether money was actually derived from infringement of FCS. Even if Defendants did profit from infringement, Berry presents no evidence that Defendants laundered these profits.

Because Berry fails to raise a question of material fact with respect to any predicate RICO act, his claim under 18 U.S.C. § 1962(c) fails. Defendants' motions for summary judgment on this claim are granted.

Berry further alleges that Defendants conspired to commit racketeering activity, in violation of 18 U.S.C. § 1962(d). "A defendant is guilty of conspiracy to violate [RICO] if evidence establishes that she knowingly agreed to facilitate a scheme with includes the operation or management of a RICO enterprise." United States v. Fernandez, 388 F.3d 1199, 1230 (9th Cir. 2004). Berry, however, presents no evidence of any conspiracy to commit any of the alleged predicate RICO acts.

The court denies Berry's motion for summary judgment on Count VI and grants Defendants' counter-motions for summary judgment on Count VI.

G. Damages.

The granting of Berry's motion for summary judgment with respect to the liability of Fleming and Employees for direct

37

infringement between the dates of March 7, 2003, and June 9, 2003, leaves for further adjudication the issue of damages. Berry has not elected to receive statutory damages for that infringement and is presently seeking Defendants' profits during the period of infringement.

Under 17 U.S.C. § 504(b),

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

The Ninth Circuit has interpreted this provision as requiring a copyright owner to present evidence establishing a legally sufficient causal link between the infringement and subsequent indirect profits.[6] See Mackie v. Rieser, 296 F.3d 909, 915-16 (9th Cir. 2002), cert denied, 537 U.S. 1189 (2003); see also On Davis v. The Gap, Inc., 246 F.3d 152 (2d Cir. 2001); Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 520 (4th Cir. 2003).

---

[6] The court in Mackie distinguishes between "direct profits," which are generated by selling an infringing product, and "indirect profits," which are generated through a more attenuated nexus to the infringement. 296 F.3d at 914. The profits sought by Berry in this case are indirect profits.

38

infringement and the issue of any direct benefit to Fleming for alleged vicarious infringement. Motions for summary judgment on damages or on Fleming's alleged vicarious infringement may be filed on or before the dispositive motions cutoff. Berry's motion for summary judgment is denied in all other respects.

Employees' motion for summary judgment is denied with respect to liability for direct infringement between March 7, 2003, and June 9, 2003, and for vicarious infringement. Employees' motion for summary judgment is granted in all other respects.

Fleming's motion for summary judgment is denied with respect to liability for direct infringement between March 7, 2003, and June 9, 2003, and with respect to vicarious infringement. Fleming's motion for summary judgment is granted in all other respects.

All other Defendants' motions for summary judgment are granted. The tentatively reserved hearing date of August 9, 2005, is vacated with respect to Guidance and Gurzi.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 27, 2005.

/s/ Susan Oki Mollway
SUSAN OKI MOLLWAY
UNITED STATES DISTRICT JUDGE

Berry v. Hawaiian Express Service, Inc., et al., Civ. No. 03-00385 SOM/LEK, ORDER GRANTING IN PART, DENYING IN PART BERRY'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING C&S LOGISTICS OF HAWAII, LLC, C&S WHOLESALE GROCERS, INC., C&S ACQUISITION, LLC, ES3, LLC, AND RICHARD COHEN'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING GUIDANCE SOFTWARE, INC., AND MICHAEL GURZI'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART, DENYING IN PART REMAINING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT.