# EXHIBIT L

# Timothy J. Hogan
### Attorney at Law
1050 Bishop Street, Number 433
Honolulu, Hawaii 96813
Telephone (808) 382-3698
Facsimile (808) 356-1682
Email tjh@timhogan.com

January 9, 2008

**CONFIDENTIAL**

OFFICE OF DISCIPLINARY COUNSEL
RECEIVED
9 January 2008
TIME 8:00am
HAND DELIVERED

Charles H. Hite, Esq.                                              **VIA HAND DELIVERY**
Deputy Chief Disciplinary Counsel
1132 Bishop Street
Suite 300
Honolulu, Hawaii 96813

Re: Lex R. Smith and your Letter dated December 26, 2007.

Dear Deputy Chief Disciplinary Counsel Hite:

I am writing in response to your letter to me dated December 26, 2007 in which you requested a response by January 9, 2008 regarding what, if any, evidence I had to support my belief that Lex Smith had engaged in conduct in violations of the DR's related to Mr. Berry, specifically whether Mr. Smith acted to induce a breach of duty related to Mr. Berry's attorneys Lynch Ichida Thompson Kin & Hirota ("LITK&H"). To date I have received your December 26, 2007 letter regarding Mr. Smith and the carbon copies of your letters to Wesley Ichida, William Thompson, Paul Lynch, Maile Hirota and Steven Kim. I have received no other correspondence from your office to date related to my letter dated December 18, 2007. If any other correspondence was directed to me, please advise me and I will respond immediately.

To address your letter, attached as Exhibit "A" is a true and correct copy of an email dated December 17, 2007 from Mr. Ichida to me where on page 2 of 5 he refuses to confirm the fact that Mr. Smith had made an offer to purchase LITK&H's purported lien related to Mr. Berry. In response by my question, "Was there any assignment of the firm's claimed right to be paid as the result of their contingency fee agreement? If so, was any money paid to the firm?" Mr. Ichida responded: "Tim: Whether or not we have assigned Berry's or any other client's receivable is the Firm's business." I have highlighted the response and other relevant parts of the Exhibits in red. In contrast to the Firm's earlier position where it had claimed a right to collect upon the contingency fee agreement, this email only makes a claim for unpaid costs. The Firm's right to collect upon the lien is conspicuously absent.

When presented with the claim that Mr. Smith had made an earlier offer to purchase the Firm's Berry contingent fee agreement, Mr. Ichida wrote: "Nevertheless, I cannot and will not confirm

Office of Disciplinary Counsel
**CONFIDENTIAL**
January 9, 2008
Page 2

that "Lex Smith made an offer to purchase the purported lien rights." See Exhibit A at pages 3 and 4 of 5. The apparent denial regarding Mr. Smith's offer contained in Exhibit "A" is contradicted by the attached Exhibits "B", "C" and "D" that are the earlier emails dated July 27, 2007 from Mr. Ichida to Wayne Berry where he informs Mr. Berry that Mr. Smith made the offer that in the December 17, 2007 email Mr. Ichida inexplicably would not then confirm was ever made.

In Exhibit "D" Mr. Ichida concedes that he informed Mr. Smith that Mr. Ichida was not clear whether Mr. Smith's proposal "would be a breach of our fiduciary duty." If Mr. Ichida acted to accept Mr. Smith's offer, that he claims would be a matter of Firm business that he need not share with the client, sometime from July 27, 2007 to December 17, 2007, Mr. Ichida had a change of heart regarding what he had perceived was his ethical obligation to Mr. Berry in regard to this matter. Exhibit "A" evidences that the Firm no longer claims to have a lien on the Berry contingent fee expectancy. Exhibits "B", "C" and "D" evidence that Mr. Smith made the offer and I believe a reasonable conclusion follows from Mr. Ichida's refusal to deny the fact of the transaction that Mr. Smith eventually persuaded Mr. Ichida to accept his offer for money and assigned the contingent fee agreement to Mr. Smith. At a minimum it evidences Mr. Ichida's agreement to conceal Mr. Smith's proposal from discovery by Mr. Berry. When Mr. Ichida told Mr. Smith that he had questions regarding the ethics of such an agreement the matter should have been dropped. My understanding of Hawaii law is that an offer to an agent to breach a fiduciary duty is serious violation of Hawaii law.[1]

It is important to note that the entire purpose of Lynch Ichida Thompson Kim & Hirota's ("LITK&H") long representation of Mr. Berry was to protect his copyrights from an unprecedented assault from willful infringers represented by Lex Smith. Mr. Berry never

---

[1] (1) A person commits the offense of commercial bribery if:
(a) He confers _or offers_ or agrees to confer, directly or indirectly, any benefit upon:
(i) An agent with intent to influence the agent to act contrary to a duty to which, as an agent, he is subject
(a) "Agent" means:

. . .

