# Exhibit
# 1

**<u>Exhibit D</u>**

**PCT Agreement**

## POST CONFIRMATION TRUST AGREEMENT

This AGREEMENT is made this ____ day of _____, 2004, by and among Fleming Companies, Inc. and its subsidiaries and affiliates who are chapter 11 debtors (collectively, the "Debtors")[1], the Official Committee of Unsecured Creditors (the "Committee") and _____ (together with any successors, the "PCT Representative").

### RECITALS:

A.    On April 1, 2003 each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and

B.    By order dated _____ 2004, the Bankruptcy Court confirmed the Debtors' and the Official Committee of Unsecured Creditors' Third Amended and Revised Joint Plan of Reorganization of Fleming Companies, Inc. and Its Filing Subsidiaries Under Chapter 11 of the Bankruptcy Code (as the same may be amended, the "Plan"); and

C.    In accordance with the Plan, a trust (the "PCT") is being established hereby for the primary purpose of liquidating the assets transferred to it under the Plan (the "PCT Assets") for the benefit of the Beneficiaries (as defined herein), subject to the liabilities of the PCT as specified herein; and

D.    The Plan provides for, among other things, the distribution to the Beneficiaries of, in the aggregate, one hundred percent (100%) of the beneficial interests in the PCT; and

E.    The PCT is created on behalf of, and for the sole benefit of, the Beneficiaries subject to the liabilities of the PCT as specified herein; and

F.    The PCT is established as a liquidating trust, in accordance with Treasury Regulation Section 301.770 1-4(d) with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the PCT; and

G.    The PCT is intended to qualify as a "grantor trust" for federal income tax purposes with the Beneficiaries treated as the grantors and owners of the trust; and

---

[1]  The Debtors are the following entities:  Core-Mark International, Inc.; Fleming Companies, Inc.; ABCO Food Group, Inc.; ABCO Markets, Inc.; ABCO Realty Corp.; ASI Office Automation, Inc.; C/M Products, Inc.; Core-Mark Interrelated Companies, Inc.; Core-Mark Mid-Continent, Inc.; Dunigan Fuels, Inc.; Favar Concepts, Ltd.; Fleming Foods Management Co., L.L.C., Fleming Foods of Texas, L.P.; Fleming International, Ltd.; Fleming Supermarkets of Florida, Inc.; Fleming Transportation Service, Inc.; Food 4 Less Beverage Company, Inc.; Fuelserv, Inc.; General Acceptance Corporation; Head Distributing Company; Marquise Ventures Company, Inc.; Minter-Weisman Co.; Piggly Wiggly Company; Progressive Realty, Inc.; Rainbow Food Group, Inc.; Retail Investments, Inc.; Retail Supermarkets, Inc.; RFS Marketing Services, Inc.; and Richmar Foods, Inc.

H.    Capitalized terms used herein without definition shall have the respective meanings assigned to such terms in the Plan; and

I.    In the event of any inconsistency between the Plan and this Agreement, the terms of the Plan shall govern.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan, the Debtors, the Committee and the PCT Representative agree as follows:

**ARTICLE I**

**POST CONFIRMATION REPRESENTATIVE**

1.1    Appointment.    The Debtors and the Committee hereby appoint _____ to serve as the initial PCT Representative under the Plan, and _____ hereby accepts such appointment and agrees to serve in such capacity, in each case effective upon the Effective Date of the Plan.  If the PCT Representative is removed or resigns pursuant to this Agreement or otherwise vacates the position, a successor PCT Representative shall be appointed by the PCT Board (as defined herein) and, if not so appointed, shall be appointed by the Bankruptcy Court.

1.2    Generally.  The PCT Representative's powers are exercisable solely in a fiduciary capacity consistent with, and in furtherance of, the purposes of the PCT and not otherwise, except that the PCT Representative may deal with the PCT Assets for his own account as permitted by the provisions of Section 1.4 hereof.  The PCT Representative shall have the authority to bind the PCT but shall for all purposes hereunder be acting in the capacity as PCT Representative and not individually.  Notwithstanding anything to the contrary contained herein or in the Plan, the PCT Representative shall not be required to take any action or omit to take any action if, after the advice of counsel, the PCT Representative believes such action or omission is not consistent with the PCT Representative's fiduciary duties to the Beneficiaries.

1.3    Powers.

(a)    The powers of the PCT Representative shall, without any further Bankruptcy Court approval, include (i) the power to invest and withdraw funds, make distributions and pay taxes and other obligations owed by the PCT from funds held by the PCT in accordance with this Agreement and the Plan, (ii) the power to engage employees and professional persons to assist the PCT and/or the PCT Representative with respect to its or his responsibilities, (iii) the power to compromise and settle claims and Causes of Action on behalf of or against the PCT after notice to the PCT Board and (iv) such other powers as may be vested in or assumed by the PCT or the PCT Representative pursuant to the Plan, Bankruptcy Court order or as may be necessary or proper to carry out the provisions of this Agreement and the Plan.  Except as expressly set forth herein, subject to section 2.5(b), the PCT Representative shall have absolute discretion to pursue or not to pursue any and all claims, rights, and Causes of Action as he determines is in the best interests of the Beneficiaries, subject to consideration of the liabilities of the PCT as specified herein, and consistent with the purposes of the PCT and shall have no liability

-2-

for the outcome of his decision.  The PCT Representative may incur any reasonable and necessary expenses in liquidating and converting the PCT Assets to cash.

      (b)     In connection with the administration of the PCT, except as otherwise set forth in this Agreement or the Plan, the PCT Representative is authorized to perform any and all acts necessary or desirable to accomplish the purposes of the PCT.  Without limiting, but subject to, the foregoing, the PCT Representative shall be expressly authorized, but shall not be required, to:

    (i)     hold legal title to the PCT Assets and any and all rights of the Beneficiaries in or arising from the PCT Assets, including, but not limited to, the right to vote any claim or interest held by the PCT Assets in a case under the Bankruptcy Code and receive any distribution therein;

    (ii)    protect and enforce the rights to the PCT Assets vested in the PCT by any method deemed appropriate including, without limitation, by judicial proceedings or pursuant to any applicable bankruptcy, insolvency, moratorium or similar law and general principles of equity;

    (iii)   invest any moneys held as part of the PCT Assets in accordance with the terms of Section 1.10 hereof.

