# Exhibit
# 4

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter I I |
| FLEMING COMPANIES, INC.,<br>et al., | Case No. 03-10945 (MFW)<br>Jointly Administered |
| Debtors. | Hearing **Date: July 9, 2004**<br>**10:30 a.m. Eastern Time** |
| | **Objection Deadline:** |
| | **July 2, 2004 at 4:00 p.m.**<br>**Eastern Time** |

MOTION OF WAYNE BERRY FOR AN ORDER
GRANTING RELIEF FROM THE AUTOMATIC STAY OR,
IN THE ALTERNATIVE, RELIEF FROM THE DISCHARGE AND
PERMANENT INJUNCTION PROVISIONS OF DEBTORS' AND
OFFICIAL COMMITTEE OF UNSECURED CREDITORS' THIRD
AMENDED AND REVISED JOINT PLAN OF
REORGANIZATION OF FLEMING COMPANIES, INC. AND
ITS FILING SUBSIDIARIES UNDER CHAPTER 11 OF
THE UNITED STATES BANKRUPTCY CODE

WAYNE BERRY ("Mr. Berry"), creditor herein, by and through its

counsel, files this Motion For An Order Granting Relief From The

Automatic Stay Or, In The Alternative, Relief From the Discharge and

Permanent Injunction Provisions of Debtors' and Official Committee of

Unsecured Creditors' Third Amended and Revised Joint Plan of

Reorganization of Fleming Companies, Inc. and its Filing Subsidiaries

Under Chapter 11 of the United States Bankruptcy Code (the "Motion"). In

support of the Motion, Mr. Berry states as follows:

## Jurisdiction, Venue and Statutory Predicates

1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334(b) and (e). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (E), (G) and (0).

2.    Venue of this Motion is proper in the District of Delaware pursuant to 28 U.S.C. §§ 1408 and 1409(a).

3.    The statutory basis for the relief sought in the Motion are pursuant to the Bankruptcy Code, 11 U.S.C. §§ 362 and 105(a).

## Factual Background

4.    This jointly administered case was commenced on April 1, 2003 (the "Petition Date"), by the filing of voluntary petitions for relief under chapter 11 of title 11 to the United States Code (the "Bankruptcy Code").

5.    Beginning in 1993, Mr. Berry developed a unique software product that controls the shipping of packaged goods including food stuffs on ocean transport.

6.    Starting in the fall of 1999, Fleming, without any authorization, began to make illegal derivative copies of Mr. Berry's custom software.  Fleming has admitted to making approximately 100 changes from

1999 to 2001.

7.   As a result of Fleming's unauthorized modifications of the Berry Freight Control System, Fleming Companies, Inc., the parent corporation and debtor herein, is the defendant in the United States District Court for the District of Hawaii in Wayne Berry v. Fleming Companies, Inc., et al., Civ. No. CV01-00446 SPK LEK (the "First Infringement Litigation").

8.   On March 6, 2003, the jury in the First Infringement Litigation returned a verdict finding Mr. Berry the owner of the subject works and Fleming a willful infringer regarding its unauthorized changes to Mr. Berry's Freight Control System and awarded Mr. Berry $98,500 in statutory willful infringement damages.

9.   Prior to the entry of a permanent injunction in the First Infringement Litigation, Fleming and its affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on April 1, 2003.

10.   Subsequent to the filing of the voluntary petitions, Fleming again created unauthorized copies of Mr. Berry's software and transferred no less than 16 copies of the original Berry FCS program to C&S Wholesale Grocers, Inc. ("C&S") in regard to the Asset Purchase Agreement. Declaration of Timothy J. Hogan ("Hogan Dec."), Exhibits A and B.

11.   Fleming and C&S are both  presently a defendants in a pending copyright infringement case in the United States District Court for the District of Hawaii in Wayne Berry v. Hawaiian Express Service, Inc. et al.,

CV03-000385 SOM-LEK. Mr. Berry alleges that Fleming and C&S have developed another illegal derivative of his software or continue to use the original and/or possess and use unlicenced copies and, along with other defendants, are willful infringers.

