# Exhibit 9 B-1

**ASSET PURCHASE AGREEMENT**

**dated as of July 7, 2003**

**among**

**C&S ACQUISITION LLC,**

**as Purchaser,**

**C&S WHOLESALE GROCERS, INC.,**

**as Parent,**

**FLEMING COMPANIES, INC.**

**and**

**THE OTHER ENTITIES IDENTIFIED HEREIN,**

**as Sellers**

## TABLE OF CONTENTS

ARTICLE I DEFINITIONS AND RULES OF CONSTRUCTION ...............................................1
    1.1    Definitions...........................................................................................1
    1.2    Rules of Construction .........................................................................15

ARTICLE II PURCHASE AND SALE; ASSUMPTION OF CERTAIN LIABILITIES ............16
    2.1    Purchase and Sale of Assets................................................................16
    2.2    Excluded Assets .................................................................................17
    2.3    Assumption of Liabilities....................................................................19
    2.4    Excluded Liabilities ...........................................................................20
    2.5    Option Rights; Exclusion of Certain Acquired Assets ...........................21
    2.6    Designation Rights; Assignment and Transfer of Acquired Assets.........23
    2.7    Collection of Receivables and Notes ....................................................25
    2.8    Deemed Consents and Cures ...............................................................27
    2.9    Cure Costs.........................................................................................27
    2.10   Required Consents .............................................................................27
    2.11   Security Interest and Guarantee Allocation .........................................28

ARTICLE III PURCHASE PRICE AND PAYMENT ...................................................................28
    3.1    Consideration ....................................................................................28
    3.2    Computation of the Inventory Amount.................................................29
    3.3    Computation of the Royalty Amount....................................................31
    3.4    Prorations Relating to Certain Prepaid Expenses; Other Prepaid Expenses
           and Deposits......................................................................................34
    3.5    Allocation of Cash Payments...............................................................35
    3.6    Further Assurances.............................................................................35
    3.7    Allocation of Certain Sales Proceeds....................................................36

ARTICLE IV REPRESENTATIONS AND WARRANTIES OF SELLERS .................................37
    4.1    Organization, Standing and Power ......................................................37
    4.2    Authority; Binding Agreement ............................................................37
    4.3    **[Intentionally Deleted.]** ...................................................................38
    4.4    No Breach or Conflict.........................................................................38
    4.5    Title to Assets; Liens .........................................................................38
    4.6    Real Property ....................................................................................39
    4.7    **[Intentionally Deleted.]** ...................................................................40
    4.8    Assets Necessary to the Business ........................................................40
    4.9    Books and Records ............................................................................40
    4.10   Claims, Litigation and Disputes..........................................................40
    4.11   Acquired Contracts............................................................................40
    4.12   Financial Information.........................................................................41
    4.13   Compliance With Laws; Permits and Licenses ....................................41
    4.14   Taxes................................................................................................42
    4.15   Compromise of Notes ........................................................................42
    4.16   Employees and Related Matters..........................................................43

i

|       |                                                                                 |       |
| ----- | ------------------------------------------------------------------------------- | ----- |
| 4.17  | Environmental Matters                                                           | 43    |
| 4.18  | **[Intentionally Deleted.]**                                                    | 44    |
| 4.19  | Intellectual Property                                                           | 44    |
| 4.20  | Debt Liens                                                                       | 45    |
| 4.21  | Brokerage Fees                                                                   | 45    |
| 4.22  | Disclaimer                                                                       | 45    |

**ARTICLE V  REPRESENTATIONS AND WARRANTIES OF PURCHASER AND PARENT** ............................................................45

|       |                                                                                 |       |
| ----- | ------------------------------------------------------------------------------- | ----- |
| 5.1   | Organization                                                                     | 45    |
| 5.2   | Authority; Binding Agreement                                                     | 45    |
| 5.3   | No Breach or Conflict                                                            | 46    |
| 5.4   | Third-Party Consents                                                             | 46    |
| 5.5   | Financing                                                                         | 46    |
| 5.6   | Brokers or Finders                                                               | 47    |
| 5.7   | Purchaser's Investigation                                                        | 47    |

**ARTICLE VI COVENANTS OF SELLERS** ............................................47

|       |                                                                                 |       |
| ----- | ------------------------------------------------------------------------------- | ----- |
| 6.1   | Access and Right of Inspection                                                   | 47    |
| 6.2   | Conduct of the Business Pending the Initial Closing                             | 48    |
| 6.3   | Commercially Reasonable Efforts                                                 | 49    |
| 6.4   | Bankruptcy Actions                                                               | 49    |
| 6.5   | WARN Act                                                                          | 52    |
| 6.6   | Further Assurances                                                               | 52    |
| 6.7   | Inventory                                                                         | 53    |
| 6.8   | Removal of Material Equipment                                                     | 53    |
| 6.9   | Landlord Waivers                                                                  | 53    |
| 6.10  | Confidentiality                                                                   | 54    |
| 6.11  | Estoppel Certificates                                                            | 54    |
| 6.12  | Updated Financial Information                                                     | 54    |
| 6.13  | **[Intentionally Deleted.]**                                                    | 54    |
| 6.14  | Board Appeal                                                                      | 54    |
| 6.15  | Material Acquired Contracts                                                       | 55    |

**ARTICLE VII COVENANTS OF PURCHASER** ............................................55

|       |                                                                                 |       |
| ----- | ------------------------------------------------------------------------------- | ----- |
| 7.1   | Bonds, Letters of Credit, Etc.                                                   | 55    |
| 7.2   | Required Permit and License Applications                                          | 55    |
| 7.3   | Intellectual Property                                                           | 55    |
| 7.4   | Further Assurances                                                               | 55    |
| 7.5   | Access                                                                            | 55    |
| 7.6   | Financing                                                                         | 56    |
| 7.7   | Leases of Operating PSCs                                                          | 56    |

**ARTICLE VIII CONDITIONS PRECEDENT TO OBLIGATIONS OF PURCHASER** ............56

|       |                                                                                 |       |
| ----- | ------------------------------------------------------------------------------- | ----- |
| 8.1   | Warranties True as of Both Present Date and Initial Closing Date; Covenants     | 56    |
| 8.2   | Sale Order                                                                        | 57    |

ii

| | | |
|---|---|---|
| 8.3 | HSR Act and Other Approvals | 57 |
| 8.4 | Litigation | 57 |
| 8.5 | Sellers' Deliveries | 58 |
| 8.6 | Statutes; Orders | 58 |
| 8.7 | Title Commitments | 58 |
| 8.8 | Survey | 58 |
| 8.9 | Debt Liens | 58 |
| 8.10 | Sales Material Adverse Effect | 58 |
| 8.11 | Transfer of All Assets | 58 |

ARTICLE IX CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLERS......59

| | | |
|---|---|---|
| 9.1 | Warranties True as of Both Present Date and Initial Closing Date; Covenants | 59 |
| 9.2 | HSR Act and Other Approvals | 59 |
| 9.3 | Bankruptcy Condition | 59 |
| 9.4 | Payment | 59 |
| 9.5 | Assumption and Assignment | 60 |
| 9.6 | Litigation | 60 |
| 9.7 | Purchaser's Deliveries | 60 |
| 9.8 | Statutes; Orders | 60 |

ARTICLE X CLOSING .........60

| | | |
|---|---|---|
| 10.1 | Initial Closing | 60 |
| 10.2 | Deliveries by Sellers | 60 |
| 10.3 | Deliveries by Purchaser | 61 |

ARTICLE XI TERMINATION; TERMINATION PAYMENT .........61

| | | |
|---|---|---|
| 11.1 | Termination | 61 |
| 11.2 | Termination Payments | 63 |
| 11.3 | Effect of Termination | 64 |
| 11.4 | Deposit | 64 |
| 11.5 | Other Proposals | 64 |

ARTICLE XII ADDITIONAL COVENANTS .........64

| | | |
|---|---|---|
| 12.1 | Employees | 64 |
| 12.2 | Benefit Plans | 66 |
| 12.3 | Intellectual Property | 66 |
| 12.4 | Infringement | 68 |
| 12.5 | Filing of Tax Returns | 68 |
| 12.6 | Access to Books and Records for Taxes | 68 |
| 12.7 | Transaction Taxes | 68 |
| 12.8 | Tax Prorations for Periodic Taxes | 69 |
| 12.9 | Tax Refunds | 70 |
| 12.10 | Tax Disclosure | 70 |
| 12.11 | Ownership of Acquired Assets for Tax Purposes | 70 |
| 12.12 | Hart-Scott-Rodino | 71 |
| 12.13 | Compliance with Antitrust Laws and Government Requests | 71 |

iii

12.14    Certain Ancillary Documents ...................................................................71

ARTICLE XIII INDEMNIFICATION.................................................................................71
13.1    Survival of Representations, Warranties, Covenants and Agreements.................71
13.2    Indemnification.....................................................................................72
13.3    Limitations on Liability .........................................................................73
13.4    Defense of Claims.................................................................................74
13.5    Indemnity Escrow ................................................................................76
13.6    Indemnification Procedures ...................................................................76

