UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| WAYNE BERRY, | : 01:07 CV 7634 WHP |
| Plaintiff, | : Judge William H. Pauley III |
| vs. | : ECF Case |
| | : |
| DEUTSCHE BANK TRUST COMPANY | : |
| AMERICAS (f.k.a. BANKERS TRUST COMPANY) | |
| and JP MORGAN CHASE BANK, in their separate | : |
| capacities and as agents for the pre- and post-petition | : |
| lenders of Fleming Companies, Inc.; GENERAL | : |
| ELECTRIC CAPITAL CORPORATION; C&S | |
| WHOLESALE GROCERS, INC.; THE POST- | : |
| CONFIRMATION TRUST OF FLEMING | |
| COMPANIES, INC.; ROBERT KORS; CORE-MARK | : |
| HOLDINGS INC. and DOES 1 to 200. | : |
| | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PLAINTIFF WAYNE BERRY'S MEMORANDUM IN OPPOSITION TO THE POST
CONFIRMATION TRUST'S AND ROBERT KORS' MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION FOR RULE 11 SANCTIONS

TIMOTHY J. HOGAN (Hawaii Bar No. 5312)
Attorney for Plaintiff WAYNE BERRY
Admitted *Pro Hac Vice*

1050 Bishop Street, Number 433
Honolulu, Hawaii 96813
Tel.  (808) 382-3698
Fax.  (808) 356-1682
Email tjh@timhogan.com

Table of Contents

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

I.      INTRODUCTION.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     ARGUMENT AGAINST SANCTIONS.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.      Fleming Assumed Liability under the Berry EULA.  . . . . . . . . . . . . . . . . . . . . 1

                1.      Evidentiary Support . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

                2.      Legal Theory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                3.      Improper Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        B.      The Abuse of Process Claims Are Proper and Not the Basis for any Sanction . . 11

                1.      Evidentiary Support.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                        Letter to Chambers dated April 23, 2008  . . . . . . . . . . . . . . . . . . 14

                2.      Legal Theory. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                3.      Improper Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        C.      The Lynch Ichida Claims Should go the Jury Let Alone Be the Basis for a

                Sanction.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

                1.      Evidentiary Support.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

                2.      Legal Theory. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                3.      Improper Purpose . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

        D.      The RICO Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

                1.      Evidentiary Support . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

                2.      Legal Theory . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

                3.      Improper Purpose. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

        E.      Kors Conceded he Was Appointed the PCT Representative.  . . . . . . . . . . . . . 25

III.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Table of Authorities

CASES

*Adobe Systems Inc. v. One Stop Micro, Inc.*, 84 F.Supp.2d 1086 (N.D.Cal. 2000) . . . . . . . . . . 8

*Berry v. Fleming Companies, Inc.*, 243 Fed. Appx. 260, WL 1062946 (9th Cir. (July 5, 2007, Hawaii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Board of Education of Farmingdale v. Farmingdale Classroom Teachers Association,* 38 N.Y.2d 397, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Clark Oil Trading Co. v. Amerada Hess Trading Co., A Div. of Amerada*, 1993 WL 300039 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Cline v. Flagler Sales Corp.,* 207 So.2d 709 (Fla. 3d DCA 1968) . . . . . . . . . . . . . . . . . . . . . . . . 17

*Curiano v. Suozzi,* 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984) . . . . . . . . . . . 16

*Graham v. James*, 144 F.3d 229 (2d Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hogg v. Walker*, 622 A.2d 648 (Del.,1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Fleming Companies, Inc*., 308 B.R. 689 (Bankr. Del.,2004) . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re USACafes, L.P. Litigation*, 600 A.2d 43 (Del. Ch.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*King Prods., Inc. v. Douglas*, 742 F. Supp. 741 (S.D.N.Y.1990) . . . . . . . . . . . . . . . . . . . . . . . . 21

*O'Brien v. Alexander*, 101 F.3d 1479 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843 (2d Cir.,1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3275 (1985) . . . . . . . . . . . . . . . 25

*Societe Generale v. U.S. Bank National Ass'n* ,325 F.Supp.2d 435  (S.D.N.Y.,2004) . . . . . . . . 8

*Television Events & Marketing, Inc. v. Amcon Distributing Co.*, 488 F.Supp.2d 1071
(D.Hawaii,2006)Supp . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21


STATUTES

Bankruptcy Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Copyright Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Hawaii Rev. Stat. §708-880 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

RICO . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22-25

RICO 18 U.S.C. § 1961(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Section 3581 of the Delaware Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Title 18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

RULES

Fed. R. Civ. P. 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 9, 11-13, 22

OTHER AUTHORITIES

*A. Scott & W. Fratcher, The Law of Trusts* § 326.3, at 304-306 (4th ed. 1989) . . . . . . . . . . . . 10

Black's Law Dictionary 976, 1097 (5th ed. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I.    INTRODUCTION.

On April 23, 2008, counsel for the PCT, Robert Kors and the Lenders submitted a letter to chambers requesting that the Court consider it and the unsworn evidence submitted for the Court's consideration regarding both the instant motion and the pending Motion for Summary Judgment.  Mr. Berry and counsel address that letter herein with sworn testimony and, to the extent the Court considers it just, respectfully request that the Court incorporate this Opposition as necessary regarding the Opposition to the Motion for Summary Judgment.

## II.    ARGUMENT AGAINST SANCTIONS.

Based on the standard that the Court applies to a Fed. R. Civ. P. 11 Motion, the Court must conclude that the claims brought in the Second Amended Complaint ("SAC") are well grounded in fact and supported by law and are not interposed for an improper purpose but simply intended to bring years of unabashed willful infringement for commercial advantage and the outrageous collateral assaults on the victim to an end once and for all.

