UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WAYNE BERRY,<br><br>        Plaintiff,<br><br>vs.<br><br>DEUTSCHE BANK TRUST COMPANY AMERICAS (FKA BANKERS TRUST COMPANY) and JP MORGAN CHASE BANK in their separate capacities and as agents for the pre- and post-petition Lender Defendants of Fleming Companies, Inc.; GENERAL ELECTRIC CAPITAL CORPORATION; C&S WHOLESALE GROCERS, INC.; THE POST-CONFIRMATION TRUST OF FLEMING COMPANIES, INC.; ROBERT KORS; CORE-MARK HOLDINGS INC. and DOES 1 to 200,<br><br>        Defendants. | Case No. 01:07 CV 7634 (WHP)<br><br>ECF Case |

### DEFENDANTS POST CONFIRMATION TRUST'S AND ROBERT KORS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS UNDER <u>FEDERAL RULE OF CIVIL PROCEDURE 11</u>

KIRKLAND & ELLIS LLP
Richard L. Wynne (RW 5630)
Michael E. Baumann (admitted *pro hac vice*)
Erin N. Brady (admitted *pro hac vice*)
777 South Figueroa Street
Los Angeles, California 90017
Telephone:   (213) 680-8400
Facsimile:    (213) 680-8500
E-mail:         ebrady@kirkland.com

Counsel for Defendants Post Confirmation Trust and Robert Kors

K&E 12747073.8

# TABLE OF CONTENTS

Page

I. BERRY'S BREACH OF CONTRACT CLAIM VIOLATES RULE 11.......................1

II. BERRY'S ABUSE OF PROCESS CLAIM VIOLATES RULE 11. ............................3

    A. Berry's divorce complaint claim is sanctionable. ....................................................3

    B. Berry's judgment debtor exam claim is sanctionable. .............................................5

III. BERRY'S CLAIMS RELATING TO LYNCH ICHIDA VIOLATE RULE 11. ....................................................................................................................................6

IV. BERRY'S RICO CLAIM VIOLATES RULE 11. ........................................................8

V. CONCLUSION ............................................................................................................10

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Adobe Systems, Inc. v. One Stop Micro, Inc.*,
    84 F.Supp.2d 1086 (N.D. Cal. 2000) ................................................................................ 3

*Eastway Constr. Corp. v. City of New York*,
    762 F.2d 243 (2d Cir. 1985 .............................................................................................. 10

*Hoatson v. New York Archdiocese*,
    No. 05 Civ. 10467(PAC), 2007 WL 431098 (S.D.N.Y. February 8, 2007) ...................... 9

*In re Fleming Companies, Inc.*,
    308 B.R. 689 (Bankr. Del. 2004) ...................................................................................... 3

*United States v. Int'l Bhd. of Teamsters*,
    948 F.2d 1338 (2d Cir. 1991) ............................................................................................ 4

If nothing else, Berry's Opposition makes clear the need for sanctions. There is and was no factual or legal basis for the accusations Berry made against Robert Kors and the Post Confirmation Trust in the Second Amended Complaint (the "SAC"). Yet absent sanctions, there is little doubt that Berry will continue to assert these allegations. In fact, Berry has already named Mr. Kors, Mr. Smith, Mr. Baumann, the members of the PCT's governing board, the bankruptcy counsel for Fleming's former banks, the chairman and chief executive officer of C&S and Mrs. Berry's divorce attorney—each of whom he claims are "RICO persons" and "Hobbs Act persons"—as indispensable parties *in his divorce case*. And Hogan now proclaims that Robert Kors, who made the mistake of discussing settlement with him, should be subject to "3-5 years" for his alleged admission of criminal infringement.