(iii) A lawyer,

(3) Commercial bribery is a misdemeanor, except in the event that the value of the benefit referred to in subsection (1) exceeds $1,000, in which case commercial bribery shall be a class C felony.

Hawaii Rev Stat. §708-880 Commercial bribery (emphasis added).

Office of Disciplinary Counsel
**CONFIDENTIAL**
January 9, 2008
Page 3

authorized any transfer of any of his property or contract obligations or rights to anyone but especially not to Lex Smith nor his clients. This is in no small part due to the proven fact the Mr. Smith is the person who evidence had shown had represented a company that committed numerous acts of willful infringement against Mr. Berry. A recent 9th Circuit Memorandum Opinion dated July 5, 2007, has finally established that Mr. Smith's client was engaged in willful infringement. The record in court proceedings demonstrates that the persons who engaged in the conduct did so under advice of counsel. Mr. Smith was the attorney representing the infringer. Willful infringement for commercial advantage or personal financial gain is a federal crime. See the Copyright Act, 17 U.S.C. § 506 (a).

Had LITK&H actually produced a fund of money on behalf of Mr. Berry then they could have claimed a right to that fund while they represented Mr. Berry. If Mr. Berry then discharged them they could assert their right as a charging lien. Their right to be paid was never put in jeopardy by Mr. Berry's refusal to honor his agreement. LITK&H however, chose to voluntarily terminate the representation without producing any recovery. In late July Mr. Ichida and his partners tried to induce me into accepting an agreement to collect their contingent fee by continuing to pursue the claims. My concern remains that they were engaged in advancing a secret deal with the opposing party that was not disclosed to Mr. Berry who at the time was, and still likely is, their client. Mr. Ichida apparently discussed this agreement with Mr. Smith as evidenced by Exhibit "D." It is my understanding that even after withdrawal, and there has not been a withdrawal in all the Berry matters, an attorney has ongoing duties to the client that their current position appears to violate. At no time did Mr. Ichida inform me or Mr. Berry that he had the right to assign this agreement to Mr. Smith.

In December, when I attempted to investigate whether there had been an actual payment made to LITK&H, Mr. Ichida denied his earlier admission that Mr. Smith had made the offer to purchase LITK&H's purported lien claim. This denial was in the face of the clear evidence Mr. Ichida had sent to Mr. Berry that had conceded that Mr. Smith had in fact made the offer. This combined with Mr. Ichida's refusal to simply state that no such payment was made is what prompted the complaint. His statement that what he did with firm "receivables" was a firm matter begs the question, "what receivable?" The retainer was based on a contingent fee. Mr. Ichida confirmed that the firm still claims a right to be paid for its in-house costs. If Mr. Berry recovered any money on LITK&H's watch this would likely be subject to their claimed percentage under the contingent fee agreement. If the Firm recovered money based on the contingent fee agreement then Mr. Berry has rights to the money. Mr. Berry also has a claim of an expert that has been awaiting payment that would appear to have also been disregarded by the effect of this agreement if the money was paid to the firm in secret.

My belief is well founded upon the evidence, including circumstantial evidence that I will not dwell on here, that I believe is sufficient for a finding that Mr. Smith induced Mr. Ichida and his

Office of Disciplinary Counsel
**CONFIDENTIAL**
January 9, 2008
Page 4

associates to breach the fiduciary duty that Mr. Ichida informed Mr. Smith was implicated by his offer. I concede that I am not clear whether there is sufficient evidence for disciplinary proceedings. At a minimum, getting Mr. Ichida to disclose the ongoing attorney-client discussions that were made necessary by their withdrawal appears to be a breach of the duty to maintain confidences and secrets. In a letter that was sent to Mr. Ichida on July 26, 2007 before Smith began to negotiate the sale of the contingent fee agreement, Mr. Ichida was directed by the client to have no such discussions with anyone. *See* Exhibit "E." As evidence by Exhibits "B", "C" and "D", Mr. Ichida continued to discuss these on going attorney-client matters with Mr. Smith. I remain of the belief that the offer to LJTK&H to breach its duty to Mr. Berry, at a minimum, to inform him of all matters related to his case, that is conceded in the December emails where Mr. Ichida claims that whether they sold his case to the opposition is none of his business, constitutes a violation of the DR's duty of loyalty.