    (iv)   liquidate the PCT Assets and calculate and effect the distribution of the net proceeds thereof to the Beneficiaries, subject to the liabilities of the PCT as specified herein, in accordance with the provisions of the Plan;

    (v)    compromise, adjust, arbitrate, sue on or defend, abandon, or otherwise deal with and settle, in accordance with the terms set forth in Section 4.2 hereof, Claims in favor of or against the PCT;

    (vi)   determine and satisfy any and all liabilities created, incurred or assumed by the PCT;

    (vii)   file, if necessary, any and all tax and information returns with respect to the PCT, pay taxes properly payable by the PCT, if any, and furnish to the Beneficiaries all necessary tax forms;

    (viii)  pay all expenses and make all other payments relating to the PCT Assets;

    (ix)   obtain insurance coverage with respect to the liabilities and obligations of the PCT Representative and the PCT (in the form of an errors and omissions policy, fiduciary policy or otherwise);

DT: #273722 v2 (5V7#02!.DOC)

(x)    obtain insurance coverage with respect to real and personal property which may be or may become PCT Assets, if any;

(xi)    retain and pay law firms as counsel to the PCT to aid in the prosecution of any claims that constitute the PCT Assets and to perform such other functions as may be appropriate. The PCT Representative may commit the PCT to, and the PCT shall, pay such law firm's compensation for services rendered and expenses incurred;

(xii)    retain and pay a public accounting firm to perform such reviews and/or audits of the financial books and records of the PCT as may be appropriate. The PCT Representative may commit the PCT to, and the PCT shall, pay such accounting firm's reasonable compensation for services rendered and expenses incurred;

(xiii)    retain and pay such third parties as the PCT Representative may deem necessary or appropriate to assist the PCT Representative in carrying out his powers and duties under this Agreement and in accordance with the Plan. The PCT Representative may commit the PCT to, and the PCT shall, pay all such person's or entity's compensation for services rendered and expenses incurred, as well as commit the PCT to indemnify any such parties in connection with the performance of services;

(xiv)    engage in any transaction material to the foregoing, including, but not limited to, opening bank accounts in the name of the PCT and entering into contracts and leases on behalf of the PCT;

(xv)    provide periodic reporting to the Bankruptcy Court and parties in interest of the status of the Claims resolution process, distributions to the Beneficiaries and prosecution of Causes of Action;

(xvi)    manage the wind-down of the Debtors' non-Fleming Convenience operations; and

(xvii)    assume such other powers as may be vested in or assumed by the PCT pursuant to the Plan or Bankruptcy Court order, or as may be necessary and proper to carry out the provisions of this Agreement or of the Plan.

1.4    _Authority._ Except as otherwise set forth in this Agreement or in the Plan, and subject to the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the PCT Representative may control and exercise authority over the PCT Assets and over the protection, conservation and disposition thereof. No person dealing with the PCT shall be obligated to inquire into the authority of the PCT Representative in connection with the protection, conservation or disposition of the PCT Assets.

-4-

1.5    Cooperation with Reclamation Creditors' Trust ("RCT").  To facilitate the Claims reconciliation process and asset liquidation, the PCT and the RCT shall enter into a transition services agreement, substantially in the form attached hereto as Exhibit A, whereby the PCT shall provide resources to the RCT related to effecting the reconciliation of claims by and against the RCT.  Such resources shall include, but not be limited to, access to the professional staff and employees of the PCT, computer systems, data bases and other relevant information.  The RCT shall reimburse the PCT for the direct costs (e.g., professional staff and employee expense) and allocation of the indirect costs (e.g., facilities, computers, data storage facilities) with an allocation methodology to be agreed upon.  Notwithstanding the foregoing, the RCT shall have no obligation to reimburse the PCT for indirect costs for the first three months after the Effective Date, or for (i) direct costs for the first six months after the Effective Date and (ii) indirect costs for months four through six after the Effective Date, up to an aggregate cap of $1 million.  In addition, on the Effective Date, the Debtors and the Committee may elect that either: (i) the Debtors shall provide the RCT with an additional $1 million for administrative expenses of the RCT or (ii) the PCT shall provide the RCT with additional resources and services pursuant to the transition services agreement with a value of up to an additional $1 million.  However, once the RCT has received aggregate distributions of $10 million from the PCT, inclusive of any amounts paid to the RCT with respect to the Administrative Claims Saving, the next $1 million in cash to be distributed by the PCT to the RCT shall instead be paid to Core-Mark Newco.

1.6    Coordination Between PCT and RCT.  The PCT Board, through the PCT Representative and otherwise, shall exercise reasonable efforts to coordinate with the RCT by (a) reporting to the RCT on a regular basis concerning the status and activities of the PCT; and (b) responding to reasonable informational requests from the RCT concerning the status and activities of the PCT.

1.7    Other Activities.  The PCT Representative shall be entitled to perform services for and be employed by third parties; provided, however, that such performance or employment affords the PCT Representative sufficient time to carry out his responsibilities as PCT Representative.  The PCT Representative may delegate the performance of services and the fulfillment of responsibilities to other persons.  Such persons shall be entitled to be compensated and to be reimbursed for out-of-pocket disbursements in the same manner as the PCT Representative.

1.8    Limitation of PCT Representative's Authority.

(a)    The PCT Representative shall have no power or authority except as set forth in this Agreement or in the Plan.

(b)    The scope of the PCT Representative's power and authority shall be determined by the PCT Board (as defined herein).

(c)    The PCT Representative shall not, and shall not be authorized to, engage in any trade or business with respect to the PCT Assets or any proceeds therefrom except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the PCT and shall take such actions consistent with the prompt orderly liquidation of the PCT Assets as are required by applicable law and consistent with the treatment of the PCT as a

liquidating trust under Treasury Regulation Section 301.770 1-4(d), and such actions permitted herein.