12.    Both Fleming and C&S are concurrently represented by the Debtors' ordinary course attorneys in the Hawaii litigation.

13.    On May 28, 2004, the Debtors' and Official Committee of Unsecured Creditors' filed the Third Amended and Revised Joint Plan of Reorganization of Fleming Companies, Inc. and its Filing Subsidiaries Under Chapter 11 of the United States Bankruptcy Code (the "Third Amended Plan"), which, among other things, contains provisions for a discharge *(see* Section XII.F) and a permanent injunction *(see* Section XII.G). (Docket No. 8268).

## Relief Requested

14.    Mr. Berry has filed a substantial administrative claim for payment due from the unauthorized post-petition sale of his software to C&S. By this Motion, Mr. Berry seeks entry of an order granting relief from the automatic stay to permit him to take any equitable actions or to invoke any judicial processes against or involving any of the Debtors that Mr. Berry deems necessary or appropriate to protect his intellectual property rights in the infringement suits, including, seeking and continuing

enforcement of injunctions, taking discovery from or involving any of the Debtors, prosecuting and liquidating via final judgment, settlement, or otherwise such claims, cross-claims, third-party claims, and setoff claims against any of the parties as Mr. Berry may have. In addition, certain copies of Mr. Berry's original works have been taken, without his permission, and Mr.Berry seeks the relief in this Motion to recover possession of his original works from the reorganized Debtor and any third-parties.

15.    The unprecedented conduct of the Debtors in this case, makes it necessary for Mr. Berry to seek the right to pursue the reorganized Debtor to prevent future acts of infringement.

16.    In the alternative, Mr. Berry seeks relief from the discharge and permanent injunction provisions of the Plan in their entirety.

<strong><u>Basis for Relief Requested</u></strong>

**Cause Exists to Lift the Automatic Stay**

17.    Section 362(d)(1) of the Bankruptcy Code provides that

> A court shall grant relief from the stay provided
> under subsection (a) of this section, such as by
> terminating, annulling, modifying, or
> conditioning such stay - -
>
> (1) for cause, including the lack of adequate
> protection of an interest in property of such party
> in interest.

11 U.S.C. § 362(d)(1). Under § 362(d)(1), Mr. Berry "bears the burden of

establishing a prima facie case of cause, at which point the burden of proof shifts to debtor" to demonstrate the absence of cause. *See In re Aardvark, Inc.,* No. 96-412-SLR, 1997 U.S. Dist. LEXIS 3304, at * 13 (D.Del. Mar. 4, 1997) (quoting *In re Phoenix Pipe & Tube, L.P.,* 154 B.R. 197,198 (Bankr. E.D.Pa. 1993)); 11 U.S.C. § 362(g).

18.    The Bankruptcy Code does not define "cause" and it must therefore be "determined on a case-by-case basis." *Izzarelli v. Rexene Products Co. (In re Rexene Products Co),* 141 B.R. 574, 576 (Bankr.D.Del. 1992).

19.    Under Section 362(d)(1) of the Bankruptcy Code cause to modify the automatic stay "may be established by a single factor such as 'a desire to permit an action to proceed ... in another tribunal,...'" *Rexene Prods. Co.,* 141 B.R. at 576.   Granting relief from the automatic stay to allow an action to proceed in another forum has the beneficial effects of leaving parties in their chosen forum and relieving the bankruptcy court from duties that may be handled elsewhere.

20.    This Court has already entered an order dismissing the Adversary proceeding to permit the Hawaii infringement action to proceed.

21.    The test that most courts, including this Court, apply to determine whether cause exists to modify the automatic stay to allow

pending litigation to proceed or continue in another forum is a three-part

equitable balancing test.   In determining whether to grant relief the Court

must determine whether:

   a)   [a]ny great prejudice to either the bankrupt estate or the debtor
        will result from continuation of the civil suit,

   b)   the hardship to the [non-bankrupt party] by maintenance
        of the stay considerably outweighs the hardship of the
        debtor, and

   c)   the creditor has a probability of prevailing on the merits.