ARTICLE XIV MISCELLANEOUS ....................................................................................77
14.1    Fees and Expenses, Transfer Taxes ........................................................77
14.2    Liquidated Damages .............................................................................77
14.3    Amendment..........................................................................................77
14.4    Notices ................................................................................................77
14.5    Waivers ...............................................................................................79
14.6    Counterparts and Execution...................................................................79
14.7    Headings ..............................................................................................79
14.8    APPLICABLE   LAW   AND   JURISDICTION;   DISPUTES   AND
        ARBITRATION ....................................................................................79
14.9    Binding Nature; Assignment...................................................................80
14.10   No Third Party Beneficiaries .................................................................80
14.11   Parent Guarantee..................................................................................80
14.12   Construction.........................................................................................81
14.13   Public Announcements ..........................................................................81
14.14   Entire Understanding ............................................................................81
14.15   Bulk Sales Laws....................................................................................81
14.16   Severability ..........................................................................................81
14.17   Election of Remedies ............................................................................82

## EXHIBITS

Exhibit A            Bidding Procedures Order

## SCHEDULES

| | |
|---|---|
| 1.1(a) | Operating PSCs |
| 1.1(b) | Non-Operating PSCs |
| 1.1(c) | Discontinued PSCs |
| 2.1(g) | Owned Real Property |
| 2.1(n) | Identified Customer Notes and Agreements |
| 2.2 | Excluded Assets |
| 2.2(l)(i) | Convenience and Retail Business Debtors |
| 2.2(l)(ii) | Certain Convenience and Retail Business Distribution Centers |
| 2.2(m) | Excluded Records |
| 2.2(s) | Other Excluded Assets |
| 2.3(e) | Certain Other Liabilities |
| 3.2 | Inventory Discounts |
| 3.2(d) | Certain Inventory Information and Procedures |
| 3.5 | Allocation of Purchase Price |
| 4.4 | Material Consents |
| 4.5(b)(i) | Leases |
| 4.5(b)(ii) | Liens |
| 4.6 | Capital Expenditures Under Leases |
| 4.8 | Necessary Assets |
| 4.10 | Claims, Litigation and Disputes |
| 4.11(a) | Termination of Acquired Contacts |
| 4.11(b) | Acquired Contracts |
| 4.11(d) | Defaults |
| 4.13 | Compliance with Laws |
| 4.13(b) | Required Permits |
| 4.14 | Taxes |
| 4.16(a) | Seller Benefit Plans |
| 4.16(b) | Employees |
| 4.16(c) | Employee Issues |
| 4.16(e) | Acceleration of Benefits |
| 4.17 | Environmental Matters |
| 4.19(a) | Company Owned Intellectual Property |
| 4.19(b) | IP Agreements |
| 4.20 | Debt Liens |
| 4.22 | Sellers' Knowledge |
| 5.3 | No Breach or Conflict |
| 6.2 | Conduct of the Business |
| 6.2(p) | Certain Raises and Bonuses |
| 7.1 | Bonds, Letters of Credit, Etc. |

8.11            Transfer of Assets

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT is dated July 7, 2003, among C&S Acquisition LLC, a Delaware limited liability company ("Purchaser"), Fleming Companies, Inc., an Oklahoma corporation ("Fleming"), Fleming Transportation Service, Inc., an Oklahoma corporation, Piggly Wiggly Company, an Oklahoma corporation, RFS Marketing Services, Inc., an Oklahoma corporation, Fleming International Ltd., an Oklahoma corporation, Fleming Foods of Texas L.P., an Oklahoma limited partnership, Fleming Foods Management Co., L.L.C., an Oklahoma limited liability company, and Fleming Foreign Sales Corporation, a Barbados corporation (each, a "Seller" and collectively, "Sellers"), each a debtor and debtor in possession under Chapter 11 Case No. 03-10945 (MFW) (jointly administered) pending in the United States Bankruptcy Court for the District of Delaware and, with respect to Article V and Sections 14.8 and 14.11 only, C&S Wholesale Grocers, Inc., a Vermont corporation ("Parent").

WHEREAS, Sellers are engaged in the wholesale grocery distribution business;

WHEREAS, Sellers and certain of their Subsidiaries, as debtors in possession pursuant to voluntary petitions, filed on April 1, 2003 for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), pending in the United States Bankruptcy Court for the District of Delaware as Case Nos. 03-10944 through 03-10966 and 03-10970 through 03-10973;

WHEREAS, Sellers have been engaged in an active effort to market the Business and, pursuant to this effort, Fleming has entered into a Supply Agreement with Parent as well as a Letter of Intent (the "Letter of Intent") with Parent, each dated June 27, 2003; and

WHEREAS, Sellers and Purchaser have negotiated in good faith and at arm's-length for the purchase and sale of certain assets of Sellers, including certain assets of Seller's wholesale grocery distribution business, the assumption of certain liabilities associated therewith, and for certain bid protections in connection therewith;

NOW THEREFORE, in consideration of the mutual covenants, agreements and warranties herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS AND RULES OF CONSTRUCTION

1.1     Definitions.  Unless otherwise defined herein, capitalized terms used herein shall have the meanings set forth below:

"AAA" shall have the meaning set forth in Section 13.6 hereof.

"Acquired Assets" shall have the meaning set forth in Section 2.1 hereof.

"Acquired Contracts" means the Leases, Subleases and Owned Real Property Leases and other agreements with Third Parties, including without limitation agreements with Third Parties related to the Business or the other Acquired Assets, including the agreements that are listed on

Schedule 4.11(b), but does not include (i) those Leases and agreements excluded from the Acquired Assets pursuant to Section 2.5, (ii) collective bargaining agreements or other agreements with a labor union or labor organization, (iii) vendor supply agreements (the "Excluded Vendor Supply Agreements") and (iv) any agreements that are Excluded Assets.

"Acquired Leased Equipment" shall have the meaning set forth in Section 2.1(c) hereof.

"Acquisition Proposal" means a proposal or proposals relating to any acquisition, purchase, merger, recapitalization or other similar transaction or series of transactions with or involving any securities or other interests in substantially all of the Acquired Assets, other than sales of Inventory in the ordinary course of business.

"Active Customers" shall have the meaning set forth in Section 3.3(e) hereof.

"Affiliate" shall have the meaning set forth in Bankruptcy Code section 101(2).

"Agents" shall have the meaning ascribed to such term in the DIP Credit Agreement.

"Agreement" means this Asset Purchase Agreement, including all Exhibits and Schedules hereto, as the same may be amended from time to time in accordance with its terms.

"Allocation" shall have the meaning set forth in Section 3.5 hereof.

"Alternative Transaction" means any disposition (other than pursuant to this Agreement and other than sales of Inventory in the ordinary course of business prior to the termination of this Agreement), whether by way of (i) acquisition, purchase, merger, recapitalization or other similar transaction with or involving any securities or other interests in the Acquired Assets, including pursuant to an Acquisition Proposal, or (ii) sale or liquidation of all or any portion of the Acquired Assets, and in each case, whether in a single or series of transactions.

"Ancillary Documents" shall have the meaning set forth in Section 14.8 hereof.

"Applicable Closing" means, with respect to an Acquired Asset, the Initial Closing or the Subsequent Closing pursuant to which such Acquired Asset is assigned, transferred and delivered to Purchaser, any Purchaser Assignee or any Third Party Purchaser pursuant to this Agreement.

"Applicable Closing Date" means, with respect to an Acquired Asset, the date, whether the Initial Closing Date or a Subsequent Closing Date, on which such Acquired Asset is assigned, transferred and delivered to Purchaser, any Purchaser Assignee or any Third Party Purchaser pursuant to the terms of this Agreement.

"Assignment and Assumption" shall have the meaning set forth in Section 10.2 hereof.

"Assignment Deadline" shall have the meaning set forth in Section 2.6 hereof.

"Assumed Liabilities" shall have the meaning set forth in Section 2.3 hereof.

I:\Fleming\CPAK\C&S r-apa.v.12.doc

"Auction" shall have the meaning set forth in Section 6.4(a) hereof.

"Auction Procedures " shall have the meaning set forth in Section 6.4(a) hereof.