### A.    Fleming Assumed Liability under the Berry EULA.

#### 1.    Evidentiary Support.

Prior to any claimed rejection, Fleming, under the direction of the very attorneys who filed the instant motion, delivered copies of Mr. Berry's works to C&S Wholesale Grocers, Inc. ("C&S")  an unauthorized user who uses them for commercial advantage.   Robert Kors and the Fleming Companies, Inc. ("Fleming") Post-Confirmation Trust ("PCT") argue that neither the PCT nor Mr. Kors have any liability for anything related to Berry regardless of their active roll in C&S' past or current unauthorized use of the Berry works.  Mr. Kors has admitted that C&S is using the Berry works entrusted to Kors.  Affidavit of Timothy J. Hogan ("Hogan Aff.") at ¶ 1. Mr. Kors is the trustee of a grantor trust who received title to all of Fleming's property not

otherwise vested in the reorganized debtor entities.   Hogan Aff. at ¶ 2 and Exhibit "1" at page 1

¶ G and page 10, ¶ 2.1(k).  This included the material objects to Berry's works that Mr. Kors and

the PCT are permitting C&S to use.  Mr. Kors tried to establish that he owned the copyrights to

all of Mr. Berry's freight control related works and has advanced the PCT's funds to hold Mr.

Berry at bay through a variety of outrageous schemes, despite knowing that he was facilitating

the unlicensed use prohibited by the Copyright Act, Title 18 and the Berry End User License

Agreement (the "EULA").   Mr. Kors, a trustee under a grantor trust, has intentionally assisted

an infringer in committing willful criminal acts against a trust beneficiary but relevant to this

motion, Kors cannot claim that he didn't understand the import of the EULA and its contractual

penalties for failing to return the works because he conducted, but lost, the appeal of  the First

Hawaii Case in the Court of Appeals where he continued to advance the false claim that he

owned title to the Berry works and therefore, could do with them as he pleased.  Mr. Kors also

lost on his claim that the Berry "shrinkwrap"  EULA is unenforceable absent an outward

manifestation of assent to each term.  After over three and a half years of falsely claiming to own

the works, and his defeat at the Court of Appeals, he now must address the cost of his false

assertion of copyright ownership and pay the damages he owes under the EULA for permitting

C&S to keep the works.

The PCT-Kors' argument is that, the Berry EULA and his ability to enforce his rights

were all extinguished with Fleming Plan Confirmation Order entered on July 27, 2004.  Kors and

the PCT claim that they came on the scene, free to do what ever they like in regard to the Berry

works and are strangers to the EULA their claim to own the Berry works, and advance

infringement, notwithstanding.  First, the same Fleming Reorganization Plan that Mr. Kors and

the PCT claim proves Mr. Berry's rights were wiped out also made it clear that the Plan

Confirmation Order applied to executory contracts, "except where otherwise provided herein. . ."

Hogan Aff. Exhibit "2."  The Plan provided that parties could obtain exemption from the effect

of the Plan's various injunctions by obtaining relief from the automatic stay prior to

confirmation.   Hogan Aff. Exhibit "3."  Mr. Berry filed a motion for relief from stay requesting

that he have leave to pursue his works against anyone.  Hogan Aff. Exhibit "4."  Mr. Berry

obtained relief from stay prior to confirmation so that he could continue to defend his rights in

his works from the very defense that the PCT and Kors now assert.  Hogan Aff. Exhibit "5."

The Bankruptcy Court later interpreted this order to limit Mr. Berry's right to a **prepetition**

**claim** to the Bankruptcy claims process.

  The PCT Agreement approved in the confirmation also provided that the debtors' causes

of action passed to the PCT and Kors.  Hogan Aff.  Exhibit. "1" at page 9, ¶ 2.9(f).  Nothing in

the Bankruptcy Code protects Kors and the PCT from their conduct regarding the continued use

of the Berry works, use advanced after appointment.  Kors took title to the works stripped of the

very defenses he now claims.

  Evidencing that even Kors believed the EULA continued post-confirmation, Kors

claimed, after the date he argues the EULA disappeared, that the EULA continued to provide a

defense to infringement.  On August 5, 2004, after July 27, 2004,  the date the PCT claim the

EULA was rejected through plan confirmation and the PCT took over, Fleming along with C&S,

through the PCT and C&S' concurrent counsel Lex Smith together filed their Fleming

Companies, Inc. and C&S Logistics of Hawaii, LLC., C&S Wholesale Grocers, Inc. and C&S

Acquisitions, LLC's Amended Answer to Second Amended Complaint.  (The "PCT-C&S Joint

3

Answer") in the Second Hawaii Case.   In the PCT-C&S Joint Answer, in the Third Affirmative

Defense, the PCT asserted the defense of license as follows:

> Fleming gives notice that it intends to rely on the defense of that
> conduct complained of is expressly authorized by the license
> signed by Plaintiff.

*See* Hogan Aff. Exhibit "6."   The EULA was signed by plaintiff.   The parties have argued that

the conduct complained of in that Second Amended Complaint encompasses conduct occurring

at the time the Second Amended Complaint was filed.

     The PCT and Kors argue that Mr. Berry's claims are unfounded because Mr. Berry

informed Fleming's former in-house counsel that Mr. Berry had exercised his right to terminate

the license.   If Fleming was continuing to use the works or planned to later commence using

them or permit someone else to use them as it appears has happened, and had recently actually

asserted the EULA as a defense after confirmation, this letter would make clear that any **future

use** was unlicensed and therefore willful infringement.   The letter serves only to prove that Mr.

Berry believed that the PCT was contemplating some use under the defense to criminal

infringement afforded by the EULA because, if the EULA was of no import, and if Mr. Berry

believed that be true as the PCT and Kors claim, Berry had no need to send the termination

letter.  *See Graham v. James*, 144 F.3d 229, 237-8 (2d Cir.1998) (even in case of breach of

license covenant termination is not automatic and requires an affirmative act to rescind).   Mr.

Berry's letter is evidence of his belief of his need to terminate the license that Fleming's PCT

and C&S had just raised as an infringement defense, post-confirmation.

     Kors and the PCT also have not explained why, if they claim the EULA was of no

import, their attorney sent C&S a letter requesting (but not demanding) that C&S return Berry's

works.  *See* Hogan Aff. at Exhibit "7."  This letter, that Mr. Berry's counsel received prior to filing the Second Amended Complaint in the Instant Case ("SAC"), evidenced that Kors and the PCT believe that the Berry EULA continues to impose contractual duties on them.   After it was clear that the PCT and Kors were not appealing the Writ of Mandate to the US Supreme Court, Mr. Kors, through his attorneys, was asked to simply **require** C&S to return the property that Kors had attempted, but failed, to procure for C&S.  Hogan Aff. ¶ 8.  Delaware law, that applies to Kors as a trustee under the PCT grantor trust, requires that he act to restore Mr Berry's property that he falsely claimed to own even absent the EULA.  Kors refused, but conceded, by sending the letter to C&S, his own manifestation of a belief that he is bound by the contractual duties imposed by the Berry EULA.