Berry's Opposition also makes evident that Berry and Hogan see only what they want to see, spinning the most innocuous facts into "proof" of their conspiracy theories and, if needed, making up "facts" out of whole cloth. Berry and Hogan have, for example, spun a joking statement by Mr. Baumann into proof that he was personally involved in the Berry divorce case. They have similarly spun an innocuous letter that the PCT sent to C&S *at Berry's request* as proof that the PCT and Kors are bound by a rejected license agreement. And they have somehow spun Mr. Ichida's blanket denial of Hogan's myriad allegations into his admission that the PCT and Mr. Kors paid Lynch Ichida money to breach its fiduciary duty to Berry. It does not matter what Berry's targets say, what they do, what they admit or what they deny—Berry and Hogan will see it as evidence supporting their conspiracy theories. Sanctions are, quite possibly, the only way to stop their abuse of the judicial system.

## I. Berry's Breach Of Contract Claim Violates Rule 11.

When Berry and his counsel filed their claim seeking specific performance from New Defendants under the Fleming/Berry license agreement, they did not simply lack an objectively reasonable factual basis for the claim (which, itself, would be sanctionable). They had evidence disproving it. Berry and his counsel already knew, as evidenced by their own admissions, that Fleming rejected the Fleming/Berry license agreement. And they knew that the PCT—which

1

took possession of Fleming's then-existing assets and liabilities only after the rejection—never succeeded to Fleming's interests in the contract. Their understanding of this is borne out by Berry's 2004 decision to assert "rejection damages" (which are legally simply breach of contract damages) against Fleming in its bankruptcy case, rather than against New Defendants in court.

But now, nearly four years later, Berry seeks specific performance (and, failing that, damages) from the PCT and Mr. Kors for breaching the Berry/Fleming license agreement, doing an about-face to argue that the "actual record shows [the rejection] never occurred." (Opp'n at 9). As usual, Berry has no citation for this assertion, nor could he. He himself has acknowledged on at least four occasions that the contract was, indeed, rejected. He filed a proof of claim, under penalty of perjury, seeking rejection damages from Fleming. (4/7/2008 Brady Aff., Ex. I (D.I. 94)). He sent Fleming a letter in December 2004 expressly acknowledging the rejection. (4/7/2008 Brady Aff., Ex. J (D.I. 94)). His counsel acknowledged the rejection during a hearing conducted on Berry's behalf. (3/20/2008 Hogan Decl., Ex. 1 at 19 (D.I. 82) ("Mr. Berry has filed administrative claims based on the rejection of his license that were filed within the bar date for the administrative claims for rejection.")). And, most recently, Berry admitted that the contract was rejected in his counter-statement of material facts opposing the summary judgment motion. (BSOMF ¶ 10 (D.I. 81 at Attachment 1)). His audacity to now contend that Fleming never rejected the license agreement is disingenuous and, indeed, sanctionable.

Berry's effrontery does not end there. To justify his claim that he could enforce the Fleming/Berry agreement against Robert Kors personally (as opposed to in his capacity as the PCT Representative), Berry dreams up the fact that "Kors voluntarily chose to assert that he, Robert Kors, as the trustee of a grantor trust, *personally owned the title to the Berry works* and then he, Robert Kors, *knowingly advanced the sub-license of the works* to C&S." (Opp'n at 7-8) (emphasis added). Berry has no evidence for this and cites none. He simply made it up.

Finally, the legal authority that Berry and his counsel insist supports their claim is, quite simply, inapposite and irrelevant. Berry's and his counsel's argument that New York law and Delaware law render Mr. Kors personally liable for the PCT's alleged breach of the

2

Fleming/Berry license agreement and subjects him to Berry's claim for specific performance ignores (1) that there is no Fleming/Berry license agreement to specifically enforce and (2) that the court-approved PCT Agreement does not provide that Mr. Kors can be personally liable for breach of contract (for which there is no element of intent). (2/26/2008 Brady Aff., Ex. O (PCT Agreement) at §1.9 (D.I. 53)). Similarly, their citation to *Adobe Systems, Inc. v. One Stop Micro, Inc.*, 84 F.Supp.2d 1086, 1092-93 (N.D. Cal. 2000)—a copyright infringement case—for the proposition that Mr. Kors is bound by the Fleming/Berry license because he obtained his licensee rights from Fleming is irrelevant because Fleming did not transfer any rights under the Fleming/Berry license agreement to Mr. Kors. Finally, their citation to *In re Fleming Companies, Inc.*, 308 B.R. 689, 692 (Bankr. Del. 2004), for the proposition that "assumption [of a contract] is not a condition precedent to liability" ignores the pivotal fact that the contract at issue in the *Fleming* case had not yet been rejected. Their claim that this inapplicable authority actually supports their breach claim is patently unreasonable and yet another basis for sanctions.