Any claim that Mr. Smith's acts were not done with malice directed towards Mr. Berry is negated by the long history of acts related to Mr. Berry. Mr. Smith and/or attorneys under his authority have communicated with Mr. Berry's estranged spouse starting no later than 2005. In my view they would have necessarily entered into the areas protected by the spousal privilege. No notice to Mr. Berry or his counsel ever preceded these contacts. This fact is evidenced by Kobayashi Sugita & Gota's time records filed in the US District Court. Exhibit "F."

In addition, I have spoken with Mr. Berry's estranged spouse's divorce attorney Cheryl Brawley, who told me that her client, had told her that Lex Smith had communicated with her (Mrs. Berry) after telling Mrs. Berry that he (Mr. Smith) represented Mr Berry.

Mr. Smith has conceded to having communications with Ms. Brawley on several occasions. I believe the evidence shows that Lex Smith working with his co-counsel Michael Baumann, a principal partner in the Los Angeles office of Kirkland & Ellis who, with Mr. Smith, together encouraged the advance of a divorce complaint by promising Mrs. Berry that she would share in money that they would pay if an equitable division gave her rights in Mr. Berry's copyrights. I believe that they were under the impression that such a division could cure the ongoing criminal infringement in which their clients had participated. Their apparent goal was to obtain interests in Mr. Berry's copyrights to then defend the ongoing criminal infringement.

As further proof of Mr. Smith's plan to obtain an interest in the Berry divorce proceeding, on August 13, 2007, Lex Smith, compelled Mr. Berry to travel from Florida to Hawaii to conduct an examination. The next day his co-counsel Michael Baumann appeared at the West Palm Beach airport the following day to identify Mr. Berry upon his return to Florida to a purported process server. The process server then followed Mr. Berry from the airport to effect service of the <u>Berry v. Berry</u> already dismissed divorce complaint within minutes of Mr. Berry's transit through the West Palm Beach Airport where Mr. Berry identified Mr. Baumann, Mr. Smith's co-counsel,

Office of Disciplinary Counsel
**CONFIDENTIAL**
January 9, 2008
Page 5

waiting at a point in the terminal where all departing passengers had to pass.

Mr. Ichida's denial that Mr. Smith made the offer evidences Mr. Smith's complicity in LITK&H's breach of duty, that includes withholding material facts related to the representation, self-dealing, failure to maintain client funds and obtaining an interest in the client's matter adverse to the client. What possible reason would Mr. Ichida have to make the false statement about the Smith offer other than to cover for Mr. Smith?

This case is on all fours with a classic act of *champertry* that from my research I understand was originally derived from a fact pattern involving a false claim raised against a person's property by a third party who then sold the claim to a powerful noble who, because of his position, had little trouble enforcing it in a common law court. The classic officious intermeddler, Mr. Smith, a powerful public official and his co-counsel at Kirkland & Ellis, didn't need to have a real claim against Mr. Berry but only one that passed a "giggle test" to cause mischief in regard to Mr. Berry attempts to be free from criminal infringement. By inducing LITK&H to become an instrument against their own client by, at a minimum, not disclosing the transaction, Smith would effectively obtain one of the keys to his plan to continue to advance the infringement. This is *champertry* enhanced by commercial bribery and criminal infringement.

If this conduct is permissible then a plaintiff's attorney would be free to advertise for contingency plaintiff clients, then secretly sell them out to the other side or their attorney when the plaintiff's attorney voluntarily abandon his/her case but claims a charging lien. I can't imagine that the DR's are powerless to prevent this conduct from becoming an accepted practice in our profession both from the prospective of the seller and buyer attorney's. The evidence I have presented proves Mr. Smith made the offer. Contrary to Mr. Ichida, whether or not a plaintiff's attorney has actually entered into such an agreement related to the representation is not something that can be kept secret from the client.

Sincerely,

Timothy J. Hogan

Enclosures - Exhibits A to F