1.9    Liability of PCT, PCT Representative and Professionals. In no event shall the PCT Representative, the PCT Representative's employees, the PCT's employees or any of the PCT Representative's or PCT's professionals or representatives be held personally liable for any Claim asserted against the PCT, the PCT Representative, the PCT Representative's employees, the PCT's employees or any of the PCT Representative's or PCT's professionals or representatives. Specifically, the PCT Representative, the PCT Representative's employees, the PCT's employees and any of the PCT Representative's or PCT's professionals or representatives shall not be liable for any negligence or any error of judgment made in good faith, or with respect to any action taken or omitted to be taken in good faith, except to the extent that the action taken or omitted to be taken by the PCT Representative, the PCT Representative's employees, the PCT's employees or any of the PCT Representative's or PCT's professionals or representatives is determined by a Final Order to be due to their own respective gross negligence or willful misconduct.

1.10    Reliance by PCT Representative. Except as otherwise provided in Section 1.8 hereof:

(a)    the PCT Representative may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by him to be genuine and to have been signed or presented by the proper party or parties;

(b)    the PCT Representative may consult with legal counsel, financial or accounting advisors and other professionals to be selected by him, and the PCT Representative shall not be liable for any action taken or omitted to be taken by him in accordance with the advice thereof; and

(c)    persons dealing with the PCT Representative shall look only to the PCT Assets to satisfy any liability incurred by the PCT Representative to such person in carrying out the terms of this Agreement, and the PCT Representative shall have no personal obligation to satisfy any such liability.

1.11    Investment and Safekeeping of PCT Assets. All PCT Assets shall, until distributed or paid over as herein provided, be held in trust for the benefit of the Beneficiaries. The PCT Representative shall have no liability for interest or producing income on any moneys received by the PCT hereunder and held for distribution or payment to the Beneficiaries, except as such interest shall actually be received by the PCT. Investments of any moneys held by the PCT shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs; provided, however, that the right and power of the PCT Representative to invest the PCT Assets, the proceeds thereof, or any income earned by the PCT, shall be limited to the right and power to invest such assets (pending periodic distributions in accordance with Section 4.4 hereof) in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as Treasury bills; and, provided, further, that the scope of any

such permissible investments shall be limited to include only those investments, or shall be expanded to include any additional investments, as the case may be, that a liquidating trust, within the meaning of Treasury Regulation Section 301.770 1-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.

1.12    Authorization to Expend PCT Assets.  Subject to the Post-Effective Date Budget ("Budget") to be prepared by the PCT Representative on the Effective Date and approved by the PCT Board or as otherwise ordered by the Bankruptcy Court,  the PCT Representative may expend the PCT Assets  (i) as necessary to meet contingent liabilities and to maintain the value of the PCT Assets, (ii) to pay expenses of the PCT (including, but not limited to, any taxes imposed on the PCT or fees and expenses in connection with litigation), and (iii) to satisfy other liabilities incurred or assumed by the PCT (or to which the PCT Assets are otherwise subject) in accordance with this Agreement or the Plan.  The PCT Representative may, as required, seek permission from the PCT Board to expend additional funds not in the Budget or authority to borrow additional funds if supported and necessary to exercise the duties of the PCT Representative.

1.13    Compensation of the PCT Representative.

(a)    The PCT shall reimburse the PCT Representative for the actual and reasonable out-of-pocket expenses incurred by the PCT Representative, including, without limitation, necessary travel, lodging, postage, telephone and facsimile charges upon receipt of periodic billings. The PCT Representative and employees of the PCT and the PCT Representative who perform services for the PCT shall be entitled to receive compensation for services rendered to the PCT as agreed to by the PCT Representative and the PCT Board.

(b)    The PCT Assets shall be subject to the claims of the PCT Representative, and the PCT Representative shall be entitled to reimburse himself out of any available cash in the PCT for his actual and reasonable out-of-pocket expenses and against and from any and all loss, liability, expense, or damage which the PCT Representative may sustain in good faith and without willful misconduct, gross negligence, or fraud in the exercise and performance of any of the powers and duties of the PCT Representative.

(c)    All compensation and other amounts payable to the PCT Representative shall be paid from the assets of the PCT.  If the cash in the PCT shall be insufficient to compensate and reimburse the PCT Representative for any amounts to which he is entitled hereunder, then the PCT Representative is hereby authorized to reduce to cash that portion of the PCT Assets necessary to effect such compensation and reimbursement.

1.14    Exculpation and Indemnification.

(a)    Exculpation.    The PCT Representative, the PCT Representative's employees and the PCT's employees and each of their professionals and representatives shall be and hereby are exculpated by all Entities, including, without limitation, holders of Claims and other parties in interest, from any and all claims, causes of action and other

-7-

assertions of liability arising out of the discharge of the powers and duties conferred upon such PCT Representative, PCT employee and each of their professionals and representatives by the Plan or any Order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, applicable law or otherwise, except only for actions or omissions to act, only to the extent determined by a Final Order to be due to their own respective gross negligence or willful misconduct.

No holder of a Claim or other party in interest will have or be permitted to pursue any claim or cause of action against the PCT Representative, the PCT or the employees, professionals or representatives of either the PCT Representative or the PCT for making payments in accordance with the Plan or for implementing the provisions of this Agreement and the Plan.

(b)    Indemnification. The PCT shall indemnify, defend and hold harmless the PCT Representative, the PCT Representative's employees and the PCT's employees and any of their professionals or representatives from and against any and all claims, causes of action, liabilities, obligations, losses, damages or expenses (including attorneys' fees) (other than those determined by a Final Order to be due to their own respective gross negligence or willful misconduct) to the fullest extent permitted by applicable law. Any action taken or omitted to be taken with the approval of the Bankruptcy Court or the PCT Board will conclusively be deemed not to constitute gross negligence or willful misconduct.

1.15    Termination. The duties, responsibilities and powers of the PCT Representative will terminate on the date the PCT is dissolved under applicable law in accordance with this Agreement or the Plan, or by an Order of the Bankruptcy Court or entry of a final decree closing the Chapter 11 Cases; provided that Sections 1.12 and 1.13 above shall survive such termination, dissolution and entry.

1.16    No Bond. The PCT Representative shall serve without bond.

1.17    Confidentiality. The PCT Representative shall, during the period that he serves as PCT Representative under this Agreement, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the PCT Assets relate or of which he has become aware in his capacity as PCT Representative.