*Id.; see also Levitz Furniture, Inc. v. T. Rowe Price Recovery Fund, L.P. (In*

*re Levitz Furniture, Inc.), 267* B.R. 516, 523 (Bankr. D. Del. *2000); In re*

*Integrated Health Servs., Inc.,* No. 00-389-MFW, 2000 Bankr. LEXIS

1319, at *5 (Bankr. D.Del. Aug. 11, 2000). In this case, all three factors

weigh clearly in Mr. Berry's favor, and relief from the automatic stay

should be granted.

### *No Great Prejudice to the Debtors*

   22.   There will be little or no prejudice, let alone great prejudice, to

the Debtors if the Lawsuits are allowed to continue.  Debtors will be

participating in the Lawsuits because the Estate's ordinary course attorneys

are concurrently  representing the Debtor along with several C&S related

entities in much the same way as they would be if they only represented the

Debtors.  Simply stated, the Estate will be participating in the litigation

regardless of Plan confirmation.

*Hardship to Mr. Berry in Continuing the Stay and/or Imposing the Injunction.*

23.     The second part of the test balances the hardship to Mr Berry in continuing the stay and/or imposing the discharge injunction against the hardship to Debtors in modifying the stay.   The hardship to Mr. Berry in continuing the stay would be substantial. Mr. Berry would be impeded in his efforts to protect his copyrighted works that were illegally transferred to C&S in violation of federal law, during the pendency of the Chapter 11 case.   The Debtor has evidenced a complete disregard for both the civil and criminal implication of its conduct.

24.     There is a serious question of whether these Debtors possess the equitable standing to be entitled to any injunction at all and that the plan is proposed in good faith.

25.     If the stay is continued or the injunction imposed, Mr. Berry faces the prospect of a *de facto* stripping of his copyright by the imposition of the discharge injunction impeding Mr. Berry' s efforts to seek an injunction against the Debtors and the other defendants.

26.     Relief from the automatic stay is also necessary to allow Mr. Berry to conduct appropriate discovery to stop the infringement and to recover his software that has been copied and transferred to third parties.

27.    Relief from the automatic stay is also justified for cause to allow Mr. Berry to protect his rights against the Debtors post-confirmation. In this case, the discharge and injunction provisions specified in Articles XII.F and XII.G of the proposed plan appear to extinguish Mr. Berry's rights. By filing this Motion, Mr. Berry is seeking to preserve such rights after confirmation.

28.    There will be no hardship to Debtors if the stay is modified. In contrast, the hardships on Mr. Berry will be substantial. Accordingly, this factor weighs clearly in favor of modifying the stay.

*Mr. Berry's Probability of Success on the Merits*

29.    This factor focuses on Mr. Berry's probability of success on the merits of the claims against the *Debtor* in the Lawsuits. *See Rexene Prods. Co.*, 141 B.R. at 578. The "required showing is very slight," and can be easily met, for example, by the denial of a summary judgment motion seeking to dispose of the claims. *Id.* This Court has itself stated that the third prong of this balancing test "merely requires showing that [the] claim is not frivolous." *In re Levitz Furniture, Inc., 267* B.R. at 523.

30.    Mr. Berry has already obtained a jury verdict against Fleming pre-petition that evidences strongly his probability of success on the merits. This

Court has one dismissed an action brought by the Debtors against Mr. Berry and denied the Debtors a preliminary injunction.

31.    In this case, Mr. Berry has substantial evidence that the Debtor engaged in the unauthorized transfer of Mr. Berry's original work to C&S post-petition.    The Declaration of Timothy J. Hogan (the "Hogan Dec.") filed concurrently, sets forth the factual predicate for Mr. Berry's claim that Fleming sold his intellectual property to C&S.    The Hogan Dec. containing a copy of a pending Motion for Preliminary Injunction in the Hawaii Infringement Litigation and the evidentiary support is filed herewith and is incorporated by this reference.