"Average Actual Sales" shall have the meaning set forth in Section 3.3 (e) hereof.

"Avoidance Action" shall have the meaning set forth in Section 2.2 hereof.

"Bankruptcy Code" has the meaning set forth in the recitals hereto.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware, or such other court of the United States having jurisdiction over Sellers and their assets from time to time.

"Bid Deadline" shall have the meaning set forth in the definition of "Bidding Procedures."

"Bidding Procedures" means the procedures contained in Sections 6.4(a) and (b) and as otherwise set forth in the Bidding Procedures Order, pursuant to which Acquisition Proposals may be solicited, made and accepted, including the establishment of a date by which Third Parties shall be required to submit Acquisition Proposals (the "Bid Deadline").

"Bidding Procedures Order" means the order of the Bankruptcy Court, substantially in the form of Exhibit A attached hereto, containing the terms specified in Section 6.4 hereof.

"Break-Up Fee" shall mean an amount equal to $12,000,000 (i.e., three percent (3%) of the Estimated Purchase Price).

"Business" means the wholesale grocery distribution business of Sellers, which supplies products to grocery stores, discount stores, supercenters and specialty retailers. "Business" does not refer to or include the convenience store distribution business of the Debtors (the "Convenience Business") or the retail stores operated by the Debtors (the "Retail Business").

"Business Day" means a day other than a Saturday, Sunday or legal holiday for commercial banking institutions in the State of Texas or in New York, New York.

"Business Employees" shall have the meaning set forth in Section 12.1 hereof.

"Chapter 11 Case" means the pending cases commenced by Sellers and certain of their Subsidiaries, each of which is an Affiliate of Sellers (whom, together with Sellers, are referred to herein as the "Debtors"), on April 1, 2003 (the "Petition Date") under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, which are being jointly administered under case no. 03-10945 (MFW).

"Claim" means any suit, arbitration, opposition, interference, cancellation or other adversarial proceeding.

"Claim Notice" shall have the meaning set forth in Section 13.6 hereof.

3

"Claim Dispute Notice" shall have the meaning set forth in Section 13.6 hereof.

"COBRA" means the Consolidated Omnibus Budget Reconciliation Act of 1986.

"Code" means the United States Internal Revenue Code of 1986, as amended.

"Collecting Party" shall have the meaning set forth in Section 2.11 hereof.

"Collection Amount" shall have the meaning set forth in Section 2.7 hereof.

"Company Owned Intellectual Property" means all Intellectual Property owned by Sellers or any Affiliate thereof and used or held for use in connection with the Acquired Assets.

"Company Used Intellectual Property" means all Intellectual Property owned or controlled by a Third Party and used in connection with the Acquired Assets.

"Confidential Information" means any information that is not generally known to the public or in the wholesale grocery industry and that is or has been used, developed or obtained by Sellers and their Affiliates to the extent it relates to one or more of the PSCs or the Acquired Assets including, without limitation, (i) products or services, (ii) fees, costs and pricing structures, (iii) designs and specifications, (iv) analyses, (v) drawings, photographs and reports, (vi) computer software, including, without limitation, electronic mail, operating systems, applications and program listings, (vii) flow charts, transaction summaries and models, manuals and documentation, (viii) databases, (ix) financial reports, investment summaries, and accounting and business methods, (x) ideas, formulas, compositions, inventions, devices, new developments, methods and processes, whether patentable or unpatentable and whether or not reduced to practice, (xi) customers and clients and customer, contact or client lists and other marketing data or plans, (xii) know-how, (xiii) manufacturing and production processes and techniques, (xiv) research and development information, (xv) files and records, and (xvi) all similar and related information in whatever form, except that Confidential Information shall not include any information that has been published in a form generally available to the public, other than as a result of a disclosure by the parties hereto or their respective representatives. In addition, Confidential Information shall include the identity of any potential Third Party Purchaser, whether provided before or after the date of this Agreement.

"Confidentiality Agreement" means the Confidentiality Agreement, dated June 23, 2003, between Parent and Fleming, as amended from time to time.

"Contract" means any agreement, contract, commitment or other binding arrangement or understanding related to the Business, whether written or oral, to which Sellers are a party and which can be assumed and assigned pursuant to section 365 of the Bankruptcy Code.

"Convenience Business" shall have the meaning set forth in the definition of "Business."

"Copyrights" means all copyrights, including without limitation copyrights in Software and in the content contained on any Web site, and registrations and applications for any of the foregoing, and rights to sue for past Infringement thereof.

4

"Corporate Offices" shall have the meaning set forth in Section 2.1 hereof.

"Cure Cap" shall mean $22,000,000.

"Cure Costs" shall have the meaning set forth in Section 2.9 hereof.

"Cure Escrow" shall have the meaning set forth in Section 2.9 hereof.

"Cure Escrow Agent" shall have the meaning set forth in the Cure Escrow Agreement.

"Cure Escrow Agreement" shall mean the escrow agreement relating to the escrow of amounts for the payment of Cure Costs, the form of which shall be mutually agreed to by the parties on or before July 14, 2003.

"Cure Escrow Amount" shall mean the amount that is the sum of (x) the Cure Costs set forth on notices provided to the Third Parties party to Acquired Contracts that have not been objected to in accordance with the Bidding Procedures Order and (y) the lesser of (i) the Cure Costs that an objecting Third Party party to an Acquired Contract claims to be owed and (ii) a cure amount agreed upon by the Sellers and such objecting Third Party.

"Debt Liens" shall have the meaning set forth in Section 4.20.

"Deposit" shall have the meaning set forth in Section 3.1 hereof.

"Deposit Escrow Agent" shall have the meaning set forth in the Deposit Escrow Agreement.

"Deposit Escrow Agreement" means the escrow agreement relating to the escrow of the Deposit to be entered into by the parties on or before July 14, 2003 and in a form mutually and reasonably acceptable to the parties thereto and Deposit Escrow Agent.

"Designation Rights" shall have the meaning set forth in Section 2.6 hereof.

"Determination Date" shall mean the date or dates on which Purchaser determines and offers to hire some or all of the Business Employees, which in no event shall be a date or dates beyond the Option Period.

"DIP Credit Agreement" means that certain Credit Agreement, dated as of May 6, 2003, by and among Fleming and certain of its subsidiaries party thereto, as debtors-in-possession in the Chapter 11 Case, the lenders from time to time party thereto, Deutsche Bank Trust Company Americas, as Administrative Agent, JPMorgan Chase Bank, as Collateral Agent and Syndication Agent, and Deutsche Bank Securities Inc. and JPMorgan Chase Bank, as Joint Lead Arrangers and Joint Book Runners.

"Dispute Notice" shall have the meaning set forth in Section 3.3 hereof.

"DOJ" shall have the meaning set forth in Section 12.12 hereof.

"Dollars" or "$" means dollars of the United States of America.

5

"Domain Names" shall have the meaning set forth in 15 U.S.C. § 1127.

"Draft Transaction Tax Returns" shall have the meaning set forth in Section 12.7 hereof.

"Employee" means each active employee, full-time or part-time, of Sellers who, as of the date of this Agreement, is determined by Sellers to have performed (during the 12-month period immediately preceding the date of this Agreement (or the period of the employee's employment with Sellers, if less)) substantially all of such employee's services in connection with or for the benefit of the Business.

"Employee Benefit Plan" means any of the following under which an employer or any ERISA Affiliate of such employer has any liability to provide benefits or compensation to or on behalf of any employee, or the spouse or dependents of any employee:

        (a)     any employee benefit plan within the meaning of Section 3(3) of ERISA, and

        (b)     any other profit-sharing, stock bonus, deferred compensation, incentive compensation, bonus, commission, stock option, stock purchase, severance pay, change in control, termination, employment, unemployment benefit, vacation pay, savings, dependent care, scholarship, accident, disability, weekly income, salary continuation or other compensation or fringe benefit plan, program, agreement or arrangement.

"Employee Obligations" shall have the meaning set forth in Section 12.1(a) hereof.

"Encumbrance" shall mean any mortgage, pledge, lien (statutory or otherwise), security interest, easement, right of way, covenant, claim, restriction, right, option, conditional sale or other title retention agreement, charge or encumbrance of any kind or nature, including actions in rem and lis pendens in respect of any Acquired Assets.

"Environmental Laws" means the Comprehensive Environmental Response, Compensation and Liability Act, the Emergency Planning and Community Right-to-Know Act, the Water Pollution Control Act, the Air Pollution Control Act, the Toxic Substances Control Act, the Resource Conservation and Recovery Act as well as all other federal, state or local laws, regulations or requirements, or such portions thereof, that are similar to the above-referenced laws or that otherwise govern chemicals, products, materials or wastes that pose risks to the environment.