Mr. Kors and the PCT raise for the first time the reference to SAC ¶ 36 that deals with rejection that they claim proves Berry's claims violate Rule 11.  That allegation addresses the fact that, by failing to immediately reject the Berry EULA in the bankruptcy case filed on April 1, 2003,  Fleming continued to create works that were, upon their creation, transferred to Mr. Berry under the terms of the Berry EULA.  Most competent bankruptcy counsel, seeking to free the client and its successors (Kors and the PCT)  from the effect of the EULA, would have moved immediately, upon the bankruptcy filing, to reject the Berry EULA and return the works to Berry thus closing the available avenues for ongoing infringement liability.  These highly sophisticated Bankruptcy attorneys chose, instead, to advise their clients to maintain the protections contained in the Berry EULA and the right to continue to use the works, protected by the defense of license that they continued to raise post-confirmation.  Mr. Berry's filing of a rejection damage claim, required under the Plan to be able to collect on the pre-confirmation

5

infringement, even in the face of a proper rejection,  has nothing at all to do with the PCT and

C&S continued **use of the works after confirmation** evidencing that they assented to be bound

by the terms of the EULA.   This legal term of art proves nothing.  There is no legal impediment

to proceeding against the PCT and Kors for their conduct that occurred after confirmation.

These works, owned by Mr. Berry, are being used by C&S for commercial advantage with Mr.

Kors' permission and support under his agreement to honor the Berry Technology Indemnity

Letter as of this writing.  The Berry Technology Indemnity Letter, was also never formally

assumed in the Bankruptcy but Kors continues to honor it.  This agreement is, in form and

substance, a sub-license of the Berry EULA.   Hogan Aff. Exhibit "8."   When Mr. Kors, who

had claimed to own the works,  honors the obligations under that agreement to protect **future**

infringements, he violates the EULA that prohibited the sub-license of the Berry works.  The

Court of Appeals has held by affirming the District Court that liability under this EULA does not

require the PCT's manifestation of assent that Kors now is asserting as his defense.  Had the

PCT and Kors not agreed to become parties to that case and assert ownership and defend

infringing use, this defense might have some validity, but they cannot deny the PCT was a party

but lost and is bound by the decision.

    The actual facts of the Fleming sale to C&S evidence that Fleming had actually assumed

the Berry EULA prior to the sale to C&S.  Because there was no cure nor any consent, the only

effect was to recklessly expose the PCT, Kors and C&S to ongoing liability.  The Fleming-C&S

Asset Purchase Agreement (the "APA") provided an exception to the need list and notice

counter-parties to certain software licenses.  Where the license was a **"shrinkwrap"** license

worth less than $100,000 Fleming and C&S didn't have the obligation to list it.  *See* Excerpt

from the APA, Hogan Aff. Exhibit "9 A." Fleming agreed with Mr. Berry on few issues but agreed that the EULA was a **"shrink wrap"** license. *See* Excerpt from the PCT's Opening Brief filed in appeal of the First Hawaii Case. Hogan Aff. Exhibit "10." The jury verdict in the first case set the damages at $98,250. Hogan Aff. Exhibit "11." Therefore, under the Fleming APA, Fleming easily "assumed" the Berry **"shrinkwrap"** license in the APA but didn't have to tell Berry or the Bankruptcy Court. C&S got cold feet at closing on August 23, 3003 and didn't want to assume the liability, so under the Berry Technology Agreement, Fleming agreed that it would hold title to the works for C&S, and protect C&S from Berry's claims of infringement and then, when Fleming prevailed on ownership (as all no doubt believed with a Kirkland & Ellis' full court press funded by the two largest banks on earth Fleming certain they would) they could submit a "Supplemental Sales Order" to the Bankruptcy Court to effect what they would then claim was the lawful transfer of the "Fleming Owned" works to C&S and just let the risky assumption fade away. The PCT admitted in late 2005, well after confirmation, that both C&S and the PCT continue to maintain the power to affect a transfer of APA related assets by "Supplemental Sales Orders" long after confirmation. Hogan Aff. Exhibit "12" at page 8, ¶ 25.

   2. **Legal Theory**.

  Kors has presented no valid legal argument that supports the view that the Berry EULA was extinguished as it relates to ongoing use by the PCT's sub-licensee to C&S. In light of the relief from stay and the exemption from the Bankruptcy discharge that Mr. Berry received in the Delaware Bankruptcy Court, and the Writ of Mandate filed by the Ninth Circuit, the PCT-Kors position is, itself, frivolous. Kors voluntarily chose to assert that he, Robert Kors, as the trustee of a grantor trust, personally owned the title to the Berry works and then he, Robert Kors,

knowingly advanced the sub-license of the works to C&S.

> **The Court initially notes that while One Stop is not a signatory to an Adobe licensing agreement, it is nevertheless subject to the restrictions of those agreements**. In *Microsoft v. Harmony Computers & Electronics*, 846 F.Supp. 208, 213 (E.D.N.Y.1994), the court found that "[t]o the extent that defendants bought their Microsoft Products from authorized Microsoft licensees, they were subject to the same licensing restrictions under which those licensees operated." According to One Stop, its main source for educational versions of Adobe software was Programmers Paradise, an Adobe-authorized educational reseller and consequently a signatory to the OCRA. One Stop's February 18, 1999 Decl., ¶ 4. **Thus, by obtaining Adobe software from a party to an Adobe licensing agreement, One Stop was bound by any restrictions imposed by that agreement.**

*Adobe Systems Inc. v. One Stop Micro, Inc.*, 84 F.Supp.2d 1086, 1092-3 (N.D.Cal. 2000) (citation in the original) (emphasis added). Kors cannot deny that he obtained the works from Fleming that lost the appeal on its claim not to be bound by the EULA. Kors is bound.