## II.  Berry's Abuse Of Process Claim Violates Rule 11.

### A.  Berry's divorce complaint claim is sanctionable.

That service of process can never be an abuse of process is not a complex or intricate legal proposition. Rather, any competent lawyer who conducts a reasonable legal inquiry will find ample authority leading to this conclusion. Berry and his counsel, however, without any legal authority, blindly advance the theory that the service of Mrs. Berry's divorce complaint is some sort of exception to the general rule because it was "actively advanced" by Mr. Kors and his attorneys "to terrorize Mr. Berry and facilitate the ongoing criminal infringement." (Opp'n at 17). They offer no explanation as to how any reasonable attorney could, based on the current state of the law, conclude that such an exception exists.

Putting this aside, Berry and his counsel also had no objectively reasonable factual basis for filing Berry's "divorce complaint" abuse of process claim. To that end, Berry admits that he and his counsel concocted their claim that the PCT and Mr. Kors masterminded the service of Mrs. Berry's divorce complaint from just three pieces of "evidence": (1) Michael Baumann's

3

alleged presence at the West Palm Beach airport on the same day that Berry was (hours later and in a restaurant) served with his wife's divorce complaint, (2) Mr. Baumann's failure to deny involvement in Berry's divorce proceeding in response to Hogan's question (asked at some unidentified point in time) "aren't you concerned about becoming involved in the Berry divorce case," and (3) Lex Smith's statement that he has, on occasion, spoken to Mrs. Berry's divorce attorney. (Opp'n at 11-16). This "evidence" does not and cannot form a reasonable factual basis for his claim. The "evidence" does not, for example, link Mr. Baumann to Berry's service. It does not link Mr. Smith to Berry's service. And it certainly does not link the PCT and Mr. Kors to Messrs. Baumann and Smith, much less to Berry's service. No reasonable attorney would find that any of these three allegations—taken separately or together—form a factual basis for Berry's abuse of process claim against New Defendants.

But there is more. Berry also argues that the filing of his claim has now been justified because "the wrongful conduct continues by these actors, unabated." (Opp'n at 12). The question for the purposes of the New Defendants' Motion, however, is not whether Berry and his counsel's claims became justified during the course of litigation, but rather whether the claims were objectively reasonable when Hogan filed the SAC. *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1344 (2d Cir. 1991). Berry's new "evidence" is therefore irrelevant. That said, the things Berry deduces to be "evidence" supporting his claims demonstrates Berry's skewed view of reality, and the need for sanctions to deter his never-ending stream of litigation.

As an example, Berry asserts that the PCT and Mr. Kors admitted in their Motion that Mr. Baumann was in the West Palm Beach Airport on the day Berry was served. (Opp'n at 12-13) ("in light of the sworn affidavits, that say [Mr. Baumann] wasn't there, such a turn-about could hardly be considered *anything but proof* of the very scheme that the Motion claims is a figment of Mr. Berry and his counsel's imagination") (emphasis added). Berry, of course, does not say where in their Motion the PCT and Mr. Kors made this alleged admission—nor can he, because there is no admission. What there is, however, is a paragraph in which the PCT and Mr. Kors point out that even "assuming *arguendo*" that Mr. Baumann was in the airport as alleged,

4

Berry's claim would still fail because he failed to link Mr. Baumann (let alone New Defendants) to the process server or the actual service of process. (Mot. at 15). Berry's warped interpretation of the PCT's and Mr. Kors' argument (essentially ignoring the words "assuming *arguendo*" altogether) is a classic example of his penchant to see only what he wants to see.