## ARTICLE II

## ESTABLISHMENT OF THE PCT

2.1    Transfer of Assets to the PCT. Pursuant to the Plan, on the Effective Date or as soon as practicable thereafter, the Debtors, the Reorganized Debtors and Core-Mark Newco, as applicable, shall transfer, assign and deliver to the PCT, free and clear of all liens but subject to the liabilities in the next sentence, title to all PCT Assets for the benefit of the Holders of Allowed Class 6 Claims (collectively, the "Beneficiaries"). The PCT will also make payments to Holders of Allowed Administrative Claims, Priority Tax Claims, Other Priority Non-Tax Claims, Property Tax Claims, Other Secured Claims, PACA/PASA Claims, and Convenience Claims solely in satisfaction of liabilities assumed by the PCT and such Claim Holders shall not be treated as beneficiaries of the PCT for any purpose. The PCT will also make payments to Core-

Mark Newco and the RCT as provided in Section 4.4 hereof. Upon the transfer of the PCT Assets to the PCT, the Debtors shall have no interest in or with respect to the PCT Assets. The PCT Assets do not include any RCT Assets. Subject to the preceding exclusion of all RCT Assets, the PCT Assets shall consist of all of the following assets of the Debtors:

> (a)    cash balances sufficient to pay the estimated Administrative Claims that are the responsibility of the PCT;

> (b)    non-reclamation trade accounts receivable including, but not limited to, credits for post-petition deductions, other than the pre-petition and post petition trade accounts receivable and post-petition deductions of Fleming Convenience;

> (c)    royalty payments owing to the Debtors related to the sale of the Fleming wholesale operations;

> (d)    Litigation Claims which consist primarily of (i) Avoidance Actions available pursuant to Chapter 5 of the Bankruptcy Code and (ii) Vendor Deductions including, but not limited to, vendor-related receivables, primarily for uncollected promotional allowances (e.g. rebates, discounts, price reductions), unreimbursed funds related to military receivables and funds wired in advance for inventory for which invoices were not processed and inventory not shipped, but not including vendor deductions incurred in the ordinary course of business of Fleming Convenience, which shall remain with Core-Mark Newco;

> (e)    restricted cash, including the PACA account, the FSA Reserves and the Professional Fee Escrow Account;

> (f)    any and all other Claims and Causes of Action of the Debtors, including but not limited to those outlined in Article VI of the Plan, Exhibit A to the Plan and Article VII of the Disclosure Statement, other than Causes of Action related to the fire loss at the Denver warehouse occurring in December, 2002 which shall be transferred to Core-Mark Newco, and other than claims and Causes of Action waived, exculpated or released in accordance with the provisions of the Plan;

> (g)    any assets of the RCT referred or assigned to the PCT, whether vendor deductions, preference claims or otherwise (on terms that have been mutually agreed upon by the RCT and the PCT);

> (h)    any cash proceeds of settlements for customer accounts receivables, vendor deductions, over-wires and preferences (exclusive of those related to either Fleming Convenience or the Reclamation Assets) in excess of $9 million which were collected by the Debtors from April 1, 2004 to the Effective Date which are being held in an escrow account;

> (i)    $3.0 million in cash for administration of the PCT;

> (j)    any distributions from the RCT in accordance with Section VII.E of the Revised Term Sheet; and

DT: #273722 v2 (5Y7#02L.DOC)

(k)    all of the remaining assets of the Debtors, other than the assets of the Reorganized Debtors and the assets of Fleming Convenience which will have been transferred to Core-Mark Newco and the Reorganized Debtors.

The PCT Assets do not include: (1) any of the Reclamation Assets; (2) any of the assets of Fleming Convenience which are to be transferred to Core-Mark Newco and the Reorganized Debtors; or (3) the stock of Core-Mark Newco and the stock of the Reorganized Debtors.

The PCT Assets shall be held by the PCT in trust for the Beneficiaries, subject to the terms and conditions of the Plan and this Agreement.

The PCT shall administer the directors and officers insurance policies maintained pursuant to section XII.D. of the Plan and all proceeds of such policies shall benefit the D&O Releasees and the prepetition directors and officers of the Debtors who are covered by the directors and officers insurance policies, as well as the PCT to the extent the PCT or other party has a valid Claim against a D&O Releasee or a prepetition director or officer of the Debtors who is covered by the directors and officer insurance policies.

2.2    Title to Assets. For all federal income tax purposes, all parties (including, without limitation, the Debtors, the PCT Representative, and the Beneficiaries) shall treat the transfer of the PCT Assets by the Debtors to the PCT, as set forth in section 2.1, as a transfer to the Beneficiaries followed by a transfer by the Beneficiaries to the PCT. Thus, the Beneficiaries shall be treated as the grantors and owners of a grantor trust for federal income tax purposes.

2.3    Assignment and Assumption of Liabilities. In accordance with the provisions of Section 2.1 hereof, the Debtors hereby transfer and assign, and the PCT hereby assumes and agrees that all PCT Assets will be transferred to the PCT for the benefit of the Beneficiaries but subject to the payment of the Claims set forth in the second sentence of Section 2.1.

2.4    Valuation of Assets. As soon as practicable after the Effective Date, the PCT Representative shall apprise the Beneficiaries of the value of the PCT Assets by filing such valuation with the Bankruptcy Court in form and substance reasonably acceptable to the PCT Board and by sending to the Beneficiaries notice of their applicable shares of such value as soon as practicable. The valuation shall be used consistently by all parties (including the Debtors, the PCT Representative and the Beneficiaries) for all federal income tax purposes.