32.    To summarize the evidence,  immediately after the filing of the Bankruptcy, Mr. Berry, through his counsel, unsuccessfully attempted to cause Fleming to cease its ongoing  infringement.  In apparent recognition that the law prohibited the sale of Mr. Berry's software to a third party without his consent, on or about May 2003, Fleming's bankruptcy counsel, began to devise a plan with the ostensible purpose to remove all of Mr. Berry's software from the Fleming computers.  Then, under the watchful eye of Fleming's alleged forensic agents Guidance Software, Inc. ("Guidance") non-infringing copies of legal off-the-shelf software were to be copied back.

33.    Guidance's forensic expert Michael Gurzi, in his report to this Court, confirmed that, at Mark Dillon's request, he copied certain "user files" back onto the allegedly "scrubbed" computers.   Mr. Gurzi then allegedly observed Fleming's employee, Mark Dillon, remove certain of the files containing Mr. Berry's reports and programs from the "user files."  Hogan Dec., Exhibit "A.".  After this "modification" of the user files, Mr. Gurzi again captured images of the Fleming computer disks (the "Second Acquisition"). The software contained on the Second Acquisition was what Fleming sold to C&S.

34.    All of this work was apparently set to conclude on or about July 7, 2003, the very same day that C&S and Fleming signed the Asset Purchase Agreement ("APA").  All this effort was to cause this Court to approve the sale to C&S.  The Guidance Report was then filed in the adversary proceeding to serve as the basis for a "first filed" case against Mr. Berry seeking a declaratory judgment that the computers had been wiped clean of any Berry software.

35.    Mr. Berry meets his burden by the fact that no less than sixteen copies of Mr. Berry's software were copied back onto the Fleming system and sold to C&S as evidenced by the Guidance Second Acquisition.  Further, there

11

is strong evidence that the Declaration of Michael Gurzi, filed in support of Fleming's first filed case, was materially false, and filed simply to cause this Court to order the approval of the C&S sale despite the unlawful transfer of Mr.Berry's intellectual property to C&S.

36.    In light of that proof, Mr. Berry has met his burden to show that he can prevail on the merits of his claim.

37.    Article XII.F of the Third Amended Plan entitled Discharge of Claims and Termination of Equity Interests provides, in part, that the rights and treatment of all Claims (as defined in the Third Amended Plan) are in "complete satisfaction, discharge and release of Claims..." and that such Claims are "satisfied, discharged and released in full...."

38.    Article XII.G of the Third Amended Plan entitled Injunction provides, in part, that all Holders (as defined in the Third Amended Plan) of claims (as defined in the Third Amended Plan) are permanently enjoined after the Effective Date (as defined in the Third Amended Plan) from "...continuing in any manner any action or other proceeding of any kind on any such Claim ... against the Debtors, their estates, Core-Mark Newco or the Reorganized Debtors unless a previous order modifying the stay provided under section 362 of the Bankruptcy Code was entered by the Court...."

of the Bankruptcy Code was entered by the Court...."

39.    Accordingly, in the event that the Court does not grant Mr. Berry's request for relief from the automatic stay and to the extent that Articles XII.F and G seek to discharge Mr. Berry's post-petition claims against the Debtors post-confirmation, Mr. Berry requests relief from the discharge and injunction provisions of the Third Amended Plan.

WHEREFORE, Mr. Berry requests that this Court (I) approve this Motion and grant Mr. Berry relief from the automatic stay, or in the alternative, grant relief from the discharge and permanent injunction provisions of the Third Amended Plan, and (ii) grant such other and further relief as this Court deems just and proper.

Dated, July 17, 2004.

Respectfully Submitted

Timothy J. Hogan, Esq. (Hawaii 5312)
Lynch Ichida Thompson Kim & Hirota
1132 Bishop Street, Suite 1405
Honolulu, Hawaii 96813
Tel.   (808) 528-9721
Fax.   (808) 528-4997
Email  tjh@loio.com