"Equipment" shall have the meaning set forth in Section 2.1 hereof.

"Equipment Count" shall have the meaning set forth in Section 6.8 hereof.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended, and all regulations issued thereunder.

6

"ERISA Affiliate" means any entity that with the subject Person is:

(a)    a member of a controlled group of corporations within the meaning of Section 414(b) of the Code;

(b)    a member of a group of trades or businesses under common control within the meaning of Section 414(c) of the Code;

(c)    a member of an affiliated service group within the meaning of Section 414(m) of the Code; or

(d)    a member of a group of organizations required to be aggregated under Section 414(o) of the Code.

"Estimated Purchase Price" shall mean an amount equal to $400,000,000.

"Excluded Assets" shall have the meaning set forth in Section 2.2 hereof.

"Excluded Equipment" shall have the meaning set forth in Section 2.2 hereof.

"Excluded Inventory" shall have the meaning set forth in Section 2.2 hereof.

"Excluded Liabilities" shall have the meaning set forth in Section 2.4 hereof.

"Excluded Records" means all Files and Records set forth on and described in reasonable detail on Schedule 2.2(m) hereto.

"Excluded Vendor Supply Agreements" shall have the meaning set forth in the definition of "Acquired Contracts."

"Exhibits" means the exhibits hereto.

"Expense Reimbursement Payment" means the reasonable, documented out-of pocket expenses actually incurred by Parent, Purchaser or their Affiliates in connection with this Agreement and the transactions contemplated hereby in an amount not to exceed $4,000,000 (i.e., one percent (1%) of the Estimated Purchase Price).

"Expiration Date" shall have the meaning set forth in Section 13.1 hereof.

"Files and Records" shall have the meaning set forth in Section 2.1 hereof.

"Final Deposit" shall have the meaning set forth in Section 3.1 hereof.

"Final Equipment Count" shall have the meaning set forth in Section 6.8 hereof.

"Final Order" means an order of the Bankruptcy Court (i) as to which the time to appeal (other than the time to appeal pursuant to Rule 60 of the Federal Rules of Civil Procedure) shall have expired and as to which no appeal shall then be pending, or (ii) if an appeal shall have been filed or sought (except an appeal under Rule 60 of the Federal Rules of Civil Procedure), either

7

(A) no stay of the order shall be in effect or (B) if such a stay shall have been granted by the Bankruptcy Court, then (1) the stay shall have been dissolved or (2) an order of the district court having jurisdiction to hear such appeal shall have affirmed the order and the time allowed to appeal from such affirmance or to seek review or rehearing thereof shall have expired and the taking or granting of any further hearing, appeal or petition for certiorari shall not be permissible, and if a timely appeal of such district court order or timely motion to seek review or rehearing of such order shall have been made, any court of appeals having jurisdiction to hear such appeal or motion (or any subsequent appeal or motion to seek review or rehearing) shall have affirmed the district court's (or lower appellate court's) order upholding the order of the Bankruptcy Court and the time allowed to appeal from such affirmance or to seek review or rehearing thereof shall have expired and the taking or granting of any further hearing, appeal or petition for certiorari shall not be permissible.

"Fixed Component of Purchase Price" shall have the meaning set forth in Section 3.1(c).

"Fleming" shall have the meaning set forth in the preamble hereto.

"FTC" shall have the meaning set forth in Section 12.12 hereof.

"GAAP" shall mean United States generally accepted accounting principles as in effect from time to time, consistently applied.

"Governmental Entity" shall mean any "governmental unit", as defined in section 101(27) of the Bankruptcy Code.

"HSR Act" means the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, and the rules and regulations thereunder.

"Indemnifiable Losses" shall have the meaning set forth in Section 13.2 hereof.

"Indemnification Cap" shall have the meaning set forth in 13.3 hereof.

"Indemnification Threshold" shall have the meaning set forth in Section 13.3 hereof.

"Indemnifying Party" shall have the meaning set forth in 13.3 hereof.

"Indemnitee" shall have the meaning set forth in Section 13.3 hereof.

"Indemnity Escrow Agreement" means the escrow agreement relating to the escrow of amounts to satisfy potential indemnification obligations of Sellers under Article XIII, the form of which shall be mutually agreed to by the parties on or before July 14, 2003.

"Indemnity Escrow Amount" means the amount deposited into escrow to satisfy potential indemnification obligations of Sellers under Article XIII (the "Indemnity Escrow"), which shall in no event exceed $15,000,000 and the release of which shall be governed by the Indemnity Escrow Agreement.

8

"Infringement" means an assertion that a given item infringes, misappropriates, dilutes (with respect to Trademarks), unfairly competes with, constitutes unauthorized use of or otherwise violates the Intellectual Property rights of any Person.

"Initial Closing" means the consummation of the transactions contemplated herein in accordance with Article X hereof.

"Initial Closing Date" shall have the meaning set forth in Section 10.1 hereof.

"Initial Deposit" shall have the meaning set forth in Section 3.1 hereof.

"Initial Estimate Payment" shall have the meaning set forth in Section 3.3 hereof.

"Initial Equipment Count" shall have the meaning set forth in Section 6.8 hereof.

"Intellectual Property" means all Copyrights, Patents, Trademarks, Domain Names, Trade Secrets and other similar intangible assets.

"Interests" shall have the meaning set forth in the definition of "Sale Order".

"Inventory" shall have the meaning set forth in Section 2.1 hereof.

"Inventory Count" shall have the meaning set forth in Section 3.2 hereof.

"Inventory Date" shall have the meaning set forth in Section 3.2 hereof.

"Inventory In Transit" shall have the meaning set forth in Section 3.2(e) hereof.

"IP Agreements" means all agreements (including without limitation outstanding decrees, orders, judgments, settlement agreements, or stipulations) to which a Seller or the Sellers is a party which contain provisions (a) granting to any Person rights in Company Owned Intellectual Property or Company Used Intellectual Property; (b) granting to Seller or Sellers or any Subsidiary thereof any rights in Company Used Intellectual Property; (c) consenting to another Person's use of Company Owned Intellectual Property or Company Used Intellectual Property, or covenanting not to sue any Person for Infringement of any such Intellectual Property; or (d) restricting Sellers' or any of their Affiliates' use of Company Owned Intellectual Property or any Company Used Intellectual Property.

"Law" means any federal, state, provincial, local or foreign law, statute, rule, regulation or ordinance of any Governmental Entity.

"Leased Real Property" shall mean the real property in which Sellers have a leasehold interest under the Leases.

"Leasehold Improvements" shall have the meaning set forth in Section 2.1 hereof.

"Leases" means all leases or subleases pursuant to which Sellers hold a valid leasehold or subleasehold estate in real property, other than any such leases or subleases that are Excluded Assets.

9

"Letter of Intent" shall have the meaning set forth in the preamble.

"Liability" means any debt, liability, claim, Lien, expense, commitment, responsibility or obligation, whether accrued or not, known or unknown, disclosed or undisclosed, fixed or contingent, asserted or unasserted, liquidated or unliquidated.

"Lien" means any lien (statutory or otherwise), assessment, charge, mortgage, option, security interest, restriction, pledge, easement, right of way, covenant, claim, restriction, right, conditional sale or other title retention agreement, or other encumbrance of any kind or nature.

"Material Acquired Contract" shall have the meaning set forth in Section 4.11 hereof.

"Material Adverse Effect" means a material adverse effect on the Acquired Assets, taken as a whole, or any given PSC and its related Acquired Assets, taken as a whole, other than such effect resulting from (i) general changes in the U.S. economy, (ii) general changes in the industries or markets in which Sellers operate the Business or (iii) war, major armed conflicts, national emergencies and acts of terrorism; provided, however, that for purposes of the definition of "Permitted Encumbrances", "Material Adverse Effect" shall be measured with respect to each parcel of Owned Real Property.

"Material Consents" shall have the meaning set forth in Section 4.4 hereof.

"Material Equipment" shall have the meaning set forth in Section 6.8 hereof.

"Materials of Environmental Concern" shall mean all substances defined as Hazardous Substances, Oils, Pollutants or Contaminants in the National Oil and Hazardous Substances Pollution Contingency Plan, 40 C.F.R. § 300.5, or defined as such by, or regulated as such under, any Environmental Law.

"New Employees" shall have the meaning set forth in Section 12.1(a) hereof.

"New Hire Date" shall mean the date on which a New Employee commences employment with Purchaser or an Affiliate thereof.

"Non-Concurrent Portion" shall have the meaning set forth in Section 2.6 hereof.

"Non-Operating PSCs" means the distribution centers related to the Business and which are set forth on Schedule 1.1(b).