Kors has not presented anything to rebut the fact that when he agreed to be the PCT representative, a trustee under the Delaware grantor trust, he voluntarily assumed personal liability for conduct of the continuing actions related to the sub-license to C&S and his false claim to own the Berry works, works covered by the Berry EULA. *See Hogg v. Walker*, 622 A.2d 648, 653 (Del.,1993) (trustee's liability is personal and the trust estate is not a separate legal entity that can immunize the trustee for the consequences of misconduct). Section 3581 of the Delaware Code, provides Mr. Berry with several remedies that would include the equitable remedy of specific performance or damages. Likewise, New York law creates a **presumption** that a trustee is personally liable. *Societe Generale v. U.S. Bank National Ass'n*, 325 F.Supp.2d 435, 437 (S.D.N.Y. 2004). The EULA prohibited Kors from granting or honoring any prior sub-license of the Berry works. His actions are willful and intentional misconduct for which, under

the terms of the PCT Agreement,  he is personally liable.  Hogan Aff. Exhibit "1"at pages 7 & 8.

To demonstrate that this Rule 11 Motion is frivolous, in another instance in the very same Fleming case, the Bankruptcy court addressed what happens if the debtor sells an asset (like the Berry works) that are covered by a contract (like the Berry EULA)  that would otherwise be susceptible of rejection upon confirmation or earlier.  The PCT was represented by the very same Kirkland & Ellis attorneys who filed the instant motion.  The Bankruptcy Court, in the Fleming Bankruptcy case, held that, if the sale that triggers the remedies occurs prior to rejection (in this case the C&S Sale was 8/23/03, and Plan Effective date causing automatic rejection was on 8/23/04) but after 60 days after the filing of the voluntary petition (in this case 4/1/03) no subsequent claimed rejection can relieve the PCT of liability.  *See In re Fleming Companies, Inc. (PCT-Northstar Refrigeration)*, 308 B.R. 689, 692 (Bankr. Del.,2004).  More to the point, the Bankruptcy Court specifically held that, under these circumstances assumption is not a condition precedent to liability.  "However, under section 365(d)(10) assumption of the contract is not required for the enforcement of a lease obligation triggered by the Debtors' post-petition conduct."  *Id*. *Northstar* involved a simple contract case.   Here, Kors as the PCT trustee, wasn't trying to avoid paying for a refrigeration system, as in *Northstar*, he was and is facilitating ongoing criminal conduct and under the terms of the PCT Agreement his is personally liable for his willful acts.  The Bankruptcy Court made it clear that the liability attaches even in light of a rejection a rejection that the actual record shows **never** occurred.

Even if Fleming had not assumed the Berry EULA, another way to examine the PCT's legal argument is to apply the same logic to a leasehold interest in a residence that the PCT must agree is generally viewed as an executory contract.   In this case, Kors has not only claimed to be

the owner of the property that was the subject of the rejected lease, he allowed a trespasser to open a bed and breakfast in the house letting out the rooms for commercial advantage. Kors would say that the lease was rejected so he is free to operate his bed and breakfast and the actual owner of the property is without a remedy because the lease was rejected. Kors is simply wrong. Kors would be personally liable for the value of the leasehold reserved in the lease and other damages.

Kors' last argument is that he is only an employee of the PCT Trustee, his own shell corporation, and therefore, he owes no duty to Mr. Berry or anyone. Kors is wrong. Delaware law imposes liability even where the trustee, like Kors, hides behind a shell entity. ".... The directors and officers are in a fiduciary relation not merely to the [corporation] ... but to the beneficiaries of the trust administered by the [corporation]." *In re USACafes, L.P. Litigation*, 600 A.2d 43, 49 (Del. Ch.1991) *citing A. Scott & W. Fratcher, The Law of Trusts* § 326.3, at 304-306 (4th ed. 1989).

###    3.    **Improper Purpose**.

One thing that the Motion doesn't address is the ongoing use of the unlicensed Berry works which use Kors, whether as the PCT representative or otherwise, is facilitating by committing overt acts to protect the criminal infringers. He has not even attempted to claim that C&S' continued use of the works does not constitutes a federal crime that he and the PCT have actively facilitated. Kors makes no claim that his actions are not illegal and directed to cause Mr. Berry financial injury. Mr. Berry's claim under the EULA is consistent with the liability that Kors as a trustee of a grantor trust has taken on personally under both New York and Delaware law.

**B.      The Abuse of Process Claims Are Proper and Not the Basis for any Sanction.**

The Motion fails to even address the fact that counsel for the PCT have been engaged in contact with Mr. Berry's estrange spouse for several years for the obvious purpose of advancing the ongoing criminal infringement, contact that commenced **prior to the filing of the divorce** that the evidence shows was advanced by the PCT and C&S.  Choosing to simply ignore these facts, Counsel for Kors and the PCT argue this claim lacks any evidentiary support.  Their claim that Rule 11 is violated is, itself, sanctionable.

**1.      Evidentiary Support.**

Mr. Berry has submitted an affidavit that establishes that he saw Michael Baumann in the airport in West Palm Beach Florida, minutes before he was served.  *See* Affidavit of Wayne Berry filed on March 20, 2008 (N.Y. Docket No. 79 ) at paragraph "17." Michael Baumann, when asked whether he feared becoming involved in the Berry divorce, just made a joke but never denied it.  *See* Affidavit of Timothy J. Hogan filed on March 20, 2008 (N.Y. Docket No. 80 at ¶ 35.  In light of the factual record, including Kors own attorneys' time records and a deposition transcript the Motion is clearly frivolous.

During the period prior to filing the instant claim, Mrs. Berry's divorce attorney told Mr. Hogan that Lex Smith, had been in direct contact with her client (Mrs. Berry) regarding the Berry works seeking to enlist Mrs. Berry's assistance in regard to the copyright litigation. Hogan Aff. ¶ 14.  Mr. Berry has established that Lex Smith was in contact with Mrs. Berry prior to the filing of the divorce and gets his directions from the PCT instead of C&S.  There was more than sufficient evidence to file the SAC based on the PCT and Kors agents' outrageous conduct after Mr. Baumann's conduct in West Palm Beach.