Finally, and perhaps most disturbing of all, Berry and Hogan hid from the Court and New Defendants material events in Berry's divorce case—the case upon which Berry's abuse of process claim is premised. On March 27, 2007, the Hawaii Family Court issued an order confirming that Mrs. Berry's divorce complaint *was not dismissed*, finding that service had been properly effected, and setting the matter for trial. (5/5/2008 Brady Aff., Ex. P). Berry had notice of this hearing (but did not attend). (*Id.*, Ex. Q). A week later, at oral argument before this Court, Hogan continued to represent to the Court that the complaint was dismissed. He and Berry now claim that they did not learn of the Hawaii court's order until April 11, 2008, and therefore did not misrepresent any facts to the Court during argument. Putting aside the dubious veracity of this explanation, their assertion begs the question of why neither of them bothered to immediately inform the Court or New Defendants of the Family Court's order once they supposedly learned of it on April 11—particularly given that the Court had taken the summary judgment motion under submission. Berry and Hogan's willingness to consciously hide facts that would defeat their claims is further evidence that sanctions are necessary in this case.

### B. Berry's judgment debtor exam claim is sanctionable.

Berry also claims that the PCT and Kors abused process because C&S took Berry's court-ordered judgment debtor examination. Berry did not even attempt to defend this claim when opposing the New Defendants' summary judgment motion. But he and his counsel now argue that they had evidence to support the claim: a single email that Lex Smith sent to Hogan's former law firm saying he had to "check with LA" before agreeing to continue a hearing in which counsel of record for one of the parties to the lawsuit was located in LA and had received notice of the deposition. This email, they conclude, "proves that Smith was being controlled by Kors" and that "Mr. Kors is liable for all of Smith's machinations including the conduct that

5

occurred related to the examination." (Opp'n at 13). Putting aside the fact that it is unfathomable as a matter of law that a court-ordered judgment debtor exam—taken under the supervision of a United States Magistrate Judge—could ever constitute an abuse of process, no reasonable attorney could conclude that the PCT or Mr. Kors were involved in the examination or abused process therein based on a single, innocuous email. Nor does Berry identify any portion of the deposition transcript that a reasonable person would consider abusive or even attempt to explain why, if the deposition was conducted in an abusive fashion, he did not seek the protection of the court supervising it. This claim, too, is subject to sanctions.

### III.  Berry's Claims Relating To Lynch Ichida Violate Rule 11.

Berry's claims related to his former law firm, Lynch Ichida, all rest on an alleged secret agreement between the PCT, Mr. Kors and Lynch Ichida, whereby the PCT and Mr. Kors' paid Lynch Ichida to obtain the firm's attorney lien in the Hawaii Berry litigations. Had Hogan performed a reasonable inquiry into the state of the law before filing the SAC, he would have found that an attorney may freely assign an attorney charging lien or a contingency fee interest without breaching his or her fiduciary duties. (Summ. Judg. Reply at 7 (D.I. 86)). Having failed conduct this inquiry, however, he now tells the Court that he thinks that the law is wrong and that "Mr. Berry may advance claims that are not then viable to seek a change in the law and not violate Rule 11." (Opp'n at 22). What he now thinks, in the face of sanctions, is irrelevant. And in any event, despite his newfound concern for the state of the law on this issue, Hogan has not cited any legal authority, or even articulated a plausible argument, that would justify changing it.

Moreover, putting aside the impossibility of Berry's legal theory, Berry also had no factual support for his claims. All parties with actual knowledge have denied under oath that any agreement was reached or that any payment was made, and Berry knew of these denials before filing this SAC. (Opp'n at 19-20; 3/20/2008 Hogan Aff., Ex. 14 at 1 (D.I. 80)). Berry ignored these denials (and all other evidence disproving his claims), and instead focused on just two pieces of "evidence": (1) Lex Smith's inquiry as to whether Ichida would "consider" selling or assigning his firm's lien if the firm withdrew from representing Berry and perfected its lien