2.5    Post-Confirmation Trust Advisory Board.

(a)    Board Members. The PCT Advisory Board ("the PCT Board") shall be formed on the Effective Date of the Plan or as soon as practicable thereafter and shall consist of the following initial four members plus the PCT Representative:

(i)    Two members to be designated by Core-Mark Newco (the "Core-Mark Members"), each of whom shall (1) be a member of the Board of Directors of Core-Mark Newco, (2) not be or have been an officer or employee of the Debtors or Core-Mark Newco, and (3) not be a Holder (or an employee, agent or representative of a Holder) of a Claim against the Debtors;

-10-

(ii)    One member to be designated by the members of the Committee other than the trade members and the PBGC (the "Bondholder Member), who shall be a Bondholder (or representative of a Bondholder) that (i) received or shall be entitled to receive equity securities in Core-Mark Newco as a result of distributions or anticipated distributions of such equity securities to Holders of Class 6(A) Claims under the Plan, (ii) when designated, holds in excess of 3.5% or greater of the total outstanding equity securities of Core-Mark Newco, and (iii); thereafter does not hold less than 2% of the total outstanding equity securities of Core-Mark Newco; and

(iii)    One member to be designated by the trade members of the Committee and the OCRC (the "Trade Creditor Member"), who, when designated and thereafter, shall be a Holder (or a representative of a Holder) (i) of a Class 6(A) Claim other than with respect to the Old Notes, (ii) against which there is not pending (or against which the Debtors, the RCT or the PCT do not reasonably contemplate bringing) a Cause of Action other than in connection with an RCT Asset or resolution of a Reclamation Claim.

(b)    <u>Delegation to the PCT Representative</u>. The PCT Board shall establish the scope and parameters of discretion of the PCT Representative. The PCT Representative shall not be required to obtain Bankruptcy Court approval with respect to any proposed action or inaction to which the PCT Board has consented.

(c)    <u>PCT Board Bylaws</u>. The PCT Board shall adopt its own bylaws, provided that such bylaws shall contain the following provisions and other provisions not inconsistent with this Agreement:

(i)    If, for any reason, a Core-Mark Member of the PCT Board resigns from, or ceases to be qualified to be a member of, the PCT Board or dies, Core-Mark Newco shall select a successor to that Core-Mark Member meeting the requirements in (a)(i) above.

(ii)    If for any reason the Bondholder Member resigns from, or ceases to be qualified to be a member of, the PCT Board or dies, a new Bondholder Member meeting the requirements of (a)(ii) above shall be selected by the remaining members of the PCT Board as the successor to the Bondholder Member.

(iii)    If for any reason the Trade Creditor Member resigns from, or ceases to be qualified to be a member of, the PCT Board or dies, a new Trade Creditor Member meeting the requirements of (a)(iii) above shall be selected by the remaining members of the PCT Board as the successor to the Trade Creditor Member.

-11-

(d)    Requisite Vote. The PCT Board shall be deemed to have consented to a proposed action or inaction by the PCT Representative if the majority of the PCT Board members provide their written consent.    With respect to any litigation directly or indirectly (including, but not limited to, by way of employment) involving any member of the PCT Board, such PCT Board member(s) shall recuse himself from any decision affecting such litigation.

(e)    Reporting. The PCT Representative shall submit such reports to the PCT Board as the PCT Board deems reasonable , including, without limitation, reports on the commencement and prosecution of Causes of Action and the proceeds of liquidation of the PCT Assets. The PCT Representative upon reasonable request, shall also provide a copy of any report it submits to the PCT Board to the RCT Board.

(f)    Reimbursement. The PCT shall reimburse each member of the PCT Board for the actual out-of-pocket expenses related to the PCT Board activities incurred by such member, including without limitation, necessary travel, lodging, postage, telephone and facsimile charges upon receipt of periodic billings.

All amounts payable pursuant to the above paragraph (f) shall be paid from the PCT Assets. If the cash in the PCT shall be insufficient to effect such reimbursement, then the PCT Representative is hereby authorized to reduce to cash that portion of the PCT Assets necessary to effect such reimbursement.

(g)    Exculpation. From and after the Effective Date, the PCT Board members and their professionals and representatives (or their designees) (in such capacities) shall be and hereby are exculpated by all Entities, including, without limitation, holders of Claims and other parties in interest, from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon such members by the Plan or any Order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law or otherwise, except only for actions or omissions to act only to the extent determined by a Final Order to be due to their own respective gross negligence or willful misconduct after the Effective Date. No holder of a Claim or other party in interest will have or be permitted to pursue any claim or cause of action against the PCT Board members or their respective professionals or representatives (in such capacities) for making a decision or casting a vote in implementing the provisions of the Plan.

(h)    Indemnification. The PCT shall indemnify, defend and hold harmless the PCT Board members (in such capacities) and their professionals and representatives, including those engaged on behalf of the PCT, from and against any and all claims, causes of action, liabilities, obligations, losses, damages or expenses (including attorneys' fees) (other than those determined by a Final Order to be due their own respective gross negligence or willful misconduct after the Effective Date) to the fullest extent permitted by applicable law. Any action taken or omitted to be taken with the approval of the Bankruptcy Court will conclusively be deemed not to constitute gross negligence or willful misconduct.

## ARTICLE III

## BENEFICIARIES

3.1     Identification of Beneficiaries.  In order to determine the actual names, addresses and tax identification numbers of the Beneficiaries, the PCT shall be entitled to conclusively rely on the names, addresses and tax identification numbers set forth in the Debtors' Schedules, filed proofs of claim or ballots cast with respect to the Plan.  To the extent tax identification numbers of Beneficiaries are unknown, the PCT shall take whatever action is reasonably necessary to contact the Beneficiaries in order to obtain such tax identification numbers.  Each Beneficiary's right to distribution from the PCT, which is dependent upon such Beneficiary's classification under the Plan, shall be that accorded to such Beneficiary under the Plan.  Each distribution by the PCT to the Beneficiaries shall be made in accordance with the terms set forth herein.

## ARTICLE IV

## PURPOSE, AUTHORITY, LIMITATIONS, AND DISTRIBUTIONS

4.1     Purpose of the PCT.  The PCT shall be established for the primary purpose of liquidating its assets, in accordance with Treasury Regulation Section 301.770 1-4(d), with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the PCT.  Accordingly, the PCT shall, in an expeditious but orderly manner, liquidate and convert to cash the PCT Assets, make timely distributions and not unduly prolong the duration of the PCT.  The liquidation of the PCT Assets may be accomplished either through the prosecution, compromise and settlement, abandonment or dismissal of any or all claims, rights or causes of action, or otherwise.