"Operating PSCs" means the distribution centers related to the Business and which are set forth on Schedule 1.1(a).

"Option Notice" shall have the meaning set forth in Section 2.5 hereof.

"Option Period" shall have the meaning set forth in Section 2.5 hereof.

"Option Rights" shall have the meaning set forth in Section 2.5 hereof.

10

"Order" means any writ, judgment, decree, injunction or similar order, writ, ruling, directive or other requirement of any Governmental Entity (in each such case whether preliminary or final).

"Owned Real Property" shall have the meaning set forth in Section 2.1 hereof.

"Owned Real Property Leases" means all leases pursuant to which Sellers have granted a leasehold interest in any Owned Real Property, other than Owned Real Property Leases that become Excluded Assets pursuant to this Agreement.

"Patents" means all patents and industrial designs, including without limitation any continuations, divisionals, continuations-in-part, renewals, reissues and applications for any of the foregoing, and rights to sue for past Infringement thereof.

"Permits" shall have the meaning set forth in Section 2.1 hereof.

"Permitted Encumbrances" means (a) any Lien for Taxes not yet due or payable or being contested in good faith by appropriate proceedings, (b) statutory or mechanics', landlords', warehousemen's, suppliers', materialmen's, carriers', workmen's, repairmen's liens and other like Liens imposed by law arising or incurred in the ordinary course of business consistent with past practice with respect to amounts not yet due (provided that such amounts arising or accruing prior to the Initial Closing remain Excluded Liabilities) and which do not and would not, individually or in the aggregate, have a Material Adverse Effect, (c) with respect to the Owned Real Property, encumbrances consisting of zoning restrictions, easements and other restrictions on the use of such Owned Real Property, provided that such items do not and would not reasonably be expected to have, individually or in the aggregate, have a Material Adverse Effect, (d) any laws, rules, regulations, statutes or ordinances affecting the PSCs and which do not, individually or in the aggregate, have a Material Adverse Effect, (e) with respect to the Owned Real Property, any utility company rights, easements and franchises and similar rights or easements granted to third parties for electricity, water, steam, gas, telephone or other service or the right to use and maintain poles, lines, wires, cables, pipes, boxes and other fixtures and facilities in, over, under and upon such Owned Real Property, provided that the same do not and would not reasonably be expected to have, individually or in the aggregate, have a Material Adverse Effect, (f) with respect to the Owned Real Property, title defects or matters that would be customarily disclosed by an accurate survey or inspection of the Owned Real Party Leases that do not, individually or in the aggregate, materially impair the value or use of the Owned Real Property, (h) as to any Lease, the Subleases and (i) as to the Owned Real Property, the Owned Real Property Leases.

"Person" means any corporation, partnership, joint venture, limited liability company, organization, entity, authority or natural person.

"Petition Date" shall have the meaning set forth in the definition of "Chapter 11 Case."

"Pre-Petition Credit Agreement" means that certain Credit Agreement dated as of June 18, 2002, among Fleming, the lenders party thereto, Deutsche Bank Trust Company Americas, as Administrative Agent, JPMorgan Chase Bank and Citicorp North America, Inc., as Syndication Agents, Lehman Commercial Paper Inc. and Wachovia Bank, National Association,

as Documentation Agents, Deutsche Bank Securities Inc. and J.P. Morgan Securities Inc., as Joint Book Managers and Deutsche Bank Securities Inc., J.P. Morgan Securities Inc. and Salomon Smith Barney Inc., as Joint Lead Arrangers.

"PSCs" means the Operating PSCs and the Non-Operating PSCs.

"Purchaser" shall have the meaning set forth in the preamble hereto, provided, however, that for purposes of this Agreement, when "Purchaser" is used in connection with an Acquired Asset that is assigned, transferred or delivered to a Purchaser Assignee (as defined in Section 14.9) or Third Party Purchaser pursuant to this Agreement or an Assumed Liability that is assumed by a Purchaser Assignee or Third Party Purchaser pursuant to this Agreement, it shall be deemed to mean such Purchaser Assignee or Third Party Purchaser.

"Purchaser Ancillary Documents" shall have the meaning set forth in Section 5.2 hereof.

"Purchase Price" shall have the meaning set forth in Section 3.1 hereof.

"Purchaser's Employee Obligations" shall have the meaning set forth in Section 12.1(a) hereof.

"Qualified Bid" shall have the meaning set forth in Section 6.4(a) hereof.

"Real Property " shall mean the Owned Real Property and the Leased Real Property.

"Release" shall mean any release, spill, emission, discharge, leaking, pumping, injection, deposit, disposal, dispersal, leaching or migration into the environment (including, ambient air, surface water, groundwater and surface or subsurface strata).

"Required Permits" shall have the meaning set forth in Section 4.13 hereof.

"Retail Business" shall have the meaning set forth in the definition of "Business."

"Royalty Amount" shall have the meaning set forth in Section 3.3 hereof.

"Royalty Period" shall mean the five (5) year period following the Initial Closing Date; provided, however, for purposes of Section 3.3(e)(i)(x), Royalty Period shall mean the four (4) year period following the Initial Closing Date.

"Royalty Pre-Payment" shall have the meaning set forth in Section 3.3 hereof.

"Sale Hearing" means the hearing of the Bankruptcy Court to approve the transactions contemplated by this Agreement or by an Acquisition Proposal that is selected by the Sellers at the conclusion of the Auction.

"Sale Order" means the order of the Bankruptcy Court, in form and substance reasonably satisfactory to Purchaser and Sellers, to be entered by the Bankruptcy Court pursuant to sections 105, 363 and 365, and to the extent possible section 1146(c), of the Bankruptcy Code providing for, among other things, (i) the approval of this Agreement and the transactions contemplated

hereby, (ii) the approval of the sale of the Acquired Assets to Purchaser free and clear, pursuant to section 363(f) of the Bankruptcy Code, of all claims and Encumbrances (other than Permitted Encumbrances) or other interests (collectively, "Interests"), (iii) findings that Purchaser is a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code, (iv) that Purchaser shall not be liable for any Sellers' Employee Obligations and Sellers' Employment Obligations and (v) the cure amounts with respect to the Acquired Contracts.

"Sales" means revenues from the sale of merchandise to Third Party customers, excluding, to the extent included in such revenues, revenues from (i) drop ship sales, (ii) cross dock transfers, (iii) services fees, (iv) drop ship commissions and central billing commissions, (v) hand/stor/Flex Star, (vi) outbound truck revenues and (vii) other revenues from service fees and other charges to such customers.

"Sales Material Adverse Effect" means a decline in Sales, if any, associated with the Operating PSCs which exceed 20% for the four (4) week period ended the Saturday immediately preceding the Initial Closing Date, as compared to the four (4) week period ended June 14, 2003.

"Sales Statement" shall have the meaning set forth in Section 3.3 hereof.

"Schedules" means the schedules hereto.

"Second Deposit" shall have the meaning set forth in Section 3.1 hereof.

"Second Estimate Payment" shall have the meaning set forth in Section 3.3 hereof.

"Seller Extension Period" shall have the meaning set forth in Section 3.7(b) hereof.

"Sellers" shall have the meaning set forth in the preamble hereto.

"Sellers' Ancillary Documents" shall have the meaning set forth in Section 4.2 hereof.

"Sellers' Benefit Plans" shall have the meaning set forth in Section 4.16 hereof.

"Sellers' Deposits" shall have the meaning set forth in Section 2.2 hereof.

"Sellers' Employee Obligations" shall have the meaning set forth in Section 12.1(a) hereof.

"Sellers' Employment Obligations" shall have the meaning set forth in Section 12.1(a) hereof.

"Sellers' Pension Plans" shall have the meaning set forth in Section 12.2(a) hereof.

"Sellers' Prepaid Expenses" shall mean all of Sellers' prepaid rent and prepaid expenses related to the Acquired Assets and the Business, including, without limitation, (a) all rent, Taxes and common area maintenance and similar charges under the Leases; (b) water charges, sewer rents and vault charges, if any; (c) value of fuel stored on the Real Property constituting part of the Acquired Assets (purchased and paid for by Sellers), including any Taxes therefor; and (d)

13

utilities, including, telephone, steam, electricity and gas, on the basis of the most recently issued bills therefor, subject to post-closing adjustment when the next bills are available, or if current meter readings are available, on the basis of such readings.

"Software" means all computer programs (whether in source code or object code form), databases, compilations and data, and all documentation related to any of the foregoing.

"Subleases" shall mean all subleases pursuant to which Sellers have granted a subleasehold interest in real property, other than subleases that become Excluded Assets pursuant to this Agreement.