11

Mr. Baumann's 'proof' that he was over '3000 miles' from West Palm Beach is nothing more than weak alibi evidence directly contradicted by competent admissible direct evidence. This Court is also asked to believe that, for a period of days in the middle of the work week, Mr. Baumann can produce nothing but a single parking receipt that anyone could have found on the ground and affidavits from his spouse and secretary to prove his whereabouts. He didn't make a single verifiable credit or debit card transaction that might show him personally signing for charges in Los Angeles during this period or have contact with someone who does not evidence an obvious bias to corroborate his testimony regarding his whereabouts.   In light of Mr. Berry's certainty that Mr. Baumann was in West Palm Beach, the inability to produce any other corroborating evidence proves that the claim is not a Rule 11 violation and should go to the jury. *See* Affidavit of Wayne Berry (the "Berry Aff.")  filed concurrently at ¶ 9.  What the PCT and Kors argue is that, rather than believing his client, who informed him of the fact the day after it happened, and despite having personally discussed Mr. Baumann's conduct with him and all he could do is make a joke and, with evidence of the PCT actually charging Mr. Berry for the time Mr. Kors' counsel Lex Smith spent with Mrs. Berry, counsel should just blot all that out and believe persons who have admitted to committing acts that violate federal criminal statutes or are either beholding to or married to one of the actors.  Counsel's duty under the circumstances was to zealously advance his client's case especially in light of the fact that the wrongful conduct continues by these same actors, unabated.  Perhaps setting the stage for the Florida detectives' admission that Mr. Baumann was involved, as is strongly evident from the conduct of the lead Florida detective as set forth in the Fed. R. 56(f) Application filed on March 3, 2008 (N.Y. Docket No 69), the Motion claims that, just because Mr. Baumann was in the airport doesn't

prove anything.  But, in light of the sworn affidavits, that say he wasn't there, such a turn-about could hardly be considered anything but proof of the very scheme that the Motion claims is a figment of Mr. Berry and his counsel's imagination.

As to the C&S examination, the Motion erroneously claimed that Mr. Berry has no evidence to link Kors and the PCT to the acts related to the Hawaii debtor's examination. This is the principal fact that is offered to support the Rule 11 Motion.  Mr. Berry has established that Lex Smith admitted he was required to check with "L.A." to obtain 'authority' related to the exam that the motion falsely claims was being conducted only on behalf of C&S.  This email, a copy of which was authenticated in the Affidavit of Wayne Berry filed on March 20, 2008 (N.Y. Docket 79) at Exhibit "4" stands as a compelling factual predicate that supports the claim that Kors was directing Smith's conduct in the examination.  In response to this proof, used to impeach the sworn affidavits in regard to the Motion for Summary Judgment, Kors and the PCT didn't claim that C&S had some presence in Los Angeles, as Mr. Berry suspected they might, rather, they admitted in their Reply regarding the Summary Judgment Motion that Mr. Kors' attorneys were the ones contacted.   The email speaks for itself and evidences that Smith admitted he was getting his orders from the PCT, now that the PCT and Kors have admitted that the email was addressing them and not C&S.  A reasonable juror could find that Smith's admission proves that Smith was being controlled by Kors.  Mr. Kors is liable for all of Smith's machinations including the conduct that occurred related to the examination.  Relevant to this inquiry, a reasonable attorney could justify bringing the claim based on the facts then known to Mr. Berry's counsel.

As to Mr. Baumann's claim to have no involvement in advancing the Berry divorce, Mr.

13

Hogan earlier asked Mr. Baumann, "aren't you concerned about becoming involved in the Berry divorce case?"  In response Mr. Baumann quipped, "Don't tell my wife."  Affidavit of Timothy J. Hogan, filed on March 20 (N.Y. Docket No. 80) at ¶ 35.  At no time did he ever deny his involvement when the issue was raised that had first been evidence by his local counsel, Lex Smith's, time records dating to prior to the divorce.  *See* Affidavit of Lex Smith filed on February 26, 2008, (N.Y. Docket 58-4)  at Exhibit "C" page 21 of 21.   The fact that Mr. Baumann traveled to West Palm Beach to effect service of a divorce complaint raises a triable issue to defeat summary judgment and establishes the factual predicate for bringing the claim to defeat the instant Motion.

As to the claims related to Kors' role in the initiation of the divorce proceeding in the State of Hawaii, Lex Smith's failure to fully respond to the facts in the ODC complaint that attached a copy of one of his firm's time records that showed the discussions with Mrs. Berry prior to the filing of the divorce serve as an adoptive admission of Smith's role in advancing the divorce.  Smith also admits to having discussion with Mrs. Berry's attorney before the examination, Affidavit of Timothy J. Hogan filed on March 20, 2008 (N.Y. Docket No. 80, Exhibit 16 at page 116:17.

By letter to chambers dated April 23, 2008, Michael Baumann claimed that Mr. Berry and his counsel have misrepresented the facts regarding the dismissal of the divorce complaint by making what the letter alleges is a false claim at oral argument that proves that sanctions should be awarded and summary judgment entered thus making the discovery moot.  First, the proof submitted by Mr. Kors and the PCT in support of the Motion for Summary Judgment evidenced, on its face, that the Family Court docket evidenced the case was dismissed.  *See* Kors

14

and PCT Request for Judicial Notice filed on February 26, 2008 (N.Y. Docket No. 62) Exhibit

"E."  Where the underlying fact is supported by evidence no Rule 11 sanction is proper for oral

statements.  *See O'Brien v. Alexander*, 101 F.3d 1479, 1490 (2d Cir. 1996) (oral statement must

advocate baseless allegations).  In this case the very evidence that the PCT and Kors advanced

showed that at the time the complaint was served (the relevant time) the case was dismissed.

Just how or whether the dismissed case got reinstated is subject of Mr. Berry's ongoing inquiry.