6

(Opp'n at 18) and (2) certain statements by Wes Ichida in a December 2007 email string between he and Hogan where, in response to Hogan's repeated attempts to twist Ichida's innocent statements to create the illusion of wrongdoing, Ichida finally states: "***Tim: What you state is totally inaccurate, in every, I repeat every, respect. Wes.***" (Opp'n at 19-20; 3/20/2008 Hogan Aff., Ex. 14 at 1 (D.I. 80)). From this alone, and of course ignoring Ichida's outright denial of any wrongdoing, Berry and his counsel filed suit against Mr. Kors and the PCT for paying Lynch Ichida to enter into a secret agreement, causing it to breach both its fiduciary duty to and its retainer agreement with Berry. Berry's Opposition makes clear that when filing the lawsuit, Berry and his counsel had no proof of a secret agreement, no proof that Mr. Kors or the PCT were involved in any secret agreement, no proof of any payment from Mr. Kors or the PCT to Lynch Ichida, no proof that Lynch Ichida breached its fiduciary duty, and no proof that Lynch Ichida breached its retainer agreement. No reasonable attorney could or would conclude that Berry's "Lynch Ichida" claims had any merit.

Berry tries to hide his evidentiary failures by spending pages of his Opposition arguing that the evidence the PCT and Mr. Kors submitted (and omitted) during the course of the summary judgment proceedings actually proves the validity of his claims. He argues, for example, that the affidavit Wes Ichida submitted in support of the PCT's and Mr. Kors' summary judgment motion proves that Ichida breached his fiduciary duty (Opp'n at 19) and that Ichida's failure to voluntarily turn over all of his firm's bank records actually proves that the PCT and Mr. Kors paid him money. *Id*. This "evidence"—like his other "evidence"—does not form a reasonable factual basis for his claim. But in any event, because it was not available when Hogan decided to file the SAC, it is irrelevant for purposes of New Defendants' Motion.

Finally, the illogical reasoning that Berry and his counsel exhibit in defending their decision to file this claim further evidences the need for sanctions. For example, citing to the Ichida email string, Berry and his counsel conclude that "a reasonable juror could find that Mr. Ichida's refusal to simply say we did not get paid anything at all . . . would be sufficient to find that the Firm sold the interest even if no money had yet been exchanged." (Opp'n at 20). But

7

this conclusion ignores the fact that Ichida made it abundantly clear later in that very same email string that the firm was not paid anything. (3/20/2008 Hogan Aff., Ex. 14 at 1 (D.I. 80) ("What you state is totally inaccurate, in every, I repeat every, respect. Wes.")). Moreover, the suggestion that a statement denying that money was exchanged would have deterred Hogan and Berry is belied by the fact that they persist in these claims despite having sworn denials of such an exchange by every alleged participant. Their continued refusal to acknowledge reality demonstrates the fundamental unreasonableness of the claims, the likelihood that more unreasonable claims will come, and the need for sanctions.

### IV.  Berry's RICO Claim Violates Rule 11.

Berry's justification for his RICO claim is, perhaps, the most bizarre of all. Berry brought his RICO claim to bring "Kors and the PCT to account" for their alleged wrongdoing. (Opp'n at 25). But when he brought his claim, he had no evidence of any wrongdoing by the PCT or Mr. Kors, and he could not meet even the most basic legal requirements necessary to maintain the claim.

According to Berry, the primary wrongdoing for which Berry sought to bring "Kors and the PCT to account" was "the principal predicate act of criminal infringement." (Opp'n at 23). But not only did Berry lack any evidence that would suggest that the PCT and Mr. Kors were criminally infringing, he himself did not even accuse them of doing so. (SAC at 60-61 ¶ 1 (accusing only C&S, Core-Mark and "the Lenders")). No reasonable attorney would bring a RICO claim under these circumstances.

Berry apparently also sought to bring "Kors and the PCT to account" for their involvement in cigarette smuggling and their alleged association with two Hawaiian individuals who were long ago convicted of bankruptcy fraud and money laundering. But when bringing his claim, Berry had no evidence that the PCT or Mr. Kors were engaged in cigarette smuggling, nor did he have any evidence that the PCT or Mr. Kors were associated with any convicted Hawaiians (or why that would matter). What Berry and his counsel did have was knowledge that the PCT did not even exist at the time of these alleged events and that there was no connection

8

whatsoever between the PCT, Mr. Kors and Fleming during that time. No reasonable attorney would bring a RICO claim based on this flawed factual basis.