4.2     Resolution of PCT Assets by the PCT Representative.

(a)     The PCT Representative shall be empowered to and may take all appropriate action with respect to the prosecution, settlement or other resolution of the PCT Assets.  The PCT Representative shall deal with all collections and settlements within the normal course of his duties.

(b)     Notwithstanding anything contained in this Agreement or the Plan to the contrary, the PCT Representative may, but is not required to, submit a proposed settlement to the Bankruptcy Court or such other court of competent jurisdiction for its approval.

4.3     Books and Records.  The PCT shall maintain books and records relating to the PCT Assets, the income of the PCT and the payment of expenses of, and liabilities of and claims against or assumed by the PCT in such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof in accordance with Article VII hereof and to comply with applicable provisions of law.  Except as provided in Section 7.1 hereof, nothing in this Agreement requires the PCT to file any accounting or seek approval of any court with respect to the administration of the PCT, or as a condition for making any payment or distribution out of the PCT Assets.  Beneficiaries shall have the right, upon thirty

-13-

(30) days' prior written notice delivered to the PCT Representative, to inspect such books and records, provided that, if so requested, such Beneficiary shall have entered into a confidentiality agreement satisfactory in form and substance to the PCT Representative.

4.4     Application of PCT Assets.  The PCT shall apply all PCT Assets, and any proceeds therefrom, in the order and reflecting the priorities set forth below:

**FIRST**, to pay all the costs and expenses of the PCT including, without limitation, the compensation of the PCT Representative and reimbursement of the PCT Representative for any and all costs, expenses and liabilities incurred by him in connection with the performance of his duties under this PCT Agreement, as well as the costs of the PCT Board members as set forth herein;

**SECOND**, to the Holders of Allowed Administrative Claims, Priority Tax Claims, Class 1(A) Claims, Class 1(B) Claims, Class 3(A) Claims, Class 4 Claims and Class 7 Claims;

**THIRD**, to Core-Mark Newco, in the amount necessary to reimburse Core-Mark Newco for any payments made on the TLV Guaranty or Non-TLV Guaranty;

**FOURTH**, to the RCT, in the event all Allowed Reclamation Claims and interest thereon, as applicable, together with the Prepetition Non-TLV Reclamation Claim Reduction has not been paid in full by the RCT;

**FIFTH**, to Core-Mark Newco in the amount necessary to reimburse Core-Mark Newco for any payments made on the Administrative Claims Guaranty in the event the Allowed Reclamation Claims and the Prepetition Non-TLV Reclamation Claim Reduction have been paid in full by the RCT; and

**SIXTH**, to the extent there are any excess proceeds after the Claims and obligations specified in the SECOND through FIFTH paragraphs above have been satisfied in full, to the Holders of Allowed Class 6(A) Claims and Class 6(B) Claims, pro rata.

Notwithstanding anything to the contrary in this Section 4.4, prior to making any distribution pursuant to the SECOND through FIFTH clauses of the previous paragraph, the PCT Representative may retain such amounts (i) as are necessary to meet contingent liabilities and to maintain the value of the PCT Assets, (ii) to pay estimated expenses of administration (including any taxes imposed on the PCT or in respect of the PCT Assets, and (iii) to satisfy other liabilities incurred or assumed by the PCT (or to which the assets are otherwise subject), all for the term of the PCT and in accordance with this Agreement or the Plan; provided, however, that, from the net amount distributable, the PCT Representative shall reserve, in accordance with the provisions of Section 6.1 hereof, such amounts as would be distributable in respect of Disputed Claims (treating such Claims for this purpose, as if they were Allowed Claims).

Until all Allowed Reclamation Claims as described in the FOURTH clause of the first paragraph of this Section 4.4 are satisfied, the PCT shall distribute to the RCT at the end of each

-14-

January and June any cash held by the PCT in excess of (i) unpaid costs and expenses described in the FIRST clause of the first paragraph and reasonable reserves for future such costs and expenses, (ii) unpaid Allowed Claims described in the SECOND clause of the first paragraph and reasonable reserves for such Claims that are Disputed, and (iii) unpaid reimbursement to Core-Mark Newco described in the THIRD clause of the first paragraph.

The PCT hereby grants to the PCT Representative and the PCT Board a first-priority lien on and security interest in the PCT Assets to secure the payment of all amounts owed to, accrued or reserved on account of the PCT Representative or the PCT Board or to be retained by the PCT Representative hereunder or otherwise due hereunder. The PCT agrees to take such actions and execute such documents as the PCT Representative and the PCT Board deem appropriate to perfect the PCT Representative's and the PCT Board's liens and security interests hereunder. The PCT Representative is authorized to execute and deliver all documents on behalf of the PCT and the PCT Representative to accomplish the purposes of this Agreement and the Plan.

4.5    Distribution and Withholding. Subject to the provisions of Section 4.4 hereof, the PCT shall distribute to the Beneficiaries all net cash income plus all net cash proceeds from the liquidation of the PCT Assets (including as cash for this purpose, all cash equivalents) at such time intervals as decided by the PCT Representative in accordance with the terms of the Plan, provided that the PCT shall make distributions no less frequently than on an annual basis, except that the PCT may retain an amount of net cash proceeds or net cash income reasonably necessary to maintain the value of the PCT Assets or to meet claims and contingent liabilities (including Disputed Claims).

4.6    Compliance with Laws. Any and all distributions of PCT Assets shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

## ARTICLE V

## SUCCESSOR PCT REPRESENTATIVE

5.1    The PCT Representative may be removed by the PCT Board.

5.2    Resignation. The PCT Representative may resign by giving not less than thirty (30) days' prior written notice thereof to the PCT Board.

5.3    Acceptance of Appointment by Successor PCT Representative. Any successor PCT Representative shall be chosen by the PCT Board or, if the PCT Board fails to timely appoint such successor, the Bankruptcy Court. Any successor PCT Representative appointed hereunder shall execute an instrument accepting such appointment and shall file such acceptance with the PCT records. Thereupon, such successor PCT Representative shall, without any further act, become vested with all the estates, properties, rights, powers, trusts and duties of his predecessor in the PCT with like effect as if originally named herein; provided, however, that a removed or resigning PCT Representative shall, nevertheless, when requested in writing by the successor PCT Representative, execute and deliver an instrument or instruments conveying and transferring to such successor PCT Representative under the PCT all the estates, properties, rights, powers, and trusts of such predecessor PCT Representative.