"Subsequent Closing" shall have the meaning set forth in Section 2.5(d) hereof.

"Subsequent Closing Date" shall have the meaning set forth in Section 2.5(d) hereof.

"Subsidiary" shall mean, with respect to any Person, any corporation or other organization, whether incorporated or unincorporated, of which (a) at least a majority of the securities or other interests having by their terms ordinary voting power to elect a majority of the Board of Directors or others performing similar functions with respect to such corporation or other organization is directly or indirectly owned or controlled by such Person or by any one or more of its Subsidiaries, or by such Person and one or more of its Subsidiaries or (b) such Person or any other Subsidiary of such Person is a general partner (excluding any such partnership where such Person or any Subsidiary of such party does not have a majority of the voting interest in such partnership).

"Successful Bid" shall have the meaning set forth in Section 6.4(a) hereof.

"Supplemental Sales Order(s)" shall have the meaning set forth in Section 2.5 hereof.

"Supply Agreement" shall have the meaning set forth in Section 14.14 hereof.

"Tax" and "Taxes" means all federal, state, provincial, local and foreign taxes, including any income, alternative or minimum, business and occupation, gross receipts, disability, unemployment compensation, social security, sales, use, ad valorem, value-added, transfer, franchise, profits, withholding, wage, payroll, employment, excise, stamp, real and personal property, environmental or other tax, together with all interest, penalties and additions with respect thereto.

"Tax Returns" means all federal, state, local and foreign tax returns, reports, forms, certificates and declarations of estimated tax reports, including attachments and schedules thereto or amendments thereof.

"Third Party" means any Person and/or group of Persons other than Sellers, Purchaser or any of their respective Affiliates.

"Third Party Claim" shall have the meaning set forth in Section 13.4 hereof.

14

"Third Party Intellectual Property" means any and all Intellectual Property owned by any Person, other than Sellers, including Affiliates of Sellers, without regard as to whether Sellers have any rights therein or the right to assign such rights to Purchaser.

"Third Party Purchaser" shall have the meaning set forth in Section 2.6 hereof.

"Third Party Purchaser Notice" shall have the meaning set forth in Section 2.6 hereof.

"Trademarks" means trademarks, tradenames, service marks, designs, logos, emblems, signs or insignia, slogans, other similar designations of source or origin and general intangibles of like nature, together with the registrations and applications for registrations pertaining to any of the foregoing, any derivations of any of the foregoing, all goodwill associated therewith, and rights to sue for past Infringement thereof.

"Trade Secrets" means all trade secrets (as defined under applicable law) including without limitation trade secrets of the following nature: financing and marketing information, technology, know-how, inventions, proprietary processes, formulae, algorithms, models and methodologies, and rights to sue for past Infringement thereof.

"Transaction Taxes" shall have the meaning set forth in Section 12.7 hereof.

Transaction Tax Return" means any Tax Return in respect of Transaction Taxes which is required to be filed with any Governmental Entity as a consequence of the assignment, transfer and delivery to Purchaser or, as relevant, Third Party Purchaser of an Acquired Asset pursuant to this Agreement.

"Transition Services Agreement" means the transition services agreement, the form of which shall be mutually agreed to by the parties on or before July 14, 2003, relating to, among other things, operations support during the Option Period, provided that such Transition Services Agreement shall only become effective as of the Initial Closing in accordance with its terms.

"Undesignated Assets" shall have the meaning set forth in Section 2.5(b) hereof.

"Unrelated Assets" shall have the meaning set forth in Section 3.7 hereof.

"Unrelated Proceeds" shall have the meaning set forth in Section 3.7 hereof.

"Unrelated Purchase Agreements" shall have the meaning set forth in Section 3.7 hereof.

"Unrelated Sales" shall have the meaning set forth in Section 3.7 hereof.

"WARN Act" shall have the meaning set forth in Section 6.5 hereof.

1.2     Rules of Construction. Unless the context otherwise clearly indicates, in this Agreement:

     (a)     the singular includes the plural;

     (b)     "includes" and "including" are not limiting;

15

(c)    "may not" is prohibitive and not permissive; and

(d)    "or" is not exclusive.

## ARTICLE II
## PURCHASE AND SALE; ASSUMPTION OF CERTAIN LIABILITIES

2.1    <u>Purchase and Sale of Assets</u>.  Subject to the terms and conditions set forth in this Agreement, including Section 2.5, at the Applicable Closing, Sellers shall sell, assign, transfer and deliver to Purchaser, and Purchaser shall purchase, acquire and take assignment and delivery of, for the consideration specified in Section 3.1, all of Sellers' and their Affiliates' right, title and interest in and to all of their respective assets and properties, including the assets described below, but not including those assets specifically excluded by Sections 2.2 and 2.5 (all of the assets to be sold, assigned, transferred and delivered to Purchaser are called the "<u>Acquired Assets</u>").

(a)    <u>Acquired Contracts and Leasehold Improvements</u>.  All of Sellers interest in the Acquired Contracts and security interests, if any, related thereto, and in the leasehold improvements owned by Sellers that are situated in or on the PSCs (the "<u>Leasehold Improvements</u>").

(b)    <u>Inventory</u>.  All inventory located in or held for sale at the Operating PSCs on the Initial Closing Date and all Inventory In Transit (collectively, the "<u>Inventory</u>"); excluding, however, the Excluded Inventory.

(c)    <u>Equipment</u>.  All of the machinery, vehicles, furnishings, furniture, equipment, trade fixtures, computers, and other similar items of tangible personal property owned by Sellers, or leased by Sellers that is subject to a lease that is an Acquired Contract (the "<u>Acquired Leased Equipment</u>"), located at the PSCs on the Initial Closing Date, together with all rights of Sellers against the manufacturers and/or suppliers of such equipment other than those excluded pursuant to Section 2.2(a) (collectively, the "<u>Equipment</u>").

(d)    <u>Files and Records</u>.  All files, personnel records, documents, papers, computer files, data, customer and supplier lists, cost and pricing information, business plans, quality control records and manuals, blueprints, research and development files, personnel records and books and business records of Sellers in any media relating to the Acquired Assets of the Business (collectively, the "<u>Files and Records</u>").

(e)    <u>Permits</u>.  All assignable permits, licenses, consents, approvals, and authorizations, related to the operation of the PSCs (collectively, the "<u>Permits</u>").

(f)    <u>Intellectual Property</u>.  All Company Owned Intellectual Property, all Company Used Intellectual Property set forth on <u>Schedule 8.11</u> and all other Company Used Intellectual Property to the extent such other Company Used Intellectual Property is assumable and assignable and subject to obtaining any necessary consents to transfer such assets.

(g)    <u>Owned Real Property</u>.  All of the land, together with all buildings and improvements located thereon, and all easements and other rights and interests appurtenant

16

thereto, owned by Sellers which are not Excluded Assets, including real property constituting a PSC or which is reasonably adjacent or in close proximity to any PSC, including those which are set forth on Schedule 2.1(g) hereto (the "Owned Real Property").

      (h)    Corporate Offices.  All assets (including any leasehold interest) of Sellers at their Lewisville, Texas and Oklahoma City corporate offices (the "Corporate Offices"); provided, however, that pursuant to the Transition Services Agreement, Purchaser or Fleming, as the case may be, shall provide systems and operation support to the other party from such Corporate Offices.

      (i)    Warranties.  All manufacturer's warranties to the extent related to the Acquired Assets and all claims under such warranties.

      (j)    Goodwill.  All goodwill in or arising from the Acquired Assets and the Business.

      (k)    Supplies.  All supplies, tools and spare parts related to the Business.

      (l)    Signs.  All signs or personal property which contain any Intellectual Property which is an Acquired Asset (including, without limitation, the name (or trade derivative thereof) or logo of "Fleming" or variations thereof), including all uniforms supplied to employees of the Business that contain or display any such Intellectual Property.

      (m)    Prepaid Expenses.  Subject to Section 2.2(o), all prepaid expenses related to the Acquired Assets and the Business, but excluding the Deposit and Sellers' Deposits.

      (n)    Identified Customer Notes and Agreements.  All customer forgiveness notes and customer promissory notes listed on Schedule 2.1(n).

      (o)    Records of Sale.  All records prepared in connection with the sale of the Acquired Assets, including bids but excluding analyses relating to bids for the Acquired Assets.

      (p)    Unrelated Assets.  The Unrelated Assets, subject to the provisions of Section 3.7, provided that such Unrelated Assets may not be acquired by Purchaser prior to the end of the Option Period, as it may be extended pursuant to Section 3.7.

      (q)    Equity Interests in Customers.  All equity interests, if any, in customers of the Business.