As set forth in the Affidavit of Wayne Berry filed concurrently, Mr. Berry had no knowledge

that anyone claimed the case was reinstated until April 11, 2008 and a reasonable interpretation

of the record would lead to the conclusion that the Family Court is proceeding in a dismissed

case in the absence of jurisdiction.  In any event, the Berry Aff. filed concurrently at ¶¶ 1 to 26

and Exhibits "1" to "8" establishes with competent sworn evidence that the case was dismissed

at least when Mr. Baumann made his trip to West Palm Beach.  *See also* Hogan Aff. ¶ 14.  As

the claim that counsel misrepresented facts to this Court, Mr. Berry's Affidavit evidences that he

first informed Mr. Hogan on April 11, 2008 by sending him a copy of the transmittal he had just

received from Ms. Brawley.  Berry Aff. at ¶ 24.  Mr. Hogan's Affidavit confirms this and both

the Berry Aff. and Hogan Aff. confirm that Mr. Hogan had no prior knowledge that anyone

claimed the case had been purportedly reinstated.  Hogan Aff. ¶ 15  and Exhibit "13."

Noteworthy, as the Berry Affidavit evidences, Mr. Baumann has greater knowledge of matters

related to the divorce proceeding that Mr. Berry, the respondent, only learned from Mr.

Baumann via his letter to chambers.  Berry Aff. ¶¶ 29 & 30.  Mr. Berry's Affidavit  ¶¶ 16 & 17

and Exhibit "5" evidence that Mr. Berry, after being told by court personnel several times the

case was dismissed obtained a letter from court personnel confirming their telephone

conversations where they had informed him that the case was dismissed advising Mr. Berry that no additional actions would be taken. The Berry Affidavit details the bizarre events related to Mr. Berry's pro se divorce case. The fact that Mr. Baumann continues to closely monitor this proceeding is more proof of his complicity and his clients' liability for seeking to advance the service of process in a divorce to further criminal infringement. Also, noteworthy, as set forth in Berry Aff. ¶ 18 and Exhibit "6", the Motion to Set, that started the process to seek to revive the dismissed case, was filed February 6, 2008, two days after Mr. Hogan informed Mrs. Berry's divorce counsel of the fact that case was dismissed a fact she never disputed in any response but went to work in the shadows to fix one of the defendants' problems. Hogan Dec. ¶ 16 and Exhibit "14".

### 2. Legal Theory.

The PCT and Kors again fail to comprehend the cases they cite that all say that process employed for an ulterior purpose is actionable. This would apply to any process whether dismissed or otherwise. In fact, at oral argument Counsel for the PCT argued that because the case had been dismissed, the service was not actionable. *See* Hogan Aff. Exhibit "15."

The cite to cases that simply state the obvious fact that properly used process is not actionable is irrelevant. Process was issued and served to effect an improper purpose. Under New York law, Mr. Berry must prove "(1) regularly issued process (civil or criminal); (2) an intent to do harm without excuse or justification; and (3) use of the process in a perverted manner to obtain a collateral objective. *Board of Education of Farmingdale v. Farmingdale Classroom Teachers Association,* 38 N.Y.2d 397, 403, 380 N.Y.S.2d 635, 343 N.E.2d 278 (1975); *Curiano v. Suozzi,* 63 N.Y.2d 113, 116, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984).

16

Likewise, Florida provides for liability where the service is for a "collateral purpose." *See Cline v. Flagler Sales Corp.,* 207 So.2d 709, 711 (Fla. 3d DCA 1968).

Kors and the PCT claim that, even if Mr. Baumann had been involved in serving the divorce complaint, dismissed or otherwise, serving a complaint is not an abuse of process. The distinction is that the service of the divorce complaint was not to advance the divorce, that would be proper, but to terrorize Mr. Berry and facilitate the ongoing criminal infringement. When process, otherwise proper, is used to advance an improper purpose, that is abuse of process whether it occurs in New York or Florida. Kors and his attorneys should have stayed out of the Berry divorce, but their desperation born from their active complicity in ongoing infringing conduct caused them to commit the tortious acts alleged in the SAC. Moreover, these actors are claimed to have done much more than serve the complaint, they actively advanced the filing of the divorce for the purpose of furthering the commission of willful infringement. This is not even addressed by the PCT or Kors in their motion or last ditch sanctionable letter to chambers.

### 3.      Improper Purpose.

What was clear in the emails is that if the PCT wanted to discuss resolution of the case under Rule 408, Mr. Hogan was willing to have this discussion but no attorney should be subject to threats as a substitute for proper conduct in litigation.

### C.      The Lynch Ichida Claims Should go the Jury Let Alone Be the Basis for a Sanction.

The Motion is predicated on the false claim that the only evidence that Mr. Hogan and Mr. Berry had was some discussions among themselves and that Mr. Hogan admitted to the ODC that he did not have an actionable claim. Both of these assertions are false.

### 1.      Evidentiary Support.

By claiming that the Smith offer was not an offer, the PCT and Kors seek to avoid the undisputed fact Smith's offer to Lynch Ichida is actionable under Hawaii criminal law. The PCT and Kors have tried, in vein, to establish that Lex Smith did not make the offer to Lynch Ichida the obvious fact of the offer notwithstanding. The facts as set forth in the papers filed in regard to the Summary Judgment Motion establish that Smith made the offer.

Before filing the instant SAC, Mr. Berry's counsel investigated the facts and legal basis for all the allegations and claims and they were based on a good faith that they were factually and legally supported and were not imposed for any improper purpose. Hogan Aff. ¶ 18. The quotation that Kors and the PCT take out of context about the amount of proof necessary for disciplinary sanctions brought by the Office of Disciplinary Counsel ("ODC") that Kors cites as the proof that Berry admits he has no claim, clearly dealt only with counsel's then present lack of knowledge of what "standard of proof" the ODC applies to formal proceedings, that he has established is the "clear and convincing standard." *See* Rules of the Supreme Court of Hawaii 2.7(c) (standard applied to formal proceedings is clear and convincing). Hogan Aff. ¶ 19. This lack of knowledge regarding the inner workings of a formal disciplinary proceeding has nothing to do with whether counsel had a factual and legal basis to file the claims in this case. Mr. Kors and the PCT twist this statement to suit their purpose but it proves nothing.