Moreover, the documentary "evidence" that Berry produced to justify his RICO claim further demonstrates that sanctions are appropriate. This "evidence" includes:

- a page of handwritten notes from 1995 (nearly a decade before the PCT's creation), written by an unknown person, that Hogan claims to have given to the Internal Revenue Service Criminal Investigations Division in 1998 and allegedly was somehow involved in the federal trial of Lokilani and Marlene Lindsey. (4/28/2008 Hogan Aff. ¶ 24 and Ex. 19 (D.I. 100));

- a letter that Berry sent to the Defense Commissary Agency in 2005 requesting C&S' freight invoices under the Freedom of Information Act and the Agency's letter in response stating that there were no such records. (4/28/2008 Berry Aff., Exs. 10, 11 (D.I. 99)); and

- a deposition of Jacqueline Rio, a former Fleming employee, in 2004 stating that she sometimes sent bills to the Defense Commissary Agency. (4/28/2008 Hogan Aff., Ex. 20 (D.I. 100)).

These documents do not form the basis for *any* RICO claim, let alone a RICO claim against New Defendants. They do not suggest a criminal enterprise. They do not suggest a conspiracy. They do not suggest any criminal activity. They do not suggest that Berry suffered any injury. They do not suggest anything at all. No reasonable attorney would take these random papers and deem them sufficient to concoct a "thermonuclear" RICO claim against the PCT and Mr. Kors, neither of whom are even mentioned therein. *See Hoatson v. New York Archdiocese*, 2007 WL 431098, at *9 (S.D.N.Y. February 8, 2007) ("Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device . . . Rule 11 is particularly important in these cases because commencement of a civil RICO action has an almost inevitable stigmatizing effect on those named as defendants.") (citations omitted).

Putting aside the complete absence of any factual support, Berry's RICO claim was itself legally deficient. The mere fact of wrongdoing is not enough to assert a RICO claim. A plaintiff asserting a RICO claim must also show (among other things) that two or more specified *crimes* (i.e., predicate acts) are being conducted through some organized, criminal enterprise, causing

the plaintiff to be personally injured. Berry did not (and could not) articulate such an organized, criminal enterprise, nor did he demonstrate any injury he suffered at its hands. And in his Opposition, after it had become clear that his alleged predicate acts had failed, he made up new law—claiming (without authority) that criminal copyright infringement alone necessitates that "the RICO claim is in this case fully supported even if there were no other evidence *or predicate acts* to support the claim." (Opp'n at 24) (emphasis added). Berry's counsel, who has a history of bringing RICO claims, knows better than this.

Given the utter evidentiary and legal failure of Berry's RICO claim, and given its "thermonuclear" nature (particularly when asserted against an individual, like Mr. Kors), it is evident that Berry and his counsel asserted their claim for an improper purpose. This is true even if they genuinely (but mistakenly) believed the PCT and Mr. Kors had engaged in wrongdoing. *See Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 252 (2d Cir. 1985) ("No longer is it enough for an attorney to claim that he acted in good faith, or that he personally was unaware of the groundless nature of an argument or claim."). Supposed good faith is no excuse.

## V.    Conclusion

Based on Berry and his counsel's continuous and unabashed abuse of Rule 11, the Court should impose sanctions including, but not limited to, entering a "leave to file" injunction requiring both Berry and Hogan to seek permission from this Court before asserting any action against New Defendants, their employees or Board members, their attorneys or consultants, or any other people or entities associated with the former Fleming Companies, Inc.

DATED: May 5, 2008

By:  /s/ Erin N. Brady
KIRKLAND & ELLIS LLP
Richard L. Wynne (RW 5630)
Michael E. Baumann (admitted *pro hac vice*)
Erin N. Brady (admitted *pro hac vice*)
777 South Figueroa Street
Los Angeles, California  90017
Telephone:    (213) 680-8400
Facsimile:    (213) 680-8500
E-mail:    ebrady@kirkland.com

Counsel for Defendants Post Confirmation Trust and Robert Kors