## ARTICLE VI

## DISPUTED CLAIM RESERVE

6.1    Disputed Claim Reserve.  The PCT Representative shall maintain, in accordance with the PCT Representative's powers and responsibilities under the Plan and this Agreement, a reserve for any distributable amounts required to be set aside on account of Disputed Claims. Such amounts (net of any expenses, including any taxes, of the escrow relating thereto) shall be distributed, as provided herein and in the Plan, as such Disputed Claims are resolved by Final Order, and shall be distributable in respect of such Disputed Claims as such amounts would have been distributable had the Disputed Claims been Allowed Claims as of the Effective Date.  The PCT will pay taxes on the taxable net income or gain allocable to holders of Disputed Claims on behalf of such holders, if applicable, and, when the Disputed Claims are ultimately resolved, Holders whose Disputed Claims are determined to be Allowed Claims will receive distributions from the PCT net of taxes which the PCT had previously paid on their behalf.

## ARTICLE VII

## REPORTING

7.1    Tax and Other Reports.  As soon as practicable following the end of each calendar year, and as soon as practicable upon termination of the PCT, the PCT Representative shall submit to the Bankruptcy Court a written report including: (i) financial statements of the PCT at the end of such calendar year or period and the receipts and disbursements of the PCT for such period; (ii) a description of any action taken by the PCT Representative in the performance of his duties which materially and adversely affects the PCT and of which notice has not previously been given to the Beneficiaries, and (iii) to the extent determinable and subject to Section 7.2(a), a separate statement for each Beneficiary setting forth the holder's share of items of income, gain, loss, deduction or credit and instructions to all such holders to report such items on their federal income tax returns.  The PCT Representative shall promptly submit additional reports to the Bankruptcy Court whenever an adverse material event or change occurs which effects either the PCT's or the Beneficiaries' rights, hereunder.

7.2    Federal Income Tax.

(a)    Grantor Trust Status.  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the PCT of a private letter ruling if the PCT so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the PCT, the PCT Representative shall file returns for the PCT as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a).

(b)    Allocations of PCT Taxable Income.  Subject to the provisions of Section 7.2(a) hereof, allocations of PCT taxable income shall be determined by reference to the manner in which an amount of cash equal to such taxable income would be distributed (without regard to any restriction on distributions described herein) if, immediately prior to such deemed distribution, the PCT had distributed all of its other assets (valued for this purpose at their tax book value) to Beneficiaries (treating any holder of a Disputed Claim,

-16-

for this purpose, as a current Beneficiary entitled to distributions), taking into account all prior and concurrent distributions from the PCT (including all distributions held in reserve pending the resolution of Disputed Claims). Similarly, taxable losses of the PCT will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining PCT Assets. The tax book value of the PCT Assets for this purpose shall equal their fair market value on the Effective Date or, if later, the date such assets were acquired by the PCT, adjusted in either case in accordance with tax accounting principles prescribed by the IRC, the regulations and other applicable administrative and judicial authorities and pronouncements.

7.3    Other.  The PCT Representative shall also file (or cause to be filed) any other statements, returns or disclosures relating to the PCT that are required by any governmental unit and serve upon the Beneficiaries such forms as required by applicable law.

## ARTICLE VIII

### TRANSFER OF BENEFICIARY'S INTERESTS

8.1    Transfer of Beneficial Interests.  The interests of the Beneficiaries in the PCT, which are reflected only on the records of the PCT maintained by the PCT Representative, are not negotiable and shall be transferable after written notice to the PCT Representative only by operation of law. The PCT Representative shall not be required to record any transfer in favor of any transferee which, in the sole discretion of the PCT Representative, is or might be construed to be ambiguous or to create uncertainty as to the holder of the interest in the PCT. Until a transfer is in fact recorded on the books and records maintained by the PCT Representative for the purpose of identifying Beneficiaries, the PCT Representative, whether or not in receipt of documents of transfer or other documents relating to the transfer, may nevertheless make distributions and send communications to Beneficiaries, as though it has no notice of any such transfer, and in so doing the PCT Representative shall be fully protected and incur no liability to any purported transferee or any other Entity.

## ARTICLE IX

### TERMINATION OF PCT

9.1    Termination of PCT.  The PCT will terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, on or prior to the date six (6) months prior to such termination, the Bankruptcy Court, upon motion by a party in interest (including the RCT), may extend the term of the PCT for a finite period if it is necessary to the liquidating purpose of the PCT. Multiple extensions can be obtained so long as Bankruptcy Court approval is obtained at least six (6) months prior to the expiration of each extended term; provided, however, that the PCT receives a favorable opinion of counsel or ruling from the IRS stating that any further extension would not adversely affect the status of the trust as a grantor trust for federal income tax purposes. The PCT Representative shall not unduly prolong the duration of the PCT and shall at all times endeavor to resolve, settle or otherwise dispose of any claims that constitute PCT Assets and to effect the distribution of the PCT Assets to the Beneficiaries in

-17-

accordance with the terms hereof and terminate the PCT as soon as practicable. Prior to and upon termination of the PCT, the PCT Assets will be distributed to the Beneficiaries in accordance with their distribution rights under the Plan, subject to the provisions set forth herein. If any distributions of the PCT are not duly claimed, such distributions will be disposed of in accordance with the Plan. Notwithstanding anything contained herein to the contrary, if the value of the PCT Assets is less than $250,000 at any given time, the PCT Representative with the consent of the PCT Board may contribute such assets to the charity of his choosing.

## ARTICLE X

### PRESERVATION AND ASSERTION OF PRIVILEGE

10.1    Preservation and Assertion of Privilege. In connection with the rights, claims, and causes of action that constitute the PCT Assets or related to the defense of the Reclamation Liabilities, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the PCT, shall vest in the PCT and its representatives, and the Debtors and the PCT Representative are authorized to take all necessary actions to effectuate the transfer of such privileges.