      (r)    Remaining Insurance Proceeds.  All insurance proceeds not retained by Sellers pursuant to Section 2.2(g).

    2.2    Excluded Assets.  Notwithstanding anything to the contrary in this Agreement, the assets of Sellers described below or identified on Schedule 2.2 (which may be amended by mutual agreement of the parties) shall be retained by Sellers and are not being sold or assigned to Purchaser hereunder (all such assets are referred to collectively as the "Excluded Assets").

(a)    Avoidance and Other Actions. (i) Any and all rights under this Agreement of Sellers, (ii) any and all rights, claims, counterclaims, demands and causes of action of Sellers, and (iii) avoidance claims or causes of action arising under the Bankruptcy Code or applicable state law, including, without limitation, all rights and avoidance claims of Sellers arising under Chapter 5 of the Bankruptcy Code (an "Avoidance Action" and, collectively, the "Avoidance Actions"); excluding, in the case of clause (ii), (x) such rights, claims, counterclaims, demands and causes of action which would materially impact the operation or performance of the applicable Acquired Asset; (y) the rights of Sellers against the manufacturers and or suppliers of Equipment referenced in Section 2.1(c) and (z) claims under manufacturer's warranties' referenced in Section 2.1(i).

(b)    Cash. All cash and cash equivalents, on hand, in ATMs or in banks, certificates of deposit, bank or savings and loan accounts, U.S. government securities, and any other marketable securities of any kind or nature held by Sellers as of the Initial Closing Date, and such cash and cash equivalents received by Sellers after the Initial Closing Date which arise, relate to or are associated with any Excluded Asset.

(c)    Receivables. All accounts and trade receivables with respect to the Business as of the Initial Closing.

(d)    Equipment. All Equipment owned by third parties and all Equipment (other than the Acquired Leased Equipment) which is being leased to Sellers at the PSCs (collectively, the "Excluded Equipment").

(e)    Excluded Inventory. All inventory at the Non-Operating PSCs (the "Excluded Inventory") and any Inventory excluded from the calculation of Inventory Amount or for which no value is assigned in determining such calculation pursuant to Section 3.2 hereof.

(f)    Amounts Under Customer-Related Acquired Contracts. All (i) regularly scheduled principal due and owing (and any interest thereon) from Third Parties through the Initial Closing Date and (ii) any interest with respect to the amounts referenced in the preceding clause (i) accruing on and after the Initial Closing Date, each in respect of any customer-related Acquired Contracts, including customer forgiveness notes, customer promissory notes, customer store leases and customer equipment leases.

(g)    Tax Refunds and Insurance Claims. Rights to any (i) Tax refunds or credits for Tax periods (or portions thereof) with respect to any Acquired Asset ending on or prior to the Applicable Closing Date with respect to such Acquired Asset, and (ii) insurance claims or rights to payment arising with respect to Acquired Assets for which title has yet to pass to Purchaser pursuant to Section 2.5 to the extent necessary to remediate or pay for any Liability borne by Sellers relating to or arising from such Acquired Asset.

(h)    Certain Insurance Policies. Any and all insurance policies insuring directors and officers of any Seller and any other insurance policies relating to any Employee Benefit Plan, relating to workers compensation and relating to any Excluded Asset or Retained Liability, including without limitation, the proceeds of any and all such policies and pay rights of the Sellers under any such policies.

18

(i)    Other Real Property.  All of the land, together with all buildings and improvements located thereon, and all easements and other rights and interests appurtenant thereto, owned or leased by Sellers and described on Schedule 2.2(i) hereto.

(j)    Excluded Liabilities.  All rights, claims and obligations related to the Excluded Liabilities.

(k)    Discontinued PSCs.  The distribution centers set forth on Schedule 1.1(c) and all assets located thereon.

(l)    Convenience and Retail Businesses.  Any and all assets primarily related to the Convenience Business or the Retail Business which are (i) owned, leased or otherwise used by the Debtors as described on Schedule 2.2(l)(i) or (ii) located at the distribution centers as described on Schedule 2.2(l)(ii); provided, however, to the extent access to and use of such assets is necessary for the operations of the Acquired Assets, Sellers shall provide use of those assets to Purchaser pursuant to the Transition Services Agreement.

(m)    Excluded Records.  All Excluded Records as set forth on Schedule 2.2(m) hereto.

(n)    Deposits.  All deposits, including, without limitation, lease, security, vendor and utility deposits related to the Acquired Assets and the Business (the "Sellers' Deposits").

(o)    Certain Sellers' Prepaid Expenses.

(i)    All Sellers' Prepaid Expenses related to Acquired Assets that are rejected by Purchaser pursuant to Section 2.5; and

(ii)    Sellers' prorated portion of Sellers' Prepaid Expenses related to the Acquired Assets that are assigned and assumed by Purchaser pursuant to Section 2.5 (such pro rata portion determined in accordance with Section 3.4).

(p)    Designated Excluded Assets.    All Acquired Assets subsequently designated as Excluded Assets pursuant to Section 2.5.

(q)    Vendor Supply Agreements.  All Excluded Vendor Supply Agreements.

(r)    Excluded Intellectual Property.  All Company Used Intellectual Property and IP Agreements to the extent not transferable by Sellers (after the exercise of commercially reasonable efforts to so transfer) to Purchaser and any applicable Third Party Purchasers without any material cost or expense to Sellers other than Cure Costs.

(s)    Other Excluded Assets.  All assets listed on Schedule 2.2(s).

2.3    Assumption of Liabilities.  Purchaser shall not assume any Liabilities related to the Business (or otherwise), except Purchaser or, as applicable, the applicable Purchaser

19

Assignee or Third Party Purchaser, shall assume, pay, perform and discharge when due, the following Liabilities (the "Assumed Liabilities"):

(a)    Acquired Contracts.  All of Sellers' Liabilities under each of the Acquired Contracts arising on and after the date Purchaser assumed such Acquired Contract pursuant to this Agreement, subject to Section 2.5.

(b)    Operating Liabilities.  All Liabilities with respect to claims arising in any way with respect to or as a result of the operation of an Acquired Asset beginning after the Applicable Closing Date applicable to such Acquired Asset, including, without limitation, any and all Taxes or tort claims arising out of or attributable to the operation, the income or the ownership of such Acquired Asset beginning after the Applicable Closing Date applicable to such Acquired Asset; provided, however, notwithstanding the foregoing, Purchaser shall not assume or otherwise be liable for those Liabilities set forth in Section 2.4(c) below.

(c)    Employment Matters.  All Liabilities relating to each New Employee after the New Hire Date applicable to such New Employee; provided, however, notwithstanding the foregoing, Purchaser shall not assume or otherwise be liable for those Liabilities set forth in Section 2.4(c) below.

(d)    Removal Liabilities.  Any Liability associated with the removal of any Acquired Asset from any Real Property arising after the Applicable Closing Date with respect to the removal of such Acquired Asset.

(e)    Other Liabilities.  Any other Liabilities mutually agreed to by the parties and set forth on Schedule 2.3(e) prior to the Applicable Closing.

2.4    Excluded Liabilities.  Purchaser shall not assume or in any way be responsible for any Liability of, or incurred by or on behalf of, Sellers or their Affiliates other than the Assumed Liabilities (all such other Liabilities being referred to herein collectively as the "Excluded Liabilities"), regardless of whether such other Liability is disclosed herein or on any Schedule hereto, which Excluded Liabilities shall remain the sole responsibility of and shall be retained, paid, performed and discharged solely by Sellers.  The Excluded Liabilities include, without limitation, the following:

(a)    Excluded Assets.  All Liabilities of Sellers related primarily to any of the Excluded Assets.

(b)    Taxes.  Subject to Section 12.8, any Taxes of Sellers or their Affiliates for any Tax periods.

(c)    Employment Matters.  All Liabilities of Sellers under (i) all Employee Benefit Plans of Sellers and Affiliates of Sellers, (ii) all of Sellers' collective bargaining agreements or other agreements with any labor union or labor organization or any other agreements with Business Employees, (iii) all Sellers' Employee Obligations, and (iv) all of Sellers' Employment Obligations.

20

(d)    Credits.  Any credits due to customers of the Business relating to the operations of the Business prior to the Initial Closing.