As to the proof that money was paid to Lynch Ichida and the investigation leading up to the filing of the SAC, the Berry opposition to the Motion for Summary Judgment details the proof that was obtained in the very investigation they claim never occurred, that a reasonable juror could find supports the claim that Ichida switched sides and did so **prior to the ODC complaint** that, like the claims in the SAC, was initiated because of the apparent breach of

18

loyalty.  When Mr. Hogan was seeking to establish that only the Smith offer had occurred, but that the rights under the contingent fee agreement remained with the Firm, Ichida' response to the inquiry regarding the Smith offer cannot be reconciled.   Mr. Ichida only compounded the proof of his complicity by stating in his Affidavit filed in this Court, that the proposed sale of the interest to the opposing party was Ichida's idea as much as it was Smith's.  The evidence that Ichida had misrepresented to Mr. Berry the facts related to the Smith offer further support the claim and shows that the instant Motion is simply to scare Mr. Berry and his counsel so that they will not proceed to obtain the bank records regarding the actual payment.   Had they wanted to exonerate Ichida and Smith's principals the PCT and Kors, they could have submitted the Firm's verifiable operating account bank records.   The PCT and Kors have failed to explain the absence of the Lynch Ichida letters responding to the ODC denying they got the money.   The fact that the money doesn't appear in the trust account is hardly proof that no such payment was made because the Firm would have deposited it in the operating account under their admitted, though erroneous, view that the money was all theirs and not Berry's.

During Mr. Hogan's investigation,  Mr. Ichida admitted that the Firm no longer claimed anything from Berry in regard to the contingency fee, only costs reimbursement that was a complete reversal of the Firm's earlier unwavering position that they were entitled to a substantial percentage based on their contingency fee agreement.  *See* Affidavit of Timothy J. Hogan filed on March 20, 2008 (N.Y. Docket No. 80) at ¶¶ 25 - 26.   The PCT and Kors have failed to explain what happened to the Firm's claim to the contingency fees.   When asked to confirm that the Firm hadn't been paid, Ichida just said essentially that if the Firm got paid off related to the contingency fee agreement it was none of Mr. Berry's business.   A reasonable

juror could find the facts as Mr. Berry has stated them and grant Mr. Berry the inferences from this statement that the Firm had been paid and then concealed it from the client.

In addition, the PCT-Kors Motion for summary judgment attempted to present a factual basis for the Berry claims that are not consistent with the SAC nor consistent with the ODC complaint that they included as support for their Motion. Nothing in the Motion addressed the actual scheme that was alleged and that they knew formed the basis for the claim.

### 2.    Legal Theory.

The proof submitted in response to the Motion for Summary Judgment establishes that the offer was made. *See Clark Oil Trading Co. v. Amerada Hess Trading Co., A Div. of Amerada*, 1993 WL 300039, *6 (S.D.N.Y.) (Black's Law Dictionary defines "an offer" as "a proposal to do a thing" and "proposal" as "an offer." *Citing* Black's Law Dictionary 976, 1097 (5th ed. 1979). Ichida's earlier email admits that Smith made an offer. Under Hawaii Rev. Stat. §708-880, and offer of over $1,000 made to an attorney to breach a duty is a Class C felony and a RICO predicate under RICO 18 U.S.C. § 1961(1)(A). Kors as the principal is liable for it.

In regard to the proof that money was paid to the Firm, first Ichida said that if they got paid, that was Firm business. Mr. Berry believes that a reasonable juror could find that Mr. Ichida's refusal to simply say we did not get paid anything at all, under the circumstances where he has a duty to disclose matters related to the case to his client, and was now waiving his right to be paid anything more from Berry, would be sufficient to find that the Firm sold the interest even if no money had yet been exchanged.

To prevail on a claim of inducement of breach of fiduciary duty, Mr. Berry need only prove the "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly

20

induced or **participated** in the breach, and (3) that the plaintiff suffered damages as a result of the breach." *S & K Sales Co. v. Nike, Inc*., 816 F.2d 843, 847-8, note 3 (2d Cir.1987) (emphasis added).   The evidence shows that Mr. Ichida has turned against his own client at the obvious behest of the defendants in this case for money. The damage is assisting the opposition.  Wes Ichida admits in his Affidavit that he misrepresented his state of mind to Berry when he claimed that he rebuffed Lex Smith's offer as possibly unethical.  When the truth that it was Ichida's idea was kept from Berry that was a breach of the duty to disclose relevant facts to the client.  Smith, who holds himself out as the judge of others' ethics,  should have told Ichida it was unethical but in any event, Smith can't deny he "**participated**" in the breach because he admits that he and Ichida were discussing it and a juror could find offering each other encouragement for this act of disloyalty "participated" in the breach and that is all that Mr. Berry need prove.  Hawaii civil courts like New York, find the conduct in this case actionable.  *See Television Events & Marketing, Inc. v. Amcon Distributing Co.*, 488 F.Supp.2d 1071, 1083 (D. Hawaii 2006) (assisting or colluding sufficient).  Both Smith and Ichida admit to collusion in their Affidavits.

In regard to the Claim for Inducement of Breach of Contract, the PCT and Kors know that there was an agreement between Mr. Berry and his attorney that even if not reduced to writing (and it was) is implied by the attorney-client relationship.  Smith asked if he could buy an interest in the fee agreement.  Ichida, to assist the defense, now falsely says the offer was never made.

By inducing the breach of duty they also induced the breach of contract and are liable for it as set for in the SAC.   Plaintiff must establish that a defendant had knowledge of the contract at issue.  *Don King Prods., Inc. v. Douglas,* 742 F. Supp. 741, 775-76 (S.D.N.Y.1990). A

21

plaintiff, however, need not prove that a defendant had "perfect or precise knowledge of the terms and conditions of the contract in issue." *Id*.  In this case, Smith made the offer to buy the "lien." Smith is an attorney. A lien only derives from a contractual right.   He tempted Ichida by encouraging a breach of duty, a duty that Smith knows is implied in any attorney-client agreement.  Ichida's providing false facts, which if true, would be privileged,  evidences the interference with the attorney-client contract.