10.2    Joint Prosecution and Defense Privilege Between RCT and PCT. The RCT and the PCT share a mutuality of interest in the reconciliation and determination of the assets of each entity and in the satisfaction of the obligations of each entity. In various circumstances, the RCT and the PCT through their Representatives and agents may jointly investigate, develop facts and coordinate legal strategies with respect to the pursuit of their own respective Causes of Action in order to perform and satisfy their respective obligations. These common interests will be advanced by the exchange of information between the RCT and the PCT and by, in certain circumstances, sharing privileged information and materials and attorney-work product (the "Privileged Information"). Both the RCT and the PCT have mutual interests in protecting the confidentiality of the Privileged Information shared between them.

(a)    The RCT and the PCT intend to preserve protections afforded the Privileged Information and to avoid any waiver or suggestion that there has been a waiver of such protection by virtue of any exchange of the Privileged Information between them.

(b)    The RCT and the PCT believe that such exchanges of information are within the scope of applicable attorney-client privilege and work product doctrines including the common-interest attorney-client privilege.

(c)    Accordingly, the RCT and the PCT agree that they and their respective counsel may share Privileged Information on the understanding and agreement that:

(i)    Privileged Information contains confidential and privileged communications,

(ii)    Privileged Information contains work product and investigation materials which are privileged, and

-18-

(iii)    In accordance with applicable legal standards, certain exchanges may be made of Privileged Information concerning issues about which the exchanging parties believe they share a common interest.

(d)    By entering into this arrangement, the PCT, based on a reciprocal commitment by the RCT in the Reclamation Creditors' Trust Agreement, agrees to waive any right to contest the designation of any Privileged Information provided to it and designated as such by the RCT.

(e)    It is the intention and understanding of the RCT and the PCT that the exchange of such Privileged Information will not constitute a waiver of any applicable privilege or protection from disclosure.

(f)    The PCT agrees it shall not provide any Privileged Information furnished from the RCT to any other person without the prior consent of the RCT.

(g)    If any third party or entity requests or demands, by subpoena or otherwise, any Privileged Information provided by the RCT, the PCT will immediately notify the RCT.

(h)    The PCT agrees to undertake all necessary and/or appropriate actions to assert all applicable rights and privileges with respect to the Privileged Information provided by the RCT and, in the event that production is requested by a third party, to give reasonable notice to the RCT to afford it an opportunity to object to such disclosure.

(i)    Nothing herein precludes the PCT from pursuing independently any such matter, including such as reflected in the Privileged Information, or disclosing at its discretion to a third party, information which is developed independently of Privileged Information provided by the RCT.

(j)    Nothing herein is intended to or shall be deemed to create an attorney-client relationship between counsel for the RCT and the PCT or vice versa.

(k)    The RCT or the PCT may withdraw from this arrangement for Privileged Information on ten days' prior written notice but any such withdrawal will be on a prospective basis and any Privileged Information made available by the RCT prior to such withdrawal shall be continued to be governed by the terms herein.

## ARTICLE XI

### AMENDMENT AND WAIVER

11.1    Amendment and Waiver.    Any substantive provision of this Agreement may be amended or waived with the approval of the Bankruptcy Court, provided, however, that no change shall be made to this Agreement that would adversely affect the federal income tax status of the PCT as a "grantor trust" (in accordance with Section 7.2 hereof), if applicable or, unless agreed to in writing by the affected PCT Representative.    Technical amendments to this

-19-

Agreement may be made, as necessary, to clarify this Agreement or enable the PCT Representative to effectuate the terms of this Agreement with the consent of the PCT Board.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1    Intention of Parties to Establish Grantor Trust.  This Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as a grantor trust.

12.2    Cooperation.  The Debtors shall provide the PCT Representative with copies of such of their books and records as the PCT Representative shall reasonably require for the purpose of performing his duties and exercising his powers hereunder.

12.3    Prevailing Party.  If the PCT is the prevailing party in a dispute regarding the provisions of this Agreement or the enforcement thereof, the PCT shall be entitled to collect any and all costs, expenses and fees, including attorneys' fees, from the non-prevailing party incurred in connection with such dispute or enforcement action.

12.4    Laws as to Construction.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of Law.

12.5    Severability.  If any provision of this Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

12.6    Notices.  Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended at such address as set forth below or such other address as filed with the Bankruptcy Court:

If to the Debtors, The Committee, the PCT or the PCT Representative:

Fleming PCT
(insert address)
Attention:      PCT Representative
Fax:
Telephonic Confirmation:

With a copy to:

KIRKLAND & ELLIS LLP
James H. M. Sprayregen, P.C.

200 East Randolph Drive
Chicago, IL 60601-6436
Telephone:  (312) 861-2000
Facsimile:  (312) 861-2200

and

PACHULSKI, STANG, ZIEHL,
YOUNG,
JONES & WEINTRAUB P.C.
Laura Davis Jones
Ira D. Kharasch
919 North Market Street,
Sixteenth Floor, P.O. Box 8705
Wilmington, Delaware 19899-
8705 (Courier No. 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400

Co-Counsel for the Debtors and
Debtors in Possession

MILBANK TWEED HADLEY &
MCCLOY LLP
Paul S. Aronzon
Dennis F. Dunne
One Chase Manhattan Plaza
New York, NY 10005
(212) 530-5000

and

PEPPER HAMILTON LLP
I. William Cohen
Robert S. Hertzberg
100 Renaissance Center
Suite 3600
Detroit, MI 48243-1157
(313) 259-7110

Co-Counsel for the Official
Committee of Unsecured Creditors

12.7    Notices to a Beneficiary.  Any notice or other communication hereunder shall be in writing and shall be deemed to have been sufficiently given, for all purposes, if deposited, postage prepaid, in a post office or letter box addressed to the person for whom such notice is intended to the name and address set forth on the Debtors' Schedules or such Beneficiary's proof of Claim, such other notice filed with the Bankruptcy Court and the PCT or such other means reasonably calculated to apprise the Beneficiary.

12.8    Headings.  The section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof.

-21-

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers as of the date first above written.

Fleming Companies, Inc.

By:_____


Official Committee of Unsecured Creditors

By:_____


Post Confirmation Trust Representative

By:_____

-22-