2.5    Option Rights; Exclusion of Certain Acquired Assets.

(a)    Subject to the terms and conditions in this Agreement, including the other provisions of this Section 2.5, Purchaser shall have the right (the "Option Rights"), in its discretion, from the date hereof until the six (6) month anniversary of the Initial Closing (the "Option Period") to specifically include or exclude those Acquired Assets (except Inventory) to be assigned to it as it shall specify in an Option Notice to Sellers, whereupon such Acquired Assets shall, to the extent excluded, cease to be "Acquired Assets" hereunder and shall become "Excluded Assets" and thereby be excluded from the Acquired Assets; provided that such exclusions shall not result in a Purchase Price adjustment; provided, further, to the extent that Purchaser has delivered an Option Notice prior to the 15th day immediately preceding the expiration of such six (6) month period in accordance with this Section 2.5, the Option Period shall continue for such time as is necessary to seek and obtain any necessary Supplemental Sales Orders with respect to the Acquired Assets identified in any such Option Notices, so long as and to the extent that the Purchaser remains obligated under the Transition Services Agreement for the Liabilities associated with any such identified Acquired Assets.

(b)    Consequently, notwithstanding anything in this Agreement to the contrary:

(i)    title to all Acquired Assets that constitute Inventory and other Acquired Assets which Purchaser acquires at the Initial Closing shall pass to Purchaser at the Initial Closing;

(ii)    during the Option Period, title to the Acquired Assets (other than Inventory and other Acquired Assets which Purchaser acquired at the Initial Closing or subsequent to the Initial Closing pursuant to this Section 2.5) shall not pass to Purchaser, unless, at any time prior to the 15th day immediately preceding the expiration of the Option Period, Purchaser provides an Option Notice to Sellers that Purchaser is exercising its Option Rights to purchase all or a portion of the Acquired Assets;

(iii)    during the Option Period, title to all or a portion of the Acquired Assets shall not pass to Purchaser, if at any time prior to the 15th day immediately preceding the expiration of the Option Period, Purchaser provides an Option Notice to Sellers that Purchaser is exercising its Option Rights to exclude all or a portion of the Acquired Assets;

(iv)    if on or prior to the expiration of the Option Period, Purchaser indicates its desire to either purchase or exclude a PSC in accordance with paragraphs (i), (ii) or (iii) above, then any Owned Real Property or leased real property upon which a PSC is situated or reasonably adjacent to such PSC shall also be concurrently purchased or excluded, as applicable; and

(v)    if Purchaser fails to deliver an Option Notice prior to the 15th day immediately preceding the expiration of the Option Period with respect to any portion of the Acquired Assets, except for Acquired Contracts (the "Undesignated Assets"), those Undesignated Assets shall be assigned to Purchaser and title shall pass in accordance with this

Agreement at the end of the Option Period. In the event that Purchaser fails to deliver an Option Notice prior to the 15th day immediately preceding the expiration of the Option Period with respect to an Acquired Contract (each such Acquired Contract, an "Undesignated Acquired Contract"), title to such Acquired Contract shall not pass to Purchaser but shall instead cease to be an "Acquired Asset" hereunder and shall become an "Excluded Asset" for purposes of this Agreement.

(c)     For purposes of this Agreement, an "Option Notice" shall be a written notice delivered by Purchaser to Sellers specifying or otherwise providing (i) Purchaser's exercise of its Option Rights to either purchase all or a portion of the Acquired Assets or exclude all or a portion of the Acquired Assets, as the case may be, (ii) a description, in reasonably sufficient detail, of the Acquired Assets to be purchased or excluded, as the case may be, including, without limitation, lists of any Acquired Contracts to be purchased or excluded, as the case may be, and (iii) the expected timing of the consummation of such purchase or exclusion, as the case may be (which in no event shall be earlier than thirty (30) days following the delivery of such Option Notice, or, if given on or prior to the date of the Business Day immediately following the Auction, no earlier than the Initial Closing). All Option Notices once delivered shall be irrevocable. Purchaser shall deliver Option Notices (on one or more occasions) notifying Sellers of Purchaser's determination to purchase or exclude any Acquired Assets, as the case may be, as soon as reasonably practicable after Purchaser has made any such determination; provided, that in no event shall an Option Notice be delivered later than fifteen (15) days prior to the expiration of the Option Period.

(d)     As soon as practicable after receipt of an Option Notice that Purchaser is exercising its Option Rights to purchase and retain all or a portion of the Acquired Assets or Purchaser fails to deliver an Option Notice with respect to any portion of the Acquired Assets (excluding Acquired Contracts) as set forth in Section 2.5(b)(v), Sellers shall file, duly serve and diligently prosecute a motion in the Bankruptcy Court seeking authorization, as necessary, to assume and assign any (i) specified Acquired Assets, as the case may be, or otherwise transfer any specified Acquired Assets, as the case may be, to Purchaser (any Orders, approving the matters set forth in such motion referred to herein as the "Supplemental Sales Orders"); provided, however, Sellers shall not be required to file more than one (1) such motion per each thirty (30) day period. Upon receipt of any approval, if necessary, of the Bankruptcy Court, the parties shall use commercially reasonable efforts to consummate such purchase (each such consummation, a "Subsequent Closing") by no later than the end of the expiration of the Option Period and, pursuant to Section 3.5, Sellers shall execute and deliver such documents and instruments of conveyance and transfer as Purchaser may reasonably request in order to consummate the purchase and sale of the specified Acquired Assets and to vest title to such Acquired Assets. The date of consummation of each such purchase shall be referred to as a "Subsequent Closing Date".

(e)     In accordance with Section 2.3 above, Purchaser shall be responsible for all Liabilities associated with an Acquired Asset arising on and after the date that the such Acquired Asset is assigned, transferred and delivered to Purchaser pursuant to this Agreement. Sellers shall have three (3) Business Days after receipt of an Option Notice announcing Purchaser's election to exclude all or a portion of the Acquired Assets, and shall have three (3) Business Days after the 15th day immediately preceding the expiration of the Option Period with

22

respect to Undesignated Acquired Contracts, to notify Purchaser whether Sellers intend to reject such specified Acquired Assets.  In the event Sellers decide to reject any specified Acquired Assets, promptly following the expiration of such three (3) Business Day period, Sellers shall file, duly serve and diligently prosecute a motion in the Bankruptcy Court seeking authorization, as necessary, to reject such specified Acquired Assets, including Acquired Contracts.  In addition, upon receipt of any such Option Notice to exclude all or a portion of the Acquired Assets, or promptly after the 15th day immediately preceding the expiration of the Option Period with respect to an Undesignated Acquired Contract, Sellers and Purchaser shall use commercially reasonable efforts to consummate such exclusion by no later than the end of the expiration of the Option Period and Purchaser shall execute and deliver such documents, if necessary, as Seller may reasonably request in order to effectuate the exclusion of any such Acquired Assets.

(f)    **[Intentionally Deleted]**.

(g)    To the extent Purchaser exercises its Option Rights on or prior to the later of the close of business on the date of the Sale Hearing or seven days prior to the Initial Closing, to exclude any portion of the Acquired Assets pursuant to Section 2.5 above, notwithstanding anything in this Agreement to the contrary, Purchaser shall not be liable or responsible for, and shall not be required to reimburse Sellers and their Affiliates for, any Liabilities of Sellers and their Affiliates relating to such Acquired Assets.  To the extent Purchaser exercises its Option Rights after the later of the close of business on the date of the Sale Hearing or seven days prior to the Initial Closing to exclude any portion of the Acquired Assets pursuant to this Section 2.5 above, notwithstanding anything in this Agreement to the contrary, Purchaser shall reimburse Sellers for all liabilities incurred under the related Acquired Contracts on or after the Initial Closing, until such time as Sellers, in the exercise of their commercially reasonable efforts, can terminate or otherwise reject such Acquired Contracts, so long as Sellers file, duly serve and are diligently prosecuting a motion in the Bankruptcy Court seeking authorization, as necessary, to reject such specified Acquired Contracts..

2.6    Designation Rights; Assignment and Transfer of Acquired Assets.

(a)    Purchaser shall have the right (the "Designation Rights") to assign its rights and obligations hereunder with respect to any Acquired Assets to one or more third parties (each, a "Third Party Purchaser") so long as Purchaser causes each Third Party Purchaser to comply with the provisions in this Section 2.6.  Purchaser may, by one or more notices (each, a "Third Party Purchaser Notice") to Sellers, designate one or more Third Party Purchasers and the Acquired Assets to be transferred to each such Third Party Purchaser.  Purchaser may deliver a Third Party Purchaser Notice to Seller from the date hereof and up to fifteen (15) days prior to the expiration of the Option Period (the "Assignment Deadline").

(b)    As soon as practicable after the receipt of each Third Party Purchaser Notice, Sellers shall file, duly serve and diligently prosecute a motion in the Bankruptcy Court seeking authorization, as necessary, to assume and assign any designated Lease or Contract which is an Acquired Contract or otherwise transfer any designated Acquired Assets to the Third Party Purchaser.

23