### 3.    Improper Purpose.

The fact that a disciplinary complaint was made is not proof of anything. The duty to report violations is imposed by the disciplinary rules and sanctions derive from a failure to report violations.  Mr. Ichida's claim that he could receive, and then conceal , a payment from the opposing party is just flat wrong but even if it was permissible, it shouldn't be and Mr. Berry may advance claims that are not then viable to seek a change in the law and not violate Rule 11. If that is the law, there is a need for a change.  Kors and the PCT have cited no case that supports their view that this is not a breach of duty. Moreover, even if it was permitted, the failure to be candid with the client is never permissible.

### D.    The RICO Claim.

### 1.    Evidentiary Support.

The facts that the PCT and Kors point to in support of their Motion is based on the claim that "Hogan takes innocuous facts (Berry allegedly seeing Mr. Baumann in Florida) and, with the RICO claim, alleges that the New Defendants are part of a worldwide conspiracy ..." Memorandum in Support at pages 20-21.  In light of Mr. Baumann's fervent denial that he was anywhere but at home on California, this could hardly now be considered to be an "innocuous"

fact.  Moreover, this fact has nothing to do with the principal predicate act of criminal infringement.  To attempt to claim that the instant RICO claim is sanctionable the Motion points to an old case where it claims "Hogan has asserted baseless RICO claims."  *See* Memorandum in Support at page 21.   It is unclear why the PCT and Kors have raised a claim in a case in which Fleming and a company with which Mr. Berry was affiliated were sued by Sea-Land Service, Inc.  Kors and the PCT's attorneys forgot that Fleming was a co-defendant in that case and supported API's filing of the RICO claim.  Hogan Aff. at ¶ 20.  The PCT is estopped from claiming the claims were baseless.

The Motion claims that prior orders in the Second Hawaii Case prove that the instant RICO claim is frivolous.  On the contrary, the District Court in the Second Hawaii Case, Judge Susan Oki Mollway, who has just recently recused, dismissed the RICO count primarily because there was no proof of "willful" infringement.  *See* Hogan Aff. Exhibit "16."  The PCT can't deny that Berry owned works were transferred to C&S that is using them for commercial advantage.

Moreover, the Motion claims that there have been relevant court findings that prove that Mr. Berry has brought the instant claims in this case for an "improper purpose*".  See* Memo. in Support at page 8 where Kors and the PCT cite interlocutory findings that were made by the Magistrate Judge.   As set forth in the Hogan Aff. Exhibit "17" the District Court specifically refused to adopt these findings, made by the Magistrate Judge, related to Fleming then represented by the PCT and its attorneys who now cleverly assert these interlocutory findings to mislead the Court.

The ongoing use of Berry works that were transferred to C&S under the belief that the Fleming created works were not Berry's cannot, at this juncture, be considered innocent infringement.  *See* Hogan Aff. Exhibit "18."  *Berry v. Fleming Companies, Inc.*, 243 Fed. Appx.

260, WL 1062946 (9th Cir. (July 5, 2007) Hawaii)  (confusion over ownership when warned is

no defense to willful infringement).  Viewing the admission of ongoing criminal infringement in

the context of the earlier District Court order, clearly Mr. Berry establishes that the RICO claim

is in this case fully supported even if there were no other evidence or predicate acts to support

the claim.  The decision of the Court of Appeals establishing Mr. Berry's ownership over the

works that Fleming admits it transferred to C&S, establishes the RICO predicates that have

continued for three years, unabated.

 As to other bad acts that the PCT and Kors claim that Mr. Berry can't support, like

cigarette smuggling, the simple fact is that Fleming was smuggling cigarettes.  Hogan Aff. ¶ 24.

The fact that there have been two prior federal convictions of Fleming associates directly related

to the operation of the alleged "Enterprise" on money laundering and Bankruptcy fraud charges

is also a fact that Kors and the PCT choose to ignore.   Hogan Aff. *Id*. and Exhibit "19."   In

addition, C&S obtains freight payments from the United States Department of Defense related to

the Defense Commissary Agency ("DeCA") using Berry Technology though these are not

permitted by DeCA.   Berry Aff.  Exhibits "10" and "11" and Hogan Dec. Exhibit "20."

Deposition of Jacqueline Rio taken on December 6, 2004 in *Wayne Berry v. Hawaiian Express*

*Service, Inc*. CV03-385 SOM-LEK (D. Hawaii) at 33:8-18.

 **2.      Legal Theory**

 The Kors and PCT memorandum doesn't even try to make a case that C&S is not

engaged in criminal infringement nor does it deny that Kors and the PCT have agreed to the

commission of these predicate acts by agreeing to honor the future infringement in the

outrageous Berry Technology Indemnity Letter.

24

### 3.    Improper Purpose.

Bringing Kors and the PCT to account for the consequences of his fraudulent claim of ownership and his ongoing overt acts in furtherance of criminal infringement and the related bad acts, cannot be considered brought for an improper purpose unless the Court is to hold that Congress was wrong in enacting the RICO statute that created the private right of action under the RICO statute.  *Sedima, S.P.R.L. v. Imrex Co., Inc*., 473 U.S. 479, 500, 105 S.Ct. 3275, 3287 (1985) (RICO applies to what might otherwise be considered legitimate businesses).

### E.    Kors Conceded he Was Appointed the PCT Representative.

The final basis for sanctions evidences more than any other section of the Memorandum why the Motion is, itself, sanctionable.  Mr. Berry has established that the PCT-Kors' Motion for Summary judgment that claimed that Mr. Kors was never appointed the PCT representative was simply false.  Kors didn't even attempt to rehabilitate this frivolous claim in his Reply no doubt to avoid having to call attention to his numerous false filings directed to the SEC.  *See* Affidavit of Timothy J. Hogan filed on March 20, 2008 (N.Y. Docket No. 80), Exhibits "1" through "5" filed in Support of his Opposition to the Kors -PCT Motion for Summary Judgment.

## III.    CONCLUSION.

For the reasons stated, the Motion should be denied.

Respectfully Submitted: Honolulu, Hawaii, April 28, 2008.

/S/Timothy J. Hogan
TIMOTHY J. HOGAN (Hawaii Bar No. 5312)
Attorney for Plaintiff WAYNE BERRY
Admitted *Pro Hac Vice*
1050 Bishop Street, Number 433
Honolulu, Hawaii 96813
Tel.  (808) 382-3698
Fax.  (808) 356-1682
Email   tjh@timhogan.com